AMY JOSEPH PEDERSEN, OSB No. 853958
amy.joseph.pedersen@stoel.com
KENNON SCOTT, OSB No. 144280
kennon.scott@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 300
Portland, OR  97205
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
ZACH P. HUTTON, Cal. SB#234737 (*pro hac vice*)
zachhutton@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Attorneys for Defendant NIKE, INC.


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


| | |
|---|---|
| KELLY CAHILL and SARA JOHNSTON, individually and on behalf of others similarly situated, | Case No.: 3:18-cv-01477-JR |
| Plaintiffs, | DEFENDANT NIKE, INC.'S PARTIAL MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS AND COLLECTIVE ACTION ALLEGATION COMPLAINT |
| v. | |
| NIKE, INC., an Oregon Corporation, | REQUEST FOR ORAL ARGUMENT |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

LOCAL RULE 7.1 COMPLIANCE ................................................................ 7

PARTIAL MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS
    ACTION COMPLAINT ................................................................ 7

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 9

I.      Introduction/Summary Of Argument ................................................ 9

II.    The Court May Dispose of Class Allegations at the Pleading Stage, Especially
Where Necessary to Prevent Discovery Abuse. ...................................... 11

III.   Plaintiffs Fail to Allege Adequate Facts to Support Their Class-Wide Equal
Pay Act Claims. ................................................................................. 14

      A.    Plaintiffs Fail To Identify The Relevant Comparators For Each Group
           Of Allegedly Underpaid Women, Leaving Nike To Guess Which Men
           and Women They Seek to Compare. .......................................... 15

           1.    Plaintiffs have not identified the appropriate comparator pool for their
                putative class. ................................................................. 15

           2.    Plaintiffs' disparate allegations regarding their individual claims highlight
                the absence of any common factual predicate for a class action. ............. 17

      B.    Nike Is Entitled To Assert Individual Defenses With Respect To Each
           Putative Class Member And Each Alleged Comparator. ...................... 19

      C.    Plaintiffs Fail To Identify How They Can Represent Women In
           Different Job Titles, Levels, Families And Departments. .................... 20

IV.   Plaintiffs Fail to Allege Adequate Facts to Support Their Class-Wide
Intentional Discrimination Claims. ...................................................... 23

V.    Allowing Plaintiffs' Deficient Claims to Proceed Will Inevitably Lead to
Discovery Abuse. ............................................................................... 25

VI.   In The Alternative, The Court Should Strike Plaintiffs' Class And
Representative Allegations. ................................................................ 26

VII.  Conclusion ..................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allender v. Univ. of Portland*,
689 F. Supp. 2d 1279 (2010) ...............................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................... *passim*

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983).........................................................................11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................... *passim*

*Bennett v. Nucor Corp.*,
656 F.3d 802 (8th Cir. 2011) ...............................................................25

*Bureau of Labor & Industries v. City of Roseburg*,
75 Or. App. 306 (1985) ....................................................................15

*Corning Glass Works v. Brennan*,
417 U.S. 188 (1974)...................................................................15, 19

*DM Research, Inc. v. Coll. of Am. Pathologists*,
170 F.3d 53 (1st Cir. 1999) ................................................................11

*E.E.O.C. v. Md. Ins. Admin.*,
879 F.3d 114 (4th Cir. 2018) ...............................................................16

*E.E.O.C. v. Port Auth. of New York & New Jersey*,
768 F.3d 247 (2d Cir. 2014)...........................................................16, 21

*Edwards v. Oportun, Inc.*,
193 F. Supp. 3d 1096 (N.D. Cal. 2016) ......................................................26

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982).........................................................................13

*In re Text Messaging Antitrust Litig.*,
630 F.3d 622 (7th Cir. 2010) ...............................................................25

*Jones v. Bock*,
549 U.S. 199 (2007).........................................................................20

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Kennedy v. Unumprovident Corp.*,
    50 Fed. App'x 354 (9th Cir. 2002) ............................................................12, 13, 20

*Myung Ga, Inc. v. Myung Ga of MD, Inc.*,
    No. DKC 10-3464, 2011 WL 3476828 (D. Md. Aug. 8, 2011)..............................................26

*Noel-Batiste v. Virginia State Univ.*,
    No. 3:12CV00826-HEH, 2013 WL 499342 (E.D. Va. Feb. 7, 2013)....................................21

*Oncale v. Sundowner Offshore Servs., Inc.*,
    523 U.S. 75 (1998)...................................................................................................................23

*Ott v. Mortg. Investors Corp. of Ohio, Inc.*,
    65 F. Supp. 3d 1046 (D. Or. 2014) .......................................................................................26

*Peak v. Topeka Hous. Auth.*,
    78 F.R.D. 78 (D. Kan. 1978).................................................................................................17

*Picus v. Wal–Mart Stores, Inc.*,
    256 F.R.D. 651 (D. Nev. 2009)..............................................................................................13

*Ramirez v. Baxter Credit Union*,
    No. 16-cv-03765-SI, 2017 WL 1064991 (N.D. Cal. Mar. 21, 2017) ....................................27

*Rasmussen v. Apple Inc.*,
    27 F. Supp. 3d 1027 (N.D. Cal. 2014) ..................................................................................27

*Raytheon Co. v. Hernandez*,
    540 U.S. 44 (2003)..................................................................................................................24

*Reynaga v. Roseburg Forest Prods.*,
    847 F.3d 678 (9th Cir. 2017) ................................................................................................23

*Rizo v. Yovino*,
    887 F.3d 453 (9th Cir. 2018) ................................................................................................22

