UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KELLY CAHILL, SARAH JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated, | 3:18-cv-1477-JR<br><br>FINDINGS & RECOMMENDATION |
| Plaintiffs, | |
| v. | |
| NIKE, INC., an Oregon Corporation, | |
| Defendant. | |

RUSSO, Magistrate Judge:

Named plaintiffs Kelly Cahill, Sara Johnston, Lindsay Elizabeth, and Heather Hender bring this putative class and collective action alleging that defendant Nike systematically discriminates against them and other similarly situated women at Nike headquarters regarding salary and promotions. Defendant moves to dismiss plaintiffs' class and collective claims except for the claims alleging disparate impact. Because it is not plain from the face of the pleadings that the proposed class cannot satisfy the requirements of Fed. R. Civ. P. 23(a), or the requirements for a collective

Page 1 - FINDINGS & RECOMMENDATION

action under 29 U.S.C.A. § 216(b), the motion should be denied.

## ALLEGATIONS

Named plaintiffs bring this action on behalf of the following collective/class members:

> All female current and former Nike employees at Nike Headquarters in Oregon, who were employed by Nike at any time from three years prior to opting-in through the resolution of this action, in a salaried, corporate position that was or is a lower-level position than Vice-President.

First Amended Complaint (doc. 42) at ¶ 165. Plaintiffs exclude Nike retail store employees, lawyers within Nike's legal department, and employees in Nike's finance and human resources departments. Id. at ¶ 166.

Plaintiffs allege defendant has engaged in systemic sex discrimination against the collective/class members by paying them less than male employees with substantially equal job duties requiring substantially similar skill, effort, and responsibility performed under similar working conditions. Id. at ¶ 167. Plaintiffs further allege defendant has contributed to, and perpetuated sex-based pay disparities through common policies, patterns, or practices, including but not limited to those relating to starting salary and "band level," annual ratings, promotions, performance management policies or practices, centralized decision-making, and a work environment hostile to women. Id. at ¶ 168.

Plaintiffs assert defendant pays lower salaries and promotes women with less frequency than defendant's male employees. Plaintiffs allege those disparities occur because a small group of primarily male decision-makers implement the following policies, patterns, or practices which have an adverse impact on and otherwise discriminate against Class/Collective Members based on their sex:

> First, Nike sets starting pay and other compensation-related terms based, in part, on prior compensation. Around May 2018, Nike stated that it will "remove bias

from critical moments of the hiring process by . . . eliminating the collection of candidate salary history . . . ." The collection of prior compensation history causes women to receive lower starting salaries and other less favorable compensation-related terms.

Second, as part of its annual performance evaluation process, Nike rates each of its corporate employees. The ratings are assigned according to a forced ranking system. Nike utilizes a curve that limits the number of employees at Nike headquarters who can receive ratings in the top two levels. This system causes Class/Collective Members to receive lower ratings than their male colleagues. Lower ratings cause women to receive less compensation, including smaller annual salary increases, lower annual bonuses, and smaller equity distributions. Ratings also affect promotions. Lower ratings preclude promotions whereas higher ratings can lead to promotions.

Third, Nike's budgeting system for finalizing annual salary increases and annual bonuses adversely impacts and otherwise discriminates against women. Each year, Nike creates a set pool of money for each of its organizations that is then used to provide annual salary increases and bonuses. A disproportionately low amount of these budgets is distributed towards women's annual salary increases and bonuses.

Fourth, Nike's Organizational Talent Planning system identifies a disproportionately low number of women for promotional opportunities.

Fifth, Nike has a pattern or practice of channeling women into positions and job assignments that Nike views as less valuable and that are less likely to lead to promotions or increased compensation.

Nike has neither validated nor established the job relatedness of its policies or practices for its systems that determine starting pay, ratings, pay raises, bonuses, equity distributions, and promotions.

