AMY JOSEPH PEDERSEN, OSB No. 853958
amy.joseph.pedersen@stoel.com
KENNON SCOTT, OSB No. 144280
kennon.scott@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Tel: (503) 224-3380
Fax: (503) 220-2480

DANIEL PRINCE (*pro hac vice*)
danielprince@paulhastings.com
ZACH P. HUTTON (*pro hac vice*)
zachhutton@paulhastings.com
FELICIA A. DAVIS (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, Twenty-Fifth Floor
Los Angeles, California 90071-2228
Tel: (213) 683-6000
Fax: (213) 627-0705

Attorneys for Defendant NIKE, INC.

[*Counsel for Plaintiffs on the Signature Page*]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL SARA JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated, | Case No. 3:18-cv-01477-JR |
| Plaintiffs, | **JOINT CASE MANAGEMENT CONFERENCE STATEMENT (MARCH 19, 2020 HEARING)** |
| vs. | |
| NIKE, INC., an Oregon Corporation, | |
| Defendant. | |

**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**

779831.4

Plaintiffs Kelly Cahill, Sara Johnston, Lindsay Elizabeth, and Heather Hender ("Plaintiffs"), and Defendant Nike, Inc. ("Nike") (collectively, the "Parties"), by and through their respective counsel, submit the following Joint Case Management Statement in advance of the Case Management Conference scheduled for March 19, 2020 at 10:30 a.m.

## I.      STATUS OF DISCOVERY

Plaintiffs' Position

This case has been pending for more than 19 months.  In that time, Plaintiffs have propounded on Nike three sets of requests for production—the first of which was served nearly a year ago, on March 22, 2019.  Yet, despite numerous conferrals with Nike's counsel and an order from this Court compelling production, Nike still has not provided Plaintiffs with basic information going to the heart of the class certification determination on Plaintiffs' claims for systemic sex discrimination.  *See infra* Section A (Plaintiffs' Position).

As described in further detail below, this missing information includes, but is not limited to a complete production of employment data along with basic documents defining those data, a complete production of Court-order complaints such as the publicly reported "Starfish" survey that documented a significant number of pay equity complaints by women at Nike, documents related to Nike's admitted policy and practice of considering prior pay when setting starting salaries, Nike's policy and practice documents prior to 2018, including job analyses used to group similar job positions, key documents related to Nike's compensation policies and practices, including internal pay equity and market analyses used to make compensation decisions during the statutory liability period, key documents related to Nike's promotion policies and practices, such as time in place and promotion studies and internal talent identification/assessment programs, and emails from key custodians relevant to the claims and defenses in this matter.

Plaintiffs have made extensive efforts since June 2019 to resolve discovery disputes, including through numerous detailed meet-and-confer letters to Nike detailing the missing discovery, why the unproduced documents are relevant and proportional, and why Nike's objections do not justify withholding its discovery. Below, Nike makes numerous assertions about Plaintiffs' motivations that are without justification or support and are inconsistent with the approach taken by Plaintiffs in this action. Plaintiffs will not respond to these improper assertions unless the Court so requests.

<u>Nike's Position</u>

Plaintiffs assert various claims related to pay, promotion, and job channeling under the Federal Equal Pay Act ("EPA"), Title VII of the Civil Rights Act of 1964, and related Oregon state law. Plaintiffs seek to bring their claims on a collective and class action basis, but have not yet sought certification of any of their claims.

First, Nike maintains its position that the Parties' Joint CMC statement is an inappropriate vehicle for raising substantive discovery disputes with the Court. Since Plaintiffs have insisted on doing so, Nike responds in kind herein. Second, Nike has produced documents and data that Plaintiffs have requested. Unhappy that the record does not substantiate their claims, Plaintiffs are attempting to use discovery and status conferences to remedy the shortcomings of their case. Here are the facts: Nike has produced over 19,330 pages of documents covering a wide range of topics and time periods. Several months ago, Nike also produced the data that sits at the heart of the claims in this lawsuit—a production of approximately 995,000 personnel records reflecting compensation, promotion, and other financial and personal data for approximately 13,400 current and former Nike employees from the time period of August 2012 – September 2019. Although Nike replaced employee names

and ID numbers with anonymized identifiers (which is the subject of Plaintiffs' most recent letter motion to the Court), Plaintiffs mischaracterize Nike's production as "incomplete."  In addition, and contrary to Plaintiffs' assertions, Nike has produced responsive complaints from the "Starfish Survey."  If Plaintiffs are unsure which documents these are in Nike's production, they should at least ask Nike for clarification before making (mis)representations to the Court.  With respect to Nike's "internal pay equity and market analyses" and "time in place and promotion studies," the Parties have already met and conferred on these documents, and Nike has communicated its position to Plaintiffs that the documents are privileged and will be denoted on Nike's privilege log (if they are not already).  Thus, Plaintiffs' complaint that Nike has failed to produce these documents is a non-starter.

Regarding "job analyses used to group similar positions," Nike has communicated to Plaintiffs that it has been unable to locate any documents responsive to their corresponding Third Set of RFPs, but is nevertheless continuing to investigate.  Nike also has produced documents regarding compensation and other policies from prior to 2018.  Finally, Nike is unsure to which documents Plaintiffs are referring when they claim that Nike has failed to produce "emails from key custodians" but, in any event, the issue is not ripe for discussion here because the Parties have not yet met and conferred.

Although Plaintiffs have sent "detailed" meet and confer letters (as Nike explains more fully below), Nike does not believe these letters are in the spirit of the meet and confer process. Specifically, Plaintiffs' lengthy, repetitive letters primarily focus on frivolous, trivial issues and/or make blanket, conclusory assertions regarding "relevance" and "proportionality" rather than attempting to *resolve* legitimate discovery disputes.  Following their letters, Plaintiffs' further undermine the meet and confer process by demanding "prompt" responses from Nike and

threatening to involve the Court.  Nike has repeatedly implored Plaintiffs to prioritize certain items so that Nike can address them fully and efficiently, as opposed to all at the same time — but to no avail.  And despite this, Nike has spent considerable time and effort to address Plaintiffs' demands at once, only for Plaintiffs to respond with additional nitpicking questions without any attempt at resolution.  Nike hopes that Plaintiffs will approach the process more constructively going forward.

Nike also notes that Plaintiffs have not applied the same standards to their own discovery obligations.  As Nike details below, Plaintiffs have failed and/or refused to produce basic discovery regarding their qualifications, such as their education and prior work experience.  In fact, altogether, Plaintiffs have only produced a handful of resumes and one photograph of a diploma.  Plaintiffs have complained that such discovery is invasive and harassing, when their qualifications are plainly at issue from their allegations and are a necessary element of their claims.  Likewise, Plaintiffs have failed and/or refused to produce records of their post-Nike employment, when such evidence is plainly relevant to their claims, including their claims for damages.  Nike mentions this at the outset to show that, where Plaintiffs complain they lack "basic information" (which Nike refutes), so does Nike.

In sum, since Plaintiffs do not have strong arguments on the merits, they are now attempting to focus on peripheral issues that do not impact certification and to draw attention away from their own deficient discovery.  Nike therefore responds to each of Plaintiffs' positions raised herein, while reserving the right to address each issue more fully in a written submission or during any hearing on the matter.

A.      **The Status of Nike's Productions**

        Plaintiffs' Position

        Plaintiffs served their First Set of Requests for Production ("RFPs") on March 22, 2019.

These RFPs sought documents regarding Nike's (1) employment data and relevant data systems; (2) compensation, promotions, hiring, firing, workplace complaints, and related policies and practices at Nike headquarters; (3) sex discrimination complaints; (4) job descriptions, job codes, job groupings, and organizational charts; (5) workplace analyses or studies related to the claims or defenses, including those concerning pay equity, promotions, jobs, and validation studies of the challenged policies or practices; (6) top management's involvement in policies and practices impacting pay and promotions; (7) Nike's public statements related to the claims or defenses; (8) Plaintiffs and opt-in Plaintiffs; (9) specific Nike executives alleged to be involved in sex discrimination; and (10) applicable document and data retention policies. Items 2, 3, 7, and 9 were the subject of a discovery letter and the Court's October 31, 2019 Order (ECF No. 39, "10/31 Order").

After Nike filed its Answer to the First Amended Complaint, ECF No. 75, Plaintiffs served their Second Set of RFPs on June 7, 2019, which sought documents supporting certain affirmative defenses or denials in Nike's Answer. Plaintiffs served their Third Set of RFPs on November 26, 2019, which were similar to RFPs in the First Set concerning job codes, job groupings, and job analyses (#4 in the paragraph above) but added earlier time periods and important actors because meet and confer discussions and discovery indicated the relevance of such documents.

Nearly a year since serving their First Set of RFPs, there is a substantial amount of outstanding, relevant discovery. Plaintiffs have repeatedly followed up with Nike about what discovery it will produce, when it will produce and complete discovery, and about its objections. *See, e.g.,* Plaintiffs' Meet and Confer Letters dated May 31, 2019, July 15, 2019, August 2, 2019, November 4, 2019, December 15, 2019, December 20, 2019, February 12, 2020, and February

20, 2020.  Below, Plaintiffs provide a status update of key discovery issues.

1.     **Nike Has Not Yet Completed Its Production of Employee Data Needed for the Class Certification Determination.**

On December 30, 2019, Nike produced six data files relating to employment data.  On January 24, 2020, Plaintiffs sent Nike a detailed letter describing specific deficiencies related to the data produced, including the exclusion of the names and employee IDs and replacing that information with anonymized numbers created for this litigation, questions about the meaning of numerous terms in the data that are not clear on their face, issues with linking of data files, potential discrepancies in the data, and specifically-identified data that was not included.  On February 10 and 13, 2020, Nike attempted to address a few of the potential discrepancies that Plaintiffs observed.  Nike has stated that it will respond more fully to Plaintiffs' January 24, 2020 meet and confer letter, but Nike has not provided a date certain by when it will provide this response.

A complete production of employment data with a clear understanding of the data is critical before Plaintiffs file their motion for class certification.  Until Nike can provide complete responses and relevant discovery (*e.g.*, documents showing the meaning of terms used in the data), Plaintiffs are neither able to assess the completeness of the data produced nor have their experts begin to prepare analyses relevant to the motion for class certification.

2.     **Nike's Production In Response to the Court's 10/31 Order Is Incomplete.**

On October 31, 2019, the Court ordered Nike to produce several categories of documents in response to Plaintiffs' first set of RFPs.  Specifically, the Court ordered Nike to produce the following subject to the Protective Order:

- "With respect to Nike's Public Statements on Discrimination (RFPs 39-43 and 47), … the statements themselves…"

- "[A]ny uniform policies it maintained during the relevant time periods regarding

hiring, firing, pay, promotions, and compensation systems."

- "With respect to documents concerning sex discrimination, harassment, and hostile work environment complaints (RFPs 27, 29, and 45-46)…any such complaints made by any named plaintiff or those putative plaintiffs who have already consented to join and any other complainants to the extent such complaints involve compensation, promotion, or performance reviews and specific complaints that male colleagues received favorable treatment in those areas for the same work."

- "With respect to the personnel records of former Nike executives Trevor Edwards, Daniel Tawiah, and David Ayre (RFPs 34-38), … to the extent the records contain complaints of sexual harassment/discrimination linked to policies of pay/promotions and job duties either by the named executives themselves or regarding actions these executives may have taken to condone pay/promotion and job duty discrimination decisions of lower level managers."

During the December 16, 2019 Case Management Conference, Nike represented that it would endeavor to produce documents responsive to the 10/31 Order no later than December 31, 2019.  Nike did not meet its December 31, 2019 deadline and instead, stated it expected to produce all responsive documents by January 31, 2020.  After Nike did not produce the documents by January 31, 2020, Nike produced a first wave of "complaint-related" documents on February 14, 2020, and Nike produced a second set of documents on March 6, 2020.[1]  Nike's statement below that it has made "a complete production" in response to the October 31, 2019 Order is the first time that Nike has stated to Plaintiffs that it has completed its production of all ordered documents – not just complaints.

Based on Plaintiffs' preliminary review thus far of Nike's February 14 and March 6 productions, Plaintiffs have concerns about several potential discovery issues related to Nike's

---

[1] Contrary to Nike's representations above, Plaintiffs have sought clarification from Nike about missing documents related to the 10/31 Order.  On February 24, 2020, Plaintiffs sent Nike an email requesting confirmation if its 10/31 Order production was complete and identifying several deficiencies observed in its February 14, 2020 production.  Nike responded by email on March 5, 2020 stating it disagreed that its production was deficient but did not directly address the specific missing items identified by Plaintiffs' February 24 letter.  On March 11, 2020, Plaintiffs requested a call the week of March 13 to discuss this and other outstanding issues.

10/31 production.  These include: (1) extensive redactions of workplace complaint documents, including names, employee IDs, and content; (2) whether Nike has produced all "policies it maintained during the relevant time periods regarding hiring, firing, pay, promotions, and compensation systems," including numerous documents Plaintiffs identified to Nike that are referenced in other Nike documents and policy documents prior to 2018;[2] (3) whether Nike has searched for or produced all responsive documents concerning complaints for the entire statutory liability (August 9, 2015 to the present) given that Nike produced no complaint files created for complaints made before 2018 except for, possibly, one that concerns an opt-in Plaintiff; and (4) the absence of documents related to Trevor Edwards and David Ayre, as well as the sparsity of documents related to Daniel Tawiah.

For example, one prominent omission from Nike's production is a complete production of documents related to the "survey of female employees detailing sex discrimination at Nike" – commonly referred to as the "Starfish Survey" – that was presented to Nike's CEO around March 5, 2018.  *See* First Amended Complaint, ECF No. 42, ¶ 68 (citations omitted).[3]  After the Starfish Survey was received, Mark Parker, Nike's CEO, sent an email to Nike employees acknowledging receiving "reports of behavior … that do not reflect our core values …,"  that Nike has heard " from strong and courageous employees …. and we are still talking to team members to better understand what we need to change." NIKE _ 00002237-38.  In a speech

---

[2] Plaintiffs sent a meet and confer letter on December 20, 2019 that identifies examples of these documents as well as other unproduced documents responsive to Plaintiffs' RFPs that exist according to other Nike documents.

[3] *See also* Julie Creswell, *At Nike, Revolt Led by Women Leads to Exodus of Male Executives*, N.Y. Times (Apr. 28, 2018), https://www.nytimes.com/2018/04/28/business/nike-women.html. Given that the survey was provided to Nike's CEO, it is hard to credit Nike's claim below that producing documents related to the survey required "significant time and expense."  Moreover, Nike has only produced a limited number of these documents and NO documents reflecting Nike's evaluation and review of the complaints and "workplace concerns" raised in the Starfish Survey.

made in May 2018 to Nike employees, CEO Parker stated that as a result of "workplace

concerns" expressed from employees who exhibited "incredible bravery,"  Nike would "review

our HR processes from top to bottom" with the "goal … to improve processes that underserved

us in recent years …." NIKE _ 00001965 at -1966 and -1973

      **3.**      **Plaintiffs' Pending Discovery Letter.**

On March 4, 2020, Plaintiffs filed a discovery letter with the Court requesting an order

compelling Nike to produce the names and employee IDs of employees and witness in already

produced employment data and workplace complaint documents, as well as prohibiting Nike

from redacting this information from future productions unless there is a valid privilege

objection.

Nike filed its response on March 13, 2020.

Plaintiffs intend to file a reply to Nike's response.

If not already scheduled by the Court, Plaintiffs request a telephonic conference to

present argument regarding Plaintiffs' discovery letter.

      **4.**      **Plaintiffs Anticipate a Dispute Over Nike's Privilege Assertion, Which Will Likely Require the Court's Intervention.**

Nike has failed to produce a complete privilege log that accounts for documents it has

long contended are being withheld due to an asserted privilege.  In response to requests served

almost one year ago, Nike continues to withhold documents relevant to class certification on the

basis of privilege, which include Nike's pay equity analyses used to make pay adjustments

during the class period and time-in-job and pace of promotion studies.[4]  Despite at least ten

attempts by Plaintiffs to get a privilege log from Nike for documents withheld based on

---

[4] Nike confirmed its assertion of privilege as to these internal studies/analyses as far back as September 2019 during meet and confer calls and again during the October 30 telephonic hearing on Plaintiffs' discovery letter.

privilege,[5] Nike waited until February 2, 2020 to serve its first phase of a privilege log. That

privilege log, however, is inadequate because it omitted most of the documents Nike has

withheld based on privilege, including critical pay equity and promotion studies. On March 13,

2020, Nike served its second phase privilege log. Plaintiffs' preliminary review of this recent

privilege log indicates it is also inadequate because it lacks the required details in its entries and

it fails to list documents Nike has long confirmed to be withheld for privilege such as time-in-job

or promotion analyses. This unjustified delay in providing a complete privilege log prejudices

Plaintiffs because it prevents them from understanding what responsive documents exist and

denies them the opportunity to test, in a timely fashion, Nike's asserted privilege.[6]

 While these facts support a finding that Nike's privilege objections are waived,[7] Plaintiffs

do not view this CMC statement as the proper place to address the merits of that position.

Instead, Plaintiffs will complete their assessment of Nike's second phase privilege log, served

only days ago, and will seek Court intervention as appropriate.

  **5. Status of the Plaintiffs' Remaining Discovery Requests.**

 While the Parties continue to meet and confer regarding Plaintiffs' remaining requests,

there are a number of requests that may soon require Court intervention, including Nike failure to

produce any documents in response to Plaintiffs' 3rd Set of RFPs, served over three months ago.

---

[5] These requests are contained in eight meet and confer letters (sent on June 1, 2019, July 15, 2019, August 2, 2019, November 4, 2019, Plaintiffs' December 15, 2019, December 26, 2019, January 17, 2020, and January 24, 2020), and two joint statements filed with the Court (the June 14, 2019 Supplemental Joint Rule 26(f) Report (ECF No. 78 at 4-5) and the December 12, 2019 Joint CMC Statement (ECF No. 90 at 1-2)).

[6] This prejudice is underscored by Nike's position that any attempt to move to compel on these "privileged" documents is premature until Nike finishes producing its privilege log. *See, e.g.,* Nike's March 5, 2020 Meet and Confer Letter (stating "we believe any motion to compel is premature" given its promise to produce "the next wave of privilege logs next week.").

[7] In Plaintiffs' Reply in support of its first motion to compel discovery letter sent to the Court on October 9, 2019, Plaintiffs stated that the "appropriate time for Nike to produce a privilege log for this requested discovery, or otherwise comply with Rule 26(b)(5)(A) has long passed."

Nike's Position:

As outlined above, Nike has produced over 19,330 pages of documents in response to Plaintiffs' requests, as well as compensation, performance, and personnel data for 13,400 current and former Nike employees.  Plaintiffs object that this is not enough.  Plaintiffs claim they need more "basic information" from Nike before proceeding with class certification, but Plaintiffs do not specify what "basic information" they need and why.  From the outset of this litigation, Nike has proposed and continues to believe that the Parties should meet and confer to narrow the scope of Plaintiffs' RFPs—which are overly broad and disproportionate to the needs of the litigation—and to identify priorities for the same.  Plaintiffs have refused.  Instead, they continue to insist that *all* of their RFPs are "top priority."  Plaintiffs' approach leaves Nike with no choice other than to work on every one of Plaintiffs' RFPs simultaneously, which continues to take considerable time and effort given their overly broad range of topics and time periods.

Further, it is disappointing that Plaintiffs have once again used a Joint CMC Statement as a platform for litigating substantive discovery issues.  Nike does not believe this is the appropriate place to discuss substantive discovery issues; indeed, this Court's Local Rules provide for discovery issues to be resolved informally via telephone conference whenever possible, then via briefing with the Court only when necessary.  L.R. 26-3(f).  If Plaintiffs wish to raise substantive discovery issues with the Court, they are free to pursue that avenue through use of the Court's discovery process.

Notwithstanding, Nike responds generally to Plaintiffs' positions below, while reserving its right to address the issues more fully in a written submission or during any hearing on these matters.  Nike addresses each of Plaintiffs' concerns in turn, and addresses each number

individually as follows:

### 1. Nike Has Produced Current and Former Employee Compensation, Performance, and Personnel Data.

On December 30, 2019, Nike produced approximately 995,000 records for nearly 13,400 current and former employees, spanning from August 2012 (three years prior to the statutory period for Plaintiffs' EPA claim) until September 2019 (the end of Nike's last fiscal year).

Nike is preparing a complete response to Plaintiffs' January 24, 2020 discovery letter, as well as to several other discovery letters Plaintiffs have sent over the past few weeks. It is not uncommon for Nike to receive two or more single-spaced, multi-page letters from Plaintiffs in a week. Plaintiffs' meet and confer letter regarding Nike's data production included more than 200 individual data-related questions alone. Such inquiries require detailed and precise responses, which obviously take time and cannot be rushed.

Since the inception of this litigation, Plaintiffs have bombarded Nike's counsel with alleged "discovery issues" without, in Nike's opinion, any genuine desire to reach resolution. Instead, Plaintiffs unilaterally demand unreasonable response times and threaten motions to compel without having the benefit of Nike's response in the first place.

In addition, Plaintiffs often insist on immediate responses to trivial issues that have no bearing on certification. That includes, for example, sending lengthy submissions about the claimed value of extracting content from temporary files even though seasoned eDiscovery experts have advised that no usable content exists *and* despite Nike's objections on the grounds of burden and proportionality.

In any event, Nike will continue to respond to Plaintiffs' discovery inquiries consistent with its obligations and will work to resolve these matters as quickly and efficiently as possible.

2.    **Nike Has Complied With the Court's October 31, 2019 Order.**

In response to the Court's October 31, 2019 discovery order, Nike has produced:

- Nike's public statements related to discrimination;

- Policies maintained by Nike during the relevant time periods regarding hiring, firing, pay, promotions, and compensation systems;

- Sex discrimination, hostile work environment, and harassment complaints made by any named plaintiff or those putative plaintiffs who have already consented to join, including the complaint investigation files, to the extent such documents exist and are not privileged, as well as complaints involving compensation, promotion, or performance reviews and specific complaints that male colleagues received favorable treatment in those areas for the same work; and

- Complaints or records of sexual harassment/discrimination linked to policies of pay/promotions and job duties involving Trevor Edwards, Daniel Tawiah, or David Ayre, to the extent such records exist, are not privileged, and were made in regards to actions these executives may have taken to condone pay/promotion and job duty discrimination of lower level managers.

These are the precise documents ordered for production by the Court.

Contrary to Plaintiffs' assertion, Nike has produced responsive materials related to the purported "Starfish Survey," at significant time and expense.  Again, if Plaintiffs are having trouble locating these documents in Nike's production, they should first ask Nike for clarification before making (mis)representations about Nike's production to the Court.  Similarly, Plaintiffs' assertion that Nike has "failed" to produce complaint files prior to 2018 is groundless.  To confirm, Nike reviewed complaint files from 2015 – present to determine responsiveness (if any)

to the Court's order.  Apparently unhappy with the Court's order and Nike's compliance with the same, Plaintiffs allege that Nike has not made a complete production or confirmed that it has complied with the Court's order.  That is incorrect.[8]

3.   **Nike Has Briefed the Parties' Dispute Relating to Employee Names and ID Numbers and Awaits the Opportunity to Address These Matters With the Court, as Necessary.**

Nike maintains that the production of employee names and ID numbers linked to highly sensitive personal and financial information and internal complaint files is inappropriate in light of the pre-class certification stage of this case.  Nike's position on these issues is more fully expressed in its response to Plaintiffs' March 4, 2020 discovery letter, which Nike submitted to the Court on March 13, 2020.  Nike looks forward to addressing any of the Court's questions on this matter during the status conference on Thursday, March 19, 2020 (or at another time that is convenient to the Court).

4.   **Nike Has Accommodated Plaintiffs' Requests for Rolling Privilege Logs; But, Plaintiffs Insist on Manufacturing Disputes.**

Plaintiffs have unreasonably demanded immediate production of a complete privilege log, despite the fact that discovery in this matter is ongoing, that both Parties have been producing documents on a rolling basis, and Nike has been diligently investigating production and privilege issues (including tracking down employees and historical information related to pay equity studies, etc.).  Nike has accommodated Plaintiffs' requests by producing phased privilege logs.  In fact, Nike produced a Phase 1 privilege log on February 2, 2020 and its Phase

---

[8] Following its March 6, 2020 production, on March 13, 2020, Nike's counsel wrote to Plaintiffs' counsel stating that Nike had "'completed' [its] production of complaints in connection with the Court's October 31, 2019 order, subject to [Nike's] right to supplement (where appropriate)."  In the same email, and contrary to the assertions made in Plaintiffs' footnote 1, Nike's counsel proposed that Plaintiffs' counsel "let [us] know" if counsel wanted to "schedule time to speak" regarding this matter, even amidst the office closures and technical challenges posed by adapting to new Covid-19 protocols.  Nike still awaits Plaintiffs' response.

2 privilege log on March 13, 2020.  And as Plaintiffs essentially admit, their purported issues

with Nike's Phase 2 privilege log are "preliminary" and premature (if not completely groundless,

as Nike maintains).

But the reality is that, regardless of the privileged nature of the communications at issue

or what Nike may include on its privilege logs, Plaintiffs have made a decision to challenge the

designations (without review of the merits or a good faith effort to meet and confer).  Nike will

continue to provide updated privilege logs on a rolling basis for documents withheld or redacted

on the basis of privilege, in accordance with the FRCP and this Court's Local Rules.

### 5.    Plaintiffs' Discovery Requests are Overly Broad and Unduly Burdensome.

Nike is in receipt of Plaintiffs' Third Set of Requests for Production, which seek

documents from far outside the statutory time period and are duplicative of previous Requests.

Nike will produce relevant, non-privileged documents in response to these Requests, to the

extent such documents exist, are not unduly burdensome to collect, and have not already been

produced in response to Plaintiffs' First and Second Sets of Requests for Production.

### B.    The Status of Plaintiffs' Productions.

Nike's Position

In its first set of Requests for Production to Plaintiffs, served on March 29, 2019, Nike

sought, in part, documents evidencing, referring, or relating to Plaintiffs' education and prior

work experience, as well as concurrent and post-Nike employment, if any.  To date, Plaintiffs

have failed and/or refused to produce the majority of these documents.  For example, Plaintiffs

Cahill, Elizabeth, and Johnston produced a handful of resumes, but no evidence of their

education or prior work experience as alleged in the FAC.

Similarly, Plaintiff Hender produced resumes and a photograph of one diploma (which

does not list her concentration as alleged in the FAC), but no other education records or evidence

of prior work experience to support her FAC allegations.  Plaintiffs also have refused to produce evidence to support their claims for damages, such as W-2 or 1099 forms.  These documents are plainly relevant to Plaintiffs' claims, Nike's defenses, and to class certification issues, such as whether Plaintiffs' claims are common and typical of the putative class, and whether Plaintiffs are adequate class representatives.  Nike has met and conferred with Plaintiffs about the production of these documents, and did so after affording Plaintiffs with ample time to supplement their production, as they indicated they would do.  Nevertheless, Nike anticipates that it may need to seek the Court's assistance for a resolution.

Additionally, on December 4, 2019, Nike served Plaintiffs Cahill, Elizabeth, and Johnston with a second set of Requests for Production, seeking confidential Nike documents retained by these former employees after resigning from the Company.  Plaintiffs have repeatedly taken the position that these Requests, which seek documents relevant to Nike's affirmative defenses and class certification issues, such as adequacy and typicality, are not relevant.  Plaintiffs have made two productions in response to these RFPs, and Nike is in the process of reviewing Plaintiffs' second production.  Nike will continue to meet and confer with Plaintiffs regarding Nike's second set of Requests for Production and hopes to resolve any issues in connection with the same without the need for the Court's intervention.

Finally, in response to Plaintiffs' statements below, Nike generally notes that (1) the documents at issue above do not concern ESI searches, such as Plaintiffs' email files (which Plaintiffs also have yet to produce in response to Nike's other RFPs), for which a meet and confer on search terms would be warranted, and (2) Nike never refused to respond to any meet and confer invitation from Plaintiffs.  Nike also notes that Plaintiffs complain repeatedly herein about Nike's purported lack of production (which Nike refutes) while simultaneously admitting

that their own production in response to RFPs that Nike served almost a year ago is "forthcoming." Plaintiffs cannot have it both ways.

Plaintiffs' Position

*Nike's First Set of RFPs*

Nike served Plaintiffs with its first set of RFPs on March 29, 2019. Plaintiffs served their responses on May 2, 2019, which made a good faith effort to interpret Nike's RFPs and provide written responses outlining the documents they would produce consistent with their obligations under the Federal Rules of Civil Procedure. With those responses, Plaintiffs invited Nike to meet and confer about (1) any issues with Plaintiffs' written responses or objections and (2) a mutually agreed-upon protocol for searching ESI; yet, in the several months that followed, Plaintiffs received no response.

Having received no objections from Nike to either their responses or objections in the months that followed, Plaintiffs produced responsive documents in several volumes on June 14, 2019, September 13, 2019, and October 11, 2019. These productions did not include ESI related to emails, social media, text messages, or other structured ESI sources while Plaintiffs waited for Nike to respond to their invitation to meet and confer about a mutually agreed-upon protocol for production. On December 31, 2019, Plaintiffs also produced a privilege and redaction log relating to Volumes 1-3 and intend to supplement those logs with any subsequent phased productions of email and other ESI.

Once it became clear that Nike would not respond to Plaintiffs' invitation to meet and confer regarding ESI productions, Plaintiffs began to prepare their review and production of those documents.

On January 23, 2020, almost 8 months after receiving Plaintiffs' written responses and after Plaintiffs' three production volumes of related documents, Nike raised, for the first time, concerns about the scope of Plaintiffs' responses and productions. Plaintiffs responded with a detailed meet and confer letter responding to those concerns, explaining productions were forthcoming that would moot most of its expressed concerns, and inviting Nike to meet and confer further if it believed other issues remained unresolved. Nike has not followed up with the

vast majority of Plaintiffs' responses.

On March 13, 2020, Plaintiffs served another production of ESI related documents.  To date, Plaintiffs have produced 7,874 documents.  Plaintiffs expect to serve their related privilege log for this production shortly.

While Plaintiffs remain willing to meet and confer with Nike regarding their productions, Nike's representations regarding the status of Plaintiffs' productions to date require several corrections.  First, Plaintiffs have confirmed since their May 2nd responses that they will produce documents related to relevant prior work experience and education within their custody, control, and possession.  Nike's requests, however, seek a considerably broad universe of documents like all educational records without temporal limitation (apparently including primary school records or any document that refers to college attendance) or documents related to every single prior employer, whether they had no bearing on work experience for a Nike position.  Plaintiffs asked Nike to clarify which documents it needed in response to these broad requests but has received no response.

Second, Plaintiffs have not refused to produce evidence related to their claims for damages.  While complete damages discovery is premature prior to certification, Plaintiffs have agreed to produce Nike compensation documents (including W-2s and pay statements), prior pay immediately before being hired with Nike, and for those alleging discriminatory discharge, Plaintiffs have agreed to produce post-Nike compensation documents such as W-2s and offer letters to the extent Plaintiffs have them.  Nike's requests again seek documents beyond potentially relevant damages discovery, including complete tax returns that contain private, financial information such as spousal finances.

*Nike's Second Set of RFPs*

On December 4, 2019, Nike served its second set of RFPs that sought Nike account documents and Nike related documents still in Plaintiffs' possession after separation. On January 3, 2020, Plaintiffs served their objections and responses along with an expected production date of January 31, 2020. On January 23, 2020, Nike sent a meet and confer letter taking issue with Plaintiffs' objections and written responses. On January 31, 2020, Plaintiffs produced 1,257 documents in response to Nike's second set of RFPs.

On February 20, 2020, Plaintiffs responded in writing to Nike's January 23 letter and invited further meeting and conferring if it had issues with the scope of Plaintiffs' anticipated productions. While Plaintiffs explained the limited or lack of relevance of the documents sought by Nike in their February 20 letter, Plaintiffs nevertheless agreed they would produce any non-privileged Nike-related documents still in their possession (with the exception of Plaintiff Hender who is a current employee and thus, has access to virtually all of Nike's documents). On March 13, 2020, Plaintiffs produced their second batch of documents responsive to Nike's 2nd set of RFPs. Plaintiffs await a substantive response from Nike regarding their February 20 Letter or their March 13 production.

## II.    FURTHER CASE MANAGEMENT CONFERENCES

Plaintiffs' Position:

Given the pending discovery letter and other identified discovery issues, Plaintiffs further request a Case Management Conference in 60 days to discuss the status of discovery.

Nike's Position:

Nike requests a Case Management Conference in 120 days to discuss the status of discovery and the timing of briefing and other matters related to certification.

Dated:  March 18, 2020                    Respectfully submitted,

                                          _/s/ Daniel Prince_____
                                          Daniel Prince (pro hac vice)
                                          danielprince@paulhastings.com
                                          Zach P. Hutton (pro hac vice)
                                          zachhutton@paulhastings.com
                                          Felicia A. Davis (pro hac vice)
                                          feliciadavis@paulhastings.com
                                          PAUL HASTINGS LLP
                                          515 South Flower Street, Twenty-Fifth Floor
                                          Los Angeles, California 90071-2228
                                          Tel: (213) 683-6000
                                          Fax: (213) 627-0705

                                          Amy Joseph Pedersen, OSB No. 853958
                                          amy.joseph.pedersen@stoel.com
                                          Kennon Scott, OSB No. 144280
                                          kennon.scott@stoel.com
                                          STOEL RIVES LLP
                                          760 SW Ninth Avenue, Suite 3000
                                          Portland, Oregon 97205
                                          Tel: (503) 224-3380
                                          Fax: (503) 220-2480

                                          Attorneys for Defendant NIKE, INC.

Dated:  March 18, 2020                    Respectfully submitted,

                                          _/s/ Laura L. Ho_____
                                          Laura Salerno Owens, OSB No. 076230
                                          laurasalerno@markowitzherbold.com
                                          David B. Markowitz, OSB No. 742046
                                          davidmarkowitz@markowitzherbold.com
                                          Harry B. Wilson, OSB No. 077214
                                          harrywilson@markowitzherbold.com
                                          Anna M. Joyce, OSB No. 013112
                                          annajoyce@markowitzherbold.com
                                          Chad A. Naso, OSB No. 150310
                                          chadnaso@markowitzherbold.com
                                          MARKOWITZ HERBOLD PC
                                          1211 SW Fifth Avenue, Suite 3000
                                          Portland, Oregon 97204-3730
                                          Tel: (503) 295-3085
                                          Fax: (503) 323-9105

                                          Laura L. Ho (pro hac vice)
                                          lho@gbdhlegal.com
                                          Barry Goldstein (pro hac vice)
                                          bgoldstein@gbdhlegal.com
                                          James Kan (pro hac vice)
                                          jkan@gbdhlegal.com
                                          Byron Goldstein (pro hac vice)

brgoldstein@gbdhlegal.com
Katharine L. Fisher (pro hac vice)
kfisher@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, California 94612
Tel: (510) 763-9800
Fax: (510) 835-1417

Craig Ackerman (pro hac vice)
cja@ackermanntilajef.com
ACKERMANN & TILAJEF PC
1180 S. Beverly Drive, Suite 610
Los Angeles, California 90035
Tel: (310) 277-0614
Fax: (310) 277-0635

INDIA LIN BODIEN LAW
India Lin Bodien (admitted *pro hac vice*)
india@indialinbodienlaw.com
2522 North Proctor Street, #387
Tacoma, WA 98406-5338
Tel:  (253) 503-1672
Fax:  (253) 276-0081

Of Attorneys for Plaintiffs and Opt-In Plaintiffs