UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

KELLY CAHILL, SARAH JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated,

Plaintiffs,

v.

NIKE, INC., an Oregon Corporation,

Defendant.

3:18-cv-1477-JR

ORDER

RUSSO, Magistrate Judge:

Named plaintiffs Kelly Cahill, Sara Johnston, Lindsay Elizabeth, and Heather Hender bring this putative class and collective action alleging that defendant Nike systematically discriminates against them and other similarly situated women at Nike headquarters regarding salary and promotions. Several additional plaintiffs have filed consents to join this action. The Court has previously denied Nike's motion to dismiss most of the class and collective claims.[1]

---

1 Nike did not seek dismissal of the class claims regarding the disparate impact claim.

Page 1 - ORDER

On March 4, 2020, plaintiffs submitted a letter to the court seeking an order to compel Nike to provide identifying information for employees in already produced employment data and workplace complaint documents. On March 19, 2020, the Court heard argument on the request and for the reasons stated below, the request is granted.

At this stage, the Court has not certified a class action for any claims.

The proposed class includes:

> All female current and former Nike employees at Nike Headquarters in Oregon, who were employed by Nike at any time from three years prior to opting-in through the resolution of this action, in a salaried, corporate position that was or is a lower-level position than Vice-President.

First Amended Complaint (FAC) (ECF #42) at ¶ 165.

Plaintiffs allege defendant has engaged in systemic sex discrimination against the collective/class members by paying them less than male employees with substantially equal job duties requiring substantially similar skill, effort, and responsibility performed under similar working conditions. Id. at ¶ 167. Plaintiffs further allege defendant has contributed to, and perpetuated sex-based pay disparities through common policies, patterns, or practices, including but not limited to those relating to starting salary and "band level," annual ratings, promotions, performance management policies or practices, centralized decision-making, and a work environment hostile to women. Id. at ¶ 168.

The case is still in the pre-certification discovery phase.

> Whether or not discovery will be permitted in a [class action] lies within the sound discretion of the trial court. See Berland v. Mack, 48 F.R.D, 121, 126 (S. D, N.Y. 1969). In determining whether to grant discovery [in connection with determining whether class-treatment is appropriate in a putative class action,] the court must consider its need, the time required, and the probability of discovery

> resolving any factual issue necessary for the determination. The propriety of a class action cannot be determined in some cases without discovery, as, for example, where discovery is necessary to determine the existence of a class or set of subclasses. To deny discovery in a case of that nature would be an abuse of discretion. Where the necessary factual issues may be resolved without discovery, it is not required.

Kamm v. California City Development Co., 509 F.2d 205, 209-210 (9th Cir. 1975) (footnote omitted).

Where discovery is necessary for the class-treatment determination, it is an abuse of discretion to make the determination without permitting such discovery. See id. at 210. However, while "in some cases a district court should allow discovery to aid the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations. Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion." Mantolete v. Bolger, 767 F.2d 1416, 1424 (9th Cir. 1985), citing Doninger v. Pacific Northwest Bell, Inc., 564 F.2d 1304, 1313 (9th Cir. 1977).

"At the pre-class certification stage, discovery in a putative class action is generally limited to certification issues: e.g., the number of class members, the existence of common questions, the typicality of claims, and the representative's ability to represent the class." Dysthe v. Basic Research, L.L.C., 273 F.R.D. 625 (C.D. Cal. 2011), citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 359 (1978).

In October, the Court addressed plaintiffs' request to compel (1) documents related to

Nike's public statements about sex discrimination allegations raised in this action; (2) complaints of sex discrimination made by putative class members to Nike and Nike's responses, if any; (3) three former high-level Nike executives who plaintiffs have specifically alleged contributed to or participated in sex discrimination; and (4) applicable insurance policies. The Court ordered as follows:

> After considering the parties' comprehensive briefing and oral argument on October 30, 2019, plaintiffs' September 27, 2019 letter request to the Court to compel precertification discovery is Granted in Part and Denied in Part as follows: 1) With respect to Nike's Public Statements on Discrimination (RFPs 39-43 and 47), Nike shall produce the statements themselves and the motion is denied with respect to any further documentation regarding the public statements. However, to the extent not already produced, Nike shall produce any uniform policies it maintained during the relevant time periods regarding hiring, firing, pay, promotions, and compensation systems; 2) With respect to documents concerning sex discrimination, harassment, and hostile work environment complaints (RFPs 27, 29, and 45-46), the motion is granted regarding any such complaints made by any named plaintiff or those putative plaintiffs who have already consented to join and any other complainants to the extent such complaints involve compensation, promotion, or performance reviews and specific complaints that male colleagues received favorable treatment in those areas for the same work; 3) With respect to the personnel records of former Nike executives Trevor Edwards, Daniel Tawiah, and David Ayre (RFPs 34-38), the motion is granted to the extent the records contain complaints of sexual harassment/discrimination linked to policies of pay/promotions and job duties either by the named executives themselves or regarding actions these executives may have taken to condone pay/promotion and job duty discrimination decisions of lower level managers; and 4) With respect to insurance policies (RFP 51) the motion is denied. All production pursuant to this motion is subject to the Protective Order (82) entered in this case on June 17, 2019, as relevant and necessary.

Order (ECF #89).

In producing documents responsive to the Court's order, Nike removed or redacted identifying information from employment data related to workplace complaints, etc. Plaintiffs move for an order compelling Nike to produce the Identifying Information. Nike objects

alleging the anonymization of its data is appropriate because (1) the data contains highly-sensitive and confidential compensation, performance, and personnel records for thousands of individuals who have not consented to join this action, and many more who are outside of the putative class and collective altogether; and (2) Nike's redaction of complainant, subject, and third-party witness names (none of whom are named or opt-in plaintiffs or the subject of plaintiffs' FAC allegations) are from sensitive internal complaint files. It appears that Nike wants to prevent plaintiffs from accessing a link between employee names/contact information and the data already provided rather than objecting to potential class member employees identifying information.

Nike states it has produced approximately 995,000 personnel records for nearly 13,400 current and former employees which include highly-sensitive personal and financial information detailing those 13,400 employees' compensation (including merit increases, bonuses, and equity awards), as well as dates of birth, performance review ratings, promotions, and dates of leave, retirement, and termination, including whether the termination was involuntary. Nike asserts that given the Court has yet to conditionally certify a class, it should not be required to provide identifying information including names and employee ID numbers regarding the employees (who have not opted in) to protect their privacy interests.

Nike contends that plaintiffs have the data they need to analyze whether there is statistical evidence to support their class and collective claims, and the use of anonymized identifiers has no impact on their ability to analyze that data. Plaintiffs assert they need the identifying information to help develop anecdotal evidence not captured in the raw data itself.

Nike argues the relevant case law might allow compelled class member names, contact information, dates of employment, and work locations, but does not allow a link between those names to the complaints provided. However, it does not appear that issue was discussed in most of the cases cited by Nike.[2] Courts may not allow access to employee names/contact information solely to "solicit others to participate," but will allow it, for example, to investigate whether defendants made a common decision regarding classification. Cedano v. Thrifty Payless, Inc., 2011 U.S. Dist. LEXIS 155956, at *33, 2011 WL 8609402 (D.Or. May 9, 2011).

Some courts have declined to require production of underlying identifying data due to privacy concerns pre-certification. For example, in Barret v. Forest Labs, Inc., the court noted:

> There remains the question of the names of the employees whose employment data is to be produced. As defendants suggest, some of the data to be revealed is potentially quite sensitive. Although plaintiffs will undoubted have need for disclosure of the names of collective members if their forthcoming certification motion is granted, they fail to make a persuasive case for immediate disclosure of all names at this stage. They will be free to seek partial or full disclosure irrespective of whether their certification motion is granted, provided that they can demonstrate a specific need for some or all of those names. But they have not yet made that showing.

Barrett v. Forest Labs., Inc., 2015 U.S. Dist. LEXIS 51495 at *8 (S.D.N.Y. April 8, 2015).

However, Barret, as noted in the quote above, indicates that such a link between the data and employee identifying information may nevertheless be discoverable pre-certification. In Wellens v. Daiichi Sankyo, Inc., the court identified what types of needs would justify disclosure of the names and linking information:

---

2 See, e.g., Babbitt v. Albertson's, Inc., 1992 U.S. Dist. LEXIS 19091 at *1617 (N.D.Cal. December 1, 1992) (in ordering names, addresses, telephone numbers and social security numbers of current and past employees produced, the court noted a protective order was sufficient to protect privacy interests and the information could lead to further relevant evidence). The court did not address links to employment data or complaints, but other relevant evidence

discovery from putative class members may lead to anecdotal evidence not captured in the pay and benefits data produced by Defendants, that such evidence is important to bring discrimination claims "convincingly to life," and as such may substantiate Plaintiffs' arguments for class certification. The court will therefore exercise its discretion to permit discovery of putative class members' contact information.

Wellens v. Daiichi Sankyo, Inc., 2014 U.S. Dist. LEXIS 29794 at *7 (N.D.Cal. March 5, 2014).[3]

Here, plaintiffs assert the identifying information will lead to anecdotal evidence relevant to certification of their disparate treatment claim. Specially, plaintiffs contend the information sought will help develop evidence in support of class certification, including: (1) statistical evidence where disparate data files rely on identifying information for connection and analysis; (2) evidence of top management's involvement in discrimination; and (3) anecdotal evidence in support of class certification. With respect to the October 31, 2019, Order, the Court already limited plaintiffs' discovery into the complaints to prevent a "fishing expedition." Implicit in the Court's decision was a limitation on the invasion of privacy interests of employees who have yet to consent to join the lawsuit. Further, only those individuals with complaints similar to the named plaintiffs are appropriately discoverable. The Court notes the existing Protective Order and find it sufficient to protect the privacy interests of the employees who filed the complaints. A link between the complaints and identifying information may better allow plaintiffs to bolster the issues related to certification especially with respect to the disparate treatment claim. Regarding documents demonstrating pay differentials, merit increases, bonuses, equity awards,

---

could include complaints made by the other employees of the type complained of by the named plaintiffs as well as employee data relevant to certification.

3 Nike argues the Wellens Court only allowed discovery of contact information and not disclosure of the names applied to data. However, the court left the door open to a link between the data and the names because the parties had not addressed the privacy concerns in their briefing and noted that the main issue was whether the protective order should include additional protections. Id. at *11-12.

and performance ratings, the identity of the employee regarding that data may help develop anecdotal evidence of disparate treatment as well.

The Court is mindful of the strong privacy interests of the employees who will be identified. The Protective Order (ECF #82) is sufficient to address that concern with the addition of one further restraint on the information provided: Should plaintiffs' counsel seek to contact a named employee in an effort to find anecdotal evidence that may be lacking in the files or complaints themselves, counsel shall first inform the employee of their right to refuse to talk.

## CONCLUSION

Plaintiffs' motion to compel (as stated in their letter to the Court dated March 4, 2020) is granted. Defendant shall produce names and employee ID numbers of employees and witnesses in already produced employment data and workplace complaint documents. All production pursuant to this motion is subject to the Protective Order (ECF #82) entered in this case on June 17, 2019, with the additional requirement that any contacted employee shall first be informed of a right to refuse to talk at this stage of the proceedings.

DATED this 23rd day of March, 2020.

          /s/ Jolie A. Russo
          JOLIE A. RUSSO
          United States Magistrate Judge