AMY JOSEPH PEDERSEN, OSB No. 853958
amy.joseph.pedersen@stoel.com
KENNON SCOTT, OSB No. 144280
kennon.scott@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 300
Portland, OR  97205
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
ZACH P. HUTTON, Cal. SB# 234737 (*pro hac vice*)
zachhutton@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Attorneys for Defendant NIKE, INC.


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, SARA JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated, | Case No.:  3:18-cv-01477-JR |
| Plaintiffs, | DEFENDANT NIKE, INC.'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER PURSUANT TO FED. R. CIV. P. 72(a) |
| v. | REQUEST FOR ORAL ARGUMENT |
| NIKE, INC., an Oregon Corporation, | |
| Defendant. | |

# <u>TABLE OF CONTENTS</u>

**Page**

I.    PRELIMINARY STATEMENT ....................................................... 6

II.   PROCEDURAL BACKGROUND........................................................ 7

III.  ARGUMENT ................................................................................. 9

    A.    Standard Of Review Under Rule 72(a). ................................. 9

    B.    Pursuant To Rule 72(a), The Court Should Set The Order Aside As
        Clearly Erroneous And Contrary To Law............................................ 11

    1.    The Order Misapplies On-Point Case Law In Which Courts Declined To
        Compel Exactly The Same Discovery. ............................................. 11

    2.    The Order Ignores The Ninth Circuit's Recent Decision In Williams-
        Sonoma. ................................................................................. 15

    3.    The Order Fails To Apply Rule 26's Proportionality Requirements Or
        Balance Privacy Considerations With The Discovery Sought, Which The
        Protective Order Is Insufficient To Adequately Protect. ...................... 18

IV.   CONCLUSION................................................................................ 24

# TABLE OF AUTHORITIES

Page

CASES

*Babbitt v. Albertson's, Inc.*,
  No. C-92-1883 SBA (PJH), 1992 U.S. Dist. LEXIS 19091
  (N.D. Cal. Dec. 1, 1992)).........................................................................................23

*Barrett v. Forest Labs., Inc.*,
  No. 12-cv-05224(RA) (MHD), 2015 U.S. Dist. LEXIS 51495
  (S.D.N.Y. Apr. 8, 2015)..................................................................................... *passim*

*Cedano v. Thrifty Payless, Inc.*,
  No. CV-10-237-HZ, 2011 U.S. Dist. LEXIS 155956
  (D. Or. May 9, 2011) ...............................................................................................23

*Coleman v. Jenny Craig, Inc.*,
  No. 11-cv-1301-MMA (DHB), 2013 U.S. Dist. LEXIS 82815
  (S.D. Cal. June 12, 2013)...................................................................................21, 23

*Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*,
  508 U.S. 602 (1993)...................................................................................................9

*Crispin v. Christian Audigier, Inc.*,
  717 F. Supp. 2d 965 (C.D. Cal. 2010) ...............................................................9, 10

*Cuevas v. ConAm Mgmt. Corp.*,
  No. 18cv1189-GPC(LL), 2019 U.S. Dist. LEXIS 77268
  (S.D. Cal. May 7, 2019).............................................................................................20

*Estate of Merchant v. C.I.R.*,
  947 F.2d 1390 (9th Cir. 1991) ................................................................................10

*In re Williams-Sonoma, Inc.*,
  947 F.3d 535 (9th Cir. 2020) ............................................................................ *passim*

*Ingram v. Pac. Gas & Elec. Co.*,
  No. 12-cv-02777-JST, 2013 U.S. Dist. LEXIS 169026
  (N.D. Cal. Nov. 22, 2013).........................................................................................10

*Khalilpour v. Cellco P'ship*,
  No. C 09-02712 CW (MEJ), 2010 U.S. Dist. LEXIS 43885
  (N.D. Cal. Apr. 1, 2010) ...........................................................................................23

*Makaneole v. SolarWorld Indus. Am., Inc.*,
  No. 3:14-CV-1528-PK, 2016 U.S. Dist. LEXIS 182243 (D. Or. Sept. 2, 2016)....................18

## TABLE OF AUTHORITIES

(continued)

**Page**

*Margulies v. Tri-County Metro. Transp. Dist.*,
No. 3:13-cv-00475-PK, 2013 U.S. Dist. LEXIS 146484 (D. Or. Oct. 10, 2013) ...................18

*Mitchell v. Acosta Sales, LLC*,
No. CV 11-1796-GAF, 2011 U.S. Dist. LEXIS 165693
(C.D. Cal. Aug. 29, 2011) ........................................................................................................18

*Nguyen v. Baxter Healthcare Corp.*,
275 F.R.D. 503 (C.D. Cal. 2011) ..............................................................................21, 22, 23

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) ..........................................................................................................16, 17

*Quatama Park Townhomes Owners Ass'n v. RBC Real Estate Fin., Inc.*,
365 F. Supp. 3d 1129 (D. Or. 2019) .......................................................................................10

*Rawcar Grp., LLC v. Grace Med., Inc.*,
No. 13-cv-1105 H (BLM), 2014 U.S. Dist. LEXIS 112071
(S.D. Cal. Aug. 4, 2014) ..........................................................................................................10

*Rose v. Wildflower Bread Co.*,
No. CV09-1348-PHX-JAT, 2011 U.S. Dist. LEXIS 5426
(D. Ariz. Jan. 20, 2011) ...........................................................................................................18

*Salgado v. Land O' Lakes, Inc.*,
No. 1:13-CV-0798-LJO-SMS, 2014 U.S. Dist. LEXIS 175158
(E.D. Cal. Dec. 17, 2014) ..........................................................................................20, 21, 22

*Sargant v. HG Staffing, LLC*,
No. 3:13-cv-00453-LRH-WGC, 2014 U.S. Dist. LEXIS 56580
(D. Nev. Apr. 22, 2014) .............................................................................................21, 22, 23

*Stallworth v. Brollini*,
288 F.R.D. 439 (N.D. Cal. 2012) ............................................................................................20

*Talavera v. Sun Maid Growers of Cal.*,
No. 1:15-cv-00842-AWI-SAB, 2017 U.S. Dist. LEXIS 16509
(E.D. Cal. Feb. 6, 2017) ...........................................................................................................19

*Thomas-Byass v. Michael Kors Stores (Cal.), Inc.*,
No. EDCV 15-00369-JGB, 2015 U.S. Dist. LEXIS 127906
(C.D. Cal. Sept. 22, 2015) ..................................................................................................19, 20

**TABLE OF AUTHORITIES**
(continued)

Page

*U.S. v. McConney*,
    728 F.2d 1195 (9th Cir. 1984), *overruled on other grounds* by *Estate of*
    *Merchant v. CIR*, 947 F.2d 1390 (9th Cir. 1991).....................................................10

*Weeks v. Union Pac. R.R. Co.*,
    No. 1:13-CV-1641 AWI JLT, 2017 U.S. Dist. LEXIS 68441
    (E.D. Cal. May 3, 2017)..........................................................................................9, 11

*Wellens v. Daiichi Sankyo, Inc.*,
    No. 3:13-cv-00581-WHO (DMR), 2014 U.S. Dist. LEXIS 29794
    (N.D. Cal. Mar. 5, 2014) ...................................................................... *passim*

*Whalen v. Roe*,
    429 U.S. 589 (1977)......................................................................................20

**STATUTES**

28 U.S.C.
    § 636(b)(1)(A).................................................................................................9
    § 2106............................................................................................................9

29 U.S.C. § 206(d)(1) (Equal Pay Act of 1963) ................................................. *passim*

42 U.S.C. § 2000e (Title VII of the Civil Rights Act of 1964) ...........................7, 9, 18

**RULES**

Fed. R. Civ. Proc. 23.........................................................................................16, 18, 23

Fed. R. Civ. Proc. 26.....................................................................................16, 18, 19, 23

Fed. R. Civ. Proc. 26(b)(1) ..........................................................................11, 16, 18, 19

Fed. R. Civ. Proc. 72(a) ......................................................................................... *passim*

**OTHER AUTHORITIES**

12 Charles Alan Wright and Arthur R. Miller, *et al., Federal Practice and*
    *Procedure: Civil* § 3069 (3d ed. 2018) ..................................................................10

## I.     PRELIMINARY STATEMENT

Defendant Nike, Inc. ("Nike") respectfully objects to the Magistrate Judge's discovery order dated March 23, 2020 (Dkt. # 99, the "Order") and requests that the Court set it aside pursuant to Federal Rule of Civil Procedure 72(a) as clearly erroneous and contrary to law.

The discovery at issue concerns Nike's use of anonymized identifiers for the 13,400 current and former male and female employees represented in seven years' worth of extensive, highly-sensitive personal and financial data that Nike produced to Plaintiffs. **The discovery at issue does not concern a class list, nor does it concern class member contact information.** Instead, the Order compels Nike to unblind its data — and provide Plaintiffs' counsel with the identities of tens of thousands of Nike employees linked to highly confidential personnel data, including compensation, performance, leave, dates of birth, and termination information — by relying on inapposite case law.  Dkt. # 99.  Nike is not aware of any court that has compelled such sweeping discovery, especially prior to certification of any class or collective claims.  For good reason.  In fact, in all of the cases cited by either Party, the only two courts to have considered the issue **declined** to compel production, citing the critical privacy interests held by employees who have not consented to disclosure of their confidential information, and the pre-certification stage of the case.  Notably, both courts declined to compel production, even though the parties had binding protective orders that would have prevented further dissemination of the information.  Likewise here, the protective order in this case does not adequately protect employee interests because the privacy violation occurs at disclosure, even if that disclosure is to a limited group of people.  Indeed, even with a protective order in place, millions of data points about 13,400 employees will be disclosed to Plaintiffs' counsel, which, based on the docket, includes at least fourteen different attorneys across four different law firms, plus their unknown

number of support staff.  This should not occur without the knowledge and consent of those

13,400 individuals.

Plaintiffs have all of the data they need for their class certification motion.  They do not

need to link this data to specific individuals at this stage of the case.  To the extent any individual

consents to disclosure of their personal data, Nike will provide it.  But disclosure of such a broad

data set linked to individual current and former employees who have not consented to disclosure

is not supported by law.  As explained more fully below, Nike urges the Court to undertake de

novo review and set aside the Order under Rule 72(a).  Nike further requests oral argument on its

objections.

## II.    PROCEDURAL BACKGROUND

Plaintiffs assert various claims related to pay, promotion, and job channeling under the

Federal Equal Pay Act ("EPA"), Title VII of the Civil Rights Act of 1964, and related Oregon

state law.  *See* Dkt. # 42.  Plaintiffs seek to bring their claims on a class and collective action

basis, but have not yet sought certification of any of their claims.  Furthermore, despite the fact

that this lawsuit has been pending since August 2018 and has received significant publicity, only

thirteen individuals have consented to join this action: four named Plaintiffs, and nine opt-in

Plaintiffs.  One individual who consented to join already opted out.  Dkt. # 61.  This is striking

when compared to Plaintiffs' estimate of the thousands of employees at issue.  Dkt. # 42 ¶ 44.

In the course of discovery, Nike produced approximately 995,000 lines of data for nearly

13,400 current and former employees, spanning the time period of August 2012 (three years

prior to the start of the statutory period for Plaintiffs' EPA claim) until September 2019 (the end

of Nike's last fiscal year).  These extensive files include highly-sensitive personal and financial

information detailing those 13,400 employees' compensation (including merit increases,

bonuses, and equity awards), as well as dates of birth, performance review ratings, promotions,

and dates of leave, retirement, and termination, including whether the termination was involuntary.  The 13,400 current and former employees represented in the data include thousands of males outside of the proposed class and collective, as well as thousands of putative class and collective members who have not consented to join this lawsuit or to the disclosure of their confidential information.

Recognizing the pre-certification stage of this case, and to protect each individual's personal interest in maintaining the privacy of their information, Nike produced the data without employee names.  Further, recognizing that some of the named and opt-in Plaintiffs are current Nike employees, and can use employee ID numbers to link this sensitive information to specific individuals, Nike replaced employee ID numbers with anonymized identifiers that are consistent across all data fields.  To enable Plaintiffs' counsel to identify the records associated with the individuals they represent — and who thus have consented to the disclosure of their confidential information to counsel — Nike provided Plaintiffs' counsel with a list of the anonymous identification numbers associated with Plaintiffs Cahill, Elizabeth, Hender, and Johnston, as well as the nine opt-in Plaintiffs.  As Nike has communicated to Plaintiffs' counsel, it will also produce the anonymous identification numbers for any individuals who consent to join this lawsuit in the future, or who provide written authorization for the disclosure of their information.

Thus, Plaintiffs have all of the relevant data they need to analyze whether there is statistical evidence to support their class and collective claims; Nike's use of anonymized identifiers instead of the individuals' names or employee ID numbers has no impact on their ability to do so.  Despite this wealth of information, Plaintiffs claimed it was not enough.  They sought to "unblind" the data and compel the names and ID numbers of the 13,400 current and former male and female employees linked to this highly-sensitive personal and financial

information.  The Parties participated in a telephonic discovery hearing on March 19, 2020, and

the Order issued on March 23, 2020.  Dkt. # 99.  Therein, and as discussed in more detail below,

the Order granted Plaintiffs' request in full[1] and compelled Nike to de-anonymize its data.  *Id.*

These objections followed.

## III.    ARGUMENT

### A.    Standard Of Review Under Rule 72(a).

The District Court should review the Magistrate's Order de novo.  Federal Rule of Civil

Procedure 72(a) governs a district court's review of non-dispositive rulings by a magistrate

judge.  Fed. R. Civ. P. 72(a).  The Rule provides that "[t]he district judge in the case must

consider timely objections and modify or set aside any part of the order that is clearly erroneous

or is contrary to law."  *Id.*; 28 U.S.C. § 636(b)(1)(A).  As such, the district court, "[a]cting as an

appellate court . . . has the power to 'affirm, modify, vacate, set aside or reverse' the magistrate

judge's order and 'may remand the cause and direct the entry of such appropriate judgment,

decree or order, or require such further proceedings . . . as may be just under the circumstances.'"

*Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 971 (C.D. Cal. 2010) (quoting

28 U.S.C. § 2106).

Under Rule 72(a), the "clearly erroneous" standard — which applies to a magistrate

judge's findings of fact — is deferential, requiring "a definite and firm conviction that a mistake

has been committed."  *Crispin*, 717 F. Supp. 2d at 971 (quoting *Concrete Pipe & Prods. v.

Constr. Laborers Pension Trust*, 508 U.S. 602, 623 (1993)).  In contrast, the "contrary to law"

standard — which applies to a magistrate judge's finding of law — calls for "independent

---

[1] The Order also compelled Nike to remove redactions of the names and employee ID numbers
of employees and witnesses identified in workplace complaint documents.  Nike does not object
to this portion of the Order.

plenary review." *Weeks v. Union Pac. R.R. Co.*, No. 1:13-CV-1641 AWI JLT, 2017 U.S. Dist.

LEXIS 68441, at *15 (E.D. Cal. May 3, 2017) (sustaining objections to a magistrate judge's

order under Rule 72(a) after conducting an independent, plenary review); *see also Quatama Park*

*Townhomes Owners Ass'n v. RBC Real Estate Fin., Inc.*, 365 F. Supp. 3d 1129, 1141-42 (D. Or.

2019) (reversing magistrate judge's order as contrary to law under Rule 72(a) after conducting

plenary review); *Rawcar Grp., LLC v. Grace Med., Inc.*, No. 13-cv-1105 H (BLM), 2014 U.S.

Dist. LEXIS 112071, at *12 (S.D. Cal. Aug. 4, 2014) ("In an objection under [Rule] 72(a), a

magistrate judge's legal conclusions are subject to de novo review."); *Crispin*, 717 F. Supp. 2d at

991 (reversing in part and vacating in part a magistrate judge's decision under Rule 72(a) after

conducting de novo review).  As Judge Simon of this Court recently observed in undertaking

plenary review of a nondispositive decision by a magistrate judge:

> [I]t is also important to avoid the conclusion that district judges are absolutely
> powerless to alter magistrate-judge resolution of nondispositive matters unless
> they fall into the clearly erroneous category. . . . Moreover, even for those courts
> that adhere to a strict application of the 'clearly erroneous' standard, it is limited
> to factual findings; even the Third Circuit recognized that the phrase 'contrary to
> law' indicates plenary review as to matters of law. . . . The latter is the situation
> that we have here.

*Quatama Park Townhomes Owners Ass'n*, 365 F. Supp. 3d at 1141-42 (quoting 12 Charles Alan

Wright and Arthur R. Miller, *et al., Federal Practice and Procedure: Civil* § 3069 (3d ed. 2018))

(quotation marks and citations omitted).  Of note, for issues involving mixed questions of law

and fact, de novo or plenary review still applies.  *See*, *e.g.*, *Ingram v. Pac. Gas & Elec. Co.*, No.

12-cv-02777-JST, 2013 U.S. Dist. LEXIS 169026, at *7 (N.D. Cal. Nov. 22, 2013) (observing

that under Rule 72(a), "[m]ixed questions of fact and law are reviewed *de novo*") (citing *U.S. v.*

*McConney*, 728 F.2d 1195, 1202-03 (9th Cir. 1984) (en banc), *overruled on other grounds* by

*Estate of Merchant v. C.I.R.*, 947 F.2d 1390, 1392-93 (9th Cir. 1991)).  Finally, an order is

"contrary to law" when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Weeks*, 2017 U.S. Dist. LEXIS 68441, at *15 (quotation marks and citation omitted).

Here, Nike's objections to the Order concern a purely legal question: whether Plaintiffs are entitled to know the names and employee ID numbers of thousands of absent class and collective members — as well as thousands of alleged male comparators outside of the putative class and collective — associated with each of nearly one million lines of highly sensitive pay, promotion, performance, leave, and other employee data, prior to certification of any of Plaintiffs' claims.  Thus, the Order is subject to de novo review by this Court.

**B.    Pursuant To Rule 72(a), The Court Should Set The Order Aside As Clearly Erroneous And Contrary To Law.**

The Court should set aside the Order under Rule 72(a) because, as discussed below, it misapplies on-point case law; ignores controlling Ninth Circuit precedent; fails to apply the proportionality requirement of Federal Rule of Civil Procedure 26(b)(1); and fails to balance compelling privacy considerations with Plaintiffs' alleged need for discovery at this stage of the case.

**1.    The Order Misapplies On-Point Case Law In Which Courts Declined To Compel Exactly The Same Discovery.**

First, the Court should set aside the Order because it misapplies the holdings of two on-point cases[2] where the courts declined to compel the discovery required by the Order, citing privacy reasons and the pre-certification stage of the case.

In *Barrett v. Forest Laboratories, Inc.*, the plaintiffs sought disclosure of employee names as applied to the defendants' data in an EPA/Title VII class action.  *Barrett v. Forest*

---

[2] Which were the only two on-point cases that either Party cited.

*Labs., Inc.*, No. 12-cv-05224(RA) (MHD), 2015 U.S. Dist. LEXIS 51495, at *7-8 (S.D.N.Y. Apr. 8, 2015).  In *Barrett*, like this case, the data sought contained the gender, compensation and employment history — including dates of and reasons for leaves of absence, dates of birth, compensation history (including salary rate and compensation received), performance scores, disciplinary records, and reasons for termination — for 5,000 current and former employees.  *Id.* at *4-5; *see also Barrett*, No. 12-cv-05224(RA) (MHD), Dkt. # 83 pp. 13-14.  Opposing the plaintiffs' request, the defendant noted that the data embodied in the production was highly sensitive, and that plaintiffs had no need (compelling or otherwise) for employees' names, since they could perform their statistical analysis on the data without that information.  *Barrett*, 2015 U.S. Dist. LEXIS 51495, at * 5.  In reply, plaintiffs (like Plaintiffs here) "urge[d] in general terms that [employee names] may be useful in identifying potential witnesses and that the sensitivity of the information may be protected by the governing confidentiality order."  *Id.* at *6.  The court rejected plaintiffs' arguments, finding that their request for employee names as applied to such extensive, private information was premature before certification:

> There remains the question of the names of the employees whose employment data is to be produced.  As defendants suggest, some of the data to be revealed is potentially quite sensitive.  Although plaintiffs will undoubted[ly] have need for disclosure of the names of collective members if their forthcoming certification motion is granted, **they fail to make a persuasive case for immediate disclosure of all names at this stage**.

*Id*. at *7-8 (emphasis added).  Of note, the parties in *Barrett* had a protective order with an "Attorney's Eyes Only" ("AEO") designation in place at the time of plaintiffs' motion to compel (as plaintiffs incorporated into their arguments).  The court still declined to order production. *See Barrett*, No. 12-cv-05224(RA) (MHD), Dkt. # 69.

Likewise, in *Wellens v. Daiichi Sankyo, Inc.*, the plaintiffs sought disclosure of employee names linked to defendant's anonymized production of demographic and employment data in an

EPA/Title VII class action. *Wellens v. Daiichi Sankyo, Inc.*, No. 3:13-cv-00581-WHO (DMR), 2014 U.S. Dist. LEXIS 29794, at *11-12 (N.D. Cal. Mar. 5, 2014). Like *Barrett*, and this suit against Nike, the data contained employment, salary, benefits, training, and promotion history for current and former employees, including approximately 1,500 class members. *Id.* at * 2-3. The court declined to grant plaintiffs' request to "unblind" the data, in part because "pre-certification disclosure of this information raises additional privacy concerns." *Id*. at *11. The court's heightened concerns about employee privacy as related to the data (as opposed to class member contact information, which plaintiffs also sought) is evidenced in the transcript of the parties' oral argument. *Wellens*, No. 3:13-cv-00581-WHO (DMR), Dkt. # 74. There, Judge Ryu explained:

> I am concerned, though, about the issue of taking off the unique identifiers and replacing [them] with the names of class members because that opens it up to much more information well beyond contact information. And really, the case law doesn't talk about it and counsel didn't brief that for me. So, it's possible, one, that that wouldn't be allowed at this stage, I don't know, or, two, if it were, it would be subject to more protection like a *Pioneer* letter or something—some sort of form of notice.

*Id.* at p. 8:15-23. Notably, the plaintiffs (like Plaintiffs here) argued that, without employee names in the data, "it would be very difficult for [them] to efficiently gather anecdotal evidence and link it to the data from a practical standpoint." *Id.* at p. 10:12-14. But Judge Ryu still expressed reservations on that argument, noting privacy concerns and the pre-class certification state of the case:

> There's two different things here. One, we're pre-class cert, so that might be a distinction. So later on, certainly, you would want to make sure that's linked. Two, maybe you get it now, but there are some privacy concerns. And as I – I feel like I'm repeating myself, but there were no cases that were cited by either side that get at this level of information. And there are concerns that were raised in the cases about, you know – well, financial information is different from mere contact information.

*Id.* at p. 10:15-24.  Like *Barrett*, *Wellens* also had a protective order in place at the time of plaintiffs' motions to compel, but the court did not find it sufficient to alleviate the privacy concerns at issue.  *See Wellens*, No. 3:13-cv-00581-WHO (DMR), Dkt. # 49.

The reasoning in *Barrett* and *Wellens* is directly applicable here.  Not only is the discovery at issue premature, its disclosure would gravely invade the privacy of over 13,400 current and former Nike employees — only 0.09% of whom have consented to join this action, and thousands of whom are males outside of the proposed class and collective.

Although the Order touched on *Barrett* and *Wellens*, respectfully, it misapplies their holdings.  For example, the Order interprets *Barrett* as indicating that "such a link between the data and employee identifying information may nevertheless be discoverable pre-certification," and seemingly used that as a basis for compelling discovery, citing Plaintiffs' asserted need for statistical and anecdotal evidence.  Dkt. # 99 p. 6.[3]  But the Order fails to consider that the plaintiffs in *Barrett* made the same arguments regarding a generalized need for anecdotal evidence, which the court squarely rejected.  *Barrett*, 2015 U.S. Dist. LEXIS 51495, at * 6.  The Order also fails to consider that Plaintiffs can perform their statistical analysis on the data without employee names or ID numbers.  Dkt. # 99 p. 6.  The plaintiffs in *Barrett* did not dispute this fact, and neither do Plaintiffs.

Likewise, as to *Wellens*, the Order states that "the court identified what types of needs would justify disclosure of the names and linking information," *see* Dkt. # 99 p. 6, but then incorrectly quotes from the *Wellens* decision in which the court explained its reasons for compelling *employee contact information*:

---

[3] The Order also lists Plaintiffs' asserted need for "evidence of top management's involvement in discrimination," but Nike understands that as applying to the portion of the Order compelling disclosure of names on workplace complaint documents.  Dkt. # 99 p. 6.

> Plaintiffs have demonstrated that discovery from putative class members may lead to anecdotal evidence not captured in the pay and benefits data produced by Defendants, that such evidence is important to bring discrimination claims "convincingly to life," and as such may substantiate Plaintiffs' arguments for class certification. **The court will therefore exercise its discretion to permit discovery of putative class members' contact information.**

*Id.* at p. 7, quoting *Wellens*, 2014 U.S. Dist. LEXIS 29794, at *7 (emphasis added). Thus,

*Wellens* does not stand for the proposition that disclosure of 13,400 employee names and ID

numbers linked to their highly sensitive personal and financial data is warranted pre-certification.

Indeed, as detailed above, the *Wellens* court was not convinced that the plaintiffs' alleged need

for anecdotal evidence was sufficient to justify unblinding the data and infringing on employees'

important privacy interests.

      Finally, the Order concludes that "[t]he Protective Order (ECF # 82) is sufficient to

address [privacy interests]," but this too is contrary to *Barrett* and *Wellens*, where the courts

rejected similar arguments. Dkt. # 99 p. 8. Altogether (and as Nike further elaborates below),

the Order misapplies *Barrett* and *Wellens* because it fails to appropriately consider privacy and

proportionality concerns balanced against the sweeping discovery requested and the pre-

certification stage of this case. For these reasons, Nike respectfully asks the Court to set it aside.

      **2.     The Order Ignores The Ninth Circuit's Recent Decision In *Williams-Sonoma*.**

      Second, the Court should reverse the Order as contrary to the Ninth Circuit's recent

decision in *In re Williams-Sonoma, Inc.*, 947 F.3d 535 (9th Cir. 2020) ("*Williams-Sonoma*"),

which is directly applicable to the discovery at issue here, and which the Order failed to consider

or apply.

      In *Williams-Sonoma*, the Ninth Circuit granted the extraordinary remedy of writ of

mandamus — requiring clear errors of law — on a district court's discovery ruling that

compelled disclosure of putative class members' names and contact information prior to

certification. *Williams-Sonoma*, 947 F.3d at 539.  Vacating the district court's order, the Ninth

Circuit determined that the court "clearly erred as a matter of law" in its order, *id.* at 540,

explaining that "seeking discovery of the name of a class member . . . is not relevant within the

meaning of [Rule 26]" and that "**contrary Supreme Court authority demonstrates the clear**

**error in the district court's decision**." *Id.* at 539 (citing and quoting *Oppenheimer Fund, Inc.*

*v. Sanders*, 437 U.S. 340, 350-53 (1978) ("*Oppenheimer*")) (emphasis added).  To support its

reasoning, the Ninth Circuit relied on the Supreme Court's decision in *Oppenheimer*, which held

that class member names and addresses are generally not "relevant" within the meaning of Rule

26 and do not fall "within the scope of legitimate discovery."  *Oppenheimer*, 437 U.S. at 354.

Further, although the Supreme Court recognized that "[t]here may be instances where this

information could be relevant to issues that arise under Rule 23," it nevertheless "doubted

whether any of these purposes would require compilation of the names and addresses of *all*

members of a large class." *Id*. at 354 n.20.

Applying *Oppenheimer*, the Ninth Circuit recognized that there were "two distinctions"

between that decision and the case before it, further refuting the trial court's decision to order

production of employee names. *Williams-Sonoma*, 947 F.3d at 539.  First, post-*Oppenheimer*

(which the Supreme Court decided in 1978), Rule 26 was amended to its current form, requiring

that discovery sought must be "relevant to any party's claim or defense." *Id.* at 539-40 (quoting

Rule 26(b)(1)).  This change, the court observed, "was intended to **restrict, not broaden**, the

scope of discovery." *Id.* (citing the Rule 26(b)(1) advisory committee's note to the 2000 and

2015 amendments) (emphasis added).  Second, as the Ninth Circuit explained:

> *Oppenheimer* dealt with a case where class certification had already been granted,
> and the moving party sought to obtain a list of members of that class. This case is
> a step removed from that — here counsel is without a lead plaintiff for the class

issues that counsel wishes to pursue, so no class has been certified. **It follows that the request here is less relevant than the request in *Oppenheimer*.**

*Id.* at 540 (emphasis added). Thus, the Ninth Circuit reasoned, "both [distinctions] cut against the district court's decision," and concluded, "[t]he district court clearly erred as a matter of law when it ordered the discovery in question." *Id.* at 539-40.

The same result should issue here. First, like the plaintiff in *Williams-Sonoma* and unlike the plaintiffs in *Oppenheimer*, Plaintiffs have not made any attempt to certify their class or collective claims. Second, unlike the plaintiffs in both *Williams-Sonoma* and *Oppenheimer*, Plaintiffs have sought — and the Order compelled — discovery is that exceedingly broader than the names and contact information for putative class and collective members. Stated differently, the discovery at issue is not a standalone list of class member names; it concerns highly-sensitive personal and financial information for 13,400 individuals — thousands of whom are disinterested, third-party male employees who are not putative class and collective members — who have worked at Nike since August 2012. Nor is the discovery at issue limited to class members' addresses or phone numbers, completely separate from any other private employment information. Rather, the discovery concerns extensive data regarding compensation (including merit increases, bonuses, and equity awards), performance review ratings, promotions, and information related to leaves, retirement, and termination (including whether the termination was involuntary) for 13,400 current and former employees. Applying the Ninth Circuit's reasoning, it follows that the discovery here is far less relevant than the requests in *Oppenheimer* or *Williams-Sonoma*. And, in the words of the Ninth Circuit, these distinctions clearly "cut against the [Order] here." *Id.* at 539-40. For this additional reason, the Court should set aside the Order as contrary to law.

3.     **The Order Fails To Apply Rule 26's Proportionality Requirements Or Balance Privacy Considerations With The Discovery Sought, Which The Protective Order Is Insufficient To Adequately Protect.**

Third, the Court should set aside the Order because compelling disclosure of this confidential information is contrary to case law and Rule 26(b)(1).

Under the amended Rule 26, relevancy alone is no longer sufficient to obtain discovery; the discovery requested must also be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). As the Ninth Circuit observed in *Williams-Sonoma*, the intent of the December 2015 amendment to Rule 26 was to restore the proportionality factors to discovery in the federal courts. *See Williams-Sonoma*, 947 F.3d at 539; Advisory Committee Notes to Rule 26(b)(1) 2015 Amendment. But even before the 2015 amendment, courts strictly limited discovery during the pre-certification stage of collective actions (including EPA claims). *See, e.g., Mitchell v. Acosta Sales, LLC*, No. CV 11-1796-GAF (OPx), 2011 U.S. Dist. LEXIS 165693, at *14-16 (C.D. Cal. Aug. 29, 2011) ("[T]he weight of authority in this Circuit and others, finds such discovery [of class member names is] premature unless conditional certification has been granted."); *see also Margulies v. Tri-County Metro. Transp. Dist.*, No. 3:13-cv-00475-PK, 2013 U.S. Dist. LEXIS 146484, at *49 (D. Or. Oct. 10, 2013) (observing "that a defendant is not required to provide [names of] potential plaintiffs until after the court has conditionally certified the collective action").[4] Likewise, in the pre-certification stage of a Rule 23 putative class action, courts have limited, and continue to limit, discovery to certification issues such as commonality, typicality, or the plaintiff's ability to adequately represent the class — which are the plaintiff's burden to show. *See Makaneole v. SolarWorld Indus. Am., Inc.*, No. 3:14-CV-

---

[4] *See also Rose v. Wildflower Bread Co.*, No. CV09-1348-PHX-JAT, 2011 U.S. Dist. LEXIS 5426, at *6 (D. Ariz. Jan. 20, 2011) ("The FLSA does not require defendants to provide contact information for potential plaintiffs before the court certifies the collective action.").

1528-PK, 2016 U.S. Dist. LEXIS 182243, at *52, *78-79 (D. Or. Sept. 2, 2016) (denying motion to compel disclosure of names and information for absent putative class members as premature, finding plaintiff was "not at this time entitled to the requested information").

The Order is clearly erroneous and contrary to law because it ignores the foregoing standards.  First, the Order fails to cite, much less apply, Rule 26 and its proportionality requirements.  *See generally* Dkt. # 99.  Thus, the Order fails to weigh proportionality against Plaintiffs' asserted need for discovery, which only amounts — at best — to a generalized desire for anecdotal evidence.  This argument fails to pass muster, much less justify individualized, class-wide discovery of highly sensitive personal and financial information for 13,400 individuals without their knowledge or consent.[5]  Unsurprisingly, courts that have applied these standards (like *Williams-Sonoma*, as well as *Barrett* and *Wellens*) have declined to do so.  For example, in *Talavera v. Sun Maid Growers of California*, the court discussed proportionality concerns under Rule 26(b)(1) and declined to compel class-wide discovery of all time and payroll records, finding the request premature:

> [T[he Court must also consider that proportionality of the discovery requested to the needs of the case. . . . Here, Plaintiff is seeking punch, time and pay records for all putative class members. **While Plaintiff is entitled to conduct some discovery in preparation of the motion for class certification, discovery of all putative class member pay, punch, and time information goes to the merits and is beyond the discovery needed in preparing the class certification motion**.

*Talavera v. Sun Maid Growers of Cal.*, No. 1:15-cv-00842-AWI-SAB, 2017 U.S. Dist. LEXIS 16509, at *10-12 (E.D. Cal. Feb. 6, 2017) (emphasis added).  Likewise, in *Thomas-Byass v. Michael Kors Stores (Cal.), Inc.* (which even pre-dated the 2015 amendment), the court declined to compel disclosure of class-wide payroll records prior to certification where, as here, plaintiffs

---

[5] On that note, it is also unclear to Nike how disclosure of male employees' names and ID numbers as applied to their data would assist Plaintiffs with gathering anecdotal evidence at all.

only asserted a conclusory need for the information to show "numerosity and commonality."

*Thomas-Byass v. Michael Kors Stores (California), Inc.*, No. EDCV 15-00369-JGB (KKx), 2015

U.S. Dist. LEXIS 127906, at *11 (C.D. Cal. Sept. 22, 2015); *see also Cuevas v. ConAm Mgmt.*

*Corp.*, No. 18cv1189-GPC(LL), 2019 U.S. Dist. LEXIS 77268, at *12 (S.D. Cal. May 7, 2019)

("Plaintiff's argument seeking broad or full discovery in order to prosecute her claims during the

pre-certification stage is contrary to case law.").

      Second, the Order is contrary to law because it fails to appropriately weigh the

compelling privacy interests of the 13,400 current and former Nike employees, whose

confidential personnel data will be produced without their knowledge or consent.[6]  Indeed, even

where some discovery may be "relevant" to class or collective certification issues, courts must

carefully balance the need for discovery against privacy considerations, including whether the

information sought is available via other less burdensome means.  As one court has explained:

> Even when discovery of private information is found directly relevant to the
> issues of ongoing litigation, it will not be automatically allowed; there must then
> be a careful balancing of the compelling . . . need for discovery against the
> fundamental right of privacy.

*Salgado v. Land O' Lakes, Inc.*, No. 1:13-CV-0798-LJO-SMS, 2014 U.S. Dist. LEXIS 175158,

at *23 (E.D. Cal. Dec. 17, 2014) (quotation marks omitted).  Citing privacy reasons, the *Salgado*

court declined to compel discovery of payroll records for each putative class member:

> [T]his Court finds that the privacy concerns inherent in the discovery of putative
> class members' payroll records outweigh Plaintiff's need for specific rates.
> Plaintiff also has other ways to get this information. If the action is conditionally
> certified, he could obtain individual payroll records directly from the opt-in

---

[6] Federal courts recognize a constitutional right to privacy encompassing a right to nondisclosure of one's personal information.  *See Stallworth v. Brollini*, 288 F.R.D. 439, 444 (N.D. Cal. 2012) ("The United States Supreme Court has recognized a constitutional right to privacy, more specifically, a constitutional right to nondisclosure of one's personal information.") (citing *Whalen v. Roe*, 429 U.S. 589, 599 (1977)).

plaintiffs. If Plaintiff's counsel and new opt-in plaintiffs find that they do not have
their payroll documents, counsel can request them from Defendants at that time.

*Id.* at *26.  Likewise, in *Nguyen v. Baxter Healthcare Corp.*, the court declined to compel class

members' individual pay check stubs and wage statements in a wage-and-hour class action,

finding that privacy interests weighed against disclosure, especially prior to certification:

> [T]he Court concludes that Plaintiff does not need documents detailing [pay check
> stubs and] wage payments at this time. Documents detailing wage payments
> contain more confidential and sensitive information than simply time records or
> contact information. Accordingly, balancing Plaintiff's need for the information
> against the asserted privacy interests, the Court finds that the privacy interests
> weigh against providing this information. Plaintiff's counsel can still obtain this
> information from any individual employee who chooses to participate in this
> litigation and voluntarily provides such information.

*Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 503, 512-13 (C.D. Cal. 2011); *see also Coleman*

*v. Jenny Craig, Inc.*, No. 11-cv-1301-MMA (DHB), 2013 U.S. Dist. LEXIS 82815, at *34-35

(S.D. Cal. June 12, 2013) (quoting *Nguyen*, "the Court finds that privacy concerns justify

withholding from production [putative class members'] payroll records").  And similarly, the

court in *Sargant v. HG Staffing, LLC* declined to compel payroll records — despite a protective

order — prior to certification in a class and collective action:

> [T]he court finds that the privacy concerns inherent in the discovery of the pay
> rates for each of the potential opt-in plaintiffs which would come from payroll
> records outweigh Plaintiffs' asserted need for this information. If the action is
> conditionally certified, Plaintiffs may then address obtaining this information
> from the opt-in plaintiffs.

*Sargant v. HG Staffing, LLC*, No. 3:13-cv-00453-LRH-WGC, 2014 U.S. Dist. LEXIS 56580, at

*2-3, *13 (D. Nev. Apr. 22, 2014).  Here, too, Plaintiffs' asserted need to unblind the data fails to

outweigh the heightened privacy interest of 13,400 individuals whose highly-sensitive personal

and financial information is at stake.  Indeed, Plaintiffs do not need names or ID numbers to

perform a statistical analysis, as the unique anonymous identifiers will unquestionably allow

them to do so (which Plaintiffs did not dispute).  What's more, Plaintiffs can obtain anecdotal evidence from any individuals who consent to join this action or consent to the disclosure of their information, or through the workplace complaint files Nike has produced (in addition to other methods of discovery) — as the *Salgado*, *Nguyen*, *Sargant*, and other courts have recognized. Plaintiffs also failed to specifically articulate what anecdotal evidence they would even obtain from adding employee names to the data production.

Third, and further to this point, the Parties' protective order (Dkt. # 82) does not alleviate these privacy concerns, as it does not address the disclosure of millions of data points about 13,400 employees.  Nor is an AEO restriction, or the Order's requirement that "counsel shall first inform the employee of their right to refuse to talk," sufficient.  Dkt. # 99 p. 8.  This is because the significant invasion of privacy irreparably occurs in the very act of disclosure.  As the Ninth Circuit noted in *Williams-Sonoma*, upon disclosure, the "damage to [defendant's] (and [putative class members']) interests would be complete."  *Williams-Sonoma*, 947 F.3d at 540. Furthermore, the 13,400 men and women whose privacy interests are at stake will have no remedy to re-privatize their information (which they never consented to release in the first place).  In other words, they will not be able to un-ring the bell.  These concerns are further borne out in the case law cited by Nike.  For example, as noted above, both the *Barrett* and *Wellens* courts declined to compel production of exactly the same discovery, unpersuaded by plaintiffs that the protective orders were sufficient to protect the expansive, highly-sensitive information sought.  *Barrett*, 2015 U.S. Dist. LEXIS 51495, at *7-8; *Wellens*, 2014 U.S. Dist. LEXIS 29794, at *11-12.  Likewise, although the *Nguyen* court found that a protective order (plus an opt-out notice) could adequately protect certain information sought by plaintiffs, not so for employee pay check stubs and wage payment records — which the court declined to compel

outright. *Nguyen*, 275 F.R.D. at 512-13. The *Coleman* and *Sargant* courts did the same,
applying protective order restrictions to other discovery but denying the plaintiffs' motions to
compel individualized pay information altogether, citing heightened privacy considerations.
*Coleman*, 2013 U.S. Dist. LEXIS 82815, at *31-33; *Sargant*, 2014 U.S. Dist. LEXIS 56580, at
*11-13.

Fourth, respectfully, the Order's reliance on *Cedano* and *Babbitt* is misplaced. Dkt. # 99
p. 6 (citing *Cedano v. Thrifty Payless, Inc.*, No. CV-10-237-HZ, 2011 U.S. Dist. LEXIS 155956
(D. Or. May 9, 2011); *Babbitt v. Albertson's, Inc.*, No. C-92-1883 SBA (PJH), 1992 U.S. Dist.
LEXIS 19091, at *1617 (N.D. Cal. Dec. 1, 1992)). As a preliminary matter, neither case
considered proportionality, as they pre-dated the 2015 amendment to Rule 26. Additionally,
both cases compelled discovery only of class member names and contact information in the
context of a pure Rule 23 class action. This is an important distinction from the discovery
compelled by the Order, which calls for Nike to unblind the highly sensitive personal and
financial information of 13,400 current and former employees — thousands of whom are men
outside of the putative class and collective. As the *Wellens* court observed in declining to
compel the same discovery, "financial information is different from mere contact information."
*Wellens*, No. 3:13-cv-00581-WHO (DMR), Dkt. # 74 p. 10:15-24; *see also Khalilpour v. Cellco
P'ship*, No. C 09-02712 CW (MEJ), 2010 U.S. Dist. LEXIS 43885, at *9 (N.D. Cal. Apr. 1,
2010) ("[T]he disclosure of names, addresses, and telephone numbers is common practice in the
class action context *because it does not involve revelation of personal secrets, intimate activities,
or similar private information*.") (emphasis added). Thus, the Order's reliance on *Cedano* and
*Babbitt* is unavailing.

Respectfully, the Order is clearly erroneous and contrary to law, and should be set aside.

## IV.     CONCLUSION

For the foregoing reasons, Nike respectfully asks the Court to set aside and reverse the

Order as it relates to Nike's production of employee data.

Dated:  April 6, 2020                          Respectfully submitted,


                                               /s/ Felicia A. Davis
                                               Daniel Prince, Cal. SB# 237112 (*pro hac vice*)
                                               danielprince@paulhastings.com
                                               Zach P. Hutton, Cal. SB#234737 (*pro hac vice*)
                                               zachhutton@paulhastings.com
                                               Felicia A. Davis, Cal. SB# 266523 (*pro hac vice*)
                                               feliciadavis@paulhastings.com
                                               PAUL HASTINGS LLP
                                               515 South Flower Street, 25th Floor
                                               Los Angeles, CA  90071-2228
                                               Telephone:  (213) 683-6000
                                               Facsimile:  (213) 627-0705

                                               Amy Joseph Pedersen, OSB No. 853958
                                               amy.joseph.pedersen@stoel.com
                                               Kennon Scott, OSB No. 144280
                                               kennon.scott@stoel.com
                                               STOEL RIVES LLP
                                               760 SW Ninth Avenue, Suite 3000
                                               Portland, OR  97205
                                               Telephone:  (503) 294-9408
                                               Facsimile:  (503) 220-2480

                                               Attorneys for Defendant NIKE, INC.