UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

KELLY CAHILL, SARAH JOHNSTON,                                      3:18-cv-1477-JR
LINDSAY ELIZABETH, and HEATHER
HENDER, individually and on behalf of others
similarly situated,                                                ORDER

                                    Plaintiffs,

                      v.

NIKE, INC., an Oregon Corporation,

                                    Defendant.

RUSSO, Magistrate Judge:

        Named plaintiffs Kelly Cahill, Sara Johnston, Lindsay Elizabeth, and Heather Hender

bring this putative class and collective action alleging that defendant Nike systematically

discriminates against them and other similarly situated women at Nike headquarters regarding

salary and promotions.   Several additional plaintiffs have filed consents to join this action.

        In October, the Court addressed plaintiffs' request to compel (1) documents related to

Nike's public statements about sex discrimination allegations raised in this action; (2) complaints

of sex discrimination made by putative class members to Nike and Nike's responses, if any; (3)

three former high-level Nike executives who plaintiffs have specifically alleged contributed to or

participated in sex discrimination; and (4) applicable insurance policies.   The Court ordered as

follows:

> After considering the parties' comprehensive briefing and oral argument on
> October 30, 2019, plaintiffs' September 27, 2019 letter request to the Court to
> compel precertification discovery is Granted in Part and Denied in Part as follows:
> 1) With respect to Nike's Public Statements on Discrimination (RFPs 39-43 and
> 47), Nike shall produce the statements themselves and the motion is denied with
> respect to any further documentation regarding the public statements. However, to
> the extent not already produced, Nike shall produce any uniform policies it
> maintained during the relevant time periods regarding hiring, firing, pay,
> promotions, and compensation systems; 2) With respect to documents concerning
> sex discrimination, harassment, and hostile work environment complaints (RFPs
> 27, 29, and 45-46), the motion is granted regarding any such complaints made by
> any named plaintiff or those putative plaintiffs who have already consented to join
> and any other complainants to the extent such complaints involve compensation,
> promotion, or performance reviews and specific complaints that male colleagues
> received favorable treatment in those areas for the same work; 3) With respect to
> the personnel records of former Nike executives Trevor Edwards, Daniel Tawiah,
> and David Ayre (RFPs 34-38), the motion is granted to the extent the records
> contain complaints of sexual harassment/discrimination linked to policies of
> pay/promotions and job duties either by the named executives themselves or
> regarding actions these executives may have taken to condone pay/promotion and
> job duty discrimination decisions of lower level managers; and 4) With respect to
> insurance policies (RFP 51) the motion is denied. All production pursuant to this
> motion is subject to the Protective Order (82) entered in this case on June 17,
> 2019, as relevant and necessary.

Order (#89).

On June 30, 2020, plaintiffs submitted a letter to the Court regarding alleged deficiencies

in Nike's response to the October Order.

Specifically, plaintiffs seek an order compelling Nike to:

(1) produce documents responsive to certain RFPs that seek documents concerning

Page 2  - ORDER

Nike's retention policies and systems Nike uses to store, locate, and create potentially relevant documents and data (RFPs 2-3 and 32);

(2) provide declarations detailing the nature of Nike's inquiry to locate responsive documents; and

(3) provide a declaration identifying the documents produced that are responsive to each of the Order's subparts 1-3 compelling discovery.

The Court has reviewed the parties' nearly 100 pages of briefing on these issues. The request to compel and plaintiffs' individual requests are granted and denied as follows:

A.    Policies Regarding Salaries

1.    Prior Salary History

Plaintiffs assert Nike has failed to produce policies regarding the collection and/or use of prior compensation history prior to August 24, 2017.  Nike states it has not located any policy concerning the collection and use of prior compensation history.

Nike shall make one final attempt at locating any such policies and if such records exist produce them to plaintiffs. If Nike reports that no such records exist, the Court will accept Nike's representation on this issue.

2.    Policies Regarding Pay Ranges and Market Zones

Plaintiffs argue Nike has failed to produce its policies regarding pay ranges or market zones, including the jobs linked to the pay ranges or market zones.  To the extent Nike has not produced the actual guidelines rather than general statements or overviews, it shall provide such policies to plaintiffs.

3.      Salary Increases at Promotion or During Employee Annual Review

Plaintiffs assert Nike has failed to produce policies regarding its "performance rating guidelines" used to make salary increase determinations during the annual review applicable before 2018.   Nike shall produce these documents to plaintiffs.

B.      Policies Regarding Bonus and Equity Awards

1.      Annual Bonuses

Plaintiffs argue Nike had 18 Performance Sharing Plan (PSP) plans until fiscal year 2018 and 11 PSP plans in fiscal year 2018 but has failed to produce any policies for the pre-2018 period created for decision-makers to use.   To the extent Nike has responsive documents, beyond brochures, that specifically detail the PSP used by policymakers, it shall provide them to plaintiffs.

2.      Bonus Awards

Plaintiffs contend it has received documents indicating Nike has paid bonuses two times per year, but Nike has failed to produce polices regarding twice yearly bonuses prior to 2018 including how those bonuses were determined.   Nike shall produce these documents to plaintiffs if they exist.

3.      Equity Awards

Plaintiffs argue Nike makes equity awards to some employees (those in the E band or higher) but has failed to produce policies for calculating and determining the awards.   To the extent Nike has documents regarding these policies it shall produce them to plaintiffs.

4.      Budgets Used for Compensation

Plaintiffs assert Nike's Budgeting system for finalizing salary increases adversely impacts women and that Nike has failed to produce polices for creating or applying budgets to compensation determinations prior to 2018.  To the extent Nike has such documents it shall produce them to plaintiffs.

C.      Promotions

Plaintiffs note that Nike eliminated a promotion policy called "preferred candidate" in 2019. Since at least 2010, Nike has had a promotion policy called "Excelerate" for senior director level employees to prepare them for the next level of leadership. However, Nike has failed to produce such policies from before 2019.  Nike shall make another attempt at locating such documents and to the extent they exist, it shall produce the "preferred candidate" policy to plaintiffs.   To the extent Nike has documents concerning the "Excelerate" policy, those should be produced.

D.      Job Architecture and Job Groupings

1.      Job Architecture

Plaintiffs argue Nike has not produced any polices regarding job architecture from before 2019 or the elements and factors used to create or modify the job architecture, how the elements and factors are applied, or each of the ways the job architecture affected compensation or promotions.

To the extent there are more responsive documents to this request, i.e., those that define each job grouping, the elements and factors used to create or modify the job architecture, and

Page  5  - ORDER

how the elements and factors are applied, those should be produced.

      2.      <u>Job Groupings, Job Codes, Band Level, and Job Level</u>

Plaintiffs argue Nike has policies related to the determination of whether employees are in the correct job code, salary, and band but has failed to produce policies showing which job codes apply to which pay ranges.   Plaintiffs also assert Nike did not produce policies that used job codes as a starting point to assess key talent, career paths and organization size and shape, or the polices for determining whether employees are in the correct job code/band/level.   In addition, plaintiffs assert Nike has not produced job function policies from before 2019 reflecting how it grouped work of similar characteristics or skills into a job function.   Plaintiffs similarly assert Nike has not produced policies, prior to 2018, regarding band and job levels, i.e., how it organizes jobs into bands and levels, including how Nike uses surveys to create job levels, what surveys are used, and how the job levels ensure Nike's pay programs are both competitive and equitable as well as leveling criteria.

Nike appears to have failed to produce policies describing job codes and how they establish pay ranges and assess career paths, or how it grouped jobs, etc.   If they exist, they shall be produced.

E.      <u>Policies Regarding Workplace Complaints</u>

Plaintiffs assert that within the "toolkit" used by Nike for workplace complaint investigations is a document called "Internal Investigation Guidance," and that Nike has not produced any version of the document.   Plaintiffs also assert Nike has not produced any pre-2019 versions of its Employee Relations Investigations Playbook.   Additionally, plaintiffs

Page 6 - ORDER

state Nike has not produced any complete pre-2018 version of its "Matter of Respect" policy (the anti-harassment and anti-discrimination policy).

To the extent any further documents exist responsive to this request, Nike shall produce them.

F.      Documents Concerning Workplace Complaints

1.      Complaints from Named and Opt-In Plaintiffs

Plaintiffs believe Nike has failed to produce documents regarding workplace complaints beyond a few made by opt-in plaintiffs before 2018.

Nike has withheld some documents and now assert that attorney-client and work product privilege prevents disclosure.   There is no privilege log yet.   The Court declines to rule on any attorney-client or work product privileges at this time; the request is denied without prejudice allowing the parties further opportunity to meet and confer on this issue.

2.      Complaints from Female Vice-President

Plaintiffs argue documents produced concerning a workplace complaint from then-current Nike Vice-President, Nikki Neuburger, make clear that Nike is withholding documents.

This request is denied without prejudice so that the parties can further meet and confer regarding whether the Neuburger complaint documents actually contain complaints about sexual harassment.

3.      Investigative Reports

Plaintiffs contend that Nike has not produced investigation reports for almost all workplace complaints despite alleged policies requiring extensive documentation.

To the extent Nike has any further investigation reports, it shall produce them.

4.      Pages from the Starfish Survey

Plaintiffs assert that after completion of the Starfish Survey (survey of female employees concerning sex discrimination) around March 5, 2018, top managers were forced out, but that Nike has only produced a few excerpts from the survey and two documents related to the resulting investigation.

Nike shall produce the complete survey results.

G.      Documents Concerning Trevor Edwards, Daniel Tawiah, and David Ayre

Despite the Court's October Order, plaintiffs assert Nike has produced relatively few documents concerning Edwards (16 docs) or Ayre (6 docs).   To the extent Nike has any further responsive documents, they shall be produced.

H.      Efforts to Locate Documents

Plaintiffs ask the Court to compel Nike to provide declarations showing its efforts to locate responsive documents in response to the Court's October order.   In addition, to minimize any further discovery issues and unnecessary obstacles, plaintiffs argue Nike should provide a declaration identifying the documents produced that are responsive to each of the Order's subparts (1)-(3) of the Order.

When the discovery sought is collateral to the relevant issues (i.e., discovery on discovery), the party seeking the discovery must provide an 'adequate factual basis' to justify the discovery, and the Court must closely scrutinize the request in light of the danger of extending the already costly and time-consuming discovery process ad infinitum.   Winfield v. City of New

<u>York</u>, 2018 WL 840085, at *3 (S.D.N.Y. Feb. 12, 2018).   Defendant has demonstrated a certain lack of transparency so far in the discovery process and certainly some deficient production. However, plaintiffs have brought an extensive case and we are only at the precertification stage which complicates what discovery must be produced at this time.   Although discovery has already consumed a large amount of time and plaintiffs are still seeking documents ordered some nine months ago, defendant continues its efforts to locate responsive documents. The Court therefore declines to order Nike to provide further declarations of its efforts at this time.

I.      RFPs 2-3 and 32

Plaintiffs seek an order compelling responses to RFPs 2-3 and 32. RFP 2 requests documents that identify the systems Nike used to store and access documents related to its compensation, promotion, firing, and workplace complaint systems. RFP 3 requests documents that will assist plaintiffs in understanding Nike's systems.   RFP 32 requests Nike's policies and practices related to retaining or deleting its ESI.   As noted above, the necessity of discovery on discovery is premature and may ultimately be unnecessary.   The request is denied without prejudice.

CONCLUSION

Plaintiffs' motion to compel (as stated in their letter to the Court dated June 30, 2020) is granted in part and denied in part as noted above.

DATED this 10th day of August, 2020.

_____
/s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge