AMY JOSEPH PEDERSEN, OSB No. 853958
amy.joseph.pedersen@stoel.com
KENNON SCOTT, OSB No. 144280
kennon.scott@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Tel: (503) 224-3380
Fax: (503) 220-2480

DANIEL PRINCE (*pro hac vice*)
danielprince@paulhastings.com
ZACH P. HUTTON (*pro hac vice*)
zachhutton@paulhastings.com
FELICIA A. DAVIS (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, Twenty-Fifth Floor
Los Angeles, California 90071-2228
Tel: (213) 683-6000
Fax: (213) 627-0705

Attorneys for Defendant NIKE, INC.

[*Counsel for Plaintiffs on the Signature Page*]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL SARA JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NIKE, INC., an Oregon Corporation,<br><br>Defendant. | Case No. 3:18-cv-01477-JR<br><br><br>**JOINT SUBMISSION REGARDING REVISED CASE MANAGEMENT SCHEDULE (September 21, 2020)** |

Plaintiffs Kelly Cahill, Sara Johnston, Lindsay Elizabeth, and Heather Hender ("Plaintiffs") and Defendant Nike, Inc. ("Nike") (collectively, the "Parties"), by and through their respective counsel, submit the following Joint Case Management Statement outlining a revised case management schedule.

## I.    THE PARTIES HAVE CONFERRED AND REACHED CERTAIN AGREEMENTS BUT SOME ISSUES REMAIN

In the Minutes of Proceedings following the July 2, 2020, Case Management Conference, the Court ordered that the "parties shall further confer and submit a revised proposed case management schedule by 9/21/2020." The Parties have conferred and have agreed upon a proposed schedule after the close of document discovery. The Parties have also agreed upon certain principles that should apply to the implementation of the proposed case management schedule.

The Parties have a major disagreement. Plaintiffs believe that given the extensive amount and type of outstanding document and data discovery it is not appropriate and inconsistent with due process to set, at this time, a date certain for the close of document discovery. Nike contends that a date certain should be set for the close of document discovery.

## II.    PLAINTIFFS' POSITION: THERE ARE CERTAIN OPEN ISSUES THAT IMPACT THE DISCOVERY SCHEDULE IN THIS MATTER, INCLUDING MATTERS PENDING WITH THE COURT.

Since Plaintiffs have not received the benefit of document and data discovery as is required by the Federal Rules and applicable court decisions, it is not appropriate and consistent with due process for the Court to set, at this time, a date certain for the conclusion of document discovery. As set forth in more detail in sections A and B below, the outstanding document and data discovery includes the following: (1) five types of discovery that are dependent upon a ruling by Judge Hernandez, section A; (2) three data sets that Nike has agreed to produce but has

not yet done so, section B.2; (3) a significant number of documents and information covered by the Court's August 10th Order, section B.3; (4) documents and information necessary to understand Nike's production of personnel data, section B.4; (5) documents or information related to Plaintiffs' 2nd and 3rd sets of Requests for Production of Documents ("RFPs"), section B.5; (6) certain documents identified in Plaintiffs' meet and confer letter, dated December 20, 2019, including top management's involvement in compensation, promotions, performance evaluations, and workplace complaints, section B.6; and (7) documents related to the named Plaintiffs and Opt-in Plaintiffs, section B.7.

Plaintiffs have tried as best they could to state accurately the current state of discovery. This task has been made difficult by the schedule followed by Nike.  On August 7, 2020, Plaintiffs sent Nike a proposed schedule so that the Parties might have substantial time, more than six weeks, to meet and confer and exchange relevant information prior to the Court's order that the Parties file a Joint Submission on September 21, 2020.  Forty days after Plaintiffs sent their proposal and just four days before the due date for the Joint Submission, on September 17th, Nike responded to Plaintiffs' proposal with some significant modifications to Plaintiffs' proposal.  In mid-afternoon on September 18th, Plaintiffs responded to Nike's counter-proposal by, in part, describing the deficiencies in Nike's documents and data production pursuant to the 8/10 Order and RFPs.  After Plaintiffs' sent their response, during the evening of September 18th, Nike made a document production.  Moreover, on Monday morning, Nike sent Plaintiffs a letter making certain representations about Nike's compliance with the 8/10 Order and its document production.  Finally, late morning on September 21st, Plaintiffs received Nike's edits to the response sent by Plaintiffs on September 18th.

A.    **Pending Issue Before Judge Hernandez and Potential Impact on Discovery Production**

Before discussing the pending issue, Plaintiffs want to express that they are aware of the difficulties caused by COVID-19, the nightly demonstrations, the strain on the Court's docket, and the particular strain on the chambers of the Presiding Judge.  Plaintiffs raise this pending issue only because it has a significant impact upon any proposed litigation schedule.

On March 23, 2020, the Court granted Plaintiffs' motion compelling Nike to provide identifying information, employee names and ID numbers, for the personnel data rather than anonymized numbers.  ECF 99.  Nike filed Objections to this Order and the matter was fully briefed and presented to Judge Hernandez when Nike filed its reply brief on May 4, 2020.  ECF 104.

If Judge Hernandez affirms this Court's March 23rd Order, Nike will need to re-produce its personnel data with the names and the ID numbers of the employees.  Moreover, there are four other types of document and data discovery that potentially will be impacted by the decision rendered by Judge Hernandez.  First, both Plaintiffs and Nike requested the Court's assistance concerning the Court's March 23rd Order because the Parties disagree about whether the Order allowed Nike to continue to redact the names of the employees who were the "subjects" of discrimination complaints.  By email, dated May 8th, Courtroom Clerk Magnuson informed the Parties that the Court would wait until Judge Hernandez rules on Nike's May 4, 2020 Objections before resolving this question.  Second, in response to Plaintiffs' motion to compel filed June 5th, Nike agreed to produce the "Performance Evaluation Data (Nine Box and Talent Segmentation)," but Plaintiffs agreed that Nike need not do so until after Judge Hernandez ruled to avoid Nike potentially having to produce this data twice, once with anonymized number and once with identifying information.  Third, also in response to Plaintiffs'

June 5th motion to compel, Nike agreed to produce two other data sets – "Demographic Data," and "Promotion-Related Data" – but Nike has indicated that it will produce these data sets with anonymized numbers even though Nike recognizes that if Judge Hernandez affirms the March 23rd Order that it will have to re-produce these data sets with identifying information.

Thus, as a practical matter, document and data discovery cannot conclude until Judge Hernandez rules upon Nike's Objections, Nike produces all discovery depending on that ruling, and Plaintiffs have had an opportunity to evaluate Nike's production in order to determine that it is compliant with the RFPs and Orders, and institute meet and confer and other efforts.

**B.**    **Nike's Failure to Produce Documents**

Nike has not produced a significant amount and types of document and data discovery that it is required to produce by Orders or by RFPs.  Until Nike produces the documents and data, the period for document discovery cannot close.

Below is a summary of missing discovery; Plaintiffs have not compiled an exhaustive list but rather have listed some critical missing discovery that illustrates the extent to which Nike has not completed its document and data production.  The Parties are continuing to meet and confer, both in writing and by phone, regarding this outstanding discovery.  Plaintiffs summarize this outstanding discovery because it is relevant to when a deadline for document discovery may properly be set.  Moreover, the meet and confer process may resolve some of these issues; nevertheless, until the issues regarding this outstanding discovery are resolved, document discovery should not close.  Plaintiffs are prepared to move quickly in the meet and confer process in order to resolve issues related to this outstanding discovery.

1. __Five Types of Discovery Dependent on Ruling by Judge Hernandez.__

This discovery is described in section A, above.

2. __Three Data Sets that Nike Agreed to Produce at or Before the July 2nd Case Management Conference.__

On June 5th, Plaintiffs submitted a letter to the Court seeking an Order compelling Nike to produce certain categories of data.  In response to the motion and during the July 2nd Case Management Conference ("July 2nd CMC"), Nike agreed to produce three categories of data that Plaintiffs requested: (i) " Performance Evaluation Data (Nine Box and Talent Segmentation;" (ii) "Demographic Data;" and (iii) "Promotion-Related Data."

At the July 2nd CMC, the Parties agreed that Nike would need not produce one of these data sets, "Performance Evaluation Data (Nine Box and Talent Segmentation)" until after Judge Hernandez issues a ruling on the Objections filed by Nike to the Court's March 23rd Order, ECF 99.  For the "Demographic Data" and "Promotion-Related Data," Nike has represented on several occasions that it will produce this data but Nike has not done so.

Each of these three data sets contain important evidence and data.  The "Demographic Data" includes education, work experience prior to hire at Nike and pre-Nike salary history.  The "Promotion-Related Data" includes applications, postings, minimum and required qualifications, candidates considered, and employee ultimately selected.  Once these data sets are produced, Plaintiffs and their experts will need to determine whether Nike has produced the requisite data and whether it has done so in a manner that is understandable; Plaintiffs and their experts will work as expeditiously as possible.  Plaintiffs have explained to Nike that the process would be expedited if Nike would provide a "data dictionary" or other document showing the meaning of terms used in Nike's data explaining the data fields and other aspects of the production. Plaintiffs have also suggested, on numerous occasions, that the Parties' experts and counsel

discuss the issues and ambiguities related to understanding the data.  Nike has not responded to either of these proposals.

3.    **Numerous Documents and Information Responsive to the Court's August 10th Order.**

On June 30, 2020, Plaintiffs filed a motion requesting the Court to enforce its October 31, 2019 Order, ECF 89, which described numerous categories of document that had not been produced, because many responsive documents remained unproduced and Nike had represented that it had completed its production. The Court's August 10th Order ("8/10 Order"), ECF 111, made numerous rulings requiring Nike to make additional productions of documents and/or provide certain information.

Nike has made two productions, on August 31, 2020 and September 18, 2020, containing documents covered by the 8/10 Order, but there are two significant issues that need to be addressed concerning Nike's compliance with the 8/10 Order: (1) the Parties disagree about the scope of the 8/10 Order; and (2) many documents covered by the 8/10 Order remain outstanding.

For each of the sections from the 8/10 Order, below are the Parties' disputes regarding the scope of the Order and examples of documents or items covered by the 8/10 Order that remain outstanding.

- **Prior Salary History (*See* ECF No. 111 at 3 (Section A(1))).**

Nike has not produced policies concerning the collection or use of prior salary history from before August 24, 2017.  Nike did produce a September 14, 2017 document that states it "*can no longer ask* candidates to share their current compensation or any compensation history" and "*Nike may no longer* … [r]ecord salary history in our ATS or CRM systems." NIKE_00023659 (emphasis added).

In a September 21, 2020 letter to Plaintiffs, Nike appears to represent that it has no documents from before August 24, 2017 concerning a policy of collecting or using prior compensation history.  However, Nike does not clearly state that no documents exist, documents existed but were not preserved, or make any representation to the Court in this CMC Statement.

- **Policies Regarding Pay Ranges and Market Zones (_See_ ECF No. 111 at 3 (Section A(2))).**

Nike has not produced documents showing the pay ranges or market zones, including the dollar amounts included in each range and the jobs that are assigned or linked to each range. Nike neither denies it has failed to produce these documents nor states what, if anything, it will produce concerning pay ranges and market zones.[1]

- **Salary Increases at Promotion or During Employee Annual Review (_See_ ECF No. 111 at 4 (Section A(3))).**

Nike has not produced all such policies or guidelines used by decision-makers and Nike has not asserted that it has produced all such documents.  Nike neither denies it has failed to produce these documents nor states what, if anything, it will produce concerning salary increases at promotion or during employee annual review.

- **Annual Bonuses (_See_ ECF No. 111 at 4 (Section B(1))).**

Nike has not produced documents showing policies created for decision-makers to use or that show each of its PSP plans.  Since the 8/10 Order, Nike has produced a single document concerning PSP policies and that document is from June 2019.  Yet, in its September 21, 2020 letter to Plaintiffs, Nike states that it does not have "any responsive documents beyond the documents previously produced."  Nike did not state that it has produced all documents concerning PSP policies for use by decision-makers or documents showing all the PSP plans.

---

[1] Pursuant to Local Rule 37-3, Nike was required to comply with the 8/10 Order by August 24, 2020.  Between August 10 and August 24, Plaintiffs twice offered not to object if Nike requested a reasonable extension from the Court.  Nike never asked for an extension from the Court or Plaintiffs.

Plaintiffs disagree that Nike has completed its production because it has neither produced documents for use by decision-makers or the PSP plans.  Nike's July 17, 2020 opposition to Plaintiffs' letter requesting the 8/10 Order did not dispute that it failed to produce the PSP plans or the PSP policies created for decision-makers to use for during at least the pre-2018 period. Nike failed to dispute this despite these documents being responsive to RFPs served in March 2019 and covered by the Court's October 31, 2019 Order.  Now, 1.5 months after the 8/10 Order, Nike states it has no more responsive documents despite only producing one document that is from 2019.[2]

- **Bonus Awards (_See_ ECF No. 111 at 4 (Section B(2))).**

Nike has not produced policies regarding its twice yearly bonuses ("2X Pay") prior to 2018, including how those bonuses were determined, and Nike has not stated that no such documents exist.  Nike neither denies it has failed to produce these documents nor states what, if anything, it will produce concerning twice yearly bonuses prior to 2018, including how those bonuses were determined.

- **Equity Awards (_See_ ECF No. 111 at 4 (Section B(3))).**

Nike has not produced policies used to calculate and determine equity awards, and Nike has not stated that no such documents exist.  Nike neither denies it has failed to produce these documents nor states what, if anything, it will produce concerning the calculation and determination of equity awards.

- **Budgets Used for Compensation (_See_ ECF No. 111 at 5 (Section B(4))).**

Nike has not produced policies for creating or applying budgets to compensation determinations, and Nike has not stated that no such documents exist.  Nike neither denies it has

---

[2] As both Plaintiffs' June 30, 2020 Letter and July 22, 2020 Reply Requesting Enforcement of the October 31, 2020 Order stated, Nike only produced two PSP policy-related documents from before 2018 that are both "brochures," that are merely "an overview," and brochures do not substitute for the actual policies and plans that decisions-makers used.

failed to produce these documents nor states what, if anything, it will produce concerning the creation or application of budgets to compensation determinations.

- **Promotions (*See* ECF No. 111 at 5 (Section C)).**

Nike has not produced policies concerning either "preferred candidate" or "Excelerate" from before 2019. In its September 21, 2020 letter to Plaintiffs, Nike appears to represent that it has no documents concerning "preferred candidate." However, Nike does not make that representation to the Court in this CMC statement. Moreover, both in its July 22, 2020 opposition letter and in its September 21 letter to Plaintiffs, Nike does not state that it never had documents concerning "preferred candidate" or that such documents do not currently exist.

Regarding "Excelerate," Nike's September 21 letter to Plaintiffs states it has produced "documents concerning the 'Excelerate' program," but both documents are from 2019, Nike does not state no documents exist or that it completed its production, and Nike does not state what, if anything, it will produce concerning the program.

- **Job Architecture (*See* ECF No. 111 at 5-6 (Section D(1))).**

Nike produced other general descriptions of the job architecture but it has not produced documents defining each job grouping, all the elements and factors used to create or modify the job architecture, and how each of those elements and factors have been applied. Nike neither denies it has failed to produce these documents nor states what, if anything, it will produce concerning job architecture.

- **Job Groupings, Job Codes, Band Level, and Job Level (*See* ECF No. 111 at 6 (Section D(2))).**

Nike has not produced policies describing how Nike established pay ranges, assessed career paths, or how it grouped jobs. In its September 21, 2020 letter to Plaintiffs, Nike addressed a subset of the documents, stating that that it has no additional documents concerning "policies related to the determination of whether employees are in the correct job code, band,

and/or level from before 2018."  However, Nike does not make that representation to the Court in this CMC statement.

- **Policies Regarding Workplace Complaints (*See* ECF No. 111 at 6 (Section (E))).**

Nike has not completed its production of its Internal Investigation Guidance, its pre-2019 versions of its Employee Relations Investigations Playbook, or complete pre-2018 version of its Matter of Respect policy.  Nike's September 21 letter to Plaintiffs states that Nike's September 18, 2020 production included its "Internal Investigations Guidance" and its "pre-2018 versions of Nike's Matter of Respect Policy."

Nike has neither produced pre-2019 versions of its Employee Relations Investigations Playbook, stated none exist, nor stated what, if anything, it will produce documents concerning pre-2019 Employee Relations Investigations Playbooks.

Regarding "Internal Investigations Guidance," Nike produced two documents that contain some guidelines and policies for investigations.  However, although one document indicates that it is from 2017, both documents were last modified in 2020 according to the metadata Nike produced.  Regardless, Nike has, at a minimum, not produced any such pre-2017 policies, stated that no such policies exist, or stated what, if anything, it will produce concerning Internal Investigation Guidance.

Nike has produced pre-2018 versions of its Matter of Respect policy, but it has not stated that no further documents exist or that it has completed its production.

- **Complaints from Named and Opt-In Plaintiffs (*See* ECF No. 111 at 7 (Section F(1))).**

The Order states, "Nike has withheld some documents and assert[s] that attorney-client and work product privilege prevents disclosure," and "[t]here is no privilege log yet."  The Court "decline[d] to rule on any attorney-client or work product privileges at this time; the request is denied without prejudice allowing the parties further opportunity to meet and confer on this issue."

Because Nike has not provided information, such as a privilege log, that would permit the Parties to have this meet and confer, the Parties have not been able to have substantive meet and confer discussions concerning documents regarding the categories of documents in Plaintiffs' June 30, 2020 letter to the Court that Nike withheld based on attorney-client or work product. Plaintiffs asked Nike to provide a privilege log containing all documents it withheld concerning the categories of documents in Plaintiffs' June 30, 2020 Letter to the Court.  About one month after the 8/10 Order, Nike provided one privilege log since the August 10 Order, but that log appears to contain only nine entries that are applicable to the 8/10 Order.  Plaintiffs asked Nike if these nine entries are applicable to the 8/10 Order, but Nike has not responded.

If these nine entries do apply to the 8/10 Order, they do not provide a basis for meeting and conferring.  Each of the nine entries appears to be a document created by or sent from a Seyfarth attorney.  The nature of the investigation is unclear because Nike's description for each of the nine entries contains the same exact phrase describing the nature of the document: "regarding attorney-directed investigation."  Each of the entries contains a "From / Author" and a date for each entry, but only one of the nine entries provides any information about who received the document or communication.  That one entry that does list at least some recipient appears to be a duplicate of an entry that Nike made in its March 13, 2020 log except that Nike asserted attorney-client on March 13, 2020 and now it asserts both attorney-client and work product.  Thus, Plaintiffs have almost no information to evaluate Nike's assertions of attorney-client or work product because, for example, Plaintiffs do not know whether the documents contain underlying facts that are not covered by privilege, whether legal advice was being provided, whether the documents were created in anticipation of litigation, who the documents were provided to, or whether the documents were used for business purposes.  Moreover, Nike has not represented that it has completed its privilege log applicable to the 8/10 Order.

- **Complaints from Female Vice-President (*See* ECF No. 111 at 7 (Section (F)(2))).**

The Order "denied [Plaintiffs' request] without prejudice so that the parties can further meet and confer regarding whether Neuburger complaint documents actually contain complaints about sexual harassment." Plaintiffs sought to initiate this meet and confer by providing two proposals, Nike did not accept either of Plaintiffs' proposals, did not provide an alternative proposal, and has not provided any information or documents that would permit the Parties to meet and confer about what the documents "actually contain." Thus, no substantive meet and confer about what the documents "actually contain" have occurred.

- **Investigative Reports (*See* ECF No. 111 at 7-8 (Section (F)(3))).**

Nike has not produced any further investigation reports, Nike has not stated that it has not done further searches according to the Federal Rules, that no other reports exist, or what, if anything, and when investigation reports will be produced.

- **Pages from the Starfish Survey (*See* ECF No. 111 at 8 (Section (F)(4))).**

The 8/10 Order states: "Plaintiffs assert that after completion of the Starfish Survey (survey of female employees concerning sex discrimination) around March 5, 2018, top managers were forced out, but that Nike has only produced a few excerpts from the survey and two documents related to the resulting investigation. Nike shall produce the complete survey results."

Nike does not dispute it has withheld all documents from the resulting Starfish Survey investigations. Yet, Nike appears to imply that it believes it completed its production because, in a September 21, 2020 email to Plaintiffs, Nike stated that it has "produced all of the Starfish Survey." On September 18, 2020, Nike produced 30 entries from the Starfish Survey that contain redactions of all the names of top managers who are alleged to have discriminated or condoned discrimination.

Nike's September 21 email also states that it has "logged on a privilege log, and/or will log on a privilege log all investigations into any Starfish Survey complaints" except for those

that Nike believes "are not responsive to [the October 31, 2019] Order." There are numerous issues with this statement from Nike. First, Nike was ordered to produce the complete Starfish Survey results. Second, as explained in the above section concerning "Complaints from Named and Opt-In Plaintiffs," the nine possible privilege log entries that Nike has provided since the 8/10 Order are inadequate. Moreover, it is clear that there are many other documents from the resulting Starfish Survey investigations because, for example, Nike's July 22 Opposition (at p. 3) stated that Nike took the investigations of the Starfish Survey "seriously." Third, rather than, at a minimum, listing all withheld documents on a privilege log, Nike not only provided an inadequate privilege log but also does not clearly state when it will further provide a privilege log (Nike's September 21 email states withheld documents are "*logged … and/or will log*." (emphasis added)).

Fourth, Nike's production of the 30 Starfish Survey entries contains many survey entries and sections of entries that Nike withheld or redacted until September 18, 2020. Nike has long claimed that the withheld or redacted sections were not responsive to the October 31, 2019 Order, but the now produced entries show that Nike's view of what was responsive to the October 31, 2019 Order has been unjustifiably constrained because it withheld documents that were responsive to the October 31, 2019 Order. Thus, Nike's position that it will not only withhold all documents from the resulting Starfish Survey investigation but also not even log an unknown number of documents based its belief of responsiveness is troubling.

- **Documents Concerning Trevor Edwards, Daniel Tawiah, and David Ayre (*See* ECF No. 111 at 8 (Section (G))).**

Nike has not produced any responsive documents, Nike does not state it has conducted a search in compliance with the Federal Rules and the Orders, or what, if anything, and when it will produce documents concerning Edwards, Tawiah, and Ayre.

Moreover, because Nike has redacted all the names of top managers who are alleged to have discriminated or condoned discrimination in the Starfish Survey entries as well as other

complaints, Plaintiffs cannot know whether Edwards, Tawiah, or Ayre's names are contained in the complaints.

> 4. **Documents and Information Related to Nike's Production of Personnel Data.**

On December 30, 2019, Nike produced personnel data. In the letter transmitting the data, Nike stated that "[i]f you have questions about the data after you review, please send them to us in writing, and we will work with our client to respond in kind." After Plaintiffs, with the assistance of their experts, reviewed the data, they sent a letter, January 24, 2020, requesting certain documents, including documents requested in RFPs 2-3 and 32, see c, above, and posing questions regarding the interpretation and understanding of Nike's personnel data files. Shortly, thereafter, in an email dated, February 2nd, Nike's counsel responded, "[t]racking down answers to each of your questions will take significant time, but efforts are underway." Plaintiffs have relied upon Nike's assurances that it would provide answers to the questions that Plaintiffs posed so that Plaintiffs and their experts would not need to guess about the interpretation of Nike's personnel systems. Nevertheless, Nike has failed to provide answers to any of the questions that Plaintiffs posed in their January 24th letter. Nike's has not produced any "data dictionaries" or similar documents, which are covered by RFPs 2-3 and 32, that would explain the specific meaning of each of the files and other aspects of the personnel data. In addition, Plaintiffs suggested that some or all the questions might be effectively and efficiently answered if Nike permitted experts for the Parties to discuss the personnel data; but, Nike has not agreed to this suggestion. Given the failure of Nike to answer questions about its data production, provide documents related to an understanding of its personnel data, or even permit the Parties' experts to discuss the data system, Nike has not completed discovery responses necessary for a critical

evidentiary matter, the personnel data that will form the basis for the statistical analyses that will

be presented.

     **5.**     **<u>Issues Related to Plaintiffs' 2nd and 3rd Sets of RFPs.</u>**

Plaintiffs served the Second Set of RFPs, 64-79, on June 7, 2019. Each of these RFPs is

based upon a denial, assertion or affirmative defense made by Nike in its Answer to Plaintiffs'

First Amended Complaint. In various meet and confer letters and discussions Plaintiffs sought

Nike's confirmation that it has completed its production of documents regarding these RFPs. In

the CMC Statement, filed June 29th, ECF 107, at p. 10, Plaintiffs listed as an open discovery

issue, "confirmation of whether Nike has completed production in response to Plaintiffs 2nd Set

of RFPs …." Nike should either complete the production of documents pursuant to the Second

Set of RFPS or report that, in fact, it has completed that production.

Plaintiffs served the Third Set of RFPs, 80-83, on November 29, 2019. These RFPs, in

principal part, request documents related to a job analysis or analyses, as Nike confirmed in a

meet and confer letter dated, August 21, 2020, that "<u>may</u> have been performed in the 2008 or

2009 timeframe." (Emphasis in original). Nike stated that it "continues to diligently search its

records for responsive documents." *Id*. Nike should produce the responsive documents or

report that no such documents exist.

     **6.**     **<u>Documents Identified in Plaintiffs' December 20, 2019, Meet and Confer<br>Letter that Nike Has Not Produced, Including Top Management's<br>Involvement.</u>**

On December 20, 2019, Plaintiffs sent Nike a meet and confer letter describing

categories of documents that exist according to other Nike documents, responsive to Plaintiffs'

RFPs, and that Nike had not produced. Nike has not produced documents concerning many

categories of documents from the December 20, 2019 letter. For example, Nike has produced

almost no documents concerning top management's involvement in pay, promotion, performance review, or workplace complaints.[3]

In this CMC statement, Nike states it is "happy to continue to meet and confer with Plaintiffs' counsel" and that it "does not believe" any such documents exist.  First, Nike has refused to meet and confer on this topic because it has never responded to Plaintiffs' December 20, 2019 letter that described how Nike documents show that top managers were involved in pay, promotion, performance reviews, and workplace complaints.  Moreover, these documents are responsive to RFPs served in March and Plaintiffs followed up on this in numerous meet and confer letters in addition to their December 20, 2019 letter.  Second, as described in their December 20, 2019 letter that Nike never disputed, Nike documents show extensive top management involvement in pay, promotion, performance reviews, and workplace complaints.

### 7.    Documents Related to the Named Plaintiffs and the Opt-in Plaintiffs.

On August 28, 2020, Plaintiffs sent a letter to Nike detailing substantial gaps in Nike's production of documents related to the four named Plaintiffs and ten Opt-in Plaintiffs that were requested in Plaintiffs RFPs 52-63, which were served in March 2019, including documents that concern application materials, offer letters, new hire information, performance evaluations, compensation and resignation/termination materials.  Nike's September 18, 2020 production included some, but not all, of these documents.

---

[3] Among many examples of missing discovery Plaintiffs have identified for Nike regarding top management's involvement include the lack of almost any emails produced by Nike that are not Plaintiff-specific or among some workplace complaint files.  There are also no documents concerning showing any decisions being made about pay, promotion, workplace complaints, or policies by top management.

### III.    NIKE'S POSITION: WRITTEN DISCOVERY SHOULD CLOSE OCTOBER 30, 2020 AND THE CASE SHOULD PROCEED BASED ON NIKE'S SENSIBLE PROPOSED BRIEFING SCHEDULE, SET FORTH BELOW

The Court asked the parties to propose a case management schedule to drive this case toward a hearing on Plaintiffs' motion for class certification.  Nike expects that the parties can conclude written discovery by October 30, 2020, and sets forth a reasonable briefing schedule for the rest of the case below.  It is unclear why Plaintiffs spend 15+ pages explaining why they cannot respond to the Court's request, rehashing issues that are already moot or will be moot in several weeks, by the close of written discovery.

Plaintiffs also make many misleading statements about Nike's participation in the meet and confer process, as well as Nike's productions to date.  Here just one egregious example:

- Plaintiffs state: "Nike produced 30 entries from the Starfish Survey that contain redactions of all the names of top managers who are alleged to have discriminated or condoned discrimination."

- Fact:  Nike produced the Starfish Survey and redacted names of the alleged violators, just as it did with all of the internal complaints produced.  There is zero evidence that these redactions contain "the names of top managers who are alleged to have discriminated or condoned discrimination."  Moreover, we informed Plaintiffs' counsel via telephone prior to the production that this was our intent.

In addition, counsel for Nike met with Plaintiffs' counsel several times to discuss the proposed case schedule, among other discovery items, in the midst of briefing Nike's opposition to Plaintiffs' motion to compel Nike's privileged documents, and continuing our rolling productions and privilege loge.  The schedule set forth by Nike below was intended to be a joint proposal set forth in a simple 3-4 page filing.  Plaintiffs recently jettisoned this joint approach

because Nike did not agree to their language in full, something that has become a trend in this case.  Nike is willing to compromise toward a resolution; Plaintiffs are not.

For this reason, it is also odd that Plaintiffs complain that Nike has not produced enough documents, while simultaneously complaining that Nike produced documents and responded to several outstanding meet and confer letters in the last week.

Regardless, both Nike *and* Plaintiffs are in the process of finishing their document productions.  The parties are working through the outstanding discovery matters, and Nike is confident that the parties can continue to do so.  However, it is clear that a deadline is necessary to help drive this to resolution.  Without one, Plaintiffs' 20-page meet and confer letters, 20-page motions, and 20-page CMC statements will never cease, and this case will never proceed.

While we expect that the Court does not wish to read a 25-page joint statement when it requested a simple proposed case schedule, Nike does respond briefly to Plaintiffs' points below:

**1.**      **Five Types of Discovery Dependent on Ruling by Judge Hernandez.**

The Parties need not wait for Judge Hernandez's ruling to close written discovery.  If Judge Hernandez sustains Nike's objections, Nike will promptly produce the remaining data with anonymous identifiers.  If Judge Hernandez does not sustain Nike's objections, Nike will promptly provide the data without anonymous identifiers.  Even if Judge Hernandez issues his decision after October 30, 2020, the rest of written discovery can close now, and these few items can follow.

**2.**      **Three Data Sets that Nike Agreed to Produce at or Before the July 2nd Case Management Conference.**

As the parties and the Court agreed, Nike will produce the Nine Box and Talent Segmentation data upon Judge Hernandez's ruling.

As Nike has represented previously, the "Demographic" and "Promotion-Related" data

are not easy to pull from Nike's databases, particularly for the tens of thousands of current and former employees at issue. Nevertheless, Nike has committed to production by October 30, 2020, and, at present, sees no reason it will not be able to meet this deadline. If data dictionaries are available for the applicable data sets, they will be produced. If Plaintiffs have questions about the data, the parties can resolve them over the next several months. There is no reason to extend the written discovery deadline for this data

### 3. Numerous Documents and Information Responsive to the Court's August 10th Order.

These documents have either already been produced, will be produced by October 30, 2020, or Nike has confirmed or will confirm they do not exist.

As to Plaintiffs' assertion that Nike has not produced documents related to the investigation of all of the "Starfish Survey" complaints, Nike will log on a privilege log any remaining investigation files for complaints responsive to this Court's October 31, 2019 Order, and will provide said log to Plaintiffs on or before October 2, 2020.

### 4. Documents and Information Related to Nike's Production of Personnel Data.

Nike will respond to Plaintiffs' data-related questions on or before October 9, 2020.

### 5. Issues Related to Plaintiffs' 2nd and 3rd Sets of RFPs.

Nike will complete its production of documents related to its affirmative defenses by the October 30, 2020 deadline.

### 6. Documents Identified in Plaintiffs' December 20, 2019, Meet and Confer Letter that Nike Has Not Produced, Including Top Management's Involvement.

Nike is happy to continue to meet and confer with Plaintiffs' counsel on this topic, however, Nike does not believe that any documents exist that show Nike's top management were involved in individual pay, promotion or performance decisions related to the putative class or

their alleged comparators.

### 7.    Documents Related to the Named Plaintiffs and the Opt-in Plaintiffs.

Nike will produce the outstanding documents related to the named and opt-in Plaintiffs, to the extent they exist and are reasonably available, by October 30, 2020.

Nike notes that it, too, is still waiting for the named Plaintiffs to complete their individual document productions, and, to date, has not received documents from any of the opt-in Plaintiffs, despite the fact that Nike served its RFPs on the opt-in Plaintiffs on July 24, 2020. Therefore, Nike could equally claim that it cannot commit to a close of written discovery until it receives these documents. But, Plaintiffs' counsel has represented that these documents are forthcoming and, as a result, Nike does not see a reason to hold written discovery open while it simply awaits these documents. Of course, if Plaintiffs do not produce these documents as the deadline approaches, Nike may raise the issue with the Court at that time (but hopes it will not be necessary to do so).

The Parties also continue to produce privilege logs as their rolling productions continue.

### IV.    PLAINTIFFS PROPOSE THREE PRINCIPLES APPLICABLE DURING THE PROPOSED LITIGATION SCHEDULE

Plaintiffs propose that three general principles should apply to the proposed case management schedule. First, the close of document discovery should not occur until the Parties have produced all documents that Orders or pending discovery requests require to be produced. Second, if deposition testimony indicates that documents were not produced as required pursuant to an Order or a RFP then the party shall promptly produce the indicated documents. If the party fails to do so, then the Parties shall engage in an expeditious meet and confer process and, if necessary, the opposing party may move to compel. Third, the problems related to COVID-19 may make in-person depositions difficult to schedule during the time period proposed for the

taking of depositions and that this difficulty may require an extension of that period.  However, Plaintiffs believe that the Parties should endeavor to make every effort to schedule the depositions during that period.  Before scheduling an in-person deposition the Parties will give due deference to the concerns of the proposed deponent regarding the taking of an in-person deposition in light of COVID-19.

## V.      PROPOSED CASE MANAGEMENT SCHEDULE

Plaintiffs Position

Consistent with Plaintiffs' Position set forth in Section II, the October 30, 2020 Deadline is a hypothetical deadline that is only used in order to show the manner by the schedule that the Parties agreed upon would operate.  If, as expected, the conditions for setting a document discovery deadline are not met by October 30th, the proposed schedule can be re-calculated from the actual discovery deadline.

The proposed schedule listed under "Nike's Position" is essentially the schedule that Plaintiffs proposed to Nike in a letter sent August 7, 2020 except that Plaintiffs, at Nike's request, extended the time period for Nike to file its opposition to the motion for class certification from six to eight weeks.  Accordingly, Plaintiffs agree to the proposed schedule for the submission of expert reports, expert discovery and class certification briefing except that Plaintiffs request 45 days to file a reply brief to Nike's opposition to class certification rather than 30 days that Nike has listed.  Accordingly, the date for Plaintiffs to file a reply should be January 7, 2022 since 45 days from the filing of Nike's opposition brief would fall on January 1, 2022.

Nike's Position

Per the Court's request, Nike sets forth the following proposed case schedule:

- **October 30, 2020**: Close of document discovery.

- **November 2, 2020 – February 12, 2021**: Fact witness deposition discovery.

- **March 29, 2021**: Plaintiffs will serve on Nike any expert reports in support of their motion for class certification.

- **March 30 – May 28, 2021**: Nike may depose Plaintiffs' experts and conduct other expert discovery.  By May 28, 2021, Nike will serve on Plaintiffs any expert reports in opposition to the motion for class certification.

- **May 29 – July 30, 2021**: Plaintiffs may depose Nike's experts and conduct other expert discovery.  By July 30, 2021, Plaintiffs will serve on Nike any reply expert reports in support of the motion for class certification.

- **September 14, 2021**: Plaintiffs will file the motion for class certification and all supporting documents.

- **November 15, 2021**: Nike will file its opposition to the motion for class certification and all supporting documents.

- **December 15, 2021**: Plaintiffs will file a reply in support of their motion for class certification.

- **Hearing**: To be set by the Magistrate Judge.

Dated:  September 21, 2020                    Respectfully submitted,

*/s/ Daniel Prince*
Daniel Prince (pro hac vice)
danielprince@paulhastings.com
Zach P. Hutton (pro hac vice)
zachhutton@paulhastings.com
Felicia A. Davis (pro hac vice)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, Twenty-Fifth Floor
Los Angeles, California 90071-2228
Tel: (213) 683-6000
Fax: (213) 627-0705

Amy Joseph Pedersen, OSB No. 853958
amy.joseph.pedersen@stoel.com
Kennon Scott, OSB No. 144280
kennon.scott@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Tel: (503) 224-3380
Fax: (503) 220-2480

Attorneys for Defendant NIKE, INC.

Dated:  September 21, 2020

Respectfully submitted,

*/s/ Byron Goldstein*
Laura Salerno Owens, OSB No. 076230
laurasalerno@markowitzherbold.com
David B. Markowitz, OSB No. 742046
davidmarkowitz@markowitzherbold.com
Harry B. Wilson, OSB No. 077214
harrywilson@markowitzherbold.com
Anna M. Joyce, OSB No. 013112
annajoyce@markowitzherbold.com
Chad A. Naso, OSB No. 150310
chadnaso@markowitzherbold.com
MARKOWITZ HERBOLD PC
1211 SW Fifth Avenue, Suite 3000
Portland, Oregon 97204-3730
Tel: (503) 295-3085
Fax: (503) 323-9105

Laura L. Ho (*pro hac vice*)
lho@gbdhlegal.com
Barry Goldstein (*pro hac vice*)
bgoldstein@gbdhlegal.com
James Kan (*pro hac vice*)
jkan@gbdhlegal.com
Byron Goldstein (*pro hac vice*)
brgoldstein@gbdhlegal.com
Katharine L. Fisher (*pro hac vice*)
kfisher@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, California 94612
Tel: (510) 763-9800
Fax: (510) 835-1417

Craig Ackerman (*pro hac vice*)
cja@ackermanntilajef.com
ACKERMANN & TILAJEF PC
1180 S. Beverly Drive, Suite 610
Los Angeles, California 90035
Tel: (310) 277-0614
Fax: (310) 277-0635

INDIA LIN BODIEN LAW
India Lin Bodien (admitted *pro hac vice*)
india@indialinbodienlaw.com
2522 North Proctor Street, #387
Tacoma, WA 98406-5338
Tel:  (253) 503-1672
Fax:  (253) 276-0081

Attorneys for Plaintiffs and Opt-In Plaintiffs