UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

KELLY CAHILL, SARAH JOHNSTON,                                    3:18-cv-1477-JR
LINDSAY ELIZABETH, and HEATHER
HENDER, individually and on behalf of others
similarly situated,                                                             ORDER

                                     Plaintiffs,

                 v.

 NIKE, INC., an Oregon Corporation,

                                     Defendant.

RUSSO, Magistrate Judge:

        Named plaintiffs Kelly Cahill, Sara Johnston, Lindsay Elizabeth, and Heather Hender

bring this putative class and collective action alleging that defendant Nike systematically

discriminates against them and other similarly situated women at Nike headquarters regarding

salary and promotions.   Several additional plaintiffs have filed consents to join this action.

        The parties are currently undertaking pre-certification discovery. Plaintiffs have made

numerous discovery requests related to class certification.   Plaintiffs have previously sought to

compel documents related to their First Set of Request for Production (RFP) dated March 22, 2019 which the Court granted in part on October 30, 2019.  Although not included in that motion, plaintiffs sought "studies, reviews, analyses, surveys, compilations or audits related to the effect or impact of any of the following Nike policies or practices that apply to HQ employees on female HQ employees: (a) compensation … (g) promotions …." in RFP 16 of the March 22, 2019 request.

On August 7, 2020, plaintiffs submitted a letter to the Court seeking to compel: (1) "Global" pay equity analyses comparing compensation of male and female employees; (2) Supplemental pay equity analyses Nike conducted with Mercer, an HR consulting company, to evaluate whether it has paid employees equitably compared to their peers; and (3) Studies or analyses related to time-in-job and pace of promotions conducted to address the lack of female representation in management.  Nike asserts the compensation and promotion analyses are protected from production by the attorney/client privilege and attorney work product doctrine.

<u>BACKGROUND</u>

As plaintiffs note in their letter, Nike has conducted global[1] pay equity analyses annually since 2016, supplemental pay equity analyses annually since 2018, and time-in-job and pace of promotions analyses annually since 2018.

In November 2015, Nike received an EEOC Charge of Discrimination alleging lower pay

---

[1] All of the pay equity analyses for which plaintiffs seek documents were done on a global scale, i.e., not just Nike world headquarters in Beaverton, Oregon, but across Nike locations throughout the United States and World.   Nike asserts this fact puts the relevance of these documents beyond the scope of this litigation.   However, to the extent the analyses resulted in policies applicable to Nike headquarters pay and promotions, the discovery sought is relevant to this litigation.   Plaintiffs seek only the part of the analyses relevant to the putative class members and

based on gender and race.   In February 2016, a former Nike executive sent a demand letter to Nike's legal department ("Nike legal") threatening to file an age discrimination claim.   Around this time period, Nike's compensation vice president sought legal advice regarding Nike's pay practices.

Nike engaged the law firm of Seyfarth Shaw LLP to provide legal advice to Nike legal in connection with, for example: (1) the development of statistical models to analyze compensation; (2) validation of those models and identifying outliers or other variables that might explain differences in pay practices; and (3) to counsel Nike legal on its pay practices and policy enhancements.   In April 2016, Nike legal and Seyfarth assembled a project team to conduct compensation analyses to provide advice to Nike legal.

In December 2017, Nike legal learned about a compilation of complaints made by unidentified current and former employees following a gender survey conducted at Nike.   Nike's global employment counsel believed Nike legal needed to analyze its compensation and promotion practices in order to advise Nike corporate regarding pay practices and policy enhancements; and to allow Nike legal to assess potential legal risk associated with the company's compensation and/or promotion practices.   For this purpose, Nike again engaged Seyfarth Shaw to lead analyses of global pay equity/promotion/turnover issues in the event the complaints resulted in litigation.   Nike also again consulted Mercer to aid in the analyses. Seyfarth Shaw provided legal advice to Nike legal in connection with: (1) the development of statistical models to analyze compensation and promotions; (2) validation of those models and identifying outliers or other variables that might explain differences in pay or promotion

their comparators at Nike World headquarters.

practices; and (3) to counsel Nike legal on policy enhancements.

In June 2018, Nike received an EEOC charge from a former employee alleging violations of the Federal Equal Pay Act, Title VII, and the Age Discrimination in Employment Act. Plaintiffs then filed this case in August 2018.   Nike legal continued to seek compensation analyses from Seyfarth Shaw and expert advice from Mercer to render legal advice to Nike's corporate department in connection with the lawsuits and to continue to assess ongoing legal risk.

<u>DISCUSSION</u>

A.    <u>Privilege Logs</u>

Plaintiffs assert Nike waived any privilege assertions by failing to timely produce a privilege log.   Under Fed. R. Civ. P. 34(2), Nike had 30 days to respond to the request for production stating why the requested materials were being withheld and the basis for the objection.    Under Fed. R. Civ. P. 26(b)(5), proper assertion of privilege must be more specific than a generalized, boilerplate objection.   For purposes of producing a privilege log, the 30-day period is a default guideline.   <u>Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.</u>, 408 F.3d 1142, 1149 (9th Cir. 2005).

> [A] district court should make a case-by-case determination, taking into account the following factors: the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy or unusually hard.

Id.

As noted above, plaintiffs served their RFP on March 22, 2019. Plaintiffs assert that despite the fact they made ten written requests over a one-year period, Nike did not serve its first privilege log until February 2, 2020, and subsequent logs on March 13, 2020, July 24, 2020, August 31, 2020, and September 8, 2020.

In this case, plaintiffs made 83 RFPs for documents in three sets regarding a wide range of issues. As the previous motions practice and discovery disputes demonstrate, plaintiffs have brought an extensive proposed class action challenging Nike's pay and promotion decisions for virtually every woman employed at Nike world headquarters and their proposed male counterparts. During the pre-certification discovery, the parties have not only disputed what is discoverable, but also the discovery process itself. For example, Nike proposed a production of privilege logs near the close of discovery to allow the parties to focus on document production at the outset. Plaintiffs, as argued in this motion, assert the logs should be provided within 30 days of service of the RFP. Nike chose to provide the logs on a rolling basis and, indeed, plaintiffs served their privilege logs on December 31, 2019, April 21, 2020 and August 5, 2020.

Nike did notify plaintiffs that responding to RFP 16 would take several months, which given the scope of the request and the layers of corporate structure it implicates (including work streams from individuals no longer employed by Nike), does not seem out of the ordinary. Indeed, the regularly scheduled status conferences with the Court highlight the difficulty the parties are having with discovery and the production of phased privilege logs from both sides reflects that difficulty. As noted below, despite the lengthy time period for fully addressing the

privileges at issue in this case, evaluation of the assertion of privilege can be made. The magnitude of the document production justifies the length of time in producing the logs as do the other particular circumstances of the litigation that make responding to discovery unusually difficult. The Court declines to find Nike has waived the assertion of the attorney-client privilege or work product doctrine. See Yith v. Nielsen, 2019 WL 2567290, at *5 (E.D. Cal. June 21, 2019) (while it is uncontroverted that defendants failed to produce a privilege log timely, waiver was inappropriate because the magnitude of the production is great and the document and privilege log production in this case was also unusually challenging).

Plaintiffs also assert that the privilege logs themselves are deficient. To be sufficient the log should identify: (1) the attorney and client involved; (2) the nature of the document; (3) persons or entities shown on the document to have received or sent the document; (4) persons or entities known to have been furnished the document or informed of its substance; and (5) the date the document was generated, prepared, or dated. In re Grand Jury Investigation, 974 F.2d 1068, 1071 (9th Cir. 1992). In addition, the affidavits and declarations submitted in support of the privilege in the briefing on this motion may aid the Court in answering questions as to whether the assertion of privilege is sufficient. See id. (Whatever questions the Corporation's log might leave open with regard to whom the documents were shown or were intended to be shown are answered to our satisfaction by the affidavits of the attorneys responsible for preparing the documents).

The logs here are sufficient to assert the attorney-client and work product doctrine privilege. For instance, Nike's March 13, 2020, privilege log (items 25-79) identify the

document, the author and recipient, the description of the redaction, the privilege asserted, and

the date.    In certain instances, recipient information is missing, however, Nike is still

investigating all recipients given the complexity of the discovery involved and the turnover of

employees.    The Court finds the privileges were adequately asserted.

B.      Attorney-Client Privilege

A party asserting the attorney-client privilege has the burden of establishing the existence

of an attorney-client relationship and the privileged nature of the communication.    United States

v. Ruehle, 583 F.3d 600, 607 (9th Cir. 2009).    Whether the pay equity analyses and promotion

analyses are covered by the privilege depends on:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser
> in his capacity as such, (3) the communications relating to that purpose, (4) made
> in confidence (5) by the client, (6) are at his instance permanently protected (7)
> from disclosure by himself or by the legal adviser, (8) unless the protection be
> waived.

United States v. Graf, 610 F.3d 1148, 1156 (9th Cir. 2010).

The Court finds Nike retained Seyfarth Shaw (and experts in human resources to assist in

developing legal advice) to provide legal advice regarding the development of statistical models

to analyze compensation/promotion and the validation of those models to identify outliers that

might explain differences in pay.    The retention was made in order to counsel Nike on its pay

practices and pay adjustment matters, and to help Nike legal remediate risk arising out of or

relating to pay and/or promotion discrepancies for members of protected classes.    Nike

demonstrates that it instituted privilege protocols and guidelines to maintain attorney-client

privilege in the development and distribution of the analyses for the teams and individuals

involved, including related documents and correspondence regarding the analyses.

To the extent plaintiffs assert Nike failed to maintain the confidentiality of the documents and communications by publicly discussing them, disclosure of the outcome of the process does not constitute a waiver.  See Rauh v. Coyne, 744 F. Supp. 1181, 1185 (D.D.C. 1990) (The privilege was not waived merely because defendants' disclosed counsel's conclusion).

Plaintiffs also assert the analyses was conducted for a business purpose and not a legal purpose.  However, if the communication is made primarily for the purpose of securing legal advice, an incidental request for business advice will not vitiate the privilege.  Portland Wire & Iron Works v. Barrier Corp., 1980 U.S. Dist. LEXIS 17898, *4 (D.Or. May 20, 1980).

The Court is satisfied that the documents at issue fall within the attorney-client privilege and need not be disclosed.  In addition, as discussed below, Nike adequately demonstrates that the requested documents, as well as those created by Mercer and Willis Towers Watson, also fall within the work product doctrine.

C.     Work Product Doctrine

> [T]he work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

United States v. Nobles, 422 U.S. 225, 238-39 (1975).

To qualify for work product protection documents must have two characteristics: (1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for

another party or by or for that other party's representative.    In re California Pub. Utils. Comm'n, 892 F.2d 778, 780–81 (9th Cir. 1989).    The Court finds that Nike has adequately demonstrated that the EEOC Charges, internal complaints, and demand letters precipitated, at least in significant part, the undertaking and continuation of the analyses at issue.    See In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.), 357 F.3d 900, 907 (9th Cir. 2004) (a document should be deemed prepared in anticipation of litigation and thus eligible for work product protection if in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation).    The reason Nike sought Seyfarth's advice was not to primarily address a business purpose such as pay competitiveness in the industry (which ideally would be a gender-neutral issue), but to address potential legal liabilities for pay inequities that may result from its pay policies and compensation/promotion structure.

D.    Sword and Shield

Plaintiffs assert Nike implicitly waived any privilege by using the analyses as both a sword and shield because Nike asserts an affirmative defense such as good faith claiming it had a legitimate business purpose for its pay decisions.

There is a three-pronged test for determining whether there has been an implied waiver of the attorney-client privilege.    First, the Court considers whether Nike is asserting the privilege as the result of some affirmative act, such as filing suit. Second, the Court examines whether through this affirmative act, Nike puts the privileged information at issue. Finally, the Court evaluates whether allowing the privilege would deny the opposing party access to information

vital to its defense or case.   United States v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999).

At this stage, it is unclear what evidence Nike will offer in support of its affirmative defenses and the issue appears better suited to discovery related to the merits of the case and not certification issues.   Nonetheless, as the record stands now, it does not appear that Nike is using the privilege as a both a sword and a shield.

> [A] party may be deemed to have waived privilege or work product protection by asserting a defense of good faith reliance on counsel. This type of waiver is sometimes referred to as the at-issue waiver or the fairness doctrine. See generally Pearlstein, 2019 WL 1259382, at *7–8. The rule is that a party cannot assert reliance on counsel as a defense or selectively proffer protected information in litigation without waiving privilege. Fairness requires waiver in these circumstances so a party's adversary may fully explore the validity of the good faith defense and prepare cross examination.

Brown v. Barnes & Noble, Inc., 2019 WL 7168146, at *7 (S.D.N.Y. Dec. 23, 2019).   For instance, Nike does not appear to assert a good faith reliance on the advice of counsel to escape liability for any discrimination in its pay/promotion policies related to these analyses. Accordingly, the motion to compel the documents based on implied waiver is denied without prejudice to raise during merits discovery.

## CONCLUSION

Plaintiffs' motion to compel (as stated in their letter to the Court dated August 7, 2020) is denied as noted above.

DATED this 9th day of October, 2020.

_____/s/ Jolie A. Russo_____
JOLIE A. RUSSO
United States Magistrate Judge