**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Anna M. Joyce, OSB #013112**
AnnaJoyce@MarkowitzHerbold.com
**Kathryn P. Roberts, OSB #064854**
KathrynRoberts@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085 | Fax: (503) 323-9105

**Laura L. Ho** (admitted *pro hac vice*)
lho@gbdhlegal.com
**Barry Goldstein, Of Counsel** (admitted *pro hac vice*)
bgoldstein@gbdhlegal.com
**James Kan** (admitted *pro hac vice*)
jkan@gbdhlegal.com
**Byron Goldstein** (admitted *pro hac vice*)
brgoldstein@gbdhlegal.com
**Katharine L. Fisher** (admitted *pro hac vice*)
kfisher@gbdhlegal.com
**Mengfei Sun** (admitted *pro hac vice*)
msun@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 763-9800 | Fax: (510) 835-1417

Attorneys for Plaintiffs, Opt-In Plaintiffs, and Putative Class

[Additional Counsel of Record listed on the next page]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, et al., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NIKE, INC., an Oregon Corporation,<br>Defendant. | Case No. 3:18-cv-01477-JR<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT NIKE, INC.'S MOTION TO SEAL** |

852268.15

**Craig Ackerman** (admitted *pro hac vice*)
cja@ackermanntilajef.com
Brian Denlinger (*admitted pro hac vice*)
bd@ackermanntilajef.com
ACKERMANN & TILAJEF PC
1180 S Beverly Drive, Suite 610
Los Angeles, CA 90035
Tel:  (310) 277-0614
Fax:  (310) 277-0635

**India Lin Bodien** (admitted *pro hac vice*)
india@indialinbodienlaw.com
INDIA LIN BODIEN LAW
2522 North Proctor Street, #387
Tacoma, WA 98406-5338
Tel:  (253) 503-1672
Fax:  (253) 276-0081

PLAINTIFFS' OPPOSITION TO DEFENDANT NIKE, INC.'S MOTION TO SEAL

# <u>TABLE OF CONTENTS</u>

Page

I.      INTRODUCTION ......................................................................................................1

II.     RELEVANT FACTUAL BACKGROUND.............................................................1

III.    ARGUMENT ...........................................................................................................3

        A.      Aggregate Statistics are Integral to Plaintiffs' Disparate Impact and
                Treatment Claims and Do Not Implicate Any Privacy Interests or Trade
                Secrets. ..........................................................................................................5

        B.      Plaintiffs' Allegations Against ███████████████ are Publicly
                Known and Should Not be Redacted. ...........................................................11

        C.      Foundational Facts Related to Nike's Publicly Announced Pay Equity and
                Promotion Studies Are Not Privileged. .......................................................13

        D.      Redactions of Company Policies and Practices Should Be Limited to
                Trade Secrets and Proprietary Information....................................................15

        E.      Plaintiffs Request Expedited Review of this Motion to Prevent Prejudice
                to Plaintiffs..................................................................................................17

IV.     CONCLUSION......................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Aerodynamics Inc. v. Caesars Entertainment Operating Co.*,
No. 2:15-cv-01344-JAD, 2015 WL 5679843 (D. Nev. Sept. 24, 2015)...................................8

*Asetek Danmark A/S v. CMI USA, Inc.*,
No. 3:13-cv-00457-JST, 2015 WL 12964641 (N.D. Cal. Oct. 19, 2015)................................9

*Bear Ranch, LLC v. Heartbrand Beef, Inc.*,
No. 6:12-cv-00014, 2014 WL 12599343 (S.D. Tex. May 14, 2014).....................................10

*Binh Hoa Le v. Exeter Fin. Corp.*,
990 F.3d 410 (5th Cir. 2021) ........................................................................................4, 5

*Chen-Oster v. Goldman, Sachs & Co.*,
325 F.R.D 55 (S.D.N.Y. 2018) .............................................................................................6

*Chen-Oster v. Goldman Sachs & Co.*,
No. 1:10-cv-06950-AT-RWL, 2022 WL 814074 (S.D.N.Y. Mar. 17, 2022)..........................7

*Clean Crawl, Inc. v. Crawl Space Cleaning Pros, Inc.*,
No. 2:17-cv-01340-BHS, 2020 WL 978267 (W.D. Wash. Feb. 28, 2020) ...........................10

*Cox Broad. Corp. v. Cohn*,
420 U.S. 469 (1975).............................................................................................................13

*Ctr. for Auto Safety v. Chrysler Grp., LLC*,
809 F.3d 1092 (9th Cir. 2016) ..............................................................................................4

*E.W., LLC v. Rahman*,
No. 1:11-cv-1380-JCC-TCB, 2012 WL 3841401 (E.D. Va. Sept. 4, 2012)...........................10

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
331 F.3d 1122 (9th Cir. 2003) .......................................................................................4, 13

*Gearsource Holdings, LLC v. Google LLC*,
No. 4:18-cv-03812-HSG, 2020 WL 3833258 (N.D. Cal. July 8, 2020)..................................9

*Gregory v. City of Vallejo*,
No. 2:13-cv-00320-KJM-KJN, 2014 WL 4187365 (E.D. Cal. Aug. 21, 2014) ....................13

*In re Hewlett-Packard Co. S'holder Derivative Litig.*,
No. 3:12-cv-06003-CRB, 2015 WL 8570883 (N.D. Cal. Nov. 18, 2015).............................15

*Hunt v. Cont'l Cas. Co.*,
No. 3:13-cv-05966-HSG, 2015 WL 5355398 (N.D. Cal. Sept. 14, 2015) ...........................13

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
No. 3:12-cv-03844-JST, 2015 WL 984121 (N.D. Cal. Mar. 4, 2015)....................................13

*In re Incretin-Based Therapies Products Liability Litigation*,
No. 3:13-cv-01796-AJB-MDD, 2021 WL 873290 (S.D. Cal. Mar. 9, 2021).........................10

*J.N. v. Or. Dep't of Educ.*,
No. 6:19-cv-00096-AA, 2020 WL 589534 (D. Or. Feb. 5, 2020) .............................................4

*Kamakana v. City & Cnty. of Honolulu*,
447 F.3d 1172 (9th Cir. 2006) ........................................................................................4, 8, 10

*Lathrop v. Uber Technologies, Inc.*,
No. 3:14-cv-05678-JST, 2016 WL 9185002 (N.D. Cal. June 17, 2016) ..................................9

*McMorrow v. Mondelez International*,
No. 3:17-cv-02327-BAS-JLB, 2020 WL 406314 (S.D. Cal. Jan. 24, 2020) ...........................9

*Murphy v. Rochester City Sch. Dist.*,
No. 6:00-cv-06038-DGL-JWF, 2002 WL 31322639 (W.D.N.Y. Sept. 30, 2002) .................13

*Music Grp. Macao Com. Offshore Ltd. v. Foote*,
No. 3:14-cv-03078-JSC, 2015 WL 3993147 (N.D. Cal. June 30, 2015)................................13

*Myles v. Cnty. of San Diego*,
No. 3:15-cv-01985-JAH-BLM, 2017 WL 274829 (S.D. Cal. Jan. 19, 2017)..........................13

*Nixon v. Warner Commc'ns, Inc.*,
435 U.S. 589 (1978)..................................................................................................................3

*Paige v. California*,
291 F.3d 1141 (9th Cir. 2002) ..................................................................................................6

*Rich v. Shrader*,
No. 3:09-cv-00652-AJB-BGS, 2013 WL 6190895 (S.D. Cal. Nov. 26, 2013) ......................10

*Schwartz v. Cook*,
No. 5:15-cv-03347-BLF, 2016 WL 1301186 (N.D. Cal. Apr. 4, 2016) ...................................7

*Scott v. Family Dollar Stores, Inc.*,
No. 3:08-cv-00540-MOC-DSC, 2016 WL 9665158 (W.D.N.C. June 24, 2016) .....................6

*In Re Seagate Tech. LLC*,
326 F.R.D. 223 (N.D. Cal. 2018).............................................................................................8

*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*,
825 F.3d 299 (6th Cir. 2016) ...............................................................................................4, 5

*Stockwell v. City & Cnty. of San Francisco*,
749 F.3d 1107 (9th Cir. 2014) ..................................................................................................6

*Sullivan v. Deutsche Bank Americas Holding Corp.*,
　　No. 3:08-cv-2370-L-POR, 2010 WL 3448608 (S.D. Cal. Aug. 31, 2010) ...............................8

*Vesta Corp. v. Amdocs Mgmt., Ltd.*,
　　312 F. Supp. 3d 966 (D. Or. 2018) ....................................................................................10, 16

*Welle v. Provident Life & Accident Ins. Co.*,
　　No. 3:12-cv-03016-EMC-KAW, 2013 WL 6055369 (N.D. Cal. Nov. 14, 2013) ..................15

*Western Air Charter, Inc. v. Schembari*,
　　No. 2:17-cv-00420-JGB-KS, 2019 WL 6998769 (C.D. Cal. Jan. 11, 2019) ..........................10

*Williams v. Apple, Inc.*,
　　No. 5:19-cv-04700-LHK, 2021 WL 2476916 (N.D. Cal. June 17, 2021) ........................10, 12

**State Cases**

*Ellis v. Google, LLC*,
　　No. CGC-17-561299, 2021 WL 4169813 (Cal. Super. Ct. May 27, 2021) ..............................9

*Jewett v. Oracle Am., Inc.*,
　　No. 17CIV02669, 2020 WL 11036307 (Cal. Super. Ct. Apr. 30, 2020) ...................................9

**Other Authorities**

Glassdoor, June 29, 2021, ███████████████████████
　　███████████ ............................................................................................................16

## I.    <u>INTRODUCTION</u>

Plaintiffs have agreed to the majority of redactions proposed by Nike – ones that actually implicate third party privacy interests, attorney-client privilege, and proprietary information. Plaintiffs only oppose the redactions for which Nike fails to state a compelling reason for sealing: (1) aggregated statistics that do not implicate the privacy interests of any individuals or Nike trade secrets; (2) allegations against former executives that are in Plaintiffs' First Amended Complaint and the Court's October 31, 2019 order and already public knowledge; (3) foundational facts about Nike's publicly announced pay equity and promotion studies that do not implicate privileged information; and (4) policies and practices that do not implicate Nike's trade secret or proprietary information or impact its competitive advantage.

Nike's proposed redactions are not narrowly tailored and the inconsistencies in its proposed redactions belie its speculative claim of competitive harm.  The Plaintiffs, proposed class members, and public are entitled to know the impact that Nike's challenged policies and practices have had on thousands of women.  The extent of the pay and promotion disparity between Nike's female and male employees is integral to this litigation, and the Court should deny Nike's attempt to avoid embarrassment and hide from public scrutiny.  Moreover, the entitlement to public disclosure is especially strong in the context of a motion for class certification, which is the case here.

Plaintiffs respectfully request that the Court deny Nike's Motion to Seal and conduct an expedited review of the motion, as detailed below, to avoid prejudice to Plaintiffs.

## II.    <u>RELEVANT FACTUAL BACKGROUND</u>

Pursuant to the Protective Order entered in this case (ECF No. 82), Plaintiffs filed its Motion for Class Certification ("Motion") and supporting documents under seal on January 10, 2022 because the documents include content from documents, data, and transcripts that Nike

designated Confidential or Attorneys' Eyes Only under the Protective Order.  Declaration of James Kan in support of Plaintiffs' Opposition to Nike's Motion to Seal ("Kan Decl.") ¶ 3.  On January 11, 2022, Plaintiffs emailed Nike to state Plaintiffs' position that its Motion and supporting documents should be public and invited Nike to identify any parts it thought should remain sealed and the reasons for its position, suggesting a call for January 13 or 14, 2022.  Kan Decl. ¶ 4.  Nike agreed to a call on January 18, 2022, during which it identified five categories of documents that it might redact.  Kan Decl. ¶ 4.

Plaintiffs followed up on January 24, 2022, requesting that Nike send proposed redactions to the Motion and exhibits and providing notice that Plaintiffs intended to make a written request to unseal by February 2, 2022 if the Parties are unable to reach agreement.  Kan Decl. ¶ 5.  Nike sent proposed redactions on the Motion on January 25, 2022, and Plaintiffs responded the next day with their position on those redactions, agreeing to redact the names of complainants, subjects, and witnesses for internal complaints, proprietary current policies and practices, and information outside the scope of this case, but disagreeing with redacting aggregated statistics, information that is already public, and past policies and practices.  Kan Decl. ¶ 6.

The Parties agreed to a three week extension on Plaintiffs' written request to unseal.  Kan Decl. ¶ 7.  Plaintiffs made their written request to unseal to Nike on February 23, 2022.  Kan Decl. ¶ 8.  The Parties met and conferred further over the phone on March 4, 2022 and agreed on additional redactions.  Kan Decl. ¶ 9.  Nike sent revised proposed redactions on March 9 and March 11, 2022 to the Motion and supporting documents, Plaintiffs sent a response on March 14, 2022, and the Parties met again on March 14, 2022.  Kan Decl. ¶ 10.  Plaintiffs agreed to redact certain demographics information in Dr. Neumark's report, but opposed redactions on an

illustrative example chart and all other redactions of shortfall and promotion statistics.  Kan Decl. ¶ 10.

Plaintiffs also opposed, as overbroad, Nike's proposal to completely redact entire briefs and declarations for its opposition to Plaintiffs' August 7, 2020 Motion to Compel pay equity and promotion studies ("Plaintiffs' Motion to Compel"), which improperly included non-confidential and already publicly available information.  Kan Decl. ¶ 10.  The Parties reached an impasse on the disputed redactions regarding aggregated statistics, already public information, and policies and practices that do not implicate proprietary or trade secret information.  Kan Decl. ¶ 11.  Nike filed this motion to seal on March 15, 2022.  Kan Decl. ¶ 12.  Nike filed a revised copy of its proposed redactions on March 17, 2022, *see* ECF No. 174, removing certain redactions that were inadvertently included in its original filing.  Kan Decl. ¶ 13.  In reviewing Nike's motion to seal and its filed exhibits, Plaintiffs identified several instances where the Parties agreed to seal information, but it had not been submitted to the Court.  Kan Decl. ¶ 16.

For the Court's reference, Plaintiffs include the redactions that are included in Nike's Motion to Seal and that Plaintiffs agree to in Exhibit A to the Kan Declaration.  Plaintiffs include a list of redactions they oppose, the category for each redaction, and Plaintiffs' rationale for opposing the redaction as Exhibit B to the Kan Declaration.  The redactions that are omitted from Nike's filing that Plaintiffs do not oppose and believe the Court should adopt are listed in Exhibit C to the Kan Declaration.  A copy of the Motion, with Nike's proposed redactions, is attached as Exhibit A to the Declaration of Mengfei Sun in support of Plaintiffs' Opposition to Nike's Motion to Seal.

### III.    ARGUMENT

"It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner*

*Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).  Courts "start with a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).  Accordingly, a party seeking to seal a judicial record bears the burden of overcoming this strong presumption by meeting the "compelling reasons" standard. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (internal citation omitted).  Under this stringent standard, a court may seal records only when it finds a compelling reason and "articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* at 1179.  The presumption of access is "based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (internal citation omitted).  The judiciary has a solemn duty to promote judicial transparency, and the judge is the "public interest's principal champion." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 420-21 (5th Cir. 2021).

Nike concedes that it must meet the compelling reasons standard to overcome the strong presumption of public access to Plaintiffs' Motion for Class Certification and supporting documents.  *See* Nike's Motion to Seal at 3; *see also J.N. v. Or. Dep't of Educ.*, No. 6:19-cv-00096-AA, 2020 WL 589534, at *2 (D. Or. Feb. 5, 2020) (holding that motion to seal was subject to compelling reasons standard because motion to certify class is more than tangentially related to merits of the case); *Kamakana*, 447 F.3d at 1179 (explaining that compelling reasons typically include disclosures that would "gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets.").  In conducting this balancing test, courts recognize that "[t]he greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016), citing *Brown & Williamson Tobacco Corp. v.*

*F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983). "[I]n class actions—where by definition 'some members of the public are also parties to the [case]'—the standards for denying public access to the record 'should be applied ... with particular strictness.'" *Id.*, citing *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001). Even where a party can show a compelling reason why certain documents or portions thereof should be sealed, the "seal itself must be narrowly tailored to serve that reason," and the proponent of sealing must provide document by document reasons and legal citations. *Id.* at 305-06, citing *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002). Judges must undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure. *Binh Hoa Le,* 990 F.3d at 419.

The Court should deny Nike's motion to seal, as specified below, because the interest in public disclosure is high at class certification, and Nike's has failed to meet its heightened burden of proving with particularity and without conjecture that it has a compelling reason to seal and does so in a narrowly tailored manner.

A.    **Aggregate Statistics are Integral to Plaintiffs' Disparate Impact and Treatment Claims and Do Not Implicate Any Privacy Interests or Trade Secrets.**

In Plaintiffs' Motion and the expert reports[1] of Dr. David Neumark, Nike seeks to seal the aggregated statistics of dollar figures and percentages of the female shortfall in pay, promotion rates, and job levels hired into for Nike World Headquarters ("WHQ") employees. While Nike broadly asserts that the comparative shortfall statistics reveal confidential and proprietary information and "serve to promote public scandal," none of these bases survive scrutiny.

---

[1] Nike goes so far as to redact numbers from an illustrative example on page 25 of Dr. Neumark's report (Prince Decl. Exhibit A page 95). Contrary to Nike's assertion, Plaintiffs did not agree to its proposed redaction for this chart. Kan Decl. ¶ 10. This chart is not based on any real data, so Nike has no basis for redacting it.

As an initial matter, Nike's Motion to Seal ignores the importance that these statistics have to Plaintiffs' class discrimination claims and their pending motion for class certification. Aggregated statistics are integral to Plaintiffs' disparate impact and disparate treatment claims. *See e.g., Paige v. California*, 291 F.3d 1141, 1145 (9th Cir. 2002) (A class disparate impact claim is often proved through statistical evidence). Like disparate impact, "[s]tatisical disparities in the treatment of women alone may be sufficient to establish a *prima facie* case" of disparate treatment. ECF No. 64 at 9 (citing *Buchanan v. Tata Consulting Servs. Ltd.*, No. 4:15-cv-01696-YGR, 2017 WL 6611653, at *12 (N.D. Cal. Dec. 27, 2017)). Courts also recognize that statistical proof of classwide disparities strongly supports commonality because it is common evidence that can provide classwide resolution of a *prima facie* disparate impact claim. *See e.g., Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1116 (9th Cir. 2014) ("And whether there is a disparate impact on the putative class, to be established through statistical proof, is a single *significant* question of fact," [citation] the resolution of which is central to the validity of each of the class members's claims [citation].") (internal quotations and ellipses omitted); *Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D 55, 75 (S.D.N.Y. 2018) ("The significant proof [that the challenged practices were discriminatory], offered by Plaintiffs, is contained in the report of [plaintiffs' labor economist], which analyzed the impact of gender on evaluation, compensation, and promotion at Goldman Sachs and found statistically significant gender disparities."). The classwide statistical evidence here is common evidence presented to show, among other things, that Nike's starting pay policy caused lower pay for women. *See, Scott v. Family Dollar Stores, Inc.*, No. 3:08-cv-00540-MOC-DSC, 2016 WL 9665158, at *6 (W.D.N.C. June 24, 2016) (finding classwide policy of using prior pay to set pay and statistical evidence of pay disparities for women supported a finding of commonality). The sizable dollar amount and percentages of the pay gap, along with the statistical significance indicated by the standard deviations found in Dr. Neumark's analysis, are integral to not only to

Plaintiffs' claims, but also their motion for class certification.  Given the importance of statistics to Plaintiffs' claims, the aggregated statistics will be integral to the Court's ruling on class certification, and the privacy and business interests that justify sealing can be outweighed by the public's right to access information necessary to understand the basis for the Court's ruling.  *See Chen-Oster v. Goldman Sachs & Co.*, No. 1:10-cv-06950-AT-RWL, 2022 WL 814074, at *2 n.5 (S.D.N.Y. Mar. 17, 2022), citing *Spinelli v. Nat'l Football League*, 903 F.3d 185, 193 n.2 (2d Cir. 2018).

Furthermore, Nike's proffered reasons to seal are not compelling reasons, which are required at this stage of the litigation.  First, the personal financial information of non-parties is not implicated by the aggregated shortfall dollars and percentages at issue here, contrary to Nike's claims.  Although the aggregated statistics here are derived from data marked Attorneys' Eyes Only, the aggregated results do not reveal the financial information of any individual, any specific subfamily or job level of employees at Nike or even the pay for specific jobs.  Simply put, comparative information at this aggregated level does not implicate any legitimate privacy interests of non-parties, such as individual Nike employees.

Second, Nike cannot and does not explain how these shortfall calculations reveal any proprietary information about Nike's business practices,[2] compensation structure that would be

///

///

///

///

----

[2] In *Schwartz v. Cook*, No. 5:15-cv-03347-BLF, 2016 WL 1301186, at *2 (N.D. Cal. Apr. 4, 2016), a detailed declaration supported the argument for how the documents about business performance, structure, and finances could be used to gain unfair business advantage.  No such declaration is submitted here. Moreover, Nike does not seek to seal information about its job architecture or compensation practices, which arguably reveal much more about its business structure than the contested aggregated statistics.

valuable to competitors,[3] or any unique aspects of its compensation programs.[4]  These statistics merely indicate the effect that Nike's challenged policies and practices have had on thousands of women in comparison to men, which is neither proprietary nor a trade secret.  Again, these comparative figures only show how much less women are paid, promoted or assigned to higher-leveled positions than similar men either as a percentage or as a difference in actual dollars paid.  Nike's purported interest in protecting its compensation structure and pay programs is further belied by the fact that it does not seek to redact the descriptions of those same structures or programs in Plaintiffs' Motion or in the expert reports of Dr. David Neumark and Dr. Kathleen Lundquist.  The degree to which Nike underpays, underpromotes or assigns women to lower-leveled jobs than men is neither proprietary information nor a trade secret.

Ultimately, Nike's last argument – that these statistics would "only serve to promote public scandal" – reveals its true for motivation for sealing these comparative statistics.  Nike apparently finds these statistical results embarrassing.  Nike should be embarrassed that it underpays, underpromotes, and assigns women to lower-leveled jobs.  But "the mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records."  *See Kamakana*, 447 F.3d at 1179*; see also In Re Seagate Tech. LLC,* 326 F.R.D. 223, 246 (N.D. Cal. 2018) (declining to seal documents to prevent corporate embarrassment and requiring narrowly tailored motion to seal information as necessary to prevent actual undue competitive harm or other

---

[3] Nike provides no details of what information the aggregate statistics would reveal about its salary and bonus structure that would be valuable to its competitors, unlike in *Aerodynamics Inc. v. Caesars Entertainment Operating Co.*, No. 2:15-cv-01344-JAD, 2015 WL 5679843, at *14 (D. Nev. Sept. 24, 2015).  It cannot because the shortfall figures and amounts represent the difference between female and male employees – revealing nothing about any individual's compensation amount or scale.

[4] Nike does not allege that any unique aspects of its compensation or incentive programs are revealed by the statistics, in contrast to *Sullivan v. Deutsche Bank Americas Holding Corp.*, No. 3:08-cv-2370-L-POR, 2010 WL 3448608, at *2 (S.D. Cal. Aug. 31, 2010).

compelling reason).  That Nike is not paying its employees fairly is a matter of public import and this litigation seeks to hold Nike accountable.  The Court should deny Nike's attempt to hide the impact of its pay practices from public scrutiny in a case that direct challenges the discriminatory effects of those policies and practices.[5]

While Nike cites a number of cases in its Motion to Seal, they are all factually distinguishable.  For example, Nike's cited cases where calculations derived from sealable data warranted protection are inapposite because, in those cases, the aggregated data still implicated trade secrets, which is not true here.  In *Gearsource Holdings, LLC v. Google LLC*, No. 4:18-cv-03812-HSG, 2020 WL 3833258, at *14-15 (N.D. Cal. July 8, 2020), the redacted information was detailed revenue, sales, expenses, and profit margins associated with specific products, and calculations derived from this data still reflected the confidential financial and business information, unlike the aggregated statistics here, which do not reveal any trade secrets of Nike.  In *Asetek Danmark A/S v. CMI USA, Inc.*, No. 3:13-cv-00457-JST, 2015 WL 12964641, at *2 (N.D. Cal. Oct. 19, 2015), the redacted information was sales data that constituted a trade secret and would damage the company's business and competitive position, which is not implicated by the aggregated statistics here.  Similarly, *McMorrow v. Mondelez International*, No. 3:17-cv-02327-BAS-JLB, 2020 WL 406314, at *2 (S.D. Cal. Jan. 24, 2020) concerned sales data received from third party marketing research company and associated calculations, which would disclose for free what the company spent resources collecting and charges its clients for, which is not at issue here.  In *Lathrop v. Uber Technologies, Inc.*, No. 3:14-cv-05678-JST, 2016 WL

---

[5] Moreover, that Nike disagrees with the statistical analysis of Dr. Neumark, who is a distinguished labor economist at the University of California at Irvine and has had his expert statistical work accepted in numerous cases, is not a legitimate reason to seal information.  *See, e.g.*, *Ellis v. Google, LLC*, No. CGC-17-561299, 2021 WL 4169813, at *4-6 (Cal. Super. Ct. May 27, 2021); *Jewett v. Oracle Am., Inc.*, No. 17CIV02669, 2020 WL 11036307, at *4-7 (Cal. Super. Ct. Apr. 30, 2020).

9185002, at *3 (N.D. Cal. June 17, 2016), the redacted information concerned Uber's trade secret source code, systems, logging techniques, and databases.  Nike does not contend, nor could it, that the aggregated statistics here implicate any trade secrets or related information such as its revenue, profit margins, sales data or source code.

Nike's cited cases about expert reports are similarly inapposite.  *E.W., LLC v. Rahman*, No. 1:11-cv-1380-JCC-TCB, 2012 WL 3841401, at *3 (E.D. Va. Sept. 4, 2012) concerns gross profit data, the disclosure of which would be highly likely to cause significant harm to the business competitive position of both parties, which is not at issue here.  Unlike in *Western Air Charter, Inc. v. Schembari*, No. 2:17-cv-00420-JGB-KS, 2019 WL 6998769, at *6 (C.D. Cal. Jan. 11, 2019), the redactions here do not concern unique operations models or discussion of competitive advantages.  Nike does not argue, nor can it argue, that the aggregate shortfall statistics implicate any proprietary information.  *Cf. Bear Ranch, LLC v. Heartbrand Beef, Inc.*, No. 6:12-cv-00014, 2014 WL 12599343, at *1 (S.D. Tex. May 14, 2014).  Notably, Nike does not explain how the shortfall numbers would be used against them by competitors.  *Cf. Clean Crawl, Inc. v. Crawl Space Cleaning Pros, Inc.*, No. 2:17-cv-01340-BHS, 2020 WL 978267, at *2 (W.D. Wash. Feb. 28, 2020).

Nike speculates that disclosure of compensation information "may" help Nike's competitors and hurt Nike's competitive standing, but speculation alone does not constitute a compelling reason to seal.  *See Kamakana*, 447 F.3d at 1179; *Vesta Corp. v. Amdocs Mgmt., Ltd.*, 312 F. Supp. 3d 966, 973 (D. Or. 2018) (denying motion to seal where the Court held it cannot rely on hypothesis and conjecture from speculative allegations of harm).  Furthermore, the shortfall numbers here are not key metrics such as costs, revenues, and market research, unlike in *Williams v. Apple, Inc.*, No. 5:19-cv-04700-LHK, 2021 WL 2476916, at *3 (N.D. Cal. June 17, 2021), nor is it related to a proprietary chemical compound not available for public use, as in *In re Incretin-Based Therapies Products Liability Litigation*, No. 3:13-cv-01796-AJB-MDD, 2021 WL 873290, at *3 (S.D. Cal. Mar. 9, 2021).  In contrast to *Rich v. Shrader*, No.

3:09-cv-00652-AJB-BGS, 2013 WL 6190895, at *2 (S.D. Cal. Nov. 26, 2013), where the public would receive little benefit from the information contained in the partnership evaluations, management expectations, performance reviews, financial information, and company strategies, here the aggregated shortfall statistics do not implicate any operational and personnel information, projections and modeling, or strategic positioning vis-à-vis competitors. Rather, these statistics simply allow the public to understand the magnitude of the impact that Nike's challenged policies and practices have had and continue to have on thousands of women.

Plaintiffs communicated on March 14, 2022, but Nike failed to note, that Plaintiffs are agreeable to redacting demographics information such as age, tenure, time in job, and performance ratings, for which the raw numbers are not integral to Plaintiffs' claims. Nike rightfully does not redact that women have on average higher tenure, time in job, performance ratings, while men are on average older, which are important controls for Dr. Neumark's analysis. Plaintiffs thus agree to the redactions on page 19 and the chart of Panel A and Panels B-C on the bottom of page 85 of Dr. Neumark's report (Prince Declaration Ex A pages 89, 125). Plaintiffs, however, request that the Court deny Nike's request to seal the aggregate statistics in Plaintiffs' Motion and in Dr. Neumark's August 5, 2021 Report and November 29, 2021 Rebuttal Report, except as indicated in Kan Decl. Exhibit B.

**B.**    **Plaintiffs' Allegations Against** ███████████████████ **are Publicly Known and Should Not be Redacted.**

Plaintiffs have agreed to the majority of Nike's proposed redactions for the subjects, complainants, and witnesses of internal complaints, where legitimate privacy interests are implicated, including of the three former executives at issue here. Plaintiffs only oppose the redactions that are overinclusive in seeking to seal information that is already public.

In Exhibits 6, 7, 11, 14 and 17 to the Declaration of Byron Goldstein in support of Plaintiffs' Motion ("Goldstein Declaration"), Nike seeks to seal the names of three former executives related to general allegations found in Plaintiffs' complaint and discovery publicly sought by Plaintiffs. The fact that Plaintiffs made allegations against ███████████ ███████████ and sought discovery regarding those allegations is a publicly known fact, included in both the publicly filed First Amended Complaint (ECF No. 42) and in the Court's October 31, 2019 Order (ECF No. 89) ("With respect to the personnel records of former Nike executives Trevor Edwards, Daniel Tawiah, and David Ayre (RFPs 34-38), the motion is granted to the extent the records contain complaints of sexual harassment/discrimination linked to policies of pay/promotions and job duties either by the named executives themselves or regarding actions these executives may have taken to condone pay/promotion and job duty discrimination decisions of lower level managers"). These same individuals were also named in an April 28, 2018 article by the New York Times. *See* PLF_000417. Such publicly filed information, already reported on by the press, should not be sealed. *See Williams,* 2021 WL 2476916, at *3 (declining to seal email that largely discussed information that has already been publicly filed and reported in the press).[6] Nike is incorrect that these proposed redactions do not directly affect the litigation, because the allegations against these executives are important to Plaintiffs' case, as executives had extensive involvement and control over the challenged pay and promotion practices. *See* Motion at 41.

///

///

---

[6] For the same reason, the Court should deny the request to seal the name of ███████, a Nike spokesperson, on page 33 of Plaintiffs' Motion. His name appears in full earlier in the same footnote, which Nike does not seek to seal, and the fact that he is a Nike spokesperson is already in a New York Times article. *See* PLF_000417. He is not the subject, complainant, or witness to an internal complaint, so Nike has not articulated any reason for redacting his name.

Nike cites various cases to argue that third parties have privacy interests that require redactions,[7] which Plaintiffs do not dispute and agree to the redactions that implicate these interests.[8] Nike attempts to use Plaintiffs' principled agreement to protect third party privacy interests to argue that Plaintiffs seek to attack the individuals' character and Nike's reputation in the court of public opinion. Not so. The redactions in dispute are of information that is already public knowledge and mainly concern the fact that Plaintiffs sought discovery regarding these three individuals, and thus, privacy interests fade when information involved is already in the public record. *See Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494-95 (1975). Nike's attempt to seal information that is already public does not meet the compelling reason standard, and the Court should reject all of Nike's proposed redactions regarding allegations against ████ ████████ that are already public.

## C.  **Foundational Facts Related to Nike's Publicly Announced Pay Equity and Promotion Studies Are Not Privileged.**

In the Parties' January 11, 2022 meet and confer, Nike proposed to redact in full its briefing and supporting declarations in opposition to Plaintiffs' August 7, 2020 Motion to

---

[7] Each case is distinguishable. *See Murphy v. Rochester City Sch. Dist.*, No. 6:00-cv-06038-DGL-JWF, 2002 WL 31322639, at *1-4 (W.D.N.Y. Sept. 30, 2002) (personally identifiable information of three former executives already public here); *Foltz*, 331 F.3d at 1137 ("third-party medical and personnel records" are not at issue here); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, No. 3:12-cv-03844-JST, 2015 WL 984121, at *2 (N.D. Cal. Mar. 4, 2015) (no invasion of privacy is implicated here); *Music Grp. Macao Com. Offshore Ltd. v. Foote*, No. 3:14-cv-03078-JSC, 2015 WL 3993147, at *2 (N.D. Cal. June 30, 2015) (identifying information already public here); *Hunt v. Cont'l Cas. Co*., No. 3:13-cv-05966-HSG, 2015 WL 5355398, at *2 (N.D. Cal. Sept. 14, 2015) (individual performance evaluations not at issue here); *Myles v. Cnty. of San Diego*, No. 3:15-cv-01985-JAH-BLM, 2017 WL 274829, at *2 (S.D. Cal. Jan. 19, 2017) (personal identifying information already public here); *Gregory v. City of Vallejo*, No. 2:13-cv-00320-KJM-KJN, 2014 WL 4187365, at *3 (E.D. Cal. Aug. 21, 2014) (Plaintiffs agreed to redactions of names of subjects, complainants, and witnesses in specific internal investigation documents).

[8] Plaintiffs include as Exhibit C to the Kan declaration a list of additional redactions that the Parties meet and conferred on, but that Nike did not include in its Motion, which reflect Plaintiffs' agreement to redactions where third party privacy interests are actually at issue.

Compel data and documents related to Nike's pay equity and promotion studies (Exhibit 12 to

Goldstein Declaration). Kan Decl. ¶ 10. Plaintiffs opposed this overbroad redaction and asked

Nike to narrowly tailor its redactions to actually privileged material. Kan Decl. ¶ 10. While

Plaintiffs agree with most of Nike's narrowed redactions (pages 56-59, 76-129, 140, 142, 244-61

to Exhibit 12 of Goldstein Declaration), Plaintiffs oppose Nike's request to seal foundational

facts about its pay equity studies (pages 279-280 of Exhibit 12).

Nike seeks to seal the general description of its pay equity analyses and the fact that it

asserted privilege over these studies, which is already in the public record and expressly

discussed in the Court's October 9, 2020 Order (ECF No. 117). Because these foundational facts

do not implicate the attorney-client privilege and are already publicly disclosed, the Court should

reject this redaction.

Plaintiffs also oppose Nike's request to seal testimony on foundational facts about its

promotion studies (page 48 of Motion; page 88 of Exhibit 12 to Goldstein Declaration; pages

114-116 of Exhibit 74 to the Declaration of Mengfei Sun in support of Plaintiffs' Motion ("Sun

Class Cert. Declaration")). Nike's Chief Human Resources Officer Monique Matheson announced

to thousands of Nike employees that Nike would "be studying time-in-job and the pace of promotion

across our employee base – with a strong focus on women and POC – to understand how this

impacts representation." *Id.* Ex. 13 at NIKE_00003199. Nike agrees this information about its

publicly announced promotion study should not be sealed. Yet, Nike asks the Court to seal the fact

that ███████████████████████████████████████. While the reasons behind

████████████████████████████ may be privileged (Nike contends it did so on advice of

counsel), the fact that ███████████████ is not in itself privileged information. The public and

particularly the putative class have a strong interest in knowing that ████████████████████

███████████████████████████████. The internal inconsistency in Nike's Motion to

Seal further underlines why this information should not be redacted.  On page 24 of Plaintiffs'

Motion, the fact that ████████████████████████, and Nike does not seek to redact that

information.

 The Court should reject Nike's request to seal the foundational facts about its pay equity

studies and the fact that ████████████████████████████████████████

████████.

**D.    Redactions of Company Policies and Practices Should Be Limited to Trade Secrets and Proprietary Information.**

 A party seeking protection of business information that might harm a litigant's

competitive standing bears the burden of "showing specific prejudice or harm will result."  *In re*

*Hewlett-Packard Co. S'holder Derivative Litig.*, No. 3:12-cv-06003-CRB, 2015 WL 8570883, at

*3 (N.D. Cal. Nov. 18, 2015) (Larson, J.), R. & R. adopted, No. 3:12-cv-06003-CRB, 2015 WL

8479543 (N.D. Cal. Dec. 10, 2015).  Boilerplate, vague, or general assertions of competitive

harm untethered from the precise information at issue are insufficient.  *See Welle v. Provident*

*Life & Accident Ins. Co.*, No. 3:12-cv-03016-EMC-KAW, 2013 WL 6055369, at *2 (N.D. Cal.

Nov. 14, 2013).

 Nike fails to narrowly tailor several of its redactions to only those necessary to protect its

trade secrets and proprietary information.  Nike seeks to redact the fact that (1) ████████

████████████████████ (pages 13 and 39 of Plaintiff's Motion for Class Certification and

pages 83-84 of Exhibit 15 to the Goldstein Declaration); and (2) it had a past policy of ████

████████ and currently ████████████████████████ (page 14 of

Exhibit 81 to Sun Class Cert. Declaration).

 There is no competitive harm by unsealing either of these two facts.  Nike has not alleged

how any competitive disadvantage can result from its competitors knowing it uses a widespread

practice.[9]  The fact that Nike ███████████████████████ is already in the public record in

the Court's August 10, 2020 Order (ECF No. 111) ("Plaintiffs argue Nike has failed to produce

its policies regarding pay ranges or market zones, including the jobs linked to the pay ranges or

market zones.")  Furthermore, Nike offers no specific justification for these redactions in its

Motion to Seal, only a speculative assertion of competitive harm.  That a party considers

information to be confidential and provides speculative allegations of harm is not a sufficiently

compelling reason to restrict the public's access to judicial records.  *See Vesta Corp.*, 312 F.

Supp. 3d at 973 (denying motion to seal where the Court held it cannot rely on hypothesis and

conjecture from speculative allegations of harm).  In *Vesta*, the information sought to be redacted

may be sensitive business and technical information, but was described in very general terms,

and the Court found no basis that it could be used for an improper or harmful business purpose.

*Id.* at 972.  Similarly, Nike has provided no basis for the Court to find ████████████████

████████████████████ and use of ██████████, described in very general terms, can be used for

improper or harmful business purpose.  The Court cannot rely on hypothesis or conjecture to

overcome the strong presumption to public access of judicial records, so these redactions should

be rejected.[10]

///

///

///

---



[9] ████████████████████████████████████████████████████████████,
Glassdoor, June 29, 2021 ████████████████████████████████████████████
█████████.

[10] The ███████████████████████ is mentioned on page 38 of Plaintiffs' Motion, page 40
of Exhibit 11 to the Goldstein Declaration, and pages 54, 84 (lines 3 to 7), and 85 of Exhibit 15
to the Goldstein Declaration, all of which Nike does not seek to redact.  This inconsistency also
favors denying the motion to seal this fact.

E.    **Plaintiffs Request Expedited Review of this Motion to Prevent Prejudice to Plaintiffs.**

Plaintiffs respectfully request expedited review of this motion because Plaintiffs' Motion for Class Certification and supporting documents remain under seal during the pendency of this Motion, and Nike will be filing its opposition on March 25, 2022.  Plaintiffs will be limited in their ability to reply to Nike's opposition if they are unable to refer to their original Motion and supporting documents, which is not yet on the public record.  It would also be confusing to the public for Nike's opposition and supporting documents to be publicly filed before Plaintiffs' Motion and supporting documents.

## IV.    CONCLUSION

For all the reasons stated here, Plaintiffs respectfully requests that Defendant's Motion to Seal be denied, except for the categories of documents the Parties agreed to, as reflected in Exhibits B and C to the Kan Decl.[11]

Dated: March 23, 2022                    Respectfully submitted,

                                         GOLDSTEIN, BORGEN, DARDARIAN & HO

                                          /s/ James Kan
                                         Laura L. Ho (admitted *pro hac vice*)
                                         Barry Goldstein, Of Counsel (admitted *pro hac vice*)
                                         James Kan (admitted *pro hac vice*)
                                         Byron Goldstein (admitted *pro hac vice*)
                                         Katharine L. Fisher (admitted *pro hac vice*)
                                         Mengfei Sun (admitted *pro hac vice*)

                                         MARKOWITZ HERBOLD PC
                                         Laura Salerno Owens, OSB #076230
                                         David B. Markowitz, OSB #742046
                                         Harry B. Wilson, OSB #077214
                                         Anna M. Joyce, OSB #013112
                                         Kathryn P. Roberts, OSB #064854

---

[11] Plaintiffs can submit fully redacted copies of the Motion and supporting documents based on Plaintiffs' proposed redactions, if the Court would find that helpful.

ACKERMANN & TILAJEF PC
Craig Ackerman (admitted *pro hac vice*)
cja@ackermanntilajef.com
1180 S Beverly Drive, Suite 610
Los Angeles, CA 90035
Tel:   (310) 277-0614
Fax:  (310) 277-0635

INDIA LIN BODIEN LAW
India Lin Bodien (admitted *pro hac vice*)
india@indialinbodienlaw.com
2522 North Proctor Street, #387
Tacoma, WA 98406-5338
Tel:   (253) 503-1672
Fax:  (253) 276-0081

Attorneys for Plaintiffs, Opt-In Plaintiffs, and Putative
Class