```
 1                UNITED STATES DISTRICT COURT
 2           DISTRICT OF OREGON, PORTLAND DIVISION
 3
 4   KELLY CAHILL, SARA JOHNSTON,   )NO. 3:18-cv-01477-JR
     LINDSAY ELIZABETH, and HEATHER )
 5   HENDER, individually and on    )
     behalf of others similarly     )
 6   situated,                      )
                                    )
 7              Plaintiffs,         )
                                    )
 8        v.                        )
                                    )
 9   NIKE, INC., an Oregon          )
     corporation,                   )
10                                  )
                Defendant.          )
11   _____)
12
13
14
15                    AFTERNOON SESSION
16      REMOTE VIDEOTAPED DEPOSITION OF LINDSAY ELIZABETH
17                  Palm Desert, California
18                 Monday, January 11, 2021
19
20
21   Reported by:
     Heidi Hummel-Grant
22   CSR No. 12556
23   Pages 119 - 278
24
25
```

Page 119

Veritext Legal Solutions
866 299-5127

Pedersen Decl. Exhibit E, Page 1 of 10

1  question.                                                          03:04
2         The Apparel Designer I Jordan position that
3  you started in in January of 2017, do you know if
4  there was formerly someone in that role who left or
5  moved to a new role or if they created that job      03:04
6  opening for you?
7         MR. BLAKE:  Objection.  Compound.
8         THE WITNESS:  That's a -- a trick -- trick
9   question in the sense that -- so they had posted
10  for a senior designer.  And when they were not able  03:05
11  to fill the role for senior designer, they told me
12  that they wanted to promote from within and that
13  they were going to create a new Designer I position
14  instead of hiring a senior designer.  That is what
15  I was told.                                          03:05
16        I was not told whether or not the position
17 was being made for me.  And the intention of that
18 position -- yeah, that's -- that's all I -- that's
19 what I know about that.
20        MS. DAVIS:  Okay.                              03:05
21        Q  Do you know if other people applied for
22 the Apparel Designer I role?
23        MR. BLAKE:  Objection.  Vague and ambiguous.
24        THE WITNESS:  I was not aware at the time
25  that other people had applied for it.  But I was    03:06

Page 144

Veritext Legal Solutions
866 299-5127

Pedersen Decl. Exhibit E, Page 2 of 10

```
 1    made aware after that someone else -- at least one       03:06
 2    other person had.
 3            MS. DAVIS:
 4        Q   Who was that?
 5        A   I don't know his name.  But                      03:06
 6    Devon Burke -- Devon Burke, Burt -- the man who
 7    became my -- my manager when I moved to Nike told me
 8    that his son had applied for that role and did not
 9    get it.
10        Q   Okay.                                            03:06
11            And you were selected over his son?
12        A   Yes.
13        Q   Okay.
14            With whom did you interview for the role, if
15    you recall?                                              03:07
16        A   It was Michelle Baerncopf, Kenny Matias,
17    Doug -- Barcliff?  I don't know, Doug -- Doug.
18    There was another man, and I can't put a -- I can't
19    remember his name right now, he was product manager.
20    And John -- I think John -- yeah, John Burlo as          03:07
21    well.
22        Q   Okay.
23            Anyone else?
24        A   That's all I can remember.
25        Q   Okay.                                            03:08
```

Page 145

Veritext Legal Solutions
866 299-5127

Pedersen Decl. Exhibit E, Page 3 of 10

```
 1            Did you discuss compensation at all during        03:08
 2     the interview process?
 3            MR. BLAKE:  Objection --
 4            THE WITNESS:  No.
 5            MR. BLAKE:  -- vague.                              03:08
 6            MS. DAVIS:  Did you get the answer, Court
 7     Reporter?
 8            THE REPORTER:  Yes, I got the answer:  No.
 9            MS. DAVIS:  Thank you.  All right.  Okay.
10            We'll mark this as Exhibit 116.                    03:09
11            (Exhibit 116 was marked for identification,
12     a copy of which is attached hereto.)
13            MS. DAVIS:  Exhibit 116 is a two-page
14      document, Bates stamped Nike14657 through 14658.
15        Q   Do you recognize Exhibit 116?                      03:09
16        A   Vaguely.
17        Q   Okay.
18            Is exhibit 116 the off -- your offer letter
19     to join Nike in the role of Apparel Designer I
20     Jordan in January of 2017?                                03:09
21        A   Okay.
22        Q   I'm asking you if it is.
23        A   Is -- what's the question?  If it was my
24     offer letter for that position?
25        Q   Yes.  Is Exhibit 116 the offer letter              03:10
```

Page 146

Veritext Legal Solutions
866 299-5127

Pedersen Decl. Exhibit E, Page 4 of 10

```
 1   you received from Nike offering you the role of          03:10
 2   Apparel Designer I Jordan with a start date of
 3   January 17th, 2017?
 4        A    Yes.
 5        Q    Okay.                                          03:10
 6             When you received this offer letter, had
 7   someone at Nike already verbally extended the offer
 8   to you?
 9        A    Yes.
10        Q    Who had done that?                             03:10
11        A    Michelle.
12        Q    Okay.
13             And what did Michelle tell you?
14        A    She told me that I had been selected for
15   the job, and we talked about compensation.               03:10
16        Q    Okay.
17             What did you and Michelle discuss related to
18   compensation?
19        A    She told me what they were offering and
20   that they were unwilling to negotiate, she felt like     03:11
21   it was -- the pay was within the typical pay range
22   but a little bit low, and even though they had said
23   they were unwilling to negotiate, that I should
24   still try and I should still ask for more.
25        Q    Okay.                                          03:11
```

Page 147

Veritext Legal Solutions
866 299-5127

Pedersen Decl. Exhibit E, Page 5 of 10

```
1           And what did she tell you was the rate they         03:11
2    were going to offer you?
3           A    She said 67,000.
4           Q    Okay.
5           And 67,000 is the rate reflected in                 03:11
6    Exhibit 116; correct?
7           A    Correct.
8           Q    All right.
9           And did you try to negotiate that rate?
10          A    I did.                                         03:11
11          Q    With whom?
12          A    With Michelle.
13          Q    Okay.
14          And what did you tell Michelle?
15          A    I said that I would still like to ask          03:12
16   for a little bit more than that, and so I asked for
17   73,000.
18          Q    Okay.
19          And did Michelle respond to your request?
20          A    As far as I know she asked for that on         03:12
21   my behalf.
22          Q    Okay.
23          And what was the response that -- as far
24   as -- from your perspective?
25          A    The response was that they were                03:12
```

Page 148

Veritext Legal Solutions
866 299-5127

Pedersen Decl. Exhibit E, Page 6 of 10

```
 1   unwilling to negotiate and that I could take it or      03:12
 2   leave it.
 3           Q   Okay.
 4               Do you know what the -- did she tell you
 5   what the 67 -- how they arrived at the number of        03:12
 6   67,000?
 7           A   No.
 8           Q   Okay.
 9               Do you have any facts that you believe would
10   show that your offer was 67,000 because of your         03:12
11   gender?
12           MR. BLAKE:  Objection.  Vague and ambiguous.
13           MS. DAVIS:
14           Q   Go ahead.
15           A   I don't -- I don't know.  I don't -- I      03:13
16   can't remember.
17           Q   Okay.
18               Do you know who made the decision to offer
19   you the job?
20           A   No.                                          03:13
21           Q   Do you know who made the decision on
22   your compensation?
23           A   No.
24           Q   Did you receive a signing bonus?
25           A   I don't think so, no.                        03:13
```

Page 149

Veritext Legal Solutions
866 299-5127

Pedersen Decl. Exhibit E, Page 7 of 10

```
 1        CERTIFICATION OF CERTIFIED SHORTHAND REPORTER
 2
 3            I, the undersigned, a Certified Shorthand
 4   Reporter of the State of California, do hereby
 5   certify:
 6            The foregoing proceedings were taken
 7   before me remotely at the time set forth;
 8            That any witnesses in the foregoing
 9   proceedings, prior to testifying, were placed under
10   oath;
11            That a verbatim record of the proceedings
12   was made by me using machine shorthand, which was
13   thereafter transcribed under my direction;
14            Further, that the foregoing is an accurate
15   transcription thereof.
16            I further certify that I am neither
17   financially interested in the action nor a relative
18   or employee of any of the parties.
19            IN WITNESS WHEREOF, I hereby subscribe my
20   name this 26th day of January, 2021.
21
22
23   [signature]
         Heidi Hummel-Grant
24       Certified Shorthand Reporter No. 12556
25
```

Page 280

Veritext Legal Solutions
866 299-5127

Pedersen Decl. Exhibit E, Page 8 of 10

Cahill, et al v. Nike
Lindsay Elizabeth Deposition Errata

| Page : Line | Reads | Should Read | Reason |
|---|---|---|---|
| 30:10-11 | "24 Nation" | 24 Notion | To clarify details and correct an inadvertent error |
| 43:12 | "No." | "I did not supervise any Summit employees. However, I did supervise contractors when we brought them on to assist with our workload. I would give them feedback on their tasks and ensure that they completed them correctly." | To clarify and provide additional details |
| 67:1 | "Phil Hodgson" | Jared Brandt | To correct a transcription error |
| 73:15-18 | "These were things that I had not left around -- she would single me out, and she would frustratingly be like, "Why haven't you cleaned this? Can you please clean this up?" | "These were things that I had not left around and she would single me out. She would frustratingly say, 'Why haven't you cleaned this? Can you clean this up?" | To clarify details and correct an inadvertent error |
| 81:16-18 | "Stevenson" | Stephenson | To correct a transcription error |
| 95:16 | "Jerry" | Jared | To correct a transcription error |
| 183:15 | "She wasn't in a director role, but she was still doing a lot of the design work." | "She was in a director role, but she was still doing a lot of the design work." | To correct a transcription error |

Page 1 – Lindsay Elizabeth Deposition Errata

Cahill, et al v. Nike
Lindsay Elizabeth Deposition Errata

| Page : Line | Reads | Should Read | Reason |
|---|---|---|---|
| 276:12 | "No." | "No. I am not individually seeking emotional distress damages." | To clarify and provide additional details |

Subject to the above changes, I declare under the penalties of perjury of the laws of the United States that my deposition transcript is true and correct.

Executed on  02 / 19 / 2021  in  02/19/2021 .

_____
Lindsay Elizabeth

Page 2 – Lindsay Elizabeth Deposition Errata

Pedersen Decl. Exhibit E, Page 10 of 10
Doc ID: 4765502ff775b573940a5b4ff5cce559ff52b82f