```
             IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF OREGON
                     PORTLAND DIVISION


KELLY CAHILL, et al.,
individually and on behalf
of others similarly situated,
         Plaintiffs,
    v.                                  No. 3:18-cv-01477-JR
NIKE INC., an Oregon
corporation,
         Defendant.



                   DEPOSITION OF JULIAN MILLER
                    PURSUANT TO FRCP 30(B)(6)
                     THURSDAY, JUNE 3, 2021
```

Reported by:   Marilynn Hoover, RPR
               Oregon CSR No. 04-0387

1   ask you about is that in -- right underneath kind of
2   the big heading on the first page, in the middle
3   there's a field that says "latest submission
4   medium," and it says "matched to job."
5         Do you see that?
6     A.  I do.
7     Q.  Okay. What is -- What does that field
8   represent and what does the entry, "matched to job,"
9   mean?
10    A.  This submission medium just means how did
11  the candidate apply. In this case, a recruiter
12  matched them to this job, and there are -- so there
13  are guidelines around how recruiters can match --
14  match applications to other open -- job openings.
15    Q.  Okay. And when you say this is a
16  situation where a recruiter matched a candidate to a
17  job, does that mean that this candidate, Ms. Cheng,
18  didn't actually apply to this specific requisition
19  initially?
20    A.  Yeah, it means that they were matched from
21  a job that was almost an identical match to this.
22  Right?
23        So the example is like, when we're hiring
24  for multiple openings for the same role at one time,
25  rather than posting three jobs, a recruiter can post

 1   one of those jobs and communicate to candidates that
 2   there are three openings that they're considering
 3   candidates for.  Right?  And then they'll match
 4   candidates kind of behind the scenes.  So it's a --
 5   it's a technical way to be efficient when you're
 6   hiring for multiple openings.
 7        Q.   Okay.  And can a recruiter -- can
 8   recruiters match candidates to jobs even when the
 9   position isn't identical?
10        A.   You're asking from a system standpoint,
11   would the system allow a recruiter to perform that
12   action?
13        Q.   Correct.
14        A.   Yes.
15        Q.   Okay.  Are there any system limitations on
16   what other jobs a recruiter can match a candidate
17   to, beyond the ones that they expressly applied for?
18        A.   A recruiter can match as they see fit.
19   There are guidelines in terms of how we communicate
20   to them to do that appropriately, but it's up to the
21   recruiter's discretion to follow those guidelines
22   and do so within those guidelines.
23        Q.   We'll get to the guidelines in a second,
24   but I think what I'm hearing is that there's nothing
25   inherent in the system that would prevent a

1  recruiter from matching a candidate to a different
2  requisition based on, you know, preset limits or
3  parameters.
4           Is that right?
5       A.  That's correct.
6       Q.  Okay.  Now, when it comes to the
7  guidelines that Nike provides recruiters about when
8  they should match a candidate to a different open
9  job, what are those guidelines?
10      A.  The guidelines are very specific.  It has
11 to be a job that meets the same band level.  Right?
12 It's the same seniority, the same job code.  We're
13 recruiting within those roles within a similar time
14 frame, so it's still a valid application.  And the
15 screening criteria, as we mentioned, those
16 pre-screening questions are the same amongst those
17 requisitions.  Those are -- Those are the guidelines
18 that we educate them on.  Right?  So we can show in
19 the system that -- that those roles use the same
20 criteria, that recruiters screen candidates based on
21 the same criteria based on -- across multiple
22 requisitions.
23      Q.  Okay.  Are there any other guidelines that
24 Nike provides?
25      A.  No, not to my knowledge.

```
 1   STATE OF OREGON        )
                            ) SS.
 2   COUNTY OF MULTNOMAH    )
 3         I, MARILYNN HOOVER, CSR No. 04-0387 for the
 4   State of Oregon, do hereby certify:
 5         That prior to being examined, the witness named
 6   in the foregoing deposition was duly sworn to
 7   testify the truth, the whole truth, and nothing but
 8   the truth;
 9         That said deposition was taken down by me in
10   shorthand at the time and place therein named, and
11   thereafter reduced by me to typewritten form; and
12   that the same is a true, correct, and complete
13   transcript of the said proceedings.
14         Before completion of the deposition, review of
15   the transcript [ ] was [X] was not requested.  If
16   requested, any changes made by the deponent (and
17   provided to the reporter) during the period allowed
18   shall be appended hereto.
19         I further certify that I am not interested in
20   the outcome of the action.
21         Witness my hand this 7th day of June 2021.
22
23                        _____
24                        Marilynn Hoover, RPR
25                        CSR No. 04-0387; Exp. 03/31/2023
```

Beovich Walter & Friend

1-800-541-4452          503-228-7201          www.bwfreporters.com

Pedersen Decl. Exhibit K, Page 5 of 8

DocuSign Envelope ID: DF4039D4-028E-4168-8910-766CB51A32A2

*Cahill, et al v. Nike*

## Julian Miller Deposition Errata

| Page: Line | Reads | Should Read | Reason |
|---|---|---|---|
| 42:10 | "Correct. Everything done through Taleo is through an open requisition, so it needs to be an open job that is being hired against. It is not a sourcing tool for identifying talent that would be interested in working at Nike." | "Correct, Nike does not use Taleo to proactively identify potential candidates. Everything done through Taleo is through an open requisition, so it needs to be an open job that is being hired against. It is not a sourcing tool for identifying talent that would be interested in working at Nike." | To clarify an answer, consistent with other testimony |
| 89:5 | "the recruiter's discrepancy." | "the recruiter's discretion." | To correct an incorrect word choice |
| 111:5 | "recruiter, right, based on their discrepancy." | "recruiter, right, based on their discretion." | To correct an incorrect word choice |
| 112:22 | "I'm not." | "I don't." | To correct a transcription error |
| 113:17-18 | "No, not beyond those two data points that you mentioned." | "No, not beyond those two data points that you mentioned, but recruiters are instructed to only match applicants to identical job openings being recruited for at the same time." | To clarify an answer, consistent with other testimony |
| 115:9 | "we've done – esthetic updates," | "we've done – aesthetic updates," | To correct a transcription error |
| 121:2-3 | "Yes, Taleo records offer information." | "Taleo records offer information." | To clarify an answer to a confusing and compound question |
| 131:12-15 | "Those would be the questions itself. So O and P are the number of questions that are asked as part of the application, and R would be the questions themselves, to my understanding." | "'Qualifications' as reflected in Column R is a subset of the job description information." | To clarify an answer, consistent testimony later corrected at 168:8-24 |
| 135:13-14 | "Ah, yeah, I've seen recruiters use them interchangeably." | "Beaverton and Portland often are used interchangeably, but there are retail stores in Portland that are not WHQ positions. There is also an employee store in | To clarify an answer |

1

|  |  |  |  |
|---|---|---|---|
|  |  | Beaverton and Air MI also is in Beaverton." |  |
| 158:13 | "It doesn't – It would appear that way." | "It doesn't – but I understand how it could appear that way." | To clarify an answer, consistent with other testimony |
| 162:15 | "I will research and get back to you." | "The 'system' designation that appears on Ms. Linebaugh's 2011 record occurred in an older version of the Taleo software used by Nike in 2011. In that version of Taleo, any system action that included a change to more than 10 candidate records at one time was considered a batch action. This included matching more than 10 candidates to a requisition. To complete a batch action, the scheduler service in the Taleo software ran a batch task. This operation was tracked as being performed by the 'System,' rather than by the user who actually performed the request, due to the nature of this scheduler service. In this instance, we believe that the Recruiter manually matched a number of candidates to requisition number 052046, including but not limited to Ms. Linebaugh. Because the action included more than 10 candidate files, it was run through the Taleo scheduler service and therefore was logged as being performed by the 'System' rather than by the user who actually made the request. The decision regarding which candidates to match to the requisition and executing the steps in the system to match candidates to requisition 052046 were all performed manually by the Recruiter. The | To respond fully to the question after additional research |

2

| | | Taleo system did not make any automated decisions." | |
|---|---|---|---|
| 163:21 | "No, not to my knowledge." | "I am not aware of any written policies, but after the deposition, I reviewed Taleo and confirmed that Nike has not used any of the automated systems discussed during the deposition." | To clarify an answer more fully after additional research |

I attest that the above-referenced changes are true and correct.

Date: 7/27/2021

Julian Miller (DocuSigned)

Julian Miller

3