AMY JOSEPH PEDERSEN, OSB No. 853958
amy.joseph.pedersen@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 300
Portland, Oregon 97205
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
ZACH P. HUTTON, Cal. SB# 234737 (*pro hac vice*)
zachhutton@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
LAURA E. ZABELE, Cal. SB# 330847 (*pro hac vice*)
laurazabele@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California 90071
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

Attorneys for Defendant NIKE, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, SARA JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NIKE, INC., an Oregon Corporation,<br><br>Defendant. | Case No.: 3:18-cv-01477-JR<br><br>DEFENDANT NIKE, INC.'S REPLY IN SUPPORT OF MOTION TO SEAL<br><br>[REDACTED VERSION] |

DEFENDANT NIKE, INC.'S REPLY IN SUPPORT OF MOTION TO SEAL
[REDACTED VERSION]

## **TABLE OF CONTENTS**

                                                                                                 **Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

      I.      Aggregate Statistics Of Alleged Dollar And Percentage Shortfalls In Female Pay Are Not Integral To Plaintiffs' Motion For Class Certification And Are Derived From Current And Former Nike Employees' Confidential Compensation Information. ............................................................2

      II.     The Proposed Redactions Of References To ███████████ ███████████ Are Limited To Unsubstantiated Allegations That Are Irrelevant To Plaintiffs' Motion For Class Certification. ...............................7

      III.    Foundational Facts Related To Nike's Publicly Announced Pay Equity And Promotion Studies Are Privileged Business Strategies That Should Be Redacted. ...............................................................................................................9

      IV.    Plaintiffs' Request For Expedited Review Of This Motion Should Be Denied. ...................................................................................................................10

CONCLUSION ......................................................................................................................11

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Accenture LLP v. Sidhu,*
 2011 WL 6057597 (N.D. Cal. Dec. 6, 2011)............................................................................8

*Asuragen, Inc. v. Accuragen, Inc.,*
 2018 WL 4855435 (N.D. Cal. Jan. 30, 2018)..........................................................................9

*Bureau Veritas Commodities & Trade, Inc. v. Nanoo,*
 2021 WL 2142466 (E.D. La. May 26, 2021)...........................................................................4

*Chen-Oster v. Goldman Sachs & Co.,*
 2022 WL 814074 (S.D.N.Y. Mar. 17, 2022).......................................................................5, 6

*Cox Broad. Corp. v. Cohn,*
 420 U.S. 469 (1975).................................................................................................................9

*Cutera, Inc. v. Lutronic Aesthetics, Inc.,*
 444 F. Supp. 3d 1198 (E.D. Cal. 2020) ...............................................................................3, 4

*Flightsafety Servs. Corp. v. Dep't of Labor,*
 326 F.3d 607 (5th Cir. 2003) ...................................................................................................4

*Gearsource Holdings, LLC v. Google LLC,*
 2020 WL 3833258 (N.D. Cal. July 8, 2020)............................................................................5

*Houserman v. Comtech TeleCommunications Corp.,*
 2021 WL 54766 (W.D. Wash. Jan. 6, 2021) ...........................................................................2

*In re Hydroxycut Mktg. & Sales Practices Litig.,*
 2011 WL 864897 (S.D. Cal. Mar. 11, 2011) .........................................................................10

*Kamakana v. City & Cnty. of Honolulu,*
 447 F.3d 1172 (9th Cir. 2006) .....................................................................................1, 8, 10

*Kenny v. Pac. Inv. Mgmt. Co. LLC,*
 2018 WL 3328224 (W.D. Wash. July 6, 2018) .......................................................................2

*McMorrow v. Mondelez Int'll, Inc.,*
 2020 WL 406314 (S.D. Cal. Jan. 24, 2020) ............................................................................5

*Moussouris v. Microsoft Corp.,*
 2018 WL 1159251 (W.D. Wash. Feb. 16, 2018).....................................................................3


*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978) ...................................................................................................9

*Phillips, ex rel. Estates of Byrd v. Gen. Motors Corp.*,
  307 F.3d 1206 (9th Cir. 2002) ..................................................................................10

*ProV Int'l Inc. v. Lucca*,
  2019 WL 5578880 (M.D. Fla. Oct. 29, 2019) ...........................................................5

*Publicker Indus., Inc. v. Cohen*,
  733 F.2d 1059 (3d 1984) ...........................................................................................4

*Roadrunner Intermodal Servs., LLC v. T.G.S. Transportation, Inc.*,
  2018 WL 432654 (E.D. Cal. Jan. 16, 2018) ..............................................................3

*Skurkis v. Montelongo*,
  2016 WL 4719271 (N.D. Cal. Sept. 9, 2016) ............................................................8

*Sullivan v. Deutsche Bank Americas Holding Corp.*,
  2010 WL 3448608 (S.D. Cal. Aug. 31, 2010) ...........................................................3

*TFC Partners, Inc. v. Stratton Amenities, LLC*,
  2019 WL 369152 (W.D. Tex. Jan. 30, 2019) ............................................................4

*TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.*,
  2011 WL 6182346 (D. Ariz. Dec. 13, 2011) .............................................................4

*United States v. Amodeo*,
  71 F.3d 1044 (2d Cir. 1995) ......................................................................................2

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*,
  529 F. Supp. 866 (E.D. Pa. 1981) .............................................................................4

**INTRODUCTION**

Defendant Nike, Inc. ("Nike") has met its burden to redact and seal designated portions of the documents filed in relation to Plaintiffs' Motion for Class Certification. Nike has shown that the information Plaintiffs seek to disclose would only "gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana v. City & Cnty. of Honolulu,* 447 F.3d 1172, 1179 (9th Cir. 2006) (citation omitted). Nike's proposed limited redactions and sealing requests are narrowly tailored, with minimal redactions to the filings and supporting expert reports and exhibits. Nike has established good cause to redact: (1) the names of former executives in the context of unsubstantiated allegations of sexual harassment or gender discrimination at Nike; (2) derivations of Nike's confidential compensation information that would be of great interest to Nike's competitors, but has no statistical significance; and (3) references to confidential legal strategy regarding Nike's privileged pay equity, promotion and compensation analyses. In response, Plaintiffs made only vague, conclusory objections to Nike's showing, but fail to point to any Ninth Circuit case law that would mandate that the Court deny Nike's reasonable requests. Ultimately, Nike has met its burden and the limited redactions that are still in dispute should be permitted.[1]

---

[1] In a further effort to reconcile the parties' differences regarding redactions and to ensure consistency across the requested redactions, Nike attaches to the Declaration of Daniel Prince in Support of Reply in Support of Motion to Seal ("Prince Decl.") all proposed redactions to date (both agreed upon, highlighted in green, and disputed, highlighted in yellow) to documents filed by Plaintiffs in conjunction with their Motion for Class Certification.

Page 1 –   DEFENDANT NIKE, INC.'S REPLY IN SUPPORT OF MOTION TO SEAL
           [REDACTED VERSION]

**ARGUMENT**

I.  **Aggregate Statistics Of Alleged Dollar And Percentage Shortfalls In Female Pay Are Not Integral To Plaintiffs' Motion For Class Certification And Are Derived From Current And Former Nike Employees' Confidential Compensation Information.**

Nike seeks to redact aggregated statistics derived from highly-confidential compensation information of non-party former and current Nike employees. "[T]he privacy interests of innocent third parties should weigh heavily in a court's balancing equation. . . . Such interests, while not always fitting comfortably under the rubric 'privacy,' are a venerable common law exception to the presumption of access." *United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995) (alterations and citations omitted). Plaintiffs concede that "the aggregated statistics here are derived from data marked Attorneys' Eyes Only." Opp. at 7. Furthermore, Plaintiffs do not contest the Attorneys' Eyes Only designation of the underlying data itself, which consists of former and current Nike employees' confidential salary and compensation. If made public, it could be used by competitors to undermine Nike's business and gain an unfair business advantage and could cause economic harm.

Any information about how Nike sets compensation or the details of its compensation would be of great interest to Nike's competitors and could be leveraged against Nike to its competitors' advantage in competing for the same talent. See *Kenny v. Pac. Inv. Mgmt. Co. LLC*, 2018 WL 3328224, at *2 (W.D. Wash. July 6, 2018) (court "generally agreed" with defendants' argument that "disclosure of individual compensation amounts…would be a boon to competitors who could use such information to recruit [defendant's] personnel or otherwise compete with [defendant] for talent" and sealed compensation information as a result); *Houserman v. Comtech TeleCommunications Corp.*, 2021 WL 54766, at *2-4 (W.D. Wash. Jan. 6, 2021) (sealing "confidential business information" that "could be used by competitors to

Page 2 –   DEFENDANT NIKE, INC.'S REPLY IN SUPPORT OF MOTION TO SEAL
            [REDACTED VERSION]

undermine [defendant's] ability to hire or retain senior-level executives" and agreeing that "such information can be used to 'poach' [defendant's] division leaders and compete for potential employees"); *Roadrunner Intermodal Servs., LLC v. T.G.S. Transportation, Inc.*, 2018 WL 432654, at *4 (E.D. Cal. Jan. 16, 2018) (sealing documents including information about employee salaries that would "enable competitors to target [plaintiff's] most valuable personnel for hiring."). Nike's compensation information is incredibly valuable. *See Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 444 F. Supp. 3d 1198, 1205 (E.D. Cal. 2020) (acknowledging plaintiff's identification of "incentive compensation" and "compensation expectation" as "valuable information"). Unless an individual employee divulges their salary, compensation data is not generally known to the public or competitors. That is because the disclosure of such compensation information would put Nike at a competitive disadvantage on the labor and talent market. *See Roadrunner Intermodal Servs., LLC*, 2018 WL 432654, at *4.

Indeed, disclosing this information would provide competitors with a unique and otherwise unavailable roadmap to how Nike's compensation structure is organized and what areas and skill sets it is emphasizing. *See Sullivan v. Deutsche Bank Americas Holding Corp.*, 2010 WL 3448608, at *2 (S.D. Cal. Aug. 31, 2010) (sealing documents concerning defendants' "unique compensation and incentive programs" because of "the likelihood of an improper use by competitors and the proprietary nature of the confidential information"); *see also Moussouris v. Microsoft Corp.*, 2018 WL 1159251, at *11 (W.D. Wash. Feb. 16, 2018), *report and recommendation adopted*, 2018 WL 1157997, at *1-2 (W.D. Wash. Mar. 1, 2018) (holding there is a compelling reason to keep information related to confidential "compensation structure" under seal). This, in turn, could be used by competitors to improve their recruiting approach to the same business functions, as they either copy or capitalize on what Nike is doing. *See*

Page 3 –   DEFENDANT NIKE, INC.'S REPLY IN SUPPORT OF MOTION TO SEAL
            [REDACTED VERSION]

*TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.*, 2011 WL 6182346, at *6 (D. Ariz. Dec. 13, 2011) (sealing customer information because if "disclosed to the public, it would offer competitors valuable insight into [plaintiff's] customer relationships and negotiations and would allow competitors to copy its successful strategies or to capitalize on its weak areas in order to compete with it."). Even more sensitive is the incomparable assistance such information would provide in teaching competitors how Nike employees might be poached. After all, Nike and its competitors are all vying for talent in a competitive marketplace.

Numerous federal courts have found that compensation information may be considered confidential business information and/or a trade secret.[2] *See, e.g.*, *Flightsafety Servs. Corp. v. Dep't of Labor*, 326 F.3d 607, 611 (5th Cir. 2003) (disallowing disclosure under Freedom of Information Act on grounds that raw data regarding salaries and wages was confidential commercial information and constituted trade secret); *Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 444 F. Supp. 3d 1198, 1206 (E.D. Cal. 2020) (finding that "price and cost information, including . . . employee salaries" is "likely a protectable trade secret."); *Bureau Veritas Commodities & Trade, Inc. v. Nanoo*, 2021 WL 2142466, at *6 (E.D. La. May 26, 2021) ("'[E]mployee information' listed—employee salaries, benefits, and agreements—are plausibly the sort of private business information that courts recognize as trade secrets") (citation omitted); *TFC Partners, Inc. v. Stratton Amenities, LLC*, 2019 WL 369152, at *2 (W.D. Tex. Jan. 30, 2019) (". . . employee compensation structures . . . can be a trade secret."); *ProV Int'l Inc. v. Lucca*,

---

[2] Even if the Court finds that Nike's compensation information does not constitute a trade secret, that does not preclude the derived aggregated data from being subject to seal. A trade secret is a type of "confidential commercial information that courts have traditionally protected," not the only type. *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1074 (3d 1984) (citing *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 529 F. Supp. 866, 890 (E.D. Pa. 1981)). The *Zenith* case upon which *Publicker* relies clarifies repeatedly that both "trade secrets" *and* "confidential commercial information" are protectable. *Zenith Radio Corp.*, 529 F. Supp. at 890.

Page 4 –   DEFENDANT NIKE, INC.'S REPLY IN SUPPORT OF MOTION TO SEAL
            [REDACTED VERSION]

2019 WL 5578880, at *3 (M.D. Fla. Oct. 29, 2019) (noting that "a performance review or a salary recommendation" could be a trade secret).

Plaintiffs fail to put forward a convincing argument that an aggregate of confidential information is not subject to the same level of protection as the confidential information itself. Plaintiffs' attempt to distinguish the cases cited by Nike misses the mark because they simply assert that, unlike the derivate data in those cases, compensation information cannot be a trade secret (or other competitively sensitive business data). However, for the reasons demonstrated above, Plaintiffs' assumptions are inaccurate. Furthermore, in *Gearsource Holdings, LLC v. Google LLC*, 2020 WL 3833258, at *14 (N.D. Cal. July 8, 2020), the court simply held that "calculations derived from Google's data, which are a direct reflection of Google's confidential financial and business information" are sealable. The court did not detail the extent to which the calculated derivations are a reflection of the confidential information. Rather, the deciding factor was the mere fact that the calculations were *derivations* of confidential and proprietary information, as is the case here. Thus, Nike need not detail *how* the underlying compensation data is used to *create* the aggregate in order for the aggregated data to be subject to seal.

Plaintiffs attempt to distinguish *McMorrow v. Mondelez International, Inc.*, 2020 WL 406314, at *2 (S.D. Cal. Jan. 24, 2020) because that court granted a motion to seal damages figures calculated using highly-confidential information derived from a third-party marketing research company. However, simply because the underlying confidential and proprietary information at issue here is internal to Nike does not in any way reduce its value or the need to redact any derivations of it.

Likewise, Plaintiffs' reliance on *Chen-Oster v. Goldman Sachs & Co.*, 2022 WL 814074, at 2 n.5 (S.D.N.Y. Mar. 17, 2022) is misplaced. Plaintiffs misleadingly cite only to a portion of a

Page 5 –   DEFENDANT NIKE, INC.'S REPLY IN SUPPORT OF MOTION TO SEAL
            [REDACTED VERSION]

footnote to argue that "the privacy and business interests that justify sealing [the aggregated dollar figures and percentages] can be outweighed by the public's right to access information necessary to understand the basis for the Court's ruling." Opp. at 7. In *Chen-Oster*, portions of briefs, expert reports and other documents had already been filed under seal. Instead, the court was noting that to the extent it revealed some of the previously redacted information in its order it was doing so for the public to understand the context of the order. This is procedurally inapplicable here as Plaintiffs are disputing the underlying proposed redactions. Also, the *Chen-Oster* opinion does not reveal any confidential numerical data in its discussion. *See Chen-Oster, 2022 WL 814074, at \*3-18*.

Because Nike's compensation data is confidential and proprietary, the aggregated data derived from it is as well.

Nike's request is sufficiently narrowly tailored, as it only seeks to redact the dollar figure and percentages of the alleged shortfalls in pay. This is an argument to which Plaintiffs cannot (and do not) respond. In fact, Plaintiffs admit that "the statistical significance [is] indicated by the **standard deviations** found in Dr. Neumark's analysis." Opp. at 6 (emphasis added). Nike is not attempting to redact the standard deviations, but rather the dollar figures and percentages, which carry no statistical significance. Furthermore, Plaintiffs incorrectly presume that Dr. Neumark's aggregated statistical analysis is not significantly flawed. Indeed, because Dr. Neumark found no disparity in pay during nearly the entire putative class period, Plaintiffs' insistence on disclosing alleged female pay shortfall amounts only would serve to promote public scandal grounded in misleading analyses.

Page 6 –   DEFENDANT NIKE, INC.'S REPLY IN SUPPORT OF MOTION TO SEAL
          [REDACTED VERSION]

II. **The Proposed Redactions Of References To ▇▇▇▇▇▇▇▇▇▇▇▇ Are Limited To Unsubstantiated Allegations That Are Irrelevant To Plaintiffs' Motion For Class Certification.**

Plaintiffs do not dispute that where legitimate privacy interests are implicated, these three former executives' names should be redacted. However, the disputed redactions regarding these individuals fall into that category. Plaintiffs argue that "[t]he redactions in dispute are of information that is already public knowledge and mainly concern the fact that Plaintiffs sought discovery regarding these three individuals." Opp. at 13. Not so. Plaintiffs resort to an overly broad argument that "[t]he fact that Plaintiffs made allegations against [three former executives] and sought discovery regarding those allegations is a publicly known fact," pointing to an April 28, 2018 New York Times article (the "Article"), their First Amended Complaint ("FAC"), and this Court's October 31, 2019 Order (ECF No. 89), but these documents do not assert that these three former executives engaged in sexual harassment or discrimination.

Nike seeks to redact the names of these three individuals where they are alleged to have involvement in or contributed to sexual harassment and/or gender discrimination (*see* Prince Decl., Exh. A at 732, 790). Like other complaints referencing these individuals that Plaintiffs did agree to redact, those allegations are unsubstantiated. Additionally, tying these individuals' names to the allegations of sexual harassment and discrimination is irrelevant to Plaintiffs' Motion for Class Certification. While the Article did mention the three former executives by name, it did not state or allege that any of them had engaged in or condoned sexual harassment or discrimination. Rather, the Article focused on anecdotes about their business decisions and interactions with other Nike employees without making any assertions of them having harassed or discriminated against anyone.

Further, the FAC did not explicitly assert that any of these executives condoned pay/promotion or job-duty discrimination decisions of lower-level managers or that they engaged

Page 7 –   DEFENDANT NIKE, INC.'S REPLY IN SUPPORT OF MOTION TO SEAL
            [REDACTED VERSION]

in sexual harassment or gender discrimination. As for the Court's October 31, 2019 Order, it was made only in the context of a discovery dispute, not in the context of the Court issuing a finding of fact. Specifically, the October 31, 2019 Order only stated that this Court had granted Plaintiffs' motion to compel "to the extent" Nike's records contained complaints of sexual harassment/discrimination linked to policies of pay/promotions and job duties. ECF No. 89. Allowing discovery for such documents does not mean that they exist and thus the references to these executives in the context of the October 31, 2019 Order are appropriate and thereby distinct from the references Nike seeks to redact through this motion.

By attempting to disclose these former executives' names, Plaintiffs would only risk harming the reputations of three individuals who were never found to have engaged in gender discrimination or sexual harassment. Prevention of unfounded reputational damage is an overriding interest that supports granting Nike's motion to seal. *See Kamakana*, 447 F.3d at 1176; s*ee also Skurkis v. Montelongo*, 2016 WL 4719271, at *6 (N.D. Cal. Sept. 9, 2016) (granting motion to file complaint under seal where it contained information about allegedly criminal acts of defendants' agents and non-parties). Nike only seeks to redact these individuals' names, not the allegations surrounding them. By insisting that their names be revealed in this context, when they are not parties to the litigation, Plaintiffs are trying to promote scandal. This is especially true where Nike has permitted non-identifying descriptions of the allegations themselves to be disclosed (*see, e.g.*, Prince Decl., Exh. A at 39). Importantly, Plaintiffs cannot point to a single document substantiating allegations of discrimination or harassment against these individuals. Ultimately, "[t]he inclusion of unfounded accusations unrelated to the claims brought by [Plaintiffs] suggests that" their names are not being used to support an argument for class certification, "but . . . as a vehicle for character assassination." *Accenture LLP v. Sidhu,*

Page 8 –   DEFENDANT NIKE, INC.'S REPLY IN SUPPORT OF MOTION TO SEAL
            [REDACTED VERSION]

2011 WL 6057597, at *3 (N.D. Cal. Dec. 6, 2011). Numerous "courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978) (citing cases). This Court should do the same.

Notably, Plaintiffs do not cite to any cases dealing with a motion to seal, let alone one regarding the privacy interests of a non-party in this regard. The one case they do cite, Cox Broad. Corp. v. Cohn, 420 U.S. 469, 492 (1975), is procedurally anathema. In Cox, the issue was whether the press had infringed upon the appellee's privacy right by publishing the fact that his daughter was a rape victim (information that had already been revealed in public court proceedings). Nothing, besides destroying these non-parties' reputations, is to be gained by disclosing their names in this context. Thus, their names should be redacted in connection with such allegations from Plaintiffs' Motion for Class Certification and exhibits.

### III.  Foundational Facts Related To Nike's Publicly Announced Pay Equity And Promotion Studies Are Privileged Business Strategies That Should Be Redacted.

Without citing to supporting case law, Plaintiffs argue that the Court should reject Nike's request to seal descriptions of its pay equity analyses and the fact that it asserted privilege over these studies. Plaintiffs incorrectly assert that the Court's October 9, 2020 Order (ECF No. 117) encompasses all such proposed redactions. In reality, Nike's proposed redactions consist of information that is not disclosed in the Court's October 9, 2020 Order, which the Court wisely kept as vague as possible. Indeed, the October 9, 2020 Order denied Plaintiffs' motion to compel on the basis that the information Plaintiffs sought was privileged.

Nike also seeks to redact advice provided by legal counsel regarding its promotion analysis. This decision is a confidential business strategy that should be redacted. *See, e.g.,* Asuragen, Inc. v. Accuragen, Inc., 2018 WL 4855435, at *2 (N.D. Cal. Jan. 30, 2018) (finding that "a business presentation . . . that . . . discloses proprietary trade secret information and

Page 9 –   DEFENDANT NIKE, INC.'S REPLY IN SUPPORT OF MOTION TO SEAL
            [REDACTED VERSION]

confidential business strategies" is "confidential business information" and "will be sealed in its entirety."); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 2011 WL 864897, at *2 (S.D. Cal. Mar. 11, 2011) (finding compelling reasons to seal documents containing information revealing business and marketing strategy and product development).

Ultimately, the proposed redactions are to documents that have literally nothing to do with the substance of Plaintiffs' Motion for Class Certification. Rather, they are attached to the Goldstein Declaration and improperly raise irrelevant non-dispositive discovery disputes months after the close of discovery. For this reason, the much lower "good cause" standard applies to determining whether these documents should be filed under seal. *Kamakana*, 447 F.3d at 1180, 1186 ("good cause" standing requires a "particularized showing" that "specific prejudice or harm" will result if the information is disclosed); accord *Phillips, ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). Thus, Nike's request to redact such information here should be granted.

## IV.    Plaintiffs' Request For Expedited Review Of This Motion Should Be Denied.

Plaintiffs' reasoning for an expedited review of this motion is illogical. Plaintiffs incorrectly claim that they "will be limited in their ability to reply to Nike's opposition [to Plaintiffs' motion for class certification] if they are unable to refer to their original motion and supporting documents[.]" Opp. at 17. Just as Nike was not limited in its ability to forcefully oppose Plaintiffs' Motion for Class Certification in its entirety, even though it was filed under seal, so too Plaintiffs are not prevented from drafting a fulsome reply. Both parties have access to the unredacted versions of all filings. In any event, once the Court rules on Nike's motion to seal, finalized public versions of briefings will be filed. In any event, there is nothing preventing Plaintiffs from filing redacted versions of the documents with all proposed and contested redactions. Once the Court has ruled on Nike's motion, if any redactions need to be rolled back,

Page 10 –   DEFENDANT NIKE, INC.'S REPLY IN SUPPORT OF MOTION TO SEAL
             [REDACTED VERSION]

they can be (in fairly short order).  Any potential confusion by members of the public about the sequence in which documents are publicly filed is not only speculative, but also of no import in comparison to preventing the irreversible harm that would be caused by disclosing confidential personnel and trade secret information.

## CONCLUSION

For the foregoing reasons, Nike respectfully requests that the Court grant its Motion to Seal narrowly tailored and limited instances of personal identifying information, confidential and proprietary information regarding compensation data, and references to legal advice and privileged analyses unrelated to Plaintiffs' Motion for Class Certification as described above.

Dated:  April 6, 2022                                Respectfully submitted,

/s/ Daniel Prince
Daniel Prince, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
Zach P. Hutton, Cal. SB#234737 (*pro hac vice*)
zachhutton@paulhastings.com
Felicia A. Davis, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
Laura E. Zabele, Cal. SB# 330847 (*pro hac vice*)
laurazabele@paulhastings.com

PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071-2228
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Amy Joseph Pedersen, OSB No. 853958
amy.joseph.pedersen@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  (503) 294-9408
Facsimile:  (503) 220-2480

Attorneys for Defendant NIKE, INC.

Page 11 –   DEFENDANT NIKE, INC.'S REPLY IN SUPPORT OF MOTION TO SEAL
            [REDACTED VERSION]