AMY JOSEPH PEDERSEN, OSB No. 853958
amy.joseph.pedersen@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 300
Portland, Oregon  97205
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
ZACH P. HUTTON, Cal. SB# 234737 (*pro hac vice*)
zachhutton@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
LAURA E. ZABELE, Cal. SB# 330847 (*pro hac vice*)
laurazabele@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California  90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Attorneys for Defendant NIKE, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, SARA JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>NIKE, INC., an Oregon Corporation,<br><br>    Defendant. | Case No.:  3:18-cv-01477-JR<br><br><br>DEFENDANT NIKE, INC.'S OPPOSITION TO  NON-PARTY MEDIA ORGANIZATIONS' MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF MOVING TO UNSEAL JUDICIAL RECORDS AND TO OPPOSE DEFENDANT'S MOTION TO SEAL |

DEFENDANT NIKE, INC.'S OPPOSITION TO NON-PARTY MEDIA
ORGANIZATIONS' MOTION TO INTERVENE

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ............................................................................................................... 1

RELEVANT FACTUAL BACKGROUND .......................................................................... 3

      I.      The Court Entered A "Tier Two" Protective Order in June 2019 ......................... 3

      II.     The Parties Have Complied With The Protective Order's Requirements. ........... 4

      III.    The Media Intervenors Seek To Disregard The Protective Order And Its
            Processes. ............................................................................................................ 5

LEGAL ARGUMENT ......................................................................................................... 6

      I.      Media Intervenors' Motion Should Be Denied; Nike's Motion To Seal Is
            Set To Be Heard On May 16, 2022 And It Will Resolve Issues Pertaining
            To The Public Disclosure Of The Information At Issue ...................................... 6

      II.     The Media Intervenors' Motion Should Be Denied As Moot. ............................ 9

      III.    Nike Has Demonstrated Compelling Reasons To Keep Categories Of
            Confidential And Private Information Redacted. ............................................... 10

      IV.    Media Intervenors' Motion Is Procedurally Untimely ...................................... 14

CONCLUSION ................................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Accenture LLP v. Sidhu*,
   2011 WL 6057597 (N.D. Cal. Dec. 6, 2011) ........................................................13

*Asuragen, Inc. v. Accuragen, Inc.*,
   2018 WL 4855435 (N.D. Cal. Jan. 30, 2018) .......................................................14

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
   966 F.2d 470 (9th Cir. 1992) .................................................................................6

*deBarros v. Walmart Stores, Inc.*,
   857 F.Supp.2d 1109 (D. Or. 2012) ........................................................................3

*Donnelly v. Glickman*,
   159 F.3d 405 (9th Cir. 1998) .................................................................................6

*Est. of Osborn-Vincent v. Ameriprise Fin. Servs., Inc.*,
   2018 WL 6809177 (D. Or. Dec. 27, 2018) ............................................................3

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
   331 F.3d 1122 (9th Cir. 2003) .........................................................................10, 13

*Freedom from Religion Found., Inc. v. Geithner*,
   644 F.3d 836 (9th Cir. 2011) .................................................................................6

*Hall v. Cnty. of Fresno*,
   2015 WL 13236882 (E.D. Cal. Dec. 11, 2015) .....................................................4

*Hatamian v. Advanced Micro Devices, Inc.*,
   2017 WL 1075051 (N.D. Cal. Mar. 22, 2017) ......................................................7

*Hounshel v. Battelle Energy Alliance, LLC*,
   2013 WL 5375833 (D. Idaho Sept. 24, 2013) .......................................................13

*Houserman v. Comtech TeleCommc'ns Corp.*,
   2021 WL 54766 (W.D. Wash. Jan. 6, 2021) .........................................................11

*IDT Corp. v. eBay*,
   709 F.3d 1220 (8th Cir. 2013) ...............................................................................10

*In re Cloudera, Inc. Secs. Litig.*,
   2021 WL 1238301 (N.D. Cal. Apr. 2, 2021) .........................................................7

*In re FCA U.S. LLC,*
    377 F. Supp. 3d 779 (E.D. Mich. 2019)............................................................10

*In re Hydroxycut Mktg. & Sales Practices Litig.,*
    2011 WL 864897 (S.D. Cal. Mar. 11, 2011) ...................................................14

*In re Nat'l Sec. Agency Telecommc'ns Records Litig.,*
    2007 WL 549854 (N.D. Cal. Feb. 20, 2007) ...................................................10

*Kamakana v. City & County of Honolulu,*
    447 F.3d 1172 (9th Cir. 2006) ...............................................................10, 12

*Keith H. v. Long Beach Unified Sch. Dist.,*
    228 F.R.D. 652 (C.D. Cal. 2005)......................................................................13

*Kenny v. Pac. Inv. Mgmt. Co. LLC,*
    2018 WL 3328224 (W.D. Wash. July 6, 2018) .............................................11

*Kremen v. Cohen,*
    2012 WL 2919332 (N.D. Cal. July 17, 2012)...................................................6

*McDonnell v. Southwest Airlines Co.,*
    2006 WL 8447776 (C.D. Cal. Jul. 6, 2006).......................................................6

*Nixon v. Warner Commc'ns, Inc.,*
    435 U.S. 589 (1978)........................................................................................13

*Pegatron Tech. Serv., Inc. v. Zurich Am. Ins. Co.,*
    377 F. Supp. 3d 1197 (D. Or. 2019) .................................................................3

*Perry v. Schwarzenegger,*
    630 F.3d 898 (9th Cir. 2011) .............................................................................6

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.,*
    307 F.3d 1206 (9th Cir. 2002) ...........................................................................3

*Pyro Spectaculars North, Inc. v. Souza,*
    2012 U.S. Dist. LEXIS 31016 (E.D. Cal. Mar. 8, 2012) ..................................1

*Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.,*
    2018 WL 432654 (E.D. Cal. Jan. 16, 2018) .................................................1, 12

*Skurkis v. Montelongo,*
    2016 WL 4719271 (N.D. Cal. Sept. 9, 2016) ..................................................12

*Smith ex rel. Thompson v. Los Angeles Unified Sch. Dist.*,
   2014 WL 176677 (C.D. Cal. Jan. 16, 2014), *rev'd*
   822 F.3d 1065 (9th Cir. 2016), *amended and superseded on denial of reh'g*
   830 F.3d 843 (9th Cir. 2016) ............................................................................8

*Spangler v. Pasadena City Bd. of Educ.*,
   552 F.2d 1326 (9th Cir. 1977) .........................................................................6

*Sullivan v. Deutsche Bank Ams. Holding Corp.*,
   2010 WL 3448608 (S.D. Cal. Aug. 31, 2010) ................................................12

*U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*,
   866 F. Supp. 2d 247 (S.D.N.Y. 2012) ............................................................14

*United Farm Workers v. United States Dep't of Lab.*,
   2021 WL 2576995 (E.D. Cal. June 22, 2021) ..................................................7

*United States v. Amodeo*,
   71 F.3d 1044 (2d Cir. 1995) ...........................................................................11

*United States v. Benzer*,
   2015 WL 4724092 (D. Nev. Aug. 7, 2015) ......................................................8

*United States v. Carrols Dev. Corp.*,
   454 F. Supp. 1215 (N.D.N.Y. 1978), *modified at*
   1981 WL 2184 (N.D.N.Y. Oct. 16, 1981) .......................................................8

*Valley View Health Care, Inc. v. Chapman*,
   2013 WL 4541602 (E.D. Cal. Aug. 27, 2013) ..................................................9

*Velasco v. Chrysler Grp. LLC*,
   2017 WL 445241 (C.D. Cal. Jan. 30, 2017), *aff'd*,
   747 F. App'x 463 (9th Cir. 2018) (unpublished) .............................................8

*Venegas v. Skaggs*,
   867 F.2d 527 (9th Cir. 1989) ...........................................................................9

**RULES**

FED. R. CIV P. 24(b) ...............................................................................................6

FED. R. CIV. P. 24(b)(1) ..........................................................................................6

FED. R. CIV. P. 24(b)(3) ..........................................................................................6

FED. R. CIV. P. 26(c) ...........................................................................................1, 3

## INTRODUCTION

The Court entered the Protective Order here on June 17, 2019.  ECF No. 82.  That Protective Order directly flows from, and is modeled after, the "Tier Two" Protective Order published by the United States District Court for the District of Oregon.  The Media Intervenors[1] do not (nor could they) argue that Nike has failed to follow the provisions of the Protective Order.  They instead appear to contend that they have a right to intervene here to make an end-run on the Protective Order in the first instance.  That position ignores the import of Federal Rule of Civil Procedure 26(c) and case law recognizing the need to protect, for example, proprietary business information, competitively sensitive material, and information implicating an employee's right to privacy.  *See, e.g.,* *Pyro Spectaculars North, Inc. v. Souza*, 2012 U.S. Dist. LEXIS 31016 (E.D. Cal. Mar. 8, 2012) (sealing documents which reflected details about employee compensation that were related to proprietary business operations); *Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*, 2018 WL 432654, at *4 (E.D. Cal. Jan. 16, 2018) (sealing documents reflecting employee compensation data regarding current employees that would enable competitors to target the company's valuable personnel).

In this case, there have been more than 200 court filings, the great majority of which have been filed publicly and are available for consumption by the Media Intervenors or other members of the public.  There is, however, a narrow subset of filings that have been sealed and/or redacted from public view because they contain, for example, (1) the names and/or identifying information of any third-party complainants, subjects, or witnesses to allegations of sexual harassment or gender discrimination; (2) portions of briefing and/or declarations that the Court

---

[1] Collectively, the "Media Intervenors" refers to Insider Inc., *d/b/a Business Insider*, Advance Local Media LLC *d/b/a Oregonian Media Group*, and American City Business Journals, Inc.'s *d/b/a Portland Business Journal*.

has acknowledged to reflect privileged material and/or attorney work product (*e.g.,* privileged pay equity, promotion, and compensation analyses); and (3) confidential and proprietary compensation information derived from "Attorney's Eyes Only" ("AEO") data of current and former employees.

Pursuant to the terms of the Protective Order, for this limited universe of documents, the Parties have met and conferred in good faith to resolve questions relating to sealing or redactions. The great majority of those issues have been resolved by the Parties, resulting in the publication of hundreds of documents (including exhibits and other materials) on the court docket. Yet, there remains a smaller subset of proposed redactions that are disputed. The Parties have briefed the same (pursuant to the Protective Order), and the Court has scheduled these matters for its under advisement calendar on May 16, 2022. ECF Nos. 171, 175, 200, and 209. Those redactions will be addressed in due course, subject to the Court's ruling(s). In the meantime, the Parties have filed other materials (with sparing redactions, where appropriate) on the docket consistent with their obligations under the Protective Order.

For the Media Intervenors, that is not good enough. Instead, they seek access to materials and information to which they have no legal right (and in deprivation of rights held by the Parties and third-parties). And they seek to do so despite having been notified by counsel of the existence of the Protective Order, the processes for complying with the same, and the ongoing and timely filing of documents and mountains of information relating to this case on the public docket.

The motion lacks merit and should be denied.

## RELEVANT FACTUAL BACKGROUND

### I.    The Court Entered A "Tier Two" Protective Order In June 2019.

Courts "routinely enter protective orders to prevent the undue disclosure of commercially sensitive information" and other private information. *Est. of Osborn-Vincent v. Ameriprise Fin. Servs., Inc.*, 2018 WL 6809177, at *1 (D. Or. Dec. 27, 2018); *Pegatron Tech. Serv., Inc. v. Zurich Am. Ins. Co.*, 377 F. Supp. 3d 1197, 1202 (D. Or. 2019) (citing *deBarros v. Walmart Stores, Inc.*, 857 F. Supp. 2d 1109, 1113 (D. Or. 2012)) ("Courts have 'broad latitude' to issue a protective order to 'protect a party or person from annoyance, embarrassment, oppression, or undue burden' . . . This includes the need to prevent disclosure of information that 'could be damaging to reputation and privacy.'").

Relying on its broad discretion, in June 2019, the Court entered the Protective Order in this case to protect commercially sensitive information and other private material involving employees, consistent with Fed. R. Civ. P. 26(c).  ECF No. 82.  *Est. of Osborn-Vincent*, 2018 WL 6809177, at *1 ("District courts have 'broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required.'") (citation omitted); *see also Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) ("Applying a strong presumption of access to documents a court has already decided should be shielded from the public would surely undermine, and possibly eviscerate, the broad power of the district court to fashion protective orders.").

The Protective Order here tracks the "model" provided by this Court.  As set forth below, there is no dispute that the Protective Order establishes a process for resolving disputes relating to "Confidential" or "AEO" information, nor is there any dispute that the Parties have failed to follow that process.  Instead, the Media Intervenors seek to do away with the Protective Order (and the rights of the Parties/third-parties) altogether.  No authority supports that request.

## II.    <u>The Parties Have Complied With The Protective Order's Requirements.</u>

The Protective Order provides a clear process for designating materials as "Confidential" or "AEO" and for challenging the designation of the same.  It states:  "[i]f a non-designating party is filing a document that another party has designated as 'Confidential' or 'Attorneys' Eyes Only,' then the non-designating party shall file the document under seal.  If the non-designating party makes a request in writing to have the document unsealed and designating party does not file, within twenty (20) calendar days, a motion that shows good cause to maintain the document under seal, then the Court shall unseal the document."  ECF No. 82 at 4.

There are more than 200 filings in this case, the great majority of which appear on the public docket.[2]  Some documents have been filed under seal, consistent with the Protective Order, to the extent they contain Confidential and/or AEO material.  That includes certain filings relating to Plaintiffs' Motion for Class Certification and Nike's Opposition to the Motion for Class Certification.  *See, e.g.,* ECF Nos. 146, 148, 149, 154, 163, 183, 185, 186, and 187.  The Parties have met and conferred (and continue to meet and confer) regarding the confidentiality designations within those filings.[3]

Where the Parties have agreed, they have filed unopposed Motions to Unseal the relevant documents, which the Court has summarily granted.  *See, e.g.,* ECF Nos. 195, 208.  However, where the Parties continue to disagree on the scope of any redactions, as is contemplated by the Protective Order, those matters have been fully briefed and await resolution by the Court.  *See, e.g.,* ECF Nos. 171, 175, and 200.  Even so, the Parties have begun filing redacted versions of

---

[2] *See* <u>Hall v. Cnty. of Fresno, 2015 WL 13236882, at *5 (E.D. Cal. Dec. 11, 2015)</u> ("The vast majority of the litigation . . . documents in this case have been made publicly available.").
[3] Media Intervenors concede that "[t]he Protective Order details procedures for the parties to provisionally file documents containing privileged or confidential information under seal, as well as procedures for those designations to be challenged via motion practice applying a 'good cause' standard."  Mot. at 4.

those documents publicly, with the proviso that the Court's ruling(s) may impact certain (or all) of the remaining redactions.  *See* ECF Nos. 177 and 213.

## III.    <u>The Media Intervenors Seek To Disregard The Protective Order And Its Processes.</u>

On April 1, 2022, Nike's counsel met and conferred with counsel for Plaintiffs and the Media Intervenors.  *See* Declaration of Daniel Prince ("Prince Decl.") at ¶ 3.  Unhappy with the basic existence of the Protective Order, and with the Parties' compliance with the same, the Media Intervenors filed the instant motion.

Nike further notes that the Media Intervenors requested to postpone a decision on their motion until the Court resolves the Parties' sealing issues on or about May 16, 2022.  *See id.* at ¶ 4.  This request shows that there is no need for intervention (even if there were some legal basis) because the Court's ruling on the scope of any redactions would obviate the need for intervention.  That is, if the Court rules in Nike's favor on sealing matters, that would acknowledge the ongoing need to protect proprietary commercial information and/or the individual privacy rights of individuals, thus precluding intervention on that basis alone.  On the other hand, if the Court is inclined to resolve the redactions in Plaintiffs' favor, intervention still would be inappropriate because it would deprive the Parties of any safeguards established by the Protective Order.  If the Media Intervenors have access to confidential information on a real-time basis like the Parties, then it would be impossible to later "unring the bell," particularly if such information is published or republished shortly after the Media Intervenors gain access to the same.  Put simply, the Court's ruling(s) on redaction matters is the cure here—not intervention.

## LEGAL ARGUMENT

I.  **Media Intervenors' Motion Should Be Denied; Nike's Motion To Seal Is Set To Be Heard On May 16, 2022 And It Will Resolve Issues Pertaining To The Public Disclosure Of The Information At Issue.**

Permissive intervention under Federal Rule of Civil Procedure 24(b)(1) "'requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action.'" *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)).  Even where these threshold requirements are met, a court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3); *Kremen v. Cohen*, 2012 WL 2919332, at *9 (N.D. Cal. July 17, 2012) (same).  Further, "[e]ven if an applicant satisfied [the] threshold requirements, the district court has discretion to deny permissive intervention." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).

Courts also consider other factors, including "whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011) (citing Fed. R. Civ. P. 24(b) and *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)).

Briefing on Nike's Motion to Seal already has been completed and is scheduled to be heard on May 16, 2022.  Granting the Media Intervenors's motion "will simply prolong this litigation on an issue that has been fully briefed and developed by the parties currently engaged in th[is] action." *McDonnell v. Southwest Airlines Co.*, 2006 WL 8447776, at *3 (C.D. Cal. Jul.

6, 2006) (denying Tribune Company's motion to intervene for limited purpose of unsealing court records); *In re Cloudera, Inc. Secs. Litig.*, 2021 WL 1238301, at *4 (N.D. Cal. Apr. 2, 2021) (denying motion to intervene because "permissive intervention would likely delay the proceedings of the case" and "delay resolution of the motions to dismiss" timely filed by defendants); *Hatamian v. Advanced Micro Devices, Inc.*, 2017 WL 1075051, at *2 (N.D. Cal. Mar. 22, 2017) (finding that potential for significant delay if permissive intervention was granted weighed against granting motion to intervene).

Relatedly, Media Intervenors' rights are adequately represented by both Parties.  First, neither Party is attempting to prevent the public's access to court filings in perpetuity.  Rather, the Parties have filed certain documents under seal temporarily, which protects the interests of the Parties and third-parties until the Court can rule on any disputes related to confidentiality designations.  Second, the Media Intervenors' request that "the parties be directed to re-file . . . redacted documents . . . upon a finding by the Court that compelling reasons exist to seal such information from the public" is exactly what the Parties were seeking to do before the Media Intervenors filed their motion.  Mot. at 3.  Finally, the Media Intervenors' purported interest is to "provid[e] additional briefing regarding the specific sealings and redactions proposed in Defendant's Sealing Motion, Sealing Declaration, Plaintiffs' responses (both public and non-public) thereto, and Defendant's Sealing Reply."  Mot. at 13.  That interest is aligned with the Parties' interests.  Furthermore, Plaintiffs have filed an opposition to Nike's Motion to Seal and thus any additional interest that Media Intervenors may have would certainly be more than adequately represented through that opposition.[4]  *See United Farm Workers v. United States Dep't of Lab.*, 2021 WL 2576995, at *4 (E.D. Cal. June 22, 2021) (denying motion to intervene

---

[4] The Media Intervenors dispute this out of hand without explanation.

where "defendants have already advanced all of the arguments that proposed intervenors would apparently raise were they allowed to intervene at this late stage of the litigation" and "proposed intervenors have proffered no new or additional arguments that they believe were not advanced by defendants."). Thus, the claimed interests of the Media Intervenors could not possibly be more adequately represented than they already are.

The Media Intervenors do not need to redo what the Parties have done. *See United States v. Carrols Dev. Corp.*, 454 F. Supp. 1215, 1221–22 (N.D.N.Y. 1978), *modified at* 1981 WL 2184 (N.D.N.Y. Oct. 16, 1981) (denying permissive intervention generally, and also denying "limited participation" because the "purposes for granting such participation have already been achieved here since the moving parties have set forth their views in considerable detail in briefs and affidavits filed with this Court . . .The Court does not feel that the submission of additional papers, at this time, would serve a useful purpose."). Furthermore, "courts routinely decide motions to unseal brought by intervenors without first unsealing the documents at issue." *Velasco v. Chrysler Grp. LLC*, 2017 WL 445241, at *5 (C.D. Cal. Jan. 30, 2017), *aff'd*, 747 F. App'x 463 (9th Cir. 2018) (unpublished) (citing *United States v. Benzer*, 2015 WL 4724092, at *1 (D. Nev. Aug. 7, 2015)). The Media Intervenors do not put forward any reason that they need access to documents filed under seal, in any event, particularly where the Protective Order provides a process for "downgrading" confidentiality designations or for the Court to resolve disputes concerning the same.

In determining whether to permit intervention, the Court also should consider whether allowing intervention would promote "judicial economy." *See Smith ex rel. Thompson v. Los Angeles Unified Sch. Dist.*, 2014 WL 176677, at *11 (C.D. Cal. Jan. 16, 2014), *rev'd on other*

grounds 822 F.3d 1065 (9th Cir. 2016), *amended and superseded on denial of reh'g* 830 F.3d 843 (9th Cir. 2016) (quoting *Venegas v. Skaggs*, 867 F.2d 527, 530-31 (9th Cir. 1989)).

It would not.  First, intervention would eviscerate the safeguards built into the Protective Order for Confidential and/or AEO information, and there is no way to "unring the bell."  That alone necessitates denial of the motion.

Second, the Media Intervenors' claimed interest in accessing filings under seal so that they may move to unseal the same makes no sense.  There is no reason that the rights of the Parties or third-parties should be trampled on to allow such intervention.  While an affected third-party may have standing, there is no showing that the Media Intervenors would or should be able to access Confidential or AEO materials to assert rights that they do not have and may not be able to vindicate.  This would impose additional costs of delay and the (mis)use of judicial resources.  *See Valley View Health Care, Inc. v. Chapman*, 2013 WL 4541602, at *9 (E.D. Cal. Aug. 27, 2013) (while Media Intervenors "may have a unique point of view . . . intervention as a party will not necessarily facilitate resolution on the merits, but is likely to result in a delay in the proceedings and duplicative briefing, adding a layer of unwarranted procedural complexity").

## II.    <u>The Media Intervenors' Motion Should Be Denied As Moot.</u>

As stated above, the Parties have completed their briefing on the limited number of disputes that remain concerning certain confidentiality designations and the scope of redactions relating to proprietary business information and/or private information about non-parties.  Those matters will be resolved on or about May 16, 2022, but the Parties have filed (and are filing) redacted versions publicly in the interim.  The fact that a name or phrase (or line of a document) may be redacted from public view—during pendency of the Court's review—does not unduly prejudice the rights of the public.

Indeed, where crucial "portions of the [filings] may be amenable to public access without jeopardizing the confidentiality of sensitive information," and "confidential information [is not] so embedded in a [filing] that line-by-line redaction is impossible . . . redaction [is] a reasonable alternative to sealing the entire [document]." *In re FCA U.S. LLC*, 377 F. Supp. 3d 779, 793 (E.D. Mich. 2019) (quoting *IDT Corp. v. eBay*, 709 F.3d 1220, 1224 (8th Cir. 2013)) (alterations in original). The redacted information is "unrelated, or only tangentially related to the underlying cause[s] of action," *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003), and is not "at the heart of the interest in ensuring the public's understanding of the judicial process and of significant public events." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (internal quotation marks omitted).

Because the Parties are filing redacted versions publicly, the Media Intervenors' motion should be denied as moot. *See In re Nat'l Sec. Agency Telecommc'ns Records Litig.*, 2007 WL 549854, at *4 (N.D. Cal. Feb. 20, 2007) (denying media entities' motion to unseal documents in part because "***the parties already released redacted versions of the documents at issue***.") (emphasis added).

## III. Nike Has Demonstrated Compelling Reasons To Keep Categories Of Confidential And Private Information Redacted.

Although there is a presumption of access to court records, the right to access "is not absolute and can be overridden given sufficiently compelling reasons for doing so." *Foltz*, 331 F.3d at 1135. To meet the "compelling reasons" standard, the party seeking to seal a judicial record "must articulate compelling reasons supported by specific factual findings." *Kamakana*, 447 F.3d at 1178 (internal citations and alterations omitted).

As the Media Intervenors recognize, Nike seeks to seal (1) the names of any individuals (complainants, subjects and witnesses) named in the context of allegations regarding sexual

harassment or gender discrimination at Nike; (2) briefing and declarations filed in relation to Plaintiffs' motion to compel Nike's privileged pay equity, promotion, and compensation analyses that reflect confidential legal strategy; and (3) Nike's confidential and proprietary compensation information, including Nike's compensation structure as well as pay shortfall conclusions derived from AEO compensation data of current and former Nike employees who are not parties to the litigation. *See* Mot. at 7-8. Nike's briefing lays out the compelling reasons to redact these categories of information.

First, Nike seeks to redact aggregated statistics derived from highly-confidential compensation information of non-party former and current Nike employees. "[T]he privacy interests of innocent third parties should weigh heavily in a court's balancing equation. . . . Such interests, while not always fitting comfortably under the rubric 'privacy,' are a venerable common law exception to the presumption of access." *United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995) (alterations and citations omitted). If made public, this information could be used by competitors to undermine Nike's business and gain an unfair business advantage and could cause economic harm.

Any information about how Nike sets compensation or the details of its compensation would be of great interest to Nike's competitors and could be leveraged against Nike to its competitors' advantage in competing for the same talent. *See Kenny v. Pac. Inv. Mgmt. Co. LLC*, 2018 WL 3328224, at *2 (W.D. Wash. July 6, 2018) (court "generally agree[d]" with defendants' argument that "disclosure of individual compensation amounts…would be a boon to competitors who could use such information to recruit [defendant's] personnel or otherwise compete with [defendant] for talent" and sealed compensation information as a result); *Houserman v. Comtech TeleCommc'ns Corp.*, 2021 WL 54766, at *2-4 (W.D. Wash. Jan. 6,

Page 11 –  DEFENDANT NIKE, INC.'S OPPOSITION TO NON-PARTY MEDIA
ORGANIZATIONS' MOTION TO INTERVENE

2021) (sealing "confidential business information" that "could be used by competitors to undermine [defendant's] ability to hire or retain senior-level executives" and agreeing that "such information can be used to 'poach' [defendant's] division leaders and compete for potential employees"). That is because the disclosure of such compensation information would put Nike at a competitive disadvantage on the labor and talent market. *Roadrunner Intermodal Servs., 2018 WL 432654, at *4*.

Disclosing this information would provide competitors with a unique and otherwise unavailable roadmap to how Nike's compensation structure is organized and what areas and skill sets it is emphasizing. *See Sullivan v. Deutsche Bank Ams. Holding Corp.*, 2010 WL 3448608, at *2 (S.D. Cal. Aug. 31, 2010) (sealing documents concerning defendants' "unique compensation and incentive programs" because of "the likelihood of an improper use by competitors and the proprietary nature of the confidential information"). Because Nike's compensation data is confidential and proprietary, the aggregated data derived from it is as well.

Second, Nike has compelling reasons to redact the names of three individuals where they are alleged to have involvement in or contributed to sexual harassment and/or gender discrimination because those allegations are unsubstantiated. Additionally, tying these individuals' names to the allegations of sexual harassment and discrimination is irrelevant to Plaintiffs' Motion for Class Certification and would only risk harming the reputations of three individuals who were never found to have engaged in gender discrimination or sexual harassment. Prevention of unfounded reputational damage is an overriding interest that supports sealing. *See Kamakana*, 447 F.3d at 1179; s*ee also Skurkis v. Montelongo*, 2016 WL 4719271, at *6 (N.D. Cal. Sept. 9, 2016) (granting motion to file complaint under seal where it contained information about allegedly criminal acts of defendants' agents and non-parties). Nike only

seeks to redact these individuals' names to prevent scandal, not the allegations surrounding them. "The inclusion of unfounded accusations unrelated to the claims brought by [Plaintiffs] suggests that" their names are not being used to support an argument for class certification, "but . . . as a vehicle for character assassination." *Accenture LLP v. Sidhu*, 2011 WL 6057597, at *3 (N.D. Cal. Dec. 6, 2011). Numerous "courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (citing cases).

Ultimately, Nike seeks to protect all third parties' right of privacy. *See Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 657 (C.D. Cal. 2005) ("Federal courts ordinarily recognize a constitutionally-based right of privacy . . .") (internal citations and quotation marks omitted). Courts in the Ninth Circuit have recognized a particular need to protect the privacy rights of third parties. *See, e.g.*, *Foltz*, 331 F.3d at 1137 (acknowledging need to protect third-party privacy interests); *Keith H.*, 228 F.R.D. at 657; *Hounshel v. Battelle Energy Alliance, LLC*, 2013 WL 5375833, at *1 (D. Idaho Sept. 24, 2013) (party's "discovery requests raise significant privacy concerns for third-party employees who ha[d] no involvement in this case"). Ninth Circuit courts have repeatedly permitted the redaction of such sensitive and identifying non-party information as Nike seeks to do here. *See, e.g.*, *Foltz*, 331 F. 3d at 1137 (holding that third-party privacy information can be protected by "[s]imply redacting the identifying information of third parties . . . from the[] records and disclosing the remaining information"); *Hounshel*, 2013 WL 5375833, at *3 (holding that a party "must redact any personal identifying information, including names and addresses, from the produced personnel files. The[] non-party employees have done nothing to inject themselves into this case, and the Court sees no reason to invade their privacy without more.").

Finally, Nike has compelling reasons to redact advice provided by legal counsel regarding its promotion analysis.  Decisions related to Nike's promotion analysis are confidential business strategies that should be redacted.  *See, e.g., Asuragen, Inc. v. Accuragen, Inc.*, 2018 WL 4855435, at *2 (N.D. Cal. Jan. 30, 2018) (finding that "a business presentation . . . that . . . discloses proprietary trade secret information and confidential business strategies" is "confidential business information" and "will be sealed in its entirety."); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 2011 WL 864897, at *2 (S.D. Cal. Mar. 11, 2011) (finding compelling reasons to seal documents containing information revealing business and marketing strategy and product development).

Ultimately, Nike has met its burden in establishing compelling reasons for these redactions and the Court need not allow any additional briefing by the Media Intervenors on this issue.[5]

## IV.    Media Intervenors' Motion Is Procedurally Untimely.

The Media Intervenors argue at length regarding the timeliness of their motion.  *See* Mot. at 10.  However, the Motion is untimely and should be denied as moot.

The Media Intervenors assert that they "have moved to intervene within a few weeks of the parties' *initial* efforts to seal the judicial records, entering the proceeding *at precisely the stage* in which the Court is determining the extent to which the parties' proposed redactions and sealings are warranted."  Mot. at 11 (emphasis added)*; see U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 251 n.1 (S.D.N.Y. 2012) (denying motion to intervene as moot, as the Court would "consider the potential harm to [intervenor] in its analysis to the extent that those issues were raised in the parties' papers and at the evidentiary hearing").

---

[5] Nike's Motion to Seal (ECF No. 171) and Reply In Support of Motion to Seal (ECF No. 200) go into further detail regarding the compelling reasons for allowing the proposed redactions.

The Media Intervenors also add that "the parties did not move to unseal or otherwise re-file the Sealed Declaration, Sealed Opposition to Sealing, or Sealing Reply which means the parties' agreed-upon redactions remain under seal." Mot. at 10. However, it was not until April 11, 2022, three days after the Media Intervenors filed their motion, that Plaintiffs even made their request to unseal the Davis Declaration and supporting exhibits to Nike's Opposition to Class Certification. *See* Prince Decl. at ¶ 5. Those documents were publicly filed with redactions on April 14, 2022. *See* ECF No. 210. Furthermore, as explained above, the Parties have been regularly filing publicly-redacted versions of documents filed under seal.

## <u>CONCLUSION</u>

For the foregoing reasons, Nike respectfully requests that the Court deny the Media Intervenors' motion in its entirety.

Dated: April 22, 2022                    Respectfully submitted,


                                         /s/ Daniel Prince
                                         Daniel Prince, Cal. SB# 237112 (*pro hac vice*)
                                         danielprince@paulhastings.com
                                         Zach P. Hutton, Cal. SB#234737 (*pro hac vice*)
                                         zachhutton@paulhastings.com
                                         Felicia A. Davis, Cal. SB# 266523 (*pro hac vice*)
                                         feliciadavis@paulhastings.com
                                         Laura E. Zabele, Cal. SB# 330847 (*pro hac vice*)
                                         laurazabele@paulhastings.com

                                         PAUL HASTINGS LLP
                                         515 South Flower Street, 25th Floor
                                         Los Angeles, CA  90071-2228
                                         Telephone:  (213) 683-6000
                                         Facsimile:  (213) 627-0705

Amy Joseph Pedersen, OSB No. 853958
amy.joseph.pedersen@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  (503) 294-9408
Facsimile:  (503) 220-2480

Attorneys for Defendant NIKE, INC.