IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KELLY CAHILL, SARA JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br>   v.<br><br>NIKE, INC., an Oregon Corporation,<br><br>        Defendant. | Case No. 3:18-cv-01477-JR<br><br>FINDINGS AND RECOMMENDATION |

RUSSO, Magistrate Judge:

      Named plaintiffs Kelly Cahill, Sara Johnston, Lindsay Elizabeth, and Heather Hender bring this putative class and collective action alleging that defendant Nike systematically discriminates against them and other similarly situated women regarding salary and promotions. Several additional plaintiffs filed consents to join this action. Defendant now moves to redact certain portions of the documents surrounding plaintiffs' Motion for Class Certification. Certain non-party media organizations subsequently moved to intervene. For the reasons stated below, defendant's motion should be granted in part and denied in part, and the non-party media organizations' motion should be granted in part and denied in part.

Page 1 – FINDINGS AND RECOMMENDATION

# DISCUSSION

On June 17, 2019, this Court entered a stipulated Protective Order to govern the parties' exchange of discovery materials. The Protective Order details procedures allowing the parties to provisionally file documents containing privileged or confidential information under seal, as well as procedures for those designations to be challenged. In particular,

> [i]f a non-designating party is filing a document that another party has designated as "Confidential" or "Attorneys' Eyes Only," then the non-designating party shall file the document under seal. If the non-designating party makes a request in writing to have the document unsealed and designating party does not file, within twenty (20) calendar days, a motion that shows good cause to maintain the document under seal, then the Court shall unseal the document.

Protective Order 4 (doc. 82).

On March 15, 2022, defendant filed the present motion to redact certain portions of plaintiffs' Motion for Class Certification, and supporting documents, in lieu of sealing those documents in their entirety. Briefing was completed in regard to that motion on April 6, 2022. On April 8, 2022, the non-party media organizations moved to intervene for the limited purpose of further opposing defendant's motion and challenging the parties' stipulated redactions.

## I.   Motion to Seal

The press and the public have a "general right to inspect and copy public records and documents, including judicial records." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). As a result, a strong presumption in favor of access to court records exists that "can be overridden given sufficiently compelling reasons for doing so." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). However, an exception exists in regard to judicial records filed in relation to non-dispositive motions, which warrant a more lenient standard. *In re Midland Nat'l Life Ins. Co. Annuity Sales Prac. Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012) (per

curiam). In such situations, the party seeking to seal need only demonstrate "good cause" under Fed. R. Civ. P. 26(c). *Id.*

Thus, the applicable standard depends on the document's relationship to the merits of the plaintiff's claims. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096-99 (9th Cir. 2016) (the focus is on whether the material "at issue is more than tangentially related to the underlying cause of action"). Under the "compelling reasons" standard, the party seeking to seal or redact a judicial record bears the burden of showing that compelling reasons supported by specific factual findings outweigh the general history of access and the public policies favoring disclosure. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006). The "good cause" standard, in contrast, requires only a showing that "specific prejudice or harm will result." *Phillips ex rel. Est. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002).

Defendant seeks to redact the following categories of information:

> (1) the names of any individuals (complainants, subjects and witnesses) named in the context of allegations regarding sexual harassment or gender discrimination at Nike;[1] (2) briefing and declarations filed in relation to Plaintiffs' motion to compel Nike's privileged pay equity, promotion and compensation analyses that reflect confidential legal strategy; and (3) Nike's confidential and proprietary compensation information, including Nike's compensation structure as well as pay shortfall conclusions derived from Attorneys' Eyes Only ("AEO") compensation data of current and former Nike employees who are not parties to the litigation.

Def.'s Mot. Seal 1 (doc. 171).

Defendant, however, does not delineate which particular objection relates to each document (or, for that matter, page) and, at times, the parties' designations are seemingly inconsistent. Moreover, defendant erroneously designated certain redactions in its initial filing,

---

[1] As defendant denotes, "[t]he parties have reached an agreement on this topic except with regard to three former employees who were the subjects of complaints and allegations regarding sexual harassment and gender discrimination," and who are expressly named in the First Amended Complaint. Def.'s Mot. Seal 5 (doc. 171).

Page 3 – FINDINGS AND RECOMMENDATION

resulting in the scope of disputed documents being submitted three times by defendant, with its final submission encompassing approximately 500 additional, or 1635 total, pages. These practices resulted in a tremendous expenditure of time by the Court requiring it to review and track hundreds of documents, tactics which defendant has been specifically cautioned against in the past. *See, e.g.*, Order 2 (Apr. 1, 2021) (doc. 136); *see also Foltz*, 331 F.3d at 1130 (the moving party bears the burden of proof "for each particular" nondisclosure).

In any event, in addition to the ones previously agreed upon, plaintiffs concede that at least some of the proposed redactions are appropriate – specifically, portions of "page 19 and the chart of Panel A and Panels B-C on the bottom of page [55] of Dr. Neumark's report," as well as certain inadvertent inclusions and references to third parties in Exhibit 11 and legal advice in Exhibit 12, respectively, to Byron Goldstein's declaration. Pls.' Resp. to Mot. Seal 11 (doc. 175); Kan Decl. Ex. A, at 89, 125, 536, 594-99, 601-02, 611-12, 616-24, 627-28, 631-33, 643-46, 649-50, 653-55, 657-62, 666, 678, 680, 784-87, 794-96 (doc. 176-1); *see generally* Kan Decl. Ex. B (doc. 176-2). Defendant, in turn, appears to withdraw some of the redactions articulated in its initial motion, especially relating to third parties and purportedly confidential business information.[2] *See generally* Prince Decl. Ex. A (doc. 201-1); *compare* Def.'s Mot. Seal 2 (doc. 171), *with* Prince Decl. ¶ 4 (doc. 201). The Court's analysis is therefore limited to the proposed redactions that remain in dispute following the completion of briefing, as detailed below.

---

[2] Defendant's revised submissions, however, fail to incorporate many of plaintiffs' newly recognized redactions, creating the appearance of dispute in certain circumstances where none exists. *Compare generally* Kan Decl. Exs. A-B (doc. 176), *with* Prince Decl. A (doc. 201-1). Similarly, defendant includes Exhibit 14 of the Goldstein Declaration in its list of documents needing a ruling, yet the only proposed redactions therein appear to be stipulated. Prince Decl. ¶ 4 (doc. 201); *but see* Prince Decl. A, at 1096-1171 (doc. 201-1).

A.      **Exhibits A-B to the Neumark Declaration**

Defendant seeks to redact portions of Dr. Neumark's expert and rebuttal reports that include pay shortfall conclusions (both the dollar amount and percentage representations, but not the standard deviations), which were undisputedly culled from defendant's AEO designations. In particular, defendant argues that, because Dr. Neumark's conclusions were "derived from various analyses of Nike's confidential and proprietary compensation information of current and former employees," they impermissibly disclose "sensitive personal financial information of a non-party." Def.'s Mot. Seal 8 (doc. 171). Defendant further contends that the "aggregate of confidential and proprietary information . . . also warrant[s] protection" because the revelation of such information would "help Nike's competitors and hurt Nike's competitive standing." *Id.* at 8-11.

Initially, the Court finds that defendant has proffered little more than broad assertions of harm. Significantly, defendant does not meaningfully address how the information set forth in Dr. Neumark's expert report implicates any personal or proprietary information. *See generally id.*; Def.'s Reply to Mot. Seal (doc. 200). This shortcoming is especially problematic given that the "compelling reasons" standard[3] applies to the disputed information in Exhibits A and B to the Neumark Declaration, as these statistics are integral to plaintiffs' disparate impact and treatment claims. *See J.N. v. Or. Dep't of Educ.*, 2020 WL 589534, *2 (D. Or. Feb. 5, 2020) (applying the "compelling reasons" standard to an expert report filed in relation to the plaintiffs' motion for class

---

[3] Defendant acknowledges the "compelling reasons" standard but nonetheless argues that the "good case" standard applies to certain categories of information. *See, e.g.*, Def.'s Reply to Mot. Seal 10 (doc. 200). In contrast, the non-party media organizations advocate for the wholesale application of the "compelling reasons" standard. Neither the parties nor the non-party media organizations furnish any briefing concerning whether the motion itself determines the applicable standard, or a document-by-document analysis is required. The Court need not resolve this issue because defendant's motion largely fails to present even "good cause" for the proposed non-disclosures.

certification because it was "more than tangentially related to the underlying cause of action"); *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 312 F.Supp.3d 966, 972 (D. Or. 2018) (generalized assertions that "information is proprietary and confidential" fail to meet the "compelling reasons" standard); *see also Buchanan v. Tata Consulting Servs. Ltd.*, 2017 WL 6611653, *12 (N.D. Cal. Dec. 27, 2017) ("gross statistical disparities in the treatment of members of a protected class alone may in a proper case constitute *prima facie* proof of a pattern or practice of discrimination") (citations and internal quotations omitted; emphasis in original).

Stated differently, the Court finds that Nike's proffered reasons to seal are neither compelling nor, on balance, outweigh the public interest in disclosure. Notably, the personal financial information of non-parties is not implicated by the aggregated shortfall dollars and percentages at issue here. Except in one isolated instance, Dr. Neumark's aggregated results – while derived from protected compensation data – do not reveal the financial information of any individual, specific subfamily, or job level, or overarching pay practice.[4] Prince Decl. A, at 71-272 (doc. 201-1). Rather, these statistics merely provide representative data or comparator information between male and female employees.

As a result, defendant does not (and presumably cannot) explain how these shortfall calculations divulge proprietary information about Nike's business practices or compensation structure that would be valuable to competitors. Defendant's alleged refusal to pay female employees fairly is a matter of public import and the subject matter of this litigation. Accordingly,

---

[4] The one exception being on page 75 of Dr. Neumark's report, which includes information about defendant's starting salaries. Prince Decl. A, at 146 (doc. 201-1); *cf. Kenny v. Pac. Inv. Mgmt. Co. LLC*, 2018 WL 3328224, *2 (W.D. Wash. July 6, 2018) (granting a motion to seal compensation information, noting the aptness of the defendant's argument that the disclosure compensation amounts "would be a boon to competitors who could use such information to recruit [the defendant's] personnel or otherwise compete with [the defendant] for talent").

there is no apparent public scandal or confidential information associated with the proposed redactions, and "the mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179; *see also Moussouris v. Microsoft Corp.*, 2018 WL 1159251, *12 (W.D. Wash. Feb. 16), *adopted by* 2018 WL 1157997 (W.D. Wash. Mar. 1, 2018) (denying a motion to seal in a putative class action surrounding gender-based employment discrimination where the defendant's true concern surrounding the disclosure of "raw diversity data" was not "competitive harm [but rather that it] would have a negative effect on its reputation"). Defendant's motion should be granted as to the salary information displayed on page 75 of Dr. Neumark's expert report and denied in all other respects.

B.      **Exhibits 11-12 to the Goldstein Declaration; Exhibit 74 to the Sun Declaration**

Defendant asserts references to the names of three former Nike employees whose actions are challenged via the First Amended Complaint should be redacted because they concern "sensitive personal information" and surround "inflammatory allegations" that have not yet been proven. Def.'s Mot. Seal 5-6 (doc. 171). Defendant also contends references to "confidential legal strategy, legal advice provided to Nike Legal, and requests for legal advice regarding these analyses" are privileged and should not be disclosed. *Id.* at 7.

Exhibit 11 of the Goldstein Declaration contains three disputed redactions to the former Nike employees at issue – i.e., on pages 28, 61, and 86.[5] Prince Decl. A, at 732, 765, 790 (doc. 201-1). The Court has thoroughly reviewed these portions of the record and finds that, with the

---

[5] This exhibit also includes an allegedly disputed redaction on page 81. Prince Decl. A, at 785 (doc. 201-1). Plaintiff clarifies that this "[w]as not intended as a redaction" and instead was originally highlighted "to call to the Court's attention [certain] text." Kan Decl. Ex. B, at 17 (doc. 176-2).

exception of the latter two references in ¶ 30 on page 28,[6] they directly track the information that has already been made public (and mainly concern the fact that plaintiffs have sought discovery regarding the allegations surrounding these individuals). *Compare id.*, *with* First Am. Compl. ¶¶ 12, 66-71, 81-84, 128, 182 (doc. 42) *and* Order (Oct. 31, 2019) (doc. 89); *see also Williams v. Apple, Inc.*, 2021 WL 2476916, *3 (N.D. Cal. June 17, 2021) (declining to seal an email that largely discussed information already made public via the docket and the press).

Turning to the second category of challenged information, as addressed above, plaintiff concedes that references to the content of legal advice sought or obtained by defendant should be redacted. Defendant appears to have removed certain redactions in these exhibits as well. As such, the only remaining dispute surrounds foundational facts regarding defendant's 2018 pay equity promotional analysis that occur on page 88 of Exhibit 12 of the Goldstein Declaration, and on pages 23-25 of Exhibit 74 of the Sun Declaration. Prince Decl. A, at 886, 1534-36 (doc. 201-1).

Defendant acknowledges that the public announcement of this promotional study should not be sealed. Additionally, defendant does not seek to redact a reference on page 24 of plaintiff's Motion for Class Certification to the "halt[ing] [of] the promotion analysis before it could be completed." *Id.* at 34. In any event, while the reasons behind defendant's cessation of this study may be privileged, the mere fact that the study was stopped is not. Nor does this fact, in and of itself, touch upon any confidential business strategy or information. Defendant's mere desire to keep this information confidential is inadequate in this context, nor does it outweigh the public's interest in disclosure, especially in light of defendant's initial and widely-disseminated statements

---

[6] These facts are not clearly alleged in the First Amended Complaint and are consistent with the range of redactions plaintiffs have stipulated to. *See, e.g.*, Prince Decl. A, at 730 (doc. 201-1).

concerning the study. Defendant's motion should be granted as to the latter two references in ¶ 30 on page 28 of Exhibit 11 of the Goldstein Declaration and denied in all other respects.

### C. Plaintiffs' Motion for Class Certification

Finally, defendant seeks to redact portions of plaintiffs' Motion for Class Certification that reference Dr. Neumark's pay shortfall conclusions or the fact that Nike stopped its promotion impact study in 2018. Prince Decl. Ex. A, at 2-70 (doc. 201-1). As addressed above, defendant has not shown a sufficient reason to prevent public disclosure of this information. Defendant's motion should be denied in this regard.

## II. Motion to Intervene

As noted above, there is a strong presumption in favor of public access to court records, but "access . . . is not absolute." *Kamakana*, 447 F.3d at 1178. Likewise, Rule 26 allows a court to issue a protective order – for "good cause" – that specifies the terms of discovery or limits its public disclosure. Fed. R. Civ. P. 26(c)(1); *but see San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999) (blanket protective orders are "inherently subject to challenge and modification").

"Nonparties seeking access to a judicial record in a civil case may do so by seeking permissive intervention under Rule 24(b)(2)." *San Jose Mercury News*, 187 F.3d at 1100. "A motion for permissive intervention pursuant to Rule 24(b) is directed to the sound discretion of the district court." *Id.* Where, as here, intervention is sought for the limited purpose of seeking access to documents, the moving party must show "a timely motion" and "a common question of law and fact between the movant's claim or defense and the main action." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention," taking into account, among other

Page 9 – FINDINGS AND RECOMMENDATION

factors, "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," "whether the intervenors' interests are adequately represented by other parties," and "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998); *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011) (citing *Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)).

The non-party media organizations seek to intervene "to provide further briefing to the Court regarding the insufficiency of the parties' justification for agreed-upon redactions as well as [their] objections to the categories of information Defendant alleges should be subject to redaction or sealing." Non-Party's Mot. Intervene 8 (doc. 205). Concerning the former, the non-party media organizations request "unredacted copies of all documents filed in this case since January 10, 2022," including information designated under the Protective Order as "Confidential" or "AEO," to independently assess the propriety of parties' stipulations. Non-Party's Reply to Mot. Intervene 2 (doc. 229). Alternatively, "if the Court allows intervention but denies further briefing, [the non-party media organizations] ask that the parties be directed to re-file unsealed or redacted documents relating them to their previously sealed ECF. Nos. and with any requested sealings or redactions permitted only upon a finding by the Court that compelling reasons exist to seal such information from the public." Non-Party's Mot. Intervene 3 (doc. 205).

Here, there is no meaningful dispute surrounding the threshold requirements for intervention. While defendant asserts the Motion to Intervene is "procedurally untimely," there is simply no basis for the Court to conclude the non-party media organizations have sat on their rights. Def.'s Resp. to Mot. Intervene 14-15 (doc. 219). Indeed, it is undisputed that the parties

have been conferring with the non-party media organizations about this issue since March 2022, and the Motion to Intervene was filed two days after defendant's Reply to its Motion to Seal. *See San Jose Mercury News*, 187 F.3d at 1101 ("delays measured in years have been tolerated where an intervenor is pressing the public's right of access to judicial records") (collecting cases). Courts have also recognized a common question of law and fact where the sole issue is the confidentiality of sealed documents. *See, e.g.*, *Jessup v. Luther*, 227 F.3d 993, 998-99 (7th Cir. 2000).

Although defendant opposes intervention on additional grounds (namely, that the parties adequately represent their interests and intervention would "make an end-run on the Protective Order"), the Court disagrees. Def.'s Resp. to Mot. Intervene 1 (doc. 219). Courts routinely permit the press to intervene for the purpose of unsealing judicial records and, in regard to the stipulated redactions, the non-party media organizations' point of view is not necessarily represented in the litigation. Accordingly, the Court finds that the non-party media organizations satisfy the requirements set forth in Fed. R. Civ. P. Rule 24(b)(2).

Regardless, allowing additional briefing or unfettered access to documents underlying plaintiff's Motion for Class Certification is not warranted, at least at this stage in the proceedings. As to the disputed redactions, intervention will not advance or contribute to the development of the underlying issues. The non-party media organizations have adequately stated their position on the record, which the Court has thoroughly reviewed in resolving defendant's motion. To the extent the non-party media organizations may wish to devote additional time and effort opposing the Motion to Seal, the Court finds that their interests are adequately represented by plaintiffs. *See Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996) ("[w]here an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises") (citation and internal quotations omitted). Moreover, defendant's motion

has been fully briefed for nearly six months; allowing additional, and likely duplicative, briefing would unnecessarily prolong this litigation.

As to the redactions that have been stipulated-to pursuant to the Protective Order, the Court may revisit this issue at a later point in the litigation.[7] There have been nearly 300 court filings in this case, the vast majority of which have been filed publicly and are available for consumption by the press or other members of the public. While the parties have not sought to individually address each of the stipulated non-disclosures underlying plaintiffs' Motion for Class Certification, they concern, at least in part: (1) the names of any individuals named in allegations of sexual harassment or gender discrimination at Nike that have not already been made public; (2) proprietary information that either qualifies as a trade secret or presents competitors with an unfair business advantage; (3) information that is outside the scope of this case; or (4) privileged information.[8] The Protective Order provides a process for downgrading confidential designations or for the Court

---

[7] As both case law and the non-party media organizations acknowledge, it is not uncommon for the press to seek to unseal documents subject to a protective order after the merits have been adjudicated. *See, e.g.*, Non-Party's Mot. Intervene 11 (doc. 205); *Confederated Tribes of Siletz Indians of Or. v. Weyerhaeuser Co.*, 340 F.Supp.2d 1118, 1121 (D. Or. 2003). Furthermore, defendant represents that the non-party media organizations "requested to postpone a decision on their motion until the Court resolves the Parties' sealing issues," suggesting that there is no imminent need for accessing sealed portions of the docket. Prince Decl. ¶ 4 (doc. 220); *see also* Def.'s Resp to Mot. Intervene 5 (doc. 219) (if the non-party media organizations "have access to confidential information on a real-time basis like the Parties, then it would be impossible to later 'unring the bell'. . . the Court's ruling(s) on redaction matters in the cure here").

[8] In light of the Protective Order, and with the exception of the disputed redactions discussed herein, the Court has never been asked to formally analyze whether a particular document should be sealed. As the non-party media organizations accurately observe, defendant "fail[ed] to present this Court with any briefing addressing the parties' agreed-to categories of information for sealing." Non-Party' Reply to Mot. Intervene (doc. 229); *see also* Pls.' Resp. to Mot. Intervene 2 (doc. 218) (while "plaintiffs have spent the months since filing its motion for class certification negotiating in good faith with Nike about what documents should remain sealed," they, in fact, are "not advocating that any documents should remain sealed . . . sunlight is the best disinfectant"). As such, the aforementioned categories of redactions are simply those that are readily inferred.

to resolve disputes concerning the same, which the parties have been successfully utilizing. That is, the parties have been actively working to review previously sealed documents and re-lodge unsealed or redacted versions where appropriate. *See, e.g.*, Order (Apr. 5, 2022) (doc. 195); Order (Apr. 12, 2022) (doc. 208); Order (June 27, 2022) (doc. 264); Order (July 28, 2022) (doc. 272).

Under these circumstances, allowing the non-party media organization to access filings under seal so that they may evaluate and, if necessary, move to unseal them eviscerates the safeguards built into the Protective Order for "Confidential" and/or "AEO" information, and has the potential to erode the privacy rights of third-parties and/or disturb the existing compromise between the parties.[9] *See In re Nat'l Sec. Agency Telecomm'ns Records Litig.*, 2007 WL 549854, *4 (N.D. Cal. Feb. 20, 2007) (granting the media's motions to intervene for the purpose of unsealing judicial records but denying "their motions to unseal documents at the present time" where "the parties already released redacted versions of the documents at issue"); *see also Velasco v. Chrysler Grp. LLC*, 2017 WL 445241, *5 (C.D. Cal. Jan. 30, 2017), *aff'd*, 747 Fed.Appx 463 (9th Cir. 2018) ("courts routinely decide motions to unseal brought by intervenors without first unsealing the documents at issue").

The Court finds that the aforementioned considerations counsel against allowing unbridled access to filings emanating on or after January 10, 2022, at this juncture. The Court nevertheless recognizes the distinct perspective the non-party media organizations offer to this litigation, along with their well-established common law and First Amendment rights to challenge the sealing of judicial records. Therefore, the Court finds the most prudent and efficient course of action is to grant the non-party media organizations' motion to intervene but deny their request for further

---

[9] As the docket in this case reflects, the parties have engaged in protracted litigation surrounding the scope of plaintiffs' allegations and pre-certification discovery, which has resulted in the utilization of a significant amount of judicial time and resources.

briefing and to unseal or access documents produced under the Protective Order. However, following the final resolution of plaintiffs' Motion for Class Certification, the non-party media organizations may file a renewed motion for the purposes of opposing any remaining stipulated redactions. At that point the parties shall identify all exhibits admitted into evidence they contend should remain sealed and include explanations supporting their contentions.

## RECOMMENDATION

Defendant's Motion to Seal (doc. 171) should be granted in part and denied in part as stated herein. The non-party media organizations' Motion to Intervene (doc. 205) should be granted to the extent they request intervention for the limited purpose of challenging the parties' stipulated redactions in regard to the briefing surrounding plaintiffs' Motion for Class Certification and denied in all other respects with leave to renew.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right

to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 30th day of September, 2022.

                                     /s/ Jolie A. Russo
                                       Jolie A. Russo
                             United States Magistrate Judge