IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


KELLY CAHILL, et al.,

individually and on behalf

of others similarly situated,     No.

        Plaintiffs,            3:18-cv-01477-JR

    v.

NIKE INC., an Oregon

Corporation,

        Defendant.



VOLUME I


REMOTE VIDEOCONFERENCE 30(b)(6) DEPOSITION OF

ALISON DAUGHERTY

Taken in behalf of Plaintiffs

January 8, 2021

Page 155

```
 1          Matheson is executive vice president in human
 2          resources; correct?
 3     A.   Correct.
 4     Q.   And do you also know who Emily, is it Favret?
 5     A.   I don't know how to pronounce it.  I believe
 6          that Emily is a member of the communications
 7          team.
 8     Q.   Okay.  The e-mail states, "We've heard from
 9          strong and courageous employees."  Do you see
10          that?
11     A.   I do.
12     Q.   Who are the strong and courageous employees to
13          whom Mr. Parker is referring?
14              MR. PRINCE:  Objection; calls for
15          speculation and also outside the scope of this
16          witness's designated 30(b)(6) topics.
17     Q.   BY MR. GOLDSTEIN:  You may answer.
18              MR. PRINCE:  If you know.
19              THE WITNESS:  I don't know specific names or
20          specific employees.  I believe that Mr. Parker
21          was recognizing that we had heard from more than
22          one employee.
23     Q.   BY MR. GOLDSTEIN:  Do you know that he was
24          referring to the employees who had submitted
25          complaints with the Starfish survey?
```

Beovich Walter & Friend

1-800-541-4452                    503-228-7201                    www.bwreporters.com

Sun Decl. Ex. 67, Page 2 of 26

1              MR. PRINCE:  Objection to foundation.

2      Objection based on scope and it also calls for

3      speculation.

4   Q.  BY MR. GOLDSTEIN:  You may answer.

5              MR. PRINCE:  If you know based on your

6      personal knowledge.

7              THE WITNESS:  In my personal --

8   Q.  BY MR. GOLDSTEIN:  Excuse me.  We certainly

9      would want a corporate witness designee that

10     will cover this material, but I will hear

11     Ms. Daugherty's personal knowledge.

12  A.  I believe that Mr. Parker was referring to

13     employees who responded to the anonymous survey.

14  Q.  BY MR. GOLDSTEIN:  You keep saying "anonymous

15     survey."  Don't you know the names of some of

16     the people who filed complaints?

17  A.  Yes.  There were some individuals who identified

18     themselves in their survey responses.  I call it

19     the anonymous survey, because the survey

20     producers, the survey, I do not know where the

21     survey came from or who created it or how it was

22     distributed.

23  Q.  Do you know that there were senior-level female

24     employees who filled out the survey?

25             MR. PRINCE:  Objection; lacks foundation,

Beovich Walter & Friend

1-800-541-4452          503-228-7201          www.bwfreporters.com

Sun Decl. Ex. 67, Page 3 of 26

1          Shaw or someone else?

2     A.   Seyfarth Shaw.

3     Q.   Now, Mr. Parker says, "We've become aware of

4          reports of behavior occurring within our

5          organization that do not reflect our core

6          values."

7               What reports of behaviors was he referring

8          to?

9               MR. PRINCE:   Again, objection here based on

10         scope as well as calls for speculation.

11              THE WITNESS:   My, my interpretation of that

12         would be information contained in the survey

13         responses.

14    Q.   BY MR. GOLDSTEIN:   In the Starfish survey

15         response?

16    A.   In the survey responses.

17    Q.   Alison, I'd like to refer you to what had

18         previously been marked as Exhibit 573, the

19         complaint in Stein v. Knight.  And specifically

20         I want to refer you to pages 36 and 37 of the

21         complaint.  Let me know when you've been able to

22         get to it, Alison.

23    A.   Okay.  I'm on page 36.

24    Q.   Okay.  There's a quotation that purports to be

25         from the board minutes of April 18th, 2018,

Beovich Walter & Friend

1-800-541-4452          503-228-7201          www.bwfreporters.com

Sun Decl. Ex. 67, Page 4 of 26

1            MR. PRINCE:  Thank you.  I appreciate that.

2            THE WITNESS:  It just came up.  I have it.

3    Q.   BY MR. GOLDSTEIN:  Did you attend Mr. Parker's

4        speech in May of 2018 for which this Exhibit 561

5        is a draft?

6            MR. PRINCE:  Objection; scope and assumes

7        facts.  Certainly if the witness has personal

8        knowledge, she's welcome to answer.

9            THE WITNESS:  I believe I did.

10   Q.   BY MR. GOLDSTEIN:  Where do you give the speech,

11       Alison?

12           MR. PRINCE:  Objection; calls for

13       speculation, outside the realm of the witness's

14       knowledge.

15           MR. GOLDSTEIN:  I'm not asking her to

16       speculate.  I just want to know where the speech

17       was given.  She said she attended the speech.

18           THE WITNESS:  So, well, and I should

19       clarify.  I did not attend the speech in person.

20       I watched the speech from a Nike building on

21       video.  I, my recollection is that Mr. Parker

22       would have given the speech from our, we have an

23       auditorium at the World Headquarters and that he

24       gave the speech from the auditorium.  That would

25       have been typical practice.

Beovich Walter & Friend

1-800-541-4452            503-228-7201            www.bwfreporters.com

Sun Decl. Ex. 67, Page 5 of 26

Page 172

```
 1              Do you know what Mr. Parker is referring to
 2       when he refers to a main set of complaints?
 3              MR. PRINCE:  And same objections here and
 4       also would advise the witness to the extent that
 5       any of this might implicate the attorney-client
 6       privilege, she should not respond in that
 7       regard.
 8              THE WITNESS:  Okay.
 9   Q.  BY MR. GOLDSTEIN:  Again, let me say that if
10       you're not responding because of attorney-client
11       privilege, please let me know.
12   A.  Yes.  I will do so.  I believe that the main set
13       of complaints refers to complaints contained in
14       the responses to the anonymous survey.
15   Q.  BY MR. GOLDSTEIN:  And do you know what he means
16       when he says that the complaints have been acted
17       on?
18              MR. PRINCE:  Again, same objection with the
19       proviso regarding privilege.
20              THE WITNESS:  Correct.  I believe that
21       refers to the fact that the complaints were
22       reviewed, assessed and appropriate next steps
23       were taken.
24   Q.  BY MR. GOLDSTEIN:  And did those appropriate
25       next steps result in employees being forced to
```

Beovich Walter & Friend

1-800-541-4452          503-228-7201          www.bwfreporters.com

Sun Decl. Ex. 67, Page 6 of 26

Page 173

1        exit?

2    A.    Some, yes.

3              MR. PRINCE:  Again, I'm going to reassert --

4    Q.   BY MR. GOLDSTEIN:  And who are the employees --

5              MR. PRINCE:  -- privilege and --

6    Q.   BY MR. GOLDSTEIN:  -- were forced to exit as a

7         result of the larger investigation?

8              MR. PRINCE:  Barry, Barry, speaking over

9         people doesn't ignore --

10             MR. GOLDSTEIN:  I --

11             MR. PRINCE:  So I want to --

12             MR. GOLDSTEIN:  I'm sorry.  I didn't hear

13        anybody.

14             MR. PRINCE:  Okay.  Sure.

15             MR. GOLDSTEIN:  But go on.

16             MR. PRINCE:  I wanted to make sure that we

17        state the objection here based on privilege.

18        And the witness, right, should not comment upon,

19        you know, the results and the information that

20        would have been handled with outside counsel and

21        inside counsel.

22             MR. GOLDSTEIN:  I'm sorry.  What was the

23        last statement that you made, Daniel?  It was --

24        You're getting a little low.

25             MR. PRINCE:  I'm sorry.  I'm sitting

Beovich Walter & Friend

1-800-541-4452              503-228-7201              www.bwfreporters.com

Sun Decl. Ex. 67, Page 7 of 26

1       statement though because you originally said

2       yes, there were employees who exited and I asked

3       who they were.

4           MR. GOLDSTEIN:  Are you, Daniel, are you

5       directing the witness not to answer the question

6       as to the names of the employees who Nike forced

7       to exit as a result of the investigation of the

8       Starfish survey?

9           MR. PRINCE:  Well, I think that question has

10      a number of challenges.  But the answer is, you

11      know, certainly I think all along we object to

12      the use of your phrasing of Starfish.  We have

13      also objected to your, you know, statements that

14      I think that you believe there's a foundation

15      to.  And on the basis of privilege I'm not going

16      to allow the witness to answer with regards to

17      the specific actions that were taken in

18      connection with inside and outside counsel.

19      So...

20  Q.  BY MR. GOLDSTEIN:  So I'm going to ask a

21      question clearly.  And please let me know if

22      you're directing the witness not to answer.

23          What were the names, if any, of the

24      employees who were forced to exit the company as

25      a result of the larger investigation of the

Beovich Walter & Friend

1-800-541-4452          503-228-7201          www.bwfreporters.com

Sun Decl. Ex. 67, Page 8 of 26

Page 176

 1      complaints referenced by Mr. Parker?

 2            THE WITNESS:  Same objection.  And at the

 3      time being we're standing on our privilege

 4      objection as well.

 5            MR. GOLDSTEIN:  So, in other words, you're

 6      directing the witnesses not to answer this

 7      question; is that correct?

 8            MR. PRINCE:  I am, yes.

 9  Q.   BY MR. GOLDSTEIN:  Alison, we're uploading a

10      document with the title Nike Project Starfish,

11      Executive Summary, July 20th, 2018, Bates

12      numbers 00032843-85 (sic).  It's 581.

13  A.   I'm sorry.  Can you repeat the page number?

14  Q.   The page number is 00032843-45.

15  A.   Yes.  I have it.

16  Q.   Is this a Nike document?

17            MR. PRINCE:  Objection.  This witness is not

18      the custodian of records.  Outside the scope.

19            THE WITNESS:  May I answer?

20            MR. PRINCE:  You may answer if you know.

21  Q.   BY MR. GOLDSTEIN:  Yes?

22  A.   Yes, it is.

23  Q.   Okay.  And the title is Nike Project Starfish,

24      Executive Summary.  What is it?

25  A.   Hold on.  Oh.  So are we on -- You and I may

Page 183

```
 1            MR. GOLDSTEIN:  Understood.  And again,

 2       since she's not, according to your definition of

 3       the topics a corporate witness, we will want a

 4       corporate witness on all these topics.

 5            MR. PRINCE:  I'm not quite sure I understand

 6       what that means.  But if you want to talk about

 7       it afterwards, happy to do so.

 8            MR. GOLDSTEIN:  I don't know how I could be

 9       more direct.

10  Q.   BY MR. GOLDSTEIN:  But in any event, do you know

11       who KeJuan Wilkins is, Alison?

12  A.   I do.  I'm personally aware that KeJuan is a

13       member of the communications team.

14  Q.   And what is the communications team?

15            MR. PRINCE:  Objection.

16            THE WITNESS:  There, we have a

17       communications function within Nike.

18  Q.   BY MR. GOLDSTEIN:  Is that a pipeline or a job

19       function by itself or does the communications

20       report to someone?

21            MR. PRINCE:  Objection.  She's not been

22       designated on the communications function.  And

23       so she's not the witness on that topic.

24  Q.   BY MR. GOLDSTEIN:  You can answer.

25  A.   Yes.  There's a communication functions,
```

Beovich Walter & Friend

1-800-541-4452                503-228-7201                www.bwfreporters.com

Sun Decl. Ex. 67, Page 10 of 26

Daugherty, Alison - Vol. 1 - 30(b)(6)                    January 8, 2021

Page 199

1    A.   Yes.  I see that paragraph.

2    Q.   Do you know if there were complaints in the

3         Starfish survey that alleged that women were

4         being paid less than men for comparable work?

5              MR. PRINCE:  Objection to the, again the

6         term, but the witness may answer if she

7         understands the question.

8              THE WITNESS:  Yes.  I recall there being

9         complaints raised in the survey responses that

10        included allegations of pay discrimination, you

11        know, alleging gender discrimination and pay

12        being a component.

13   Q.   BY MR. GOLDSTEIN:  We're uploading a document

14        that is Exhibit 587.  And it's a Starfish survey

15        complaint submitted by ███████████ and the

16        number is Nike, excuse me, 00033338-43.

17   A.   Okay.  I have the document.

18   Q.   I think you testified you did not know who ███████

19        ████████ was or is.  Excuse me.

20   A.   I apologize.  I don't recall you asking me about

21        ████████████.

22   Q.   Oh.  I'm sorry.  Maybe I didn't.  Do you know

23        ████████████

24   A.   I don't know ███████████ personally.  I'm

25        aware that she either has been or is an employee

Page 221

```
 1                 C E R T I F I C A T E
 2          I, Aleshia K. Macom, Oregon CSR No. 94-0296,
 3     Washington CCR No. 2095, California CSR
 4     No. 7955, RMR, CRR, RPR, do hereby certify that
 5     ALISON DAUGHERTY appeared before me remotely at
 6     the time and place mentioned in the caption
 7     herein; that the witness was by me first duly
 8     sworn on oath, and examined upon oral
 9     interrogatories propounded by counsel; that said
10     examination, together with the testimony of said
11     witness, was taken down by me in stenotype and
12     thereafter reduced to typewriting; and that the
13     foregoing transcript, pages 1 to 220, both
14     inclusive, constitutes a full, true and accurate
15     record of said examination of and testimony
16     given by said witness, and of all other
17     proceedings had during the taking of said
18     deposition, and of the whole thereof, to the
19     best of my ability.
20          Witness my hand at Portland, Oregon, this
21     18th day of January, 2021.
22     _____
                       Aleshia K. Macom
23                     Oregon CSR No. 94-0296
                       Expires 9-30-2023
24                     Washington CCR No. 2095
                       Expires 7-7-2021
25                     California CSR No. 7955
```

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


KELLY CAHILL, et al.,

individually and on behalf

of others similarly situated,    No.

          Plaintiffs,            3:18-cv-01477-JR

     v.

NIKE INC., an Oregon

Corporation,

          Defendant.



VOLUME II


REMOTE VIDEOCONFERENCE 30(b)(6) AND PERSONAL

DEPOSITION OF ALISON DAUGHERTY

Taken in behalf of Plaintiffs

February 5, 2021

Daugherty, Alison - Vol. 2                        February 5, 2021

Page 309

```
 1        and ambiguous as to "anybody."
 2             THE WITNESS:  Yes.  Ms. Neuburger who, you
 3        know, was a part of the marketing organization
 4        related that she was unhappy with the way that
 5        leaders were, as I said earlier, you know, not
 6        collaborating and not cooperating.  So she, you
 7        know, she had concerns about kind of her peers
 8        and those around her in the marketing
 9        organization.
10   Q.   BY MR. BARRY GOLDSTEIN:  Was Jayme Martin within
11        the marketing operation?
12             MR. PRINCE:  Same objection as to scope.
13             THE WITNESS:  No.  I think at the time he
14        was the head of our category functions.
15   Q.   BY MR. BARRY GOLDSTEIN:  That would be as a vice
16        president?
17   A.   Yes.  He was a vice president.
18   Q.   Did Jayme Martin leave the company in the spring
19        of 2018?
20             MR. PRINCE:  Same objection as to scope.
21             THE WITNESS:  He did.
22   Q.   BY MR. BARRY GOLDSTEIN:  And David Tawiah as
23        well?
24   A.   Danny Tawiah.
25   Q.   Excuse me.  Danny Tawiah.
```

Beovich Walter & Friend

1-800-541-4452                503-228-7201                www.bwfreporters.com

Sun Decl. Ex. 67, Page 14 of 26

Daugherty, Alison - Vol. 2                        February 5, 2021

Page 331

```
 1        investigating concerns that had been raised
 2        regardless of the genesis of those concerns.
 3   Q.   BY MR. BARRY GOLDSTEIN:  So with respect to the
 4        investigations done by outside counsel of the
 5        Starfish survey complaints, can you tell me of
 6        an investigation document that you reviewed or
 7        saw in 2018?
 8             MR. PRINCE:  Vague and ambiguous.  And I
 9        think as the witness has testified before, that
10        to the extent the investigation was conducted or
11        carried out by counsel, that would be
12        privileged.
13             MR. BARRY GOLDSTEIN:  Are you directing her
14        not to answer, Daniel?
15             MR. PRINCE:  If she's able to answer your
16        question without revealing privileged
17        information, she may do so.
18             THE WITNESS:  I, I think the answer to my
19        question is similar to my last answer in that I,
20        I hesitate to speculate in terms of
21        investigations tied to specific allegations made
22        in the survey.  And so even if I could recall
23        off the top of my head a particular document
24        about a particular person, tying it back to a
25        concern raised in the survey, I'm not sure I can
```

Beovich Walter & Friend

1-800-541-4452                503-228-7201                www.bwfreporters.com

Sun Decl. Ex. 67, Page 15 of 26

Page 377

1      where he talked about behaviors that saddened
2      him and that were contrary to the values that he
3      thought should be espoused at Nike?
4           MR. PRINCE:  Objection; compound, improper
5      characterization, calls for speculation and
6      foundation.
7           THE WITNESS:  I once again don't want to
8      speculate about Mark Parker's choice of words,
9      but my understanding is that, going back to what
10     we saw in that exhibit referencing KeJuan's
11     conversation with the reporter, again, there
12     were many different types of complaints coming
13     forward.  And the overriding behavior was the in
14     crowd/out crowd and people feeling like they
15     were, people who were in, you know, feeling like
16     they were in an out crowd, that their careers
17     were different than people who were in the in
18     crowd.  And it was not gender based.  It was not
19     predominantly, you know, discrimination, as you
20     said earlier.  It was, there was behavior that
21     was poor leadership within the company that
22     wasn't allowing us to, you know, to be where we
23     wanted to be in the future.  I think, you know,
24     again, I'm speculating, but I think that was
25     what was making Mark sad.

 1    the departures of ███████████████████████
 2    ████████████████████████████████████████
 3    █████████████████████?
 4            MR. PRINCE:  Objection here on scope and
 5    also foundation.
 6            THE WITNESS:  So I don't recall what we
 7    confirmed to the outside, but sometime in that
 8    time frame those individuals did leave Nike.
 9    Q.  BY MR. BARRY GOLDSTEIN:  Were these departures
10    connected to the complaints filed with the
11    Starfish survey?
12            MR. PRINCE:  Objection to scope as well as
13    foundation, calls for speculation.
14            THE WITNESS:  So there's a lot of names
15    there.  I don't recall the genesis of complaints
16    that came forward in terms of whether a
17    complaint came forward in a survey or through a
18    different channel.
19    Q.  BY MR. BARRY GOLDSTEIN:  Fair enough.  Were
20    these departures connected to the complaints
21    filed with this Starfish survey or that came
22    through another channel?
23            MR. PRINCE:  Foundation, scope, compound.
24            THE WITNESS:  No.  That's -- I don't recall.
25    If there were specific allegations that came up

Beovich Walter & Friend

1-800-541-4452          503-228-7201          www.bwfreporters.com

Sun Decl. Ex. 67, Page 17 of 26

Daugherty, Alison - Vol. 2                    February 5, 2021

Page 386

1       about these individuals, I don't recall the

2       channel by which those allegations were

3       received.

4   Q.  BY MR. BARRY GOLDSTEIN:  Were these departures

5       connected to the investigations related to the

6       complaints filed with the Starfish survey or

7       that were filed around the same time as the

8       Starfish survey?

9            MR. PRINCE:  Scope, foundation, compound,

10      asked and answered.

11           THE WITNESS:  It's hard to group them.  It's

12      hard to answer a question about a group of

13      individuals.

14  Q.  BY MR. BARRY GOLDSTEIN:  I could go through each

15      one.  I'm trying to save some time, if you

16      could --

17  A.  Right.  Well, so there were concerns raised

18      about some.  Whether or not they were related to

19      the survey, I can't recall, but, yeah.

20  Q.  And Mr. Parker's -- Hold on one second.

21      Mr. Parker's e-mail of March 15th -- And I can

22      upload it for you if you would like.

23  A.  That would be helpful.

24  Q.  Okay.  It's Exhibit 560 at page 2237.

25           MR. PRINCE:  Barry, if you could give me

Beovich Walter & Friend

1-800-541-4452              503-228-7201              www.bwfreporters.com

Sun Decl. Ex. 67, Page 18 of 26

Daugherty, Alison - Vol. 2                    February 5, 2021

Page 387

```
 1         just one moment to download it.
 2              MR. BARRY GOLDSTEIN:  Sure.
 3              MR. PRINCE:  Okay.
 4              THE WITNESS:  Hold on.  It's still loading
 5         for me.
 6    Q.   BY MR. BARRY GOLDSTEIN:  Mr. Parker says that
 7         he's made a decision to restructure the
 8         leadership team.  And my question is, is the
 9         departures of the six individuals that you
10         stated occurred between February and April 20 of
11         2018, part of Mr. Parker's restructuring that he
12         announced in his March 15th e-mail?
13              MR. PRINCE:  Objection to scope, also
14         compound and foundation.
15              THE WITNESS:  So no, I don't believe they
16         would be.  The only, the only leadership team
17         individual that exited was ███████████.  The
18         others were not a part of Mark Parker's
19         leadership team.
20    Q.   BY MR. BARRY GOLDSTEIN:  What was ███████████'
21         position when, at the time that he departed in
22         2018?
23    A.   He -- I don't recall his exact title, but he was
24         leading the diversity and inclusion function.
25    Q.   Was he a vice president of diversity and
```

Beovich Walter & Friend

1-800-541-4452          503-228-7201          www.bwfreporters.com

Sun Decl. Ex. 67, Page 19 of 26

Page 388

 1       inclusion?
 2           MR. PRINCE:  Scope.
 3           THE WITNESS:  I believe he was.
 4   Q.  BY MR. BARRY GOLDSTEIN:  You said there were
 5       concerns raised about these individuals.  Can
 6       you describe the concerns that were raised about
 7       ██████████████?
 8   A.  Well, so I need to clarify my earlier statement.
 9       There were -- Well, I'll answer.  There were no
10       specific behavioral allegations that I'm aware
11       of about ████████████.  The, the concerns that
12       were raised about, you know, as I described
13       earlier, the in crowd, out crowd and the brand
14       marketing function leadership not working well
15       together, those contributed to questions about
16       the best leadership for the function.
17   Q.  You didn't examine, did you, whether there had
18       been workplace complaints of sexual harassment
19       discrimination linked to policies of pay,
20       promotion and job duties against ████████████rds
21       that had been filed, had you?
22   A.  Well --
23           MR. PRINCE:  Objection; asked and answered.
24           THE WITNESS:  I'm sorry.  Time frame.  Are
25       you talking --

Daugherty, Alison - Vol. 2                February 5, 2021

Page 396

1         Have you followed me with my reference to

2    those two pages?

3    A.   Yes.

4    Q.   My question is, in light of having received a

5    14.3 percent increase in his base salary and the

6    forfeiture of $6 million in stock options, why

7    did Mr. Edwards decide to retire in March 2018?

8         MR. PRINCE:  Objection; scope.

9    Q.   BY MR. BARRY GOLDSTEIN:  If you know.

10        MR. PRINCE:  Objection to scope.  The

11   witness here clearly has not been designated on

12   securities filings and also calls for

13   speculation.

14        MR. BARRY GOLDSTEIN:  I just want to know if

15   she knows.

16        THE WITNESS:  I can't speculate into

17   decisions made by Trevor Edwards.

18   Q.   BY MR. BARRY GOLDSTEIN:  I'll ask you about a

19   decision made by Mr. Parker.  Why did Mr. Parker

20   announce Mr. Edwards' retirement in an e-mail in

21   which he told employees that he has "become

22   aware of reports of behavior occurring within

23   our organization that do not reflect our core

24   values and this disturbs and saddens me"?

25        MR. PRINCE:  Same objections with respect to

Beovich Walter & Friend

1-800-541-4452              503-228-7201              www.bwfreporters.com

Sun Decl. Ex. 67, Page 21 of 26

Page 397

1      scope.  This witness has not been designated on

2      securities filings and also calls for

3      speculation.  I'll object here on the basis of

4      foundation as well.

5          MR. BARRY GOLDSTEIN:  Again I'm just asking

6      if she knows.

7          THE WITNESS:  Again, I can't speculate as

8      to -- I'm not inside Mark Parker's head.  I

9      think, from my perspective, it was, it was a

10     time to share with the organization that we were

11     aware that there were concerns about the

12     environment that, you know, concerns had been

13     raised and that in particular the leadership of

14     the brand marketing function was not operating

15     with, the way we wanted it to, that as I talked

16     about with, you know, my conversation with Nikki

17     Neuburger, it was clear that, you know, there

18     were concerns with leaders not collaborating, of

19     making it a difficult place to work, of, you

20     know, acting in siloed manners and that we, we

21     were looking for a different structure and a

22     different way forward with leadership.

23   Q.  BY MR. BARRY GOLDSTEIN:  Well, as a result of a

24     Starfish survey and complaints filed at that

25     time, were there not concerns raised about

Beovich Walter & Friend
1-800-541-4452           503-228-7201           www.bwfreporters.com

Sun Decl. Ex. 67, Page 22 of 26

1          THE WITNESS:  By "promotion discrimination"
2     do you mean that women felt that they were not
3     being promoted when men were?
4  Q.  BY MR. BARRY GOLDSTEIN:  Correct.
5  A.  I just want to make sure I'm clear.  I don't
6     often use -- I don't use that term.  So --
7  Q.  What do you use?  I'm interested.
8  A.  I don't actually have a term.  That's what I'm
9     trying to understand.  So promotion
10     discrimination meaning in this case a woman
11     feeling like they were not promoted when a man
12     was?
13  Q.  Or they were denied a promotion or training
14     opportunity because of gender.
15  A.  Okay.  I believe that some of the those are what
16     we looked at today, that, again, there were
17     women who felt that they should have been
18     promoted when they weren't or that others were
19     promoted instead of them.
20  Q.  I believe in some of the, a couple of the
21     complaints filed by vice presidents, they made
22     general statements with respect to promotion
23     discrimination.
24  A.  Okay.
25  Q.  In 2018 did Nike take steps to improve the

Page 430

```
1              C E R T I F I C A T E

2

3          I, Aleshia K. Macom, Oregon CSR No. 94-0296,

4     Washington CCR No. 2095, California CSR

5     No. 7955, RMR, CRR, RPR, do hereby certify that

6     ALISON DAUGHERTY remotely appeared before me at

7     the time and place mentioned in the caption

8     herein; that the witness was by me first duly

9     sworn on oath, and examined upon oral

10     interrogatories propounded by counsel; that said

11     examination, together with the testimony of said

12     witness, was taken down by me in stenotype and

13     thereafter reduced to typewriting; and that the

14     foregoing transcript, pages 222 to 429, both

15     inclusive, constitutes a full, true and accurate

16     record of said examination of and testimony

17     given by said witness, and of all other

18     proceedings had during the taking of said

19     deposition, and of the whole thereof, to the

20     best of my ability.

21          Witness my hand at Portland, Oregon, this

22     16th day of February, 2021.

23     _____

24     Aleshia K. Macom

        OR CSR No. 94-0296, Expires 9-30-2023

25     WA CCR No. 2095, Expires 7-7-2021
```

Beovich Walter & Friend

1-800-541-4452         503-228-7201         www.bwfreporters.com

Sun Decl. Ex. 67, Page 24 of 26

*Cahill, et al v. Nike*

**Alison Daugherty Deposition Errata**

| Page: Line | Reads | Should Read | Reason |
|---|---|---|---|
| 47:14 | "Correct." | "Correct. I am not aware of any complaint of harassment against ▉▉▉▉" | To conform to the facts, consistent with other testimony |
| 129:14 | "Yes." | "Yes, on the 2019 playbook." | To correct a transcription error and conform to the facts, consistent with other testimony |
| 172:12-14 | "I believe that the main set of complaints refers to complaints contained in the responses to the anonymous survey." | "I believe that the main set of complaints refers to complaints contained in or made upon investigating the responses to the anonymous survey." | To conform to the facts, consistent with other testimony |
| 172:20-23 | "I believe that refers to the fact that the complaints were reviewed, assessed and appropriate next steps were taken." | "I believe that refers to the fact that complaints were reviewed, assessed and appropriate next steps were taken." | To conform to the facts, consistent with other testimony |
| 176:2 | "THE WITNESS" | "MR. PRINCE" | To correct a transcription error |
| 184:1-2 | "recorded function" | "communications reporting function" | To correct a transcription error |
| 209:20 | "ETW" | "The designation ETW" | To correct a transcription error and conform to the facts, consistent with other testimony |
| 214:3 | "for" | "from" | To correct a transcription error |
| 218:3 | "THE WITNESS" | "MR. PRINCE" | To correct a transcription error |
| 257:22-24 | "Again, I don't know that I can say I prepared in any specific way regarding these two topics." | "Again, I don't know that I can say I prepared in any specific way regarding these two topics, besides meeting with counsel." | To conform to the facts, consistent with other testimony |
| 280:7-12 | "No. We met, we met, the two of us. I believe the, actually I believe the first time I met ▉▉▉▉ Monique Matheson introduced her to me. And | "Yes. Monique Matheson was also there. I believe the, actually I believe the first time I met ▉▉▉▉ Monique Matheson introduced her to me. And we then proceeded, | To conform to facts |

1

| | we then proceeded, she and I then proceeded to have a conversation where I intook her complaints." | ███████ Ms. Matheson and I then proceeded to have a conversation where I intook her complaints." | |
|---|---|---|---|
| 286:6-8 | "but I am aware that that was a concern." | "but I am aware that ███ ████ being considered for promotion was a concern." | To correct a transcription error and conform to the facts, consistent with other testimony |
| 304:6 | "I believe we had a few followup meetings after" | "I believe we had a few follow up emails after" | To correct a transcription error |
| 311:16-20 | "I think that, you know, actually Monique didn't leave the meeting, but I can't recall if ████ and I simply moved and met alone that same day or if it was at a different time. I can't recall timing." | "I think that, you know actually Monique didn't leave the meeting." | To conform to facts |
| 374:14 | "ware" | "aware" | To correct a transcription error |
| 393:11 | "for" | "were" | To correct a transcription error |
| 403:25 | "amplified" | "Amplify" | To correct a transcription error |
| 406:9 | "dates and gates" | "dates and dates" | To correct a transcription error |
| 425:24 | "No." | "No; not in advance of my deposition." | To conform to the facts, consistent with other testimony |
| 428:19 | "I have not been" | "I have been" | To correct a transcription error |

I attest that the above-referenced changes are true and correct.

Date: March 19, 2021

Alison Daugherty

2