```
 1                UNITED STATES DISTRICT COURT
 2                    DISTRICT OF OREGON
 3                     PORTLAND DIVISION
 4
 5   KELLY CAHILL, SARA JOHNSTON,        )   Case No.
     LINDSAY ELIZABETH, and HEATHER      )   3:18-cv-01477-JR
 6   HENDER, individually and on         )
     behalf of others similarly          )
 7   situated,                           )
                                         )
 8           Plaintiff,                  )
                                         )
 9   vs.                                 )
                                         )
10   NIKE, INC., an Oregon               )
     Corporation,                        )
11                                       )
             Defendants.                 )
12                                       )
     _____)
13
14
15            VIDEO-RECORDED VIDEOCONFERENCE
16           DEPOSITION OF SAMANTHA PHILLIPS
17              Tuesday, December 1, 2020
18                      Volume I
19
20
21   Reported by:
     ROCHELLE HOLMES
22   CSR No. 9482
23   Job No. 4347573
24   PAGES 1 - 235
25
                                                    Page 1
```

Veritext Legal Solutions
866 299-5127

Sun Decl. Ex. 76, Page 1 of 11

```
 1   APPEARANCES:
 2   For Plaintiff:
 3
 4      GOLDSTEIN BORGEN DARDARIAN & HO
 5      BY:  MENGFEI SUN, ATTORNEY
 6           JAMES KAN, ATTORNEY
 7      155 Grand Avenue, Suite 900
 8      Oakland, California 94612-3767
 9      (510) 763-9800
10      Msun@gbdhlegal.com
11      Jkan@gbdhlegal.com
12           --and--
13      MARKOWITZ HERBOLD PC
14      BY:  ANTHONY BLAKE, ATTORNEY
15      1455 Broadway, Suite 1900
16      Portland, Oregon  97201
17      (503) 295-3085
18      AnthonyBlake@markowitzHerbold.com
19           --and--
20      INDIA BODIEN, ATTORNEY
21      2522 North Proctor Street, No. 387
22      Tacoma, Washington  98406
23      (253) 212-7913
24      India@indialinbodienlaw.com
25      (All Appearing via videoconference.)
```

Page 3

Veritext Legal Solutions
866 299-5127

Sun Decl. Ex. 76, Page 2 of 11

```
 1   APPEARANCES (CONTINUED):
 2
 3   For Defendants:
 4
 5        PAUL HASTINGS LLP
 6        BY:   LINDSEY JACKSON, ATTORNEY
 7              FELICIA A. DAVIS, ATTORNEY
 8        515 South Flower Street , 25th Floor
 9        Los Angeles, California 90071
10        (213) 683-6103
11        Lindseyjackson@paulhastings.com
12        Feliciadavis@paulhastings.com
13        (Appearing via videoconference.)
14
15
16   ALSO PRESENT:
17        ALYSON SMITH, IN-HOUSE COUNSEL, NIKE INC.
18        (Appearing via videoconference.)
19
20
21
22   VIDEOGRAPHER:   SHAWNA HYNES
23                  (Appearing via videoconference.)
24
25
```

Page 4

Veritext Legal Solutions
866 299-5127

Sun Decl. Ex. 76, Page 3 of 11

```
 1   there were false allegations of things that he was
 2   making statements that he had said.  He had asked --
 3   asked me and made claims that were -- were false.
 4        Q    Do you remember what any of those false
 5   allegations were?                                          03:22PM
 6        A    No, not off the top of my head.
 7        Q    What -- did you call ER or did you email ER?
 8        A    I called.
 9        Q    And what was your conversation with ER?
10        A    Providing them with what was happening, asking  03:22PM
11   for guidance, how to work through this.  I believe there
12   were -- I know that -- that -- I was trying to do
13   everything possible to make sure that I was executing
14   well against my job.
15        Q    Do you recall what ER -- did ER advise you to   03:23PM
16   do anything when you called?
17        A    They asked me a bunch of questions, they said
18   that they were going to do something.  I don't know if
19   they did it.
20        Q    Do you recall who you spoke to in ER?           03:23PM
21        A    No, I don't remember.
22        Q    Do you know what a 360 assessment is?
23        A    I do.
24        Q    What is a 360 assessment?
25        A    A 360 assessment is -- it's a -- it's a        03:23PM
```

Page 136

Veritext Legal Solutions
866 299-5127

Sun Decl. Ex. 76, Page 4 of 11

1      Q    And Ms. Pinkney provided more feedback than
2  Mr. Thornley?
3      A    Yes.
4      Q    Is there anything else that was different
5  about the two of them that you haven't already                06:21PM
6  mentioned?
7      A    I can't think of anything.
8      Q    You didn't work with any of the named
9  plaintiffs in this case, did you?
10          MS. SUN:  Objection; asked and answered.             06:21PM
11          THE WITNESS:  No.
12     Q    BY MS. JACKSON:  And you didn't work with any
13 of the opt-in plaintiffs, other opt-in plaintiffs in
14 this case, did you?
15          MS. SUN:  Objection; asked and answered.             06:21PM
16          THE WITNESS:  No, not to my knowledge.
17     Q    BY MS. JACKSON:  Do you know anything about
18 how any of those women were evaluated at Nike?
19          MS. SUN:  Objection; vague and ambiguous.
20          THE WITNESS:  No, I don't know.                     06:22PM
21     Q    BY MS. JACKSON:  Do you have any idea how
22 those women's pay was calculated at Nike?
23          MS. SUN:  Objection; vague and ambiguous.
24          THE WITNESS:  I have no idea.
25     Q    BY MS. JACKSON:  Did any women that you worked      06:22PM

Page 218

Veritext Legal Solutions
866 299-5127

Sun Decl. Ex. 76, Page 5 of 11

| | | | |
|---|---|---|---|
| 1 | with ever complain of gender discrimination at Nike? | | |
| 2 | MS. SUN: Objection; compound. | | |
| 3 | THE WITNESS: There were women who complained | | |
| 4 | about the strip clubs. | | |
| 5 | Q   BY MS. JACKSON: And who are those women? | 06:22PM | |
| 6 | A   They were other women in information security. | | |
| 7 | Q   Do you recall their names? | | |
| 8 | A   [redacted] | | |
| 9 | Q   What were their complaints about the strip | | |
| 10 | club? | 06:23PM | |
| 11 | A   It's a bit inappropriate to go to a strip club | | |
| 12 | for lunch. It's a bit inappropriate to take vendors to | | |
| 13 | strip clubs or have vendors take you to strip clubs. | | |
| 14 | Q   Were those women being taken to strip clubs, | | |
| 15 | to your knowledge? | 06:24PM | |
| 16 | A   I don't know. | | |
| 17 | Q   Who was taking people to strip clubs for | | |
| 18 | lunch? | | |
| 19 | A   [redacted]. Or he was being taken by vendors. | | |
| 20 | Q   Do you know what vendors were taking [redacted] to | 06:24PM | |
| 21 | strip clubs? | | |
| 22 | A   Not directly. | | |
| 23 | Q   Do you know whom [redacted] would take with him to | | |
| 24 | strip clubs for lunch? | | |
| 25 | A   Not directly. | 06:24PM | |

Veritext Legal Solutions
866 299-5127

```
 1      Q    Have you heard thirdhand as to whom he was
 2   taking to strip clubs for lunch or secondhand?
 3      A    Just offhand, you know, his direct reports.  I
 4   think there was some receipts because it was on Nike's
 5   dollars in some of these instances.                      06:25PM
 6      Q    Did you ever see the receipts?
 7      A    No.
 8      Q    Do you know which direct reports of his
 9   attended strip club lunches?
10      A    I had heard ▇▇▇.  I had heard ▇▇.  I don't      06:25PM
11   know.
12      Q    But you don't know for sure who attended?
13      A    I do not know.  But it seemed to be pretty
14   common.
15      Q    Why -- why do you think it was common?           06:25PM
16      A    There was a really good friend of ▇▇▇▇'s
17   who was a vendor.  And I believe ▇▇▇ has -- he had an
18   affair with her.
19      Q    ▇▇▇ had an affair with ▇▇▇▇'s friend?
20      A    Who was a vendor.                                06:26PM
21      Q    What -- I think I'm missing the connection to
22   the strip club, what does -- how does that connect to
23   the strip club?
24      A    There was some strip club attendance there.
25      Q    ▇▇▇ and the vendor went to the strip club       06:26PM
```

Page 220

Veritext Legal Solutions
866 299-5127

Sun Decl. Ex. 76, Page 7 of 11

```
1    together?
2        A    That is what I heard.
3        Q    Do you have any firsthand knowledge about
4    people attending -- people at Nike attending strip
5    clubs?                                                        06:26PM
6        A    Nope.  And I'm glad I don't.
7             MS. SUN:  Objection; asked and answered.
8        Q    BY MS. JACKSON:  Do you -- can you think of
9    any other -- or were there any other instances where any
10   other women reported discrimination at Nike, gender          06:26PM
11   discrimination at Nike?
12       A    No.  There was a sexual harassment issue where
13   the ▓ and the ▓▓▓▓ were let go because of some
14   stuff around that.
15       Q    Who was the ▓?                                       06:27PM
16       A    ▓▓ something.
17       Q    And who was the former ▓?
18       A    ▓. ▓▓ something.
19       Q    And what was --
20       A    And -- and ▓ was a recipient of it.                  06:27PM
21       Q    And how are you -- how did you become aware of
22   that?
23       A    Because some of my peers told me about it and
24   ▓ alluded to some stuff.
25       Q    How did ▓ allude to some stuff?                      06:27PM
```

Page 221

Veritext Legal Solutions
866 299-5127

Sun Decl. Ex. 76, Page 8 of 11

| | | |
|---|---|---|
| 1 | A | Just that there was a lot of bad conduct. |
| 2 | Q | ▮ told you that there was bad conduct? |
| 3 | A | That there was a lot of trouble with previous |
| 4 | conduct. | |
| 5 | Q | Do you know that ▮ was -- let me back |   06:28PM |
| 6 | up. | |
| 7 | | ▮ left the company? |
| 8 | A | He wasn't there when I got there. |
| 9 | Q | So this happened before -- the alleged sexual |
| 10 | harassment happened before you got to Nike? |   06:28PM |
| 11 | A | It -- it -- it was happening about the time |
| 12 | that I was coming in.  Because when I first started |
| 13 | talking to ▮ ▮ was the ▮  And I had |
| 14 | known of ▮ when he was at MasterCard and I was at |
| 15 | Visa -- or through eBay or some such.  We had a |   06:28PM |
| 16 | connection in the information security.  And then all of |
| 17 | a sudden he was no longer there and Ryan was the acting |
| 18 | ▮.  And so then I was interviewing with Ryan rather |
| 19 | than ▮. |
| 20 | Q | But was ▮ -- you said ▮ wasn't |   06:29PM |
| 21 | there when you arrived at Nike? |
| 22 | A | He was no longer the ▮ when I arrived. |
| 23 | Q | And do you know if he left voluntarily? |
| 24 | A | I don't know. |
| 25 | Q | And do you know if ▮ left Nike voluntarily? |   06:29PM |

Page 222

Veritext Legal Solutions
866 299-5127

Sun Decl. Ex. 76, Page 9 of 11

```
 1      A    I don't know.  I was told no.
 2      Q    But you don't -- you don't know?
 3      A    Nope.
 4      Q    Are there -- are you aware of any other
 5   reports of gender discrimination at Nike?              06:30PM
 6           MS. SUN:  Objection; vague and ambiguous.
 7           THE WITNESS:  I don't know.
 8      Q    BY MS. JACKSON:  Do you have any knowledge as
 9   to any of your peers' CFE ratings?
10      A    I did.  I don't remember exactly what it was,  06:30PM
11   though.
12      Q    Do you remember who it was?
13      A    No.
14      Q    Do you have any knowledge as to any of your
15   peers' salaries?                                       06:31PM
16           MS. SUN:  Objection; vague.
17           THE WITNESS:  No.
18      Q    BY MS. JACKSON:  Have you ever been present
19   when decisions were made about firing anyone at Nike?
20      A    Not about the actual decision being made.  But 06:32PM
21   I was aware that they were pushing out -- no.  No, I
22   wasn't.
23      Q    Have you been present at any meetings where
24   discussions of employees' discipline or demotion were
25   brought up?                                            06:32PM
```

Page 223

Veritext Legal Solutions
866 299-5127

Sun Decl. Ex. 76, Page 10 of 11

```
 1            CERTIFICATE OF CERTIFIED SHORTHAND REPORTER
 2        I, Rochelle Holmes, the undersigned, a Certified
 3   Shorthand Reporter of the State of California, do hereby
 4   certify:
 5        That the foregoing proceedings were taken
 6   before me via videoconference; that any witnesses in the
 7   foregoing proceedings, prior to testifying, were
 8   administered an oath; that a record of the proceedings
 9   was made by me using machine shorthand which was
10   thereafter transcribed under my direction; that the
11   foregoing transcript is a true record of the testimony
12   given.
13        Further, that if the foregoing pertains to the
14   original transcript of a deposition in a Federal Case,
15   before completion of the proceedings, review of the
16   transcript [ ] was [X] was not requested.
17        I further certify I am neither financially
18   interested in the action nor a relative or employee
19   of any attorney or any party to this action.
20        IN WITNESS WHEREOF, I have this date subscribed my
21   name.
22   Dated:  December 18, 2020
23
24           _Rochelle Holmes_
             Rochelle Holmes
25           CSR No. 9482, CCRR No. 0123
```

Page 235

Veritext Legal Solutions
866 299-5127

Sun Decl. Ex. 76, Page 11 of 11