**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Anna M. Joyce, OSB #013112**
AnnaJoyce@MarkowitzHerbold.com
**Kathryn P. Roberts, OSB #064854**
KathrynRoberts@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085 ǀ Fax: (503) 323-9105

**Laura L. Ho** (admitted *pro hac vice*)
lho@gbdhlegal.com
**Barry Goldstein, Of Counsel** (admitted *pro hac vice*)
bgoldstein@gbdhlegal.com
**James Kan** (admitted *pro hac vice*)
jkan@gbdhlegal.com
**Byron Goldstein** (admitted *pro hac vice*)
brgoldstein@gbdhlegal.com
**Katharine L. Fisher** (admitted *pro hac vice*)
kfisher@gbdhlegal.com
**Mengfei Sun** (admitted *pro hac vice*)
msun@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 763-9800 ǀ Fax: (510) 835-1417

Attorneys for Plaintiffs, Opt-In Plaintiffs, and Putative Class

[Additional Counsel of Record listed on the next page]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, et al., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NIKE, INC., an Oregon Corporation,<br>Defendant. | Case No. 3:18-cv-01477-JR<br><br>**DECLARATION OF BYRON GOLDSTEIN IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**FILED WITH REDACTIONS** |

**Craig Ackerman** (admitted *pro hac vice*)
cja@ackermanntilajef.com
Brian Denlinger (*admitted pro hac vice*)
bd@ackermanntilajef.com
ACKERMANN & TILAJEF PC
1180 S Beverly Drive, Suite 610
Los Angeles, CA 90035
Tel:  (310) 277-0614
Fax: (310) 277-0635

**India Lin Bodien** (admitted *pro hac vice*)
india@indialinbodienlaw.com
INDIA LIN BODIEN LAW
2522 North Proctor Street, #387
Tacoma, WA 98406-5338
Tel:  (253) 503-1672
Fax:  (253) 276-0081

I, Byron Goldstein, declare as follows:

1. I am a member in good standing of the Bar of the State of California and a partner at the law firm of Goldstein Borgen Dardarian & Ho in Oakland, California. I am counsel for Plaintiffs, Opt-in Plaintiffs, and the putative class members, along with Markowitz Herbold, Ackerman & Tilajef, and India Lin Bodien Law. I am providing this declaration in support of Plaintiffs' Motion for Class Certification. I have personal knowledge of the facts set forth in this declaration and could and would testify competently to them if called upon to do so.

2. This declaration concerns discovery Plaintiffs sought concerning Plaintiffs' initial job assignment allegation (*see* ECF 42, ¶ 10). Section I describes the relevant discovery requests as well as unproduced discovery related to Plaintiffs' initial job assignment allegation. This declaration also concerns the authentication of the Parties' submissions to the Court requesting discovery orders, which is provided in Section II.

## I. PLAINTIFFS' DISCOVERY REQUESTS TO NIKE SEEKING DISCOVERY ON PLAINTIFFS' INITIAL JOB ASSIGNMENT ALLEGATION.

3. Plaintiffs served Requests for Production ("RFPs") seeking discovery concerning Nike's policies and practices related to initial job assignment. *See* RFPs 1-4, 9, 11, and 32. These RFPs are contained in Plaintiffs' First Set of RFPs to Nike, which were served on March 22, 2019. A true and correct copy of Plaintiffs' First Set of RFPs is attached hereto as Exhibit 1.

   a. These RFPs sought discovery concerning Nike's policies, practices, or procedures related to initial job assignment. RFP 4 requested documents concerning policies or practices related to job offers for employees in Covered Positions, including band level or job assignments, related trainings, and documents identifying persons involved with disseminating, implementing, monitoring, and enforcing these policies and practices. RFP 9 requested documents concerning policies, practices, or procedures related to the assignment of a new hire

to a Covered Position. RFP 11 requested documents and communications related to any executive's involvement in the setting or review of any policies, practices, or procedures concerning the Covered Positions and job assignment, job applications, or decisions on job applications for new hires.

        b.        These RFPs also sought discovery concerning data related to initial job assignment and the availability of such data. RFP 1 requested job application data for new hires. RFP 2 requested documents showing the systems Nike used to track, store, or access information or generate reports related to employees in the Covered Position for job applications and decisions on job applications for new hires. RFP 3 requested documents that would help Plaintiffs understand those Nike systems related to RFPs 1-2. RFP 32 requested discovery concerning Nike's policies or practices about retaining or deleting the requested discovery.

        4.        Nike did not produce documents in effect prior to November 2018 that show the steps, policies, procedures, or guidelines concerning how employees in Covered Positions were hired, including their initial job assignment. This belief is based on: (1) the documents listed in the following subparagraphs, which are documents that other Nike documents and Nike testimony indicate existed and were not produced, and (2) Plaintiffs' counsel's thorough review and searches through all the documents Nike produced in all of Nike's productions.

        a.        Based on Plaintiffs' counsel's thorough review and searches through all the documents Nike produced in all of Nike's productions and the following, Nike did not produce any pre-December 13, 2018 version of its "Hiring Process" document. Nike produced a version of this document that was in effect beginning December 13, 2018. *See* Sun Decl. Ex. 11. Nike's "Hiring Process" document states it "is a quick guide to educate key players on their roles and responsibilities when looking to hire great talent at NIKE, inc.," and "[u]se this resource to

learn about your role – as well as when to rely on other stakeholders – throughout the hiring process." *Id.* at NIKE_00003185.  Nike changed its "Hiring Process" document on December 13, 2018 and there was at least one prior version in effect before December 2018 based on the following two Nike documents: (1) the "Hiring Process" document Nike produced states it was "Updated" on December 13, 2018 (*id.* at NIKE_00003186), and (2) Nike produced a document from October 2017 that was sent to all Nike Talent Acquisition employees that lists a "Hiring Process" document (*See* Exhibit 2, attached hereto, which is a true and correct copy of an email from Daniel Laboe, regarding "Commitment to Pay Equity," sent October 12, 2017 (NIKE_00024727), produced by Nike in this litigation, and entered as deposition exhibit 673 at the deposition of Shine Thomas, March 26, 2021).

        b.      Based on Plaintiffs' counsel's thorough review and searches through all the documents Nike produced in all of Nike's productions and the following, Nike did not produce any pre-December 10, 2018 version of its "Manager Playbook Hiring" document.  Nike produced a version of this document that was in effect beginning December 10, 2018.  Sun Decl. Ex. 14.  Nike's "Manager Playbook Hiring" lists the "role of manager" and "manager activities" in hiring.  *Id.*  Nike changed its "Manager Playbook Hiring" document on December 10, 2018 and there was at least one prior version in effect before December 2018 based on the following two Nike documents: (1) the "Manager Playbook Hiring" document Nike produced states it was "Updated" on December 10, 2018 (*id.*), and (2) Nike produced a document from October 2017 that was sent to all Nike Talent Acquisition employees that lists a "Manager Playbook Hiring" document that Nike had then (Ex 2).

        c.      Based on Plaintiffs' counsel's thorough review and searches through all the documents Nike produced in all of Nike's productions and the following, Nike did not

produce complete versions of its "Talent Acquisition Playbook," which is also referred to as "TA Playbook." Nike documents and testimony from its Rule 30(b)(6) witness state that Talent Acquisition manages the hiring process from the time a job is posted until a candidate is selected. *See* Plaintiffs' Motion In Support of Class Certification at 27. The "Talent Acquisition Playbook," according to a Nike witness' testimony, is the main source of policies and guidelines for members of the Talent Acquisition organization. *Id.* Another Nike witness testified that the "TA playbook was created, I think, sometime in 2016," and that Nike puts "new material" and "new policy changes" into the TA Playbook. *See* Exhibit 3, attached hereto, which is a true and correct copy of excerpts from the deposition of Julian Miller, taken June 3, 2021, ("Miller Dep.") 101:18-102:12. Nike produced a document from October 2017 that was sent to all Nike Talent Acquisition employees directing them to "Review the resources on the "TA Playbook," which indicates that Nike has had a "TA Playbook" since at least October 2017. Ex. 2 at NIKE_00024727.

5. Nike did not produce any data from its Avature system, including data related to Nike's sourcing of external candidates who were hired into Covered Positions and had not applied to the open job being sourced. A Nike witness testified Avature is "a tool …. primarily used for proactive sourcing of prospects." *See* Exhibit 4, attached hereto, which is a true and correct copy of excerpts from the deposition of Shine Thomas, taken on March 26, 2021, ("Thomas Dep.") 42:20-43:7. According to this Nike witness, proactive sourcing of prospects involved Nike identifying potential candidates for positions that had not yet been officially posted and contacting them to gather their interest in potential positions at Nike. *Id*. at 44:17-45:21. Another Nike witness testified, "Avature is a tool by which recruiters can log information, as this says, for passive candidates… These are candidates that have not applied to

an open job…." Ex. 3, Miller Dep. 74:13-75:7.  This Nike witness also testified that Avature contains information "regarding … qualifications … [and] experiences" of candidates that is not in Taleo, and "[t]here'd be no information in Taleo that [candidates] were sourced from Avature;" Taleo would just say "that a candidate has applied." *Id.* 76:4-77:7.

6. Nike did not produce complete data from its Taleo system, including data related to Nike's matching of candidates to job requisitions.  Taleo "has all the history of all the candidates who've applied to our open roles." Ex. 4, Thomas Dep. 237:7-14.  Another Nike witness testified that there are hundreds of different Taleo fields related to posting and filling jobs that were not produced.  Ex. 3, Miller Dep. 127:3-128:19.  This witness testified that these missing data fields include entries related to Nike's "matched to job" practice, which is where Nike applied on behalf of existing candidates to other job postings, and records related to communications made by Nike recruiters that encouraged applicants to apply for open positions. *Id.* at 113:6-21

7. Plaintiffs served a Notice of a Rule 30(b)(6) Deposition on Nike that sought testimony concerning initial job assignment.  A true and correct copy of this deposition notice, introduced as deposition exhibit 501 at the deposition of Shane Walker, December 17, 2021, is attached here as Exhibit 5.  Topic 7 sought testimony on, inter alia, hiring for covered positions.  Topic 11 sought testimony on, inter alia, systems Nike used regarding job assignments.  Topic 33 sought testimony on, inter alia, data Nike had not produced concerning job assignment of covered employees, job postings, and job applications.

8. Nike failed to designate a Rule 30(b)(6) witness on Topics 7, 11, and 33 with respect to the parts of those topics related to initial job assignment.  *See* Exhibit 6, attached hereto (true and correct copies of deposition exhibits 502 (introduced at the deposition of Shane

Walker, December 17, 2021), 566 (introduced at the deposition of Alison Daugherty, January 8, 2021), 597 (introduced at the deposition of Shelli White, January 29, 2021), 629 (introduced at the deposition of Kendra Pryce, February 11, 2021), 635 (introduced at the deposition of Treasure Heinle, March 16, 2021), 652 (introduced at the deposition of Cory Gillespie, March 25, 2021), 665 (introduced at the deposition of Shine Thomas, March 26, 2021), 698 (introduced at the deposition of Elizabeth Vales, May 27, 2021), 728 (introduced at the deposition of Julian Miller, June 3, 2021)) (Nike's statements about the limits of Rule 30(b)(6) testimony that it said it would provide).

## II.   THE PARTIES' SUBMISSIONS TO THE COURT REQUESTING DISCOVERY ORDERS.

9. Attached hereto as Exhibit 7 is a true and correct copy of the briefing for Plaintiffs' First Letter Brief to the Court, submitted September 27, 2019, Nike's opposition submitted October 4, 2019, and Plaintiffs' reply submitted October 9, 2019. In response to the Parties' briefing on this request, the Court issued an Order on October 31, 2019. ECF No. 89.

10. Attached hereto as Exhibit 8 is a true and correct copy of the briefing for Plaintiffs' Second Letter Brief to the Court, submitted March 4, 2020, Nike's opposition submitted March 13, 2020, and Plaintiffs' reply submitted March 18, 2020. In response to the Parties' briefing on this request, the Court issued an Order on March 23, 2020 (ECF No. 99), which was affirmed by Judge Hernandez on November 17, 2020 (ECF No. 128).

11. Attached hereto as Exhibit 9 is a true and correct copy of Plaintiffs' Letter to the Court requesting enforcement of the Court's March 23, 2020 Order, submitted May 7, 2020, Nike's Email Response submitted May 7, 2020, and the Court's response sent on May 8, 2020.

12. Attached hereto as Exhibit 10 is a true and correct copy of the briefing for Plaintiffs' Third Letter Brief to the Court and the Declaration of James Kan in support, submitted

June 5, 2020, Nike's opposition submitted June 22, 2020, and Plaintiffs' Reply submitted June 29, 2020.  In response to the Parties' briefing on this request, the Court issued an Order on July 2, 2020.  ECF No. 108.

13. Attached hereto as Exhibit 11 is a true and correct copy of the briefing for Plaintiffs' Fourth Letter Brief to the Court and the Declaration of Byron Goldstein in support, submitted June 30, 2020, Nike's opposition submitted July 17, 2020, and Plaintiffs' reply submitted July 22, 2020.  In response to the Parties' briefing on this request, the Court issued an Order on August 10, 2020.  ECF No. 111.

14. Attached hereto as Exhibit 12 is a true and correct copy of the briefing for Plaintiffs' Fifth Letter Brief to the Court, submitted August 7, 2020, Nike's opposition and declarations submitted September 8, 2020, Plaintiffs' reply and the Declaration of Byron Goldstein in support submitted September 15, 2020, and Nike's Sur-Reply and declaration submitted September 22, 2020.  In response to the Parties' briefing on this request, the Court issued an Order on October 9, 2020.  ECF No. 117.

15. Attached hereto as Exhibit 13 is a true and correct copy of the briefing for Plaintiffs' Letter to the Court requesting unredacted names in the Starfish Survey, submitted October 15, 2020, and Nike's opposition submitted October 16, 2020.  In response to the Parties' briefing on this request, the Court issued an Order on November 23, 2020.  ECF No. 130.

16. After the Court compelled Nike to produce an unredacted copy of the "Starfish Survey" or the packet of complaints provided to Nike's CEO in March 2018, ECF No. 130, the documents included the names of at least 22 Nike executives listed in the Survey who Nike had previously redacted and who were alleged to have discriminated or condoned discrimination.  The people identified in the Survey who have been Nike executives are ████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████

17.     Attached hereto as Exhibit 14 is a true and correct copy of the briefing on Nike's Request for a Protective Order, submitted November 11, 2020, Plaintiffs' opposition submitted November 25, 2020, and Nike's reply submitted December 14, 2020. In response to the Parties' submissions, the Court issued an Order on December 17, 2020. ECF No. 131. The declarations in support of the briefing are omitted from this exhibit for brevity.

18.     Attached hereto as Exhibit 15 is a true and correct copy of Plaintiffs' Sixth Letter Brief to the Court, submitted March 1, 2021, Nike's opposition and declaration submitted March 15, 2021, Plaintiffs' reply submitted March 17, 2021, and Nike's Sur-Reply submitted March 19, 2021. Plaintiffs' March 1, 2021 submission requested an order to compel discovery concerning, inter alia, Nike's organizational structure based on "[r]ecent deposition testimony of Nike's Rule 30(b)(6) designees have confirmed the existence of several documents whose production is either already ordered by this Court (for some subject to two separate orders) or is required by long ago served document requests."

   a.     In response to the Parties' briefing on this request, the Court issued an Order on March 30, 2021, compelling Nike to produce, inter alia, "Organizational Charts granted to the extent they already exist." ECF No. 135. After this March 30, 2021 Order, Nike's productions made clear that Nike possessed many thousands of organizational charts because, as Nike stated in its June 2, 2021 letter to Plaintiffs, "we have produced more than 5,000 organizational charts …." The organizational charts Nike produced included, at least, many

hundreds created prior to March 30, 2021, including numerous organizational charts created each year between 2014 through 2020.

19. Attached hereto as Exhibit 16 is a true and correct copy of Plaintiffs' Request for a Discovery Conference, submitted March 12, 2021, and Nike's response submitted March 12, 2021.

20. Attached hereto as Exhibit 17 is a true and correct copy of Plaintiffs' Seventh Letter Brief to the Court, submitted March 23, 2021, and Nike's opposition submitted March 30, 2021. In response to the Parties' briefing on this request, the Court issued an Order on April 1, 2021. ECF No. 136.

I declare under penalty of perjury under the laws of the State of California and of the United States that the foregoing is true and correct, and that this Declaration was executed this 10th day of January, 2022 in Oakland, California.

/s/ Byron Goldstein
Byron Goldstein