

Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

March 4, 2020

<u>**Via E-Mail Only**</u>
Gary_Magnuson@ord.uscourts.gov

Hon. Jolie A. Russo
Mark O. Hatfield United States Courthouse
Room 1027
1000 S.W. Third. Avenue
Portland, Oregon 97204

Re:    *Kelly Cahill, et al. v. Nike, Inc.*, Case No. 3:18-cv-01477-JR
       Plaintiffs' Request for an Order Compelling Nike to Produce Employee Names
       and Employee ID Numbers

Dear Judge Russo:

Plaintiffs request an order compelling Nike to provide the names and employee ID numbers of employees and witnesses ("Identifying Information") in already produced employment data and workplace complaint documents. Plaintiffs also request an order prohibiting Nike from redacting Identifying Information from future productions unless there is a valid privilege objection.

Nike removed or redacted Identifying Information from its recent productions of employment data and documents related to workplace complaints. These productions were produced in response to Plaintiffs' Requests for Production ("RFPs") and the Court's October 31, 2019 Order, *see* ECF No. 89 ("10/31 Order"). The Parties agree that they are at impasse with respect to whether Nike is justified in withholding Identifying Information.

The Court should compel Nike to produce the Identifying Information because (1) Identifying Information is relevant to class certification as it can lead to anecdotal evidence and otherwise identify witnesses of sex discrimination, provide the Parties and their experts with understandable and verifiable data necessary for statistical analyses critical to class certification, and provide the parties with the same access to information (Section B); and (2) the protective order, which Nike drafted, sufficiently addresses any privacy concerns (Section C).

**A.**    **Nike Has Redacted or Removed Identifying Information From its Class Data or Workplace Complaints Productions.**

The applicable RFPs are (a) RFP No. 1, which requested employment data that is critical for statistical analyses in support of class certification, including Identifying Information, and (b)

300 Lakeside Drive, Suite 1000, Oakland, CA 94612-3534    Tel 510. 763. 9800    Fax 510. 835. 1417    www.gbdhlegal.com

777865.16                                                  Goldstein Decl. Ex. 8, Page 1 of 59

                                                    -2-                              March 4, 2020

the RFPs listed in the 10/31 Order concerning workplace complaints, which are RFP Nos. 27, 29, and 45-46 (collectively, "Applicable RFPs").  *See* Exh. A (showing the applicable RFPs and Nike's responses to those RFPs), attached hereto.

        Plaintiffs served the Applicable RFPs on March 22, 2019, and Nike served its responses on April 22, 2019.  During the Parties' meet and confer discussions, Nike stated it would produce at least some of the employment data responsive to RFP No. 1,[1] and the Parties reached an impasse with respect to the remaining Applicable RFPs.

        On September 27, 2019, Plaintiffs sought an order compelling Nike to produce workplace complaints and certain other categories of documents.  Nike's opposition argued that Plaintiffs' request for workplace complaints should be denied based on privacy objections.[2]  The Court then issued the 10/31 Order, which, *inter alia*, compelled Nike to produce certain documents concerning workplace complaints and to do so subject to the Protective Order.

        Nike began producing employment data responsive to RFP No. 1 on December 30, 2019 ("12/30 Data"), which included six separate data files.  Nike removed Identifying Information from the 12/30 Data; instead, Nike substituted anonymized numbers, which appear to be created solely for this litigation, for the Identifying Information.

        In response to the 10/31 Order, Nike began producing documents related to workplace complaints on February 14, 2020.[3]  Like the 12/30 Data, Nike redacted Identifying Information from the documents in this production, including names of complaining employees, subjects of the complaints, witnesses, and decision-makers.  *See* Exh. B (an example of Nike's redactions), attached hereto.[4]

        Nike has not provided a privilege log, a redaction log, or otherwise provided information that allows the Plaintiffs or the Court to evaluate the redactions with respect to the Applicable RFPs.  Nor did Nike seek a protective order before redacting or anonymizing employee identifying information.

---

[1] The Parties continue to meet and confer about other issues related to the data, including the meaning of data fields and additional responsive data.

[2] *See* Nike's October 4, 2019 letter in response to Plaintiffs' September 27, 2019 letter seeking an order compelling Nike to produce responsive discovery, at p. 3.

[3] On February 27, 2020, Nike confirmed that it has not completed its production in response to the 10/31 Order, and Nike stated that it would make a production by March 6, 2020.

[4] Exhibit B has been marked as Confidential by Nike, but, pursuant to paragraph 7(e) of the Protective Order (ECF No. 82), the Court and its staff can review it.  However, if the Court intends to put this document on the docket, please ensure to seal Exhibit B pursuant to paragraph 4 of the Protective Order.

-3-                                          March 4, 2020

**B.    Employee Identifying Information is Relevant to Class Certification.**

The Identifying Information is relevant to class certification.  For example, Judge Hernandez, in a wage and hour class action, compelled the employer to disclose the employees' names, addresses, and employment information because this information "may help to illuminate issues such as numerosity, common questions, typicality, and adequacy of representation and whether this suit should proceed as a class action under Fed. R. Civ. P. 23." *Cedano v. Thrifty Payless, Inc.*, No. CV-10-237-HZ, 2011 U.S. Dist. LEXIS 155956, at *20, 23-24 (D. Or. May 9, 2011).

Likewise, in *Bennett v. Simplexgrinnell LP*, No. 4:11-cv-01854-PJH, 2012 U.S. Dist. LEXIS 197743, at *4 (N.D. Cal. Sep. 25, 2012), a putative employment class action, the court compelled the employer to include employee identifying information in its production of employee data because the identifying information "plainly is relevant and likely to lead to the discovery of admissible evidence."[5]

As many courts have explained, there are numerous reasons why employee identifying information is relevant to class certification.

First, the Identifying Information can lead to anecdotal evidence relevant to certification of a disparate treatment claim.  *See, e.g.,* Findings & Recommendation at 9, ECF No. 64 ("anecdotal evidence of past discrimination . . . can be used to establish a general discriminatory pattern in an employer's hiring or promotion practices.") (citing *Obrey v. Johnson*, 400 F.3d 691, 698 (9th Cir. 2005)).  Courts have thus compelled production of Identifying Information in putative class disparate treatment actions.  *See, e.g., Wellens v. Daiichi Sankyo, Inc.*, 2014 U.S. Dist. LEXIS 29794, at *6-7 (N.D. Cal. Mar. 5, 2014) (employees' identifying information "may lead to anecdotal evidence not captured in the pay and benefits data produced . . . and as such may substantiate Plaintiffs' arguments for class certification," and compelling production of employee identifying information); *Chen-Oster v. Goldman, Sachs & Co*., 293 F.R.D. 557, 564-566 (S.D.N.Y. 2013) ("unredacted names are required in order for the plaintiffs to contact potential witnesses and develop anecdotal evidence of the alleged gender discrimination, and are thus relevant to their claim.") (citations omitted).

Similarly, here, Identifying Information related to workplace complaints can lead to anecdotal evidence.  For example, the Court ordered Nike to produce certain documents related to Daniel Tawiah (10/31 Order, ECF No. 89) and Plaintiffs allege, with substantial support, that

---

[5] *Cf. Makaneole v. SolarWorld Indus. Am., Inc.*, No. 3:14-CV-1528-PK, 2016 U.S. Dist. LEXIS 182243, at *62 (D. Or. Sep. 2, 2016) (denying request for putative class members' information "at this time" because the employer "has already conceded expressly that the same timekeeping practices and procedures reflected in [plaintiff's] time and payroll calculations were applied uniformly to all proposed class members" and plaintiffs did not otherwise show relevance).

-4-                                    March 4, 2020

Nike's top management choose to promote Tawiah to top management despite top management's awareness of workplace complaints against Tawiah.[6]

However, if Nike continues to withhold Identifying Information, Plaintiffs are precluded from identifying the subjects of complaints, such as Tawiah, top management's awareness of or involvement with decisions about complaints, patterns or practices with respect to Nike's handling of workplace complaints, and how such patterns or practices impacted women's compensation and promotions.

Identifying Information also provides Plaintiffs with other opportunities to substantiate their class allegations and rebut Nike's opposition to class certification. For example, Identifying Information allows Plaintiffs to provide, under seal, corroboration of key facts identified in workplace complaints because Plaintiffs' counsel can locate the compensation of the complainant and similarly situated men in the employment data. Nike's redactions of data and workplace complaints makes it impossible to connect that evidence to specific individuals. *See* Exh. B (example of redactions Nike applied to workplace complaints and their related documents). Without Identifying Information, *e.g., id.* at NIKE_00016022-16023 (Ex. B), Plaintiffs' counsel can neither locate witnesses nor identify relevant information in the employment data; Plaintiffs are thus hampered in their ability to provide anecdotal evidence that brings "the cold numbers convincingly to life." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339 (1977).

Second, Identifying Information is important for the employment data because it allows the parties and their experts to more efficiently and effectively use the data for statistical analyses. For example, in *EEOC v. Dolgencorp, LLC*, No. 13-cv-04307, 2015 U.S. Dist. LEXIS 58994, at *4 (N.D. Ill. May 5, 2015), a Title VII disparate impact action, the court compelled the production of data showing conditional hires' names, social security numbers, addresses, phone numbers, and dates of birth because:

> The requested data fields are unquestionably calculated to lead to the discovery of admissible evidence by permitting the EEOC and its experts more effectively to analyze the statistical impact of Dollar General's use of criminal background checks. As explained above, the information sought will be used to link several large databases together, allowing the EEOC to perform its disparate impact analysis.

---

[6] Plaintiffs allege Nike decided to promote Daniel Tawiah to vice-president, during the class period, even after it had received sexual harassment and discrimination complaints about Tawiah; Tawiah is also implicated in specific allegations of discriminatory and harassing conduct by Named Plaintiff Kelly Cahill, Party Plaintiff Paige Azavedo, and Party Plaintiff Lauren Anderson. 1st Am. Comp. ¶¶ 81-84, ECF No. 42; Consent to Become Party Pl. (Azavedo) ¶ 6, ECF No. 37; Consent to Become Party Pl. (Anderson) ¶¶ 5-7, ECF No. 60.

-5-                                           March 4, 2020

In *Dolgencorp*, the Court rejected the employer's proposal to substitute anonymized numbers for identifying information because of the usefulness of the identifying information, its "concerns regarding whether the linking process can be performed in a verifiably accurate manner," and the risk that anonymized data "would likely engender additional discovery disputes and frustrate resolution of this case." *Id.* at *4-5 n.1. Likewise, here, Nike's substitution of anonymized numbers, which Nike does not use in the ordinary course of business, unnecessarily creates concerns about and potential discovery disputes regarding the linking of the six data files that have been produced and other data files that will be produced in the future.

Third, "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Fed. R. Civ. P. 26, 1983 Cmts. (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). In short, "Defendant has access to this [identifying] information, and plaintiff should have the same access." *Babbitt v. Albertson's, Inc.*, No. C-92-1883 SBA (PJH), 1992 U.S. Dist. LEXIS 19091, at *17 (N.D. Cal. Nov. 30, 1992) (ordering production of identifying information in a putative employment discrimination class action, and also stating that the identifying information "could lead to the discovery of admissible evidence relevant to the class certification issue."); *see also e.g.*, *Amaraut v. Sprint/United Mgmt. Co.*, No. 3:19-cv-411-WQH-AHG, 2020 U.S. Dist. LEXIS 7558, at *14-15 (S.D. Cal. Jan. 14, 2020) ("[a]s a general rule, before class certification has taken place, all parties are entitled to equal access to persons who potentially have an interest in or relevant knowledge of the subject of the action, but who are not yet parties.") (collecting cases).[7] Here, Nike's removal of the Identifying Information turns the information asymmetry into an advantage for Nike.[8]

### C.    Nike's Third-Party Privacy Objections Should Be Overruled Because the Protective Order Addresses Any Privacy Concerns.

---

[7] *See* *Santiago v. Rivka, Inc.*, No. 15cv9184, 2016 U.S. Dist. LEXIS 119503, at *2 (S.D.N.Y. May 26, 2016) (The employer's "position—refusing to produce discovery about putative collective action members, then opposing certification because Plaintiff lacks that discovery—manufactures a Catch-22.").

[8] Rule 26(b)(1)'s six proportionality factors also support disclosure because: (1) the employment discrimination issues raised in this case are of paramount public importance, *see e.g.*, Fed. R. Civ. P. 26, 2015 Cmts. (Advisory Committee "recognized . . . the significance of [certain] substantive issues . . . such as *employment practices*, . . . may have importance far beyond the monetary amount involved.") (emphasis added and internal quotations omitted); (2) the "amount in controversy" here is significant; (3) this is a classic case of "information asymmetry," *see* Fed. R. Civ. P. 26, 2015 Cmts. (asymmetry is where a "party . . . may have very little discoverable information" and the "other party may have vast amounts of information . . . ."); (4) Nike has the resources; (5) the discovery requests are important for class certification, including anecdotal evidence and ensuring proper statistical analyses; and (6) any costs associated with producing the Identifying Information is a problem of Nike's own making because Nike redacted the information and it did so without first seeking a protective order.

-6-                                                    March 4, 2020

Nike appears to rely on privacy objections to justify withholding Identifying Information.[9]  Given the relevance of the Identifying Information, Nike, as the party opposing discovery requests, "has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Amaraut*, 2020 U.S. Dist. LEXIS 7558, at *10 (internal citations omitted and collecting cases).

Nike cannot and has not carried its burden to show that its privacy objections justify withholding Identifying Information because the relevance of this requested discovery outweighs Nike's asserted third-party privacy concerns, especially since the existing protective order addresses any privacy interests.[10]

Courts regularly rule that protective orders address third-party privacy concerns.  For example, in *Bennett,* where the Court compelled production of employees' unredacted compensation data in a putative employment class action, the Court overruled the employer's privacy objections because "the privacy interests of the putative class members can be protected adequately by limiting the disclosure of the information solely for use in this litigation and subject to the protective order that has been entered in this case."  2012 U.S. Dist. LEXIS 197743, at *6; *see also Amaraut*, 2020 U.S. Dist. LEXIS 7558, at *20-21 (overruling defendant's third-party privacy objections and stating, "[g]enerally, federal courts in this circuit have held that a protective order, in lieu of a *Belaire-West* notice, sufficiently protects putative class members and aggrieved employees' privacy interests in the confidentiality of their contact information.") (collecting cases).

The result is the same in Title VII putative class actions.  *See, e.g., Chen-Oster*, 293 F.R.D. at 564-66 (finding the "protective order sufficiently addresses Goldman Sachs' privacy concerns" over names in workplace complaints); *Wellens,* 2014 U.S. Dist. LEXIS 29794, at *11 (finding "the production of the names and contact information pursuant to the existing protective order adequately attends to class member privacy concerns.").[11]

_____

[9] Nike's cover letter accompanying the production of the 12/30 Data states that Nike redacted Identifying Information "[t]o protect the privacy interests of employees who have not consented to the disclosure of their confidential information."

[10] Protective Order, ECF No. 82; Rule 26(f) Report at 5-7, ECF No. 77 (Nike's request for its proposed protective order).  Relatedly, Nike requested that the Parties enter into a Data Handling Agreement (*id.* at 7-9), and the Court agreed that the Parties should enter such an agreement, which the Parties did.  In support of its request, Nike argued that "its proposed Data Handling Agreement would accomplish the critical objective here—to ensure protections related to the storage and access of critical personnel and other data."  *Id.*

[11] *See also Dolgencorp, LLC*, 2015 U.S. Dist. LEXIS 58994, at *4 (protective order addresses any privacy concerns regarding production of identifying information in a Title VII disparate impact action); *Babbitt*, 1992 U.S. Dist. Lexis 19091, at *12-14 (in a putative Title VII action, where the employer argued that disclosing workplace complaints and correspondence "would have a chilling effect on the filing of claims and would violate the privacy rights of the

-7-                                        March 4, 2020

Moreover, Nike has demonstrated that its objections are insufficient because its objections lack, as required by Rule 34, "specificity," "reasons," or a statement that responsive materials are being withheld based on an objection.[12]  For example, in response to each of the Applicable RFPs, Nike copied the same language for an objection: "on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information," and Nike made these objections without stating the reasons for these objections, whether it was producing any responsive documents, or whether it was withholding documents based on these objections.[13]  *See* Exh. A.

In addition, Nike did not provide a privilege or redaction log containing descriptions or reasons for its removal of Identifying Information.  Nor did Nike seek a protective order before unilaterally deciding to redact responsive information.

### Conclusion

For all the above reasons, Plaintiffs request an order compelling Nike to (1) re-produce data responsive to Plaintiffs' Request for Production No. 1 with Identifying Information, (2) re-produce workplace complaints that the Court ordered (ECF No. 89) without Identifying Information redacted, and (3) prohibiting Nike from redacting Identifying Information from future productions unless there is a valid privilege objection.

---

individuals who filed them," the Court ruled the documents "are relevant to . . . the class certification . . . issues" and privacy "concerns could be adequately addressed through a well-crafted protective order.").

[12] In 2015, "Rule 34(b)(2)(B) [was] amended to require that objections to Rule 34 requests be stated with specificity," which "ties to the new provision in Rule 34(b)(2)(C) directing that an objection must state whether any responsive materials are being withheld on the basis of that objection."  Fed. R. Civ. P. 34, 2015 Cmts.  Even before the 2015 amendments, "[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all."  *Cedano*, 2011 U.S. Dist. LEXIS 155956, at *11 (citation omitted).

[13] *See e.g.*, *Gibson v. JetBlue Airways Corp.*, No. 6:18-cv-1742-Orl-40TBS, 2019 U.S. Dist. LEXIS 119420, at *7 (M.D. Fla. July 18, 2019) (overruling employer's conclusory objection based on "confidential, sensitive and personal information the disclosure of which would invade the privacy rights of current and/or former employees of JetBlue who are not parties to this action.").

-8-                                                    March 4, 2020

Respectfully submitted,

/s/ Byron Goldstein
Byron Goldstein

Laura Salerno Owens, OSB #076230
David B. Markowitz, OSB #742046
Harry B. Wilson, OSB #077214
Anna M. Joyce, OSB #013112
Chad A. Naso, OSB #150310
chadnaso@markowitzherbold.com
MARKOWITZ HERBOLD PC
Tel.: (503) 295-3085

Laura L. Ho (admitted pro hac vice)
Barry Goldstein, Of Counsel (admitted pro hac vice)
James Kan (admitted pro hac vice)
Byron Goldstein (admitted pro hac vice)
Katharine L. Fisher (admitted pro hac vice)
Mengfei Sun (admitted pro hac vice)
msun@gbdhlegal.com
Tel.: (510) 763-9800

Craig Ackerman (SBN 229832)
ACKERMANN & TILAJEF PC
Tel: (310) 277-0614

India Lin Bodien (SBN 44898)
INDIA LIN BODIEN LAW
Tel: (253) 503-1672

Attorneys for Plaintiffs

cc: Daniel Prince (danielprince@paulhastings.com)
     Zach P. Hutton (zachhutton@paulhastings.com)
     Felicia A. Davis (feliciadavis@paulhastings.com)
     Amy Joseph Pedersen (amy.joseph.pedersen@stoel.com)
     Kennon Scott (kennon.scott@stoel.com)

# EXHIBIT A

AMY JOSEPH PEDERSEN, OSB No. 853958
amy.joseph.pedersen@stoel.com
KENNON SCOTT, OSB No. 144280
kennon.scott@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

DANIEL PRINCE (*pro hac vice*)
danielprince@paulhastings.com
ZACH P. HUTTON (*pro hac vice*)
zachhutton@paulhastings.com
FELICIA A. DAVIS (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, Twenty-Fifth Floor
Los Angeles, California 90071-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

Attorneys for Defendant NIKE, INC.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL *et al.*, individually and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br><br><br>NIKE, INC., an Oregon Corporation,<br><br>    Defendant(s). | Case No. 3:18-cv-01477-JR<br><br><br>**DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION** |

Page 1   DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
      PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

Goldstein Decl. Ex. 8, Page 10 of 59

## NIKE'S OBJECTIONS AND RESPONSES TO PLAINTIFFS'
## REQUESTS FOR PRODUCTION

### DOCUMENT REQUEST NO. 1:

Documents that identify the following for each HQ employee who has worked for Nike at any time during the covered period: (a) identity, including name, employee ID (or similar unique identifier assigned by Nike), current position, and job grouping; (b) complete compensation history at Nike including type or component, date and amount of paid, all recorded reasons for paid compensation and changes thereto, and inputs used to calculate compensation; (c) final CFE ratings (also referred to as Performance Appraisals); (d) Potential Appraisal final results; (e) complete job history at Nike, including all held position titles, job codes, all other applicable job groupings, dates of changes in any position title or job grouping, original hire date, rehire date, and termination date, pay codes, pay grades, and compensation at each job position or job grouping; and (e) demographics, including sex, age, race or ethnicity, and education level; and (f) job application data for new hires, lateral moves, and promotions, including collection and use of prior compensation, resumes, and prior work experience.  For each such HQ employee, the time-period for this request is from when the HQ employee first started working at Nike to the present.

### OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 1:

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "HQ employee," "job grouping," "complete compensation history," "type or component," "recorded reasons," "compensation," "inputs used to calculate compensation," "complete job history," "Potential Appraisal," "Potential Appraisal final results," "applicable job groupings," "demographics," "education level," "job application data," "lateral moves," "promotions," "collection and use," and "prior work experience."  Nike further objects to this Request on the grounds that it is compound and appears to squeeze multiple, distinct requests into a single Request.  Nike further objects to this Request on the grounds that it is unduly

Page 8        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
              PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

burdensome, oppressive, and overly broad as to time and scope because (1) it seeks documents outside of the applicable statutory period(s), and (2) it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality.  Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Specifically, this Request seeks documents identifying the names, race, and ethnicity of current and former Nike "HQ employees," which are irrelevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 2:**

Documents that identify all systems used by Nike to track, store, access information or generate reports (e.g., Performance Rating History Report) relating to HQ employees and any of the following: (a) compensation; (b) job history; (c) job applications and decisions on job applications for new hires, lateral moves, and promotions; (d) performance evaluations; (e) CFE ratings; (f) Potential Appraisal; (g) demographics (sex, age, race or ethnicity, and education level); (h) promotions; or (i) workplace complaints about sex discrimination (including those submitted to Matter of Respect, AlertLine or otherwise) or other discrimination, including any investigations or responses to such complaints.  The time-period for this request is January 1, 2010 to the present except for (i), which is for the covered period.

that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Nike denies any "sex discrimination affecting employees at Nike HQ," as contemplated by this Request.

**DOCUMENT REQUEST NO. 27:**

All complaints, allegations, reports, investigations, recommended responses to complaints, and enacted responses to complaints relating to sex discrimination at Nike HQ.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 27:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "complaints," "allegations," "reports," "investigations," "recommended responses," "enacted responses," "relating to," and "sex discrimination."  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to scope because it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality.  Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Specifically, this Request seeks documents and communications regarding complaints of "sex discrimination" of any kind, which if any, do not form the basis of Plaintiffs' Complaint, and which are irrelevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex.  Nike further objects to this Request to

DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 28:**

All documents and communications relating to the involvement of any HQ executive in any decision or review related to any complaint of sex discrimination at Nike HQ.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 28:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "relating to," "involvement," "HQ executive," "decision," "review," "related to," "complaint," and "sex discrimination."  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to scope because it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality.  Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Specifically, this Request seeks documents and communications regarding complaints of "sex discrimination" of any kind, which if any, do not form the basis of Plaintiffs' Complaint, and which are irrelevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 29:**

All documents and communications related to sex discrimination that were provided by or to any HQ executive or member of Nike's board of directors, including minutes, agendas, and reports.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 29:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "related to," "sex discrimination," "provided by or to," "HQ executive," "member of Nike's board of directors," "agendas" and "reports."  Nike further objects to this Request on the grounds that it is overly broad, unduly burdensome, oppressive, and seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Specifically, it is entirely unclear how any documents and communications provided to "Nike's board of directors" that may reference "sex discrimination" are at all relevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 30:**

All policies and practices relating to the orientation and/or on-boarding process of HQ employees.  This request includes: (a) all related trainings and training materials for employees, managers, and/or HR; and (b) documents identifying persons involved with disseminating, implementing, monitoring, and enforcing these policies and practices.

the grounds that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

## DOCUMENT REQUEST NO. 45:

All documents and communications related to any letter or other communication from Nikki Neuburger that was sent or provided to Nike's CEO that relating to sex discrimination at Nike HQ.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 45:

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein. Nike objects to this Request on the grounds that it is vague and ambiguous as to "other communication," "related to," "sent or provided to," "relating to" and "sex discrimination." Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost. Nike further objects to this Request on the grounds that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

## DOCUMENT REQUEST NO. 46:

All documents and communications related to any survey, letter, other document, or other communication containing information or data concerning multiple female HQ employees and any sex discrimination at Nike HQ. This request includes any documents or communications titled or otherwise referred to as "My Experience" or "Starfish."

DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION
Goldstein Decl. Ex. 8, Page 16 of 59

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 46:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein. Nike objects to this Request on the grounds that it is vague and ambiguous as to "related to," "survey," "data," "concerning," "multiple female HQ employees," "sex discrimination," and "My Experience," "Starfish," or "otherwise referred to." Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to scope because it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality. Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and not proportional to the needs of the case because it seeks information unrelated to Plaintiffs' pay, promotion, and alleged job channeling claims. Nike further objects to this Request on the grounds that it seeks ESI that is not reasonably accessible because of undue burden or cost. Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 47:**

All documents and communications related to any statements made around June or July 2018 by Nike or Illana[sic] Finley to any reporter about pay equity, compensation, or pay analyses, including the following statements: (a) "strive to meet the diverse needs of our employees, deliver differentiated, competitive pay and benefits, and support a culture in which employees feel included and empowered;" (b) changes to Nike's pay and rewards; competitive pay adjustments; annual pay analysis; a deeper pay analysis of all Nike roles in 2018; (c) "as a result, we are making adjustments to some employee pay;" (c) Nike's definition of pay equity;

Page 55        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 63:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is overly broad, vague, and ambiguous as to "related to," "job assignments," "this action," "job performance," "evaluation," "compensation," and "promotion."  Nike further objects to this Request on the grounds that it seeks ESI that is not reasonably accessible because of undue burden or cost.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.

Dated: April 25, 2019                          /s/ Felicia A. Davis

                                               Daniel Prince (*pro hac vice*)
                                               danielprince@paulhastings.com
                                               Zach P. Hutton (*pro hac vice*)
                                               zachhutton@paulhastings.com
                                               Felicia A. Davis (*pro hac vice*)
                                               feliciadavis@paulhastings.com
                                               PAUL HASTINGS LLP
                                               515 South Flower Street, Twenty-Fifth Floor
                                               Los Angeles, California 90071-2228
                                               Telephone: (213) 683-6000
                                               Facsimile: (213) 627-0705

                                               Amy Joseph Pedersen, OSB No. 853958
                                               amy.joseph.pedersen@stoel.com
                                               Kennon Scott, OSB No. 144280
                                               kennon.scott@stoel.com
                                               STOEL RIVES LLP
                                               760 SW Ninth Avenue, Suite 3000
                                               Portland, Oregon 97205
                                               Telephone: (503) 224-3380
                                               Facsimile: (503) 220-2480

                                               Attorneys for Defendant NIKE, INC.

# EXHIBIT B



Subject

 **- Pay Equity Concern**

Question Reference # 180420-001414

Assigned: Tanya Morning
Date Created: 04/20/2018 04:59 PM
Date Last Updated: 11/25/2018 05:47 PM
Status: Resolved

Customer By Email (Tanya Morning) (10/31/2018 12:20 PM)



Confidential



Confidential

NIKE_00016020



Confidential

NIKE_00016021



**From** <span style="background:black">████████████</span>
**Sent:** Friday, April 13, 2018 12:08 PM
**To:** Diversity and Inclusion <Diversity.Inclusion@nike.com>
**Subject:** Seeking Professional Advice

Hello Team!

I am reaching out to discuss equality in my pay vs my peers who have the same role, have been at the company less time than myself, and are getting paid more than me. I have brought this up to my manager, who has took it all the way up to the GM. However I keep being told that there is nothing that can be done at this time. As I am a very social and extroverted person, I know for a fact through direct verbal confirmation from my peers that I am getting paid at least $10k - $15 less than my equals. I have had 'Successful' on all of my CFE's, demonstrated leadership throughout the NA Campus, and within the Licensed Category. I have been in this role for 2 years, and while it has been acknowledged that my pay is too low, I am starting to feel hopeless in my current situation.

Confidential

Prior to the re-org in September 2017, there were 16 people in role that were managing a business that now 6 of us manage. However 3 of those 6 roles are open and need to be filled, and with my counterpart on sabbatical, that means that the work of 16 people is now down to 2. We are the most SKU intensive category, yet due to the little revenue that we drive, we have continuously lost head count as the work load has tripled. Where we once were owning just one dimension (Digital or Stores), we are now managing all dimensions for our category in Nike Direct (Digital, NSO, NFS and Employee doors). My cries for help have been acknowledged but yet acted upon. My constant communication around how buried I am and how I feel that our category is not set up for success, has again, been acknowledged but not acted upon.

My work/life balance has been sincerely compromised. I am constantly burning the candle at both ends, and I am trapped in a role where I am not able to succeed and therefore makes it very difficult to move forward and into a different role/org/category/area. I do not feel valued as an employee or as a person based on my work load and pay. I have talked to all the right people and looped everyone in about this, but now I turn to your team for help. To be honest, I am struggling and have hit a wall.

I am reaching out to you and your team for help and guidance, as I do not know where I can turn and what my options are moving forward.

I look forward to hearing from you.

Best,



Customer By Email (Tanya Morning) (10/31/2018 12:20 PM)

**From:** Gillespie, Cory

Confidential

Goldstein Decl. Ex. 8, Page 24 of 59

NIKE_00016023

**Sent:** Monday, October 8, 2018 11:56 AM
**To:** Morning, Tanya
**Subject:** FW: ██████████ Resignation Notice

Hey Tanya --- FYI on ████.....

Is there anything you feel like I need to do in this case?

---

**From:** ████████████████
**Date:** Monday, October 8, 2018 at 10:56 AM
**To:** "Gillespie, Cory" <Cory.Gillespie@nike.com>
**Cc:** Cari Benson <Cari.Benson@nike.com>
**Subject:** Re: ██████████ Resignation Notice

Hi Cory,

Welcome back! She said that is was "some time coming", That she "didn't have something else", and "was making this decision as she felt it was best for her". On her exist form she selected personal reasons.

Crazy after all the back and forth on $, and her getting 30%+ more that shes leaving now. Honestly it came the day she returned from PTO, sort of feels like she realized this wasn't the right fit while she was out.

Hope that helps,

██████████

Sr. Merchandising Director Nike.com – Men's s

O:503.532.7615| C: 781.414.9305

---

**From:** "Gillespie, Cory" <Cory.Gillespie@nike.com>
**Date:** Monday, October 8, 2018 at 9:44 AM
**To:** "Cusick, Sean" <Sean.Cusick@nike.com>

Confidential

**Cc:** "Benson, Cari" <Cari.Benson@nike.com>
**Subject:** Re: ████████████    Resignation Notice


Hey ████  Thanks for letting me know about ██████. Did she give a reason to you as to why she is leaving?


**From** ███████████████████████████████
**Date:** Friday, October 5, 2018 at 4:39 PM
**To:** HR Direct Americas <HRDirect.Americas@nike.com>, "Gillespie, Cory" <Cory.Gillespie@nike.com>
**Cc:** Cari Benson <Cari.Benson@nike.com>
**Subject:** Re: ████████████    Resignation Notice


Resending with attachment


████████████


Sr. Merchandising Director Nike.com – Men's s

O:503.532.7615| C: 781.414.9305


**From:** ████████████████████████████
**Date:** Friday, October 5, 2018 at 4:34 PM
**To:** HR Direct Americas <HRDirect.Americas@nike.com>, "Gillespie, Cory" <Cory.Gillespie@nike.com>
**Cc:** "Benson, Cari" <Cari.Benson@nike.com>
**Subject:** ████████████████    Resignation Notice


Hi HR Team,


Please find her completed resignation for attached.

Confidential                                                                    NIKE_00016025

Thanks

███████████

Sr. Merchandising Director Nike.com – Men's s

O:503.532.7615| C: 781.414.9305

Customer By Email (Tanya Morning) (08/22/2018 02.58 PM)

**Thanks,**

**Tanya Morning| Employee Relations Director |Nike Inc.**

Mobile+1 503-459-2660| Office: +1 971-473-1684

**From:** Morning, Tanya
**Sent:** Wednesday, August 22, 2018 2:49 PM
**To:** Gillespie, Cory <Cory.Gillespie@nike.com>
**Subject:** FW: Professional Development – Communication

Hi Cory,

Do you mind me scheduling time with ███████ leader and talking through a few suggestions to support improving her communication style?

http://sharpheels.com/events/career-summit-portland-2018/

Goldstein Decl. Ex. 8, Page 27 of 59

https://www.amanet.org/training/seminars/executive-presence-for-women.aspx

http://jacquelinembaker.com/ (This lady customized an etiquette and business communication class facilitated here at Nike. I sent shawn to this class)

https://northwestcoachinggroup.com/leadership-coaching/#.W33YV-hKhPY Local

https://nikeu.nike.com/article/storytelling - some courses through Lynda.com

https://www.trainup.com/Communication-Training-In-Portland-OR/2390/35 - I like the Breaking Bad Commination Seminar, How to become a better Communicator and the Developing Emotional IQ Seminar. These are Local and inexpensive.

**Thanks,**

**Tanya Morning| Employee Relations Director |Nike Inc.**

Mobile +1 503-459-2660| Office: +1 971-473-1684

**From:** McClean, Brooke
**Sent:** Monday, August 20, 2018 8:27 AM
**To:** Morning, Tanya <Tanya.Morning@nike.com>
**Subject:** RE: Professional Development - Communication

Hi Tanya – Yes, we do offer coaching opportunities. The Leadership Development Coaching Toolkit is attached. There are a few different options depending on band-level. I'm happy to discuss with you more during our time together this afternoon.

Goldstein Decl. Ex. 8, Page 28 of 59

Confidential                                                                 NIKE_00016027

If you would like to move forward with arranging coaching for this employee, please follow-up with the employee's HRBP.  The HRPBs initiate the coaching requests with our coaching vendor.

Speak to you later this afternoon!

Thank you!

Brooke

**From:** Morning, Tanya
**Sent:** Sunday, August 19, 2018 1:56 PM
**To:** McClean, Brooke <Brooke.Mcclean@nike.com>
**Subject:** Professional Development - Communication

Hi Brooke,

I'm working a case where a female employee's overall communication style (not succinct, informal) is getting in the way of her progressing.  I would like to offer her coaching/resources to help  her with this.  Does Nike have a recommendations that we can offer, even a small cost to the department?  This employee sits in NA Nike Direct (Merchant – ██████████.  I figured I would start with you for resources.  If you are not my contact, can you forward on my request.

Please, thanks

**Thanks,**

**Tanya Morning**| **Employee Relations Director** |**Nike Inc.**

Mobile +1 503-459-2660| Office: +1 971-473-1684

Confidential                                                                    NIKE_00016028

Customer By Email (Tanya Morning) (08/19/2018 01:56 PM)

Thanks,

**Tanya Morning**| **Employee Relations Director** |**Nike Inc.**

Mobile +1 503-459-2660| Office: +1 971-473-1684

**Hi Brooke,**

**I'm working a case where a female employee's overall communication style (not succinct, informal) is getting in the way of her progressing. I would like to offer her coaching/resources to help her with this. Does Nike have a recommendations that we can offer, even a small cost to the department? This employee sits in NA Nike Direct (Merchant –** ▮▮▮▮▮▮▮▮▮▮▮**. I figured I would start with you for resources. If you are not my contact, can you forward on my request.**

**Please, thanks**

Thanks,

**Tanya Morning**| **Employee Relations Director** |**Nike Inc.**

Mobile +1 503-459-2660| Office: +1 971-473-1684

Customer By Email (Tanya Morning) (08/19/2018 01:51 PM)

Confidential

**Thanks,**

**Tanya Morning| Employee Relations Director |Nike Inc.**

Mobile+1 503-459-2660| Office: +1 971-473-1684

**From:** Gillespie, Cory
**Sent:** Monday, July 30, 2018 9:25 PM
**To:** Morning, Tanya <Tanya.Morning@nike.com>
**Subject:** Re: Comp Review - ███████████

Tanya,

Circling back on this one. We have found a number of employees in Nike Direct Merchandising that are in the Entry Level Job Code. When we evaluated that work that is required of the role, we determined that the role should be at the intermediate level. We are in the process of making these changes, which will result in an increase for █████████ I'm hoping these will take effect by the 2nd pay check in August.

I am meeting with her and her manager, █████████ tomorrow to discuss. On another note, I have had a few conversations with █████████ (dotted line manager) about █████'s performance leading up to the year-end CFE and then after the CFE conversation. She is getting coaching in a few areas; most significantly the feedback has been around her communication style (making negative comments about processes, people, etc, using abrupt language), professionalism, trusting her teammates to do their work and embracing change. Please see the CFE attached.

As a side note, I have given feedback to the business because they made mention in the CFE that HR helped composed the document (not true, I advised on general approach, but didn't draft/edit the document, and made mention that if progress isn't made by 8.6, HR will engage and a performance program will be implemented. Again, coached on this language

Goldstein Decl. Ex. 8, Page 31 of 59

and asked them to revise the doc.

I will let you know how the meeting goes tomorrow. Let me know if you want to chat about this.

Cory

**From:** Tanya Morning <Tanya.Morning@nike.com>
**Date:** Saturday, July 21, 2018 at 9:00 AM
**To:** "Gillespie, Cory" <Cory.Gillespie@nike.com>, Jessica Stuckey <Jessica.Stuckey@nike.com>
**Cc:** "Tollefsen, Vanessa" <Vanessa.Tollefsen@nike.com>
**Subject:** RE: Comp Review - ███████████

Thanks All.

How do I find out if she is in the appropriate job code? If she is in the wrong job code, how do I fix it?

**Thanks,**

**Tanya Morning| Employee Relations Director |Nike Inc.**

Mobile +1 503-459-2660| Office: +1 971-473-1684

**From:** Gillespie, Cory
**Sent:** Thursday, July 12, 2018 4:19 PM
**To:** Stuckey, Jessica <Jessica.Stuckey@nike.com>; Morning, Tanya <Tanya.Morning@nike.com>
**Cc:** Tollefsen, Vanessa <Vanessa.Tollefsen@nike.com>
**Subject:** Re: Comp Review - ███████████

Confidential

Hi, Sounds good. I have a feeling that she is in the wrong job code.

---

**From:** Jessica Stuckey <Jessica.Stuckey@nike.com>
**Date:** Thursday, July 12, 2018 at 12:30 PM
**To:** Tanya Morning <Tanya.Morning@nike.com>, "Gillespie, Cory" <Cory.Gillespie@nike.com>
**Cc:** "Tollefsen, Vanessa" <Vanessa.Tollefsen@nike.com>
**Subject:** RE: Comp Review - ███████

Hi Tanya-

Per Cory's note, she was not identified as below minimum or needing a pay equity adjustment during CPM and she has been added to the list of employees who need further review from the center. The secondary review from the center is the most appropriate route as they can look at her relative to the pay equity model, whereas I'm just looking at same job code, which is not a pay equity review.

I would tell her on Friday that her pay is being reviewed and we will keep her updated.

For reference, her current base pay is $48,905 and she has a position to market of 86%.

The pay range for her role at WHQ is:

Thanks!

Confidential

NIKE_00016032

**From:** Morning, Tanya
**Sent:** Wednesday, July 11, 2018 3:59 PM
**To:** Stuckey, Jessica <Jessica.Stuckey@nike.com>
**Subject:** Comp Review - █████████

Hi Jessica,

Favor,

Can you do a quick review of ███████████████████.   I am working
a case where she is alleging that she is not paid fairly.   Can you look at her
and other in a similar job code?  By Monday?  Pretty Pretty, Please.

**Thanks,**

**Tanya Morning| Employee Relations Director |Nike Inc.**

Mobile +1 503-459-2660| Office: +1 971-473-1684

Customer By Email (Tanya Morning) (05/25/2018 09:57 AM)

**Thanks,**

**Tanya Morning| Employee Relations Director |Nike Inc.**

Mobile+1 503-459-2660| Office: +1 971-473-1684

Confidential

**From:** Morning, Tanya
**Sent:** Friday, May 25, 2018 9:56 AM
**To:** Matter of Respect <matterofrespect@Nike.com>
**Cc:** Daugherty, Alison (Alison.Daugherty@nike.com)
<Alison.Daugherty@nike.com>
**Subject:** RE: Seeking Professional Advice - 

Hi Brenda,

 reach out to me stating she has not heard anything from anyone.

Next week, can you let me know if the comp review has been completed.
Also, can someone reach out to her to provide an update.

Thanks,

**Tanya Morning| Employee Relations Director |Nike Inc.**

Mobile +1 503-459-2660| Office: +1 971-473-1684

**From:** Matter of Respect
**Sent:** Tuesday, April 24, 2018 7:02 PM
**To:** Morning, Tanya <Tanya.Morning@nike.com>
**Subject:** RE: Seeking Professional Advice

We have her logged...she contacted us.  I'll let Lauren and Alison know.

Brenda

Confidential

**From:** Morning, Tanya
**Sent:** Monday, April 23, 2018 7:19 PM
**To:** Matter of Respect <matterofrespect@Nike.com>
**Subject:** FW: Seeking Professional Advice

Hi Team,

Please advise if someone can reach out this week to ███████. If not, I am available and can do the initial intake.

**Thanks,**

**Tanya Morning| Employee Relations Director |Nike Inc.**

Mobile +1 503-459-2660| Office: +1 971-473-1684

**From:** Morning, Tanya
**Sent:** Monday, April 23, 2018 7:12 PM
**To:** ███████████████████████████████████
**Cc:** Diversity and Inclusion <Diversity.Inclusion@nike.com>
**Subject:** RE: Seeking Professional Advice

Hi 

Thank you for reaching out.   My name is Tanya Morning, Director of Employee Relations.   I want to acknowledge that the concerns you expressed have been received and forwarded to my attention for review. Nike takes the concerns you have raised seriously.  A member of the ER Team or I will reach out to you directly this week to further discuss.

If you have any additional questions/concerns, please feel free to reach out me.

We will be in touch.

**Thanks,**

Confidential

Tanya Morning| Employee Relations Director |Nike Inc.

Mobile +1 503-459-2660| Office  +1 971-473-1684

**From:** ▇▇▇▇▇▇▇▇▇
**Sent:** Friday, April 13, 2018 12:08 PM
**To:** Diversity and Inclusion <Diversity.Inclusion@nike.com>
**Subject:** Seeking Professional Advice


Hello Team!


I am reaching out to discuss equality in my pay vs my peers who have the same role, have been at the company less time than myself, and are getting paid more than me. I have brought this up to my manager, who has took it all the way up to the GM. However I keep being told that there is nothing that can be done at this time. As I am a very social and extroverted person, I know for a fact through direct verbal confirmation from my peers that I am getting paid at least $10k - $15 less than my equals. I have had 'Successful' on all of my CFE's, demonstrated leadership throughout the NA Campus, and within the Licensed Category. I have been in this role for 2 years, and while it has been acknowledged that my pay is too low, I am starting to feel hopeless in my current situation.


Prior to the re-org in September 2017, there were 16 people in role that were managing a business that now 6 of us manage. However 3 of those 6 roles are open and need to be filled, and with my counterpart on sabbatical, that means that the work of 16 people is now down to 2. We are the most SKU intensive category, yet due to the little revenue that we drive, we have continuously lost head count as the work load has tripled. Where we once were owning just one dimension (Digital or Stores), we are now managing all dimensions for our category in Nike Direct (Digital, NSO, NFS and Employee doors).  My cries for help have been acknowledged but yet acted upon. My constant communication around how buried I am and how I feel that our category is not set up for success, has again, been acknowledged but not acted upon.

Confidential

My work/life balance has been sincerely compromised. I am constantly burning the candle at both ends, and I am trapped in a role where I am not able to succeed and therefore makes it very difficult to move forward and into a different role/org/category/area. I do not feel valued as an employee or as a person based on my work load and pay. I have talked to all the right people and looped everyone in about this, but now I turn to your team for help. To be honest, I am struggling and have hit a wall.

I am reaching out to you and your team for help and guidance, as I do not know where I can turn and what my options are moving forward.

I look forward to hearing from you.

Best,



Customer By Email (Tanya Morning) (04/23/2018 07:17 PM)

Thanks,

**Tanya Morning| Employee Relations Director |Nike Inc.**

Mobile+1 503-459-2660| Office: +1 971-473-1684

**From:** Morning, Tanya

Confidential

**Sent:** Monday, April 23, 2018 7:12 PM

**To:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Cc:** Diversity and Inclusion <Diversity.Inclusion@nike.com>

**Subject:** RE: Seeking Professional Advice

Hi ▮▮▮▮▮▮

Thank you for reaching out.   My name is Tanya Morning, Director of Employee Relations.   I want to acknowledge that the concerns you expressed have been received and forwarded to my attention for review. Nike takes the concerns you have raised seriously.  A member of the ER Team or I will reach out to you directly this week to further discuss.

If you have any additional questions/concerns, please feel free to reach out me.

We will be in touch.

**Thanks,**

**Tanya Morning| Employee Relations Director |Nike Inc.**

Mobile +1 503-459-2660| Office: +1 971-473-1684

**From:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Sent:** Friday, April 13, 2018 12:08 PM

**To:** Diversity and Inclusion <Diversity.Inclusion@nike.com>

**Subject:** Seeking Professional Advice

Hello Team!

I am reaching out to discuss equality in my pay vs my peers who have the same role, have been at the company less time than myself, and are getting paid more than me. I have brought this up to my manager, who has took it all the way up to the GM. However I keep being told that there is nothing that can be done at this time. As I am a very social and extroverted person, I know for a fact through direct verbal confirmation from my peers that I am getting paid at least $10k - $15 less than my equals. I have had 'Successful' on all of my CFE's, demonstrated leadership throughout the NA Campus, and

Confidential

within the Licensed Category. I have been in this role for 2 years, and while it has been acknowledged that my pay is too low, I am starting to feel hopeless in my current situation.

Prior to the re-org in September 2017, there were 16 people in role that were managing a business that now 6 of us manage. However 3 of those 6 roles are open and need to be filled, and with my counterpart on sabbatical, that means that the work of 16 people is now down to 2. We are the most SKU intensive category, yet due to the little revenue that we drive, we have continuously lost head count as the work load has tripled. Where we once were owning just one dimension (Digital or Stores), we are now managing all dimensions for our category in Nike Direct (Digital, NSO, NFS and Employee doors).  My cries for help have been acknowledged but yet acted upon. My constant communication around how buried I am and how I feel that our category is not set up for success, has again, been acknowledged but not acted upon.

My work/life balance has been sincerely compromised. I am constantly burning the candle at both ends, and I am trapped in a role where I am not able to succeed and therefore makes it very difficult to move forward and into a different role/org/category/area. I do not feel valued as an employee or as a person based on my work load and pay. I have talked to all the right people and looped everyone in about this, but now I turn to your team for help. To be honest, I am struggling and have hit a wall.

I am reaching out to you and your team for help and guidance, as I do not know where I can turn and what my options are moving forward.

I look forward to hearing from you.

Best,



Confidential

Note By (Laura M.) (04/20/2018 04:59 PM)
Hi ER - at the request of Karen Mather, assigning this ticket to ER.  Please see attached email.  Tanya Morning has been given visibility to this ticket as well.

Please note the employee who sent in the email is Jessica Westerhof.

Thanks!



Confidential                                                                                           NIKE_00016040



1(213) 683-6120
feliciadavis@paulhastings.com

March 13, 2020

**VIA EMAIL**

Hon. Jolie A. Russo
United States Magistrate Judge
Mark O. Hatfield United States Courthouse
Room 1027
1000 S.W. Third Avenue
Portland, Oregon  97204
Gary_Magnuson@ord.uscourts.gov

Re:    *Cahill et al. v. Nike, Inc.*, Case No. 3:18-cv-01477-JR

Dear Judge Russo:

Defendant Nike, Inc. ("Nike") submits this response to Plaintiffs Kelly Cahill, Sara Johnston, Lindsay Elizabeth, and Heather Hender's (collectively, "Plaintiffs") March 4, 2020 letter seeking to compel certain discovery ("Pls.' Letter").

## I.    INTRODUCTION

Plaintiffs assert various claims related to pay, promotion, and job channeling under the Federal Equal Pay Act ("EPA"), Title VII of the Civil Rights Act of 1964, and related Oregon state law.  Plaintiffs seek to bring their claims on a collective and class action basis, but have not yet sought certification of any of their claims.

Plaintiffs have objected to (1) Nike's anonymization of its data, which contains highly-sensitive and confidential compensation, performance, and personnel records for thousands of individuals who have not consented to join this action, and many more who are outside of the putative class and collective altogether; and (2) Nike's redaction of complainant, subject, and third-party witness names (none of whom are named or opt-in Plaintiffs or the subject of Plaintiffs' FAC allegations) from sensitive internal complaint files.  Plaintiffs seek to compel disclosure of employee names and ID numbers associated with this discovery, but they have not articulated — much less adequately shown — a legitimate need for this information, particularly given the pre-certification stage of this lawsuit.  Indeed, individual identifying information has no bearing whatsoever on whether a class or collective can or should be certified; providing that information to Plaintiffs in connection with extensive confidential information, without the consent of those individuals, would violate their privacy rights.  As detailed more fully below, the Court should deny Plaintiffs' requests.

## II.    LEGAL STANDARD

As the Court observed during the parties' discovery hearing on October 30, 2019, in the pre-certification stage of a putative class action under Federal Rule of Civil Procedure 23, courts limit discovery to certification issues such as commonality, typicality, or the plaintiff's ability to adequately represent the class.  *See Makaneole v. SolarWorld Indus. Am., Inc.,* No. 3:14-CV-1528-PK, 2016 U.S. Dist. LEXIS 182243, at *52 (D. Or. Sept. 2, 2016).  In such case, it is Plaintiffs' burden to show that discovery is likely

Paul Hastings LLP  |  515 South Flower Street  |  Twenty-Fifth Floor  |  Los Angeles, CA 90071
t: 1.213.683.6000  |  www.paulhastings.com

Goldstein Decl. Ex. 8, Page 42 of 59



Hon. Jolie. A. Russo
March 13, 2020
Page 2

to produce substantiation of the class allegations. *Id.* at *52, 78-79 (denying motion to compel disclosure of names and other information of absent putative class members as premature, finding plaintiff was "not at this time entitled to the requested information"). Just recently, the Ninth Circuit vacated a district court's order compelling disclosure of class member names prior to certification, explaining that "seeking discovery of the name of a class member . . . is not relevant within the meaning of [Rule 26]" and that "contrary Supreme Court authority demonstrates the clear error in the district court's decision." *In re Williams-Sonoma, Inc.,* 947 F.3d 535, 539 (9th Cir. 2020) (citing and quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 350-53 (1978)).

Likewise, during the pre-certification stage of a collective action under the FLSA (including EPA claims), courts routinely deny disclosure of class member names (let alone names as applied to sensitive personal and financial data or internal complaint files). *See, e.g., Mitchell v. Acosta Sales, LLC,* No. CV 11-1796-GAF (OPx), 2011 U.S. Dist. LEXIS 165693, at *14-16 (C.D. Cal. Aug. 29, 2011) ("[T]he weight of authority in this Circuit and others, finds such discovery [of class member names is] premature unless conditional certification has been granted."); *Marquies v. Tri-County Metro. Transp.,* No. 3:13-cv-00475-PK, 2013 U.S. Dist. LEXIS 146484, at *49 (D. Or. Oct. 10, 2013) (observing "that a defendant is not required to provide [names of] potential plaintiffs until after the court has conditionally certified the collective action"); *Goudie v. Cable Commc'ns, Inc.,* No. 08-507-AC, 2008 U.S. Dist. LEXIS 91313, at *7 (D. Or. Nov. 7, 2008) (same).

Plaintiffs' requests[1] are well beyond the discovery that courts permit prior to certification of a class or collective action. Likewise, the Court should deny the motion here.

### III.    PLAINTIFFS ARE NOT ENTITLED TO PRE-CERTIFICATION DISCLOSURE OF EMPLOYEE NAMES OR ID NUMBERS LINKED TO HIGHLY-SENSITIVE PERSONAL AND FINANCIAL INFORMATION FOR 13,400 INDIVIDUALS

On December 30, 2019, Nike produced approximately 995,000 personnel records for nearly 13,400 current and former employees, spanning from August 2012 (three years prior to the statutory period for Plaintiffs' EPA claim) until September 2019 (the end of Nike's last fiscal year). These extensive records include highly-sensitive personal and financial information detailing those 13,400 employees' compensation (including merit increases, bonuses, and equity awards), as well as dates of birth, performance review ratings, promotions, and dates of leave, retirement, and termination, including whether the termination was involuntary.

Recognizing the pre-certification stage of this case, and to protect each individual's personal interest in maintaining the privacy of this information, Nike did not include employee names in the data. Further, recognizing that some of the named and opt-in plaintiffs are current Nike employees, and can use employee ID numbers to link this sensitive information to specific individuals, Nike replaced employee ID numbers with anonymized identifiers that are consistent across all data fields. To enable Plaintiffs' counsel to identify the records associated with the individuals they represent — and who thus have consented to the disclosure of this confidential information to counsel — Nike provided to Plaintiffs' counsel a list of the anonymous identification numbers associated with Plaintiffs Cahill, Elizabeth, Hender,

---

[1] Plaintiffs conflated the discussion of their two requests in their letter. (*See generally* Pls.' Letter.) Although the requests have certain issues in common (including the fact that they both relate to important privacy interests), they warrant individual consideration. For that reason, Nike discusses them separately herein.



Hon. Jolie. A. Russo
March 13, 2020
Page 3

and Johnston, as well as the eight opt-in Plaintiffs. As Nike has communicated to Plaintiffs' counsel, it will also produce the anonymous identification numbers for any individuals who consent to join this lawsuit in the future, or who provide written authorization for the disclosure of their information.

Plaintiffs argue that this is not enough. They seek wholesale disclosure of employee names and ID numbers linked to this highly-sensitive personal and financial information for 13,400 individuals, only a handful of whom have consented to disclosure of their personal information. (Pls.' Letter p. 1.) Plaintiffs' request is inappropriate given the case's current procedural posture. This is a putative class and collective action in the pre-certification stage of litigation. Plaintiffs have all of the relevant data they need to analyze whether there is statistical evidence to support their class and collective claims. Nike's use of anonymized identifiers instead of the individuals' names or employee ID numbers has no impact on their ability to do so. Plaintiffs do not and cannot refute this point, and any argument to the contrary only supports Nike's position that Plaintiffs' claims are inherently individualized and inappropriate for class or collective treatment.

Citing privacy reasons and the standards noted in Section II above, courts often decline to compel production of names linked to highly-sensitive data prior to certification. For example, in *Barrett v. Forest Labs., Inc.*, the plaintiffs sought disclosure of employee names as applied to the defendants' data in an EPA/Title VII class action. *Barrett v. Forest Labs., Inc.*, No. 12-cv-05224(RA) (MHD), 2015 U.S. Dist. LEXIS 51495, at *7-8 (S.D.N.Y. Apr. 8, 2015). Opposing the plaintiffs' request, the defendants noted that (1) the data encompassed approximately 5,000 past and present employees; (2) the data embodied in the production was quite sensitive, including employment terminations; and (3) plaintiffs had no need (compelling or otherwise) for employees' names, since they could perform their statistical analysis on the data without that information. *Id.* at * 5. The court agreed, finding that the plaintiffs' request for such sensitive information was premature:

> There remains the question of the names of the employees whose employment data is to be produced. As defendants suggest, some of the data to be revealed is potentially quite sensitive. Although plaintiffs will undoubted[ly] have need for disclosure of the names of collective members if their forthcoming certification motion is granted, they fail to make a persuasive case for immediate disclosure of all names at this stage.

*Id.* at *7-8. Likewise, in *Wellens v. Daiichi Sankyo, Inc.* (which Plaintiffs cite), the plaintiffs sought disclosure of employee names linked to defendants' anonymized production of demographic and employment data, which included salary, training, and promotion history, in an EPA/Title VII class action. *Wellens v. Daiichi Sankyo, Inc.*, No. C-13-00581-WHO (DMR), 2014 U.S. Dist. LEXIS 29794, at *11-12 (N.D. Cal. Mar. 5, 2014). The court declined to grant plaintiffs' request, in part because "pre-certification disclosure of this information raises additional privacy concerns." *Id.* Although the court noted that "anecdotal evidence . . . may substantiate Plaintiffs' arguments for class certification," it only did so in compelling disclosure of class member contact information, *not* for disclosure of names as applied to data (or, as Plaintiffs describe in their letter, "compelling production of employee identifying information"). *Id.* at *7.[2] Thus, Plaintiffs' reliance on *Wellens* is misplaced. (Pls.' Letter p. 3.)

---

[2] Nike also notes that the Northern District of California is an exception in compelling pre-certification disclosure of class contact information. *See, e.g., Syed v. M-I, L.L.C.*, No. 1:12-CV-1718 AWI MJS, 2014 U.S. Dist. LEXIS 165465, at *21 (E.D. Cal. Nov. 26, 2014) (declining to provide plaintiffs' counsel with class contact information, observing that "[s]ome courts have resisted providing contact information to



Hon. Jolie. A. Russo
March 13, 2020
Page 4

The reasoning in *Barrett* (and *Wellens*) is directly applicable here.  Not only is Plaintiffs' request premature, it would gravely invade the privacy of over 13,400 current and former Nike employees — only 0.09% of whom have consented to join this action, not to mention the thousands of whom are males outside of the proposed class and collective.  *See also Stallworth v. Brollini*, 288 F.R.D. 439, 444 (N.D. Cal. 2012) ("The United States Supreme Court has recognized a constitutional right to privacy, more specifically, a constitutional right to nondisclosure of one's personal information.") (citing *Whalen v. Roe*, 429 U.S. 589, 599 (1977)).  Plaintiffs have provided no reason to justify such an intrusion upon those individuals' privacy rights without their knowledge or consent — particularly at this stage of the litigation, as *Barrett*, *Wellens*, and other courts have acknowledged.  *See also Coleman v. Jenny Craig, Inc.*, No. 11-cv-1301-MMA (DHB), 2013 U.S. Dist. LEXIS 82815, at *34-35 (S.D. Cal. June 12, 2013) (precluding discovery of payroll records, finding putative class members have a heightened privacy interest in such sensitive financial documentation); *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 503, 512-13 (C.D. Cal. 2011) (denying plaintiff's requests for wage payment records, finding that the plaintiff's purported need for the information did not outweigh the employees' privacy interests and "Plaintiff's counsel can still obtain this information from any individual employee who chooses to participate in this litigation and voluntarily provides such information").  Of note, both *Barrett* and *Wellens* had protective orders in place at the time of plaintiffs' motions to compel, but they had no apparent impact on the courts' decisions.  *See Barrett*, No. 12-cv-05224 (RA) (MHD), Dkt. # 69; *Wellens*, No. C-13-00581-WHO (DMR), Dkt. # 49.

Plaintiffs cite no relevant case law to support their position, which underscores the weakness of their arguments.  (Pls.' Letter pp. 3-6.)  For example, *Cedano v. Thrifty Payless, Inc.* only compelled disclosure of class member names, contact information, dates of employment, and work locations — without any link to data — in a wage/hour class action.  *Cedano v. Thrifty Payless, Inc.*, No. CV-10-237-HZ, 2011 U.S. Dist. LEXIS 155956, at *20-24 (D. Or. May 9, 2011).  Likewise, Plaintiffs' reliance on *Amaraut v. Sprint/United Mgmt. Co.* is misplaced, as that case only compelled disclosure of class member contact information — again, without any link to data — in a wage/hour class and collective action.  *Amaraut v. Sprint/United Mgmt. Co.*, No. 3:19-cv-411-WQH-AHG, 2020 U.S. Dist. LEXIS 7558, at *14-15 (S.D. Cal. Jan. 14, 2020).  Additionally, although *Amaraut* was a hybrid action, the collective already had been conditionally certified at the time of plaintiffs' motion to compel (which the court noted in its discussion). *Id.* at *4, 32.  Plaintiffs similarly cannot rely on *Babbitt v. Albertson's, Inc.*, which only compelled disclosure of employee names, contact information, and social security numbers without any link to data.  *Babbitt v. Albertson's, Inc.*, No. C-92-1883 SBA (PJH), 1992 U.S. Dist. LEXIS 19091, at *15-17 (N.D. Cal. Dec. 1, 1992).[3]

In the same vein, Plaintiffs' citation to *EEOC v. Dolgencorp* comes up short.  (Pls.' Letter pp. 4-5.)  First, because the EEOC is exempt from Rule 23's certification requirements, the procedural posture of that case was equivalently post-certification.  *See EEOC v. Dolgencorp, LLC*, No. 13-cv-04307, 2015 U.S. Dist. LEXIS 58994 (N.D. Ill. May 5, 2015) ("*Dolgencorp*").  As one court has explained:

---

plaintiffs' counsel at this stage given privacy concerns implicit in information derived from personnel records. . .  However, that does not appear to be the practice of other courts, notably the Northern District [of California].") (citing cases) (quotation marks omitted).

[3] Plaintiffs also cite to *Chen-Oster* (Pls.' Letter p. 3.), but that case does not discuss production of employee names in connection with any data.  *See generally Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557 (S.D.N.Y. 2013).  Nike addresses *Chen-Oster* and its limited applicability in Section V, below.



Hon. Jolie. A. Russo
March 13, 2020
Page 5

In the case at bar, the EEOC has statutory authority to file lawsuits seeking class-wide relief, and is exempt from the certification requirements of FRCP 23. . . .  **Consequently, the posture of this case is the same as if class certification had already been granted and the parties are at the stage where Plaintiff's counsel needs to contact putative class members.**

*EEOC v. Lexus Serramonte,* No. C 05-0962 SBA (JL), 2006 U.S. Dist. LEXIS 58915, at *4-5 (N.D. Cal. Aug. 9, 2006) (internal citations omitted) (emphasis added).  The EEOC even noted in its briefing that the requested discovery went to the "merits of the claims and defenses" because it had already determined that discrimination occurred.  *Dolgencorp*, No. 13-cv-04307, Dkt. # 69 p.3 n.1.  Second, the court compelled disclosure of class member names and contact information because the EEOC demonstrated it was necessary "to link separate databases maintained by [the defendant] and two of its vendors."  *Dolgencorp*, 2015 U.S. Dist. LEXIS 58994, at *3; *see also Dolgencorp*, No. 13-cv-04307, Dkt. # 61 p. 4 ("In order to create a single database from these three databases, EEOC will need to cross reference this information.  The simplest method to do so would be to use name, social security numbers, and dates of birth.").  Here, in contrast, Nike's anonymization of the employees' data is consistently linked across all data fields; thus, Plaintiffs do not require employee names or ID numbers to link the data for analysis by their experts.  Finally, *Dolgencorp* is distinguishable because the Title VII claim was based on the alleged disparate impact of criminal background checks.  *Dolgencorp*, 2015 U.S. Dist. LEXIS 58994, at *1-2.  Although it is unclear what the databases at issue contained, *Dolgencorp* in no way stands for the proposition that Plaintiffs are entitled to pre-certification disclosure of employee names or ID numbers linked to highly-sensitive personal and financial information for 13,400 individuals.

Plaintiffs' reliance on *Bennett v. Simplexgrinnell LP* also is unavailing.  (Pls.' Letter pp. 3-5.)  In *Bennett,* the plaintiffs sought unredacted payroll records in a class action based on violations of California's prevailing wage rate law.  *Bennett v. Simplexgrinnell LP*, No. 4:11-cv-01854-PJH, 2012 U.S. Dist. LEXIS 197743, at *3-4 (N.D. Cal. Sept. 25, 2012); *see also Bennett*, Dkt. # 1.  Although the court granted the plaintiffs' request, its order was confined to unredacting class member names on paystubs (which, for hourly employees in that putative class, would be limited to information such as wage rates and hours worked in a given pay period).  *Id.*  In other words, *Bennett* is far narrower in its holding than the proposition for which Plaintiffs cite it, *i.e.*, to compel disclosure of 13,400 class and non-class members names linked to their merit increases, bonuses, equity awards, dates of birth, performance review ratings, promotions, dates of leave, retirement, and terminations.[4]  *Bennett* also should have little (if any) bearing here for the additional reason that it only involved approximately 487 class members.  *See Bennett*, No. 4:11-cv-01854-PJH, Dkt. # 243 p. 8.  Of course, Plaintiffs' counsel knows all of this because they were counsel of record in that case.

Plaintiffs have provided no justification for the serious invasion of privacy they are demanding, particularly prior to seeking certification of their claims.  The Court should follow the reasoning in *Barrett, Wellens,* as well as *Williams Sonoma* and other cases, and deny Plaintiffs' request.

---

[4] The same is true for *Santiago v. Rivka*, which only compelled disclosure of timekeeping and payroll records in a class/collective action based on violations of the FLSA and New York Labor Law.  *Santiago v. Rivka, Inc.*, No. 15cv9184, 2016 U.S. Dist. LEXIS 119503, at *2-3 (S.D.N.Y. May 26, 2016).



Hon. Jolie. A. Russo
March 13, 2020
Page 6

**IV.    PLAINTIFFS ARE NOT ENTITLED TO PRE-CERTIFICATION DISCLOSURE OF EMPLOYEE NAMES LINKED TO CONFIDENTIAL INTERNAL COMPLAINT FILES**

Plaintiffs next seek disclosure of employee names linked to sensitive internal complaint files.  (Pls.' Letter p. 1.)  Again, Plaintiffs have not shown (and cannot show) that such sensitive, individualized discovery is relevant or proportional at this stage of the case.

As background, in producing internal complaint files, Nike redacted the names of the complainant, the subject, and any third-party witnesses, as well as any discrete complaints that were not responsive to the Court's order.  If any of those individuals were the named or opt-in Plaintiffs, Nike did not redact their names.  Likewise, Nike also did not redact the names of Employees A, B, or C[5] from any complaints that were responsive to the Court's order.

Citing privacy reasons, courts have declined to compel production of names on internal complaint documents.  For example, in _EEOC v. ABM Indus._, the court declined to compel production of unredacted complaint files in a pattern-and-practice sexual harassment and hostile work environment class action.  _EEOC v. ABM Indus._, No. 1:07-cv-01428 LJO JLT, 2010 U.S. Dist. LEXIS 30914, at *16-17 (E.D. Cal. Mar. 31, 2010) ("_ABM_").  Specifically, the court rejected the EEOC's conclusory argument (like Plaintiffs' arguments here) that it needed unredacted complaints for its expert to conduct his statistical analysis:

> Rather than providing the Court any facts explaining _how_ it would assist the expert, [the expert] provides only bare conclusions.  For example, the Court is left to wonder how the name of the complainant would assist [the expert] in determining whether ABM's response to the complaint impacted ABM's general practices and procedures.  Likewise, the Court can only guess at how [the expert's] knowledge of the accused harasser's . . . name, would provide him a 'context' as to what happened during the act of sexual harassment alleged in a complaint.  In short, [the expert] fails completely to explain to the Court _how_ the redacted information would assist him and, instead, only _concludes_ that it would.

_Id._ (emphasis in original). Likewise, the court was unconvinced by the EEOC's argument that unredacted complaints would illuminate pattern-or-practice evidence:

> The Court has a similar dearth of information as to how revealing the identifying information about the non-party complainants and accused harassers involved in these six complaints, could possibly document ABM's policies or practices, let alone prove that these policies were unlawful.

_Id._ at *12.  The court's decision is notable because (1) as discussed above, the EEOC is exempt from Rule 23 requirements and so the court's decision was essentially post-certification; and (2) the parties had a protective order in place at the time of the EEOC's motion to compel, but it had no apparent impact on the court's decision.  _ABM_, No. 1:07-cv-01428 LJO JLT, Dkt. # 76; _see also Lexus Serramonte_, 2006 U.S. Dist. LEXIS 58915, at *4-5.  Similarly, although it is an individual discrimination case, the court's

---

[5] It is Nike's contention that current and former employees who have not consented to the release of their confidential information should be referred to through the use of pseudonyms in publicly-filed documents. These individuals have privacy interests which should be maintained.  Nike asked Plaintiffs' counsel to join Nike in protecting these important rights.  Counsel for Plaintiffs refused.



Hon. Jolie. A. Russo
March 13, 2020
Page 7

reasoning in *Scroggins v. Union Pac. R.R. Co.* is helpful.  *Scroggins v. Union Pac. R.R. Co.*, No. ED CV 18-1213-JGB (SPx), 2019 U.S. Dist. LEXIS 165973, at *21-22 (C.D. Cal. June 18, 2019).  In that case, the court declined to produce unredacted complaint files despite a protective order, explaining that:

> The court granted a protective order in this case on August 20, 2018, which goes a fair way toward addressing those privacy interests; however, the names would still be revealed to plaintiff's counsel and others involved in this litigation, possibly contrary to the complainants' wishes.

*Id.*  The same result as *ABM* and *Scroggins* should issue here.

Additionally, Plaintiffs have failed to demonstrate how the disclosure of employee names is warranted right now.[6]  For example, like the EEOC in *ABM*, Plaintiffs fail to explain how the names of non-party complainants and accused individuals could possibly produce evidence of Nike's policies or practices at issue in this case.  (Pls.' Letter p. 4.)  As to anecdotal evidence, Plaintiffs can obtain such evidence through the complaint files themselves; knowing who made the complaints or whom the complaints were about has no impact on this.  (*Id.*)  Of course, Plaintiffs also can obtain anecdotal evidence from any other individuals who choose to participate in this litigation and voluntarily provide such information.  *See, e.g., Nguyen,* 275 F.R.D. at 512-13 ("Plaintiff's counsel can still obtain this information from any individual employee who chooses to participate in this litigation and voluntarily provides such information").  In such instance, Nike will produce any complaints those individuals made, as it has done for the named and opt-in Plaintiffs.  In the meantime, however, employees who sought an internal remedy, participated in an investigation, or were the subject of an inquiry should have their privacy respected.

There has been significant publicity about this case, including on Plaintiffs' counsel's own website.[7]  If complainants want to contact Plaintiffs' counsel and/or join this lawsuit, they can do so.  But unless or until they do, their names associated with specific internal complaints they made (as well as the names of the subjects and any third-party witnesses) should remain confidential.

Plaintiffs also assert that they need the names of non-party complainants, subjects, and third-party witnesses in order to "corroborat[e] key facts" or "locate witnesses."  (Pls.' Letter p. 4.)  Thus, Plaintiffs have admitted that they intend to use employee names to contact class and collective members prior to any attempt at certification.  As noted in Section II above, courts deny disclosure of class member names (let alone names as applied to sensitive personal and financial data or internal complaint files) prior to certification.  *See In re Williams-Sonoma, Inc.,* 947 F.3d at 539 (vacating order compelling disclosure of class member names prior to certification); *Mitchell,* 2011 U.S. Dist. LEXIS 165693, at *14-16 ("[T]he weight of authority in [the Ninth] Circuit and others, finds such discovery [of class member names is] premature unless conditional certification has been granted."); *Margulies,* 2013 U.S. Dist. LEXIS 146484, at *49 (observing "that a defendant is not required to provide [names of] potential plaintiffs until after the court has conditionally certified the collective action"); *see also Barrett,* 2015 U.S. Dist. LEXIS 51495, at

---

[6] Nike's discussion here applies with equal force to Plaintiffs' request for employee names or ID numbers matched with its data, as discussed in Section III, above.

[7] https://gbdhlegal.com/cases/cahill-et-al-v-nike-inc/ ("Women who want to share their Nike stories can contact GBDH at 1-800-295-0231 or NikeEqualPay@gbdhlegal.com.") (last accessed March 9, 2020).



Hon. Jolie. A. Russo
March 13, 2020
Page 8

*7-8 (declining to compel disclosure of names prior to collective certification); *Syed*, 2014 U.S. Dist. LEXIS 165465, at *21 (declining to provide plaintiffs' counsel with class contact information).

This is in part due to concerns that such contact would interfere with the court's ability to supervise notice to absent class members before any class or collective is certified.  *See In re Williams-Sonoma, Inc.*, 947 F.3d at 539 (citing *Reed v. Bowen*, 849 F.2d 1307, 1313-14 (10th Cir. 1988) (the power of the court should not be used to solicit clients); *Douglas v. Talk Am., Inc.*, 266 F.R.D. 464, 467-68 (C.D. Cal. 2010) (same)); *see also Jenkins v. TJX Cos., Inc.*, No. CV 10-3753 (ADS) (WDW), 2011 U.S. Dist. LEXIS 44372, at *4 (E.D.N.Y. Apr. 25, 2011) (observing that "[c]ourts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification" (citation and quotation marks omitted).  This reasoning applies equally to hybrid class/collective actions.  *See Charles v. Nationwide Mut. Ins. Co., Inc.*, No. 09 CV 94 (ARR), 2010 U.S. Dist. LEXIS 143487, at *20 (E.D.N.Y. May 27, 2010) (analyzing discovery sought under both FLSA and Rule 23 standards and declining to compel names of putative class and collective members, reasoning in part that "such an extensive inquiry is unnecessary at this stage in the litigation, where plaintiff's burden to certify a class under the FLSA is 'fairly lenient.'").  Plaintiffs' stated purpose for their request further militates against disclosure.

Finally, Plaintiffs' case law fails to support their position.  (Pls.' Letter pp. 3-6.)  *Amaraut*, *Bennett*, *Cedano*, and *Dolgencorp* (and *Wellens*, for that matter) do not concern the production of internal complaint files.  They are inapposite for that reason, and all of the other reasons detailed above.  With respect to *Babbitt*, the language that Plaintiffs cite is from the court's discussion of whether the defendant should produce copies of EEOC and state administrative agency charges, not internal or "workplace" complaint files, as Plaintiffs represent.  (Pls.' Letter p. 6 n.11); *see also Babbitt*, 1992 U.S. Dist. LEXIS 19091, at *12-13 ("Defendant argues that disclosure of EEOC and DFEH claims and correspondence would have a chilling effect on the filing of claims and would violate the privacy rights of the individuals who filed them.").  The *Babbitt* court also did not discuss redactions.  *Id.*  Plaintiffs' citation to *Gibson v. JetBlue Airways Corp.* also is fruitless, as the court's discussion of privacy objections was in the context of whether the defendant should produce administrative charges or civil complaints of discrimination — not internal complaint files.  *Gibson v. JetBlue Airways Corp.*, No. 6:18-cv-1742-Orl-40TBS, 2019 U.S. Dist. LEXIS 119420, at *6-7 (M.D. Fla. July 18, 2019).  Additionally, the court in *Gibson* denied the plaintiffs' request and, in any event, did not discuss redactions.  *Id.*  And, Plaintiffs' quote from *Teamsters* about anecdotal evidence is from the court's discussion of individual testimony.  *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339 (1977) ("The individuals who testified about their personal experiences with the company brought the cold numbers convincingly to life.").  As to *Chen-Oster*, the court's decision is far more limited in its holding than the sweeping proposition for which Plaintiffs cite it.  *Chen-Oster*, 293 F.R.D. at 564.[8]

---

[8] Again, Nike notes that the putative class in *Chen-Oster* was limited to just two jobs and therefore much smaller than the putative class here.  *See Kassman v. KPMG LLP*, 416 F. Supp. 3d 252, 277 (S.D.N.Y. 2018) (discussing the limited applicability of *Chen-Oster* to a 10,000-person class action "cover[ing] a myriad of job descriptions . . . at levels of seniority ranging from Associate to Managing Director"); *Moussouris v. Microsoft Corp.*, No. C15-1483JLR, 2018 U.S. Dist. LEXIS 112792, at *57-58 (W.D. Wash. June 25, 2018) (distinguishing *Chen-Oster* from an 8,600-person class action that "covers a myriad of positions, ranging from software engineers to game designers to data scientists, with an even more



Hon. Jolie. A. Russo
March 13, 2020
Page 9


In sum, Plaintiffs' request implicates significant privacy interests and is unwarranted at this stage of the lawsuit.  On those bases, the Court should deny it.

**V.    <u>CONCLUSION</u>**

For all of the foregoing reasons, the Court should deny Plaintiffs' requests.

Respectfully submitted,

<u>/s/ Felicia A. Davis</u>

Daniel Prince (*pro hac vice*)
danielprince@paulhastings.com
Zach P. Hutton (*pro hac vice*)
zachhutton@paulhastings.com
Felicia A. Davis (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, Twenty-Fifth Floor
Los Angeles, California  90071-2228
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Amy Joseph Pedersen, OSB No. 853958
amy.joseph.pedersen@stoel.com
Kennon Scott, OSB No. 144280
kennon.scott@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon  97205
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

Attorneys for Defendant NIKE, INC.

---

varied set of responsibilities within those positions"), *aff'd*, 2019 U.S. App. LEXIS 38320 (9th Cir. Dec. 24, 2019).



Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

March 18, 2020

<u>**Via E-Mail Only**</u>
Gary_Magnuson@ord.uscourts.gov

Hon. Jolie A. Russo
Mark O. Hatfield United States Courthouse
Room 1027
1000 S.W. Third. Avenue
Portland, Oregon 97204

Re:  *Kelly Cahill, et al. v. Nike, Inc.*, Case No. 3:18-cv-01477-JR
Plaintiffs' Reply in Support of Request for an Order Compelling Nike to Produce
Employee Names and Employee ID Numbers

Dear Judge Russo:

In support of Plaintiffs' March 4, 2020 letter requesting a discovery order ("Plaintiffs' Letter"), Plaintiffs submit this Reply to Nike's March 13, 2020 response ("Nike's Response").[1]

### A.    Introduction

Courts in the Ninth Circuit regularly rule that Identifying Information[2] is relevant and discoverable to prior to Rule 23 class certification.  Given the relevance of Identifying Information, the caselaw demonstrates that it is discoverable provided there is a protective order to address any privacy concerns.  Here, Plaintiffs' Letter described the relevance of Identifying Information to developing evidence in support of class certification, including (a) statistical evidence where disparate data files rely on Identifying Information for connection and analysis; (b) evidence of top management's involvement in discrimination; and (c) anecdotal evidence in support of class certification.  Plaintiffs' Letter at 3-5.  Plaintiffs' Letter also demonstrates that the protective order, which Nike drafted and argued for, addresses any privacy concerns. *Id*. at 6.

Nike's response does not dispute the importance of linking data files in a verifiably accurate manner for statistical evidence, top management's involvement in discrimination where the employer asserts any discrimination was caused by lower-level managers exercising

---

[1] Due to office closures in response to COVID-19, Plaintiffs' Counsel were unable to apply their usual procedure for editing and preparing this submission.  Please excuse any inadvertent errors.
[2] Identifying Information for purposes of Plaintiffs' request for a discovery order means "names and employee ID numbers of employees and witnesses."

discretion, or anecdotal evidence each have for class certification. Instead, it contends (1) there is a strict demarcation between class and merits discovery in Title VII actions; (2) Identifying Information does not affect Plaintiffs' ability to develop evidence relevant for class certification; and (3) that the protective order is inadequate.

Nike's arguments fail because (1) the Supreme Court, in *Wal-Mart Stores v. Dukes,* debunked Nike's claim that there is a clear separation between class and merits discovery by requiring a "rigorous analysis" for class certification; notably a standard not required in the collective action cases cited by Nike; (2) Plaintiffs have made a significant showing of why, here, Identifying Information is important for developing evidence in support of class certification; and (3) Nike's privacy objection fails both because Nike's own proposed and adopted Protective Order adequately protects any privacy interests in light of the relevance of the information sought and because it has been waived (*see* Plaintiffs Letter at 7) – an argument unrebutted by Nike's response.

**B.    The Court Should Order Production of Identifying Information Because Plaintiffs Have Established Its Relevance and a Protective Order Has Been Entered.**

**1.    Before Making a Class Certification Determination in a Putative Title VII Action, the Record Needs to Be Fully Developed.**

Nike's arguments largely rely on an erroneous view that there is a clear demarcation between pre- and post-class certification discovery. But any such demarcation was dispelled in *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 351 (2011), when the Supreme Court directed a "rigorous analysis" for class certification, which, the Court said, will cause an inevitable overlap of certification and merits analyses in a pattern or practice discrimination case. Thus, "*Dukes* illustrates the need to develop the record fully before a class motion is considered." *Chen-Oster v. Goldman Sachs & Co.,* 285 F.R.D. 294, 298 (S.D.N.Y. 2012); *Ahmed v. HSBC Banks USA Nat'l Ass'n,* No. ED CV 15-2057 FMO (SPx), 2018 U.S. Dist. LEXIS 2286 at *7-9 (E.D. Cal. Jan. 5, 2018). (confirming that a separation of pre- and post-certification discovery was not feasible "because the distinction between class certification and merits discovery is murky at best and impossible at worst.").

As a result, Nike's reliance upon *Makaneole v. Sodoward Indus. Am. Inc.,* No. 3:14-CV-1528-PK, 2016 U.S. Dist. LEXIS 182243 (D. Ore. 2016) (Nike's Response at 1) is misplaced because it relies upon pre-*Wal-Mart* authority and does not address the enhanced factual requirements for satisfying the Rule 23 requirements that *Wal-Mart* imposed. *Id.,* at *51-52. Moreover, in *Makaneole,* there was no need for the requested discovery related to the identification of putative class members in a wage and hour action because the defendant "conceded" that " payroll calculations were applied uniformly … such that discovery in connection with absent class members is unnecessary …." *Id.* at *62.

No doubt that Nike's opposition to the Plaintiffs' motion for class certification will forcefully argue that *Wal-Mart* significantly raised the bar for plaintiffs to clear in order to

-3-                                        March 18, 2020

certify a class. Accordingly, Nike should not be permitted to argue that the Plaintiffs should be denied the discovery of evidence relevant to meeting the *Wal-Mart* standard.

### 2. Identifying Information Is Typically Relevant Prior to Class Certification.

As explained in the introduction above,  Plaintiffs' Letter set forth the relevance of Identifying Information to developing evidence in support of class certification, including (a) statistical evidence where disparate data files rely on Identifying Information for connection and analysis; (b) evidence of top management's involvement in discrimination; and (c) anecdotal evidence in support of class certification.  Courts in the Ninth Circuit regularly rule that Identifying Information is discoverable prior to class certification for similar reasons.  Plaintiffs' Letter at 3-5.

Nike's attempts to distinguish this authority are unavailing because it cannot dispute that these cases all concluded that employee names or Identifying Information were relevant to issues of Rule 23 class certification whether or not that information was linked to data.  *See, e.g., Cedano v. Thrifty Payless, Inc.*, No. CV-10-237-HZ, 2011 U.S. Dist. LEXIS 155956, at *23-24 (D. Or. May 9, 2011) (unable to dispute that the court found that employee names "may help to illuminate issues such as numerosity, common questions, typicality, and adequacy of representation and whether this suit should proceed as a class action under Fed. R. Civ. Proc. 23.").  Where the cases ordered Identifying Information linked to financial data, such as payroll data, Nike tries to minimize the importance of the information, but again cannot dispute the relevance of this information to class certification.  *See Bennett v. Simplexgrinnell LP*, No. 4:11-cv-01854-PJH, 2012 U.S. Dist. LEXIS 197743, at *4 (N.D. Cal. Sep. 25, 2012) (unable to dispute that the court ordered the names in payroll data unredacted which in turn linked to time records and other employment records because it was relevant to Rule 23 class certification).

When Nike does try to dispute the relevance of Identifying Information, its cited cases and related arguments miss the mark.  First, Nike's Response improperly conflates the relevance analyses related to certification under Rule 23 in Title VII cases, which require a rigorous analysis that overlaps with the merits, with conditional certification under Section 216(b) for FLSA or collective action cases, which apply a lenient standard akin to a plausibility inquiry. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1101 (9th Cir. 2018). As the Ninth Circuit explained, in a FLSA or collective action, a more "lenient" standard is applied because the "sole consequence of a successful motion for preliminary certification is the sending of court-approved written notice to workers who may wish to join the litigation as individuals." *Id.* (internal quotation and citation omitted).  To say the least, this "lenient standard" is vastly different than the "rigorous analysis" required for class certification.[3]

---

[3] Moreover, obtaining the names of possible female employees who might opt-in would not be relevant to Plaintiffs' stated need to obtain the names of the employees on the data files, male

-4-                                                    March 18, 2020

Unsurprisingly, many of Nike's cited cases are distinguishable for this very simple, but important distinction.  *See, e.g., Barrett v. Forest Labs., Inc.*, No. 12-cv-05224(RA) (MHD), 2015 U.S. Dist. LEXIS 51495, at *7-8 (S.D.N.Y. Apr. 8, 2015) (inapposite because the court found that plaintiffs had not made a showing that names in the data were important for conditional certification of the Equal Pay Act claim, as opposed to class certification under Rule 23 and where the employer there noted "plaintiffs are not required to make a statistical showing to obtain [conditional] certification").

Second, Nike cites several cases where the requesting party did not make a showing as to the relevance of requested Identifying Information or were not even class actions.  *See, e.g., EEOC v. ABM Indus.*, No. 1:07-cv-01428 LJO JLT, 2010 U.S. Dist. LEXIS 30914, at *16-17 (E.D. Cal. Mar. 31, 2010) (found, by the court in *Chen-Oster*, 293 at 565-66, to be distinguishable because ABM "was based on the plaintiffs' failure to demonstrate a need for that information and on the 'defendants [having already] produced to the EEOC the names and addresses of more than 4,000 current and former employees to allow contact with these individuals to determine whether they claimed that they had suffered sexual harassment.'"); *Scroggins v. Union Pac. R.R. Co.*, No. ED CV 18-1213-JGB (SPx), 2019 U.S. Dist. LEXIS 165973, at *21-22 (C.D. Cal. June 18, 2019) (in an individual action, employee sought complaints against an actor whose conduct was "not at the heart of plaintiff's claims," plaintiff had not shown a compelling need, and the court said plaintiff can submit a request if she believes she has a compelling need); *Stallworth v. Brollini*, 288 F.R.D. 439, 444 (N.D. Cal. 2012) (denied motion seeking plaintiffs' psychotherapist records because the records were irrelevant following plaintiffs' representation not to seek special damages or present testimony regarding emotional distress).   In contrast, Plaintiffs have made a showing of relevance here.

Third, Nike misstates several cases it cites.  For example, Nike implies that the Ninth Circuit recently held that discovery of class member names is "not relevant" and its production is "clear error."  Response at 2 (citing *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020)).  That is incorrect.  In *Williams-Sonoma*, after the district court found that the sole named plaintiff could not bring a class action alleging misrepresentations concerning thread count because he was a resident of Kentucky and Kentucky law prohibited class actions, plaintiff requested class member names "for the sole purpose of aiding [] counsel's attempt to find a [class representative in] California." 947 F.3d at 537-38.  The Court found that seeking "discovery to find a named plaintiff before a class action is certified is not within the scope of Rule 26(b)(1)." *Id.* at 540.  Here, by contrast, Plaintiffs seek Identifying Information because it supports evidence critical to the class certification decision.  Plaintiffs' Letter at 3-5; *see Rojas v. Bosch Solar Energy Corp.*, No. CV-10-237-HZ, 2020 U.S. Dist LEXIS 29163, at *6-7 (N.D. Cal. Feb. 20, 2020) (distinguishing *Williams-Sonoma* and affirming Magistrate Judge's Order for production of putative class member names and contact information).

_____

and female, and the names on the complaints, male and female, including those who are in executive or managerial positions.

-5-                                                     March 18, 2020

Nike also misstates the relevant holding in *Wellens v. Daiichi Sankyo, Inc.*, No. C-13-00581-WHO (DMR), 2014 U.S. Dist. LEXIS 29794, at *11-12 (N.D. Cal. Mar. 5, 2014).  Nike's Response omits the critical fact that the Court did not make a determination on whether privacy concerns justified the employer's withholding of names from the data.  This determination was unnecessary because the "parties have not fully briefed the court on whether pre-certification disclosure of this information raises additional privacy concerns, and if so, whether or not they should be subject to further protections," and "[a]t the hearing, the parties agreed to further meet and confer about the issue and submit a fully briefed joint discovery letter if they are unable to resolve the dispute without court intervention." *Id.*

Similarly, Nike's claim that "the Northern District of California is an exception in compelling pre-certification disclosure of class contact information" also incorrect.  Nike's Response at 3 n.2 (citing *Syed v. M-I, L.L.C.*, No. 1:12-CV-1718 AWI MJS, 2014 U.S. Dist. LEXIS 165465, at *21 (E.D. Cal. Nov. 26, 2014)).  *Syed* actually states that the production of contact information is the practice "of other courts, notably the Northern District." *Id.* at *21.  Moreover, many courts outside of the Northern District regularly find Identifying Information relevant prior to certification (as cited by Plaintiffs' Letter).  *See e.g., Cedano,* 2011 U.S. Dist. LEXIS 155956, at *20, 23-24.[4]

> **3.  Identifying Information in Data and Workplace Complaints Is Discoverable in a Title VII Action Where Plaintiffs Make a Sufficient Showing of Relevance and there Is a Protective Order.**

Plaintiffs' Letter set forth caselaw showing that Identifying Information is discoverable where Plaintiffs have shown its relevance and there is a protective order.  Plaintiffs' Letter at 4-6.  In response, Nike either fails to distinguish the cases cited in Plaintiffs Letter or provide a basis to dispute Plaintiffs' relevance showing.

Nike contends that *Chen-Oster v. Goldman Sachs & Co.,* 293 F.R.D. 557 (S.D.N.Y. 2012) "is far more limited in its holding than the sweeping proposing for which Plaintiffs cite it." Nike's Response at 8.  While conclusory, Nike's statement is also incorrect because Plaintiffs' Letter accurately explains that *Chen-Oster*, in fact, compelled production of workplace complaint documents without redactions of names prior to certification in a class disparate treatment action because "names are required … for the plaintiffs to contact potential witnesses

---

[4] *See also e.g., Coleman v. Jenny Craig, Inc.*, No. 11-cv-1301-MMA (DHB), 2013 U.S. Dist. LEXIS 82815, at *23 (S.D. Cal. June 12, 2013) ("Concerning the contact information of the putative class members, "[a]s a general rule, before class certification has taken place, all parties are entitled to equal access to persons who potentially have an interest in or relevant knowledge of the subject of the action, but who are not yet parties," and "discovery of the contact information of putative class members is routinely allowed.") (collecting cases).

and develop anecdotal evidence of the alleged gender discrimination," and the "protective order sufficiently addresses Goldman Sachs' privacy concerns" over names in workplace complaints.[5]

Nike's attempts to distinguish *EEOC v. DolGenCorp, LLC*, No. 13-cv-04307, 2015 U.S. Dist. LEXIS 58994 (N.D. Ill. May 5, 2015), are likewise ineffective. First, whether the EEOC is required to meet the requirements of Rule 23 is of no moment post-*Dukes* because Rule 23 certification inevitably involves some overlap with the merits. Second, the requested Identifying Information directly impacts statistical analyses presented at class certification because Plaintiffs must be able to link data files in a verifiably accurate way that will not create unnecessary satellite discovery disputes. Notably, Nike's conclusory assertion that "Plaintiffs do not require employee names or ID numbers to link the data for analysis by their experts" because "Nike's anonymization of the employees' data is consistently linked across all data fields . . .." (Nike's Response at 5) was directly rejected in *DolGenCorp* because such self-serving claims were insufficient to show "whether this linking could be done in a *verifiably* accurate manner" and otherwise "would needlessly engender additional discovery disputes and frustrate resolution of this case." *EEOC v. DolGenCorp, LLC*, No. 13-cv-04307, 2015 U.S. Dist. LEXIS 80140, at *4-5 n. 1 (N.D. Ill. June 19, 2015) (rejecting this argument upon defendant's motion to reconsider) (emphasis in original and internal quotations omitted).

Similarly, Nike states, without support, that "Plaintiffs can obtain such [anecdotal] evidence through the complaint files themselves; knowing who made the complaints or whom the complaints were about has no impact on this." Nike's Response at 7. This assertion does not withstand scrutiny for several reasons.

First, this sweeping statement fails to respond to any of the examples Plaintiffs' Letter provided concerning the development of anecdotal evidence, including the example concerning top management's decision to promote Tawiah to top management despite top management's awareness of workplace complaints against Tawiah. Plaintiffs' Letter at 3-4.[6]

---

[5] Contrary to Nike's contentions, this action is similar to *Chen-Oster*, where the Court later certified a Title VII disparate impact and disparate treatment class, and different than two recent putative class actions alleging sex discrimination where certification was denied. Both *Kassman v. KPMG, LLC,* and *Moussouris v. Microsoft Corp.*, are distinguishable because they both (1) involved challenges of the discretion of lower-level, not top level, managers; (2) sought to represent broader nationwide classes; (3) there was no "common mode" of exercising discretion. *See Kassman*, 416 F. Supp. 3d 252, 258, 276-81 (S.D.N.Y. 2018); *Moussouris*, No. C15-1483JLR, 2018 U.S. Dist. LEXIS 112792, at *54-64, *68 (W.D. Wash. June 25, 2018) . In contrast, Plaintiffs allege (1) top management involvement in pay and promotion decisions in policy; (2) target a single location with Nike HQ; and (3) uniform policies and practices that cabin the discretion afforded to managers making pay and promotion decisions.

[6] Nor has Nike produced any discovery relating to Tawiah's promotion to Vice-President or otherwise that contradicts these allegations.

-7-                                                              March 18, 2020

Second, the redaction of Identifying Information could prevent Plaintiffs from understanding basic information about the complaints, including identifying whether complaints from different class members are related to the same actor, if the same class member lodged more than one complaint against either the same actor or different actors, or whether Nike's Human Resources department treated similar allegations of sex discrimination against the same actor consistently.

Third, Nike's argument requires Plaintiffs and the Court to assume that Nike maintains accurate complaint files, complaints were appropriately investigated, and Nike produces all relevant complaint documents.  Such conclusory and unsupported assumptions from an interested party are generally neither relied upon by an opposing party nor a court.  See *Babbitt v. Albertson's, Inc.*, No. C-92-1883 SBA (PJH), 1992 U.S. Dist. LEXIS 19091, at *17 (N.D. Cal. Nov. 30, 1992) ("Defendant has access to this [identifying] information, and plaintiff should have the same access.").  In this action, it is especially inappropriate to rely upon such self-serving assumptions where, in a May 2018 speech, Nike's CEO stated "[w]e continue to review our HR processes from top to bottom so we can take our learnings from this experience…to improve our sensing function in the organization…to improve processes that underserved us in recent years…and to restore trust in places where it has eroded."  NIKE_00001966 (transcript of CEO's speech).[7]

In addition, Nike has failed to produce many highly relevant documents concerning workplace complaints.  For example, one prominent omission from Nike's production is a complete production of documents related to the "survey of female employees detailing sex discrimination at Nike" – commonly referred to as the "Starfish Survey" – that was presented to Nike's CEO around March 5, 2018.  *See* 1st Am. Compl. ¶ 68,  ECF No. 42 (citations omitted).  Approximately ten days after receiving the Starfish Survey, Nike's CEO sent an email to Nike employees acknowledging receiving "reports of behavior … that do not reflect our core values …," Nike has heard "from strong and courageous employees," and Nike is "still talking to team members to better understand what we need to change."  NIKE_00002237-38.  In a May 2018 speech, the CEO stated that "the main set of complaints that gave rise to this process have been acted on … and employee exits from this *larger investigation* will be behind us after this next week."  NIKE_00001965 (emphasis in orginal).  In this same speech, the CEO admitted that Nike needed to conduct "compensation reviews" and change its systems.  NIKE_00001966.

Nor has Nike produced any documents concerning the "employee exits from this larger investigation" or Nike acting on "the main set of complaints."  Such discovery is critical given that the "employee exits" included many in top management, such as Trevor Edwards and Daniel

---

[7] Likewise, in its Sustainable Business Report FY16/17, Nike stated: "In early 2018, we became aware of reports of behavior within our organization that did not reflect our core values of inclusivity, respect, and empowerment. We took swift action…Specifically, we announced an overall review of our HR systems and practices, while elevating our confidential complaint process."  NIKE_00002051.

-8-                                                                    March 18, 2020

Tawiah.  Yet, even in the limited set of documents that Nike produced, Nike's redactions still preclude Plaintiffs from knowing about top management's awareness of and decisions about workplace complaints.

### C.  Nike Fails to Carry its Burden of Showing that Its Privacy Objections Are Valid and Nike's 's Privacy Objections Are Waived.

Courts routinely rule that already-entered protective orders are sufficient to address any privacy concerns raised by the production of Identifying Information.  *See* Plaintiffs' Letter at 6-7.  The rationale is simple – protective orders limit the disclosure of such information to the parties and the court; thereby minimizing any concerns about the invasion of privacy rights.  When balanced against such information's importance and relevance to class certification and merits, most courts order production of Identifying Information.  *Id.*

In addition, Nike's privacy objections fail because Nike does not dispute that its written objections to the Applicable RFPs[8] were insufficient and Nike has otherwise not carried its burden to state its objection with specificity as required by Rule 34.  *See* Plaintiffs' Letter at 7 & Ex. A.  For example, Nike does not state that its privacy objection concerns the linking of Identifying Information to employment data or complaint files or even identify the privacy law it claims to invoke in its written objections, as well as it its response.[9]

Nike thus waived the privacy objections asserted in its response.  *See Amaraut v. Sprint/United Mgmt. Co.*, No. 3:19-cv-411-WQHAHG, 2020 U.S. Dist. LEXIS 7558, at *14-15 (S.D. Cal. Jan. 14, 2020) (Overruling objection that class member phone numbers should not be produced because "when a party raises an objection to a [discovery] request [] for the first time in an opposition to a motion to compel, that objection is waived, unless good cause exists to excuse the objection's untimeliness.") (citations omitted).[10]

### D.  Conclusion

Based on the foregoing, the Court should grant Plaintiffs' requested motion to compel.

---

[8] RFPs 1, 27, 29, and 45-46.  *See* Exh. A to Plaintiffs' Letter.

[9] Indeed, the cases Nike cites almost all concern privacy rights under California law.  *See e.g., Scroggins*, 2019 U.S. Dist. LEXIS 165973, at *20 (applying California right to privacy law).  Neither Nike's written objections nor its Response identifies an Oregon statute or other law for its privacy objections.

[10] Even after Plaintiffs' request for a motion to compel, Nike has still not provided a privilege or redaction log identifying what it redacted.  Indeed, Nike didn't even identify what information was redacted from the one document Plaintiffs attached as Exhibit A to their letter.  *See* Nike's Response at 6 (the most explanation that Nike has ever provided is, "As background, in producing internal complaint files, Nike redacted the names of the complainant, the subject, and any third-party witnesses, as well as any discrete complaints that were not responsive to the Court's order.").

Goldstein Decl. Ex. 8, Page 58 of 59

-9-                                                    March 18, 2020


Respectfully submitted,

*/s/ Laura L. Ho*
Laura L. Ho


Laura Salerno Owens, OSB #076230
David B. Markowitz, OSB #742046
Harry B. Wilson, OSB #077214
Anna M. Joyce, OSB #013112
Chad A. Naso, OSB #150310
chadnaso@markowitzherbold.com
MARKOWITZ HERBOLD PC
Tel.: (503) 295-3085

Laura L. Ho (admitted pro hac vice)
Barry Goldstein, Of Counsel (admitted pro hac vice)
James Kan (admitted pro hac vice)
Byron Goldstein (admitted pro hac vice)
Katharine L. Fisher (admitted pro hac vice)
Mengfei Sun (admitted pro hac vice)
msun@gbdhlegal.com
Tel.: (510) 763-9800

Craig Ackerman (SBN 229832)
ACKERMANN & TILAJEF PC
Tel: (310) 277-0614

India Lin Bodien (SBN 44898)
INDIA LIN BODIEN LAW
Tel: (253) 503-1672


Attorneys for Plaintiffs


cc: Daniel Prince (danielprince@paulhastings.com)
    Zach P. Hutton (zachhutton@paulhastings.com)
    Felicia A. Davis (feliciadavis@paulhastings.com)
    Amy Joseph Pedersen (amy.joseph.pedersen@stoel.com)
    Kennon Scott (kennon.scott@stoel.com)