Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

May 7, 2020

Hon. Jolie A. Russo
Mark O. Hatfield United States Courthouse
Room 1027
1000 S.W. Third. Avenue
Portland, Oregon 97204

Re:     *Kelly Cahill, et al. v. Nike, Inc.*, Case No. 3:18-cv-01477-JR
        Enforcement of the March 23, 2020 Discovery Order (ECF No. 99)

Dear Judge Russo:

Plaintiffs request assistance enforcing this Court's March 23, 2020 Order (Ex. A, attached hereto, ECF No. 99, "Order"). Nike is violating the Order because the Order directs Nike to produce all "names and employee ID numbers of employees and witnesses in already produced . . . workplace complaint documents" and Nike refuses to produce all such names and ID numbers.[1] The Order's ruling also states: "Plaintiff's motion to compel (as stated in their letter to the Court dated March 4, 2020) is granted." *Id*. at 8.

A month after the Order, on April 24, 2020, Nike made its revised production of documents concerning workplace complaints. Nike states it removed redactions of the names of complainants and witnesses.[2] Nike admits, though, that it intentionally kept redacted the names and ID numbers of the subjects of workplace complaints ("subjects"). *See e.g.,* Ex. B, attached hereto (examples of already produced documents concerning workplace complaints that still have redactions).[3] Plaintiffs have made several attempts to get Nike to comply with the Order, but Nike has repeatedly confirmed that it will not remove the redactions of subjects' names.

_____

[1] On April 9, 2020, Nike filed Objections to the part of the Order regarding employment data but not to the part of the Order regarding documents concerning workplace complaints. ECF No. 101. Plaintiffs filed their Opposition to Nike's Objections on April 20, 2020 (ECF Nos. 102-3), and Nike filed a Reply in Support of its Objections on May 4, 2020 (ECF No. 104).
[2] Nike removed redactions of names of at least some non-subject complainants and witnesses, but Plaintiffs cannot confirm whether Nike has removed all such redactions because Nike did not provide a redaction log for these documents.
[3] Exhibit B contains documents Nike marked as "Confidential" and as "Highly Confidential – Attorneys' Eyes Only," but, pursuant to paragraphs 7(e) and 8 of the Protective Order (ECF No.

300 Lakeside Drive, Suite 1000, Oakland, CA 94612-3534     Tel 510. 763. 9800     Fax 510. 835. 1417     www.gbdhlegal.com

782532.5

Goldstein Decl. Ex. 9, Page 1 of 37

Nike's refusal to identify the subjects of the complaints violates the Court's clear Order. Subjects are both employees and witnesses, and the Order directs Nike to "produce names and employee ID numbers of employees and witnesses in already produced . . . workplace complaint documents."  Order at 8.

Indeed, Nike fought against and lost this exact issue already.  In its opposition to Plaintiffs' March 4 letter to this Court, Nike recognized that Plaintiffs sought subjects' names: "Plaintiffs also assert that they need the names of non-party complainants, subjects, and third-party witnesses."  Nike's March 13, 2020 Letter to the Court at 7.  Nike's opposition letter argued against disclosing subjects' names.  *E.g., id.* (arguing that "Plaintiffs can obtain [anecdotal] evidence through the complaint files themselves; knowing … whom the complaints were about has no impact on this.").  After considering the letters and hearing argument, the Court ruled: "Plaintiff's motion to compel (as stated in their letter to the Court dated March 4, 2020) is *granted*."  Order at 8 (emphasis added).

In addition, Nike has not removed any redactions of any employee or witness names in several already produced documents concerning workplace complaints.  Plaintiffs provided Nike with examples of these documents, including Bates Numbers, on April 25 and May 1, 2020.  Although Plaintiffs repeatedly asked Nike to re-produce these documents without redactions, Nike has not said when or if it will remove redactions and re-produce these documents.  Moreover, Nike is more than thirty days past the deadline established by Local Rule 37-2, which states, "[u]nless otherwise directed by the Court, the party against whom an order to compel has been entered must comply within 14 days after the date of entry of the order."

Plaintiffs thus request an order: (a) finding Nike violated the Court's March 23, 2020 Order, and (b) directing Nike to complete its production in compliance with the Court's March 23, 2020 Order (ECF No. 99) within one week of entry of the order requested herein.

---

82), the Court and its staff can review the documents.  However, if the Court intends to put this document on the docket, please seal Exhibit B pursuant to paragraph 4 of the Protective Order.

Respectfully submitted,

*/s/ Byron Goldstein*
Byron Goldstein


Laura Salerno Owens, OSB #076230
David B. Markowitz, OSB #742046
Harry B. Wilson, OSB #077214
Anna M. Joyce, OSB #013112
Chad A. Naso, OSB #150310
chadnaso@markowitzherbold.com
MARKOWITZ HERBOLD PC
Tel.: (503) 295-3085

Laura L. Ho (admitted pro hac vice)
Barry Goldstein, Of Counsel (admitted pro hac vice)
James Kan (admitted pro hac vice)
Byron Goldstein (admitted pro hac vice)
Katharine L. Fisher (admitted pro hac vice)
Mengfei Sun (admitted pro hac vice)
msun@gbdhlegal.com
Tel.: (510) 763-9800

Craig Ackerman (SBN 229832)
ACKERMANN & TILAJEF PC
Tel: (310) 277-0614

India Lin Bodien (SBN 44898)
INDIA LIN BODIEN LAW
Tel: (253) 503-1672


Attorneys for Plaintiffs


cc: Daniel Prince (danielprince@paulhastings.com)
    Zach P. Hutton (zachhutton@paulhastings.com)
    Felicia A. Davis (feliciadavis@paulhastings.com)
    Amy Joseph Pedersen (amy.joseph.pedersen@stoel.com)
    Kennon Scott (kennon.scott@stoel.com)

782532.5

Goldstein Decl. Ex. 9, Page 3 of 37

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

KELLY CAHILL, SARAH JOHNSTON,                                      3:18-cv-1477-JR
LINDSAY ELIZABETH, and HEATHER
HENDER, individually and on behalf of others
similarly situated,                                                                    ORDER

                                        Plaintiffs,

                v.

 NIKE, INC., an Oregon Corporation,

                                        Defendant.

RUSSO, Magistrate Judge:

        Named plaintiffs Kelly Cahill, Sara Johnston, Lindsay Elizabeth, and Heather Hender

bring this putative class and collective action alleging that defendant Nike systematically

discriminates against them and other similarly situated women at Nike headquarters regarding

salary and promotions.   Several additional plaintiffs have filed consents to join this action.   The

Court has previously denied Nike's motion to dismiss most of the class and collective claims.[1]

_____

1 Nike did not seek dismissal of the class claims regarding the disparate impact claim.

Goldstein Decl. Ex. 9, Page 5 of 37

On March 4, 2020, plaintiffs submitted a letter to the court seeking an order to compel Nike to provide identifying information for employees in already produced employment data and workplace complaint documents.   On March 19, 2020, the Court heard argument on the request and for the reasons stated below, the request is granted.

At this stage, the Court has not certified a class action for any claims.

The proposed class includes:

All female current and former Nike employees at Nike Headquarters in Oregon, who were employed by Nike at any time from three years prior to opting-in through the resolution of this action, in a salaried, corporate position that was or is a lower-level position than Vice-President.

First Amended Complaint (FAC) (ECF #42) at ¶ 165.

Plaintiffs allege defendant has engaged in systemic sex discrimination against the collective/class members by paying them less than male employees with substantially equal job duties requiring substantially similar skill, effort, and responsibility performed under similar working conditions.   Id. at ¶ 167.   Plaintiffs further allege defendant has contributed to, and perpetuated sex-based pay disparities through common policies, patterns, or practices, including but not limited to those relating to starting salary and "band level," annual ratings, promotions, performance management policies or practices, centralized decision-making, and a work environment hostile to women.   Id. at ¶ 168.

The case is still in the pre-certification discovery phase.

Whether or not discovery will be permitted in a [class action] lies within the sound discretion of the trial court. See Berland v. Mack, 48 F.R.D, 121, 126 (S. D, N.Y. 1969). In determining whether to grant discovery [in connection with determining whether class-treatment is appropriate in a putative class action,] the court must consider its need, the time required, and the probability of discovery

Goldstein Decl. Ex. 9, Page 6 of 37

> resolving any factual issue necessary for the determination. The propriety of a class action cannot be determined in some cases without discovery, as, for example, where discovery is necessary to determine the existence of a class or set of subclasses. To deny discovery in a case of that nature would be an abuse of discretion. Where the necessary factual issues may be resolved without discovery, it is not required.

Kamm v. California City Development Co., 509 F.2d 205, 209-210 (9th Cir. 1975) (footnote omitted).

Where discovery is necessary for the class-treatment determination, it is an abuse of discretion to make the determination without permitting such discovery. See id. at 210. However, while "in some cases a district court should allow discovery to aid the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations. Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion." Mantolete v. Bolger, 767 F.2d 1416, 1424 (9th Cir. 1985), citing Doninger v. Pacific Northwest Bell, Inc., 564 F.2d 1304, 1313 (9th Cir. 1977).

"At the pre-class certification stage, discovery in a putative class action is generally limited to certification issues: e.g., the number of class members, the existence of common questions, the typicality of claims, and the representative's ability to represent the class." Dysthe v. Basic Research, L.L.C., 273 F.R.D. 625 (C.D. Cal. 2011), citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 359 (1978).

In October, the Court addressed plaintiffs' request to compel (1) documents related to

Goldstein Decl. Ex. 9, Page 7 of 37

Nike's public statements about sex discrimination allegations raised in this action; (2) complaints

of sex discrimination made by putative class members to Nike and Nike's responses, if any; (3)

three former high-level Nike executives who plaintiffs have specifically alleged contributed to or

participated in sex discrimination; and (4) applicable insurance policies.   The Court ordered as

follows:

> After considering the parties' comprehensive briefing and oral argument on October 30, 2019, plaintiffs' September 27, 2019 letter request to the Court to compel precertification discovery is Granted in Part and Denied in Part as follows: 1) With respect to Nike's Public Statements on Discrimination (RFPs 39-43 and 47), Nike shall produce the statements themselves and the motion is denied with respect to any further documentation regarding the public statements. However, to the extent not already produced, Nike shall produce any uniform policies it maintained during the relevant time periods regarding hiring, firing, pay, promotions, and compensation systems; 2) With respect to documents concerning sex discrimination, harassment, and hostile work environment complaints (RFPs 27, 29, and 45-46), the motion is granted regarding any such complaints made by any named plaintiff or those putative plaintiffs who have already consented to join and any other complaints to the extent such complaints involve compensation, promotion, or performance reviews and specific complaints that male colleagues received favorable treatment in those areas for the same work; 3) With respect to the personnel records of former Nike executives Trevor Edwards, Daniel Tawiah, and David Ayre (RFPs 34-38), the motion is granted to the extent the records contain complaints of sexual harassment/discrimination linked to policies of pay/promotions and job duties either by the named executives themselves or regarding actions these executives may have taken to condone pay/promotion and job duty discrimination decisions of lower level managers; and 4) With respect to insurance policies (RFP 51) the motion is denied. All production pursuant to this motion is subject to the Protective Order (82) entered in this case on June 17, 2019, as relevant and necessary.

Order (ECF #89).

In producing documents responsive to the Court's order, Nike removed or redacted

identifying information from employment data related to workplace complaints, etc.  Plaintiffs

move for an order compelling Nike to produce the Identifying Information.  Nike objects

alleging the anonymization of its data is appropriate because (1) the data contains highly-sensitive and confidential compensation, performance, and personnel records for thousands of individuals who have not consented to join this action, and many more who are outside of the putative class and collective altogether; and (2) Nike's redaction of complainant, subject, and third-party witness names (none of whom are named or opt-in plaintiffs or the subject of plaintiffs' FAC allegations) are from sensitive internal complaint files.   It appears that Nike wants to prevent plaintiffs from accessing a link between employee names/contact information and the data already provided rather than objecting to potential class member employees identifying information.

Nike states it has produced approximately 995,000 personnel records for nearly 13,400 current and former employees which include highly-sensitive personal and financial information detailing those 13,400 employees' compensation (including merit increases, bonuses, and equity awards), as well as dates of birth, performance review ratings, promotions, and dates of leave, retirement, and termination, including whether the termination was involuntary.   Nike asserts that given the Court has yet to conditionally certify a class, it should not be required to provide identifying information including names and employee ID numbers regarding the employees (who have not opted in) to protect their privacy interests.

Nike contends that plaintiffs have the data they need to analyze whether there is statistical evidence to support their class and collective claims, and the use of anonymized identifiers has no impact on their ability to analyze that data.   Plaintiffs assert they need the identifying information to help develop anecdotal evidence not captured in the raw data itself.

Goldstein Decl. Ex. 9, Page 9 of 37

Nike argues the relevant case law might allow compelled class member names, contact information, dates of employment, and work locations, but does not allow a link between those names to the complaints provided.   However, it does not appear that issue was discussed in most of the cases cited by Nike.[2]   Courts may not allow access to employee names/contact information solely to "solicit others to participate," but will allow it, for example, to investigate whether defendants made a common decision regarding classification.   Cedano v. Thrifty Payless, Inc., 2011 U.S. Dist. LEXIS 155956, at *33, 2011 WL 8609402 (D.Or. May 9, 2011).

Some courts have declined to require production of underlying identifying data due to privacy concerns pre-certification.   For example, in Barret v. Forest Labs, Inc., the court noted:

> There remains the question of the names of the employees whose employment data is to be produced. As defendants suggest, some of the data to be revealed is potentially quite sensitive. Although plaintiffs will undoubted have need for disclosure of the names of collective members if their forthcoming certification motion is granted, they fail to make a persuasive case for immediate disclosure of all names at this stage. They will be free to seek partial or full disclosure irrespective of whether their certification motion is granted, provided that they can demonstrate a specific need for some or all of those names. But they have not yet made that showing.

Barrett v. Forest Labs., Inc., 2015 U.S. Dist. LEXIS 51495 at *8 (S.D.N.Y. April 8, 2015).

However, Barret, as noted in the quote above, indicates that such a link between the data and employee identifying information may nevertheless be discoverable pre-certification.   In Wellens v. Daiichi Sankyo, Inc., the court identified what types of needs would justify disclosure of the names and linking information:

---

2 See, e.g., Babbitt v. Albertson's, Inc., 1992 U.S. Dist. LEXIS 19091 at *1617 (N.D.Cal. December 1, 1992) (in ordering names, addresses, telephone numbers and social security numbers of current and past employees produced, the court noted a protective order was sufficient to protect privacy interests and the information could lead to further relevant evidence).   The court did not address links to employment data or complaints, but other relevant evidence

Goldstein Decl. Ex. 9, Page 10 of 37

discovery from putative class members may lead to anecdotal evidence not captured in the pay and benefits data produced by Defendants, that such evidence is important to bring discrimination claims "convincingly to life," and as such may substantiate Plaintiffs' arguments for class certification. The court will therefore exercise its discretion to permit discovery of putative class members' contact information.

Wellens v. Daiichi Sankyo, Inc., 2014 U.S. Dist. LEXIS 29794 at *7 (N.D.Cal. March 5, 2014).[3]

Here, plaintiffs assert the identifying information will lead to anecdotal evidence relevant to certification of their disparate treatment claim.  Specially, plaintiffs contend the information sought will help develop evidence in support of class certification, including: (1) statistical evidence where disparate data files rely on identifying information for connection and analysis; (2) evidence of top management's involvement in discrimination; and (3) anecdotal evidence in support of class certification.  With respect to the October 31, 2019, Order, the Court already limited plaintiffs' discovery into the complaints to prevent a "fishing expedition."  Implicit in the Court's decision was a limitation on the invasion of privacy interests of employees who have yet to consent to join the lawsuit. Further, only those individuals with complaints similar to the named plaintiffs are appropriately discoverable.  The Court notes the existing Protective Order and find it sufficient to protect the privacy interests of the employees who filed the complaints. A link between the complaints and identifying information may better allow plaintiffs to bolster the issues related to certification especially with respect to the disparate treatment claim. Regarding documents demonstrating pay differentials, merit increases, bonuses, equity awards,

---

could include complaints made by the other employees of the type complained of by the named plaintiffs as well as employee data relevant to certification.
3 Nike argues the Wellens Court only allowed discovery of contact information and not disclosure of the names applied to data.   However, the court left the door open to a link between the data and the names because the parties had not addressed the privacy concerns in their briefing and noted that the main issue was whether the protective order should include additional protections.   Id. at *11-12.

Page 7 - ORDER

and performance ratings, the identity of the employee regarding that data may help develop anecdotal evidence of disparate treatment as well.

The Court is mindful of the strong privacy interests of the employees who will be identified.   The Protective Order (ECF #82) is sufficient to address that concern with the addition of one further restraint on the information provided:   Should plaintiffs' counsel seek to contact a named employee in an effort to find anecdotal evidence that may be lacking in the files or complaints themselves, counsel shall first inform the employee of their right to refuse to talk.

<u>CONCLUSION</u>

Plaintiffs' motion to compel (as stated in their letter to the Court dated March 4, 2020) is granted.   Defendant shall produce names and employee ID numbers of employees and witnesses in already produced employment data and workplace complaint documents.   All production pursuant to this motion is subject to the Protective Order (ECF #82) entered in this case on June 17, 2019, with the additional requirement that any contacted employee shall first be informed of a right to refuse to talk at this stage of the proceedings.

DATED this 23rd day of March, 2020.

_____
/s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge

Goldstein Decl. Ex. 9, Page 12 of 37

# Exhibit B

Confidential



Starfish



# IF IT'S HAPPENED TO YOU WE WANT TO KNOW.

Please select one or more choices below.

☒ **Discrimination or other harassment**
(Generally, Discrimination or Harassment can include threats, insults, jokes, unwelcome verbal comments or email, derogatory pictures or gestures or unwelcome physical conduct, bullying, retaliation, discrimination or disrespect based on race, age, sexual orientation, disability, ethnic group or any protected class status, intimidation, micro-aggressions, exclusionary behavior and actions including 'cliques' or 'clubs', preferential treatment, the feeling of having to 'prove' yourself versus colleagues, pay or performance recognition. Could include purposely ambiguous CFE feedback whether verbal or written, lack of a clear and supported growth plan from manager, gender or diversity bias relating to hiring, promoting, pay or performance rewards. Discrimination or harassment at work can happen inside or outside of the work-place.)

☐ **Sexual harassment**
(Generally, Sexual Harassment can include unwelcome sexual advances, requests for sexual favors, other verbal or physical conduct of a sexual nature. Sexual harassment at work can happen inside or outside of the work-place and can include co-workers including athletes, managers, vendors and visitors.)

# IF YOU WOULD LIKE TO SHARE MORE DETAILS, PLEASE DO SO OVER THE PAGE.

(If you are a Nike employee, Nike's harassment and anti-discrimination policy can be found here: https://nikehr.nike.com/node/15978)

NIKE_00019389

Confidential

# MY EXPERIENCE

(If you need more space, please photocopy this page or include additional attachments as needed)

Name (optional):

Please share brief outline of your experience:

I experienced unfair treatment from a manager around pay, position and respect. (Preferential Treatment)

Date / location if you can remember:

NKER 2016

Did you experience this situation first hand?

Yes.

Were there any witnesses?

Yes.

Do you have any hard evidence such as emails, photo's etc?

Just anecdotes around the situation. Some 2x history.

If not experienced first hand, then how was it brought to your attention?

Did you report this experience?

No.

If you reported it, was it resolved?

If you did not report it, why did you make that decision?

I made myself believe that I indeed wasnt 'good enough' as the underqualified counterpart the manager showed preferential treatment. (to whom)

What impact has this experience had on you?

(For example; career progression, physical health, psychological health, other)

Career progression , emotional wear down. I fell into a depression for about a month thinking of low self-worth (before I diverted action and energy towards finding another role (and boss...)

Please indicate if you would like to discuss and potentially elevate your experience:

NIKE_00019390

3/1/18

March 1, 2018
[Received by ████████ via email]

Please share brief outline of your experience:
- I confronted my Director and Senior Director about pay discrepancy. My female friend who is a global brand manager (I am NA brand manager) earns 25k more than me. 25k. Same job. I also have 5 years more work experience than her, including 3 different countries and 5 cities. My management told me (in my CFE) that there are no pay rises, and that people come into Nike at different pay levels and if I started lower than my friend then that's just how it is and I needed to negotiate harder when I came into Nike. I also asked for my pay to be internally benchmarked and HR gave me an external benchmark. I asked again, nothing has happened.
- My new Brand Director was a Comms Director for 4 months. He hated the role and hated living in Portland and threatened to quit. His behavior was 'rewarded' by him being promoted to Brand Director and moved to NYC. I was told I was too inexperienced for the role. I have 10 years of work experience in 3 countries, and have been a brand manager for 2 years. As such, I am now the only person on my team located in Portland. I am a Brand Manager and I am alone, with no management or team, no one to learn from or work with. I asked to move to LA to sit with EM, or to NYC to sit with my team and have been rudely refuted and told that there is 'no way' I am moving and that they need 'ears on campus.' My reply was 'I am not your ears' which didn't go down well.
- I confronted the new Director about locations, and he admitted to me on a call that it would've made more sense for the Director to be in Portland and closer to global, and the Manager to be in market activating.

Date / if you can remember:
- During my CFE around Feb 5

Did you experience this situa first hand?
- Yes

Were there any witnesses?
- The director and senior director. I also have emails. I've also spoken to HR and they have been great listeners, but that's it. ████████ actually said to me "Do you think your Senior Director is trying to make you quit?"

Do you have any hard evidence such as emails, photo's etc?
- Yes

What impact has this experience had on you?
(For example; career progression, physical health, psychological health, other)
- I want to leave my team/Nike. I'm alone, in Portland. No one moves to Portland alone with no friends to work at one of the biggest companies in the world and basically be remote. I barely even go to the office I just work from home and save the money on gas. It's taken a huge toll on me mentally and emotionally, I am so lonely, they basically left me behind and gave me an inexperienced Director who I am now teaching how to do the job. I had no Director for 4 months, I was doing the job of specialist manager and director and this is the reward I get.

Confidential

NIKE_00019420
Goldstein Decl. Ex. 9, Page 16 of 37





Confidential



I am given responsibilities but then questioned on my decisions and asked to provide timelines or explanations when my male counterparts are not asked to do the same.

I sit in large meetings and am commonly the only woman or minority. I do not see myself represented in the environment that I work in.

Nike sent out an email that women make 99% what men do and that it's essentially equal. It's not equal.

In general, I feel that sometimes myself and other women I work with are not heard, included, or respected and that our ideas and opinions are often met with immediate resistance.

I have not gone to HR about many of these issues not only because they were so unhelpful in the past but also because I honestly think a lot of it is systemic and subconscious. I believe that Nike should make an intentional effort to change the environment that we work in by hiring and promoting women and minorities at the same frequency and to the same levels of our Caucasian male counterparts. I see the word "Equality" on my screensaver but I do not see it being practiced.

Confidential



# IF IT'S HAPPENED TO YOU WE WANT TO KNOW.

**Please select one or more choices below.**

☒ **Discrimination or other harassment**
(Generally, Discrimination or Harassment can include threats, insults, jokes, unwelcome verbal comments or email, derogatory pictures or gestures or unwelcome physical conduct, bullying, retaliation, discrimination or disrespect based on race, age, sexual orientation, disability, ethnic group or any protected class status, intimidation, micro-aggressions, exclusionary behavior and actions including 'cliques' or 'clubs', preferential treatment, the feeling of having to 'prove' yourself versus colleagues, pay or performance recognition. Could include purposely ambiguous CFE feedback whether verbal or written, lack of a clear and supported growth plan from manager, gender or diversity bias relating to hiring, promoting, pay or performance rewards. Discrimination or harassment at work can happen inside or outside of the work-place.)

☐ **Sexual harassment**
(Generally, Sexual Harassment can include unwelcome sexual advances, requests for sexual favors, other verbal or physical conduct of a sexual nature. Sexual harassment at work can happen inside or outside of the work-place and can include co-workers including athletes, managers, vendors and visitors.)

# IF YOU WOULD LIKE TO SHARE MORE DETAILS, PLEASE DO SO OVER THE PAGE.

(If you are a Nike employee, Nike's harassment and anti-discrimination policy can be found here: https://nikehr.nike.com/node/15978)

Highly Confidential - Attorneys' Eyes Only

# MY EXPERIENCE

(If you need more space, please photocopy this page or include additional attachments as needed)



**Please share brief outline of your experience:**



BROUGHT INTO MY BOSS' OFFICE AND GIVEN A LIST OF 5 MALE NAMES FOR MY OWN S BAND GOAL WT ROLE. TOLD I WAS NOT TO WALK OUT UNTIL I PICKED ONE OF

**Date / location if you can remember:** THOSE NAMES. I ASKED FOR 3 FEMALES TO BE PROPOSED FOR CONSIDERATION AND WAS TOLD "NO YOU NEED A MAN IN THAT ROLE". THIS WAS AT 6:30PM. WENT ROUND

**Did you experience this situation first hand?** AND ROUND ARGUING THE OPPOSITE (ALL MEN REPORTING INTO PVP)
Yes WAS CURRENT IN. [redacted] ORG. WHY CAN WE NOT

**Were there any witnesses?** LOOK AT MOST QUALIFIED TALENT?
No

**Do you have any hard evidence such as emails, photo's etc?**
EMAIL

**If not experienced first hand, then how was it brought to your attention?**

**Did you report this experience?**
YES. TO STEPHANIE SHAPLES IN HR. I ALSO SHARED WITH 2 OTHER LEADERS FOR ADVICE.

**If you reported it, was it resolved?**
WE ENDED UP LOOKING AT A MORE COMPREHENSIVE CANDIDATE POOL & PROMOTED A FEMALE INTO THE ROLE.

**If you did not report it, why did you make that decision?**

**What impact has this experience had on you?** LACK OF FAITH IN A FAIR & EQUITABLE PROMOTION PROCESS FOR SENIOR
**(For example; career progression, physical health, psychological health, other)** LEADERSHIP POSITIONS. MASSIVE DISAPPOINTMENT THAT I HAD TO SPEND SO MUCH TIME GOING ROUND TO ESTABLISH

**Please indicate if you would like to discuss and potentially elevate your experience:** TO GET EQUAL REPRESENTATION OF FEMALES AND ULTIMATELY ADVOCATING FOR THE ONE WHO WAS MOST QUALIFIED.

Highly Confidential - Attorneys' Eyes Only

From: "Staples, Stephanie" ██████████████████

Date: Wednesday, December 6, 2017 at 1:23 AM

To: Nike ████████████

Subject: Re: Follow Up Women's Apparel : Please keep this confidential!

Thanks for the update ██████ Let me speak with Elizabeth and circle back.

Will you keep me posted regarding your conversations with ████████████

Thank you,
Stephanie

Sent from my iPhone

On Dec 6, 2017, at 7:57 AM, ████████████████████ wrote:

Hi Stephanie,

Thank you so much for the time today. Sending over the pages I have been working on as it's a slight update. Again please keep this attachment tight as much as possible as well as what I am about to share with you.

I am speaking to Reenie at 3 and Tyler at 4 tomorrow where I plan to address our conversation from today as well as another topic which came up in a meeting with ██ this evening- Tricia's backfill. ██████ Informed me that he, ████████ and few other members from the GALT met Monday to discuss her role and decided we needed diversity when filling it. They came up with 5 names, all men from the org, none ware on my radar when ██ and I spoke about it last week or when Reenie and I spoke about it the weeks prior. 2 of these men have been in their role for less than 5 months, 2 are in Jordan (1 has had serious performance issues from what I have been told by his manager), and one recently reported to me in men's NSW (he has been in his role less than 2 years and not a top performer). ████ asked me to select one. I have never had a talent conversation in this way. It's contrary to the OTP conversations we have had as an apparel leadership team where we identified HI PO HI PERF talent and it's contrary to earlier conversations I had with Reenie weeks ago where we discussed the RIGHT talent for the position.

Of course I want to have a team which I am looking to put in the right way amongst the 46 roles reporting to me, but I also want the right talent for this critical GCAL role. I plan on being honest and clear with both Reenie and Tyler regarding this situation tomorrow. It is disappointing that I continue to be left out of critical conversations because of this divisional structure. I am disappointed that the first and only filter in considering a candidate pool was it had to be a man. It does not seem right that we would pass up women who are capable and ready for this role simply because there is a feeling that we have too many women on my team. Our work is about empowerment, progression, and the potential to change the world. Excluding women from that opportunity seems discriminatory to me. ████████ DVP of sport categories, has all men in his 7 leadership positions and I have to wonder if next time he has an open role he will be given a "forced diversity list" of women?

████ required me to select a name. Forced to choose, I told him I would support Neil Monroe in the role. Neil was promoted just 5 months ago as GCAL men's training. I don't know if he will go for this, or that it's a good move for him. But here I am having made my "pick" thinking this must be what it feels like to be in the twilight zone.

Amy is aware as I texted her about this tonight.

████████████

Highly Confidential - Attorneys' Eyes Only

From: Nike < ██████████ >
Date: Wednesday, December 6, 2017 at 10:06 AM
To: ██████████ >
Subject: GCAL- training

Hi ██

After going home and processing last night what we discussed I wanted to ensure I heard you clearly. I agree diversity is critical for us to have in the org and equally as important is having the best person for the job. The 5 names you gave me ( ██████████ being all men still is not computing as there is other talent in the org like ██████████████████ who I believe are all high on the 9 box and would be interesting to consider as well. I feel like I was forced to make a "pick" and feels it needs more thought and consideration.

Maybe we can get 5 mins after the bra conversation.

Thanks,
██████

Highly Confidential - Attorneys' Eyes Only

Confidential

⑦

# IF IT'S HAPPENED TO YOU WE WANT TO KNOW.

Please select one or more choices below.

☒ **Discrimination or other harassment**

(Generally, Discrimination or Harassment can include threats, insults, jokes, unwelcome verbal comments or email, derogatory pictures or gestures or unwelcome physical conduct, bullying, retaliation, discrimination or disrespect based on race, age, sexual orientation, disability, ethnic group or any protected class status, intimidation, micro-aggressions, exclusionary behavior and actions including 'cliques' or 'clubs', preferential treatment, the feeling of having to 'prove' yourself versus colleagues, pay or performance recognition. Could include purposely ambiguous CFE feedback whether verbal or written, lack of a clear and supported growth plan from manager, gender or diversity bias relating to hiring, promoting, pay or performance rewards. Discrimination or harassment at work can happen inside or outside of the work-place.)

☐ **Sexual harassment**

(Generally, Sexual Harassment can include unwelcome sexual advances, requests for sexual favors, other verbal or physical conduct of a sexual nature. Sexual harassment at work can happen inside or outside of the work-place and can include co-workers including athletes, managers, vendors and visitors.)

# IF YOU WOULD LIKE TO SHARE MORE DETAILS, PLEASE DO SO OVER THE PAGE.

(If you are a Nike employee, Nike's harassment and anti-discrimination policy can be found here: https://nikehr.nike.com/node/15978)

NIKE_000225572

Confidential

# MY EXPERIENCE

(If you need more space, please photocopy this page or include additional attachments as needed)

Name (optional):

Please share brief outline of your experience:
I WAS TOLD "NO ONE GIVES A FUCK ABOUT FEMALE EMPOWERMENT," BY A MALE SUPERIOR.

Date / location if you can remember:
SUMMER 2017

Did you experience this situation first hand?
YES

Were there any witnesses?
YES

Do you have any hard evidence such as emails, photo's etc?
NO, IT WAS VERBAL.

If not experienced first hand, then how was it brought to your attention?

Did you report this experience?
YES

If you reported it, was it resolved?
UNSURE

If you did not report it, why did you make that decision?

What impact has this experience had on you? IT HAS MADE ME QUESTION THE OVERALL CULTURE @ NIKE. I WORK IN
(For example; career progression, physical health, psychological health, other) A VERY MALE DOMINATED DEPT. AND HAVE ALSO BEEN
IMPACTED FINANICALLY — MALE CO·WORKERS IN LOWER POSITIONS

Please indicate if you would like to discuss and potentially elevate your experience:
MAKING THE SAME SALARY.

Things I have experienced in my near 10-year career at Nike.

1. When I was promoted, the man that was hired to backfill by lower positioned was hired at the same salary that I was promoted to. We were at different band levels, I had more experience and I was in a higher position and he was making the same salary as me.

2. A male surperior told me in a meeting that "No one gives a fuck about female empowerment." It was in the context of a project and a new direction that the project needed to take, but he said it right to my face with no apology.

3. This is second-hand, but I have heard of certian male leaders not wanting women with children to work on their teams because they can't work late and they have other commitments outside of Nike.

4. There are very few female role models in my function that are married with children and excelling in their careers. It is extremely male dominated.

5. I have experienced countless times when I have been presenting to leadership (always men) and they won't make eye contact with me or engage in conversation. When one of my male counterparts gets up to present, their reaction is very different. I feel as though they aren't taking me seriously or respecting me or what I have to say.



Confidential

NIKE_00022574

Goldstein Decl. Ex. 9, Page 25 of 37

⑤

# IF IT'S HAPPENED TO YOU WE WANT TO KNOW.

Please select one or more choices below.

☑ **Discrimination or other harassment**

(Generally, Discrimination or Harassment can include threats, insults, jokes, unwelcome verbal comments or email, derogatory pictures or gestures or unwelcome physical conduct, bullying, retaliation, discrimination or disrespect based on race, age, sexual orientation, disability, ethnic group or any protected class status, intimidation, micro-aggressions, exclusionary behavior and actions including 'cliques' or 'clubs', preferential treatment, the feeling of having to 'prove' yourself versus colleagues, pay or performance recognition. Could include purposely ambiguous CFE feedback whether verbal or written, lack of a clear and supported growth plan from manager, gender or diversity bias relating to hiring, promoting, pay or performance rewards. Discrimination or harassment at work can happen inside or outside of the work-place.)

☐ **Sexual harassment**

(Generally, Sexual Harassment can include unwelcome sexual advances, requests for sexual favors, other verbal or physical conduct of a sexual nature. Sexual harassment at work can happen inside or outside of the work-place and can include co-workers including athletes, managers, vendors and visitors.)

# IF YOU WOULD LIKE TO SHARE MORE DETAILS, PLEASE DO SO OVER THE PAGE.

(If you are a Nike employee, Nike's harassment and anti-discrimination policy can be found here: https://nikehr.nike.com/node/15978)

Confidential

## MY EXPERIENCE
(If you need more space, please photocopy this page or include additional attachments as needed)

Name (optional):

Please share brief outline of your experience:

Date / location if you can remember:

Did you experience this situation first hand?

Were there any witnesses?

Do you have any hard evidence such as emails, photo's etc?

If not experienced first hand, then how was it brought to your attention?

Did you report this experience?

If you reported it, was it resolved?

If you did not report it, why did you make that decision?

What impact has this experience had on you?
(For example; career progression, physical health, psychological health, other)

Please indicate if you would like to discuss and potentially elevate your experience:

There is a leader in our org that is trying to take care of a problem employee ▮▮▮▮ who is a poor performer and also called his employee a "Bitch" but she is not able to do anything about it because he is protected by the European Boys club. I know this was ~~reported~~ to ER. Why is nothing happening? Because he is friends with ▮▮▮▮▮▮▮▮ who phoned in a favor.

NIKE_00022576

# MY EXPERIENCE
(If you need more space, please photocopy this page or include additional attachments as needed)

| | |
|---|---|
| Name (optional): | |
| Please share brief outline of your experience: | Generally I have experienced that certain employees (mostly male) are "protected" because of who they are friends |
| Date / location if you can remember: | with, regardless of the fact that they are |
| Did you experience this situation first hand? | severe under-performers. We keep "finding homes" |
| Were there any witnesses? | for these people and they take up valuable space in the company. I am in a situation |
| Do you have any hard evidence such as emails, photo's etc? | |
| If not experienced first hand, then how was it brought to your attention? | where I do not feel empowered to |
| Did you report this experience? | manage with courage because of |
| If you reported it, was it resolved? | long standing relationships with Sr. |
| If you did not report it, why did you make that decision? | leaders. (Sr. leaders who won't take |
| What impact has this experience had on you? (For example; career progression, physical health, psychological health, other) | on the problem themselves, by the way) |
| Please indicate if you would like to discuss and potentially elevate your experience: | |

NIKE_00022577

Confidential

③

Anonymous

# IF IT'S HAPPENED TO YOU WE WANT TO KNOW.

**Please select one or more choices below.**

☑ **Discrimination or other harassment**
(Generally, Discrimination or Harassment can include threats, insults, jokes, unwelcome verbal comments or email, derogatory pictures or gestures or unwelcome physical conduct, bullying, retaliation, discrimination or disrespect based on race, age, sexual orientation, disability, ethnic group or any protected class status, intimidation, micro-aggressions, exclusionary behavior and actions including 'cliques' or 'clubs', preferential treatment, the feeling of having to 'prove' yourself versus colleagues, pay or performance recognition. Could include purposely ambiguous CFE feedback whether verbal or written, lack of a clear and supported growth plan from manager, gender or diversity bias relating to hiring, promoting, pay or performance rewards. Discrimination or harassment at work can happen inside or outside of the work-place.)

☐ **Sexual harassment**
(Generally, Sexual Harassment can include unwelcome sexual advances, requests for sexual favors, other verbal or physical conduct of a sexual nature. Sexual harassment at work can happen inside or outside of the work-place and can include co-workers including athletes, managers, vendors and visitors.)

# IF YOU WOULD LIKE TO SHARE MORE DETAILS, PLEASE DO SO OVER THE PAGE.

(If you are a Nike employee, Nike's harassment and anti-discrimination policy can be found here: https://nikehr.nike.com/node/15978)

NIKE_00022578

Confidential

# MY EXPERIENCE

(If you need more space, please photocopy this page or include additional attachments as needed)

Name (optional):

Please share brief outline of your experience:

Date / location if you can remember:

Did you experience this situation first hand?

Were there any witnesses?

Do you have any hard evidence such as emails, photo's etc?

If not experienced first hand, then how was it brought to your attention?

Did you report this experience?

If you reported it, was it resolved?

If you did not report it, why did you make that decision?

What impact has this experience had on you?
(For example; career progression, physical health, psychological health, other)

Please indicate if you would like to discuss and potentially elevate your experience:

NIKE_00022579



- INEQUITY IN PAY: I have asked twice to have my salary reviewed in the past year and a half, my boss says that will happen but never follows through. I know for a fact I am underpaid.



Confidential



Confidential

NIKE_00022581
Goldstein Decl. Ex. 9, Page 32 of 37



My story is less of a specific incident, but a handful of occurances and an overarching theme.

When I received this questionnaire, I asked several of my female co workers what they thought of working at Nike. I asked how fairly they were treated based on performance vs gender. All unanimously talked about "the Boys Club" of Nike. A giant men's sports team, where favoritism prevails and females couldn't possibly play in the sandbox. Where I've received advice the reason I'm not advancing as I'd like, I'm not in the same social scene or sporting events as my co-workers. Or that as a woman males don't want to be so serious. Keep it light, keep it funny.

Over my years at Nike I have had a few occurances of discrimination or harrassment.

- Receiving an invitiation to ▮▮▮▮▮▮ (former employee) NFL launch party. All my male counterparts that actually worked on NFL, while I worked on Men's training did not receive the invite. I did. Come to find out several females including Nike store associates were invited to the party. I declined.
- Another time, I provided financials to a VP. When I stepped into the meeting to provide the financial facts to her, a single male VP in the audience asked me multiple times if I was going to stay for the meeting. A few of the other female co workers around me where uncomfortable. I could tell his inquisition was not work related. No employees below an S band were in the room. I was a U band.
- Since then I have had several incidents of my opinion being ignored or dismissed by a specific manager. When my male counterpart brings up the exact same opinions, the manager then decides to listen. This manager also yelled, screamed and banged his fists on the table at me, which was reported. He also came at another female employee, calling her a bitch. This was also reported. A third female manager has complained of receiving unfair treatment. My male counterparts did not complain of the same treatment. What is being done about it today, I am unclear.
- One thing we as a Global company need to recognize is people's experiences that frame their actions and behaviours. Meaning, the world is in various stages of acceptance from race, religion, gender, age etc. As we come together across the globe, some of us experienced rather progressive societies and others of us have not. How do we provide cultura training to bridge the gaps?

My biggest for Nike, as I talked with other femail co workers, was realizing how the "boys club" is a common theme. This is something I experience and tend to ignore, but why should I have to work 2X as hard as those around me? More importantly, how will we attract and retain top female talent? Women are the main spenders in households today. Why is our business so skewed toward men? How we will capture her attention? It starts from credibiilty within the organization. I hate to think of the talent we may be missing out on maximizing for the company, because she is being overlooked.

Appreciate the opportunity to speak.

Confidential

| | |
|---|---|
| **From:** | Davis, Felicia A. <feliciadavis@paulhastings.com> |
| **Sent:** | Thursday, May 7, 2020 3:29 PM |
| **To:** | Gary_Magnuson@ord.uscourts.gov |
| **Cc:** | Prince, Daniel; Hutton, Zachary; amy.joseph.pedersen@stoel.com; kennon.scott@stoel.com; Laura Ho; James Kan; Barry Goldstein; Byron Goldstein; Mengfei Sun; Laura Salerno Owens; David Markowitz; Harry Wilson; Anna Joyce; Chad A. Naso; cja@ackermanntilajef.com; india Bodien; Scott Grimes |
| **Subject:** | RE: Cahill, et al. v. Nike, Inc- Case No. 3:18-cv-01477-JR |

Deputy Magnuson,

We believe the issue can be resolved pursuant to Nike's request for clarification of the March 23, 2020 order submitted earlier today, but if the Court prefers additional briefing, please let us know, and we will prepare a formal written response to plaintiffs' letter brief.

Thank you very much,
Felicia Davis

---

**From:** Scott Grimes <sgrimes@gbdhlegal.com>
**Sent:** Thursday, May 7, 2020 2:24 PM
**To:** Gary_Magnuson@ord.uscourts.gov
**Cc:** Prince, Daniel <danielprince@paulhastings.com>; Hutton, Zachary <zachhutton@paulhastings.com>; Davis, Felicia A. <feliciadavis@paulhastings.com>; amy.joseph.pedersen@stoel.com; kennon.scott@stoel.com; Laura Ho <lho@gbdhlegal.com>; James Kan <jkan@gbdhlegal.com>; Barry Goldstein <bgoldstein@gbdhlegal.com>; Byron Goldstein <brgoldstein@gbdhlegal.com>; Mengfei Sun <msun@gbdhlegal.com>; Laura Salerno Owens <laurasalerno@markowitzherbold.com>; David Markowitz <davidmarkowitz@markowitzherbold.com>; Harry Wilson <harrywilson@markowitzherbold.com>; Anna Joyce <annajoyce@markowitzherbold.com>; Chad A. Naso <chadnaso@markowitzherbold.com>; cja@ackermanntilajef.com; india Bodien <india@indialinbodienlaw.com>
**Subject:** [EXT] Cahill, et al. v. Nike, Inc- Case No. 3:18-cv-01477-JR

Hon. Jolie A. Russo:

Attached please find Plaintiffs' Letter Regarding Enforcement of the March 23, 2020 Discovery Order in the matter *Cahill, et al. v. Nike, Inc.*, No. 3:18-cv-01477-JR.

**Scott G. Grimes ▪ Senior Paralegal ▪ Goldstein, Borgen, Dardarian & Ho** ▪ 300 Lakeside Drive, Suite 1000 ▪ Oakland, CA 94612 ▪ T: (510) 763-9800 ▪ F: (510) 835-1417 ▪ www.gbdhlegal.com



Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above. If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message. If you have received this E-mail in error, please notify the sender as soon as possible. In addition, please delete the erroneously received message from any device/media where the message is stored. Thank you.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

2

Goldstein Decl. Ex. 9, Page 35 of 37

**Scott Grimes**

| | |
|---|---|
| **From:** | Gary Magnuson <gary_magnuson@ord.uscourts.gov> |
| **Sent:** | Friday, May 8, 2020 2:00 PM |
| **To:** | Davis, Felicia A. |
| **Cc:** | Prince, Daniel; Hutton, Zachary; amy.joseph.pedersen@stoel.com; kennon.scott@stoel.com; Laura Ho; James Kan; Barry Goldstein; Byron Goldstein; Mengfei Sun; Laura Salerno Owens; David Markowitz; Harry Wilson; Anna Joyce; Chad A. Naso; cja@ackermanntilajef.com; india Bodien; Scott Grimes |
| **Subject:** | RE:  Cahill, et al. v. Nike, Inc- Case No. 3:18-cv-01477-JR |

Counsel:

Judge Russo says she will await Judge Hernandez's ruling regarding her earlier order and will address this as necessary afterwards.

Best,

Gary Magnuson,
Courtroom Deputy,
U.S. District Court,
District of Oregon.
(503) 326-8055; fax (503) 326-8010
gary_magnuson@ord.uscourts.gov

---

**From:** Davis, Felicia A. <feliciadavis@paulhastings.com>
**Sent:** Thursday, May 7, 2020 3:29 PM
**To:** Gary Magnuson <gary_magnuson@ord.uscourts.gov>
**Cc:** Prince, Daniel <danielprince@paulhastings.com>; Hutton, Zachary <zachhutton@paulhastings.com>; amy.joseph.pedersen@stoel.com; kennon.scott@stoel.com; Laura Ho <lho@gbdhlegal.com>; James Kan <jkan@gbdhlegal.com>; Barry Goldstein <bgoldstein@gbdhlegal.com>; Byron Goldstein <brgoldstein@gbdhlegal.com>; Mengfei Sun <msun@gbdhlegal.com>; Laura Salerno Owens <laurasalerno@markowitzherbold.com>; David Markowitz <davidmarkowitz@markowitzherbold.com>; Harry Wilson <harrywilson@markowitzherbold.com>; Anna Joyce <annajoyce@markowitzherbold.com>; Chad A. Naso <chadnaso@markowitzherbold.com>; cja@ackermanntilajef.com; india Bodien <india@indialinbodienlaw.com>; Scott Grimes <sgrimes@gbdhlegal.com>
**Subject:** RE: Cahill, et al. v. Nike, Inc- Case No. 3:18-cv-01477-JR

Deputy Magnuson,

We believe the issue can be resolved pursuant to Nike's request for clarification of the March 23, 2020 order submitted earlier today, but if the Court prefers additional briefing, please let us know, and we will prepare a formal written response to plaintiffs' letter brief.

Thank you very much,
Felicia Davis

---

**From:** Scott Grimes <sgrimes@gbdhlegal.com>
**Sent:** Thursday, May 7, 2020 2:24 PM
**To:** Gary_Magnuson@ord.uscourts.gov
**Cc:** Prince, Daniel <danielprince@paulhastings.com>; Hutton, Zachary <zachhutton@paulhastings.com>; Davis, Felicia A.

Goldstein Decl. Ex. 9, Page 36 of 37

<feliciadavis@paulhastings.com>; amy.joseph.pedersen@stoel.com; kennon.scott@stoel.com; Laura Ho <lho@gbdhlegal.com>; James Kan <jkan@gbdhlegal.com>; Barry Goldstein <bgoldstein@gbdhlegal.com>; Byron Goldstein <brgoldstein@gbdhlegal.com>; Mengfei Sun <msun@gbdhlegal.com>; Laura Salerno Owens <laurasalerno@markowitzherbold.com>; David Markowitz <davidmarkowitz@markowitzherbold.com>; Harry Wilson <harrywilson@markowitzherbold.com>; Anna Joyce <annajoyce@markowitzherbold.com>; Chad A. Naso <chadnaso@markowitzherbold.com>; cja@ackermanntilajef.com; india Bodien <india@indialinbodienlaw.com>

**Subject:** [EXT] Cahill, et al. v. Nike, Inc- Case No. 3:18-cv-01477-JR

Hon. Jolie A. Russo:

Attached please find Plaintiffs' Letter Regarding Enforcement of the March 23, 2020 Discovery Order in the matter *Cahill, et al. v. Nike, Inc.*, No. 3:18-cv-01477-JR.

**Scott G. Grimes ▪ Senior Paralegal ▪ Goldstein, Borgen, Dardarian & Ho** ▪ 300 Lakeside Drive, Suite 1000 ▪ Oakland, CA 94612 ▪ T: (510) 763-9800 ▪ F: (510) 835-1417 ▪ www.gbdhlegal.com



Please Note: The information in this E-mail message is legally privileged and confidential information intended only for the use of the addressee(s) named above. If you, the reader of this message, are not the intended recipient, you are hereby notified that you should not further disseminate, distribute, or forward this E-mail message. If you have received this E-mail in error, please notify the sender as soon as possible. In addition, please delete the erroneously received message from any device/media where the message is stored. Thank you.

*************************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.