**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Kathryn P. Roberts, OSB #064854**
KathrynRoberts@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085 | Fax: (503) 323-9105

**Laura L. Ho** (admitted *pro hac vice*)
lho@gbdhlegal.com
**Barry Goldstein, Of Counsel** (admitted *pro hac vice*)
bgoldstein@gbdhlegal.com
**James Kan** (admitted *pro hac vice*)
jkan@gbdhlegal.com
**Byron Goldstein** (admitted *pro hac vice*)
brgoldstein@gbdhlegal.com
**Katharine L. Fisher** (admitted *pro hac vice*)
kfisher@gbdhlegal.com
**Mengfei Sun** (admitted *pro hac vice*)
msun@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 763-9800 | Fax: (510) 835-1417

Counsel for Plaintiffs, Opt-in Plaintiffs and Putative Class

[Additional Counsel of Record listed on the Signature page]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, et al., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NIKE, INC., an Oregon Corporation,<br>Defendant. | Case No. 3:18-cv-01477-JR<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF OBJECTIONS TO FINDINGS AND RECOMMENDATIONS**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................1

II.     THE STANDARD OF REVIEW IS *DE NOVO*........................................................1

III.    NIKE MISSTATES THE STANDARDS FOR EVALUATING EVIDENCE AT
        CLASS CERTIFICATION.......................................................................................2

        A.      Nike's Arguments Contravene *Olean*.....................................................2

        B.      Nike's Argument That Plaintiffs' Theory Is Irrelevant Ignores Binding
                Authority....................................................................................................2

        C.      The Court Should Give Little or No Weight to Nike's Declarations at
                Certification. ..............................................................................................3

IV.     PLAINTIFFS' EXPERT TESTIMONY IS CLASSWIDE EVIDENCE AND
        CAPABLE OF PROVING ELEMENTS OF PLAINTIFFS' CLAIMS.............................4

        A.      Dr. Lundquist's Testimony Shows a Jury Can Make a Classwide
                Determination on the Comparability of the Class Jobs. ...........................5

        B.      Dr. Neumark's Testimony is Capable of Proving Elements of Plaintiffs'
                Claims and Key Facts for Liability............................................................7

V.      PLAINTIFFS' COMMON EVIDENCE SHOWS THEIR OEPA CLAIM IS
        CAPABLE OF CLASSWIDE RESOLUTION. ...........................................................9

VI.     PLAINTIFFS' COMMON EVIDENCE SHOWS THEIR DISPARATE
        TREATMENT CLAIMS ARE CAPABLE OF CLASSWIDE RESOLUTION...............10

VII.    PLAINTIFFS' COMMON EVIDENCE SHOWS THE ELEMENTS OF THEIR
        FOUR DISPARATE IMPACT CLAIMS ARE CAPABLE OF CLASSWIDE
        RESOLUTION. .................................................................................................13

        A.      Plaintiffs' Classwide Evidence Can Prove that Nike's Award of Bonuses
                and Salary Increases as a Percentage of Current Salary Disparately
                Impacted Women. .....................................................................................13

                1.      Bonuses ..........................................................................................13

                2.      Salary Increases .............................................................................16

        B.      Plaintiffs' Classwide Evidence Is Capable of Proving Nike's Starting Pay
                Policy Disparately Impacted Women. ......................................................17

        C.      Plaintiffs' Classwide Evidence Can Resolve Whether Nike's "Fill
                Strategy" Policy Caused a Disparate Impact on Women.........................18

        D.      Plaintiffs' Classwide Evidence Can Resolve Whether Nike's Hiring
                Process Had a Disparate Impact on Women in Starting Job Level. .........20

VIII.  PLAINTIFFS MEET THE TYPICALITY AND ADEQUACY
       REQUIREMENTS...........................................................................................21

       A.    Plaintiffs' Claims Are Typical of the Class Because They Challenge
             Classwide Policies. ...........................................................................21

       B.    Plaintiffs Are Adequate Because They Have No Conflicts with the Class. ..........21

IX.    PLAINTIFFS MEET THE REQUIREMENTS OF RULE 23(B). ...................................22

       A.    Certification Under Rule 23(b)(2) Is Justified. .....................................22

       B.    Certification Under Rule 23(b)(3) Is Justified. .....................................23

             1.    Common Questions Predominate Because Central Issues Are
                   Capable of Classwide Resolution. ............................................23

             2.    A Class Action is Manageable and Superior to Individual Trials. ............24

X.     CERTIFICATION UNDER RULE 23(C)(4) IS AN ALTERNATIVE
       AVAILABLE TO THE COURT. ........................................................................25

XI.    CONCLUSION..............................................................................................25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Alonzo v. Maximus, Inc.*,
275 F.R.D. 513 (C.D. Cal. 2011) ................................................................................4

*Ashker v. Governor of State of California*,
No. 4:09-cv-05796-CW, 2014 WL 2465191 (N.D. Cal. June 2, 2014)....................23

*Bayer v. Neiman Marcus Grp.*,
861 F.3d 853 (9th Cir. 2017) ..................................................................................22

*Bolden v. Walsh Construction Co.*,
688 F.3d 893 (7th Cir. 2012) ..................................................................................10

*Chen-Oster v. Goldman, Sachs & Co.*,
No. 1:10-cv-06950-AT-RWL, 2022 WL 814074 (S.D.N.Y. Mar. 17, 2022),
*reconsideration granted in part on other grounds*, 2022 WL 3586460
(S.D.N.Y Aug. 22, 2022) ...................................................................................7, 12

*Cooper v. Fed. Rsrv. Bank of Richmond*,
467 U.S. 867 (1984) ................................................................................................13

*In re Copley Pharm., Inc.*,
158 F.R.D. 485 (D. Wy. 1994) ...............................................................................25

*Corning Glass Works v. Brennan*,
417 U.S. 188 (1974) ..................................................................................................6

*Dayton Bd. of Educ. v. Brinkman*,
443 U.S. 526 (1979) ................................................................................................11

*EEOC v. Inland Marine Indus.*,
729 F.2d 1229 (9th Cir. 1984) ................................................................................11

*Ellis v. Costco Wholesale Corp.*,
285 F.R.D. 492 (N.D. Cal. 2012)........................................................................7, 20

*Freyd v. Univ. of Or.*,
990 F.3d 1211 (9th Cir. 2021) ..................................................................................6

*Hein v. Or. Coll. of Educ.*,
718 F.2d 910 (9th Cir. 1983) ....................................................................................5

*In Re High-Tech Emp. Antitrust Litig.*,
985 F. Supp. 2d 1167 (N.D. Cal. 2013) ....................................................................3

*Kurihara v. Best Buy, Inc.*,
No. 3:06-cv-01884-MHP, 2007 WL 2501698 (N.D. Cal. Aug. 30, 2007) ...............................4

*Lavin-McEleney v. Marist Coll.*,
239 F.3d 476 (2d Cir. 2001).................................................................................24

*Maney v. State*,
No. 6:20-cv-00570-SB, 2022 WL 986580 (D. Or. Apr. 1, 2022)..........................................25

*McReynolds v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
672 F. 3d 482 (7th Cir. 2012), *abrogated on other grounds*, *Phillip v. Sherriff
of Cook Cnty.*, 828 F. 3d 541 (7th Cir. 2016) ................................................................15, 20

*Meacham v. Knolls Atomic Power Lab'y*,
554 U.S. 84 (2008)..........................................................................................21

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) ...............................................................................16

*Moussouris v. Microsoft Corp.*,
311 F. Supp. 3d 1223 (W.D. Wash. 2018)..............................................................12, 13

*Moussouris v. Microsoft Corp.*,
No. 2:15-cv-01483-JLR, 2018 WL 3328418 (W.D. Wash. June 25, 2018) ...........................12

*Nash v. Horizon Freight Sys., Inc.*,
No. 19-cv-01883-VC, 2020 WL 7640878 (N.D. Cal. Dec. 23, 2020)......................................3

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) (en banc) ............................................................... *passim*

*Paige v. California*,
291 F.3d 1141 (9th Cir. 2002), *as amended on denial of reh'g & reh'g en
banc* (July 18, 2002) ..........................................................................................8

*Rizo v. Yovino*,
950 F.3d 1217 (9th Cir. 2020) ..............................................................................23

*Sali v. Corona Reg'l Med. Ctr.*,
909 F.3d 996 (9th Cir. 2018) .................................................................................2

*Segar v. Smith*,
738 F.2d 1249 (D.C. Cir. 1984)............................................................................12

*Senne v. Kansas City Royals Baseball Corp.*,
934 F.3d 918 (9th Cir. 2019) .................................................................................5

*Serrano v. Cintas Corp.*,
Nos. 04-40132, 06-12311, 2009 WL 910702 (E.D. Mich. Mar. 31, 2009) ...........................11

*Slayman v. Fedex Ground Package Sys., Inc.*,
    765 F.3d 1033 (9th Cir. 2014) ...............................................................................22

*Staton v. Boeing*,
    327 F.3d 938 (9th Cir. 2003) .................................................................................21

*Stockwell v. City & County of San Francisco*,
    749 F.3d 1107 (9th Cir. 2014) ...............................................................................13

*B.K. ex rel. Tinsley v. Snyder*,
    922 F.3d 957 (9th Cir. 2019) ...................................................................................2

*Tomko v. Seiler Corp.*,
    66 F.3d 1295 (2d Cir. 1995)......................................................................................6

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv.*
    *Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*,
    593 F.3d 802 (9th Cir. 2010) ...................................................................................3

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)...............................................................................3, 7, 8, 12

*Wallin v. Holbrook*,
    No. 2:11-cv-02165-JCC, 2012 WL 4792923 (W.D. Wash. Oct. 9, 2012) ...............1

*Walsh v. Nevada Department of Human Resources*,
    471 F.3d 1033 (9th Cir. 2006) ...............................................................................22

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
    No. 2:06-cv-00225-PMP-PAL, 2008 WL 3179315 (D. Nev. June 20, 2008) ..........4

**State Cases**

*Bureau of Lab. & Indus. v. City of Roseburg*,
    75 Or. App. 306 (1985)............................................................................................5

**Federal Statutes**

42 U.S.C. § 2000e-2(k)(1)(B)(i) ...............................................................................14, 21

Age Discrimination in Employment Act ........................................................................21

**State Statutes**

Or. Equal Pay Act ................................................................................................. *passim*

Or. Rev. Stat. § 652.210 (16)............................................................................................5

**Rules**

Fed. R. Civ. P.

16(c)(2)(D)..................................................................................................24
23...................................................................................................................4
23(b).............................................................................................................22
23(b)(2).......................................................................................................22
23(b)(3)..................................................................................................23, 25
23(c)(4).......................................................................................................25
23(c)(4)(A)................................................................................................25
65(d)............................................................................................................23
72...................................................................................................................17
72(b)..............................................................................................................1
72 (b)(3)...................................................................................................1, 17

Fed. R. Evid.

403................................................................................................................24
702................................................................................................................24

**Other Authorities**

Annotated Manual for Complex Litig. (4th ed. May 2022 update).........................24

## I.    INTRODUCTION

The fundamental question at certification is whether Plaintiffs made a threshold evidentiary showing that their claims are capable of resolution as a class.  But the Findings and Recommendations ("FR"), ECF No. 310, answers an entirely different question: do you believe Plaintiffs or Nike?  In doing so, the FR commits reversible error, making factual findings that are the province of the jury.

To reach this result, the FR credits Nike's evidence but disregards Plaintiffs' legal theories and evidence while misapplying the elements of Plaintiffs' claims.  This evidence includes Nike documents showing its policies and admissions about discrimination by Nike's CEO and Chief Human Resources Officer.  Combined with Plaintiffs' statistical evidence showing statistically significant pay disparities for women and expert testimony about comparable work at Nike, Plaintiffs have presented common evidence from which a jury could answer classwide questions as to their gender discrimination claims.  At this stage, it is immaterial whether Nike or Plaintiffs will prevail at trial, and the Court need only resolve whether the evidence establishes central questions capable of classwide resolution.  The answer to this question is "yes," so the class should be certified.

## II.    THE STANDARD OF REVIEW IS *DE NOVO*.

Although Nike states Plaintiffs' objections "offend Federal Rule of Civil Procedure 72(b)," Nike does not identify a single objection that fails to meet this rule.  Plaintiffs provided the factual and legal bases for their specific objections unlike the distinguishable cases Nike cites.[1]  The Court should thus conduct a *de novo* review of Plaintiffs' detailed objections, as required by Rule 72(b)(3).

---

[1] *See, e.g., Wallin v. Holbrook*, No. 2:11-cv-02165-JCC, 2012 WL 4792923, at *3 (W.D. Wash.

### III.    NIKE MISSTATES THE STANDARDS FOR EVALUATING EVIDENCE AT CLASS CERTIFICATION.

#### A.    Nike's Arguments Contravene *Olean*.

The Ninth Circuit in *Olean* confirmed that the "district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial."[2]  Yet Nike asserts that *Olean* is distinguishable because the common practice of price fixing was in fact established.[3] *Olean*, however, rejected this distinction.  31 F.4th at 667.  Instead, the key determination for a district court to make is: (a) whether the evidence is capable of proving a common question on a classwide basis, or (b) if "proving the answer to a common question … will be impossible." *B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 973 (9th Cir. 2019).

Similarly, Nike argues "conflicting evidence merely demonstrated the lack of a common practice." ECF No. 328 at 34.  But this not only contradicts *Olean* but also seeks to impose a higher burden on Plaintiffs than at summary judgment because it requires them to prove success on the merits with absolute certainty.  *See Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) ("the 'manner and degree of evidence required' at the preliminary class certification stage is not the same as 'at the successive stages of the litigation'—*i.e.*, at trial.").

#### B.    Nike's Argument That Plaintiffs' Theory Is Irrelevant Ignores Binding Authority.

Although Plaintiffs seek to prove classwide policies, not alleged manager discretion, caused a disparate impact on women, Nike argues this "is a distinction without a difference."

---

Oct. 9, 2012) (plaintiff only made a single vague objection to all eighteen pages of the magistrate's analysis and provided no discussion of relevant law).

[2] *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022) (en banc) (emphasis in original).  This rule "holds true whether the common question concerns an element of plaintiffs' claim … or a fact that must be determined to establish liability …." *Id.* at 668 (citations omitted).

[3] ECF No. 328 at 32.

ECF No. 328 at 37.[4]  The Ninth Circuit disagrees, recognizing that a defendant cannot dictate

how plaintiffs prove their case.  *See United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied*

*Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 808

(9th Cir. 2010) (Where a "district court treated plaintiffs' actual legal theory as all but beside the

point, … the district court ignored Ninth Circuit precedent and ultimately abused its

discretion.");[5] *see also Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 356 (2011) ("*Dukes*")

(finding plaintiffs' statistics "*insufficient to establish that respondents' theory* can be proved on a

classwide basis.") (emphasis added).[6]  Instead, the district court is required to "make a rigorous

assessment of the available evidence and the method or methods by which plaintiffs propose to

use the class-wide evidence to prove the common question in one stroke." *Olean,* 31 F.4th at

666 (internal quotation marks & citation omitted).

## C.    The Court Should Give Little or No Weight to Nike's Declarations at Certification.

Nike primarily relies on declarations created to oppose certification.  *See, e.g.*, ECF No.

328 at 14-16.  But, as Judge Koh found, declarations created to oppose certification "are of a

diminished probative value," especially if "inconsistent with discovery Plaintiffs obtained from

Defendants." *In Re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1216 (N.D. Cal.

2013).[7]

---

[4] ECF No. 328 at 37.

[5] Nike argues *United Steel* is distinguishable but, in this case, the FR's findings went further. Rather than question which party was likely to prevail, the FR repeatedly made findings of fact on the merits.  *See, e.g.,* FR at 45, 48 ("the evidence fails to demonstrate that Nike had such a policy"); *id.* at 53-54 (finding Plaintiffs' experts unpersuasive).

[6] In each of the cases Nike relies on, the plaintiffs' theory alleged that discretionary decision-making was the cause of the disparate impact, unlike the classwide policies challenged here.  *See* ECF No. 240 at 28-29 (distinguishing Nike's citations).

[7] Courts regularly find declarations created to oppose certification have less weight.  *See, e.g., Nash v. Horizon Freight Sys., Inc.*, No. 19-cv-01883-VC, 2020 WL 7640878, at *1-2 (N.D. Cal. Dec. 23, 2020) (expressing skepticism about use of "happy camper" declarations to defeat class

Here, Nike does not dispute its declarations were drafted for opposing certification and collected after Plaintiffs filed their Motion. The declarations are all from current Nike employees. ECF No. 187-1 at 1-258. Plaintiffs had no opportunity to depose the declarants since Nike created them after the discovery cutoff. *See id.* Moreover, not a single declarant referenced a document created for business purposes. *See id.* Ultimately, Nike's litigation-designed declarations do not make it "impossible" for Plaintiffs to prove elements of their claims with classwide evidence.[8]

## IV.    PLAINTIFFS' EXPERT TESTIMONY IS CLASSWIDE EVIDENCE AND CAPABLE OF PROVING ELEMENTS OF PLAINTIFFS' CLAIMS.

Nike argues that the Court must determine whether Plaintiffs' expert evidence is persuasive.[9] But *Olean* held, if "the evidence is admissible and, after rigorous review, determined to be capable of establishing [an element] on a class-wide basis, it is for the jury, not the court, to decide the persuasiveness of" expert testimony. *Olean*, 31 F.4th at 678. Because Nike did not challenge the FR's finding that Plaintiffs' expert evidence is admissible, "a district … may only deny its use to meet the requirements of Rule 23 certification if 'no reasonable

---

certification, particularly where companies have significant influence over workers and declarants may have incomplete information); *Kurihara v. Best Buy, Inc.*, No. 3:06-cv-01884-MHP, 2007 WL 2501698, at *6-10 (N.D. Cal. Aug. 30, 2007) (rejecting "litigation-driven declarations" that challenged practice was inconsistently implemented and holding the declarations were insufficient to "inject fatal uncertainty into question of liability" where plaintiffs identified a companywide policy "that allegedly gives rise to consistent liability").

[8] Nike's cited cases do not support its claim that its declarations are highly probative. *See* ECF No. 268 at 19-20 (explaining how statement is not supported by *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, No. 2:06-cv-00225-PMP-PAL, 2008 WL 3179315 (D. Nev. June 20, 2008)); *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 527 (C.D. Cal. 2011) (silent about the probative weight that should be accorded the declarations and, in fact, the court granted the motion for class certification with respect to most of the claims).

[9] *See, e.g.,* ECF No. 328 at 41-42 (quoting FR at 53-54); *id.* at 42 n.28 (the FR "simply found [Dr. Lundquist's and Dr. Neumark's testimony] inadequate").

juror' could find it probative of whether an element of liability was met." *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 947 (9th Cir. 2019) (citation omitted).[10]

A.    <u>**Dr. Lundquist's Testimony Shows a Jury Can Make a Classwide Determination on the Comparability of the Class Jobs.**</u>

The testimony from Plaintiffs' Industrial Organizational Psychologist expert, Dr. Kathleen Lundquist, can prove which class jobs require comparable work.  Dr. Lundquist concludes that Nike jobs "at the same job level within Subfamily have been designated by Nike as similar in job content or type of work and *require* a similar level of knowledge, experience, scope, effort and responsibility based on [Nike's] leveling criteria."  ECF No. 146 at 19 (emphasis added).  Nike argues Dr. Lundquist's testimony has no probative value concerning comparable jobs because she cannot testify about the work employees "actually perform."  *See, e.g.,* ECF No. 328 at 42 (quoting FR at 23).  But Nike's argument fails to establish that no reasonable juror could credit Dr. Lundquist's testimony for two reasons.

First, the Oregon Equal Pay Act ("OEPA") focuses on the requirements of jobs; it does not require an examination of the work employees "actually perform," which may or may not be required.  *See* Or. Rev. Stat. § 652.210 (16) ("work of a comparable character" means "work that *requires* substantially similar knowledge, skills effort, responsibility and working conditions in the performance of work, regardless of job description or job title.") (emphasis added); *see also Bureau of Lab. & Indus. v. City of Roseburg*, 75 Or. App. 306, 310 (1985) (affirming finding that jobs were substantially similar based on the "nature and level of skills required and the equivalence of the combination of similar responsibilities they involve.").[11]

---

[10] *Olean* overruled the dicta from *Senne* that the "no reasonable juror" rule is limited to wage and hour cases.  *Olean*, 31 F.4th at 667 n.11.

[11] *See also Hein v. Or. Coll. of Educ.*, 718 F.2d 910, 914 (9th Cir. 1983) (finding reversible error where the district court focused on the actual skills of employees as opposed to the skills required for

Second, Nike does not claim Dr. Lundquist inaccurately found that Nike designates jobs at the same level and subfamily as requiring comparable work.  Nor could it because Dr. Lundquist did so based on Nike's job architecture documents, which Nike used for business purposes.  *See* ECF No. 148-1 at 16-26, 260-68 (Att. D, Nike document describing leveling criteria); *see also* ECF No. 146 at 17-21 (describing how, based on Nike documents and testimony, Nike uses its uniform job architecture's type and level of work to organize all the relevant jobs).[12]  Nike's job architecture uses "type of work" and "level of work" to "organize[]" all the class jobs "within a uniform hierarchy ...."  ECF No. 310 at 8.  Type and level of work are "consistent across the globe," and identified by, respectively, job families and Nike's levels. ECF No. 157-7 at 3.  Each level is a "grouping of the jobs with similar level of expertise, impact, experience and leadership ...."  ECF No. 158-4 at 12.  Nike's job architecture "allows [it] to level jobs across the organization, regardless of the location of the role, and facilitates career pathing, talent planning, and organizational design."  ECF No. 160-8 at 1.

Nike's job architecture is foundational for compensation and promotions.  For example, Nike defines a lateral move as within a level, which does not itself lead to an increase in compensation.  ECF No. 148-1 at 24-25, 37.  Nike also uses its architecture to set pay ranges. ECF No. 162-11 at 36.

---

the jobs because the EPA "explicitly applies to jobs that require equal skills, and not to employees that possess equal skills.") (citation omitted).  The OEPA's "comparable work" standard is broader than the EPA's standard.  *Freyd v. Univ. of Or.*, 990 F.3d 1211, 1223 (9th Cir. 2021).

[12] In determining whether jobs are comparable, a court may rely upon, like Dr. Lundquist did, how the employer evaluated, categorized, described, and determined the compensation for jobs. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 203 (1974) (rejecting employee's attempt to "differentiate between jobs which the company itself has always equated"); *Tomko v. Seiler Corp.*, 66 F.3d 1295, 1311 (2d Cir. 1995) ("decision to classify ... jobs in the same compensation range is evidence that the purported differences between the jobs may not be substantial").

Nike also argues Dr. Lundquist's testimony on behalf of Oracle in another case supports its attack of her analysis. ECF No. 328 at 43. But Dr. Lundquist testified that, in Oracle, the plaintiffs' expert based their analysis on "a review of a job table, not a very comprehensive job architecture defined in the way it is in Nike." ECF No. 212-2 at 6-8 (explaining "Nike's job architecture …is far more defined that what was the case in Oracle," and the companies used or evaluated "different criteria").[13] In sum, Dr. Lundquist's expert testimony constitutes classwide evidence that a jury could credit in deciding which Nike jobs require comparable work.[14]

**B.    Dr. Neumark's Testimony is Capable of Proving Elements of Plaintiffs' Claims and Key Facts for Liability.**

Nike argues that an aggregated multiple regression is prohibited because its managers make discretionary decisions, and that *Dukes* requires statistical studies to "'conform[] to the level of decision [where] the challenged practices' are made." ECF No. 328 at 36 (quoting *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 523 (N.D. Cal. 2012)). This argument is wrong for three reasons. First, Plaintiffs can show they challenge classwide policies. *See* section III.B, *supra*. Second, *Ellis* did not create this blanket rule, it was merely distinguishing *Dukes*. *See Ellis*, 285 F.R.D. at 523 ("[U]nlike in *Dukes*, here Plaintiffs' statistical analysis conforms to the

---

[13] A plaintiffs' expert is not, as Nike urges without support, required to do a job analysis to establish comparable work because it manufactures a requirement that no plaintiff could meet. *See* ECF No. 211 at 24-25. There "is no requirement that an expert run a specific analysis, so long as they have a methodological explanation for the analysis they chose." *Chen-Oster v. Goldman, Sachs & Co.*, No. 1:10-cv-06950-AT-RWL, 2022 WL 814074, at *7 (S.D.N.Y. Mar. 17, 2022), *reconsideration granted in part on other grounds*, 2022 WL 3586460 (S.D.N.Y Aug. 22, 2022) (internal quotation marks & citation omitted). Dr. Lundquist described her methodology and explained, "[g]athering information from informal samples of plaintiffs in a case would not qualify as an unbiased representative or professionally acceptable job analysis," ECF No. 148-2 at 14. Regardless, Dr. Lundquist's method was found reliable because Nike's *Daubert* motion was denied.

[14] The decisions that Nike cites in support of its argument concerning Dr. Lundquist, *see* ECF No. 328 at 44-45 & n.31, are irrelevant because they do not involve a plaintiffs' expert offering testimony based upon a detailed job architecture and comparison of what the employer determined are the job requirements.

level of decision for the challenged practices, including the adoption of the many companywide policies described above."). And, since *Dukes*, the Supreme Court explicitly "declined to adopt 'broad and categorical rules governing the use of representative and statistical evidence in class actions' …." *Olean*, 31 F.4th at 667 n.11 (quoting *Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 442, 459-60 (2016)). Rather, the evaluation "depend[s] on the purpose for which the expert evidence is being introduced and the underlying cause of action." *Id.* Third, "it is a generally accepted principle that aggregated statistical data may be used where it is more probative than subdivided data." *Paige v. California*, 291 F.3d 1141, 1148-49 (9th Cir. 2002), *as amended on denial of reh'g & reh'g en banc* (July 18, 2002) (rejecting disaggregation argument in part based on "plaintiffs' theory"); *see also* ECF No. 268 at 7 n.6, 11-13.

Nike also argues that it is impossible for a regression to control for independent variables. ECF No. 328 at 47-48. But "any categorical argument that a pooled regression model cannot control for variables relating to the individualized differences among class members must be rejected." *Olean*, 31 F.4th at 677. Likewise, Nike's attempt to distinguish *Olean* because it involved "one type of fish" misrepresents the facts in *Olean* and misunderstands multiple regression analysis. *See* ECF No. 268 at 9-10 (describing how Nike's analogy is wrong because it is comparing the one dependent variable in *Olean* with independent variables here). Instead, *Olean* supports the multiple regression here because the plaintiffs' expert in *Olean* controlled for numerous independent variables that could affect the dependent variable, price of tuna, like Dr. Neumark controlled for variables that can impact pay, to isolate the effect that one variable had on the dependent variable. *Id.* Moreover, while the expert in *Olean* sought to control for independent variables in a case that involved the entire nationwide market of tuna, controlling for comparable work here concerns jobs that Nike organized and controls at a single location.

## V.    PLAINTIFFS' COMMON EVIDENCE SHOWS THEIR OEPA CLAIM IS CAPABLE OF CLASSWIDE RESOLUTION.

The elements of Plaintiffs' OEPA claim are capable of classwide resolution.  To prove the comparable work element, Plaintiffs will introduce Dr. Lundquist's testimony and Nike documents.  *See* section IV.A, *supra*.  Likewise, the pay disparity element is capable of classwide resolution based on Dr. Neumark's regression analysis.  This evidence can prove Nike pays women over $3,000 less than men per year for comparable work.  ECF No. 149-1 at 29 ¶¶ 46-47.[15]  Because each class member can rely on this expert testimony and evidence for their *prima facie* showing of the OEPA liability if they brought an individual action, the testimony of Dr. Lundquist and Dr. Neumark show that both OEPA elements are capable of classwide resolution.[16]

In contrast, Nike's Response does not rely on any statistical evidence to claim women are not paid less for comparable work.  ECF No. 328 at 45-48.  Instead, it argues a disaggregated analysis is required because an "aggregated" statistical evidence "*cannot* tell the jury whether women are paid less than men within a specific subfamily-level grouping."  ECF No. 328 at 46.  But Dr. Neumark explained, while "an aggregated model that includes detailed controls … provides precise estimates of potential gender difference in pay," a "disaggregated model … reduces statistical precision, which masks common mechanisms that … cause discrimination."  ECF No. 149-2 at 5 ¶ 3; *see also* section IV.B, *supra*; ECF No. 240 at 24-25 (describing how

---

[15] This disparity is statistically significant at 9.55 standard deviations ("SDs"), meaning the probability this occurred by random chance is less than 1 in 1 billion.  ECF No. 149-1 at 16 ¶ 27.

[16] *Olean,* 31 F.4th at 667 (The common question requirement can be met "if each class member could have relied on the plaintiffs' evidence to establish liability if he or she had brought an individual action, and the evidence could have sustained a reasonable jury finding on the merits of a common question ….") (internal quotation marks, citations, & brackets omitted).

aggregation is well-established).[17]  Nike likewise ignores binding authority in arguing that a

regression is incapable of controlling for jobs.  *See* section IV.B *supra*; *see also* ECF No. 320 at

40, 48-49.  Dr. Neumark's regression is thus capable of resolving a common question – whether

women are paid less for comparable work.[18]  The determination and allocation of damages, what

Nike argues about, is an issue for the damages stage of the trial.  *See* section IX.B.2, *infra*.[19]

## VI.    PLAINTIFFS' COMMON EVIDENCE SHOWS THEIR DISPARATE TREATMENT CLAIMS ARE CAPABLE OF CLASSWIDE RESOLUTION

Plaintiffs' statistical and other classwide evidence can prove discrimination against

women was Nike's regular rather than the unusual practice.  *See* ECF No. 240 at 29-32.  This

evidence can show Nike paid women less, Nike was forced to admit its policies, top

management, and HR caused or condoned a pattern of discrimination, and Nike failed to address

this known discrimination.  *Id*.

Nike does not dispute that, after it received the Starfish Survey identifying

"approximately 22 Nike executives" who allegedly discriminated or condoned discrimination

against women, its CEO admitted that "strong and courageous employees" made Nike "aware of

behavior … that [does] not reflect our core values" and Nike's HR processes "underserved" Nike

"in recent years."  ECF No. 163 at 9-10; ECF No. 146 at 40; ECF No. 320 at 43-44.  Nike also

does not dispute that receipt of the Starfish Survey caused it to force out executives.  ECF No.

---

[17] Dr. Neumark also conducted a disaggregated analysis on rebuttal across different job cells, which confirmed the accuracy of his preferred multiple regression analysis.  *See* ECF No. 149-2 at 74-75 ¶¶ 112-13.

[18] *Bolden v. Walsh Construction Co.*, 688 F.3d 893, 895-98 (7th Cir. 2012) is inapposite because that expert did not control for other variables, and plaintiffs only challenged "discretion" afforded to superintendents at 262 construction sites, which had "different policies."

[19] Courts have determined that a multiple regression analysis with appropriate controls may be employed to calculate damages and that aggregated analyses provide superior evidence than the identification of a single male comparator.  ECF No. 320 at 49 n.27 & 57 n.28.

146 at 41, n. 40.  Nor does Nike argue Plaintiffs' evidence is not classwide.[20]

Instead, Nike argues the FR correctly decided its admissions have no probative value.

ECF No. 328 at 39 n.26 (citing FR at 19-21).  But this is a decision for the jury.[21]  And Nike's

reliance on a handful of positive statements (ECF No. 328 at 39-40) do not show that Plaintiffs'

evidence has no probative value.  *See* section III.C, *supra*.[22]

Plaintiffs' evidence further demonstrates Nike maintains policies it knows or should

know cause discriminatory impact, such as calculating salary increases and bonuses based on

current pay or its continued use of noncompetitive promotions.  ECF No. 240 at 31; ECF No.

146 at 59.[23]  This includes Nike's decision to halt its examination of the adverse impact of its

promotion practices before it was completed.  ECF No. 146 at 33, 56-57.

Plaintiffs also presented compelling statistical evidence that tells a straightforward story

of Nike's pattern of sex discrimination.  It begins at hire, with Nike paying women lower starting

salaries and assigning them to lower-level jobs even though they have equal or better

---

[20] Nike discounts the Starfish Survey, claiming such evidence raises "individual rather than common questions."  ECF No. 328 at 38-41.  But Nike's responses to these complaints, from long-time employees admitting systematic issues, such as the inadequacy of HR, is classwide evidence of Nike's pattern or practice of discrimination.  *See* ECF No. 146 at 37-38; ECF No. 320 at 42-44.

[21] Moreover, Nike and the FR ignore that the Magistrate Judge denied Plaintiffs' request for an order compelling discovery concerning these admissions, which Nike opposed by arguing it was "unwarranted" at the "precertification stage …."  *See* ECF Nos. 89 and 165-2 at 2-3, 13, 17-18; *see also* ECF No. 146 at 40 & n.37 (Nike refused to produce discovery concerning its response to the Starfish Survey).

[22] Nike's citation to *Serrano v. Cintas Corp.*, Nos. 04-40132, 06-12311, 2009 WL 910702, at *7 (E.D. Mich. Mar. 31, 2009) only emphasizes the significance of Nike's admissions.  Unlike the statements concerning general efforts to increase diversity in *Serrano*, Nike and its CEO acknowledged specific problematic behavior, HR failures, and the exiting of executives.

[23] *See EEOC v. Inland Marine Indus.*, 729 F.2d 1229, 1235 (9th Cir. 1984) ("By refusing … to bring black wages in line with those of whites," the "existing disparities" were "ratified," which was "all the intent the court needed to find…disparate treatment…"); *Dayton Bd. of Educ. v. Brinkman*, 443 U.S. 526, 536 n.91 (1979) ("proof of foreseeable discriminatory consequences is one type of quite relevant evidence of discriminatory …  purpose").

qualifications as men. Then, despite women having similar performance ratings and tenure, Nike continues paying women less in salary and bonuses while promoting them less frequently than men. The probability of these gender disparities occurring due to random chance is less than 1 in 1 billion. ECF No. 320 at 42. This statistical significance "addresses directly" plaintiffs' *prima facie* showing of disparate treatment because it "is a measure of the probability that the outcome of a statistical analysis would have occurred by chance," and thus the "lower the probability that the observed outcome could have occurred by chance, the stronger the inference of discrimination that can be drawn from the data." *Segar v. Smith,* 738 F.2d 1249, 1282 (D.C. Cir. 1984).

Nike argues Plaintiffs' expert evidence has no probative value because it is an aggregated statistical analysis. But aggregated analyses are both well-accepted and supported here. *See* section IV.B, *supra*; *see also Moussouris v. Microsoft Corp.*, 311 F. Supp. 3d 1223, 1236 (W.D. Wash. 2018) (rejecting the employer's assertion that "aggregated statistics [are] irrelevant to" commonality because the employer "relied on an overreading of *Dukes*," which just concluded "that aggregated statistical evidence … was insufficient when the 'only corporate policy … is [one] *allowing discretion* by local supervisors.'") (emphasis in original). Likewise, the reason the court in *Moussouris* found the statistics irrelevant at class certification was not because the statistics were aggregated, but rather because the plaintiffs "unequivocally predicat[ed] their challenge on the discretion allowed" under Microsoft's performance evaluation process. *Moussouris v. Microsoft Corp.*, No. 2:15-cv-01483-JLR, 2018 WL 3328418, at *18, *24 (W.D. Wash. June 25, 2018). Here, Plaintiffs seek to prove classwide policies caused the discrimination, not the "unfettered discretion given to supervisors." *Chen-Oster*, 2022 WL

814074, at *21 n.25 (distinguishing *Moussouri*s on that basis); *see also* ECF No. 320 at 38-39.[24]

Lastly, Nike's argument that disparities might be attributable to only a small number of Nike

managers was previously addressed, *see* ECF No. 320 at 41, and not rebutted by Nike.

## VII.    PLAINTIFFS' COMMON EVIDENCE SHOWS THE ELEMENTS OF THEIR FOUR DISPARATE IMPACT CLAIMS ARE CAPABLE OF CLASSWIDE RESOLUTION.

Because Plaintiffs' common evidence can prove each element of their disparate impact

claims, commonality is met.  Nike's defense of the FR fails for these claims because it disregards

Plaintiffs' legal theory and ignores Plaintiffs' common proof.[25]

### A.    Plaintiffs' Classwide Evidence Can Prove that Nike's Award of Bonuses and Salary Increases as a Percentage of Current Salary Disparately Impacted Women.

#### 1.    Bonuses

Based on classwide evidence, Plaintiffs can prove that Nike's companywide policy of

calculating bonuses as a percentage of employees' base salary has a disparate impact on women

because they start with lower salaries.  ECF No. 320 at 29-31.  The FR found Nike has had this

classwide policy of awarding bonuses as a percentage of current salary.  ECF No. 310 at 12.

Plaintiffs' statistical evidence can show this policy caused a disparate impact on women, during

the class period, of $640 less in bonuses each year compared to similarly situated male

---

[24] Nike's other cited decisions are distinguishable because the plaintiffs there sought to prove that discretion of lower-level managers caused discrimination.  *See* ECF No. 240 at 28-29.

[25] Nike misstates the elements of a disparate impact claim by asserting that disparate impact must "look at the reason for a particular employment decision." ECF No. 328 at 12 (quoting FR at 38 and *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 877 (1984)).  But a prima facie disparate impact claim must focus on "a group-based disparity," which depends on "statistical evidence" since "discriminatory consequences are perceptible only in the *aggregate* ...." *Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1115 & n.4 (9th Cir. 2014) (emphasis added).  Regarding *Cooper*, the Court was describing the "manifest" difference between an individual and pattern-or-practice claim: the "inquiry regarding an individual's claim is the reason for a particular employment decision, while 'at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking.'" 467 U.S. at 877 (citations omitted).

employees.  ECF No. 320 at 31.[26]  In contrast, Nike's Response does not rely on any statistical

evidence claiming to show the disparity is non-existent or explained by a legitimate factor.[27]

     Nike argues, instead, commonality is not met because it claims the process of

determining bonuses and salary increases involves manager discretion.  But this argument fails

for several reasons.

     First, Nike misstates Plaintiffs' theory by asserting that Plaintiffs challenge the entire

bonus process and the process includes alleged manager discretion.  Yet Title VII does not

require Plaintiffs to challenge the entire process.  42 U.S.C. § 2000e-2(k)(1)(B)(i) (requiring

plaintiffs to demonstrate "each particular challenged employment practice" or challenge the

"decisionmaking process.").  Here, Plaintiffs challenge the particular practice of using current

salary.  Nike cannot choose its own preferred theory over Plaintiffs' actual theory of liability.

*See* section III.B, *supra*.[28]

     Second, regardless of any alleged discretion elsewhere in the process, Nike has uniformly

required the use of current salary as an input when calculating bonuses, and there has been *no*

discretion in the award of bonuses since 2019.  ECF No. 158-5 at 11 (for the only factor that

---

[26] When controlling for similar jobs, Plaintiffs' expert shows that there is a female bonus shortfall of about 3.16%, about 5.6 SDs or $640.  ECF No. 149-1 at 44 ¶ 86, and 55, Table 2, Panel B, cols 3 and 4.  Dr. Neumark includes controls that might influence pay. ECF No. 149-1 at 29 and 55 (Table 2, controls listed at bottom of Table).  Accordingly, the bonus shortfalls occur between male and female employees in comparable jobs with the "same age, job tenure, time in job and performance."  *See* ECF No. 149 at 29 ¶ 47.

[27] Nike also does not attempt to rebut Plaintiffs' expert testimony that using "a percentage of the employee's base pay will continue to exacerbate existing gender differences in pay."  ECF No. 146 at 28.

[28] Nike further misstates Plaintiffs' claim, reinforcing an error in the FR, arguing that Plaintiffs must show a "company-wide policy of using prior pay to set starting salaries."  ECF No. 328 at 22; FR at 47-48.  But Plaintiffs' claim is based upon the gender disparity in base pay regardless of the cause of that disparity.  ECF No. 320 at 14, 30.

could include discretion, Nike made it the same for everyone: "Based on a single, shared Nike performance metric, individual modifiers are 100%); ECF No. 320 at 31.

Third, Nike's assertions regarding the non-salary factors used prior to 2019, such as jobs or performance ratings, ECF No. 328 at 18-19, 21, are irrelevant because Dr. Neumark controlled for both and they do not explain the statistically significant gender disparities in the award of bonuses. By contrast, Nike's argument that other factors are somehow relevant is speculation that is unable to rebut Plaintiffs' statistical evidence. *See* ECF No. 320 at 41 (citing cases rejecting speculative attacks to statistical analyses).

Fourth, any alleged discretion related to the pre-2019 performance modifier factor is immaterial since the mechanical application of required factors was also subject to upper-level review and approval.[29]

Nike also attempts, unsuccessfully, to distinguish *McReynolds*.[30]  In *McReynolds*, the plaintiffs challenged a "teaming policy," which allowed brokers to form teams, but left them with the discretion on whether or not to form or participate in teams. The Seventh Circuit ruled that this companywide teaming policy raised common questions supporting certification. 672 F.3d at 489. Here, like in *McReynolds*, Plaintiffs challenge Nike's classwide policy requiring the use of current salary to calculate annual bonuses.

---

[29] *See* ECF No. 158-6 at 13 (emphasis added) (role of executives "to review, align and *approve* awards for all employees below them in the organization"); ECF No. 159-3 at 3 (for salary increases and bonuses "[a]dditional approvals by Senior Leadership … will be required before awards are finalized and activated"); *see also* ECF No. 146 at 26.  The FR cited to and quoted from ECF Nos. 158-6 and 159-3, FR 13-14, but omitted the language that contradict the FR's conclusion that there was no executive review and that review was limited to the immediate supervisor ("manager +1").  For example, the FR quotes from ECF No. 159-3 that the "system requires 'manager+ 1' approval for salary increases and bonuses," FR at 14, but fails to quote that "[a]dditional approvals by Senior Leadership … will be required …."

[30] *McReynolds v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 672 F. 3d 482, 488 (7th Cir. 2012), *abrogated on other grounds*, *Phillip v. Sheriff of Cook Cnty.*, 828 F. 3d 541 (7th Cir. 2016).

Finally, Nike asserts, for the first time and without citing any authority, that Plaintiffs can only prevail if Nike awarded "each employee exactly the same percentage increase." ECF No. 328 at 23. This is nonsensical. What matters is whether the percentage-based policy results in disparate impact to women, not whether the percentage applied is exactly the same for all employees. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 819 (7th Cir. 2012) (finding denial of certification was in error where the court required "uniformity" of price increases in an antitrust action because this "would come very close to requiring common proof of damages for class members, which is not required.")

2.    **Salary Increases**

As the FR found, Nike has maintained a companywide policy of calculating salary raises by a percentage of existing salary during the entire class period. FR at 12. Nike does not provide any evidence that contradicts Plaintiffs' statistical evidence showing that this policy perpetuated gender disparities in starting pay or Dr. Lundquist's expert opinion that the policy is "problematic" because "gender differences [in pay] tend to be perpetuated …." ECF No. 320 at 30-31. Plaintiffs have presented common evidence capable of proving that the percentage-based policy for salary increases disadvantages women.

As with bonuses, Nike mischaracterizes Plaintiffs' challenge as focused on the exercise of discretion by managers and raises the same alternative arguments, which fail for the same reasons above. *See section VII.A.1, supra.* [31]

---

[31] Furthermore, Nike, like the FR, does not discuss or acknowledge Plaintiffs' classwide evidence that managers only make recommendations for salary increases, limited by detailed guidelines, and that Nike enforces compliance with these detailed guidelines through the companywide Human Resources Business Partners (HRBPs). ECF No. 146 at 25.

**B.**    **Plaintiffs' Classwide Evidence Is Capable of Proving Nike's Starting Pay Policy Disparately Impacted Women.**

Common evidence of Nike's starting pay policies, including documents created in the normal course of business, testimony, admissions, and statistical analysis, prove a common issue suitable for class certification.  ECF No. 320 at 22-29.  Nike does not rebut this showing.

First, Nike's attempts to dismiss its own documents, created for business use, are unpersuasive and do not undermine Plaintiffs' ability to rely upon them to prove Nike had a classwide policy of using prior pay as a factor in setting starting salary.  *See* ECF No. 320 at 22-24.  Nike does not dispute its standard policy and process documents showing this classwide policy, including its standardized Offer Intake Form, which is a template that Nike told all Talent Acquisition employees to use and that sought candidates' prior pay.  *Id.*  Nor does Nike dispute its training documents that acknowledge it "often focused on a hire's prior salary" and the negative effects of this practice, as well as written admissions that Nike will "remove bias … by eliminating the collection of candidate salary history."  *Id.*[32]

Second, Nike seeks to defend the FR's conclusion that "an intervening change in the law required Nike to issue directives not to use the factor [prior pay] is not evidence of a prior directive requiring its use."  ECF No. 328 at 18, quoting FR at 45.  Yet the plain reading of this document shows that Nike stopped an existing practice by mandating that employees can "no longer" use candidates' "compensation history."  ECF No. 320 at 23.

Third, Nike's Response does not present any statistical evidence to counter Plaintiffs' evidence showing that women have statistically significant lower starting wages salaries when controlling for comparable jobs and other potential factors.  Dr. Neumark's analysis can prove

---

[32] Nike objects, *see* ECF No. 328 at 56 n.40, that Plaintiffs presented new evidence with their objections, but the evidence was previously referred to, and Rule 72 explicitly allows for the district judge to "receive further evidence."  Fed. R. Civ. P. 72 (b)(3).

that Nike paid women approximately $1,300 less per year (or 1.18% less) in starting pay despite women having "on balance" more relevant experience and education than the men.  ECF No. 320 at 26-27.  Nor does Nike's Response rebut Plaintiffs' statistical evidence showing the substantial drop in the gender disparity after Nike changed its prior pay policy.  *Id*. at 27.

Fourth, Nike's selected testimony fails to show that Plaintiffs' classwide evidence has no probative value.  *See* section III.C, *supra*.  For example, Nike misrepresents Plaintiff Kelly Cahill's testimony by asserting she made "starting pay decisions;" rather, she testified to making starting pay *recommendations*, not the final decisions, which HR provided her and then were finalized by upper management and HR.  ECF No. 187-2 at 108-109, tr. 240:1-241:18.  Ms. Cahill's testimony is thus consistent with Nike's starting pay policy in which managers provide a "viewpoint" on starting offers while HR and business leaders made the final offer.  ECF No. 320 at 27 n.7.  Further, Nike's reliance upon the testimony of corporate witness, Shine Thomas, to contend that Nike did not have a "prior pay" policy is also misplaced.  *See* ECF No. 328 at 15-16.  Ms. Thomas' testimony supports Plaintiffs' theory because she admitted that prior pay was a "data point" used by Nike to set starting pay and that Nike made a "policy change" when it stopped using prior pay.  ECF No. 320 at 29.

## C.    Plaintiffs' Classwide Evidence Can Resolve Whether Nike's "Fill Strategy" Policy Caused a Disparate Impact on Women.

Plaintiffs' evidence regarding Nike's "fill strategy," the decision Nike made on whether to promote using its competitive process (which involves job postings and applications) or noncompetitive process (which do not), is capable of resolving common questions of its adverse impact on women.  ECF No. 320 at 32 and ECF No. 328 at 24-27.  It is undisputed that Nike made a companywide change to its fill strategy policy in 2018 to prohibit noncompetitive promotions for E band and below, whereas it previously permitted noncompetitive promotions at

all job classification levels.  *See* ECF No. 146 at 32-33 (Nike changed its fill strategy policy, in part, to respond to companywide complaints about a lack of transparency or fairness in the noncompetitive process).  And Nike does not dispute that the noncompetitive promotion process results in statistically significant gender disparities even when controlling for legitimate variables such as performance ratings, whereas there were no statistically significant disparities resulting from the competitive process.  ECF No. 320 at 34; ECF No. 328 at 24.

Rather, Nike, like the FR, reframes Plaintiffs' claim as based upon a challenge to the exercise of discretion.  ECF No. 328 at 24 (quoting FR at 48); *see* section III.B, *supra*.  Nor do Nike's other arguments show it is impossible for Plaintiffs' evidence to resolve common issues.

First, Nike ignores its training documents and the testimony regarding those documents from Ms. Heinle, who Nike designated to testify about noncompetitive promotions, that "[a]s part of the [annual talent] planning cadence … you could determine if there were competitive or noncompetitive" promotions.  ECF No. 161-10 at 23-24, tr. 200:13-201:2; ECF No. 158-9 at 16 (illustrating annual Talent Planning Cadence); ECF No. 320 at 32.  Nike instead cites testimony by Ms. Heinle about how Nike filled a position *after* the decision has been made to do so noncompetitively, which is not relevant to Plaintiffs' claim.  ECF No. 328 at 25.[33]

Second, without any citation, Nike states that "[n]oncompetitive promotions typically occur when a role has expanded in scope [and] the direct manager decides…."  ECF No. 328 at 25.  Nike's unsubstantiated assertion is at odds with Nike documents explaining that Nike applied its fill strategy pursuant to its annual planning process.  ECF No. 320 at 32-33.

---

[33] Nike cannot rely upon a general statement regarding "fill strategy" from another corporate witness, Ms. Thomas (ECF No. 328 at 26), because her discussion of the hiring process once the competitive process has been selected did not address the preceding fill strategy process. ECF No. 187-2 at 279-80, 295.

Third, arguing that individual hiring managers make fill strategy decisions, Nike relies upon the litigation-driven declarations of three current Nike employees, but these declarations do not reveal any such support.[34]  In fact, in one instance, the declaration confirms that Nike's fill strategy requires the approval of upper-level executives and HR.[35]

Finally, *Ellis* supports the commonality of Plaintiffs' fill strategy challenge because it explained that "the *Dukes*-identified problem of decentralized or discretionary individual managers' decisions presents less of a hurdle to certification if the plaintiffs identify *specific companywide employment practices* responsible for the disparate impact."  *Id*. at 531 (emphasis in original).  It is particularly instructive that the *Ellis* court expressly relied upon *McReynolds* and its determination that the employer's "teaming" policy satisfied commonality because it "presented common issues proper for classwide adjudication despite the fact that such policies permitted discretion on the part of brokers."  *Id*. at 532, *citing McReynolds*, 672 F.3d at 489.

**D.**     **Plaintiffs' Classwide Evidence Can Resolve Whether Nike's Hiring Process Had a Disparate Impact on Women in Starting Job Level.**

Plaintiffs challenge Nike's hiring process as one employment practice because Nike's hiring process is not capable of separation for analysis and Dr. Neumark's regression finds statistically significant disparities for women in starting job level.  ECF No. 320 at 34-36.  Nike claims that this challenge is new, but Plaintiffs raised this argument in each of their filings for certification.  ECF No. 240 at 21; ECF No. 146 at 54; ECF No. 268 at 28.

---

[34] ECF No. 187-1 at 57 (no mention of fill strategy but she made recommendations, not decisions, about promotions); 187-1 at 97 (never defines reference to fill strategy, but discusses posting open positions internally or externally rather than competitively or noncompetitively).

[35] ECF No. 187-1 at 24 (VP stating, "I do typically need to approve all fill strategy decisions" which is "done in collaboration with my peers and Human Resources.").

Nike also argues that challenging Nike's hiring process as a single employment practice is prohibited because it "cannot substitute for the identification of a specific policy susceptible to certification."  ECF No. 328 at 29 (citing *Meacham v. Knolls Atomic Power Lab'y*, 554 U.S. 84, 100-101 (2008)).  Nike's argument mischaracterizes Title VII and *Meacham*.  Title VII provides that a disparate impact claim can either challenge "a particular employment practice" or, if "the elements of a respondent's decision-making process are not capable of separation for analysis, the decision-making process may be analyzed as one employment practice."  42 U.S.C. § 2000e-2(k)(1)(B)(i).  And Nike misapplies *Meacham*, which concerned the Age Discrimination in Employment Act ("ADEA"), not Title VII, and explicitly noted that "disparate-impact liability … was narrower in ADEA cases than under Title VII."  554 U.S. at 98.

Nike does not argue that any of Plaintiffs' evidence, including Dr. Neumark's unrebutted analysis, is incapable of resolving a question common to the class.  *See* ECF No. 328 at 27-30.

## VIII.  PLAINTIFFS MEET THE TYPICALITY AND ADEQUACY REQUIREMENTS.

### A.  Plaintiffs' Claims Are Typical of the Class Because They Challenge Classwide Policies.

Nike raises no arguments regarding typicality separate from their commonality arguments, which are addressed above.  *See* ECF No. 328 at 50; sections V-VII, *supra*.  Plaintiffs' claims are typical because they are co-extensive of the claims of the class members as they challenge classwide policies, not manager discretion.

### B.  Plaintiffs Are Adequate Because They Have No Conflicts with the Class.

While the FR did not credit this argument, Nike claims that intra-class conflicts between supervisors and non-supervisors precludes adequacy.  *See* ECF No. 328 at 50.  But Plaintiffs have no conflict of interest with class members because they challenge the same classwide policies that affect the entire class.  *See, e.g., Staton v. Boeing,* 327 F.3d 938, 958-59 (9th Cir.

2003).  Furthermore, the interchange of employees between supervisory and non-supervisory job levels, which Nike does not dispute, underscores the lack of conflict.  *See* ECF No. 149-1 at 80; ECF No. 146 at 62.  Finally, Nike's argument of intra-class conflict incorrectly assumes that Plaintiffs challenge decisions by class members as opposed to classwide policies.  *See* ECF No. 240 at 36-37.[36]

## IX.    PLAINTIFFS MEET THE REQUIREMENTS OF RULE 23(B).

### A.    Certification Under Rule 23(b)(2) Is Justified.

Because Plaintiffs have established common issues concerning their disparate impact, disparate treatment, and OEPA claims, Rule 23(b)(2) certification follows to provide necessary injunctive relief.

The FR correctly disregarded Nike's argument that Plaintiffs lack standing to seek equitable relief under Rule 23(b)(2).  First, Nike does not dispute that Plaintiff Hender has standing to seek injunctive relief because its retaliatory discharge of her for participating in this class action is an exception to the general mootness rule.  *See Slayman v. Fedex Ground Package Sys., Inc.*, 765 F.3d 1033, 1048 (9th Cir. 2014); ECF No. 240 at 38.  Second, contrary to Nike's assertion, the Ninth Circuit does not require that former employees actively seek rehire, but rather that there be "a reasonably certain basis for concluding he or she has some personal need for prospective relief."  *Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 865 (9th Cir. 2017).[37] Here, Plaintiff Johnston's unequivocal intent to return to Nike establishes her personal need for prospective relief.  ECF No. 240 at 38.

---

[36] As previously discussed, managers only made recommendations, cabined by Nike's detailed guidelines and subject to business leader and HR approval.  *See* ECF No. 240 at 16 n.15.

[37] *Walsh v. Nevada Department of Human Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006), cited by Nike, is distinguishable because there was no indication in the complaint that plaintiff had any interest in returning to work for the defendant, unlike Plaintiff Johnston here.

Nike's alternative argument that there is nothing to enjoin is meritless.[38]  Because Nike continues to apply several challenged policies (use of percentage of salary for salary increases and bonuses and noncompetitive promotions), ceasing those policies is essential to stop Nike's ongoing discrimination against women.  *See* ECF No. 320 at 51.[39]

**B.    Certification Under Rule 23(b)(3) Is Justified.**

    **1.    Common Questions Predominate Because Central Issues Are Capable of Classwide Resolution.**

Plaintiffs satisfy predominance as to their disparate impact, disparate treatment, and OEPA claims because Plaintiffs can prove the elements of their claims using classwide evidence. *See* sections V-VII, *supra*; *see also* ECF No. 320 at 53-56.

For Plaintiffs' OEPA claims, Nike also argues that it is "entitled" to raise a litany of individualized defenses that will overwhelm Plaintiffs' common proof and predominance.  ECF No. 328 at 45, 52.[40]  Nike's argument fails for two reasons.

First, Nike's argument about these potential defenses is speculative because it fails to explain or provide evidence in support of its assertions.[41]  Second, there is no due process right to present unlimited evidence to counter Plaintiffs' *prima facie* showing or raise affirmative

---

[38] Nike shielded its investigation and response to the Starfish complaints and the effectiveness of its pay equity study under attorney-client and work-product privilege, so it is impossible to know whether the discriminatory consequences of the challenged policies continue.  Similarly, Nike's refusal to provide data past 2019 for class certification purposes renders it impossible to know the necessary extent of injunctive relief.

[39] Contrary to Nike's argument, courts have held that plaintiffs are not required to meet Federal Rule of Civil Procedure 65(d) to obtain class certification. *See Ashker v. Governor of State of California*, No. 4:09-cv-05796-CW, 2014 WL 2465191, at *7 (N.D. Cal. June 2, 2014).

[40] Nike does not dispute its affirmative defenses to Plaintiffs' disparate impact claims are capable of class resolution.  *See* ECF No. 320 at 36-37 and ECF No. 328 at 50.

[41] *See Rizo v. Yovino*, 950 F.3d 1217, 1222 (9th Cir. 2020) ("To counter a prima facie case, an employer must prove not simply that the employer's proffered reasons *could* explain the wage disparity, but that the proffered reasons *do in fact* explain the wage disparity.") (emphasis in original) (internal quotations and citations omitted).

defenses.  Plaintiffs intend to identify jobs that require comparable work based on Dr.

Lundquist's testimony and Nike's well-defined, uniform job architecture.  Accordingly, Nike can

and likely will present classwide rebuttal evidence by either an expert or Nike top managers to

dispute whether Nike's system, in fact, identifies comparable work.[42]  Likewise, an affirmative

defense based on job-related factors, such as education, can be resolved classwide since

Plaintiffs' multiple regression analysis controls for these factors and can prove liability and

damages.  *See Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 481-82 (2d Cir. 2001).[43]  Further,

courts have the authority, under the rules of evidence and civil procedure, to impose reasonable

limits on the presentation of evidence,[44] and Nike cites no contrary authority.

2.    **A Class Action is Manageable and Superior to Individual Trials.**

Nike ignores two critical reasons supporting the superiority of a class action proceeding.

First, a single class trial is superior to 5,200 individual trials because it eliminates significant

barriers to adjudication for putative class members, like cost-prohibitive expert costs or fear of

retaliation.  Second, it avoids inconsistent rulings from thousands of separate trials on

overlapping issues because it resolves classwide issues in a single proceeding.

Furthermore, Plaintiffs' trial plan sets forth a well-established bifurcated proceeding

whereby liability and certain classwide relief are adjudicated in Phase 1 and damages in Phase 2.

Nike can present affirmative defenses in Phase 1, subject to reasonable limitations to the

---

[42] While Nike may have a due process right to assert a cognizable defense against liability, it does not have an unfettered right to choose the most time-consuming and repetitive evidence available to prove it.

[43] *See also* ECF No. 320 at 40-41, 57.

[44] Annotated Manual for Complex Litig. § 11.644 (4th ed. May 2022 update); *see also* Fed. R. Civ. P. 16(c)(2)(D) (a court may take appropriate action "avoiding unnecessary proof and cumulative evidence, and limiting the use of testimony under Federal Rule of Evidence 702"); Fed. R. Evid. 403 (authorizing courts to exclude evidence if its probative value is substantially outweighed by danger of "undue delay, wasting time, or needlessly presenting cumulative evidence").

evidence, which can include representative sampling of evidence if needed.  And as to damages,

Plaintiffs intend to prove women were paid less than men using statistical proof, which courts

endorse.  ECF No. 320 at 49 n.27 & 57 n.28.[45]

## X.    CERTIFICATION UNDER RULE 23(C)(4) IS AN ALTERNATIVE AVAILABLE TO THE COURT.

Although certification under Rule 23(b)(3) is well-justified, the Court can certify issues

under Rule 23(c)(4) if it finds individualized issues predominate.  *See* ECF No. 320 at 58.  A

court may grant class certification for issues under Rule 23(c)(4)(A) sua sponte.[46]

## XI.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court decline to adopt the

FR and instead grant Plaintiffs' motion for class certification as requested, ECF No. 146.

Dated:  March 1, 2023                  Respectfully submitted,

                                        GOLDSTEIN, BORGEN, DARDARIAN & HO


                                        Barry Goldstein, Of Counsel (admitted *pro hac vice*)
                                        Laura L. Ho (admitted *pro hac vice*)
                                        James Kan (admitted *pro hac vice*)
                                        Byron Goldstein (admitted *pro hac vice*)
                                        Katharine L. Fisher (admitted *pro hac vice*)
                                        Mengfei Sun (admitted *pro hac vice*)

---

[45] Phase 2 damages proceedings rarely require mini-trials as to each and every class member either because of classwide damages determinations, procedural tools like special masters and claims processes or settlement.  *See Maney v. State*, No. 6:20-cv-00570-SB, 2022 WL 986580, at *23 (D. Or. Apr. 1, 2022) (citing *Arnold v. United Artists Theatre Cir., Inc*., 158 F.R.D. 429, 459 (N.D. Cal. 1994)) ("as a practical matter, when liability is found during an initial phase, bifurcated cases often settle, thereby obviating the need for adjudicating issues of class damages").

[46] *See In re Copley Pharm., Inc*., 158 F.R.D. 485, 491 (D. Wy. 1994) ("the Court must look to its authority under Rule 23(c)(4)(A) to grant class certification for particular issues, which the Court may do sua sponte").

MARKOWITZ HERBOLD PC
Laura Salerno Owens, OSB #076230
David B. Markowitz, OSB #742046
Harry B. Wilson, OSB #077214
Kathryn P. Roberts, OSB #064854
ACKERMANN & TILAJEF PC
Craig Ackerman (admitted *pro hac vice*)
cja@ackermanntilajef.com
1180 S Beverly Drive, Suite 610
Los Angeles, CA 90035
Tel:  (310) 277-0614
Fax:  (310) 277-0635

INDIA LIN BODIEN LAW
India Lin Bodien (admitted *pro hac vice*)
india@indialinbodienlaw.com
2522 North Proctor Street, #387
Tacoma, WA 98406-5338
Tel:  (253) 503-1672
Fax:  (253) 276-0081

Of Attorneys for Plaintiffs and Opt-In Plaintiffs