LAURA E. ROSENBAUM, OSB No. 110061
laura.rosenbaum@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 300
Portland, OR  97205
Telephone:  (503) 294-9642
Facsimile:  (503) 220-2480

DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Attorneys for Defendant NIKE, INC.


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


| | |
|---|---|
| KELLY CAHILL, SARA JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NIKE, INC., an Oregon Corporation,<br><br>Defendant. | Case No.:  3:18-cv-01477-JR<br><br>DEFENDANT NIKE, INC.'S OPPOSITION TO RENEWED MOTION OF NON-PARTY MEDIA ORGANIZATIONS INSIDER INC. *d/b/a BUSINESS INSIDER,* ADVANCE LOCAL MEDIA LLC *d/b/a OREGONIAN MEDIA GROUP*, AND AMERICAN CITY BUSINESS JOURNALS, INC. *d/b/a PORTLAND BUSINESS JOURNAL* TO UNSEAL JUDICIAL RECORDS |


DEFENDANT NIKE, INC.'S OPPOSITION TO NON-PARTY MEDIA
INTERVENORS' MOTION TO UNSEAL JUDICIAL RECORDS

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................... 3

    A.    The Court Denied Media Intervenors' Unfettered Access To Sealed
        Records. ...................................................................................................... 3

    B.    The Court Denied The Plaintiffs' Motion For Class Certification. ...................... 4

    C.    Media Intervenors Seek To Unseal The Names Of Individuals Connected
        To Unsubstantiated Harassment Allegations. ...................................................... 5

III.    ARGUMENT ...................................................................................................... 5

    A.    The "Good Cause" Standard Applies Here. ........................................................ 5

    B.    Even If A Higher Standard Is Applied, There Are "Compelling Reasons"
        To Redact The Names Of Complainants, Witnesses, And Subjects...................... 8

    C.    The Denial Of Class Certification Does Not Heighten The Public's Right
        To Access The Names Of Complainants, Witnesses, And Subjects. ................... 12

    D.    Plaintiffs' Position On Disclosure Is Legally Irrelevant. ..................................... 13

IV.     CONCLUSION ................................................................................................... 13

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Accenture LLP v. Sidhu*,
    2011 WL 6057597 (N.D. Cal. Dec. 6, 2011)...................................................................9

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
    727 F.3d 1214 (Fed. Cir. 2013)...................................................................................11

*Buchanan v. Homeservices Lending LLC*,
    2012 WL 5505775 (S.D. Cal. Nov. 13, 2012)...............................................................7

*Ctr. for Auto Safety v. Chrysler Grp., LLC*,
    809 F.3d 1092 (9th Cir. 2016)...................................................................................6, 11

*Davis v. Soc. Serv. Coordinators, Inc.*,
    2012 WL 2376217 (E.D. Cal. June 22, 2012) ..............................................................7

*Dugan v. Lloyds TSB Bank, PLC*,
    2013 WL 1435223 (N.D. Cal. Apr. 9, 2013).................................................................6

*Fodera v. Equinox Holdings, Inc.*,
    341 F.R.D. 616 (N.D. Cal. 2022)................................................................................12

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
    331 F.3d 1125 (9th Cir. 2003) ...................................................................................5, 6

*Forbes Media LLC v. United States*,
    61 F.4th 1072 (9th Cir. 2023) .....................................................................................11

*Hounshel v. Battelle Energy All., LLC*,
    2013 WL 5375833 (D. Idaho Sept. 24, 2013)............................................................8, 9

*In re: High-Tech Emp. Antitrust Litig.*,
    2013 WL 163779 (N.D. Cal. Jan. 15, 2013)..................................................................6

*In Re Midland Nat'l Life Ins. Co. Annuity Sales Pracs. Litig.*,
    686 F.3d 1115 (9th Cir. 2012) ......................................................................................6

*In re NCAA Student-Athlete Name and Likeness Licensing Litig.*,
    2012 WL 5395039 (N.D. Cal. Nov. 5, 2012) ................................................................7

*Kamakana v. City & Cnty. of Honolulu*,
    447 F.3d 1172 (9th Cir. 2006) ..........................................................................5, 6, 9, 11

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
   998 F.2d 157 (3d Cir. 1993)............................................................................13

*Maldonado v. Apple, Inc.*,
   333 F.R.D. 175 (N.D. Cal. 2019)................................................................12, 13

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978)................................................................................6, 9

*Oliner v. Kontrabecki*,
   745 F.3d 1024 (9th Cir. 2014) ........................................................................12

*Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*,
   307 F.3d 1206 (9th Cir. 2002) ........................................................................6

*Ramirez v. GEO Grp.*,
   2019 WL 6782920 (S.D. Cal. Dec. 11, 2019)................................................2, 7

*Reflex Media, Inc. v. Doe No. 1*,
   2022 WL 2985938 (D. Nev. July 28, 2022) ........................................................10

*Rich v. Hewlett-Packard Co.*,
   2009 WL 2168688 (N.D. Cal. July 20, 2009)........................................................7

*Romero v. County of Santa Clara*,
   2014 WL 12641990 (N.D. Cal. June 17, 2014)........................................................10

*Romero v. Drummond Co.*,
   480 F.3d 1234 (11th Cir. 2007) ........................................................................13

*Sentynl Therapeutics, Inc. v. U.S. Specialty Ins. Co.*,
   2021 WL 794271 (S.D. Cal. Mar. 1, 2021), *aff'd*,
   2022 WL 706941 (9th Cir. Mar. 9, 2022)........................................................10

*Skurkis v. Montelongo*,
   2016 WL 4719271 (N.D. Cal. Sept. 9, 2016) ........................................................9

*United States v. Amodeo*,
   71 F.3d 1044 (2d Cir. 1995)........................................................................3, 8

*United States v. Mayers*,
   2017 WL 2215805 (W.D. Wash. May 19, 2017)........................................................10

*Vietnam Veterans of Am. v. C.I.A.*,
   2012 WL 1094360 (N.D. Cal. Mar. 29, 2012)........................................................7

**STATUTES**

Oregon Equal Pay Act ........................................................................4

**RULES**

FED. R. CIV. P. 23 ............................................................................................................ *passim*

FED. R. CIV. P. 26(c)............................................................................................................7

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

I.      <u>**INTRODUCTION**</u>

By their renewed motion, the Media Intervenors seek to reveal the identities of

complainants, witnesses, and alleged victims of claimed wrongdoing based on the collection of

unsubstantiated, uncorroborated, and unofficial "complaints" that were circulated to a small

group of individuals on NIKE's campus in or about December 2017.[1]  The allegations made in

these documents—whether true or not—have been published by various media outlets and

documents filed in the class certification briefing.  The sole issue here is whether the privacy

interests of the purported victims, witnesses, and alleged wrongdoers outweighs any purported

right of the Media Intervenors to embarrass and shame these individuals.  None of this shaming

detail had any bearing on the Court's finding that Plaintiffs failed to meet their burden under

Rule 23 to certify a class action, or the Ninth Circuit's denial of Plaintiffs' petition seeking an

immediate appeal of the denial of class certification.  Nor does the law support an attempt to

create a media circus.  Indeed, the following shows why the Court should deny this request.

First, here's a realistic illustration that proves the point.  In the packet of "complaints"

distributed and collected by Plaintiffs, an anonymous person stated that they saw Person 1

performing a sex act on Person 2 at some location on NIKE's 286-acre campus in Beaverton,

Oregon, and that s/he told Random Person A about the event.  The fact of the allegation was laid

bare in the documents produced by NIKE in this litigation.  The Media Intervenors now seek to

unredact the identities of Persons 1 and 2, as well as Random Person A, notwithstanding:

---

[1] "Media Intervenors" refers to Non-Party Media Organizations Insider Inc. *d/b/a Business Insider*, Advance Local Media LLC *d/b/a Oregonian Media Group*, and American City Business Journals, Inc. *d/b/a Portland Business Journal*.

- The complainant here did not reveal her/himself, and there was no showing that this event ever took place. Nor are there any facts on the face of the complaint suggesting that this encounter, if it happened, was non-consensual even if inappropriate.

- Assuming *arguendo* that the event occurred, there is no bona fide reason to reveal the names of Persons 1 and 2—other than to embarrass them. But if the complaint was fabricated, identifying Persons 1 and 2 publicly likely would do violence to those individuals' personal and professional reputations, including their standing within the community, compromising (or destroying) personal and familial relationships, and endangering current employment or future employment prospects.

- Naming Random Person A also serves no legitimate purpose. That person is not a witness to the alleged event; his/her knowledge would be hearsay. In addition, publicly disclosing the identities of third parties (and witnesses) seems antithetical to the goal of encouraging confidential reporting of wrongdoing in a system that protects alleged victims. Media Intervenors—and Plaintiffs who joined this motion—should care about this objective. Their advocacy suggests otherwise.

Second, Media Intervenors are incorrect on the law. While they argue that a "compelling reasons" standard should apply in determining whether to unredact the names of purported victims, witnesses, and alleged wrongdoers, a majority of district courts in the Ninth Circuit hold that court records filed in connection with a motion for class certification are subject to a lower "good cause" standard because class certification motions are not dispositive. *See Ramirez v. GEO Grp.*, 2019 WL 6782920, at *3 (S.D. Cal. Dec. 11, 2019). The "good cause" standard

applies in this case, particularly where, as here, the litigation continues even after this Court and the Ninth Circuit ruled in NIKE's favor. In the above example, the risk of reputational and emotional harm to Persons 1 and 2 supports the limited redactions.

Third, the same result is obtained under a "compelling reasons" standard. The public's claimed interest in learning who may have been involved in purported wrongdoing is outweighed by the intrusion into Persons 1 and 2's privacy rights. Nor does the Media Intervenors' curiosity support a stifling of the complaint and investigation process as a whole, where the confidentiality of persons of interest is a key feature of a system that encourages victims to come forward so that allegations of wrongdoing may be fully investigated. Courts routinely support the limited redactions at issue here, particularly where there is no showing that unredacting the individuals' names would assist the public in understanding Rule 23's requirements or any issue tied to the class certification briefing. The sole objective of the renewed motion is to satisfy the Media Intervenors' (and Plaintiffs') "morbid craving for that which is sensational and impure." *United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995) (citation omitted).

The Media Intervenors' renewed motion should be denied.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Court Denied Media Intervenors' Unfettered Access To Sealed Records.

Notwithstanding their recent change of heart, Plaintiffs and NIKE previously agreed to redact select matters from the parties' class certification briefing, principally the names of complainants, witnesses, and subjects of "complaints" that were collected incident to the leafletting that occurred on NIKE's campus in late 2017. ECF No. 273 at 13 (the Parties had worked together to "review previously sealed documents and re-lodge unsealed or redacted versions where appropriate."); *id* at 12 (the Parties agreed to keep redacted "the names of any individuals named in allegations of sexual harassment or gender discrimination at Nike that have

Page 3    -    DEFENDANT NIKE, INC.'S OPPOSITION TO NON-PARTY MEDIA
                  INTERVENORS' MOTION TO UNSEAL

not already been made public[.]").  To be clear, this means that the allegations contained in the "complaints" would be made public; only the specific identities of witnesses and persons of interest would be redacted.

On April 1, 2022, NIKE's counsel met and conferred with counsel for Plaintiffs and Media Intervenors regarding the Media Intervenors' request to private information in support of the parties' filings in connection with the class certification briefing.  ECF No. 220 ¶ 3.  The Media Intervenors claimed that they should have the right to access "Confidential" and "AEO" filings to evaluate whether unsealing was justified.  ECF No. 273 at 13.

On April 8, 2022, Media Intervenors' brought their initial Motion to Intervene for the Limited Purpose of Moving to Unseal Judicial Records and to Oppose Defendant's Motion to Seal (the "Motion to Intervene").  ECF No. 205.  The parties fully briefed the motion, and on September 30, 2022, the Court issued a recommendation granting in part and denying in part the Motion to Intervene.  ECF No. 273.  While the Court allowed Media Intervenors to intervene for the limited purpose of unsealing judicial records, it denied their attempts to access or unseal the records in connection with Plaintiffs' Motion for Class Certification.  ECF No. 273 at 11.

**B.     The Court Denied The Plaintiffs' Motion For Class Certification.**

On November 22, 2022, the Court entered its Findings and Recommendations, concluding that Plaintiffs' Motion for Class Certification should be denied.  ECF No. 310.  The Court found, *inter alia*, that Plaintiffs had failed to establish (1) a common practice regarding NIKE's alleged use of prior pay to set starting pay; (2) a common practice regarding bonus payments; (3) commonality regarding their Oregon Equal Pay Act claim; and (4) typicality, predominance, and superiority.  On March 21, 2023, the Court adopted those Findings and Recommendations in its Order denying class certification.  ECF No. 335.  Plaintiffs petitioned the Ninth Circuit for leave to immediately appeal the denial of their class certification motion.

ECF No. 337.  The Ninth Circuit denied their petition.  ECF No. 339.

**C.**      **Media Intervenors Seek To Unseal The Names Of Individuals Connected To Unsubstantiated Harassment Allegations.**

Media Intervenors have filed a renewed motion to unredact the limited items remaining in certain "complaint" files.  Specifically, Media Intervenors seek to unseal the redacted content in Exhibits 46 (ECF No. 284-6), 47 (ECF No. 284-7), 48 (ECF No. 284-8), 51 (ECF No. 285-1), and 52 (ECF No. 285-2) of the Declaration of Mengfei Sun in Support of Plaintiffs' Motion for Class Certification, Paragraph 16 of the Declaration of Byron Goldstein in Support of Plaintiffs' Motion for Class Certification ("Goldstein Decl.") (ECF No. 288), and Exhibit 9 to the Goldstein Decl. (ECF No. 290-4).[2]  As Media Intervenors admit, NIKE already unredacted extensive information in the documents identified.  ECF No. 343 at 7-8.  Generally speaking, the remaining redactions seek to protect the privacy interest of individuals who (1) submitted complaints so that the issues they raised could be investigated confidentially; (2) were alleged as persons of interest; or (3) alleged witnesses to purported events.

**III.**      **ARGUMENT**

**A.**      **The "Good Cause" Standard Applies Here.**

The Media Intervenors contend that there must be "compelling reasons" to override their claim of access to the names of complainants, witnesses, and subjects identified in the "complaint" files at issue.  *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) ("specific factual findings" of prejudice must "outweigh the general history of access and the public policies favoring disclosure") (citations omitted); *Foltz v. State Farm Mut.*

---

[2] Exhibit 9 to the Goldstein Decl. at pages 17, 18, 25, 31, and 32, includes redactions of the contents of complaints, rather than just the names of complainants, witnesses, and subjects of complaints.  Nike maintains that the names of any individuals on these pages should be redacted, but does not oppose lifting the redactions of anything besides that.

*Auto. Ins. Co.*, 331 F.3d 1125, 1135 (9th Cir. 2003) (the right to access court records "is not absolute and can be overridden given sufficiently compelling reasons for doing so.").

However, there is an exception for sealed materials filed in relation to non-dispositive motions, which warrant a more lenient standard.  *See Kamakana, 447 F.3d at 1178-79*; *see also In Re Midland Nat'l Life Ins. Co. Annuity Sales Pracs. Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012) (same).  Under this exception, a party need only satisfy the less exacting "good cause" standard.  *See Foltz, 331 F.3d at 1135*.  The "good cause" standard requires the sealing party to show that "specific prejudice or harm will result" if information is unsealed.  *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002).  As the Ninth Circuit has held, when materials are attached to a non-dispositive motion, "the private interests of litigants are the only weights on the scale," and public access may be denied for "good cause" alone.  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (citation and quotation marks omitted).

Under both standards, courts continue to have a strong interest in preventing abuse of their processes; otherwise, judicial records would become a "vehicle for improper purposes," such as a tool to "gratify private spite," or "promote public scandal."  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (citations omitted).

Numerous courts have held that the "good cause" standard applies to class certification motions.  *See e.g., Dugan v. Lloyds TSB Bank, PLC*, 2013 WL 1435223, at *1 (N.D. Cal. Apr. 9, 2013) ("Unless the denial of a motion for class certification would constitute the death knell of a case, the vast majority of courts within this circuit treat motions for class certification as non-dispositive motions to which the 'good cause' sealing standard applies.") (citation and quotation marks omitted); *In re:  High-Tech Emp. Antitrust Litig.*, 2013 WL 163779, at *2 at n.1 (N.D.

Cal. Jan. 15, 2013) (in finding that the motion for class certification is non-dispositive, "the Court applies a 'good cause' standard here in accordance with the vast majority of other courts within this circuit"); *In re NCAA Student-Athlete Name and Likeness Licensing Litig.*, 2012 WL 5395039, at *1-2 (N.D. Cal. Nov. 5, 2012) (applying "good cause" standard to motion to seal class certification briefing); *Vietnam Veterans of Am. v. C.I.A.*, 2012 WL 1094360, at *1-2 (N.D. Cal. Mar. 29, 2012) (same); *Buchanan v. Homeservices Lending LLC,* 2012 WL 5505775, at *2 (S.D. Cal. Nov. 13, 2012) (same); *Davis v. Soc. Serv. Coordinators, Inc.*, 2012 WL 2376217, at *1 (E.D. Cal. June 22, 2012) ("the party seeking to seal a document related to a non-dispositive motion [exhibits attached to a declaration in support of a motion for conditional class certification] must meet the 'good cause' standard set forth by Federal Rule of Civil Procedure 26(c) that applies to protective orders."); *Rich v. Hewlett-Packard Co.*, 2009 WL 2168688, at *1 (N.D. Cal. July 20, 2009) (Because "[t]he contested issues in Plaintiffs' motion for class certification involve the procedural requirements of Fed. R. Civ. P. 23 and relate only tangentially to the underlying merits of Plaintiffs' claim[,] [t]he motion thus is not 'dispositive' . . . and a showing of good cause is sufficient to justify filing these documents under seal.").

There is no argument here that the denial of class certification would constitute the "death knell" of this case, particularly where Plaintiffs continue to litigate their claims and are in the midst of post-certification discovery concerning the same.  In *Ramirez*, 2019 WL 6782920, at *3, the court found a class certification motion to be non-dispositive and applied the "good cause" standard for documents attached to it to be filed under seal because the plaintiff "would presumably have financial incentive to pursue individual litigation even if he could not do so on behalf of a class."  There are no presumptions here—the named Plaintiffs are proceeding with their claims.

The "good cause" standard attaches in this case.  NIKE has demonstrated specific harm

to the personal and professional reputations of individuals who would be publicly associated

with alleged wrongdoing (including consensual sex acts) during the course of their employment

at NIKE.  This harm would be amplified if the anonymous reports were false—that would cause

harm which is impossible to compensate by money damages alone.

**B.**     **Even If A Higher Standard Is Applied, There Are "Compelling Reasons" To Redact The Names Of Complainants, Witnesses, And Subjects.**

While the "good cause" standard is applicable here, even under the "compelling reasons"

standard, the Court should deny the Media Intervenors' renewed motion.  *See Amodeo,* 71 F.3d

at 1050-51 (privacy interests of third parties rebut the presumption of public access, particularly

where the request for public access hinges on "a morbid craving for that which is sensational and

impure.") (citation omitted).  All that the Media Intervenors (and Plaintiffs) seek in this case is a

repetition of the same "sensational and impure" headlines that they have used to grab attention

for more than four years, except this time, they do not believe that the allegations alone are

sufficient.  Media Intervenors and Plaintiffs seek to double down by embarrassing and shaming

(perhaps innocent) people regardless of the reputational and professional costs, solely to appeal

to their own (or the public's) prurient interests.  There are "compelling reasons" to override their

claim of public access in this case.

First, a significant number of the "complaints" collected here were anonymous, which

presents critical questions relating to the veracity of the matters identified in those documents

and the harm to individuals who may be publicly identified in connection with unverified,

"sensational and impure" allegations.  But as a general matter, individuals who submit

complaints have no expectation that their own privacy might be compromised due to

republication of their names in litigation (or the newspaper).  *See Hounshel v. Battelle Energy*

*All., LLC*, 2013 WL 5375833, at *1 (D. Idaho Sept. 24, 2013) (party's "discovery requests raise significant privacy concerns for third-party employees who ha[d] no involvement in the case"). The complaint process is supposed to be a safe space for individuals to voice concerns, not for salacious rumor-spreading.  Unredacting complainants' names necessarily risks the privacy of such third parties, which likely would have a chilling effect on confidential reporting in the workplace.  The net result is that victims would be worse off.[3]

Second, there are "compelling reasons" to redact the names of subjects of the complaints in sexual harassment and/or gender discrimination matters, particularly where the allegations are unsubstantiated.  Prevention of unfounded reputational damage is an overriding interest that supports sealing.  *See Kamakana*, 447 F.3d at 1178-79; *see also Skurkis v. Montelongo*, 2016 WL 4719271, at *6 (N.D. Cal. Sept. 9, 2016) (granting motion to file complaint under seal where it contained information about allegedly criminal acts of defendants' agents and non-parties).

Here, NIKE only seeks to redact these individuals' names.  "The inclusion of unfounded accusations unrelated to the claims brought by [Plaintiffs] suggests that" their names are being used "as a vehicle for character assassination."  *Accenture LLP v. Sidhu*, 2011 WL 6057597, at *3 (N.D. Cal. Dec. 6, 2011) (holding that unfounded accusations should remain under seal because they could become the vehicle for improper purposes).  Numerous "courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption."  *Nixon*, 435 U.S. at 598 (citing cases).  There is no showing that the names of those purportedly involved in harassment or discrimination here (or who may have witnessed harassment or discrimination) would have been relevant to the Court's finding that Plaintiffs failed to meet their obligation

---

[3] It is particularly unfortunate that Plaintiffs, who purport to represent the interests of Nike's women employees, have suddenly decided that they now "support un-redaction of the documents at issue."  ECF No. 343 at 10.

under Rule 23.  The only purpose served would be to harm the reputations and infringe upon the privacy rights of individuals who have not been found to have engaged in inappropriate conduct. This is improper.

Third, the names of witnesses (either third-party observers or victims of alleged harassment or discriminatory treatment by others) should be redacted.  Presumably, the Media Intervenors wish these names to be disclosed, along with those of complainants and persons of interest, for the purposes of writing salacious stories that potentially would expose such individuals to unwarranted attention or ridicule.

As provided above, the current record shows the potential for harm.  In Exhibit 52 of the Sun Declaration, there is an *anonymous* complaint that two individuals (Persons 1 and 2, whose names have been redacted) engaged in a sex act at some point while employed at NIKE.  ECF No. 285-2.  The complaint neither alleges nor suggests that the act was non-consensual.  Thus, revealing these individuals' names in a public filing serves no purpose other than to harass and shame.  Courts routinely prohibit this.  *See e.g.*, *Reflex Media, Inc. v. Doe No. 1*, 2022 WL 2985938, at *2 (D. Nev. July 28, 2022) (sealing personal identifying information of victims of the alleged extortion business); *Sentynl Therapeutics, Inc. v. U.S. Specialty Ins. Co.,* 2021 WL 794271, at *3 (S.D. Cal. Mar. 1, 2021), *aff'd*, 2022 WL 706941 (9th Cir. Mar. 9, 2022) (sealing non-parties' names because it "runs a substantial risk of exposing those individuals to harassment"); *United States v. Mayers*, 2017 WL 2215805, at *2 (W.D. Wash. May 19, 2017) ("sealing the identifying personal information of an unrelated party to this case is a compelling reason to keep that information sealed"); *Romero v. County of Santa Clara*, 2014 WL 12641990, at *3 (N.D. Cal. June 17, 2014) ("Discrete, sensitive identifying information regarding third parties may be redacted.").  The public already has access to the facts relevant to that

Page 10    -    DEFENDANT NIKE, INC.'S OPPOSITION TO NON-PARTY MEDIA
INTERVENORS' MOTION TO UNSEAL

"complaint," including the allegation that a sex act occurred on NIKE's 286-acre campus at some point in history.  There is no additional benefit to disclosing these individuals' names; but, dire personal and professional consequences could result if their identities are published (*e.g.,* there are likely impacts with respect to these individuals' personal relationships, relationships with family members, at their current employment, in the community or other professional circles, etc.).  These individuals' lives would be put under a spotlight for the sole purpose of the Media Intervenors' (and Plaintiffs') enjoyment.  The case law does not support the same.

Finally, the Media Intervenors' reliance on the "compelling reasons" standard falls flat because it misses the key point in the case law—the touchstone of the inquiry is whether removal of the redactions would assist the "public interest in ***understanding the judicial process***[.]" *Kamakana,* 447 F.3d at 1178-79 (emphasis added, citation omitted); *Forbes Media LLC v. United States,* 61 F.4th 1072, 1076 (9th Cir. 2023) ("[m]atters decided in the courts are often of considerable public interest," but the question is "not one of public interest but [of] public access.").  That interest "does not extend to mere curiosity about . . . confidential information where that information is not central to a decision on the merits." *Apple Inc. v. Samsung Elecs. Co., Ltd.,* 727 F.3d 1214, 1228 (Fed. Cir. 2013); *see also Ctr. for Auto Safety,* 809 F.3d at 1099 (the focus of the analysis is on whether the material "at issue is more than tangentially related to the underlying cause of action.").

There is no evidence—by the Media Intervenors or the Plaintiffs—that the names of the complainants, witnesses, and subjects referenced in the unverified "complaints" would assist the public in understanding the judicial process relating to the Court's ruling on class certification or the Ninth Circuit's denial of Plaintiffs' petition.  There is no logical argument as to why the identities of Persons 1 and 2, and Random Person A, might help anyone understand the

Page 11   -   DEFENDANT NIKE, INC.'S OPPOSITION TO NON-PARTY MEDIA
                  INTERVENORS' MOTION TO UNSEAL

requirements of Rule 23.  The Media Intervenors have not identified a single reference in *any*

ruling by *any* court indicating that the court's legal or factual conclusions might rest upon the

identities of a person of interest in the unverified "complaint" files.  The Media Intervenors'

renewed motion should be denied.

> **C.**     **The Denial Of Class Certification Does Not Heighten The Public's Right To Access The Names Of Complainants, Witnesses, And Subjects.**

Media Intervenors argue that the Court's ruling on class certification increases the public

interest in accessing documents that informed judicial decision-making.  They then cite an array

of inapplicable cases that, in fact, cut against the Media Intervenors' arguments.

For example, Media Intervenors cite *Oliner v. Kontrabecki*, 745 F.3d 1024, 1025 (9th

Cir. 2014), for the proposition that court records provide important bases for a court's decisions.

But the case is inapposite.  In *Oliner*, the party sought to seal the *entire record* of the court

proceedings, including the opinion itself.  By contrast, here, the opinion denying class

certification and the great majority of the evidence supporting the opinion are publicly

accessible.  In fact, the critical facts underlying the "complaints" are publicly available.  Only the

individuals' names remain redacted and these peoples' identities did not form the "bases or

explanations for [the] court's decision." *Id*.

In *Fodera v. Equinox Holdings, Inc.,* 341 F.R.D. 616, 635 (N.D. Cal. 2022), another case

cited by Media Intervenors, the basis for the court's holding that sealing the records would make

it difficult for the public to understand the facts underlying the motion for class certification was

"the nature and volume of the sealing requests."  In *Fodera*, the parties sought to seal

approximately 175 records.  Here, there are only seven documents at issue with a very limited

redaction focus—protecting the privacy rights and interests of non-parties.

*Maldonado v. Apple, Inc.,* 333 F.R.D. 175 (N.D. Cal. 2019), is similarly unhelpful to the

Media Intervenors' position.  The *Maldonado* court merely held that the information that

defendants sought to seal was too broad, albeit acknowledging that the categories were "likely to

include sealable information."  *Id.* at 194.  The court confirmed that it would not seal information

that is "***necessary*** to understand plaintiffs' theory of liability and hence this Order."  *Id.*

(emphasis added).  Media Intervenors cannot earnestly argue that a third-party individual's name

is necessary to understanding plaintiffs' claims or the Court's denial of class certification.[4]

        **D.**        **Plaintiffs' Position On Disclosure Is Legally Irrelevant.**

Finally, Media Intervenors argue that because Plaintiffs now seemingly support the

disclosure of the names of the individuals in these complaints, unsealing is appropriate.

Plaintiffs' position is legally irrelevant and immaterial.  It is interesting that Plaintiffs support

disclosure of information (without consent) pertaining to the victims they claim to represent, but

unlike any previous briefing on sealing, the sole question here is whether the law supports

redaction of the names of complainants, witnesses, and subjects in "complaints" alleging sexual

harassment and discrimination.[5]  The great weight of authority supports NIKE's position here.

**IV.**        **CONCLUSION**

For the foregoing reasons, Nike respectfully submits that Media Intervenors' Motion to

Unseal should be denied in its entirety.

---

[4] Media Intervenors' out-of-circuit cases are similarly distinguishable.  In *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993), the Circuit Court vacated the district court's order that a party could not intervene, but did not hold that certain documents relevant to a motion should have been unsealed.  In *Romero v. Drummond Co.*, 480 F.3d 1234, 1245-46 (11th Cir. 2007), the court applied the "good cause" standard.  While the Eleventh Circuit found there was not good cause, it only did so because the party seeking to seal failed to articulate any good cause. By contrast, Nike has explained in detail the harm that could come from unsealing these documents.
[5] In the previous round of sealing briefing, the Court unredacted the names of (former) NIKE employees referenced in the "complaints" because those specific references tracked information that had already been made public.  ECF No. 273 at 7-8.

Page 13   -   DEFENDANT NIKE, INC.'S OPPOSITION TO NON-PARTY MEDIA
                  INTERVENORS' MOTION TO UNSEAL

Dated:  August 23, 2023                 Respectfully submitted,


                                        /s/ Daniel Prince
                                        _____

                                        Daniel Prince, Cal. SB# 237112 (*pro hac vice*)
                                        danielprince@paulhastings.com
                                        Felicia A. Davis, Cal. SB# 266523 (*pro hac vice*)
                                        feliciadavis@paulhastings.com
                                        PAUL HASTINGS LLP
                                        515 South Flower Street, 25th Floor
                                        Los Angeles, CA  90071-2228
                                        Telephone:  (213) 683-6000
                                        Facsimile:  (213) 627-0705

                                        Laura E. Rosenbaum, OSB No. 110061
                                        laura.rosenbaum@stoel.com
                                        STOEL RIVES LLP
                                        760 SW Ninth Avenue, Suite 3000
                                        Portland, OR  97205
                                        Telephone:  (503) 294-9642
                                        Facsimile:  (503) 220-2480

                                        Attorneys for Defendant NIKE, INC.

Page 14   -   DEFENDANT NIKE, INC.'S OPPOSITION TO NON-PARTY MEDIA
              INTERVENORS' MOTION TO UNSEAL