**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Kathryn P. Roberts, OSB #064854**
KathrynRoberts@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085 | Fax: (503) 323-9105

**Laura L. Ho** (admitted *pro hac vice*)
lho@gbdhlegal.com
**Barry Goldstein, Of Counsel** (admitted *pro hac vice*)
bgoldstein@gbdhlegal.com
**James Kan** (admitted *pro hac vice*)
jkan@gbdhlegal.com
**Byron Goldstein** (admitted *pro hac vice*)
brgoldstein@gbdhlegal.com
**Katharine L. Fisher** (admitted *pro hac vice*)
kfisher@gbdhlegal.com
**Mengfei Sun** (admitted *pro hac vice*)
msun@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 763-9800 | Fax: (510) 835-1417

Counsel for Plaintiffs

[Additional Counsel of Record listed on the Signature page]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>NIKE, INC., an Oregon Corporation,<br><br>Defendant. | Case No. 3:18-cv-01477-JR<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>**ORAL ARGUMENT REQUESTED** |

# LOCAL RULE (LR) 7-1 CERTIFICATION

Plaintiff's counsel conferred in good faith with Defendant's counsel on the issues raised in this motion. The parties could not reach an agreement on these issues, and Defendant opposes this motion.

# MOTION

Pursuant to Federal Rules of Civil Procedure ("Rule") 26 and 37, Plaintiffs respectfully move for an order requiring Defendant to: (1) produce discovery related to the setting of starting pay prior to October 2017 that is responsive to Plaintiffs' Request for Production ("RFP") No. 4, RFP No. 8, or the Court's October 31, 2019 Order (ECF No. 89); (2) produce retention policies responsive to RFP No. 32; and (3) provide a declaration setting forth (a) what discovery responsive to RFP Nos. 4 or 8 it withheld and why, (b) how and who searched for and collected potentially responsive discovery related to setting starting pay before October 2017, and (c) if any of this responsive discovery was deleted, what, when, and why.

**MEMORANDUM**

I.  **SUMMARY OF ARGUMENT**

Plaintiffs each allege Nike's pre-October 2017 practice of using prior pay when setting starting pay had a disparate impact on women. Nike hired one Plaintiff in 2010, one in 2012, and two in 2015. The class certification denial does not negate the need to complete discovery because the Ninth Circuit requires district courts to apply the same prima facie burden to both individual and disparate impact claims: identify an employment practice with a disproportionate impact on a group. Nike has long been required to complete this discovery. It repeatedly represented that it produced all responsive discovery, but its failure is evident for three reasons.

First, Nike withheld highly relevant discovery, including pre-October 2017 versions of its "Offer Intake Form," a standard form that collected prior pay and was used to determine the amount of starting pay. Nor did Nike produce communications or other discovery related to these pre-October 2017 versions. Second, Nike's representation that it does not have discovery regarding its use of prior pay is unreliable because it has repeatedly misrepresented the existence of discovery. These misrepresentations were revealed after court-ordered productions, and they occurred after the Court found Nike "demonstrated a certain lack of transparency so far in the discovery process and certainly some deficient production." Third, Nike's continued lack of transparency, contrary to Rule 34 and an Order, in refusing to state what discovery it withheld and disclose its discovery efforts.

Based on these three reasons, Plaintiffs request an order compelling Nike to produce responsive discovery regarding its starting pay practices before October 2017, its retention policies, and a declaration setting forth its discovery efforts and whether discovery was deleted. *See* Sec. VII (specific relief requested).

II.  **FACTUAL BACKGROUND**

Plaintiffs allege Nike had a practice of using prior pay when setting starting pay until about October 2017 and this had a disparate impact on women. In March 2019, Plaintiffs served

RFP Nos. 4 and 8 seeking documents and communications regarding how Nike set starting pay between January 2010 and October 2017.

- RFP No. 4: "all policies and practices related to ... collection or use of prior compensation history, including any mechanism used to collect such history (e.g., Consumer Reporting Agency); … all related training materials …; and documents identifying persons involved …."

- RFP No. 8: "all policies and practices related to … setting of starting … salary, … all related training materials … and documents identifying persons involved …."

Ex. A at 11-13.[1]

In September 2019, Plaintiffs moved to compel discovery responsive to RFP Nos. 39 and 43 seeking discovery regarding Nike's starting pay policy change around October 2017. ECF No. 165-2 at 1-3.[2] The Court denied this request on October 31, 2019. ECF No. 89 ("October 2019 Order"). But Nike was ordered to "produce any uniform policies it maintained during the relevant time periods regarding hiring, firing, pay, promotions, and compensation systems." *Id.*

Plaintiffs then requested, in June 2020, court intervention to enforce the October 2019 Order because Nike continued withholding discovery regarding starting pay policies in effect before October 2017. ECF No. 166-1 at 1-3.[3] Nike responded, without explanation, that it had not located this discovery. *Id.* at 62.

The resulting August 2020 Order directed Nike to "make one final attempt at locating any such policies and if such records exist produce them to plaintiffs. If Nike reports that no such records exist, the Court will accept Nike's representation on this issue." ECF No. 111 at 3

---

[1] Exhibit page numbers cited are in the lower right of each page. "Policies" and "practices" are defined in Plaintiffs' First Set of RFPs. *See* Ex. A at 9. Nike's objections and responses were served on April 25, 2019. *See* Ex. B.

[2] RFPs 39 and 43 seek discovery regarding two instances when Nike stated it will "remove bias from critical moments of the hiring process" including "by eliminating the collection of salary histories." Ex. A at 22-24.

[3] While Plaintiffs' June 2020 submission refers to August 24, 2017, rather than October 2017, that was based on a document created in August, which was attached to an October 2017 email announcing the policy change became effective on October 1, 2017. *See* Ex. D at 2-3.

("August 2020 Order").[4] Nike represented on September 21, 2020: "[f]ollowing additional diligent search and reasonable inquiry, Nike has not located, nor is it aware of, any written policies regarding the collection or use of prior compensation history beyond the documents previously produced." Ex. E at 1.

In the subsequent Order denying Plaintiffs' motion to certify the class, the Court found Plaintiffs lacked sufficient direct evidence that Nike had a policy of using prior pay. *See e.g.*, ECF No. 310 at 43 ("Plaintiffs simply point to one document" regarding the alleged prior pay practice); *id.* at 46 (finding "insufficient evidence that [prior] pay was a required factor in making starting pay decisions ….").

## III. NIKE'S PRE-OCTOBER 2017 STARTING PAY PRACTICES REMAIN HIGHLY RELEVANT.

Because plaintiffs must identify an employment practice with a disparate impact, "liberal civil discovery rules give plaintiffs broad access to employers' records in an effort to document their claims." *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1074.

Here, Plaintiffs still need this access because their prima facie burden for an individual disparate impact claim requires the same showing as a class disparate impact claim: identify an employment practice with a disproportionate impact on women as a group.

> Generally disparate impact analysis is used in a class action, but it may also form the basis of an individual claim. [citations]. In whatever procedural guise a disparate impact claim appears, the party asserting it must demonstrate a statistical disparity affecting members of the protected group. Absent such a group-based disparity, the claim fails, whether it is articulated by an individual or a class.

*Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1115 (9th Cir. 2014) (internal quotations omitted); *see also e.g., Dunbar v. Walt Disney Co.*, No. CV 22-1075-DMG (JCX),

---

[4] The Court denied Plaintiffs' requests to compel production of retention policies "without prejudice" and for Nike to provide a declaration about its efforts to comply with the October 2019 Order "at this time." ECF No. 111 at 8-9. Plaintiffs also submitted a similar request for this type of declaration in their reply supporting a later motion, which Nike filed a sur-reply to, that the Court declined to rule on it "at this time." ECF No. 135; ECF No. 166-5 at 29, 67.

2022 WL 18357775, at *2 (C.D. Cal. July 25, 2022) (dismissing individual disparate impact claim for failure to allege "that an employment practice broadly impacts a certain *group* in an adverse manner—not merely a single person.") (emphasis in original).

Discovery since 2010 is relevant because Nike hired Johnston that year and one way Title VII is violated is when employees are "affected by application of a discriminatory compensation decision or other practice, *including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice*." 42 U.S.C. § 2000e-5(e)(3)(A) (emphasis added). This means "Plaintiff's statute-of-limitations clock effectively resets each time she received a paycheck from [her employer]." *Hammel v. Marsh USA Inc.*, 206 F. Supp. 3d 219, 231 (D.D.C. 2016) (citing 42 U.S.C. § 2000e-5(e)(3)). Here, Plaintiffs allege Nike perpetuated the disparate impact in starting pay, including through its use of current salary when calculating annual salary increases and bonuses.

## IV. AN ORDER COMPELLING PRODUCTION IS NECESSARY.

### A. Nike's Representation About the Existence of Discovery Regarding Prior Pay Is Unreliable Because it Has Repeatedly Misrepresented the Existence of Discovery.

After this Court found Nike "demonstrated a certain lack of transparency so far in the discovery process and certainly some deficient production" (ECF No. 111 at 9), Nike repeatedly misrepresented the existence of discovery when seeking to prevent disclosure.

- After the Court ordered Nike to produce the "complete" Starfish Survey "results" (ECF No. 111 at 8), Nike redacted names from Starfish Survey documents it then produced. Plaintiffs raised this with the Court: "Nike produced 30 entries from the Starfish Survey that contain redactions of all the names of top managers who are alleged to have discriminated or condoned discrimination." ECF No. 114 at 13. In response and shortly after it redacted these names, Nike accused Plaintiffs of making an "egregious" misleading statement because "[t]here is zero evidence that these redactions contain 'the names of top managers who are alleged to have discriminated or condoned discrimination.'" *Id*. at 17. But the subsequent court-ordered production of unredacted versions proves Nike had redacted the names of least 22 Nike executives. *See* ECF No. 163 at 9.

- In response to Plaintiffs moving to compel production of organizational charts (ECF No. 166-5 at 9), Nike told the Court: "as Nike has told Plaintiffs *ad nauseam*, such charts **do not exist in the ordinary course of business**," ECF 166-5 at 12 (emphasis in original). Nike also submitted a declaration from an employee swearing organizational

PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS
PAGE 5
876640.12

charts do not exist.  ECF No. 166-5 at 24, ¶ 2.  Shortly after the Court ordered production of existing charts (ECF No. 135), Nike's opposition and declaration were proven false because Nike turned over thousands of existing organizational charts.  Ex. F at 2; Goldstein Decl., ¶ 7.

- On March 18, 2020, June 29, 2020, and July 17, 2020, Nike represented to the Court that it produced all discovery responsive to the October 2019 Order.  ECF No. 97 at 14-15; ECF No. 107 at 14; ECF No. 166-1 at 62.  Nike further declared this followed "an exhaustive search and review."  ECF No. 107 at 14.  Yet, after the August 2020 Order forced Nike to search for discovery, Nike produced clearly relevant discovery.  *See* Sec. IV(B), *infra* (describing this discovery, Exs. C, G, L).  If Nike had done, as it represented, a "diligent" or an "exhaustive" search, it would have produced these documents without court intervention and long ago because each was each centrally-created, widely distributed amongst Nike Human Resources ("HR") employees, concerned Nike's starting pay practices, and clearly responsive to the October 2019 Order, RFP No. 4, and RFP No. 8.  *See id.*[5]

These misrepresentations and the timing of Nike's subsequent court-ordered productions show Nike's representations about the existence of discovery regarding its use of prior pay is unreliable, its discovery collections inadequate, and its production incomplete, *see e.g., Benanav v. Healthy Paws Pet Ins. LLC*, No. C20-00421-LK, 2022 WL 3587982, at *4 (W.D. Wash. Aug. 22, 2022) ("The inadequacy of Plaintiffs' self-search is demonstrated by their repeated supplementation of their productions in response to deficiencies ….").

    **B.    Nike Withheld Highly Relevant Discovery Regarding Its Use of Prior Pay Before October 2017.**

Nike's October 2017 version of its "Offer Intake Form," a standard form Nike used to "construct offers" for starting pay in jobs below Vice President, strongly indicates Nike withheld discovery regarding its practice of using prior pay.[6]  Nike HR's compensation group, which it refers to as "Total Rewards," "updated" this Form in October 2017.  Ex. C ("Total Rewards … created an *updated* Offer Intake Form ….") (emphasis added).  This October 2017 version seemingly includes a pre-October 2017 version.  *See* Ex. G at 5-6.  This prior version is filled in

---

[5] This discovery was produced long after it was due.  Discovery responsive to RFP Nos. 4 and 8 was due in April 2019, and discovery responsive to the October 2019 Order was due on November 15, 2019, L.R. 37-2 (deadline for court-ordered discovery is 14 days).

[6] Nike produced its October 2017 Offer Intake Form in October 2020 after repeatedly representing it produced all responsive discovery.  *See* Sec. IV(A), *supra*; Goldstein Decl., ¶ 8.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS**
**PAGE 6**
876640.12

as an "example" of how to complete the form and it shows, before October 2017, Nike collected and used applicants' prior pay in setting starting pay.



Ex. G at 2, 5-6 (arrows left of images added).[7] These versions show, in October 2017, Nike replaced the field for an external candidate's "annual base salary" with a field for "annual base salary expectations."

Yet Nike failed to produce all pre-October 2017 versions of its Offer Intake Form and failed to produce any related documents or communications. After Nike repeatedly misrepresented its completion of discovery and then produced this highly relevant document in October 2020, Nike's Rule 30(b)(6) witness testified that this Form was updated around October 2017 because of Nike's starting pay policy change. Ex. H at 2-3. Plaintiffs thus asked Nike for

---

[7] Nike sent its Offer Intake Form to all Nike Talent Acquisition ("TA") employees with an October 12, 2017 email instructing them to use this Form when working with "Total Rewards to construct offers for your roles." Ex. C. This email was produced after Nike repeatedly represented it produced all responsive discovery. *See* Sec. IV(A), *supra*; Goldstein Decl., ¶ 4.

prior versions and other discovery concerning how it set starting pay before October 2017. *See* Ex. I at 1-3. But Nike refused to produce this discovery or even respond. Goldstein Decl., ¶ 10.

Nike also failed to produce prior versions of its "Hiring Process" document, "a guide to educate key players on their roles and responsibilities when looking to hire great talent at Nike," Ex. J at 1. The earliest version produced was updated on December 13, 2018. *See id.* But Nike sent a version of this document to all TA employees in October 2017. Ex. C. And Nike's Rule 30(b)(6) witness testified that she assumed, based on Nike's October 2017 email, that this document was updated around October 2017. Ex. K at 2-5. Plaintiffs then asked for these prior versions, but Nike refused to produce them or even respond. Ex. I at 1; Goldstein Decl., ¶ 10.

Nike's September 14, 2017 communication to all HRBPs announcing its starting pay "policy change" indicates Nike withheld additional discovery.[8] This communication linked to a "walking deck to prepare HRBPs and Business Leadership for this policy change," announced Nike's hiring resources would "be updated prior to October 1," and stated it would provide trainings and communications throughout September 2017 on this policy. Ex. L at 2. But Nike failed to produce this discovery, including the "walking deck."

Indeed, Nike not only failed to complete its production but also failed to produce any policies, guidelines, trainings, descriptions, or forms it used when determining the amount of starting pay before October 2017. *See* Goldstein Decl., ¶ 14.

      **C.**    **Nike's Lack of Transparency in Violation of Rule 34 and the ESI Order Is a Roadblock to Effective Discovery.**

Rule 34 requires the responding party to "state whether any responsive materials are being withheld on the basis of [an] objection." Fed. R. Civ. P. 34(b)(2)(C); *see also e.g., Adidas Am., Inc. v. TRB Acquisitions LLC*, No. 3:15-CV-2113-SI, 2016 WL 7325507, at *5 (D. Or. Nov. 28, 2016) (same). This means the responding party, at a minimum, "states the limits that have controlled the search for responsive and relevant materials …." *Id.* (quoting Fed. R. Civ. P. 34,

---

[8] This communication was produced after Nike repeatedly represented it produced all responsive discovery. *See* Sec. IV(A), *supra*; Goldstein Decl., ¶ 13.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS**
**PAGE 8**
876640.12

2015 advisory committee notes.)  The ESI Order states, the "producing party shall disclose the search terms and queries, if any, or other methodologies used to identify ESI that is subject to production in discovery and filter out ESI that is not."  ECF No. 72 at 3.  These are not only legal requirements but also serve transparency, which is necessary for effective and efficient discovery.  *See e.g., Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK PSG, 2013 WL 1942163, at *3 (N.D. Cal. May 9, 2013) ("transparency and collaboration is essential to meaningful, cost-effective discovery.").

Despite these requirements and Plaintiffs' numerous requests for transparency, Nike failed to state whether or what it was withholding in response to RFP Nos. 4 and 8, continues to refuse to disclose this information, and repeatedly rejected Plaintiffs' requests to disclose how it searched for and collected this discovery.  Ex. B at 12-13, 17-18; Goldstein Decl., ¶¶ 15-16.  Nor will Nike even disclose what period it used for the October 2019 Order's "relevant time periods" when it collected or produced discovery.  *Id.*

## V. INFORMATION ABOUT NIKE'S DISCOVERY EFFORTS IS CRITICAL HERE.

Discovery as to "the existence, description, nature, custody, condition, and location of any documents … and the identity and location of persons who know of any discoverable matter … is deeply entrenched in practice."  Fed. R. Civ. P. 26, 2015 advisory committee notes.  Some courts state this type of discovery is disfavored and require an additional showing, while other courts order it without an additional showing.  *Compare Anstead v. Virginia Mason Med. Ctr.*, No. 221CV00447JCCJRC, 2022 WL 1641425, at *5 (W.D. Wash. May 24, 2022) ("courts will only permit such discovery where there is *some indication* that a party's discovery has been insufficient or deficient.") (emphasis added) *with Apple*, 2013 WL 1942163, at *3 (compelling Google to disclose search terms and custodians, in an "order [that] does not speak to the sufficiency of Google's production," because this "will aid in uncovering the sufficiency of Google's production and serves greater purposes of transparency in discovery").

Under either standard, this type of discovery is necessary here given Nike's withholding of highly relevant discovery regarding its starting pay practices, pattern of misrepresentations, and its failure to diligently search, collect, and produce this discovery. *See* Secs. IV(A)-(C), *supra*. Further, these misrepresentations and discovery failures occurred or were revealed after the Court's August 2020 finding that Nike "has demonstrated a certain lack of transparency so far in the discovery process and certainly some deficient production." ECF No. 111 at 9.

Retention policies are also relevant because Nike claims it cannot locate discovery regarding its collection or use of prior pay before October 2017. *See e.g., McMorrow v. Mondelez Int'l, Inc.*, No. 17CV02327BASJLB, 2019 WL 3852498, at *3 (S.D. Cal. Apr. 19, 2019) (retention policies relevant "to determine the universe of responsive documents, evaluate the completeness of the existing document production, identify any gaps in document production ….") (citations omitted); *Montgomery v. Wal-Mart Stores, Inc.*, No. 12CV3057-JLS (DHB), 2015 WL 11233390, at *3 (S.D. Cal. Sept. 4, 2015) ("document retention policies are relevant in light of Home Depot's claim that it cannot locate certain documents because they do not exist").

Numerous decisions have ordered the responding party to disclose how it search for potentially responsive discovery. In *FormFactor, Inc v. Micro-Probe, Inc.*, No. C-10-03095 PJH JCS, 2012 WL 1575093, at *7 (N.D. Cal. May 3, 2012), the responding party was ordered to:

> state, in writing, within ten days of the date of this order, under oath: 1) the names of individuals interviewed, 2) the names of individuals whose email was searched, 3) what search terms were used for all of Plaintiff's electronic searches, and 4) what storage systems and searches were undertaken to respond to Defendants' January 2012 set of document requests.

(parentheticals omitted); *see also e.g., Rhea v. Washington Dep't of Corr.*, No. C10-0254 BHS KLS, 2010 WL 5395009, at *5 (W.D. Wash. Dec. 27, 2010) (compelling similar in response to an interrogatory).[9]

---

[9] *See also generally Ruiz-Bueno v. Scott*, No. 2:12-CV-0809, 2013 WL 6055402, at *1 (S.D. Ohio Nov. 15, 2013) (finding arguments against this type of discovery "fail[] to acknowledge the nuanced nature of discovery," and this "is the type of information which can assist a party in structuring his or her discovery or in pursuing discovery effectively and efficiently.").

## VI. THE PROPORTIONALITY FACTORS SUPPORT PRODUCTION.

The requested discovery is proportional because Nike has sole possession of its documents and communications regarding its starting pay practices prior to October 2017, its retention policies, and how it collected and produced responsive discovery. *See e.g., Manual for Complex Litig.*, § 32.43, at 586 (in "employment discrimination litigation … most of the information will be within the control of the employer often in computerized form.").[10] Proportionality recognizes that claims about "employment practices … may have importance far beyond the monetary amount involved." Fed. R. Civ. P. 26, 2015 Advisory Committee Notes. This discovery is essential regardless of whether these are individual or class disparate impact claims. *See* Sec. III, *supra*. Further, Nike waived its proportionality objections because they were non-specific and boilerplate, which "are inadequate and tantamount to not making any objection at all," *Makaneole v. Solarworld Indus. Am., Inc.*, No. 3:14-CV-1528-PK, 2015 WL 13681326, at *2 (D. Or. June 25, 2015) (citations omitted); *see also* L.R. 26-5(a) ("Failure to object to a discovery request within the time permitted by the Federal Rules of Civil Procedure, or within the time to which the parties have agreed, constitutes a waiver of any objection."); Ex. B at 12-13, 17-18.

## VII. RELIEF REQUESTED.

Plaintiffs respectfully request an order requiring Nike to: (1) produce discovery related to the setting of starting pay prior to October 2017 that is responsive to Plaintiffs' Request for Production ("RFP") No. 4, RFP No. 8, or the Court's October 31, 2019 Order (ECF No. 89); (2) produce retention policies responsive to RFP No. 32; and (3) provide a declaration setting forth (a) what discovery responsive to RFP Nos. 4 or 8 it withheld and why, (b) how and who searched for and collected potentially responsive discovery related to setting starting pay before October 2017, and (c) if any of this responsive discovery was deleted, what, when, and why.

---

[10] The six proportionality factors are: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Dated: September 15, 2023	Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

*s/Byron Goldstein*
Laura L. Ho (admitted *pro hac vice*)
Barry Goldstein, Of Counsel (admitted *pro hac vice*)
James Kan (admitted *pro hac vice*)
Byron Goldstein (admitted *pro hac vice*)
Katharine L. Fisher (admitted *pro hac vice*)
Mengfei Sun (admitted *pro hac vice*)
MARKOWITZ HERBOLD PC
Laura Salerno Owens, OSB #076230
David B. Markowitz, OSB #742046
Harry B. Wilson, OSB #077214
Kathryn P. Roberts, OSB #064854
ACKERMANN & TILAJEF PC
Craig Ackerman (admitted *pro hac vice*)
cja@ackermanntilajef.com
1180 S Beverly Drive, Suite 610
Los Angeles, CA 90035
Tel: (310) 277-0614
Fax: (310) 277-0635
INDIA LIN BODIEN LAW
India Lin Bodien (admitted *pro hac vice*)
india@indialinbodienlaw.com
2522 North Proctor Street, #387
Tacoma, WA 98406-5338
Tel: (253) 503-1672
Fax: (253) 276-0081

Of Attorneys for Plaintiffs and Opt-In Plaintiffs