**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Kathryn P. Roberts, OSB #064854**
KathrynRoberts@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085 | Fax: (503) 323-9105

**Laura L. Ho** (admitted *pro hac vice*)
lho@gbdhlegal.com
**Barry Goldstein, Of Counsel** (admitted *pro hac vice*)
bgoldstein@gbdhlegal.com
**James Kan** (admitted *pro hac vice*)
jkan@gbdhlegal.com
**Byron Goldstein** (admitted *pro hac vice*)
brgoldstein@gbdhlegal.com
**Katharine L. Fisher** (admitted *pro hac vice*)
kfisher@gbdhlegal.com
**Mengfei Sun** (admitted *pro hac vice*)
msun@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 763-9800 | Fax: (510) 835-1417

Counsel for Plaintiffs

[Additional Counsel of Record listed on the Signature page]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>NIKE, INC., an Oregon Corporation,<br>Defendant. | Case No. 3:18-cv-01477-JR<br><br>**DECLARATION OF BYRON GOLDSTEIN IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>**ORAL ARGUMENT REQUESTED** |

876909.5

I, Byron Goldstein, declare as follows:

1.      I am a member in good standing of the Bar of the State of California and a Partner at the law firm of Goldstein Borgen Dardarian & Ho ("GBDH") in Oakland, California.  I was admitted *pro hac vice* to this Court for this action on August 16, 2018.  I and co-counsel Markowitz Herbold PC, Ackermann & Tilajef PC, and India Lin Bodien Law represent the Plaintiffs.  I am providing this declaration in support of Plaintiffs' Motion to Compel Production of Documents.  I have personal knowledge of the facts set forth in this declaration and could and would testify competently to them if called upon to do so.

2.      Plaintiffs served their First Set of Requests for Production ("RFP") on March 22, 2019.  A true and correct copy is attached as Exhibit A.

3.      Nike served its Objections and Responses to Plaintiffs' First Set of RFPs on April, 25, 2019.  A true and correct copy is attached as Exhibit B.

4.      Attached as Exhibit C is a true and correct copy of NIKE_00024727, produced by Nike in this litigation.  Nike produced this document with its fourteenth volume of production on October 12, 2020.

5.      Attached as Exhibit D is a true and correct excerpt from the deposition of Shine Thomas at 213:21-214:13.

6.      Attached as Exhibit E is a true and correct copy of Nike's September 21, 2020 letter to Plaintiffs.

7.      Based on the following reasons, Plaintiffs believe Nike produced thousands of organizational charts that existed as of Nike's March 15, 2021 submission opposing Plaintiffs' request for an Order compelling production of organizational charts, ECF No. 166-5.  First, Nike's June 2, 2021 letter to Plaintiffs states, "we have produced more than 5,000 organizational

charts ….."  Attached as Exhibit F is a true and correct copy of Nike's June 2, 2021 letter.

Second, after the Court's March 30, 2021 Order requiring Nike to produce existing

organizational charts (ECF No. 135), Nike produced organizational charts in documents

produced between May 17, 2021 and May 26, 2021 (Nike Volumes of Production 36-39).

Plaintiffs' counsel reviewed the discovery in Volumes 36-39 that Nike produced and the

metadata Nike produced along with this discovery.  According to Nike's metadata, in Volumes

36-39, Nike produced over 17,000 pages in documents last modified before March 15, 2021.

     8.     Attached as Exhibit G is a true and correct copy of NIKE_000024726, produced

by Nike in this litigation.  Nike produced this document with its fourteenth volume of production

on October 12, 2020.

     9.     Attached as Exhibit H is a true and correct excerpt from the deposition of Shine

Thomas at 202:12-203:18.

     10.     Attached as Exhibit I is a true and correct copy of Plaintiffs' June 15, 2021 letter

to Nike.  Nike did not respond to this letter.  Based on the lack of a response and Plaintiffs'

counsel's review of all discovery Nike produced, after Plaintiffs' June 15, 2021 letter, Nike did

not produce any additional versions of its "Offer Intake Form" or "Hiring Process."

     11.     Attached as Exhibit J is a true and correct copy of NIKE_00003185, produced by

Nike in this litigation.

     12.     Attached as Exhibit K is a true and correct excerpt from the deposition of Shine

Thomas at 199:5-16 and 210:7-212:19.

     13.     Attached as Exhibit L is a true and correct copy of NIKE_00023658, produced by

Nike in this litigation.  Nike produced this document with its twelfth volume of production on

August 31, 2020.

14.    Based on the following reasons, Plaintiffs believe Nike has not produced any policies, guidelines, trainings, descriptions, or forms that it used for determining the amount of starting pay before October 2017.

a.    First, Plaintiffs' counsel reviewed all discovery Nike produced.

b.    Second, Nike did not rely on any such documents in its Opposition to Class Certification even though Nike had known of Plaintiffs' starting pay allegation since 2018. *See* ECF No. 183 at 16-21.

c.    Third, when Plaintiffs sought to meet and confer about pre-October 2017 starting pay practices, Plaintiffs told Nike that one of the reasons why this was necessary was because Nike had failed to produce any policies, guidelines, trainings, descriptions, or forms it used when determining the amount of starting pay before October 2017.  While Nike stated that it disputed this, it could not identify a single such document in several communications, including an August 28, 2023 meet and confer call.  Attached as Exhibit M are true and correct copies of this correspondence, which includes Plaintiffs' July 11, 2023 letter, Nike's July 17, 2023 letter, Plaintiffs' July 20, 2023 letter, Plaintiffs' July 27, 2023 letter, Nike's July 31, 2023 letter, and Nike's August 2, 2023.

15.    In July 2023, Plaintiffs again sought to engage Nike in a transparent and cooperative discovery process.  For discovery related to determining starting pay before October 2017, Plaintiffs, on July 11, 2023, asked Nike what discovery it was withholding, where it looked for discovery, and where it did not look for discovery.  *See* Ex. M at 1.  Nike did not provide this information in its July 17, 2023 response.  *See id.* at 2-3.  Plaintiffs again sought this information in their July 20, July 27, and August 6 communications.  *See id.* at 4-7, 12, 14.  Nike's responses to these communications again did not provide this information.  *See id.* at 8-

12, 14.  Nor did Nike provide this information during an August 28, 2023 call that Plaintiffs requested to meet and confer about pre-October 2017 discovery related to determining starting pay, whether and what discovery Nike was withholding, where it looked for discovery, and where it did not look for discovery.

16.     Plaintiffs made numerous efforts to meet and confer about whether and what discovery Nike was withholding, the bases for Nike's objections to their First Set of RFPs, including burden, how it searched for and collected discovery, and where potentially responsive discovery was located.  This includes numerous written and phone communications over the last four years, including, for example, a May 31, 2019 written communication, a June 11, 2019 call, a July 15, 2019 written communication, a March 9, 2020 written communication, a December 20, 2019 written communication, an October 8, 2020 written communication, and an August 28, 2023 call.

I declare under penalty of perjury under that the foregoing is true and correct, and that this Declaration was executed this 15th day of September, 2023 in Oakland, California.


_s/ Byron Goldstein_
Byron Goldstein

**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Anna M. Joyce, OSB #013112**
AnnaJoyce@MarkowitzHerbold.com
**Brittany M. Simpson, OSB #165326**
BrittanySimpson@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1211 SW Fifth Avenue, Suite 3000
Portland, OR  97204-3730
Telephone: (503) 295-3085
Fax: (503) 323-9105

Attorneys for Plaintiffs and Opt-In Plaintiffs
[Additional Counsel of Record Listed on Signature Page]

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, SARA JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated, | Case No. 3:18-cv-01477 |
| Plaintiffs, | **PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT NIKE, INC.** |
| vs. | |
| NIKE, INC., an Oregon Corporation, | |
| Defendant. | |

Goldstein Decl. Ex. A, Page 1 of 31

To:    Nike, Inc. by and through its attorneys, Daniel Prince, Zach P. Hutton, Felicia Davis,

Paul Hastings, 515 South Flower Street, 25th Floor, Los Angeles, CA 90071.

Plaintiffs Kelly Cahill, Sara Johnston, Lindsay Elizabeth, and Heather Hender,

individually and on behalf others similarly situated, request that defendant Nike, Inc. respond to

the following Requests for Production of documents and items pursuant to FRCP 34 and that the

responses be served on Plaintiffs within 30 days after service of these Requests at the offices of

Goldstein, Borgen, Dardarian & Ho, 300 Lakeside Drive, Suite 1000, Oakland, CA 94612.

<u>**INSTRUCTIONS**</u>

1.    <u>Machine-readable format available</u>.  If any responsive documents are in machine-

readable format, Plaintiffs request a timely meet and confer between the Parties to determine the

form, content, and scope of the production related to any applicable Request.

2.    <u>Consistent unique identifier</u>.  For all documents produced containing HQ

employees, include each HQ employee's name and another unique identifier that is consistent

across the production, such as employee ID.

3.    <u>Format for production of Electronically Stored Information ("ESI") that is not</u>

<u>available in a machine-readable format</u>.

a.    Unless otherwise indicated, please produce all ESI in single-page TIFF

format with metadata fields preserved in the load file.  The load file should be produced in a

format capable of being imported into Summation litigation software.  (Files should be named

after the control numbers associated to the .dat/.opt files to ensure the identifier is populated with

the ID number; document level text files should be provided; Summation (.dat) and opticon

(.opt) or .lfp with relative paths for text and natives in the .dat file should be provided; separate

directories for images, natives, and text should be provided in a single deliverable, with UTF-8,

UTF-16, or ANSI encoding for load files.)  Unless otherwise indicated, all ESI should be

PLAINTIFFS' 1ST SET OF REQ. FOR PRODUCTION TO DEFENDANT NIKE, INC.
PAGE 1

produced in single-page TIFF format with metadata fields preserved in the load file.  The load file should be produced in a format capable of being imported into Summation litigation software and should include an '@edoc' token for native file.

       b.      For all hard copy documents for which native electronic files never existed, no longer exist, or are not reasonably accessible, please produce in single-page TIFF format, with documents logically doc broken, and capable of being loaded into Summation litigation software.  This includes scanned images of those documents which contain unique information after they were printed out, such as paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting, and redactions.  All scanned documents should be kept as they are in the regular course of business or in the alternative provide information identifying the custodian for each document.  Please do not produce a single PDF of all scanned hard copy documents.

       c.      Emails and other communications should be produced in single-page TIFF format.  Produce all metadata relating to any given email or other communication (e.g., date, time, sender, recipients (including bcc, follow-up or importance flags) and any attachments.

       d.      Excel documents should be produced in native format with all metadata preserved.  Spreadsheets created with other software should be produced in a comma delimited format capable of being opened in Excel, if feasible.

       e.      PowerPoint documents should be produced in native format with all metadata preserved, including speaker notes.

       f.      All native Word documents containing any revisions or mark-ups should be processed in a way that all markups, redlines, or comments are captured in the TIFF version prepared to load into Summation software database.

Goldstein Decl. Ex. A, Page 3 of 31

g.      All logs should be produced in native format.

h.      Audio, video, or other recorded information should be in a .wav or .mpeg format.

i.      All files shall be labeled with a Bates or control number.

j.      Parent/child attachment relationships shall be maintained, and load files should include attachment IDs and parent IDs that maintain the parent/child relationship in a Summation database.

k.      All image files should have a minimum resolution of 300 dpi and meet commonly accepted production standards to ensure that the image file is reliable and authentic. All image files should include an OCR text file. The load file should include @FULLTEXT DOC for multi-page text files or @FULLTEXT PAGE for single page text files. Text files should be grouped in the same folders as image files.

l.      Metadata fields should include: DocID or Control Number, Production Begin, Production End, Production Begin Attachment, Production End Attachment, ParentDocID, Page Count, to, From, CC, BCC, Subject, DateTime Primary Parent, DateTimeCreated, DateTimeSent, DateTime Received, DateTimeModified, DateTimesys Accessed, Appointment Start Time, Appointment End Time, File Extension, File Name, File Size Bytes, File Type, Custodian, Md5 Hash, Author, Title, DocLink, and FilePath. Date fields must contain valid date formats (mm/dd/yyyy) and dates and times should be together in a standard datetime format (mm/dd/yyyy hh:mm:ss AM/PM). Multi choice fields should be separated via a semicolon (";").

m.      Plaintiffs reserve the right to request additional documents in native format if it is determined the document is not readable or usable in a TIFF format.

PLAINTIFFS' 1ST SET OF REQ. FOR PRODUCTION TO DEFENDANT NIKE, INC.
PAGE 3

Goldstein Decl. Ex. A, Page 4 of 31

4.    <u>Possession, custody, or control</u>.  This request requires production of documents or things that are in your possession, custody, or control, and documents or things that are in the possession, custody, or control of your agents, employees, accountants, attorneys, representatives, or other persons who have documents deemed to be in your possession, custody, or control.

5.    <u>Excerpts and redactions</u>.  Whenever a document is not produced in full (as, for example, when material is excerpted or redacted from a document), state with particularity the reasons why the document was not produced in full, and describe to the best of your knowledge, information, or belief and with as much particularity as possible, those portions of the document that are not produced, including the content or substance of the content thereof.

6.    <u>Privilege log.</u>  If documents are withheld or redacted due to privilege, include a privilege log that (1) states the reason(s) you are refusing to produce the document, and (2) describes the author(s), recipient(s), date, and subject matter of the document in enough detail so that a determination can be made about the applicability of the claim of privilege or other reason for refusing to produce the document.

7.    <u>Usual course of business</u>.  If responsive documents are kept together in the usual course of business, they are to be produced in that order, to fairly reveal and not to distort the order of your filing and record keeping system.  Documents attached to each other should not be separated.  File folders, complete with tabs or labels, are to be produced for each file folder in your files from which documents are produced in response to this discovery request.  The file folders must be produced intact with the documents produced therefrom.

8.    <u>Continuing requests</u>.  These requests are continuing and you must immediately produce additional responsive documents as may be later located or acquired by you.

PLAINTIFFS' 1ST SET OF REQ. FOR PRODUCTION TO DEFENDANT NIKE, INC.
PAGE 4

Goldstein Decl. Ex. A, Page 5 of 31

9.      Interpretation.

a.      Words in the singular include their plural meaning, and vice versa.

b.      The past tense includes the present tense, and words used in the masculine gender shall include the feminine gender.

c.      References to persons and other entities include their agents, employees, representatives, and attorneys.

10.     The meaning of terms or phrases that are not apparent on their face.  Produce documents sufficient to define terms or phrases that do not have a clear meaning on their face.

11.     Time-period.  All requests for production seek documents from throughout the Covered Period, unless otherwise indicated.

12.     Nike HQ.  All requests for production seek documents related to Nike HQ.

## DEFINITIONS

a.      "Action" means *Cahill, et al. v. Nike, Inc.*, Case No. 3:18-cv-01477-JR.

b.      "And" and "Or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the scope.

c.      "Any" should be construed to include "all," and "All" should be understood to include "any."

d.      "CFE Ratings" mean the annual rating assigned to HQ employees that includes the numbers 1-5, "Inconsistent," "Highly Successful," "Exceptional" or similar terms or numbers.

e.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether verbal or written, through any medium, and documents

PLAINTIFFS' 1ST SET OF REQ. FOR PRODUCTION TO DEFENDANT NIKE, INC.
PAGE 5

727874.12

attached to any communication.  Except for documents attached to any communication, this definition excludes items covered by the definition of "Documents."

      f.     "Compensation" means salary, PSP Bonuses, equity, Two Times Pay, and any transfer of money or other thing of value.

      g.     "Covered Period" means August 9, 2015 through the present.

      h.     "Direct reporting," "Directly Reported," and "Directly Report" mean any formal line of reporting (including direct and dotted line reporting), supervision, or accountability between an employee and a manager.

      i.     "Document" means all written, graphic, recorded, or illustrative matter, data, data structures, software, or any other tangible thing by which information is contained, stored, or displayed by every kind of description, however produced or reproduced, whether draft or final, original or reproduction, partial or complete, and regardless of whether approved, signed, sent, received, redrafted, or executed, and containing all attachments.  Except for communications with attached documents, the definition of documents does not include communications.

      j.     "HQ employees" mean Nike employees at Nike HQ in a salaried, corporate position that was or is a lower-level position than Vice-President, and who is not employed in either a Nike retail store, in HR, or in Nike's Legal or Finance departments.

      k.     "HQ executives" mean any Nike employee with a Vice-President title, President title, or other job title that is as or more senior than Vice-President or that is at the same or higher Band level.  Band level refers to the six levels that spell out the word "VALUES" in which Nike employees are placed.

      l.     "HR" means Your Human Resources business unit or organization, including Your Employee Relations and Total Rewards business units, any other business unit or group

Goldstein Decl. Ex. A, Page 7 of 31

that reports to the Vice-President in charge of Your Human Resources business unit, Matter of Respect, and AlertLine.

      m.      "Identify," "Identity," and "Identities," mean:

           i.      In the case of a system, the control of, operations of, schema, fields, definitions of any fields that are not clear on their face, available functions or reports, brand name, version, changes or updates, and the categories or data that are utilized or accessible by the system.

           ii.      In the case of a person, name, employee ID (or similar unique identifier assigned by Nike), current position, and job grouping.

      n.      "Including" means "including" and "including without limitation."

      o.      "Job Grouping" means any Nike-created grouping or organization of jobs, including job family, job sub-family, pipeline, function, business unit, category, band level, job title, and job code.

      p.      "Nike," "You," "Your," "Defendant" mean Nike, Inc. and any consultants, experts, investigators, supervisors, officials, officers, attorneys, representatives and employees, agents, or other persons acting on their behalf.

      q.      "Nike HQ" or "HQ" mean all buildings in Washington County, Oregon or Multnomah County, Oregon where four or more Nike employees have an office.

      r.      "Person" or "People" includes a natural person, firm, association, organization, partnership, business, trust, corporation, or public entity.

      s.      "Plaintiffs" mean named Plaintiffs Kelly Cahill, Sara Johnston, Lindsay Elizabeth, and Heather Hender as well as Opt-in Plaintiffs Tracee Cheng, Samantha Phillips, Donna Olson, Paige Azavedo, Lauren Anderson, and Cindy Linebaugh.

Goldstein Decl. Ex. A, Page 8 of 31

t.    "Policies" mean all Nike policies, rules, directives, protocols, and procedures, including any of the following documents that contain policies: manuals, manager or HR training documents, memoranda, handbooks, FAQs, and all other similar documents.

u.    "Potential Appraisal" means Nike's assessment of HQ employees' performance and/or potential for advancement as identified in NIKE_Cahill – 0059.

v.    "Practices" mean all systematic processes or established, recognized, habitual, customary, usual, regular, or prescribed practices for achieving certain ends.

w.    "PSP Bonus" means bonuses related to Nike's Performance Sharing Plan or any other bonuses awarded and related to CFE ratings.

x.    "Relate to," "Relates to," and "Relating to" mean analyzing, commenting upon, constituting, dealing with, defining, describing, discussing, concerning, containing, evidencing, embodying, reflecting, identifying, involving, listing, mentioning, referring to, responding to, stating, or in any way pertaining to.

y.    "Sex Discrimination" means alleged, potential, disputed, unsubstantiated, suspected, or actual sexual harassment, sexual assault, devaluing of women, hostility towards women, or discrimination or inequality in compensation or promotions for women at Nike HQ.

z.    "System" and "Systems" mean software, applications, databases, computer processes, email systems, and any other communications system.  This includes Nike's use of an SAP system.

aa.    "Uniform Guidelines" mean the Uniform Guidelines on Employee Selection Procedures, 29 C.F.R. § 1607 *et seq.*

bb.    "Validation" means the definition in the Uniform Guidelines, 29 C.F.R. § 1607.16X, which is: "*Validation in accord with these guidelines or properly validated.  A*

PLAINTIFFS' 1ST SET OF REQ. FOR PRODUCTION TO DEFENDANT NIKE, INC.
PAGE 8

demonstration that one or more validity studies meeting the standards of these guidelines has been conducted, including investigation and, where appropriate use of suitable alternative selection procedure are contemplated by section 3B, and has produced evidence of validity sufficient to warrant use of the procedure for the intended purpose under the standards of these guidelines."

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

Documents that identify the following for each HQ employee who has worked for Nike at any time during the covered period: (a) identity, including name, employee ID (or similar unique identifier assigned by Nike), current position, and job grouping; (b) complete compensation history at Nike including type or component, date and amount of paid, all recorded reasons for paid compensation and changes thereto, and inputs used to calculate compensation; (c) final CFE ratings (also referred to as Performance Appraisals); (d) Potential Appraisal final results; (e) complete job history at Nike, including all held position titles, job codes, all other applicable job groupings, dates of changes in any position title or job grouping, original hire date, rehire date, and termination date, pay codes, pay grades, and compensation at each job position or job grouping; and (e) demographics, including sex, age, race or ethnicity, and education level; and (f) job application data for new hires, lateral moves, and promotions, including collection and use of prior compensation, resumes, and prior work experience.  For each such HQ employee, the time-period for this request is from when the HQ employee first started working at Nike to the present.

### REQUEST FOR PRODUCTION NO. 2:

Documents that identify all systems used by Nike to track, store, access information or

PLAINTIFFS' 1ST SET OF REQ. FOR PRODUCTION TO DEFENDANT NIKE, INC.
PAGE 9

727874.12

Goldstein Decl. Ex. A, Page 10 of 31

generate reports (e.g., Performance Rating History Report) relating to HQ employees and any of the following: (a) compensation; (b) job history; (c) job applications and decisions on job applications for new hires, lateral moves, and promotions; (d) performance evaluations; (e) CFE ratings; (f) Potential Appraisal; (g) demographics (sex, age, race or ethnicity, and education level); (h) promotions; or (i) workplace complaints about sex discrimination (including those submitted to Matter of Respect, AlertLine or otherwise) or other discrimination, including any investigations or responses to such complaints.  The time-period for this request is January 1, 2010 to the present except for (i), which is for the covered period.

**REQUEST FOR PRODUCTION NO. 3:**

All data and content dictionaries, glossaries, reference guides, field and code definitions, training materials, and schema documents related to Nike's use and maintenance of data systems covered by Request for Production Nos. 1 through 2 or any other Request herein.  For purposes of these requests, schema refers to the organization of the data system, all fields contained in the data system, descriptions/definitions of all data fields and related tables, the source of entries for all data fields (i.e., whether derived or calculated from another data field from the data system or other data systems or entered by key), the types of queries and/or reports available, and input and output mapping of the data system to other databases or data systems.

**REQUEST FOR PRODUCTION NO. 4:**

All policies and practices related to job offers made for HQ employee positions at Nike HQ.  This request includes: (a) collection or use of prior compensation history, including any mechanism used to collect such history (e.g., Consumer Reporting Agency); (b) terms of offers, including compensation; (c) band level or job assignments; (d) negotiations related to offers; (e) all related trainings and training materials for employees, managers, and/or HR; and (f) documents identifying persons involved with disseminating, implementing, monitoring, and

Goldstein Decl. Ex. A, Page 11 of 31

enforcing these policies and practices.  The time-period for this request is January 1, 2010 to the present.

**REQUEST FOR PRODUCTION NO. 5:**

All policies and practices related to performance reviews of HQ employees.  This request includes: (a) all policies and practices related to CFE ratings of HQ employees, including any definitions of CFE ratings, curves or percentages considered for CFE ratings, proposed CFE ratings, and final determinations of CFE ratings; (b) the effect of CFE ratings on compensation; (c) the effect of CFE ratings on promotions; (d) the relationship among budgets, CFE ratings, and compensation; (e) all related trainings and training materials for employees, managers, and/or HR; and (f) documents identifying persons involved with disseminating, implementing, monitoring, and enforcing these policies and practices.  The time-period for this request is January 1, 2010 to the present.

**REQUEST FOR PRODUCTION NO. 6:**

All policies and practices relating to promotions for HQ employees, including Organizational Talent Planning, Accelerate, and any other promotion-related program.  This request includes: (a) all policies and practices concerning both promotions of HQ employees and any increases in compensation; (b) any questions or requirements related to job applications that may disqualify any job applicant from getting a position, including "Disqualification Questions" and "Prescreening Questionnaires;" (c) all related trainings and training materials for employees, managers, and/or HR; and (d) documents identifying persons involved with disseminating, implementing, monitoring, and enforcing these policies and practices  The time-period for this request is January 1, 2010 to the present.

**REQUEST FOR PRODUCTION NO. 7:**

All policies and practices concerning "Potential Appraisal" and HQ employees.  This includes: (a) all related trainings and training materials for employees, managers, and/or HR; and (b) documents identifying persons involved with disseminating, implementing, monitoring, and enforcing these policies and practices.  The time-period for this request is January 1, 2010 to the present.

**REQUEST FOR PRODUCTION NO. 8:**

All policies and practices related to compensation for HQ employees. This request includes setting of starting and subsequent salary, salary ranges for all job groupings, Two Times Pay, equity, PSP Bonuses, and consideration of prior compensation when setting starting compensation.  For PSP Bonuses, this request includes documents sufficient to describe all formulas and components of any PSP Bonus calculated that Nike has used for HQ employees, including Team Award, Discretionary Award, Time in Plan, Weighted Achievement, Fiscal Earnings, ½ Band Target, and Performance Modifier as well as the applicable percentages applicable to each band level for the PSP calculation.  This request also includes: (a) all related trainings and training materials for employees, managers, and/or HR; and (b) documents identifying persons involved with disseminating, implementing, monitoring, and enforcing these policies and practices.  The time-period for this request is January 1, 2010 to the present.

**REQUEST FOR PRODUCTION NO. 9:**

All policies and practices related to the assignment of HQ employees to job positions, including new hires, reassignments, promotions or lateral moves.  This request includes (a) all policies and practices concerning any training or change in compensation related to reassignments or lateral moves; (b) all related trainings and training materials for employees,

PLAINTIFFS' 1ST SET OF REQ. FOR PRODUCTION TO DEFENDANT NIKE, INC.
PAGE 12

727874.12

Goldstein Decl. Ex. A, Page 13 of 31

managers, and/or HR; and (c) documents identifying persons involved with disseminating,

implementing, monitoring, and enforcing these policies and practices.  The time-period for this

request is January 1, 2010 to the present.

**REQUEST FOR PRODUCTION NO. 10:**

All policies and practices concerning workplace complaints (including those submitted to

Matter of Respect, AlertLine or otherwise).  This request includes (a) the processes for

submitting or collecting complaints; (b) investigations of workplace complaints; (c) proposed

and enacted responses to workplace complaints, including information contained in "Next

Steps," "Suggested Questions," or any other documents used or supposed to be used by HR

and/or managers; (d) all related trainings and training materials for employees, managers, and/or

HR; and (e) documents identifying persons involved with disseminating, implementing,

monitoring, and enforcing these policies and practices.

**REQUEST FOR PRODUCTION NO. 11:**

All documents and communications relating to any HQ executive's involvement in the

setting or review of any policies or practices concerning HQ employees and any of the

following: (a) compensation; (b) job assignment; (c) job applications and decisions on job

applications for new hires, lateral moves, and promotions, including collection and use of prior

compensation and work experience; (d) performance evaluations; (e) CFE ratings; (f) Potential

Appraisal; (g) promotions; or (h) workplace complaints (including those submitted to Matter of

Respect, AlertLine or otherwise) about sex discrimination or other discrimination, including any

investigations or responses to such complaints.

**REQUEST FOR PRODUCTION NO. 12:**

All descriptions or analyses of job groupings at Nike HQ, including Nike's Employee

PLAINTIFFS' 1ST SET OF REQ. FOR PRODUCTION TO DEFENDANT NIKE, INC.
PAGE 13

727874.12

Goldstein Decl. Ex. A, Page 14 of 31

Relations and Total Rewards business units.  This request includes (a) for each job grouping, all documents containing descriptions, qualifications, requirements, or tasks; (b) any audit, report, transition-plan, or analysis concerning any job grouping, including any such documents related to any reorganization involving HQ employees or HQ executives who are directly reported to; (c) all related trainings and training materials for employees, managers, and/or HR; and (d) documents identifying persons involved with developing and/or implementing these job grouping descriptions and/or analyses.

**REQUEST FOR PRODUCTION NO. 13:**

Organizational charts, lists or descriptive documents that identify Nike's organizational structure at Nike HQ throughout the covered period.  This request includes (a) all direct reporting lines to or from all HQ employees; (b) all direct reporting lines to and from all HQ executives who are directly reported to; (c) the identities and office locations of HQ executives; (d) for each job grouping, the identity of all people at Nike HQ who are both assigned to a job grouping and are either: (i) in the Total Rewards business unit; (ii) in the Employee Relations business unit; or (iii) an HQ executive who is directly reported to; (e) the organizational structure of HR; and (f) the organizational structure of employees responsible for information technology or electronic information.

**REQUEST FOR PRODUCTION NO. 14:**

Documents that relating to all job codes for positions at Nike HQ held by any HQ employee.  This request includes: (a) definitions or descriptions of such job codes, (b) how job codes relate to any job grouping; (c) all factors impacting job codes (e.g., "individual contributor" and "manager") or impacted by job codes; and (d) documents that identify persons involved with the creation, combination, change, evaluation, and analysis of these job codes.

Goldstein Decl. Ex. A, Page 15 of 31

**REQUEST FOR PRODUCTION NO. 15:**

All versions of any standard form used to create any job description and each job description for any job at Nike HQ that was filled by any HQ employee.

**REQUEST FOR PRODUCTION NO. 16:**

All documents and communications containing or referring to any allocation, distribution, comparison or analysis of men and women at Nike HQ within or across any job grouping.  This request includes all documents and underlying data relating to studies, reviews, analyses, surveys, compilations, or audits related to the effect or impact that any of the following Nike policies or practices that apply to HQ employees has had on female HQ employees: (a) compensation; (b) job assignment; (c) job applications and decisions on job applications for new hires, lateral moves, and promotions, including collection and use of prior compensation and work experience; (d) performance evaluations; (e) CFE ratings; (f) Potential Appraisal; and/or (g) promotions.  This request also includes the document or communication issued on or about April 2017 by David Ayre or HR referring to pay equity, or any review, analysis, or summary of pay equity.  This request also includes any analyses, studies, reports, or other documents related to the evaluation of, pursuant to the provisions of the Uniform Guidelines, whether any employment or selection practice had an adverse impact on female employees.  This request also includes any annual reviews of pay and promotion practices conducted as part of Nike's commitment to and signing of the White Equal Pay Pledge as described in Nike's FY16/17 Sustainable Business Report (page 56).  The time-period for this request is January 1, 2010 to the present.

**REQUEST FOR PRODUCTION NO. 17:**

All documents and communications related to any validation study or studies for policies

or practices that apply to HQ employees and relate to any of the following: (a) compensation; (b) job assignments; (c) job applications and decisions on job applications for new hires, lateral moves, and promotions, including collection and use of prior compensation and work experience; (d) performance evaluations; (e) CFE ratings; (f) Potential Appraisal; and/or (g) promotions.  This request includes:

 a. All documents specified or described in the documentation section, 29 C.F.R. § 1607.15 or otherwise in the Uniform Guidelines;

 b. All documents showing that Nike conducted "an investigation of suitable alternative procedures" that would have less or no adverse impact than any procedures used "and suitable methods of using the selection procedure which have as little impact as possible . . . ."  29 C.F.R. § 1607.3B.

The time-period for this request is January 1, 2010 to the present.

**REQUEST FOR PRODUCTION NO. 18:**

 If Nike contends that any of the following policies or practices that apply to HQ employees are job-related or consistent with business necessity, produce all documents and communications supporting that contention.  This request includes the following policies and practices: (a) compensation; (b) job assignment; (c) job applications and decisions on job applications for new hires, lateral moves, and promotions, including collection and use of prior compensation and work experience; (d) performance evaluations; (e) CFE ratings; (f) potential appraisal; and (g) promotions.  The time-period for this request is January 1, 2010 to the present.

**REQUEST FOR PRODUCTION NO. 19:**

 All documents and communications related to any job analysis conducted by Nike for any position held by HQ employees. The time-period for this request is January 1, 2010 to the

PLAINTIFFS' 1ST SET OF REQ. FOR PRODUCTION TO DEFENDANT NIKE, INC.
PAGE 16

727874.12

Goldstein Decl. Ex. A, Page 17 of 31

present.

**REQUEST FOR PRODUCTION NO. 20:**

All documents and communications relating to any action Nike has undertaken or considered to address any disparities or potential disparities between male and female HQ employees relating to (a) compensation; (b) job assignment; (c) job applications and decisions on job applications for new hires, lateral moves, and promotions, including collection and use of prior compensation and work experience; (d) performance evaluations; (e) CFE ratings; (f) potential appraisal; and (g) promotions.

**REQUEST FOR PRODUCTION NO. 21:**

All documents and communications related to any HQ executive's involvement with, decision about or review of any HQ employee's CFE rating and/or any HQ employee's CFE rating-related compensation, including salary increases, equity distributions or PSP Bonuses.

**REQUEST FOR PRODUCTION NO. 22:**

All documents and communications concerning the preparation for, conducting of, or reporting about calibration meetings.  This request includes (a) all related trainings and training materials for employees, managers, and/or HR; and (b) documents identifying persons involved with these calibration meetings.

**REQUEST FOR PRODUCTION NO. 23:**

All documents and communications relating to the creation or allocation of budgets that Nike uses for HQ employees' compensation, including CFE ratings-related compensation.  This request includes all documents and communications concerning the creation of such budgets, providing or assigning any part of such budgets to any job grouping or decisions about allocations of such budgets to any HQ employee.

PLAINTIFFS' 1ST SET OF REQ. FOR PRODUCTION TO DEFENDANT NIKE, INC.
PAGE 17

727874.12

Goldstein Decl. Ex. A, Page 18 of 31

**REQUEST FOR PRODUCTION NO. 24:**

All documents and communications concerning Two Times Pay for any HQ employee and containing or referring to any analyses by any person in HR, recommendations by any person in HR or HQ executive, or any determinations or reviews by a HQ executive.

**REQUEST FOR PRODUCTION NO. 25:**

For any proposed promotion or application for promotion of a HQ employee that was provided to any HQ executive, all documents and communications concerning such proposed promotion or application for promotion. This request includes documents and communications concerning any changes to compensation that relate to such promotion or potential promotion.

**REQUEST FOR PRODUCTION NO. 26:**

All policies and practices relating to sex discrimination affecting employees at Nike HQ. This request includes the (a) Harassment-Zero tolerance policy, Zero Tolerance, Playing Fair, and A Matter of Respect; (b) all related trainings and training materials for employees, managers, and/or HR; and (c) documents identifying persons involved with disseminating, implementing, monitoring, and enforcing these policies and practices.

**REQUEST FOR PRODUCTION NO. 27:**

All complaints, allegations, reports, investigations, recommended responses to complaints, and enacted responses to complaints relating to sex discrimination at Nike HQ.

**REQUEST FOR PRODUCTION NO. 28:**

All documents and communications relating to the involvement of any HQ executive in any decision or review related to any complaint of sex discrimination at Nike HQ.

**REQUEST FOR PRODUCTION NO. 29:**

All documents and communications related to sex discrimination that were provided by

PLAINTIFFS' 1ST SET OF REQ. FOR PRODUCTION TO DEFENDANT NIKE, INC.
PAGE 18

727874.12

Goldstein Decl. Ex. A, Page 19 of 31

or to any HQ executive or member of Nike's board of directors, including minutes, agendas, and reports.

**REQUEST FOR PRODUCTION NO. 30:**

All policies and practices relating to the orientation and/or on-boarding process of HQ employees.  This request includes: (a) all related trainings and training materials for employees, managers, and/or HR; and (b) documents identifying persons involved with disseminating, implementing, monitoring, and enforcing these policies and practices.

**REQUEST FOR PRODUCTION NO. 31:**

All of Nike's employee manuals or handbooks, including all documents contained on Nike's Me Portal.

**REQUEST FOR PRODUCTION NO. 32:**

All policies and practices relating to the retention, preservation, backing-up/archiving or destruction of documents, computer data, system data, and email files.  This includes (a) the creation, maintenance, access, and storage of archived and backup files or data; and (b) on-site or off-site storage of documents.

**REQUEST FOR PRODUCTION NO. 33:**

Nike-created maps and/or documents sufficient to identify the location of all Nike HQ buildings.

**REQUEST FOR PRODUCTION NO. 34:**

Documents sufficient to show all job descriptions and responsibilities for any of the following people: (a) Trevor Edwards; (b) David Ayre; (c) Jayme Martin; (d) Gino Fisanotti; (e) Daniel Tawiah; (f) Steve Lesnard; (g) Simon Pestridge; (h) Vikrent Sing; (i) Antoine Andrews; (j) Greg Thompson; (k) Helen Kim; (l) Tommy Kain; (m) Jack Gold; (n) Josh Simon; or (o) Kris

PLAINTIFFS' 1ST SET OF REQ. FOR PRODUCTION TO DEFENDANT NIKE, INC.
PAGE 19

727874.12

Goldstein Decl. Ex. A, Page 20 of 31

Aman.  For each such person, the time-period for this request is from July 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 35:**

All documents and communications related to any workplace complaints (including those submitted to Matter of Respect, AlertLine or otherwise) or investigation concerning any of the following people at any time between January 2010 to the present: (a) Trevor Edwards; (b) David Ayre; (c) Jayme Martin; (d) Gino Fisanotti; (e) Daniel Tawiah; (f) Steve Lesnard; (g) Simon Pestridge; (h) Vikrent Sing; (i) Antoine Andrews; (j) Greg Thompson; (k) Helen Kim; (l) Tommy Kain; (m) Jack Gold; (n) Josh Simon; or (o) Kris Aman.  This request includes all documents and communications related to responses to any such investigations or complaints, such as documents gathered, remedial action, reports, and recommendations.

**REQUEST FOR PRODUCTION NO. 36:**

Documents and communications sufficient to show that Nike was considering or planning for Trevor Edwards as the next CEO of Nike.  This request includes documents and communications sufficient to identify the considerations and bases for any decision to award a retention bonus to Trevor Edwards.

**REQUEST FOR PRODUCTION NO. 37:**

All documents and communications related to the discipline, resignation, separation, or discharge of any of the following people: (a) Trevor Edwards; (b) David Ayre; (c) Jayme Martin; (d) Daniel Tawiah; (e) Steve Lesnard; (f) Simon Pestridge; (g) Vikrent Sing; (h) Antoine Andrews; (i) Greg Thompson; (j) Helen Kim; (k) Tommy Kain; (l) Jack Gold; or (m) Kris Aman.

**REQUEST FOR PRODUCTION NO. 38:**

All documents and communications related to the promotion of any of the following to

PLAINTIFFS' 1ST SET OF REQ. FOR PRODUCTION TO DEFENDANT NIKE, INC.
PAGE 20

Vice-President, including any documents or communications provided to or by any person involved in the decisions to promote: (a) Trevor Edwards; (b) David Ayre; (c) Jayme Martin; (d) Gino Fisanotti; (e) Daniel Tawiah; (f) Steve Lesnard; (g) Simon Pestridge; (h) Vikrent Sing; (i) Antoine Andrews; (j) Greg Thompson; (k) Helen Kim; (l) Tommy Kain; (m) Jack Gold; or (n) Kris Aman.

**REQUEST FOR PRODUCTION NO. 39:**

All documents and communications related to any document created, edited, reviewed, signed, or sent by Monique Matheson around April 2018 that contained any reference to "bias," the "hiring process," prior compensation history, or any potential disparities in pay or promotions. This request includes this document and all versions of this document.

**REQUEST FOR PRODUCTION NO. 40:**

All documents and communications related to any communications with reporters during the period of March 1, 2018 to the present that relate to the allegations in this action. This request includes any transcripts, notes, or documents prepared before, during, or after such statements or discussions. This request also includes any such documents and communications related to either of the following statements made to the New York Times: (a) "an insular group of high-level managers;" or (b) "protected each other and looked the other way."

**REQUEST FOR PRODUCTION NO. 41:**

All documents and communications related to the document or communication sent by, or on behalf of, Nike's CEO around March 15, 2018 that included any of the following statements: (a) "Over the past few weeks, we've become aware of reports of behavior occurring within our organization that do not reflect our core values of inclusivity, respect and empowerment;" (b) "we are going to be doing a comprehensive review of our HR systems and

PLAINTIFFS' 1ST SET OF REQ. FOR PRODUCTION TO DEFENDANT NIKE, INC.
PAGE 21

727874.12

Goldstein Decl. Ex. A, Page 22 of 31

practices along with elevating our complaint process for matter of respect issues;" (c) "we will also create a mandatory manager training program so that everyone understands what we expect and what they need to do to reinforce our core values;" (d) "in light of my desire to accelerate change, I've made the decision to restructure my leadership team into a different alignment that will allow for closer management and a sharper focus on our culture;" or (e) "Trevor Edwards has decided to resign as Nike Brand President and will retire in August." This request includes all versions of this document or communication, any documents or communications from or to any HQ executive, member of Nike's board of directors, or person in HR related to this document or communication.

**REQUEST FOR PRODUCTION NO. 42:**

All documents and communications related to any speech by Nike's CEO's around May 3, 2018 that included any of these statements: (a) "that underserved us in recent years;" (b) "restore trust in places where it has eroded;" (c) "we are looking into every concern;" or (d) that Nike needs to change its hiring, compensation, or promotion systems. This request includes all transcripts and recordings of the speech containing these statements, any documents or communications considered, reviewed, or created in preparation for the speech, and documents summarizing the speech. This request also includes any documents or communications related to the speech and created, sent, or finalized after the speech by any HQ executive or person in HR.

**REQUEST FOR PRODUCTION NO. 43:**

All documents and communications related to the drafting of any of the below statements in Nike's FY16/17 Sustainable Business Report, including all versions of these statements and all documents and communications considered for, relied upon for, or concerning any of these statements. This request includes documents showing all policies and practices related any of

PLAINTIFFS' 1ST SET OF REQ. FOR PRODUCTION TO DEFENDANT NIKE, INC.
PAGE 22
727874.12

Goldstein Decl. Ex. A, Page 23 of 31

the following statements.

      a.    "In early 2018, we became aware of reports of behavior within our organization that did not reflect our core values of inclusivity, respect, and empowerment" (page 55);

      b.    "We took swift action, committing to a wide-ranging approach to evolving our culture, transforming how we approach leadership, and investing in programs to unlock and accelerate us toward an environment that is more inclusive and empowering" (page 55);

      c.    "we announced an overall review of our HR systems and practices, while elevating our confidential complaint process" (page 55);

      d.    "We engage and inspire our workforce by offering opportunities for career growth and development, in addition to providing equitable and competitive pay and benefits" (page 55);

      e.    "We created a mandatory manager training that reinforces the role of respect, inclusion, and accountability that will roll out to people managers globally in 2018. We also increased our investment in leadership training and accountability" (page 55);

      f.    "remove bias from critical moments of the hiring process by creating more inclusive job descriptions, enabling blind resume reviews, eliminating the collection of candidate salary history, and using data to inform hiring decisions" (page 56);

      g.    "At NIKE, we define pay equity as equal compensation for women, men, and all races/ethnicities who undertake the same work at the same level, experience, and performance – and this methodology aligns with top tier global companies" (page 56);

      h.    "NIKE's FY17 data show that for every $1 earned by men, women globally earned 99.9 cents" (page 56);

Goldstein Decl. Ex. A, Page 24 of 31

        i.        "We will move to a new team-based PSP (Performance Sharing Plan) bonus award to accelerate our culture to reward behaviors that reinforce teamwork and collaboration" (page 57);

        j.        "There are three ways to increase representation – promotion, retention, and hiring – and we're working through strategic initiatives and action plans to enable each of them" (page 57); and

        k.        Any of these initiatives: "FY19: Global Pay Equity," "FY19: New Bonus Structure," "FY19: Representative Accountability," "FY19: Diverse Talent Investment," "FY19: New Mentoring Program," "FY19: Unconscious Bias Awareness Training," "FY19: Manager Training," and "FY19: Immersive Executive Development." (pages 56-57).

        l.        With respect to Nike signing the White Equal Pay Pledge (page 56): "declaring our commitment to review pay and promotion practices annually" and "ensure that women and men who undertake the same work at the same level are equitably compensated."

## REQUEST FOR PRODUCTION NO. 44:

All documents and communications related to the email from Mini Cypers, Regional Director Pacific Northwest, Anti-Defamation League, to Nike on February 12, 2018 that was sent to Steve.Connors@Nike.com, Alycia.Gongazlez@Nike.com, Monique.Matheson@Nike.com, and Kori.Vyse@Nike.com.  This request includes any responses to this letter, any documents related to any investigation of any of the letter's allegations, and any remedial actions, including with respect to Phil Hodgson.

## REQUEST FOR PRODUCTION NO. 45:

All documents and communications related to any letter or other communication from Nikki Neuburger that was sent or provided to Nike's CEO that relating to sex discrimination at

Nike HQ.

**REQUEST FOR PRODUCTION NO. 46:**

All documents and communications related to any survey, letter, other document, or other communication containing information or data concerning multiple female HQ employees and any sex discrimination at Nike HQ.  This request includes any documents or communications titled or otherwise referred to as "My Experience" or "Starfish."

**REQUEST FOR PRODUCTION NO. 47:**

All documents and communications related to any statements made around June or July 2018 by Nike or Illana Finley to any reporter about pay equity, compensation, or pay analyses, including the following statements: (a) "strive to meet the diverse needs of our employees, deliver differentiated, competitive pay and benefits, and support a culture in which employees feel included and empowered;" (b) changes to Nike's pay and rewards; competitive pay adjustments; annual pay analysis; a deeper pay analysis of all Nike roles in 2018; (c) "as a result, we are making adjustments to some employee pay;" (c) Nike's definition of pay equity; (d) "we will maintain focus, driving with 1:1 as our goal for both every year," (e) "we will monitor this data on an ongoing basis;" (f) "going forward, one PSP will measure success based primarily on companywide performance," (g) and bonus payouts were determined by a combination of company, team and individual performance.  This request includes any documents or communications considered, reviewed, or created in preparation for these interviews or discussions, documents summarizing these interviews or discussions, and any communications sent about or in response to these interviews or discussions.

**REQUEST FOR PRODUCTION NO. 48:**

All documents and communications that: (a) were provided to or by any HQ executive or

PLAINTIFFS' 1ST SET OF REQ. FOR PRODUCTION TO DEFENDANT NIKE, INC.
PAGE 25

727874.12

Goldstein Decl. Ex. A, Page 26 of 31

person in HR; and (b) show, discuss, analyze, or propose any formulation, description, or definition of pay equity between men and women that Nike has created, used, or considered. The time-period for this request is January 1, 2010 to the present.

**REQUEST FOR PRODUCTION NO. 49:**

All documents and communications submitted to or received from the Equal Employment Opportunity Commissions, Office of Federal Contract Compliance Programs, Oregon's Bureau of Labor and Industries, or any other governmental agency relating to a claim, charge, or complaint of sex discrimination made by or on behalf of any woman who worked at Nike HQ.

**REQUEST FOR PRODUCTION NO. 50:**

All signed witness statements relating to any of the claims or defenses in this action.

**REQUEST FOR PRODUCTION NO. 51:**

Any insurance policy, contract, or agreement that may apply to any of the claims in this action.

**REQUEST FOR PRODUCTION NO. 52:**

For each plaintiff, all documents and communications that are responsive to Oregon's personnel Records Request law, ORS 652,750, including all documents that "are used or have been used to determine:" the employee's qualification for employment, promotions, additional compensation, or employment termination or disciplinary action.  For each plaintiff, the time-period for this request is from when the plaintiff first applied to work at Nike to the present.

**REQUEST FOR PRODUCTION NO. 53:**

For each plaintiff, all documents and communications related to all compensation from Nike that was received, considered, or proposed at any time.  This request includes all documents

PLAINTIFFS' 1ST SET OF REQ. FOR PRODUCTION TO DEFENDANT NIKE, INC.
PAGE 26

727874.12

Goldstein Decl. Ex. A, Page 27 of 31

and communications related to compensation received prior to Nike hiring them as an employee. This request also includes all documents and communications related to both: (a) any offer from Nike; and (b) any negotiation or request to negotiate starting salary or other employment-related terms. This request also includes also includes Personal Pay Statements. For each plaintiff, the time-period for this request is from when the plaintiff first started working at Nike to the present.

**REQUEST FOR PRODUCTION NO. 54:**

For each plaintiff, all documents and communications related to any promotion applied for, considered for, or received at any time. For each such promotion, this request includes the position's job description, other documents containing job duties, job grouping, and compensation. This request also includes documents sufficient to identify the persons who applied, interviewed, and/or were chosen for the promotion. For each plaintiff, the time-period for this request is from when the plaintiff first started working at Nike to the present.

**REQUEST FOR PRODUCTION NO. 55:**

For each plaintiff, all job descriptions and other documents containing job duties for positions they held at Nike HQ. For each plaintiff, the time-period for this request is from when the plaintiff first started working at Nike to the present.

**REQUEST FOR PRODUCTION NO. 56:**

For each plaintiff, all final CFEs, mid-year CFEs, and Potential Appraisals. For each plaintiff, the time-period for this request is from when the plaintiff first started working at Nike to the present.

**REQUEST FOR PRODUCTION NO. 57:**

For each plaintiff, documents sufficient to show the identity of all HQ employees in: (a) each plaintiff's job grouping; (b) who directly reported to plaintiff; (c) who plaintiff directly

reported to; or (d) who had any of the same direct reports as plaintiff at the same time as plaintiff or within one year before or after plaintiff held a position. For each plaintiff, the time-period for this request is from when the plaintiff first started working at Nike to the present.

**REQUEST FOR PRODUCTION NO. 58:**

For each plaintiff, all documents and communications related to any investigation related to any plaintiff, including all documents and communications related to any complaint received by Nike (including through HR, Matter of Respect, or AlertLine) that was made by, made about, or related to plaintiff. This request includes documents and communications related to any such complaints, including investigations, documents gathered, witness statements, remedial action, reports, and recommendations. For each plaintiff, the time-period for this request is from when the plaintiff first started working at Nike to the present.

**REQUEST FOR PRODUCTION NO. 59:**

For each plaintiff who is not currently a HQ employee, all documents and communications related to the separation of plaintiff, including documents and communications related to any exit interview. For each such plaintiff, the time-period for this request is from when the plaintiff first started working at Nike to her date of separation, unless responsive documents and communications post-dating separation exist.

**REQUEST FOR PRODUCTION NO. 60:**

For plaintiff Anderson, all documents and communications related to her demotion from an E-Band or Director position to a U-Band or Manager position. This request includes all documents and communications created by, sent by, or sent to Daniel Tawiah, any person in HR, or any HQ executive. The time-period for this request is from when plaintiff Andersen first started working at Nike to the present.

**REQUEST FOR PRODUCTION NO. 61:**

From June 28, 2018 to the present, all documents and communications mentioning or referring to EEOC charges relating to this action, this action or any plaintiff's or person's involvement with either.

**REQUEST FOR PRODUCTION NO. 62:**

All documents and communications related to both: (a) Shawn Hoy or Sean Cahill; and (b) compensation, any promotions applied for, employment status, separation, contractor status or this action. This request includes any recording of a conversation between Sean Cahill and any person at Nike during the period of August 15, 2018 through August 31, 2018 that was made during a call to the phone number on the notice of preservation sent to Mr. Cahill on August 15, 2018. This request also includes documents sufficient to identify each person who was sent substantially the same notice of preservation that was sent to Mr. Cahill on August 15, 2018.

**REQUEST FOR PRODUCTION NO. 63:**

All documents and communications related to plaintiff Hender and her job assignments, this action, job performance, evaluation, compensation or promotions.

Dated:  March 22, 2019                    Respectfully submitted,

Laura I. Ho (*pro hac vice*)
lho@gbdhlegal.com
Barry Goldstein, Of Counsel (*pro hac vice*)
bgoldstein@gbdhlegal.com
James Kan (*pro hac vice*)
jkan@gbdhlegal.com
Byron Goldstein (*pro hac vice*)
brgoldstein@gbdhlegal.com
Katharine L. Fisher (*pro hac vice*)
kfisher@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000

Plaintiffs' 1st set of Req. for Production to Defendant Nike, Inc.
Page 29

727874.12

Oakland, CA 94612
Tel: (510) 763 9800
Fax: (510) 8351417

Harry Wilson (SBN 077214)
harrywilson@MarkowitzHerbold.com
Laura Salerno Owens (SBN 076230)
laurasalerno@MarkowitzHerbold.com
Markowitz Herbold PC
1211 SW 5th Avenue, Suite 3000
Portland OR 97204
Tel: (503) 295-3085
Fax: (503) 323-9105

Craig Ackerman (*pro hac vice*)
cja@ackermanntilajef.com
ACKERMANN & TILAJEF PC
1180 S Beverly Drive, Suite 610
Los Angeles, CA 90035
Tel: (310) 277-0614
Fax: (310) 277-0635

India Lin Bodien (*pro hac vice*)
india@indialinbodienlaw.com
INDIA LIN BODIEN LAW
2522 North Proctor Street, #387
Tacoma, WA 98406-5338
Tel: (253) 503-1672
Fax: (253) 276-0081

Attorneys for Plaintiffs

AMY JOSEPH PEDERSEN, OSB No. 853958
amy.joseph.pedersen@stoel.com
KENNON SCOTT, OSB No. 144280
kennon.scott@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

DANIEL PRINCE (*pro hac vice*)
danielprince@paulhastings.com
ZACH P. HUTTON (*pro hac vice*)
zachhutton@paulhastings.com
FELICIA A. DAVIS (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, Twenty-Fifth Floor
Los Angeles, California 90071-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

Attorneys for Defendant NIKE, INC.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL *et al.*, individually and on behalf of others similarly situated, | Case No. 3:18-cv-01477-JR |
| Plaintiffs, | |
| v. | **DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION** |
| NIKE, INC., an Oregon Corporation, | |
| Defendant(s). | |

Page 1     DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

**TO PLAINTIFFS KELLY CAHILL, AND SARA JOHNSTON, LINDSAY ELIZABETH, AND HEATHER HENDER, AND TO THEIR ATTORNEYS OF RECORD:**

Defendant Nike, Inc. ("Defendant" or "Nike") hereby objects and otherwise responds to Plaintiffs' First Set of Requests for Production as follows:

## NIKE'S PRELIMINARY STATEMENT

1.      Nike has not completed its investigation relating to this action, has not completed discovery in this action, and has not completed preparation for trial.  As discovery proceeds, facts, information, evidence, documents, and things may be discovered that are not set forth in these responses, but which may have been responsive to Plaintiffs' Requests.  The following responses are based on Nike's knowledge, information, and belief at this time.  Nike assumes no obligation to voluntarily supplement or amend these responses to reflect information, evidence, documents or things discovered following service of these responses.  Furthermore, these responses were prepared based on Nike's good faith interpretation and understanding of the individual Requests and are subject to correction for inadvertent errors or omissions, if any.  These responses are given without prejudice to subsequent revision or supplementation based upon any information, evidence and documentation that hereinafter may be discovered.  Nike reserves the right to refer to, to conduct discovery with reference to, or to offer into evidence at the time of trial, any and all facts, evidence, documents and things developed during the course of discovery and trial preparation, notwithstanding the reference to facts, evidence, documents and things in these responses.

2.      To the extent that any Request seeks documents that are also sought by or identified pursuant to any other Request, Nike declines to produce or identify multiple copies of such documents, and states that each document produced pursuant to any Request is also produced pursuant to every other Request to which it is or may be responsive.

Page 2        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
              PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

3.      To the extent that any Request seeks documents that have already been produced, or which have been identified as exhibits to any depositions in this action, Nike declines to produce or identify such documents.

4.      To the extent that any Request seeks documents that are protected by the attorney-client privilege and/or attorney work product doctrine, or any other applicable privilege or immunity, Nike declines to produce such documents, which would include and would not be limited to:

(a)      All documents that constitute or record correspondence or other communications between counsel for Nike or its agents or employees and Nike or its agents or employees regarding this action;

(b)      All documents prepared for use in this or other litigation including notes, memoranda, draft pleadings and correspondence prepared by, at the direction of, or for review by counsel for Nike; and

(c)      All documents that constitute or record correspondence or other communications between Nike and counsel for Nike regarding this or any other action.

5.      As noted in Nike's specific objections below, Plaintiffs' Requests are overly broad, not proportional to the needs of the case, and/or seek information that is not reasonably accessible because of undue burden or cost.  Nike further objects to the Requests on the ground that the parties should work together to phase or prioritize discovery in a manner that is proportional to the needs of the case, particularly given that this is a collective and class action. Subject to and without in any way waiving its objections, Nike will meet and confer with Plaintiffs to determine what specific documents are sought, and to determine whether the scope of the Requests can be narrowed to a reasonable set of relevant documents based on the claims at issue in this litigation and prioritized accordingly.

6.      Nike objects to Plaintiffs' Requests to the extent that they seek confidential and personal identifying information pertaining to individuals who are not parties to this action, the

Page 3       DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
             PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

disclosure of which would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality.

7.      Nike objects to Plaintiffs' Requests to the extent that they are premature, as discovery in this case has just begun, the Court has not yet entered a final order on Nike's Motion to Dismiss, and Nike has not yet answered Plaintiffs' Complaint.  Furthermore, Nike is still investigating Plaintiffs' claims and is not yet aware of all documents that it may use to support its defenses.

8.      As Plaintiffs are aware, the parties have met and conferred regarding, among other things, a Joint ESI Stipulation ("ESI Stipulation").  That ESI Stipulation has not yet been filed with, or entered by, the Court.  Nike objects to the Requests to the extent they may be inconsistent with the ESI Stipulation, and to the extent the ESI Stipulation has not been entered by the Court.  In addition, the parties have met and conferred regarding a proposed stipulated Protective Order ("Protective Order") and have been unable to reach agreement regarding the appropriate form of Protective Order for this case.  Nike further objects to the Requests to the extent that they seek production of documents in the absence of the entry of a Protective Order, and to the extent, where appropriate, an appropriate confidentiality designation has not been, or cannot be, applied without a Protective Order.  Finally, because this is a class and collective action lawsuit involving potentially hundreds or thousands of employees, and personnel and pay decisions made in connection with putative class members and their comparators, and because the Requests seek sensitive, private, and/or confidential data, Nike objects to the Requests to the extent they seek production of documents in the absence of a Data Handling Agreement or stipulation governing the transmission, retransmission, storage, handling, or access of such materials.

Page 4          DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

                                                    Goldstein Decl. Ex. B, Page 4 of 71

**NIKE'S OBJECTIONS TO PLAINTIFFS' INSTRUCTIONS AND DEFINITIONS**

1.      Nike objects to Plaintiffs' Instructions to the extent that they conflict with the Federal Rules of Civil Procedure, the Court's Local Rules, the parties' agreed ESI Stipulation, or any other applicable rule or order that may be entered by the Court.

2.      Nike objects to Plaintiffs' Instruction regarding "[c]onsistent unique identifier" to the extent it calls for Nike to create documents solely for purposes of this litigation that are not maintained in the usual course of business, and/or to the extent it calls for Nike to alter or augment documents for the purpose of complying with this Instruction.

3.      Nike objects to Plaintiffs' Definition of "Compensation," and to each and every Request that incorporates this term, on the grounds that it is vague and ambiguous as to "transfer of money" and "other thing of value."  Nike further objects to this Definition on the grounds that it assumes facts regarding Nike's business policies and procedures that have not been confirmed or denied by Nike and, as a result of which, may not be accurate or complete.

4.      Nike objects to Plaintiffs' Definitions of "Direct reporting," "Directly Reported," and "Directly Report," and to each and every Request that incorporates any of these terms, on the grounds that they are vague and ambiguous as to "formal," "supervision," "direct and dotted line reporting," and "accountability."  Nike further objects to this Definition on the grounds that it assumes facts regarding Nike's business policies and procedures that have not been confirmed or denied by Nike and, as a result of which, may not be accurate or complete.

5.      Nike objects to Plaintiffs' Definition of "HQ Employees," and to each and every Request that incorporates this term, on the grounds that it is vague and ambiguous as to "at Nike HQ," "salaried, corporate position," "was or is a lower-level position," and "Legal or Finance departments."  Nike further objects to this Definition as overly broad to the extent that it includes employees outside of Plaintiffs' class or collective definitions, or purports to include independent contractors, temporary workers, or other individuals not employed by Nike.  Nike further objects to this Definition on the grounds that it assumes facts regarding Nike's business policies and

Page 5      DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
            PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

procedures that have not been confirmed or denied by Nike and, as a result of which, may not be accurate or complete.

6.      Nike objects to Plaintiffs' Definition of "HQ Executives," and to each and every Request that incorporates this term, on the grounds that it is vague and ambiguous as to "other job title that is as or more or senior than" and "at the same or higher."  Nike further objects to this Definition as overly broad to the extent that it includes employees outside of Plaintiffs' class or collective definitions, or purports to include independent contractors, temporary workers, or other individuals not employed by Nike.  Nike further objects to this Definition on the grounds that it assumes facts regarding Nike's business policies and procedures that have not been confirmed or denied by Nike and, as a result of which, may not be accurate or complete.

7.      Nike objects to Plaintiffs' Definition of "HR," and to each and every Request that incorporates this term, on the grounds that it is vague and ambiguous as to "business unit[s]," "business unit," "reports to," and "in charge of."  Nike further objects to this Definition on the grounds that it assumes facts regarding Nike's business policies and procedures that have not been confirmed or denied by Nike and, as a result of which, may not be accurate or complete.

8.      Nike objects to Plaintiffs' Definition of "Job Grouping," and to each and every Request that incorporates this term, on the grounds that it is vague and ambiguous as to "grouping or organization," "job sub-family," "pipeline," "business unit," and "category."  Nike further objects to this Definition on the grounds that it assumes facts regarding Nike's business policies and procedures that have not been confirmed or denied by Nike and, as a result of which, may not be accurate or complete.

9.      Nike objects to Plaintiffs' Definition of "Policies," and to each and every Request that incorporates this term, on the grounds that it is vague and ambiguous as to "policies, rules, directives, protocols, and procedures."  Nike further objects to this Definition on the grounds that it assumes facts regarding Nike's business policies and procedures that have not been confirmed or denied by Nike and, as a result of which, may not be accurate or complete.

Page 6          DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

10.     Nike objects to Plaintiffs' Definition of "Potential Appraisal," and to each and every Request that incorporates this term, on the grounds that it is vague and ambiguous as to "assessment" and "potential for advancement."  Nike further objects to this Definition on the grounds that it assumes facts regarding Nike's business policies and procedures that have not been confirmed or denied by Nike and, as a result of which, may not be accurate or complete.

11.     Nike objects to Plaintiffs' Definition of "Practices," and to each and every Request that incorporates this term, on the grounds that it is vague and ambiguous as to "systematic processes or established, recognized, habitual, customary, usual, regular, or prescribed practices for achieving certain ends."  Nike further objects to this Definition on the grounds that it assumes facts regarding Nike's business policies and procedures that have not been confirmed or denied by Nike and, as a result of which, may not be accurate or complete.

12.     Nike objects to Plaintiffs' Definition of "PSP Bonus," and to each and every Request that incorporates this term, on the grounds that it is vague and ambiguous as to "any other bonuses awarded and related to CFE ratings."  Nike further objects to this Definition on the grounds that it assumes facts regarding Nike's business policies and procedures that have not been confirmed or denied by Nike and, as a result of which, may not be accurate or complete.

13.     Nike objects to Plaintiffs' Definition of "Sex Discrimination," and to each and every Request that incorporates this term, on the grounds that it is vague and ambiguous in its entirety.  Nike further objects to this Definition on the grounds that it incorporates terms, including legally defined terms, which are irrelevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex.

Page 7         DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
               PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

                                              Goldstein Decl. Ex. B, Page 7 of 71

## NIKE'S OBJECTIONS AND RESPONSES TO PLAINTIFFS'
## REQUESTS FOR PRODUCTION

### DOCUMENT REQUEST NO. 1:

Documents that identify the following for each HQ employee who has worked for Nike at any time during the covered period: (a) identity, including name, employee ID (or similar unique identifier assigned by Nike), current position, and job grouping; (b) complete compensation history at Nike including type or component, date and amount of paid, all recorded reasons for paid compensation and changes thereto, and inputs used to calculate compensation; (c) final CFE ratings (also referred to as Performance Appraisals); (d) Potential Appraisal final results; (e) complete job history at Nike, including all held position titles, job codes, all other applicable job groupings, dates of changes in any position title or job grouping, original hire date, rehire date, and termination date, pay codes, pay grades, and compensation at each job position or job grouping; and (e) demographics, including sex, age, race or ethnicity, and education level; and (f) job application data for new hires, lateral moves, and promotions, including collection and use of prior compensation, resumes, and prior work experience.  For each such HQ employee, the time-period for this request is from when the HQ employee first started working at Nike to the present.

### OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 1:

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "HQ employee," "job grouping," "complete compensation history," "type or component," "recorded reasons," "compensation," "inputs used to calculate compensation," "complete job history," "Potential Appraisal," "Potential Appraisal final results," "applicable job groupings," "demographics," "education level," "job application data," "lateral moves," "promotions," "collection and use," and "prior work experience."  Nike further objects to this Request on the grounds that it is compound and appears to squeeze multiple, distinct requests into a single Request.  Nike further objects to this Request on the grounds that it is unduly

Page 8        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
              PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

burdensome, oppressive, and overly broad as to time and scope because (1) it seeks documents outside of the applicable statutory period(s), and (2) it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality. Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost. Specifically, this Request seeks documents identifying the names, race, and ethnicity of current and former Nike "HQ employees," which are irrelevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex. Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 2:**

Documents that identify all systems used by Nike to track, store, access information or generate reports (e.g., Performance Rating History Report) relating to HQ employees and any of the following: (a) compensation; (b) job history; (c) job applications and decisions on job applications for new hires, lateral moves, and promotions; (d) performance evaluations; (e) CFE ratings; (f) Potential Appraisal; (g) demographics (sex, age, race or ethnicity, and education level); (h) promotions; or (i) workplace complaints about sex discrimination (including those submitted to Matter of Respect, AlertLine or otherwise) or other discrimination, including any investigations or responses to such complaints. The time-period for this request is January 1, 2010 to the present except for (i), which is for the covered period.

Page 9    DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
           PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 2:**

  Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "identify," "systems," "used by," "track, store, access information or generate reports," "relating to," "HQ employees," "compensation," "job applications," "decisions," "lateral moves," "promotions," "Potential Appraisal," "demographics," "education level," "workplace complaints," "sex discrimination," "other discrimination," and "investigations or responses."  Nike further objects to this Request on the grounds that it is compound and appears to squeeze multiple, distinct requests into a single Request.  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to time and scope because (1) it asks Nike to identify each and every location where it may collect and/or store data, (2) it seeks documents outside of the applicable statutory period(s), and (3) it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality.  Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Specifically, this Request seeks documents identifying the race and ethnicity of current and former Nike "HQ employees," which are irrelevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.  Nike further objects to this Request to the extent that it calls for Nike to create documents solely for use in this litigation that are not maintained in the usual course of business or seeks documents not within Nike's possession, custody, or control.

Page 10    DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
        PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

**DOCUMENT REQUEST NO. 3:**

All data and content dictionaries, glossaries, reference guides, field and code definitions, training materials, and schema documents related to Nike's use and maintenance of data systems covered by Request for Production Nos. 1 through 2 or any other Request herein. For purposes of these requests, schema refers to the organization of the data system, all fields contained in the data system, descriptions/definitions of all data fields and related tables, the source of entries for all data fields (i.e., whether derived or calculated from another data field from the data system or other data systems or entered by key), the types of queries and/or reports available, and input and output mapping of the data system to other databases or data systems.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 3:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein. Nike objects to this Request on the grounds that it is vague and ambiguous as to "data and content," "dictionaries," "glossaries," "reference guides," "field and code definitions," "training materials," "schema documents," "related to," "use and maintenance," "data system," "fields contained in the data system," "data fields," "related tables," "source of entries," "derived or calculated," "entered by key," "types of queries and/or reports available," "input and output mapping," and "other databases." Nike further objects to this Request on the grounds that it is premature, unduly burdensome, oppressive, and overly broad for the reasons identified in its objections to Plaintiffs' Requests for Production Nos. 1 and 2, which Nike incorporates by reference as though fully set forth herein. Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation. Nike further objects to this Request on the grounds that it is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost, insofar as this Request asks Nike to produce listings of every possible report or query that can be run or extracted from any "database" or "data system" at Nike. Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information. Nike further objects to this Request to the

Page 11       DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
              PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

extent that it calls for Nike to create documents solely for use in this litigation that are not maintained in the usual course of business or seeks documents not within Nike's possession, custody, or control.

## DOCUMENT REQUEST NO. 4:

All policies and practices related to job offers made for HQ employee positions at Nike HQ.  This request includes: (a) collection or use of prior compensation history, including any mechanism used to collect such history (e.g., Consumer Reporting Agency); (b) terms of offers, including compensation; (c) band level or job assignments; (d) negotiations related to offers; (e) all related trainings and training materials for employees, managers, and/or HR; and (f) documents identifying persons involved with disseminating, implementing, monitoring, and enforcing these policies and practices.  The time-period for this request is January 1, 2010 to the present.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 4:

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "policies and practices," "related to," "job offers," "HQ employee," "positions," "collection or use of," "compensation," "prior compensation history," "mechanism used to collect," "terms of offers," "job assignments," "negotiations," "related trainings and training materials," "managers," "identifying," "involved with," "disseminating, implementing, monitoring, and enforcing."  Nike further objects to this Request on the grounds that it is compound and appears to squeeze multiple, distinct requests into a single Request.  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to time and scope because (1) it seeks documents outside of the applicable statutory period(s), and (2) it is not possible to identify and produce documents that "identif[y] persons involved with disseminating, implementing, monitoring, and enforcing these policies and practices," as each and every manager and supervisor at Nike HQ has some role in monitoring and/or

Page 12    DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
    PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

Goldstein Decl. Ex. B, Page 12 of 71

enforcing "policies and practices" related to job offers at Nike HQ.  Nike further objects to this

Request on the grounds that it seeks information that is not relevant to the subject matter of this

litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably

accessible because of undue burden or cost.  Nike further objects to this Request to the extent

that it seeks information protected by the attorney-client privilege and/or attorney work product

doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and

confidential commercial, financial, and/or proprietary business information.


**DOCUMENT REQUEST NO. 5:**

All policies and practices related to performance reviews of HQ employees.  This request

includes: (a) all policies and practices related to CFE ratings of HQ employees, including any

definitions of CFE ratings, curves or percentages considered for CFE ratings, proposed CFE

ratings, and final determinations of CFE ratings; (b) the effect of CFE ratings on compensation;

(c) the effect of CFE ratings on promotions; (d) the relationship among budgets, CFE ratings,

and compensation; (e) all related trainings and training materials for employees, managers,

and/or HR; and (f) documents identifying persons involved with disseminating, implementing,

monitoring, and enforcing these policies and practices.  The time-period for this request is

January 1, 2010 to the present.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 5:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference

as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and

ambiguous as to "policies and practices," "related to," "HQ employees," "curves or

percentages," "considered for," "proposed," "final determinations," "effect of," "relationship

among," "compensation," "budgets," "related trainings and training materials," "managers,"

"identifying," "involved with" and "disseminating, implementing, monitoring, and enforcing."

Nike further objects to this Request on the grounds that it is compound and appears to squeeze

multiple, distinct requests into a single Request.  Nike further objects to this Request on the

Page 13          DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                 PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

grounds that it is unduly burdensome, oppressive, and overly broad as to time and scope because (1) it seeks documents outside of the applicable statutory period(s), and (2) it is not possible to identify and produce documents that "identif[y] persons involved with disseminating, implementing, monitoring, and enforcing these policies and practices," as each and every manager and supervisor at Nike HQ has some role in monitoring and/or enforcing "policies and practices" related to performance reviews of Nike "HQ employees."  Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

### DOCUMENT REQUEST NO. 6:

All policies and practices relating to promotions for HQ employees, including Organizational Talent Planning, Accelerate, and any other promotion-related program.  This request includes: (a) all policies and practices concerning both promotions of HQ employees and any increases in compensation; (b) any questions or requirements related to job applications that may disqualify any job applicant from getting a position, including "Disqualification Questions" and "Prescreening Questionnaires;" (c) all related trainings and training materials for employees, managers, and/or HR; and (d) documents identifying persons involved with disseminating, implementing, monitoring, and enforcing these policies and practices. The time-period for this request is January 1, 2010 to the present.

### OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 6:

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "policies and practices," "relating to," "promotions," "HQ employees,"

Page 14        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
               PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

"Organizational Talent Planning," "Accelerate," "promotion-related program," "concerning,"

"compensation," "questions or requirements," "related to," "may disqualify," "job applicant,"

"getting a position," "related trainings and training materials," "managers," "identifying,"

"involved with" and "disseminating, implementing, monitoring, and enforcing." Nike further

objects to this Request on the grounds that it is overly broad, compound, and appears to squeeze

multiple, distinct requests into a single Request. Nike further objects to this Request on the

grounds that it is unduly burdensome, oppressive, and overly broad as to time and scope because

(1) it seeks documents outside of the applicable statutory period(s), and (2) it is not possible to

identify and produce documents that "identif[y] persons involved with disseminating,

implementing, monitoring, and enforcing these policies and practices," as each and every

manager and supervisor at Nike HQ has some role in monitoring and/or enforcing "policies and

practices" related to promotions of Nike "HQ employees." Nike further objects to this Request

on the grounds that it seeks information that is not relevant to the subject matter of this litigation,

is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible

because of undue burden or cost. Nike further objects to this Request to the extent that it seeks

information protected by the attorney-client privilege and/or attorney work product doctrine.

Nike further objects to this Request on the grounds that it seeks private, privileged, and

confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 7:**

All policies and practices concerning "Potential Appraisal" and HQ employees. This

includes: (a) all related trainings and training materials for employees, managers, and/or HR; and

(b) documents identifying persons involved with disseminating, implementing, monitoring, and

enforcing these policies and practices. The time-period for this request is January 1, 2010 to the

present.

Page 15        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
               PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 7:**

      Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "policies and practices," "concerning," "Potential Appraisal," "HQ employees," "trainings and training materials," "managers," "identifying," "involved with," and "disseminating, implementing, monitoring, and enforcing."  Nike further objects to this Request on the grounds that it is compound and appears to squeeze multiple, distinct requests into a single Request.  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to time and scope because (1) it seeks documents outside of the applicable statutory period(s), and (2) it is not possible to identify and produce documents that "identif[y] persons involved with disseminating, implementing, monitoring, and enforcing these policies and practices," as each and every manager and supervisor at Nike HQ has some role in monitoring and/or enforcing "policies and practices" related to "Potential Appraisal" of Nike "HQ employees," as Nike understands these terms.  Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 8:**

      All policies and practices related to compensation for HQ employees.  This request includes setting of starting and subsequent salary, salary ranges for all job groupings, Two Times Pay, equity, PSP Bonuses, and consideration of prior compensation when setting starting compensation.  For PSP Bonuses, this request includes documents sufficient to describe all formulas and components of any PSP Bonus calculated that Nike has used for HQ employees,

Page 16       DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
               PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

including Team Award, Discretionary Award, Time in Plan, Weighted Achievement, Fiscal

Earnings, 1/2 Band Target, and Performance Modifier as well as the applicable percentages

applicable to each band level for the PSP calculation.  This request also includes: (a) all related

trainings and training materials for employees, managers, and/or HR; and (b) documents

identifying persons involved with disseminating, implementing, monitoring, and enforcing these

policies and practices.  The time-period for this request is January 1, 2010 to the present.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 8:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference

as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and

ambiguous as to "policies and practices," "related to," "compensation," "HQ employees,"

"setting," "starting and subsequent salary," "salary ranges," "job groupings," "equity,"

"consideration of," "Time in Plan," "Weighted Achievement," "Performance Modifier,"

"applicable percentages," "the PSP calculation," "PSP Bonus(es)," "related training and training

materials," "manager," "identifying," "involved with," and "disseminating, implementing,

monitoring, and enforcing."  Nike further objects to this Request on the grounds that it is

compound and appears to squeeze multiple, distinct requests into a single Request.  Nike further

objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad

as to time and scope because (1) it seeks documents outside of the applicable statutory period(s),

and (2) it is not possible to identify and produce documents that "identif[y] persons involved

with disseminating, implementing, monitoring, and enforcing these policies and practices," as

each and every manager and supervisor at Nike HQ has some role in monitoring and/or

enforcing "policies and practices" related to "compensation."  Nike further objects to this

Request on the grounds that it seeks information that is not relevant to the subject matter of this

litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably

accessible because of undue burden or cost.  Nike further objects to this Request to the extent

Page 17        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
               PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

## DOCUMENT REQUEST NO. 9:

All policies and practices related to the assignment of HQ employees to job positions, including new hires, reassignments, promotions or lateral moves.  This request includes (a) all policies and practices concerning any training or change in compensation related to reassignments or lateral moves; (b) all related trainings and training materials for employees, managers, and/or HR; and (c) documents identifying persons involved with disseminating, implementing, monitoring, and enforcing these policies and practices.  The time-period for this request is January 1, 2010 to the present.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 9:

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "policies and practices," "related to," "assignment of," "HQ employees," "new hires," "reassignments," "promotions," "lateral moves," "concerning," "training or change in," "compensation," "trainings and training materials," "managers," "HR," and "identifying," "involved with," and "disseminating, implementing, monitoring, and enforcing."  Nike further objects to this Request on the grounds that it is compound and appears to squeeze multiple, distinct requests into a single Request.  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to time and scope because (1) it seeks documents outside of the applicable statutory period(s), and (2) it is not possible to identify and produce documents that "identif[y] persons involved with disseminating, implementing, monitoring, and enforcing these policies and practices," as each and every manager and supervisor at Nike HQ has some role in monitoring and/or enforcing "policies and practices" related to employee assignments.  Nike further objects to this Request on the grounds that it

Page 18        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
               PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.


**DOCUMENT REQUEST NO. 10:**

All policies and practices concerning workplace complaints (including those submitted to Matter of Respect, AlertLine or otherwise).  This request includes (a) the processes for submitting or collecting complaints; (b) investigations of workplace complaints; (c) proposed and enacted responses to workplace complaints, including information contained in "Next Steps," "Suggested Questions," or any other documents used or supposed to be used by HR and/or managers; (d) all related trainings and training materials for employees, managers, and/or HR; and (e) documents identifying persons involved with disseminating, implementing, monitoring, and enforcing these policies and practices.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 10:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "policies and practices," "concerning," "workplace complaints," "processes," "submitting or collecting," "investigations," "proposed and enacted responses," "used or supposed to be used by," "HR," "managers," "related trainings and training materials," "identifying," "involved with," "disseminating, implementing, monitoring, and enforcing."  Nike further objects to this Request on the grounds that it is compound and appears to squeeze multiple, distinct requests into a single Request.  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to scope because it is not possible to identify and produce documents that "identif[y] persons involved with disseminating,

Page 19        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
               PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

implementing, monitoring, and enforcing these policies and practices," as each and every

manager and supervisor at Nike HQ has some role in monitoring and/or enforcing "policies and

practices" related to the handling of workplace complaints.  Nike further objects to this Request

on the grounds that it seeks information that is not relevant to the subject matter of this litigation,

is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible

because of undue burden or cost.  Specifically, this action is about pay, promotions, and

allegations of job channeling, and any alleged complaints are irrelevant to these inquiries.  In

addition, the Request seeks documents regarding all types of "workplace complaints," which also

goes well beyond the scope of this action.  Nike further objects to this Request to the extent that

it seeks information protected by the attorney-client privilege and/or attorney work product

doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and

confidential commercial, financial, and/or proprietary business information.


**DOCUMENT REQUEST NO. 11:**

All documents and communications relating to any HQ executive's involvement in the

setting or review of any policies or practices concerning HQ employees and any of the

following: (a) compensation; (b) job assignment; (c) job applications and decisions on job

applications for new hires, lateral moves, and promotions, including collection and use of prior

compensation and work experience; (d) performance evaluations; (e) CFE ratings; (f) Potential

Appraisal; (g) promotions; or (h) workplace complaints (including those submitted to Matter of

Respect, AlertLine or otherwise) about sex discrimination or other discrimination, including any

investigations or responses to such complaints.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 11:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference

as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and

ambiguous as to "relating to," "HQ executive," "involvement in," "setting or review," "policies

or practices," "concerning," "HQ employees," "job assignment," "job applications," "decisions,"

Page 20      DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
             PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

"lateral moves," "promotions," "collection and use," "prior compensation," "work experience,"

"Potential Appraisal," "workplace complaints," "sex discrimination," "other discrimination,"

"investigations," and "responses."  Nike further objects to this Request on the grounds that it is

unduly burdensome, oppressive, and it seeks information that is not relevant to the subject matter

of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not

reasonably accessible because of undue burden or cost.  Specifically, this Request seeks

documents identifying every "HQ executive" who may have been involved in any capacity in the

"setting or review[ing]" of Nike "policies," including those related to "workplace complaints"

about "sex discrimination and other discrimination," which are irrelevant to Plaintiffs' class and

collective claims of unfair pay, promotion, and job channeling on the basis of sex.  Nike further

objects to this Request to the extent that it seeks information protected by the attorney-client

privilege and/or attorney work product doctrine.  Nike further objects to this Request on the

grounds that it seeks private, privileged, and confidential commercial, financial, and/or

proprietary business information.


**DOCUMENT REQUEST NO. 12:**

All descriptions or analyses of job groupings at Nike HQ, including Nike's Employee

Relations and Total Rewards business units.  This request includes (a) for each job grouping, all

documents containing descriptions, qualifications, requirements, or tasks; (b) any audit, report,

transition-plan, or analysis concerning any job grouping, including any such documents related

to any reorganization involving HQ employees or HQ executives who are directly reported to;

(c) all related trainings and training materials for employees, managers, and/or HR; and

(d) documents identifying persons involved with developing and/or implementing these job

grouping descriptions and/or analyses.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 12:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference

as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and

ambiguous as to "descriptions or analyses," "job grouping(s)," "business units," "descriptions,

qualifications, requirements, or tasks," "audit, report, transition-plan, or analysis," "concerning,"

"related to," "reorganization," "HQ employees," "HQ executive," "directly reported to,"

"trainings and training materials," "identifying," and "developing and/or implementing."  Nike

further objects to the Request as unintelligible, in that it is impossible for Nike to respond

without speculating as to the meaning of the Request.  Nike further objects to this Request on the

grounds that it is compound and appears to squeeze multiple, distinct requests into a single

Request.  Nike further objects to this Request on the grounds that it is unduly burdensome,

oppressive, and seeks information that is not relevant to the subject matter of this litigation, is not

proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because

of undue burden or cost.  Specifically, this Request seeks documents regarding Nike HQ

departments that are not within the scope of Plaintiffs' proposed class and collective definition,

and any documents regarding "job groupings" in those departments are irrelevant to Plaintiffs'

class and collective claims of unfair pay, promotion, and job channeling on the basis of sex.

Nike further objects to this Request to the extent that it seeks information protected by the

attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this

Request on the grounds that it seeks private, privileged, and confidential commercial, financial,

and/or proprietary business information.


**DOCUMENT REQUEST NO. 13:**

Organizational charts, lists or descriptive documents that identify Nike's organizational

structure at Nike HQ throughout the covered period.  This request includes (a) all direct reporting

lines to or from all HQ employees; (b) all direct reporting lines to and from all HQ executives

who are directly reported to; (c) the identities and office locations of HQ executives; (d) for each

job grouping, the identity of all people at Nike HQ who are both assigned to a job grouping and

are either: (i) in the Total Rewards business unit; (ii) in the Employee Relations business unit; or

(iii) an HQ executive who is directly reported to; (e) the organizational structure of HR; and

Page 22          DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                 PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

(f) the organizational structure of employees responsible for information technology or electronic information.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 13:**

      Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "HQ employees," "HQ executive(s)," "lists or descriptive documents," "identify," "organizational structure," "direct reporting," "direct reporting lines," "directly reported to," "job grouping," "office locations," "identity," "assigned to," "business unit," and "responsible for information technology or electronic information."  Nike further objects to this Request on the grounds that it is compound and appears to squeeze multiple, distinct requests into a single Request.  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to scope because it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality.  Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Specifically, this Request seeks documents identifying individuals at Nike HQ who are not within the scope of Plaintiffs' proposed class and collective definition, and which are irrelevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information, and to the extent that it calls for Nike to create documents solely for use in this litigation that are not maintained in the usual course of business.

Page 23          DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                     PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

**DOCUMENT REQUEST NO. 14:**

Documents that relating to [sic] all job codes for positions at Nike HQ held by any HQ employee. This request includes: (a) definitions or descriptions of such job codes, (b) how job codes relate to any job grouping; (c) all factors impacting job codes (e.g., "individual contributor" and "manager") or impacted by job codes; and (d) documents that identify persons involved with the creation, combination, change, evaluation, and analysis of these job codes.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 14:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein. Nike objects to this Request on the grounds that it is vague and ambiguous as to "relating to," "HQ employee," "definitions or descriptions," "relate to," "job grouping," "factors," "impacting," "impacted," "identify," "involved with" and "the creation, combination, change, evaluation, and analysis." Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to time and scope because it seeks documents outside of the applicable statutory period(s). Nike further objects to this Request on the grounds that it seeks ESI that is not reasonably accessible because of undue burden or cost. Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 15:**

All versions of any standard form used to create any job description and each job description for any job at Nike HQ that was filled by any HQ employee.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 15:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein. Nike objects to this Request on the grounds that it is vague and ambiguous as to "versions of," "standard form," "used to create," "any job," "filled by," and

Page 24       DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
              PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

Goldstein Decl. Ex. B, Page 24 of 71

"HQ employee."  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Specifically, it is entirely unclear how "standard forms" for job descriptions, if any, are at all relevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 16:**

All documents and communications containing or referring to any allocation, distribution, comparison or analysis of men and women at Nike HQ within or across any job grouping.  This request includes all documents and underlying data relating to studies, reviews, analyses, surveys, compilations, or audits related to the effect or impact that any of the following Nike policies or practices that apply to HQ employees has had on female HQ employees: (a) compensation; (b) job assignment; (c) job applications and decisions on job applications for new hires, lateral moves, and promotions, including collection and use of prior compensation and work experience; (d) performance evaluations; (e) CFE ratings; (f) Potential Appraisal; and/or (g) promotions.  This request also includes the document or communication issued on or about April 2017 by David Ayre or HR referring to pay equity, or any review, analysis, or summary of pay equity.  This request also includes any analyses, studies, reports, or other documents related to the evaluation of, pursuant to the provisions of the Uniform Guidelines, whether any employment or selection practice had an adverse impact on female employees.  This request also includes any annual reviews of pay and promotion practices conducted as part of Nike's

Page 25        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
               PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

commitment to and signing of the White Equal Pay Pledge as described in Nike's FY16/17 Sustainable Business Report (page 56).  The time-period for this request is January 1, 2010 to the present.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 16:**

      Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "containing or referring to," "allocation, distribution, comparison, or analysis," "within or across" "job grouping," "relating to," "studies, reviews, analyses, surveys, compilations, or audits," "related to," "effect or impact," "policies or practices," "apply to," "HQ employees," "has had," "job applications," "decisions," "lateral moves," "promotions," "Potential Appraisal," "collection and use of," "prior compensation," "work experience," "issued," "HR," "pay equity," "review, analysis, or summary," "analyses, studies, reports," "evaluation of," "pursuant to," "provisions," "Uniform Guidelines," "selection practice," "adverse impact," "annual reviews" "conducted," "commitment to," and "signing."  Nike further objects to this Request on the grounds that it is compound and appears to squeeze multiple, distinct requests into a single Request.  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to time and scope because it seeks documents outside of the applicable statutory period(s).  Nike further objects to this Request on the grounds that it seeks ESI that is not reasonably accessible because of undue burden or cost.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Page 26      DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

Goldstein Decl. Ex. B, Page 26 of 71

**DOCUMENT REQUEST NO. 17:**

   All documents and communications related to any validation study or studies for policies or practices that apply to HQ employees and relate to any of the following: (a) compensation; (b) job assignments; (c) job applications and decisions on job applications for new hires, lateral moves, and promotions, including collection and use of prior compensation and work experience; (d) performance evaluations; (e) CFE ratings; (f) Potential Appraisal; and/or (g) promotions.  This request includes:

   a.  All documents specified or described in the documentation section, 29 C.F.R. § 1607.15 or otherwise in the Uniform Guidelines;

   b.  All documents showing that Nike conducted "an investigation of suitable alternative procedures" that would have less or no adverse impact than any procedures used "and suitable methods of using the selection procedure which have as little impact as possible ...." 29 C.F.R. § 1607.3B.

The time-period for this request is January 1, 2010 to the present.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 17:**

   Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "compensation," "related to," "validation study(ies)," "policies or practices," "apply to," "HQ employees," "job assignments," "job applications," "decisions," "lateral moves," "promotions," "collection and use of," "prior compensation," "work experience," "Potential Appraisal," "promotions," "Uniform Guidelines," "would have less or no adverse impact," and "procedures."  Nike further objects to this Request on the grounds that it is compound and appears to squeeze multiple, distinct requests into a single Request.  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to time and scope because it seeks documents outside of the applicable statutory period(s).  Nike further objects to this Request on the grounds that it seeks ESI that is not reasonably accessible because of undue burden or cost.  Nike further objects to this Request to the extent

Page 27   DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
      PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 18:**

If Nike contends that any of the following policies or practices that apply to HQ employees are job-related or consistent with business necessity, produce all documents and communications supporting that contention.  This request includes the following policies and practices: (a) compensation; (b) job assignment; (c) job applications and decisions on job applications for new hires, lateral moves, and promotions, including collection and use of prior compensation and work experience; (d) performance evaluations; (e) CFE ratings; (f) potential appraisal; and (g) promotions.  The time-period for this request is January 1, 2010 to the present.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 18:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "HQ employees," "contends," "polices," "policies or practices," "apply to," "job-related or consistent with business necessity," "supporting," "contention," "job assignment," "job application," "decisions," "lateral moves," "promotions," "collection and use of," "prior compensation," "work experience," and "potential appraisal."  Nike further objects to this Request on the grounds that it is compound and appears to squeeze multiple, distinct requests into a single Request.  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to time and scope because it seeks documents outside of the applicable statutory period(s).  Nike further objects to this Request on the grounds that it seeks ESI that is not reasonably accessible because of undue burden or cost. Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request as premature, as discovery in this case has just begun, and Nike has not yet answered

Page 28      DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
             PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

Plaintiffs' Complaint.  As a result, Nike is still investigating Plaintiffs' claims and is not yet aware of all documents that it may use to support its defenses.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 19:**

All documents and communications related to any job analysis conducted by Nike for any position held by HQ employees.  The time-period for this request is January 1, 2010 to the present.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 19:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "related to," "job analysis," "conducted by," "any position held by," and "HQ employees."  Nike further objects to this Request on the grounds that it is compound and appears to squeeze multiple, distinct requests into a single Request.  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to time and scope because it seeks documents outside of the applicable statutory period(s).  Nike further objects to this Request on the grounds that it seeks ESI that is not reasonably accessible because of undue burden or cost.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 20:**

All documents and communications relating to any action Nike has undertaken or considered to address any disparities or potential disparities between male and female HQ employees relating to (a) compensation; (b) job assignment; (c) job applications and decisions on

Page 29        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

job applications for new hires, lateral moves, and promotions, including collection and use of prior compensation and work experience; (d) performance evaluations; (e) CFE ratings; (f) potential appraisal; and (g) promotions.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 20:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "relating to," "any action," "undertaken," "considered to address," "disparities or potential disparities," "HQ employees," "compensation," "job assignment," "job applications," "decisions," "new hires," "lateral moves," "promotions," "collection and use of," and "potential appraisal."  Nike further objects to this Request on the grounds that it is compound and appears to squeeze multiple, distinct requests into a single Request.  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to scope.  The Request also seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality.  Nike further objects to this Request on the grounds that it seeks ESI that is not reasonably accessible because of undue burden or cost.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Nike denies that there are any "disparities or potential disparities" between male and female "HQ employees" that need to be "address[ed]," as contemplated by this Request.

Page 30        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

Goldstein Decl. Ex. B, Page 30 of 71

**DOCUMENT REQUEST NO. 21:**

All documents and communications related to any HQ executive's involvement with, decision about or review of any HQ employee's CFE rating and/or any HQ employee's CFE rating-related compensation, including salary increases, equity distributions or PSP Bonuses.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 21:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein. Nike objects to this Request on the grounds that it is vague and ambiguous as to "related to," "HQ executive," "involvement with," "decision about," "review of," "HQ employee," "rating-related compensation," "PSP Bonuses," and "equity distributions." Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to scope because (1) it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality, and (2) it calls for Nike to review documents and communications related to every CFE rating and related "compensation" decision(s) for each current and former Nike "HQ employee," since CFE ratings and "compensation" related to those ratings are conducted on an individualized basis. Nike further objects to this Request on the grounds that it seeks ESI that is not reasonably accessible because of undue burden or cost. Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Page 31      DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
             PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

Goldstein Decl. Ex. B, Page 31 of 71

**DOCUMENT REQUEST NO. 22:**

All documents and communications concerning the preparation for, conducting of, or reporting about calibration meetings.  This request includes (a) all related trainings and training materials for employees, managers, and/or HR; and (b) documents identifying persons involved with these calibration meetings.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 22:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "concerning," "preparation for," "conducting of," "reporting about," and "persons involved."  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to scope because it would be impossible to produce all documents that "identif[y] persons involved with these calibration meetings" as nearly every manager and supervisor at Nike HQ participates in calibration meetings.  Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 23:**

All documents and communications relating to the creation or allocation of budgets that Nike uses for HQ employees' compensation, including CFE ratings-related compensation.  This request includes all documents and communications concerning the creation of such budgets, providing or assigning any part of such budgets to any job grouping or decisions about allocations of such budgets to any HQ employee.

Page 32          DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                 PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 23:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "relating to," "creation," "allocation," "budgets," "HQ employee(s)," "compensation," "job grouping," "uses," "concerning," "providing or assigning," "part of," and "decisions."  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to scope because it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality.  Nike further objects to this Request on the grounds that it seeks ESI that is not reasonably accessible because of undue burden or cost.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 24:**

All documents and communications concerning Two Times Pay for any HQ employee and containing or referring to any analyses by any person in HR, recommendations by any person in HR or HQ executive, or any determinations or reviews by a HQ executive.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 24:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "concerning," "HQ employee," "containing," "referring to," "analyses," "HR," "recommendations," "HQ executive," "determinations," and "reviews."  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to scope because (1) it seeks confidential and personal identifying information pertaining to

Page 33         DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality, and (2) it calls for Nike to review documents and communications related to every Two Times Pay decision for all current and former Nike "HQ employees," since such determinations were conducted on an individualized basis. Nike further objects to this Request on the grounds that it seeks ESI that is not reasonably accessible because of undue burden or cost. Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 25:**

For any proposed promotion or application for promotion of a HQ employee that was provided to any HQ executive, all documents and communications concerning such proposed promotion or application for promotion. This request includes documents and communications concerning any changes to compensation that relate to such promotion or potential promotion.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 25:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein. Nike objects to this Request on the grounds that it is vague and ambiguous as to "proposed promotion," "application for promotion" "HQ employee," "provided to," "HQ executive," "concerning" "changes to compensation" and "relate to." Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to scope because it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality. The Request is also unduly burdensome in that it would require Nike to review every email and other document provided to

Page 34          DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                 PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

any "HQ executive" to determine whether it was related to a promotion or application for promotion. Nike further objects to this Request on the grounds that it seeks ESI that is not reasonably accessible because of undue burden or cost. Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 26:**

All policies and practices relating to sex discrimination affecting employees at Nike HQ. This request includes the (a) Harassment-Zero tolerance policy, Zero Tolerance, Playing Fair, and A Matter of Respect; (b) all related trainings and training materials for employees, managers, and/or HR; and (c) documents identifying persons involved with disseminating, implementing, monitoring, and enforcing these policies and practices.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 26:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein. Nike objects to this Request on the grounds that it is vague and ambiguous as to "policies and practices," "relating to," "sex discrimination," "affecting employees," "related trainings and training materials," "managers," "identifying," "involved with," and "disseminating, implementing, monitoring, and enforcing." Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to scope because it is not possible to produce all documents that "identif[y] persons involved with disseminating, implementing, monitoring, and enforcing these policies and practices," as each and every manager and supervisor at Nike HQ has some role in monitoring and/or enforcing "policies and practices" related to discrimination and harassment. Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost. Nike further objects to this Request to the extent

Page 35      DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
             PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Nike denies any "sex discrimination affecting employees at Nike HQ," as contemplated by this Request.

**DOCUMENT REQUEST NO. 27:**

All complaints, allegations, reports, investigations, recommended responses to complaints, and enacted responses to complaints relating to sex discrimination at Nike HQ.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 27:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "complaints," "allegations," "reports," "investigations," "recommended responses," "enacted responses," "relating to," and "sex discrimination."  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to scope because it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality.  Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Specifically, this Request seeks documents and communications regarding complaints of "sex discrimination" of any kind, which if any, do not form the basis of Plaintiffs' Complaint, and which are irrelevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex.  Nike further objects to this Request to

Page 36        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
               PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 28:**

All documents and communications relating to the involvement of any HQ executive in any decision or review related to any complaint of sex discrimination at Nike HQ.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 28:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "relating to," "involvement," "HQ executive," "decision," "review," "related to," "complaint," and "sex discrimination."  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to scope because it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality.  Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Specifically, this Request seeks documents and communications regarding complaints of "sex discrimination" of any kind, which if any, do not form the basis of Plaintiffs' Complaint, and which are irrelevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Page 37    DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

**DOCUMENT REQUEST NO. 29:**

All documents and communications related to sex discrimination that were provided by or to any HQ executive or member of Nike's board of directors, including minutes, agendas, and reports.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 29:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "related to," "sex discrimination," "provided by or to," "HQ executive," "member of Nike's board of directors," "agendas" and "reports."  Nike further objects to this Request on the grounds that it is overly broad, unduly burdensome, oppressive, and seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Specifically, it is entirely unclear how any documents and communications provided to "Nike's board of directors" that may reference "sex discrimination" are at all relevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 30:**

All policies and practices relating to the orientation and/or on-boarding process of HQ employees.  This request includes: (a) all related trainings and training materials for employees, managers, and/or HR; and (b) documents identifying persons involved with disseminating, implementing, monitoring, and enforcing these policies and practices.

Page 38          DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                 PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

Goldstein Decl. Ex. B, Page 38 of 71

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 30:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein. Nike objects to this Request on the grounds that it is vague and ambiguous as to "policies and practices," "relating to," "orientation," "on-boarding process," "HQ employees," "related trainings and training materials," "managers," "HR," "identifying," "involved with," and "disseminating, implementing, monitoring, and enforcing these policies and practices." Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to scope because each and every manager and supervisor at Nike HQ has some role in monitoring and/or enforcing "policies and practices" related to "the orientation and/or on-boarding process." Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost. Specifically, employee orientation and on-boarding is not the subject of this action. Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 31:**

All of Nike's employee manuals or handbooks, including all documents contained on Nike's Me Portal.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 31:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein. Nike objects to this Request on the grounds that it is vague and ambiguous as to "manuals," "handbooks," and "contained on." Nike further objects to this

Page 39        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
               PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

Request on the grounds that it is unduly burdensome, oppressive, and seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost. Specifically, this Request seeks every employee policy and procedure regardless of topic, which are irrelevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex. Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 32:**

All policies and practices relating to the retention, preservation, backing-up/archiving or destruction of documents, computer data, system data, and email files. This includes (a) the creation, maintenance, access, and storage of archived and backup files or data; and (b) on-site or off-site storage of documents.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 32:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein. Nike objects to this Request on the grounds that it is vague and ambiguous as to "policies and practices," "relating to," "retention," "preservation," "backing-up/archiving," "destruction," "computer data," "system data," "email files," "creation, maintenance, access, and storage," "archived and backup files or data," and "on-site or off-site." Nike further objects to this Request on the grounds that it is overly broad, unduly burdensome, oppressive, and seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost. Specifically, this Request seeks documents regarding Nike's information technology practices, which are irrelevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex. Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Nike further objects to this Request on the grounds that it seeks

Page 40        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
               PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

private, privileged, and confidential commercial, financial, and/or proprietary business
information.

**DOCUMENT REQUEST NO. 33:**

Nike-created maps and/or documents sufficient to identify the location of all Nike HQ
buildings.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 33:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference
as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and
ambiguous as to "Nike-created," "maps," "sufficient to identify," "location," and "buildings."
Nike further objects to this Request on the grounds that it is overly broad, unduly burdensome
and oppressive, and to the extent that the Request seeks information that is not relevant to the
subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that
is not reasonably accessible because of undue burden or cost.  Specifically, it is entirely unclear
how maps of Nike HQ buildings are at all relevant to Plaintiffs' class and collective claims of
unfair pay, promotion, and job channeling on the basis of sex.  Nike further objects to this
Request on the grounds that it seeks information protected by the attorney-client privilege and/or
attorney work product doctrine.  Nike further objects to this Request to the extent that it seeks
private, privileged, and confidential commercial, financial, and/or proprietary business
information.

**DOCUMENT REQUEST NO. 34:**

Documents sufficient to show all job descriptions and responsibilities for any of the
following people: (a) Trevor Edwards; (b) David Ayre; (c) Jayme Martin; (d) Gino Fisanotti;
(e) Daniel Tawiah; (f) Steve Lesnard; (g) Simon Pestridge; (h) Vikrent Sing; (i) Antoine
Andrews; (j) Greg Thompson; (k) Helen Kim; (l) Tommy Kain; (m) Jack Gold; (n) Josh Simon;

Page 41        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
               PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

or (o) Kris Aman.  For each such person, the time-period for this request is from July 1, 2013 to the present.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 34:

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "sufficient to show" and "responsibilities."  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to time and scope because (1) it seeks documents outside of the applicable statutory period(s), and (2) it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality.  Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Specifically, the individuals identified by Plaintiffs in this Request are not within the scope of Plaintiffs' proposed class and collective definition, nor have Plaintiffs identified them as comparators, and any documents regarding their job duties and responsibilities are irrelevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

## DOCUMENT REQUEST NO. 35:

All documents and communications related to any workplace complaints (including those submitted to Matter of Respect, AlertLine or otherwise) or investigation concerning any of the following people at any time between January 2010 to the present: (a) Trevor Edwards;

Page 42          DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                 PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

(b) David Ayre; (c) Jayme Martin; (d) Gino Fisanotti; (e) Daniel Tawiah; (f) Steve Lesnard; (g) Simon Pestridge; (h) Vikrent Sing; (i) Antoine Andrews; (j) Greg Thompson; (k) Helen Kim; (l) Tommy Kain; (m) Jack Gold; (n) Josh Simon; or (o) Kris Aman.  This request includes all documents and communications related to responses to any such investigations or complaints, such as documents gathered, remedial action, reports, and recommendations.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 35:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "workplace complaints," "investigation," "concerning," "related to," "responses," "remedial action," "reports," and "recommendations."  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to time and scope because (1) it seeks documents outside of the applicable statutory period(s), and (2) it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality.  Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Specifically, the individuals identified by Plaintiffs in this Request are not within the scope of Plaintiffs' proposed class and collective definition, nor have Plaintiffs identified them as comparators, and any documents and communications regarding "workplace complaints or investigations," if any, are irrelevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Page 43          DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                 PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

Goldstein Decl. Ex. B, Page 43 of 71

**DOCUMENT REQUEST NO. 36:**

Documents and communications sufficient to show that Nike was considering or planning for Trevor Edwards as the next CEO of Nike.  This request includes documents and communications sufficient to identify the considerations and bases for any decision to award a retention bonus to Trevor Edwards.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 36:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "sufficient to show," "considering or planning," "sufficient to identify," "considerations and bases," "any decision," and "award."  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to scope because it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality.  Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Specifically, Trevor Edwards is not within the scope of Plaintiffs' proposed class and collective definition, nor have Plaintiffs identified him as a comparator, and any documents and communications relating to his promotion to CEO, "compensation," or any retention bonus are completely irrelevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Page 44         DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

Goldstein Decl. Ex. B, Page 44 of 71

**DOCUMENT REQUEST NO. 37:**

All documents and communications related to the discipline, resignation, separation, or discharge of any of the following people: (a) Trevor Edwards; (b) David Ayre; (c) Jayme Martin; (d) Daniel Tawiah; (e) Steve Lesnard; (f) Simon Pestridge; (g) Vikrent Sing; (h) Antoine Andrews; (i) Greg Thompson; (j) Helen Kim; (k) Tommy Kain; (1) Jack Gold; or (m) Kris Aman.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 37:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "related to," "discipline" "resignation," "separation," and "discharge."  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to scope because it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality.  Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Specifically, the individuals identified by Plaintiffs in this Request are not within the scope of Plaintiffs' proposed class and collective definition, nor have Plaintiffs identified them as comparators, and any documents and communications regarding their discipline, resignation, separation, or discharge are irrelevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Page 45      DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
             PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

**DOCUMENT REQUEST NO. 38:**

All documents and communications related to the promotion of any of the following to Vice-President, including any documents or communications provided to or by any person involved in the decisions to promote: (a) Trevor Edwards; (b) David Ayre; (c) Jayme Martin; (d) Gino Fisanotti; (e) Daniel Tawiah; (f) Steve Lesnard; (g) Simon Pestridge; (h) Vikrent Sing; (i) Antoine Andrews; (j) Greg Thompson; (k) Helen Kim; (l) Tommy Kain; (m) Jack Gold; or (n) Kris Aman.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 38:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "related to," "promotion," "provided to or by," and "involved in the decisions."  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to scope because it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality.  Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Specifically, the individuals identified by Plaintiffs in this Request are not within the scope of Plaintiffs' proposed class and collective definition, nor have Plaintiffs identified them as comparators, and any documents and communications regarding their promotions are irrelevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Page 46        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
               PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

**DOCUMENT REQUEST NO. 39:**

All documents and communications related to any document created, edited, reviewed, signed, or sent by Monique Matheson around April 2018 that contained any reference to "bias," the "hiring process," prior compensation history, or any potential disparities in pay or promotions.  This request includes this document and all versions of this document.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 39:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "related to," "created, edited, reviewed, signed, or sent," "reference to," "hiring process," "prior compensation history," "potential disparities," "pay or promotions," and "all versions."  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to scope because (1) it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality, and (2) it is impossible for Nike to ascertain every single document or communication that Monique Matheson may have reviewed in or around April 2018, as contemplated by this Request.  Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Specifically, Ms. Matheson is not within the scope of Plaintiffs' proposed class and collective definition, nor is she otherwise relevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex.  Nike further objects to this Request on the grounds that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Page 47          DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                 PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

**DOCUMENT REQUEST NO. 40:**

All documents and communications related to any communications with reporters during the period of March 1, 2018 to the present that relate to the allegations in this action. This request includes any transcripts, notes, or documents prepared before, during, or after such statements or discussions. This request also includes any such documents and communications related to either of the following statements made to the New York Times: (a) "an insular group of high-level managers;" or (b) "protected each other and looked the other way."

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 40:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein. Nike objects to this Request on the grounds that it is vague and ambiguous as to "relate[d] to," "reporters," "transcripts," "notes," "prepared," "statements," and "discussions." Nike further objects to this Request on the grounds that it is unduly burdensome and oppressive, and to the extent that the Request seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost. Specifically, communications between Nike and reporters, if any, are irrelevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex. Nike further objects to this Request on the grounds that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 41:**

All documents and communications related to the document or communication sent by, or on behalf of, Nike's CEO around March 15, 2018 that included any of the following statements: (a) "Over the past few weeks, we've become aware of reports of behavior occurring within our organization that do not reflect our core values of inclusivity, respect and

Page 48        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
               PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

empowerment;" (b) "we are going to be doing a comprehensive review of our HR systems and practices along with elevating our complaint process for matter of respect issues;" (c) "we will also create a mandatory manager training program so that everyone understands what we expect and what they need to do to reinforce our core values;" (d) "in light of my desire to accelerate change, I've made the decision to restructure my leadership team into a different alignment that will allow for closer management and a sharper focus on our culture;" or (e) "Trevor Edwards has decided to resign as Nike Brand President and will retire in August." This request includes all versions of this document or communication, any documents or communications from or to any HQ executive, member of Nike's board of directors, or person in HR related to this document or communication.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 41:

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein. Nike objects to this Request on the grounds that it is vague and ambiguous as to "related to," "sent by, or on behalf of," "systems and practices," "all versions," "HQ executive," "member of Nike's board of directors," and "HR." Nike further objects to this Request on the grounds that it is unduly burdensome and oppressive, and to the extent that the Request seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost. Specifically, it is entirely unclear how the statements identified by Plaintiffs in this Request are at all relevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex. Nike further objects to this Request on the grounds that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Page 49        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

Goldstein Decl. Ex. B, Page 49 of 71

**DOCUMENT REQUEST NO. 42:**

All documents and communications related to any speech by Nike's CEO's around May 3, 2018 that included any of these statements: (a) "that underserved us in recent years;" (b) "restore trust in places where it has eroded;" (c) "we are looking into every concern;" or (d) that Nike needs to change its hiring, compensation, or promotion systems. This request includes all transcripts and recordings of the speech containing these statements, any documents or communications considered, reviewed, or created in preparation for the speech, and documents summarizing the speech. This request also includes any documents or communications related to the speech and created, sent, or finalized after the speech by any HQ executive or person in HR.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 42:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein. Nike objects to this Request on the grounds that it is vague and ambiguous as to "speech," "compensation," "promotion systems," "transcripts and recordings," "containing," "considered, reviewed, or created," "in preparation for," "summarizing," "related to," "created, sent, or finalized," "HQ executive," and "HR." Nike further objects to this Request on the grounds that it is unduly burdensome and oppressive, and to the extent that the Request seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost. Specifically, it is entirely unclear how statements (a)-(c) identified by Plaintiffs in this Request are at all relevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex. Nike further objects to this Request on the grounds that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Page 50        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

Goldstein Decl. Ex. B, Page 50 of 71

**DOCUMENT REQUEST NO. 43:**

All documents and communications related to the drafting of any of the below statements in Nike's FY16/17 Sustainable Business Report, including all versions of these statements and all documents and communications considered for, relied upon for, or concerning any of these statements. This request includes documents showing all policies and practices related any of the following statements.

a.      "In early 2018, we became aware of reports of behavior within our organization that did not reflect our core values of inclusivity, respect, and empowerment" (page 55);

b.      "We took swift action, committing to a wide-ranging approach to evolving our culture, transforming how we approach leadership, and investing in programs to unlock and accelerate us toward an environment that is more inclusive and empowering" (page 55);

c.      "we announced an overall review of our HR systems and practices, while elevating our confidential complaint process" (page 55);

d.      "We engage and inspire our workforce by offering opportunities for career growth and development, in addition to providing equitable and competitive pay and benefits" (page 55);

e.      "We created a mandatory manager training that reinforces the role of respect, inclusion, and accountability that will roll out to people managers globally in 2018. We also increased our investment in leadership training and accountability" (page 55);

f.      "remove bias from critical moments of the hiring process by creating more inclusive job descriptions, enabling blind resume reviews, eliminating the collection of candidate salary history, and using data to inform hiring decisions" (page 56);

g.      "At NIKE, we define pay equity as equal compensation for women, men, and all races/ethnicities who undertake the same work at the same level, experience, and performance - and this methodology aligns with top tier global companies" (page 56);

h.      "NIKE's FY17 data show that for every $1 earned by men, women globally earned 99.9 cents" (page 56);

Page 51        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
               PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

i.      "We will move to a new team-based PSP (Performance Sharing Plan) bonus award to accelerate our culture to reward behaviors that reinforce teamwork and collaboration" (page 57);

j.      "There are three ways to increase representation -promotion, retention, and hiring – and we're working through strategic initiatives and action plans to enable each of them" (page 57); and

k.      Any of these initiatives: "FY19: Global Pay Equity," "FY19: New Bonus Structure," "FY19: Representative Accountability," "FY19: Diverse Talent Investment," "FY19: New Mentoring Program," "FY19: Unconscious Bias Awareness Training," "FY19: Manager Training," and "FY19: Immersive Executive Development." (pages 56-57).

l.      With respect to Nike signing the White Equal Pay Pledge (page 56): "declaring our commitment to review pay and promotion practices annually" and "ensure that women and men who undertake the same work at the same level are equitably compensated."

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 43:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "HR," "related to," "the drafting," "all versions," "considered for, relied upon for, or concerning," "policies and practices," "related," and "signing."  Nike further objects to this Request on the grounds that it is unduly burdensome and oppressive, and to the extent that the Request seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Specifically, it is entirely unclear how this information is at all relevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex, which represents a subset of Nike's total global workforce.  Nike further objects to this Request on the grounds that it seeks information protected by the attorney-client privilege

Page 52        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
               PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

Goldstein Decl. Ex. B, Page 52 of 71

and/or attorney work product doctrine. Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 44:**

       All documents and communications related to the email from Mini Cypers, Regional Director Pacific Northwest, Anti-Defamation League, to Nike on February 12, 2018 that was sent to Steve.Connors@Nike.com, Alycia.Gongazlez@Nike.com, Monique.Matheson@Nike.com, and Kori.Vyse@Nike.com. This request includes any responses to this letter, any documents related to any investigation of any of the letter's allegations, and any remedial actions, including with respect to Phil Hodgson.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 44:**

       Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein. Nike objects to this Request on the grounds that it is vague and ambiguous as to "related to," "the email," "any responses," "this letter," "investigation," "allegations," "remedial actions," and "with respect to." Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad because it seeks confidential and personal identifying information pertaining to former Nike employees who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality. Nike further objects to this Request to the extent it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost. Specifically, it is entirely unclear how communications between Nike and the Anti-Defamation League, if any, are relevant to this litigation. Nike further objects to this Request on

Page 53       DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                        PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

the grounds that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

## DOCUMENT REQUEST NO. 45:

All documents and communications related to any letter or other communication from Nikki Neuburger that was sent or provided to Nike's CEO that relating to sex discrimination at Nike HQ.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 45:

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "other communication," "related to," "sent or provided to," "relating to" and "sex discrimination."  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Nike further objects to this Request on the grounds that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

## DOCUMENT REQUEST NO. 46:

All documents and communications related to any survey, letter, other document, or other communication containing information or data concerning multiple female HQ employees and any sex discrimination at Nike HQ.  This request includes any documents or communications titled or otherwise referred to as "My Experience" or "Starfish."

DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 46:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "related to," "survey," "data," "concerning," "multiple female HQ employees," "sex discrimination," and "My Experience," "Starfish," or "otherwise referred to."  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to scope because it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality.  Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and not proportional to the needs of the case because it seeks information unrelated to Plaintiffs' pay, promotion, and alleged job channeling claims.  Nike further objects to this Request on the grounds that it seeks ESI that is not reasonably accessible because of undue burden or cost.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 47:**

All documents and communications related to any statements made around June or July 2018 by Nike or Illana[sic] Finley to any reporter about pay equity, compensation, or pay analyses, including the following statements: (a) "strive to meet the diverse needs of our employees, deliver differentiated, competitive pay and benefits, and support a culture in which employees feel included and empowered;" (b) changes to Nike's pay and rewards; competitive pay adjustments; annual pay analysis; a deeper pay analysis of all Nike roles in 2018; (c) "as a result, we are making adjustments to some employee pay;" (c) Nike's definition of pay equity;

Page 55        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
              PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

(d) "we will maintain focus, driving with 1:1 as our goal for both every year," (e) "we will monitor this data on an ongoing basis;" (f) "going forward, one PSP will measure success based primarily on companywide performance," (g) and bonus payouts were determined by a combination of company, team and individual performance.  This request includes any documents or communications considered, reviewed, or created in preparation for these interviews or discussions, documents summarizing these interviews or discussions, and any communications sent about or in response to these interviews or discussions.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 47:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "related to," "any reporter," "pay equity," "compensation," "pay analyses," "rewards," "competitive pay adjustments," "pay analysis," "deeper," "all Nike roles," "definition," "determined by," "combination of company, team and individual performance," "considered, reviewed, or created," "in preparation for," "interviews or discussions," "summarizing," and "sent about or in response to."  Nike further objects to this Request on the grounds that it is compound and appears to squeeze multiple, distinct requests into a single Request.  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Nike further objects to this Request on the grounds that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.


**DOCUMENT REQUEST NO. 48:**

All documents and communications that: (a) were provided to or by any HQ executive or person in HR; and (b) show, discuss, analyze, or propose any formulation, description, or

Page 56        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
               PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

definition of pay equity between men and women that Nike has created, used, or considered. The time-period for this request is January 1, 2010 to the present.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 48:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "provided to or by," "HQ executive," "show, discuss, analyze, or propose," "formulation, description, or definition," "pay equity," and "created, used, or considered."  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to time and scope because it seeks documents outside of the applicable statutory period(s).  Nike further objects to this Request on the grounds that it seeks ESI that is not reasonably accessible because of undue burden or cost.  Nike further objects to this Request on the grounds that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.


**DOCUMENT REQUEST NO. 49:**

All documents and communications submitted to or received from the Equal Employment Opportunity Commissions, Office of Federal Contract Compliance Programs, Oregon's Bureau of Labor and Industries, or any other governmental agency relating to a claim, charge, or complaint of sex discrimination made by or on behalf of any woman who worked at Nike HQ.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 49:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "submitted to," "received from," "other governmental agency," "relating to," "claim," "charge," "complaint," "sex discrimination," and "by or on behalf of."  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad

Page 57        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
               PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

as to time and scope because it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality.  Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Specifically, this Request seeks documents and communications pertaining to administrative charges that do not form that basis of Plaintiffs' Complaint and which are irrelevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex.  Nike further objects to this Request on the grounds that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 50:**

All signed witness statements relating to any of the claims or defenses in this action.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 50:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "witness statements" and "relating to."  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.

**DOCUMENT REQUEST NO. 51:**

Any insurance policy, contract, or agreement that may apply to any of the claims in this action.

Page 58          DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                 PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 51:**

      Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "may apply."  Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 52:**

      For each plaintiff, all documents and communications that are responsive to Oregon's personnel Records Request law, ORS 652,750, including all documents that "are used or have been used to determine:" the employee's qualification for employment, promotions, additional compensation, or employment termination or disciplinary action.  For each plaintiff, the time-period for this request is from when the plaintiff first applied to work at Nike to the present.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 52:**

      Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "responsive to," "used or have been used," "qualification," "promotion," "additional compensation," and "disciplinary action."  Nike further objects to this Request on the grounds that it is duplicative of information previously requested by and/or provided to Plaintiffs, unduly burdensome, oppressive, and overly broad as to scope because it seeks documents outside of the applicable statutory period(s).  Nike further objects to this Request on the grounds that it seeks ESI that is not reasonably accessible because of undue burden or cost. Nike further objects to this Request to the extent that it seeks information protected by the

Page 59      DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                       PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this

Request to the extent that it seeks private, privileged, and confidential commercial, financial,

and/or proprietary business information.


**DOCUMENT REQUEST NO. 53:**

       For each plaintiff, all documents and communications related to all compensation from

Nike that was received, considered, or proposed at any time.  This request includes all documents

and communications related to compensation received prior to Nike hiring them as an employee.

This request also includes all documents and communications related to both: (a) any offer from

Nike; and (b) any negotiation or request to negotiate starting salary or other employment-related

terms.  This request also includes also includes Personal Pay Statements.  For each plaintiff, the

time-period for this request is from when the plaintiff first started working at Nike to the present.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 53:**

       Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference

as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and

ambiguous as to "related to," "compensation," "considered," "proposed," "received prior to,"

"offer," "negotiation," "request to negotiate," and "employment-related terms."  Nike further

objects to this Request on the grounds that it is duplicative of information previously requested

by and/or provided to Plaintiffs, unduly burdensome, oppressive, and overly broad as to scope

because it seeks documents outside of the applicable statutory period(s).  Nike further objects to

this Request on the grounds that it seeks ESI that is not reasonably accessible because of undue

burden or cost.  Nike further objects to this Request to the extent that it seeks information

protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further

objects to this Request to the extent that it seeks private, privileged, and confidential commercial,

financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 54:**

For each plaintiff, all documents and communications related to any promotion applied for, considered for, or received at any time.  For each such promotion, this request includes the position's job description, other documents containing job duties, job grouping, and compensation.  This request also includes documents sufficient to identify the persons who applied, interviewed, and/or were chosen for the promotion.  For each plaintiff, the time-period for this request is from when the plaintiff first started working at Nike to the present.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 54:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "compensation," "related to," "promotion," "applied for," "considered for," "job duties," "job grouping," "sufficient to identify," "applied for," "interviewed," and "chosen for." Nike further objects to this Request on the grounds that it is duplicative of information previously requested by and/or provided to Plaintiffs, unduly burdensome, oppressive, and overly broad as to time and scope because (1) it seeks documents outside of the applicable statutory period(s), and (2) it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action (and who may never have even worked at Nike), and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality.  Nike further objects to this Request on the grounds that it seeks ESI that is not reasonably accessible because of undue burden or cost.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Page 61            DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                  PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

Goldstein Decl. Ex. B, Page 61 of 71

**DOCUMENT REQUEST NO. 55:**

For each plaintiff, all job descriptions and other documents containing job duties for positions they held at Nike HQ.  For each plaintiff, the time-period for this request is from when the plaintiff first started working at Nike to the present.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 55:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "job duties."  Nike further objects to this Request on the grounds that it is duplicative of information previously requested by and/or provided to Plaintiffs, unduly burdensome, oppressive, and overly broad as to scope because it seeks documents outside of the applicable statutory period(s).  Nike further objects to this Request on the grounds that it seeks ESI that is not reasonably accessible because of undue burden or cost.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.


**DOCUMENT REQUEST NO. 56:**

For each plaintiff, all final CFEs, mid-year CFEs, and Potential Appraisals.  For each plaintiff, the time-period for this request is from when the plaintiff first started working at Nike to the present.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 56:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "Potential Appraisals."  Nike further objects to this Request on the grounds that it seeks ESI that is not reasonably accessible because of undue burden or cost.  Nike further objects to this Request on the grounds that it is duplicative of information previously requested

Page 62          DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                 PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

by and/or provided to Plaintiffs, unduly burdensome, oppressive, and overly broad as to scope

because it seeks documents outside of the applicable statutory period(s).


**DOCUMENT REQUEST NO. 57:**

      For each plaintiff, documents sufficient to show the identity of all HQ employees in:

(a) each plaintiff's job grouping; (b) who directly reported to plaintiff; (c) who plaintiff directly

reported to; or (d) who had any of the same direct reports as plaintiff at the same time as plaintiff

or within one year before or after plaintiff held a position.  For each plaintiff, the time-period for

this request is from when the plaintiff first started working at Nike to the present.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 57:**

      Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference

as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and

ambiguous as to "sufficient to show," "identity," "HQ employees," "job grouping," "reported

to," "the same direct reports," "the same time," and "held a position."  Nike further objects to

this Request on the grounds that it is duplicative of information previously requested by and/or

provided to Plaintiffs, unduly burdensome, oppressive, and overly broad as to time and scope

because (1) it seeks documents outside of the applicable statutory period(s), and (2) it seeks

confidential and personal identifying information pertaining to individuals who are not parties to

this action, and the disclosure of such information would constitute an unwarranted invasion of

the affected individuals' constitutional, statutory, and/or common law rights to personal privacy

and confidentiality.  Nike further objects to this Request on the grounds that it seeks ESI that is

not reasonably accessible because of undue burden or cost.  Nike further objects to this Request

to the extent that it seeks information protected by the attorney-client privilege and/or attorney

work product doctrine.  Nike further objects to this Request to the extent that it seeks private,

privileged, and confidential commercial, financial, and/or proprietary business information.

Nike further objects to this Request in that is it duplicative of the documents and information

sought in Plaintiffs' Request for Production No. 1.

Page 63        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                    PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

**DOCUMENT REQUEST NO. 58:**

For each plaintiff, all documents and communications related to any investigation related to any plaintiff, including all documents and communications related to any complaint received by Nike (including through HR, Matter of Respect, or AlertLine) that was made by, made about, or related to plaintiff.  This request includes documents and communications related to any such complaints, including investigations, documents gathered, witness statements, remedial action, reports, and recommendations.  For each plaintiff, the time-period for this request is from when the plaintiff first started working at Nike to the present.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 58:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is vague and ambiguous as to "investigation," "related to," "complaint," "received by," "made about," "related to," "gathered," "witness statements," "remedial action," "reports," and "recommendations."  Nike further objects to this Request on the grounds that it is duplicative of information previously requested by and/or provided to Plaintiffs, unduly burdensome, oppressive, and overly broad as to time and scope because (1) it seeks documents outside of the applicable statutory period(s), and (2) it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality.  Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Specifically, this Request seeks any documents and communications regarding investigations and complaints that are irrelevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request to the

Page 64      DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
             PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

## DOCUMENT REQUEST NO. 59:

For each plaintiff who is not currently a HQ employee, all documents and communications related to the separation of plaintiff, including documents and communications related to any exit interview.  For each such plaintiff, the time-period for this request is from when the plaintiff first started working at Nike to her date of separation, unless responsive documents and communications post-dating separation exist.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 59:

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is duplicative of information previously requested by and/or provided to Plaintiffs, vague, and ambiguous as to "HQ employee," "related to," "separation," and "date of separation."  Nike further objects to this Request on the grounds that it seeks ESI that is not reasonably accessible because of undue burden or cost.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

## DOCUMENT REQUEST NO. 60:

For plaintiff Anderson, all documents and communications related to her demotion from an E-Band or Director position to a U-Band or Manager position.  This request includes all documents and communications created by, sent by, or sent to Daniel Tawiah, any person in HR, or any HQ executive.  The time-period for this request is from when plaintiff Andersen first started working at Nike to the present.

Page 65          DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
                PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

                                              Goldstein Decl. Ex. B, Page 65 of 71

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 60:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein. Nike objects to this Request on the grounds that it is vague and ambiguous as to "related to," "demotion from," "created by," "sent by," "sent to," "any person in HR," and "HQ executive." Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to time and scope because (1) it seeks documents outside of the applicable statutory period(s), (2) it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality. Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost. Specifically, this Request seeks "all documents and communications" between Daniel Tawiah and other Nike employees, which are irrelevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex. Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 61:**

From June 28, 2018 to the present, all documents and communications mentioning or referring to EEOC charges relating to this action, this action or any plaintiff's or person's involvement with either.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 61:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein. Nike objects to this Request on the grounds that it is vague and

Page 66     DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
            PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

ambiguous as to "mentioning or referring," "relating to," "relating to this action, this action" and "involvement with either."  Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad as to scope because it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality.  Nike further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost.  Specifically, this Request seeks documents pertaining to individual EEOC charges that do not form that basis of Plaintiffs' Complaint and which are irrelevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex.  Nike further objects to this Request on the grounds that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 62:**

All documents and communications related to both: (a) Shawn Hoy or Sean Cahill; and (b) compensation, any promotions applied for, employment status, separation, contractor status or this action.  This request includes any recording of a conversation between Sean Cahill and any person at Nike during the period of August 15, 2018 through August 31, 2018 that was made during a call to the phone number on the notice of preservation sent to Mr. Cahill on August 15, 2018.  This request also includes documents sufficient to identify each person who was sent substantially the same notice of preservation that was sent to Mr. Cahill on August 15, 2018.

Page 67       DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
              PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 62:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein. Nike objects to this Request on the grounds that it is vague and ambiguous as to "related to," "compensation," "applied for," "separation," "contractor status," and "recording of a conversation." Nike further objects to this Request on the grounds that it is unduly burdensome, oppressive, and overly broad because it seeks confidential and personal identifying information pertaining to individuals who are not parties to this action, and the disclosure of such information would constitute an unwarranted invasion of the affected individuals' constitutional, statutory, and/or common law rights to personal privacy and confidentiality. Nike further objects to this Request to the extent it seeks information that is not relevant to the subject matter of this litigation, is not proportional to the needs of the case, and/or seeks ESI that is not reasonably accessible because of undue burden or cost. Specifically, Shawn Hoy, and Sean Cahill are not within the scope of Plaintiffs' proposed class and collective definition, nor are they otherwise identified in or relevant to Plaintiffs' class and collective claims of unfair pay, promotion, and job channeling on the basis of sex. Furthermore, despite repeated requests, Plaintiffs' counsel has not confirmed to Nike that they represent Mr. Hoy and/or Mr. Cahill in any capacity, in this litigation or otherwise, and Nike declines to provide information, if any, regarding Mr. Hoy and/or Mr. Cahill to third parties. Nike further objects to this Request on the grounds that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Nike further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

**DOCUMENT REQUEST NO. 63:**

All documents and communications related to plaintiff Hender and her job assignments, this action, job performance, evaluation, compensation or promotions.

Page 68        DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
               PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 63:**

Nike refers to its objections to Plaintiffs' Definitions and incorporates them by reference as though fully set forth herein.  Nike objects to this Request on the grounds that it is overly broad, vague, and ambiguous as to "related to," "job assignments," "this action," "job performance," "evaluation," "compensation," and "promotion."  Nike further objects to this Request on the grounds that it seeks ESI that is not reasonably accessible because of undue burden or cost.  Nike further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.

Dated: April 25, 2019                         /s/ Felicia A. Davis

Daniel Prince (*pro hac vice*)
danielprince@paulhastings.com
Zach P. Hutton (*pro hac vice*)
zachhutton@paulhastings.com
Felicia A. Davis (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, Twenty-Fifth Floor
Los Angeles, California 90071-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

Amy Joseph Pedersen, OSB No. 853958
amy.joseph.pedersen@stoel.com
Kennon Scott, OSB No. 144280
kennon.scott@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

Attorneys for Defendant NIKE, INC.

Page 69    DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO
PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

Goldstein Decl. Ex. B, Page 69 of 71

## PROOF OF SERVICE

STATE OF CALIFORNIA                                      )
                                                         ) ss:
CITY OF LOS ANGELES AND COUNTY OF                        )
LOS ANGELES                                              )

      I am employed in the City of Los Angeles and County of Los Angeles, State of California.  I am over the age of 18, and not a party to the within action.  My business address is 515 South Flower Street, Twenty-Fifth Floor, Los Angeles, CA 90071-2228.

      On April 25, 2019, I served the foregoing document(s) described as:

**DEFENDANT NIKE, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION**

on the interested parties by placing a true and correct copy thereof in a sealed envelope(s) addressed as follows:

      *Please see attached Service List.*

☐   **VIA OVERNIGHT MAIL:**

    VIA _____:By delivering such document(s) to an overnight mail service or an authorized courier in a sealed envelope or package designated by the express service courier addressed to the person(s) on whom it is to be served.

☒   **VIA U.S. MAIL:**

    I am readily familiar with the firm's practice of collection and processing of correspondence for mailing.  Under that practice such sealed envelope(s) would be deposited with the U.S. postal service on April 25, 2019 with postage thereon fully prepaid, at Los Angeles, California.

☐   **VIA PERSONAL DELIVERY:**

    I personally delivered such sealed envelope(s) by hand to the offices of the addressee(s) pursuant to CCP § 1011.

☐   **VIA FACSIMILE:**

    The facsimile transmission report indicated that the transmission was complete and without error.  The facsimile was transmitted to Facsimile # _____ on April 25, 2019 at _____.  A copy of that report, which was properly issued by the transmitting machine, is attached hereto.  **[Permitted by written agreement of the parties.]**

      I declare under penalty of perjury under the laws of the United States that the above is true and correct.  Executed on April 25, 2019, at Los Angeles, California.

                           _____
                                 Francine Sheldon

Service List

Laura Salerno Owens
Markowitz Herbold PC
1211 SW Fifth Avenue
Suite 3000
Portland, OR 97204-3730

Craig Ackerman
Ackermann & Tilajef PC
1180 S. Beverly Drive
Suite 610
Los Angeles, CA 90035

Laura L. Ho
Goldstein, Borgen, Dardarian & Ho
300 Lakeside Drive
Suite 1000
Oakland, CA 94612

India Lin Bodien
India Lin Bodien, Attorney At Law
2522 North Proctor Street, #387
Tacoma, WA 98406-5338

LEGAL_US_W # 98052904.1

Goldstein Decl. Ex. B, Page 71 of 71

| | |
|---|---|
| **From:** | Laboe, Daniel |
| **To:** | Lst-Talent.Acquisition.Americas |
| **CC:** | Lupo, Kim; Westling, Daniel; Lin-Meyer, Monica |
| **Sent:** | 10/12/2017 7:15:46 PM |
| **Subject:** | Commitment to Pay Equity |

U.S. TA team-

As part of NIKE, Inc.'s commitment to Diversity & Inclusion, we continually evolve our practices and programs with pay and hiring equity in mind. In support of our commitment, we recently shared that **we will no longer ask candidates about their compensation history.** This is one way we create a positive and inclusive experience for each candidate, while ensuring all candidates who are considered for the same work at the same level and experience are offered equitable compensation.

The U.S. Talent Acquisition team plays a critical role in implementing this practice. **Going forward, U.S. TA is solely responsible for discussing compensation expectations with candidates. All other hiring partners should not ask candidates about compensation.**

In addition, our Total Rewards partners have created an updated Offer Intake Form to collect this information from candidates. There are two versions of this form: one for offers that include equity compensation (E and S band candidates), and one for offers without equity (V through U band candidates). Please use this form as you work with Total Rewards to construct offers for your roles.

Please review the resources on the TA Playbook – which includes the one-pager we will be sharing with HRBPs and other COE partners — plus the following information:

- *Lawful & Unlawful Questions*
- *TA Comp History Practice one-pager*
- *Manager Playbook – Hiring*
- *Hiring Process*

Be aware that hiring & interviewing resources on the HR Website, NA DTC Zero and other key internal websites now reflect this practice, in support of our D&I commitment. Our standard communications to hiring managers & interviewers will also prominently feature these updates—including interview invites from our coordinators, and system notifications from Taleo.

We will offer additional training opportunities later in October to review scenarios and best practices for conversations with hiring managers, interviewers and candidates. Until then, please direct any questions to me.

Thanks,

Dan

Daniel Laboe / Sr Director Talent Acquistion Operations & Innovation





IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

KELLY CAHILL, et al.,

individually and on behalf

of others similarly situated,   No.

      Plaintiffs,              3:18-cv-01477-JR

    v.

NIKE INC., an Oregon

Corporation,

      Defendant.

REMOTE 30(b)(6) VIDEOCONFERENCE DEPOSITION OF

SHINE THOMAS

Taken in behalf of Plaintiffs

March 26, 2021

Page 213

```
1         our hiring managers and interview teams.  It
2         looks like this calls out interview invites from
3         coordinators.  I'm not sure of the details of
4         what this is referring to.
5    Q.   There were standard communications that talent
6         acquisition sends to hiring managers and
7         interviewers; is that correct?
8    A.   So we communicate with our hiring managers all
9         the time.  So a communication could be
10        considered standard.  We do have, in this case
11        this refers to interview invites.  But there are
12        multiple points of communication with a hiring
13        manager.
14   Q.   And these standard communications prominently
15        feature the updates described in this e-mail;
16        correct?
17             MS. DAVIS:  Objection.
18             Go ahead.
19             THE WITNESS:  Yeah.  I don't know what the
20        execution of that was at that time.
21   Q.   BY MR. BYRON GOLDSTEIN:  And the second bullet
22        point for following information, it says, the
23        second document is "TA comp history practice,
24        one-pager."
25             I'm introducing that document which has been
```

Thomas, Shine - 30(b)(6)                           March 26, 2021

Page 214

1        previously been introduced as Exhibit 513.   And
2        that is NIKE_00002070.
3    A.  I have the document.
4    Q.  Thank you, Shine.   And the file name in the
5        metadata Nike produced is TA comp history policy
6        change, two-pager, August 24, 2017, and there's
7        also a title of the document listed that says TA
8        policy change one-pager final.   Even though the
9        title of this document, according to Nike's
10       metadata produced is TA policy change, one-pager
11       final, is this the document referenced in 673 TA
12       comp history practice one-pager?
13   A.  I assume so.   It has the same title.
14   Q.  At the bottom of the first page it says, "This
15       policy only applies to external applicants,
16       which includes all ETW's."  Do you see that?
17   A.  I see that.
18   Q.  This document is thus announcing a change in
19       Nike policy; correct?
20   A.  Yes.  So some elements of this is a change in
21       policy and some elements of this is a change in
22       guideline.
23   Q.  Is one of the change in policies, do you see
24       where it says "Nike employees may no longer"?
25   A.  I do.

Beovich Walter & Friend
1-800-541-4452                503-228-7201                www.bwfreporters.com

Goldstein Decl. Ex. D, Page 3 of 3



1(213) 683-6169
danielprince@paulhastings.com

**VIA E-MAIL**                                                                                    98484.00003

September 21, 2020

Barry Goldstein
bgoldstein@gbdhlegal.com
Byron Goldstein
brgoldstein@gbdhlegal.com
James Kan
jkan@gbdhlegal.com
Goldstein, Borgen, Dardarian & Ho
300 Lakeside Dr., Suite 1000
Oakland, CA  94612

*Re:*     *Cahill et al. v. Nike, Inc.*, Case No. 3:18-cv-01477-JR

Dear Counsel:

We write regarding certain categories of documents identified in the Court's Order dated August 10, 2020
(Dkt. # 111, the "Order").

First, with respect to policies regarding the collection and/or use of prior compensation history before
August 24, 2017, the Order stated that "Nike shall make one final attempt at locating any such policies
and if such records exist produce them to plaintiffs. If Nike reports that no such records exist, the Court
will accept Nike's representation on this issue."  (Order p. 3.)  Following additional diligent search and
reasonable inquiry, Nike has not located, nor is it aware of, any written policies regarding the collection or
use of prior compensation history beyond the documents previously produced.

Second, regarding PSP plans, the Order stated that "[t]o the extent Nike has responsive documents,
beyond brochures, that specifically detail the PSP used by policymakers, it shall provide them to
plaintiffs."  (Order p. 4.)  We specifically investigated statements in the document cited by Plaintiffs, which
referenced 18 PSP plans prior to FY18 and 11 PSP plans in FY18.  Those different "plans" actually refer
to different financial targets for different geographies and teams in prior years — which were not
published — before Nike moved to one company-wide PSP plan in FY19.  But, those specific financial
targets (or "plans") all fell under the same plan umbrella, which are the PSP brochures for each FY that
Nike has produced.  We collected a few more documents that were included in our production on
September 18, 2020.  Otherwise, following additional diligent search and reasonable inquiry, Nike has not
located, nor is it aware of, any responsive documents beyond the documents previously produced.

Third, with respect to policies regarding the "preferred candidate" approach, the Order stated that "Nike
shall make another attempt at locating such documents and to the extent they exist, it shall produce the
'preferred candidate' policy to plaintiffs."  (Order p. 5.)  Following additional diligent search and
reasonable inquiry, Nike has not located, nor is it aware of, any written policies regarding a "preferred
candidate approach."

Goldstein Decl. Ex. E, Page 1 of 2



Barry Goldstein
Byron Goldstein
James Kan
September 21, 2020
Page 2


Fourth, regarding "policies related to the determination of whether employees are in the correct job code, band, and/or level from before 2018," the Order stated "[i]f they exist, they shall be produced." (Order p. 6.) Following additional diligent search and reasonable inquiry, Nike has not located, nor is it aware of, any responsive documents beyond the documents previously produced.

Last, we note that Nike's September 18, 2020 production also included, among other documents, the following: (1) documents concerning the "Excelerate" program (Order p. 5); (2) "Internal Investigations Guidance" (Order p. 6); (3) pre-2018 versions of Nike's Matter of Respect policy (Order p. 7); and (4) the "complete survey results" for the "Starfish Survey" (Order p. 8).

Sincerely,

**/s/ Daniel Prince**

Daniel Prince
of Paul Hastings LLP



1(213) 683-6120
feliciadavis@paulhastings.com

June 2, 2021                                                                                98484.00003

Barry Goldstein (bgoldstein@gbdhlegal.com)
Byron Goldstein (brgoldstein@gbdhlegal.com)
James Kan (jkan@gbdhlegal.com)
Mengfei Sun (msun@gbdhlegal.com)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612

Re:    *Cahill et al. v. Nike, Inc.*, Case No. 3:18-cv-01477-JR

Dear Counsel:

This letter responds to your June 1, 2021 meet and confer letter.  On May 13, 2021, you
indicated a desire to conduct Rule 30(b)(6) depositions on the following data-related topics:
(1) meaning and uses of data Nike produced from Taleo on November 23, 2020; (2) data
related to plaintiffs' channeling allegations for initial job assignment; (3) data related to plaintiffs'
promotions allegations; (4) data concerning organizational structure; and (5) covered
employees' prior work history and education.  I had asked for several weeks before this letter
that you provide the scope of any data-related depositions you wished to conduct, as it is
impossible to designate one witness on all subjects "data-related."  When we finally received
your letter, we promptly began responding to your questions, believing your representations that
doing so could avoid the necessity of additional depositions.  Unfortunately, despite Nike's best
efforts to compromise, it appears that you are insisting on a deponent on every topic.  We
respond to each request in turn below:

1. **Meaning and uses of data Nike produced from Taleo on November 23, 2020**

Although the fact discovery period in this case is now closed, we have agreed to provide a
Rule 30(b)(6) witness to provide testimony regarding the data contained within Nike's Taleo
system.  I communicated this to you via email on June 1, 2021, before transmittal of your meet
and confer letter.

2. **Data related to plaintiffs' channeling allegations for initial job assignment**

Your letter lacks foundation and incorrectly assumes that Nike "channels" applicants to any
particular job.  The Rule 30(b)(6) witness on June 3, 2021 will be prepared to explain this to you,
to the extent that your questions relate to data contained within Nike's Taleo system.  This
should be more than sufficient to educate you regarding your "channeling" allegations.

3. **Data related to plaintiffs' promotions allegations**

To the extent this request seeks information outside of Taleo, you are correct that the June 3,
2021 witness will not offer such testimony.  We plan to respond to your questions in writing, but
do not intend to designate a witness on this topic.  You have all of the data you need to run a

Paul Hastings LLP  l  515 South Flower Street  l  Twenty-Fifth Floor  l  Los Angeles, CA 90071
t: +1.213.683.6000  l  www.paulhastings.com

Goldstein Decl. Ex. F, Page 1 of 2



June 2, 2021
Page 2

promotions analysis.  There is no need at this pre-certification stage of the case for a witness on this topic.

### 4.  Data concerning organizational structure

Your letter on this topic is disappointing.  Nike has far exceeded its obligations to produce organizational charts in this case.  First, we have produced more than 5,000 organizational charts reflecting Nike's vast and complex organizational structure.  Second, we took the extraordinary step of engaging a third party vendor to create documents that did not otherwise exist—organizational charts that reflect the reporting structure of litigation-relevant employees through the CEO, each year, from 2015 through 2020—which is what you claimed that you needed.  This is unprecedented.  We have never before created documents for an opposing party in a case.  Yet, as you have demonstrated throughout this case, nothing is good enough, and you demand more.  Your position on this point is absurd, harassing, and inconsistent with the Federal or Local Rules.

### 5.  Covered employees' prior work history and education

As set forth in my June 1, 2021 letter, also sent before your meet and confer letter, Nike does not systematically collect education or prior work experience for incumbent employees.  The only place this data can be found on a reliable basis is in the Taleo system, where education and prior work experience—as self-reported by the applicant—is found for individuals who have applied for a position through the Taleo system.  My letter also explained how the Taleo data can be matched against the other data produced in this matter.  No deposition testimony on this topic is needed.

Finally, contrary to the assertions in your letter, Nike has not withheld any relevant data.  Throughout this matter, Plaintiffs have attempted to use discovery as a fishing expedition.  You have asked Nike to turn over anything—and everything—that you deem relevant.  That is not consistent with the Federal Rules of Civil Procedure or Evidence.  You can feel free to ask the Taleo deponent about reference manuals or data dictionaries that you assume exist.  We have not been able to locate any.  But the witness will be more than happy to answer your questions, which should resolve any concerns that Nike engages in the purported "channeling" claims you allege.

Sincerely,

/s/ Felicia A. Davis

Felicia A. Davis
of PAUL HASTINGS LLP

New Intake Form - Mid-Tier Exec

## OFFER INTAKE FORM

| Date Submitted: | | Desired Delivery Date: | | <--- USE FOR EXTERNAL OFFERS |
|---|---|---|---|---|
| Submitted By: | | HRBP Associated with Hire: | | |

### CURRENT CANDIDATE INFORMATION

| Candidate Name: | | Current Company: | |
|---|---|---|---|
| Location (City, State): | | Company Stock Symbol: | |
| Company Fiscal Year End: | < Select > | | |
| Job Title: | | | |

**BASE PAY EXPECTATIONS**

| Annual Base Salary Expectations: | |
|---|---|

**BONUS EXPECTATIONS**

| Annual Bonus Target % Expectations: | |
|---|---|
| Annual Bonus Target Amt Expectations: | |

**EQUITY EXPECTATIONS - UNVESTED EQUITY OR DEFERRED COMPENSATION THAT CANDIDATE WOULD FORFEIT OR HAVE CANCELLED BY VIRTUE OF THE CANDIDATE'S RESIGNATION FROM THEIR CURRENT EMPLOYER IN NEXT 24 MONTHS**

| Vehicle Type 1: | < Select > | Vesting Schedule: | |
|---|---|---|---|
| Equity Target: | | <Select> | Is Award Size Based on Perf: | < Select > |
| Vehicle Type 2: | < Select > | Vesting Schedule: | |
| Equity Target: | | <Select> | Is Award Size Based on Perf: | < Select > |
| Vehicle Type 3: | < Select > | Vesting Schedule: | |
| Equity Target: | | <Select> | Is Award Size Based on Perf: | < Select > |

**LONG-TERM CASH EXPECTATIONS**

| Long-Term Cash Target: | |
|---|---|

**ADDITIONAL COMPENSATION EXPECTATIONS**

Does the candidate have any additional compensation expectations that should be considered (e.g. requests for allowances, additional bonuses, etc.)? Please explain and provide award type/size expectations.

### NIKE JOB INFORMATION                                                          <--- USE FOR EXTERNAL OFFERS ONLY

| Hiring Manager Name: | | Proposed Start Date: | |
|---|---|---|---|
| Position Title: | | Job Location: | < Select > |
| Position Number: | | Cost Center: | |
| Job Code: | | Job Band: | |
| Job Title: | | Pay Range Minimum: | |
| Job Pipeline: | | Pay Range Median: | |
| Job Family: | | Pay Range Maximum: | |

### MOBILITY/IMMIGRATION                                                          <--- USE FOR  EXTERNAL OFFERS ONLY

| Has Pre-Offer Immigration Assessment been initiated? | < Select > | Has Pre-Offer Relocation Consultation been initiated? | < Select > |
|---|---|---|---|
| Visa or Sponsorship Required: | < Select > | Homeowner or Renter: | < Select > |
| Type: | | Potential Loss on Sale: | < Select > |
| Explanation: | | Explanation: | |

Are there any unique relocation issues? Is the candidate being localized? If so, please provide context.

### CONTEXT & TALENT STORY                                                        <--- USE FOR EXTERNAL OFFERS ONLY

**BUSINESS/HIRING MANAGER VIEWPOINT: Does the hiring manager have compensation recommendations in mind for salary, sign-on, stock, etc.?**

**TALENT STORY: What will the candidate bring to Nike? Why is this the best candidate for the job? Is this candidate a "unicorn" or the best available?**

**ADDITIONAL INFO: Is there any additional information that should be considered in developing this offer?**

### ATTACHMENTS                                                                   <--- USE FOR EXTERNAL OFFERS ONLY

| Candidate Resume: | < Select > | | Documentation Supporting Localization: | < Select > | Additional Attachments: | < Select > |
|---|---|---|---|---|---|---|

Goldstein Decl. Ex. G, Page 1 of 7

New Intake Form - Below Mid Exe

## OFFER INTAKE FORM    NIKE  CONVERSE  Hurley )(  [jumpman]

| | | | |
|---|---|---|---|
| Date Submitted: | | Desired Delivery Date: | |
| Submitted By: | | HRBP Associated with Hire: | |

**CURRENT CANDIDATE INFORMATION**    ‹--- USE FOR EXTERNAL OFFERS

| | | | |
|---|---|---|---|
| Candidate Name: | | Current Company: | |
| Location (City, State): | | Company Stock Symbol: | |
| Company Fiscal Year End: | < Select > | | |
| Job Title: | | | |

**BASE PAY EXPECTATIONS**

| | |
|---|---|
| Annual Base Salary Expectations: | |

**BONUS EXPECTATIONS**

| | |
|---|---|
| Annual Bonus Target % Expectations: | |
| Annual Bonus Target Amt Expectations: | |

**ADDITIONAL COMPENSATION EXPECTATIONS**

Does the candidate have any additional compensation expectations that should be considered (e.g. requests for allowances, additional bonuses, equity, etc.)? Please explain and provide award type/size expectations.

**NIKE JOB INFORMATION**    ‹--- USE FOR EXTERNAL OFFERS

| | | | |
|---|---|---|---|
| Hiring Manager Name: | | Proposed Start Date: | |
| Position Title: | | Job Location: | < Select > |
| Position Number: | | Cost Center: | |
| Job Code: | | Job Band: | |
| Job Title: | | Pay Range Minimum: | |
| Job Pipeline: | | Pay Range Median: | |
| Job Family: | | Pay Range Maximum: | |

**MOBILITY/IMMIGRATION**    ‹--- USE FOR  EXTERNAL OFFERS ONLY

| | | | |
|---|---|---|---|
| Has Pre-Offer Immigration Assessment been initiated? | < Select > | Has Pre-Offer Relocation Consultation been initiated? | < Select > |
| Visa or Sponsorship Required: | < Select > | | |
| Type: | | | |
| Explanation: | | Explanation: | |

Are there any unique relocation issues? Is the candidate being localized? If so, please provide context.

**CONTEXT & TALENT STORY**    ‹--- USE FOR EXTERNAL OFFERS ONLY

BUSINESS/HIRING MANAGER VIEWPOINT: Does the hiring manager have compensation recommendations in mind for salary, sign-on, stock, etc.?

TALENT STORY: What will the candidate bring to Nike? Why is this the best candidate for the job? Is this candidate a "unicorn" or the best available?

ADDITIONAL INFO: Is there any additional information that should be considered in developing this offer?

**ATTACHMENTS**    ‹--- USE FOR EXTERNAL OFFERS ONLY

| | | | | | |
|---|---|---|---|---|---|
| Candidate Resume: | < Select > | | Documentation Supporting Localization: | < Select > | Additional Attachments: | < Select > |

Goldstein Decl. Ex. G, Page 2 of 7

Intake Form - Current

## OFFER INTAKE FORM

| Date Submitted: | | Desired Delivery Date: | |
|---|---|---|---|
| Submitted By: | | HRBP Associated with Hire: | |

### CURRENT CANDIDATE INFORMATION

| | | | |
|---|---|---|---|
| Candidate Name: | | EE ID: | Internal Offers Only |
| Location (City, State): | | Current Company: | |
| Company Fiscal Year End: | < Select > | Company Stock Symbol: | |
| Job Title: | | | |

### BASE PAY

| Annual Base Salary: | |
|---|---|

### BONUS

| | | | |
|---|---|---|---|
| Annual Bonus Target %: | | Previous Bonus Amount Paid: | |
| Annual Bonus Target Amt: | | Anticipated Bonus Amount: | |
| Bonus Payout Frequency: | | Bonus Payout Date: | |
| Does the candidate need to be employed on a certain date to receive the bonus? If so, what date? | | | |
| If the candidate leaves their current company, what amount will they receive in prorated bonus? | | | |

### EQUITY

| | | | |
|---|---|---|---|
| Vehicle Type 1: | < Select > | Vesting Schedule: | |
| Equity Target: | <Select> | Is Award Size Based on Perf: | < Select > |
| Vehicle Type 2: | < Select > | Vesting Schedule: | |
| Equity Target: | <Select> | Is Award Size Based on Perf: | < Select > |
| Vehicle Type 3: | < Select > | Vesting Schedule: | |
| Equity Target: | <Select> | Is Award Size Based on Perf: | < Select > |

### LONG-TERM CASH

| Long-Term Cash Target: | | Performance Period: | |
|---|---|---|---|

### ADDITIONAL COMPENSATION

| Is there any additional compensation that should be considered (e.g. allowances, additional bonuses, etc.)? Please explain and provide award type/size. |
|---|
| |

### NIKE JOB INFORMATION

| | | | |
|---|---|---|---|
| Hiring Manager Name: | | Proposed Start Date: | |
| Position Title: | | Job Location: | < Select > |
| Position Number: | | Cost Center: | |
| Job Code: | | Job Band: | |
| Job Title: | | Pay Range Minimum: | |
| Job Pipeline: | | Pay Range Median: | |
| Job Family: | | Pay Range Maximum: | |

### MOBILITY/IMMIGRATION

| | | | |
|---|---|---|---|
| Has Pre-Offer Immigration Assessment been initiated? | < Select > | Has Pre-Offer Relocation Consultation been initiated? | < Select > |
| Visa or Sponsorship Required: | < Select > | Homeowner or Renter: | < Select > |
| Type: | | Potential Loss on Sale: | < Select > |
| Explanation: | | Explanation: | |
| Are there any unique relocation issues? Is the candidate being localized? If so, please provide context. | | | |

Goldstein Decl. Ex. G, Page 3 of 7

Intake Form - Current

## OFFER INTAKE FORM

### CONTEXT & TALENT STORY

**CANDIDATE EXPECTATIONS: Please provide information related to any discussions related candidate expectations around salary, sign-on, etc.**

**BUSINESS/HIRING MANAGER VIEWPOINT: Does the hiring manager have compensation recommendations in mind for salary, sign-on, stock, etc.?**

**TALENT STORY: What will the candidate bring to Nike? Why is this the best candidate for the job? Is this candidate a "unicorn" or the best available?**

**ADDITIONAL INFO: Is there any additional information that should be considered in developing this offer?**

### ATTACHMENTS

| Candidate Resume: | < Select > | Equity Award Summary or Statement: | < Select > | Documentation Supporting Localization: | < Select > | Additional Attachments: | < Select > |
|---|---|---|---|---|---|---|---|

Goldstein Decl. Ex. G, Page 4 of 7

Intake Form Example

## OFFER INTAKE FORM EXAMPLE

| Date Submitted: | 3/2/2017 | Desired Delivery Date: | 3/9/2017 |
|---|---|---|---|
| Submitted By: | Daffy Duck | HRBP Associated with Hire: | Bugs Bunny |

### CURRENT CANDIDATE INFORMATION

| Candidate Name: | Stan Podolak | EE ID: | Internal Offers Only |
|---|---|---|---|
| Location (City, State): | Birmingham, AL | Current Company: | Birmingham Barons |
| Company Fiscal Year End: | June | Company Stock Symbol: | MLBB |
| Job Title: | Publicist and Personal Assistant | | |

### BASE PAY

| Annual Base Salary: | $100,000 | | |
|---|---|---|---|

### BONUS

| Annual Bonus Target %: | 15% | Previous Bonus Amount Paid: | $20,000 |
|---|---|---|---|
| Annual Bonus Target Amt: | $15,000 | Anticipated Bonus Amount: | $17,500 |
| Bonus Payout Frequency: | Annual | Bonus Payout Date: | 7/1/2017 |
| Does the candidate need to be employed on a certain date to receive the bonus? If so, what date? | | | 6/1/2017 |
| If the candidate leaves their current company, what amount will they receive in prorated bonus? | | | $2,500 |

### EQUITY

| Vehicle Type 1: | RSUs | | Vesting Schedule: | 3 Year Cliff Vest |
|---|---|---|---|---|
| Equity Target: | 50,000 | Dollars | Is Award Size Based on Perf: | No |
| Vehicle Type 2: | Stock Options | | Vesting Schedule: | 4 Year Annual Vest |
| Equity Target: | 15,000 | Shares | Is Award Size Based on Perf: | Yes |
| Vehicle Type 3: | < Select > | | Vesting Schedule: | n/a |
| Equity Target: | n/a | <Select> | Is Award Size Based on Perf: | < Select > |

### LONG-TERM CASH

| Long-Term Cash Target: | $10,000 | Performance Period: | 2 Year Cliff Vest |
|---|---|---|---|

### ADDITIONAL COMPENSATION

**Is there any additional compensation that should be considered (e.g. allowances, additional bonuses, etc.)? Please explain and provide award type/size.**

No special circumstances.

### NIKE JOB INFORMATION

| Hiring Manager Name: | Lola Bunny | Proposed Start Date: | 4/1/2017 |
|---|---|---|---|
| Position Title: | Operations Director | Job Location: | Beaverton, OR |
| Position Number: | 2596648 | Cost Center: | 109987 |
| Job Code: | A0937 | Job Band: | E |
| Job Title: | DIR: LOGISTICS | Pay Range Minimum: | $125,000 |
| Job Pipeline: | LOGISTICS & SERVICES | Pay Range Median: | $150,000 |
| Job Family: | PRODUCT DELIVERY | Pay Range Maximum: | $175,000 |

### MOBILITY/IMMIGRATION

| Has Pre-Offer Immigration Assessment been initiated? | Yes | Has Pre-Offer Relocation Consultation been initiated? | Yes |
|---|---|---|---|
| Visa or Sponsorship Required: | Yes | Homeowner or Renter: | Homeowner |
| Type: | H1-B Visa | Potential Loss on Sale: | Yes |
| Explanation: | Hoping to relocate this candidate from the Center of the Earth to Beaverton. Will require an H1-B Visa. | Explanation: | Candidate owns a house. Loss on sale assistance will likely be required, pending assessment by Cartus. |

**Are there any unique relocation issues? Is the candidate being localized? If so, please provide context.**

Candidate will need 3 months temporary housing.

Goldstein Decl. Ex. G, Page 5 of 7

Intake Form Example

## OFFER INTAKE FORM EXAMPLE
Nike  CONVERSE  Hurley )(  Jordan

### CONTEXT & TALENT STORY

**CANDIDATE EXPECTATIONS: Please provide information related to any discussions related candidate expectations around salary, sign-on, etc.**

Candidate is expecting sign-on of at least $100K

**BUSINESS/HIRING MANAGER VIEWPOINT: Does the hiring manager have compensation recommendations in mind for salary, sign-on, stock, etc.?**

Hiring manager believes this is the best candidate possible and is ok with the $500K sign-on.

**TALENT STORY: What will the candidate bring to Nike? Why is this the best candidate for the job? Is this candidate a "unicorn" or the best available?**

Candidate is has potential to save struggling business unit based on skills and experience. Brings assets to Nike that we don't currently have on the bench.

**ADDITIONAL INFO: Is there any additional information that should be considered in developing this offer?**

Candidate has 2 additional offers on the table at this time.

### ATTACHMENTS

| Candidate Resume: | Yes | Equity Award Summary or Statement: | Yes | Documentation Supporting Localization: | Yes | Additional Attachments: | No |
|---|---|---|---|---|---|---|---|

Goldstein Decl. Ex. G, Page 6 of 7

Equity Statement Examples

| IDEAL! | OKAY | NOT ENOUGH DETAIL |
|---|---|---|



With info from candidate: "Stock vests 50% in year 2 and the remaining 50% in year 5"

Annual awards listed separately with award type, vesting details including # of shares, vesting dates & number of shares already vested.  If this were for options, it should also show award strike price.

This isn't ideal since it doesn't show any details about the original award size, or vesting timing.  But with vesting schedule details, we can still determine walkaway value

This summary looks nice but doesn't have the level of detail that we need.  Are these awards in the format of options or RSUs?  How many shares/options have been awarded and when do they vest?

Goldstein Decl. Ex. G, Page 7 of 7

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

KELLY CAHILL, et al.,

individually and on behalf

of others similarly situated,    No.

      Plaintiffs,        3:18-cv-01477-JR

   v.

NIKE INC., an Oregon

Corporation,

      Defendant.


REMOTE 30(b)(6) VIDEOCONFERENCE DEPOSITION OF

SHINE THOMAS

Taken in behalf of Plaintiffs

March 26, 2021

Thomas, Shine - 30(b)(6)                     March 26, 2021

Page 202

```
 1        longer asking candidates about the compensation
 2        history was at least in part because of a
 3        commitment to pay equity?
 4   A.   That's what it says in the e-mail.  I recall
 5        this being primarily because the law had changed
 6        as well.
 7   Q.   And then the next paragraph begins with the U.S.
 8        talent acquisition team plays a critical role in
 9        implementing this practice.  Is that an accurate
10        statement?
11   A.   It is an accurate statement.
12   Q.   In the third paragraph it states, "In addition,
13        our Total Rewards partners have created an
14        updated offer intake form to collect this
15        information from candidates."
16             So there was an offer intake form that
17        existed prior to this e-mail; correct?
18   A.   Yeah.  That's what the e-mail says.  I can't
19        remember all the dates of everything, but I'm
20        sure that's correct.
21   Q.   And then there was a new updated version of the
22        offer intake form that began around the time of
23        this e-mail; correct?
24   A.   Correct.
25   Q.   And so Nike created an updated offer intake form
```

Thomas, Shine - 30(b)(6)                    March 26, 2021

Page 203

| | | |
|---|---|---|
| 1 | | around October 2017, around the same time that |
| 2 | | Nike changed its policy to no longer ask |
| 3 | | candidates about their compensation history; |
| 4 | | correct? |
| 5 | A. | The offer intake form was updated and our policy |
| 6 | | changed as well as the law around asking for |
| 7 | | compensation history. |
| 8 | Q. | And the offer intake form was updated because of |
| 9 | | this policy change? |
| 10 | A. | That's what the e-mail says.  I will say the |
| 11 | | offer intake -- |
| 12 | Q. | What's that? |
| 13 | A. | That's what the e-mail says. |
| 14 | Q. | And based on this e-mail and who it's from and |
| 15 | | who's cc'd, do you believe this is an accurate |
| 16 | | statement? |
| 17 | A. | I have no reason to doubt the accuracy of the |
| 18 | | statement. |
| 19 | Q. | What does the reference to Total Rewards |
| 20 | | partners mean? |
| 21 | A. | There are different partners that have different |
| 22 | | functions of Nike with regards to compensation. |
| 23 | Q. | Is that the compensation organization within |
| 24 | | human resources? |
| 25 | A. | That is correct. |



**G B D H**

**Goldstein, Borgen, Dardarian & Ho**

Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan
Andrew P. Lee

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

June 15, 2021

<u>**Via E-Mail Only**</u>

Daniel Prince                                                    danielprince@paulhastings.com
Felicia A. Davis                                              feliciadavis@paulhastings.com
Laura Zabele                                                 laurazabele@paulhastings.com
PAUL HASTINGS LLP
515 S. Flower Street, 25th Floor
Los Angeles, CA 90071

     *Cahill, et al. v. Nike, Inc.*, Case No. 3:18-cv-01477-JR

Dear Counsel,

     Although Rule 26(e) "creates an ongoing duty to supplement or correct prior disclosures or discovery responses without the need for a request from another party," *Brown v. Wal-Mart Store, Inc.*, 2018 WL 2011935, at *2 (N.D. Cal. Apr. 27, 2018) (citation and internal quotations omitted), Plaintiffs must again write to remind Nike it has failed to produce documents that should have been produced prior to the close of the discovery period.

     Please promptly produce the below documents. These documents are responsive to RFPs served over two years ago, covered by discovery orders, and Nike knows these documents existed. Yet, Nike neither produced these documents nor informed Plaintiffs that it was withholding these documents. Please thus explain why Nike failed to produce this discovery so that the Parties can meet and confer about what additional steps should be taken. If Nike no longer has any of these documents, please promptly let us know when the documents were deleted or otherwise became inaccessible, by whom, and why.

    1.    Pre-2018 versions of the Offer Intake Form. Thomas 202:12-203:18; Exhibit 673.

    2.    Pre-2018 Versions of Manager Playbook, Hiring. Thomas 210:10-23; Exhibit 673.

    3.    Pre-2018 Versions of Hiring Process. Thomas 210:10-23; Exhibit 673.

    4.    Pre-December 2018 Hiring Philosophy and Guidelines. Thomas 55:5-17. Exhibit 660.

    5.    Complete versions of the Talent Acquisition Playbook. Thomas 204:12-206:10 (Talent Acquisition playbook is the main source of guidelines and policies for TA members, and "[a]ll these tools that are available are typically housed in the TA playbook and there are always guidelines and tools."); *see also id.* at 157:16-160:12; Exhibits 669, 670, 671, 673.

155 Grand Avenue, Suite 900, Oakland, CA 94612    Tel 510. 763. 9800    Fax 510. 835. 1417    www.gbdhlegal.com

823242.9

Goldstein Decl. Ex. I, Page 1 of 4

6.      Compensation Guidelines for External Hires and Total Compensation Hiring Tool. Thomas 167:6-69:17 ("assume [the Compensation guidelines for external hires and the Total Compensation Hiring Tool] provide guidelines around compensation as a data point in making the final offer recommendations."); Exhibit 670.

7.      Taleo Question Library with Answers.  Thomas 161:24-162:3; Exhibit 670.

8.      FPT Access Form. Thomas 167:6-19, 174:7-20; Exhibit 669.

9.      Manager Excellence and Manager Manifesto.  Heinle 114:11-22, 115:17-21.

10.     Employees chosen for Xcelerate.  This data may show that Nike's top management and HR disproportionately selected men for Xcelerate.  Nike does not assert this data is non-existent and does not provide any basis for withholding other than saying that Nike has unilaterally determined that the discovery is irrelevant.  Further, Nike failed to even respond to the meet and confer on the unproduced Xcelerate data for ten months, almost two months after the discovery deadline it sought, and more than six weeks after it represented to the Court it would respond, ECF No. 114 at 20.

11.     Talent Move form and any other documents filled out for talent planned / noncompetitive promotions.  Heinle 47:6, 48:10-50:4. Ms. Heinle testified that Nike fills out forms and spreadsheets concerning noncompetitive promotions. Heinle 198:12-199:7.  Ms. Heinle, however, did not know the name of the form, what information is in the form, or where the data was entered (though she assumed SAP).  Id. at 198:24-199:7 (Ms. Heinle believes this form is "submitted to our HR operations group that would then enter the data," and Ms. Heinle was not sure where the data was entered into but assumes SAP).

12.     Online Assessments for Leadership Potential Assessment ("LPA") and Talent Segmentation.  Heinle 207:13-19 (To assess potential for LPA, from at least 2015 until LPA ended, there was an online assessment that consisted of various questions, part of which is shown in the image in the top right on slide 20 of Exhibit 647); *id*. at 207:23-208:14 (online assessment that is part of the talent segmentation process).  The screenshot on slide 20 of Exhibit 647 does not show all the questions for the LPA assessment, and the witness did not know what the other questions were.  *Id*. at 207:20-22.

13.     Risk of Loss and Impact of Loss data from the period when Nike did the Leadership Potential Assessment, 2018 and before.  Ms. Heinle testified that Nike collected this data.  Heinle 37:17-23.  Exhibit 500 at slide 40 states that these two factors were used prior to 2019 when making pay recommendations and determinations, so Nike must have collected the data on these two factors.

14.     Criteria to Recruit.  Thomas 260:3-261:7

*Cahill, et al. v. Nike, Inc.*                -3-                    June 15, 2021

15.  Fill Strategy guidelines, which means a determination about how a position is going to be filled.  Heinle 124:13-125:2.  Ms. Heinle believes there are guidelines regarding fill strategy, but she did not know the names of those guidelines.  Heinle 133:6-11.[1]

16.  Documents and communications showing what, how, and the substance of Succession Management Systems or Related Systems.  Nike's Rule 30(b)(6) witness testified that she believed Nike's Succession Management System and "SMS SumTotal" are succession planning systems.  Heinle 239:13-240:21[2]

17.  Documents showing how Nike used Taleo, Avature, SAP, and other systems for sourcing candidates who were hired into Covered Positions, related to noncompetitive promotions, matching, or initial job assignments, and what data was collected regarding same.  Nike has possession, custody, or control of such documents, which are responsive to RFPs 2-3.  The importance of this discovery is underscored by the fact that Nike choose to not prepare its Rule 30(b)(6) witnesses for Topics noticed on October 28, 2020 concerning this information.[3]  Nike also failed to appear for parts of these Topics; for example, Nike failed to appear with respect to the data collected and systems it used to source candidates,

_____

[1] Ms. Heinle was otherwise unprepared to testify about policies, practices, guidelines, or trainings concerning noncompetitive promotions.  When asked whether there were guidelines or policies regarding noncompetitive promotions and approvals, Ms. Heinle answered, "I don't know."  Heinle 70:20-71:1.  Ms. Heinle also did not know if there were trainings about noncompetitive promotions.  *Id.* at 132:24-133:5.

[2] SumTotal "can develop talent pools … to drive decision-making," "identify top talent," "build bench strength," "cultivate new leaders," "improve internal career mobility," and "create dynamic talent pools."  https://www.sumtotalsystems.com/solutions/talent-development/succession (SumTotal's homepage).

[3] For example, when asked about systems Nike maintains data related to noncompetitive promotions and/or job transfers from 2015 to the present, Ms. Heinle answered: "I believe most of our data is housed in SAP. I do not know what data is included – I don't know all our other systems or where it would be."  Heinle 75:17-76:6.  After identifying the employees who would have information to answer this question, the witness testified she did not talk to them in preparation for the deposition, Ms. Heinle did not do anything to prepare with respect to the data concerning noncompetitive promotions or job changes, and Ms. Heinle also testified that she did "nothing" to prepare for this deposition regarding anything about impact of loss or risk of loss with respect to LPA.  *Id.* at 76:7-23, 172:23-173:11, Heinle 230:22-231:16.  Ms. Thomas testified she did not do anything to prepare for topic 11, which concerns systems Nike used, other than speak to outside counsel, who provided no new facts.  Thomas 173:11-22.  Ms. Thomas did not learn anything new during preparation for the deposition, did not look for any documents on her own, or talk to anyone other than counsel during preparation for the deposition.  *Id.* at 14:12-18, 18:17-19:2.  She did not review any transcripts from prior depositions.  *Id.* at 29:25-30:3.

*Cahill, et al. v. Nike, Inc.*                    -4-                    June 15, 2021

which caused women to disproportionally apply to lower-level jobs than men. Nike also made other efforts to prevent Plaintiffs from obtaining this discovery.[4]


Sincerely,

Byron Goldstein

Enclosures

cc:    James Kan
       Barry Goldstein
       Mengfei Sun
       Laura Salerno Owens
       Kathryn A. Roberts

---

[4] For example, Nike's November 22, 2020 letter stated Nike "produced all of the fields available in [SAP], even those that are not consistently used" (Nike's Nov. 22, 2020 letter at 3), but Nike was then forced to admit for the first time on March 14, 2021 that that it had not produced all data fields in SAP (Nike's Mar. 14, 2021 letter at 3).

823242.9

Goldstein Decl. Ex. I, Page 4 of 4

**NIKE HR**  PAY & BENEFITS   TIME & VACATION   CAREER   POLICIES & FORMS          English ▾

# HIRING PROCESS

PHILOSOPHY & GUIDELINES

**HIRING PROCESS**

FREQUENTLY ASKED
QUESTIONS

The Hiring Process is a quick guide to educate key players on their roles and responsibilities when looking to hire
great talent at NIKE, Inc.

Use this resource to learn about your role – as well as when to rely on other stakeholders – throughout the hiring
process.





Career Central
Tools for training
your career at NIKE

Contact HR Direct
Get support by
phone, email or live
chat

REFERENCES

Job Opportunities

Employee Referrals

Global Talent Acquisition
Contact List

## PHASE 1: IDENTIFY TALENT NEED

**Hiring Manager:**

- Identify need within the business that requires full-time headcount
- Discuss need with HR Manager/HR Business Partner
- Receive approvals from leadership and finance to open position
- Gather position details such as job description, band, job code, cost center, etc., and coordinate with HR
  Direct to understand which position requirements are necessary to gather prior to position creation
- Contact HR Direct and provide the position details for requisition creation

**HR Manager/HR Business Partner:**

- Discuss need with Hiring Manager
- If approving the request, facilitate creation of a position number with Position Management
- Recommend position leveling, if needed

## PHASE 2: DETERMINE HIRING STRATEGY

**Hiring Manager:**

- Contact Talent Acquisition to initiate the hiring process (access contact list here)
- Review pre-work from Talent Acquisition in preparation for upcoming recruiting strategy session
- Attend recruiting strategy session with recruiter and be prepared to provide updates to the job description,
  confirm core competencies for the role and identify the interview team

**Talent Acquisition:**

- Receive email from Hiring Manager with requisition details
- Send pre-work to Hiring Manager in preparation for the recruiting strategy session
- Schedule and conduct the recruiting strategy session, and be prepared to consult on position details and
  align on sourcing strategy
- Package requisition details for Recruiting Services team to initiate job posting
- Review posting once live and notify Hiring Manager

## PHASE 3: SOURCE AND ASSESS TALENT

**Talent Acquisition:**

- Research internal talent pool and external sources for potential candidates
- Screen applications for qualified candidates, and conduct phone screens
- Assess candidates' compensation expectations
- Present candidate slate to Hiring Manager
- Determine work authorization status and inform Hiring Manager of any potential timing challenges
- Discuss next steps and reassess sourcing strategy if needed
- Communicate status updates to candidates

**Hiring Manager:**

- Receive candidate resumes from recruiter and provide feedback
- After recruiter conducts phone screens, receive initial slate of candidates for final selection
- Identify final slate of candidates

## PHASE 4: INTERVIEW TOP TALENT

**Talent Acquisition:**

- Submit interview requests to Coordination Team for scheduling
- Provide details on interview logistics and expectations to candidates
- Facilitate debrief meeting post-interviews
- Communicate status updates to candidates

**Hiring Manager:**

- Confirm interview team
- Assign interview team questions created through the Competency Based Interview Questions tool
- **U.S. only:** Prepare using the Interview Tool and Lawful & Unlawful Questions to help create a positive and
  inclusive experience for each candidate
- Conduct interviews
- Interview team members to provide objective feedback to recruiter post-interviews
- Attend debrief meeting

## PHASE 5: MAKE AN OFFER

**Talent Acquisition:**

- Identify final candidate
- Review compensation information with Hiring Manager and conduct any necessary pre-assessments
- Determine timeline restrictions related to non-compete agreements and background checks
- Contact HRBP and business leaders for offer approval

Confidential

- Once approved, extend verbal offer to final candidate

**Hiring Manager:**

- Identify final candidate
- Review compensation information with recruiter
- Approve offer letter

## PHASE 6: PRE-ONBOARDING YOUR NEW HIRE

**Talent Acquisition:**

- Stay in communication with new hire and provide updates as needed

**Hiring Manager:**

- Call selected candidate to welcome to NIKE
- Develop onboarding plan
- For internal hires, partner with former manager on a transition plan
- Submit request for new equipment

UPDATED:        2018/12/13 - 12:34pm
LOCATION:       Global
CATEGORIES:     Job Opportunities



© 2018 NIKE, Inc. All Rights Reserved.

Website Help    Contact HR

Live Chat

NIKE_00003186
Goldstein Decl. Ex. J, Page 2 of 2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

KELLY CAHILL, et al.,

individually and on behalf

of others similarly situated,   No.

          Plaintiffs,            3:18-cv-01477-JR

     v.

NIKE INC., an Oregon

Corporation,

          Defendant.

REMOTE 30(b)(6) VIDEOCONFERENCE DEPOSITION OF

SHINE THOMAS

Taken in behalf of Plaintiffs

March 26, 2021

Page 199

1          Exhibit 672.

2               MS. DAVIS:  Byron, I believe the offer

3          modeling tool was Exhibit 672.

4               MR. BYRON GOLDSTEIN:  Thank you, Felicia.

5    Q.   BY MR. BYRON GOLDSTEIN:  Exhibit 673 is

6         NIKE 00024727.

7    A.   I have that open.

8    Q.   Great.  If you look at the "to" field of this.

9         So this is an e-mail that's from Daniel Laboe

10        and it's sent on August -- October 12, 2017.

11        Based on the "to" field which has some, looks

12        like a list of people and that it's addressed to

13        the USDA team, was this sent to all talent

14        acquisition employees at Nike World

15        Headquarters?

16   A.   Yes.

17   Q.   Was it sent to any employees who did not work in

18        talent acquisition?

19   A.   It looks like there's some people copied in

20        there who do not work in talent acquisition, if

21        that's what you mean.

22   Q.   And those four names are Kim Lupo, Dan Westling

23        and Monica Lin-Meyer?

24   A.   Yes.

25   Q.   Other than those four people, did anyone other

Thomas, Shine - 30(b)(6)                                     March 26, 2021

Page 210

```
 1        director of operations, but I don't know what
 2        changes there are.
 3   Q.   BY MR. BYRON GOLDSTEIN:  Did you talk to Dan?
 4        I'm sorry.
 5   A.   I'm sorry.  I said he had changes to his title,
 6        but he's a senior director.
 7   Q.   Did you talk to Dan Laboe in preparation for
 8        this deposition?
 9   A.   I did not.
10   Q.   And do you see above "Hiring Process," "Manager
11        Playbook Hiring" is listed there?
12   A.   Yes.
13   Q.   And so that's a prior version of Exhibit 662?
14        Exhibit 662 is from December 2018?
15   A.   I assume so.
16   Q.   And because this was a change in policy
17        announcement all of these or those two
18        documents, "Manager Playbook Hiring" and "Hiring
19        Process" would have been updated at this time;
20        correct?
21   A.   I assume that would have been the process.  I'm
22        not responsible for that.  So I can't answer
23        specifically.
24   Q.   Does Nike still have the prior versions prior to
25        this e-mail or any versions between 2015 to
```

Page 211

1    October 2017 about the hiring processor manager

2    playbook hiring?

3  A.  I do not know.

4  Q.  Is Nike's document retention policy easy to

5    locate for Nike employees?

6       MS. DAVIS:  Objection; outside the scope,

7    may call for speculation.

8       If you know.

9       THE WITNESS:  I don't know.  I've never

10   needed to look for that.  I do not know.

11 Q.  BY MR. BYRON GOLDSTEIN:  In your experience at

12   Nike, does Nike's document retention policy

13   consistently or inconsistently apply?

14      MS. DAVIS:  Objection; outside the scope,

15   calls for speculation.

16      THE WITNESS:  I don't know the answer to

17   that question.

18 Q.  BY MR. BYRON GOLDSTEIN:  So under the bullet

19   points it says, "Be aware that hiring and

20   interviewing resources on the HR website NA DTC

21   Zero and other key internal websites now reflect

22   this practice in support of our D&I commitment."

23      D&I refers to diversity and inclusion?

24 A.  Yes.

25 Q.  What are the other key internal websites

Thomas, Shine - 30(b)(6)                    March 26, 2021

Page 212

1        referenced there?

2   A.   So the HR website is on Zero, which is our

3        intranet, and that is where all these

4        guidelines, et cetera, are housed.  North, NADTC

5        stands for North America direct consumer, but

6        I'm not sure what is actually housed on that

7        part of the intranet.

8   Q.   Okay.  Who manages the HR website?

9              MS. DAVIS:  Objection; outside the scope.

10             THE WITNESS:  I would assume communications

11       manager.  I don't know exactly.

12  Q.   BY MR. BYRON GOLDSTEIN:  Do you know what

13       changes were made to the hiring and interviewing

14       resources around October 2017 that were on the

15       HR website NA DTC Zero or other key internal

16       websites?

17  A.   Based on this e-mail, it looks like these

18       documents were updated.  Outside of that I do

19       not know.

20  Q.   The next sentence references standard

21       communications to hiring managers and

22       interviewers.  What are the standard

23       communications to hiring managers?

24  A.   I'm sorry.  I can't -- Oh, I just found that.  I

25       think we have many methods of communicating with

| | |
|---|---|
| **From:** | HR Communications |
| **To:** | Janke, Amy |
| **Sent:** | 9/14/2017 7:00:13 PM |
| **Subject:** | HRBP Update: September 14, 2017 |



Having trouble viewing this email? *View it in your browser.*

## In This Issue:                                   *September 14, 2017*

- New U.S. Legislation Impacting Candidate Questions About Salary History

## Talent Acquisition Operations

### New U.S. legislation impacting candidate questions about salary history

***Relevance:*** *Any employee who interviews a candidate based in the U.S. or Puerto Rico.*
***Requested Action:*** *Awareness of new legislation that affects what employers can ask*

NIKE_00023658

Goldstein Decl. Ex. L, Page 1 of 2

*candidates about their compensation histories. Help TA build awareness & drive the change with your business teams.*

This October, cities and states across the U.S. will enact new laws that improve workers' abilities to earn competitive and equitable pay in the marketplace. In the spirit of Nike's culture & values, we support these new regulations, and are proactively adopting an internal policy to ensure we remain compliant.

**What you need to know:**

**Beginning October 1, interviewers can no longer ask candidates to share their current compensation or any compensation history**. Compensation questions now fall under non-discrimination legal statutes, and violations will incur fines and/or legal action.

This new policy also means that Nike may no longer:

- Use salary as a tool to disqualify candidates, or as a screening criteria.
- Require candidates to satisfy a minimum/maximum salary for a position.
- Record salary history in our ATS or CRM systems.
- Search public records for candidates' compensation history, even if the information is readily available.

**Instead, our conversations with candidates must focus on their compensation expectations**. Since we can no longer ask candidates to provide actual compensation figures, Nike will use the candidate's salary expectations—compiled with market information—to inform and create our offers.

Talent Acquisition Operations is currently working with HR COE partners to align their processes to this new policy. Training sessions and communications are planned throughout September to ensure recruiters, hiring managers & interviewers at corporate & retail adopt to this new policy. Hiring & interviewing resources on the HR Website, DTC Zero and other key internal websites will also be updated prior to October 1.

To drive awareness & adoption of this change in the business, recruiters are prepared with talking points to include in their ongoing conversations with hiring managers. The HR Business Planning & Delivery team is also equipped with this walking deck to prepare HRBPs and Business Leadership for this policy change.

**»» Questions?** Contact Marc Caputo, recruiter & project manager.

***About HRBP Update:*** *The HRBP Update is a bi-weekly communication to business-facing HR with important HR information about current business priorities and what to expect in the future. For questions or comments, contact the HR Communications & Branding team.*

© 2017 NIKE, Inc. All rights reserved. For internal use only.

NIKE_00023659

July 11, 2023

<u>**Via E-Mail Only**</u>

Daniel Prince                                                                    danielprince@paulhastings.com
Felicia A. Davis                                                               feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 S. Flower Street, 25th Floor
Los Angeles, CA 90071

     *Cahill, et al. v. Nike, Inc.*, Case No. 3:18-cv-01477-JR

Dear Counsel,

     Plaintiffs allege Nike had a practice of using prior pay when setting starting salary until about October 2017. Nike, however, has not produced any policies, guidelines, trainings, descriptions, or forms that it used when setting starting pay from this period (pre-October 2017). Plaintiffs asked for this discovery in RFP Nos. 4 and 8. The Court ordered Nike to produce this discovery (ECF No. 89).

     Plaintiffs are again asking Nike to engage in a transparent and collaborative process. Please thus let us know the following information soon so the Parties can then discuss how to locate this outstanding discovery efficiently and effectively.

     1.    In response to Plaintiffs' RFP No. 4, what efforts and methods did you undertake to locate responsive discovery related to the setting of starting pay from the pre-October 2017 period? If these efforts were limited to a certain time period, locations, custodians, or search terms, can you please let us know each of those parameters?

     2.    In response to Plaintiffs' RFP No. 8, what efforts and methods did you undertake to locate responsive discovery related to the setting of starting pay from the pre-October 2017 period? If these efforts were limited to a certain time period, locations, custodians, or search terms, can you please let us know each of those parameters?

     3.    In response to the October 2019 Order (ECF No. 89), what efforts and methods did you undertake to locate responsive discovery related to the setting of starting pay from the pre-October 2017 period? If these efforts were limited to a certain time period, locations, custodians, or search terms, can you please let us know each of those parameters?

     Sincerely,

Byron Goldstein

July 17, 2023

Via E-Mail (brgoldstein@gbdhlegal.com)

Byron Goldstein
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612

Re:    *Cahill, et al. v. Nike, Inc.,* Case No. 3:18-cv-01477-JR,
       U.S. District Court, D. Oregon

Dear Counsel:

Thank you for your July 11, 2023 correspondence.  As you note, NIKE remains committed to a transparent and collaborative post-certification discovery period.  NIKE has produced a significant amount of information and we look forward to working together to conclude discovery on the claims asserted by the four named Plaintiffs.

First, we understand Plaintiffs' allegations and believe that NIKE has complied with the Court's October 31, 2019 order requiring, in pertinent part, policies maintained during the relevant time periods "regarding hiring, firing, pay, promotions, and compensation systems[.]"  ECF No. 89.  While we have not performed an exhaustive review of Nike's document production for this purpose, a quick search reveals several responsive documents.  *See, e.g.,* NIKE_00000264, NIKE_00000568, NIKE_00002070, NIKE_00002072, NIKE_00002321, NIKE_00019411, and NIKE_00023659.[1]

However, to the extent Plaintiffs believe there is a "policy" relating to the use of prior compensation history, the Court ruled that "there is insufficient evidence that Nike has a company-wide policy of collection prior pay data[,]" and that "[t]he evidence does not demonstrate a centralized decision-making process that collected prior pay data used to make starting pay decisions."  ECF No. 310 at 47.  Plaintiffs' suspicion—without evidence—that certain documents may exist does not support an order compelling production of the same.  *See, e.g., Boston v. Clubcorp USA, Inc.*, No. CV 18-3746 PSG (SS), 2019 U.S. Dist. LEXIS 72975, at *21-22 (C.D. Cal. Mar. 11, 2019).

---

[1] Plaintiffs' letter specifically identified the 2017 time period, although we note that NIKE's production also included policy documents from other timeframes.  *See, e.g.,* NIKE 00001637 (2018), NIKE_00001707 (2018), NIKE_00001740 (2018), NIKE_00014021 (2019), and NIKE_00003314 (2019).

Second, we believe that Plaintiffs' request for NIKE's "methods" of identifying responsive documents—including search terms, locations, custodians, etc.—is inappropriate and not supported by any Order in this case.  In fact, courts in this circuit and other circuits routinely deny such requests for "discovery on discovery."  *See, e.g., 246 Sears Rd. Realty Corp. v. Exxon Mobil Corp.*, No. 09-CV-889 (NGG) (JMA), 2011 U.S. Dist. LEXIS 165391 (E.D.N.Y. Apr. 1, 2011) (denying motion to compel production of information showing the names of custodians from which information was collected, location of relevant data, and defendant's search methodology); *Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557 (S.D. Cal. 2019) (denying motion to compel production of sources of information searched, search methods employed, search terms employed, and the identification of custodians from whom information was gathered); *Karrani v. JetBlue Airways Corp.*, No. C18-1510 RSM, 2019 U.S. Dist. LEXIS 89031 (W.D. Wash. May 28, 2019) (denying motion to compel where "[p]laintiff effectively seeks discovery on JetBlue's discovery process").

We likewise believe that compliance with this request would invade the attorney work product doctrine and/or attorney-client privilege, and on that basis, we must decline the invitation.  *See, e.g., Fish v. Air & Liquid Sys. Corp.*, No. GLR-16-496, 2017 U.S. Dist. LEXIS 24188, at *66 (D. Md. Feb. 21, 2017) ("[T]he manner in which [defendant] and its attorneys conducted discovery (e.g. who was involved and 'all documents concerning same') – 'discovery on discovery' – is not an appropriate topic of discovery and numerous courts have disallowed such discovery.") (citing cases).

Best regards,

/s/ Daniel Prince

Daniel Prince
of Paul Hastings LLP

cc:  Felicia A. Davis (feliciadavis@paulhastings.com); Craig J. Ackermann (cja@ackermanntilajef.com); and Brian Denlinger (bd@ackermanntilajef.com)



**G B D H**

**Goldstein, Borgen,
Dardarian & Ho**

Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan
Andrew P. Lee

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

July 20, 2023

<u>**Via E-Mail Only**</u>

Daniel Prince
Felicia A. Davis
PAUL HASTINGS LLP
515 S. Flower Street, 25th Floor
Los Angeles, CA 90071

danielprince@paulhastings.com
feliciadavis@paulhastings.com

> *Cahill, et al. v. Nike, Inc.*, Case No. 3:18-cv-01477-JR
> Plaintiffs' Request for Production No. 53

Dear Counsel,

Nike received Plaintiffs' RFP No. 53 on March 22, 2019. Most of the responsive discovery remains outstanding. Rule 26(e) "creates an ongoing duty to supplement or correct prior disclosures or discovery responses without the need for a request from another party." *Brown v. Wal-Mart Store, Inc.*, 2018 WL 2011935, at *2 (N.D. Cal. Apr. 27, 2018) (citation and internal quotations omitted).

RFP No. 53 requests:

For each plaintiff, all documents and communications related to all compensation from Nike that was received, considered, or proposed at any time. This request includes all documents and communications related to compensation received prior to Nike hiring them as an employee. This request also includes all documents and communications related to both: (a) any offer from Nike; and (b) any negotiation or request to negotiate starting salary or other employment-related terms. This request also includes also includes Personal Pay Statements. For each plaintiff, the time-period for this request is from when the plaintiff first started working at Nike to the present.

Nike, however, has not produced most of the documents and communications related to the setting of starting pay for each Plaintiff. It has not produced any communications related to the setting of starting pay for each Plaintiff.

Regarding annual salary increases, bonuses, and equity considerations for each Plaintiff, Nike has not produced any communications. Nor has it produced any documents related to considerations or determinations of these categories of compensation. Likewise, there are no communications or documents produced related to compensation considerations or determinations when each Plaintiff had a lateral move or a promotion.

155 Grand Avenue, Suite 900, Oakland, CA  94612       Tel 510.763.9800       Fax 510.835.1417       www.gbdhlegal.com

873884.3

Goldstein Decl. Ex. M, Page 4 of 15

*Cahill, et al. v. Nike, Inc.*                    -2-                    July 20, 2023

     Nike created reports for 2x pay that included each Plaintiff that were distributed to other employees for consideration or review.  Yet Nike has not produced any of these reports, communications, or documents concerning discussions, considerations, or determinations of any Plaintiff's compensation.

     According to Nike's response to RFP No. 53, it is not withholding any documents based on any of its objections because it does not state whether any responsive discovery is being withheld on the basis of any of its objections.  *See* FRCP 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection.").  Nor could its boilerplate objections to RFP No. 53 justify withholding any responsive discovery.  *See* FRCP 34(b)(2)(B) (For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons.").

     Please promptly produce this important discovery and please provide us a date certain by which Nike will complete its production of documents and communications responsive to RFP No. 53.

Sincerely,

Byron Goldstein

BRG/kbm

873884.3



Shareholders
Linda M. Dardarian
Laura L. Ho
James Kan
Andrew P. Lee

**Goldstein, Borgen, Dardarian & Ho**

Of Counsel
Barry Goldstein
David Borgen
Morris J. Baller

July 27, 2023

<u>**Via E-Mail Only**</u>

Daniel Prince                                        danielprince@paulhastings.com
Felicia A. Davis                                    feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 S. Flower Street, 25th Floor
Los Angeles, CA 90071

     *Cahill, et al. v. Nike, Inc.*, Case No. 3:18-cv-01477-JR
     Nike's failure to produce discovery responsive to RFP No. 4, RFP No. 8, and the Court's
     October 31, 2019 Order concerning policies, guidelines, trainings, descriptions, and
     forms that Nike used when setting starting pay from the pre-October 2017 period.

Dear Counsel,

     Nike does not dispute it has failed to produce any policies, guidelines, trainings, or forms that it used when setting starting pay before it made a "policy change" around October 2017. Although you cite seven documents in your July 17, 2023 letter, you do not claim any of those seven documents are policies, guidelines, trainings, descriptions, or forms that Nike used when setting starting pay from the pre-October 2017 period. Nor could you because none are.[1]

     Nike does not dispute it has failed to complete its production of discovery responsive to RFPs 4 and 8 concerning the pre-October 2017 period. Although Plaintiffs' July 11 letter asks about these two RFPs, Nike's July 17 does not even mention RFPs 4 and 8.

     Instead, Nike takes the position that it does not have to be transparent or produce discovery unless Plaintiffs have evidence that first proves the requested discovery exists. The requesting party, of course, is not required to prove the existence of each document and communication before the responding party is required to produce the discovery. Regardless, Plaintiffs have repeatedly identified discovery Nike has failed to produce, including in their December 20, 2019 meet and confer letter, Plaintiffs' submissions to the Court in support of their June 30, 2020 request to the Court for an Order compelling discovery Nike had failed to produce, and Plaintiffs' June 15, 2021 meet and confer letter.

     Unfortunately, Nike thus appears to decline engaging in a transparent and collaborative discovery process. Its claims of "work product doctrine and/or attorney-client privilege" do not justify this lack of transparency and collaboration because Nike's collection of responsive

---

[1] The seven documents Nike cited are: NIKE_00000264, NIKE_00000568, NIKE_00002070, NIKE_00002072, NIKE_00002321, NIKE_00019411, and NIKE_00023659

155 Grand Avenue, Suite 900, Oakland, CA  94612      Tel 510. 763. 9800      Fax 510. 835. 1417      www.gbdhlegal.com

873896.1

*Cahill, et al. v. Nike, Inc.*                    -2-                    July 27, 2023

discovery is about facts concerning the fulfillment of its discovery obligations.  *See e.g., Apple, Inc. v. Samsung Elecs. Co.*, 2013 WL 1942163, at *2-3 and n.10 (N.D. Cal. May 9, 2013) (ordering production of search terms and custodians because it "will aid in uncovering the sufficiency of Google's production and serves greater purposes of transparency in discovery").

Please provide the information requested in Plaintiffs' July 11 letter concerning what efforts and methods were undertaken to locate discovery responsive to RFP No. 4, RFP No. 8, and the Court's October 31, 2019 Order, as well as any limitations Nike imposed concerning time period, locations, custodians, or search terms.

We are requesting a meet and confer call to discuss these issues, please let us know when you have some availability.

Sincerely,

Byron Goldstein

BRG/kbm

873896.1

Goldstein Decl. Ex. M, Page 7 of 15



VIA E-MAIL                                                     98484.00003

July 31, 2023

Barry Goldstein (bgoldstein@gbdhlegal.com)
Byron Goldstein (brgoldstein@gbdhlegal.com)
James Kan (jkan@gbdhlegal.com)
Mengfei Sun (msun@gbdhlegal.com)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612

*Re:*    *Cahill et al. v. Nike, Inc.*, Case No. 3:18-cv-01477-JR
        Plaintiffs' Request for Production No. 53

Dear Counsel:

We write in response to Plaintiffs' July 20, 2023 letter regarding Nike's production of documents in response to Plaintiffs' RFP No. 53 (served on March 22, 2019).  There, Plaintiffs assert that "[m]ost of the responsive discovery remains outstanding" in response to this request.  This is incorrect.

Nike has produced substantial documents that are responsive to RFP No. 53 for each Plaintiff.  For example, Nike has produced the following categories of documents for one or more of the Plaintiffs:

- Job History Reports (*e.g.*, NIKE_00008720)
- IRS Form W-2s (*e.g.*, NIKE_00002353-56)
- Personal Pay Statements (*e.g.*, NIKE_00015838)
- Earnings Statements (*e.g.*, NIKE_00008697)
- Offer Letters (*e.g.* NIKE_00014653)
- Wage History Reports (*e.g.,* NIKE_00003085)
- Job Application Notes (*e.g.,* NIKE_00003087-88)
- Job Requisitions Offer Summaries (*e.g.*, NIKE_00023691-97)
- SAP Reports (*e.g.*, NIKE_00023818)
- Wage and Deduction Reports (*e.g.*, NIKE_00019241-42)
- Stock Grant Agreements (*e.g.*, NIKE_00014685-719)

Thus, contrary to Plaintiffs' assertions, Nike is not withholding documents responsive to this request.  Nike previously produced the documents in its possession that it located after a reasonable search.

In any event, we will work with Nike to perform a reasonable inquiry and diligent search for non-privileged documents created since February 2021 that are responsive to RFP No. 53.  To the extent any such documents exist, we will produce the same.

Paul Hastings LLP  |  515 South Flower Street  |  Twenty-Fifth Floor  |  Los Angeles, CA 90071
t: +1.213.683.6000  |  www.paulhastings.com

Goldstein Decl. Ex. M, Page 8 of 15



Sincerely,

**/s/ Daniel Prince**

Daniel Prince
of Paul Hastings LLP



VIA E-MAIL                                                                                                   98484.00003

August 2, 2023

Barry Goldstein (bgoldstein@gbdhlegal.com)
Byron Goldstein (brgoldstein@gbdhlegal.com)
James Kan (jkan@gbdhlegal.com)
Mengfei Sun (msun@gbdhlegal.com)
Goldstein, Borgen, Dardarian & Ho
155 Grand Avenue, Suite 900
Oakland, CA  94612

Re:   *Cahill et al. v. Nike, Inc.*, Case No. 3:18-cv-01477-JR

Dear Counsel:

We write in response to Plaintiffs' July 27, 2023 letter and to follow-up on our July 17, 2023 correspondence.

As an initial matter, we disagree with the numerous mischaracterizations contained in your July 27 letter, including with respect to Nike's document production, its compliance with the Court's October 31, 2019 order, or otherwise.  Nor do we believe the constant stream of hyperbolic statements to be helpful during this process.

In any event, Plaintiffs' position collapses on itself.  Your July 11 letter highlights the Court's October 31, 2019 order requiring, in pertinent part, policies or documents maintained during the relevant time periods "regarding hiring, firing, pay, promotions, and compensation systems[.]"  ECF No. 89.  Your same letter asserts that "Plaintiffs asked for this discovery in RFP Nos. 4 and 8."  July 11, 2023 Letter from B. Goldstein.  Nevertheless, while it disclaimed any obligation to do Plaintiffs' work or to perform an exhaustive review of its own production for this purpose, Nike performed a courtesy search to identify responsive documents.  Nike provided the Bates numbers for those documents on July 17, both in the text of paragraph 2 and in footnote 1.  As Nike explained on July 17, those documents were and are responsive to the Court's October 31, 2019 order—that means, by extension, they also are responsive to RFP Nos. 4 and 8.

We again underscore the fact that Nike has no obligation to run document searches for Plaintiffs or to create information to prove elements of Plaintiffs' case.  Nike has conducted a reasonable and diligent search for documents within its custody and control; it likewise has produced non-privileged, responsive documents.  Plaintiffs continue to refuse to accept responses that do not comport with their preconceived (and unfounded) theories in this matter.

Finally, as stated in our July 17 letter, Nike declines to provide "discovery on discovery" concerning its "methods" of identifying responsive documents in this case.  The request is improper and not supported by the case law or the facts.  Discovery in this case began around 2018, and Nike has produced tens of thousands of pages of documents before the extensive briefing on class certification in the District Court and the Ninth Circuit.  Where appropriate, Nike will supplement its production.  But Plaintiffs' insistence

Paul Hastings LLP  |  515 South Flower Street  |  Twenty-Fifth Floor  |  Los Angeles, CA 90071
t: +1.213.683.6000  |  www.paulhastings.com



on "discovery on discovery," especially at this late juncture, is unduly burdensome, time-consuming, and threatens to make the discovery process ad infinitum.

To the extent you would like to meet and confer, we propose Friday, August 4 (between 3pm-5pm PT), or we can find time next week.

Sincerely,

**/s/ Daniel Prince**

Daniel Prince
of Paul Hastings LLP

**Byron Goldstein**

| | |
|---|---|
| **From:** | Prince, Daniel <danielprince@paulhastings.com> |
| **Sent:** | Tuesday, August 8, 2023 5:40 PM |
| **To:** | Byron Goldstein; Davis, Felicia A.; Jackson, Lindsey C. |
| **Cc:** | James Kan; Mengfei Sun; Barry Goldstein |
| **Subject:** | RE: Cahill et al. v. Nike, Inc., Case No. 3:18-cv-01477-JR |

Byron:

I hope you're enjoying your time away from the office.  As I think we've stated before, we have produced to you what we believe exists -- and, as we have noted, we're currently working to supplement, where appropriate.

We are fine with discussing these issues further to avoid any miscues.  August 14 is not great for me, but we can aim for open windows on August 15 or 18 if you advise as to your availability.

Daniel

**From:** Byron Goldstein <brgoldstein@gbdhlegal.com>
**Sent:** Sunday, August 6, 2023 9:53 PM
**To:** Prince, Daniel <danielprince@paulhastings.com>; Davis, Felicia A. <feliciadavis@paulhastings.com>; Jackson, Lindsey C. <lindseyjackson@paulhastings.com>
**Cc:** James Kan <jkan@gbdhlegal.com>; Mengfei Sun <msun@gbdhlegal.com>; Barry Goldstein <bgoldstein@gbdhlegal.com>
**Subject:** [EXT] RE: Cahill et al. v. Nike, Inc., Case No. 3:18-cv-01477-JR

**--- External Email ---**

Daniel,

We are trying to get information to meet and confer about Nike's continued failure to produce discovery from the pre-October 2017 period that was used for setting of starting pay.

With respect to the October 31, 2019 Order, in your August 2, 2023 letter, you represent that Nike "conducted a reasonable and diligent search" for discovery from the "relevant time periods." For this Order, what did Nike use as the "relevant time period" for collecting and producing discovery concerning the setting of starting pay?

We have asked you several times whether you did the required searching and collecting of discovery potentially responsive to RFP No. 4 or RFP No. 8.  You have refused to clearly represent that you did.  Please let us know.  And, if so, are you representing that Nike has completed its production in response to RFP 4 and to RFP 8?  Please also let us know if you have withheld any discovery based on any of the objections in the responses to the first set of RFPs.

In your August 2, 2023 letter, you accuse us of "numerous mischaracterizations" but you neither state what we mischaracterize nor provide any support for this serious contention. If you do have support for this accusation, please let us know right away because we want to continue to maintain accuracy, we make effort to do so, and we have thus diligently reviewed all the discovery you produced.

Goldstein Decl. Ex. M, Page 12 of 15

Please let us know the answers to our questions. I look forward to speaking to you soon about the discovery issues we identified in our July letters. I am out of the country currently, but I can speak anytime on August 14. Do you have any time that day?

Thank you,
Byron

---

**From:** Vermeulen, Lisa A. <LisaVermeulen@paulhastings.com>
**Sent:** Wednesday, August 2, 2023 4:33 PM
**To:** Barry Goldstein <bgoldstein@gbdhlegal.com>; Byron Goldstein <brgoldstein@gbdhlegal.com>; James Kan <jkan@gbdhlegal.com>; Mengfei Sun <msun@gbdhlegal.com>
**Cc:** Prince, Daniel <danielprince@paulhastings.com>; Davis, Felicia A. <feliciadavis@paulhastings.com>; Jackson, Lindsey C. <lindseyjackson@paulhastings.com>
**Subject:** Cahill et al. v. Nike, Inc., Case No. 3:18-cv-01477-JR

Dear Counsel,

Please see attached correspondence from Daniel Prince in response to your July 27, 2023, letter.

Best Regards,
Lisa Vermeulen

---



**Lisa Vermeulen | Client Service Specialist**
Paul Hastings LLP | 515 South Flower Street, Twenty-Fifth Floor, Los Angeles, CA 90071
Direct: +1.213.683.5712 | Main: +1.213.683.6000 | Fax: +1.213.627.0705 |
lisavermeulen@paulhastings.com | www.paulhastings.com

*********************************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

*********************************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

Goldstein Decl. Ex. M, Page 13 of 15

**Byron Goldstein**

| | |
|---|---|
| **From:** | Prince, Daniel <danielprince@paulhastings.com> |
| **Sent:** | Tuesday, August 8, 2023 5:42 PM |
| **To:** | Byron Goldstein; Jackson, Lindsey C. |
| **Cc:** | cja@ackermanntilajef.com; Brian Denlinger; Davis, Felicia A. |
| **Subject:** | RE: Nike/Cahill - Correspondence re: Plaintiffs' RFP No. 53 |

Byron:

I just responded to your other email, but the response here is the same – we have produced responsive documents and are currently working to supplement, where appropriate.

Daniel

**From:** Byron Goldstein <brgoldstein@gbdhlegal.com>
**Sent:** Sunday, August 6, 2023 10:16 PM
**To:** Jackson, Lindsey C. <lindseyjackson@paulhastings.com>
**Cc:** cja@ackermanntilajef.com; Brian Denlinger <bd@ackermanntilajef.com>; Prince, Daniel <danielprince@paulhastings.com>; Davis, Felicia A. <feliciadavis@paulhastings.com>
**Subject:** [EXT] Re: Nike/Cahill - Correspondence re: Plaintiffs' RFP No. 53

**--- External Email ---**

Daniel, you state Nike has made sufficient productions concerning how each plaintiff's starting pay was set because you produced such documents as wage statements and W2s. These documents, of course, and the others you list, just show what each plaintiff was paid. But Nike has not produced documents and comm showing who was involved in setting each plaintiff's starting pay and how it was set. And you state the only discovery you will look for are "documents created since February 2021."

Are you refusing to produce discovery showing who was involved in setting each plaintiff's starting pay and how it was set? If so, what is your basis for doing so?

Thank you,
Byron

> On Jul 31, 2023, at 5:45 PM, Jackson, Lindsey C. <lindseyjackson@paulhastings.com> wrote:
>
> Counsel,
>
> Attached please find meet and confer correspondence in response to your July 20, 2023 letter.
>
> Thanks,
>
> Lindsey

Goldstein Decl. Ex. M, Page 14 of 15

\<image001.png\>   **Lindsey Cecellia Jackson (she/her/hers)** | **Associate, Employment Law**
Paul Hastings LLP | 515 South Flower Street, Twenty-Fifth Floor, Los Angeles, C
Direct: +1.213.683.6103 | Main: +1.213.683.6000 | Fax: +1.213.996.3103 |
lindseyjackson@paulhastings.com | www.paulhastings.com

*********************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received
this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.
If you reply to this message, Paul Hastings may collect personal information including your name, business name
and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy
and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

<Nike_Cahill - 2023.07.31 - Letter in Response to Plaintiffs_ Letter re RFP No. 53 (002)(117229749_1).PDF>

*********************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received
this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.
If you reply to this message, Paul Hastings may collect personal information including your name, business name
and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy
and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

Goldstein Decl. Ex. M, Page 15 of 15