**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Kathryn P. Roberts, OSB #064854**
KathrynRoberts@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085 ǀ Fax: (503) 323-9105

**Laura L. Ho** (admitted *pro hac vice*)
lho@gbdhlegal.com
**Barry Goldstein, Of Counsel** (admitted *pro hac vice*)
bgoldstein@gbdhlegal.com
**James Kan** (admitted *pro hac vice*)
jkan@gbdhlegal.com
**Byron Goldstein** (admitted *pro hac vice*)
brgoldstein@gbdhlegal.com
**Katharine L. Fisher** (admitted *pro hac vice*)
kfisher@gbdhlegal.com
**Mengfei Sun** (admitted *pro hac vice*)
msun@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 763-9800 ǀ Fax: (510) 835-1417

Counsel for Plaintiffs, Opt-in Plaintiffs and Putative Class

[Additional Counsel of Record listed on the Signature page]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, et al., individually and on behalf of others similarly situated,<br><br>                                              Plaintiffs,<br><br>vs.<br><br>NIKE, INC., an Oregon Corporation,<br>                                              Defendant. | Case No. 3:18-cv-01477-JR<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>**Oral Argument Requested** |

I.   **INTRODUCTION**

The Court should grant Plaintiffs' motion for three reasons: (1) the responsive discovery is relevant to a central allegation – Nike's practice of using prior pay when setting starting pay until October 2017 – and, as Nike concedes, it waived its objections; (2) Nike's repeated material misrepresentations regarding the existence of discovery; and (3) Nike has not made meaningful efforts to collect, produce, or preserve evidence. Indeed, Nike casually states critical evidence may have been "lost to the sands of time." *See* Def. Nike, Inc.'s Opp'n to Pls.' Mot. to Compel Produc. of Doc. ("Opp'n"), ECF No. 354 at 12.[1]

II.   **ARGUMENT**

A.   **Nike does not dispute that the requested discovery is relevant and that it waived its objections to Request for Production ("RFP") Nos. 4 and 8.**

Nike does not dispute that an individual disparate impact claim requires the same *prima facie* showing as a class disparate impact claim: an employment practice with a disparate impact on women as a group. *See* Mot., ECF No. 349 at 5-6; *see also generally* Opp'n (Nike failing to cite any contrary authority). Nor does Nike dispute that Title VII expressly makes discovery since 2010 relevant. *See* Mot. at 6; *see also generally* Opp'n (Nike failing to cite any contrary authority). And Nike concedes it waived its proportionality objections to RFP Nos. 4 and 8. *See* Mot. at 12; *see also generally* Opp'n (Nike failing to make any contrary argument).

Because Nike has refused to produce relevant discovery concerning a central allegation and it waived its objections, the Court should grant Plaintiffs' Motion. Nike argues this relevance and its waiver do not matter because the class certification's findings are final. *See* Opp'n at 5, 14. The Ninth Circuit and Rule 23, however, make clear these findings do not bind the factfinder. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 n.10 (9th Cir. 2022), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, 143 S. Ct. 424 (2022)) ("district court's findings at the certification stage do not bind the

---

[1] Citations to Mot. and Opp'n are to ECF page numbers.

**PLAINTIFFS' REPLY IN SUPP. OF MOT. TO COMPEL PRODUCTION OF DOCUMENTS**
**PAGE 1**

fact-finder on the merits.") (citation and internal quotation omitted); *see also e.g.*, Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").[2]

**B.      Nike clearly failed to complete its production because it did not produce any policies, guidelines, trainings, descriptions, or forms it used when determining the amount of starting pay before October 2017.**

Nike concedes it failed to produce any policies, guidelines, trainings, descriptions, or forms it used when determining the amount of starting pay before October 2017. *See* Mot. at 9; *see also generally* Opp'n (Nike failing to identify any such discovery produced or otherwise dispute this failure). Nike further concedes it failed to produce numerous specific examples of unproduced documents and communications related to how Nike set starting pay prior to October 2017 that Plaintiffs identified in their Motion. *See* Mot. at 8-9; *see also generally* Opp'n (Nike failing to show that any of these documents were produced).

**C.      Nike withheld all communications and documents related to pre-October 2017 versions of its Offer Intake Form, and it misrepresents the existence of prior versions.**

Nike concedes its Offer Intake Form is a standard form that collected and used applicants' prior pay to "construct offers" for starting pay in jobs below Vice President. *See* Mot. at 7-8; *see also generally* Opp'n. It further concedes it did not produce any communications or documents related to pre-October 2017 versions of its Offer Intake Form. *See* Mot. at 8; *see also generally* Opp'n (Nike failing to show that any of these communications or documents were produced). For example, Nike concedes it has withheld all pre-October 2017

---

[2] Nike's argument that the findings at class certification are final further "runs the risk of supplanting the jury as the finder of fact," which is "particularly troubling because the procedural protections available … under … the Rule 56 requirement to give the nonmoving party the benefit of conflicting evidence—are not available under Rule 23." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 823 (7th Cir. 2012).

**PLAINTIFFS' REPLY IN SUPP. OF MOT. TO COMPEL PRODUCTION OF DOCUMENTS**
**PAGE 2**

communications and documents related to the creation, modification, distribution, or use of its Offer Intake Form.

This discovery, as well as prior versions of the Offer Intake Form, is critical for showing that Nike had a practice of using prior pay, especially because Nike contends its standardized Offer Intake Form is not probative of whether it had a practice of using prior pay, *see* Opp'n at 8 (asserting the Offer Intake Form is "not a written policy regarding the collection or use of prior compensation ….").[3]

Nike's Opposition also asserts: "Plaintiffs inexplicably claim that other versions of the pre-October 2017 Offer Intake Form must exist (they do not) …." Opp'n at 8. But hidden information within Nike's October 2017 document containing versions of its Offer Intake Form (ECF No. 350, Ex. G at 116-122), shows Nike had more prior versions because it states the pre-October 2017 version was *revised* on March 2, 2017.[4] *See* Declaration of Byron Goldstein ("Goldstein Decl."), ¶ 3, Ex. 1.

D.  **The new misrepresentations in Nike's Opposition further undermine the reliability of Nike's representation that it completed pre-October 2017 discovery.**

   1.  **Nike's brazen new misrepresentation about the Starfish Survey.**

In September 2020, Nike told this Court that Plaintiffs made an "egregious" and "misleading statement[]" because they stated, "Nike produced 30 entries from the Starfish

---

[3] When Nike states it produced two versions of its Offer Intake Form (*See* Opp'n at 8) it means different tabs within the one Excel document (ECF No. 350, Ex. G at 116-122) attached to an October 2017 email to all Talent Acquisition employees, *see* Mot. at 8 n.7. Since Nike failed to produce the metadata required by the ESI Order for this October 2017 document, including dates of creation and modification, and failed to produce any pre-October 2017 documents containing an Offer Intake Form it was using at that time, it was very difficult to identify the historical pre-October 2017 version within the October 2017 document. Goldstein Decl. ¶ 2 (October 2017 Excel document with the Offer Intake Form lacked metadata showing its dates of creation and modification, that it was attached to an email, its author, custodian, and where it was stored).

[4] The information showing the historical version was revised in March 2017 is found by clicking on "Page Layout" within Excel, then clicking on the arrow for the "Page Setup" tab, and then choosing "Header/Footer." Goldstein Decl. ¶ 3.

Survey that contain redactions of all the names of top managers who are alleged to have discriminated or condoned discrimination." ECF No. 114 at 18. Nike's subsequent court-ordered production of unredacted versions then proved Nike had redacted the names of least 22 Nike executives. *See* ECF No. 163 ¶ 16.

Now, Nike claims, for the first time and without any evidence, that "Plaintiffs . . . incorrectly claimed [the names Nike redacted] were 'executives.'" Opp'n at 9. But Nike's documents and testimony clearly prove Nike considered these employees executives, each of whom was a Vice President, Executive Vice President, or President. *See* Appendix A. Nike's Vice Presidents and more senior positions are in Job Levels E7 and higher, which Nike repeatedly states are executives. *See e.g.,* ECF No. 287-4 at 22 (Matheson Dep. 181:10-13) (Nike's Chief Human Resources Officer testifying, "Vice presidents are E7 to E1."); ECF No. 283-2 at 15 ("Executives – E7 level and above").[5] Moreover, several are among a small number of Nike's most senior Nike executives, including ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. *See* Appendix A.

### 2. Nike's excuse for misrepresenting the existence of organizational charts is nonsensical.

After the Court compelled Nike to produce existing organizational charts, Nike produced, as it concedes, thousands of organizational charts that existed as of the date Nike told the Court organizational charts "do not exist." *See* Mot. at 7 (citing ECF No. 350, ¶ 7) (providing evidence showing these were existing organizational charts) and *generally* Opp'n.

Yet Nike maintains its "do not exist" representation about organizational charts was accurate because its declarant added "in the ordinary course of business." Opp'n at 10. But Nike's filing with this "do not exist" representation unequivocally and repeatedly told the Court it had no existing organizational charts: "*manual creation of organization charts is the only*

---

[5] *See also e.g.,* ECF No. 281-2 at 26 (showing Vice Presidents are in levels "E7+"); ECF No. 282-7 at 6 ("Executive Bands" are E7 and above Job Levels); ECF No. 285-8 at 1 ("Executive Bands" are those positions above Senior Director, and "Executives: E7 & Above").

**PLAINTIFFS' REPLY IN SUPP. OF MOT. TO COMPEL PRODUCTION OF DOCUMENTS**
**PAGE 4**

*possible way to produce 'organizational charts' ….*" ECF No. 291-5 at 76 (emphasis added); *see also id.* (stating production of organizational charts "*would require Nike to create documents ….*") (bold omitted and emphasis added).

Moreover, there is no legitimate reason why any party would rely on "in the ordinary course of business" to justify its representation that discovery "does not exist." It is a meaningless phrase without support in the law, Plaintiffs' discovery requests, or the August 2020 Order. Rather, the standard is "not reasonably accessible." *See* Fed. R. Civ. P. 26(b)(2)(B).

### 3. Nike's heavy reliance on the number of pages it produced is meaningless and does not justify its discovery failures.

After Nike repeatedly represented it completed its production, Nike produced highly relevant documents and communications. *See* Mot. at 8 n.7, 9 n.8.[6] Nike cannot dispute this, so, instead, it seeks to justify this failure by generally claiming that these are three "out of nearly 12,900" documents. Opp'n at 9. But there is no substance to Nike's argument for three reasons.

First, of all the discovery Nike did produce, there is no discovery that is more relevant to how Nike set starting pay before October 2017 than these three documents and communications. Second, these documents were easily located because, as Nike concedes, each was: (a) centrally-created, (b) widely distributed amongst Nike Human Resources employees, (c) concerned Nike's starting pay practices, and (d) clearly responsive to the October 2019 Order, RFP No. 4, and RFP No. 8. *See* Mot. at 7; *see generally* Opp'n.

Third, just counting pages produced, regardless of its responsiveness or completeness, is not probative of whether a party has met its discovery obligations. Rather, the "basic philosophy underlying discovery is that claims should be litigated based on a complete record of the

---

[6] This discovery includes: the October 2017 Excel document with a tab showing Nike had a pre-October 2017 version to collect and use prior pay; and the October 2017 email to all Talent Acquisition employees telling them to use the "updated" Offer Intake Form with Total Rewards to "construct offers." *See* ECF No. 350 ¶¶ 4, 8, Exs. C, G at 108, 116-122. It also includes Nike's September 2017 communication to all its HRBPs announcing its starting pay "policy change." *See id.* ¶ 13, Ex. L at 137-38.

**PLAINTIFFS' REPLY IN SUPP. OF MOT. TO COMPEL PRODUCTION OF DOCUMENTS**
**PAGE 5**

underlying facts." *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 18-MD-02843-VC, 2023 WL 1871107, at *3 (N.D. Cal. Feb. 9, 2023) (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). This is discovery's basic philosophy because it "narrows the issues, eliminates the possibility of unfair surprise, and—most importantly—ensures that trials 'achieve substantial justice.'" *Id.* (citation omitted).

Even if the number of pages produced could indicate that a party met its discovery obligations, Nike's own designated ESI liaison, Tom Barnett (*see* ECF No. 72 at 2), submitted sworn testimony in another case debunking Nike's argument. In an affidavit stating he is "an expert in electronic discovery," Barnett testified the production of 60 million to 120 million pages of discovery "is not unduly large or burdensome in comparison to similar complex civil litigations."[7] Similarly, in *HM Elecs., Inc. v. R.F. Techs., Inc.*, No. 12CV2884-BAS-MDD, 2015 WL 4714908, at *22 (S.D. Cal. Aug. 7, 2015), *vacated in part on other grounds*, 171 F. Supp. 3d 1020 (S.D. Cal. 2016), the court found the party responding to discovery was "not relieved … of fault" just because it "produced over 1 million pages," and finding argument based on the number of pages produced an "exaltation of form over substance."

    **4.**    <u>**To prevent discovery, Nike's Opposition misrepresents the record.**</u>

Nike argues it can withhold discovery because, it claims, some deposition testimony and some declarations prove it had no policy or practice of using prior pay. *See* Opp'n at 8. But this is baseless for two reasons. First, the party requesting discovery does not have to present uncontradicted evidence or prove their claim before receiving discovery. Second, as described below, the testimony and declarations Nike relies on do not support Nike's argument.

    **a.**    <u>**Nike mischaracterizes its witnesses' testimony and declarations.**</u>

Nike states Walker and Thomas "testified that NIKE did *not* have any such policy." Opp'n at 5 (emphasis in original). But Thomas, in the testimony Nike submitted, testified: "we

---

[7] *See Chevron Corp. v. Donzinger, et al.*, 11-Civ-0691, (S.D.N.Y. Jan. 7, 2013), ECF No. 716.

**PLAINTIFFS' REPLY IN SUPP. OF MOT. TO COMPEL PRODUCTION OF DOCUMENTS**
**PAGE 6**

would ask [sic] compensation history of a candidate," and this was "a Nike guideline." ECF No. 355 at 29-30 (Thomas Dep. 215:12-13, 215:24-216:1). Thomas also testified, for example, Nike made a "policy change" when it directed all Talent Acquisition and other employees to "no longer … ask candidates or their employers questions about their compensation history." ECF No. 303-1 (Thomas Dep. 214:1-215:4).

Walker's testimony shows he confirmed Nike had pre-2018 starting pay guidelines but otherwise lacked knowledge about how Nike set starting pay before October 2017: he did not know the substance of the pre-2018 guidelines, who they were communicated to, or who created them. ECF No. 287-11 at 30-31 (Walker Dep. 349:21-350:11). This is unsurprising because, before November 2017, Walker worked only on executive compensation, not compensation for employees in Bands L – S. Goldstein Decl. ¶ 4, Ex. 2 (Walker Dep. 9:15-24).[8]

Lastly, Nike argues it has proven there is no policy because some of its declarants "stat[e] they were not asked about starting salary …." Opp'n at 12 (citing ECF No. 187-1 at 39, 139, 77, 203) (although Nike cites four pages from its declarations, one of the cites, page 139, does not contain assertions from any declarant). But even these three cherry-picked declarations created in secret do not support Nike's argument. Instead, Nike knew the starting pay for at least two of these declarants when it set their starting pay because they were Nike contractors when hired as employees (ECF No. 187-1 at 39, 76-77) and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see* ECF No. 361 at 11 (▮▮▮▮▮▮▮▮▮▮).[9] Nike's other citation concerns 2019 at the earliest because this declarant is referring to what occurred while in she was in a job, Director of University Relations, that she started in 2019. *See* ECF No. 187-1 at 202-03.

---

[8] Further, Nike repeatedly stated Walker was not able to speak about how Nike set starting pay. *See e.g.,* Goldstein Decl. ¶ 4, Ex. 2 (Walker Dep. 344:8-11) (objecting to question about starting pay because "its outside the scope of the [sic] topic on which Mr. Walker is designated. As we discussed previously, he's not designated as Nike's expert to discuss starting salary.").

[9] *See also* ECF No. 283-4 at 12 (NIKE_00024576) (Nike reference document showing Nike set pay ranges for its FLEX positions, which means contractors).

**PLAINTIFFS' REPLY IN SUPP. OF MOT. TO COMPEL PRODUCTION OF DOCUMENTS**
**PAGE 7**

### b. Nike misrepresents the testimony of two Plaintiffs.

Although Nike claims Elizabeth's and Johnston's testimony "confirmed they were never asked about their prior salaries" (Opp'n at 8), there is no such testimony from either Plaintiff, *see* ECF No. 355 at 36-61. Rather, Nike knew Elizabeth's and Johnston's prior pay when it set their starting pay. Elizabeth was a Nike contractor when Nike hired her as an employee. ECF No. 286-8 at 15 (Elizabeth Dep. 103:19-25). Because ███████████████████████, Nike knew Elizabeth's prior pay. *See* ECF No. 361 at 11 (███████████).[10] For Johnston, Nike sought Johnston's prior pay through its background check. ECF No. 303-1 at 3-4 (Nike document showing Johnston wrote, on July 18, 2012, "Hi, I applied for a new position [at Nike] and am filling out the background check form through hire right [Nike's background check vendor]. I need to know my ending base hourly amount for my aquatics position.").

### c. Recent deposition testimony from a knowledgeable witness further shows Nike had a practice of using prior pay.

A knowledgeable long-time former Human Resources Business Partner ("HRBP") Senior Director at Nike's World Headquarters, who worked in numerous parts of Nike's business and was involved in compensation for employees in Bands L-S, confirmed, at her deposition, that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

### E. An Order compelling Nike to provide discovery about the existence of pre-October 2017 discovery and its related discovery efforts is necessary.

#### 1. Nike's generalized description of its discovery efforts undermines itself.

Nike's description of how it sought to locate, collect, and produce discovery does not identify any locations from which it searched for or collected discovery potentially responsive to RFP No. 4 or RFP No. 8 for the pre-October 2017 period. *See* ECF No. 355, ¶¶ 3-8. For

---

[10] *See also* n.9, *supra.*

**PLAINTIFFS' REPLY IN SUPP. OF MOT. TO COMPEL PRODUCTION OF DOCUMENTS**
**PAGE 8**

example, Nike's silence suggests it failed to collect communications and documents from key members of or shared folders used by its Total Rewards, Talent Acquisition, and HRBP teams.

Instead, Nike just "worked with" three custodians. This is, on its face, proof of Nike's inadequate approach to locating, collecting, and producing responsive discovery. *See e.g., Strategic Partners, Inc. v. FIGS, Inc.*, No. CV 19-2286-GW (KSX), 2020 WL 2527056, at *6-7 (C.D. Cal. Feb. 6, 2020) (finding a party "impermissibly truncated the scope of its search for responsive information" when it limited its search to five custodians even though the custodians were the CEO and other top executives).[11]  Moreover, Nike provides no basis for believing that any of these custodians were sufficiently knowledgeable about Nike's pre-October 2017 starting pay practices or potentially relevant ESI. *See* ECF No. 355, ¶¶ 5-6. Indeed, Walker, whose testimony shows he lacked knowledge of how Nike set starting pay prior to 2018 (*see* Sec. II.D.4.a, *supra*), was one of these three custodians, *see* ECF No. 355, ¶ 6. Nor does Nike even state that any of these custodians were provided RFP Nos. 4 or 8. *See id.*, ¶¶ 5-6.

Rather, Nike appears to admit it did not sufficiently search for or preserve potentially relevant discovery: "To the extent such documents ever existed, a logical deduction is that the old documents may have simply been lost to the sands of time," Opp'n at 12.

### 2. How Nike carried out its discovery obligations for pre-October 2017 discovery is important.

Nike concedes it did not provide Plaintiffs with the information that Rule 34 and the ESI Order require. *See* Mot. at 9-10; *see also generally* Opp'n (Nike failing to provide any evidence showing transparency or otherwise disputing this failure). It is widely acknowledged that the following information about potentially relevant ESI can promote effective and efficient discovery: (i) where it is located, (ii) key custodians and who is knowledgeable about ESI, (iii) the methods used to identify it, (iv) relevant retention policies, and (v) whether any has been

---

[11] Instead, "at a minimum, a reasonable procedure [is] to distribute discovery requests to *all* employees and agents of the party *potentially possessing* responsive information." *Id.* at *6 (emphasis in original) (citations omitted and cleaned up).

**PLAINTIFFS' REPLY IN SUPP. OF MOT. TO COMPEL PRODUCTION OF DOCUMENTS**
**PAGE 9**

deleted. *See e.g.,* Federal Judicial Center, *Managing Discovery of Electronic Information* (3d Ed.), at 11-12, 14-15; Mot. at 10-11 (collecting cases).[12]

### III. CONCLUSION

Plaintiffs respectfully request the Court grant their Motion for the requested relief. *See* Mot. at 12.

Dated:  October 16, 2023

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

*s/ Byron Goldstein*

Laura L. Ho (admitted *pro hac vice*)
Barry Goldstein, Of Counsel (admitted *pro hac vice*)
James Kan (admitted *pro hac vice*)
Byron Goldstein (admitted *pro hac vice*)
Katharine L. Fisher (admitted *pro hac vice*)
Mengfei Sun (admitted *pro hac vice*)
MARKOWITZ HERBOLD PC
Laura Salerno Owens, OSB #076230
David B. Markowitz, OSB #742046
Harry B. Wilson, OSB #077214
Kathryn P. Roberts, OSB #064854
ACKERMANN & TILAJEF PC
Craig Ackerman (admitted *pro hac vice*)
cja@ackermanntilajef.com
1180 S Beverly Drive, Suite 610
Los Angeles, CA 90035
Tel:  (310) 277-0614
Fax:  (310) 277-0635

---

[12] Nike also generally asserts that "[n]o case law stands for the proposition that a defendant must waive privilege and work product protections to [provide the information Plaintiffs request]." Opp'n at 6.  But numerous courts have held that information about how discovery was located, collected, and produced is not privileged or work product.  *See e.g., FormFactor, Inc v. Micro-Probe, Inc.*, No. C-10-03095 PJH (JCS), 2012 WL 1575093, at *7 (N.D. Cal. May 3, 2012) ("disclosure of search terms … is not subject to any work product protection because it goes to the underlying facts of what documents are responsive ….") (collecting cases).

INDIA LIN BODIEN LAW
India Lin Bodien (admitted *pro hac vice*)
india@indialinbodienlaw.com
2522 North Proctor Street, #387
Tacoma, WA 98406-5338
Tel: (253) 503-1672
Fax: (253) 276-0081

Of Attorneys for Plaintiffs and Opt-In Plaintiffs

APPENDIX A

The below table lists the "at least 22 Nike executives listed in the Survey who Nike had previously redacted." *See* ECF No. 163 at 9-10.  As shown in the below table, each was a Vice President or at a more senior level.

|     | **Name** | **Title** | **Citation (all exhibits attached to Goldstein Declaration)** |
| --- | --- | --- | --- |
| 1.  | ███████████ | ███████████ | Ex. 7 (NIKE_00046439) |
| 2.  | ███████ | Executive Vice President | Ex. 9 (NIKE_00046625) |
| 3.  | ████████ | Vice President | Ex. 7 |
| 4.  | █████████ | Vice President | Ex. 5 (NIKE_00045443 at -45452) |
| 5.  | ███████ | Vice President | Ex. 12 (NIKE_00052103 at -52124) |
| 6.  | ████████████ | Vice President | Ex. 6 (NIKE_00046432) |
| 7.  | █████████████████ | | Ex. 10 (NIKE_00046860) |
| 8.  | ██████ | Executive Vice President | Ex. 9 |
| 9.  | ████████ | Vice President | Ex. 9 |
| 10. | ████████████ | Vice President | Ex. 12 at NIKE_00052114 |
| 11. | ████ | Vice President | Ex. 12 at NIKE_00052116 |
| 12. | ███████ | Vice President | Ex. 12 at NIKE_00052122 |
| 13. | ██████ | Vice President | Ex. 10 |
| 14. | ███████████████ | Vice President | Ex. 10 |
| 15. | ████████ | Vice President | Ex. 3 (NIKE_00035912) |
| 16. | █████████ | Vice President | Ex. 12 at NIKE_00052108 |
| 17. | ███████ | Vice President | Ex. 11 (NIKE_00051726) |
| 18. | █████ | Vice President | Ex. 12 at NIKE_00052106 |
| 19. | ███████ | Vice President | Ex. 8 (NIKE_00046443) |
| 20. | ██████ | Vice President | Ex. 10 |
| 21. | ██████ | Vice President | Ex. 4 (NIKE_00036609) |
| 22. | ██████████ | Vice President | Ex. 3 |