**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Kathryn P. Roberts, OSB #064854**
KathrynRoberts@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085 ∣ Fax: (503) 323-9105

**Laura L. Ho** (admitted *pro hac vice*)
lho@gbdhlegal.com
**Barry Goldstein, Of Counsel** (admitted *pro hac vice*)
bgoldstein@gbdhlegal.com
**James Kan** (admitted *pro hac vice*)
jkan@gbdhlegal.com
**Byron Goldstein** (admitted *pro hac vice*)
brgoldstein@gbdhlegal.com
**Katharine L. Fisher** (admitted *pro hac vice*)
kfisher@gbdhlegal.com
**Mengfei Sun** (admitted *pro hac vice*)
msun@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 763-9800 ∣ Fax: (510) 835-1417

Counsel for Plaintiffs and Opt-in Plaintiffs

[Additional Counsel of Record listed on the Signature page]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, SARA JOHNSTON, LINDSAY ELIZABETH, HEATHER HENDER,<br><br>Plaintiffs,<br><br>vs.<br><br>NIKE, INC., an Oregon Corporation,<br>Defendant. | Case No. 3:18-cv-01477-JR<br><br>**PLAINTIFFS' RULE 72(a)-(b) OBJECTIONS TO ORDER (ECF NO. 386)**<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' RULE 72(A)-(B) OBJECTIONS TO ORDER (ECF NO. 386)**

889541.10

## I. INTRODUCTION

The Magistrate Judge's Order denying Plaintiffs' Motion to Compel Discovery precludes Plaintiffs from access to discovery in Nike's sole possession that is critical to an element of their disparate impact claims – the "uses a particular employment practice" element.[1]

Plaintiffs allege, until October 2017, Nike had a practice of using a new hire's prior pay when setting their starting salary. To obtain discovery concerning this practice, Plaintiffs served the two Requests for Production ("RFP") (RFP Nos. 4 and 8) that are the subject of their Motion, seeking discovery showing how Nike set starting salary before October 2017.

Nike, however, has not only failed to complete its production of discovery responsive to these RFPs but also failed to produce any policies, guidelines, trainings, descriptions, or forms it used when determining the amount of starting pay before October 2017. And Nike waived its burden, proportionately, and accessibility objections to RFP Nos. 4 and 8.[2]

Yet, and despite the clear direction from the Supreme Court that "liberal civil discovery rules give plaintiffs broad access to employers' records in an effort to document their [disparate impact] claims,"[3] the Order denies Plaintiffs this access. The Order denied access because it finds Plaintiffs did not first prove their claim, it misunderstands disparate impact's elements, and it mischaracterizes the RFPs as extremely narrow. These errors caused the Order to disregard or ignore the: (a) substantial evidence showing Nike failed to produce highly relevant, responsive discovery; and (b) proof from subsequent court-ordered productions of Nike's repeated misrepresentations to the Court about the existence of discovery when resisting disclosure.

---

[1] 42 U.S.C.A. § 2000e-2 (k)(1)(A)(i).

The Ninth Circuit has repeatedly recognized that an individual disparate impact claim has the same prima facie burden as a class disparate impact claim: the use of an employment practice has a disproportionately adverse impact on women as a group. *See* Sec. III(C), *infra*.

[2] *See* Pls.' Mot. Compel ("Mot.") 11, ECF No. 349; Pls.' Reply in Supp. Mot. to Compel ("Reply") 1, ECF No. 366.

[3] *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1074.

**PLAINTIFFS' RULE 72(A)-(B) OBJECTIONS TO ORDER (ECF NO. 386)**
**PAGE 2**

## II.   OBJECTIONS

Plaintiffs object, pursuant to Federal Rules of Civil Procedure Rule 72(a) and (b)(2), to the Magistrate Judge's denial of their Motion to Compel.

1. The Order denied discovery because it determined the "evidence … failed to show a company-wide policy." But this puts the cart before the horse because the requesting party is not required to prove their claim before discovery is permitted.

2. The Order misunderstands the elements of disparate impact and relies on an extremely narrow mischaracterization of Plaintiffs' two RFPs. The Order assumes Plaintiffs must rely on direct evidence for their disparate impact claim, but Title VII and the Supreme Court make clear that circumstantial evidence is sufficient. The Order mischaracterizes Plaintiffs' two RFPs because, contrary to the Order, these RFPs are not limited to just a document explicitly stating use of prior pay is Nike's company-wide policy. Rather, they seek direct and circumstantial evidence of how Nike set starting pay before October 2017. As a result of its legal errors, the Order disregards or ignores the: (a) substantial evidence showing Nike in fact failed to produce highly relevant, responsive discovery; and (b) proof, obtained through subsequent court-ordered productions, of Nike's repeated misrepresentations to the Court about the existence of discovery when resisting disclosure.

3. The Order's one sentence conclusory denial of Plaintiffs' request for Nike's retention policies and how Nike located responsive discovery to just two RFPs disregards the standards for discovery and a court order. It further condones Nike's repeated misrepresentations to the Court about the existence of discovery, its refusal to produce highly relevant, responsive discovery, and Nike's suggestions that it is failing to preserve highly relevant discovery.

## III.   ARGUMENT

### A.   Standard of Review

Under Rule 72(a), the Order is contrary to law and clearly erroneous because it is based on a misunderstanding of disparate impact claims and the discovery rules. *See e.g., Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 944 (9th Cir. 2014) (finding clear error where "findings predicated on a misunderstanding of the governing rules of law."). Because the Magistrate Judge denied discovery based on a merits determination, there should be a de novo review under Rule 72(b). *See Kiep v. Turner*, 80 B.R. 521, 523-24 (D. Haw. 1987) ("if a motion involves a determination of the merits of the case … or it is critical in shaping the nature of the litigation, courts will treat it as dispositive.") (citation omitted).

B. **In Denying Discovery Because the "Evidence … Failed to Show a Company-Wide Policy" (Order at 5), the Order Makes Two Legal Errors.**

First, the Order failed to apply the standard under Rule 26 for a discovery motion because it required Plaintiffs to first prove the merits of their claim. Instead, like another court recently did, the Order should have rejected Nike's merits-based argument since "asking the Court to resolve a discovery dispute by considering the merits puts the cart before the horse." *Cruz v. Nike Retail Servs., Inc.*, No. 23-CV-874-L-KSC, 2023 WL 6967410, at *4 (S.D. Cal. Oct. 20, 2023). Second, the Order treated class certification findings as determinative of the merits. *See* Order 5-6, Nov. 22, 2023 ECF No. 386 ("Order"). The Ninth Circuit is clear, however, that class certification findings are non-binding. *See e.g., Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 n.10 (9th Cir. 2022) (citations omitted) ("district court's findings at the certification stage do not bind the fact-finder on the merits.").[4]

C. **The Order Misunderstands the Elements of a Disparate Impact Claim.**

The Order assumes that a disparate impact claim requires plaintiffs to prove the employer had "*a company-wide policy*." Order at 5 (emphasis added). But Title VII just requires plaintiff to show that an employer "*uses a particular employment practice* …." *Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 212 (2010) (quoting Title VII) (emphasis added).[5]

Individual disparate impact claims, like class disparate impact claims, require plaintiffs to show this practice has a disproportionately adverse impact on women as a group. *See Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1115 & n. 4 (9th Cir. 2014) (both class and individual disparate impact claims require showing a "group-based disparity" in the "aggregate"). In *Freyd v. University of Oregon*, 990 F.3d 1211, 1216, 1224-1226 (9th Cir.

---

[4] In basing its decision on the class certification findings, the Order supplanted the "finder of fact," which is "particularly troubling because the procedural protections … under … Rule 56 … give the nonmoving party the benefit of conflicting evidence—are not available under Rule 23." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 823 (7th Cir. 2012).

[5] *See also e.g., Davis v. District of Columbia*, 925 F.3d 1240, 1248 (D.C. Cir. 2019) (disparate impact challenges "practices, procedures, or tests") (citing *Griggs v. Duke Power Co.*, 401 U.S. 424, 430 (1971)).

2021), for example, the Ninth Circuit reversed summary judgment for the employer in an individual disparate impact action because evidence of the following was sufficient for plaintiff's prima facie burden: (a) the challenged practice occurred "less often" for women and it was "less likely" to increase women's pay as much as it increased men's pay; and (b) women earned an average of $15,000 less than men.

Here, the Order severely prejudices Plaintiffs from meeting this burden because it precludes them from access to pre-October 2017 discovery concerning Nike's practices for setting starting pay. The Order is also contrary to Title VII because it assumes direct evidence is necessary. Yet the Supreme Court held disparate impact has no "direct evidence requirement." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (referring to 42 U.S.C. §§ 2000e–2(k)(1)(A)(i), the disparate impact subsection).[6] Thus, regardless of the existence of a document stating a company-wide policy of using prior pay, discovery concerning Nike's policies and practices for setting starting pay is highly relevant for whether Nike used the alleged practice and whether it had a disproportionately adverse impact on women.

D. **The Order Mischaracterizes Plaintiffs' Two RFPs as Extremely Narrow.**

The Order mischaracterizes Plaintiffs' requests as just seeking documents stating Nike had a company-wide policy of using prior pay. *See e.g.,* Order at 5 (denying discovery because it decided the evidence "does not suggest the existence of a company-wide policy …."); *see also id.* ("documents responsive to its [sic] request for prior pay policies in existence before October 2017."). Yet the two RFPs at issue are not so narrow. These RFPs, served in March 2019, seek documents and communications showing Nike's practices, procedures, policies, and related training materials concerning how it set starting pay between January 2010 and October 2017.[7]

---

[6] *See also e.g., id.* ("Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.").

[7] The Order did not deny the Motion based on the period of the request. Nor could it because Title VII makes discovery since 2010 relevant. Nike hired Plaintiff Johnston that year and one way Title VII is violated is when employees are "affected by application of a discriminatory compensation decision or other practice, *including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.*" 42 U.S.C. § 2000e-5(e)(3)(A) (emphasis added). This means "Plaintiff's statute-of-limitations clock

- RFP No. 4: "all policies and practices related to ... collection or use of prior compensation history, including any mechanism used to collect such history (e.g., Consumer Reporting Agency); … all related training materials …; and documents identifying persons involved …."

- RFP No. 8: "all policies and practices related to … setting of starting … salary, … all related training materials … and documents identifying persons involved …."

- For both RFP Nos. 4 and 8, Plaintiffs defined "policies" and "practices" as: policies, directives, procedures, systematic processes, or established, recognized, usual, or prescribed practices.

Goldstein Decl. in Supp. Mot to Compel, Ex. A at 9, 11-13, ECF No. 350.

### E. The Substantial Evidence of Nike's Failure to Produce Responsive Discovery.

The Order denies discovery because it "cannot order a party to produce documents that do not exist." Order at 4. Yet, despite Nike's deficient productions, Plaintiffs submitted substantial evidence showing unproduced highly relevant, responsive discovery concerning how starting pay was set before October 2017. This evidence includes the following specific examples of responsive discovery that Nike failed to produce, deposition testimony supporting the existence of further discovery, and the overall severity of Nike's deficient productions:

- Pre-October 2017 versions of Nike's "Offer Intake Form," communications distributing this form, and discovery showing who was involved in its creation or modification. The Offer Intake Form was a centrally-created standard form to explicitly collect and use prior pay to "construct offers" for starting salary in all jobs below Vice President at Nike HQ. Mot. 6-8; Reply 2-3. Nike distributed at least two versions of this standard form prior to October 2017. *Id.* This standard form, who created it, and communications about this form are highly relevant to the challenged practice.

- Pre-October 2017 versions of Nike's "Hiring Process" document, "a guide to educate key players on their roles and responsibilities when looking to hire …." Mot. 8; Reply 2.

- Nike's "Walking Deck" from around September 2017 instructing Nike human resources employees and business leadership on Nike's "policy change" to prohibit use of prior pay in setting starting pay. Mot. 8; Reply 2.

---

effectively resets each time she received a paycheck from [her employer]." *Hammel v. Marsh USA Inc.*, 206 F. Supp. 3d 219, 231 (D.D.C. 2016) (citing 42 U.S.C. § 2000e-5(e)(3)). Here, Plaintiffs allege Nike perpetuated the disparate impact in starting pay, including through its use of current salary when calculating annual salary increases and bonuses.

**PLAINTIFFS' RULE 72(A)-(B) OBJECTIONS TO ORDER (ECF NO. 386)**
**PAGE 6**

- Trainings and communications from around September 2017 concerning Nike's "policy change" to prohibit use of prior pay in setting starting pay. Mot. 8; Reply 2.

- Nike's centrally-maintained "hiring resources" that were "updated prior to October 1," 2017 because of Nike's "policy change" to prohibit use of prior pay in setting starting pay. Mot. 8; Reply 2.

- Deposition testimony from a knowledgeable, long-time former Senior Director in Human Resources, who worked in numerous parts of Nike's business and was involved in compensation, confirmed that "until about October 2017…Nike [had] a policy or practice of using prior pay when determining the amount of starting pay for new hires." Reply 8.[8]

- Nike's failure to produce any policies, guidelines, trainings, descriptions, or forms it used when determining the amount of starting pay before October 2017. Mot. 8; Reply 2.[9] This substantial failure is even more incredible because Nike admitted in a centrally-created training: "In the past, we often focused on the new hires prior salary and/or the size of the increase the new hire would receive." Sun Decl. in Supp. Mot. Class Cert. Ex. 32 at 8, ECF No. 283-2.

Because the Order focused exclusively on whether Plaintiffs had shown the existence of a document stating a written company-wide policy for prior pay, it ignores most of this evidence individually and it ignores the cumulative weight of this evidence. For the same reason, it disregards the two pieces of evidence it mentions, the Offer Intake Form and the testimony. For the Offer Intake Form, the Order concludes, without explanation: "the form is not a written policy of the purported practice itself" and "it does not suggest the existence of a company-wide policy …." Order 5, ECF No. 386.[10] The Order discounts the deposition testimony because it "failed to show a company-wide policy," Nike's allegations about credibility, and it is not clear whether the use of prior pay was "an actual policy" or "an informal practice." *Id.* at 5.

---

[8] This Senior Director worked at Nike for about 11 years. Goldstein Decl. Ex. A (Long Dep. 7:18-23), filed herewith. She worked in numerous parts of Nike's business at its HQ. Goldstein Decl. Ex. A at 8:2-9:25, 10:9-18, 11:3-12:8.

[9] Nike conceded this failure because its two opposing filings did not and could not identify any such discovery. *See generally* Def's Opp'n to Mot. to Compel ("Opp'n"), ECF Nos. 354; Def.'s Sur-Reply in Opp'n to Mot. to Compel ("Sur-Reply"), ECF No. 380.

[10] The Order also relied on testimony from two Nike witnesses to conclude the evidence "does not suggest the existence of a company-wide policy …." But this is not only an improper merits decision but also is unsupported by these witnesses' testimony. The Senior Director in Talent Acquisition's testimony supports Plaintiffs' claim because she testified "we would ask [sic] compensation history of a candidate" and this was "a Nike guideline;" and the other witness lacked knowledge of what policies or practices Nike had before October 2017. *See* Reply 6-7.

**PLAINTIFFS' RULE 72(A)-(B) OBJECTIONS TO ORDER (ECF NO. 386)
PAGE 7**

889541.10

But the Order answers the wrong question because it asks whether Plaintiffs have proven the existence of a document with a company-wide policy. *See* Sec. III(B)-(D), *supra*. Instead, it should have asked whether all the evidence, including the Offer Intake Form and the testimony, suggests Nike has responsive discovery concerning its pre-October 2017 starting pay practices. Moreover, regardless of whether Nike's use of prior pay was a policy or practice, this discovery is highly relevant for Plaintiffs' prima facie disparate impact burden. *See* Sec. III(C), *supra*; *see also e.g., Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 349 (1977) ("the Court has repeatedly held that a prima facie Title VII violation may be established by *policies or practices* ….") (emphasis added) (collecting cases).[11]

In addition, court-ordered productions have proven the deficiency of Nike's productions and its misrepresentations to the Court about the existence of discovery. After the Magistrate Judge found Nike "has demonstrated a certain lack of transparency so far in the discovery process and certainly some deficient production" (Order 9, Aug. 10, 2020, ECF No. 111), Nike continued to, repeatedly, misrepresent the existence of discovery to the Court.

- In September 2020, Nike told the Court that Plaintiffs made an "egregious" and "misleading statement[]" because Plaintiffs had stated, "Nike produced 30 entries from the Starfish Survey [discrimination complaints] that contain redactions of all the names of top managers who are alleged to have discriminated or condoned discrimination." Jt. Submission 17, ECF No. 114. Nike's subsequent court-ordered production of unredacted versions then proved Nike had redacted the names of least 22 Nike executives. *See* Goldstein Decl. in Supp. Mot. Class Cert. ¶ 16, ECF No. 163; Reply 3-4, 12.

- To oppose Plaintiffs' request for an order requiring Nike to produce organizational charts, in March 2021, Nike unequivocally and repeatedly told the Court it had no existing organizational charts: "*manual creation of organizational charts is the only possible way to produce 'organizational charts' ….*" Reply 4-5; *see also id.* (stating production of organizational charts "*would require Nike to create documents ….*"). Yet, after the Court ordered Nike to produce existing organizational charts, Nike produced

---

[11] Even though Nike submitted no evidence substantiating its claim that the deponent "violated" Nike policy (Sur-Reply 7), the Order also relied on this claim that the deponent lacked credibility (Order 5). Instead of submitting any documentation, Nike submitted a declaration from its counsel, who asserts he "reviewed NIKE's personnel files regarding [the deponent]" and these files "indicated" alleged violations of Nike policy. *See* Prince Decl. in Supp. of Sur-Reply 2-3, ECF No. 381.

- thousands of organizational charts that were created before and existed on the date it told the Court organizational charts "do not exist." *Id.*

- Nike repeatedly told the Court – on March 18, 2020, June 29, 2020, and July 17, 2020 – that it produced all discovery responsive to an October 2019 Order, which required production of "uniform policies it maintained during the relevant time periods regarding hiring, … pay, … and compensation systems," and its production followed "an exhaustive search and review." Mot. 6. Yet, after a subsequent order, Nike produced documents and communications clearly responsive to the October 2019 Order concerning Nike's use of prior pay. *Id.* Of all the discovery Nike did produce concerning its use of prior pay, there is no discovery more relevant to how Nike set starting pay before October 2017, and each was centrally-created, widely distributed amongst Nike Human Resources employees, and clearly responsive to the October 2019 Order, RFP No. 4, and RFP No. 8. Mot. 6; Reply 5.

The Order, however, ignores, all these misrepresentations about the existence of discovery and instead relies on Nike's generalized representation that discovery does not exist.

### F. The Order's Denial of the Remainder of Plaintiffs' Motion In One Conclusory Sentence Is Contrary to the Discovery Rules and the ESI Order.

Based on the following sentence, the Order denied Plaintiffs' request for Nike's retention policies and how Nike located responsive discovery to just two RFPs: "the lengthy and exhaustive discovery process thus far, and the expense and burden of this further duty in proportion to the individual claims in this case." Order 6. This is based on three errors.

First, it fails to apply the proportionality factors in Rule 26, which overwhelmingly support granting Plaintiffs' request. *See* Mot. 11. Second, Nike waived any burden objections since its written objections are boilerplate and it otherwise failed to substantiate its objections. *See id.* and *generally* Opp'n and Sur-Reply. Third, the evidence before the Court demonstrates Nike withheld critical discovery, repeatedly misrepresented the existence of discovery, and refused, contrary to Rule 34 and the ESI Order, to provide information about how it allegedly searched for and collected responsive discovery.

Plaintiffs have long sought the requested discovery but have been denied access. Their 2018 complaint alleges Nike used prior pay when setting starting pay. *E.g.,* 1st Am. Compl. ¶ 6, ECF No. 42. Their March 2019 RFPs, including RFP Nos. 4 and 8, sought discovery on this

claim. The Magistrate Judge rejected Plaintiffs' request for an order compelling Nike to produce discovery responsive to other RFPs relating to Nike's policy change around October 2017 to "remove bias from critical moments of the hiring process" including "by eliminating the collection of salary histories." Order, Oct. 31, 2019, ECF No. 89.[12] Nike refused to provide information required by Rule 34 and the ESI Order concerning where it did and did not look for responsive discovery. Mot. 8-9; Reply 9-10. And the Court denied Plaintiffs requests, without prejudice, to obtain discovery on where Nike looked and did not look for responsive discovery. *See* Mot. 4 n.4. Plaintiffs have thus been forced, contrary to Rule 26, Rule 34, and the ESI Order, to rely on Nike's unsubstantiated representations about the existence of discovery despite the significant evidence showing the unreliability of such representations and the existence of responsive, unproduced discovery.

Further, Nike's filings confirmed its deficient discovery searches and suggest it is deleting responsive discovery. Regarding unproduced documents Plaintiffs identified, Nike states: "To the extent such documents ever existed, a logical deduction is that the old documents may have simply been lost to the sands of time." Opp'n 8; *see also* Sur-Reply 7 (Nike suggesting a prior version of its Offer Intake Form "was overwritten"). As these statements show, Nike did not adequately collect responsive discovery because it does not know if it exists, and Nike is content to permit deletion of this discovery.[13]

Plaintiffs thus moved for discovery about the existence and location of discovery, which "is deeply entrenched in practice," *see* Mot. 9-10, and is discovery courts regularly compel, especially when there is an indication that discovery is deficient. *See e.g., FormFactor, Inc v. Micro-Probe, Inc.*, No. C-10-03095 PJH JCS, 2012 WL 1575093, at *7 (N.D. Cal. May 3,

---

[12] Plaintiffs' request for this Order is at ECF No. 165-2.

[13] Nike represented to the Court that it anticipated litigation since at least February 2016 (*see* Goldstein Decl. in Supp. Mot. Class Cert., Ex. 12 at 56, 72, 105, 256, ECF No. 166-2), which the Court accepted (Order 3, 9, ECF No. 117). It has refused to produce its retention policies and the Magistrate Judge has denied requests to compel these policies, so, if discovery was indeed deleted, retention policies are highly relevant for determining whether deletion was willful or otherwise inappropriate.

2012).[14] This discovery is necessary given Nike's withholding of highly relevant discovery regarding its starting pay practices, pattern of misrepresentations, and its failure to diligently search, collect, and produce this discovery.

Dated: December 6, 2023

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

/s/ Bryon Goldstein
Laura L. Ho (admitted *pro hac vice*)
Barry Goldstein, Of Counsel (admitted *pro hac vice*)
James Kan (admitted *pro hac vice*)
Byron Goldstein (admitted *pro hac vice*)
Katharine L. Fisher (admitted *pro hac vice*)
Mengfei Sun (admitted *pro hac vice*)

MARKOWITZ HERBOLD PC
Laura Salerno Owens, OSB #076230
David B. Markowitz, OSB #742046
Harry B. Wilson, OSB #077214
Kathryn P. Roberts, OSB #064854

ACKERMANN & TILAJEF PC
Craig Ackerman (admitted *pro hac vice*)
cja@ackermanntilajef.com
Brian Denlinger (admitted *pro hac vice*)
bd@ackermanntilajef.com
315 S Beverly Drive, Suite 504
Beverly Hills, CA 90212
Tel: (310) 277-0614
Fax: (310) 277-0635

---

[14] *See also e.g., Salinas v. Cornwell Quality Tools Co.*, No. EDCV192275JGBSPX, 2020 WL 8028616, at *6 (C.D. Cal. Oct. 29, 2020); *Montgomery v. Wal-Mart Stores, Inc.*, No. 12CV3057-JLS (DHB), 2015 WL 11233390, at *3 (S.D. Cal. Sept. 4, 2015); *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK PSG, 2013 WL 1942163, at *3 (N.D. Cal. May 9, 2013); *Ruiz-Bueno v. Scott*, No. 2:12-CV-0809, 2013 WL 6055402, at *1 (S.D. Ohio Nov. 15, 2013); *Rhea v. Wash. Dep't of Corr.*, No. C10-0254 BHS KLS, 2010 WL 5395009, at *5 (W.D. Wash. Dec. 27, 2010); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 190 (C.D. Cal. 2006).

INDIA LIN BODIEN, ATTORNEY AT LAW
India Lin Bodien (admitted *pro hac vice*)
india@indialinbodienlaw.com
2522 North Proctor Street, #387
Tacoma, WA 98406-5338
Tel:  (253) 212-7913
Fax:  (253) 276-0081

Of Attorneys for Plaintiffs and Opt-In Plaintiffs