**David J. Elkanich**, OSB No. 992558
Email: delkanich@buchalter.com
**David A. Bernstein**, OSB No. 235633
Email: dbernstein@buchalter.com
BUCHALTER, A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205
Telephone: 503.226.1191
Fax: 503.226.0079

*Attorneys for Non-Party Markowitz Herbold PC*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>NIKE, Inc., an Oregon Corporation,<br><br>　　　　　Defendant. | Case No. 3:18-cv-01477-JR<br><br>**PLAINTIFFS' RESPONSE TO ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72** |

## I.　INTRODUCTION

Plaintiffs' counsel, by and through their independent counsel, respond in opposition to the instant motion and in support of the Magistrate's January 26, 2024 Order ("Magistrate's Order") requiring the intervening party, The Oregonian ("The Oregonian"), to return and destroy certain inadvertently disclosed documents that it had received. (ECF 412.)

Page 1　PLAINTIFFS' RESPONSE TO ADVANCE LOCAL MEDIA'S
　　　　　EMERGENCY MOTION TO VACATE ORDER

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 80754432

The Oregonian complains that the Magistrate's Order impermissibly finds that The Oregonian should be bound to the Stipulated Protective Order[1] in this case. Yet, this argument is premised on a mischaracterization of The Oregonian's role in this case and the circumstances in which this situation arose. Contrary to The Oregonian's claims, the inadvertently disclosed materials were not obtained by The Oregonian through a "newsgathering process, independent of Court proceedings." (The Oregonian's Mot. to Vacate Magistrate's Order ("Oregonian's Mot."), ECF 414 at 4.) In fact, the only reason that this issue ever arose is because Plaintiffs obtained certain documents in response to their discovery requests that Defendant had designated with confidentiality markings pursuant to the Stipulated Protective Order.

In response to an inquiry by The Oregonian regarding certain portions of discovery that had been previously filed publicly as an exhibit in the above-titled litigation, Plaintiffs' counsel made the inadvertent disclosure to The Oregonian of other discovery materials, which had been provided to Plaintiffs by Defendants solely as a result of discovery in the instant case, and which had been designated as either "confidential" or "attorneys' eyes only" pursuant to the Stipulated Protective Order. Stated another way, absent the normal discovery process, the Oregonian would have never obtained a copy of these documents, and further, Plaintiffs' counsel would not, and could not, have ever made any inadvertent disclosures because she would not have had the materials.

Furthermore, as explained in Plaintiffs' motion to request return of inadvertently disclosed materials (Pls.' Mot. to Request Return of Inadvertently Disclosed materials, ECF 410 ("Pls.' Mot.")), Plaintiffs' counsel's intent when she made the inadvertent disclosure was to submit these

---

[1] ECF 82.

Page 2    PLAINTIFFS' RESPONSE TO ADVANCE LOCAL MEDIA'S
EMERGENCY MOTION TO VACATE ORDER

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 80754432

publicly-filed discovery documents after The Oregonian specifically inquired about them. (*Id*. at 2-3.)

## II. DISCUSSION

### A. Judge Russo was empowered to order the return and destruction of the inadvertently disclosed documents subject to the Stipulated Protective Order.

As discussed in Plaintiffs' Motion requesting the Court order a claw-back of the inadvertently disclosed documents (ECF 410 at 3-4), ¶ 12 of the Stipulated Protective Order specifies that anyone who receives inadvertently disclosed documents or materials that the recipient knows or should know is subject to a claim of confidentiality shall be returned, with reasonable steps taken by the receiving party to prevent further disclosure. (ECF 82 at ¶ 12.) Furthermore, as discussed in Plaintiffs' Motion and relied upon in the Magistrate's Order, Fed. R. 26(b)(5)(B) and Fed. R. Evid. 502(b) provide mechanisms under which inadvertently disclosed discovery materials may be obtained back without causing further harm or being deemed a waiver of any applicable privileges. (*See, e.g.,* ECF 412 (citing same Rules).)

While this situation is admittedly unique, courts throughout the country have exercised their inherent authority to enforce protective orders to prevent dissemination of confidential information.

> Courts have the inherent authority to enforce their orders. "[T]he power of a court to make an order carries with it the equal power to punish for a disobedience of that order." … The power is a necessary prerequisite to the administration of justice; without it, courts would be ill-equipped to ensure the rule of law in a democratic society.
>
> "It is one of the equitable powers, inherent in every court of justice so long as it retains control of the subject-matter and of the parties, to correct that which has been wrongfully done by virtue of its process."

Page 3   PLAINTIFFS' RESPONSE TO ADVANCE LOCAL MEDIA'S EMERGENCY MOTION TO VACATE ORDER

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 80754432

*In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 417–18 (E.D.N.Y. 2007), *judgment entered sub nom. In re Zyprexa Litig.*, No. 07-CV-0504, 2007 WL 669797 (E.D.N.Y. Mar. 1, 2007), and *aff'd sub nom. Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010) (internal citations omitted).

In *In re Zyprexa*, the court continued: "[r]ecovering stolen documents obtained in violation of a court discovery order when needed to protect a party to a litigation is well within the equitable power of a federal district court." 474 F. Supp. 2d at 419–20; *see also Marshall v. Planz*, 347 F. Supp. 2d 1198, 1200–01 (M.D. Ala. 2004) (enforcing a protective order in a settled case over nonparties). In *Marshall v. Planz*, the Middle District of Alabama court highlighted the importance of the court's inherent powers, while emphasizing that participants in litigation "cannot have it both ways" by seeking to take advantage of court process and abiding by a protective order when it suits them, while ignoring a protective order when it does not suit them. *Marshall,* 347 F. Supp. 2d at 1200–01. The *Marshall* court noted it needed flexibility to administer its protective orders even where nonparties were involved. *Id*.

As noted by the courts in *In re Zyprexa* and *Marshall*, a court has inherent authority to correct violations of a protective order in addition to the processes permitted under the Fed. R. Civ. P. 26(b)(5)(B). These cases demonstrate the fundamental notion that a court must possess power to enforce its protective orders in order to ensure an orderly discovery process. While an inadvertent disclosure is not a typical part of discovery, it is part of it nonetheless. Fed. R. 26 itself is titled "General Provisions Governing Discovery," and specifically Rule 26(b) is sub-titled "Discovery Scope and Limits."

The Oregonian, as intervening party, seems to ask that the Court ignore all of this and act as though these inadvertently disclosed documents would have been obtained by it even if there was no litigation. That simply is not the case. As noted above, The Oregonian *only* received these

Page 4   PLAINTIFFS' RESPONSE TO ADVANCE LOCAL MEDIA'S
        EMERGENCY MOTION TO VACATE ORDER

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 80754432

inadvertently produced documents as a result of the discovery process: Defendant produced these documents to Plaintiffs (and not The Oregonian), and Defendant designed these documents as "confidential" or "attorneys' eyes only" subject to a Stipulated Protective Order that was entered by the Court. The Oregonians' suggestion that these documents were obtained through the normal investigative process is misleading at best and should be rejected by this Court.

>    **B.   As the Magistrate's Order only restricts the dissemination of information from a party that obtained it through discovery, it was appropriately asserted against The Oregonian who is a party to this litigation following its intervention.**

The Oregonian's reliance on *Seattle Times Co. v. Rhinehart* is useful. (*See* Oregonian's Mot. at 7.) While *Seattle Times* concerned a suit in which a person sued a newspaper for defamation and the newspaper was a defendant from the outset of that case, the Supreme Court's reasoning discussed in that opinion is instructive here. Discovery rules "are a matter of legislative grace," and accordingly are subject to "continued court control" without raising significant censorship concerns under the First Amendment. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 21, 104 S. Ct. 2199, 2209, 81 L. Ed. 2d 17 (1984) (internal citations omitted). Accordingly, the Supreme Court found it completely appropriate for a court to be empowered to limit the dissemination of discovery materials through enforcement of a protective order. *Id.* at 32-36. As a result, as discussed above, The Oregonian should be subject to those Rules as it has actively engaged in participating in this litigation through the Civil Rules in this current litigation prior to the inadvertent disclosure.

The Oregonian overemphasizes the differences between it and the media litigant in *Seattle Times*. Indeed, courts that have addressed the question of whether a party, who seeks to intervene,

Page 5   PLAINTIFFS' RESPONSE TO ADVANCE LOCAL MEDIA'S EMERGENCY MOTION TO VACATE ORDER

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 80754432

is a "party" for purposes of legal proceedings, have routinely found that they are such a party.[2] *See, e.g., Moses v. City of Perry, Michigan*, 90 F.4th 501, 505 (6th Cir. 2024) ("'[W]hen the term [to intervene] is used in reference to legal proceedings, it covers the right of one to interpose in, or become a party to, a proceeding already instituted.'… So a nonparty does not become a party until the district court grants the motion to intervene.") (quoting *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933, 129 S.Ct. 2230, 173 L.Ed.2d 1255 (2009)).

As the Sixth Circuit noted in *Moses*, as soon as the motion to intervene has been granted, the intervenor is effectively a party to the suit with the same rights as the original parties. *Id.* The fact that The Oregonian labels itself "non-party" does not change this. *See also Schlumberger Techs., Inc. v. Tri-Cnty. Metro. Transp. Dist. of Oregon (Tri-Met)*, 149 Or. App. 316, 321, 942 P.2d 862, 865 (1997) ("[O]nce a motion for intervention is allowed, the intervenor is as much a party to the proceeding as are the original parties and is subject to the same rights and liabilities as if it had been an original party…").[3]

---

[2] Citing only an unexplained reference to *Robert Ito Farm, Inc. v. Cnty. of Maui,* The Oregonian appears to suggest that there is authority to find that it is not a party to this suit. *Robert Ito Farm, Inc.,* 842 F.3d 681, 686 (9th Cir. 2016). But that case concerns the very narrow question of whether a magistrate judge must receive the consent from a *prospective* intervenor in litigation prior to being permitted to enter a judgment into a case. These are not procedurally similar, but even if they were, as discussed in *Moses*, this analysis changes when that prospective intervenor has its motion granted and becomes a party to the litigation.

[3] It should make no difference that The Oregonian, in its own words, intervened "for the limited purpose of vindicating the rights of the press," rather than to assert a claim against Plaintiffs or Defendant. (ECF 205 at 2.) The Oregonian moved under Fed. R. Civ. P. 24(a) and (b), just as the intervenors in the referenced cases. The cases do not make any distinction regarding the basis for the intervention (e.g., to assert claims or to purportedly vindicate the right of the press) and an intervenor is to be treated as though it was an original party to the suit. *See, e.g., Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007, 1017 (D.C.Cir.1985) ("[W]hen a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party.")

Page 6    PLAINTIFFS' RESPONSE TO ADVANCE LOCAL MEDIA'S
         EMERGENCY MOTION TO VACATE ORDER

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 80754432

This is particularly true in the specific and unique circumstances of this case, where The Oregonian is engaged in an active appeal regarding the appropriate confidentiality of documents that were produced by Defendant through the discovery process. As noted above, The Oregonian wants to act as though it obtained the inadvertently disclosed documents as if an unrelated, anonymous source provided them—but that is not true. The Oregonian only received them through a process specifically contemplated under the "General Rules of Discovery."

### C. Because the Magistrate's Order only restricts the dissemination of information disclosed through discovery, it does not implicate prior restraint or require an exacting First Amendment scrutiny.

In *Seattle Times*, the Supreme Court stated:

> [I]t is significant to note that an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny…[S]uch a protective order prevents a party from disseminating only that information obtained through use of the discovery process…
>
> In sum, judicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context.

*Seattle Times Co. v. Rhinehart*, 467 U.S. at 32-33; *see also Dorsett v. Cnty. of Nassau*, 289 F.R.D. 54, 77–78 (E.D.N.Y. 2012) ("[T]he Court is restricting information which came into certain individuals' possession only as a direct result of the court's processes.").

As seen in *Seattle Times* and *Dorsett*, where a court only seeks to bar dissemination of information learned and disclosed through discovery, prior restraint concerns are not implicated.[4] The Oregonian has not met its burden showing any potential First Amendment right is outweighed

---

[4] For these reasons, The Oregonian's reliance on *State ex rel. Sports Mgmt. News v. Nachtigal,* is misplaced. There, a trade publication received the allegedly proprietary information from an unknown leak rather than through the discovery process.

Page 7   PLAINTIFFS' RESPONSE TO ADVANCE LOCAL MEDIA'S EMERGENCY MOTION TO VACATE ORDER

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 80754432

by the strong policies supporting adherence to Court orders and procedures guiding discovery in litigation. The inadvertently disclosed information is part and parcel of the discovery, and the Court appropriately enforced the Stipulated Protective Order in a way that does not offend prior restraint per *Seattle Times*. The Court need not analyze whether this fits into The Oregonian's cited examples of where prior restraint exceptions have been found because prior restraint is not at issue.

### III.   CONCLUSION

For the above reasons, Plaintiffs' counsel requests that the Court maintain the Magistrate's Order and enforce its original Order requiring The Oregonian to return the inadvertently disclosed documents and destroy any copies still in its possession.

The Oregonian has failed to prove that it is not a party subject to the Stipulated Protective Order, especially given its high level of involvement in this matter. As noted, parties that have been permitted to intervene are deemed "parties" for the purposes of that litigation. As a result, the claw-back provision of the Stipulated Protective Order, as well as the applicable Civil Rules, apply to this inadvertent disclosure, and the Court's original Order of January 26, 2024 was the appropriate remedy for this occurrence.

DATED this 6th day of February, 2024.

        BUCHALTER
        A Professional Corporation

By   s/ *David J. Elkanich*
     David J. Elkanich, OSB No. 992558
     Email: delkanich@buchalter.com
     David A. Bernstein, OSB No. 235633
     Email: dbernstein@buchalter.com
     Telephone: 503.226.1191

     Attorneys for Non-Party Markowitz Herbold PC

Page 8   PLAINTIFFS' RESPONSE TO ADVANCE LOCAL MEDIA'S EMERGENCY MOTION TO VACATE ORDER

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 80754432