**Edwin A. Harnden,** OSB No. 721129
eharnden@barran.com
**Bruce T. Garrett**, OSB No. 213430
bgarrett@barran.com
601 SW Second Ave., Suite 2300
Portland, Oregon 97204-3159
Telephone: (503) 228-0500
Facsimile No.: (503) 274-1212

Attorneys for Non-Party Advance Local Media LLC d/b/a Oregonian Media Group (The
Oregonian)

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND

| | |
|---|---|
| KELLY CAHILL, et al, | **3:18-cv-01477-JR** |
| Plaintiffs, | **REPLY IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72** |
| v. | |
| NIKE, INC., an Oregon Corporation, | |
| Defendants. | |

Page 1 - REPLY IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA
GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE
JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31,
2024, FRCP 72

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

## I.  **INTRODUCTION**

Advance Local Media LLC, d.b.a., Oregonian Media Group (hereinafter, "The Oregonian"), respectfully requests that the Court expeditiously vacate its order (ECF No. 412) and deny Plaintiffs' motion (ECF No. 410), in accordance with established and clear Supreme Court precedent, so that The Oregonian does not continue to suffer irreparable harm from an on-going First Amendment violation.

### A.    Legal Standard

The legal issues before this Court are summarized by a longstanding First Amendment proposition: absent "exceptional" circumstances a court cannot restrain news reporting before it occurs and any prior restraint on publication—even for minimal periods of time—presents an immediate irreparable injury. Absent an "interest of the highest order," a news outlet has a First Amendment right to publish news regarding a matter of public significance when the reporting is derived from a source that the news outlet obtained without itself violating the law.

A prior restraint on publication—that is, the judicial suppression of speech before it occurs—is "the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559, 96 S. Ct. 2791, 2803, 49 L.Ed.2d 683, 697 (1976). Restraining speech before it occurs is permissible only in "exceptional" circumstances, such as publishing the movement of troops during wartime; it is the "essence of censorship." *Near v. Minnesota*, 283 U.S. 697, 716, 51 S. Ct. 625, 631, 75 L. Ed 1357, 1367 (1931). An order requiring a news outlet to return or destroy documents prior to publication is also a prior restraint because possessing newsgathering materials is preparatory to speech, and it is protected no less than speech itself. *See Citizens United v. FEC*, 558 U.S. 310, 336, 130 S. Ct. 876, 896, 175 L.Ed.2d 753, 780

Page 2 - REPLY IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

(2010) ("Laws enacted to control or suppress speech may operate at different points in the speech process."). Since the inception of the First Amendment, the Supreme Court has never upheld a prior restraint. *See Oakley, Inc. v. McWilliams*, 879 F. Supp. 2d 1087, 1092 (C.D. Cal. 2012) (*citing* Erwin Chemerinsky, *Injunctions in Defamation Cases*, 57 Syracuse L. Rev. 157 (2007)).

Every second that a prior restraint remains in place inflicts a continuing constitutional injury because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690 (1976). Post publication punishment, which demands less constitutional scrutiny than a prior restraint, is unconstitutional "if a newspaper lawfully obtains [and publishes] truthful information about a matter of public significance . . . absent a need to further a state interest of the highest order." *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 103, 99 S. Ct. 2667, 2671, 61 L.Ed.2d 399, 405 (1979).

Because there is a "heavy presumption" against the constitutional validity of a prior restraint, Defendant Nike ("Nike") and Plaintiffs (collectively, "Respondents") bear a near-impossible burden of justifying the restraint. *See N.Y. Times Co. v. United States*, 403 U.S. 713, 714, 91 S. Ct. 2140, 2141, 29 L.Ed.2d 822, 825 (1971).

## B.    Background

The background to the dispute before the Court is reflected in The Oregonian's original motion. When Matthew Kish, business reporter for The Oregonian, contacted Ms. Laura Salerno Owens on January 17, 2024, he was engaging in the newsgathering process. Supplemental Declaration of Matthew Kish. As part of his ordinary newsgathering activities, Mr. Kish sought comment from Ms. Salerno Owens regarding a separate allegation of sexual harassment at Nike

Page 3 - REPLY IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

by an alleged victim who he understood not to be a plaintiff in *Cahill v. Nike* (the "Lawsuit") *Id.*
Mr. Kish's newsgathering had absolutely nothing to do with The Oregonian's role as an intervenor
in the Lawsuit; he set up the meeting with Ms. Salerno Owens prior to the Ninth Circuit's stay
order regarding the unsealing of judicially sealed records in the Lawsuit. During their meeting,
Ms. Salerno Owens sent Mr. Kish an email that included certain sealed documents (hereinafter,
the "Documents") from the Lawsuit. Declaration of Matthew Kish. Only after that meeting did
Mr. Kish review the Documents, and after that Ms. Salerno Owens reached out to him saying that
she had provided the Documents inadvertently.

Three years after the Lawsuit began, this Court permitted The Oregonian, along with other
media groups (collectively, the Media Intervenors) to intervene as a non-party for the limited
purpose of challenging sealed judicial records and uncovering redactions. (ECF No. 275.) The
Oregonian's limited intervention as a non-party media intervenor never transformed it into a party
in the Lawsuit. The Oregonian was also never a signatory or a party to the Protective Order
stipulated by Respondents. (ECF No. 82.)

The Oregonian's involvement in the Lawsuit has always been exceedingly narrow. By
seeking access to records that it believes should be public, The Oregonian did not shed its First
Amendment right to gather news and report on matters of public significance. The legal issues
pending before the Ninth Circuit—whether judicial records in the Lawsuit should be unsealed—
are separate and distinct from the issue before this Court, which is whether the Court can impose
a prior restraint on The Oregonian by prohibiting it from possessing and publishing information
that it lawfully received as part of the newsgathering process. According to the Supreme Court's
First Amendment jurisprudence, it cannot.

Page 4 - REPLY IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA
GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE
JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31,
2024, FRCP 72

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

## II.    ARGUMENT

**A.    Nike and Plaintiffs Have Failed to Meet Their Heavy Burden to Support Imposition of a Prior Restraint on The Oregonian**

Nike contends that the issues before the Court do not implicate the First Amendment and that the Court's order prohibiting The Oregonian from disseminating the information contained in the Documents is *not* a prior restraint. (ECF No. 425 at 6.) Nike is wrong. By definition, a prior restraint is a "*judicial order[]* forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. U.S.*, 509 U.S. 544, 550, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993) (emphasis added). Clawing back documents from a newsroom is tantamount to restricting future communications based on them. "It defies common sense to disaggregate" the newsgathering process—including possessing, reviewing, and analyzing lawfully received documents—from the actual publication. S*ee Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1204 (9th Cir. 2018). ("[The] process is itself expressive and is 'inextricably intertwined' with the resulting . . . speech [which is] entitled to First Amendment protection as purely expressive activity.").

Having established that the issue before the Court is a prior restraint, the inquiry then turns to whether Respondents have met their "heavy burden" of demonstrating the necessity for the imposition of a prior restraint—they have not. *See N.Y. Times Co., supra,* 403 U.S. at 713 (holding that the government failed to meet its heavy burden of demonstrating that the *New York Times* should be enjoined from publishing content from the "Pentagon Papers" which contained leaked confidential matters impacting national security).

/ / /

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

Nike asserts several reasons why the Court should leave in place its prior restraint on The Oregonian, all of which are contrary to well-established Supreme Court precedent. First, Nike contends that the publication of the Documents "will impact the privacy interests and livelihood of non-parties with no connection to the remaining Plaintiffs' claims." (ECF No. 425 at 20.) Yet, time and time again, the Supreme Court has affirmed that the news media's right to publish lawfully obtained information supersedes the privacy rights of individuals, even in sensitive situations. *See, e.g., Cox Broadcasting Corp.* v. *Cohn*, 420 U.S. 469 (1975) (holding that a civil damages award entered against a television station for broadcasting the name of a rape-murder victim was unconstitutional); *Oklahoma Publishing Co. v. County District Court*, 430 U.S. 308 (1977) (holding that the court's pretrial order enjoining the media from publishing the name or photograph of an 11-year-old boy in connection with a juvenile proceeding was unconstitutional); *Daily Mail Pub. Co.*, *supra*, at U.S. 103 (holding that the indictment of two newspapers for violating a state statute forbidding newspapers to publish the name of any youth charged as a juvenile offender was unconstitutional); *Fla. Star v. B. J. F.*, 491 U.S. 524, 530, 109 S. Ct. 2603, 2607, 105 L.Ed.2d 443, 453 (1989) (holding that civil damages imposed on a newspaper for publishing the name of a rape victim were unconstitutional).

Even in the *Cox, Oklahoma Publishing, Daily Mail, and Fla. Star* decisions—where the underlying privacy concerns were substantially greater than the concerns proffered by Nike—the press in those cases were not restrained from speaking, and they were not ordered to return or destroy the underling documents that they used in support of their reporting. Indeed, the tetralogy of cases demonstrate that if the First Amendment protects the press from post-publication punishment of lawfully received documents, then, *a fortiori*, it protects the press from "the most

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

serious and least tolerable" infringement of First Amendment rights—pre-publication restraint. *Neb. Press Ass'n, supra,* 427 U.S. at 559.

Next, Nike asserts that "the Oregonian's reporter knew that the newspaper should *not* have access to the files at issue, and [t]he First Amendment does not entitle The Oregonian to keep and publish documents that it should have never received but for a breach of the court's orders." (ECF No. 425 at 7; emphasis in original.) The Supreme Court has said otherwise. Even in situations where the information in question was unlawfully obtained by a third party and passed along to the press, the press still has a constitutional right to publish that information. *See Bartnicki v. Vopper,* 532 U.S. 514, 535, 121 S. Ct. 1753, 1765, 149 L.Ed.2d 787, 806 (2001) (Another's "illegal conduct does not suffice to remove the First Amendment shield from speech about a matter of public concern.").

Nike also contends that "publication may moot [Nike's] appeal and deprive it of its opportunity to seek review of this important issue." (ECF No. 425 at 21.) The legal issues before this Court and the Ninth Circuit are separate. As an initial matter, the Ninth Circuit is considering whether the entirety of the judicially sealed records in the Lawsuit should be unsealed, and the Documents are likely a smaller subset of the sealed records. (Because The Oregonian is not a party to the Protective Order, it cannot access the judicially sealed records, and it does not know the extent of any overlap between the Documents and the judicially sealed records.) Separately, Nike provides no case law to support an argument that its interest in its appeal before the Ninth Circuit is an "exceptional" circumstance or that it serves an "interest of the highest order." Indeed, the Ninth Circuit has held that the press' First Amendment rights are stronger in civil cases, such

/ / /

as this one, as compared to criminal proceedings where there are competing constitutional issues at play. *See Mark v. Shoen,* 48 F.3d 412, 416 (9th Cir. 1995).

Respondents repeatedly emphasize that the Documents were subject to a Protective Order in the Lawsuit, and that the Court has inherent power to enforce its orders—facts that no one is questioning. Respondents' scattershot arguments should not distract this Court from the fact that unsolicited documents sent to a reporter do not fall within any recognized exception to the relevant First Amendment doctrines that control this case simply because they so happen to be subject to discovery in Respondents' active litigation. Moreover, the fact that The Oregonian intervened and took the initiative to have the Court unseal certain judicially sealed records is irrelevant. If the Documents had been disclosed to numerous news outlets, it defies logic that The Oregonian would be the only one restrained from speaking simply because it stepped forward on behalf of the public to modify the Protective Order. Indeed, the fact that the Pentagon Papers included national security secrets and got to the press via an *unlawful breach* had no bearing on the newspaper's First Amendment right to retain or publish them. *N.Y. Times Co., supra,* 403 U.S. at 713.

Respondents here have not met their nearly impossible burden to justify their request that The Oregonian be restrained from speaking. Their claimed interests are not "exceptional" circumstances, and they do not further "an interest of the highest order" that should supersede The Oregonian's most fundamental and important rights of free speech and a free press.

**B.    The Oregonian is a Non-Party to the Lawsuit, Not a Party to the Protective Order, and It Received the Documents Through the Newsgathering Process Outside of the Court Process**

Having failed to sufficiently address the relevant constitutional considerations before this Court, Respondents obfuscate the record, make numerous mistakes of fact and law, and build

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

faulty arguments on those mistakes. For example, Nike asserts more than a dozen times that The

Oregonian is a "party" to the Lawsuit.[1] *See generally* ECF No. 425. This Court's order granting

the Media Intervenors' motion to intervene explicitly states the opposite:

> Findings & Recommendation: [] The *non-party* media organizations' Motion to Intervene 205 should be granted to the extent they request intervention for the *limited purpose* of challenging the parties' stipulated redactions in regard to the briefing surrounding plaintiffs' Motion for Class Certification and denied in all other respects with leave to renew.

ECF No. 273 (emphasis added) (adopted by Judge Hernandez in ECF No. 275).[2] Nike further

asserts that The Oregonian is a "litigant" in the lawsuit. Nike is wrong again. A litigant is "a person

who is engaged in a lawsuit as a *party*."[3] The Law Dictionary (2024) (emphasis added). For several

reasons, Nike's incorrect usage of the terms "party" and "litigant" is not trivial. Nike incorrectly

invokes the Protective Order and cherry-picked lines from case law in an attempt to curtail the

First Amendment rights of The Oregonian.

As an initial matter, Nike relies on, without discussing in sufficient detail, the Supreme

Court's decision in *Seattle Times v. Rhinehart*, 467 U.S. 20 (1984), which places certain limits on

the rights of party-litigants who themselves obtain information through pre-trial discovery or

---

[1] Nike also asserts that The Oregonian is a "party" to the appeal before the Ninth Circuit. Along with the other Media Intervenors, The Oregonian is petitioning the Ninth Circuit to uphold this Court's order unsealing judicial records from the Lawsuit. (ECF No. 403.) However, as discussed in detail above, the legal issues before this Court and the Ninth Circuit are completely separate.

[2] *See also* ECF 205, 206, 218-220, 229, 237, 261-262, 275, 327, 345, 347, 383, and 399, which reference the Media Intervenors, including The Oregonian, as a non-party. Plaintiffs now also claim that The Oregonian was a "party" to the lawsuit. However, Ms. Salerno Owens' meeting with Mr. Kish without his attorney present and her failure to serve The Oregonian with a copy of her motion to return inadvertently disclosed documents (ECF 410) indicate that until very recently she believed otherwise.

[3] A limited intervention under Rule 24(b) does not de facto transform a non-party into a full-fledged intervenor party. *Abreu v. Pfizer, Inc.*, 2022 U.S. Dist. LEXIS 19796, 2022 WL 2341427, at *12 (S.D. Fla. Feb. 3, 2022). ("Defendant's attempt to limit intervention to only those seeking to intervene as a full-fledged party is not supported by the law.")

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

otherwise use the court process to garner special access to documents. This case warrants a detailed discussion because it is unlike the case at bar, and it actually supports The Oregonian's position.

In *Seattle Times,* a religious group filed a defamation action against the Seattle Times newspaper—a party-defendant in the action. The trial court granted discovery and issued a protective order prohibiting the defendant newspapers from "publishing, disseminating, or using the information [obtained through discovery] in any way except where necessary to prepare for and try the case." *Id.*, at 27. The newspaper appealed the order, and the issue before the Supreme Court was "whether parties to civil litigation have a First Amendment right to disseminate, in advance of trial, information gained through the pretrial discovery process." *Id.*, at 22. The court held that the protective order did not offend the First Amendment because it was entered on a showing of good cause as required by Fed. R. Civ. P. 26(c), was limited to the context of pretrial civil discovery, and did not restrict the dissemination of the information if gained from "other sources,"[4] such as news gathering. S*ee id.*

The case at bar is not controlled by *Seattle Times* for several reasons. Unlike the Seattle Times newspaper, The Oregonian (1) is not a party to the underlying lawsuit; (2) did not use the court process, including discovery, to obtain the Documents; (3) is not a party to the operative

/ / /

---

[4] *See also Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 946 (2d Cir. 1983) (a court "generally has no such power to prohibit dissemination of . . . information [that] has been gathered independently of judicial processes"); *Grove Fresh Distribs. v. John Labatt Ltd.*, 888 F. Supp. 1427, 1441 (N.D. Ill. 1995) ("Prohibiting the disclosure of information gained through means independent of the court's processes would raise the specter of prior restraint."); *Schlicksup v. Caterpillar, Inc.*, 2011 U.S. Dist. LEXIS 169149, at *5-6 (C.D. Ill. Jan. 19, 2011) ("*Seattle Times* implicitly recognized that the newspapers were free to publish the exact same information, harassing though it might be, provided that the newspapers obtained the information through means other than the discovery process").

Page 10 - REPLY IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

Protective Order; and (4) received the documents from an inadvertent disclosure during the newsgathering process—i.e., from "other sources."

Next, Nike states that The Oregonian is a party to the Protective Order (ECF No. 425 at 6-8). That is simply not true. The Protective Order is a stipulated agreement between the Respondents. The Oregonian never joined it, was never served, and would never have agreed to it. In fact, the Protective Order went into effect three years before The Oregonian intervened. *See* ECF No. 82. If The Oregonian were a party to the Protective Order, it would be able to access sealed records, but it cannot. (Volpert Declaration, ECF No. 415.) Nike's admission that "the Oregonian never should have seen" sealed records, including the Documents, does not comport with its contention that The Oregonian is a party to the stipulated Protective Order, which grants access to sealed records to the parties to that order. It is common practice to amend protective orders, and it is revealing that Respondents never moved the Court to have the Protective Order be extended to the Media Intervenors. *See Reagan v. Okmulgee Cnty. Crim. Just. Auth.*, 2023 U.S. Dist. LEXIS 207336 (E.D. Ok. Nov. 20, 2023) (recognizing the need for a supplemental protective order after an intervenor joined the underlying lawsuit).

Moreover, Nike's contention that The Oregonian was bound by an order that was entered three years before the Media Intervenors intervened is wrong. *See, e.g., Univ. of Kan. Ctr. for Research, Inc. v. United States*, Civil Action No. 08-2565-JAR-DJW, 2010 U.S. Dist. LEXIS 12893, at *42 (D. Kan. Feb. 12, 2010) (striking a provision of a Protective Order that attempted to bind future parties and intervenors, and holding that new parties must be given the opportunity to review and stipulate to a joint order); *Overmyer v. Acumed LLC*, 2018 U.S. Dist. LEXIS 144257 at *4 (N.D. Ind. Aug. 24, 2018) (requiring a new Protective Order be entered into after new parties

Page 11 - REPLY IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

joined the lawsuit). The idea that a non-party subsequently added to a lawsuit would automatically be subject to all prior orders, as Nike suggests, does not comport with the basic functions of courts, which is to carefully consider the interests, rights, and obligations of the lawsuit participants and the public through the course of litigation.

Lastly, Nike contends that "The Oregonian has invoked litigation tools and now seeks to ignore litigation rules." However, the only litigation "tools"—if they can be called that—that The Oregonian has "invoked" in the Lawsuit was the briefing that the Media Intervenors filed in support of its intervention into the Lawsuit (for a limited purpose) to make public sealed judicial records.[5] The Oregonian's involvement in the Lawsuit has always been exceedingly narrow; it has not filed a pleading, drafted or responded to a request for production,[6] admission, or interrogatories, or participated in a deposition, or taken part in any evidentiary issue before the Court.

Nike also relies on *Ground Zero Ctr. for Non-Violent Action v. United States Dep't of Navy*, 860 F.3d 1244 (9th Cir. 2017), by proffering a statement from that decision without discussing the broader factual and legal analysis by the Court. Nike also fails to mention the outcome of that case, which actually supports The Oregonian's position. In *Ground Zero,* the issue before the court was whether a party-litigant who obtains information from public filings that are *later* sealed may be prohibited from further dissemination of that information. *Id*. at 1258. The District Court's order in *Ground Zero* prohibited dissemination of the Documents that were "filed in error that Ground Zero acquired *exclusively through this litigation . . .*". The Ninth Circuit was not convinced that

---

[5] *See, e.g.*, ECF 205, 229, 255, and 261-262.
[6] Only after The Oregonian filed its emergency motion to vacate (ECF 414), did Nike serve The Oregonian with Requests for Production and Interrogatories relating to the disclosure by Ms. Salerno Owens.

Page 12 - REPLY IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

the District Court's orders comported with the First Amendment, and it remanded the case to the District Court. *Id.* at 1263 (emphasis added). On remand, the District Court held that there was not a "compelling reason to impose restriction on Ground Zero's use or possession of the inadvertently disclosed documents," even though the documents at issue contained unclassified controlled nuclear material and critical infrastructure security information. *Ground Zero Ctr. for Non-Violent Action v. United States Dep't of the Navy*, No. C12-5537RB, 2020 U.S. Dist. LEXIS 158061, at *5 (W.D. Wash. Aug. 31, 2020).

In sum, there is no legal or factual basis to support the claim that The Oregonian is a "party" to the Lawsuit or the Protective Order, therefore its First Amendment rights cannot be curtailed by the application of *Seattle Times, Ground Zero*, or their progeny.

## C. This Court's Remedy Concerning the Disclosure of the Documents Should Not Include an Infringement of The Oregonian's First Amendment Rights.

As explained in detail above, The Oregonian has not violated any of this Court's orders (or any other court's orders) and its actions with respect to the Documents since the disclosure are wholly protected by the First Amendment. The facts clearly establish that the only one who is in violation of this Court's orders is Ms. Salerno Owens. But her actions are not imputed to The Oregonian because "[another's] conduct does not suffice to remove the First Amendment shield from speech about a matter of public concern." *Bartnicki v. Vopper*, 532 U.S. 514, 535, 121 S. Ct. 1753, 1765, 149 L.Ed.2d 787, 806 (2001). The Oregonian received the Documents through lawful newsgathering—not through litigation. Its First Amendment right to publish the Documents is consistent with more than 50 years of Supreme Court precedent.

/ / /

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

Nike contends that Mr. Kish violated the Court's orders because he "knew he should not be in possession" and "have access" to the documents. (ECF No. 425 at 6.) But Mr. Kish did not violate the law to obtain the Documents. His knowledge about the source or sensitive content of the Documents is irrelevant to the inquiry. Indeed, the reporter at the *New York Times* surely knew that he "should not have been in possession" or "have access" to the Pentagon Papers that addressed matters of national security, yet his possession of those papers and the publication of their contents was protected by the First Amendment. *N.Y. Times Co. v. United States*, 403 U.S. 713, 714, 91 S. Ct. 2140, 2141, 29 L.Ed.2d 822, 825 (1971).[7] So too here.

Nike goes to great lengths to cast doubt on the underlying facts as set out in Ms. Salerno Owens' Declarations. (ECF No. 425 at 13-16.) However, Nike's pure speculation about what is "unknown" and the "suggest[ion] of impropriety" is not sufficient to undermine the First Amendment rights of The Oregonian. Nike's implication that Ms. Salerno Owens may have been less than completely truthful or forthcoming in her sworn declaration is put forward without any factual basis. Its request for discovery based on such speculation should be rejected out of hand. Such an unwarranted intrusion into privileged newsgathering activities and additional delay would only extend and compound the irreparable harm flowing from the ongoing prior restraint.

Ms. Salerno Owens' disclosure of the Documents did not extinguish Mr. Kish's (or The Oregonian's) First Amendment right to publish information that he received while acting lawfully. *See Smith*, *supra*, 443 U.S. 97 at 103. Whatever redress regarding the disclosure of the Documents

/ / /

---

[7] The *N.Y. Times* was not restricted from publication, and it was not required to return and destroy the documents. *See id.*

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

that this Court finds appropriate, it should not include a prior restraint or other unconstitutional imposition on The Oregonian's First Amendment rights.

### III.    CONCLUSION

The Oregonian innocently received newsworthy documents. Respondents' interest in preventing The Oregonian from publishing the Documents does not overcome the fundamental press freedom enshrined in the First Amendment. Accordingly, The Oregonian respectfully requests that this Court immediately vacate its order requiring The Oregonian to return and destroy the Documents and not disseminate their contents (ECF No. 412), and deny Plaintiffs' motion requesting return of the Documents (EFC No. 410).

Dated this 13th day of February, 2024.

BARRAN LIEBMAN LLP

By *s/Bruce T. Garrett*
    Edwin A. Harnden, OSB No. 721129
    eharnden@barran.com
    Bruce T. Garrett, OSB No. 213430
    bgarrett@barran.com
Attorneys for Non-Party Advance Local Media
LLC d/b/a Oregonian Media Group (The
Oregonian)

Page 15 - REPLY IN SUPPORT OF ADVANCE LOCAL MEDIA LLC, D/B/A OREGONIAN MEDIA GROUP'S (THE OREGONIAN) EMERGENCY MOTION TO VACATE THE MAGISTRATE JUDGE'S ORDER, OR IN THE ALTERNATIVE, STAY PROCEEDINGS PRIOR TO JANUARY 31, 2024, FRCP 72

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500    FAX (503) 274-1212