JOHN A. BERG, OSB# 120018
jberg@littler.com
PAUL E. CIRNER, OSB# 191471
pcirner@littler.com
LITTLER MENDELSON P.C.
1300 SW Fifth Avenue
Wells Fargo Tower, Suite 2050
Portland, Oregon  97201
Telephone:  (503) 221-0309
Facsimile:  (503) 242-2457

DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California  90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Attorneys for Defendant NIKE, INC.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, SARA JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>NIKE, INC., an Oregon Corporation,<br><br>        Defendant. | Case No. 3:18-cv-01477-JR<br><br>**DEFENDANT NIKE, INC.'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FEBRUARY 28, 2024 FINDINGS & RECOMMENDATION (ECF NO. 431) PURSUANT TO FED. R. CIV. P. 72(b), OR, IN THE ALTERNATIVE, MOTION TO STAY PENDING APPEAL**<br><br>**ORAL ARGUMENT AND EXPEDITED HEARING REQUESTED** |

## <u>TABLE OF CONTENTS</u>

**Page**

LR 7-1 CERTIFICATION ...................................................................................................1

I.      PRELIMINARY STATEMENT ...............................................................................1

II.     RELEVANT BACKGROUND ................................................................................4

III.    ARGUMENT ...........................................................................................................8

       A.      Standard Of Review ...................................................................................9

              1.      The District Court Reviews *De Novo* Recommendations Denying Injunctive Relief Under Federal Rule Of Civil Procedure, Rule 72(b). ...........................................................................................9

              2.      *De Novo* Review Is Also Appropriate Under Rule 72(a). ...........11

       B.      A Clawback Order Is Within The Court's Authority And Necessary Here. .........12

              1.      A Clawback Order Remedies The Oregonian's Participation In Breaches Of Court Orders. .........................................................13

              2.      The Court Has The Inherent Authority To Remedy The Oregonian's Perpetuation Of Plaintiffs' Breaches Of Court Orders. .........17

       C.      The First Amendment Does Not Bar An Injunction Against The Oregonian. ...................................................................21

              1.      The Oregonian Received The Alleged Complaints From The Court's Processes. ...............................................................21

       D.      The Recommendations Wrongly Deny NIKE Discovery Into Plaintiffs' Disclosure. .......................................25

       E.      Preservation Of The Status Quo Pending Appeal Is Necessary Here If NIKE's Objections Are Overruled. ...............................27

              1.      There Will Be Irreparable Injury Without A Stay Pending Appeal. ...........28

               2.      At Minimum, A Stay Is Necessary Given NIKE Has Raised Serious Legal Questions. ...............................................29

               3.      The Balance Of Hardships Favors NIKE And Its Employees. ...............30

               4.      Public Interest Favors A Stay Pending Appeal. ...............................30

               5.      The Court Should Hold Oral Argument. ...............................32

IV.    CONCLUSION .....................................................................................................33

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Al Otro Lado v. Wolf,*
  952 F.3d 999 (9th Cir. 2020) ...................................................................................28

*Allen v. Meyer,*
  755 F.3d 866 (9th Cir. 2014) ...................................................................................10

*Ball v. Skillz Inc.,*
  No. 2:20-cv-00888-JAD-BNW, 2020 WL 10180904 (D. Nev. Nov. 16, 2020), *aff'd,*
  *Roe v. Skillz, Inc.,*
  858 F. App'x 240 (9th Cir. 2021) .............................................................................29

*Bartnicki v. Vopper,*
  532 U.S. 514 (2001) ...........................................................................................25, 26

*Branzburg v. Hayes,*
  408 U.S. 665 (1972) .................................................................................................22

*Chavis v. Whitcomb,*
  305 F. Supp. 1359 (S.D. Ind. 1969) .........................................................................15

*CPC Pat. Techs. PTY Ltd. v. Apple, Inc.,*
  No. 21-mc-80091-JST, 2024 WL 393492 (N.D. Cal. Feb. 1, 2024) .................29, 31

*Denham v. Deeds,*
  954 F.2d 1501 (9th Cir. 1992) .................................................................................27

*DKD Elec. Co., Inc. v. Allied Tube & Conduit, Inc.,*
  No. CIV 97-1026 BB/LFG, 1998 WL 36030900 (D.N.M. Mar. 19, 1998)..............16

*Doe #1 v. Trump,*
  944 F.3d 1222 (9th Cir. 2019) ...................................................................................8

*Eli Lilly & Co. v. Gottstein,*
  617 F.3d 186 (2d Cir. 2010)........................................................................3, 18, 20, 25

*Engebretson v. Mahoney,*
  724 F.3d 1034 (9th Cir. 2013) .................................................................................32

*Feldman v. Ariz. Sec'y of State's Off.,*
  843 F.3d 366 (9th Cir. 2016) ...................................................................................28

*Flores v. Barr,*
  977 F.3d 742 (9th Cir. 2020), *aff'd,*
  3 F.4th 1145 (9th Cir. 2021) ....................................................................................30

*Galbreath v. Metro. Tr. Co. of Cal.,*
  134 F.2d 569 (10th Cir.1943) ..................................................................................15

*Gartner, Inc. v. Hackett Grp., Inc.*,
   No. 3:23-CV-688 (SRU), 2023 WL 7335943 (D. Conn. Nov. 7, 2023), *appeal filed*
   (2d Cir. Nov. 22, 2023) ........................................................................................................10

*GoTo.com, Inc. v. Walt Disney Co.*,
   202 F.3d 1199 (9th Cir. 2000) ............................................................................................10

*Ground Zero Ctr. for Non-Violent Action v. United States Dep't of Navy*,
   860 F.3d 1244 (9th Cir. 2017) ......................................................................................24, 25

*GS Holistic, LLC v. Natts Smoke II Inc.*,
   No. CV 22-06840 PSG (AGR), 2023 WL 5017994 (C.D. Cal. July 12, 2023).....................10

*Hartley Pen Co. v. Lindy Pen Co.*,
   16 F.R.D. 141 (S.D. Cal. 1954) ............................................................................................16

*Hernandez v. Tanninen*,
   604 F.3d 1095 (9th Cir. 2010) ............................................................................................29

*In re DMCA Subpoena to Reddit, Inc.*,
   441 F. Supp. 3d 875 (N.D. Cal. 2020) ..................................................................................9

*In re Special Proc.*,
   291 F. Supp. 2d 44 (D.R.I. 2003), *aff'd*,
   373 F.3d 37 (1st Cir. 2004)..................................................................................................32

*In re Zyprexa Injunction*,
   474 F. Supp. 2d 385 (E.D.N.Y. 2007) ........................................................................ *passim*

*Ingram v. Pac. Gas & Elec. Co.*,
   No. 12-cv-02777-JST, 2013 WL 6174487 (N.D. Cal. Nov. 25, 2013).................................12

*Leiva-Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011) ..............................................................................................29

*Madsen v. Women's Health Ctr., Inc.*,
   512 U.S. 753 (1994)............................................................................................................23

*Memmott v. OneWest Bank, FSB*,
   No. 10-3042-CL, 2011 WL 1559298 (D. Or. Apr. 25, 2011)...............................................32

*Mitchell v. Valenzuela*,
   791 F.3d 1166 (9th Cir. 2015) ..............................................................................................9

*Nken v. Holder*,
   556 U.S. 418 (2009)......................................................................................................27, 28

*OSRX, Inc. v. Hyman Phelps & Macnamara, P.C.*,
   No. 23-CV-1131-BAS-DDL, 2023 WL 8473762 (S.D. Cal. Dec. 7, 2023)..........................22

*Quatama Park Townhomes Owners Ass'n v. RBC Real Est. Fin., Inc.*,
   365 F. Supp. 3d 1129 (D. Or. 2019) ..............................................................................11, 12

*Quint v. Vail Resorts, Inc.*,
   89 F.4th 803 (10th Cir. 2023) ...............................................................................................9

*Redapt Inc. v. Parker*,
No. 2:20-cv-00862-JRC, 2020 WL 3128859 (W.D. Wash. June 11, 2020) ...........................20

*Reynaga v. Cammisa*,
971 F.2d 414 (9th Cir. 1992) ...................................................................................................9

*Rice v. Cayetano*,
941 F. Supp. 1529 (D. Haw. 1996) ........................................................................................27

*Roe v. United States*,
428 F. App'x 60 (2d Cir. 2011) ..............................................................................................23

*Salcido v. Ditomas*,
No. 22-15294, 2022 WL 3584903 (9th Cir. Mar. 18, 2022) ...................................................11

*Sammartano v. First Jud. Dist. Ct., in & for Cnty. of Carson City*,
303 F.3d 959 (9th Cir. 2002) .................................................................................................31

*Se. Ala. Conservation Council v. U.S. Army Corps of Eng'rs*,
472 F.3d 1097 (9th Cir. 2006) ...............................................................................................27

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20 (1984) ............................................................................................................23, 24

*Sweet v. City of Mesa*,
No. CV-17-00152-PHX-GMS, 2022 WL 912561
(D. Ariz. Mar. 29, 2022) .........................................................................................................27

*Tallacus v. Sebelius*,
No. 3:11-CV-833-AC, 2012 WL 1340362 (D. Or. Apr. 18, 2012) ...........................................32

*United States v. Brown*,
250 F.3d 907 (5th Cir. 2001) .............................................................................................21, 25

*United States v. Reyna-Tapia*,
328 F.3d 1114 (9th Cir. 2003) (*en banc*) ..............................................................................10

*United States v. United Fruit Co.*,
410 F.2d 553 (5th Cir. 1969) .................................................................................................12

*Valdez v. City & Cnty. of Denver*,
878 F.2d 1285 (10th Cir. 1989) .............................................................................................32

*Vinluan-Jularbal v. Redbubble, Inc.*,
No. 2:21-cv-00573-JAM-JDP, 2021 WL 4286539
(E.D. Cal. Sept. 21, 2021) ......................................................................................................10

*Wachner v. Aramark Educ. Servs., Inc.*,
No. CV 02-528-BR, 2003 WL 23538037 (D. Or. Dec. 12, 2003) ...........................................16

*Walker v. City of Birmingham*,
388 U.S. 307 (1967) ...............................................................................................................30

*Wayside Church v. Van Buren Cnty.*,
No. 1:14-CV-1274, 2023 WL 9064862 (W.D. Mich. Jan. 3, 2023) .........................................16

*Weeks v. Union Pac. R.R. Co.*,
  No. 1:13-CV-1641 AWI JLT, 2017 WL 1740123 (E.D. Cal. May 4, 2017) .........................11

*Widjaja v. YUM! Brands, Inc.*,
  No. CV-F-09-1074 OWW/DLB, 2009 WL 3462040 (E.D. Cal. Oct. 22, 2009) ...................15

*Zemel v. Rusk*,
  381 U.S. 1 (1965) .........................................................................................................3, 22, 26

**STATUTES**

28 U.S.C. § 636(b)(1)(A) ...........................................................................................................9, 11

**RULES**

FED. R. CIV. P. 72 ...............................................................................................................................8

FED. R. CIV. P. 72(a) ..............................................................................................................9, 11, 12

FED. R. CIV. P. 72(b) ...................................................................................................9, 11, 30, 33

**TREATISES**

Wright & Miller, *7C Fed. Prac. & Proc. Civ.* § 1920 (3d ed.) ...........................................15

67A C.J.S. Parties § 126 (March 2024) .................................................................................16

12 Charles Alan Wright & Arthur R. Miller, *et al.*, *Federal Practice and Procedure* §
  3068.2 (3d ed. Apr. 2023 update) .........................................................................................9

12 Charles Alan Wright & Arthur R. Miller, *et al.*, *Federal Practice and Procedure: Civil*
  § 3069 (3d ed. 2018) ...............................................................................................................12

Commission on Revision of the Federal Court Appellate System Structure and Internal
  Procedures: Recommendations for Change, 67 F.R.D. 195 (1975) .......................................32

**CONSTITUTIONAL PROVISIONS**

U.S. CONST., amend I .......................................................................................................... *passim*

**ARTICLES**

Chris Rouch, Kish joins the Oregonian to cover banks and apparel companies, TALKING
  BIZ NEWS, Sept. 25, 2023, https://talkingbiznews.com/media-news/kish-joins-the-
  oregonian-to-cover-banks-and-apparel-companies/ (last visited March 13, 2024) ................19

Jeff Manning, Class-action lawsuit on Nike: 'where women are devalued and
  demeaned', THE OREGONIAN, Aug. 10, 2018,
  https://www.oregonlive.com/business/2018/08/class-action_lawsuit_on_nike_w.html
  (last visited March 13, 2024) .................................................................................................19

Jeff Manning, Unsealed Nike documents reveal widespread complaints of harassment,
  pay disparities, THE OREGONIAN, Jan. 18, 2023,
  https://www.oregonlive.com/business/2023/01/unsealed-nike-documents-reveal-
  widespread-complaints-of-harassment-pay-disparities.html (last visited on March 13,
  2024) ......................................................................................................................................19

Matthew Kish, Deposition shakes up Nike pay discrimination lawsuit; Nike wants it barred, BUSINESS INSIDER, Oct. 5, 2023, https://www.oregonlive.com/business/2023/10/deposition-shakes-up-nike-pay-discrimination-lawsuit-nike-wants-it-barred.html (last visited March 13, 2024)...................19

Matthew Kish, Nike executives subjects of sex discrimination, harassment complaints, plaintiffs claim, THE OREGONIAN, Nov. 14, 2023, https://www.oregonlive.com/business/2023/11/nike-executives-subjects-of-sex-discrimination-harassment-complaints-plaintiffs-claim.html (last visited March 13, 2024) ......................................................................................................19

Matthew Kish, Nike says it has made changes to improve its work culture. But employees are still making new discrimination complaints amid an ongoing lawsuit, lawyer says, BUSINESS INSIDER, Sept. 21, 2022, https://www.businessinsider.com/nike-employees-continue-to-make-new-discrimination-claims-lawyer-says-2022-9 (last visited March 13, 2024)..........................................................................................................19

Matthew Kish, The Oregonian/OregonLive wins decision overturning order in Nike documents case - oregonlivecom, THE OREGONIAN, Jan. 30, 2024, https://www.oregonlive.com/business/2024/01/federal-judge-orders-review-of-ruling-in-dispute-over-nike-documents-after-the-oregonianoregonlive-appeals.html(last visited March 13, 2024) ...................................................................................7

**OTHER AUTHORITIES**

Erwin Chemerinsky, *Injunctions in Defamation Cases*, 56 Syracuse L. Rev. 157 (2007)............10

**<u>LR 7-1 CERTIFICATION</u>**

Counsel for NIKE certifies that it made a good faith effort to confer with counsel for Advance Local Media LLC, *d/b/a Oregonian Media Group* (the "Oregonian"), Markowitz Herbold PC ("Markowitz"), and Media Organizations Insider, Inc., *d/b/a Business Insider*, American Business Journals, Inc., *d/b/a Portland Business Journal*[1] (collectively, the "Media Intervenors") on March 12, 2024 by email and phone regarding the issues presented in this request. Counsel for the Oregonian indicated that the Oregonian objects to NIKE's request. Counsel for Markowitz and the Media Intervenors did not respond prior to filing.

## I.    <u>PRELIMINARY STATEMENT</u>

This Court is ***not*** powerless to protect itself, its processes, and its orders. The Magistrate's report and recommendations (the "Recommendations") suggest otherwise. Exercising *de novo* review, this Court should:

(1)    Order the Oregonian to return the confidential documents it should not possess.

(2)    Confirm an injunction that bars the Oregonian from using, relying on, or disseminating those documents (or the information they contain).

(3)    Confirm that both Plaintiffs' counsel and the Oregonian are subject to discovery regarding their violation of the protective order and stay orders.

(4)    Issue an order to show cause regarding an appropriate sanction or contempt.

The circumstances of these objections are troubling. This Court and the Ninth Circuit Court of Appeals' orders have been violated by Plaintiffs' counsel with the aid of an intervenor. As a result, the Oregonian possesses confidential discovery documents (unverified complaints) (the "Alleged Complaints") that were to remain confidential pending NIKE's appeal, and if

---

[1] Although the Oregonian remains a Media Intervenor, the Oregonian and Markowitz retained separate counsel after the "inadvertent" disclosure occurred. Dkt. Nos. 409, 413.

successful, confidential thereafter.   While Plaintiffs' counsel claims the dissemination was inadvertent—a fact unknown, given that requested discovery has been denied—the circumstances of any such disclosure were far from an accident.

Two parties—Plaintiffs (through their lawyer) and the Oregonian (a party through intervention)—purposefully met to discuss unverified and salacious claims made against NIKE employees.   They met *after* this Court had stayed its decision to unredact/unseal the Alleged Complaints so that NIKE could petition the Ninth Circuit for an emergency stay pending appeal, and *after* the Ninth Circuit agreed that the Alleged Complaints should remain redacted/sealed during the pendency of the appeal.   In other words, the identities of complainants, witnesses, and subjects in the Alleged Complaints remained confidential because they were redacted.   The Oregonian could not obtain the redacted information from the Court's files, so Plaintiffs' counsel and the Oregonian's reporter met at a coffee shop to preview these Court records using two different devices, suggesting that they *knowingly* breached the protective order and stay orders issued by this Court and the Ninth Circuit.

If this does not make the Court incredulous, then protective orders and the integrity of court processes should give future litigants little comfort.   The lesson will be that such orders are hollow.   The Court should respond and respond robustly.   It should want to know every detail of how its and the Ninth Circuit's orders were violated; it should want that information to be subject to cross examination.   The violations should be cured and a sanction or contempt (if appropriate) should be issued.   This is not a time for timidity.

The Magistrate recognized that "plaintiffs' counsel violated the protective order in place in this case," but then took *no action*.   Dkt. No. 431 at 8.   Why?   Because the Oregonian argued that this was a question of prior restraint on speech and a First Amendment issue.   *Id.*   The

Magistrate's Recommendations err as a matter of law.  There is an antecedent question that comes first.  It is a question of whether there is an absolute right to gather information and by any means.  The law has already answered that question with an emphatic "***No.***"  As Judge Weinstein has explained (quoting the Supreme Court):  "'The right to speak and publish does not carry with it the unrestrained right to gather information.'"  *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 417 (E.D.N.Y. 2007) (quoting *Zemel v. Rusk*, 381 U.S. 1, 16-17 (1965)), *aff'd sub nom. Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010).  In other words, how information is gathered—particularly when, as here, it implicates orders of the Court—is ***not*** a prior restraint question.

*In re Zyprexa Injunction* and *Eli Lilly*, and a number of other authorities, were before the Magistrate, but are unaddressed in her Recommendations.  But they show and confirm that the Court should be looking at the ***breach*** before it looks at the ***speech***.  It should be thinking about the integrity of Court orders ***before*** any tacit acquiescence in the violation of those orders.  No First Amendment right is chilled or impaired when the Court polices the breach of the very systems—the Court's orders—that are the guardians of rights.

While there are additional legal errors shown below, the Magistrate's Recommendations erred, at bottom, because they got the sequence of the questions wrong.  They also erred because they accepted the facts without testing.  NIKE has served document requests on both the Oregonian and Plaintiffs' counsel, but they have refused to respond thus far.  If this Court has any doubt that NIKE is right—and it shouldn't—it should hold off on ruling until the full factual record of this admitted breach is before the Court.  It should authorize discovery, including depositions.

Lastly, it appears likely that whomever loses before this Court on these issues will appeal.  If this Court is not convinced that NIKE is correct (and it should be), NIKE asks that the Court do as it did before and preserve the status quo (meaning the bar on use or dissemination remains in

place) pending appeal.  NIKE would ask that the status quo be preserved for the entirety of the appeal, but at a minimum, for fourteen days (14) so NIKE may petition the Ninth Circuit for interim relief.  NIKE also asks that the Court hold oral argument on these objections.

## II.    RELEVANT BACKGROUND

Plaintiffs have staked their case on the Alleged Complaints, even though none relate to their allegations regarding pay and promotions.  Dkt. No. 1 ¶ 54.  Following motions to compel and a Court order, the Alleged Complaints were produced to Plaintiffs under the terms of the protective order.  Dkt. Nos. 82, 111.  Media Intervenors then intervened in this action to unseal information in the Alleged Complaints pursuant to the protective order.  Dkt. No. 205.  For almost two years, the Media Intervenors have fought for unfettered access to the names of non-party individuals identified in the Alleged Complaints, who have ***no connection*** to the named Plaintiffs' claims.  *E.g.,* Dkt. Nos. 205, 343, and 383.  NIKE has opposed such attempts to intrude upon the privacy rights of third-party complainants, witnesses, and subjects of these unsubstantiated allegations.  *E.g.*, Dkt. Nos. 219, 345, 376, and 406.

On October 11, 2023, the Magistrate entered findings and recommendations granting the Media Intervenors' request to unseal the non-party names.  Dkt. No. 363.  NIKE filed objections, but this Court adopted the Magistrate's findings and granted NIKE a temporary 7-day stay to seek a stay of the unsealing order from the Ninth Circuit pending appeal.  Dkt. No. 404.

Shortly thereafter, NIKE sought and obtained a temporary stay from the Ninth Circuit, which went into effect on January 11, 2024 and remained in effect until the Ninth Circuit could rule on NIKE's motion to stay pending appeal.  Dkt. No. 407.  The Media Intervenors requested to be added as parties to the appeal and were added as appellees in the same order that granted NIKE's motion to stay this Court's order pending resolution of NIKE's appeal, which was entered by the Ninth Circuit on January 19, 2024 (the "Stay Order").  Dkt. No. 408.

Plaintiffs' counsel violated that order within hours of its entry *with the complicity* of the Oregonian.  Ms. Laura Salerno Owens of Markowitz met with Matthew Kish, a business reporter for the Oregonian, to discuss purportedly unconnected allegations raised by a "current or former NIKE employee."  Dkt. No. 416 ¶ 2.  According to the Oregonian, Ms. Salerno Owens provided a comment and sent three emails to Mr. Kish from two different devices during their meeting—one of which included unredacted copies of the Alleged Complaints.  *Id*. ¶ 3.  Specifically, Ms. Salerno Owens forwarded a PDF—over half of which contained material (1) that NIKE never publicly filed and only produced subject to the protective order, or (2) that was subject to the Ninth Circuit's Stay Order.  Dkt. No. 411 ¶ 9, 411-6.

Ms. Salerno Owens now claims that this disclosure of protected material was "inadvertent," but the circumstances surrounding the disclosure raise questions that have yet to be answered.  Plaintiffs chose not to notify NIKE regarding the blatant violation of the protective order and Stay Order until six days later, on January 25, 2024, after it was clear that Plaintiffs could not alleviate the issue on their own.  Dkt. No. 426 ¶¶ 3-4; Dkt. No. 416 ¶ 7; Dkt. No. 411 ¶ 19.  NIKE has been kept largely in the dark regarding this issue, due to the Oregonian and Markowitz's refusal to provide basic information regarding the purported inadvertent disclosure in response to subpoenas and document requests.  To date, neither Markowitz nor the Oregonian have responded to NIKE's discovery relating to the disclosure.  Dkt. No. 426 ¶¶ 7-11; Declaration of Daniel Prince ("Prince Decl.") Exs. A-C.

What is clear is that Ms. Salerno Owens met with Mr. Kish on January 19, 2024 to discuss allegations from a NIKE employee raised by Mr. Kish.  Dkt. No. 411 ¶ 2.  At that time, Ms. Salerno Owens was aware, *at minimum*, that a temporary stay was in effect preventing discussion and disclosure of the redacted/sealed names to the Oregonian.  Dkt. No. 407.  And her law firm was

apprised of the full Stay Order, which was entered hours before Ms. Salerno Owens breached it. Dkt. No. 426 ¶ 5; Dkt. No. 426-1 at 2-3.  Nevertheless, Ms. Salerno Owens met with Mr. Kish (who, as an employee of the Oregonian, was also subject to the stay order) at a coffee shop to discuss the very documents subject to the nondisclosure order.  And during that meeting, Ms. Salerno Owens forwarded an unredacted PDF to Mr. Kish revealing the names of persons whose identities were supposed to be protected by multiple court orders. *Id.* ¶ 9.

Rather than immediately notify NIKE regarding the disclosure, Ms. Salerno Owens tried to convince Mr. Kish to return the documents.  Dkt. No. 411 ¶¶ 13-19.  Mr. Kish refused.  Dkt. No. 416 ¶ 7.  Only after, when Ms. Salerno Owens realized that she could not solve the breach, did Plaintiffs inform NIKE.[2]  Dkt. No. 426 ¶ 4.  That same day, Markowitz filed a motion to request return of "inadvertently" disclosed materials.  Dkt. No. 410.  Reserving its rights, NIKE joined the request to secure relief from this Court.  Dkt. No. 426 ¶ 6.  The Magistrate issued recommendations, styled as an order, on that motion on January 26, 2024, noting that the Oregonian is an intervenor in this action for the very purpose of unsealing the documents it has in its possession and is a party to the appeal in which the Stay Order was issued.  Dkt. No. 412.

The recommendations required the Oregonian to:  (1) return the documents by January 31, 2024; (2) agree not to disseminate that information; and (3) destroy any copies in its possession. *Id.*  On January 29, 2024, the Oregonian filed a motion to vacate the Magistrate's order ("Motion to Vacate").  Dkt. No. 414.  On January 30, 2024, this Court granted the Motion to Vacate, but ordered the *status quo* remain in effect until the issues were resolved.  Dkt. No. 417.  The Magistrate then directed the parties to respond to the arguments made in the Motion to Vacate. Dkt. No. 418.  All the while, the same reporter that met with Ms. Salerno Owens to procure the

[2] Counsel for the Oregonian made no attempt to notify NIKE about the "inadvertent" disclosure.

disclosure in violation of court orders published articles in the Oregonian decrying the Court's order as unconstitutional.[3]

On February 6, 2024, Plaintiffs and NIKE filed their respective responses to the Oregonian's Motion to Vacate.  Dkt. No. 421.  NIKE argued, *inter alia*, that the Oregonian is a party litigant that is subject to this Court's orders and inherent authority, and that the Oregonian's unlawful acquisition of the Alleged Complaints nullifies any argument based on First Amendment concerns.  Dkt. No. 425.  NIKE also requested that the Court issue an order to show cause as to why Markowitz and the Oregonian should not be sanctioned for their breaches.  *Id.*

On February 13, 2024, the Oregonian filed its Reply Brief in support of the Motion to Vacate, submitting an improper declaration on reply.  Dkt. No. 427; Dkt. No. 428.  On February 14, 2024, NIKE filed an (1) objection based on this violation, (2) a renewed request for discovery, (3) a renewed request for oral argument, and (4) a protective request for confirmation that the January 30, 2024 order preserves the status quo until resolution of Federal Rule of Civil Procedure, Rule 72 objections submitted to this Court.  Dkt. No. 429.

On February 28, 2024, the Magistrate issued Recommendations again styled as an order. The Magistrate recognized that which was patently obvious (and indeed admitted):  "[P]laintiff's counsel violated the protective order in place in this case[.]"  *Id.*  Notwithstanding the violation, the Magistrate concluded that the Oregonian had no obligation to return the documents at issue because the Oregonian's limited intervention meant it "has not violated any orders to which it is bound" and the Court lacked authority to "restrain the Oregonian from publishing any information

---

[3] *See, e.g.*, Matthew Kish, *The Oregonian/OregonLive wins decision overturning order in Nike documents case - oregonlivecom*, THE OREGONIAN, Jan. 30, 2024, https://www.oregonlive.com/business/2024/01/federal-judge-orders-review-of-ruling-in-dispute-over-nike-documents-after-the-oregonianoregonlive-appeals.html (last visited March 13, 2024).

contained in the documents or compel their return" because such an order would be an impermissible prior restraint in violation of the First Amendment.    Dkt. No. 431.    The Recommendations also denied NIKE's request for discovery, Dkt. No. 429, but granted NIKE's request for a temporary stay, preserving the status quo pending a decision by this Court regarding any objections to the Recommendations, Dkt. No. 431.  The Recommendations also denied parties request for oral argument.  *Id.*

III.    **ARGUMENT**

In exercising *de novo* review, this Court should set aside the Magistrate's Recommendations because they:  (1) wrongly found that the Court has no authority to remedy the breaches of clear court orders; (2) wrongly conclude that issuing an injunction ordering the Oregonian to return and destroy the materials it received violates the First Amendment; and (3) inappropriately deny NIKE discovery examining the circumstances of the breaches.  Instead, the Court should confirm that the Oregonian *is* ordered to return the Alleged Complaints, that the Oregonian *is* barred from using, relying on, or disseminating those documents (or the information they contain), and order discovery into the circumstances of this breach.  It should also issue an order to show cause why an appropriate sanction should not issue and, if so, as to whom.

Should the Court overrule these objections, NIKE requests that the Court issue a stay pending the resolution of NIKE's appeal because irreparable harm to non-party individuals would occur absent one.  *See* Dkt. No. 408.  At minimum, the Court should issue an administrative stay of fourteen (14) days to allow NIKE to request a stay directly from the Ninth Circuit.  *See* Dkt. No. 407; *Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019).

A.    **Standard Of Review**

1.    **The District Court Reviews *De Novo* Recommendations Denying Injunctive Relief Under Federal Rule Of Civil Procedure, Rule 72(b).**

This Court should exercise *de novo* review of the Magistrate's Recommendations, though styled as an "Order."  Section 636(b)(1)(A) of Title 28 of the United States Code precludes a Magistrate Judge from issuing ultimate rulings on motions, such as here, that seek injunctive relief. 28 U.S.C. § 636(b)(1)(A).  When a Magistrate Judge issues an "Order" on an issue, like injunctive relief, and a party objects, it "will be governed by the procedures and *de novo* review of Rule 72(b)."  12 Charles Alan Wright & Arthur R. Miller, *et al.*, *Federal Practice and Procedure* § 3068.2 (3d ed. Apr. 2023 update); *Quint v. Vail Resorts, Inc.*, 89 F.4th 803, 809 (10th Cir. 2023) ("The district court therefore erred by construing the R&R, which considered a motion seeking injunctive relief, as addressing a nondispositive matter under Rule 72(a) and by applying the clearly-erroneous-or-contrary-to-law review standard.").  The analysis follows a simple sequential logic.

*First*, a Magistrate Judge's authority is "set by statute," *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 881 (N.D. Cal. 2020), and "is limited," *Reynaga v. Cammisa*, 971 F.2d 414, 416 (9th Cir. 1992).

*Second*, the authority of a Magistrate Judge—and derivatively the standard of review upon objection—is controlled by the type of relief sought in the motion.  If the motion "effectively denie[s]" a request for an injunction even though it is styled as something else, it is subject to *de novo* review.  *Id.*; *cf. Mitchell v. Valenzuela*, 791 F.3d 1166, 1170 (9th Cir. 2015) ("the dispositive question for us is whether the motion to stay and abey at issue here *was effectively dispositive* of a claim or defense or of the ultimate relief sought") (emphasis added).  If a party objects to an "order" that addresses something that in essence seeks a form of injunctive relief, then *de novo* review is

compulsory: "The statute makes it clear that the district judge ***must*** review the magistrate judge's findings and recommendations *de novo if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*) (bold emphasis added).

*Third*, courts from around the country (including within the Ninth Circuit) recognize that when a party asks that documents be returned or destroyed, they are seeking a form of injunctive relief.  *See, e.g., Gartner, Inc. v. Hackett Grp., Inc.*, No. 3:23-CV-688 (SRU), 2023 WL 7335943, at *1 (D. Conn. Nov. 7, 2023), *appeal filed* (2d Cir. Nov. 22, 2023) ("I find that a preliminary injunction requiring the defendants to return or destroy all confidential and trade-secret documents belonging to Gartner that were allegedly obtained by improper means is appropriate pending the determination of the merits of Gartner's trade secrets claims."); *GS Holistic, LLC v. Natts Smoke II Inc.*, No. CV 22-06840 PSG (AGR), 2023 WL 5017994, at *1 (C.D. Cal. July 12, 2023) ("Plaintiff also seeks injunctive relief for Defendants to be enjoined from infringing on Plaintiff's Marks and for Defendants to destroy all products that infringe on the Marks.").  And, of course, a bar on use is a prohibitory injunction.  *See, e.g., GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210-11 (9th Cir. 2000) (explaining prohibitory injunction); *Vinluan-Jularbal v. Redbubble, Inc.*, No. 2:21-cv-00573-JAM-JDP, 2021 WL 4286539, at *4 (E.D. Cal. Sept. 21, 2021) (injunction is "prohibitory in that it would prohibit Redbubble from continuing to use" the marks).  Even the Oregonian tacitly admits that what is at issue is injunctive relief.  Dkt. No. 427 at 3 (*citing* Erwin Chemerinsky, *Injunctions in Defamation Cases*, 56 Syracuse L. Rev. 157 (2007)).

*Fourth*, the Magistrate Judge's styling of the "order" does not matter.  If a case makes it to the Ninth Circuit and the Ninth Circuit agrees injunctive relief was sought, it will vacate the "order" and remand for the District Court to exercise *de novo* review.  *Allen v. Meyer*, 755 F.3d 866, 869 (9th Cir. 2014) ("On remand, the district court may address the officers' motion to dismiss

in the first instance, or, alternatively, may construe the magistrate judge's order as a report and recommendation and afford the parties reasonable time to file objections."); *Salcido v. Ditomas*, No. 22-15294, 2022 WL 3584903, at *1 (9th Cir. Mar. 18, 2022) ("On remand, the district judge may treat the magistrate judge's December 27, 2021 order as a report and recommendation.").

Here, NIKE is seeking curative injunctive relief, and this Court must exercise *de novo* review of the whole record when considering NIKE's objections.

### 2.    *De Novo* Review Is Also Appropriate Under Rule 72(a).

Even if this Court finds that Rule 72(b) does not control, *de novo* review is appropriate under Rule 72(a), which governs this Court's review of non-dispositive rulings by a magistrate judge. Fed. R. Civ. P. 72(a). The Rule provides that "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*; 28 U.S.C. § 636(b)(1)(A).

Under Rule 72(a), the "contrary to law" standard—which applies to a magistrate judge's finding of law—calls for "independent plenary review." *Weeks v. Union Pac. R.R. Co.*, No. 1:13-CV-1641 AWI JLT, 2017 WL 1740123, at *5 (E.D. Cal. May 4, 2017) (sustaining objections to a magistrate judge's order under Rule 72(a) after conducting an independent, plenary review); *see also Quatama Park Townhomes Owners Ass'n v. RBC Real Est. Fin., Inc.*, 365 F. Supp. 3d 1129, 1141-42 (D. Or. 2019) (reversing magistrate judge's order as contrary to law under Rule 72(a) after conducting plenary review). As this Court observed in undertaking plenary review of a decision by a magistrate judge:

> [I]t is also important to avoid the conclusion that district judges are absolutely powerless to alter magistrate-judge resolution of nondispositive matters unless they fall into the clearly erroneous category. . . .  Moreover, even for those courts that adhere to a strict application of the 'clearly erroneous' standard, it is limited to factual findings; even the Third Circuit recognized that the phrase 'contrary to law' indicates plenary review as to matters of law. . . .  The latter is the situation that we have here.

*Id.* (quoting 12 Charles Alan Wright & Arthur R. Miller, *et al.*, *Federal Practice and Procedure: Civil* § 3069 (3d ed. 2018)) (quotation marks and citations omitted).  *De novo* or plenary review still applies to issues involving mixed questions of law and fact.  *See, e.g., Ingram v. Pac. Gas & Elec. Co.*, No. 12-cv-02777-JST, 2013 WL 6174487, at *2 (N.D. Cal. Nov. 25, 2013) (observing that under Rule 72(a), "[m]ixed questions of fact and law are reviewed *de novo*") (citation omitted).

Here, NIKE's objections to the Recommendations concern four legal questions, which NIKE addresses in the order of appearance in the Recommendations.

(1)    Whether the Court has the authority to issue a clawback injunction against the Oregonian—a party to the litigation which received documents it should not have received. This is a purely legal question.

(2)    Whether the Court has the inherent authority to issue such an order even without finding that the Oregonian is a litigant subject to the protective order.  This is a purely legal question.

(3)    Whether such a clawback injunction violates the First Amendment as a prior restraint or is incident to the Court's power to police its orders.  This is a purely legal question.

(4)    Whether discovery can be directed to the Oregonian about the circumstances surrounding this disclosure.  This question admittedly implicates both law and fact, but the facts are unknown and untested, which is the point of the request.

Thus, the Recommendations are subject to *de novo* review by this Court.

### B.    A Clawback Order Is Within The Court's Authority And Necessary Here.

This Court has full authority to order the clawback of the Alleged Complaints.  Such a clawback is necessary to remedy Plaintiffs' breaches of multiple court orders and the Oregonian's assistance thereof.  Dkt. No. 82 ¶ 17; *United States v. United Fruit Co.*, 410 F.2d 553, 554 (5th

Cir. 1969) (trial court "did not abuse its discretion in enforcing [a protective] order").

The Magistrate reached two alternative holdings. The Magistrate's first proposed holding is that the Court lacks power to grant injunctive relief to return and bar use of the Alleged Complaints because (the Magistrate believed) the Oregonian is not a "party" and such orders can only issue as to the "parties." Dkt. 431 at 7-8. The Magistrate erred legally as to both assumptions. An intervenor *is* a party, and even if not, the Court could still grant the relief. The Magistrate's second proposed (and tethered) holding—that the relief requested is barred as a prior restraint— also errs as a matter of law. Dkt. 431 at 8-9. The antecedent legal question here is about the *gathering* of the information, not the reporting, and that is entirely within this Court's ability to police (even if that inferentially implicates speech).

### 1.    A Clawback Order Remedies The Oregonian's Participation In Breaches Of Court Orders.

The Recommendations err in accepting the Oregonian's own self-serving characterization of its role in this matter and holding that "the Oregonian is not a party to this action for purposes of the protective order." Dkt. No. 431 at 7. Based on this limitation, the Recommendations held that the protective order cannot apply to the Oregonian because it prohibits "*part[ies]*" from using confidential discovery information for "any business, commercial, or competitive purpose." *Id.* at 8. But the protective order does not define or qualify "party," as the Recommendations do. Instead, the protective order refers to the parties to the litigation. Dkt. No. 82. The Oregonian is a party. It chose to be one. And it did so for the very purpose of gaining access to documents that it was prevented from accessing due to the operative protective order in this litigation. Dkt. No. 205 at 4-5, 9 (acknowledging that intervention is used to "challenge protective orders"), 11.

While the Oregonian argues it is not a party to the case, its actions show otherwise. In fact, as the Recommendations note, before the Court ruled on the motion to intervene, the Oregonian

"was mistakenly granted access via ECF/PACER to—and as a result, on June 3, 2022, obtained—unredacted copies of three theretofore non-public documents filed by the plaintiffs in this case." Dkt. No. 255 at 2.  The Oregonian "disclosed a piece of non-public information contained in one of them . . . to a reporter for [the Oregonian]."  *Id.*

After "realizing" that "they were not the publicly filed versions of those documents,"—despite the bold-faced font stating, "**FILED UNDER SEAL**"—the Oregonian's attorney "promptly took appropriate steps, including notifying the Court on June 6, 2022, that she had access via ECF/PACER to unredacted, non-public documents on the docket in this case."  Dkt. No. 255 at 2; *see* Dkt. Nos. 146 at 1, 240 at 1, 241 at 1 (Documents the Oregonian "mistakenly" accessed all stating **"FILED UNDER SEAL"** on the first page).

Evidently, the Oregonian considered itself a party subject to the Court's protective order; otherwise it would have done nothing in response to "mistakenly" being granted access to non-public records.  The Oregonian cannot, on one hand, acknowledge the application of the Court's protective order and then, on the other hand, disavow any obligation to comply with the same.[4]

Moreover, by seeking to unseal the Alleged Complaints and other documents under the protective order, the Oregonian not only became a *litigant* or a *party* subject to Court orders, but also tied itself to the protective order.  Indeed, the Oregonian's ***sole goal*** in intervening in this litigation was to publish information that was prohibited from being publicized under the

---

[4] The Recommendations err by failing to make this connection.  Nor has the Oregonian been held to account for why it waited three days to inform the Court that it "mistakenly" accessed other non-public documents.  Nor has the Court held the Oregonian's attorney to account for distributing non-public records directly to the Oregonian.  As an officer of the Court, the Oregonian's counsel should know better.  Rather than inquire into how the Oregonian's attorney thought the records were public despite them being clearly marked "**FILED UNDER SEAL**," it was simply deemed an honest mistake, leaving NIKE with no ability to protect its confidential records.

protective order—*i.e.*, to **modify** the treatment of documents under the protective order.[5]   ***To hold that the Oregonian can challenge the protective order while avoiding the very restrictions it challenges (namely, the ability to access and publicly disseminate documents) would produce an absurd result.***

On a broader level, the Oregonian's actions of intervening in this matter confirm its decision to step into the jurisdiction of this Court and avail itself of the judicial processes to obtain confidential documents to its benefit.  By doing so, the Oregonian "join[ed the litigation] subject to the proceedings that have occurred prior to his intervention[.]"  Wright & Miller, 7C *Fed. Prac. & Proc. Civ.* § 1920 (3d ed.).  Contrary to what is offered in the Recommendations, it is irrelevant that "[i]ntervention was granted well after the Court entered the stipulated protective order[.]" Dkt. No. 431 at 7.  Rather, it is well established that "one who intervenes in a suit in equity thereby becomes a party to the suit, ***and is bound by all prior orders*** and adjudications of fact and law as though he had been a party from the commencement of the suit."  Galbreath v. Metro. Tr. Co. of Cal., 134 F.2d 569, 570 (10th Cir.1943) (emphasis added); *see also* Widjaja v. YUM! Brands, Inc., No. CV-F-09-1074 OWW/DLB, 2009 WL 3462040, at *3, 8 (E.D. Cal. Oct. 22, 2009) (intervenors, which intervened for the "limited purpose of striking the class action allegations or for stay of overlapping claims," were "treated as if the intervenor[s] were an original party and has equal standing with the original parties"); Chavis v. Whitcomb, 305 F. Supp. 1359, 1363 (S.D. Ind. 1969) ("It is a general principle that  intervening defendants enter the case as they find it, ***bound***

---

[5] Plaintiffs' counsel agrees.  *See* Dkt. No. 434 at 2 ("The Oregonian intervened in this matter to seek discovery of documents subject to the same Protective Order.") & 3 ("The Oregonian inserted itself into this case as an intervening party, and after having been granted leave to intervene, The Oregonian successfully moved the Court to unseal documents (ECF 273), and to peel back redactions of other previously-sealed documents. (ECF 363.) The Court should therefore be permitted to find that The Oregonian, as an intervening party, should be held to the obligations of the Protective Order.").

*by all orders and proceedings* prior to the date of intervention.") (emphasis added).[6]  The limits on the Oregonian's participation in the proceeding does not absolve it of the duty to adhere to court orders—particularly so when the whole point of its intervention was the order in question.

Thus, the protective order's restrictions apply to the Oregonian.  But perhaps more importantly, with the potential benefits of becoming a litigant to modify the protective order also comes the burdens placed on litigants and the Court's power to enforce its orders and safeguard its litigants.  "The Court has inherent authority to enforce its orders[,]" *Wachner v. Aramark Educ. Servs., Inc.*, No. CV 02-528-BR, 2003 WL 23538037, at *3 (D. Or. Dec. 12, 2003), a power that "carries with it the equal power to punish for a disobedience," *In re Zyprexa Injunction*, 474 F. Supp. 2d at 417-18 (citation omitted).  The Oregonian was not supposed to have the Alleged Complaints.  It only does so because "plaintiffs' counsel violated the protective order," *with the active participation of the Oregonian*.  Dkt. No. 431 at 8.

Whether or not the Oregonian is subject to the protective order itself matters not when determining whether a court may take actions to enforce its orders and remedy their breach.  *In re*

---

[6] NIKE advised the Magistrate of this law in its papers.  *See* Dkt. 425 at 12-13.  Yet, the law was not referenced in the Recommendations.  It is hornbook law that "[a]fter intervention, the intervener generally is subject to, or governed by, the rules of practice which apply to other parties." *67A C.J.S. Parties § 126 (March 2024)*.  Meaning, the Oregonian is subject to the Court's rules and orders.  Having intervened—and having intervened regarding the protective order—the Oregonian certainly *was* a party at least with respect to the confidential materials it sought.  *DKD Elec. Co., Inc. v. Allied Tube & Conduit, Inc.*, No. CIV 97-1026 BB/LFG, 1998 WL 36030900, at *2 (D.N.M. Mar. 19, 1998)* ("Following federal procedure, the generally recognized rule is that once intervention is granted, the intervenor becomes a party. . . .").  "[O]nce intervention has been granted the intervener becomes a 'party', within the meaning of the Rules[.]"  *Hartley Pen Co. v. Lindy Pen Co., 16 F.R.D. 141, 153 (S.D. Cal. 1954)*.  While of course, "courts may use their inherent discretion to place appropriate conditions or restrictions on an intervening party, *but there is no denying that an intervenor becomes a party to the case*." *Wayside Church v. Van Buren Cnty., No. 1:14-CV-1274, 2023 WL 9064862, at *1 (W.D. Mich. Jan. 3, 2023)* (emphasis added; collecting authority).  None of the authority cited in the Recommendations at page 7 is to the contrary.

*Zyprexa Injunction,* 474 F. Supp. 2d at 417-18 ("It is one of the equitable powers, inherent in every court of justice so long as it retains control of the subject-matter and of the parties, to correct that which has been wrongfully done by virtue of its process") (citation omitted).  An order was violated and the Oregonian is now a litigant subject to the Court's authority.  ***To hold that the Court cannot remedy a clear breach of Court orders would render it powerless against litigants conspiring to achieve the disclosure of confidential documents subject to a protective order.*** This cannot be the result.  It would create a loophole to protective orders that would render them meaningless in the face of the press intervening to gain access to such documents.

Finally, the Recommendations ignore that, in the Ninth Circuit appeal, the Oregonian is an "appellee"—*i.e.,* "part[y] to this appeal" (not an intervenor).  Dkt. No. 408.  The Ninth Circuit Stay Order, which prohibited the unsealing and dissemination of non-party names identified in the Alleged Complaints, undoubtedly applies to the Oregonian as a party to the appeal.  *Id.*  At least *some* of the documents that were disclosed to the Oregonian contained information subject to the Stay Order.  Dkt. Nos. 411 ¶ 9, 411-6.  The Recommendations do not discuss the impact of the Stay Order or Mr. Kish and Ms. Salerno Owens' clear violation of that order, which was thereafter entered in this Court.  *Id.*; Dkt. No. 408.  This breach presents separate grounds by which the Court may issue an injunction requiring the return of the Alleged Complaints.  The Court should use its inherent authority to protect the judicial process from such violations.

### 2.    The Court Has The Inherent Authority To Remedy The Oregonian's Perpetuation Of Plaintiffs' Breaches Of Court Orders.

While the Oregonian is a party subject to the Court's orders (as explained above)—and that adds to the weight of the error—party status is not a condition precedent to an injunctive clawback order and bar.  Even ***without*** party status, the Court's inherent authority to enforce its orders, including protective orders, reaches beyond parties to the litigation to ***even non-parties*** who

improperly obtained the materials from a party to the litigation—*i.e.*, "third parties who aid and abet the violation of their protective orders." *Eli Lilly*, 617 F.3d at 195.

The Second Circuit held as much in *Eli Lilly*.  NIKE cited to *Eli Lilly* in its papers before the Magistrate.  Dkt. No. 425 at 7, 14.  Yet, the Recommendations neither mention nor distinguish *Eli Lilly's* analysis of the Court's power.  This Court should not repeat that error because *Eli Lilly* confirms that this Court has power to reach the Oregonian even if the Oregonian had no party status at all.

In *Eli Lilly*, the plaintiff's expert witness received documents pursuant to a protective order from company Eli Lilly.  *Eli Lilly*, 617 F.3d at 189.  The expert hoped to distribute them to the media.  *Id*.  Not wanting to violate the protective order overtly, the expert instead conspired with third parties to construct a "lawful" and "independent" means of publicizing the documents.  *Id*. at 193.  The expert reached out to a reporter, who put him in touch with an attorney, who, in turn, intervened in an unrelated case and subpoenaed the expert to produce the confidential documents. *Id*. at 189.  The Court held that injunctive relief requiring a return of the documents was a "perfectly appropriate device to foreclose further dissemination of the confidential documents produced under the protective order."  *Id*. at 196.  The Second Circuit reasoned:

> If courts cannot bind third parties who aid and abet the violation of their protective orders, then any party, agent, attorney or expert who comes into possession of material he wanted to use against the producing party could simply disseminate the information quickly, then deal with the damages issue after the fact.  We understand the threat of a sizable damages award may deter this action in some cases, but [the] proposed rule would eviscerate [the] courts' ability to manage discovery and, hence, litigation.

*Id*. at 195.

The same principles apply here.  Many of the details surrounding this supposed "inadvertent disclosure" are unknown (and must still be discovered).  But the little information that is known—at best—confirms a breach; at worst, it suggests coordinated impropriety.  Both

Plaintiffs' counsel and the Oregonian knew the Alleged Complaints were not to be distributed to the Oregonian pending the Ninth Circuit appeal.  Dkt. Nos. 411 ¶ 13, 407.  Ms. Salerno Owens was aware of such fact because she receives this Court's ECF notifications, Dkt. Nos. 426 ¶ 5, 426-2, but still she shared the Alleged Complaints in person via two different devices.  Dkt. No. 416 ¶ 3.  These actions alone suggesting a conscious and collaborative effort between parties, but also:

- Ms. Salerno Owens has stoked publicity surrounding this litigation as a pressure tactic and appears to have an ongoing, working relationship with the Oregonian and Mr. Kish;[7]

- Ms. Salerno Owens has previously denounced the protective order in this matter as "hid[ing] the experience women have had" in an article published in the Portland Business Journal;[8]

---

[7] *See, e.g.*, Matthew Kish, Nike executives subjects of sex discrimination, harassment complaints, plaintiffs claim, THE OREGONIAN, Nov. 14, 2023, https://www.oregonlive.com/business/2023/11/nike-executives-subjects-of-sex-discrimination-harassment-complaints-plaintiffs-claim.html (last visited March 13, 2024); Jeff Manning, Unsealed Nike documents reveal widespread complaints of harassment, pay disparities, THE OREGONIAN, Jan. 18, 2023, https://www.oregonlive.com/business/2023/01/unsealed-nike-documents-reveal-widespread-complaints-of-harassment-pay-disparities.html (last visited on March 13, 2024); Jeff Manning, Class-action lawsuit on Nike:  'where women are devalued and demeaned', THE OREGONIAN, Aug. 10, 2018, https://www.oregonlive.com/business/2018/08/class_action_lawsuit_on_nike_w.html (last visited March 13, 2024); Matthew Kish, Nike says it has made changes to improve its work culture. But employees are still making new discrimination complaints amid an ongoing lawsuit, lawyer says, BUSINESS INSIDER, Sept. 21, 2022, https://www.businessinsider.com/nike-employees-continue-to-make-new-discrimination-claims-lawyer-says-2022-9 (last visited March 13, 2024); Matthew Kish, Deposition shakes up Nike pay discrimination lawsuit; Nike wants it barred, BUSINESS INSIDER, Oct. 5, 2023, https://www.oregonlive.com/business/2023/10/deposition-shakes-up-nike-pay-discrimination-lawsuit-nike-wants-it-barred.html (last visited March 13, 2024).

[8] Prince Decl. Ex. D; Chris Rouch, Kish joins the Oregonian to cover banks and apparel companies, TALKING BIZ NEWS, Sept. 25, 2023 https://talkingbiznews.com/media-news/kish-joins-the-oregonian-to-cover-banks-and-apparel-companies/ (last visited March 13, 2024).

Page 19 – NIKE, INC.'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS & RECOMMENDATION, OR MOTION TO STAY PENDING APPEAL

- Ms. Salerno Owens apparently asked her team, prior to meeting Mr. Kish, to compile the PDF that she would later send to Mr. Kish (*see* Dkt. No. 411 ¶ 4);

- Purportedly, neither Ms. Salerno Owens nor her team noticed the PDF contained significantly more pages of Alleged Complaints than what is available publicly (*compare* Dkt. No. 411 ¶ 9 *with* Dkt. Nos. 284-6 (Ex. 50), 285-1 (Ex. 52), 290 (Ex. 9)); and

- Both Plaintiffs' counsel and the Oregonian kept the news of their breach from NIKE and two different courts (this one and the Ninth Circuit) for six days.

Much like *Eli Lilly*, the Oregonian, at a minimum, acted in concert with Plaintiffs in breaching the Court's protective order and the Ninth Circuit's Stay Order. Whether or not these violations were intentional is yet to be clear, but at the very least, the record reflects that the Oregonian knew the Plaintiffs violated both of these orders by giving them the Alleged Complaints. The Court has the power to issue injunctive relief to clawback the Alleged Complaints so that the Plaintiffs and "other persons who may be in active concert or participating with [them]" (including the Oregonian) are prevented from benefiting from their breach of these court orders. *See Redapt Inc. v. Parker*, No. 2:20-cv-00862-JRC, 2020 WL 3128859, at *1, 6 (W.D. Wash. June 11, 2020) (granting an order barring the use of stolen confidential information "binding on any such person who has or may have access to the information, devices, or materials that are the subject of this order and who received actual notice of this Order").

In the decision the Second Circuit *affirmed* in *Eli Lilly*, venerated Judge Jack Weintsetin held that "[t]he necessity of enjoining dissemination and requiring return of the sealed documents *is not limited to those* who were bound by the terms of [the Protective Order.]" *In re Zyprexa Injunction*, 474 F. Supp. 2d at 427 (emphasis added). Instead, "[t]he power to enjoin extends to

persons and organizations whose activities present a risk of irreparable harm to petitioner that can not be alleviated by means other than injunction." _Id._  So too here.  The Magistrate erred in her legal conclusion otherwise.

C.      **The First Amendment Does Not Bar An Injunction Against The Oregonian.**

The Magistrate's Recommendations also erred in its alternative proposed holding that the First Amendment's prior restraint doctrine governs.  It does not.  Because the Oregonian received these documents from sources in this litigation—_i.e._, Plaintiffs' counsel who received them from discovery—constitutional concerns do not bar the Court from remedying the breaches or prohibiting the exploitation of court processes.  In a decision NIKE cited in its papers, but which the Magistrate's Recommendations fail to address, the Fifth Circuit held that "the right to gather news, much like other first amendment rights, is not absolute. . . ."  _United States v. Brown_, 250 F.3d 907, 914 (5th Cir. 2001).  "[A] trial court may refuse to allow the media to inspect documents not a matter of public record, including jurors' names and addresses; *such orders are distinct from prior restraints.*"  _Id._ at 914-15 (emphasis added).  "To the extent [such] orders warned the media not to publish information illegally gleaned from confidential court files, it was justified."  _Id._  In other words, when the Court polices it rules, its files, its orders, and says that breaches of them are enforceable, "*such orders are distinct from prior restraints.*"  _Id._ (emphasis added).

1.      **The Oregonian Received The Alleged Complaints From The Court's Processes.**

The Recommendations err in framing the question of whether the Court may issue an injunction ordering the return (and preventing the dissemination of) the Alleged Complaints as a prior restraint on speech.  Dkt. No. 431 at 8-9 (". . . before the Court can restrain the Oregonian . . .").  But the question here is not about "prior restraint."  This is a derivative question that only arises after a conclusion that such doctrine can apply in the first place.  The start of this analysis

lies in whether the Oregonian properly obtained these documents and whether it has an unrestrained right to secure protected documents through its reporters. Because the Recommendations improperly framed the question—and skipped this important step—they reached the wrong conclusion, holding that only an "exceptional case" could allow a clawback order.

From a Constitutional perspective, the first question that the Court must address is not whether speech may be restrained, but rather whether the Oregonian had the right to acquire these documents in any manner it sees fit—here, from counsel to a party to this litigation in violation of two court orders. The focus is on gathering, not publication, because an injunction clawing back the Alleged Complaints would come only *as a consequence* of an antecedent violation using the Court's inherent powers to protect itself and the parties before it. The Supreme Court has made clear that "[t]he right to speak and publish *does not carry with it the unrestrained right to gather information*." *Zemel*, 381 U.S. at 16-17 (emphasis added). "It has generally been held that the First Amendment *does not guarantee the press* a constitutional right of special access to information not available to the public generally." *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972) (emphasis added). The Supreme Court in *Branzburg* explained:

> Despite the fact that news gathering may be hampered, the press is regularly excluded from grand jury proceedings, [judicial] conferences, the meetings of other official bodies gathered in executive session, and the meetings of private organizations. Newsmen have no constitutional right of access to the scenes of crime or disaster when the general public is excluded, and they may be prohibited from attending or publishing information about trials if such restrictions are necessary to assure a defendant a fair trial before an impartial tribunal.

*Id*. at 684-85.

The Magistrate's Recommendations do not address *In re Zyprexa Injunction* despite NIKE raising it in its briefing—and despite other courts within this Circuit recognizing its importance, *see, e.g., OSRX, Inc. v. Hyman Phelps & Macnamara, P.C.*, No. 23-CV-1131-BAS-DDL, 2023

WL 8473762, at *3 (S.D. Cal. Dec. 7, 2023) (citing *In re Zyprexa Injunction* (474 F. Supp. 2d at 406) for proposition that "in some circumstances, compelling deposition testimony and production of documents may be reasonable sanctions for violating a protective order"), and still others recognizing its import on the integrity of court processes, *see, e.g., Roe v. United States*, 428 F. App'x 60, 66 (2d Cir. 2011) (citing *In re Zyprexa Injunction* (474 F. Supp. 2d at 417) as good law for requiring the return of sealed documents pursuant to the court's "inherent authority to enforce [its] orders"). *In re Zyprexa Injunction* explains this concept that the question of "prior restraint" is derivative from the right to news-gather inquiry. It understood the question was the Court's power to protect its own protective orders. *See generally In re Zyprexa Injunction*, 474 F. Supp. 2d at 422-24. In addressing the First Amendment, the *In re Zyprexa Injunction* court concluded that an order to return documents obtained in breach of a protective order did not infringe on "*expression*" because the *acquisition* was unlawful: "Injunctions 'issued not because of the content of petitioners' expression . . . but because of . . . prior unlawful conduct' are content neutral." *In re Zyprexa Injunction*, 474 F. Supp. 2d at 420 (quoting *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 764-65 (1994)).

Indeed, this policing of the ***acquiring*** of information has already been ***endorsed*** by the Supreme Court. In *Seattle Times Co. v. Rinehart*, 467 U.S. 20 (1984), the Supreme Court addressed whether a litigant could seek a protective order that prohibited the petitioner from disseminating information gathered through discovery. The Court emphasized that its conclusion rested on where information was sourced from—a party "may disseminate the identical information covered by the protective order as long as the information is gained ***through means independent of the court's processes***." *Id*. at 33-34 (emphasis added). Thus, "continued court control over the discovered information does not raise the same specter of government censorship

that such control might suggest in other situations." *Id*. at 32.

What the Oregonian received here are not only publicly-filed documents sealed by the Stay Order, but ***documents that have never been filed—period.***  The Court was and is allowed to prevent the Oregonian's access to these documents, as confidential discovery materials, without infringing on free speech concerns.  Its continued control over this access—and remedy of the ***breach*** of that control—is likewise not an impingement on the First Amendment under *Seattle Times*.

The Ninth Circuit has confirmed this.  In *Ground Zero Ctr. for Non-Violent Action v. United States Dep't of Navy*, 860 F.3d 1244 (9th Cir. 2017), the Ninth Circuit explained that the law ***permitted*** a District Court order barring the press from using ***litigation*** documents, so long as it did not bar the press from using "independent sources" to gather the information.  *Id*. at 1257-58.  The Ninth Circuit clarified:  "By independent source, we mean what the district court implied: Ground Zero may discuss and distribute the documents in question ***so long as it acquires the documents from a source not involved in this litigation***[.]"  *Id*. at 1258 (emphasis added).

Plaintiffs' counsel is undoubtedly a "source [ ] involved in this litigation."  *Id.*  The Oregonian would never have had the Alleged Complaints ***but for*** this litigation.  NIKE produced the documents to Plaintiffs pursuant to the protective order and upon a motion to compel.  The Alleged Complaints have been subject to hundreds of pages of briefing—briefing in which the Oregonian itself participated.  Plaintiffs then gave those produced (but not publicly filed) documents to the Oregonian.  In short, the Oregonian only gained access to the Alleged Complaints because they were produced in this litigation.  There could be no more precise definition of a "litigation source."

By failing to acknowledge *Ground Zero*, the Recommendations misinterpreted *Seattle*

*Times* to hold that "the Oregonian's possession of these documents did not involve any Court process emanating from this case."  Dkt. No. 431 at 8.  As *Ground Zero* holds, however, non-public discovery from a litigant is a litigation source.

Even Plaintiffs' counsel agrees that the Oregonian's acquisition of these materials was through this litigation.  Dkt. No. 421 at 2 ("Stated another way, absent normal discovery process, the Oregonian would have never obtained these documents[.]").  If the Oregonian were right, the press could freely induce litigants to release confidential documents produced in discovery—an outcome that will teach litigants that they cannot trust that protective orders will be honored or enforced.  This absurd result can be avoided by policing the parties and the protective and stay orders here.  This Court has full authority to do so without a "prior restraint" worry, as *Brown*, *In re Zyprexa Injunction*, and *Eli Lilly* teach.

### D.    The Recommendations Wrongly Deny NIKE Discovery Into Plaintiffs' Disclosure.

The Recommendations also err in denying NIKE's request for discovery.  The Recommendations decline NIKE's request based on the mistaken proposition that the Oregonian was non-complicit in the breach, indicating NIKE's request was "irrelevant to the Oregonian's First Amendment rights."  Dkt. No. 431 at 9.  As explained above, the Oregonian had an extensive role in this litigation prior to coming into possession of the Alleged Complaints.  The Recommendations permitted no discovery and held no argument.  *See also* Prince Decl., ¶ Ex. C (in its March 1, 2024 letter, the Oregonian resisted discovery citing the Magistrate's Recommendations, and stating that the NIKE's discovery is "irrelevant and do[es] not require a response.").  But as the law recognizes, if the source documents are not returned in circumstances such as these, *factual* issues appear.

While *Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001) says a "***stranger's*** illegal conduct

does not suffice to remove the First Amendment shield from speech about a matter of public concern," *id.* (emphasis added), the Oregonian and Plaintiff's counsel ***were no strangers***. ***They agreed to meet the day the Ninth Circuit's Stay Order was issued.*** They had met ***before***.[9] They were looking and sorting through documents tied to this litigation (using an iPad and mobile devices, to evade the protective order's safeguards). Dkt. No. 416 ¶ 3. They both had knowledge of the Court's orders. Both knew that the protected Alleged Complaints should not have been shared. Dkt. No. 426 ¶ 5, Dkt. No. 426-1 at 2-3.

As Judge Weinstein held in *In re Zyprexa Injunction*, *Bartnicki* is inapplicable in circumstances like this one: "Affirmatively inducing the stealing of documents is treated differently from passively accepting stolen documents of public importance for dissemination." *In re Zyprexa Injunction*, 474 F. Supp. 2d at 396. In *In re Zyprexa Injunction*, a reporter knew of a protective order and yet facilitated the sharing of protected materials. Faced with future publications by others, the Court *enjoined* the use of the documents and then held a "full evidentiary hearing." *Id.* at 408. Witnesses were called, and importantly, cross-examined. *Id.* at 408. Discovery was *permitted*. *Id.* at 406.

Contrary to the Recommendations' conclusion here that NIKE's "request for discovery into the circumstances of the disclosure are irrelevant to the Oregonian's First Amendment Rights[,]" Dkt. 431 at 9, the sought after discovery was to test whether the Oregonian had any First Amendment rights ***at all***. Again, as Judge Weinstein explained, "[n]onparties who are prohibited from accessing confidential documents by CMO-3 cannot claim an infringement on their freedom of speech: 'The right to speak and publish does not carry with it the unrestrained right to gather information.'" *In re Zyprexa Injunction*, 474 F. Supp. 2d at 423 (quoting *Zemel*, 381 U.S. at 16–

---

[9] *See, supra* n.7.

17).  Instead, the question turns on the facts—and here the facts have been left untested and accepted at face value.  The Recommendations endorse the Oregonian's view that they were "engaged in the newsgathering process," Dkt. No. 431 at 6, but as discussed above, information gathering **does not** share the same First Amendment protections—leading either to the conclusion that NIKE should prevail (because of the orders alone) or that the Oregonian's factual claims should be tested and not just accepted.[10]  Cross-examination—either through discovery or an evidentiary hearing—is "necessary to truthful factfinding[.]"  *Denham v. Deeds*, 954 F.2d 1501, 1503 (9th Cir. 1992).  This error should be remedied.

E.    **Preservation Of The Status Quo Pending Appeal Is Necessary Here If NIKE's Objections Are Overruled.**

If the Court adopts the Magistrate's Recommendations, the Court should preserve the status quo and at least bar any use until after the Ninth Circuit rules on any appeal, or at a minimum, for fourteen (14) days so that NIKE may ask the Ninth Circuit for an injunction pending appeal.  *See, e.g.*, *Sweet v. City of Mesa*, No. CV-17-00152-PHX-GMS, 2022 WL 912561, at *3 (D. Ariz. Mar. 29, 2022) (the *Nken*[11] factors apply "when the parties seek to stay the *effect* of a court's order") (emphasis in original); *Rice v. Cayetano*, 941 F. Supp. 1529, 1553 (D. Haw. 1996) (denying a motion for preliminary injunction, but "stay[ing] the effect of its order . . . to allow the plaintiffs an opportunity to appeal th[e] order").  As borne out by the Ninth Circuit's earlier order preserving the status quo pending appeal, *see* Dkt. No. 408, this Court and the Ninth Circuit both understand the importance of preserving appellate rights—and forestalling actions until legal rights can be determined.  *See, e.g.*, *Se. Ala. Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097,

---

[10] Since the Magistrate issued her Recommendations, both the Plaintiffs and the Oregonian have refused to respond to discovery about what happened, hiding the circumstances of an admitted breach.  *See* Prince Decl., Exs. A-C.

[11] *Nken v. Holder*, 556 U.S. 418, 434-35 (2009).

1100 (9th Cir. 2006) ("In deciding whether to grant an injunction pending appeal, the court balances the plaintiff's likelihood of success against the relative hardship to the parties.") (citations and quotation marks omitted).

The injunction analysis pending appeal is comparable to an appellate stay and in turn comparable to a preliminary injunction analysis. *See, e.g.*, *Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 367 (9th Cir. 2016) ("The standard for evaluating an injunction pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction."); *Nken*, 556 U.S. at 434 ("There is substantial overlap between these and the [stay] factors governing preliminary injunctions[.]"). NIKE satisfies the four factors considered in deciding whether to stay the effect of any order: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006-07 (9th Cir. 2020) (quoting *Nken*, 556 U.S. at 434-435). In considering the stay request, this Court applies a "sliding scale" approach such that "a stronger showing of one element may offset a weaker showing of another." *Id*. at 1007.

### 1.    There Will Be Irreparable Injury Without A Stay Pending Appeal.

Non-parties to this suit will be irreparably harmed absent a stay pending an appeal of the Recommendations. As the Oregonian has made clear, it does not intend to comply with this Court's protective order or the Ninth Circuit's Stay Order. It will immediately publicize the Alleged Complaints protected by the stay—which the Ninth Circuit has already confirmed will cause irreparable harm, Dkt. No. 408—*and* the remaining contents of the Alleged Complaints, much of which has never been filed in this action. Thus, the necessary result from the absence of a stay is not that individuals may log onto PACER to view documents used in support of the

parties' claims and defenses; it is that the broader public will have immediate access to confidential discovery materials never filed in this case via the Oregonian's (and likely others') publication.

"[T]he wrongful disclosure of sensitive information is inherently irreparable." *CPC Pat. Techs. PTY Ltd. v. Apple, Inc.*, No. 21-mc-80091-JST, 2024 WL 393492, at *3 (N.D. Cal. Feb. 1, 2024) (citing *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010)).  Publication of the Alleged Complaints will bring embarrassment, emotional damage, and reputational harm to individuals named within them—*e.g.*, loss of professional opportunities, personal humiliation and ridicule, impacted personal and professional relationships and networks, etc.  Once publicized, the information within them can never be fully clawed back.  *See Ball v. Skillz Inc.*, No. 2:20-cv-00888-JAD-BNW, 2020 WL 10180904, at *2 (D. Nev. Nov. 16, 2020), *aff'd*, *Roe v. Skillz, Inc.*, 858 F. App'x 240 (9th Cir. 2021) (finding irreparable injury absent stay because of inability to claw back revealed information from public record).

This irreparable harm also frustrates multiple appeals.  "An appeal after disclosure" cannot vindicate the "irreparable harm a party likely will suffer if [documents are] erroneously . . . disclose[d]." *Hernandez*, 604 F.3d at 1101 (citation omitted).  Any appeal of this issue, as well as the unsealing of the individuals' names already on appeal, may be mooted by the Oregonian's publication.

## 2.    At Minimum, A Stay Is Necessary Given NIKE Has Raised Serious Legal Questions.

NIKE's likelihood of success on appeal also weighs in NIKE's favor.  At this stage, NIKE need only establish that success is a "reasonable probability," a "*fair prospect*," or that "serious legal questions are raised." *Leiva-Perez v. Holder*, 640 F.3d 962, 967-968 (9th Cir. 2011) (citations omitted, emphasis in original).  The Ninth Circuit has maintained that none of these standards "demand a showing that success is more likely than not." *Id*. at 968.  Here, NIKE has

shown a "reasonable probability" and "fair prospect" necessary to "articulate the minimum quantum of likely success necessary to justify a stay." *Id*. at 967 (citation omitted).  As mentioned above, NIKE has satisfied this standard because *de novo* review of the Recommendations indicate they should be vacated under Federal Rule of Civil Procedure, Rule 72(b), for the reasons set forth above.  This issue was wrongly framed as an issue of constitutional concerns, rather than one of judicial integrity.  NIKE's demonstrated "fair prospect" on appeal is further amplified given the palpable risk of irreparable harm.  *See Flores v. Barr*, 977 F.3d 742, 746 (9th Cir. 2020), *aff'd*, 3 F.4th 1145 (9th Cir. 2021); *see also* Dkt. No. 407 (based on the stay factors, the Ninth Circuit already granted NIKE a stay pending appeal).

### 3.    The Balance Of Hardships Favors NIKE And Its Employees.

A stay would not injure any interested party.  The Oregonian was never supposed to obtain these documents.  It has no property rights or any constitutional rights to the Alleged Complaints.  Nor does the Oregonian's impatience warrant disregarding the judicial process.  Although "[o]ne may sympathize with the petitioners' impatient commitment to their cause . . . respect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom." *Walker v. City of Birmingham*, 388 U.S. 307, 321 (1967).  If the Oregonian can convince the Ninth Circuit that it has a right to publish the Alleged Complaints, it will have lawful access in due course.  And if the Oregonian is not ultimately entitled to these documents, the Oregonian will suffer no harm.  In fact, returning the documents is the ***only way to ensure that no one is harmed***.

### 4.    Public Interest Favors A Stay Pending Appeal.

NIKE's position protects various significant public interests.  First, granting a stay would preserve the integrity of the judicial system, by preserving NIKE's right to appeal not one, but two orders.  And because the merits of NIKE's appeals impact public interests in their own right—

namely, non-party privacy concerns and the Court's authority to remedy violation of orders—the public interest doubly favors a stay. If denied a stay, resolution of this issue would be mooted far in advance of being heard by the Ninth Circuit. *CPC. Pat. Techs.*, 2024 WL 393492, at *4 (a "stay is warranted to preserve the status quo while appellate proceedings are pending" so as not to "risk [ ] mootness while Apple exercises its right to appeal").

By contrast, minimal harm would befall the public interest if the status quo is preserved pending appeal. Again, the documents that the Oregonian wishes to publish are not relevant to claims of the named Plaintiffs here. Dkt. No. 343 at 13 ("The presumptive press and public right to judicial records flows from the rationale that the public is entitled to learn about the judicial process itself, including the bases behind judicial decisions that often exert far-reaching effects on society").

Second, the Court should consider the significant public interest inherent in encouraging employees to raise workplace concerns without risk that their names will be splashed across the news wires without their consent. The chilling effect such precedent could have on workplace confidential reporting infringes on that significant public interest.

Third, adoption of the Recommendations would also discourage litigants from producing discovery in the future, compromising faith in the free exchange of information across federal litigation and encouraging withholding crucial documents due to their sensitivity.

In response, the Oregonian will likely seek to cloak themselves in the First Amendment and claim the public interest breaks in its favor. And, while NIKE acknowledges there is law recognizing the general (and strong) public interest in the First Amendment, *see, e.g., Sammartano v. First Jud. Dist. Ct., in & for Cnty. of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002), to agree with those arguments is to miss that the question here is on the ***gathering*** of information and the

protection of Court processes.  The public's interest in the press does "not trump the strong federal interest in enforcing court orders[.]"  *In re Special Proc.*, 291 F. Supp. 2d 44, 56-57 (D.R.I. 2003), *aff'd*, 373 F.3d 37 (1st Cir. 2004).  To the contrary, respect and adherence to court orders is at the zenith of public interest:  "The public interest demands strict adherence to judicial decrees." *Valdez v. City & Cnty. of Denver*, 878 F.2d 1285, 1289 (10th Cir. 1989).  Albeit in a different context, the Ninth Circuit has described "the public interest in the enforcement of court orders" as "*essential* to the effective functioning of our judicial process[.]"  *Engebretson v. Mahoney*, 724 F.3d 1034, 1041 (9th Cir. 2013) (emphasis added; citations omitted).  That essential respect for court orders was breached here.  It is—at a minimum—in the public interest to know whether that may be cured ***before*** the consequential legal questions presented here are mooted.

### 5.    The Court Should Hold Oral Argument.

The issues at stake here are admittedly weighty.  Courts in this District have held argument on objections to a Magistrate's ruling in the past, *see, e.g., Tallacus v. Sebelius,* No. 3:11-CV-833-AC, 2012 WL 1340362, at *1 (D. Or. Apr. 18, 2012) (noting oral argument); *Memmott v. OneWest Bank, FSB*, No. 10-3042-CL, 2011 WL 1559298, at *1 (D. Or. Apr. 25, 2011) ("I presided over oral arguments regarding the objections."), and argument here would allow the Court to press all counsel on the facts and test the legal arguments presented.

As Justice Brennan once explained:  "I have had too many occasions when my judgment of a decision has turned on what happened in oral argument, not to be terribly concerned for myself were I to be denied oral argument."  *Accord* Commission on Revision of the Federal Court Appellate System Structure and Internal Procedures:  Recommendations for Change, 67 F.R.D. 195, 254 (1975) (quoting the late Justice Brennan). So too here.  The integrity of court orders and the integrity of the judicial process is challenged by a (false) appeal to the First Amendment.  Surely the gravity of those questions warrants argument.

IV.    <u>**CONCLUSION**</u>

For the reasons outlined above, and pursuant to <u>Federal Rule of Civil Procedure, Rule 72(b)</u>, NIKE respectfully requests that the Recommendations are set aside, and that the Court issue an order containing an injunction that requires the Oregonian to (1) return the Alleged Complaints, (2) refuse to disseminate them, and (3) destroy the copies it currently possesses.  NIKE further requests that the Court confirm that both Plaintiffs' counsel and the Oregonian are subject to discovery regarding their violation of the protective order and stay orders.

In the event the Court overrules these objections, NIKE requests that the Court preserve the status quo and stay the effect of any order denying the injunction pending the resolution of NIKE's appeal of that order to prevent irreparable harm to non-party individuals.  Alternatively, NIKE would ask that the status quo be preserved for fourteen days (14) so that it may seek interim relief from the Ninth Circuit.

Date:  March 13, 2024

/S/ Daniel Prince
DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California  90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

JOHN A. BERG, OSB# 120018
jberg@littler.com
PAUL E. CIRNER, OSB# 191471
pcirner@littler.com
LITTLER MENDELSON P.C.
1300 SW Fifth Avenue
Wells Fargo Tower, Suite 2050
Portland, Oregon  97201
Telephone:  (503) 221-0309
Facsimile:  (503) 242-2457