Laura E. Rosenbaum, OSB No. 110061
laura.rosenbaum@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

Daniel Prince (admitted *pro hac vice*)
danielprince@paulhastings.com
Felicia A. Davis (admitted *pro hac vice* )
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California 90071-2228
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Attorneys for Defendant NIKE, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL and SARA JOHNSTON, individually and on behalf of others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>NIKE, INC., an Oregon corporation,<br><br>　　　　　　　Defendant. | Case No.: 3:18-cv-01477-JR<br><br>**DEFENDANT NIKE, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL (ECF NO. 451)** |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1
II. RELEVANT BACKGROUND ........................................................................................... 2
    A. RFP No. 134 ............................................................................................................ 2
    B. RFP No. 137 ............................................................................................................ 3
    C. Requests Relating to Danny Tawiah ....................................................................... 3
III. ARGUMENT ....................................................................................................................... 4
    A. RFP No. 134 Seeks Information that Does Not Exist or Is Not Proportional to the Needs of the Case ...................................................................... 4
    B. RFP No. 137 Seeks Irrelevant Drafts of Eight-Year Old Presentations. ................ 7
    C. Plaintiffs Seek to Compel Discovery that NIKE Has Already Produced. .............. 8
IV. CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bartech Sys. Int'l, Inc. v. Mobile Simple Sols, Inc.*,
    2018 U.S. Dist. LEXIS 64478 (D. Nev. Jan. 31, 2018) ..........................................................9,10

*Boyd v. Etchebehere*,
    2016 WL 829167 (E.D. Cal. Mar. 3, 2016) ...................................................................................8

*Crane v. Holder*,
    66 F. Supp. 3d 1391 (N.D. Ala. 2014) ..........................................................................................7

*Kizzee v. Walmart, Inc.*,
    2011 WL 3566881 (D. Ariz. Aug. 15, 2011) .................................................................................9

*McCamey v. Hewlett Packard Co.*,
    2011 U.S. Dist. LEXIS 102569 (E.D. Cal. Sep. 9, 2011) ............................................................10

*Pacific Marine Center, Inc. v. Philadelphia Indemnity Insurance Company*,
    2016 WL 110291 (E.D. Cal. January 11, 2016) ...........................................................................9

*Rose v. Wells Fargo & Co.*,
    902 F.2d 1417 (9th Cir. 1990) ......................................................................................................7

*Yphantides v. County of San Diego*,
    2022 WL 3362271 (S.D. Cal. Aug. 15, 2022) ..............................................................................6

**Rules**

Fed. R. Civ. P. 26(b)(1) .........................................................................................................................6

I.  **INTRODUCTION**

Plaintiffs' Motion to Compel recasts previously-decided issues about documents that do not exist and/or which are irrelevant to the claims asserted by the four named Plaintiffs. Plaintiffs here seek belated discovery despite the Court's order denying class certification and the Ninth Circuit's denial of Plaintiffs' Rule 23(f) petition. *See, e.g.,* ECF Nos. 349 (seeking phantom documents regarding a pre-October 2017 policy); 432 (belatedly seeking discovery relating to "Starfish"); and 443 (seeking privileged discovery and depositions relating to same). None of the information Plaintiffs seek can or does alter the Court's finding that "the evidence [in this case] suggests only that individual managers had discretion," not that there was a "company-wide policy" of discrimination against women.  ECF No. 386 at 5-6.  Plaintiffs' "mere suspicion" that additional discovery must exist regarding previously-decided issues does not raise "a colorable basis" to burden NIKE with any further discovery obligations.  ECF No. 386 at 4-5.  The Motion should be denied in its entirety.

First, Plaintiffs seek documents to prove a negative—that is, the absence of a common policy or practice at NIKE regarding pay and promotions decisions.  That is impossible.  Nor is it proportional to the needs of this four-Plaintiff case (or even possible, for that matter) to conduct a meaningful search of thousands of email accounts across the organization to attempt to identify information regarding the individual experiences of people that have no connection to the Plaintiffs.  Plaintiffs make no effort to connect any of the information they seek to a single named Plaintiff.  NIKE has produced documents regarding pay decisions for Plaintiffs and their purported comparators.  Nothing more is warranted, particularly at this late stage.

Second, Plaintiffs seek *drafts* of certain presentations dating back over *eight years ago* even though NIKE produced responsive documents in its possession over *four years ago*. Plaintiffs do not explain the reason for their delay in seeking this discovery, why such evidence

Page 1   -   NIKE'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

would be relevant after the denial of class certification, or how *drafts* could impact *any* claim here. Drafts do not reflect NIKE's policies or practices, and they certainly do not discount the extensive evidence that this Court has already found supporting the conclusion that there is ***not*** a common policy or practice of discrimination against women in pay and promotions decisions. ECF No. 386 at 5-6; *see* ECF No. 310.

Third, Plaintiffs rehash discovery requests pertaining to alleged harassment claims against Danny Tawiah that were served ***five years ago***. Plaintiffs have already moved to compel such discovery, and NIKE produced it. Plaintiffs otherwise seek to compel more recent requests pertaining to Tawiah, but NIKE has confirmed that it produced all of the documents that it was able to locate ***after searching emails for custodians identified by Plaintiffs***.

Plaintiffs refuse to accept that class certification was denied, discovery is closed, and the information they seek just might not exist (if it is relevant at all). The Motion should be denied.

## II.     RELEVANT BACKGROUND

### A.     RFP No. 134

Plaintiffs served RFP No. 134 on December 3, 2023, seeking all documents and communications related to testimony from a deposition or declaration that NIKE (a) has relied on in a court filing; or (b) may rely on at summary judgment. Declaration of Daniel Prince ("Prince Dec.") ¶ 3; ECF No. 452-2 at 2. NIKE objected, *inter alia*, on the grounds that the RFP was premature because NIKE had not identified witnesses for summary judgment.[1] NIKE also explained that class certification declarations "are not relevant to the four named Plaintiffs' individual claims." ECF No. 452-2 at 2. NIKE also objected on the grounds of proportionality, vagueness, and over breadth. *Id*. The parties met and conferred on January 12, 2024 and

---

[1] Of course, NIKE has now submitted a motion for summary adjudication without relying on ***any*** witness declarations, and the deadline for dispositive motions has passed. ECF Nos. 455 & 456.

exchanged letters.  Plaintiffs' Motion was the first time NIKE saw Plaintiffs' proposed "narrowed" RFP No. 134, but the issues regarding proportionality and burden remain, as they seek broad categories of documents pertaining to testimony regarding individualized manager discretion used only at class certification.  ECF No. 451-1; Prince Decl. ¶ 3.

      **B.**      **RFP No. 137**

Plaintiffs also served RFP No. 137 on December 3, 2023.  Prince Decl. ¶ 3.  It sought all drafts and communications relating to drafting and presenting, and any videos of, certain presentations.  ECF No. 452-2 at 6.  After a meet and confer, NIKE confirmed that it had "substantially produced such documents that it has been able to locate after a reasonable search."  Prince Decl., ¶ 3, Ex. B.  NIKE also clarified that it would "continue[ ] to search for videos relating to the presentations, but has thus far been unable to locate any responsive videos."  *Id*.  NIKE declined to produce drafts because they "do not reflect NIKE policies or practices, nor do they reflect directions to the relevant employees making the pay and other decisions[.]"  *Id*.  NIKE confirmed these positions in supplemental responses on February 12, 2024.  ECF No. 452-2.  NIKE produced communications relating to the presentations, but did not locate any videos.

      **C.**      **Requests Relating to Danny Tawiah**

Plaintiffs notably do not attach the RFPs relating to Danny Tawiah in the Declaration supporting their Motion.  *See* ECF No. 452.  This is because more than half of the requests were served in May 2019 during class certification discovery, and the Court already ruled on several motions concerning the exact same documents.

Indeed, in October 2019, NIKE was ordered to produce "complaints of sexual harassment/discrimination linked to policies of pay/promotions and job duties" regarding Tawiah.  ECF No. 89.  NIKE produced the complaints shortly thereafter.  Prince Decl. ¶ 6.  In March 2020, upon another motion to compel, the Court ordered NIKE to produce unredacted

copies of those same documents; NIKE did so. *Id*. A few months later, Plaintiffs moved again to compel additional communications pertaining to Tawiah and NIKE was ordered to produce. *Id*. NIKE complied and produced email communications surrounding a complaint identified by Plaintiffs. *Id*. Discovery on these requests closed in May 2021. ECF No. 142.

Plaintiffs then served additional requests pertaining to Tawiah in October 2023. Prince Decl. ¶ 7. RFP No. 102 sought documents pertaining to specific complaints made about Tawiah. *Id*. RFP No. 104 sought documents relating to Tawiah's promotion in 2016. *Id*. RFP No. 105 sought documents relating to the reasons why Tyler Allen was copied on Tawiah's emails. *Id*. During a meet and confer on December 27, 2023, Plaintiffs asked NIKE to search specific custodians for documents responsive to RFP No. 104. *Id*. ¶ 8. NIKE did so and produced documents. *Id*. In supplemental responses served on February 29, 2024, NIKE confirmed that it had produced and "is not withholding responsive documents[.]" *Id*. Ex. E.

Finally, Plaintiffs served RFP 140 on March 14, 2024, which sought documents sufficient to show all reasons why Tawiah was discharged and any payments made to Tawiah related to his discharge. *Id*. ¶ 9, Ex. F. NIKE objected on the ground that this has no bearing on the Plaintiffs' individual claims. *Id*. Plaintiffs never met and conferred with NIKE regarding RFP No. 140.

### III.   ARGUMENT

#### A.   RFP No. 134 Seeks Information that Does Not Exist or Is Not Proportional to the Needs of the Case.

Plaintiffs claim to seek information relating to the declarations that NIKE submitted in connection with class certification briefing. ECF No. 451 at 4. There are several issues with Plaintiffs' position. First, in effect, Plaintiffs seeks documents to illustrate the absence of a policy or practice at NIKE regarding pay and promotions decisions. This is nonsensical, and Exhibit 1 of Plaintiffs' Motion confirms as much. *See* ECF No. 452-1. The testimony consists

of individualized experiences of managers and employees at NIKE, demonstrating the lack of uniform practices and rather, manager discretion.[2] *See, e.g., Id*. at 3 ("I have the discretion to set base pay increases with this budget"); *Id*. at 4 ("the hiring manager will make the decision because it is their team and their business around what the open position should be"); *Id*. at 5 ("we do not contact the previous candidate's previous employer around compensation"); ("I do not recall being asked for my current salary"). In fact, Plaintiffs summarize the testimony for which it seeks documentary support: "[m]anagers are responsible for making pay decisions." *Id*. at 1. It is not surprising that NIKE would not have written policies demonstrating the significant manager discretion exercised by thousands of NIKE employees. This is exactly why Plaintiffs could not certify a class. *Id*. at 6 ("As noted in the Court's ruling on class certification, the evidence suggests only that individual hiring managers had discretion to use such data."). "The Court cannot order a party to produce documents that do not exist." ECF No. 386 at 4.

Second, and similarly, to the extent Plaintiffs seek email correspondence and other non-policy documents supporting the identified testimony, the request imposes a burden far beyond what is proportional to the case. While Plaintiffs boast that they have narrowed RFP No. 134, the specific testimony they cite is no less onerous and no more relevant to Plaintiffs' claims. The statements are still broad, untargeted, and relate to people other than Plaintiffs. Requiring NIKE to search for emails across thousands of employees without limitations or any connection to the Plaintiffs is unduly burdensome, at best. Fed. R. Civ. P. 26(b)(1); *Yphantides v. County of San Diego*, 2022 WL 3362271, at *8 (S.D. Cal. Aug. 15, 2022) ("Requiring Defendant to scour

---

[2] Some of the testimony relates to privileged information. ECF No. 452-1 at 4. Plaintiffs seek documents demonstrating that NIKE "shared the Starfish complaints with third-party counsel" and that "third-party counsel led an investigation and follow-up for the concerns raised. *Id*. These are facially privileged. Plaintiffs' repeated attempts to obtain privileged information should be rejected. *See, e.g.*, Dkt. Nos. 439 at 2, 433 at 10-12.

through potentially tens of thousands of emails based merely on Plaintiff's unsupported allegations that other individuals forwarded emails improperly—when that activity is not a basis of his termination—constitutes an undue burden.").

And even the more targeted testimony from individual employees imposes an unreasonable burden. For example, Plaintiffs seek documents supporting testimony that "Job codes that share the same Job Subfamily and Job Level may not be the same from a compensation survey or actual day-to-day perspective at NIKE – it depends on the job."[3] ECF No. 452-1 at 1. This request is not tied to any job code occupied by one of the four named Plaintiffs. Moreover, the very nature of this testimony is that there is considerable variation not only between job codes, but also *within* job codes, to which there are many employees assigned. Even assuming that documents exist that list exactly how the jobs were different (which is unlikely), searching for any documents or emails that could show any differences between jobs would be unduly burdensome (as almost any email from an employee has a tendency to show their job duties) with little benefit, given their lack of relevance to the *named Plaintiffs'* individual claims. The other testimony, focused on specific managers' experiences with pay decisions or employees' recollection of their specific hiring circumstances, is similarly not proportional to the needs of the case (any only further highlights why certification was not proper). Not one of these declarants are connected to the named Plaintiffs. Testimony about their own personal (and varied) experiences have no relevance to these four claims.

Third, because employees have wide-ranging experiences, and because there was no common, class-wide practice, it is not surprising that NIKE presented such evidence in the form of witness testimony. It is also not unusual to use testimony in this way because the

---

[3] NIKE has answered interrogatories regarding job codes for the Plaintiffs and comparators.

Page 6   -   NIKE'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

individualized thought processes that go into making hiring, pay, and promotions decisions are not always documented step-by-step. *E.g.*, ECF No. 187-1 at 24, 78, 229, 245, 252. Plaintiffs could have deposed any of NIKE's declarants during the class certification stage of this case. They chose not to. Their complaints today are simply a belated and improper attempt to unravel the class certification order (despite their own failure to submit a single declaration from the putative class). ECF No. 310 at 53.

Fourth, Plaintiffs claim that NIKE has not produced "a single contemporaneous email" regarding its compensation policies, particularly with regard to starting pay. ECF No. 451 at 6. This is wrong. NIKE searched for and produced documents regarding setting starting pay, salary increases, and promotions for each of the named Plaintiffs and their alleged male comparators—*i.e.*, what may be relevant to the remaining claims. Prince Decl. ¶ 4.

**B.    RFP No. 137 Seeks Irrelevant Drafts of Eight-Year Old Presentations.**

Plaintiffs seek drafts and communications relating to certain presentations that NIKE has produced. ECF No. 451 at 7. Plaintiffs claim that these documents contain "highly relevant statements" about NIKE's jobs and employees, which will, in turn, be relevant to their disparate impact and disparate treatment claims. *Id*. But Plaintiffs offer no support or explanation for how drafts of these documents are relevant. They are not. Drafts of presentations do not reflect NIKE's policies or practices (to the extent they existed), nor do they reflect instructions provided to managers (only the final presentations do this). Thus, they cannot support a disparate impact claim, as the focus of a disparate impact claim is "the ***consequences*** of employment practices, not simply the motivation." *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir. 1990) (emphasis added); *Crane v. Holder*, 66 F. Supp. 3d 1391, 1406 (N.D. Ala. 2014) ("discussion of Regan's alleged comments regarding Native Americans, his alleged opinions regarding that group of individuals, and his statements regarding plaintiff's work history are irrelevant in a

disparate impact scenario").

Moreover, NIKE produced what may be relevant to Plaintiffs' claims. NIKE searched for communications regarding *presenting* the presentations, and videos of the presentations, and produced what it was able to locate after a reasonable search. Prince Decl. ¶ 5. All but two of the presentations are from 2016—two years prior to the initiation of this litigation. NIKE is not withholding the discovery; it simply cannot find videos regarding presentations from 2016 that are no longer used by the company (to the extent the videos ever existed in the first place). *See* [Boyd v. Etchebehere, 2016 WL 829167, at *4 (E.D. Cal. Mar. 3, 2016)](#) (plaintiff must accept defendant's representation that minutes from 2010 to 2012, do not exist or could not be located).

The evidence produced in this litigation demonstrates the lack of a common policy or practice. Plaintiffs cannot identify why or how drafts would change that fact. This Court has previously acknowledged that Plaintiffs have failed to present good reasons to require NIKE to search again. ECF No. 386 at 5. The same is true here. The presentations alone, most of which Plaintiffs have now had in their possession since August 2020 (well before class certification), Prince Decl. ¶ 5, "do[ ] not present a colorable basis for yet another search for responsive documents as it does not suggest the existence of a company-wide policy given the evidence produced through previous discovery including depositions[.]" ECF No. 386 at 5. The burden of searching for emails about presentations that are now *eight years old* outweighs any benefit.

C.     **Plaintiffs Seek to Compel Discovery that NIKE Has Already Produced.**

Plaintiffs group together nine different requests relating to former employee Danny Tawiah to mask that they seek to compel discovery that now dates back ***five years*** and that ***NIKE has already produced***. Indeed, five of those nine requests were propounded in May 2019 and have already been the subject of discovery motions. NIKE has produced the responsive and non-privileged documents in its possession. Prince Decl. ¶ 6. In fact, these discovery requests were

Page 8   -   NIKE'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

served during class discovery, which concluded in May 2021. ECF No. 142. Yet, Plaintiffs seek to compel again. This is improper. *See, e.g., Pacific Marine Center, Inc. v. Philadelphia Indemnity Insurance Company*, 2016 WL 110291, at *4 (E.D. Cal. Jan. 11, 2016) (denying motion to compel filed after discovery deadline); *Kizzee v. Walmart, Inc.*, 2011 WL 3566881 (D. Ariz. Aug. 15, 2011) (denying motion to compel filed three months after the close of discovery). Regardless, there is nothing left to produce.

The circumstances here warrant a denial of Plaintiffs' renewed motion for this discovery: Plaintiffs served this discovery five years ago; Plaintiffs knew about NIKE's production for at least four years; class discovery has closed; Plaintiffs have offered no explanation for their delay; NIKE has produced documents concerning Tawiah; and now Plaintiffs seek to compel additional, non-existent documents on the very last day of fact discovery. *See Bartech Sys. Int'l, Inc. v. Mobile Simple Sols, Inc.*, 2018 U.S. Dist. LEXIS 64478, at *6 (D. Nev. Jan. 31, 2018) (examining "(1) the length of time since expiration of the deadline; (2) the length of time the moving party has known about the discovery; (3) whether the discovery deadline has been previously extended; (4) the explanation for the tardiness or delay; (5) the age of the case; (6) any prejudice to the party from whom the discovery is sought; and (7) disruption of the court's schedule") (citing *Days Inn Worldwide, Inc. v. Sonia Investments*, 237 F.R.D. 395, 397 (N.D. Tex. 2006)).

With regard to Plaintiffs' more recent requests (*i.e.,* RFP Nos. 102, 104, 105, 140), Plaintiffs' motion should be denied as well. NIKE has conducted reasonable searches for documents and produced what it was able to locate. Prince Decl. ¶¶ 7-8. Thus, further searches would not be proportional, especially because harassment complaints are irrelevant to Plaintiffs' pay and promotions claims. *See McCamey v. Hewlett Packard Co.*, 2011 U.S. Dist. LEXIS

102569, at *4 n.5 (E.D. Cal. Sep. 9, 2011) (sexual harassment allegations are irrelevant to plaintiff's disability discrimination claim). Notably, even Plaintiffs concede in their opposition to NIKE's motion to compel that the only relevant discovery concerns "whether Nike paid Plaintiffs less than similarly situated male colleagues in substantially similar or comparable jobs and whether NIKE's lower compensation and fewer promotions were discriminatory based on disparate impact or disparate treatment." ECF No. 464 at 5

Plaintiffs next argue that Genevieve Long testified in her deposition that when she learned that Mr. Tawiah was being considered for a promotion to Vice President, she raised concerns about his purported discriminatory treatment of women. ECF No. 451 at 9. Plaintiffs fail to make the connection between Mr. Tawiah's promotion and Ms. Cahill's claim that she was paid less than her male colleagues. But regardless, NIKE searched for emails with custodians identified by Plaintiffs, ***including Genevieve Long***, and produced what it was able to locate. Prince Decl. ¶ 8. That there are not documents supporting Ms. Long's testimony may, in fact, call into question the accuracy of her recollection. Indeed, Ms. Long herself confirmed that she did not locate any documents on this topic after NIKE subpoenaed her. *Id*. ¶ 10, Ex. G. Thus, the lack of documents does not render NIKE's production insufficient, and it is not grounds for yet another burdensome and disproportionate search on an ancillary issue.

Finally, RFP No. 144 seeks documents sufficient to show all reasons why Mr. Tawiah was discharged, and any payments made to Mr. Tawiah. Again, this evidence is totally irrelevant to Plaintiffs' pay and promotions claims. Mr. Tawiah's compensation (who is not a comparator) does not bear on any discrimination claims, nor does the reason for his separation.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be denied.

Date: April 15, 2024

/S/ Daniel Prince
DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Laura E. Rosenbaum, OSB No. 110061
laura.rosenbaum@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480