JOHN A. BERG, OSB# 120018
jberg@littler.com
PAUL E. CIRNER, OSB# 191471
pcirner@littler.com
LITTLER MENDELSON P.C.
1300 SW Fifth Avenue
Wells Fargo Tower, Suite 2050
Portland, OR 97201
Telephone: (503) 221-0309
Facsimile: (503) 242-2457

DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

Attorneys for Defendant NIKE, INC.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL SARA JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated, | Case No. 3:18-cv-01477-JR |
| Plaintiffs, | **DEFENDANT NIKE INC.'S MOTION FOR SANCTIONS AND CONTEMPT RE: PLAINTIFFS' COUNSEL'S UNAUTHORIZED DISCLOSURE OF CONFIDENTIAL JUDICIAL RECORDS IN VIOLATION OF COURT ORDERS** |
| vs. | |
| NIKE, INC., an Oregon Corporation, | ORAL ARGUMENT AND EXPEDITED HEARING REQUESTED |
| Defendant. | |

# <u>TABLE OF CONTENTS</u>

**Page**

L.R. 7-1 CERTIFICATION ................................................................................................1

MOTION ..........................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................2

I.      INTRODUCTION ..................................................................................................2

II.     PROCEDURAL AND FACTUAL BACKGROUND ...........................................5

      A.    NIKE Produced Confidential Project Starfish Records Under The Protective Order. .........................................................................................6

      B.    Plaintiffs Filed Their Motion For Class Certification Under Seal Containing The Project Starfish Records. .....................................................7

      C.    The Oregonian Intervened To Attempt To Unseal The Confidential Project Starfish Records. .........................................................................................7

      D.    The Project Starfish Records Remained Sealed Pending Appeal Under The Ninth Circuit Stay Order That Was Adopted By The District Court ......................8

      E.    Plaintiffs' Counsel Discloses Confidential Project Starfish Records To The Oregonian *Within Hours* Of The Ninth Circuit Stay Order. ................................10

      F.    The Incredible Excuses And Flouting Of Confidentiality Obligations Is Not A First For Plaintiffs' Counsel. ...................................................................12

III.    LEGAL STANDARDS .......................................................................................13

      A.    The Court Has Authority To (And Should) Disqualify Plaintiffs' Counsel. .........13

      B.    A Contempt Finding Is Appropriate. .................................................................14

      C.    Additional Sanctions Are Necessary Here. .........................................................15

IV.    ANALYSIS ..........................................................................................................16

      A.    This Court Should Issue Punitive Monetary Sanctions To Plaintiffs' Counsel For The Unauthorized Disclosure Of Confidential Records And Award NIKE's Attorneys' Fees And Costs Incurred In Seeking To Enforce The Protective Order And Ninth Circuit Stay Order. ...............................18

      B.    The Court Should Exclude From Evidence Any Testimony, Documents, Information, Or Argument Relating To Or Arising From Project Starfish. ...........19

      C.    The Court Should Compel Disclosure Of The Identities Of The "Many Women" Markowitz Solicited Using The Project Starfish Documents And Require Markowitz To Indemnify NIKE For Its Reasonable Attorneys' Fees And Costs In Any Future Legal Proceeding Markowitz Causes To Be Filed By Those Individuals. ...................................................................................20

      D.    The Court Should Change The Venue For Trial From The Portland Division To The Medford Division And Require Plaintiffs To Pay NIKE's COSTS and Expenses Associated With Travel And Lodging. ...........................................22

      E.    The Court Should Disqualify Markowitz From Representing Plaintiffs. ..............26

V.     CONCLUSION ....................................................................................................27

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

Cases

*Allergan, Inc. v. Sandoz, Inc.*,
   Nos. 2:09-cv-97, 2:09-cv-182, 2:09-cv-348, 2:09-cv-200, 2011 WL 2563238
   (E.D. Tex. June 28, 2011) ........................................................................................20

*Apple, Inc. v. Samsung Elecs. Co.*,
   No. 5:11-CV-01846-LHK (PSG), 2014 WL 12596470 (N.D. Cal. Jan. 29, 2014) ...............15

*Bold Ltd. v. Rocket Resume, Inc.*,
   No. 22-cv-01045-BLF, 2024 WL 589116 (N.D. Cal. Feb. 13, 2024) ....................................26

*Bouchard Transp. Co. v. Tug M/V Ellen S. Bouchard*,
   No. 14 CIV. 0617 (PAC), 2018 WL 1581992 (S.D.N.Y. Mar. 28, 2018).............................20

*Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*,
   264 F. Supp. 2d 914 (N.D. Cal. 2003) ..............................................................................14, 26

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)..................................................................................................................16

*Daniels v. Woodford*,
   428 F.3d 1181 (9th Cir. 2005) ................................................................................................26

*Falstaff Brewing Corp. v. Miller Brewing Co.*,
   702 F.2d 770 (9th Cir. 1983) ..................................................................................................16

*General Signal Corp. v. Donallco, Inc.*,
   787 F.2d 1376 (9th Cir. 1986) ................................................................................................15

*Harcourt Brace Jovanovich Legal and Prof'l Publ'ns, Inc. v. Multistate Legal Studies,*
   *Inc.*,
   26 F.3d 948 (9th Cir. 1994) ....................................................................................................15

*Harmston v. City & Cnty. of S.F.*,
   No. C 07-01186 SI, 2007 WL 3306526 (N.D. Cal. Nov. 6, 2007) ...................................18, 19

*In re County of Los Angeles*,
   223 F.3d 990 (9th Cir. 2000) ..................................................................................................14

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
   10 F.3d 693 (9th Cir. 1993) ....................................................................................................15

*In re Kramer*,
   193 F.3d 1131 (9th Cir. 1999) ................................................................................................13

*In re Porter*,
   268 Or. 417 (1974), *cert. denied*,
   419 U.S. 1056 (1974)..........................................................................................22, 23, 24, 25

*In re Snyder*,
   472 U.S. 634 (1985)................................................................................................................13

*Jackson v. Microsoft Corp.*,
    211 F.R.D. 423 (W.D. Wash. 2002), *aff'd*,
    78 F. App'x 588 (9th Cir. 2003) .................................................................16

*Klein v. Facebook, Inc.*,
    No. 20-CV-08570-LHK, 2021 WL 3053150 (N.D. Cal. July 20, 2021) ................................27

*Knox v. City of Fresno*,
    No. 1:14-cv-00799-EPG, 2016 WL 3365670 (E.D. Cal. June 14, 2016) ..............................19

*Koch v. Greenberg*,
    No. 07 Cv. 9600(BSJ)(DF), 2011 WL 4485975 (S.D.N.Y. Sept. 28, 2011) ...........................20

*Koch v. Greenberg*,
    No. 07 Cv. 9600 (BSJ)(DF), 2012 WL 13063624 (S.D.N.Y. Aug. 23, 2012) ........................20

*Mahboob v. Educ. Credit Mgmt. Corp.*,
    No. 15-cv-0628-TWR-AGS, 2021 WL 818971 (S.D. Cal. Mar. 2, 2021),
    *report and recommendation adopted*,
    No. 15-CV-628 TWR (AGS), 2021 WL 7448532 (S.D. Cal. Mar. 31, 2021).........................21

*Mahboob v. Educ. Credit Mgmt. Corp.*,
    No. 15-CV-628 TWR (AGS), 2021 WL 7448532 (S.D. Cal. Mar. 31, 2021)..................21, 22

*MMR/Wallace Power & Indus., Inc. v. Thames Assocs.*,
    764 F. Supp. 712 (D. Conn. 1991) ...........................................................14

*Omnigen Rsch., LLC v. Wang*,
    No. 6:16-cv-268-MC, 2018 WL 11512767 (D. Or. Nov. 6, 2018)....................................19, 22

*Quatama Park Townhomes Owners Ass'n v. RBC Real Est. Fin., Inc.*,
    365 F. Supp. 3d 1129 (D. Or. 2019) .........................................................14

*Richards v. Jain*,
    168 F. Supp. 2d 1195 (W.D. Wash. 2001)...................................................14

*Roberts v. Legacy Meridian Park Hosp., Inc.*,
    No. 3:13-cv-01136-SI, 2014 WL 294549 (D. Or. Jan. 24, 2014)...................................14

*Scantibodies Lab., Inc. v. Church & Dwight Co.*,
    No. 14-cv-2275 (JGK) (DF), 2016 WL 11271874 (S.D.N.Y. Nov. 4,
    2016) .................................................................. 19 BA_Cite_879573_000057

*Silicon Genesis Corp. v. EV Grp. E. Thallner GmbH*,
    No. 22-cv-04986-JSC, 2023 WL 6882749 (N.D. Cal. Oct. 18, 2023) ...............................15

*Thayer v. Nydigger*,
    No. CIV 95-2004-AS, 1999 WL 1442020 (D. Or. Nov. 23, 1999) ...............................15

*United States EEOC v. Scolari Warehouse Mkts., Inc.*,
    No. 04-0229-DAE-RAM, 2007 WL 9734382 (D. Nev. June 22, 2007)...............................25

*Wickersham v. Eastside Distilling, Inc.*,
    No. 3:20-cv-02182-YY, 2023 WL 8600535 (D. Or. Sep. 14, 2023), *aff'd in part*,
    No. 3:20-cv-02182-YY, 2024 WL 455070 (D. Or. Jan. 25, 2024)...........................13

## RULES

FED. R. CIV. P. 16(f) ................................................................................................15

FED. R. CIV. P. 23(f) ..............................................................................................2, 8

FED. R. CIV. P. 26(b)(5) ............................................................................................4

FED. R. CIV. P. 26(c) ...............................................................................................15

FED. R. CIV. P. 37 ..............................................................................1, 15, 16, 19

FED. R. CIV. P. 37(b) .......................................................................................16, 19

FED. R. CIV. P. 37(b)(2)(A) ...........................................................................15, 16, 19

FED. R. CIV. P. 37(b)(2)(A)(ii-vii) .............................................................................15

FED. R. CIV. P. 37(b)(2)(C) ....................................................................................16

FED. R. CIV. P. 72 ...............................................................................................1, 12

L.R. 7-1 ........................................................................................................................1

L.R. 83-7 ....................................................................................................................14

OR. RULES OF PROF'L CONDUCT 3.4(c) ..........................................................14, 23

OR. RULES OF PROF'L CONDUCT 3.6 .....................................................................24

OR. RULES OF PROF'L CONDUCT 3.6(a) ......................................................14, 23, 24

OR. RULES OF PROF'L CONDUCT 3.6(e) .................................................................14

OR. RULES OF PROF'L CONDUCT 4.4(a) ...........................................................15, 23

## OTHER AUTHORITIES

Elizabeth Hayes, *Holding Court:  Meet the employment law attorney taking on Nikei*,
   PORTLAND BUSINESS JOURNAL, Feb. 23, 2023,
   https://www.bizjournals.com/portland/news/2023/02/23/salerno-owens-markowitz-
   nike.html (last visited March 30, 2024) ..............................................................4

Jeff Manning, *Class-action lawsuit on NIKE:  'where women are devalued and
   demeaned'*, THE OREGONIAN, Aug. 10, 2018,
   https://www.oregonlive.com/business/2018/08/class-
   action_lawsuit_on_NIKE_w.html (last visited Mar. 31, 2024) ..........................17

Jeff Manning, *Unsealed NIKE documents reveal widespread complaints of harassment,
   pay disparities*, THE OREGONIAN, Jan. 18, 2023,
   https://www.oregonlive.com/business/2023/01/unsealed-nike-documents-reveal-
   widespread-complaints-of-harassment-pay-disparities.html (last visited Mar. 31,
   2024) ...............................................................................................7, 17, 23

Matthew Kish, *Deposition shakes up NIKE pay discrimination lawsuit; NIKE wants it
   barred*, BUSINESS INSIDER, Oct. 5, 2023,
   https://www.oregonlive.com/business/2023/10/deposition-shakes-up-nike-pay-
   discrimination-lawsuit-nike-wants-it-barred.html (last visited Mar. 31, 2024) ............17, 24

Matthew Kish, *Meet the Portland lawyer taking on NIKE's 'boys' club' culture*, PORTLAND BUSINESS JOURNAL (bizjournals.com), Aug. 15, 2018 https://www.ijpr.org/politics-government/2016-02-23/documents-oracle-doesnt-want-you-to-read-about-cover-oregon (last visited Mar. 31, 2024) ................................................27

Matthew Kish, *NIKE executives subjects of sex discrimination, harassment complaints, plaintiffs claim*, THE OREGONIAN, Nov. 14, 2023 https://www.oregonlive.com/business/2023/11/nike-executives-subjects-of-sex-discrimination-harassment-complaints-plaintiffs-claim.html (last visited Mar. 31, 2024) ................................................................................................................17

Matthew Kish, *NIKE says it has made changes to improve its work culture. But employees are still making new discrimination complaints amid an ongoing lawsuit, lawyer says*, BUSINESS INSIDER, Sept. 21, 2022, https://www.businessinsider.com/nike-employees-continue-to-make-new-discrimination-claims-lawyer-says-2022-9 (last visited Mar. 31, 2024) ..........................17, 20

Matthew Kish, *Trove of documents details decades of allegations of discrimination, misconduct at Nike*, THE OREGONIAN, Apr. 9, 2024, https://www.oregonlive.com/business/2024/04/trove-of-documents-details-decades-of-allegations-of-discrimination-misconduct-at-nike.html (last visited Apr. 16, 2024)............4

OSB Formal Opinion No. 2007-179 .....................................................................................24, 26

Portland Business Journal Instagram https://www.instagram.com/portlandbusinessjournal/?hl=en (last visited Mar. 24, 2024) ...............................................................................................................................26

**L.R. 7-1 CERTIFICATION**

Counsel for Defendant NIKE, Inc. ("NIKE") certifies that it made a good faith effort to confer with counsel for Markowitz Herbold PC ("Markowitz") regarding the issues presented in this motion.  NIKE attempted to call counsel for Markowitz, submitted a request to the Court for permission to file this Motion with all counsel copied, which was approved, and engaged in extensive correspondence with counsel for Markowitz and briefing on the disclosure issue discussed herein.   We understand that Markowitz would object to this Motion and its requested relief.

**MOTION**

Pursuant to Fed. R. Civ. P. 37, NIKE respectfully moves the Court to sanction Plaintiffs and their counsel for their egregious violation of this Court's Protective Order, ECF No. 82, and the Ninth Circuit Stay Order, ECF No. 408.  For the reasons below, NIKE requests an order:

1) Issuing punitive monetary sanctions against Plaintiffs and Markowitz for the unauthorized disclosure of confidential judicial records in contempt of court orders, and reimbursing NIKE's attorneys' fees and costs incurred in seeking to enforce the Protective Order and Ninth Circuit Stay Order;[1]

2) Excluding from evidence any testimonial or documentary evidence, as well as argument, relating to Project Starfish;

---

[1] NIKE requests leave to itemize its fees and costs for the Court's consideration, specifically regarding, for example, NIKE's request to return the disclosed materials; NIKE's briefing on the motion to vacate the Magistrate Judge's Order requiring return of documents; NIKE's emergency motion and request for a temporary stay regarding the unauthorized disclosure; NIKE's Rule 72 objections to the Magistrate Judge's findings & recommendation regarding the motion to vacate; propounding and enforcing discovery on Plaintiffs/Markowitz and The Oregonian in connection with the unauthorized disclosure; NIKE's emergency motion for an injunction pending appeal and its petition for rehearing *en banc*; and addressing jurisdictional issues related to the appeals.

3)    Requiring disclosure of the identities of the "many women" Markowitz improperly solicited based on the "Project Starfish" documents that were produced in this action pursuant to the Court's Protective Order, and requiring Markowitz to indemnify NIKE for attorney's fees and costs incurred in defending any future legal proceeding Markowitz causes to be filed on behalf of those individuals;

4)    Transferring venue from the Portland Division to the Medford Division of this Court for jury trial and requiring Plaintiffs to pay NIKE's attorney's fees and costs incurred for travel and lodging for trial in the Medford Division;

5)    Disqualifying Markowitz from representing Plaintiffs in this action; and

6)    For other relief the court deems just and proper.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This Court has found that Plaintiffs' counsel "fail[ed] to guard confidential materials" in "violat[ion] [of] the protective order … in this case." ECF No. 431 at 8. While counsel claims that the unauthorized disclosure of judicial records here was "inadvertent," the available facts suggest a different narrative. Regardless, severe sanctions are warranted to punish and to deter future misconduct. This is particularly true where, as here, Plaintiffs' unauthorized disclosure of confidential judicial records threatens to taint the jury pool to prejudice NIKE at trial, to irreparably harm and embarrass non-parties (current and former employees who never bargained for the public spotlight), and to significantly increase NIKE's cost of defending this action.

A great deal of time and ink has been spilled in this case over the so-called Project Starfish documents. Those documents contain mostly anonymous workplace complaints pre-date the filing of this lawsuit in 2018. They are not fact findings—simply allegations. More importantly, none of them involve the Plaintiffs in this case, but every one of them involves individuals who have a

right to privacy.[2]

**First**, for years, Plaintiffs' counsel, with the assistance of Matthew Kish ("Kish") of The Oregonian, have gone to great lengths to demonize NIKE in the public eye.  Now, after losing on class certification and a failed Rule 23(f) petition to the Ninth Circuit, and with the close of discovery and a trial setting order looming, Plaintiffs' counsel has gone too far.  The Markowitz firm president, Laura Salerno Owens ("Salerno Owens"), flouted the Court's Protective Order and the Ninth Circuit Stay Order, which was filed on the docket in the Ninth Circuit (Dkt. No. 12.1) and this Court (ECF No. 408) on January 19, 2024.  The Markowitz firm and The Oregonian received notification of these orders.  They just cared more about "clicks" than Court orders.  Only **hours** after the Ninth Circuit ordered that the documents here must remain confidential during the pendency of NIKE's appeal, Salerno Owens braved bitter winter weather to transmit those confidential documents and others (relating to "Project Starfish") to Kish, her eager bullhorn at The Oregonian.[3]  After all of the proceedings focused on confidentiality in this matter, and the significant attorneys' fees and judicial resources committed to striking the right balance between confidentiality and public disclosure, Plaintiffs' counsel robbed the Court of its discretion and authority, and instead chose to further their plan to prejudice the jury pool by litigating this matter in the press.  A message needs to be sent that the federal court orders require compliance.

**Second**, Plaintiffs' cover-up here may be as bad as their actions.  It took six days for them to inform NIKE of the "inadvertent" disclosure (which further violated the Protective Order's

---

[2] Everyone should shudder to think about a world where every workplace complaint, verified or not, becomes public fodder for reporters looking for clicks and plaintiffs' lawyers looking to trumpet their quest for fees.

[3] Despite its lack of relevance to the claims of the named Plaintiffs, Plaintiffs continue to seek belated discovery pertaining to Project Starfish to create a media spectacle and prejudice the jury pool immediately before trial.  ECF Nos. 439-41, 443, and 443-1.

notification requirement).   But they have stonewalled any attempt by NIKE to investigate the claimed error.   Plaintiffs' counsel refuses to respond to critical discovery relating to the unauthorized disclosure and why it took them nearly a week to tell NIKE that its confidential litigation documents had been provided to The Oregonian.   In their April 15, 2024 filings, Plaintiffs' counsel argues that there is "zero evidence" of intent, ECF No. 467 at 3, and The Oregonian wraps itself in the "newsgathering" process.   ECF No. 466.   Neither Plaintiffs nor The Oregonian explain why Salerno Owens and Kish were engaged in "newsgathering" about judicial records that both this Court's Protective Order and the Ninth Circuit's Stay Order required to be kept confidential.   *See, e.g.,* ECF Nos. 404, 407-08.   Both were aware of the Protective Order and Stay Order, but they were undeterred.   Salerno Owens went out in the "snow, wind, and ice storms" (her words) to meet with Kish, then blamed the weather for the "inadvertent" disclosure and presumably why it took six days to tell NIKE about the same.   ECF No. 411.   That there was an ice storm in Portland (particularly one that Plaintiffs' counsel was able to brave to meet with Kish in person) does **not** explain the transmission of confidential materials to Kish (or anyone) in violation of Court orders.[4]   Nor does it explain why those materials were prepared in advance by Plaintiffs' counsel for (preview and) transmission to Kish via email, iPhone, and an iPad.

What's worse, Plaintiffs claim that internal communications relating to the compilation of the records for Kish are attorney work product.   ECF No. 467 at 9.   Nonsense.   Those materials were **not** prepared **in anticipation of litigation**.   They **were** prepared **in anticipation of a meeting**

---

[4] Notably, Plaintiffs' counsel has publicly stated her general disdain for protective orders in other media outlets, including specifically criticizing cases involving NIKE where the court entered a protective order, and lauded her own efforts to unseal records in *this* case.   *See* Declaration of Daniel Prince ("Prince Decl."), ¶ 3, Ex. A. (Elizabeth Hayes, *Holding Court:  Meet the employment law attorney taking on Nike,*" PORTLAND BUSINESS JOURNAL, Feb. 23, 2023, https://www.bizjournals.com/portland/news/2023/02/23/salerno-owens-markowitz-nike.html (last visited March 30, 2024)).

*with a reporter*.  Likewise, communications between Salerno Owens and Kish or others at The Oregonian are ***not*** privileged (nor is it true that all communications between Salerno Owens and co-counsel relating to the disclosure are privileged).    There is no showing that such communications relate to the provision of legal advice.  At a minimum, a privilege log should have been produced under Fed. R. Civ. P. 26(b)(5) to test their privilege assertions, but neither Plaintiffs nor The Oregonian did so.  Was that, too, "inadvertent"?

       ***Third***, as the Court correctly concluded, Plaintiffs' counsel's failure to "guard confidential materials" has placed the "privacy" of "NIKE employees and former employees . . .  at stake." ECF No. 431 at 8-9.  Since the unauthorized disclosure, The Oregonian has released additional articles referring to the judicial records, benefitting from its own aiding and abetting of the breaches of Court orders.[5]  In response, to protect the privacy of its current and former employees, NIKE has sought relief from a Ninth Circuit panel and filed a petition for rehearing *en banc* of the order denying an emergency injunction.  Case No. 24-2199, Dkt. Nos. 14.1, 16.1, and 17.1. Anything less than severe sanctions here would condone the violation, create a blueprint for end-running Court orders, and signal that there is no remedy for misconduct by officers of the Court. This Motion should be granted in its entirety.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

       For over a year, the Court and parties have committed significant time and resources

---

[5] *See, e.g.,* Prince Decl., ¶12, Ex. J (Matthew Kish, *Trove of documents details decades of allegations of discrimination, misconduct at Nike*, Apr. 9, 2024, https://www.oregonlive.com/business/2024/04/trove-of-documents-details-decades-of-allegations-of-discrimination-misconduct-at-nike.html, (last visited Apr. 16, 2024)).  In his desperate effort to put NIKE in a bad light, Kish reports unsubstantiated claims from the Bill Clinton era as if it was yesterday and calls it news.  The article references allegations from "three decades ago" that were ***not*** reported to NIKE at the time.  It also purports to cite statements from former opt-in plaintiffs, Jessica Junkins and Emily Tucker, whom Plaintiffs voluntarily dismissed from the action.  ECF No. 400.

adjudicating limitations on disclosure and use of the "Project Starfish" or "Starfish" records.

**A.**     **NIKE Produced Confidential Project Starfish Records Under The Protective Order.**

On June 17, 2019, the Court entered a Protective Order requiring records designated as "Confidential" to be "used only in this proceeding . . . restricted solely to the litigation of this case," only "filed under seal" (if at all) and distributed "solely" to certain attorneys involved in the case (*i.e.,* not the media). ECF No. 82 ("Protective Order"). Even if a party disagreed with another party's confidentiality designation, the party "must nevertheless abide by that designation until the matter is resolved by agreement of the parties or by order of the Court." *Id.* at 6. A party making an unauthorized disclosure must "promptly . . . inform the producing party of all pertinent facts relating to the prior disclosure." *Id.* at 7.

Plaintiffs allege claims of discrimination in pay and promotion, ***not*** harassment or other mistreatment (as others alleged in Project Starfish). *See* ECF No. 377; *see also* ECF No. 464 at 5 (even Plaintiffs concede that the ***only*** issues relevant to the named Plaintiffs' claims are "whether Nike paid Plaintiffs less than similarly-situated male colleagues in substantially similar or comparable jobs and whether NIKE's lower compensation and fewer promotions were discriminatory based on disparate impact or disparate treatment."). Nonetheless, Plaintiffs have suggested that their case hinges on the unverified Project Starfish complaints ***although none were submitted by any of the named Plaintiffs***. ECF No. 1, ¶ 54. The Court issued an order on August 10, 2020 compelling NIKE to produce the Project Starfish records. ECF No. 111 at 8. On September 18, 2020, NIKE timely complied with the Court's order and produced the Project Starfish records under confidentiality designations, applying redactions to the names of non-parties. The Court subsequently ordered NIKE to produce unredacted copies of the Project Starfish records on November 23, 2020, which NIKE did under the Protective Order. ECF No. 130.

**B.    Plaintiffs Filed Their Motion For Class Certification Under Seal Containing The Project Starfish Records.**

On January 10, 2022, Plaintiffs filed a motion for class certification under seal containing redacted copies of certain Project Starfish records.  ECF Nos. 146, 159-160, 165, 167.  After conferral and motions practice, the parties agreed to unseal the documents, but to redact names of the current and former employees identified in the documents, except for three individuals.  ECF No. 172, ¶2-3.  Counsel for Plaintiffs agreed to redact the names of the individuals who raised concerns, the alleged bad actors, and any witnesses from the public filings to protect important privacy interests.  ECF No. 172-1.  The concerns raised in the Project Starfish documents were made public, though NIKE sought to redact names contained in the documents for privacy reasons ("Motion to Seal").  ECF No. 171.

**C.    The Oregonian Intervened To Attempt To Unseal The Confidential Project Starfish Records.**

On April 1, 2022, NIKE's counsel met and conferred with counsel for Plaintiffs and the Media Intervenors regarding the Media Intervenors' request to unseal the redacted names.  ECF No. 220, ¶ 3.  On April 8, 2022, the Media Intervenors brought their initial Motion to Intervene for the Limited Purpose of Moving to Unseal Judicial Records and to Oppose Defendant's Motion to Seal ("Motion to Intervene").  ECF No. 205.  NIKE and the Media Intervenors fully briefed the issue and, on September 30, 2022, the Court issued a recommendation granting in part and denying in part the Motion to Intervene.  ECF No. 273.  The Court denied NIKE's Motion to Seal.  ECF No. 275.  While the Court allowed the Media Intervenors to intervene for the limited purpose of unsealing judicial records, it denied their attempts to unseal and access the records filed in connection with Plaintiffs' motion for class certification.  *Id*. at 11.  The Court adopted the recommendation on November 13, 2022.  ECF at 275.  On November 16, 2022, Plaintiffs filed redacted versions of the Project Starfish records under seal.  ECF Nos. 276-280.

**D.**    **The Project Starfish Records Remained Sealed Pending Appeal Under The Ninth Circuit Stay Order That Was Adopted By The District Court.**

On January 17, 2023, The Oregonian published an article about other unsealed records stating, among other things, that Plaintiffs' counsel "said the documents, as well as prior statements of NIKE executives, help strengthen their case."[6]  On February 23, 2023, the Portland Business Journal featured Salerno Owens in an interview, during which she is quoted as stating:

> With some of the NIKE cases, I've had so many women come and tell me what has happened to them, and they have strong claims, but they're too scared to bring a case publicly because they're worried that they'll be retaliated against and blacklisted in the community.  In some ways, Portland is wonderful because it's a small world, but in other ways, it can be inhibiting.  That feels really difficult because I want to advocate for them, I know they have rights, but at [the] same time, it would be selfish of me to say go ahead and have your career damaged, so we can bring this great lawsuit.  When the case ends, I go onto the next case, but my client has to live with results for the rest of their life.
>
> [***]
>
> A particular point of pride in the current lawsuit, the fact the records were unsealed is so important because of the vindication of so many women of what they'd experienced in that company.  A lot of individuals were too scared to bring claims, for fear of the truth not being told or swept under the rug.  ***Companies use protective orders to hide the experience women have had and make them feel isolated.***  Me-Too means it's not just you, you're not alone.  That, to me, feels like an outsize impact.

Prince Decl. ¶ 3, Ex. A (February 23, 2023 PBJ Article) (emphasis added).

After Plaintiffs lost their motion for class certification and a Rule 23(f) petition to the Ninth Circuit, on August 9, 2023, the Media Intervenors renewed their motion to unseal the non-party names from the filed Project Starfish records.  ECF No. 343.  The Magistrate entered findings and recommendations granting the Media Intervenors' request to unseal the non-party names from the

---

[6] Prince Decl., ¶ 9, Ex. G (Jeff Manning, *Unsealed NIKE documents reveal widespread complaints of harassment, pay disparities*, THE OREGONIAN, Jan. 18, 2023, https://www.oregonlive.com/business/2023/01/unsealed-nike-documents-reveal-widespread-complaints-of-harassment-pay-disparities.html (last visited on Mar. 31, 2024).)

Project Starfish records.  ECF No. 363.  Shortly thereafter, Salerno Owens posted on LinkedIn that she remains "committed" to airing this information in the "public eye":



Prince Decl. ¶ 4, Ex. B (Salerno LinkedIn Post).

On January 5, 2024, the Court adopted the Magistrate's findings but also granted NIKE a temporary 7-day stay to seek a stay pending appeal from the Ninth Circuit.  ECF No. 404.  NIKE obtained a temporary stay from the Ninth Circuit, effective January 11, 2024 until the Ninth Circuit could duly consider and rule on NIKE's motion to stay pending appeal.  ECF No. 407.

The Media Intervenors then intervened as appellees, which the Ninth Circuit allowed on January 19, 2024. In the same order, the Ninth Circuit granted NIKE's motion to stay pending appeal (the "Stay Order"), preventing the immediate unsealing of the confidential documents. ECF No. 408. The District Court adopted the Stay Order that day. *Id.*

E.    **Plaintiffs' Counsel Discloses Confidential Project Starfish Records To The Oregonian *Within Hours* Of The Ninth Circuit Stay Order.**

Aware of the prohibition of disclosure within the Stay Order (which was entered just hours earlier), armed with an iPad and an iPhone, and during an ice storm that knocked out power and made driving treacherous, Salerno Owens and Kish braved the elements to meet face-to-face at a coffee shop. ECF No. 407; ECF Nos. 426, ¶ 5, 426-1 at 2-3. The meeting supposedly had nothing to do with the Plaintiffs. ECF No. 416 ¶ 2. But, in the middle of the face-to-face meeting, at 1:58 p.m., Salerno Owens emailed a prepared comment to Kish. ECF No. 411, ¶ 5; ECF No. 416, ¶ 3. All within the span of four minutes, and despite the email having no reference to the Project Starfish records, ECF No. 411-1, Kish allegedly read Salerno Owens' comment, "noticed [that she] referenced [Project Starfish,]" and "asked [ ] which [Project Starfish complaint] supported the comment[.]" ECF No. 411, ¶ 6. Within those same four minutes, Salerno Owens supposedly had enough time to type an index with page numbers and allegations, which she emailed to Kish at 2:02 p.m. ECF Nos. 411, ¶ 7, 411-2. According to Salerno Owens, Kish told her that the index contained no reference to ECF numbers in the public record. ECF No. 411, ¶ 8. Eight minutes later, at 2:10 p.m., Salerno Owens forwarded a PDF containing Project Starfish records that had never been publicly filed. *Id.*, ¶ 9. And, just like that, within a matter of minutes, NIKE's protected information was supposedly compiled by Markowitz employees and disclosed to Kish and his newspaper.[7]

---

[7] Specifically, Salerno Owens forwarded to Kish a PDF (which she had prepared in advance), over

That was bad enough—but there is more.  Not a single attorney representing the Plaintiffs in this case (four different law firms and nearly a dozen attorneys) notified NIKE about Plaintiffs' breach **until six days later**, on January 25, 2024.  They spent the intervening time trying to convince Kish to return the documents, to no avail.  In other words, Plaintiffs' counsel notified NIKE of their breaches of Court orders **only after** The Oregonian threatened to publish an article exposing those breaches.  ECF No. 426, ¶¶ 3-4; ECF No. 416, ¶ 7; ECF No. 411, ¶ 19.

So, after giving Kish time to study the materials, Plaintiffs filed a motion requesting the affirmative injunction of the return of the materials disclosed to The Oregonian.  ECF No. 410.  Reserving its rights, NIKE joined the request to secure relief from this Court.  ECF No. 426, ¶ 6.[8]

On January 26, 2024, the Magistrate issued a report and recommendation noting The Oregonian's status as an intervenor and its status as a party to the appeal in which the Stay Order issued.  ECF No. 408, 412.  The Magistrate's recommendation required The Oregonian to:  (1) return the documents by January 31, 2024; (2) agree not to disseminate that information; and (3) destroy any copies in its possession.  ECF No. 412.

After briefing on The Oregonian's Motion to Vacate, the Magistrate issued a report and recommendation on February 28, 2024, recognizing that "[P]laintiff's counsel violated the protective order in place in this case[.]"  ECF No. 431 at 8.  Notwithstanding the violation, the Magistrate concluded that The Oregonian had no obligation to return the documents.  *Id*.  The

___

half of which contained material (1) that neither NIKE nor Plaintiffs publicly-filed and that NIKE only produced subject to the Protective Order, and (2) that remained subject to the Ninth Circuit Stay Order.  ECF No. 411, ¶ 9.

[8] Counsel for the Oregonian made no attempt to notify NIKE about the "inadvertent disclosure."  Plaintiffs' counsel's failure to notify NIKE of the disclosure sooner, and to respond to NIKE's informal inquiries and discovery requests, also violated the Protective Order's provision requiring a party to "inform the producing party of all pertinent facts relating to [any unauthorized] disclosure."  ECF No. 82 at 7.

recommendations also denied NIKE's request for discovery but granted NIKE's request for a temporary stay, preserving the *status quo* pending a decision by this Court regarding any objections to the recommendations. *Id.* at 10. Because of the unauthorized disclosure, NIKE has been forced to engage in significant briefing in the District Court pertaining to the disclosure, to seek and enforce discovery with respect to the disclosure, and to brief related matters in the Ninth Circuit. All of this work highlights the irreparable harm and injury that would occur if the confidential documents are publicly released, particularly where, as here, the claims of the four named Plaintiffs will soon be scheduled for trial.

There has been a flurry of activity on this front, all to protect the privacy interests of NIKE's non-party current and former employees. The District Court denied NIKE's Rule 72 objections, ECF Nos. 436 and 458, prompting NIKE to pursue an emergency injunction from the Ninth Circuit to preclude immediate publication of information contained in judicial records that should have never been disclosed to the The Oregonian. Those efforts have been denied. ECF No. 463.

### F.    The Incredible Excuses And Flouting Of Confidentiality Obligations Is Not A First For Plaintiffs' Counsel.

Markowitz is making a trend of "inadvertent" disclosures of confidential records to the media. On February 29, 2016, Oracle America Inc. ("Oracle") filed a motion to sanction Markowitz in the Circuit Court of Marion County in the high-profile litigation arising from the administration of Cover Oregon, for a familiar reason: Markowitz's unauthorized disclosure of confidential records to the press in violation of a protective order. Prince Decl. ¶ 5, Ex. C ("Oracle's Motion for Sanctions"). There, Oracle asserted that Markowitz, which represented the State of Oregon, committed a remarkably similar violation of a protective order through media disclosure, again claiming such unauthorized disclosure to be "unintentional." *See id.* at 6-9.

On February 22, 2016, Markowitz's alleged violations "resulted in a front-page, tabloid-

style story in the Portland Tribune featuring a photograph of Oracle's founder and former CEO, Larry Ellison, and splashed with the click-bait headline, 'Documents Oracle Doesn't Want You to Read About Cover Oregon.'"  *Id.* at 2; Prince Decl. ¶ 8, Ex. F ("Portland Tribune Article").  In its opposition papers, Markowitz ***acknowledged*** that the PDF "conversion process preserved the text underneath the black highlights," allowing others to un-redact the confidential portions of the motion they filed.  Prince Decl. ¶ 6, Ex. D at 4 ("Markowitz Opposition").[9]  In an earlier motion in that same case, Markowitz expressed its disdain for protective orders, asserting that "Oracle's application of the court's protective order was:  . . . 'impeding plaintiff's case preparation, and ***hiding [information] from the public***[.]'"  Oracle's Motion for Sanctions at 3 (emphasis added).  *Compare* Prince Decl., Ex. A (February 23, 2023 PBJ Article) ("Companies use protective orders to hide the experience women have had and make them feel isolated.").

## III.    LEGAL STANDARDS

### A.    The Court Has Authority To (And Should) Disqualify Plaintiffs' Counsel.

"'[D]istrict courts have the authority to supervise and discipline the conduct of attorneys who appear before them,'" including the inherent authority to suspend or disqualify lawyers. *Wickersham v. Eastside Distilling, Inc.*, No. 3:20-cv-02182-YY, 2023 WL 8600535, at *2 (D. Or. Sep. 14, 2023), *aff'd in part*, No. 3:20-cv-02182-YY, 2024 WL 455070 (D.Or. Jan. 25, 2024) (quoting *In re Kramer*, 193 F.3d 1131, 1132 (9th Cir. 1999)); *see also In re Snyder*, 472 U.S. 634, 643 (1985) (same).  Where the "asserted course of conduct by counsel threatens to affect the integrity of the adversarial process, [the court] should take appropriate measures, including disqualification, to eliminate such taint."  *Richards v. Jain*, 168 F. Supp. 2d 1195, 1200 (W.D. Wash. 2001) (quoting *MMR/Wallace Power & Indus., Inc. v. Thames Assocs.*, 764 F. Supp. 712,

---

[9] The Court never ruled on Oracle's Motion for Sanctions because the case was resolved.

718 (D. Conn. 1991)).

The decision to disqualify counsel falls "within the sound discretion of the [] court." *Roberts v. Legacy Meridian Park Hosp., Inc.*, No. 3:13-cv-01136-SI, 2014 WL 294549, at *17 (D. Or. Jan. 24, 2014). This discretion must be exercised with conflicting principles in mind: (1) "a client's right to chosen counsel," and (2) "the need to maintain ethical standards of professional responsibility." *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 918 (N.D. Cal. 2003) (citation omitted).

Oregon law governs disqualification in this case. *Quatama Park Townhomes Owners Ass'n v. RBC Real Est. Fin., Inc.*, 365 F. Supp. 3d 1129, 1136-37 (D. Or. 2019) ("When considering a motion to disqualify counsel in the Ninth Circuit . . . federal courts are directed to apply the law of the forum state and 'must follow the reasoned view of the state supreme court when it has spoken on the issue.'") (quoting *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000)). In this Court, in fact, Local Rules require all attorneys "admitted to general or special practice . . . [to b]e familiar and comply with the Oregon Rules of Professional Conduct and this Court's Statement of Professionalism." L.R. 83-7.[10]

## B.    A Contempt Finding Is Appropriate.

"A party's violation of a specific and definite court order constitutes civil contempt."

---

[10] *See, e.g.,* Or. Rules of Prof'l Conduct 3.4(c) ("A lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal[.]"); Or. Rules of Prof'l Conduct 3.6(a) ("A lawyer . . . shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."); Or. Rules of Prof'l Conduct 3.6(e) ("A lawyer shall exercise reasonable care to prevent the lawyer's employees from making an extrajudicial statement that the lawyer would be prohibited from making under this rule."); Or. Rules of Prof'l Conduct 4.4(a) ("In representing a client or the lawyer's own interests, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, harass or burden a third person, or knowingly use methods of obtaining evidence that violate the legal rights of such a person.").

*Silicon Genesis Corp. v. EV Grp. E. Thallner GmbH*, No. 22-cv-04986-JSC, 2023 WL 6882749, at *2 (N.D. Cal. Oct. 18, 2023) (citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)).   "The contempt '***need not be willful***,' and there is no good faith exception to the requirement of obedience to a court order." *Thayer v. Nydigger*, No.  CIV 95-2004-AS, 1999 WL 1442020, at *3-4 (D. Or. Nov. 23, 1999) (quoting *In re Dual-Deck*, 10 F.3d at 695) (emphasis added).   "Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986); *Harcourt Brace Jovanovich Legal and Prof'l Publ'ns, Inc. v. Multistate Legal Studies, Inc.*, 26 F.3d 948, 953 (9th Cir. 1994) ("An award of attorney's fees for civil contempt [falls] within the discretion of the district court.").

### C.    Additional Sanctions Are Necessary Here.

A court may sanction litigants for disobeying discovery orders, such as protective orders. Fed. R. Civ. P. 37(b)(2)(A); *Apple, Inc. v. Samsung Elecs. Co.*, No. 5:11-CV-01846-LHK (PSG), 2014 WL 12596470, at *5 (N.D. Cal. Jan. 29, 2014) ("[T]he Ninth Circuit has repeatedly held that Rule 37 provides . . . enforcement of all discovery orders, including Rule 26(c) protective orders.") (alterations, quotation marks, and citations omitted); *see also* Fed. R. Civ. P. 16(f) ("[I]f a party or its attorney . . . fails to obey a scheduling or other pretrial order," "the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii-vii).").   Potential sanctions include, among others, "dismissing the action or proceeding in whole or in part," "rendering a default judgment," and "treating [the failure to obey the court order] as contempt of court."  Fed. R. Civ. P. 37(b)(2)(A).  Furthermore, a court may "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees."  Fed. R. Civ. P. 37(b)(2)(C).   "Rule 37(b) sanctions may serve either remedial and compensatory purposes or

punitive and deterrent purposes," but ultimately, "[t]he imposition and selection of particular sanctions are matters left to the sound discretion of the trial court." *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 783-84 (9th Cir. 1983). Federal courts have inherent power to manage their cases and impose sanctions for violating court orders. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991); *Jackson v. Microsoft Corp.*, 211 F.R.D. 423, 433 (W.D. Wash. 2002), *aff'd*, 78 F. App'x 588 (9th Cir. 2003) (invoking its inherent powers to dismiss the case due to plaintiff's continuous, deliberate, and willful misconduct).

## IV.   **ANALYSIS**

Plaintiffs' counsel knew, from the multitude of proceedings bearing on confidentiality, that the Project Starfish records required particularly careful handling to avoid disclosure pending the Ninth Circuit appeal. ECF No. 411, ¶ 13; ECF No. 407. Plaintiffs' counsel was fully aware of the Protective Order and duly advised of their obligations under the Ninth Circuit Stay Order, in real time from this Court's ECF notifications, ECF No. 426, ¶ 5, ECF No. 426-2. Yet, they elected to divulge the records not once but twice, via an iPhone, iPad, and email. ECF No. 407; ECF No. 408. Whether the disclosure was "inadvertent" or not, Rule 37 sanctions are necessary. ***Rule 37 does not require intent.*** However, at least the following facts demonstrate her true motive:

- Salerno Owens openly expressed frustration to the media about her disdain for the alleged use of protective orders "to hide the experience women have had and make them feel isolated."

- Plaintiffs' counsel has stoked publicity surrounding this litigation as a pressure tactic through an ongoing relationship with The Oregonian and Kish.[11]

---

[11] *See, e.g.*, Matthew Kish, *NIKE executives subjects of sex discrimination, harassment complaints, plaintiffs claim*, THE OREGONIAN, Nov. 14, 2023, https://www.oregonlive.com/business/2023/11/nike-executives-subjects-of-sex-discrimination-

- Prior to meeting Kish on January 19, 2024, Salerno Owens must have asked her team at Markowitz to compile the PDF that she later emailed to Kish during their meeting. *See* ECF No. 411, ¶ 4; ECF No. 467 at 6.

- The PDF contained significantly more pages of Project Starfish documents than what was available publicly, a fact that could not have gone unnoticed to counsel and her team. *Compare* ECF No. 411, ¶ 9 *with* ECF No. 284-6 (Ex. 50), 285-1 (Ex. 52), 290 (Ex. 9).

- Markowitz, Salerno Owens, the other counsel for Plaintiffs, as well as The Oregonian, all concealed this breach from NIKE and two different courts (this Court and the Ninth Circuit) for six days despite the Protective Order requiring notification to NIKE of all details of the disclosure and knowing that the extensive briefing in this Court and the Ninth Circuit led to the Ninth Circuit Stay Order, which should have been followed.

- Plaintiffs' counsel's explanation of inadvertence does not comport with the facts and is indicative of a *modus operandi* given Markowitz's other similar excuses for similar violations. Further, Plaintiffs' stonewalling of discovery related to the disclosure is indicative of a larger issue, particularly where Plaintiffs' counsel and The Oregonian have

---

harassment-complaints-plaintiffs-claim.html (last visited Mar. 31, 2024); Jeff Manning, *Unsealed NIKE documents reveal widespread complaints of harassment, pay disparities*, THE OREGONIAN, Jan. 18, 2023, https://www.oregonlive.com/business/2023/01/unsealed-nike-documents-reveal-widespread-complaints-of-harassment-pay-disparities.html (last visited Mar. 31, 2024); Jeff Manning, *Class-action lawsuit on NIKE: 'where women are devalued and demeaned'*, THE OREGONIAN,Aug.10,2018,https://www.oregonlive.com/business/2018/08/class-action_lawsuit_on_NIKE_w.html (last visited Mar. 31, 2024); Matthew Kish, *NIKE says it has made changes to improve its work culture. But employees are still making new discrimination complaints amid an ongoing lawsuit, lawyer says*, BUSINESS INSIDER, Sept. 21, 2022, https://www.businessinsider.com/nike-employees-continue-to-make-new-discrimination-claims-lawyer-says-2022-9 (last visited Mar. 31, 2024); Matthew Kish, *Deposition shakes up NIKE pay discrimination lawsuit; NIKE wants it barred*, THE OREGONIAN, Oct. 5, 2023, https://www.oregonlive.com/business/2023/10/deposition-shakes-up-nike-pay-discrimination-lawsuit-nike-wants-it-barred.html (last visited Mar. 31, 2024).

never explained how and why they were engaged in "newsgathering" about judicial records that the Ninth Circuit ordered to be sealed pending appeal (within hours of the issuance of the Stay Order) and their reliance on the attorney-client privilege and attorney work product doctrine falls flat.

Kish and Salerno Owens behave as if individuals are not on both sides of this matter. The disclosure of the confidential records impacts not only NIKE but also the individuals identified as purported victims, witnesses and alleged persons of interest. Publication of the records will bring embarrassment, emotional damage, and reputational harm to the individuals named within them, regardless of whether the allegations are true or not. And because the disclosed documents include those never filed in any court, even if NIKE eventually does not prevail on its pending appeal, Plaintiffs' counsel's conduct still revealed confidential information to The Oregonian it never would have accessed but for counsel's breach. This is no small matter.

A. **This Court Should Issue Punitive Monetary Sanctions To Plaintiffs' Counsel For The Unauthorized Disclosure Of Confidential Records And Award NIKE's Attorneys' Fees And Costs Incurred In Seeking To Enforce The Protective Order And Ninth Circuit Stay Order.**

Courts routinely order punitive monetary sanctions and an award of attorneys' fees and costs for disclosing confidential records in violation of court orders. For example, in *Harmston v. City & Cnty. of S.F.*, No. C 07-01186 SI, 2007 WL 3306526, at *6 (N.D. Cal. Nov. 6, 2007), the court held plaintiff and plaintiff's counsel in contempt after "they distributed material designated as confidential about as widely as possible, to both the Internet and a television news station." The court further ordered the sanction of requiring counsel to pay attorneys' fees and costs incurred by defendants in bringing the motion for contempt. *Id.* at *7.[12] Likewise, in *Omnigen Rsch., LLC v.*

---

[12] While the court refused to disqualify plaintiff's counsel or dismiss the claims, *Harmston* only involved the disclosure of testimony that counsel disagreed was confidential, as opposed to disclosing confidential records after extensive briefing on the issue and mere hours after both the

*Wang*, No. 6:16-cv-268-MC, 2018 WL 11512767, at *1-2 (D. Or. Nov. 6, 2018), this Court found a party and its counsel in contempt for violating a protective order by improperly sharing documents containing "Attorneys' Eyes Only" designations with clients. Among other sanctions, the Court ordered counsel to pay the other party's fees and costs associated with bringing the contempt motion and reasonable expenses associated with investigating whether and where the "Attorneys' Eyes Only" documents had been distributed. *Id.* at *10-11.

The same measures are required here. As set forth above (including at footnote 1), NIKE has been forced to incur significant fees and costs in connection with Plaintiffs' unauthorized disclosure. It therefore seeks monetary sanctions, in an amount subject to proof.

B.    **The Court Should Exclude From Evidence Any Testimony, Documents, Information, Or Argument Relating To Or Arising From Project Starfish.**

Relief available under Rule 37 includes "precluding the party from supporting its claims or introducing certain matters in evidence." *Scantibodies Lab., Inc. v. Church & Dwight Co.*, No. 14-cv-2275 (JGK) (DF), 2016 WL 11271874, at *17 (S.D.N.Y. Nov. 4, 2016) (citing Fed. R. Civ. P. 37(b)(2)(A)). Here, such relief necessarily includes an order precluding further discovery related to Project Starfish and excluding any records, testimony, information, or argument relating to Project Starfish from any summary judgment or trial proceedings. *See, e.g., Knox v. City of Fresno*, No. 1:14-cv-00799-EPG, 2016 WL 3365670, at *3 (E.D. Cal. June 14, 2016) (excluding any evidence or testimony concerning the confidential records that were distributed in violation of a protective order because "by violating that order, Plaintiffs have lost the right to reconstruct what of that information was separately disclosed such that its use would not violate the protective order."); *Allergan, Inc. v. Sandoz, Inc.*, Nos. 2:09-cv-97, 2:09-cv-182, 2:09-cv-348, 2:09-cv-200, 2011 WL 2563238, at *2-3 (E.D. Tex. June 28, 2011) (striking expert report and precluding expert

_____

Court and Ninth Circuit issued a stay order clearly precluding disclosure of the records.

from testifying at trial where party presenting expert inadvertently disclosed confidential information to expert in violation of court order); *Bouchard Transp. Co. v. Tug M/V Ellen S. Bouchard*, No. 14 CIV. 0617 (PAC), 2018 WL 1581992, at *1-2 (S.D.N.Y. Mar. 28, 2018) (striking report and disqualifying expert from further involvement in an action where counsel disclosed AEO material to expert witness in violation of confidentiality order).

For example in *Koch v. Greenberg*, No. 07 Cv. 9600(BSJ)(DF), 2011 WL 4485975 (S.D.N.Y. Sept. 28, 2011), plaintiff's counsel disclosed AEO documents to the press in violation of a protective order. As a sanction, the court precluded plaintiff from introducing the documents that were improperly disclosed to the press "on any substantive motion in this case or at trial." *Id.* at *4. Although the court later revoked this sanction and allowed plaintiff to file the documents on summary judgment, it was only because the excluded documents "were available [and later obtained] through third-party sources" and their exclusion "would interfere with the fact finder's ability to analyze several core issues" to the "merits" of the case. *Koch v. Greenberg*, No. 07 Cv. 9600 (BSJ)(DF), 2012 WL 13063624, at *2 (S.D.N.Y. Aug. 23, 2012) (acknowledging that "Koch's previous disclosure . . . to the media [was] egregious.").

Here, the Project Starfish records were not available through any source other than NIKE. They have no relevance to Plaintiffs' claims; nor is there evidence that any of the named Plaintiffs participated in the Starfish "process" or that they alleged harassment. *See* ECF No. 464 at 5 (Plaintiffs concede that the issue here is "whether Nike paid Plaintiffs less than similarly situated male colleagues"). Exclusion will not inhibit any fact-finding and is an appropriate sanction.

C.    **The Court Should Compel Disclosure Of The Identities Of The "Many Women" Markowitz Solicited Using The Project Starfish Documents And Require Markowitz To Indemnify NIKE For Its Reasonable Attorneys' Fees And Costs In Any Future Legal Proceeding Markowitz Causes To Be Filed By Those Individuals.**

The Protective Order "restrict[s]" the use the confidential Project Starfish records "only in

this proceeding," and "solely [for] the litigation of this case."  ECF No. 82.  Ample evidence exists

that counsel violated this provision by using the confidential records to solicit prospective clients.

As explained above, Plaintiffs' counsel repeatedly made salacious statements to the media

for marketing purposes.  Salerno Owens told the Portland Business Journal that she "had so many

women come and tell me what has happened to them," who she "want[s] to advocate for . . . so we

can bring this great lawsuit."  Prince Decl., ¶ 3, Ex. A (February 23, 2023 PBJ Article).  But

Plaintiffs' counsel cannot use the Project Starfish documents they obtained through litigation (and

then disclosed improperly) to drum up business for themselves—that is a violation of the

Protective Order, and it subjects them to sanctions.

In similar circumstances, courts have issued sanctions to deter and punish such advertising

through protective order violations.  For example, in *Mahboob v. Educ. Credit Mgmt. Corp.*,

*No. 15-CV-628 TWR (AGS), 2021 WL 7448532, at *1 (S.D. Cal. Mar. 31, 2021)*, plaintiff's

counsel used "a confidential list of phone calls placed by putative class members and their 'hold

times' produced by Defendant [] to solicit [a new named class member] and file a separate action"

against defendant in violation of a protective order's restriction against use of confidential

information outside the litigation.  There, the Court sanctioned counsel by (1) awarding defendant

its reasonable attorneys' fees and costs incurred in defending any future legal proceeding brought

by solicited plaintiffs, and (2) ordered counsel to disclose to Defendant the names of each

individual they contacted using the confidential records.  *Id.*  In the second action arising out of

the same facts, the court awarded the same remedies to defendant.  *Mahboob v. Educ. Credit Mgmt.*

*Corp.*, No. 15-cv-0628-TWR-AGS, 2021 WL 818971, at *3 (S.D. Cal. Mar. 2, 2021), *report and*

*recommendation adopted*, No. 15-CV-628 TWR (AGS), 2021 WL 7448532 (S.D. Cal. Mar. 31,

2021).

Likewise, in *Omnigen*, 2018 WL 11512767, at *1, this Court found a party and its counsel in civil contempt for violating a protective order by improperly sharing documents containing AEO designations.  Among other things, the Court ordered the party and its counsel to provide declarations "describing each instance in which" they were "provided with access to Plaintiffs' Attorneys' Eyes Only documents, including the manner in which the documents were provided, the date(s) on which they were provided, and the recipient(s)." *Id.* at *12.  The Court also ordered the party and its counsel to produce "outgoing emails containing" any reference to the AEO documents and to file "a declaration describing their search process and confirmation that the search of an email account covered all emails in the account." *Id.*

The same results should follow here.  The Court should (i) require Plaintiffs' counsel to identify all women with whom they have had contact who are listed in the Project Starfish materials, (ii) award NIKE's reasonable attorneys' fees and costs incurred in defending any future legal proceeding brought by those individuals who Plaintiffs' counsel solicited, and (iii) order counsel to disclose to NIKE the names of each individual they have or will contact relating to the confidential records by filing (under seal) declarations containing these communications.

**D.    The Court Should Change The Venue For Trial From The Portland Division To The Medford Division And Require Plaintiffs To Pay NIKE's COSTS and Expenses Associated With Travel And Lodging.**

"[D]isputes should be tried by lawyers in court where limiting safeguards are available and not in the public news media." *In re Porter*, 268 Or. 417, 424-25 (1974), *cert. denied,* 419 U.S. 1056 (1974) (affirming ruling that attorney violated ethical rules and prevented a fair trial by making statements to the news media including the disclosure of deposition testimony).

In this case, a change of venue would remedy the substantial taint placed on this proceeding by the unauthorized and unlawful disclosure of the Project Starfish documents to the press.  *See In re Porter*, 268 Or. at 422-23 (affirming an ethical violation where "continual haranguing of the

public through the news media about the virtues of his client's case and the vices of the opposition would tend to have had some effect [creating an unfair trial] and was certainly unprofessional."). Plaintiffs' counsel has effectively foreclosed any possibility of a fair trial in the Portland Division of this Court, in violation of Or. Rules of Prof'l Conduct 3.4(c),[13] Or. Rules of Prof'l Conduct 3.6(a)[14] and (e),[15] and Or. Rules of Prof'l Conduct 4.4(a).[16]

Shortly before a trial setting order is due, Plaintiffs' counsel prejudiced the jury pool by leaking the documents, declaring that other unsealed records "help strengthen their case,"[17] and publicly stating that the mere unsealing of records establishes fault/liability in this case or somehow establishes that the allegations within the documents are true (which, of course, it does not). Prince Decl. ¶ 3, Ex. A (February 23, 2023 PBJ Article) ("the fact the records were unsealed is so important because of the *vindication* of so many women of what they'd experienced in that company.") (emphasis added). Counsel's media campaign did not stop there: "[NIKE is making] attempts at suppressing evidence." "[W]e believe that if we are provided the discovery we are entitled to, we will be able to certify the class and advocate for thousands of women who faced illegal treatment at NIKE."[18]

---

[13] "A lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal[.]"

[14] "A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."

[15] "A lawyer shall exercise reasonable care to prevent the lawyer's employees from making an extrajudicial statement that the lawyer would be prohibited from making under this rule."

[16] "In representing a client or the lawyer's own interests, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, harass or burden a third person, or knowingly use methods of obtaining evidence that violate the legal rights of such person."

[17] Prince Decl. ¶ 9, Ex. G (Jeff Manning, *Unsealed NIKE documents reveal widespread complaints of harassment, pay disparities*, THE OREGONIAN, Jan. 18, 2023, https://www.oregonlive.com/business/2023/01/unsealed-nike-documents-reveal-widespread-complaints-of-harassment-pay-disparities.html (last visited Mar. 31, 2024)).

[18] Prince Decl. ¶ 11, Ex. I (Matthew Kish, *Deposition shakes up NIKE pay discrimination lawsuit*;

None of these statements serve any purpose other than to "materially prejudice an adjudicative proceeding in the matter" and inflame the jury pool with external unverified information without regard for the rules of evidence or judicial process, and to solicit potential clients for personal financial gain. Or. Rules of Prof'l Conduct 3.6(a); *see also, e.g.,* OSB Formal Opinion No. 2007-179 (Sept. 2007, revised 2016) at 10 (noting that a "press conference" held by a civil attorney "to tout the documents" received in discovery "as proof of his case against XYZ Corporation" "is more problematic" than "[a] lawyer [who] calls a press conference to describe his claim, and particularly if he limits his comments to the allegations in the complaint, which are a matter of public record."). As such, sanctions should issue.

In *Porter*, for example, the Supreme Court of Oregon found that similar statements to the media violated ethics and precluded a fair trial.[19] *Porter* involved a wrongful death lawsuit arising from the death of "a woman who perished in the Cascade Mountains from hypothermia while taking wilderness survival training provided by the Northwest Outward Bound School." *In re Porter*, 268 Ore. at 419. The court found that the following statements to the media, remarkably similar to Salerno Owens' comments, violated ethical rules and prevented a fair trial:

> . . . the adverse party had sequestered a witness whom he had been unable to talk to and that "we are attempting to use the majesty of the law to https://advance.lexis.com/document/?pdmfid=1000516&crid=f7a0d774-3b2d-474e-abec-a87601709033&pdactivityid=975b8a2d-7daf-4d8f-bd1e-5e15e139be4d&pdtargetclientid=800000.3500&ecomp=xzdvkdo what common decency should have required to be done."
>
> [***]
>
> ". . . our evidence shows that the girls were not told anything about getting chilled.

---

NIKE wants it barred, THE OREGONIAN, Oct. 5, 2023, https://www.oregonlive.com/business/2023/10/deposition-shakes-up-nike-pay-discrimination-lawsuit-nike-wants-it-barred.html (last visited Mar. 31, 2024).).

[19] *Porter* addressed a violation of Oregon Disciplinary Rule 7-107, which the Oregon State Bar noted is the predecessor to Or. Rules of Prof'l Conduct 3.6. OSB Formal Opinion No. 2007-179 (Sept. 2007, revised 2016), p. 7.

That's the basis for our suit—that they weren't instructed properly, if at all, about the dangers, the diagnosis and the treatment of hypothermia," and "[e]ven if they [referring to Northwest Outward Bound personnel] had instructed the girls, it's clear they did not get the message through to three of them—not just one of them, but three of them."

[***]

. . . the claim on behalf of [my] client would be pressed, but that [I] believe[] the adverse party would be willing to make an out-of-court settlement after it had investigated the facts.

*Id.*

*United States EEOC v. Scolari Warehouse Mkts., Inc.*, No. 04-0229-DAE-RAM, 2007 WL 9734382, at *4 (D. Nev. June 22, 2007), also is instructive.  In *Scolari*, the court condemned statements to the media nearly identical to Salerno Owens:

[T]he Court is particularly concerned with Ms. Park's statements regarding, what amount to, her opinions, thoughts, and/or beliefs concerning the merits and the circumstances of the case.  ***For instance, her statement that the Court's "[denial of defendant's motion for summary judgment] vindicates the women who were brave enough to come forward and challenge this big company that violated their rights" assumes too much, as the Court has not found that [Defendant] violated the claimants' rights.***  Rather, it merely found that the EEOC presented enough evidence to move forward and to present its case at trial, at which time such findings may or may not be made.  ***The same can be said for Ms. Park's statement that she thought that "it was very clear from the case . . . that it's not an isolated problem to one store but a culture" when the Court is not at all clear about that.***  Additionally, the statements that the checker, Ms. Carne, made are alarming, considering that Ms. Carney is not even a named claimant in the case and that her statements are not in evidence.  ***The prejudicial nature of such statements, such as "[t]he males there [at Defendant's markets] mostly hit on young females there and just (made) inappropriate comments about chest sizes," certainly raises eyebrows.***

*Id.* (emphasis added).[20]

_____

[20] Although the court in *Scolari* declined to change venue because it felt comprehensive *voir dire* and a restraining order preventing further statements to the media could cure the issue, that case dealt with "limited and not widely-disseminated statements" that were made "relatively few and far between occurring in three publications only."  *Id*.  Here, by contrast, Plaintiffs' counsel made far more prolific and numerous statements to the media and violated two Court orders to leak confidential records to the press.

Here, Plaintiffs' counsel's leaking of the Project Starfish documents within the broader framework of their media campaign violates ethical rules and creates a public impression through local media that precludes any possibility of a fair trial in the Portland Division. *See, e.g., Daniels v. Woodford*, 428 F.3d 1181, 1211 (9th Cir. 2005) (trial court's denial of a motion to change venue was error where "the venue was saturated with prejudicial and inflammatory media publicity") (alterations and citation omitted). The likelihood of jury taint is far less likely in the Medford Division, particularly where, as here, The Oregonian and the Portland Business Journal acknowledge that their readership and popularity is less significant outside of Portland.[21]

### E.    The Court Should Disqualify Markowitz From Representing Plaintiffs.

Per above, Plaintiffs' counsel violated several Oregon Rules of Professional Conduct in addition to the Protective Order and Stay Order. The Court should exercise its discretion to disqualify the Markowitz firm from representing Plaintiffs. Doing so enforces "the need to maintain ethical standards of professional responsibility" and avoids interfering with Plaintiffs' "right to chosen counsel," since the other non-Markowitz attorneys would continue to represent them in this lawsuit. *Certain Underwriters*, 264 F. Supp. 2d at 918, 925 (noting the factors of "the party's right to counsel of choice" and "financial burden on a client [in] replacing disqualified counsel" in deciding a motion to disqualify, which are not impacted here given the presence of so many other non-Markowitz lawyers who represent Plaintiffs); *see also Bold Ltd. v. Rocket Resume, Inc.*, No. 22-cv-01045-BLF, 2024 WL 589116, at *12 (N.D. Cal. Feb. 13, 2024) (defendants would not face substantial prejudice if one firm was disqualified, nor financial burden or delay where other counsel remains); *Klein v. Facebook, Inc.*, No. 20-CV-08570-LHK, 2021 WL 3053150, at

---

[21]    Oregonian    Media    Kit    (last    visited    Mar.    31,    2024) static1.squarespace.com/static/64ee36a1f7dbb626e6f6beb9/t/65a85a40d1e6a70aeb6bb6ca/170551 31975855/Media+Kit+2024_OMG.pdf; Portland Business Journal Instagram (last visited Mar. 24, 2024) https://www.instagram.com/portlandbusinessjournal/?hl=en

*8 (N.D. Cal. July 20, 2021) (finding disqualification appropriate where the disqualified firm was "one of four law firms" representing the affected party).

## V.    __CONCLUSION__

For the reasons above, NIKE respectfully requests that the Court issue an order:

1)    Issuing punitive monetary sanctions against Plaintiffs and Markowitz for the unauthorized disclosure of confidential records in contempt of court orders, and reimbursing NIKE's attorneys' fees and costs incurred in seeking to enforce the Protective Order and Ninth Circuit Stay Order;

2)    Excluding from evidence any testimonial or documentary evidence, as well as argument, relating to Project Starfish;

3)    Requiring disclosure of the identities of the "many women" Markowitz improperly solicited based on the "Project Starfish" documents that were produced in this action pursuant to the Court's Protective Order, and requiring Markowitz to indemnify NIKE for attorney's fees and costs incurred in defending any future legal proceeding Markowitz causes to be filed on behalf of those individuals;

4)    Transferring venue from the Portland Division to the Medford Division of this Court for jury trial and requiring Plaintiffs to pay NIKE's attorney's fees and costs incurred for travel and lodging for trial in the Medford Division;

5)    Disqualifying Markowitz from representing Plaintiffs in this action; and

6)    For other relief the court deems just and proper.


Date:  April 17, 2024         _/s/ Daniel Prince_____
                              DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
                              danielprince@paulhastings.com
                              FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)

feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

JOHN A. BERG, OSB# 120018
jberg@littler.com
PAUL E. CIRNER, OSB# 191471
pcirner@littler.com
LITTLER MENDELSON P.C.
1300 SW Fifth Avenue
Wells Fargo Tower, Suite 2050
Portland, OR 97201
Telephone:  (503) 221-0309
Facsimile:  (503) 242-2457