**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Kathryn P. Roberts, OSB #064854**
KathrynRoberts@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085 | Fax: (503) 323-9105

**Laura L. Ho** (admitted *pro hac vice*)
lho@gbdhlegal.com
**Barry Goldstein, Of Counsel** (admitted *pro hac vice*)
bgoldstein@gbdhlegal.com
**James Kan** (admitted *pro hac vice*)
jkan@gbdhlegal.com
**Byron Goldstein** (admitted *pro hac vice*)
brgoldstein@gbdhlegal.com
**Katharine L. Fisher** (admitted *pro hac vice*)
kfisher@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 763-9800 | Fax: (510) 835-1417

Counsel for Plaintiffs

[Additional Counsel of Record listed on the Signature page]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, et al., individually and on behalf of others similarly situated,<br><br>                                        Plaintiffs,<br><br>vs.<br><br>NIKE, INC., an Oregon Corporation,<br><br>                                        Defendant. | Case No. 3:18-cv-01477-JR<br><br>**PARTIES' JOINT STATUS REPORT** |

Plaintiffs Kelly Cahill, Sara Johnston, Heather Hender, and Lindsay Elizabeth ("Plaintiffs") and NIKE, Inc. ("NIKE" or "Defendant") (collectively, the "Parties"), through their respective counsel, hereby present the following stipulated and agreed upon Joint Status Report.

On April 29, 2024, the Court heard oral argument by the Parties on ECF Nos. 432, 443, 445, 447, and 451.  During the argument and in the Order issued later that day, the Court requested a Status Report from the Parties regarding their positions on the appointment of a Special Master and discovery deadlines.

Following their discussions, the Parties could not reach agreement on the appointment of a Special Master or all discovery deadlines, so they provide separate sections below.

## **SPECIAL MASTER**

Regarding the appointment of a Special Master, this Court requested that the Parties provide their honest assessment of the likelihood of future discovery disputes: "as honest as you can …, give me your best estimate about are we nearing the end of discovery or do you -- do you think there are going to be other issues that flare."  ECF No. 481 at 62:1-7.

### **Plaintiffs' Position:**

The Court's proposal of appointing a Special Master is correct.  Given that the remaining Starfish-related discovery has been hotly contested and that this litigation has required numerous court interventions on discovery, as the Court said it suspects, there will surely be further discovery disputes requiring court intervention.[1]  Indeed, given the history of this litigation, it is necessary for this Court or a Special Master to take an active role to conclude discovery

---

[1] *See* ECF No. 481 at 61:16-25 ("I will say everybody's suspicious in this case, I guess including me. I'm suspicious that we are not at the tail end of discovery, and that I will waive off a special master and find myself yet again in a position that's reviewing over 800 pages of documents and trying to sort out various disputes.").

efficiently and effectively.  Because this Court indicated a Special Master is necessary if there will be further discovery disputes, this Court should appoint a Special Master for discovery issues.  *See* ECF No. 481 at Tr. 60:2-7 ("This case, at six years old, with both my criminal duty responsibilities and over 200 civil cases, is taking an inordinate amount of time, and that concerns me. I have looked into the appointment of a special master.").

The outstanding discovery that must be completed – Plaintiffs' Seventh Set of Requests for Production and the noticed depositions – is related to Starfish, discovery about which has been especially challenging to obtain from NIKE.  The credible, admissible testimony from Melanie Strong revealed NIKE withheld critical court-ordered discovery, defying Orders *for years*.  ECF No. 449 at 6-12; ECF No. 432 at 5-10.  NIKE, meanwhile, *for years*, repeatedly represented to the Court and Plaintiffs that Starfish was distributed to a "small group," it totaled 30 complaints, and it produced all Starfish complaints and investigation materials.[2]  The deposition testimony from its Rule 30(b)(6) witness and Chief Human Resources Officer consisted of claimed lack of knowledge or providing verifiably incorrect testimony regarding Starfish.[3]

Although Plaintiffs hope NIKE will now change its discovery conduct, unfortunately, this cannot be relied on because NIKE's Starfish-related discovery misconduct is part of a pattern of such conduct.  On numerous occasions, NIKE sought to resist discovery by representing to the Court that discovery did not exist, but, after the Court then issued a further discovery order, NIKE produced the discovery it had previously represented to the Court did not exist.  *See* ECF

---

[2] *See, e.g.,* ECF No. 354 (Starfish was "*circulated to a small group* of individuals on NIKE's campus in or about December 2017.") (emphasis added); ECF No. 347 ("the 'Starfish' surveys were, in actuality … *about 30 … complaint*s ….") (emphasis added); *see also* ECF No. 432 (listing numerous other like representations from NIKE in court filings).

[3] *See* ECF No. 449 at 11-12.

No. 394-1 at 8-9.  And each of these discovery misrepresentations occurred after this Court had already found NIKE "ha[d] demonstrated a certain lack of transparency so far in the discovery process and certainly some deficient production."  ECF No. 111 at 9.

For example, to oppose Plaintiffs' request for an order requiring NIKE to produce organizational charts, NIKE unequivocally and repeatedly told the Court it had no existing organizational charts: "*manual creation of organizational charts is the only possible way to produce 'organizational charts' to Plaintiffs*."  ECF No. ECF No. 291-5 at 76 (emphasis added); *see also id*. (stating production of organizational charts "*would require Nike to create documents ….*") (emphasis added).  After the Court ordered NIKE to produce existing organizational charts, NIKE produced thousands of *existing* organizational charts that existed on the date it told the Court organizational charts "do not exist."  ECF No. 350, ¶ 7.

NIKE, by contrast, wants to give the impression that there is "nothing to see here" because, without accountability from this Court or a Special Master, it may be able to prevent the truth from coming out.

> Sometimes courts respond to contumacious refusal to produce required discovery or comply with orders compelling discovery with suggestions that lawyers "quit squabbling like children" and work things out for themselves. That can operate to the advantage of a dishonest, noncompliant party, and can prevent the truth from coming out.

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007).  Indeed, even this Status Report sees NIKE working to frustrate the remaining discovery. Contrary to this Court's April 29 Order, NIKE asserts below that the Court imposed significant limitations on the substance of the depositions.  But the Court's Order permits normal depositions under the Federal Rules and does not impose such limitations:

> The motion is denied in that plaintiffs may take the depositions of Graham and Jeffries…the motion is granted, without prejudice, with respect to Krane [sic]. Plaintiffs may not seek to depose her absent a demonstrated

need upon the completion of the other discovery that is the subject of this motion.

ECF No. 480 at 2.[4]  And, for these two depositions, NIKE refused to provide any flexibility on scheduling because it provided just a single possible date for each deposition.  NIKE thus further confirms that there is no reason to believe its discovery conduct will meaningfully improve.

Without an active role from this Court or a Special Master, NIKE will, as it has for years regarding Starfish-related discovery, obstruct disclosure while seeking to run out the clock, thus requiring court intervention to ensure discovery obligations are met.  Active management during the remaining discovery, by either this Court or a Special Master, in contrast, will not only ensure discovery is completed effectively but also reduce disputes.  Plaintiffs thus agree with the Court that the appointment of a Special Master is appropriate here.

**NIKE's Position:**

Plaintiffs use this format to create issues because they believe it will help their case if a Special Master is appointed.  But no Special Master is necessary.

***First***, the Court has made clear that it "would not permit additional discovery" beyond the limited items discussed in the April 29, 2024 hearing and the related Order.  ECF No. 481 at 63:4-7.  The discovery deadline has passed.

***Second***, the remaining issues are limited in scope to specific RFP responses ordered by the Court and "each deponent's knowledge of the existence and whereabouts of those [270

---

[4] The Court began the hearing by stating it would provide its "inclinations, how I believe I intend to rule."  ECF No. 481 at 8:17-20.  For NIKE's Motion for a Protective Order, these inclinations were to permit the depositions of Ms. Hubbard Graham, Ms. Jeffries, *and* Ms. Krane but with certain restrictions on the substance of these depositions, including that they be "limited [] to each deponent's knowledge of the existence and whereabouts of those purported complaints." *Id.* at 9:8-10:3.  The Court then heard argument from the Parties.  Plaintiffs described how such a restriction would preclude important discovery and lead to further discovery disputes. *Id.* at 13:4-15:4.  Then the Court issued its Order.  ECF No. 480 at 2.

additional] purported complaints" of the "Starfish survey," a topic which the Court already has

significant familiarity and which would require significant lead-time for a Special Master to be

sufficiently prepared/brought up to speed.  ECF No. 481 at 9:15-19.  As such, NIKE believes that

the appointment of a Special Master would prove inefficient and lead to further delay.  *See also*

ECF No. 481 at 61:16-19 ("If we are truly, truly on the tail end of this, then I would be less

inclined to burden a special master.  It would obviously take them some time to just get up to

speed in this case.").

NIKE is happy to address the numerous misstatements made by Plaintiffs above if the

Court feels doing so would be helpful.  For example, while Plaintiffs above tout the alleged

credibility of Ms. Strong's testimony as proof-positive that NIKE must be withholding hundreds

of documents, they completely ignore Ms. Strong's key admissions that she actually has no

personal knowledge of the number of Starfish documents provided to NIKE.  Ms. Strong clearly

testified, "I did not personally deliver the surveys to Monique and Hilary."  Strong Tr. 62:18-19.

She went on to explain that she also never saw the surveys delivered:

> Q. During the meeting when you handed about 300 Starfish Survey complaints
> to Ms. Matheson and Ms. Krane, were those provided in -- in hardcopy to Ms.
> Matheson and Ms. Krane?
>
> A. Not initially.
>
> Q. Do you remember how they were provided to Ms. Matheson and Ms.
> Krane?
>
> A. Nicole Hubbard Graham had the hardcopies. Our initial desire was to use
> the document titled Project Starfish as a way to address the themes of those
> 300-ish surveys. Eventually, ***I do believe that the hardcopies were delivered to
> Monique and Hilary, but I'm unclear on the details***.
>
> Q. But to be clear, ***you saw Ms. Matheson and Ms. Krane receive about 300
> Starfish Survey complaints***?
>
> A. ***I did not***.

Strong Tr. 50:2-18 (emphasis added).

Regarding Plaintiffs' statements about the depositions of Ms. Hubbard Graham and Ms. Jeffries, the dates offered by NIKE were based on the witnesses' limited availability given the upcoming summer months, including the Summer Olympics, which significant impacts availability.  In any event, the parties have agreed on the dates, so there is no dispute.  Regarding the scope of the depositions, NIKE would appreciate clarification from the Court.  It is NIKE's understanding that the scope of the depositions is limited as stated by the Court during the April 29, 2024 hearing, during which the Court stated that these depositions shall be "limited" in scope to "each deponent's knowledge of the existence and whereabouts" of the "approximately 270 additional complaints believed by plaintiffs to exist that have not yet been provided in discovery[.]"  ECF No. 481 at 9:15-19.  To avoid dispute during the depositions and avoid further motion practice, NIKE asks that the Court clarify the Court's Order regarding deposition scope.

Unlike Plaintiffs, NIKE does not believe such continued back-and-forth is necessary or productive.  The bottom line is that Plaintiffs failed to meet their burden to certify their class and wish to rehash every dispute before this Court, and if given the opportunity, before a new audience, a Special Master.  It is unnecessary and only serves to further delay resolution of this case, which is nearing six years in duration.

## PROPOSED SCHEDULE

**Proposed Schedule[5]**

| Case Milestone | Date |
|---|---|
| Deadline for Plaintiffs Cahill, Elizabeth, Johnston, and Hender to complete production of documents responsive to RFP Nos. 85 (Cahill and Elizabeth), 86 (Hender) and 107 (Johnston), to serve supplemental written responses, and to provide a privilege log, as set forth in the Order. ECF No. 480 at 2. | May 23, 2024 |
| Deadline for NIKE to complete its production of non-privileged documents responsive to Plaintiffs' RFP Set 7, to serve written responses, and to provide a privilege log, as set forth in the Order.  ECF No. 480 at 2.<br><br>Plaintiffs contend that NIKE's written responses, production, and privilege log must be "in compliance with Rule 34." | May 29, 2024 |
| Deadline for the depositions of Jamie Jeffries and Nicole Hubbard Graham, which are currently scheduled to occur on June 14, 2024 and June 20, 2024, respectively. | July 5, 2024 |
| The Order provides that "Plaintiffs may not seek to depose [former NIKE General Counsel Hilary Krane] absent a demonstrated need upon the completion of the other discovery that is the subject of [NIKE's Motion for Protective Order (ECF No. 443)]." ECF No. 480 at 2.<br><br>If Plaintiffs believe there is such "demonstrated need," deadline for parties to confer on whether the deposition of Hilary Krane is needed.  ECF | July 12, 2024 |

---

[5] This proposed schedule does not include dates already set by the Court for sanctions-related discovery and motion practice, have been set as follows: May 13, 2024 - deadline for Plaintiffs to produce materials responsive to NIKE's February 2, 2024 discovery request to the Markowitz firm and a privilege log; June 3, 2024 - deadline for Plaintiffs to respond to NIKE's motion for sanctions; June 17, 2024 - deadline for NIKE's reply on that motion; and June 24, 2024 - date on which the Court takes the sanctions motion under advisement.  ECF No. 480 at 5.

| Case Milestone | Date |
|---|---|
| No. 480 at 2. If the Parties agree the deposition is needed, they will work together to schedule the deposition. If they are unable to agree, then the dispute will be submitted to the Court. | |
| Case referred to Judge Hernandez to set a status conference to schedule dates for the submission of a pre-trial order, other pre-trial deadlines, and a trial date. | July 26, 2024 |

If either Party believes it is unable to meet any the deadlines above, they will promptly notify the other Party. The Parties will then promptly meet and confer in an effort to resolve any dispute, and notify the Court as needed.

Dated:  May 15, 2024                    Respectfully submitted,

                                        GOLDSTEIN, BORGEN, DARDARIAN & HO

                                        _/s/ Byron Goldstein_
                                        Laura L. Ho (admitted *pro hac vice*)
                                        Barry Goldstein, Of Counsel (admitted *pro hac vice*)
                                        James Kan (admitted *pro hac vice*)
                                        Byron Goldstein (admitted *pro hac vice*)
                                        Katharine L. Fisher (admitted *pro hac vice*)

                                        MARKOWITZ HERBOLD PC
                                        Laura Salerno Owens, OSB #076230
                                        David B. Markowitz, OSB #742046
                                        Harry B. Wilson, OSB #077214
                                        Kathryn P. Roberts, OSB #064854

                                        ACKERMANN & TILAJEF PC
                                        Craig Ackerman (admitted *pro hac vice*)
                                        cja@ackermanntilajef.com
                                        1180 S Beverly Drive, Suite 610
                                        Los Angeles, CA 90035
                                        Tel:  (310) 277-0614
                                        Fax:  (310) 277-0635

                                        INDIA LIN BODIEN LAW
                                        India Lin Bodien (admitted *pro hac vice*)
                                        india@indialinbodienlaw.com
                                        2522 North Proctor Street, #387
                                        Tacoma, WA 98406-5338
                                        Tel:  (253) 503-1672
                                        Fax:  (253) 276-0081

                                        Attorneys for Plaintiffs

Dated:  May 15, 2024                     Respectfully submitted,

                                         _/s/ Daniel Prince_____
                                         Daniel Prince (pro hac vice)
                                         danielprince@paulhastings.com
                                         Felicia A. Davis (pro hac vice)
                                         feliciadavis@paulhastings.com
                                         Lindsey C. Jackson (pro hac vice)
                                         lindseyjackson@paulhastings.com
                                         Alyssa K. Tapper (pro hac vice)
                                         alyssatapper@paulhastings.com
                                         PAUL HASTINGS LLP
                                         515 South Flower Street, Twenty-Fifth Floor
                                         Los Angeles, CA 90071-2228
                                         Tel: (213) 683-6000
                                         Fax: (213) 627-0705

                                         Laura E. Rosenbaum, OSB No. 110061
                                         Laura.rosenbaum@stoel.com
                                         STOEL RIVES LLP
                                         760 SW Ninth Avenue, Suite 300
                                         Portland, OR 97205
                                         Telephone: (503) 224-3380
                                         Facsimile: (503) 220-2480

                                         Attorneys for Defendant NIKE, Inc.

## <u>SIGNATURE ATTESTATION</u>

In accordance with Civil Local Rule 11(b)(2), I attest that concurrence in the filing of this document has been obtained from the signatories on this e-filed document.


Dated:  May 15, 2024                    Respectfully submitted,


                                         */s/ Daniel Prince*