LAURA E. ROSENBAUM, OSB No. 110061
laura.rosenbaum@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 300
Portland, OR 97205
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
LINDSEY C. JACKSON, Cal. SB# 313396 (*pro hac vice*)
lindseyjackson@paulhastings.com
ALYSSA K. TAPPER, Cal. SB# 324303 (*pro hac vice*)
alyssatapper@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

Attorneys for Defendant NIKE, INC.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, SARA JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NIKE, INC., an Oregon Corporation,<br><br>Defendant. | Case No.: 3:18-cv-01477-JR<br><br>DEFENDANT NIKE, INC.'S RESPONSE TO PLAINTIFFS' RULE 72 OBJECTIONS TO ORDER (ECF NO. 480)<br><br>ORAL ARGUMENT REQUESTED |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 2
II. PLAINTIFFS CANNOT OVERCOME THE HIGH BAR TO DEMONSTRATE THAT JUDGE RUSSO'S ORDER WAS CLEARLY ERRONEOUS. ............................ 3
III. PLAINTIFFS SEEK DOCUMENTS THAT DO NOT EXIST OR ARE NOT PROPORTIONAL TO THE NEEDS OF THE CASE ..................................................... 4
    A. Judge Russo Correctly Found that NIKE Has Produced Relevant Documents in Response to RFP No. 134 ................................................... 4
    B. Judge Russo Properly Denied RFP No. 137 ........................................................ 7
    C. NIKE Has Produced Documents in Its Possession Regarding Mr. Tawiah .......... 9
IV. CONCLUSION .............................................................................................................. 12

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Boyd v. Etchebehere,*
   2016 WL 829167 (E.D. Cal. Mar. 3, 2016) ............................................................................9, 10

*Bresk v. Unimerica Ins. Co.,*
   2017 WL 10439831 (C.D. Cal. Nov. 16, 2017) ............................................................................7

*Carter v. Dawson,*
   2010 WL 4483814 (E.D. Cal. Nov. 1, 2010) ................................................................................8

*Freyd v. Univ. of Or.,*
   990 F.3d 1211 (9th Cir. 2021) ......................................................................................................6

*Hollis v. R & R Restaurants, Inc.,*
   2023 WL 22197, (D. Or. Jan. 3, 2023). .......................................................................................2

*Martin v. Hannu,*
   2023 WL 11113646, (D. Or. Aug. 15, 2023) ...........................................................................1, 8

*Pottenger v. Potlatch Corp.,*
   329 F.3d 740 (9th Cir. 2003) .......................................................................................................5

*In re Premera Blue Cross Customer Data Sec. Breach Litig.,*
   296 F. Supp. 3d 1230 (D. Or. 2017) .............................................................................................8

*Rose v. Wells Fargo & Co.,*
   902 F.2d 1417 (9th Cir. 1990) .....................................................................................................7

*Staton v. Boeing Co.,*
   327 F.3d 938 (9th Cir. 2003) .......................................................................................................5

*Stockwell v. City & Cty. of S.F.,*
   749 F.3d 1107 (9th Cir. 2014) .....................................................................................................5

**Statutes**

28 U.S.C. § 636(b)(1)(A) ....................................................................................................................2

**Rules**

Fed. R. Civ. P. 72 ..........................................................................................................2, 3, 7, 8

I.     **INTRODUCTION**

Plaintiffs' Objections are a now-familiar song and dance of dissatisfaction over adverse rulings in this litigation. Unwilling to accept that their arguments and general suspicions are misplaced, Plaintiffs ask this Court to overrule Magistrate Judge Russo's order denying their motion to compel based on reckless accusations and speculation that NIKE is withholding responsive materials. Plaintiffs soon forget that they are the only party here to play fast and loose with documents. In fact, the Court has found that Plaintiffs' counsel "fail[ed] to guard confidential [documents]" in "violat[ion] [of] the protective order[.]" ECF No. 431 at 8.

Having come to the Court with unclean hands, Plaintiffs' objections are based on the flawed premise that NIKE has misrepresented whether it has conducted a reasonable search for responsive documents. Plaintiffs omit that (i) NIKE met and conferred with Plaintiffs regarding their document requests, (ii) for several of the requests, NIKE conducted its search *based on terms set forth in the RFPs and custodians that Plaintiffs recommended*, and (iii) NIKE produced the documents to Plaintiffs that it was able to locate. That includes, for example, documents and communications related to the hiring, pay, and promotion decisions for the named Plaintiffs and the individuals Plaintiffs allege to be their male comparators. NIKE also has produced complaint-related documents and other communications pertaining to specific former employee(s), as Plaintiffs requested.

For Plaintiffs, that is not sufficient. They insist that NIKE prove a negative. But NIKE cannot prove that documents do not exist. Nor should it be forced to attempt to do so because Plaintiffs refuse to accept that the documents they would like simply may not exist (and not for any nefarious reason). *Martin v. Hannu,* 2023 WL 11113646, at *2 (D. Or. Aug. 15, 2023) ("[a] mere suspicion that additional documents must exist is an insufficient basis to grant a motion to compel") (citation omitted).

Page 2    -    DEFENDANT NIKE, INC.'S RESPONSE TO PLAINTIFFS' RULE 72
              OBJECTIONS TO ORDER (ECF NO. 480)

Moreover, Plaintiffs do *not* overcome the high bar of demonstrating that Magistrate Judge Russo "clearly erred" or that the Magistrate issued an order that was "contrary to law," as they must to prevail on their Rule 72 Objections. Fed. R. Civ. P. 72(a). The fishing expedition must stop. The class certification ruling is behind us and Plaintiffs should accept that. Their Objections should be overruled.

## II.   PLAINTIFFS CANNOT OVERCOME THE HIGH BAR TO DEMONSTRATE THAT JUDGE RUSSO'S ORDER WAS CLEARLY ERRONEOUS.

Federal Rule of Civil Procedure 72(a) states that "[w]hen a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision." Fed. R. Civ. P. 72(a). Discovery motions, like the instant motion, are nondispositive pretrial motions, which come within the scope of Rule 72(a) and 28 U.S.C. § 636(b)(1)(A). Thus, orders of a magistrate judge addressing discovery motions are subject to the "clearly erroneous or contrary to law" standard of review. *Hollis v. R & R Restaurants, Inc.*, 2023 WL 22197, at *1 (D. Or. Jan. 3, 2023). "[R]eview under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Id*. (*citing Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1014 (9th Cir. 1997)).

As discussed below, Plaintiffs' Objections fail to demonstrate that Judge Russo's decision denying their Motion to Compel is contrary to law or clearly erroneous. Rather, Plaintiffs merely rehash their same arguments and fail to point to any evidence or law demonstrating that the order was in clear error. Plaintiffs' Objections should be overruled.

Page 3   -   DEFENDANT NIKE, INC.'S RESPONSE TO PLAINTIFFS' RULE 72 OBJECTIONS TO ORDER (ECF NO. 480)

III. **PLAINTIFFS SEEK DOCUMENTS THAT DO NOT EXIST OR ARE NOT PROPORTIONAL TO THE NEEDS OF THE CASE**.

A. **Judge Russo Correctly Found that NIKE Has Produced Relevant Documents in Response to RFP No. 134**.

Plaintiffs contend that Judge Russo erred in denying Plaintiffs' Motion to Compel as to RFP No. 134, which generally seeks documents supporting testimony cited at class certification.

In explaining her inclination to deny this request during oral argument, Judge Russo cited NIKE's lack of a "centralized pay policy" and the fact that NIKE has "repeatedly represented to plaintiffs and this Court that it searched for and provided all documents regarding salary increases, starting pay, and promotions for each of plaintiffs and their male comparators." Declaration of Felicia Davis ("Davis Decl.") at Ex. A at 29:4-13.  Plaintiffs argue that this was in error because their request is not "focused on written policies." ECF No. 483 at 5.  Plaintiffs misunderstand Judge Russo's reasoning and mischaracterize their own request.  But even if they do not, their argument fails to meet the *high burden* imposed by Rule 72 to show clear error.

Taken together, Judge Russo's position regarding RFP No. 134 confirms the posture of this case after class certification and that NIKE has produced what is relevant given the current posture.  The Court has already concluded that Plaintiffs failed to show that NIKE had a common policy or practice for making pay or promotions decisions.  ECF No. 310 at 46, 48, 49, 50; ECF No. 386 at 5-6 ("the evidence [in this case] suggests only that individual managers had discretion").  As Plaintiffs themselves have highlighted to the Court, the only issues now are "whether Nike paid Plaintiffs less than similarly situated male colleagues in substantially similar or comparable jobs and whether NIKE's lower compensation and fewer promotions were discriminatory based on disparate impact or disparate treatment." Citing *Plaintiffs'* brief, ECF No. 464 at 5.  Even Plaintiffs' disparate impact claim will turn on "an individualized inquiry . . .

Page 4   -   DEFENDANT NIKE, INC.'S RESPONSE TO PLAINTIFFS' RULE 72 OBJECTIONS TO ORDER (ECF NO. 480)

for each plaintiff to determine whether the imposition of [certain] factor[s] had a disparate impact on pay." ECF No. 310 at 43. NIKE produced the documents that could be relevant to those issues—*i.e.*, documents regarding setting starting pay, salary increases, and promotions for each of the named Plaintiffs and their alleged male comparators. ECF No. 469 ¶ 4.

Plaintiffs do not dispute that NIKE has produced these documents, but contend that NIKE must produce more documents, arguing NIKE must be ordered to produce documents regarding "specific testimony from declarations and depositions" that NIKE relied on at class certification over two years ago. ECF No. 483 at 5; *see also id*. at 3. For what purpose? That testimony simply highlighted the fact that individual managers had considerable discretion in making pay and promotion decisions, that the content of jobs varied significantly across NIKE, and that employees were not always asked about their prior pay. ECF No. 452-1 at 3 ("I have the discretion to set base pay increases with this budget"); *id*. at 1 ("Nike's job codes are the most differentiated type of work and level of work within our corporate architecture."); *id*. at 4 ("the hiring manager will make the decision because it is their team and their business around what the open position should be"); *id*. at 5 ("we do not contact the previous candidate's previous employer around compensation"); *id*. at 5 ("I do not recall being asked for my current salary"). In short, this evidence demonstrated a *lack of a class-wide policy or practice* at NIKE, which is already reflected in many documents NIKE has produced to date. To the extent Plaintiffs seek, for example, documents that show a specific declarant was not asked about their current salary, or that a specific manager had discretion to set base pay increases within a budget, such documents likely do not exist, or would be incredibly burdensome to search for.

Nor would email correspondence or other non-policy documents supporting this testimony be relevant or proportional to the current stage of this litigation. Again, Plaintiffs have

made clear that RFP No. 134 focuses on testimony that was *used at class certification*. ECF No. 483 at 3. Contrary to their assertions, this evidence was not used to "prove [or defend against] elements of their claim[.]" ECF No. 483 at 6. It was used to demonstrate that there was not a common question capable of class-wide resolution. ECF No. 310 at 38 (explaining that "to demonstrate commonality, it is not enough for plaintiffs to show they disproportionately are paid less than men, they must show the reasoning behind that discrimination *is the same for all class members*") (emphasis added); *see also, e.g.*, *id.* at 39. As even Plaintiffs' authority demonstrates, to the extent the merits of the claims were considered by the Court, they were only considered to the extent required to determine whether a class could be certified. See Stockwell v. City & Cty. of S.F., 749 F.3d 1107, 1113 (9th Cir. 2014) ("[m]erits questions may be considered to the extent—*but only to the* extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied") (emphasis in original) (internal citations omitted); *see also* Staton v. Boeing Co., 327 F.3d 938, 954 (9th Cir. 2003) (court should not "advance a decision on the merits [at] the class certification stage"). Moving forward, Plaintiffs have offered nothing to suggest that any of this testimony would be relevant to assessing the named Plaintiffs' individual claims, disparate impact or otherwise. *See* Pottenger v. Potlatch Corp., 329 F.3d 740, 750 (9th Cir. 2003) (individual disparate impact claim requires a connection between the particular employment practice and the plaintiff); *see also* ECF No. at 46 (disparate impact will "turn on individualized inquiries").[1] No showing has been made that any of the declarants knew or managed any of the named Plaintiffs or had any other connection that would merit a burdensome ESI search into individualized employee experiences.

---

[1] Plaintiffs' citation to Freyd v. Univ. of Or., 990 F.3d 1211, 1226 (9th Cir. 2021) does not demonstrate that Judge Russo's decision was clear error. There, the Plaintiff put forth evidence of a common practice. Here, Plaintiffs have not.

Page 6    -    DEFENDANT NIKE, INC.'S RESPONSE TO PLAINTIFFS' RULE 72
                OBJECTIONS TO ORDER (ECF NO. 480)

As an example of the absurdity of Plaintiffs' Objections, in number 17 in their chart of testimony, Plaintiffs seek documents and communications supporting testimony by a non-Plaintiff that "[t]here was **one occasion** that we posted the job internally only because we had an immediate business need for a position that managed a category[.]" ECF No. 452-1 at 4 (emphasis added). Plaintiffs ask the Court to order NIKE to search for email correspondence regarding that "one occasion." This is not only nearly impossible to search for, it is entirely disconnected from anything remotely related to the named Plaintiffs.

In short, Plaintiffs seek documents that have no relation to the named Plaintiffs' claims. As Judge Russo acknowledged, NIKE produced the documents and communications in its possession regarding Plaintiffs and their alleged male comparators. *Those are the relevant documents* related to Plaintiffs' claims. The rest are an unnecessary fishing expedition designed to do nothing but increase the burden and expense of litigation on NIKE and this Court. Plaintiffs' Objections here should be overruled.

  **B.** **Judge Russo Properly Denied RFP No. 137**.

With regard to RFP No. 137, which sought drafts of presentations produced long ago, Judge Russo found that NIKE produced the relevant documents in its possession relating to presenting the presentations and performed a reasonable search for video recordings of the presentations. Ex. A at 29:14-18. Plaintiffs offer nothing to conclude that Judge Russo clearly erred in reaching that decision. Instead, Plaintiffs quarrel with the fact that Judge Russo "adopted" NIKE's position. ECF No. 483 at 6. This comes nowhere near the high standard imposed by Rule 72. Fed. R. Civ. P. 72(a).

As NIKE explained in its Opposition, NIKE produced the presentations at issue in RFP No. 137 several years ago. NIKE then searched for and produced communications regarding the

Page 7 - DEFENDANT NIKE, INC.'S RESPONSE TO PLAINTIFFS' RULE 72 OBJECTIONS TO ORDER (ECF NO. 480)

presentations. ECF No. 468 at 10. NIKE also searched for video recordings of the presentations, but as it stated in a declaration to the Court, it was unable to locate any video recordings (to the extent they ever existed). ECF No. 469 ¶ 5. This is not surprising; the majority of these presentations were given in 2016 and many of the authors have since left NIKE. *Id*. Plaintiffs' inability to accept NIKE's representations is not justification for granting their motion to compel, as "a court cannot order a party to produce documents that do not exist." *Bresk v. Unimerica Ins. Co.*, 2017 WL 10439831, at *5 (C.D. Cal. Nov. 16, 2017).

RFP No. 137 also sought drafts of those presentations. NIKE argued in its Opposition that drafts of presentations are irrelevant because they do not reflect NIKE's policies or practices or what was communicated to managers, which is the only relevant information. *Id*. The final versions of the presentations themselves do, and NIKE already produced those to Plaintiffs nearly five years ago. ECF No. 469 ¶ 5. Because it is well established that a disparate impact claim focuses on the "consequences of employment practices, not simply the motivation," *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir. 1990), Plaintiffs cannot show why drafts of presentations are needed for their remaining claims.

Plaintiffs' primary argument now seems to be that "[d]rafts are routinely included in document requests." ECF No. 483 at 4. This is irrelevant. That plaintiffs often seek drafts in discovery hardly demonstrates that drafts are relevant in all cases, let alone in this case. Nor does the fact that NIKE's document requests include "all drafts" in the definition of "documents" create the relevancy for what Plaintiffs seek here. The only relevant question is the guidance or instructions provided to pay and promotion decision-makers. That information is reflected in

Page 8   -   DEFENDANT NIKE, INC.'S RESPONSE TO PLAINTIFFS' RULE 72 OBJECTIONS TO ORDER (ECF NO. 480)

final version of the presentations—not in drafts that were never used or communicated. Plaintiffs cannot dispute that they have these final documents.[2]

### C. NIKE Has Produced Documents in Its Possession Regarding Mr. Tawiah.

For the last category of documents (documents related to the employment of Danny Tawiah, including alleged complaints against him, any promotions, and his departure from NIKE), Plaintiffs return to their unsupported opinion that Judge Russo should have rejected NIKE's representations regarding its discovery efforts. They offer no evidence to support that opinion or anything concrete to demonstrate such documents exist, failing to demonstrate clear error under Rule 72. They, instead, argue that Judge Russo should not have accepted NIKE's representation that it performed a reasonable and diligent search for responsive documents. Indeed, as NIKE has highlighted for this Court before, "[a] mere suspicion that additional documents must exist is an insufficient basis to grant a motion to compel." *Hannu*, 2023 WL 11113646, at *2; *see* ECF No. 395 at 2. Plaintiffs must "have a colorable basis for its belief that relevant, responsive documents exist and are improperly being withheld." *Id*. (citation omitted); *see also Carter v. Dawson*, 2010 WL 4483814, at *5 (E.D. Cal. Nov. 1, 2010) (defendants' representation that they are unable to locate responsive documents precludes the grant of a motion to compel "unless Plaintiff can identify a specific document that Defendants have withheld"). Plaintiffs offer little to nothing to rise to that standard.

Instead, Plaintiffs point only to an (albeit, incorrect) argument that NIKE only "produced a handful of responsive documents, including a 2015 complaint about [Mr. Tawiah] and a few

---

[2] Plaintiffs' citation to *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 296 F. Supp. 3d 1230, 1242 (D. Or. 2017) is irrelevant. This case assessed whether certain drafts were protected by the attorney-client privilege. It says nothing regarding whether drafts are relevant to an employment disparate impact case; in fact, this case is not even an employment case.

Page 9   -   DEFENDANT NIKE, INC.'S RESPONSE TO PLAINTIFFS' RULE 72
              OBJECTIONS TO ORDER (ECF NO. 480)

communications regarding his promotion to Vice President." ECF No. 483 at 7. This not only understates what NIKE has produced with regard to Mr. Tawiah since the initiation of this litigation, *see* ECF No. 469 ¶¶ 6 & 8 (explaining that NIKE produced over 100 documents), but it also fails to demonstrate that additional documents must exist.

Moreover, Plaintiffs' comparison to *Boyd v. Etchebehere*, 2016 WL 829167 (E.D. Cal. Mar. 3, 2016) only serves to strengthen NIKE's position. First, Plaintiffs argue that NIKE has resisted providing any information regarding its discovery efforts. ECF No. 483 at 8. Not so. While NIKE has argued (and the Court agreed) that discovery-on-discovery is unwarranted "in light of the lengthy and exhaustive discovery process thus far, and the expense and burden of this further duty in proportion to the individual claims in this case," ECF No. 386 at 6; ECF No. 405, Plaintiffs are simply wrong that NIKE provided no detail into its discovery efforts regarding Mr. Tawiah. NIKE explained that Plaintiffs suggested five custodians, including Genevieve Long, for its more recent requests regarding Mr. Tawiah and NIKE searched those custodians and produced responsive documents generated from that search. ECF No. 469 ¶ 8. Likewise, at the hearing on the Motion to Compel, NIKE confirmed that it "searched [NIKE]'s formal complaint repositories as well as ran searches for the exact quoted language in the RFP using the individuals [Plaintiffs] identified in the RFP." Ex. A at 39:1-3. NIKE has represented that it has produced what it was able to locate in response to Plaintiffs' requests. As *Boyd* holds, "[a]bsent evidence to the contrary, not present here, Plaintiff[s] [are] required to accept defense counsel's representations that such documentation either does not exist or cannot be located, and Defendant cannot be compelled to provide copies of documents that do not exist." *Boyd*, 2016 WL 829167, at *4.

Page 10  -  DEFENDANT NIKE, INC.'S RESPONSE TO PLAINTIFFS' RULE 72 OBJECTIONS TO ORDER (ECF NO. 480)

Second, and apparently ignoring that they leaked confidential litigation documents to the media in violation of multiple court orders, ECF No. 431 at 8 (*see also* NIKE's pending sanctions motion, ECF No. 471), Plaintiffs claim that "there is ample evidence in the record that casts doubt" on NIKE's representations regarding its productions, citing the dispute regarding the organizational charts. Again, Plaintiffs misconstrue the issue and fail to connect it to the current dispute. As NIKE explained during oral argument, NIKE originally made the representation that there were not organizational charts in a centralized repository on a company-level. Ex. A at 40:3-8. Once NIKE received the Court order, NIKE went through the painstaking process of asking individuals throughout the company to search for any organizational charts that they may have created for use by their team or group, and NIKE produced them. *Id*. at 40:9-16. That NIKE produced hundreds or thousands of charts proves the point—that these were decentralized documents prepared by individual teams or groups, not a top-down organizational chart used at the corporate level. In any event, NIKE also worked with a vendor to piece together organizational charts for use in this litigation, which were not kept in NIKE's ordinary course of business. *Id*. at 40:16-22. This is very different from what has occurred here: NIKE produced documents in response to the Court's orders; NIKE used custodians and quoted language from Plaintiffs' RFPs to run searches; and NIKE represented that it has produced everything responsive it has located from that search.

Third, Plaintiffs misrepresent that there was "substantial evidence" that NIKE did not produce responsive documents regarding the Starfish survey. To be clear, NIKE was ordered to produce the Starfish "survey results."[3] ECF No. 111 at 8. NIKE did so. Plaintiffs now rely on

---

[3] Plaintiffs omit the critical fact that the "Starfish" documents are not now and never were official, company documents. Nor are they "surveys" with any indicia of scientific distribution or reliability to gauge any particular fact or outcome.

Page 11   -   DEFENDANT NIKE, INC.'S RESPONSE TO PLAINTIFFS' RULE 72
                OBJECTIONS TO ORDER (ECF NO. 480)

the recent testimony of a single witness with no personal knowledge (and several years after the fact, and with the aid of several calls with Plaintiffs' counsel) to argue that there were nearly 300 Starfish documents, which NIKE allegedly did not produce.  ECF No. 439 at 4.  NIKE has offered evidence showing that NIKE received a small fraction of that amount.  *See* ECF No. 441 ¶ 4 (indicating that NIKE received approximately 30 Starfish documents or "survey results").  While Judge Russo is allowing limited depositions regarding whether there are nearly 270 "missing" Starfish documents, those depositions have not yet occurred.  *See* ECF No. 485 at 8 (depositions scheduled to occur on June 14, 2024 and June 20, 2024).  However, nothing regarding the dispute over these documents suggests that NIKE is intentionally withholding relevant discovery regarding Mr. Tawiah.

Finally, NIKE does not "ask[] the Court to accept" that Mr. Tawiah's departure from NIKE did not generate any communications.  ECF No. 483 at 8.  NIKE's position has consistently been that this evidence is irrelevant to Plaintiffs' pay and promotions claims.  ECF No. 468 at 13.  The circumstances and terms of Mr. Tawiah's departure from NIKE has no bearing on whether Plaintiffs were paid less than their purported male comparators.  Plaintiffs offer no argument to the contrary.

## IV.    CONCLUSION

Based on the foregoing, and Plaintiffs' inability to demonstrate that Judge Russo's Order was "clearly erroneous or is contrary to law," NIKE respectfully requests the District Court to overrule Plaintiffs' objections.

Dated: May 28, 2024        Respectfully submitted,

/s/ *Felicia A. Davis*
Daniel Prince, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
Felicia A. Davis, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
Lindsey C. Jackson, Cal. SB# 313396 (*pro hac vice*)
lindseyjackson@paulhastings.com
Alyssa K. Tapper, Cal. SB# 324303 (*pro hac vice*)
alyssatapper@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071-2228
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Laura E. Rosenbaum, OSB No. 110061
laura.rosenbaum@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  (503) 294-9408
Facsimile:  (503) 220-2480

Attorneys for Defendant NIKE, INC.