Case 3:18-cv-01477-JR Document 492 Filed 06/03/24 Page 1 of 42

**David J. Elkanich**, OSB No. 992558
Email: delkanich@buchalter.com
**David A. Bernstein**, OSB No. 235633
Email: dbernstein@buchalter.com
BUCHALTER, A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205
Telephone: 503.226.1191
Fax: 503.226.0079

*Attorneys for Non-Party Markowitz Herbold PC*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NIKE, Inc., an Oregon Corporation,<br><br>Defendant. | Case No. 3:18-cv-01477-JR<br><br>**MARKOWITZ HERBOLD PC'S RESPONSE IN OPPOSITION TO DEFENDANT NIKE, INC.'S MOTION FOR SANCTIONS AND CONTEMPT [ECF 471]** |

Page i    MARKOWITZ'S RESPONSE IN OPPOSITION TO NIKE'S
MOTION FOR SANCTIONS [ECF471]

BN 82856619v8

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

**<u>TABLE OF CONTENTS</u>**

<u>PAGE(S)</u>

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 2

    A.   Ms. Salerno Owens' disclosure of an isolated set of documents that had been designated confidential by Nike was clearly inadvertent, and substantial evidence has been produced that unambiguously refutes Nike's speculation of intentional disclosure. ............................................................. 2

    B.   Ms. Salerno Owens and Markowitz immediately engaged in curative and mitigating measures following the inadvertent disclosure. ................................... 6

    C.   The inadvertently disclosed documents were an isolated set, most of which were either already in the public record or would likely be ordered disclosed in response to a motion to compel. ........................................................ 8

    D.   Beyond only an isolated set of documents being inadvertently disclosed, Nike's litigation position has not been materially harmed by the inadvertent disclosure. ......................................................................... 10

III.  LEGAL STANDARDS ...................................................................................... 13

    A.   Rule 37 Standards. ............................................................................................ 13

    B.   Legal Standard for Disqualification. ................................................................. 14

    C.   Legal Standard for Contempt. ........................................................................... 15

IV.  DISCUSSION ................................................................................................... 16

    A.   Exclusion of evidence is not warranted here, especially given the absence of willfulness or bad faith in any violation of the protective order. ..................... 17

    B.   There is no basis for the Court to compel disclosure of the identities of women that Ms. Salerno Owens referenced in a completely unrelated article from over a year ago. ...................................................................... 19

    C.   There is no good cause to change the venue as a sanction. ................................ 21

    D.   A disqualification of Markowitz is unwarranted as Markowitz has not engaged in any unethical behavior. ................................................................. 24

        1.  Markowitz has not violated any Rules of Professional Conduct. .................. 24

        2.  Disqualification is not warranted. ................................................................. 27

Page ii  MARKOWITZ'S RESPONSE IN OPPOSITION TO NIKE'S MOTION FOR SANCTIONS [ECF471]

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 82856619v8

E.    Civil contempt is not justified under these circumstances. ................................... 28

F.    To the extent the Court finds any sanction appropriate, it should limit it to a reasonable monetary penalty to be decided in subsequent briefing. .................. 30

V.    CONCLUSION ............................................................................................................. 33

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

## TABLE OF AUTHORITIES

**PAGE(S)**

**Federal Cases**

*Agena v. Cleaver-Brooks, Inc.*,
  428 F. Supp. 3d 267 (D. Haw. 2019) ........................................................14, 24, 27

*Air Separation v. Underwriters at Lloyd's of London*,
  45 F.3d 288 (9th Cir. 1994) ...................................................................30

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
  No. 5:11-cv-01846-LHK (PSG), 2014 WL 12596470 (N.D. Cal. Jan. 29,
  2014) ...............................................................................................13, 17, 30, 31

*Bold Ltd. v. Rocket Resume, Inc.*,
  No. 22-CV-01045-BLF, 2024 WL 589116 (N.D. Cal. Feb. 13, 2024)...........................15, 27

*Matter of Bouchard Transportation Co., Inc.*,
  No. 14 CIV. 0617 (PAC), 2018 WL 1581992 (S.D.N.Y. Mar. 28, 2018)..............................18

*Cahill, et al., v. Nike, Inc.*,
  21-2199, ECF 14 (April 13, 2024 9th Cir.).............................................................12

*Cleveland v. Ludwig Inst. for Cancer Rsch. Ltd.*,
  No. 19-CV-02141-JM (JLB), 2021 WL 4993025 (S.D. Cal. Oct. 27, 2021) .........................13

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*,
  482 F.3d 1091 (9th Cir. 2007) .................................................................14

*Daniels v. Woodford*,
  428 F.3d 1181 (9th Cir. 2005) .................................................................22

*In re Farina*,
  No. BAP NC-23-1060-GFS, 2023 WL 7550446 (B.A.P. 9th Cir. Nov. 14,
  2023) ...............................................................................................16

*Harmon v. City of Santa Clara*,
  323 F.R.D. 617 (N.D. Cal. 2018)..............................................................29, 30

*Harmon v. City of Santa Clara*,
  323 FRD 617 (N.D. Cal. 2018)................................................................30

*Harmston v. City & Cnty. of San Francisco*,
  No. C 07-01186SI, 2007 WL 3306526 (N.D. Cal. Nov. 6, 2007), *order
  clarified*, No. C07-01186SI, 2008 WL 269465 (N.D. Cal. Jan. 29, 2008).......................28, 29

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

*Klein v. Facebook, Inc.*,
    2021 WL 3053150 (N.D. Cal. July 20, 2021)..........................................................14

*Lawson v. Spirit Aerosystems*,
    No. 18-1100-EFM-ADM, 2020 WL 3475231 (D. Kan. June 25, 2020) ................................33

*Lopez v. Banuelos*,
    No. 1:11-CV-466 AWI JLT, 2013 WL 4815699 (E.D. Cal. Sept. 6, 2013)..........................27

*MMR/Wallace Power & Indus., Inc. v. Thames Assocs.*,
    764 F. Supp. 712 (D. Conn. 1991) ........................................................................15

*OmniGen Rsch., LLC v. Wang*,
    2018 WL 11512767 (D. Or. Nov. 6, 2018)........................................................16, 29

*Peterson v. Bernardi*,
    262 F.R.D. 424 (D.N.J. 2009)..............................................................................8

*Quatama Park Townhomes Owners Ass'n v. RBC Real Est. Fin., Inc.*,
    365 F. Supp. 3d 1129 (D. Or. 2019) ................................................................14, 15

*Richards v. Jain*,
    168 F. Supp. 2d 1195 (W.D. Wash. 2001)..............................................................15

*Roadway Exp., Inc. v. Piper*,
    447 U.S. 752, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980).......................................16

*Roberts v. Legacy Meridian Park Hosp., Inc.*,
    2014 WL 294549 (D. Or. 2014)......................................................................14, 15

*In re Sulfuric Acid Antitrust Litig.*,
    235 F.R.D. 407 (N.D. Ill.)..................................................................................8

*Taggart v. Lorenzen*,
    139 S. Ct. 1795, 204 L. Ed. 2d 129 (2019) .............................................................16

*In re Tesla Inc. Sec. Litig.*,
    No. 18-CV-04865-EMC, 2023 WL 1452008 (N.D. Cal. Feb. 1, 2023) ................................23

*TML Recovery, Ltd. Liab. Co. v. CIGNA Corp.*,
    No. 8:20-cv-00269-DOC-JDE, 2023 WL 4843077 (C.D. Cal. July 17, 2023) ....................16

*U.S. Equal Emp. Opportunity Comm'n v. Scolari Warehouse Markets, Inc.*,
    No. CV 04-0229-DAE-RAM, 2007 WL 9734382 (D. Nev. June 22, 2007)..........................22

*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*,
    689 F.2d 885 (9th Cir. 1982) .............................................................................16

Page v   MARKOWITZ'S RESPONSE IN OPPOSITION TO NIKE'S
        MOTION FOR SANCTIONS [ECF 471]

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 82856619v8

*Zambrano v. City of Tustin*,
    885 F.2d 1473 (9th Cir. 1989) ......................................................2

**State Cases**

*In re Laswell*,
    296 Or. 121, 673 P2d 855 (1983) ..............................................25

*In re Porter*,
    268 Or. 417, 521 P.2d 345 (1974) ..............................................22

**Rules**

Fed. R. Civ. P. 37 ........................................................................13, 16, 22

Fed. R. Civ. P. 37(b) ............................................................................13

RPC 1.0(h) ............................................................................................25

RPC 3.4(c) ............................................................................................25

RPC 3.6 .................................................................................................25

RPC 3.6(a) ............................................................................................25

RPC 3.6(e) ............................................................................................26

RPC 4.4(a) ............................................................................................26

**Other Authorities**

Alexia Campbell, *Report: HR Managers at Nike Ignored Complaints from
    Women Employees for Years*, Vox (Apr. 30, 2018) ...................11

Andrea Peterson, *Nike is partying in Vegas with Hackers*, The Wash. Post (Aug.
    10, 2015) ......................................................................................11

Erica Morrison, *Nike Sees Executive Departures in Harassment Reckoning*, Nat'l
    Pub. Radio (May 15, 2018) .........................................................11

Jeff Manning, *Inside Nike's Purge: More than a #MeToo Moment*, The Oregonian
    (July 7, 2018) .........................................................................11, 12

Julie Creswell, *5 More Nike Executives Are Out Amid Inquiry Into Harassment
    Allegations*, N.Y. Times (May 8, 2018) ....................................11

Julie Creswell, *At Nike, Revolt Led by Women Leads to Exodus of Male
    Executives*, N.Y. Times (Apr. 28, 2018) ...................................11

MARKOWITZ'S RESPONSE IN OPPOSITION TO NIKE'S
MOTION FOR SANCTIONS [ECF 471]

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

Kevin Draper, *Nike's C.E.O. Vows Changes After Claims of Workplace Harassment and Bias*, N.Y. Times (May 5, 2018) ................................................. 11

Mike Rogoway, *Nike Sheds Second Top Executive Amid Inquiry into Workplace 'Behavior'* The Oregonian (Mar. 16, 2018) ................................................. 11

*MLB plans to modify uniforms ahead of 2025 season following complaints, per report*, CNN, (April 29, 2024) ................................................. 23

*Nike CEO John Donahoe blames remote for innovation slump, acknowledges overinvestment in direct sales,* Portland Business Journal (April 12, 2024) https://www.bizjournals.com/portland/news/2024/04/12/nike-ceo-john-donahoe-remote-work-innovation.html ................................................. 23

*Nike's new Team USA Olympic track uniform for women slammed as sexist by athletes: 'A costume born of patriarchal forces',* Yahoo News (April 12, 2024), https://www.yahoo.com/news/nikes-new-team-usa-olympic-track-uniform-for-women-slammed-as-sexist-by-athletes-a-costume-born-of-patriarchal-forces-215927719.html ................................................. 23

*Nike reports flat revenue, drop in digital sales after 2% workforce layoff,* Portland Business Journal, (March 21, 2024) https://www.bizjournals.com/portland/news/2024/03/21/nike-earnings-layoffs-revenue-flat-digital-dtc.html ................................................. 23

Oregon State Bar Formal Ethics Op. 2007-179 ................................................. 25

The Oregonian ................................................. 1, 2, 3, 6, 8, 10, 12, 13, 19, 20, 21, 24, 32

Sara Germano, *Nike's HR Chief Says Company Fails to Promote Enough Women, Minorities—Memo* (April 4, 2018), https://www.wsj.com/articles/nikes-hr-chief-says-company-fails-to-promote-enough-women-minoritiesmemo-1522871805 ................................................. 12

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

## I.    INTRODUCTION

Laura Salerno Owens made a single, regrettable mistake when she inadvertently disclosed an isolated set of documents, which Nike had designated confidential and which was still subject to a Protective Order, to a reporter at The Oregonian.  Ms. Salerno Owens and her law firm, Markowitz Herbold PC ("Markowitz" or the "Firm"), have readily and repeatedly acknowledged this fact from the outset.  At each opportunity, Markowitz has taken steps to transparently explain the circumstances that led to the inadvertent disclosure, as well as Ms. Salerno Owens' remorse and subsequent steps to mitigate the mistake.  (ECF 410 and 411).

Markowitz understands the gravity of the inadvertent mistake:  Upon discovery of the inadvertent disclosure, the Firm immediately took steps to understand the scope of the disclosure and sought return and destruction of the documents directly from The Oregonian.  When Markowitz learned that their earnest efforts would not be successful, it promptly filed a motion seeking return and destruction of the documents.  In support of that motion, the Firm provided a detailed description of the events at issue, as well as the documents inadvertently disclosed. Markowitz has produced texts, emails, and a phone log of communications between Ms. Salerno Owens and The Oregonian to assuage any concerns that this was done intentionally or knowingly; and, whenever it has been feasible, Ms. Salerno Owens and Markowitz consistently have explained what happened.  Ms. Salerno Owens and the Firm responded to an inadvertent disclosure exactly as someone should under the circumstances.

Markowitz's mistake, however, should not permit Nike leave to seek extraordinarily excessive sanctions.  Indeed, the vast majority of the requested sanctions have no relation at all to the inadvertent disclosure itself and would not deter the inadvertent conduct at issue here or prevent

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

further harm.  Nike even seeks sanctions against the Plaintiffs themselves—without suggesting how they could have been responsible for the mistake that occurred.

The Ninth Circuit has been clear:  "[A]ny sanction imposed must be proportionate to the offense and commensurate with principles of restraint and dignity."  *Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 (9th Cir. 1989).  Here, the requested sanctions are not proportionate, nor are they consistent with sanctions awarded in similar cases.  They are instead plainly punitive towards Plaintiffs themselves and that would have a chilling effect upon litigation.

Ms. Salerno Owens did not act intentionally or knowingly, and because the sanctions are woefully disproportionate to the inadvertent disclosure at issue, Markowitz respectfully requests that the Court deny Nike's Motion and, instead, fashion an appropriate remedy with just principles in mind and in consideration of Markowitz's contrition and embarrassment surrounding this accident to date.

## II.    BACKGROUND

### A.    Ms. Salerno Owens' disclosure of an isolated set of documents that had been designated confidential by Nike was clearly inadvertent, and substantial evidence has been produced that unambiguously refutes Nike's speculation of intentional disclosure.

The events of the inadvertent disclosure are not plausibly in dispute:  Ms. Salerno Owens has provided, under oath, explicit and *undisputed* details of what happened, including in Markowitz's motion to request return of inadvertently disclosed materials (ECF 410), Ms. Salerno Owens' attached declaration to that motion (with exhibits) (ECF 411), correspondence with Nike's counsel (ECF 448 at 41-56), and Markowitz's response to Nike's motion to compel (ECF 467).  Ms. Salerno Owens' account of events has been corroborated by sworn testimony by Matthew Kish of The Oregonian. (See Matthew Kish Decs. at ECF 416 and 428).

Page 2    MARKOWITZ'S RESPONSE IN OPPOSITION TO NIKE'S
                MOTION FOR SANCTIONS [ECF 471]

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

On Friday, January 19, 2024, Ms. Salerno Owens met with Mr. Kish, a reporter from The Oregonian, to provide a comment on a story that he was preparing that had overlapping issues regarding the treatment of female employees at, and by, Nike. (ECF 411 at ¶ 2). In preparation for that meeting, Ms. Salerno Owens prepared a statement to issue to Mr. Kish and wanted to ensure that the statement was supported by publicly available facts. To that end, she wanted to reference certain documents that had been filed in this case, but only those that had been made public in unsealed filings. (*Id.* at ¶ 3). And so, before the meeting, Ms. Salerno Owens asked others in her office to prepare "a PDF of [certain documents] … that were available in the public record pursuant to the Court's October 11, 2023 order (ECF 363)." (*Id.* at ¶ 3). Unfortunately, the PDF was compiled both with documents filed in the public record and with some documents that had been designated confidential by Nike and that were still covered by the Protective Order. (*Id.* at ¶ 10-11).

Ms. Salerno Owens met with Mr. Kish in downtown Portland and, during their meeting, she sent him a pre-drafted statement via email.[1] (*Id.* at ¶ 5.) Mr. Kish subsequently requested the documents referenced in that statement. Ms. Salerno Owens then sent Mr. Kish a second email that included a pre-assembled index, which Ms. Salerno Owens believed would provide Mr. Kish docket references so that he could find the documents via PACER. (*Id.* at ¶¶ 6-8). Mr. Kish replied

---

[1] The inadvertent disclosure occurred during Portland's 2024 ice storm, which caused widespread power outages, including at Ms. Salerno Owens's home (ECF 411 at ¶ 24). Nike, however, dramatically states, "Salerno Owens and Kish braved the elements to meet face-to-face." (Nike's Mot. at 16). In her previous Declaration, Ms. Salerno Owens explained that it had been a difficult week due to the ice storm, which had closed schools and which had resulted in lost power multiple times. (ECF 411 at ¶ 24.) On that Friday in question, however, Ms. Salerno Owens already "had another meeting with a client" scheduled in her office downtown that day. (ECF 411 at ¶ 12). Ms. Salerno Owens's January 19, 2024 text message to Mr. Kish corroborates as much: "My in-person for 2:30 just confirmed so I'll be downtown. Can we meet a little earlier? 1:45?" (ECF 448 at 62).

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

that the index did not contain ECF reference numbers, so Ms. Salerno Owens then sent a third email with the pdf of documents that she believed contained the publicly available documents on PACER, at approximately 2:09 PM.  (*Id.* at ¶¶ 8-10).  Ms. Salerno Owens did not realize that the documents sent to Mr. Kish included documents that were still designated confidential and subject to the Protective Order. (*Id.* at ¶ 24).

Ms. Salerno Owens' account is demonstrated through contemporaneous evidence—not after-the-fact justifications.  Specifically, Ms. Salerno Owens' produced text messages show that she met up with Mr. Kish on Friday, January 19, 2024, at approximately 1:30 PM.  (ECF 448 at 62, previously produced as Exhibit H to Prince Dec.).  At 3:41 PM, immediately after learning of her mistake, Ms. Salerno Owens messaged Mr. Kish:  "Can you please call me?  Thank you."  (*Id.*)  After not hearing back, at 4:50 PM (on a Friday evening), she again requested that he call her.  Mr. Kish called Ms. Salerno Owens back minutes later, and Ms. Salerno Owens informed Mr. Kish during that call that she "made an inadvertent disclosure, that he [Kish] had documents that…were not publicly available, and that [she] needed him to return the documents immediately and destroy the documents in his possession." (ECF 411 at ¶ 14).  Markowitz already has produced the emails between Ms. Salerno Owens and Mr. Kish from before the inadvertent disclosure, as well as the text messages between them afterward, and a phone log of calls between them, relating to the inadvertent disclosure.  (*See* ECF 467 at 2-3.)

Despite the sworn testimony and contemporaneous documentary evidence demonstrating that the disclosure was inadvertent, Nike contends that Ms. Salerno Owens intentionally violated the Protective Order in this case.  While one might expect that such a serious accusation would be supported by at least some evidence, that is not the case here.  The fact that Ms. Salerno Owens had asked for a compilation of publicly available documents to support the initial statement she

Page 4    MARKOWITZ'S RESPONSE IN OPPOSITION TO NIKE'S
MOTION FOR SANCTIONS [ECF 471]

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 82856619v8

gave Mr. Kish does not (as Nike wrongly suggests) indicate a desire to disclose protected materials. Left without any actual evidence of intentional wrongdoing, Nike surmises that Ms. Salerno Owens must have acted intentionally because she had spoken publicly about Nike in the past (sometimes negatively, and sometimes on LinkedIn), and she and Mr. Kish met in person during the 2024 ice storm (while she was downtown meeting a client). The fact that Ms. Salerno Owens has commented on Nike in the past—none of which violated any order of this Court—does not speak at all to whether the disclosure here was inadvertent and certainly cannot overcome the wealth of evidence showing that it was not.

Nike then convolutes Ms. Salerno Owens' own Declaration to cast more baseless aspersions. (Nike's Mot. for Sanctions ("Nike's Mot.") at 10, ECF 471). For example, Nike expresses incredulity that Ms. Salerno Owens had access to a pdf of what she believed where the publicly available documents.[2] (*Id.* at 10). Yet, as explained above, Ms. Salerno Owens wanted to ensure that any comment was supported by publicly available facts in the record. She knew if she referenced allegations contained in documents in the public record, she would likely need ready access to those same documents. (ECF 411 at ¶¶ 3-9).

Nike cannot, and has not, produced any evidence to dispute Ms. Salerno Owens' truthful recounting of the events that led up to, and followed, the inadvertent disclosure. Indeed, The Oregonian has provided declarations under oath that expressly corroborate Markowitz's factual explanation. (*See* Kish Decs. at ECF 416 and 428). For example, The Oregonian's Response to

---

[2] If Ms. Salerno Owens intended to knowingly violate a Court order, it stands to reason that she would not have *emailed* the documents to Mr. Kish, thereby creating a record of her malfeasance. She could have handed a printed packet to Mr. Kish with no forensic evidence of the disclosure. Ms. Salerno Owens, however, emailed the documents because she did not think she was doing anything wrong or that she had anything to hide—she believed she was sharing documents already available in the public record and that she was acting consistently with the Court's order.

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

Nike's Motion to Compel includes the following statement: "Nike has made numerous unfounded assertions to this Court that directly contradict the sworn declarations signed by Ms. Salerno Owens and Mr. Kish…Yet, Nike does not have any factual support to back its assertions because none of it is true." (ECF 466 at ¶¶ 4-5.)

Accordingly, there is no basis (let alone plausible conjecture) for the Court to call any of Ms. Salerno Owens' prior declaration into question.

**B.    Ms. Salerno Owens and Markowitz immediately engaged in curative and mitigating measures following the inadvertent disclosure.**

As explained in prior briefings, immediately upon learning of the inadvertent disclosure, Ms. Salerno Owens and the Firm took steps to understand the scope of the disclosure, to analyze their legal and ethical obligations, to seek prompt return (and destruction) of the inadvertently disclosed documents directly from The Oregonian, and to prepare pleadings to file in Court when that was unsuccessful. Nike may complain it took Markowitz six days to provide Nike notice but as explained below, (1) that was more than a reasonable period of time, and (2) Nike does not explain what would be *different* or how it was prejudiced by the six days (four court days) it took Markowitz to review the matter to determine the scope of the disclosure, seek confirmation from The Oregonian, and make the disclosure to Nike.

First, Markowitz promptly (within hours) reached out to The Oregonian and asked that the documents be returned and destroyed. Thereafter, Ms. Salerno Owns reached out to Mr. Kish repeatedly to determine if The Oregonian would cooperate with the request. Ms. Salerno Owens even extracted an agreement that The Oregonian would not publish an article without letting Markowitz know and giving the Firm an opportunity to file a motion with the Court.[3] (ECF 411

---

[3] When Ms. Salerno Owens and Mr. Kish spoke on Friday evening, "[h]e assured [Ms. Salerno Owens] no story would be coming out over the weekend or on Monday about these inadvertently

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

¶¶ 14, 16.)  No doubt, it was important for Markowitz to understand both the scope of the inadvertent disclosure and The Oregonian's position before being able to fully inform Nike and the Court about the inadvertent disclosure.

Second, beginning on the Friday night of the inadvertent disclosure, Markowitz began an in-depth review of all public filings in this matter, as well as the events surrounding Ms. Salerno Owens' mistake to ascertain the scope of the inadvertent disclosure.  Given the years-long history of this case, and the thousands of different documents that had been filed as part of more than 400 ECF entries by that point, it took some time to assess what had been done, how large the inadvertent production had been, and, specifically, which documents were disclosed that were still designated confidential.  Indeed, the Court also has recognized the unwieldy nature of the docket given Nike's "tactics" and recognized that deciphering which documents Nike designated confidential requires a "tremendous expenditure of time."  The Court previously noted:

> Moreover, defendant erroneously designated certain redactions in its initial filing, resulting in the scope of disputed documents being submitted three times by defendant, with its final submission encompassing approximately 500 additional, or 1635 total, pages. These practices resulted in a tremendous expenditure of time by the Court requiring it to review and track hundreds of documents, tactics which defendant has been specifically cautioned against in the past. *See e.g.,* Order 2 (Apr. 1, 2021) (ECF 136) . . .

ECF 273 at 3-4.

During these six days (just four business days), Markowitz assessed exactly what had been inadvertently disclosed that had not been previously a part on the public docket, allowing Markowitz to provide detailed information to Nike at the time of disclosure.  Courts have found

---

disclosed documents."  (ECF 411 ¶ 14.)  When they spoke again the following Monday, January 22, 2024, Mr. Kish "again assured [Ms. Salerno Owens] that the Oregonian was not intending on running a story or distributing the documents in any way."  (ECF 411 ¶ 16.)

Page 7    MARKOWITZ'S RESPONSE IN OPPOSITION TO NIKE'S
MOTION FOR SANCTIONS [ECF 471]

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 82856619v8

this amount of time (or more) reasonable.  *See, e.g., Peterson v. Bernardi*, 262 F.R.D. 424, 429 (D.N.J. 2009) ("plaintiff brought the error to defendants' attention within a week or two of his discovery"); *see also In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 419 (N.D. Ill.), *supplemented*, 432 F. Supp. 2d 794 (N.D. Ill. 2006) (noting waiting several weeks until notifying opposing party of inadvertent disclosure was reasonable).

Third, promptly after The Oregonian indicated it would not return and destroy the documents, Markowitz informed Nike (and the Court) of the inadvertent disclosure, as well as the steps it was (and had been) taking with The Oregonian to mitigate any harm from the inadvertent disclosure.  Within hours of learning that The Oregonian would not do so voluntarily, Markowitz filed a motion to require The Oregonian to return and destroy the inadvertently disclosed documents.  The Court granted that motion the next day.

Finally, Nike does not explain why the six days (four court days) was unreasonable or what it would have done differently—or how the parties would be in a different position today—if Markowitz had made the disclosure a few days earlier.  Markowitz filed a timely motion, which was granted the following day; and even though the Court then further reconsidered the issue, a stay was in effect the entire time, preventing The Oregonian from publishing any articles while the parties fully litigated the issue.  In fact, The Oregonian did not publish such an article until April 9 and 22, 2024—after the district court and Ninth Circuit denied Nike's request for a stay.

**C.     The inadvertently disclosed documents were an isolated set, most of which were either already in the public record or would likely be ordered disclosed in response to a motion to compel.**

As the Court is well aware at this point, the inadvertently disclosed documents—most of which have already been publicly filed on the docket in some form—are excerpts from an internal survey (the "Starfish Surveys") that were conducted by female executives at Nike.  (ECF 411 at ¶

Page 8     MARKOWITZ'S RESPONSE IN OPPOSITION TO NIKE'S
MOTION FOR SANCTIONS [ECF 471]

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 82856619v8

4 and 8.)  Of the total 154 pages provided to The Oregonian, 78 of those pages had been publicly filed on the docket in some form; the remaining 76 pages had not been filed on this docket, but were of the same type and nature of documents (survey responses) as those that had been previously filed.  (ECF 411 at ¶ 20.)

Of those 76 pages not previously filed with the Court, 31 pages did not contain anyone's name, and 20 were duplicates.  While not an excuse to violating a protective order, those 11 original pages without any names likely would have been unsealed upon the request of a party to the Court pursuant to the Court's prior orders, which had found similar documents to be improperly designated by Nike as confidential (ECF 273 and ECF 363).

Of the 25 pages that did contain unredacted names, there were several duplicates, leaving just **9 pages** with unredacted names inadvertently disclosed.  (*Id.*)  Again, it is worth noting that this Court (and Judge Hernandez) previously ruled that the names included in the previously disclosed Starfish surveys could not be redacted, forming the basis of the current Ninth Circuit appeal.  (ECF 363).  Moreover, The Oregonian has not published or otherwise revealed the unredacted names included on those 9 pages.

Although there is a current Ninth Circuit stay on the release of the unredacted names to the media, and although this does not excuse the inadvertent disclosure, if the Ninth Circuit affirms this Court, then it is worth putting Nike's motion for contempt in perspective:  *Nike seeks extreme and over-the-top sanctions against a law firm for inadvertently disclosing documents, which this Court and the Ninth Circuit will have said were discoverable and improperly designated confidential by Nike.*

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

**D.    Beyond only an isolated set of documents being inadvertently disclosed, Nike's litigation position has not been materially harmed by the inadvertent disclosure.**

Although Nike has a right to be frustrated that documents it designated confidential were inadvertently disclosed to The Oregonian, Nike's motion hyperbolically catastrophizes the consequences of this regrettable mistake.  Indeed, Nike's own motion points out that the content and allegations contained in this isolated set of inadvertently produced documents were already known to The Oregonian and were already subjects of previously published news articles.

Nike's motion points out that on January 17, 2023—over a year before the inadvertent disclosure—The Oregonian published an article entitled: "Unsealed Nike documents reveal widespread complaints of harassment, pay disparities."  *See* ECF 472-7 (previously filed version of this article).[4]  In that article, The Oregonian noted that those publicly disclosed documents, the "Starfish Surveys," "provide a vivid portrait of women frustrated by pay disparities, harassment and what some described as a 'bro' culture where advancement hinged on who you knew rather than your skills."  *Id.*  The documents further disclosed incidents of alleged workplace sexual harassment and incidents of sexual activity at Nike involving its personnel.  *Id.*  Thus, the disclosure of the documents did not provide any new information to The Oregonian, except the few unredacted names on just 9 pages (which The Oregonian has not published or otherwise revealed).

---

[4]  The article is also available at
https://www.oregonlive.com/business/2023/01/unsealed-nike-documents-reveal-widespread-complaints-of-harassment-pay-disparities.html.

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

Moreover, in 2018, *even before* this lawsuit was filed, and long before any documents had been produced, there was extensive media coverage about allegations similar to those in the Starfish Surveys—namely the lack of HR response and sexual harassment.[5]

---

[5] For a sampling of such articles, see:

- Alexia Campbell, *Report: HR Managers at Nike Ignored Complaints from Women Employees for Years*, Vox (Apr. 30, 2018), https://www.vox.com/policy-andpolitics/2018/4/30/17302130/nike-women-harassment-discrimination-survey (numerous women reported that they found HR unhelpful and sometimes disrespectful).

- Julie Creswell, *At Nike, Revolt Led by Women Leads to Exodus of Male Executives*, N.Y. Times (Apr. 28, 2018), https://www.nytimes.com/2018/04/28/business/nike-women.html.

- Kevin Draper, *Nike's C.E.O. Vows Changes After Claims of Workplace Harassment and Bias*, N.Y. Times (May 5, 2018), https://www.nytimes.com/2018/05/05/business/mark-parker-nike.html.

- Mike Rogoway, *Nike Sheds Second Top Executive Amid Inquiry into Workplace 'Behavior,'* The Oregonian (Mar. 16, 2018), https://www.oregonlive.com/business/index.ssf/2018/03/nike_sheds_second_top_executiv.html.

- Andrea Peterson, *Nike is partying in Vegas with Hackers*, The Wash. Post (Aug. 10, 2015), https://www.washingtonpost.com/news/the-switch/wp/2015/08/10/nike-is-partying-in-vegas-with-hackers/.

- Erica Morrison, *Nike Sees Executive Departures in Harassment Reckoning*, Nat'l Pub. Radio (May 15, 2018), https://www.npr.org/2018/05/15/610445057/nike-sees-executivedepartures-in-harassment-reckoning

- Julie Creswell, *5 More Nike Executives Are Out Amid Inquiry Into Harassment Allegations*, N.Y. Times (May 8, 2018), https://www.nytimes.com/2018/05/08/business/nike-harassment.html (based on interviews of more than 50 current and former Nike employees).

- Jeff Manning, *Inside Nike's Purge: More than a #MeToo Moment*, The Oregonian (July 7, 2018), https://www.oregonlive.com/news/erry-2018/07/93d33bff127706/vanquishing_team_edwards_a_new.html.

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

Following the Court's recent denial of Markowitz's and Nike's requests to require that The Oregonian return the inadvertently disclosed documents and destroy any copies in their possession (ECF 431 and 460), and after the Ninth Circuit denied Nike's emergency requests to prevent The Oregonian from reporting on the inadvertently disclosed documents ((*Cahill, et al., v. Nike, Inc.,* 21-2199, ECF 14 (April 13, 2024 9th Cir.) (denying Nike's motion)), The Oregonian published another more recent article related to the Starfish Surveys on April 22, 2024.  Just as it reported nearly six years ago in 2018,[6] and again over a year ago in 2023, The Oregonian similarly noted: "Lack of faith in HR, intimidation, vulgarity, inappropriate touching among top Nike complaints." *THE OREGONIAN*, available at https://www.oregonlive.com/business/2024/04/lack-of-faith-in-hr-intimidation-vulgarity-inappropriate-touching-among-top-nike-complaints.html (April 22, 2024). In this more recent article, The Oregonian provides substantively the same reporting as the January 2023 article.  The paper also did not release any specific names in its most recent reporting, and there is no indication that The Oregonian would release any names learned through the inadvertent disclosure without further independently verified reporting of its own.  *Id.*  (noting the Starfish Surveys "in many cases made anonymously and not independently verified by The Oregonian.")

---

- Sara Germano, *Nike's HR Chief Says Company Fails to Promote Enough Women, Minorities—Memo* (April 4, 2018), https://www.wsj.com/articles/nikes-hr-chief-says-company-fails-to-promote-enough-women-minoritiesmemo-1522871805.

[6] "A survey started circulating that aimed to quantify what some saw as the prevalence of gender bias and sexual harassment. . . The purge has been widely portrayed as Nike's #MeToo moment: when a cadre of dissident female employees finally shamed the company into action." Jeff Manning, *Inside Nike's Purge: More than a #MeToo Moment*, The Oregonian (July 7, 2018), https://www.oregonlive.com/news/erry-2018/07/93d33bff127706/vanquishing_team_edwards_a_new.html.

Page 12  MARKOWITZ'S RESPONSE IN OPPOSITION TO NIKE'S
MOTION FOR SANCTIONS [ECF 471]

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 82856619v8

In short, while The Oregonian has published additional articles about the Starfish Surveys, The Oregonian has not disseminated any personally identifying information or allegations regarding any specific Nike employee and has not added any materially new information into the public record.

## III.    LEGAL STANDARDS

### A.    Rule 37 Standards.

As explained by a district court assessing Ninth Circuit opinions discussing Fed. R. Civ. P. 37(b) sanctions:

> Rule 37 authorizes the district court to impose a wide range of sanctions if a party fails to comply with a discovery order. The choice among the various sanctions rests within the discretion of the district court. However, the court's authority to issue sanctions is subject to certain limitations. Specifically: '(1) the sanction must be just; and (2) the sanction must specifically relate to the particular claim at issue in the order. Furthermore, a compensatory award is limited to the actual losses sustained as a result of the contumacy.

*Cleveland v. Ludwig Inst. for Cancer Rsch. Ltd*., No. 19-CV-02141-JM (JLB), 2021 WL 4993025, at *4–5 (S.D. Cal. Oct. 27, 2021) (internal quotation marks and citations omitted).

Under Rule 37, as one court explained, the ideal sanction:

> [I]s one that advances both the remedial and deterrent goals of sanctions, as the need for one is not diminished by a need for the other. Thus, sanctions may be warranted where a relatively innocent violation leads great harm, where there is strong evidence of bad faith or willful conduct (even if there is minimal evidence of harm), and certainly where both are present. In all circumstances, an appropriate sanction will stem from the balance of the two.

*Apple, Inc. v. Samsung Elecs. Co., Ltd*., No. 5:11-cv-01846-LHK (PSG), 2014 WL 12596470 at *37 (N.D. Cal. Jan. 29, 2014). As further discussed by the district court in *Apple*, "the harshest sanctions, such as exclusion of evidence or dismissal, are to be reserved for cases of bad faith or willful misconduct." *Id*.

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

The Ninth Circuit has crafted a five-factor test, with three sub-factors considered in applying the fifth factor, in considering such drastic sanctions:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. The sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions.

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (internal citations omitted).

### B.    Legal Standard for Disqualification.

Courts routinely acknowledge that disqualification of counsel "is often tactically motivated" and "is a drastic measure that is generally disfavored."  *Quatama Park Townhomes Owners Ass'n v. RBC Real Est. Fin., Inc.*, 365 F. Supp. 3d 1129, 1137 (D. Or. 2019); *Klein v. Facebook, Inc.*, 2021 WL 3053150, at *8 (N.D. Cal. July 20, 2021) ("Disqualification is generally disfavored and should only be imposed when absolutely necessary").

In deciding a motion for disqualification, a court should consider "a client's right to chosen counsel, an attorney's interest in representing the client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion." *Id.* (citation omitted).  "The party moving for disqualification must satisfy a high standard of proof by producing substantial evidence of facts justifying disqualification such that the asserted impropriety is clear."  *Agena v. Cleaver-Brooks, Inc.*, 428 F. Supp. 3d 267, 273 (D. Haw. 2019) (internal quotation marks and citations omitted).

In *Roberts v. Legacy Meridian Park Hosp., Inc.,* 2014 WL 294549 (D. Or. 2014), Judge Simon explained:  "A motion to disqualify counsel is subject to particularly strict judicial scrutiny

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

because of the potential for misuse of state ethical rules for tactical purposes."  2014 WL 294549, at *17 (citing *Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985)) (internal quotation marks and alterations omitted).  *See also Quatama Park Townhomes Owners Ass'n v. RBC Real Est. Fin., Inc.*, 365 F. Supp. 3d 1129, 1137-38 (D. Or. 2019) (although Nike cited *Quatama Park*, it omitted the Court's statement that:  "[B]ecause a motion to disqualify is often tactically motivated, and can be disruptive to the litigation process, it is a drastic measure that is generally disfavored" and is therefore subject to "particularly strict judicial scrutiny") (citation and quotation marks omitted in original).[7]

### C.    Legal Standard for Contempt.

Even though a finding of civil contempt does not require a finding of willfulness, subjective intent is still relevant for determining whether a contempt finding is appropriate.

> We have not held, however, that subjective intent is always irrelevant. Our cases suggest, for example, that civil contempt sanctions may be warranted when a party acts in bad faith.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).  Thus, in *McComb*, we explained that a party's "record of continuing and persistent violations" and "persistent contumacy" justified placing "the burden of any uncertainty in the decree ... on [the] shoulders" of the party who violated the court order.  336 U.S. at 192–193, 69 S.Ct. 497.  On the flip side of the coin, a party's good faith, even where it does not bar civil contempt,

---

[7]  *See also Richards v. Jain*, 168 F. Supp. 2d 1195, 1200 (W.D. Wash. 2001) ("In general, disqualification is viewed as a drastic remedy that exacts a harsh penalty from the parties as well as punishing counsel; therefore it should be imposed only when absolutely necessary."); *MMR/Wallace Power & Indus., Inc. v. Thames Assocs.*, 764 F. Supp. 712, 718 (D. Conn. 1991) ("Where the proposed sanction is the disqualification of counsel, the court must be especially cautious, notwithstanding any misgivings it may have regarding an attorney's ethical conduct, both because of the immediate effect disqualification has on a client by separating him from his counsel of choice, and because such motions are often interposed for tactical reasons."); *Bold Ltd. v. Rocket Resume, Inc.*, No. 22-CV-01045-BLF, 2024 WL 589116, at *4 (N.D. Cal. Feb. 13, 2024) ("Given the potential for abuse, motions for disqualification are subjected to strict judicial scrutiny, and a court examines such motions carefully to ensure that literalism does not deny the parties substantial justice.").

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

> may help to determine an appropriate sanction. *Cf. Young v. United*
> *States ex rel. Vuitton et Fils S. A.*, 481 U.S. 787, 801, 107 S.Ct. 2124,
> 95 L.Ed.2d 740 (1987) ("[O]nly the least possible power adequate
> to the end proposed should be used in contempt cases").

*Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802, 204 L. Ed. 2d 129 (2019).

"Although the disobedience 'need not be willful,' a person may not be held in contempt if her actions 'appear[ ] to be based on a good faith and reasonable interpretation of the court's order' or reflect 'substantial compliance' therewith." *OmniGen Rsch., LLC v. Wang*, 2018 WL 11512767, at *2 (D. Or. Nov. 6, 2018) (internal citations omitted). Additionally, a court must find a civil contempt violation under clear and convincing evidence. *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982); *see also In re Farina*, No. BAP NC-23-1060-GFS, 2023 WL 7550446, at *5 (B.A.P. 9th Cir. Nov. 14, 2023).

## IV. DISCUSSION

Markowitz acknowledges that Ms. Salerno Owens made an unfortunate and regrettable mistake with this inadvertent disclosure, and understands the Court may issue a commensurate, just sanction. As will be discussed, however, almost none of Nike's proffered sanctions are either just or commensurate. Instead, Nike seeks sanctions to exact striking and abusive leverage against Plaintiffs—who were entirely blameless and uninvolved in this entire accident—for a mistake made inadvertently by their lawyer. As noted by one federal court, "[t]he case law encourage[s] restraint when issuing sanctions, particularly if the sanctions would impact disposition of the case on the merits, the prejudice to the complaining party was not severe, and no prior sanctions had been issued." *TML Recovery, Ltd. Liab. Co. v. CIGNA Corp.*, No. 8:20-cv-00269-DOC-JDE, 2023 WL 4843077, at *5 (C.D. Cal. July 17, 2023). *See also Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763–64, 100 S. Ct. 2455, 2463, 65 L. Ed. 2d 488 (1980) (noting that sanctions (especially under Rule 37) "must be applied diligently both 'to penalize those whose conduct may be deemed to

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent'") (internal citation omitted).

Accordingly, Nike's request for exclusion of evidence, a change of venue, and disclosure of identities of other people that spoke with Ms. Salerno Owens, all seek to penalize the named Plaintiffs (or the putative class of plaintiffs) rather than Markowitz itself.  While Markowitz expects Plaintiffs' counsel to file a brief more substantively refuting such sanctions, they plainly are not appropriate towards either penalizing or deterring the reoccurrence of the conduct at issue here.

### A.    Exclusion of evidence is not warranted here, especially given the absence of willfulness or bad faith in any violation of the protective order.

As noted in *Apple*, "exclusion of evidence… [is] to be reserved for cases of bad faith or willful misconduct."  2014 WL 12596470 at *37.  Since neither is present in this case—and since Nike has made no showing at all, let alone by clear and convincing evidence—there is no basis to exclude the use of evidence by the Plaintiffs for their lawyer's isolated mistake.

Nike argues that Plaintiffs (not Markowitz) should be precluded from any further discovery related to the Starfish Surveys—only a portion of which were inadvertently produced, and only a very small subset included unredacted names currently subject to a Ninth Circuit appeal—as well as excluded from producing any "records, testimony, information, or argument relating to Project Starfish from any summary judgment or trial proceedings."  (Nike's Mot. at 19).

In support, Nike relies on distracting cases not on point where a court has excluded information from a trial that was ***obtained*** in a manner that violated a protective order or other court rule.  For example, in *Knox v. City of Fresno*, the court excluded an expert (and any evidence stemming from that expert) who obtained opinions from confidential reports in other cases governed by protective orders that did not allow the release or use of those reports for other matters.

Page 17  MARKOWITZ'S RESPONSE IN OPPOSITION TO NIKE'S
MOTION FOR SANCTIONS [ECF 471]

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

No. 1:14-CV-00799-EPG, 2016 WL 3365670, at *2 (E.D. Cal. June 15, 2016).  In *Allergan, Inc. v. Sandoz Inc.*, the court excluded a defendants' expert, who was not previously disclosed as required in the case and who relied on plaintiff's confidential information without any permission, as well as his report, which utilized such information. No. 2:09-CV-182, 2011 WL 2563238, at *1 (E.D. Tex. June 28, 2011).  The same occurred in *Matter of Bouchard Transportation Co., Inc.*, No. 14 CIV. 0617 (PAC), 2018 WL 1581992, at *1 (S.D.N.Y. Mar. 28, 2018).

None of these cited cases bears any relation to the immediate matter.  Markowitz did not disclose the Starfish Surveys to an expert so that it could be used against its opponent at trial; Markowitz inadvertently produced documents to a third party that was seeking public information (who could not use it in the current litigation to gain any advantage).

Nike also cites *Koch v. Greenberg,* which similarly does not lend credence to Nike's argument.  In *Koch*, sanctions arose after the court found that plaintiff and his "counsel had engaged in the practice of forwarding confidential material to Koch's publicist," who then forwarded such information to the press (and in the matter at issue, even to the FBI).[8]  *Koch*, No. 07CIV9600BSJDF, 2011 WL 13260757, at *3 (S.D.N.Y. Aug. 16, 2011), *report and recommendation adopted*, No. 07 CV 9600 BSJ DF, 2011 WL 4485975 (S.D.N.Y. Sept. 28, 2011), *modified*, No. 07CV9600BSJDF, 2012 WL 13063624 (S.D.N.Y. Aug. 23, 2012).  Yet, Markowitz

---

[8]  Although the lawyer in *Koch* initially claimed that the disclosure was "inadvertent," the opinion does not give any support to such an argument.  This was especially so since the court found that the lawyer routinely provided confidential documents to the publicist, and intentionally did so in the matter before the court.  *Koch*, 2011 WL 13260757, at *9 (noting that Koch sent documents to his 'publicist' who was argued to be his employee and entitled to see documents).  Dissimilar from the present matter, the plaintiff in *Koch* intended to send the confidential materials to his own employee, who Koch later argued should have been entitled to see the confidential materials as his agent.

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

gained no strategic advantage by mistakenly disclosing such documents to The Oregonian as counsel in *Koch* did, nor has there been any showing of willful misconduct.

Moreover, excluding the documents would be neither commensurate nor just; it is an attempt to prematurely exclude evidence that this Court has already found subject to disclosure (ECF 363). Before the close of discovery, rather than seeking a sanction that relates to the inadvertent disclosure and may act to deter any similar accidents in the future, Nike is seeking to foreclose Plaintiffs' use of certain documents it produced in this case. Nike argues that these documents "have no relevance to Plaintiffs' claims," and if it believes that, then this request is more appropriately made in a motion *in limine*, not as an unrelated request for sanctions due to an inadvertent disclosure. (Nike's Mot. at 20).

### B. There is no basis for the Court to compel disclosure of the identities of women that Ms. Salerno Owens referenced in a completely unrelated article from over a year ago.

Nike claims that "[a]mple evidence exists that counsel violated" the protective order and used confidential records "to solicit prospective clients." (Nike's Mot. at 21). As a result, Nike seeks extreme relief in compelling the identities of woman with whom Ms. Salerno Owens has spoken (and which was referenced in an article from over a year ago), and further seeks to have Markowitz defend Nike against lawsuits brought against it in claims of misconduct (were any to arise in the future).

Nike seeks to leverage Ms. Salerno Owens' mistake to seek relief that has nothing to do with the inadvertent disclosure. Whether, and to what extent, Markowitz has spoken with prospective clients, or former employees of Nike regarding claims that they could have against the company, is unrelated to the inadvertent production and, therefore, such relief would be inappropriate as a sanction.

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

Nike's argument is predicated on a single quote from a profile of Ms. Salerno Owens in the Portland Business Journal in February 2023—nearly a year before the inadvertent disclosure. (*See* ECF 472-1). In response to a question about representing female plaintiffs in discrimination matters, Ms. Salerno Owens mentioned that "many women [have told her] what has happened to them…because they're too scared to bring a case publicly because they're worried that they'll be retaliated against and blacklisted in the community." (*Id.*) But Nike never explains how this amounts to "ample evidence" of soliciting clients from documents that continue to be designated as confidential (and Nike even concedes that none of the women named in the Starfish Surveys are named plaintiffs). (Nike's Mot. at 2).

Moreover, Nike's delay in raising this issue demonstrates that it is not related to, and has nothing to do with, the inadvertent disclosure. Nike had known about this article for almost a year before the inadvertent disclosure happened, and Ms. Salerno Owens has had Nike's Starfish Surveys in her possession since they were produced in discovery. Yet, Nike never raised this issue until now. It is irrelevant to the issue of inadvertent disclosure and should have no bearing on the instant motion.

In the cases cited by Nike in support of this proposed sanction, there is actual evidence that plaintiffs' counsel used confidential documents to engage new class members. Nike has no such evidence. And none exists, because it never happened. Moreover, Nike is aiming to do with this sanctions motion exactly that which Ms. Salerno Owens worried about publicly in 2023—i.e., this sanction appears targeted to scare potential victims into silence and create potential conflicts of interest for Markowitz to represent them. To the extent Nike seeks to unmask potential victims of workplace harassment and discrimination, this sanction would seek only to bully and penalize those who have already been victimized.

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

Finally, Nike's additional requested sanction that would "award Nike's reasonable attorneys' fees and costs incurred in defending any legal proceeding brought by those individuals who Plaintiffs' counsel solicited" is unsupported, nonsensical, contingent upon events that have not occurred, and not even well defined or explained. It appears that Nike is requesting that an attorney engaged in litigation with it over gender discrimination should indemnify Nike for any and all damages related to the harassment and discrimination suffered by any of its employees because they may have spoken with Ms. Salerno Owens. This requested sanction has no merit as is self-evident by Nike's lack of explanation or legal support.

### C.    There is no good cause to change the venue as a sanction.

Nike argues that a change of venue is appropriate here because of the "substantial taint placed on this proceeding by the unauthorized and unlawful disclosure of the Project Starfish documents to the press." (Nike's Mot. at 22.) As discussed above, however, and as Nike conceded in its own Motion, the content and allegations contained in the isolated set of inadvertently produced documents were already known to The Oregonian and were already subjects of previously published news articles. *See infra* section II(D), pages 10-12. Moreover, The Oregonian has not published the unredacted names regarding any specific Nike employee. As a result, Nike has not demonstrated what "substantial taint" exists where The Oregonian already knew and published stories about the surveys before the inadvertent disclosure.

Such a sanction would inappropriately punish Plaintiffs rather than Markowitz for a solitary accident by a single Plaintiffs' counsel over a six-year long representation, where the allegations in the documents designated confidential were already generally known and subject to news articles. Nike has not cited any cases in support to demonstrate that such a sanction is

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

warranted.  Indeed, only one of the cases cited involved a change of venue, and none have anything to do with an award of sanctions under Rule 37.

In *In re Porter,* 268 Or. 417, 521 P.2d 345 (1974), an attorney disciplinary matter, an attorney made a series of intentional statements to the press to influence the jury pool in a wrongful death matter.  The disclosures were repeated and intentional.  Regardless, the Oregon Supreme Court still only issued a reprimand, and no change of venue was ever effectuated or ordered.  Similarly in *U.S. Equal Emp. Opportunity Comm'n v. Scolari Warehouse Markets, Inc*., No. CV 04-0229-DAE-RAM, 2007 WL 9734382 (D. Nev. June 22, 2007), there were multiple intentional extrajudicial statements in a relatively small county where, according to the court, the attorney mischaracterized the court's own holdings and opinions repeatedly.  Even so, the court only granted a narrow restraining order, not a change of venue—a possible change in venue is not even mentioned in the opinion.  *Id.*

Nike cited *Daniels v. Woodford*, 428 F.3d 1181 (9th Cir. 2005), which dealt with a change of venue request in a felony murder case where the motion of change of venue was based upon the "extensive pretrial publicity surrounding the murders of … two police officers."  There was extensive news coverage on the case itself, as well as extensive public commentary including editorials calling for the defendant's execution; none of which is similar to any type of inadvertent disclosure or the limited press coverage this issue has received.

Moreover, to the extent Nike worries of bad press, most of The Oregonian's recent reporting on Nike (some of which may be characterized as positive and some negative) has nothing to do with the events of this litigation or the inadvertent disclosure, and Plaintiffs should not be

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

punished for Nike's own unrelated conduct.[9]  Nike does not challenge any of The Oregonian's articles as false, nor does Nike aid its argument that it is suffering bias (in its at-home district) considering the amount of negative press generated by it completely unrelated to this inadvertent disclosure or this case.  *See, e.g., In re Tesla Inc. Sec. Litig.*, No. 18-CV-04865-EMC, 2023 WL 1452008 (N.D. Cal. Feb. 1, 2023) (noting that a change of venue is not warranted where defendants do not contest the factual nature of pretrial publicity in a criminal case).

Yet again, this proposed sanction is Nike's attempt to baselessly punish the Plaintiffs with a sanction wholly unrelated to Markowitz's inadvertent disclosure.[10]  There are no similarities between a criminal matter, where venue and concerns of biased press are judged under wholly different standards, and the present case.

---

[9] See e.g.:

- *Nike reports flat revenue, drop in digital sales after 2% workforce layoff*, https://www.bizjournals.com/portland/news/2024/03/21/nike-earnings-layoffs-revenue-flat-digital-dtc.html

- *MLB plans to modify uniforms ahead of 2025 season following complaints, per report*, CNN, available at https://www.cnn.com/2024/04/29/sport/mlb-plans-to-modify-uniforms-ahead-of-2025-season-spt-intl/index.html (April 29, 2024) ("'This has been entirely a Nike issue,' the memo said, per ESPN.")

- *Nike CEO John Donahoe blames remote for innovation slump, acknowledges overinvestment in direct sales* https://www.bizjournals.com/portland/news/2024/04/12/nike-ceo-john-donahoe-remote-work-innovation.html

- *Nike's new Team USA Olympic track uniform for women slammed as sexist by athletes: 'A costume born of patriarchal forces'* https://www.yahoo.com/news/nikes-new-team-usa-olympic-track-uniform-for-women-slammed-as-sexist-by-athletes-a-costume-born-of-patriarchal-forces-215927719.html

[10]  Nike's request that Plaintiffs pay for all fees and costs related to a change of venue is unexplained, unsupported, and should be similarly disregarded with the remainder of this sanction request.

Page 23  MARKOWITZ'S RESPONSE IN OPPOSITION TO NIKE'S
MOTION FOR SANCTIONS [ECF 471]

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

Finally, The Oregonian is a newspaper and media group that describes itself as a "local news source in the Pacific Northwest," and its digital reach focuses on "the Pacific Northwest." https://www.oregonianmediagroup.com/our-company.  The Oregonian reaches "77% of people in Oregon and SW Washington" and its related website (Oregonlive.com) is accessible to everyone in Oregon (and the country).  In other words, The Oregonian and Oregonlive.com are not limited to distribution in Portland, and Nike makes no effort to explain how or why changing the venue to Medford, which has the same access to this media, would minimize any harm, especially given the prior articles written by The Oregonian.  Such a request feels like nothing more than an attempt to increase the Plaintiffs' trial costs, and shop for what Nike may believe is a friendlier jury pool.  Separately, Nike's request that Plaintiffs cover the costs of its travel and expenses in Medford is similarly befuddling as most of Nike's counsel lists addresses in Los Angeles, making it unclear how they would have heightened expenses by trying the case in Medford as opposed to Portland.

### D.    A disqualification of Markowitz is unwarranted as Markowitz has not engaged in any unethical behavior.

#### 1.    Markowitz has not violated any Rules of Professional Conduct.

Nike suggests Markowitz has failed to comply with the Oregon Rules of Professional Conduct ("RPC") and encourages the Court to disqualify Markowitz on those grounds. (Nike's Mot. at 26).  This is not true, and Nike provides no legal analysis or support.

Disqualification cannot be premised on "general and conclusory allegations," or "concerns which are merely anticipatory and speculative."  *Agena*, 428 F. Supp. 3d at 273.  Nike claims that, "[p]er above, Plaintiffs' counsel violated several Oregon Rules of Professional Conduct."  Yet the only "above" reference Nike makes to the Oregon Rules of Professional Conduct is a string citation in a footnote from Nike's legal standard section.  (*See* Nike's Mot. at 14 n.10).  This citation clause does not even rise to the level of "general and conclusory allegations," or "concerns which are

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

merely anticipatory and speculative."  Rather, these are simply recitations of four RPCs that Nike believes are implicated here, though Nike has not articulated why in any form of analysis.  This is not "substantial evidence of facts justifying disqualification such that the asserted impropriety is clear," and it cannot serve as the basis for disqualification.

First, Nike suggests that Ms. Salerno Owens violated RPC 3.4(c), which is the Oregon ethics rule that prohibits a lawyer from *knowingly* "disobey[ing] an obligation under the rules of a tribunal…"  *See* RPC 3.4(c) (stating same).  As used in the RPCs, "[k]nowingly," is defined as denoting "*actual knowledge* of the fact in question."  *See* RPC 1.0(h) (emphasis added).  All available evidence shows that Ms. Salerno Owens' disclosure was inadvertent and thus not knowing.  As such, Ms. Salerno Owens did not violate, and could not have violated, RPC 3.4(c).

Second, Nike suggests that Ms. Salerno Owens violated RPC 3.6(a), which is the rule that addresses the permissible scope of trial publicity.  The rule prohibits a lawyer who is participating in the litigation of a matter from making "an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."  RPC 3.6(a).  Oregon State Bar Formal Ethics Op. 2007-179 explains that, "[i]n order for Oregon RPC 3.6 to pass constitutional muster, it must be read to proscribe only 'speech that creates a danger of imminent and substantial harm.'"[11]

Again, all available evidence shows that Ms. Salerno Owens' disclosure was inadvertent.  To violate this rule, she would not only have had to have somehow *knowingly* inadvertently

---

[11] The ethics opinion notes that " 'a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter' means the same thing as what the Oregon Supreme Court, in *Laswell*, described as "a serious and imminent threat to the [fact-finding] process" or "highly probable serious prejudice to an imminent procedure before lay fact finders."  OSB Formal Ethics Op. 2007-179 (citing *In re Laswell*, 296 Or. 121, 126 & n.3, 673 P2d 855 (1983)).

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

disclosed the documents but also somehow *known* that such an inadvertent disclosure would cause imminent and substantial harm to a jury appointed at some point in the distant future. Given that there is no trial date, there is no immanency, nor could there be the type of harm proscribed by the rule. Nike presents no evidence of, nor argument, to the contrary.

Third, Nike inexplicitly cites RPC 3.6(e), which cautions that a lawyer must "exercise reasonable care to prevent the lawyer's employees from making an extrajudicial statement that the lawyer would be prohibited from making under this rule." This is a frivolous issue for Nike to raise, especially since no one—let alone Nike—has suggested that anyone other than Ms. Salerno Owens made any public statement.

Fourth, Nike cites RPC 4.4(a), which prohibits a lawyer from using "means that have no substantial purpose other than to embarrass,[12] delay, harass or burden a third person" in representing a client or the lawyer's own interests.[13] The ethics rule requires the lawyer's conduct to have some *purpose,* indicating that an intent is required to violate the rule. Here, there was none. Providing a public statement on Pam Parker is ethically and constitutionally permissible and cannot form the basis of a rule violation.

Finally, "[b]ecause punishment for violations of the rules of professional conduct is the purview of the state bar, the court's goal is not to impose a penalty against an attorney, rather the

---

[12] Notably, this Court has already found Nike's "embarrassment" argument about allegations of sexual harassment unavailing. ECF 363 at 5. ("The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records").

[13] RPC 4.4(a) provides, in full, "In representing a client or the lawyer's own interests, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, harass or burden a third person, or knowingly use methods of obtaining evidence that violate the legal rights of such a person." Nike did not cite which part of the rule it thinks Markowitz violated and, although neither actually apply here, we have assumed that Nike intended the first part.

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

goal is to fashion a remedy for whatever improper effect the attorney's misconduct has had in the case." *Lopez v. Banuelos*, No. 1:11-CV-466 AWI JLT, 2013 WL 4815699, at *4 (E.D. Cal. Sept. 6, 2013). Nike has failed to meet its high burden of proving that disqualification of Plaintiffs' counsel is an appropriate remedy.

### 2.    Disqualification is not warranted.

According to Nike, disqualifying Markowitz would "enforce[] the need to maintain ethical standards of professional responsibility and avoid[] interfering with Plaintiffs' right to chosen counsel, since the other non-Markowitz attorneys would continue to represent them in this lawsuit." (Nike's Mot. at 26) (internal quotation marks omitted). But Nike has done no more than state some "general and conclusory allegations," and, as shown above, there have been no ethical violations. *Agena*, 428 F. Supp. 3d at 273.

Nike has no basis or evidence to assert that Plaintiffs would not be impacted by Markowitz's disqualification because of the presence of "so many other non-Markowitz lawyers." Indeed, Markowitz is local counsel for the other Plaintiffs' counsel, who have appeared *pro hac vice*. Disqualifying Markowitz would result in substantial prejudice to the Plaintiffs because they would need to secure new local counsel, who could sponsor their *pro hac* admissions and would need to get up to speed on the case after six years of contentious and complex litigation.

Further, Nike's attempt to analogize its argument to *Bold Limited* is not well-taken. In that case, the disqualified counsel was "an in-house lawyer or general counsel," which is why the court found that the defendants would not face substantial prejudice upon disqualification. 2024 WL 589116, at *12. The court also found that "the equities weigh[ed] in favor of disqualification" because the movants did not engage in "tactical abuse" as they "did not delay in seeking disqualification." *Id.* (citing W. *Sugar Coop. v. Archer-Daniels-Midland Co.*, 98 F.Supp.3d 1074,

Page 27  MARKOWITZ'S RESPONSE IN OPPOSITION TO NIKE'S
MOTION FOR SANCTIONS [ECF 471]

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

1092 (C.D. Cal. 2015) (finding no tactical abuse where the motions were filed <u>days</u> after the movant learned of the conflict and met and conferred with opposing counsel)). Nike cannot say the same here—it has been *several months* since Nike learned of the issues it raises in its Motion, suggesting this is precisely the kind of tactical abuse that cannot serve as the basis for disqualification.

While this proposed sanction, unlike the previously discussed ones, is not specifically targeted towards Plaintiffs, it would nonetheless be Plaintiffs who suffer the most. Plaintiffs have not expressed any desire for Markowitz to withdraw following this inadvertent disclosure, and granting a disqualification after the case has advanced this far would prejudice Plaintiffs and award Nike a purely tactical advantage. Markowitz did not gain any extra insight or unfair advantage through its inadvertent disclosure. It made a mistake, but this mistake did not confer any benefit that would be ameliorated by disqualification.

### E.    Civil contempt is not justified under these circumstances.

Nike has not met its high burden of clear and convincing evidence to demonstrate that civil contempt is appropriate here, where there is no plausible question that the disclosure was inadvertent. Instead, both cases cited by Nike in support of a finding of civil contempt involve *intentional* violations of court orders.

In *Harmston v. City & Cnty. of San Francisco*, No. C 07-01186SI, 2007 WL 3306526, at *7 (N.D. Cal. Nov. 6, 2007), *order clarified*, No. C07-01186SI, 2008 WL 269465 (N.D. Cal. Jan. 29, 2008), the court found a party in civil contempt after a party intentionally shared video footage of a taped deposition that had been designated by the opposing party as confidential and subject to a protective order. While the party in contempt objected to that designation, it willingly shared video of a deposition that it knew was being maintained as confidential. *Id*. at *5-6. There is no

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

discussion or contention in that entire opinion that the disclosure was inadvertent; rather it was plainly intentional—the party in contempt sent the videotape to numerous outlets to disseminate such information "as widely as possible, to both the Internet and a television news station." *Id.* In *Harmston*, the party found to be in contempt knowingly and intentionally published something it knew to be maintained as confidential to as wide an audience as possible, quite different than the current case.

Additionally, in *OmniGen Rsch., LLC v. Wang*, the court found by clear and convincing evidence that one party "*stole* large volumes of confidential information from Plaintiffs and used those materials to establish copycat businesses in Oregon and China" in violation of a protective order. No. 6:16-CV-268-MC, 2018 WL 11512767, at *1 (D. Or. Nov. 6, 2018) (emphasis added). Again, that simply is not our case. No one is accused of having *stolen* confidential information nor having profited from it; Ms. Salerno Owens was intending to share what she believed was publicly-accessible information. She was mistaken, but she was not acting in any kind of willful manner or with knowing bad faith.

More similar to the present case is *Harmon v. City of Santa Clara,* 323 F.R.D. 617 (N.D. Cal. 2018). In *Harmon*, the plaintiff and her counsel released a video tape allegedly containing body camera footage of an officer using unnecessary force that was designated confidential under a protective order. They argued that it was unintentional, asserting that "they had mistakenly believed the video was not produced confidentially under the protective order and did not realize their mistake." *Id.* at 620.

The court *denied* a civil contempt finding but ordered them to pay the reasonable fees and costs of adjudicating the protective order violation. The court emphasized that:

> [A]lthough willfulness is not required for a contempt finding, the Court is nonetheless inclined not to find contempt here, because Haddad and Sherwin's

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

actions do not appear to have been willful defiance of a court order. Furthermore, Haddad and Sherwin have rightly met with embarrassment and strife from their imprudent behavior, and the Court is optimistic that this will deter future misconduct. Under these circumstances, a finding of civil contempt is unwarranted.[14]

*Id.*

The court also rejected requests to withhold settlement funds, a referral to disciplinary committee, and compensatory monetary sanctions. *Id.* at 627.

**F.    To the extent the Court finds any sanction appropriate, it should limit it to a reasonable monetary penalty to be decided in subsequent briefing.**

As an initial matter, sanctions are not mandatory simply because Ms. Salerno Owens acknowledges she failed to abide by the Protective Order through an inadvertent disclosure. *See Air Separation v. Underwriters at Lloyd's of London,* 45 F.3d 288, 291 (9th Cir. 1994) (although courts may impose sanctions for the failure to obey court orders, they are not required to do so"); *and Apple, Inc. v. Samsung Elecs. Co., Ltd.,* No. 5:11-cv-01846-LHK (PSG), 2014 WL 12596470 (N.D. Cal. Jan. 29, 2014) ("Authority, however, is not obligation. In other words, protective order violations may, but do not necessarily, constitute sanctionable conduct").

As discussed above, Nike has not demonstrated that Ms. Salerno Owens committed any violation of the Oregon Rules of Professional Conduct. As she committed no ethical violations, and certainly did nothing "knowingly" or "intentionally," there is no inherent need to pile on additional punishment here—especially since it would not have a deterrent effect on the lawyers involved. Given the publicity this accident has generated, the Court can reasonably find that Ms. Salerno Owens' significant embarrassment is punishment enough. *See, e.g., Harmon v. City of*

---

[14] The Court was particularly concerned about the delay in action after the disclosure: "And more problematically, there is no indication that [the attorneys] took any further steps in the nearly two weeks between the associate attorney's investigation and [the client] [posting the video on YouTube." *Id.* at 626.

Page 30  MARKOWITZ'S RESPONSE IN OPPOSITION TO NIKE'S
MOTION FOR SANCTIONS [ECF 471]

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

*Santa Clara,* 323 FRD 617 (N.D. Cal. 2018) (finding the violating parties "have rightly met with embarrassment and strife from their imprudent behavior, and the Court is optimistic that this will deter future misconduct.")

Nonetheless, Markowitz acknowledges that the Court has the authority to award something.[15]  In *I.F. v. City of Vallejo,* a confidential portion of a deposition in a case alleging misuse of force in a police shooting was released to the media before the party who disclosed it appreciated that the deposition was subject to a protective order.  No. 2:18-CV-0673-JAM-CKD, 2021 WL 601054, at \*9 (E.D. Cal. Feb. 16, 2021).  In resolving a motion for sanctions following that inadvertent disclosure, the court said:

> For all the gravity of the underlying suit, the court concludes that the protective order violations alleged in these motions do not warrant the magnitude of the sanctions sought.  In the court's estimation, all that has happened is:  (A) plaintiffs' counsel mistakenly sent to one reporter [evidence]…and defendants justifiably wish to hold them accountable for that mistake— although, as discussed below, to a far more extreme degree than the court is prepared to authorize.  Without minimizing what defendant McMahon has experienced since the news story, the court does not find plaintiffs' counsel's actions egregious enough to award all—or indeed, most—of the sanctions defendants request.

*Id*. at \*9.  Despite the court acknowledging that the party that had inadvertently disclosed materials did not appear "particularly remorseful" in briefings with the court, the court found sanctions above and beyond some reasonable attorneys' fees were unwarranted because the conduct was "only negligent, not more."  *Id*. at \*13-16 (noting "both before and after the Protective Order violations, much of the same disclosed information was already known to parties outside of this litigation.")

---

[15]  To the extent that the Court believes a monetary penalty is appropriate, additional briefing will be necessary to address a reasonable amount.

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

Aside from the filing of additional pleadings, there is minimal evidence of any actual harm to Nike arising from the inadvertent disclosure, because the documents that were inadvertently disclosed mirror existing allegations of conduct at Nike as what was already in the public domain both on this Court's docket and as publicly reported.  This is evident through a comparison of the only press coverage concerning the inadvertently disclosed documents with other news stories published over the last several years dating back to the Spring of 2018 before the present lawsuit was even filed.

While Nike grumbles about significant harm as a result of the disclosure, the information released by The Oregonian in 2023—a year before the inadvertent disclosure—was the same type and tenor of information, level of detail, and shock value that was in The Oregonian's April 22, 2024 article. (*Infra* at § II.D, n. 5).  And similar allegations and information were detailed in news coverage from the Spring of 2018, before this lawsuit was even filed on August 9, 2018.  The Oregonian obtained this prior information strictly from publicly accessible sources.  (*See* ECF 472-7.)  And although there were 9 pages produced that included unredacted names (which are the subject of the current appeal), two points are important:  (1) both Judge Russo and Judge Hernandez previously ruled that Nike had improperly designated names as confidential under the stipulated protective order, and (2) The Oregonian has not published or otherwise made the unredacted names available.  As a result, there is no real harm for which to punish Markowitz at this time since Nike has not been impacted by this inadvertent disclosure beyond the additional briefing.

Despite Nike's reports of similar incidents in a case almost 10 years ago, Ms. Salerno Owens had no involvement in that, and none of the attorneys in that prior case were in any way involved in this inadvertent disclosure. In fact, Nike's references to the Oracle litigation in its

Page 32  MARKOWITZ'S RESPONSE IN OPPOSITION TO NIKE'S
MOTION FOR SANCTIONS [ECF 471]

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 82856619v8

Motion bears no more relevance on this case than instances where Nike's lead counsel has previously been sanctioned for improperly withholding discovery would in Plaintiffs' motion to compel, or in the various other cases in which Nike's lead counsel has similarly been sanctioned for discovery violations (ECF 451). Similarly, other counsel's actions in other litigation do not bear on Ms. Salerno Owens' mistake here, which she acknowledges and regrets.

## V.    CONCLUSION

As stated throughout this motion, and in fact ever since Markowitz first brought this matter to the Court's attention within days of the inadvertent disclosure, Ms. Salerno Owens acknowledges she made a mistake. Yet, it was a single mistake in the course of a six-year long representation. Markowitz and Ms. Salerno Owens have suffered enough with the significant embarrassment from the mistake in this matter.

As a result, and in recognition of its acceptance of its mistakes, the Court need not dole out onerous sanctions to ensure this does not happen in the future. *See, e.g., Lawson v. Spirit Aerosystems*, No. 18-1100-EFM-ADM, 2020 WL 3475231 (D. Kan. June 25, 2020) (The Court may consider acceptance of responsibility as a factor in its decision in what, if any, sanctions to award; court found a public admonishment a sufficient punishment after a party that inadvertently disclosed documents sought to correct the mistake and own up to what had occurred).

Similarly here, there is no need to issue any sanctions—Markowitz and Ms. Salerno Owens understand the gravity of the error, regret the mistake, and have accepted the consequent financial expense and public embarrassment. Alternatively, if the Court feels a need to respond in some way to this accident, Markowitz requests that any sanction be limited to a modest monetary penalty

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

with no additional punitive measures, after additional briefing.  Accordingly, Nike's motion should

be denied.

DATED this 3rd day of June, 2024.

BUCHALTER
A Professional Corporation

By  s/ *David J. Elkanich*
        David J. Elkanich, OSB No. 992558
        Email: delkanich@buchalter.com
        David A. Bernstein, OSB No. 235633
        Email: dbernstein@buchalter.com
        Telephone: 503.226.1191

        Attorneys for Non-Party Markowitz Herbold
        PC

Page 34  MARKOWITZ'S RESPONSE IN OPPOSITION TO NIKE'S
        MOTION FOR SANCTIONS [ECF 471]

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 82856619v8

CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it is less than 35 pages and contains 10,580 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Page 1    MARKOWITZ'S RESPONSE IN OPPOSITION TO NIKE'S
MOTION FOR SANCTIONS [ECF 471]

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191 / Fax: 503.226.0079

BN 82856619v8