**Laura L. Ho** (admitted *pro hac vice*)
lho@gbdhlegal.com
**Barry Goldstein, Of Counsel** (admitted *pro hac vice*)
bgoldstein@gbdhlegal.com
**James Kan** (admitted *pro hac vice*)
jkan@gbdhlegal.com
**Byron Goldstein** (admitted *pro hac vice*)
brgoldstein@gbdhlegal.com
**Katharine L. Fisher** (admitted *pro hac vice*)
kfisher@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel: (510) 763-9800 | Fax: (510) 835-1417

Counsel for Plaintiffs

[Additional Counsel of Record listed on the Signature page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, et al., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NIKE, INC., an Oregon Corporation,<br><br>Defendant. | Case No. 3:18-cv-01477-JR<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT NIKE INC.'S MOTION FOR SANCTIONS AND CONTEMPT RE: PLAINTIFFS' COUNSEL'S UNAUTHORIZED DISCLOSURE OF JUDICIAL RECORDS IN VIOLATION OF COURT ORDERS**<br><br>**ORAL ARGUMENT REQUESTED** |

## <u>TABLE OF CONTENTS</u>

Page

I.     INTRODUCTION ................................................................................................1

II.    NIKE'S REQUEST FOR SANCTIONS AGAINST PLAINTIFFS IS
       MERITLESS, INDEFENSIBLE, AND IRRESPONSIBLE ................................1

III.   THERE IS NO BASIS TO EXCLUDE EVIDENCE RELATED TO PROJECT
       STARFISH.........................................................................................................2

IV.    THERE IS NO BASIS TO DISQUALIFY MARKOWITZ ATTORNEYS
       WHICH WOULD SEVERELY PREJUDICE PLAINTIFFS ............................7

V.     THERE IS NO BASIS TO CHANGE VENUE AND MOVE THE TRIAL TO
       THE MEDFORD DIVISION. ..........................................................................10

VI.    CONCLUSION.................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allergan, Inc. v. Sandoz, Inc.*,
No. 2:09-cv-97, 2011 WL 2563238 (E.D. Tex. June 28, 2011) ................................4

*Bold Ltd. v Rocket Resume Inc.*,
No. 22-cv-01045-BLF, 2024 WL 589116 (N.D. Cal. Feb. 13, 2024) ......................9

*Bouchard Transp. Co. v. Tug M/V Ellen S. Bouchard*,
No. 14 Civ. 1262 (PAC), 2018 WL 1581992 (S.D.N.Y. Mar. 28, 2018) ................4

*Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*,
264 F. Supp. 2d 914 (N.D. Cal. 2003) .....................................................................9

*Chugach Elec. Ass'n v. U.S. Dist. Ct.*,
370 F.2d 441 (9th Cir. 1966) ...................................................................................8

*Daniels v. Woodford*,
428 F.3d 1181 (9th Cir. 2005) ..................................................................10, 11, 12

*Ebewo v. Martinez*,
309 F. Supp. 2d 600 (S.D.N.Y. 2004).......................................................................3

*EEOC v. Scolari Warehouse Markets, Inc.*,
No. 04-0229-DAE-RAM, 2007 WL 9734382 (D. Nev. June 22, 2007)...........12, 13

*Freeman v. Chicago Musical Instrument Co.*,
689 F.2d 715 (7th Cir.1982) ....................................................................................8

*Harris v. Pulley*,
885 F.2d 1354 (9th Cir. 1988) ................................................................................10

*Heyne v. Caruso*,
69 F.3d 1475 (9th Cir. 1995) ....................................................................................5

*Klein v. Facebook, Inc.*,
No. 20-cv-08570-LHK, 2021 WL 3053150 (N.D. Cal. July 20, 2021)................8, 9

*Knox v. City of Fresno*,
No. 1:14 -cv-00799-EPG, 2016 WL 3365670 (E.D. Cal. June 14, 2016) ................4

*Koch v. Greenberg*,
No. 07CIV9600BSJDF, 2011 WL 13260757 (S.D.N.Y. Aug. 16, 2011) .................4

*Koch v. Greenberg*,
No. 07 Cv. 9600 (BSJ) (DF), 2011 WL 4485975 (S.D.N.Y. Sept. 28, 2011) ......4, 5

*Koch v. Greenberg*,
  No. 07 Cv. 9600 (BSJ) (DF), 2012 WL 13063624 (S.D.N.Y. Aug. 23, 2012) ........................4

*Optyl Eyewear Fashion Int'l Corp. v. Style Companies.*,
  760 F.2d 1045 (9th Cir. 1985) ...................................................................................8

*Penk v. Oregon State Bd. of Education*, No. 80-436 FR, 1984 WL 161490 (D. Or.
  July 27, 1984)..............................................................................................................3

*Potach Corp. v. United States*,
  679 F.2d 153 (9th Cir. 1982) .....................................................................................3

*Rice v. Baron*,
  456 F. Supp. 1361 (S.D.N.Y.1978)...........................................................................8

*In re Tesla Inc. Sec. Litig.*,
  No. 18-CV-04865-EMC, 2023 WL 1452008 (N.D. Cal. Feb. 1, 2023) .................11

*Wickersham v. Eastside Distilling, Inc.*,
  No. 3:20-cv-02182-YY, 2024 WL 455070 (D. Or. Jan. 25, 2024)............................8

**State Cases**

*In re Porter*,
  268 Or. 417 (1974)....................................................................................................12

**Rules**

Fed. R. Civ. P.
  11(b).............................................................................................................................2
  37(c)(1) .......................................................................................................................3

**Local Rules**

Local Rule 7-1......................................................................................................................2

**Other Authorities**

57 N.C. L. Rev. 595 (1979) ................................................................................................8

## I.    <u>INTRODUCTION</u>

In response to a one-time, inadvertent disclosure of documents by an attorney from at Markowitz Herbold PC ("Markowitz"), Nike seeks the imposition of sanctions against the attorney and her law firm.  Remarkably, Nike also asks the Court to impose sanctions against Plaintiffs themselves, sanctions that would not only prejudice Plaintiffs' claims but also hold them financially responsible for events wholly outside of their control.

Nike's motion for sanctions against Plaintiffs should be denied for several reasons.  First, the sanctions Nike seeks against Plaintiffs are unrelated to the inadvertent disclosure that is the basis for its motion.  Second, the sanctions will significantly prejudice Plaintiffs' ability to bring their civil rights claims as a matter of both procedure and substance.  Third, sanctioning Plaintiffs for the independent actions of their counsel will chill the pursuit of civil rights claims and assist Nike (and future employers) in a campaign of intimidation against individual litigants. Fourth, Nike's request to change venue is transparently tactical and intended to inconvenience and prejudice Plaintiffs.

For these reasons, Plaintiffs respectfully ask the Court to reject Nike's improper and unjustifiable request for sanctions against them.

## II.    <u>NIKE'S REQUEST FOR SANCTIONS AGAINST PLAINTIFFS IS MERITLESS, INDEFENSIBLE, AND IRRESPONSIBLE</u>

Nike's request for sanctions against Plaintiffs themselves is no accident.  Nike explicitly seeks "punitive monetary sanctions" against Plaintiffs and payment by the Plaintiffs of Nike's "attorney's fees and costs" that result from its requested change of venue.  Def. Nike Inc.'s Mot. for Sanctions & Contempt ("Sanctions Motion") at 1-2, 27, ECF No. 471.

Despite this, Nike fails to include a single fact or authority justifying any sanction for Plaintiffs, let alone such draconian relief.  In fact, the section purporting to discuss the

justification for "punitive monetary sanctions," does not address any such sanctions against the Plaintiffs.  *See* Sanctions Motion, Section IV(A) at pp. 16-19.  Instead, the heading to that section only references monetary sanctions for Plaintiffs' counsel, not Plaintiffs themselves.

Equally inexplicably, Nike asks the Court to require Plaintiffs to pay its attorney's fees and costs related to a relocation of the trial but makes no such request regarding Plaintiffs' counsel.  (Sanctions Motion, Section IV(D) at pp. 22-26.)[1]  Although the heading to that section references payment by Plaintiffs, Nike's analysis fails to connect Plaintiffs to any action that would warrant such an assessment of costs and fees directly against them.

The most charitable interpretation of Nike's request to sanction Plaintiffs is carelessness on Nike's part.  Even assuming that, Nike's explicit request for "punitive" sanctions against Plaintiffs absent any factual or legal support for such an award is a plain violation of Federal Rule of Civil Procedure 11(b).  While Plaintiffs do not seek any monetary sanctions from Nike, they ask the Court to declare that Nike's request for "punitive monetary sanctions" against Plaintiffs is improper.  Moreover, the Court should require that Nike immediately affirm that it does not seek monetary remedies against the Plaintiffs.[2]

## III.    <u>THERE IS NO BASIS TO EXCLUDE EVIDENCE RELATED TO PROJECT STARFISH.</u>

In addition to monetary sanctions, Nike also seeks an order "<u>precluding</u> further discovery related to Project Starfish and <u>excluding</u> any records, testimony, information or argument relating to Project Starfish from any summary judgment or trial proceedings."  Sanctions Motion

---

[1] The heading to Section IV.D reads: "The Court Should … Require Plaintiffs to Pay Nike's COSTS (sic) and Expenses Associated with Travel and Lodging."

[2] Relatedly, counsel for Nike failed to confer, or certify that it conferred, with Plaintiffs' counsel prior to filing this motion, as required by Local Rule 7-1, even though Nike seeks "punitive monetary sanctions" and other monetary remedy against Plaintiffs.

at 19 (emphasis added).  But Nike provides no factual basis, legal authority, or logic to support this drastic remedy, which would prevent Plaintiffs from obtaining and introducing evidence relevant to their gender discrimination claims.  Furthermore, there is no dispute that Plaintiffs have not engaged in any act or conduct that could possibly justify this request, one that would undermine Plaintiffs' ability to prove their claims.  The conduct that Nike seeks to sanction—an inadvertent disclosure of documents by counsel—has no connection to such a draconian and unfair result.

This Court has recognized that an order precluding discovery of relevant evidence is a "drastic remedy" that should be used only on a limited basis. *Penk v. Oregon State Bd. of Education*, No. 80-436 FR, 1984 WL 161490, at *1 (D. Or. July 27, 1984) ("although the *Potach* [*Corp. v. United States*, 679 F.2d 153 (9th Cir. 1982)] case is factually dissimilar to the present situation, it clearly expresses the preference of the Ninth Circuit that except in egregious cases, all relevant evidence should be allowed to be produced").  *See also Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) ("Courts in this Circuit recognize that preclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with discretion and caution.").

The sanction of exclusion is typically imposed in situations where the violation could impact the evidence in a prejudicial manner or prejudice the opposing party's ability to respond. For example, courts have excluded evidence if a party improperly provided Attorneys' Eyes Only material to an expert, thereby contaminating any ensuing opinion, or a party did not timely comply with an obligation to produce expert testimony or other evidence, thereby prejudicing the ability of the opposing party to respond.[3]  There is no such basis here: no expert witness is

---

[3] Decisions relied upon by Nike, Sanctions Motion at 19-20, are distinguishable since, in those cases, unlike the instant case, the violation of the order either prejudiced the evidence in some

involved, no evidence is contaminated, and there is no untimely production prejudicing Nike.[4]

Instead, Nike argues that the Starfish documents should be excluded as irrelevant, although this

Court held repeatedly that this evidence is relevant and discoverable.  Order at 3, ECF No. 386

(citing *Obrey v. Johnson*, 400 F.3d 691, 698 (9th Cir. 2005) and *E.E.O.C. v. Farmer Bros. Co.*,

31 F.3d 891, 898 (9th Cir. 1994)).

In addition, Nike erroneously relies upon two decisions emanating from the same civil

action: *Koch v. Greenberg*, No. 07 Cv. 9600 (BSJ) (DF), 2011 WL 4485975, at 4 (S.D.N.Y.

Sept. 28, 2011) and *Koch v. Greenberg*, No. 07 Cv. 9600 (BSJ) (DF), 2012 WL 13063624, at *2

(S.D.N.Y. Aug. 23, 2012).  Nike characterizes the first decision as "preclud[ing] plaintiff from

introducing the documents that were improperly disclosed to the press … at trial."  Sanctions

Motion at 20.  But, in applying the preclusion sanction, the *Koch* court relied upon detailed

findings by the Magistrate Judge that the disclosure was "willful" and of an "egregious nature."

2011 WL 4485975 at *3-4.  In fact, the Magistrate Judge's Report and Recommendation

identified eleven factual circumstances that justified the sanction.  *Koch v. Greenberg*, No.

07CIV9600BSJDF, 2011 WL 13260757, at *9 (S.D.N.Y. Aug. 16, 2011).  For example, the

court observed that it "had difficulty comprehending … why, seemingly as a matter of course,

counsel had engaged in the practice of forwarding confidential material to Koch's publicist."  *Id.*

---

manner or prejudiced the other party's ability to respond. For example: in *Knox v. City of Fresno*, No. 1:14 -cv-00799-EPG, 2016 WL 3365670, at *3 (E.D. Cal. June 14, 2016) and *Bouchard Transp. Co. v. Tug M/V Ellen S. Bouchard*, No. 14 Civ. 1262 (PAC), 2018 WL 1581992, at 1-2 (S.D.N.Y. Mar. 28, 2018), the courts excluded expert evidence where a party, contrary to a court order, provided Attorneys Eyes Only documents to an expert and thereby contaminated the testimony of the expert; in *Allergan, Inc. v. Sandoz, Inc.*, No. 2:09-cv-97, 2011 WL 2563238, at *2-3 (E.D. Tex. June 28, 2011), the opposing party was prejudiced due to an untimely notification about an expert.

[4] Of particular import here, both the Magistrate Judge and Judge Hernandez concluded that the majority of documents at issue with this motion should be unsealed and made available to the public.  See Orders, ECF Nos. 363 & 403.

at *10.  In this case, there is no determination, nor could there be, that the one-time inadvertent disclosure by the Markowitz attorney was willful, egregious, and undertaken as a "matter of course," as was the disclosure in *Koch*.  This action is not one of the "rare situations" in which the "harsh" remedy of preclusion should be applied even under the authority cited by Nike.

Furthermore, as Nike recognizes (*see* Sanctions Motion at 20), the *Koch* court revoked the preclusion sanction even though it continued to find that the underlying conduct was "egregious."  *Koch*, 2012 WL 13063624 at *2-3.  Observing that preclusion is "a drastic remedy that should be exercised with discretion and caution," the *Koch* court revoked the preclusion sanction because it "would interfere with the fact finder's ability to analyze several core issues … thereby depriving this Court of one of its central functions of deciding cases on their merits." *Id*. at *2 (internal citation omitted). This Court should similarly deny Nike's request to preclude discovery or exclude evidence related to Project Starfish because such preclusion would prevent the jury from fully considering the merits of Plaintiffs' sex discrimination claims.

Nike attempts to distinguish the sanction's revocation in *Koch* by asserting, wrongly, that the Starfish-related evidence has "no relevance to Plaintiffs' claims." Sanctions Motion at 20. This Court has already rejected Nike's attempts to disavow the relevance of Starfish-related evidence in its November 22, 2023 Order: "any evidence of discrimination by Nike executives may be relevant to plaintiffs' specific allegations of discrimination and pay inequality."  Order at 3, ECF No. 386.  In just the 30 Starfish complaints Nike produced, there are allegations about 22 Nike executives.  Goldstein Decl. in Supp. Pls.' Mot. for Class Cert. ¶ 16, ECF No. 288. Additional Ninth Circuit authority confirms this Court's decision: an "employer's discriminatory attitude *in general* is relevant and admissible" to establish discrimination in individual actions. *Heyne v. Caruso*, 69 F.3d 1475, 1479-80 (9th Cir. 1995) (emphasis in original); *see also* Pls.'

Opp'n to Nike's Mot. for Protective Order and to Quash at 3-5, ECF No. 449 (further explaining the Starfish complaints' relevance to Plaintiffs' sex discrimination claims).

Nike is also incorrect that Starfish-related documents are unavailable from other sources. Sanctions Motion at 20. In fact, numerous fact witnesses have or will testify about the Starfish complaints and have produced Starfish-related documents despite Nike's attempts to limit its productions. For example, Ms. Strong was one of seven female Nike executives involved in creating, collecting and reviewing the Starfish complaints. Strong Dep. 35:13-36:6, 37:7-21, 38:10-22, 80:14,25, Goldstein Decl. Ex. 1, filed herewith. She produced a document titled "Project Starfish," that listed the "themes" in the Starfish complaints, which Nike failed to produce. Strong Dep. 28:18-30:2; "Project Starfish," Goldstein Decl. Ex. 2. The themes in this document mirror those alleged by Plaintiffs, including sexual harassment, discrimination, retaliation, failure to promote, ineffective and untrustworthy internal processes (HR/ER), and male-dominated corporate culture. *Id.*

Moreover, Nike not only seeks to preclude the introduction of Starfish "records" but also any "testimony, information, or argument" whatsoever. Sanctions Motion at 19. Nike's request would thus bar relevant testimony on issues central to Plaintiffs' claims, including the deposition testimony of its corporate designee, who admitted that "some" employees were forced to "exit" as a result of the harassment and discrimination identified in the Starfish complaints. Daugherty Dep. 172:15-173:2, Sun Decl. in Supp. Mot. for Class Cert. ("Sun Decl.") at p. 6-7, ECF No. 286-7. Nike's preclusion request would also bar evidence or reference to the May 2018 speech of Nike's CEO, in which he praised the "incredible bravery from everyone who stepped up to make their voice heard" in connection with Project Starfish. He added that the "main set of complaints that gave rise to this process have been acted upon … employee exits from this <u>larger</u>

<u>investigation</u> will be behind us after this next week." Sun Decl. at p. 6, ECF No. 280-4 (emphasis in original).

Significantly, Nike's request to preclude further discovery related to Project Starfish would bar the forthcoming depositions and document production that this Court recently ordered. *See* Order at 2, ECF No. 480 (allowing Plaintiffs to take the deposition of Graham and Jeffries, and requiring Nike to respond to Plaintiffs' seventh set of requests for production of documents). This discovery could reveal that Nike knew about and received almost 300 Project Starfish complaints, *i.e.*, approximately 270 more than the 30 complaints Nike previously produced and insisted were the entire universe of Project Starfish complaints in its possession, custody, and control. In fact, this Order has caused Nike to finally produce some, but clearly not all, of the long-overdue Starfish discovery it has withheld for years. This includes Nike's just-produced 283 pages of Starfish discovery, including an additional six Starfish complaints – none of which had been previously produced despite their responsiveness to Court prior Orders and Plaintiffs' prior RFPs. Goldstein Decl. ¶ 4.

Again, Nike fails to justify the extraordinarily "drastic" relief it seeks because it cannot show a nexus between the inadvertent disclosure of counsel and the preclusion and exclusion of relevant evidence, or otherwise establish that their counsel's error will unduly prejudice the evidence itself or Nike's ability to respond to it.

## IV.  <u>THERE IS NO BASIS TO DISQUALIFY MARKOWITZ ATTORNEYS WHICH WOULD SEVERELY PREJUDICE PLAINTIFFS</u>

Nike requests that the Court "exercise its discretion to disqualify the Markowitz firm from representing Plaintiffs." Sanctions Motion at 26. The Court should reject this request since this proposed disqualification falls far short of the applicable standard, improperly contravenes Plaintiffs' right to counsel, and would give Nike an improper tactical advantage.

As this Court has recognized, motions to disqualify counsel are strongly disfavored. There is significant risk that the rules will be misused, creating substantial cost and inconvenience for parties and the judicial system. *See* Brown & Brown, Disqualification of the Testifying Advocate—A Firm Rule? 57 N.C. L. Rev. 595, 619-21 (1979). "Motions to disqualify are subject to 'particularly strict scrutiny.'" *Wickersham v. Eastside Distilling, Inc.*, No. 3:20-cv-02182-YY, 2024 WL 455070, at *1 (D. Or. Jan. 25, 2024) (Hernandez, J.) (quoting *Optyl Eyewear Fashion Int'l Corp. v. Style Companies.*, 760 F.2d 1045, 1050 (9th Cir. 1985)); *see also Klein v. Facebook, Inc.*, No. 20-cv-08570-LHK, 2021 WL 3053150, at *3 (N.D. Cal. July 20, 2021) (referring to the "drastic measure" of disqualification being "generally disfavored") (internal quotations omitted); *Optyl,* 760 F.2d at 1050; *Rice v. Baron*, 456 F. Supp. 1361, 1370 (S.D.N.Y.1978); *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721-22 (7th Cir.1982). The Ninth Circuit has recognized that the disqualification of counsel is only appropriate "[w]here conflict of interest or abuse of professional confidence" is present. *Chugach Elec. Ass'n v. U.S. Dist. Ct.*, 370 F.2d 441, 444 (9th Cir. 1966).

Here, Nike's request to disqualify Markowitz attorneys exemplifies the risk of misuse and is a transparent attempt to gain a tactical advantage by removing Plaintiffs' only local counsel on the eve of pre-trial and trial proceedings. Plaintiffs have relied on Markowitz attorneys' substantial experience with Oregon law and local practices throughout this litigation. And, as Nike well knows, it would greatly disadvantage Plaintiffs if they were forced at this late stage to find alternative local counsel.

Furthermore, Nike provides no legitimate basis for its request to disqualify Markowitz and to deprive Plaintiffs of the counsel of experienced and well-respected Oregon attorneys, much less any reason that would withstand the "strict scrutiny" required to impose this

"disfavored" remedy.  Nike has similarly failed establish, or even argue, that there is a conflict of interest between Markowitz attorneys and Plaintiffs, or any related abuse of professional confidence.

Nike instead argues that a disqualification of the Markowitz firm "avoids interfering with Plaintiffs' 'right to chosen counsel' since the other non-Markowitz attorneys would continue to represent them in this lawsuit."  Sanctions Motion at 26.  It is well-established that courts, in deciding a motion for disqualification, should consider "a client's right to chosen counsel." *Klein*, 2021 WL 3053150 at *3, *8 (citation and internal quotations omitted).  Nike's argument ignores the obvious: Markowitz has a unique and critical role in the representation of the Plaintiffs.  The Markowitz attorneys are Plaintiffs only local counsel and have significant experience with litigation in the District of Oregon.  Plaintiffs rely upon Markowitz for its knowledge of Oregon law and litigation practices in this district, which differs in significant ways from the law and practices of their other counsel, none of whom are credentialed to practice in Oregon (unless admitted pro hac vice) or have the experience that Markowitz attorneys have before this Court and local juries.  Given the forthcoming pre-trial and trial proceedings, it would seriously impair the Plaintiffs' ability to present their claims if their local counsel were disqualified and they were forced to attempt to retain alternative local counsel at this stage of litigation.

Furthermore, the three decisions[5] that Nike relies on for this request are inapposite since they concern a very different issue than is presented in this case: disqualification of counsel due to a conflict of interest or that counsel's prior representation of the party seeking disqualification,

---

[5] See Sanctions Motion at 26-27, citing to: *Bold Ltd. v Rocket Resume Inc.*, No. 22-cv-01045-BLF, 2024 WL 589116, at *12 (N.D. Cal. Feb. 13, 2024); *Klein v. Facebook, Inc.*, No. 20-cv 08570-LHK, 2021 WL 3053150, at *8 (N.D. Cal. July 20, 2021); and *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 925 (N.D. Cal. 2003).

or both.  None of those reasons apply here and Nike makes no claim they do.  Nike has thus provided neither legal authority nor applicable analysis to justify its request to disqualify Markowitz attorneys.  In the absence of any valid reason to disqualify, it is apparent that Nike hopes to obtain a tactical advantage by depriving Plaintiffs of local counsel on the eve of pre-trial and trial proceedings.

## V.    THERE IS NO BASIS TO CHANGE VENUE AND MOVE THE TRIAL TO THE MEDFORD DIVISION.

Nike asserts that "a change of venue would remedy the substantial taint" caused by the "disclosure of the Project Starfish documents to the press."  Sanctions Motion at 22.  But Nike does not describe any so-called "taint," substantial or otherwise, that would justify a change of venue.  In fact, in its argument concerning its request for change of venue (Sanctions Motion at 22-26), Nike does not refer to a single authority that imposes, or even considers, a change of venue due to an inadvertent disclosure of documents.

The authorities and rhetoric presented by Nike establish no basis for changing the proper venue of this case.  In fact, the lack of support presented by Nike is remarkable.  To justify a change in venue, Nike must establish either actual or presumed prejudice.  *Daniels v. Woodford*, 428 F.3d 1181, 1210 (9th Cir. 2005) (*citing Harris v. Pulley*, 885 F.2d 1354, 1360 (9th Cir. 1988)).  As the Ninth Circuit has held, prejudice is only presumed in extreme instances "when the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the [alleged wrongdoing]."  *Id.* at 1211 (*quoting Ainsworth v. Calderon*, 138 F.3d 787, 795 (9th Cir. 1998)); *see also Harris*, 885 F.2d at 1361.  One factor used to determine presumed prejudice includes "whether the news accounts were primarily factual because such accounts tend to be less inflammatory than editorials or cartoons."  *Daniels*, 428 F.3d at 1211.

A Ninth Circuit district court presiding over the pending Tesla securities litigation rejected a similar request to change venue as Nike. *In re Tesla Inc. Sec. Litig*., No. 18-CV-04865-EMC, 2023 WL 1452008, at *1 (N.D. Cal. Feb. 1, 2023).  Tesla and Elon Musk sought to change venue out of San Francisco under the theory that local media outlets had released biased and negative stories about Mr. Musk to create a presumption of juror prejudice. *Id.*  The court held pre-trial publicity did not establish a presumption of prejudice because (1) the press coverage was "primarily factual" and Tesla did not contend that the articles were factually inaccurate; and (2) Telsa failed to show that significant press attention in the Bay Area was saturated with prejudicial or inflammatory media publicity about the alleged wrongdoing as opposed to factual coverage. *Id.* at *2.[6]

Here too, Nike cannot establish a presumption of prejudice since the media coverage is "primarily factual" by objectively reporting about actual complaints of sex discrimination, and Nike has never contended that any limited media coverage was factually inaccurate.  Because there is simply no showing that the Portland jury pool has been saturated with prejudicial or inflammatory media publicity specifically about the disclosed Starfish complaints, Nike's request to change venue must be denied.

Of the three authorities referenced by Nike, only one, *Daniels*,  discussed and ruled upon the propriety of a change of venue but was a factually distinguishable murder trial.  428 F.3d at 1211.  Nike merely references that the Ninth Circuit determined that the trial court's denial of a motion for change of venue was error because the "venue was saturated with prejudicial and inflammatory media publicity."  Sanctions Motion at 26.  But Nike fails to describe the wildly

---

[6] The *Telsa* court also noted that the effective use of jury questionnaires confirmed that a transfer was not warranted.  2023 WL 1452008, at *3.  Thus, Nike's purported concerns about jury prejudice can be similarly addressed and dispelled with jury questionnaires during *voire dire*.

dissimilar context to this action; *Daniels* involved a murder trial where the "murder … generated extensive and nearly continuous publicity" and where the defendant "was identified in press accounts as the killer from the very beginning." *428 F.3d at 1211*. Moreover, there was evidence presented that the "public's response to this publicity clearly amounted to a 'huge' wave of public passion." *Id.* And, in contrast to Nike, the defendant in *Daniels* had specifically disputed the truth of what had been reported.

Nike's other two cited cases either fail to concern or discuss the standard for a change of venue. Sanctions Motion at 22-25. *In re Porter*, 268 Or. 417, 424-25 (1974), *cert. denied*, 419 U.S. 1056 (1974), is inapposite because it neither concerns nor discusses the standard for a change of venue; rather, it concerns a disciplinary proceeding revolving around the applicability of Oregon ethics rules.

Nike's description of *EEOC v. Scolari Warehouse Markets, Inc.*, No. 04-0229-DAE-RAM, 2007 WL 9734382, at *4 (D. Nev. June 22, 2007) is misleading since the defendant never moved for a change of venue and the court neither addressed the appropriateness of a change of venue nor discussed any standard for a change of venue. Indeed, the word "venue" is used only once in the *Scolari Warehouse* decision, and that reference is in relation to court considerations when deciding whether to issue a restraining order. 2007 WL 9734382, at *2. The court did discuss some statements made by an attorney for the EEOC that Nike quotes at length and claims that these statements were "nearly identical to" those made by the attorney from Markowitz. Sanctions Motion at 25. Whether true or not, the evaluation of the statements in *Scolari Warehouse* have nothing to do with a change of venue since that issue was not before the court. Moreover, Nike omits that in *Scolari Warehouse*, the court determined that it would "not recommend reporting the conduct to the bar" and concluded that it does not find that the attorney

"knew or reasonably should have known that her statements would have 'substantial likelihood of materially prejudicing' the instant proceeding." *Scolari Warehouse*, 2007 WL 9734382, at *4.

The relevant facts clearly demonstrate that venue should remain in Portland. There is no question that this action was properly filed in the Portland Division where the contested conduct occurred, where most of the witnesses almost certainly reside, and where it will be most convenient for both parties to present their claims and defenses. Given Nike's complete failure to present any relevant basis or authority for this request, it is again clear that Nike hopes to inconvenience Plaintiffs, increase the costs of litigation, and make the presentation of their claims more difficult, for the sole purpose of increasing its tactical advantage.[7]

Given the failure of Nike to provide any basis or relevant authority for its request to change venue, it appears that Nike is just attempting to use the inadvertent disclosure of documents to its tactical advantage by proposing moving the trial to the Medford Division in order to inconvenience the Plaintiffs to the extent possible, increase their costs and making the presentation of their claims more difficult. The Court should reject such blatant overreach.

## VI.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Nike's sanctions motion in its entirety.

Dated: June 3, 2024                        Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

 */s/ Barry Goldstein*
Laura L. Ho (admitted *pro hac vice*)

---

[7] Notably, the Oregonian newspaper and OregonLive maintain that their digital reach extends well beyond Portland and includes Medford as well as the rest of Oregon. "Our Company Page" of the Oregonian Media Group, https://www.oregonianmediagroup.com/our-company. This confirms that changing venue would not effectively address any purported prejudice caused by the press' reporting.

Barry Goldstein, Of Counsel (admitted *pro hac vice*)
James Kan (admitted *pro hac vice*)
Byron Goldstein (admitted *pro hac vice*)
Katharine L. Fisher (admitted *pro hac vice*)
ACKERMANN & TILAJEF PC
Craig Ackermann (admitted *pro hac vice*)
Brian Denlinger (admitted *pro hac vice*)

INDIA LIN BODIEN, ATTORNEY AT LAW
India Lin Bodien (admitted *pro hac vice*)

Attorneys for Plaintiffs