JOHN A. BERG, OSB# 120018
jberg@littler.com
PAUL E. CIRNER, OSB# 191471
pcirner@littler.com
LITTLER MENDELSON P.C.
1300 SW Fifth Avenue
Wells Fargo Tower, Suite 2050
Portland, OR 97201
Telephone: (503) 221-0309
Facsimile: (503) 242-2457

DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

Attorneys for Defendant NIKE, INC.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL SARA JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated,<br><br>      Plaintiffs,<br><br>   vs.<br><br>NIKE, INC., an Oregon Corporation,<br><br>      Defendant. | Case No. 3:18-cv-01477-JR<br><br>**DEFENDANT NIKE INC.'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS AND CONTEMPT RE: PLAINTIFFS' COUNSEL'S UNAUTHORIZED DISCLOSURE OF CONFIDENTIAL JUDICIAL RECORDS IN VIOLATION OF COURT ORDERS**<br><br>ORAL ARGUMENT AND EXPEDITED HEARING REQUESTED |

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................1

II.  SEVERE SANCTIONS SHOULD BE GRANTED. ........................................3

    A.  Monetary Sanctions Must Issue Under Fed. R. Civ. P. 37(b)(2)(C). ....................3

    B.  Plaintiffs' Attempt To Distance Themselves From Counsel's Misconduct Is Contrary To Law. .............................................................................................4

    C.  The Claimed Remorse By Plaintiffs' Counsel Is No Excuse; Severe Sanctions Are Warranted Regardless Of Intent. ......................................................5

        1.  The Requested Sanctions Do Not Require "Willfulness" Or "Intent." .............................................................................................................5

        2.  The Claimed "Inadvertence" Is Materially Disputed:  Case Law Confirms That Circumstances Alone Are Evidence Of Intent, Particularly Where Discovery Is Withheld. .............................................7

    D.  The Unauthorized Disclosure Here Was Harmful To NIKE And Its Current And Former Employees. .............................................................................11

        1.  Plaintiffs' Counsel's Violation Harmed The Privacy Rights Of NIKE's Past And Present Employees. ...............................................11

        2.  Plaintiffs' Counsel's "We Might Win The Appeal" Argument Undermines Its Claimed Contrition. ...........................................................12

        3.  NIKE Has Expended Hundreds Of Thousands Of Dollars Trying To Address The Breaches Of Court Orders. .............................................13

    E.  Evidence Exclusion Remains An Appropriate Sanction. ....................................13

    F.  Transferring Venue Likewise Is An Appropriate Remedy To Avoid A Tainted Jury Pool. ..............................................................................................15

    G.  The Law Supports Requiring Disclosure Of the Identities Of [The "Many Women"] Markowitz May Have Improperly Solicited Using NIKE's Confidential Information. ..................................................................................17

    H.  Disqualification As To Future Cases Remains Warranted And Supported By Authority, To Deter Similar Misconduct. .......................................................18

        1.  Markowitz Violated Multiple Rules Of Professional Conduct, Warranting Disqualification. .............................................................................19

        2.  Plaintiffs Have Eight Other Counsel. ....................................................20

III.  CONCLUSION ................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Air Separation, Inc. v. Underwriters of Lloyd's of London,*
45 F.3d 288 (9th Cir 1994) ........................................................................................4

*Al Otro Lado v. Wolf,*
952 F.3d 999 (9th Cir. 2020)....................................................................................12

*Anderson v. SeaWorld Parks & Ent., Inc.,*
329 F.R.D. 628 (N.D. Cal. 2019) .............................................................................10

*Apple, Inc. v. Samsung Elecs., Co., Ltd.,*
No. 5:11-cv-01846-LHK (PSG), 2014 WL 12596470 (N.D. Cal. Jan. 29, 2014)...... 1, 6, 7, 13

*BP W. Coast Prods., LLC v. Crossroad Petroleum, Inc.,*
No. 12CV665 JLS (JLB), 2015 WL 13675370 (S.D. Cal. Jun. 22, 2015) ...........................5

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills,*
482 F.3d 1091 (9th Cir. 2007).....................................................................................5

*Dairy, LLC v. Milk Moovement, Inc.,*
No. 2:21-CV-02233 WBS AC, 2022 WL 17994355 (E.D. Cal. Dec. 29, 2022).......... 1, 3, 4, 6

*Daniels v. Woodford,*
428 F.3d 1181 (9th Cir. 2005)...............................................................................2, 16

*Emery v. Aragon,*
No. 6:22-cv-01495-MC, 2023 WL 1288983 (D. Or. Jan. 31, 2023).....................................19

*Engebretson v. Mahoney,*
724 F.3d 1034 (9th Cir. 2013)...................................................................................12

*Erickson v. Newmar Corp.,*
87 F.3d 298 (9th Cir. 1996)........................................................................................19

*Francois v. Colonial Freight Sys., Inc.,*
No. 3:06-cv-434-WHB-LRA, 2007 WL 4564866 (S.D. Miss. Dec. 21, 2007) ....................11

*Gas-A-Tron of Az. V. Union Oil. Co. of Cal.,*
534 F.2d 1322 (9th Cir. 1976)...................................................................................19

*Harmon v. City of Santa Clara,*
323 F.R.D. 617 (N.D. Cal. 2018) .................................................................................3

*In re BellSouth Corp.,*
334 F.3d 941 (11th Cir. 2003)...................................................................................20

*In re Facebook, Inc. Consumer Privacy User Profile Litigation,*
655 F. Supp. 3d 899 (N.D. Cal. 2023)..........................................................................5

*In re Premera Blue Cross Customer Data Sec. Breach Litig.,*
296 F. Supp. 3d 1230 (D. Or. 2017) ...........................................................................10

*In re Tesla Inc. Sec. Litig.,*
  No. 18-cv-04865-EMC, 2023 WL 1452008 (N.D. Cal. Feb. 1, 2023).................................16

*Mahboob v. Educ. Credit Mgmt. Corp.,*
  No. 15-CV-628 TWR (AGS), 2021 WL 7448532 (S.D. Cal. Mar. 31, 2021) ............ 3, 17, 18

*Management Registry Inc. v. A.W. Cos.,*
  No. 0:17-cv-05009-JRT-KMM, 2019 WL 5388488 (D. Minn. Oct. 22, 2019) ......................6

*Nken v. Holder,*
  556 U.S. 418 (2009) ....................................................................................................12

*O'Connor v. Uber Techs., Inc.,*
  No. 13-CV-03826-EMC, 2017 WL 3782101 (N.D. Cal. Aug. 31, 2017) ........................3, 18

*OmniGen Rsch., LLC v. Wang,*
  No. 6:16-CV-268-MC, 2018 WL 11512767 (D. Or. Nov. 6, 2018) ....................................17

*On Command Video Corp. v. LodgeNet Ent. Corp.,*
  976 F. Supp. 917 (N.D. Cal. 1997).................................................................................17

*Penk v. Oregon State Bd. Of Higher Ed.,*
  1984 WL 161490 (D. Ore. July 27, 1984) ................................................................. 14, 15

*RG Abrams Ins. v. L. Offs. of C.R. Abrams,*
  342 F.R.D. 461 (C.D. Cal. 2022)......................................................................................10

*Roberts v. Legacy Meridian Park Hosp., Inc.,*
  No. 3:13-cv-01136-SI, 2014 WL 294549 (D. Or. Jan. 24, 2014) .......................................19

*Robinson v. City of San Diego,*
  No. 11-CV-0876-AJB (WVG), 2013 WL 525679 (S.D. Cal. Feb. 8, 2013) ........................10

*Sciara v. Campbell,*
  No. 2:18-CV-01700-DJA, 2021 WL 8321864 (D. Nev. Mar. 12, 2021) ...............................7

*Sigliano v. Mendoza,*
  642 F.2d 309 (9th Cir. 1981)............................................................................................5

*Smith v. Cole,*
  No. CV 05372-AS, 2006 WL 1207966 (D. Or. Mar. 2, 2006).............................................19

*Trone v. Smith,*
  621 F.2d 994 (9th Cir. 1980)...........................................................................................20

*U.S. ex rel. Johnson v. Golden Gate Nat'l Sr. Care, L.L.C.,*
  No. 08-1194, 2013 WL 1182905 (D. Minn. Mar. 21, 2013).................................................8

*United States v. Aceves-Rosales,*
  832 F.2d 1155 (9th Cir. 1987).........................................................................................5

*United States v. Duran,*
  41 F.3d 540 (9th Cir. 1994).............................................................................................4

*United States v. Sumitomo Marine & Fire Ins. Co.,*
  617 F.2d 1365 (9th Cir. 1980) .................................................................................. 13, 14

*Valdez v. City & Cnty. of Denver,*
    878 F.2d 1285 (10th Cir. 1989)........................................................................12

*Wickersham v Eastside Distilling, Inc.,*
    No. 3:20-cv-02182-YY, 2023 WL 8600535 (D. Or. Sept. 14, 2023)...................19

STATUTES

28 U.S.C. § 1927.................................................................................................4

RULES

FED. R. CIV. P. 11...............................................................................................4

FED. R. CIV. P. 26(b)(5)......................................................................................9

FED. R. CIV. P. 37.................................................................................... 4, 13, 14

FED. R. CIV. P. 37(b)(2)(C)..............................................................................1, 3

L.R. 83-7.......................................................................................................19, 21

OTHER AUTHORITIES

Court's Statement of Professionalism and Notice of Rule 83-6 ................19, 20, 21, 22

I.    **INTRODUCTION**

Plaintiffs and their counsel submitted *two briefs* confirming the undisputed fact that counsel "fail[ed] to guard confidential materials" in "violat[ion] [of] the protective order . . . in this case."  ECF No. 431 at 8.  The law is clear that sanctions *must* be issued.  *See* Fed. R. Civ. P. 37(b)(2)(C) ("[T]he court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure[.]"); *Dairy, LLC v. Milk Moovement, Inc.*, No. 2:21-CV-02233 WBS AC, 2022 WL 17994355, at *2 (E.D. Cal. Dec. 29, 2022) (violation of the protective order was "the only fact" needed to issue sanctions).

But the dispute here is the extent and severity of those sanctions, particularly given that Plaintiffs and their counsel have argued that the unauthorized disclosure of sealed litigation documents to The Oregonian's reporter, Matthew Kish, was "inadvertent," and that the Court should be lenient because counsel now conveniently claims remorse.  Incorrect.

*First*, NIKE sought monetary sanctions against both Plaintiffs and their counsel, which includes a seasoned lawyer—the president of the Markowitz law firm, whose firm has engaged in similar prior bad acts that were claimed to be "inadvertent" too, *see* ECF No. 471 at 18-19, and three other law firms who became aware of the disclosure within moments of the same.  All of these firms failed to immediately notify the Ninth Circuit, the District Court, or NIKE of the breach of the temporary stay, the stay pending appeal (the Stay Order), and the Protective Order in this case.  *See* *Apple, Inc. v. Samsung Elecs., Co., Ltd.*, No. 5:11-cv-01846-LHK (PSG), 2014 WL 12596470, at *9 (N.D. Cal. Jan. 29, 2014) (upon learning of the protective order violation, "[Plaintiffs] should have 'immediately' picked up the phone to call [opposing counsel] and let them know that there was a problem.").  In any event, the law does *not* create special protections for clients whose attorneys engage in blatant violations of the Court orders.

*Second*, the factual record here supports more than monetary sanctions.  With sharing to the press and a showing of repeated breaches, significant remedies are needed.  Remorse, like ignorance, is no defense under the law.

*Third*, an evidentiary sanction is appropriate here.  Contrary to Plaintiffs' counsel's claims, the law does not require a showing of bad faith for an exclusionary sanction to issue.  And, regardless, the curated version of the available facts does not square with Plaintiffs' argument.  Nor do the subsequent actions of Plaintiffs and their counsel, who have refused to produce all responsive documents related to the disclosure and instead assert attorney-client privilege or attorney work product protection over broad swaths of communications where no such privilege or protection likely applies.  *See* ECF Nos. 426 ¶¶ 9-11, 437 ¶¶ 3-4 (Exs. A-B), 448 ¶¶ 3, 6, 8, 11 (Exs. A, D, F, and I); Declaration of Daniel Prince ("Prince Decl."), ¶¶ 3-4, Exs. A-B, (Markowitz's Privilege Logs).

*Fourth*, the actions of Plaintiffs' counsel on the eve of trial warrant a venue transfer.  *Daniels v. Woodford*, 428 F.3d 1181, 1211 (9th Cir. 2005) (transfer was appropriate where "the venue [wa]s saturated with prejudicial and inflammatory media publicity[.]").  Plaintiffs and their counsel argue that Kish's reporting was "factual" and not "inflammatory."  ECF No. 490 at 15; ECF No. 492 at 29.  Not so, and this argument supports a transfer of venue.  The improperly disclosed documents are a series of *unverified third-party complaints* that have not been proven and transferring venue avoids the potential prejudice of a trial in Portland.

*Fifth*, Plaintiffs' counsel created this issue and now argues that a sanction requiring counsel to disclose the identities of other women whom they solicited for future litigation using sealed litigation materials is too severe.  False.  NIKE seeks confirmation that Markowitz has not been using its confidential documents to secure clients.  Courts routinely order this relief for

violations of a protective order.  *See, e.g., Mahboob v. Educ. Credit Mgmt. Corp.,* No. 15-CV-628 TWR (AGS), 2021 WL 7448532, at *4 (S.D. Cal. Mar. 31, 2021) (requiring "counsel to disclose the names of th[e] individuals . . . they [ ] contacted" to represent in future litigation); *O'Connor v. Uber Techs., Inc*., No. 13-CV-03826-EMC, 2017 WL 3782101, at *9 (N.D. Cal. Aug. 31, 2017) (ordering counsel to disclose a list of other "arbitrations arising from its solicitation" of clients from a class list that it received under the terms of the protective order).

*Finally*, Plaintiffs' counsel argues that disqualification is not warranted because it would prejudice Plaintiffs.  Not so.  Plaintiffs have three (3) other law firms and at least eight (8) other lawyers from which to choose.  Markowitz indisputably breached multiple court orders here. They should be disqualified.

Whether the disclosure was inadvertent (a claim as of yet untested), the active sharing to the press is troubling.  Severe sanctions should follow.

## II.    SEVERE SANCTIONS SHOULD BE GRANTED.

### A.    Monetary Sanctions Must Issue Under Fed. R. Civ. P. 37(b)(2)(C).

Courts order monetary sanctions in the form of fees and costs for disclosing information in violation of a protective order.  *See* ECF No. 471 at 18.  Plaintiffs' counsel concedes the present case is "similar to" authorities in which the court ordered payment of the defendant's "reasonable fees and costs [in] adjudicating the protective order violation."  *See* ECF No. 492 at 29 (citing *Harmon v. City of Santa Clara,* 323 F.R.D. 617, 618 (N.D. Cal. 2018)).  Further, as explained in *Dairy, LLC*, a party's admission that it violated a protective order is "the only fact needed to obtain . . . monetary sanctions [because] Fed. R. Civ. P. 37(b)(2)(C) makes clear that,

absent certain special circumstances, *payment of reasonable expenses, including attorneys' fees, is mandatory*." *Dairy, LLC*, 2022 WL 17994355, at *2 (emphasis added).[1]

### B.    Plaintiffs' Attempt To Distance Themselves From Counsel's Misconduct Is Contrary To Law.

Plaintiffs feign surprise that "[NIKE] also asks the Court to impose sanctions against Plaintiffs themselves" based on the actions of counsel. *See* ECF No. 490 at 5.  This set of attorneys, however, omit the fact that they too were aware of the unauthorized disclosure within moments of it occurring and that all of Plaintiffs' counsel failed to notify the Court or NIKE of the same. *See* Prince Decl. ¶¶ 3-4, Exs. A-B, Entries 68, 72-76, 78.  Since then, those same counsel have failed to produce responsive documents related to the disclosure. *See* ECF Nos. 426 ¶¶ 9-11, 437 ¶ 3-4 (Exs. A-B), 448 ¶¶ 3, 6, 8, 11 (Exs. A, D, F, and I); Prince Decl. ¶¶ 3-4, Exs. A-B.

In any event, courts routinely issue sanctions that impact parties as a result of their counsel's misdeeds.  In *United States v. Duran*, 41 F.3d 540 (9th Cir. 1994), the Ninth Circuit affirmed a sanction excluding evidence withheld from the opposing party, finding it "was appropriate given the conduct of [ ] counsel."  *Id.* at 545-46.  There, counsel strategically withheld evidence and the District Court issued sanctions against Duran and her counsel, including the exclusion of the evidence counsel initially withheld and later tried to introduce. *Id.* The court affirmed this award, recognizing that counsel must "accept the risk arising from this behavior" in the form of sanctions.  *Id.*  The court in *Duran* also recognized that sanctions

---

[1] Plaintiffs' counsel cites *Air Separation, Inc. v. Underwriters of Lloyd's of London*, 45 F.3d 288, 291 (9th Cir 1994), for the proposition that "sanctions are not mandatory."  *See* ECF No. 492 at 30.  That case, though, dealt with sanctions under Rule 11 and the court's inherent powers. *See Air Separation*, 45 F.3d at 291 ("[Plaintiff] contends that [defendant] should be sanctioned under the court's inherent power, Fed. R. Civ. P. 11, or 28 U.S.C. § 1927.").  Rule 37 is never mentioned.  *Id.*  Rule 37's language is explicit that, at a minimum, monetary sanctions are mandatory.

applied equally to the party because there was a "strategic decision to withhold the [evidence] until after the close of the government's case." *Id.* (quoting *United States v. Aceves-Rosales*, 832 F.2d 1155, 1157 (9th Cir. 1987)).

Likewise, in *BP W. Coast Prods., LLC v. Crossroad Petroleum, Inc.*, No. 12CV665 JLS (JLB), 2015 WL 13765370, at *1-2 (S.D. Cal. Jun. 22, 2015), the court held the party "jointly and severally" liable for the other side's "attorney's fees and costs" after the party's counsel refused to comply with local rules, federal rules, and court orders as it pertained to discovery requests. *Id.* And in *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, 655 F. Supp. 3d 899, 936 (N.D. Cal. 2023), the court awarded nearly one million dollars in sanctions against both the party and their outside counsel.

Here, Plaintiffs' counsel have elected to pursue a "strategy" of trying their case in the court of public opinion and did so on behalf of, and for the benefit of, their clients.  ECF No. 471 at 22, n.11.  Thus, sanctions should issue against Plaintiffs' counsel and Plaintiffs themselves.

### C.    The Claimed Remorse By Plaintiffs' Counsel Is No Excuse; Severe Sanctions Are Warranted Regardless Of Intent.

Plaintiffs and their counsel argue that the unauthorized disclosure here was "inadvertent," and thus the Court should not punish them as harshly.  ECF Nos. 490 at 9; ECF No. 492 at 9.  They are wrong.

#### 1.    The Requested Sanctions Do Not Require "Willfulness" Or "Intent."

Both Plaintiffs and their counsel apply the wrong standard.  In the Ninth Circuit, a finding of willfulness and/or intent is necessary only when a party seeks dismissal or default. *See, e.g.*, *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (holding the heightened standard of willfulness is reserved the imposition of "*case-dispositive sanctions*.") (emphasis added); *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th

Cir. 1981) ("Where the drastic sanctions of dismissal or default are [sought], the [court's typical] range of discretion [in issuing sanctions] is narrowed and the losing party's non-compliance must be due to willfulness, fault or bad faith.").

That is not the case here. *See* ECF No. 471 at 33 (detailing sanctions sought, none of which is terminating sanctions). As such, the Court "has wide latitude to impose other appropriate sanctions for a failure to obey a discovery order." *Management Registry Inc. v. A.W. Cos.*, No. 0:17-cv-05009-JRT-KMM, 2019 WL 5388488, at *5 (D. Minn. Oct. 22, 2019). Thus, even assuming *arguendo* that the disclosure was inadvertent (which is in dispute, *see infra*, Section C2), sanctions still are necessary and appropriate. Indeed, courts routinely issue sanctions for violation of court orders, even in the face of claimed inadvertence.

For example, in *Dairy, LLC*, the plaintiff inadvertently gave a document designated AEO to its CEO (who was not authorized to receive the document under the protective order). *Dairy, LLC*, 2022 WL 17994355, at *2. The court issued sanctions against plaintiff, awarding fees in pursuing the motion for sanctions as well as fees investigating the impact of the disclosure more broadly, recognizing that "Plaintiff's counsel must take care to ensure that the terms of the protective order are scrupulously followed" and that violation of the protective order was all that was necessary to support issuance. *See id.* at *3.

Likewise, in *Apple*, the court issued sanctions against a party when a "junior associate miss[ed] one redaction among many in an expert report" and that inadvertent mistake was not "immediately" reported to the other side but instead was "permitted to go unchecked" for a period of time (among a series of other problems that justified their own sanctions), with the court holding that "sanctions may be warranted [even for] a relatively innocent violation." *Apple*, 2014 WL 12596470, at *1, 6. In sum, absent a request for terminating sanctions (or their

functional equivalent), there is no requirement to find "willfulness" or "intent," nor to apply the five-factor test applicable to such sanctions. Because NIKE does not request such sanctions, Plaintiffs and their counsel's attempt to apply the incorrect standard should be rejected.

        **2.**      **The Claimed "Inadvertence" Is Materially Disputed:  Case Law Confirms That Circumstances Alone Are Evidence Of Intent, Particularly Where Discovery Is Withheld.**

While there is no requirement of "intent" for sanctions to issue, the record suggests that there was no accident here. *See* ECF No. 471 at 22-24. Most apparent being that, in the six days following the meeting, no communications were made to NIKE, this Court, or the Ninth Circuit about the disclosure by Salerno Owens, the President of the Markowitz law firm, or any of the members of Plaintiffs' legal counsel (which spans four law firms and around a dozen lawyers). *See Apple*, 2014 WL 12596470, at *9 (upon learning they had violated the protective order, "[Plaintiffs] should have 'immediately' picked up the phone to call [opposing counsel] and let them know that there was a problem. Instead, it did nothing. This conduct requires sanctions.").

Put simply, while the law does not require intent to issue severe sanctions, whether the unauthorized disclosure was "inadvertent" is in dispute. Everything that Salerno Owens sent to Kish, she had prepared before in consultation with at least her staff. Prince Decl. ¶¶ 3-4, Exs. A-B, Entries 43, 49-50, 61-63. That she may have second guessed herself or otherwise realized the gravity of her mistake is irrelevant. The point is that, during this meticulously *planned* meeting, a breach occurred. And, Plaintiffs' counsel has not followed the Court's order or controlling law with respect to disclosure of documents and a privilege log in connection with the same, ECF No. 480 at 4.

Instead, Markowitz's claim of inadvertence relies on Plaintiffs' counsel's own declaration. *See* ECF No. 492 at 9. But, at law, untested self-serving declarations do not establish that a particular disclosure was "inadvertent." The court in *Sciara v. Campbell,*

No. 2:18-CV-01700-DJA, 2021 WL 8321864 (D. Nev. Mar. 12, 2021), for example, rejected a self-serving claim of inadvertent disclosure when "the context of [Plaintiffs'] actions . . . [did] not equate to an inadvertent mistake." *Id*. at *4. And, in *U.S. ex rel. Johnson v. Golden Gate Nat'l Sr. Care, L.L.C.*, No. 08-1194 (DWF/JJK), 2013 WL 1182905 (D. Minn. Mar. 21, 2013), the court found it "difficult to take [a self-serving] excuse at face value" when the breaching party "made no effort to explain how that carelessness led to a violation of the Court's Order." *Id*. at *5. "Without such an explanation," the court explained, "the Court finds it equally plausible that Defendants made the intentional choice to use the confidential documents they received in this case because they thought it would help their cause[.]" *Id*.

So too here. The context calls into question the contention that the disclosure was "inadvertent." *See* ECF Nos. 490 at 7, 492 at 12. This was a *planned* meeting. ECF Nos. 448 at 62, 492 at 10. Plaintiffs' counsel *planned* to meet with Kish to discuss this case, despite the orders from the Ninth Circuit and the Protective Order. *Id*. Plaintiffs' counsel and support team had numerous internal discussions *before* the meeting with Kish *about* that meeting. *See* Prince Decl. ¶¶ 3-4, Exs. A-B, Entries 34-60. All counsel knew the Ninth Circuit had issued a temporary stay and the Stay Order. ECF Nos. 407, 408, 426-1, 426-2. Even so, Plaintiffs' counsel asked a support team member to prepare the PDF of the sealed "Starfish" documents in advance of the meeting with Kish (and, notably, there is no declaration from the support team member containing all of the facts).[2] ECF No. 411 ¶¶ 3-4, 8. And that packet was circulated by counsel to The Oregonian during their coordinated meeting. ECF No. 411 ¶¶ 8-9.

---

[2] Plaintiffs' counsel did not provide the declaration of Abigail Adams, the Markowitz paralegal who presumably assisted in the creation of the PDF and pre-assembled index that was sent to Kish during Salerno Owen's meeting with him. Prince Decl. ¶¶ 3-4, Exs. A-B, Entries 43, 49-50, 61-63.

In the face of this context, one would assume Plaintiffs and their counsel would want to spread sunlight on *all* of their conduct, particularly when they appear to rely on the factual record to support their argument about intent. That has not happened. Even after the Court granted NIKE's motion to compel discovery related to the disclosure, Plaintiffs' counsel refuses to comply with the order. *See* ECF No. 480 at 4. Counsel instead has refused to produce all responsive documents pertaining to the disclosure and has served a privilege log with generic assertions of privilege over communications that occurred between Plaintiffs' counsel and a paralegal relating to the compilation of the document that would be sent to The Oregonian and correspondence with co-counsel about sending the same packet to The Oregonian. *See* Prince Decl. ¶¶ 3-4, Exs. A-B, Entries 34-60. None of those communications would appear to be privileged, but when taken to task about whether Plaintiffs and their counsel would comply with the Court's order,[3] they refused to produce all responsive documents, to provide sufficient detail in their privilege descriptions as required by Fed. R. Civ. P. 26(b)(5), and to explain why the attorney-client privilege or attorney work product protection applied to correspondence about a meeting with The Oregonian (and not relating to the provision of legal advice or in anticipation of litigation). Prince Decl. ¶ 6, Ex. D (Response from Buchalter).

So, NIKE is left with Plaintiffs' counsel's blanket assertion of privilege over *165* communications that are relevant to the unauthorized disclosure here. The privilege log provides no information to substantiate the claims of privilege.[4]

---

[3] On May 31, 2024, NIKE sent Plaintiff's counsel a letter explaining its privilege log inadequately "describe[d] the nature of the" claim of privilege," Fed. R. Civ. P. 26(b)(5), and at least some of its claims were baseless. Prince Decl., ¶ 5, Ex. C (Prince Letter to Elkanich).

[4] Facially, these claims of privilege are baseless—they are communications exchanged *between different law firms* and between attorneys and staff, not about representing the Plaintiffs in this matter, but in the lead up to and aftermath of Markowitz's meeting *with a reporter*. Such communications are not work-product because they are made in preparation for, or in reaction to,

| Privilege Claimed | Boilerplate Privilege Description | No. of Times Used |
|---|---|---|
| Work-product | "Confidential communications between Plaintiffs' counsel." | 95 |
| A/C Privilege | "Attorney client communication." | 16 |
| Work-product | "Attorney work product notes." | 1 |
| Work-product | "Confidential communications between Markowitz and its staff (On January 19, 2024 and after)." | 48 |
| Work-product | "Confidential communications between Markowitz and its staff.  (Before January 19, 2024)" | 5 |
| **Total** | | 165 |

Prince Decl., ¶ 5, Ex. C, Table 1.

To be clear, Plaintiffs and their counsel's actions leading up to the disclosure warrant sanctions.  But this conduct (improperly withholding documents listed on a privilege log) independently warrants sanctions.  *See RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 519-520 (C.D. Cal. 2022) (ordering issue and evidentiary sanctions from improperly withheld documents on privilege logs).

Such a violation is even more egregious when considering this Court *already* ordered Plaintiffs' counsel to produce documents responsive to NIKE's discovery, an order that Plaintiffs' counsel continues to violate *to this day*.  ECF No. 480.  The law bars Plaintiffs' counsel from refusing to produce information *and* trying to benefit from that refusal by claiming there is a lack of evidence refuting their version of events.  *See, e.g., Robinson v. City of San*

---

a meeting with the press unrelated to the representation of the four individual Plaintiffs.  *See* ECF No. 447 at 13-14; *e.g., Anderson v. SeaWorld Parks & Ent., Inc.*, 329 F.R.D. 628, 635-37 (N.D. Cal. 2019); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 296 F. Supp. 3d 1230, 1244 (D. Or. 2017).

*Diego*, No. 11-CV-0876-AJB (WVG), 2013 WL 525679, at *5 (S.D. Cal. Feb. 8, 2013) (issuing sanctions because a party "should not be allowed to get a windfall from their own delays and discovery abuses.") (citation omitted).

**D.     The Unauthorized Disclosure Here Was Harmful To NIKE And Its Current And Former Employees.**

Both Plaintiffs and their counsel argue that there was no harm in disclosing to The Oregonian confidential litigation documents subject to a protective order. Even despite their claimed remorse, they argue that it was "only 9 pages" that were disclosed here. ECF Nos. 490 at 11, 492 at 9-20. Nonesense.

As an initial matter, there need not be any "separate harm" to the individuals to award sanctions. The breach itself is the harm. *See Francois v. Colonial Freight Sys., Inc.*, No. 3:06-cv-434-WHB-LRA, 2007 WL 4564866, at *3 (S.D. Miss. Dec. 21, 2007) (finding that, even when there was no separate harm caused by a party's refusal to submit documents, sanctions were warranted because there had been a violation). But other harm exists as well,[5] and NIKE has been forced to spend hundreds of thousands of dollars (subject to its requested offer of proof) to remedy the Plaintiffs' counsel's violations.

**1.     Plaintiffs' Counsel's Violation Harmed The Privacy Rights Of NIKE's Past And Present Employees.**

For all the contrition Plaintiffs' counsel now claims, their Opposition notably addresses only *their* "embarrassment" at having violated a court order. They never once mention that, in so doing, they also violated the privacy rights of NIKE's past and present employees whose identities have been revealed to The Oregonian.

---

[5] *See* Ninth Circuit Appeal No. 24-165, Dkt. Nos. 23.1 at 35, 46.1 at 25 (NIKE's briefing on appeal of ECF No. 403, collecting cases of protecting non-party employees privacy interests against harms associated with disclosure).

Instead, Plaintiffs' counsel tries to downplay the scope of their violation.  They claim that it was only "9 pages" of information that was improperly disclosed.  ECF No. 492 at 16. *Incorrect*.  The Ninth Circuit already held that there would be an irreparable injury if these "9 pages" were shared before the appeal process was finished.  *See* ECF No. 408 (citing *Nken v. Holder*, 556 U.S. 418, 425-26 (2009)); *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) ("An applicant for a stay pending appeal must show that a stay is necessary to avoid *likely irreparable injury* to the applicant while the appeal is pending.") (emphasis added).  Yet, Plaintiffs' counsel shared the confidential litigation documents anyway.  Further, it is not just "9 pages."  What's at issue here are the names of private individuals, whom are not relevant to this lawsuit, specifically mentioned in reference to unverified allegations of sexual impropriety, harassment, and other allegations.  These individuals' privacy rights were violated without consent and it is no excuse that the information has not been published—yet—or that it existed only on a few pages.

### 2.   Plaintiffs' Counsel's "We Might Win The Appeal" Argument Undermines Its Claimed Contrition.

Plaintiffs' counsel's additional claim that it *might* win the appeal misses the point and further undermines its argument of remorse.  ECF No. 492 at 16.  Whether Plaintiffs win or lose the appeal should be irrelevant.  To suggest otherwise is to invite non-compliance with court orders.  There is a significant public interest in the respect and adherence to court orders and in fair and efficient litigation.  *See, e.g.*, *Engebretson v. Mahoney*, 724 F.3d 1034, 1041 (9th Cir. 2013) ("the public interest in the enforcement of court orders" is "essential") (citation omitted); *Valdez v. City & Cnty. of Denver*, 878 F.2d 1285, 1289 (10th Cir. 1989) ("The public interest demands strict adherence to judicial decrees.").

**3.    NIKE Has Expended Hundreds Of Thousands Of Dollars Trying To Address The Breaches Of Court Orders.**

Finally, the case law makes clear that Plaintiffs and their counsel should have disclosed the "inadvertent" leak immediately.  *See Apple*, 2014 WL 12596470, at *9.  They did not, and the actions of Plaintiffs and their counsel have resulted in extensive litigation, the amount of which should be subject to an offer of proof.  But what is clear is that no amount of the spend would have been necessary had Plaintiff's counsel complied with orders of this Court and the Ninth Circuit.

**E.    Evidence Exclusion Remains An Appropriate Sanction.**

In its moving papers, NIKE explained that, under Rule 37, it is entitled to an evidentiary-exclusion sanction.  *See* ECF No. 471 at 25 ("Relief available under Rule 37 includes "precluding the party from supporting its claims or introducing certain matters in evidence.").  Plaintiffs and their counsel argue against the sanction, again self-servingly claiming that counsel's conduct was not willful (ignoring the "send" button), egregious (ignoring that they gave the information *to the press*), or in bad faith (which they claim is required).  ECF Nos. 490 at 8,  492 at 20.  They are wrong on the law and the facts.

In their Opposition, Plaintiffs' counsel cites a single case—*Apple, Inc. v. Samsung Electronic Co., Ltd.*—to claim that "bad faith or willful misconduct" is required to exclude evidence.  *See* ECF No. 492 at 20.  But there is reason to doubt that proposition's strength because evidentiary sanctions were not at issue in *Apple* and the court cites *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980) as its sole support of that proposition.  *Apple*, 2014 WL 12596470, at *9.

But the *Sumitomo* court considered a request for exclusionary sanctions that "would *preclude[ the plaintiff] from introducing any evidence of its damages*."  *Sumitomo*, 617 F.2d

at 1368-70 (emphasis added).  The court affirmed the exclusionary sanction because there had

been a "willful and callous disregard of court orders and discovery procedures" regarding

damages, justifying an order excluding any evidence of damages in response.  *Id. at* 1367.  The

court, though, was careful to note that this heightened standard applied *only because* the

requested sanction was effectively a request for terminating sanctions (after all, barring *any*

evidence of damages from a Plaintiffs' case amounts to a failure of proof), and that such a high

remedy cannot be imposed simply due to inadvertence.  *Id.* at 1369 ("[N]either dismissal nor

preclusion of evidence *that is tantamount to dismissal* may be imposed when the failure to

comply with discovery orders is due to circumstances beyond the disobedient party's control.")

(emphasis added).  Short of a request for these most drastic sanctions, the "choice among the

various sanctions rests within the discretion of the [ ] court."  *Id*.

       Here, NIKE's evidentiary sanction request is not case dispositive.  NIKE has always

contended that the documents have *nothing* to do with *these* Plaintiffs' claims.  And, neither

Markowitz nor Plaintiffs anywhere suggest that without the Starfish documents, their case is

over—a notable omission.  Thus, *Sumitomo*'s heightened standard is not the test.

       NIKE cited a multitude of cases in its moving papers, each of which issued evidentiary

sanctions excluding specific pieces of non-dispositive information that had been improperly

disclosed in violation of the Protective Order.  *See* ECF No. 471 at 25-26 (collecting cases).  So

too here—Plaintiffs' counsel disclosed the Starfish records to The Oregonian, which causes

injury to NIKE at trial and with the potential jury pool in Portland.

       Plaintiffs, for their part, cite *Penk v. Oregon State Bd. Of Higher Ed.*, No. 80-436 FR,

1984 WL 161490 (D. Ore. July 27, 1984).  *Penk* is a two-paragraph decision that dealt with a

pre-trial motion to exclude after a party failed to disclose expert reports by a matter of days.

*Penk* at *1.  Rule 37 was not mentioned.  *Id*.  In its case-specific abbreviated analysis, *Penk* offers no guidance to this Court.  Rather, the law does.  And, under Rule 37, this Court is free to look at the context (*i.e.*, a meeting *arranged* around unverified, prurient content with questionable relevance that was *shared with the press*) and conclude that an evidentiary sanction is appropriate.  Inadvertent or not (with surrounding doubt), the resulting breach here was *not* a modest one.  If evidentiary sanctions are appropriate for misdeeds, they are appropriate here.

### F.    Transferring Venue Likewise Is An Appropriate Remedy To Avoid A Tainted Jury Pool.

NIKE's request for transferring venue to Medford is supported by the case law.  *Neither Plaintiffs nor their counsel deny their efforts to try this case in the media*, and it is undisputed that Plaintiffs' counsel at the Markowitz firm had a very similar fact pattern occur in Oregon state court.  ECF No. 471 at 18-19 (detailing how Plaintiffs' counsel previously committed a remarkably similar "unintentional" disclosure to the media in violation of a protective order).  Instead, they argue that NIKE cannot establish "actual or presumed prejudice" because Kish's reporting has supposedly been "primarily factual."  *See* ECF Nos. 490 at 14, 492 at 29-30.  Self-servingly *wrong* again.  The documents in question are a series of *unverified, hearsay complaints collected informally and without any indicia of traditional scientific, survey methodology*.  But they have been reported in the press as if they are established fact (and they are not).[6]  Jurors here in Portland have been exposed to this and it is a bell that cannot be un-rung.  Transferring venue away from Portland, where Kish and Markowitz are each based, and where the stories are most likely to be disseminated to jurors, helps lessen the prejudice already caused.

---

[6] The article Kish has already published, for example, details the nuances of specific allegations across 11 pages, and includes only a single sentence that The Oregonian did not "independently verify" the underlying complaints.  *See* ECF No. 471 at 11, n.5 (citing article).  Even that phrasing implies to the reader that verification has taken place somewhere *other* than The Oregonian—which it has not.

Neither Plaintiffs nor their counsel identify any prejudice they will suffer as a result of being asked to try their case in Medford. *See* ECF Nos. 490 at 14-17, 492 at 28-31. There is none. Each cites *Daniels*, 428 F.3d at 1210. *Id.* But in *Daniels*, unlike here, "the district court was unable to make an independent review of the pre-trial publicity because the news coverage was not included in the record." 428 F.3d at 1210-11. Here, NIKE included the hyperbolic and inflammatory pretrial publicity in the record, which the Court can review. ECF Nos. 471 at 10, 11, 14, 22-23, 29-30 (nts. 4-6, 11, 17-18), 472 ¶¶ 3-4, 7-12, Exs. A-B, E-J. Salerno Owens and Kish have been, in effect, partners—calling out the work of each other. Kish cites Salerno Owens. *See, e.g.,* ECF No. 472-5. Salerno Owens, in turn, posts about Kish and directs readers to his articles. ECF Nos. 471 at 15, 472-2. To prove the point is to look for the simple. This sordid breach started because Kish called Plaintiffs' counsel to ask for information. ECF No. 448 at 62. Plaintiff's counsel agreed to provide information. *Id.* And there have been articles, lots of them. ECF Nos. 471 at 10, 11, 14, 22-23, 29-30 (nts. 4-6, 11, 17-18), 472 ¶¶ 3-4, 7-12, Exs. A-B, E-J.

Beyond that, there is *Daniels* posture and outcome. *Daniels* was *not* a sanctions case, and it still *reversed* the trial court's denial of a change of venue based on the mere presence of saturating press: "The nature and extent of the pre-trial publicity, paired with the fact that the majority of actual and potential jurors remembered the pretrial publicity warranted a change of venue." 428 F.3d at 1212. This, *by contrast*, *is* a sanctions case, and the saturating press on the irrelevant salacious complaints warrant transfer.[7]

---

[7] Plaintiffs' reliance on *In re Tesla Inc. Sec. Litig.*, No. 18-cv-04865-EMC, 2023 WL 1452008, at *2 (N.D. Cal. Feb. 1, 2023), fares no better. They claim it stands for the proposition that pretrial publicity does not establish a presumption of prejudice. They ignore, though, that the pretrial publicity in *Tesla*, "describing articles which focus on [Tesla founder Elon] Musk's personal life . . . [and] the size of his calves" were not "hyperbolic or inflammatory". *Id.* at *2.

**G.    The Law Supports Requiring Disclosure Of the Identities Of [The "Many Women"] Markowitz May Have Improperly Solicited Using NIKE's Confidential Information.**

For years, Markowitz has been soliciting former employees given public comments that Salerno Owens has made in the press about the "many women" she has been speaking with (but have never filed a lawsuit against it).  *See* ECF No. 471 at 22, 27 (citing articles and quotes from Salerno Owens).  NIKE's fears that its information was being misused, and the Protective Order violated, were confirmed when the claimed Starfish records were disclosed to the press.  As a result, NIKE's Motion asked for confirmation that Markowitz has not used those same records to solicit future litigants (another violation of the Protective Order).  ECF No. 471 at 28 (citing *OmniGen Rsch., LLC v. Wang*, No. 6:16-CV-268-MC, 2018 WL 11512767, at \*12 (D. Or. Nov. 6, 2018)).

Markowitz characterizes this request as an effort to "bully and penalize" potential plaintiffs.  ECF No. 492 at 27.  False.  NIKE is simply asking for confirmation that Markowitz has not used confidential information in the Starfish records to solicit clients, which would constitute a violation of the Protective Order, ECF No. 82.

In *Mahboob v. Educ. Credit Mgmt. Corp.*, No. 15-CV-628 TWR (AGS), 2021 WL 7448532 (S.D. Cal. Mar. 31, 2021), the court found that Plaintiffs' counsel violated the protective order when it used "a confidential [information produced subject to a stipulated protective order] to solicit [a client] and file a separate action [representing that client.]" *Id.* at \*1; *see also On Command Video Corp. v. LodgeNet Ent. Corp.*, 976 F. Supp. 917, 922 (N.D.

---

Conversely, here, the pretrial publicity involves issues that are undoubtedly hyperbolic and inflammatory.  *See, e.g.,* ECF No. 471 at 29-30, n.17-18 (citing Kish articles).  And, of course, *Tesla* was not a sanctions, case either.

Cal. 1997) (plaintiffs' counsel violated the protective order when it "[used] such [confidential] information to file a separate lawsuit in another forum.")

The court held it was "appropriate to compel Plaintiff's counsel to disclose to Defendant the other individuals they have contacted . . . to prevent the injustice of defendant defending itself against another improper suit."  *Mahboob*, 2021 WL 7448532, at *4.  Similarly, in *O'Connor v. Uber Technologies, Inc.*, the court also ordered class counsel to disclose a list of other "arbitrations arising from its solicitation" of clients from a class list that it received under the terms of the protective order.  2017 WL 3782101, at *9.

So too here.  Plaintiffs' counsel does not and cannot dispute that it has marketed its involvement in this suit, or that it has shared information from this litigation with the press (separate and apart from the breach).  *See* ECF Nos. 471 at 10, 11, 14, 22-23, 29-30 (nts. 4-6, 11, 17-18), 472 ¶¶ 3-4, 7-12, Exs. A-B, E-J, 492 at 26-27.  Add the Protective Order breach with the weaponization of litigation information *outside* the courtroom, and the request is proper.  In effect, this request simply asks that Markowitz has not otherwise violated the Protective Order.  Given one breach, Markowitz should confirm there have been no others.

**H.  Disqualification As To Future Cases Remains Warranted And Supported By Authority, To Deter Similar Misconduct.**

NIKE concedes that the most severe sanction it seeks is disqualification.  But as NIKE explained in its moving papers, the record supports it.

In Opposition, Plaintiffs argue that disqualification of Markowitz is improper because Markowitz sponsored Plaintiffs' out-of-state attorneys' *pro hac vice* applications and is their counsel of choice.  Neither argument undercuts the record supporting disqualification.

1.    **Markowitz Violated Multiple Rules Of Professional Conduct, Warranting Disqualification.**

As NIKE explained in its moving papers, the decision to disqualify counsel is "within the sound discretion of the [ ] court." *Roberts v. Legacy Meridian Park Hosp., Inc.*, No. 3:13-cv-01136-SI, 2014 WL 294549, at *17 (D. Or. Jan. 24, 2014) (citing *Gas-A-Tron of Ariz. v. Union Oil Co. of Cal.*, 534 F.2d 1322, 1325 (9th Cir. 1976)).  Although disqualification is considered a drastic measure, "any doubts must be resolved in favor of disqualification" to preserve the public trust "both in the scrupulous administration of justice and in the integrity of the bar." *Smith v. Cole*, No. CV 05372-AS, 2006 WL 1207966, at *2 (D. Or. Mar. 2, 2006) (citations omitted). "[A] court may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety." *Id.* at *1 (quoting *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996)).

By violating the Protective Order by sharing protected information *with the press*, Markowitz fell far short of the ethical example it was expected to set as local counsel. *Emery v. Aragon*, No. 6:22-cv-01495-MC, 2023 WL 1288983, at *1 (D. Or. Jan. 31, 2023) ("[L]awyers practicing in the District of Oregon are bound by the Oregon Rules of Professional Conduct.").

When Markowitz sponsored the *pro hac vice* applications of Plaintiffs' eight (8) other non-Markowitz attorneys, Markowitz agreed to abide by the Court's Statement of Professionalism and Notice of Rule 83-6 which requires, among other things, "willing compliance with the highest ethical standards."  Statement of Professionalism and Notice of Rule 83-6 (emphasis added); *Wickersham v Eastside Distilling, Inc.*, No. 3:20-cv-02182-YY, 2023 WL 8600535, at *2 (D. Or. Sept. 14, 2023), *aff'd and mod. in part*, 2024 WL 455070 (D. Or. Jan. 25, 2024) (citing Local Rule 83-7 and recognizing that "[t]his court's Local Rules require that all attorneys 'admitted to general or special practice . . . must [b]e familiar and

comply with the Oregon Rules of Professional Conduct and this Court's Statement of Professionalism.'") (alterations in original). In addition, Markowitz agreed to "promote the integrity, dignity, independent judgment, effectiveness, and efficiency of the legal system," "conduct our practice in a courteous, fair, and respectful manner," "commit ourselves to developing and preserving the ideals of integrity, honesty, competence, fairness, and devotion to the public interest," and "represent our clients zealously within the bounds of the law and the ethical standards approved by law of the US District Court - District of Oregon, vigorously protecting the interest of our clients in a responsible manner." Statement of Professionalism and Notice of Rule 83-6.

The District of Oregon requires association with local counsel for *pro hac vice* attorneys to ensure that they abide by and follow local practice and rules of professional conduct. Markowitz' violation of the Protective Order fell far short of the example the District of Oregon expects of local counsel. Disqualification will send the message that local counsel is the first line of defense in avoiding ethical violations.[8]

## 2. Plaintiffs Have Eight Other Counsel.

"[W]hile the Due Process Clause guarantees a defendant in a civil case the right to legal representation, there is no absolute constitutional guarantee of the attorney of one's choice." *In re BellSouth Corp.*, 334 F.3d 941, 946 (11th Cir. 2003).

Plaintiffs' argument that Markowitz is *necessary* as their "counsel of choice" is dispelled by the fact that Plaintiffs already chose eight (8) non-Markowitz lawyers to represent them. Aside from Markowitz, Plaintiffs are represented by Craig J. Ackermann and Brian W.

---

[8] The disqualification should apply to both Ms. Salerno Owens and her firm. *See Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980) (recognizing that "[o]nce the attorney is found to be disqualified, both the attorney and the attorney's firm are disqualified from suing the former client.").

Denlinger of the law firm Ackermann & Tilajef, P.C., India Lin Bodien of the law firm India Lin

Bodien Law, Katharine L. Fisher, Byron Goldstein, Laura L. Ho, James P. Kan, and Barry

Goldstein of the law firm Goldstein, Borgen, Dardarian & Ho. Those lawyers have

acknowledged their familiarity with, and agreement to abide by, the Oregon Rules of

Professional Conduct and the Court's Statement on Professionalism. LR 83-7; Statement of

Professionalism and Notice of Rule 83-6. Further, the non-Markowitz attorneys are familiar

with, and have participated in, the litigation by filing the operative Second Amended Complaint,

several motions, declarations, discovery and status reports, and participating in oral arguments

and hearings.[9] Disqualifying the Markowitz firm will not impede these eight (8) lawyers' *pro

hac vice* status.

## III.  CONCLUSION

For all the reasons set forth above, NIKE requests an Order granting the following relief:

1)      Issuing monetary sanctions against Plaintiffs' counsel to reimburse NIKE its fees

and costs incurred in seeking to enforce the relevant court orders and remedy the harm caused by

Plaintiffs' counsel's admitted breaches (subject to an offer of proof), as well as in an amount

determined by the Court to be necessary to punish counsel for the unauthorized disclosure of

sealed judicial records;

2)      Excluding from evidence any testimonial or documentary evidence, as well as

argument, relating to the "Project Starfish" questionnaires that were improperly disclosed to the

Oregonian in violation of court orders;

---

[9] *See* ECF No. 152, 221-22, 251, 339, 341, 372-73, 377, 390, 464-65 (by Ackermann); 242 (by Bodien); ECF No. 58-59, 78  88, 90, 98, 102-03, 108, 114, 163-67, 192, 211-12, 227, 240, 288-292, 349-50, 352-53, 358-61, 367-69, 371, 387-88, 394, 432-33, 449-52, 479, and 490-91 (by Goldstein).

3)      Transferring venue from the Portland Division to the Medford Division of this Court for jury trial and requiring Plaintiffs (or their counsel) to pay NIKE's attorney's fees and costs incurred for travel and lodging for trial in the Medford Division, to similarly avoid the prejudice caused by the unauthorized disclosure of sealed litigation documents to the Oregonian and to minimize the taint of the jury pool;

4)      Requiring disclosure of the identities of the "many women" Markowitz improperly solicited based on the "Project Starfish" documents that were produced in this action pursuant to the Court's Protective Order (to ensure that none is called as a witness and the upcoming trial or otherwise solicited to bring legal claims against NIKE as a result of the disclosure), and requiring Markowitz to indemnify NIKE for attorney's fees and costs incurred in defending any future legal proceeding Markowitz causes to be filed on behalf of those individuals (to ensure the status quo is preserved and NIKE not faced to incur the costs of defending cases that were solicited as a result of the improper use of materials produced under the Protective Order);

5)      Disqualifying Markowitz from representing Plaintiffs in this action as punishment for their initial disregard of the Court's order and subsequent attempt to conceal that violation from NIKE and the Court; and

6)      For other relief the Court deems just and proper.

Date:  June 17, 2024                    /s/ Daniel Prince_____

DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

JOHN A. BERG, OSB# 120018
jberg@littler.com
PAUL E. CIRNER, OSB# 191471
pcirner@littler.com
LITTLER MENDELSON P.C.
1300 SW Fifth Avenue
Wells Fargo Tower, Suite 2050
Portland, OR 97201
Telephone:  (503) 221-0309
Facsimile:  (503) 242-2457