IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KELLY CAHILL, SARA JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br>   v.<br><br>NIKE, INC., an Oregon Corporation,<br><br>        Defendant. | Case No. 3:18-cv-01477-JR<br><br>ORDER |

RUSSO, Magistrate Judge:

INTRODUCTION

Plaintiffs Kelly Cahill, Sara Johnston, Lindsay Elizabeth, and Heather Hender brought this action seeking class action status alleging that defendant Nike systematically discriminates against them and other similarly situated women regarding salary and promotions. Several additional plaintiffs filed consents to join this action. During the pendency of plaintiffs' motion for class certification, defendant sought to seal certain portions of the documents filed in relation to the motion. At that time, a group of non-party media organizations moved to intervene seeking access to those sealed documents. The Court granted defendant's motion to seal in part. The Court also

Page 1 – ORDER

granted the non-party media organizations' motion to intervene for the limited purpose of challenging the parties' stipulated redactions regarding the briefing surrounding plaintiffs' motion for class certification. However, the Court denied the media organization's request for further briefing and to unseal or access documents produced pursuant to the protective order in place in this case. Nonetheless, the Court invited the media organizations to file a renewed motion for the purpose of opposing any remaining stipulated redactions following final resolution of the motion for class certification. The motion to certify has now been denied and the Court granted the media organizations' motion to unredact a number of documents (ECF 363, 403). However, defendant appealed the order, and the Ninth Circuit granted a temporary stay pending the appeal. (ECF 407, 408).

On January 25, 2024, plaintiffs' counsel notified the Court she inadvertently disclosed to an Oregonian reporter (appearing in this action as Advance Local Media LLC) confidential discovery material obtained from the defendant. Despite plaintiffs' request, Advance Local Media [the Oregonian] refused to return the material. Accordingly, plaintiffs moved this Court for the return of the documents (ECF 410 (sealed), 422 (unsealed)). Given the confidential nature of the material and the Ninth Circuit's stay regarding the redactions, on January 26, 2024, the Court issued an order requiring the Oregonian to return the inadvertently disclosed confidential material, to not disseminate those materials, and destroy any copies in its possession by January 31, 2024 (ECF 417).

The Oregonian filed an emergency Motion to Vacate the Order or stay the proceedings prior to January 31, 2024 (ECF 414). On January 29, 2024, Judge Marco Hernandez granted the motion and vacated the January 26 Order (ECF 417). However, Judge Hernandez preserved the status quo until the Motion to Vacate was resolved and remanded the matter back to the

undersigned for renewed review. After further review, this Court denied the motion seeking return of inadvertently disclosed materials. Judge Hernandez affirmed the order.

Defendant now moves for imposition of sanctions against plaintiffs and their counsel for violation of the protective order entered in this case protecting the files marked confidential disclosed to the Oregonian. The Court did find "plaintiffs' counsel violated the protective order in place in this case, purportedly inadvertently." ECF 431 at p. 8.

In addition, plaintiffs continue to seek discovery regarding the Starfish Project that is at the heart of the inadvertent disclosure despite the close of discovery in this case.

BACKGROUND

On April 8, 2022, the Oregonian (along with several other media organizations) sought to intervene in this action for the limited purpose of vindicating the right of the press and the public to access judicial records in this matter (ECF 205). In particular, the media organizations sought intervention to unseal judicial records filed under seal by the parties pursuant to a protective order and to oppose defendant's then pending motion to seal. The media organizations' motion indicated detailed knowledge of the protective order (ECF 82) entered in this case.

On September 30, 2022, the Court granted in part defendant's motion to seal certain Nike employee information and:

> [r]ecognize[d] the distinct perspective the non-party media organizations offer to this litigation, along with their well-established common law and First Amendment rights to challenge the sealing of judicial records. Therefore, the Court finds the most prudent and efficient course of action is to grant the non-party media organizations' motion to intervene but deny their request for further briefing and to unseal or access documents produced under the Protective Order. However, following the final resolution of plaintiffs' Motion for Class Certification, the non-party media organizations may file a renewed motion for the purposes of opposing any remaining stipulated redactions. At that point the parties shall identify all exhibits admitted into evidence they contend should remain sealed and include explanations supporting their contentions.

Page 3 – ORDER

Order pp.13-14 (Sept. 30, 2022) (ECF 273).

As noted above, after the Court denied the motion to certify, it granted the media intervenors' motion to unseal certain judicial records, however the Ninth Circuit stayed that order pending appeal. As such, the documents remain sealed pursuant to the protective order.

According to one of plaintiffs' counsel, Laura Salerno Owens with the law firm of Markowitz Herbold PC, on January 19, 2024, she met with Matthew Kish, a reporter for the Oregonian, at his request (ECF 411, 423) . Kish informed Owens he had received a declaration made in connection with this action containing allegations of sexual harassment and sexual assault that an employee experienced while working at Nike and inquired whether plaintiffs could provide comment on those allegations. Owens asserts she responded by limiting her comments to information contained in the publicly available records in this case. Id.

Owens goes on to relate:

> To that end, I asked my team to compile a PDF of [the surveys Nike propounded to its employees about workplace culture]. I had intended to only have copies of those that were available in the public record pursuant to the Court's October 11, 2023 order…
> In my January 19, 2024, meeting with Mr. Kish, I stated that I would provide a limited comment on [the] declaration. I emailed him the comment at 1:58 p.m. with the subject line, "Quote."
> Mr. Kish reviewed the comment and noticed I referenced [a survey]. He asked me which [part] supported the comment.
> I then emailed Mr. Kish an index referencing where in the documents the allegations were found that supported the comment. I emailed him that index at 2:02 p.m. in an email with the subject line, "Citations to public record."
> Mr. Kish then told me that the index referenced page numbers that were not ECF numbers. I explained to him that we had a packet of the publicly available [surveys] and the index was referencing those pages in the packet. Because the docket in this case is very complex, with the same document being filed in various places in various forms, for ease of reference, I emailed to Mr. Kish the packet of what I believed at the time were the publicly available documents.
> Specifically, I emailed to Mr. Kish a … PDF of the [the surveys] and an index referencing where in the documents the allegations were found that supported the comment. I emailed him that information at 2:10 p.m. in an email with the subject line, "Public record documents." …

>When I sent Exhibit 3, I understood that the attachment was made up of [surveys] that the Court had ordered unsealed, and that they contained redactions on those unsealed documents. I never intended to send Mr. Kish any documents he could not otherwise access through PACER.
>
>After I sent the email marked as Exhibit 3, Mr. Kish told me that he opened the PDF. He did not review the documents, but he commented that the number of documents seemed like more than he had previously seen. That immediately worried me, and I told him I would look into it.
>
>I had another meeting with a client from 2:30 p.m. to 3:30 p.m. On my way to that meeting, I called a staff member at my firm, explained my concern, and asked them to please look into the issue immediately while I was in my other meeting.
>
>Shortly after the conclusion of my 3:30 p.m. meeting, I realized my mistake: [the PDF] were documents plaintiffs received from Nike in discovery, not only publicly available documents. I immediately texted Mr. Kish at 3:41 p.m. and asked him to call me back as soon as he could. I also called him at 4:30 p.m., but he did not answer the call. I sent him another text message at 4:50 p.m. asking for him to call me that day.
>
>Mr. Kish called me at 5:08 p.m. I told him during that call that I made an inadvertent disclosure, that he had documents that (I then believed) were not publicly available, and that I needed him to return the documents immediately and destroy the documents in his possession. He said that it was after hours and that he had to talk to his editor. He then called me at 5:40 p.m. and said that he would get back to me on Monday, January 22, 2024, regarding what they are going to do. He assured me no story would be coming out over the weekend or on Monday about these inadvertently disclosed documents.
>
>….
>
>On Monday, January 22, 2024, Mr. Kish called me at 11:44 a.m. and at 5:56 p.m. In both calls he told me that the Oregonian had not decided yet what it was going to do with the documents. He again assured me that the Oregonian was not intending on running a story or distributing the documents in any way. I reiterated my demand that he return the documents. I asked if my ethics counsel could speak with the Oregonian or their counsel to convince them to return the documents. He said possibly, but not that evening.
>
>The next morning, on Tuesday, January 23, 2024 at 9:14 a.m., I sent Mr. Kish an email reiterating the demands I had made during our conversations to return the documents and instructing him not to share or disseminate the documents….
>
>On Wednesday, January 24, 2024, I called Mr. Kish at 11:51 a.m. I received his voicemail and left him a message telling him I was calling to inquire about the status of the Oregonian's decision and to call me back. He returned my call at 12:29 p.m. while I was in a meeting, and left me a voicemail stating that he was returning my call. I then called him at 1:15 p.m. and we spoke. He told me the Oregonian still had not decided whether they were going to return and destroy the documents. I reiterated my demand that they do so, and told him that we might have to take action soon if the Oregonian continued to hold these documents. I once again asked if our

Page 5 – ORDER

lawyers could communicate with one another on this issue. He said he would pass along that request.

On Thursday, January 25, 2024, Mr. Kish sent me an email at 2:47 p.m. responding to my email from January 23, 2024. He informed me that the Oregonian does not intend to return the inadvertently disclosed documents, and that they would give me notice before publication….

Id. at pp. 2-6.

Owens indicates the disclosure includes pages of materials that had not previously been filed with the Court along with pages filed with the Court but including redactions on the publicly available docket. Id. at pp. 6-7. Accordingly, plaintiffs sought the Court's assistance in obtaining the return of the documents on January 25, 2024. Defendant Nike learned of the disclosure on that date as well as the result of the motion filed by plaintiffs.[1]

## DISCUSSION

A.    Sanctions

Defendant moves for sanctions against plaintiffs and their counsel in the form of an order from the Court:

1) Issuing punitive monetary sanctions against Plaintiffs and Markowitz for the unauthorized disclosure of confidential judicial records in contempt of court orders, and reimbursing NIKE's attorneys' fees and costs incurred in seeking to enforce the Protective Order and Ninth Circuit Stay Order;

2) Excluding from evidence any testimonial or documentary evidence, as well as argument, relating to Project Starfish;

---

[1] Defendant also asserts that plaintiffs' counsel, during a deposition taken June 20, 2024, played a video clip which included testimony designated as confidential. Nike further asserts plaintiffs' counsel suggested this disclosure was also inadvertent despite "triple checking" the video. See ECF 500. However, the confidential material was not marked attorney eyes only and the deponent was a current Nike Chief Marketing Officer to whom, arguably, provision of the material during a deposition does not violate the protective order.

Page 6 – ORDER

3) Requiring disclosure of the identities of the "many women" Markowitz improperly solicited based on the "Project Starfish" documents that were produced in this action pursuant to the Court's Protective Order, and requiring Markowitz to indemnify NIKE for attorney's fees and costs incurred in defending any future legal proceeding Markowitz causes to be filed on behalf of those individuals;

4) Transferring venue from the Portland Division to the Medford Division of this Court for jury trial and requiring Plaintiffs to pay NIKE's attorney's fees and costs incurred for travel and lodging for trial in the Medford Division; and

5) Disqualifying Markowitz from representing Plaintiffs in this action.

Defendant not only seeks to punish the misconduct in violating the protective order due to increased costs and harm to non-parties but is also concerned that the jury pool will be prejudiced against Nike at trial.

At the heart of the improperly disclosed materials are excerpts from an internal survey conducted by female executives at Nike containing unredacted names that for now remained sealed pending an appeal of this Court's order unsealing the documents and revealing the names. While the Oregonian has published some articles regarding the disclosed documents, the names redacted in the Court filings have not been published. Nonetheless, the privacy interest of those named in the documents, who are not parties to this litigation and who are still subject to protection pending appeal of this Court's order to unredact, have had their names reveled to a news organization.[2] The violation of the protective order, regardless of its inadvertence, requires some form of sanction.

---

[2] The subject matter that is in the confidential materials has been disseminated previously even before this case began. See ECF 492 at pp. 10-13. Thus, any harm to defendant has thus far been limited given that the names have not been published and remain only know to the news organization itself.

Page 7 – ORDER

> Rule 37 of the Federal Rules of Civil Procedure grants courts the authority to impose sanctions where a party has violated a discovery order, including a protective order issued pursuant to Rule 26. Fed. R. Civ. P. 37(b)(2)….
>
> Rule 37 "authorizes the district court to impose a wide range of sanctions if a party fails to comply with a discovery order." United States v. Nat'l Med. Enters., Inc., 792 F.2d 906, 910 (9th Cir. 1986). "The choice among the various sanctions rests within the discretion of the district court." United States v. Sumitomo Marine & Fire Ins. Co., 617 F.2d 1365, 1369 (9th Cir. 1980). However, the court's authority to issue sanctions "is subject to certain limitations[.]" Nat'l Med. Enters., Inc., 792 F.2d at 910. Specifically: "(1) the sanction must be just; and (2) the sanction must specifically relate to the particular claim at issue in the order." Id. Furthermore, a compensatory award is limited to the "actual losses sustained as a result of the contumacy." Shuffler v. Heritage Bank, 720 F.2d 1141, 1148 (9th Cir. 1983)

Cleveland v. Ludwig Inst. for Cancer Rsch. Ltd., 2021 WL 4993025, at *4 (S.D. Cal. Oct. 27, 2021).

The ideal remedy is one that advances both the remedial and deterrent goals of sanctions, as the need for one is not diminished by a need for the other. Apple, Inc. v. Samsung Elecs. Co., 2014 WL 12596470, at *6 (N.D. Cal. Jan. 29, 2014). Accordingly, the Court must balance the level of harm caused and the evidence of bad faith or willful conduct in determining the appropriate sanction. Id.

At the outset, it should be noted that defendant offers much conjecture suggestive of Salerno Owens' and the Markowitz Herbold firm's bad faith and willful violation of the protective order. See, e.g., ECF 471 at pp. 16-18 (extrapolating from statements regarding use of protective orders, public statements about the case, weather conditions during disclosure, time to compile a large Adobe document, timing of the alert to counsel and the Court regarding the disclosure, and another instance of a purported discovery violation in another case to conclude the "true motive" behind the disclosure). It would be an understatement to note that the conduct of both parties to this litigation during discovery has been incendiary to the point that any objective observer might be tempted to attribute a nefarious intent to all such conduct. However, the Court has enough

experience to note that significant cases involving well-funded representatives often results in heavy-handed tactics in an attempt to advocate for their clients and does not indicate deliberate attempts to violate ethical rules or Court orders.  Nonetheless, when parties engage in scorched-earth tactics, they must exercise caution especially when engaging in activity that is extracurricular to the case to avoid stepping over the line from zealous advocacy to violation of a Court order.  Counsel failed in that regard.  However, the Court is unable to determine the disclosure of the unredacted version of the survey was anything more than inadvertent.

    1.    Contempt

Civil contempt sanctions are among those imposed against individuals who violate protective orders. See 6 James Wm. Moore et al., Moore's Federal Practice § 26.108[2], at 26-569 (3d ed. 2018). "The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence." In re Dual–Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993); Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 889 (9th Cir. 1982). Therefore, a court may impose a civil contempt sanction only if there is clear and convincing evidence that "(1) the contemnor violated a court order, (2) the noncompliance was more than technical or de minimis (substantial compliance is not punishable as contempt), and (3) the contemnor's conduct was not the product of a good faith reasonable interpretation of the violated order." 7 James Wm. Moore et al., Moore's Federal Practice § 37.51[7][b], at 37-110 (footnotes omitted); see also United States v. Bright, 596 F.3d 683, 694 (9th Cir. 2010) (same). "Any doubts as to whether these requirements have been met in a particular case must be resolved in favor of the party accused of the civil contempt." 7 James Wm. Moore et al., Moore's Federal Practice § 37.51[7][b], at 37-110 (footnote omitted).

As noted above, the Court does not find that the violation of the discovery order in this case was deliberate or done in bad faith. However, plaintiffs' counsel did violate the order by disclosing unredacted material and, inadvertent or not, she did not divulge the information under the mistaken belief that the order permitted disclosure. Counsel was under an obligation to ensure protection of the unredacted document and chose to engage in conduct with a third party, unrelated to the case, that resulted in the release of the information. Given the confidential nature of the information, counsel should have reviewed the documents before providing them to a news organization. This is not an instance in which Salerno Owens believed the unredacted document was not confidential but, rather, an instance in which Salerno Owens did not ensure the material she knew to be subject to the protective order was not included in the documents provided to a third party. Cf. Harmon v. City of Santa Clara, 323 F.R.D. 617, 620-21 (N.D. Cal. 2018) (counsel asserted they had mistakenly believed the video was not produced confidentially under the protective order and did not realize their mistake until after the video was disseminated). Accordingly, a finding of contempt is appropriate especially in light of the number of days plaintiff waited to inform the Court and defendant of the disclosure while she attempted to have the Oregonian return the material.

> Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380 (9th Cir.1986). "An award of attorney's fees for civil contempt is within the discretion of the district court." Harcourt Brace Jovanovich Legal and Professional Publications, Inc. v. Multistate Legal Studies, Inc., 26 F.3d 948, 953 (9th Cir.1994). The court may award reasonable attorney's fees incurred because of the contemnor's violation, even if the violation was not willful.

Thayer v. Nydigger, 1999 WL 1442020, at *2 (D. Or. Nov. 23, 1999). The Court finds that an award of fees related to defendant's efforts to seek return of the documents and in bringing this motion is appropriate.

### 2. Monetary Sanctions

Defendant seeks monetary sanctions in amount equal to attorney fees incurred in bringing this motion and otherwise in seeking to enforce the protective order. The Markowitz firm acknowledges the Court has authority to award such fees.

As noted above, the redacted names have not been published and it appears that the Oregonian will not publish those names until its own further investigation justifies it. Accordingly, other than its expense incurred in seeking to enforce the protective order and bringing this sanctions motion, defendant has suffered no other significant harm. Accordingly, the Court awards defendant its reasonable attorney fees. A finding of contempt is otherwise sufficient to admonish counsel for the unauthorized disclosure and any further punitive monetary sanctions are not necessary in this case. As such, defendant may file a motion seeking its reasonable fees related to the disclosure. The Court notes that such sanction shall be awarded against counsel and her firm only and shall not be borne by plaintiffs as the party itself played no role in the disclosure.

### 3. Disqualify Counsel

Defendant asks the Court to disqualify the Markowitz firm from representing plaintiffs "to maintain ethical standards of professional responsibility." ECF 471 at p. 32.

> Disqualification "ultimately involves a conflict between a client's right to chosen counsel and the need to maintain ethical standards of professional responsibility." Certain Underwriters at Lloyd's, London, 264 F.Supp.2d at 918 (citation and quotation marks omitted). "[B]ecause a motion to disqualify is often tactically motivated, and can be disruptive to the litigation process, it is a drastic measure that is generally disfavored.... At the same time, the paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar." Id.

Quatama Park Townhomes Owners Ass'n v. RBC Real Est. Fin., Inc., 365 F. Supp. 3d 1129, 1137 (D. Or. 2019).

Page 11 – ORDER

Although plaintiffs are represented by several law firms, the case is now ready for trial and disqualification at this stage would be significantly disruptive. Disqualification is not necessary to address the violation of the protective order and any potential ethical violations that such disclosure engendered. Accordingly, the Court declines to resort to disqualification as a sanction for the inadvertent disclosure of the names redacted in otherwise publicly available documents.

4.     Exclude Evidence

Defendant seeks to exclude evidence related to the surveys at issue and their use in dispositive motions or trial. Defendant also seeks to preclude further discovery. The Court will address further discovery below but declines to exclude evidence based on the disclosure to the Oregonian in violation of the Court's protective order.

Although unclear in the Ninth Circuit, case law does suggest that a harsh sanction such as exclusion of evidence should be reserved for cases of bad faith or willful misconduct. Apple, Inc. v. Samsung Elecs. Co., 2014 WL 12596470, at *5 (N.D. Cal. Jan. 29, 2014) ("the harshest sanctions, such as exclusion of evidence or dismissal, are to be reserved for cases of bad faith or willful misconduct"). And, as noted above, the contempt order along with an award of fees is sufficient to remedy the conduct and deter future violations.[3]

5.     Compel Identities of Those Solicited With the Survey Documents

Defendant suggests ample evidence exists that counsel violated the protective order by soliciting prospective clients with confidential records. Accordingly, defendant asks the Court to order the Markowitz firm to disclose the identities of the "many women" it "improperly solicited" based on the Project Starfish survey. The Court finds defendant's assertions to lack a sufficient

---

[3] Defendant's arguments regarding relevance should be addressed in a motion in limine.

Page 12 – ORDER

basis to order such sanction and finds no relation between the requested sanction and the disclosure for which Counsel engaged. Accordingly, the Court declines to employ such sanction.

6. Venue

Defendant asserts the disclosure of the documents to the Oregonian have resulted in such prejudice that a change of venue from this division to the Medford division is an appropriate sanction. As noted above, the Oregonian articles that have been published in this case do not disclose the redacted names. The substantive content in the documents was already known to the Oregonian and has been the subject of several articles published prior to the inadvertent disclosure. Moreover, the Oregonian and its website is available in Medford. The Court declines to institute such sanction.

B. Plaintiffs' Further Discovery Issues

Plaintiffs again seek to compel discovery regarding the Starfish survey and now requests the Court appoint a special master to determine the matter. Plaintiffs also move the Court to find defendant wrongly designated documents it produced as confidential either because it failed to show good cause for the designation or because redactions were a viable alternative.

1. Further Discovery

Plaintiffs seek:

> an order: (i) compelling Nike to complete its production in response to the 11 requests for production ("RFP"), as written, in Plaintiffs' Seventh Set of Requests for Production ("Seventh RFPs"); (ii) compelling continued depositions Nicole Graham and Jamie Jeffries of no more than four hours, and without the limitation on scope in ECF No. 486, following Nike's completion of this production; and (iii) staying the discovery deadline until court-ordered discovery is completed.

ECF 509 at p. 1.

In a nutshell, plaintiffs assert defendant has failed to produce about 270 of some 300 Starfish related complaints despite: repeated requests; orders compelling their production; and

Page 13 – ORDER

depositions purportedly demonstrating their existence, possession, and control by defendant. In further attempt to gain access to the purported complaints plaintiffs requested:

> • RFPs 163-169 seek communications related to Starfish involving specific people who, based on admissible evidence, are known to have been involved. [footnote omitted]
> • RFP 170 seeks communications and documents that include a reference or statement regarding the number of Starfish-related complaints collected, provided to Nike, received by Nike, provided to Seyfarth Shaw, or investigated.
> • RFP 171 seeks communications and documents Nike provided to Seyfarth Shaw containing facts or factual allegations Related to Starfish, including who and when provided these materials.
> • RFP 172 seeks communications and documents related to any meeting, Communication, or conversation involving any Starfish-related factual allegations or facts.
> • RFP 173 seeks communications and documents related to Starfish not already produced by Nike in this action.

ECF 509 at p. 3.

Defendant responded with a privilege log and noted that it was not withholding any responsive discovery.

The Starfish questionnaires were distributed and collected informally by certain female Nike employees. In her deposition, Melanie Strong testified there were 300 separate survey complaints received. Strong Deposition (ECF 433-1) at p. 86. Strong further testified she was present when the "Project Starfish presentation" was made in front of Nike's Chief Human Resources Officer, Monique Matheson, and its then-General Counsel, Hillary Krane, during an in-person meeting around early 2018, where a fifth Nike executive, Hannah Jones, was present. Id. at p. 13, 30. Strong also testified she was "told" by Nicole Hubbard Graham that Matheson and Krane received the 300 hardcopies. Id. at 50-51. However, Graham testified she brought approximately 30 of the paper surveys to Matheson and Krane. Graham Deposition (ECF 514-2) at p. 13. Indeed, Matheson, while not recalling the precise number of complaints Nike received, recalled receiving approximately 30. ECF 441 at ¶ 4. Plaintiffs offer conjecture and speculation

to arrive at their conclusion that Nike has possession and control of the 270 purported additional survey hardcopies.

Plaintiffs do present evidence of about 15 other unique complaints from Starfish in existence from third parties and suggest there were also oral complaints made. See, e.g., ECF 518 at p. 8-9. However, defendant has conducted numerous searches for any complaints in its control and possession and at this point, the burden and expense of discovery outweigh the benefit to the plaintiffs' claims. Fed. R. Civ. P. 26(b)(1). While the sought after complaints, to the extent they exist, have some tangential relevance to plaintiffs' claims, further discovery into this matter is disproportionate to the needs of the case.

While the Court agrees that Nike has, at times, been recalcitrant in responding to discovery requests, the substantial ink plaintiffs devote to the theory that Nike is withholding or has destroyed relevant Starfish survey documents fail to justify yet another round of discovery seeking the same documents yet again. It is time to put this search expedition to rest. Accordingly, the motion to compel and to appoint a special master concerning discovery related to Starfish is denied.

2.      Confidentiality Designations

The protective order in effect in this case provides in part:

> Each party reserves the right to dispute the confidential status claimed by any other party or subpoenaed party in accordance with this Protective Order. If a party believes that any documents or materials have been inappropriately designated by another party or subpoenaed party, that party shall confer with counsel for the designating party. As part of that conferral, the designating party must assess whether redaction is a viable alternative to complete non-disclosure. If the patties are unable to resolve the matter informally, a party may file an appropriate motion before the Court requesting that the Court determine whether the Protective Order covers the document in dispute. Regardless of which party files the motion, the party seeking to protect a document from disclosure bears the burden of establishing good cause for why the document should not be disclosed. A party who disagrees with another party's designation must nevertheless abide by that designation until the matter is resolved by agreement of the patties or by order of

Page 15 – ORDER

> the Court. A party must use its best efforts to dispute the confidential status claimed by any other party or subpoenaed party in a timely manner.

Protective Order (ECF 82) at ¶ 11.

Plaintiffs ask the Court to find that none of the documents produced in the 283 pages comprising Nike_52 (Bates Nos. Nike_00062320-62602) may be designated confidential provided that certain names are redacted.

A protective order may issue to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted. Phillips v. Gen. Motors, 307 F.3d 1206, 1210-11 (9th Cir.2002); see also Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir.1992) (Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.); Deford v. Schmid Prods. Co., 120 F.R.D. 648, 653 (D.Md.1987) (requiring party requesting a protective order to provide "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm").

Defendant notified plaintiffs they are free to use the referenced documents for any merits-based motion with redactions to names and other identifiers. Nonetheless, defendant maintains that good cause exists to retain confidential designation for all the documents until that time given that the compelling reasons standard is not applicable to the documents at issue unless related to a merits-based motion.[4]

---

[4] Defendant also believes the issue should await a decision regarding the need to redact names pending before the Ninth Circuit. However, plaintiffs do not seek to reveal the names in the documents to the public at this time.

The documents at issue relate entirely to the Starfish complaints raised in confidence. The documents contain allegations regarding harassment in the workplace and emails confirming participation in the investigation. This Court has previously stated:

> The names included in the documents involve Nike employees and actions that plaintiffs allege demonstrate gender discrimination and harassment by Nike itself. The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records. Kamakana, 447 F.3d at 1179. In addition, the desire for privacy is not a compelling reason sufficient to outweigh the public's interest in disclosure. Bracken v. Fla. League of Cities, 2019 WL 1867921, at *4 (D. Or. Apr. 24, 2019).

ECF 363 at p. 5.

However, as defendant has noted, this is an analysis based on the compelling reasons standard rather than the more lenient good cause standard. Nonetheless, the specific prejudice or harm offered by defendant relates to the confidence with which third parties submitted complaints. Redacting all identifying information of complainants[5] will suffice to alleviate this harm under the good cause standard. Accordingly, plaintiffs' motion is granted, and defendant shall provide copies of the documents at issue with identifying information redacted and the confidential designation removed.

---

[5] Names of already publicly available complainants need not be redacted and any names which only appear in an administrative capacity also need not be redacted.

CONCLUSION

Defendant's motion for imposition of sanctions (ECF 471) is granted in part as noted above. In addition, plaintiffs' motion to determine good cause for confidentiality of certain documents (ECF 505) is granted as noted above, plaintiffs' motion requesting appointment of a special master (ECF 508) is denied, and plaintiffs' motion to compel production (ECF 509) is denied. The parties' request for oral argument is denied.

DATED this 26th day of August 2024.

          /s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge