LAURA E. ROSENBAUM, OSB No. 110061
laura.rosenbaum@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

DANIEL PRINCE (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS (*pro hac vice*)
feliciadavis@paulhastings.com
LINDSEY C. JACKSON (*pro hac vice*)
lindseyjackson@paulhastings.com
ALYSSA K. TAPPER (*pro hac vice*)
alyssatapper@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California 90071-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

Attorneys for Defendant NIKE, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL and SARA JOHNSTON, individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>NIKE, INC., an Oregon corporation,<br><br>        Defendant. | Case No.: 3:18-cv-01477-AB<br><br>**DEFENDANT NIKE, INC.'S MOTION TO SEVER OR, IN THE ALTERNATIVE, SEPARATE PLAINTIFFS' CLAIMS FOR TRIAL**<br><br>**ORAL ARGUMENT REQUESTED** |

# <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ........................................................................................... 1

II.     THE FOUR INDIVIDUAL PLAINTIFFS' CLAIMS DO NOT ARISE FROM
        THE SAME TRANSACTION, OCCURRENCE OR SERIES OF
        TRANSACTIONS OR OCCURRENCES .................................................... 3

        A.      The Court Already Concluded There Is No "Common Thread" Connecting
                The Plaintiffs' Claims. ................................................................. 3

        B.      The Elements Required To Prove Plaintiffs' Claims Demonstrate Why
                Joinder Is Inappropriate. ............................................................. 4

        C.      Courts Routinely Find Discrimination Claims Inherently Inappropriate For
                Joinder. ........................................................................................ 5

        D.      The Four Individual Plaintiffs' Claims Derive From Separate Transactions
                Or Occurrences. ........................................................................... 7

        E.      Plaintiffs' Expected Reliance On "Starfish" Also Does Not Support
                Joinder. ........................................................................................ 9

III.    THE FOUR INDIVIDUAL PLAINTIFFS' CLAIMS DO NOT INVOLVE A
        COMMON QUESTION OF LAW OR FACT ....................................... 11

IV.     ALLOWING PLAINTIFFS TO PROCEED TOGETHER AT TRIAL WILL
        RESULT IN JURY CONFUSION AND SEVERELY PREJUDICE NIKE ................. 13

V.      CONCLUSION ............................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Aragon v. Republic Silver State Disposal Inc.,*
   292 F.3d 654 (9th Cir. 2002) ................................................. 13

*Bailey v. Northern Tr. Co.,*
   196 F.R.D. 513 (N.D. Ill. 2000) ............................................ 5, 6, 9

*Bhaya v. Westinghouse Elec. Corp.,*
   922 F.2d 184 (3d Cir. 1990) .................................................. 11

*Coalition for a Sustainable Delta v. U.S. Fish & Wildlife Serv.,*
   No. 1:09-CV-480 OWW GSA, 2009 WL 3857417 (E.D. Cal. Nov. 17, 2009) ..................... 12

*Coleman v. Quaker Oats,*
   232 F.3d 1271 (9th Cir. 2000) .............................................. 14

*Coughlin v. Rogers,*
   130 F.3d 1348 (9th Cir. 1997) .............................................. 11

*DeFrancesco v. City of Mt. Angel,*
   No. CV-00-480-ST, 2000 WL 1060661 (D. Or. July 14, 2000) ............................ 13

*Delima v. Home Depot U.S.A., Inc.,*
   616 F. Supp. 2d 1055 (D. Or. 2008) ........................................ 4

*Falls v. Desert Palace, Inc.,*
   No. 2:17-cv-00019-GMN-PAL, 2018 WL 11278578 (D. Nev. Mar. 15, 2018) ................. 3

*Fleming v. Home Depot U.S.A., Inc.,*
   No. 96-6560-CIV, 1998 WL 1674544 (S.D. Fla. July 8, 1998) ......................... 12, 17

*Gaines v. AT&T Mobility Servs., LLC,*
   424 F. Supp. 3d 1004 (S.D. Cal. 2019) .................................... 10

*Grayson v. K-Mart Corp.,*
   849 F. Supp. 785 (N.D. Ga. 1994) ............................................ *passim*

*Heller v. EBB Auto Co.,*
   8 F.3d 1433 (9th Cir. 1993) ................................................ 4

*Hicks v. Community Educ. Ctrs., Inc.,*
   No. 12-cv-0737-WJM-KMT, 2013 WL 2947933
   (D. Colo. June 14, 2013) .................................................. 15, 16

*Hirst v. Gertzen,*
   676 F.2d 1252 (9th Cir. 1982) .............................................. 14

*Johnson v. Indopco, Inc.,*
   846 F. Supp. 670 (N.D. Ill. 1994) .......................................... 6

*LeBlanc v. Great Am. Ins. Co.,*
   6 F.3d 836 (1st Cir. 1993) ................................................. 13

*LeMons v. Walgreen Pharm. Servs. Midwest, LLC,*
No. 3:21-cv-00511-MO, 2024 WL 3272974 (D. Or. July 1, 2024)...........................4

*Martinez v. Safeway Stores, Inc.,*
66 F.R.D. 446 (N.D. Cal. 1975).............................................................................6

*MCI Commc'ns Corp. v. Am. Tel. and Tel. Co.,*
708 F.2d 1081 (7th Cir. 1983) ..............................................................................14

*Moore v. Donahoe,*
460 F. App'x 661 (9th Cir. 2011) ...........................................................................9

*Munoz v. Nat'l R.R. Passenger Corp.,*
No. CV 15-6309 DMG, 2016 WL 11744436 (C.D. Cal. Nov. 23, 2016) ...............10

*Paglia v. Emeritus Corp.,*
No. C 09-01582 SI, 2009 WL 10695882 (N.D. Cal. Sept. 23, 2009)..........14, 15, 16

*Parapluie v. Mills,*
No. CV 11-02548 MMM, 2012 WL 13009100 (C.D. Cal. Jan. 26, 2012)...............2

*Robinson v. PPG Indus., Inc.,*
No. CV 19-04033 ODW, 2021 WL 4497222 (C.D. Cal. July 23, 2021)................10

*Smith v. N. Am. Rockwell Corp. – Tulsa Div.,*
50 F.R.D. 515 (N.D. Okla. 1970).............................................................................6

*Stoddard v. Ling-Temco-Vought, Inc.,*
513 F. Supp. 314 (C.D. Cal. 1980).........................................................................14

*Thompson v. Sanderson Farms, Inc.,*
No. 3:04CV837BN, 2006 WL 2559852 (S.D. Miss. Sept. 1, 2006).........................6

*Vasquez v. County of Los Angeles,*
349 F.3d 634 (9th Cir. 2003) ..................................................................................9

*Villiarimo v. Aloha Island Air, Inc.,*
281 F.3d 1054 (9th Cir. 2002) ................................................................................4

*Weir v. Litton Bionetics, Inc.,*
No. H-85-2545, 1986 WL 11608 (D. Md. May 29, 1986) ......................................6

*Wynn v. NBC,*
234 F. Supp. 2d 1067 (C.D. Cal. 2002) .............................................................10, 14

*Zucchella v. Olympusat, Inc.,*
No. CV 19-7335 DSF (PLAx), 2023 WL 2633947
(C.D. Cal. Jan. 10, 2023).......................................................................................10

STATUTES

29 U.S.C. § 206(d) (FEDERAL EQUAL PAY ACT).................................................3

42 U.S.C. § 1981....................................................................................................10

42 U.S.C. § 2000e-2 (TITLE VII)........................................................................3, 4

OR. REV. STAT. § 659A.001 .................................................................................4

OREGON EQUALITY ACT .......................................................................................3

Rules

Fed. R. Civ. P. 20 ...................................................................................................................2

Fed. R. Civ. P. 20(a) .............................................................................................................13

Fed. R. Civ. P. 20(a)(1) .........................................................................................................3

Fed. R. Civ. P. 20(a)(1)(b) ...................................................................................................11

Fed. R. Civ. P. 20(b) .............................................................................................................13

Fed. R. Civ. P. 42(b) .............................................................................................................14

Fed. R. Evid. 401 ..................................................................................................................11

Fed. R. Evid. 403 ..................................................................................................................11

Fed. R. Evid. 404 ..................................................................................................................11

Fed. R. Evid. 801(c) ..............................................................................................................11

Or. Admin. R. 839-008-0000 (Oregon Equal Pay Act) .........................................................3

Other Authorities

United States Courts for the Ninth Circuit, Manual of Model Civil Jury Instructions,
    https://www.ce9.uscourts.gov/jury-instructions/node/168 (last accessed October 30,
    2024) ...................................................................................................................................4

# I.    __INTRODUCTION__

NIKE, Inc. ("NIKE") files this motion to sever the Plaintiffs' claims because the allegations giving rise to each of the four individual Plaintiff's claims are independent from the others.  The specifics of each Plaintiff's claims are separate and distinct.  As a matter of law, each requires the trier of fact to weigh the individual facts and circumstances of each Plaintiff's employment, the motivating factors behind each challenged employment action, and the differing consequences of each.  Their claims ***do not*** arise from the "same transaction or occurrence," nor do they raise "common questions of law or fact."  They cannot be joined as a matter of law.

Each of the four individual Plaintiffs allege that she suffered different acts of discrimination (and in the case of Hender only, retaliation) in different ways, by different individuals, and at different times spanning approximately a decade.  They worked in different departments, reported to different managers, and have different alleged comparators.  Different decisionmakers were responsible for the allegedly unlawful acts.  Each individual Plaintiff's claim is a discrete action that must be analyzed—and rises or falls—on its own.

Recognizing the weaknesses in their individual claims, Plaintiffs prefer to combine their four distinct cases into one trial, hoping to convince the trier of fact that four individual claims must mean that discrimination abounds.  A key component of their strategy here:  rely on the "Starfish" questionnaires submitted by other employees, reporting to other managers, and experiencing other alleged wrongdoing to create the illusion that gender bias must have permeated the Plaintiffs' own employment.  But Plaintiffs cannot rely on inadmissible, hearsay character evidence to side-step the fact that their individual claims are unrelated, and without

factual support.[1]

Trial of these discrete and individual claims together as one will serve no purpose other than unnecessary confusion of the issues, and severe, unfair prejudice to NIKE.  For example, if, for the sake of argument, the jury were to find that one of the Plaintiffs was paid less than a male comparator for substantially similar work, it may be more inclined to reach the same conclusion for another of the Plaintiffs, even if the evidence does not support that finding.  Or, if the jury were to find that one individual manager's decision not to promote one Plaintiff was "motivated by" gender, it might improperly assume that another manager working in a different department and during a different period of time was similarly motivated, even if no such evidence was presented.

There is no good reason for this unnecessary confusion of issues and unfair prejudice to NIKE.  That is why courts consistently recognize the "tremendous danger" in multi-plaintiff discrimination cases such as this, where one "plaintiff's unique circumstances could bias the jury against defendant generally, thus prejudicing defendant with respect to the other plaintiffs' claims."  *Parapluie v. Mills*, No. CV 11-02548 MMM (SSx), 2012 WL 13009100, at *6 (C.D. Cal. Jan. 26, 2012) (quoting *Grayson v. K-Mart Corp.*, 849 F. Supp. 785, 790 (N.D. Ga. 1994)). Conversely, there is no corresponding prejudice to each Plaintiff from severance, as it merely ensures she does what the law already requires:  prove whether ***she*** experienced a violation of law.  Severance is warranted in this case, and each plaintiff's case should be tried independently to a separate jury.

---

[1] The inadmissibility of any improper evidence related to the Starfish questionnaires will be the focus of a future motion *in limine*.

II.  **THE FOUR INDIVIDUAL PLAINTIFFS' CLAIMS DO NOT ARISE FROM THE SAME TRANSACTION, OCCURRENCE OR SERIES OF TRANSACTIONS OR OCCURRENCES.**

Under Federal Rule of Civil Procedure, Rule 20, joinder of multiple plaintiffs in one action is proper only if the plaintiffs can demonstrate that they assert claims "with respect to or arising out of the *same transaction, occurrence, or series of transactions or occurrences*" and that "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1) (emphasis added).  If this standard is not met, multiple plaintiffs may not be joined. "The court has discretion to sever misjoined plaintiffs *at any time* on just terms." *Falls v. Desert Palace, Inc.*, No. 2:17-cv-00019-GMN-PAL, 2018 WL 11278578, at *4 (D. Nev. Mar. 15, 2018) (emphasis added).  The Court should do so here.

A.  **The Court Already Concluded There Is No "Common Thread" Connecting The Plaintiffs' Claims.**

*This is not a class action*.  The Court made that decision two years ago.  In fact, in denying Plaintiffs' Motion for Class Certification, the Court specifically concluded that "common questions do not predominate" with respect to the alleged practices challenged by the four individual Plaintiffs.  ECF No. 310 at 56.  For example, the Court found significant "discretion on the part of hiring managers in setting pay, promoting and granting pay increases and bonuses," requiring a "fact intensive and individualized" analysis for each of the named Plaintiffs.  *Id.* at 55.  The Court also concluded that "plaintiffs do not present a common thread as to the reason for the purported discrimination." *Id.* at 54.  As a result, the question for trial here is not whether women, as a group, were paid less than comparable men, promoted less often than comparable men, or channeled into lower level jobs than comparable men.  Rather, the *only* question for trial is whether Ms. Cahill, or Ms. Hender, or Ms. Johnston, or Ms. Elizabeth— individually—experienced a violation of law.

**B.**     **The Elements Required To Prove Plaintiffs' Claims Demonstrate Why Joinder Is Inappropriate.**

The four individual Plaintiffs assert several discrimination-based causes of action: violations of the Federal and Oregon Equal Pay Acts, and violations of Title VII and the Oregon Equality Act (on disparate treatment and disparate impact theories).[2]  Plaintiff Hender also asserts a retaliation claim (though the other three Plaintiffs do not).[3]  Such claims are inherently individualized.  *See LeMons v. Walgreen Pharm. Servs. Midwest, LLC*, No. 3:21-cv-00511-MO, 2024 WL 3272974, at *3 (D. Or. July 1, 2024) ("employment discrimination" claims "by their nature require individualized inquiry").  Proving each of these claims requires an individualized analysis of each specific Plaintiff, their alleged comparators, their jobs, their experience, their performance, and their respective decisionmakers, none of which overlap.

For example, to prevail on their Title VII and Oregon state law disparate treatment claims, each Plaintiff must prove that (1) she suffered an adverse employment action; (2) she was qualified for the role; (3) male employees with similar qualifications were treated more favorably; and (4) her "***sex was a motivating factor***" in the decision.  United States Courts for the Ninth Circuit, Manual of Model Civil Jury Instructions, https://www.ce9.uscourts.gov/jury-instructions/node/168 (last accessed October 30, 2024) (emphasis added); *see also Heller v. EBB Auto Co.*, 8 F.3d 1433, 1437 n.2 (9th Cir. 1993) ("Courts construe Oregon's statutory counterpart . . . as identical to Title VII.").

Each one of these elements requires analysis of evidence related to the specific Plaintiff

---

[2] Cahill does not assert Title VII claims.

[3] Hender is the only plaintiff who brought retaliation claims, which require showing that "1) [s]he engaged in a protected activity; 2) [s]he suffered an adverse employment decision; and 3) there was a causal link between the protected activity and the adverse employment decision." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002); *see also Delima v. Home Depot U.S.A., Inc.*, 616 F. Supp. 2d 1055, 1091 (D. Or. 2008) (*prima facie* case for Oregon state law retaliation claim is the same as Title VII retaliation claim).

at issue.  For example, whether Plaintiff Cahill was qualified for a promotion she sought has no bearing on whether Plaintiff Hender was qualified for a different promotion, and vice versa.  Nor would an analysis of Plaintiff Johnston's alleged comparators in a Business Systems Analyst role impact an analysis of Plaintiff Elizabeth's alleged comparators, who were Apparel Designers.

Perhaps the most critical element—whether "sex was a motivating factor" in the challenged decision—clearly requires analysis of the motivations of the person actually making the decision.  Whether sex was a motivating factor for the individual who decided not to promote Plaintiff Cahill in Marketing is wholly separate and apart from whether sex "motivated" the individual who decided not to promote Plaintiff Hender, who worked in Engineering.  To resolve these claims, the trier of fact must analyze unique events involving each individual Plaintiff, evaluate whether there was any unlawful animus behind each complained-of act, and analyze the consequences of those purportedly discriminatory actions.  Where these decisions are made by different decisionmakers, in different departments, and over different periods of time, they cannot be found to derive from the same "transaction or occurrence" sufficient for joinder.

### C.  Courts Routinely Find Discrimination Claims Inherently Inappropriate For Joinder.

Given the necessarily individualized inquiry inherent to these types of claims, courts routinely hold that multi-party discrimination cases fail to meet the standard for joinder.  For example, in *Bailey v. Northern Trust Co.*, 196 F.R.D. 513 (N.D. Ill. 2000), two plaintiffs sought to jointly bring individual discrimination claims against their employer.  The employer moved to sever, "asserting that the claims arise out of different transactions and occurrences [because each] involve[es] separate and distinct employment decisions."  *Id.* at 515.  The court agreed, holding that the two plaintiffs' individual employment experiences did not constitute a single "transaction or occurrence," as required for joinder.  *Id.* at 516.  Importantly, the court so held

even though the plaintiffs argued the "single transaction or occurrence" was the employer's bias against people of their race—much like Plaintiffs' assertion that NIKE (despite each Plaintiff's allegations involving different decisionmakers) is "biased" against women. *Id.* at 515-16.  The court in *Bailey* flatly rejected this argument, holding that "litigation of even any purported general policy of defendant, as it might affect each plaintiff here, would inevitably focus in detail on the separate work histories of each plaintiff . . . [which] do not constitute one logical transaction or occurrence or series of transactions or occurrences for purposes of [joinder]."). *Id.* at 517 (citation omitted).

Numerous cases recognize that disparate treatment claims present necessarily individualized inquiries and thus arise from distinct "transactions or occurrences." *See, e.g.*, *Martinez v. Safeway Stores, Inc.*, 66 F.R.D. 446, 448-49 (N.D. Cal. 1975) (rejecting claim that two truck drivers could join as plaintiffs in a single discrimination action because "each plaintiff's situation would have to be considered in detail" to determine whether discrimination occurred); *Thompson v. Sanderson Farms, Inc.*, No. 3:04CV837BN, 2006 WL 2559852, at *3 (S.D. Miss. Sept. 1, 2006) (joinder of plaintiffs improper where they alleged disparate treatment race discrimination claims, including for failure to promote); *Grayson*, 849 F. Supp. at 789 (joinder improper where plaintiffs alleged discriminatory demotions); *Johnson v. Indopco, Inc.*, 846 F. Supp. 670, 676 (N.D. Ill. 1994) (denying joinder where current employee claimed race discrimination in denial of promotion, former employee claimed that sexual harassment and race motivated denial of promotion, and claims arose at different times); *Weir v. Litton Bionetics, Inc.*, No. H-85-2545, 1986 WL 11608, at *5-7 (D. Md. May 29, 1986) (severing claims of two age discrimination plaintiffs who were terminated at different times and worked in two divisions that operated independently of one another); *Smith v. N. Am. Rockwell Corp. – Tulsa Div.*, 50

F.R.D. 515, 521-22, 524 (N.D. Okla. 1970) ("Whether a defendant unlawfully discriminated against one plaintiff with respect to promotion or job assignment in a given department is not common with the question whether defendant unlawfully discriminated against another plaintiff in a separate department" noting that plaintiffs "have attempted to join in one action what are in reality four separate lawsuits arising out of four separate series of transactions or occurrences involving four disparate sets of facts").

**D.     The Four Individual Plaintiffs' Claims Derive From Separate Transactions Or Occurrences.**

Here, too, each individual Plaintiff's claims are based on separate transactions or occurrences. For example:

- **Different job requirements and qualifications.** The four individual Plaintiffs worked in four different departments: Marketing, Business Technology, Design, and Engineering. Whether a particular Plaintiff met the job requirements for an allegedly denied promotion, or where their skills and expertise placed them within the starting salary range, are questions central to each individual Plaintiff's claims, but do not overlap with one another. Not only do the jobs vary greatly, but the individual Plaintiffs each present a unique background, with, for example, different levels of experience, education, and job histories. Some may have been qualified for the jobs they sought, while others were not. The trier of fact must make these assessments separately and independently for each Plaintiff.

- **Different promotions.** Because they worked in different departments and held different jobs, the four individual Plaintiffs allege interest in different positions for which they claim they were denied promotions. Thus, several distinct, individualized employment actions are at issue. Some Plaintiffs contend they applied for, but were not hired to, posted job opportunities. These claims will require analysis of the individuals who were selected, the skills

and expertise of the individual Plaintiff, and the motivations of the decisionmakers (who do not overlap between Plaintiffs).  Other Plaintiffs maintain that they should have been promoted to roles that were not posted—and to which they did not apply.  Such decisions require a separate analysis, which also includes the motivation of each distinct decisionmaker.  The alleged promotion practices, qualifications, circumstances, and decisionmakers vary from one Plaintiff to the next.

- **Different time periods.**  The relevant timeframes for Plaintiffs' claims—namely the dates they spent as fulltime employees at NIKE—vary by several years:  Johnston (2010-2017), Cahill (2013-2017), Hender (2015-2020), Elizabeth (2017-2018).[4]  This is relevant not only because the individuals making the challenged decisions varied, but any relevant practices or guidelines likely varied as well.  For example, while the four individual Plaintiffs generally complain about their starting pay, those decisions were made over a seven-year period:  2010 to 2017.

- **Different evidence.**  The evidence presented at trial for each individual Plaintiff will differ according to their specific allegations, employment history, experience, jobs sought, and application and interview processes that relate to them.  Each Plaintiff complains of alleged discriminatory animus from different individual decisionmakers, in situations unique to each Plaintiff.  There will be numerous non-overlapping witnesses as Plaintiffs do not allege a common decisionmaker.  Similarly, the Plaintiffs allege a unique group of male comparators for each of their specific claims, which also do not overlap.

The only common thread here is that Plaintiffs complain about pay and promotions (or

---

[4] Although the four individual Plaintiffs worked for NIKE over many years, NIKE maintains that adverse actions that allegedly occurred before the applicable statute of limitations are time barred.  NIKE will bring a motion *in limine* on this point at the appropriate time.

lack thereof).  While they style these allegations in identical terms, there can be no meaningful dispute that adjustments to one individual's compensation based on her specific qualifications and job duties, or the decision to promote based on one's specific performance and work during a given year, are decisions unique to that particular person.  *See Bailey*, 196 F.R.D. at 517 ("[L]itigation of even any purported general policy of defendant, as it might affect each plaintiff here, would inevitably focus in detail on the separate work histories of each plaintiff.") (citation omitted).  That is particularly the case—as here—where the alleged decisionmakers lack any common thread.

Plaintiffs' claims are necessarily individualized, based on particular facts and experiences each alleges.  Such disparate allegations fail the "same transaction or occurrence" test.

### E.    Plaintiffs' Expected Reliance On "Starfish" Also Does Not Support Joinder.

Plaintiffs likely will argue that the "Starfish" questionnaires support joinder, but their arguments only demonstrate the extreme prejudice that will result and why NIKE believes that the questionnaires should not be admitted in any of the four Plaintiffs' trials (which will be briefed, in due course).  Because none of the four individual Plaintiffs completed a questionnaire, they do not offer direct evidence supporting any of the four Plaintiffs' claims.  Rather, at best, they are offered as "me too" evidence, which must be carefully scrutinized before admission before the trier of fact.  Similarly, trial of all four Plaintiffs together would essentially permit scores of "me too" evidence, which is improper where, as here, the individuals are not "similarly situated."  *See Moore v. Donahoe*, 460 F. App'x 661, 663 (9th Cir. 2011) ("The evidence was properly excluded because the [me-too] employees were not similarly situated individuals.") (citing *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003).

When determining if "me too" evidence is "similarly situated" to the claims of a plaintiff, courts consider whether the employees worked with or under the same supervisors and whether

the actions were made by the same decisionmakers.  *See, e.g.*, *Zucchellav. Olympusat, Inc.,* No. CV 19-7335 DSF (PLAx), 2023 WL 2633947, at *21 (C.D. Cal. Jan. 10, 2023) ("That these witnesses were supervised by Mohler, reported directly to Mohler, or otherwise worked closely with Mohler is sufficient to find that they were similarly situated."); *Munoz v. Nat'l R.R. Passenger Corp.*, No. CV 15-6309 DMG (JEMX), 2016 WL 11744436, at *4, n.1 (C.D. Cal. Nov. 23, 2016) (finding "the decision-makers who terminated [me too witness] are the same as those who terminated [the plaintiff]"; "[T]he Court is sensitive to and disinclined to admit me-too evidence which is remote in time or ***involves decision-makers different from those in this case.***") (emphasis added).  Moreover, the ***type*** of discrimination alleged in the "me too" complaints must mirror that alleged by the plaintiffs.  *See, e.g.*, *Robinson v. PPG Indus., Inc.*, No. CV 19-04033 ODW (RAOx), 2021 WL 4497222, at *5 (C.D. Cal. July 23, 2021) (understanding "me too" evidence to mean other complaints of the type of discrimination alleged by a plaintiff); *Gaines v. AT&T Mobility Servs., LLC*, 424 F. Supp. 3d 1004, 1017 n.5 (S.D. Cal. 2019) (noting that "me too" evidence of sexual harassment would be inadmissible to support a Section 1981 retaliation claim).

       "Me too" evidence is improper for obvious but important reasons.  The trier of fact should not be swayed by allegations of animus by individuals who played no role in the challenged employment decision, or by alleged "bad acts" unrelated to the plaintiff's claims. Such evidence poses an extreme risk that the ultimate decision will be based on the alleged "character" of the organization, rather than the motivations of the actual decisionmakers responsible for the specific claims alleged.  This is also exactly why unrelated discrimination claims should not be joined.  *See Wynn v. NBC*, 234 F. Supp. 2d 1067, 1089 (C.D. Cal. 2002) ("In fact, if Plaintiffs' complaint is any indication, their intention is precisely to use alleged

ageist remarks from one [person] to inculpate [others] who made no such remarks, which is exactly the type of conduct that warrants severance."); _Bhaya v. Westinghouse Elec. Corp._, 922 F.2d 184, 188 (3d Cir. 1990) ("Evidence that a party committed wrongs other than those at issue in a case often creates a danger of 'unfair prejudice' because such evidence may influence a jury to return a verdict based on a desire to punish for the other wrongs.").

Here, none of these "me too" factors are present, and certainly they are not present across all four individual Plaintiffs.  The majority of the Starfish questionnaires are **not** of "the same kind" as the four Plaintiffs' claims because they do not allege pay or promotion issues.  Those few questionnaires that do address pay or promotion claims rarely indicate the supervisor or decisionmakers involved in any of the allegedly biased decisions, making it impossible to determine if they involved the same individuals—or even occurred within the same departments—as the four individual Plaintiffs.  They do **not** provide evidence that any of the individual Plaintiffs have claims that arise from the same occurrence or transaction.[5]

## III.    THE FOUR INDIVIDUAL PLAINTIFFS' CLAIMS DO NOT INVOLVE A COMMON QUESTION OF LAW OR FACT.

Even if the four Plaintiffs could establish that their claims arise from the same transaction or occurrence, they also must show that the action involves a common question of law or fact. _See_ Fed. R. Civ. P. 20(a)(1)(b).  "[T]he mere fact that all Plaintiffs' claims arise under the same general law does not necessarily establish a common question of law or fact."  _Coughlin v._

---

[5] Not only are the Starfish questionnaires improper "me too" evidence that do not meet the standard for joinder, as NIKE will argue in its upcoming motion _in limine_, the Starfish questionnaires should be excluded because they are not relevant as a matter of law, constitute improper character evidence, are substantially more prejudicial than probative, and are hearsay. _See_ Fed. R. Evid. 401, 403, 404, 801(c).  They also will require the Court to hold dozens of mini-trials, as NIKE would be entitled to rebut allegations contained in the questionnaires, calling dozens of extraneous witnesses unrelated to the four Plaintiffs' claims simply to rebut the oftentimes anonymous and unsupported allegations.  For all of these reasons, they do not support joinder of the four individual Plaintiffs' claims.

Page 11  NIKE'S MOTION TO SEVER, OR IN THE ALTERNATIVE, SEPARATE PLAINTIFFS' CLAIMS FOR TRIAL

*Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997).  Rather, claims are not properly joined where each is based on "discrete" facts with "different legal issues." *Id.*  Likewise, where plaintiffs' "claims require significant 'individualized attention,' they do not involve 'common questions of law or fact.'" *Coalition for a Sustainable Delta v. U.S. Fish & Wildlife Serv.*, No. 1:09-CV-480 OWW GSA, 2009 WL 3857417, at *7 (E.D. Cal. Nov. 17, 2009) (quoting *Coughlin*, 130 F.3d at 1351); *see also Fleming v. Home Depot U.S.A., Inc.*, No. 96-6560-CIV, 1998 WL 1674544, at *3 (S.D. Fla. July 8, 1998) (finding no common questions of law or fact in multi-plaintiff discrimination case because each plaintiff's claim was "based upon separate acts of the Defendant with respect to each Plaintiff").

The Court already concluded that Plaintiffs failed to establish that their claims present a common question of law or fact.  In denying Plaintiffs' Motion for Class Certification, the Court noted at least four times that Plaintiffs failed to demonstrate that such common questions exist. *See* ECF No. 310 at 46 ("Plaintiffs **fail to establish a common question of law or fact** capable of class-wide resolution for starting pay and their disparate impact claims."), 48-49 ("the discretion afforded managers with little upper management involvement is **insufficient to present a common question** that will resolve an issue relative to the entire class"), 50 ("presence of centralized guidelines along with discretion is **insufficient to present a common question**"), 56 ("**common questions do not predominate**") (emphasis added).[6]

---

[6] The Court also noted in denying Plaintiffs' Motion for Class Certification, "the evidence presented [on starting pay] does not tip the scales in favor of a class-wide policy, rather it demonstrates that hiring managers possessed significant discretion. . . .  The record does not demonstrate a centralized decisionmaker(s) inserting themself into the hiring decision to adjust the offer to align with prior pay."  ECF No. 310 at 39-40.  Regarding pay increases and bonuses, the Court noted, "managers had considerable discretion and could adjust the pay percentage to accommodate different employees with lower base pay in the same CFE rating." *Id.* at 48.  Regarding promotions, "the discretion afforded managers with little upper management involvement is insufficient to present a common question that will resolve an issue relative to the

None of the four Plaintiffs' claims present a common question of law or fact.  To the contrary, resolution of their claims requires evaluating individual decisions and motivating animus (or lack thereof) by various decisionmakers over a decade.  The claims of each individual Plaintiff here require individualized attention.  *See Aragon v. Republic Silver State Disposal Inc.*, *292 F.3d 654, 663 n.6 (9th Cir. 2002)* (quoting *LeBlanc v. Great Am. Ins. Co.*, *6 F.3d 836, 848-49 (1st Cir. 1993)* ("in disparate treatment cases, the central focus is less whether a pattern of discrimination existed [at the company] and more how a particular individual was treated and why") (alteration in original).  Their claims are based on a variety of facts unique to each Plaintiff, which are not suited to be heard together.  *See DeFrancesco v. City of Mt. Angel*, *No. CV-00-480-ST, 2000 WL 1060661, at \*1-2 (D. Or. July 14, 2000)* (bifurcating plaintiffs' claims for trial where there was "little likelihood that a common question of fact or law sufficient to sustain joinder of these claims [would] emerge in the prosecution of this action"; "the circumstances surrounding [plaintiffs] terminations [were] separate and distinct" because they "were terminated at different times based upon different factual circumstances").

## IV.     ALLOWING PLAINTIFFS TO PROCEED TOGETHER AT TRIAL WILL RESULT IN JURY CONFUSION AND SEVERELY PREJUDICE NIKE.

Even assuming, *arguendo*, the Court found that the requirements of Rule 20(a) were met, because joinder is not mandatory, the Court retains the ability to separate the parties' claims for trial.  *See* Fed. R. Civ. Proc. 20(b) ("[t]he court may issue orders—including an order for separate trials—to protect a party against embarrassment, delay, expense, or other prejudice").  "It is well settled that a trial judge has the right within his [or her] discretion to order separate

---

entire class."  *Id.* at 48-49.  Finally, with respect to initial job assignments, "[t]o the extent that hiring managers tend to deny applications from women for the higher-level jobs in favor of men, that is again a function of discretion that does not involve the application of any required company policy or upper management."  *Id.* at 50.

trials in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." *Stoddard v. Ling-Temco-Vought, Inc.*, 513 F. Supp. 314, 327 (C.D. Cal. 1980). Federal Rule of Civil Procedure 42(b) states: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). "Courts consider several factors in determining whether separate trials are appropriate, including convenience, prejudice, judicial economy, and separability of the issues." *Paglia v. Emeritus Corp.*, No. C 09-01582 SI, 2009 WL 10695882, at *3 (N.D. Cal. Sept. 23, 2009) (citing *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982)). However, the Court need only find that "one of these conditions . . . be met" to order separate trials. *MCI Commc'ns Corp. v. Am. Tel. and Tel. Co.*, 708 F.2d 1081, 1166 (7th Cir. 1983).

Courts have consistently held that allowing multiple discrimination plaintiffs to proceed in a single action is prejudicial to the defendant, as it permits multiple witnesses to testify about their own experiences, even if unrelated. The collective "piling on" effect is prejudicial to a defendant, resulting in an improper "guilt by association." *See Coleman v. Quaker Oats*, 232 F.3d 1271, 1296 (9th Cir. 2000) (holding that "even the strongest jury instructions could not . . . dull[] . . . the potential prejudice to [the defendant created by] a parade of witnesses, each recounting his contention that [the] defendant [had discriminated against him] because of his age.") (citation omitted); *Wynn*, 243 F. Supp. 2d at 1089 ("Severance is also appropriate here for the more compelling reason of preventing unfair prejudice to Defendants that would inevitably result if all of Plaintiffs' claims were litigated in one lawsuit. As the case is currently configured, there is a substantial risk that [a defendant] will be tainted by the alleged misdeeds of another, unfairly resulting in guilt by association."); *Grayson*, 849 F. Supp. at 790 (severing age

discrimination case because failure to do so could result in "tremendous danger that one . . . plaintiff's unique circumstances could bias the jury against defendant generally, thus, prejudicing defendant with respect to the other plaintiffs' claims.").

The ruling in *Hicks v. Community Education Centers, Inc.*, No. 12-cv-0737-WJM-KMT, 2013 WL 2947933 (D. Colo. June 14, 2013), is persuasive. There, two plaintiffs brought sex-based claims for failure to promote and hostile work environment against their former employer. *See id.* at *1. The plaintiffs had the same "ultimate supervisor" and one of the same alleged harassers. *See id.* Despite this overlap, "the Court [found] that the differences in Plaintiffs' claims predominate[d] over the commonalities." *Id.* Namely, the plaintiffs, like those here, "were not applying for the same position or even the same type of position." *Id.* Also, one of the plaintiffs had a retaliation claim, while the other did not. *See id.* The court found that despite some overlap in the plaintiffs' claims, trying their cases together "would unfairly prejudice Defendant." *Id.* at *2.

Similarly, in *Paglia*, the court granted the defendant's motion for separate trials for the three plaintiffs who alleged they were terminated after filing internal grievances about the conditions of the residential assisted living facilities at which they worked. *See Paglia*, 2009 WL 10695882, at *1, 4. Although there was some overlap between the plaintiffs' claims and the witnesses and evidence needed to prove those claims, the court found that separate trials were appropriate to "prevent jury confusion and prejudice to defendant that would result from the volume of testimony that would need to be presented at a joint trial." *Id.* Also, despite the overlap in legal theories, "the issues are easily separable because each plaintiff will rely on a different set of facts that occurred at a different time." *Id.* Finally, because one of the *Paglia* plaintiffs had claims that were uncommon to the other plaintiffs, the court said they "would be

better tried separately." *Id.*

Here, while the four Plaintiffs bring gender-based pay and promotion discrimination claims, Plaintiffs present no evidence that the various underlying decisions or motivations as to one of them impacted or contributed to the underlying decisions or motivations as to the rest. The initial jobs and promotions each Plaintiff sought differ. The decisions underlying their pay vary. The managers evaluating their contributions and performance do not overlap. Plaintiff Hender has a retaliation claim; the others do not. In *Hicks*, the plaintiffs had the same manager, yet the court still found that trying their claims together would result in prejudice. The same result should follow here.

Holding a single trial here significantly increases the chances that the allegations concerning one Plaintiff's claims will be mixed up or confused with the allegations concerning other Plaintiffs' claims. A single trial would require the jury to keep a separate record of each of the four individual Plaintiffs' unique facts, including her work history, supervisors, any comparator employees, the motivation for any pay disparity a Plaintiff might have face, and any promotion she did not receive. Under such a scenario, the relative weakness of each Plaintiff's individual case will be obscured by the cumulative effect of the evidence concerning the other Plaintiffs' claims. Jurors may conclude that one Plaintiff has a stronger case than the others and allow such opinions to cloud their judgment as to the weaker cases. For example, the jury could mistakenly conflate various Plaintiffs' evidence and claims, no matter how clear any limiting instructions may be, resulting in a finding of discrimination where a particular Plaintiff's evidence does not, on its own, satisfy the applicable standards of proof. Without severing, the jury is also likely to impute one decisionmaker's actions, with respect to one Plaintiff, to a different decisionmaker with respect to an entirely different Plaintiff and position. Each scenario

unfairly prejudices NIKE and has the potential to alter the burden of proof required of Plaintiffs.

In contrast, "[n]o prejudice can result to each plaintiff if each claim is tried separately" because each Plaintiff has an obligation to prove that **she** experienced a violation of law. *Grayson*, 849 F. Supp. at 790-91 (citation omitted) (severing age discrimination case because failure to do so could result in "tremendous danger that one . . . plaintiff's unique circumstances could bias the jury against defendant generally, thus, prejudicing defendant with respect to the other plaintiffs' claims").  As the *Grayson* court aptly explained, "[e]ach plaintiff must prove liability . . . with respect to [her].  It is precisely this need to focus . . . on the merits of each individual plaintiff's case that counsels against proceeding with these cases in one consolidated trial." *Id.* at 790; *see also Fleming*, 1998 WL 1674544, at *3-4 (granting motion for separate trials in view of the "risks of prejudice and possible confusion," which the court found "more than offset" any "possible benefits to be derived from a common trial" in a multi-plaintiff discrimination case).  Because the potential inconvenience or expense of separate trials does not outweigh the potential for jury confusion and extreme prejudice to NIKE if Plaintiffs' claims are tried together, this Court should order Plaintiffs' claims to be tried separately.[7]

## V.    <u>CONCLUSION</u>

For the foregoing reasons, and to prevent a miscarriage of justice, NIKE respectfully requests the Court grant its motion to sever or, in the alternative, separate the Plaintiffs' claims for trial.

---

[7] Trial is currently scheduled to begin on March 10, 2025 and last three weeks.  Severing Plaintiffs' claims for trial is convenient and promotes judicial economy because each Plaintiff's trial can be scheduled back-to-back for a few days during this timeframe.

Date:  November 1, 2024

/s/ Felicia A. Davis
DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
LINDSEY C. JACKSON, Cal. SB# 313396 (*pro hac vice*)
lindseyjackson@paulhastings.com
ALYSSA K. TAPPER, Cal. SB# 324303 (*pro hac vice*)
alyssatapper@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Laura E. Rosenbaum, OSB No. 110061
laura.rosenbaum@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480