LAURA E. ROSENBAUM, OSB No. 110061
laura.rosenbaum@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

DANIEL PRINCE (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS (*pro hac vice*)
feliciadavis@paulhastings.com
LINDSEY C. JACKSON (*pro hac vice*)
lindseyjackson@paulhastings.com
ALYSSA K. TAPPER (*pro hac vice*)
alyssatapper@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California 90071-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

Attorneys for Defendant NIKE, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL and SARA JOHNSTON, individually and on behalf of others similarly situated,<br><br>            Plaintiffs,<br><br>     v.<br><br>NIKE, INC., an Oregon corporation,<br><br>            Defendant. | Case No.: 3:18-cv-01477-AB<br><br>**DEFENDANT NIKE, INC.'S REPLY IN SUPPORT OF MOTION TO SEVER OR, IN THE ALTERNATIVE, SEPARATE PLAINTIFFS' CLAIMS FOR TRIAL**<br><br>**ORAL ARGUMENT REQUESTED** |

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................ 1

II. PLAINTIFFS' CLAIMS DO NOT ARISE FROM THE SAME TRANSACTION OR OCCURRENCE ......................................................................................................... 2

    A. The Same Transaction Or Occurrence Analysis Does Not Differ For Pattern Or Practice Claims. ................................................................................. 2

    B. The Court's Class Certification Ruling Is Persuasive ........................................ 7

    C. Plaintiffs Cannot Rely On "Me Too" Evidence To Support Joinder ................ 10

III. PLAINTIFFS' CLAIMS DO NOT INVOLVE A COMMON QUESTION OF LAW OR FACT ............................................................................................................. 12

IV. PLAINTIFFS UNCONVINCINGLY ARGUE THAT TRYING THE PLAINTIFFS' CLAIMS TOGETHER WILL NOT RESULT IN UNFAIR PREJUDICE OR JURY CONFUSION BECAUSE THERE ARE COMMON QUESTIONS OF LAW AND FACT ................................................................................ 13

V. CONCLUSION ............................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aragon v. Republic Silver State Disposal Inc.*,
  292 F. 3d 654 (9th Cir. 2002) ................................................................................. 2, 3, 13

*Biglow v. Boeing Co.*,
  201 F.R.D. 519 (D. Kan. 2001) ........................................................................................ 6

*Byers v. Illinois State Police*,
  No. 99 C 8105, 2000 WL 1808558 (N.D. Ill. Dec. 6, 2000) ............................................ 3

*Carrero v. CSL Plasma, Inc.*,
  No. 1:21-cv-00228-AA, 2024 WL 4458558 (D. Or. Oct. 10, 2024) ................................ 7

*Coalition for a Sustainable Delta v. U.S. Fish & Wildlife Serv.*,
  No. 1:09-CV-480 OWW GSA, 2019 WL 3857417 (E.D. Cal. Nov. 17, 2009) ............. 13

*Coleman v. Quaker Oats Co.*,
  232 F.3d 1271 (9th Cir. 2000) ....................................................................................... 14

*Coughlin v. Rogers*,
  130 F. 3d 1348 (9th Cir. 1997) ................................................................................ 12, 13

*DeFrancesco v. City of Mt. Angel*,
  No. CV-00-480-ST, 2000 WL 1060661 (D. Or. July 14, 2000) .................................... 13

*Fleming v. Home Depot U.S.A., Inc.*,
  No. 96-6560-CIV, 1998 WL 1674544 (S.D. Fla. July 8, 1998) .................................... 13

*Grayson v. K-Mart Corp.*,
  849 F. Supp. 785 (N.D. Ga. 1994) ...................................................................... 4, 14, 15

*Hurley v. Atlantic City Police Dep't*,
  174 F.3d 95 (3rd Cir. 1999) ........................................................................................... 14

*Johnson v. Indopco, Inc.*,
  846 F. Supp. 670 (N.D. Ill. 1994) .................................................................................... 8

*Mosley v. General Motors Corp.*,
  497 F.2d 1330 (1974) ...................................................................................................... 6

*Robinson v. Geithner*,
  No. 1:05-cv-01258-LJO-SKO, 2011 WL 66158 (E.D Cal. Jan. 10, 2011) ...................... 5

*Smith v. North Am. Rockwell Corp.*,
  50 F.R.D. 515 (N.D. Okla. 1970) ........................................................................ 2, 8, 12

*Todd v. Tempur-Sealy Int'l, Inc.*,
  No.13-cv-04984-JST, 2017 WL 2840272 (N.D. Cal. June 30, 2017) ............................. 7

*Visendi v. Bank of Am., N.A.*,
  733 F.3d 863 (9th Cir 2013) ............................................................................................ 8

*Weir v. Litton Bionetics, Inc.*,
 No. H-85-2545, 1986 WL 11608 (D. Md. May 29, 1986) ...................................................... 8
*Wynn v. NBC, Inc.*,
 234 F. Supp. 2d 1067 (C.D. Cal. 2002) ............................................................................ 3, 4, 5

**STATUTES**

42 U.S.C. § 1981 (SECTION 1981) .................................................................................................. 2
42 U.S.C. § 2000e-2 (TITLE VII) ..................................................................................................... 2

**RULES**

FED. R. CIV. P. 20(a) .................................................................................................................. 6, 7
FED. R. CIV. P. 23(b) ...................................................................................................................... 7
FED. R. EVID. 403 ......................................................................................................................... 14

I. **INTRODUCTION**

Plaintiffs' Opposition demonstrates exactly why severance of the four Plaintiffs' individual claims is not only appropriate, but vital. Plaintiffs intend to try this case as a class action. It is not one. And class evidence is not appropriate. The four individual Plaintiffs' claims require the fact finder to determine whether any Plaintiff—*herself*—experienced unlawful discrimination. In so doing, the judge or jury must decide whether the Plaintiffs' individual managers—who do not overlap—made decisions regarding their employment that were motivated by sex. These individual claims do not arise from the "same transaction or occurrence" or raise "common questions of law or fact." Plaintiffs instead intend to improperly rely on evidence of alleged harms done to others (with no tie to their own facts), and seek to set aside the individual legal burden imposed on each Plaintiff. That is improper and, alone, supports severance.

Plaintiffs purport to describe the supposed "common evidence" they will present at trial, but common evidence is not the standard for joinder.[1] And the allegedly "common evidence" asserted by Plaintiffs shows the prejudice that will result if their claims are not severed. Plaintiffs make clear that each one plans to rely on the alleged treatment of "others"—either the other three Plaintiffs or other individuals related to the "Starfish" questionnaires—to prove their own claims. But discrimination claims do not rise or fall based on the experiences of "others," and permitting individual claims to be tried in this way risks confusion by the jury and prejudice to NIKE. It is for this reason that courts routinely sever individual discrimination claims, as requested here.

Plaintiffs do not demonstrate that their individual claims are based on the same

---

[1] The "common evidence" primarily consists of documents Plaintiffs had access to during their class certification briefing.

Page 1 NIKE'S REPLY IN SUPPORT OF MOTION TO SEVER, OR IN THE ALTERNATIVE, SEPARATE PLAINTIFFS' CLAIMS FOR TRIAL

transaction or occurrence, or present any common questions of law or fact, required for joinder of individual claims. Plaintiffs want to stand as a single unit because they feel that they must. They need the trier of fact to ignore their lack of evidence of discriminatory intent and to assume that because four former employees accuse NIKE of discrimination, it must be so. This is inconsistent with the law. NIKE's motion to sever should be granted.

## II.   PLAINTIFFS' CLAIMS DO NOT ARISE FROM THE SAME TRANSACTION OR OCCURRENCE

### A.   The Same Transaction Or Occurrence Analysis Does Not Differ For Pattern Or Practice Claims.

Multi-party discrimination cases, like this one, often fail the transactional relatedness prong because each employee's claim of mistreatment is a discrete employment action, which focuses on *that* employee's particular circumstances. This is true even when the plaintiffs' theory of recovery relates to an allegedly common policy or practice:

> ***[L]itigation of even any purported general policy of defendant as it might affect each plaintiff here, would inevitably focus in detail on the separate work histories of each plaintiff.*** On its face it would be practically impossible to litigate fairly and efficiently in one lawsuit all of the factual and legal issues which the present plaintiffs seek to raise. It would be unnecessarily burdensome and time-consuming for all the parties to do so. The determination of facts and scope of testimony, and defenses relating thereto with respect to one plaintiff would have little relevance to issues raised by another plaintiff. Instead, there would be an evaluation of the administration of varying company rules by different supervisory personnel in different departments all in the context of dissimilar job functions. Such assessment would require a most precise and careful weighing of individual motives within quite different contexts.

*Smith v. North Am. Rockwell Corp. – Tulsa Div.*, 50 F.R.D. 515, 522 (N.D. Okla. 1970) (emphasis added) (severing plaintiffs' claims, which had originally been brought as a putative class action on Title VII and Section 1981 claims). At trial, Plaintiffs' individual claims require individualized attention because "in disparate treatment cases, the central focus is less whether a pattern of discrimination existed . . . and more how a particular individual was treated and why."

Page 2 NIKE'S REPLY IN SUPPORT OF MOTION TO SEVER, OR IN THE ALTERNATIVE, SEPARATE PLAINTIFFS' CLAIMS FOR TRIAL

*Aragon v. Republic Silver State Disposal Inc.*, 292 F. 3d 654, 663 n.6 (9th Cir. 2002) (internal quotation marks and citation omitted).

Plaintiffs argue that their supposed "pattern or practice" claims set this case apart. Not so. Here, each individual Plaintiff alleges "a different factual basis for how that alleged discrimination affected each of them." *Wynn v. NBC, Inc.*, 234 F. Supp. 2d 1067, 1085 (C.D. Cal. 2002). *Wynn*, cited by NIKE in its opening brief and ignored by Plaintiffs, is instructive. The *Wynn* plaintiffs were 50 former or current television writers with "different background in terms of qualifications and experience." *Id.* at 1074. They worked for a variety of television programs spanning several genres, yet they alleged "a pattern or practice of age discrimination in the television industry." *Id.* In determining whether the claims of the 50 different plaintiffs arose from the "same transaction or occurrence," the court considered: (1) "whether the discrimination took place at roughly the same time"; (2) whether the discrimination "involved the same people"; (3) "whether there is a relationship between the discriminatory action[s]"; (4) "whether the discriminatory action[s] involved the same supervisor or occurred within the same department"; and (5) "whether there is a geographic proximity between the discriminatory actions." *See id.* at 1087 (quoting *Byers v. Illinois State Police*, No. 99 C 8105, 2000 WL 1808558, at *4 (N.D. Ill. Dec. 6, 2000).

In *Wynn*, the court severed the claims even though Plaintiffs presented evidence related to a "pattern or practice" of discrimination. In explaining why, the court found highly persuasive the fact that the plaintiff ***did not*** allege "the same decision-maker[s] . . . discriminated against [multiple] Plaintiffs over a short time frame," but rather, over two decades "multiple decision-makers . . . discriminated against multiple Plaintiffs." *Id.* at 1086. The *Wynn* court continued, "litigation of even any purported general policy of defendant, as it might affect each plaintiff

Page 3 NIKE'S REPLY IN SUPPORT OF MOTION TO SEVER, OR IN THE ALTERNATIVE, SEPARATE PLAINTIFFS' CLAIMS FOR TRIAL

here, would inevitably focus in detail on the separate work histories of each plaintiff." *Id. at 1087* (quoting *Grayson v. K-Mart Corp.*, 849 F. Supp. 785, 788 (N.D. Ga. 1994).

*Wynn*'s analysis is applicable here, and the factors clearly favor severance. While the individual Plaintiffs allege a company-wide pattern or practice of gender discrimination in pay, performance and promotions, even if such a pattern or practice existed (which NIKE expressly denies), each pay, performance, and promotion decision involves different decisionmakers, working in different departments, across different time periods.

- **Different Time Periods:** The Plaintiffs' claims allegedly arose over different time spans: Johnston (2010-2017), Cahill (2013-2017), Hender (2015-2020), and Elizabeth (2017-2018). There is a ***ten-year gap*** between Johnston's hire in 2010 and Hender's resignation in 2020, and a seven-year gap between the first and last dates of hire—one of the key employment events challenged by each Plaintiff.

- **Different Decisionmakers:** Plaintiffs allege discrimination in starting pay (again, over a seven-year period), but they each had different hiring managers who each made different, independent starting pay decisions. *See* ECF No. 310 at 44 ("The evidence supports a finding that hiring managers exercised discretion and determined what factors to apply in setting starting pay."). Plaintiffs also claim they were discriminated against in pay increases, bonuses, performance reviews, and promotions, but—again—each of these employment decisions were made by their individual managers, who did not overlap. *See id.* at 55 ("the evidence establishes discretion on the part of hiring managers in setting pay, promoting, and granting pay increases and bonuses").

- **No Relationship Between The Alleged Actions:** There is no relationship between the alleged discriminatory actions suffered by each Plaintiff. It is undisputed that

Page 4 NIKE'S REPLY IN SUPPORT OF MOTION TO SEVER, OR IN THE ALTERNATIVE, SEPARATE PLAINTIFFS' CLAIMS FOR TRIAL

during that ten-year window, multiple and different decisionmakers made multiple and different hiring, pay, performance review, and promotion decisions. Because they worked in different departments, held different jobs, applied for or expressed interest in different positions, and had different managers and comparators, each alleged discriminatory act is separate and distinct. Like in *Wynn*, Plaintiffs present no evidence of concerted action or common decisionmaker.[2]

- **Different Supervisors And Departments:** This factor easily supports severance. None of the Plaintiffs worked for the same NIKE supervisor or in the same NIKE department. They held different roles at NIKE, including working at different levels of the organization. Each possessed different education and experience before NIKE. The only similarity is the fact that they signed up for this lawsuit.

- **Lack Of Geographic Proximity:** While each of the four Plaintiffs worked at NIKE's "World Headquarters" in Beaverton, Oregon, this is an extremely large campus, with more than 70 different buildings across more than 280 acres. The Plaintiffs worked in different buildings and did not interact.

Taken together, the four individual Plaintiffs do not allege claims that "satisfy the same transaction or occurrence requirement." *Wynn*, 234 F. Supp. 2d at 1088.

Plaintiffs do not dispute the accuracy of these facts—they just ignore them and hope that

---

[2] Plaintiffs allege that "[t]he same HR department, overseen by Matheson, disregarded each of their complaints." ECF No. 555 at 24. First, this is false. Only three of the Plaintiffs claim to have raised concerns to HR, and Ms. Matheson was named the CHRO in July 2017, after most of the alleged concerns were raised. Second, even if Plaintiffs' contentions are true, where "[t]he incidents of alleged discrimination do not stem from the application or the implementation of a particular policy" and the "complained of conduct is distinct with regard to each claim," Plaintiffs' claims cannot pass the transactional relatedness test. *Robinson v. Geithner*, No. 1:05-cv-01258-LJO-SKO, 2011 WL 66158, at *8 (E.D Cal. Jan. 10, 2011). In other words, the fact that the claims all allegedly occurred under one HR department is insufficient for joinder. If that were the law, every lawsuit filed against the same employer could be joined.

Page 5 NIKE'S REPLY IN SUPPORT OF MOTION TO SEVER, OR IN THE ALTERNATIVE, SEPARATE PLAINTIFFS' CLAIMS FOR TRIAL

repeating "pattern or practice" enough will distract the Court. But a pattern or practice claim alone does not establish that the claims arise from the same transaction or occurrence, and the cases cited by Plaintiffs do not save their argument. For example, Plaintiffs cite to *Mosley v. General Motors Corp.*, 497 F.2d 1330 (1974), as a standard for joining pattern or practice discrimination cases. *See* ECF No. 555 at 26. However, in *Mosley* (a case decided 40 years ago), the defendants challenged "a company-wide ***policy*** purportedly ***designed to discriminate*** against blacks in employment." 497 F.2d at 1334 (emphasis added). Here, by contrast, even Plaintiffs do not allege that NIKE had a policy "designed to discriminate" against women. Plaintiffs also cite to *Biglow v. Boeing Co.*, 201 F.R.D. 519 (D. Kan. 2001), for the proposition that "Plaintiffs can use the same evidence to prove an inference of discrimination against each plaintiff based on NIKE's alleged pattern or practice of discrimination against women." ECF No. 555 at 5. *Biglow* does not stand for that proposition and the case is distinguishable. In *Biglow*, two Black employees alleged that their employer had previously demoted them years earlier due to financial troubles, but that since their demotions, they had failed to be promoted and were paid "less money than white employees." *See Biglow*, 201 F.R.D. at 521. They alleged "pattern or practice" discrimination. *See id.* After the pleadings were set, the defendant employer brought an early motion to sever. The court denied the employer's early motion relying only on the allegations in the complaint, finding, "***[a]t this stage in the proceedings***, defendant has not shown that plaintiffs' allegations fail to satisfy the requirements of Rule 20(a)." *Id.* (emphasis added). The court noted, however, that it may order separate trials in the future "if necessary to prevent prejudice to defendant." *Id.* Of course, here, the parties are well beyond the initial pleadings, and the Court has significantly more evidence available to it than the mere allegations in the complaint. Indeed, as detailed below, the Court evaluated this

evidence in detail when it denied Plaintiffs' motion for class certification under a similar and persuasive analysis.

Finally, Plaintiffs rely on *Carrero v. CSL Plasma, Inc.*, No. 1:21-cv-00228-AA, 2024 WL 4458558 (D. Or. Oct. 10, 2024), but that is not a pattern or practice discrimination case. Rather, the *Carrero* plaintiffs were plasma donors who suffered infections after donating and brought negligence claims against a medical facility. Plaintiffs rely on *Carrero* for the proposition that they can meet the same transaction or occurrence prong through a "systemic pattern of events" or a "policy of the defendant." *See id.* at *2 (internal quotation marks and citation omitted). However, when explaining why it found the negligence claims of the donors to be "logically related" to one another, the *Carrero* court made no mention of a common policy or practice. *Id.* Here, each employment decision affecting each Plaintiff was made by an individual decision maker and motivated by specific and individualized rationales. And critically, those motivations—gender or otherwise—are critical conclusions the trier of fact must reach to determine liability.[3]

B.      **The Court's Class Certification Ruling Is Persuasive**

Although the denial of class certification is not dispositive with respect to NIKE's motion to sever, the conclusions reached by this Court in denying certification apply equally to the issue of joinder and are, therefore, persuasive. *See Todd v. Tempur-Sealy Int'l, Inc.*, No.13-cv-04984-JST, 2017 WL 2840272, at *3 (N.D. Cal. June 30, 2017) ("severance is proper largely for the same reasons that class certification was not proper"). "[T]he predominance analysis under Rule 23(b) and the single transaction or occurrence analysis under Rule 20(a) may, in some instances, be two sides of the same coin." *Id.* at *2-3 (internal citation and quotation marks omitted).

---

[3] Of course, motivation is irrelevant in a negligence case, like *Carrero*.

Page 7 NIKE'S REPLY IN SUPPORT OF MOTION TO SEVER, OR IN THE ALTERNATIVE, SEPARATE PLAINTIFFS' CLAIMS FOR TRIAL

Plaintiffs present no authority suggesting otherwise.

Satisfaction of the same transaction or occurrence requirement "requires factual similarity in the allegations supporting Plaintiffs' claims." *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir 2013). Because disparate treatment claims are necessarily individualized, they typically arise from distinct transactions or occurrences. *See, e.g.*, *Johnson v. Indopco, Inc.*, 846 F. Supp. 670, 676 (N.D. Ill. 1994); *Weir v. Litton Bionetics, Inc.*, No. H-85-2545, 1986 WL 11608, at *5-7 (D. Md. May 29, 1986); *Smith*, 50 F.R.D. at 521-22, 524.[4]

As set forth in NIKE's opening brief, this Court made a number of conclusions in denying Plaintiffs' motion for class certification that relate directly to the "same transaction or occurrence" analysis:

- "The evidence does not demonstrate a centralized decision-making process that collected prior pay data used to make starting pay decisions." ECF 310 at 41

- "[M]anagers had considerable discretion and could adjust the pay percentage to accommodate different employees with lower base pay in the same CFE rating. . . [T]he absence of a common mode of exercising discretion that pervades throughout NIKE headquarters prevents a finding of commonality." *Id.* at 48.

- "[M]anagers exercise discretion in determining whether to promote noncompetitively." *Id.* at 48.

- "To the extent that hiring managers tend to deny applications from women for the higher-level jobs in favor of men, that is again a function of discretion that does not involve the application of any required company policy or upper

---

[4] Each of these cases was cited in NIKE's opening brief, but Plaintiff did not address them in their Opposition.

Page 8 NIKE'S REPLY IN SUPPORT OF MOTION TO SEVER, OR IN THE ALTERNATIVE, SEPARATE PLAINTIFFS' CLAIMS FOR TRIAL

- management." *Id.* at 50.
- Plaintiffs failed to "provide evidence of a systemwide pattern or practice of pervasive discrimination against the class, such that the discrimination is the regular rather than the unusual practice" necessary for finding commonality in disparate treatment cases. *Id.* at 50-51 (internal citations and quotation marks omitted).
- The Court dismissed Plaintiffs' statistical analysis because "[t]he disparities might be attributable to only a small set of NIKE managers, rather than a standard NIKE operating procedure." *Id.* at 52.
- "Plaintiffs' assessment of NIKE's response to the Starfish Survey . . . fails to show NIKE had a standard operating procedure of failing to address discrimination." *Id.* at 53.

At a minimum, these conclusions are relevant to whether joinder of the four Plaintiffs' claims is appropriate.

Plaintiffs also argue that the class certification ruling is unpersuasive because the Court did not have an opportunity to hear testimony from witnesses when ruling on class certification, like the finders of fact will have at trial. This makes no sense. First, the Court did receive testimony from many witnesses when ruling on class certification, including the declarations of 24 individuals who testified to their own positive experiences at NIKE. While the testimony was not "live," Plaintiffs offer no explanation for why this makes a shred of difference. Second, the Court need not have heard "live" testimony to make a well-reasoned finding that individual managers had discretion to set starting pay, provide individualized pay increases and bonuses, determine whether to promote noncompetitively or post open positions, and make hiring

decisions, which it did. *See* ECF No. 310 at 42, 47, 48, 50. Finally, Plaintiffs' contention that "the evidence the Magistrate Judge relied on . . . for the class certification decision has no corroboration in contemporaneous documents or communications" is nonsense. ECF No. 555 at 20. Evidence does not need to have contemporaneous corroboration to be true. And to the extent Plaintiffs argue that they did not have the opportunity to present contradictory evidence, two-thirds of the 21 documents they cite in support of this argument were available to them when they filed their class certification brief. *See* ECF No. 555 at 13-24. Eleven of the 14 witnesses Plaintiffs plan to call at trial were deposed prior to the class certification filing as well. Plaintiffs' argument seems to be that the Court should hear the evidence and then decide whether the claims should be severed. Of course, there is no authority for this argument, which runs counter to black letter law.

## C. Plaintiffs Cannot Rely On "Me Too" Evidence To Support Joinder

In a final attempt to push this case forward as if it were a class action, Plaintiffs contemporaneously filed a proposed witness list with their Opposition. *See* ECF No. 556, Appendix A. That list—again—only shows why severance is appropriate. Of the 14 individuals included on Plaintiffs' witness list, not one is a person who might be knowledgeable of the decisions giving rise to Plaintiffs' claims. No hiring managers, no HR business partners, no supervisors, and no alleged comparators. What it does contain is a list of women with some connection to the Starfish questionnaires (which the four named Plaintiffs did not complete). Plaintiffs' summary of their testimony topics makes clear they are offered as textbook, improper "me too" evidence.

For example, Plaintiffs plan to call Melanie Strong to "talk about how, who, and why Starfish was created and pursued," including the number of Starfish questionnaires and her meetings and communications regarding the Starfish questionnaires. *See* ECF No. 556,

Page 10 NIKE'S REPLY IN SUPPORT OF MOTION TO SEVER, OR IN THE ALTERNATIVE, SEPARATE PLAINTIFFS' CLAIMS FOR TRIAL

Appendix A. There is no link to the named Plaintiffs. Plaintiffs also plan to call Genevieve Long, a former Human Resources Business Partner, to testify about NIKE's alleged "knowledge of discrimination and its failure to address it" and about the "results" of the Starfish questionnaire, although she was not involved in its creation, distribution, or any related discussions with executives. *See id.* Like Ms. Strong, Ms. Long did not work with any of the named Plaintiffs and has zero knowledge of their individual claims. Plaintiffs also list Lauren Anderson as a witness. *See id.* Ms. Anderson did work with Plaintiff Cahill and her manager, but she had no working relationship whatsoever with any of the other three Plaintiffs. And Plaintiffs would have another former employee testify about a complaint she filed that is completely unrelated to any of the Plaintiffs' complaints, their managers, or any of the causes of action asserted in this case. *See id.*

Plaintiffs agree that a "'parade of plaintiffs' . . . could prejudice a jury against an employer in a joint trial." ECF No. 555 at 23. That is exactly what Plaintiffs seek to do here. None of these individuals worked with or under the same supervisors or were subjected to the same decisionmakers of which the Plaintiffs complain.[5] None of the testimony regarding the alleged bad acts relating to Starfish is related to the Plaintiffs or their claims. None of the Plaintiffs submitted a Starfish questionnaire, and Cahill and Johnston were not even employed by NIKE at that time. To parade evidence that is unrelated to Plaintiffs' claims during their trials poses an extreme risk of prejudicing and confusing the jury. This includes not just alleged Starfish witnesses, but the Plaintiffs' unrelated discrimination claims themselves. Plaintiffs believe that if they throw enough mud about the treatment of ***others***, the fact finder will conclude

---

[5] Although Anderson worked with Cahill that does not mean that her testimony should be presented in the same case for Johnston, Elizabeth, or Hender.

Page 11 NIKE'S REPLY IN SUPPORT OF MOTION TO SEVER, OR IN THE ALTERNATIVE, SEPARATE PLAINTIFFS' CLAIMS FOR TRIAL

they must have been mistreated too.  The Court should prevent this possibility from occurring.

### III.     PLAINTIFFS' CLAIMS DO NOT INVOLVE A COMMON QUESTION OF LAW OR FACT

Plaintiffs do not assert a question of law or fact common to all Plaintiffs, beyond mere conclusory allegations that NIKE engaged in discriminatory policies and practices.  Plaintiffs claim that the relevant common questions are (1) whether NIKE used its job architecture to "determine which jobs were 'similarly situated'"; (2) "was NIKE's discrimination against women its regular practice"; (3) "did NIKE have a practice of using prior pay when setting starting salary" that "disproportionately harm[ed] . . . women"; and (4) "did NIKE have a practice of using employees' current salary when calculating annual bonuses" that "disproportionately harm[ed] . . . women."  ECF No. 555 at 6.  But these questions are simply four different ways of asking whether there was a pattern or practice of discrimination, which does not establish a common question of law or fact on a pattern or practice claim.[6]  *See Coughlin v. Rogers*, 130 F. 3d 1348, 1351 (9th Cir. 1997) ("[T]he mere fact that all Plaintiffs' claims arise under the same general law does not necessarily establish a common question of law or fact.").

At the same time, Plaintiffs completely ignore the fact that their claims require individualized attention, which cautions against joinder.  *See Smith*, 50 F.R.D. at 524 ("Whether a defendant unlawfully discriminated against one plaintiff with respect to promotion or job assignment in a given department is not common with the question whether defendant unlawfully discriminated against another plaintiff in a separate department.  The second act

---

[6] In perhaps the best demonstration of Plaintiffs' misunderstanding and misapplication of the common questions of fact and law standard, in a footnote, Plaintiffs claim that another common question of fact or law is NIKE's alleged "failure to produce or preserve discovery."  ECF No. 555 at 7 n.4.  Not only is this allegation untrue, but just because Plaintiffs can articulate *any* question that relates to the litigation does not mean that it supports joinder.

constitutes separate, albeit similar conduct."). Applying Plaintiffs' reasoning, any female employee in any department contemporaneously employed at NIKE may join together to bring claims of discrimination. That is not the law.[7]

Moreover, the purportedly common questions asserted by Plaintiffs are not the questions to be answered by the jury. For example, answering Plaintiffs' first question, whether NIKE used its job architecture to "determine which jobs were 'similarly situated'" does not answer any question of liability. Because the question for the jury is not whether NIKE generally uses job architecture to determine which jobs are "similarly situated," but whether each individual Plaintiff proved that they were paid less than a man for substantially similar work. Put another way, if the trier of fact determines that NIKE did not use its job architecture to determine similarly situated jobs, that does not preclude an individual plaintiff from proving that in her case, she was paid less than a male for substantially similar work. What Plaintiffs have articulated as "common questions" are really just the class certification questions, that this Court already answered with a resounding no.

IV. **PLAINTIFFS UNCONVINCINGLY ARGUE THAT TRYING THE PLAINTIFFS' CLAIMS TOGETHER WILL NOT RESULT IN UNFAIR PREJUDICE OR JURY CONFUSION BECAUSE THERE ARE COMMON QUESTIONS OF LAW AND FACT**

Plaintiffs' assertion that NIKE's claims of unfair prejudice are general and speculative is unpersuasive. Plaintiffs do not cite to any case law supporting their proposition that

---

[7] To the contrary, NIKE cites to several cases that stand for the proposition that discrimination claims deal with discrete facts that require particularized attention that do not lend themselves to joinder; Plaintiffs do not dispute any of this authority. *See, e.g.*, *Coughlin*, 130 F. 3d 1348; *Coalition for a Sustainable Delta v. U.S. Fish & Wildlife Serv.*, No. 1:09-CV-480 OWW GSA, 2019 WL 3857417 (E.D. Cal. Nov. 17, 2009); *Fleming v. Home Depot U.S.A., Inc.*, No. 96-6560-CIV, 1998 WL 1674544 (S.D. Fla. July 8, 1998); *Aragon*, 292 F.3d 654; *DeFrancesco v. City of Mt. Angel*, No. CV-00-480-ST, 2000 WL 1060661 (D. Or. July 14, 2000).

Page 13 NIKE'S REPLY IN SUPPORT OF MOTION TO SEVER, OR IN THE ALTERNATIVE, SEPARATE PLAINTIFFS' CLAIMS FOR TRIAL

"consolidation will not unduly prejudice or confuse the jury."[8] ECF No. 555 at 28. Plaintiffs' arbitrarily claim that "[t]he most 'prejudicial' evidence . . . is common to all plaintiffs" and "would be presented to each of four juries." *Id.* This is incorrect. First, Plaintiffs have no credible way of asserting what is "the most prejudicial evidence." Second, Plaintiffs' assertion that the evidence will be admitted, without question, and in each of the four cases, completely misses the point. When weighing whether to admit comparator or "me too" evidence, a critical question for the Court will be whether the claims of the comparator are "similar" to the claims of the individual Plaintiff. The answer to that question may not be "yes" or "no" as to all four Plaintiffs. For example, evidence of bad actions by one of Cahill's managers may be relevant to her claims, but completely irrelevant—and prejudicial—to the claims of Hender, who never once interacted with him. It is this risk—that evidence unrelated to a specific Plaintiff will cause unfair prejudice—that is exactly why cases are severed. The "potential prejudice to [NIKE created by] a parade of witnesses [Plaintiffs and others], each recounting [her] contention that" NIKE had discriminated against her because of her gender is certainly unfair. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000). Plaintiffs make clear that this is their intent, which runs counter to all applicable law.

Plaintiffs' argument regarding juror confusion is also weak. They argue that because there are four plaintiffs instead of ten and the claims do not arise under multiple states' laws, but federal and Oregon law only, a jury will not be confused. *See* ECF No. 555 at 34. But there is no reason to believe this is true as Plaintiffs do not cite to any cases supporting this position. Plaintiffs' attempt to distinguish *Grayson* also misses the mark. Like Plaintiffs, the *Grayson*

---

[8] Plaintiffs' reliance on *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 111-12 (3rd Cir. 1999) is misplaced because it does not deal with a motion to sever, but rather a Rule 403 analysis.

plaintiffs "cite the increased expense and inconvenience of presenting essentially identical statistical evidence and expert testimony multiple times should their cases be severed. Likewise, plaintiffs complain about the added expense and inconvenience of presenting highly similar anecdotal evidence of defendant's alleged pattern and practice of discriminating." *See Grayson, 849 F. Supp. at 790*. The court found these arguments unpersuasive as the parties could "reach a mutually agreeable alternative means for presenting redundant testimony in the various cases," but even if they could not "plaintiffs' convenience alone does not allow this Court to ignore the potential prejudice to defendant by proceeding with a consolidated trial of all the plaintiffs' cases." *Id.* Ultimately, separate trials eliminate any risk of jury confusion, and Plaintiffs do not allege any prejudice to them if the cases are tried separately, as there is none.[9] *See id. at 790-91* ("No prejudice can result to each plaintiff if each claim is tried separately.").

Separate trials for each Plaintiff also ensures that to the extent a jury finds in favor of a specific Plaintiff, it does so because she proved that ***she*** experienced a violation of law, rather than another Plaintiff or another (former) NIKE employee altogether. Contrary to Plaintiffs' suggestion, one Plaintiff prevailing on her claim(s) is not evidence that the other Plaintiffs should prevail on theirs. Nor does denial of one Plaintiff's claim mean the rest should fail. The merits of each case is different and distinct. Each rises or falls on its own. Plaintiffs' Opposition makes clear that they will disregard this crucial fact and their counsel will certainly try to convince any juror to disregard it as well. Separate trials prevent such an unfair prejudice from occurring.

---

[9] In a throwaway line in the Opposition's introduction, Plaintiffs claim that trying the cases separately will result in an "estimated three weeks of additional trial time." ECF No. 555 at 19. However, this is contrary to the estimated hours of testimony provided by Plaintiffs in the same briefing. *See* ECF No. 556 at Appendix A (estimating three hours of testimony each for the four Plaintiffs). Thus, it is more reasonable that each individual Plaintiffs' trial will include approximately three days of testimony from witnesses.

Page 15 NIKE'S REPLY IN SUPPORT OF MOTION TO SEVER, OR IN THE ALTERNATIVE, SEPARATE PLAINTIFFS' CLAIMS FOR TRIAL

## V.     CONCLUSION

Although counsel for Plaintiffs joined their claims together in the hopes of pursuing a class action, now that class certification has been abandoned, Plaintiffs can remain together only if they can justify joinder.  They cannot because their claims do not arise from the same transaction or occurrence or deal with common questions of fact or law.  Even if they did, the risk of unfair prejudice to NIKE is too great to overcome if the cases are tried together. Accordingly, the Court should grant NIKE's motion and sever Plaintiffs' claims and set the matters for separate trials.[10]

Date:  November 22, 2024

/s/ Felicia A. Davis
DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
LINDSEY C. JACKSON, Cal. SB# 313396 (*pro hac vice*)
lindseyjackson@paulhastings.com
ALYSSA K. TAPPER, Cal. SB# 324303 (*pro hac vice*)
alyssatapper@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Laura E. Rosenbaum, OSB No. 110061
laura.rosenbaum@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

---

[10] Plaintiffs accuse NIKE of using its brief "as subterfuge motion for summary judgment or motion *in limine*," but the only request NIKE seeks from the Court is the severing of the four Plaintiffs' cases into four individual trials.  ECF No. 555 at 18.