*Rose v. Goldman, Sachs & Co.*,
    163 F. Supp. 2d 238 (S.D.N.Y. 2001)...................................................................................18

*Sams v. Yahoo! Inc.*,
    713 F.3d 1175 (9th Cir. 2013) ..............................................................................................20

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ..................................................................................26

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*School Dist. v. Mission Ins. Co.*,
    58 Or. App. 692, 700 (1983) ....................................................................23

*Sidney-Vinstein v. A.H. Robins Co.*,
    697 F.2d 880 (9th Cir. 1983) ...................................................................26

*Smith v. Bull Run School Dist.*,
    80 Or. App. 226 (1986) ............................................................................15

*Stanley v. Univ. of S. Cal.*,
    178 F.3d 1069 (9th Cir. 1999) .................................................................15

*Teamsters v. United States*,
    431 U.S. 324 (1977) ...........................................................................23, 24

*Teodoro v. Allstate Fire & Casualty Ins. Co.*,
    No. 217-cv-02135-APG-VCF, 2018 WL 1786818 (D. Nev. Apr. 13, 2018) ........................13

*Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*,
    323 F. Supp. 3d 501 (S.D.N.Y. 2018) ....................................................21

*Wood v. City of San Diego*,
    678 F.3d 1075 (9th Cir. 2012) .................................................................24

**STATUTES**

29 U.S.C.
    § 206 ........................................................................................... *passim*
    § 216(b) ...........................................................................................9

42 U.S.C.
    § 1981 ...............................................................................................23
    § 2000e ...................................................................................... *passim*

Or. Rev. Stat.
    § 652.220 ................................................................................... *passim*
    § 659A.030 ................................................................................. *passim*

**RULES**

Fed. R. Civ. Proc. 8 .......................................................................................7

Fed. R. Civ. Proc. 12(b)(6) ...........................................................................7

Fed. R. Civ. Proc. 12(f) ............................................................................7, 26

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

Fed. R. Civ. Proc. 23 ...........................................................................................7, 9, 13

**ARTICLES**

Easterbrook, *Discovery as Abuse*, 69 B.U.L.Rev. 635 (1989) .......................................................11

## LOCAL RULE 7.1 COMPLIANCE

In compliance with Local Rule 7-1(a), counsel for Defendant Nike, Inc. has conferred in good faith with plaintiffs' counsel regarding this Motion, and the matters contained herein, but the parties were unable to resolve their dispute.

## PARTIAL MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

Defendant Nike, Inc. ("Defendant" or "Nike") moves to dismiss plaintiffs' class and collective action claims from the First Amended Class and Collective Action Allegation Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6), or, in the alternative, to strike these claims pursuant to Federal Rule of Civil Procedure 12(f).

Nike moves to dismiss plaintiffs' class claims for violations of the Federal Equal Pay Act (First Cause of Action), the Oregon Equal Pay Act (Fourth Cause of Action), and intentional discrimination in violation of Title VII (Third Cause of Action) and the Oregon Equality Act (Sixth Cause of Action) on the ground that, under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), plaintiffs fail to plead sufficient factual matter to state any facially plausible class or collective action claims.  In the alternative, Nike moves to strike from the Complaint those class and collective action claims on the ground that plaintiffs' proposed class definition is so overbroad that they cannot possibly maintain a class or collective action on the facts alleged.

This Motion is supported by the attached Memorandum of Points and Authorities and exhibits thereto, and such further oral and documentary evidence as may be presented at or before the hearing on this Motion.

Dated:  December 10, 2018                    Respectfully submitted,


                                            /s/ Felicia A. Davis
                                            Daniel Prince, Cal. SB# 237112 (*pro hac vice*)
                                            danielprince@paulhastings.com
                                            Zach P. Hutton, Cal. SB#234737 (*pro hac vice*)
                                            zachhutton@paulhastings.com
                                            Felicia A. Davis, Cal. SB# 266523 (*pro hac vice*)
                                            feliciadavis@paulhastings.com
                                            PAUL HASTINGS LLP
                                            515 South Flower Street, 25th Floor
                                            Los Angeles, CA  90071
                                            Telephone:  (213) 683-6000
                                            Facsimile:  (213) 627-0705

                                            Amy Joseph Pedersen, OSB No. 853958
                                            amy.joseph.pedersen@stoel.com
                                            Kennon Scott, OSB No. 144280
                                            kennon.scott@stoel.com
                                            STOEL RIVES LLP
                                            760 SW Ninth Avenue, Suite 3000
                                            Portland, OR  97205
                                            Telephone:  (503) 294-9408
                                            Facsimile:  (503) 220-2480

                                            Attorneys for Defendant NIKE, INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION/SUMMARY OF ARGUMENT

Nike moves to dismiss plaintiffs' class and collective action claims[1] for alleged intentional discrimination in violation of Title VII and the Oregon Equality Act, and alleged violations of the Federal and Oregon Equal Pay Acts.  Plaintiffs have not alleged any factual predicate that makes these claims plausible, or warrants imposing upon Nike and the Court the considerable burden and expense of litigating their overbroad claims.  Accordingly, plaintiffs' claims should be dismissed.

Plaintiffs purport to bring class-wide claims alleging intentional sex discrimination and Equal Pay Act violations on behalf of almost every female employee at Nike's world headquarters, but they plead conclusory allegations and generalizations, rather than facts, to support the claims.[2]  The proposed class claims are extremely broad.  Plaintiffs challenge every conceivable employment practice short of hiring and firing:  job placements, job levels, starting salary, salary increases, bonuses, equity grants, ratings, and promotions.  Compl. ¶ 182.  For each claim, plaintiffs purport to sue on behalf of "[a]ll female current and former Nike employees at Nike Headquarters . . . in a salaried, corporate position that was or is a lower-level position than Vice-President," excluding only female employees in Nike's Retail Stores, its Finance and Human Resources departments, and Nike's lawyers.  Compl. ¶¶ 165-166 and 176-177.  The proposed class would span thousands of female employees in hundreds of disparate job

---

[1] Plaintiffs assert their Federal Equal Pay Act claim as a proposed "opt-in" collective action pursuant to 29 U.S.C. § 216(b), and assert their Title VII and state law discrimination claims as a proposed "opt-out" class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure. For the sake of simplicity, Nike refers to both sets of claims as "class" claims for purposes of this Motion.

[2] Nike does not move on the remaining "disparate impact" claims (Second and Fifth Causes of Action), although Nike denies the allegations contained in and relating to those claims.

categories, from Security, Communications, and Product Design to Logistics, Manufacturing, and Technology. It also would include female employees in almost every job level, from those in administrative support roles to senior directors. Each of those women have different educational backgrounds, qualifications, experience, skills, performance histories, job functions, levels of responsibility, and job duties. Plaintiffs fail to plead facts that suggest the unique positions they held or the wrongs they claim to have suffered are typical of every *other* woman at Nike's headquarters.

Allowing the proposed class claims to proceed would subject Nike to discovery encompassing nearly its entire female headquarters' workforce and their corresponding male comparators (which would be thousands of additional employees), along with tens of thousands of individualized personnel and pay decisions. Plaintiffs plead no factual predicate that makes it plausible that *all* class women at Nike's headquarters share anything in common (other than their gender), let alone that they suffered a common harm on a theory susceptible to common proof. That is precisely the type of pleading abuse that the U.S. Supreme Court rejected in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Separately, plaintiffs' claim for disparate treatment in violation of Title VII and the Oregon Equality Act requires proof that all putative class members experienced *intentional* discrimination – that Nike intentionally placed them in lower job levels, paid them less, rated them lower and promoted them less frequently *because of* their sex. Plaintiffs plead no factual predicate for that claim, other than facially gender-neutral policies that, as a matter of law, cannot form the basis of an intentional discrimination claim.

The Complaint fails to satisfy the pleading standards in *Twombly*/*Iqbal*, and allowing plaintiffs to proceed with their facially insufficient, unbounded claims would invite discovery

abuse from the outset.  Accordingly, the Court should dismiss plaintiffs' class-wide pay equity

and disparate treatment claims.  In the alternative, the Court should strike plaintiffs' class and

collective action allegations on the ground that the proposed class definition is so overbroad that

plaintiffs cannot plausibly maintain a class or collective action on the facts alleged.

## II.     THE COURT MAY DISPOSE OF CLASS ALLEGATIONS AT THE PLEADING STAGE, ESPECIALLY WHERE NECESSARY TO PREVENT DISCOVERY ABUSE.

The policy driving the Supreme Court's decisions in *Twombly/Iqbal* is simple:  Before

the defendant is forced to undertake the considerable burden and expense of defending against a

plaintiff's claims, particularly in large and ill-defined class actions where the potential for abuse

is greatest, the plaintiff must provide necessary factual predicates to support his or her

allegations.  As the Court explained:

> It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through "careful case management," given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side.  *See*, *e.g.*, Easterbrook, *Discovery as Abuse*, 69 B.U.L.Rev. 635, 638 (1989) ("Judges can do little about impositional discovery when parties control the legal claims to be presented and conduct the discovery themselves").  And it is self-evident that the problem of discovery abuse cannot be solved by "careful scrutiny of evidence at the summary judgment stage," much less "lucid instructions to juries"; the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings.  Probably, then, it is only by taking care to require allegations that reach the level suggesting [the factual predicate] that we can hope to avoid the potentially enormous expense of discovery . . . .

*Twombly*, 550 U.S. at 559 (citations omitted); *accord Associated Gen. Contractors of Cal.,*

*Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 528 n.17 (1983) ("Certainly in a case of

this magnitude, a district court must retain the power to insist upon some specificity in pleading

before allowing a potentially massive factual controversy to proceed."); *DM Research, Inc. v.*

*Coll. of. Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) (affirming motion to dismiss; "[T]he price of entry, even to discovery, is for the plaintiff to allege a *factual* predicate concrete enough to warrant further proceedings, which may be costly and burdensome.") (emphasis in original).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court," using its "judicial experience and common sense," "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678-79. The complaint must contain more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertion[s] devoid of further factual enhancement." *Id.* at 678 (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557). In short, the complaint must contain sufficient facts to "nudge[] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

To that end, *Iqbal* establishes a two-step inquiry to determine whether a complaint meets the requisite pleading standard. First, the court should "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Second, the court should consider whether any factual allegations that remain "plausibly give rise to an entitlement to relief." *Id*. If they do not, the court should dismiss the complaint for failure to state a claim. *See id*.

The need for careful scrutiny of the pleadings is especially acute when the plaintiff alleges overbroad class claims. In *Kennedy v. Unumprovident Corp*., 50 Fed. App'x 354, 355 (9th Cir. 2002), for example, the Ninth Circuit rejected the plaintiff's argument that the district court inappropriately dismissed class claims on a motion to dismiss, rather than allowing the case

to proceed to class certification.  The Ninth Circuit echoed the Supreme Court:  "[I]t is sometimes 'plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claims.'"  *Id.* (*citing Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).

*Iqbal*, *Twombly* and their progeny do not provide the only support for dismissing overly broad and impermissibly pled class actions early in a case.  In *Kennedy*, the Ninth Circuit also highlighted the district court's obligation under Federal Rule of Civil Procedure 23(c)(1) "to determine 'as soon as practicable' whether the proposed class satisfies Rule 23's requirements." *Kennedy*, 50 Fed. App'x at 355; *Picus v. Wal–Mart Stores, Inc.*, 256 F.R.D. 651, 655 (D. Nev. 2009) ("[A]s a matter of law, a class cannot be certified . . . it would be a waste of the parties' resources and judicial resources to conduct discovery on class certification. . . . Although it would be improper to require a plaintiff to establish she can maintain a class before she attempts to do so, it would be appropriate to dismiss the class allegations if the plaintiff does not allege facts sufficient to make out a class."); *Teodoro v. Allstate Fire & Casualty Ins. Co.*, No. 217-cv-02135-APG-VCF, 2018 WL 1786818, at *4-5 (D. Nev. Apr. 13, 2018) (granting defendant's motion to dismiss class claims with prejudice where the complaint made clear that plaintiff's putative class could not be certified as a matter of law because individual issues would predominate).

Here, plaintiffs' equal pay and disparate treatment causes of actions suffer from at least two fatal deficiencies:  plaintiffs' ill-defined class is far too broad to plausibly or practicably be represented by plaintiffs, and plaintiffs have alleged no factual predicate that demonstrates the putative class all suffered the same supposed harm.

III.   **PLAINTIFFS FAIL TO ALLEGE ADEQUATE FACTS TO SUPPORT THEIR CLASS-WIDE EQUAL PAY ACT CLAIMS.**

Plaintiffs' federal and state Equal Pay Act claims require them to plead and prove that they perform work "which requires equal skill, effort, and responsibility . . . under similar working conditions" as their male counterparts (under federal law, 29 U.S.C. § 206(d)(1)), or that their work is "of comparable character, the performance of which requires comparable skills" (under state law, ORS 652.220).[3]  If that threshold is met *and* plaintiffs establish the existence of a pay difference, no violation exists if the difference is "based in good faith on factors other than sex."  ORS 652.220.[4]

Plaintiffs' proposed class definition seeks to weave together *thousands* of women in *hundreds* of different job classifications and departments (and across various salary bands and levels), each with different duties, qualifications, and experience.  Plaintiffs have not identified which employees they seek to compare on a class-wide basis.  Nor have plaintiffs alleged any facts supporting an inference that *every* woman performs equal or comparable work to a male employee who is more highly compensated.

Moreover, even if plaintiffs somehow demonstrated that a wage difference exists for every female employee at Nike's world headquarters, Nike is entitled to show, for each person, that any difference is based upon legitimate factors other than sex – again requiring a fact-intensive assessment as to each individual's education, experience, skills, and performance.  The Complaint, however, contains no specific allegations regarding the duties, work, skills, pay,

---

[3] Amendments to ORS 652.220 enacted in 2017 do not become effective until January 1, 2019.

[4] Or, under federal law, "is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."  29 U.S.C. § 206(d)(1).

experience, or qualifications of any female employee other than the four named plaintiffs (and the sole opt-in plaintiff discussed in the Complaint).

> ### A. Plaintiffs Fail To Identify The Relevant Comparators For Each Group Of Allegedly Underpaid Women, Leaving Nike To Guess Which Men and Women They Seek to Compare.

To establish a *prima facie* case under the Federal Equal Pay Act, plaintiffs must establish (1) the employer paid different wages to an employee of the opposite sex, (2) for equal work on jobs *requiring equal skill, effort, and responsibility*, and which (3) are *performed under similar working conditions*. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). Similarly, the Oregon Equal Pay Act requires plaintiffs to show that they "perform[ed] *work comparable to that of male [comparator]* and that they were paid less than male [comparator]." *Smith v. Bull Run School Dist.*, 80 Or. App. 226, 229 (1986) (emphasis added). Thus, identification of the comparator pool is a foundational component of any Equal Pay Act case. Plaintiffs' Complaint, however, fails to identify which positions or employees they seek to compare.

> ### 1. Plaintiffs have not identified the appropriate comparator pool for their putative class.

On an Equal Pay Act claim, plaintiffs must establish comparator groups for the putative class. To determine whether a male colleague is a comparator to any class member, a court must first determine whether their jobs share a "'common core of tasks,'" and then analyze "whether any additional tasks required for one job but not the other make the two jobs substantially different." *Allender v. Univ. of Portland*, 689 F. Supp. 2d 1279 (2010) (*citing Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1074 (9th Cir. 1999)); *Bureau of Labor & Industries v. City of Roseburg*, 75 Or. App. 306, 311 (1985) ("[The proper inquiry] focus[es] not on the qualifications, background and experience of the persons who [hold] the comparison jobs, but on a comparison

of the jobs themselves.").  Plaintiffs cannot rely on job titles alone to identify substantially

similar work.  *E.E.O.C. v. Md. Ins. Admin.*, 879 F.3d 114, 121 (4th Cir. 2018) ("sharing a job

title and a job description is not dispositive of this issue").  Rather, the actual job responsibilities

and skills determine a proper comparator.  *See Port Auth. of New York & New Jersey*, 768 F.3d

at 249 (2d Cir. 2014) (affirming dismissal of Equal Pay Act claims brought on behalf of female

attorneys; "the EEOC's failure to allege any facts concerning the attorneys' actual job duties

deprives the Court of any basis from which to draw a reasonable inference that the attorneys

performed 'equal work,' ***the touchstone of an EPA claim***.") (emphasis added).

The Complaint provides no answer to basic questions about which male employees the

plaintiffs seek to compare with women in the putative class.  Which groups of men do plaintiffs

contend performed equal or comparable work to the different groupings of women in the putative

class?  Do they allege that women should be compared to men in the same job title and level?  Or

do they allege that women should be compared to men in the same job family but at higher or

lower job levels?  Or do they allege that women should be compared to men in completely

separate jobs altogether?  The Complaint never specifies, yet Nike cannot even begin to defend

against the claims without knowing the alleged comparator groups.

*Iqbal* and *Twombly* teach that Nike need not guess about plaintiffs' theories; plaintiffs

must allege specific facts from which Nike can clearly determine plaintiffs' claims.  *See*

*E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 249 (2d Cir. 2014) (affirming

dismissal of Equal Pay Act claims brought on behalf of female attorneys based on bare assertion

that all female and male attorneys were proper comparators; plaintiffs must plead "sufficient

factual matter," in order "to provide fair notice [to the defendant] of the bases for [the plaintiff's]

claims").  Nor may plaintiffs use the discovery process as a fishing expedition to uncover the

theories on which they ultimately choose to proceed.  *See Peak v. Topeka Hous. Auth.*, 78 F.R.D. 78, 84 (D. Kan. 1978) (granting motion to strike class allegations of discrimination; "We agree with defendant's contention that a complaint such as that before us should not be used as a mere 'port from which to embark on a large scale fishing expedition.' The Court knows from long experience that the discovery requests propounded in employment discrimination cases filed by plaintiff's counsel are both indiscriminate and burdensome; the lack of any specificity in the complaints in these cases is transformed into an excuse to demand documents and explanations concerning all phases of a defendant's employment practices, much of which is later shown to be completely irrelevant to any class plaintiff could have hoped to represent.").

> **2.      Plaintiffs' disparate allegations regarding their individual claims highlight the absence of any common factual predicate for a class action.**

The named plaintiffs' inconsistent theories on their own Equal Pay Act claims only highlight the untenable nature of their class allegations.  Not only do plaintiffs fail to identify any common comparator pool, but every plaintiff points to a different smattering of male employees as appropriate comparators to their individual situations.  For example, plaintiff Cahill claims that she was paid less "than a male Director on her Team who was doing substantially similar work as she was doing."  Compl. ¶ 134.  Cahill's alleged comparator appears to be a male employee working in her same job level (Director), although the complaint does not say whether they shared a job title.  Plaintiffs Johnston, Elizabeth, and Hender, on the other hand, allege that they – ***unlike*** Cahill – should ***not*** be compared to men at the same job level.  Johnston claims that she should be compared to men in ***higher*** level jobs (U-Band vs. L-Band) and in two different job titles she did not hold – Senior BSA and Lead BSA.  Compl. ¶ 143.  Similarly, plaintiffs Elizabeth and Hender each argue that they were performing the work of – and therefore should be compared with – men in ***higher*** job levels.  Compl. ¶¶ 147 ("Nike should have made

Ms. Elizabeth a Designer II because she did the work of a Designer II"); 151 ("Although Ms. Hender's title was Manufacturing/Process Engineer II, her duties and responsibilities were substantially the same as a male Senior Process Engineer I . . .").

The few opt-in notices filed to date are even more individualized. Opt-in plaintiff Cheng appears to allege her comparator was a male in the ***same job code and level***. *See* Cheng's Consent to Become Party Plaintiff in Collective Action ¶ 3 (Dkt. 3) (comparing herself to "the male Nike employee who replaced me as the employee in charge of digital photography"). Opt-in plaintiff Grieve, on the other hand, alleges that she should be compared both to men in the same job level and in job levels ***lower*** than hers. *See* Grieve's Consent to Become Party Plaintiff in Collective Action ¶ 4 (Dkt. 35) ("Nike has refused to pay me what it paid my male colleague who had the exact same job or even a job with a lower title.").

The final three opt-in plaintiffs are the least informative, failing to even adequately plead comparators for *themselves*. Opt-in plaintiff Phillips does not identify a single male allegedly paid more than she, noting only, "During my time at Nike, on information and belief, I was paid less than male Nike employees for substantially equal work." *See* Phillips' Consent to Become Party Plaintiff in Collective Action ¶ 3 (Dkt. 2).[5] Opt-in plaintiff Azavedo fails to allege any comparators, or even that she was paid less than any male for substantially similar work. *See generally* Azavedo's Consent to Become Party Plaintiff in Collective Action (Dkt. 37). And opt-in plaintiff Olson admits that ***no*** men performed substantially similar work throughout her entire Nike employment. Compl. ¶ 157 ("Before Ms. Olson's Nike employment ended, there were no Senior Managers, other Managers, or Directors in World Headquarters Security.").

---

[5] *See also Rose v. Goldman, Sachs & Co.*, 163 F. Supp. 2d 238, 241-243 (S.D.N.Y. 2001) (Equal Pay Act claim dismissed because plaintiff's allegation that "*upon information and belief*" she received fewer raises and bonuses than comparators was "too conclusory to state a claim under the Equal Pay Act . . .") (emphasis in original).

Plaintiffs claim every female class member at Nike's headquarters is underpaid compared to men – without exception – but do not plead any facts about which positions or employees they seek to compare. To proceed as a class or collective action, plaintiffs must allege questions of law or fact susceptible to common proof. But here, each individual plaintiff alleges a different comparator group, or no comparator group at all. A putative pay equity class action cannot proceed when the plaintiffs' own Complaint demonstrates that this fundamental question calls for an individualized analysis. Plaintiffs have not met even minimal pleading obligations to support their class-wide pay equity claims.

**B.    Nike Is Entitled To Assert Individual Defenses With Respect To Each Putative Class Member And Each Alleged Comparator.**

Even if plaintiffs can identify appropriate comparators and establish a wage difference for each class member, Nike will be entitled to assert affirmative defenses to explain any wage differentials based on other legitimate factors with respect to each putative plaintiff. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974) ("The Act also establishes four exceptions – three specific and one a general catchall provision – where different payment to employees of opposite sexes 'is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.'"); ORS 652.220(2)(a)-(b) (no violation exists if "[p]ayment is made pursuant to a seniority or merit system which does not discriminate on the basis of sex" or "[a] differential in wages between employees is based in good faith on factors other than sex"). As such, wage disparities between any two individuals could be explained by many different causes, including performance, education, work experience, skills, resources, and institutional knowledge.

For example, Male1 may be paid more than Female1 because Male1 has an advanced degree.  Or Male2 may be paid more than Female2 because he has 10 additional years of relevant experience.  Importantly, Nike is entitled to this fact-based defense with respect to *every single putative class member*.  The individualized nature of the claims and dearth of factual allegations demonstrate that plaintiffs have not alleged plausible class claims, as *Twombly/Iqbal* require. *See Kennedy*, 50 Fed. App'x at 355 (dismissal appropriate where it is "plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claims.") (citations and internal quotation marks omitted); *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) ("[T]he assertion of an affirmative defense may be considered properly on a motion to dismiss where the 'allegations in the complaint suffice to establish' the defense." (*quoting Jones v. Bock*, 549 U.S. 199, 215 (2007)).

### C.  Plaintiffs Fail To Identify How They Can Represent Women In Different Job Titles, Levels, Families And Departments.

Finally, plaintiffs purport to represent nearly every salaried woman at Nike's world headquarters, spanning thousands of employees (with varying educational backgrounds, qualifications, performance histories, and job functions), across numerous departments and hundreds of job categories, covering various salary bands and salary levels.  Yet, plaintiffs fail to plead facts showing any overlap in their job duties, experience, or qualifications with those in countless other positions in the putative class, which cover business areas as varied as Design, Sports Marketing, Legal, Product Creation, Merchandising, and Communications.  Despite the recent addition of two new named plaintiffs, the Complaint reveals that plaintiffs' combined experience stretches into a mere handful of jobs allegedly covered by this lawsuit.  During the class period, plaintiff Cahill only held a Director position in North America Marketing, Digital. Compl. ¶ 133.  Plaintiff Johnston also worked in just one position during the statutory period –

Intermediate Business Systems Analyst – without describing the business area or department for the role.  Compl. ¶ 138.  Similarly, plaintiff Elizabeth has only held one position in an unidentified department while a full-time Nike employee:  Apparel Designer I.  Compl. ¶ 146.  Lastly, plaintiff Hender, with the most diverse experience of any plaintiff, has held a total of two positions – Manufacturing/Process Engineer II and Senior Process Engineer I.  Compl. ¶¶ 151, 154.  Collectively, the four plaintiffs have held just *five* of the *hundreds* of job titles encompassed within the proposed class definition.  Plaintiffs have not pled facts that plausibly suggest that other women with whom they shared job titles had similar experiences, let alone that their experiences were similar to the thousands of women in the hundreds of other job titles that plaintiffs never held and know nothing about.

Plaintiffs' conclusory recitation that Nike has common "policies" impacting pay does not remedy this issue.  *See Port Auth. of New York & New Jersey*, 768 F.3d at 258 (dismissing Equal Pay Act claims where "the EEOC's more particularized allegations – that attorneys had the same job code; were evaluated according to the same broad criteria; were paid according to the same 'maturity curve'; and were not limited to distinct legal divisions – at most demonstrate that Port Authority attorneys were subject to the same human resources policies").  Whether or not such policies exist, Equal Pay Act claims require facts demonstrating that women in the class perform work comparable or equal to a comparator *and* that a pay differential exists.  *See Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 519–20 (S.D.N.Y. 2018) ("Given the complete absence of any factual allegations whatsoever relating to actual job content or working conditions, the Court dismisses Plaintiffs' EPA claims as a matter of law."); *Noel-Batiste v. Virginia State Univ.*, No. 3:12CV00826-HEH, 2013 WL 499342, at *6 (E.D. Va. Feb. 7, 2013) (Equal Pay Act claim dismissed where "[p]laintiff [] made no reference to the skills,

effort, and responsibilities required of her as an 'Associate Professor' or to those of the male professors who she alleges receive a greater salary").  Plaintiffs allege that Nike "sets starting pay and other compensation-related terms based, in part, on prior compensation," and that this affects pay levels, bonuses, performance ratings, promotional opportunities, salary increases, and equity distributions.  Compl. ¶¶ 6, 102, 103, 114 and 115.  This argument, however, does not salvage their class-wide claims Equal Pay Act claims.  Even assuming, *arguendo*, that Nike "attribute[ed] significant weight to prior compensation history" (Compl. ¶ 102), that does not make it plausible that *an entire class of women* were underpaid compared to male employees performing comparable work.

Plaintiffs' reference to *Rizo v. Yovino*, 887 F.3d 453 (9th Cir. 2018), does not ameliorate the Complaint's lack of factual specificity.  In *Rizo*, it was undisputed that the plaintiff established a *prima facie* case under the Equal Pay Act – that she was paid less than men for substantially equal work under similar working conditions.  *Id*. at 460.  That could not be further from the truth here.  Moreover, *Rizo*'s holding applied only to the defendant's affirmative defense – is an employee's prior salary a "factor other than sex" sufficient to explain a wage difference?  The *Rizo* court did not consider, let alone hold, that a conclusory allegation regarding use of starting pay can support class claims bereft of facts.  Nor did it hold that consideration of prior salary necessarily is forbidden.  *See id.* at 461 ("We do not decide, for example, whether or under what circumstances, past salary may play a role in the course of an individualized salary negotiation.").

For all of these reasons, plaintiffs have not met their burden under *Twombly/Iqbal* to plead facts that make their class-wide Equal Pay Act claims plausible.

**IV.    PLAINTIFFS FAIL TO ALLEGE ADEQUATE FACTS TO SUPPORT THEIR CLASS-WIDE INTENTIONAL DISCRIMINATION CLAIMS.**

As pled, plaintiffs' intentional discrimination theory is the definition of a facially unmanageable class claim.[6]  To establish a disparate treatment claim under Title VII or ORS 659A.030, a showing of "discriminatory motive is critical." *Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977) (analyzing Title VII discrimination claims), *cited with approval in School Dist. v. Mission Ins. Co.*, 58 Or. App. 692, 700 (1983) (analyzing state discrimination claims).[7]  Yet plaintiffs fail to allege any class-wide common policy or practice of intentional discrimination.  Instead, plaintiffs' intentional discrimination theory rests on (1) facially neutral policies alleged to have a discriminatory effect, and (2) the named plaintiffs' own unique experiences, or anecdotal accounts garnered from others.[8]

Plaintiffs base both their disparate impact and disparate treatment claims on the same alleged policies and practices:  "starting salaries, Band Level, annual ratings, annual salary increases, PSP Bonuses, equity distributions, promotions, job assignments, and a hostile work environment."  Compl. ¶¶ 196, 207, 220, and 226.  This is inherently inconsistent:  disparate

---

[6] It is unclear whether plaintiffs intend to plead a class-wide hostile work environment claim.  Hostile work environment does not appear as one of the six causes of action enumerated by plaintiffs.  Instead it is pled as one of the bases for plaintiffs' Title VII and ORS 659A.030 disparate treatment and disparate impact claims.  Compl. ¶¶ 196, 207, 220, and 226.  However, to the extent that plaintiffs purport to assert this claim, it has no factual support beyond individual, anecdotal allegations.  A class-wide harassment claim is equally implausible based on the allegations in the Complaint because harassment also requires plaintiffs to establish that each individual class members experienced actionable harassment "because of sex."  *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . sex.'") (alteration in original).

[7] The Ninth Circuit "has held that the substantive analysis for Title VII and § 1981 claims also applies to discrimination claims under O.R.S. §§ 659A.030(1)(a), (b)." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 695 (9th Cir. 2017).

[8] Indeed, many of plaintiffs' factual allegations regarding disparate treatment come from third-party allegations contained in news stories, of which the plaintiffs have no first-hand knowledge.

impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity;" for disparate treatment claims, an employer must intentionally "treat[] some people less favorably than others *because of* their race, color, religion, sex, or national origin." *Teamsters*, 431 U.S. 324, 335 n.15 (1977) (emphasis added).

Gender-neutral policies cannot ground a disparate treatment cause of action.  Any other conclusion would obliterate the distinction between disparate treatment and disparate impact. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 55 (2003) (vacating and remanding appellate decision that conflated disparate impact with disparate treatment analysis where neutral policy established employer's nondiscriminatory reason for its decision; "If petitioner did indeed apply a neutral, generally applicable no-rehire policy in rejecting respondent's application, petitioner's decision not to rehire respondent can, in no way, be said to have been motivated by respondent's disability.").  For instance, plaintiffs allege that Nike considered compensation history when "setting starting salary and Band Level," which, in turn, led to "smaller PSP Bonuses in addition to having lower salaries and less access to equity distribution," as well as lower annual ratings and promotional opportunities.  Compl. ¶ 102, 103, 114 and 115.  In plaintiffs' own words, a single neutral policy (considering prior compensation) is the alleged cause of "Nike's disproportionate placement of women in lower Band Levels."  Compl. ¶ 103.  While those allegations may support a disparate impact theory, they do not state a disparate treatment claim.

Plaintiffs' unsupported allegation that Nike knew its starting pay practices had a disparate impact on women also does not convert their disparate impact claim into disparate treatment. *Wood v. City of San Diego*, 678 F.3d 1075, 1081-82 (9th Cir. 2012) (dismissing disparate treatment claim premised on neutral policy; "It is insufficient for a plaintiff alleging

discrimination under the disparate treatment theory to show the employer was merely aware of the adverse consequences the policy would have on a protected group."; "Where, as here, a plaintiff is challenging a facially neutral policy, there must be a specific allegation of discriminatory intent.") (citations and internal quotation marks omitted).

Plaintiffs' remaining allegations of disparate treatment attack alleged biases of plaintiffs' individual managers and supervisors – individualized questions not susceptible to class treatment.  For instance, Johnston claims that two male colleagues hired about the same time as her were placed on a more highly paid team and promoted within one year, while she was promoted after two years.  Compl. ¶ 140.  Hender claims that she was not given a password she needed to do her job (and apparently claims that, because a male engineer allegedly refused to provide it, that proves intentional sex discrimination).  Compl. ¶ 90.  These alleged personal experiences cannot be extrapolated to a class of thousands.  *Bennett v. Nucor Corp.*, 656 F.3d 802, 816 (8th Cir. 2011) (class certification denied where plaintiffs' evidence of discrimination arose chiefly among workers in only one department of large plant, "so their observations do little to advance a claim of commonality across the entire plant").  Indeed, each of plaintiffs' specific allegations demonstrates the individualized nature of their claims.  No class-wide disparate treatment claims can be maintained on the facts pled in plaintiffs' Complaint.

## V.    ALLOWING PLAINTIFFS' DEFICIENT CLAIMS TO PROCEED WILL INEVITABLY LEAD TO DISCOVERY ABUSE.

The *Twombly/Iqbal* pleading standard exists for good reason.  As the court explained in *In re Text Messaging Antitrust Litig.*, 630 F.3d 622 (7th Cir. 2010) (Posner, J.):

> *Twombly* . . . is designed to spare defendants the expense of responding to bulky, burdensome discovery unless the complaint provides enough information to enable an inference that the suit has sufficient merit to warrant putting the defendant to the burden of responding to at least a limited discovery demand.  When a district court . . . allows a complex case of extremely dubious merit

> to proceed, it bids fair to immerse the parties in the discovery swamp . . . and by doing so create irrevocable as well as unjustifiable harm to the defendant that only an immediate appeal can avert.

*Id.* at 625-26; *see also Myung Ga, Inc. v. Myung Ga of MD, Inc*., No. DKC 10-3464, 2011 WL 3476828, at *3 (D. Md. Aug. 8, 2011) ("Every plaintiff, no doubt, would prefer to have access to discovery before facing the test of a motion to dismiss.  But here again, Plaintiff ignores one of the central purposes of the plausibility standard:  restraining unnecessary discovery.").

Allowing plaintiffs to extrapolate their individual grievances on behalf of such a remarkably disparate class, consisting of individuals employed in countless job codes, invites discovery abuse.  Nike should not be required to endure the thicket of discovery and other proceedings that would necessarily result from the imprecise claims and characterization of the "class" or "collective action" in this case.

## VI.    IN THE ALTERNATIVE, THE COURT SHOULD STRIKE PLAINTIFFS' CLASS AND REPRESENTATIVE ALLEGATIONS.

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ."  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

Like individual allegations, class and representative allegations "must at least be plausible;" to the extent that they are not, they properly are subject to a motion to strike. *Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1100 (N.D. Cal. 2016); *see Ott v. Mortg. Investors Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1062 (D. Or. 2014) (motion to strike appropriate "when the class definition is obviously defective in some way") (citations and internal quotations omitted); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009)

(striking class claims; "Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery."); *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1045-46 (N.D. Cal. 2014) (granting motion to strike class definition in product defect action on ground that it included class members who did not experience product defect); *Ramirez v. Baxter Credit Union*, No. 16-cv-03765-SI, 2017 WL 1064991, at *7-8 (N.D. Cal. Mar. 21, 2017) (granting motion to strike class allegations where proposed class period extended beyond limitations period).

Here, even if the Court were to find that plaintiffs have alleged sufficient factual material to state one or more *individual* claims, the Court still should dismiss plaintiffs' class and representative claims or strike plaintiffs' class and representative allegations in their entirety. Plaintiffs cannot maintain a class or representative action on behalf of such a broad and disparate class and representative group on the scant facts pled in the Complaint.

## VII.    CONCLUSION

Plaintiffs bring this putative class action on behalf of a disparate class consisting of virtually every woman at Nike's world headquarters – regardless of department, position, supervisor, pay level, qualifications or anything else.  They have pled no factual predicate that warrants forcing Nike to litigate and endure discovery over every personnel and pay decision related to this amorphous group.  Accordingly, the Court should dismiss plaintiffs' class claims for violations of the Federal Equal Pay Act (First Cause of Action), the Oregon Equal Pay Act (Fourth Cause of Action), and intentional discrimination in violation of Title VII (Third Cause of

Action) and the Oregon Equality Act (Sixth Cause of Action).  In the alternative, the Court

should strike the class and collective action allegations pertaining to these claims.


Dated:  December 10, 2018                    Respectfully submitted,


                                             /s/ Felicia A. Davis
                                             Daniel Prince, Cal. SB# 237112 (*pro hac vice*)
                                             danielprince@paulhastings.com
                                             Zach P. Hutton, Cal. SB#234737 (*pro hac vice*)
                                             zachhutton@paulhastings.com
                                             Felicia A. Davis, Cal. SB# 266523 (*pro hac vice*)
                                             feliciadavis@paulhastings.com
                                             PAUL HASTINGS LLP
                                             515 South Flower Street, 25th Floor
                                             Los Angeles, CA  90071-2228
                                             Telephone:  (213) 683-6000
                                             Facsimile:  (213) 627-0705

                                             Amy Joseph Pedersen, OSB No. 853958
                                             amy.joseph.pedersen@stoel.com
                                             Kennon Scott, OSB No. 144280
                                             kennon.scott@stoel.com
                                             STOEL RIVES LLP
                                             760 SW Ninth Avenue, Suite 3000
                                             Portland, OR  97205
                                             Telephone:  (503) 294-9408
                                             Facsimile:  (503) 220-2480

                                             Attorneys for Defendant NIKE, INC.