Nike has intentionally and willfully discriminated against Class/Collective Members with respect to pay, promotions, and conditions of employment. Two of Nike's most-senior executives – Trevor Edwards (Nike Brand President and the second most senior executive after the CEO from July 2013 to August 2018) and David Ayre (Vice-President in charge of HR from 2007 through July 2017) – caused and reinforced a workplace that was, and continues to be, hostile towards women and that devalues women. The above-described policies or practices reflect Nike's discriminatory intent. In addition, since before the class and collective action periods, Nike has been aware that Class/Collective Members are paid and promoted less than male employees at Nike headquarters. Nike has known that the above-described policies or practices caused women to receive less pay and fewer promotions. Nike has likewise long known that Nike headquarters' workplace is hostile towards and devalues women. For years, women have reported hostility, sexual harassment, and

inequality in pay and promotions to Nike's Employee Relations department, which is the department within Nike Human Resources that is primarily tasked with addressing workplace complaints, and to Nike's Human Resources department ("HR"). Instead of addressing these complaints, HR has reinforced and exacerbated the hostile work environment. Regardless of the evidence, HR has regularly found such complaints unsubstantiated, avoided taking any meaningful corrective or preventive actions, and otherwise failed to act to end either the inequality in pay and promotions or the hostility towards women in the workplace.

Id. at ¶¶ 4, 5-12 (footnotes and parentheticals omitted).

The named plaintiffs are:

- Heather Hender had nearly 20 years of engineering experience and a B.S. in Manufacturing Engineering when she started working at Nike in April 2015. She was hired initially as a process engineer II until September 2018 when she was promoted to senior process engineer. Hender filed a sex discrimination charge with the EEOC on November 9, 2018, alleging harm due to defendant's alleged pattern and practice of discrimination with respect to pay and promotions, and received a right to sue notice on November 15, 2018.

- Sara Johnston had four years of experience in human resources and analytics along with an M.B.A. when she started working at Nike as part-time employee in June 2008 in the employee services department. Johnston began working full-time in February 2010 when she was hired as a senior account service representative. In August 2012, Johnston became a junior business systems analyst and then an intermediate business system analyst in 2014. In November 2017, Johnston resigned asserting she had fewer promotions than her male counterparts and due to a hostile work environment that defendant refused to cure.

- Kelly Cahill had nearly eight years of work experience in marketing, business

Page 4 - FINDINGS & RECOMMENDATION

> development, and advertising, and a B.S. in Sports Marketing when Nike hired her in November 2012 as an independent contractor in a senior producer position. Nike then hired Cahill as a full-time director in October 2013. On July 26, 2017, Cahill resigned asserting Nike refused to address her complaints of a hostile work environment and discriminatory promotional practices.
>
> - Lindsay Elizabeth had nearly four years of experience in product design and a B.F.A. in apparel design when Nike hired her as an independent contractor in March 2015 in a design position. In January 2017, Nike hired Elizabeth as a full-time apparel designer. On August 23, 2018, Elizabeth filed a sex discrimination charge against Nike with the EEOC alleging harm due to defendant's alleged pattern and practice of discrimination with respect to pay and promotions. Elizabeth received a right to sue notice on September 28, 2018. Elizabeth left Nike's employment in October 2018.

Id. at ¶¶ 13-40.

Plaintiffs allege defendant has a disproportionately low number of women in higher level positions. Specifically, plaintiffs allege 71% of Nike's vice presidents are men, 62% of its directors and senior directors are men with significantly more men making up senior directors. Also, Nike's "band level" ranks and directly affects employees' salaries and bonuses. Plaintiffs assert that as the band level increases, the percentage of women within that band level decreases. Id. at ¶¶ 53-56.

Plaintiffs allege that despite numerous and long standing complaints about male supervisors subjecting women to a hostile work environment and sexual harassment, defendant did not conduct sexual harassment training for its headquarter employees until March 2018. Id. at ¶¶ 64-65.

Plaintiffs relate their personal experiences with sexual harassment and hostile working conditions as well as their formal complaints, and assert the male perpetrators were promoted while they suffered retaliation . Id. at ¶¶ 72-90.

Plaintiffs allege that defendant acknowledged in May 2018 that it has a policy or practice of setting employees' starting pay and band levels based on past compensation which disproportionately places women in lower pay and band levels. Id. at ¶¶ 97-103. Plaintiffs further allege employee ratings are decided by a majority of male managers based on criteria that are not job-related causing women to receive smaller salaries, bonuses, and fewer promotions. Id. at ¶¶104-117.

Plaintiffs assert defendant has a pattern or practice of channeling women into positions that are less likely to lead to promotions by, for example, providing smaller budgets to teams with higher percentages of women. Id. at ¶¶ 118-124. Plaintiffs allege defendant acknowledges it has failed to implement changes in hiring and promotion decisions to eliminate discriminatory impact on women and that it needs to change its hiring, compensation, and promotion systems. Id. at ¶¶ 126, 129.

Plaintiff Cahill alleges when she left defendant she was replaced with a male who received a higher title and band level resulting in a higher salary and bonuses than she received despite having substantially the same job responsibilities. Id. at ¶¶132-36.

Plaintiff Johnston alleges that two months after she was hired, defendant hired a male employee to perform substantially the same work in the same conditions, at a higher rate of pay despite the fact that Johnston had to train him and he had a lower level of education and experience. Id. at ¶ 137. Johnston further alleges she received fewer and slower promotional opportunities than her less qualified or equally qualified male counterparts. Id. at ¶ 140-43. Johnston asserts that when she left, defendant hired two men into her position at higher pay. Id. at ¶ 144.

Plaintiffs Elizabeth and Hender also allege they were paid and promoted less than their similarly situated male counterparts. Id. at ¶¶145-155.

Plaintiffs allege six claims for relief: (1) violation of the federal Equal Pay Act , 29 U.S.C. § 206(d); (2) violation of the Civil Rights Act via disparate impact , 42 U.S.C. §§ 2000e *et seq*; (3) violation of the Civil Rights Act via disparate treatment, 42 U.S.C. §§ 2000e *et seq;* (4) violation of the Oregon Equal Pay Act, Or. Rev. Stat. § 652.220; (5) violation of the Oregon Equality Act via disparate impact, Or. Rev. Stat. § 659A.030; and (6) violation of the Oregon Equality Act via intentional discrimination, Or. Rev. Stat. § 659A.030.  Defendant moves to dismiss or alternatively strike the class and collective claims in the first, third, fourth, and sixth causes of action.

STANDARDS

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Although this court accepts as true all the facts alleged in the complaint, it need not credit legal conclusions: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Determining whether the complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

> Class allegations may be stricken at the pleading stage. Kamm v. Cal. City Dev. Co., 509 F.2d 205, 212 (9th Cir. 1975). However, motions to strike class allegations are generally disfavored because "a motion for class certification is a more appropriate vehicle" for testing the validity of class claims. Thorpe v. Abbott Lab., Inc., 534 F.Supp.2d 1120, 1125 (N.D.Cal. 2008). Such motions are granted only where "the complaint demonstrates that a class action cannot be maintained." Tietsworth v.

> Sears, Roebuck & Co., 720 F.Supp.2d 1123, 1146 (N.D.Cal. 2010). The "'granting of motions to strike class allegations before discovery and in advance of a motion for class certification is rare'" and has happened only in those limited circumstances when "the class definition is obviously defective in some way." Perkins v. LinkedIn Corp., 53 F.Supp.3d 1190, 1221, No. 13–CV–04304–LHK, 2014 WL 2751053, at *20 (N.D.Cal. June 12, 2014), quoting Lyons v. Bank of Am., NA, No. C 11–1232 CW, 2011 WL 6303390, at *7 (N.D.Cal. Dec. 16, 2011).

Ott v. Mortg. Inv'rs Corp. of Ohio, 65 F.Supp.3d 1046, 1062 (D. Or. 2014).

> [T]he granting of motions to dismiss class allegations before discovery has commenced is rare.... "[D]ismissal of class allegations at the pleading stage should be done rarely and that the better course is to deny such a motion because 'the shape and form of a class action evolves only through the process of discovery.'"

In re Wal-Mart Stores, Inc. Wage & Hour Litig., 505 F.Supp.2d 609, 615 (N.D. Cal. 2007).

Nonetheless, it is sometimes "plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claims." Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 160 (1982). In addition, Rule 23(c)(1) directs district courts to determine "as soon as practicable" whether the proposed class satisfies Rule 23's requirements. Kennedy v. Unumprovident Corp., 50 F. App'x 354, 355 (9th Cir. 2002). Absent a conspicuous pleading defect, dismissal of class allegations before discovery is not practical.

## DISCUSSION

Title VII and the Oregon Equality Act prohibit employment discrimination on the basis of sex. 42 U.S.C. § 2000e–2(a); Or. Rev. Stat. § 659A.030(1).[1] To prove a discrimination claim based on disparate treatment, a plaintiff must show:

> that the employer intentionally discriminated against her on the basis of a protected characteristic. Such discriminatory animus may be supported with two types of proof.

---

[1] Oregon's employment discrimination statute was modeled after Title VII and is analyzed in the same way. Dawson v. Entek Int'l, 630 F.3d 928, 934 (9th Cir. 2011).

> The first type, direct evidence, is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption.... Alternatively, a plaintiff may prove discriminatory intent through circumstantial evidence.... Circumstantial evidence is evidence that, if believed, permits but does not require the fact finder to draw the inference that the employer was motivated by discriminatory animus.

Richardson v. Nw. Christian Univ., 242 F.Supp.3d 1132, 1147 (D. Or. 2017) (internal citations and quotes omitted).

Class action plaintiffs may bring a claim for disparate treatment by alleging that the employer's conduct was part of a "pattern or practice" of discriminatory treatment toward members of a protected class. International Broth. of Teamsters v. United States, 431 U.S. 324, 325 (1977). At this stage of the proceedings, "[t]he burden of establishing a prime facie case is not designed to be onerous.... To establish a prima facie case, the plaintiff need only provide evidence that suggests that the employment decision was based on a discriminatory criterion." Buchanan v. Tata Consultancy Servs., Ltd., 2017 WL 6611653, at *12 (N.D. Cal. Dec. 27, 2017) (internal citations and quotations omitted). Statistical disparities in the treatment of women alone may be sufficient to establish a prima facie case. Id. In addition, anecdotal evidence of past discrimination, like statistical evidence, can be used to establish a general discriminatory pattern in an employer's hiring or promotion practices. Obrey v. Johnson, 400 F.3d 691, 698 (9th Cir. 2005).

The federal and Oregon Equal Pay Acts prohibit paying women less than men "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions," and paying women less than men "for work of comparable character, the performance of which requires comparable skills," respectively. 29 U.S.C. § 206(d)(1); Or. Rev. Stat 652.220(1)(a)-(b).

Defendant asserts the equal pay and disparate treatment claims should be dismissed at this stage of the proceedings because the collective is far too broad to plausibly or practically be represented by plaintiffs, and plaintiffs have alleged no factual predicate that demonstrates the putative class suffered the same supposed harm.

A.  Adequacy of the Collective Allegations

A federal Equal Pay Act claim may be maintained by "any one or more employees for and [on] behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C.A. § 216(b). Thus, the Nike employees may litigate jointly if they (1) claim a violation of the Equal Pay Act; (2) are "similarly situated;" and (3) opt into the joint litigation in writing. Campbell v. City of Los Angeles, 903 F.3d 1090, 1100 (9th Cir. 2018). Similarly situated means "party plaintiffs must be alike with regard to some *material* aspect of their litigation." Id. at 1114. Frequently, plaintiffs will move for "preliminary certification" of the collective action, contending they have at least facially satisfied the "similarly situated" requirement. Later, after discovery, defendants may move for "decertification" of the collective action on the theory that the plaintiffs' status as "similarly situated" was not borne out by the fully developed record. Id. The "preliminary certification" level of consideration is loosely akin to the plausibility standard of a motion to dismiss, Id. at 1109.

1.  Comparators

Defendant asserts that plaintiffs' proposed class definition seeks to weave together thousands of women in hundreds of different job classifications and departments; each with different duties,

qualifications, and experience. Defendant argues plaintiffs have failed to identify which employees they seek to compare on a class-wide basis and failed to allege any facts supporting an inference that every women performs equal or comparable work to a male employee who is more highly compensated.

Under the Equal Pay Act, a plaintiff must show that an employer pays different wages to employees of opposite sexes for equal work for jobs which require equal skill, effort, and responsibility, and which are performed under similar working conditions. Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974).[2] Defendant does not challenge the claims made by the individual plaintiffs and each named plaintiff has identified male counterparts who were paid more or received greater advancement opportunities despite having similar or lesser qualifications for similar work. See First Amended Complaint (doc. 42) at e.g., ¶¶ 132-34 (Nike replaced Cahill with a man at higher level and higher pay despite his having substantially similar responsibilities); ¶ 137 (Defendant paid Johnston less than two male employees with less education and experience doing the same work under the same conditions); ¶¶ 145-47 (Defendant promoted a male intern to a higher band level and pay before making Elizabeth a full-time employee and provided her replacement with a higher title and larger salary despite similar work); ¶¶ 151-53 (Despite similar duties, responsibilities, and qualifications, defendant provided a male employee with a higher title, salary, and bonuses than Hender).

Every named plaintiff alleges comparators in their respective job categories. Those claimants

---

[2]Under the Oregon Equal Pay Act, the work must be of comparable character, the performance of which requires comparable skills. Or. Rev. Stat 652.220(1)(a)-(b).

Page 11 - FINDINGS & RECOMMENDATION

who choose to opt-in to the Equal Pay Act claims will have to similarly allege such a comparator.[3] In addition, plaintiffs allege a company-wide practice of discrimination that intentionally targets women across all departments and job titles. See, e.g., First Amended Complaint (doc. 42) at ¶¶ 53-56 (disproportionately low number of women in high level-positions; ¶¶ 64-96 (Headquarters' hostile work environment adversely impacts compensation and promotion of women); ¶¶ 97-124 (starting salary policy, ratings systems, budgeting system, and promotion systems discriminate against women); ¶¶ 125-128 (defendant is aware of the gender inequality, but still maintains the patterns and practices of discrimination). At this stage of the proceedings, such a showing is sufficient to discover the propriety of certification of the collective action. See Coates v. Farmers Grp., Inc., 2015 WL 8477918, at *11 (N.D. Cal. Dec. 9, 2015) (a "modest factual showing" that the alleged pay inequality occurs across job titles and salary grades is sufficient to conditionally certify an Equal Pay Act collective action). In addition, the pleading stage is not a suitable time to challenge whether a given male employee is an appropriate comparator. Id. at *12.

  2.  Individual Defenses

---

[3]Opt-in plaintiffs thus far include: (1) Tracee Cheng alleges that a male employee who replaced her to do the same work while she was on maternity leave received a higher salary and bonuses (doc. 3); (2) Meghan Grieve alleges that a male colleague in the same position received substantially more starting pay (doc. 35), but has since received a pay raise and has now opted out (doc. 61); (3) Paige Azavedo alleges that despite performing work as a Senior Director she remained at a lower level E-band while her male counterparts were in the higher S-band (doc. 37); and (4) Donna Olsen alleges that all of her male peers with similar responsibilities and jobs were paid more than her (doc. 40). However, Samantha Phillips and Lauren Anderson only allege "on information and belief," they were paid less than male Nike employees for substantially equal work, (doc. 2 and doc. 60). This allegation is insufficient and may subject their Equal Pay Act claims to dismissal on an appropriate motion.

Defendant asserts that because it is entitled to assert an affirmative defense to explain any wage differentials such as a merit or seniority system for each individual plaintiff, a collective Equal Pay Act action is implausible.[4] However, the fact that there may be numerous defenses does not make a collective action implausible so long as the putative collective members are similarly situated. See, e.g., Diaz v. S&H Bondi's Dep't Store, 2012 WL 137460, at *6 (S.D.N.Y. Jan. 18, 2012) ("Courts have found employees 'similarly situated' ... where they performed different job functions or worked at different locations, as long as they were subject to the same allegedly unlawful policies."). As noted above, named plaintiffs allege company-wide policies that commonly affect women throughout defendant's headquarters. Those allegations are sufficient at this stage of the proceedings. The First Amended Complaint itself does not demonstrate the applicability of an affirmative defense with respect to any single member, much less the purported collective as a whole.

  3. Representative Plaintiffs

Defendant asserts it is implausible that named plaintiffs can represent nearly every salaried woman at its headquarters, spanning thousands of employees, across numerous departments, and hundreds of job categories. Again, at this stage of the pleadings, plaintiffs need only show that they are similarly situated.

That [Defendants] may pay different wages for different positions (within set ranges),

---

[4]The Equal Pay Act establishes four exceptions to liability: where different payment to employees of opposite sexes is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex. Corning Glass Works, 417 U.S. at 196. Under Oregon's Equal Pay Act, an employer may avoid liability where the pay differential is based on a seniority system or merit system. Or. Rev. Stat. § 652.220(2)(a-b).

>that job duties vary between divisions and job titles, and that different positions are compensated differently based on location, are not factors that defeat conditional certification. Instead, whether the "disparate factual and employment settings of the individual plaintiffs" means that this case cannot proceed collectively, or would need to be prosecuted with subclasses for each of the job titles or geographic locations, is a matter to be determined at the second stage of the certification process.

Wellens v. Daiichi Sankyo, Inc., 2014 WL 2126877, at *5 (N.D.Cal. May 22, 2014).

The allegations that defendant's systemic practices and policies discriminate across all job descriptions against women, at this stage, plausibly alleges that the purported collective members are similarly situated to the named plaintiffs.

B.     Manageability of Title VII Claim

Defendant argues the intentional discrimination theory alleged in the First Amended Complaint with respect to plaintiffs' disparate treatment claims under Title VII and Or. Rev. State 659A.030 is the definition of unmanageable class claims due to the individualized nature of those claims.

An individual litigant seeking to maintain a class action under Title VII of the Civil Rights Act must meet the prerequisites of numerosity, commonality, typicality, and adequacy of representation specified in Rule 23(a). These requirements effectively limit the class claims to those fairly encompassed by the named plaintiffs' claims. Gen. Tel. Co. of the Southwest., 457 U.S. at 156.

Generally, an individual plaintiff can show disparate treatment under Title VII by first establishing "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). If she makes this

prima facie showing, the burden shifts to the employer to "articulat[e] a legitimate, nondiscriminatory reason for the employment action." Id. In order to prevail after the employer makes this showing, plaintiff must then offer "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." Id.

However:

> a "group of plaintiffs, entitled to be certified as a class, may ... initiate a pattern-or-practice suit." United States v. City of New York, 717 F.3d 72, 82 (2d Cir. 2013). Whereas an individual disparate [treatment] claim "requires an intent to discriminate against one person," id. at 83, a pattern-or-practice claim requires plaintiffs to show that "discrimination was the company's standard operating procedure"—the "regular rather than the unusual practice," Teamsters, 431 U.S. at 336, 97 S.Ct. 1843—and that "the discrimination was directed at a class of victims," City of New York, 717 F.3d at 83.

Barrett v. Forest Labs., Inc., 39 F. Supp. 3d 407, 426 (S.D.N.Y. 2014).

This is precisely what plaintiffs here have alleged. Plaintiffs assert a company-wide practice of established policy at defendant's headquarters that serves to intentionally discriminate against women in all categories of employment. Plaintiffs allege defendant is aware of the discriminatory nature of its polices and has done nothing to correct them.[5] In addition, plaintiffs' allegations of a

---

[5]Plaintiffs allege specific instances of defendant's knowledge of sex discrimination and protection of discriminatory practices by high level managers. See, e.g., First Amended Complaint (doc. 42) at ¶¶ 68, 71. Thus, unlike Wood v. City San Diego, 678 F.3d 1075, 1081 (9th Cir. 2012), plaintiffs allege more than mere awareness of adverse consequences to women of a facially neutral policy. They allege facts from which the court can infer a discriminatory motive. See E.E.O.C. v. Inland Marine Indus., 729 F.2d 1229, 1235 (9th Cir. 1984) (refusing to change systemic inequities in policies and thereby ratifying the existing disparities, is sufficient to show intent on a disparate treatment theory.).

(continued...)

hostile work environment condoned by defendant further reinforces the commonality of the claims that all women at defendant's headquarters suffer intentional discrimination regarding adverse employment actions as to salary and promotion potential. Because the named plaintiffs allege claims typical of the harms suffered as a result of the alleged intentional discrimination, the complaint plausibly alleges a class action for disparate treatment.

C.      Potential Discovery Abuse

Defendant states the Twombly/Iqbal pleading standard is designed to prevent defendants from suffering the burden of discovery in cases of dubious merit. Defendant then argues that allowing plaintiffs' proposed class action to proceed invites discovery abuse and thus the class and collective allegations should be dismissed. However, as noted above, plaintiffs' complaint is sufficient to survive a motion to dismiss as it plausibly alleges class and collective claims. Conjecture that plaintiffs will propound indiscriminate and burdensome discovery requests does not justify dismissal before discovery even begins.

D.      Strike

Finally, defendant asserts even if the plaintiffs have alleged sufficient factual material to state one or more individual claims, the court should strike the class/collective claims in their entirety as to such a broad and disparate group of proposed plaintiffs. However, as noted above, motions to strike class allegations are generally disfavored because "a motion for class certification is a more appropriate vehicle" for testing the validity of class claims. Thorpe v. Abbott Lab., Inc., 534 F.Supp.2d 1120, 1125 (N.D.Cal. 2008). Such motions are granted only where "the complaint

---

[5](...continued)

demonstrates that a class action cannot be maintained." Tietsworth v. Sears, Roebuck & Co., 720 F.Supp.2d 1123, 1146 (N.D.Cal. 2010). Here, it is not plain from the face of the pleadings that the proposed class cannot satisfy the requirements of Fed. R. Civ. P. 23(a), or the requirement for a collective action under 29 U.S.C.A. § 216(b). Accordingly, the motion to strike and the motion to dismiss should be denied.

## CONCLUSION

Defendant's partial motion to dismiss or alternatively strike (doc. 47) should be denied.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 26th day of February, 2019.

      /s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge