JOHN A. BERG, OSB# 120018
jberg@littler.com
PAUL E. CIRNER, OSB# 191471
pcirner@littler.com
LITTLER MENDELSON P.C.
1300 SW Fifth Avenue
Wells Fargo Tower, Suite 2050
Portland, OR 97201
Telephone:  (503) 221-0309
Facsimile:  (503) 242-2457

DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
LINDSEY C. JACKSON, Cal. SB# 313396 (*pro hac vice*)
lindseyjackson@paulhastings.com
ALYSSA K. TAPPER, Cal. SB# 324303 (*pro hac vice*)
alyssatapper@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Attorneys for Defendant NIKE, INC.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, SARA JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NIKE, INC., an Oregon Corporation,<br><br>Defendant. | Case No. 3:18-cv-01477-JR<br><br>**DEFENDANT NIKE, INC.'S MOTION FOR ITS ATTORNEYS' FEES INCURRRED DUE TO PLAINTIFFS' COUNSEL'S UNAUTHORIZED DISCLOSURE OF CONFIDENTIAL DOCUMENTS**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..............................................................................................................1

II. RELEVANT BACKGROUND .......................................................................................4

    A.  NIKE Has Fought in Order to Protect the Disclosure of Confidential
Documents to the Media Intervenors. ....................................................................4

    B.  Plaintiffs' Counsel Discloses Confidential Documents to the Oregonian. .............6

    C.  The Court Imposed Civil Contempt and Monetary Sanctions Against
Plaintiffs' Counsel. ................................................................................................6

    D.  Plaintiffs' Counsel's Breach Necessitated Extensive and Complicated
Litigation, Incurring Substantial Fees. ...................................................................7

    E.  Plaintiffs' Counsel's Violation Also Forced NIKE to Incur Costs Related
to the Disclosure Litigation. .................................................................................10

III. ARGUMENT ................................................................................................................10

    A.  NIKE is Entitled to its Reasonable Attorneys' Fees and Costs Due to
Plaintiffs' Violation of the Protective Order. ........................................................10

        1.  The Hours Spent are Reasonable. ..............................................................11

        2.  NIKE's Counsel's Rates are Reasonable Under the Circumstances. .........13

    B.  NIKE Should Also Be Awarded Its Reasonable Costs. .........................................14

IV. CONCLUSION .............................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cahill et al. v. NIKE, Inc.*,
No. 24-2199 (9th Cir.) ...........................................................................................9

*Chalmers v. Los Angeles*,
796 F.2d 1205 (9th Cir. 1986) ..............................................................................11

*Huynh v. Hous. Auth. of Cnty. of Santa Clara*,
No. 14-CV-02367-LHK, 2017 WL 1050539 (N.D. Cal. Mar. 17, 2017)................13

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975) ...........................................................................1, 13

*Loretz v. Regal Stone, Ltd.*,
756 F. Supp. 2d 1203 (N.D. Cal. 2010) .................................................................13

*Medina v. Metropolitan Interpreters and Translators, Inc.*,
139 F. Supp. 3d 1170 (S.D. Cal. 2015).................................................................13

*Mirch v. Frank*,
266 F. App'x 586 (9th Cir. 2008) ..........................................................................11

*Moi v. O'Leary*,
2024 WL 3824395 (D. Or. Aug. 15, 2024)......................................................10, 11

*Nat'l Abortion Fed'n v. Ctr. for Med. Progress*,
2024 WL 1286936 (N.D. Cal. Mar. 25, 2024)........................................................12

*Oracle USA, Inc. v. Rimini St., Inc.*,
81 F.4th 843 (9th Cir. 2023) ..................................................................................10

*Rodriguez v. County of Los Angeles*,
96 F. Supp. 3d 1012 (C.D. Cal. 2014) ...................................................................13

**Constitutional Provisions**

First Amendment of United States Constitution...................................................... *passim*

**Statutes**

The Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ...........................................................4

The Federal Equal Pay Act, 29 U.S.C. § 206(d) ...........................................................................4

The Oregon Equal Pay Act, ORS 652.220 ....................................................................................4

The Oregon Equality Act, ORS 659A.030 ....................................................................................4

**Rules**

District of Oregon, Local Rule 54-3 ........................................................................................4, 13

Fed. R. Civ. P. 45 ........................................................................................................................10

Fed. R. Civ. P. 72 ..........................................................................................................................3

**L.R. 7-1 CERTIFICATION**

Counsel for Defendant NIKE, Inc. ("NIKE") certifies that it made a good faith effort to confer with counsel for Markowitz Herbold PC ("Markowitz") regarding the issues presented in this Motion.  Markowitz objects to the relief requested in this Motion.[1]

**MOTION FOR ATTORNEYS' FEES AND COSTS**

Pursuant to this Court's order at ECF No. 521, NIKE respectfully moves the Court for an order awarding NIKE its reasonable attorneys' fees incurred due to Plaintiffs' counsel's violation of the Parties' Protective Order in this matter and a Ninth Circuit stay order by disclosing confidential documents to an intervenor in this case.

I.    **INTRODUCTION**

NIKE has taken great efforts to redact the names of non-party employees identified in an informal, unverified, employee-led questionnaire and to keep these names redacted, despite challenges to the same.  NIKE has made these efforts in part because the documents at issue were submitted to NIKE in confidence and with the expectation that their information would be kept as confidential as possible.  Notwithstanding the ongoing litigation related to the disclosure of these documents, Markowitz's president Laura Salerno Owens ("Salerno Owens") disclosed them to the Oregonian, a Media Intervenor[2] who is currently fighting on appeal to unseal that same

---

[1] Markowitz's counsel suggested that consideration of this Motion should be stayed until after trial on the merits.  Prince Decl. ¶ 9.  NIKE disagrees a stay (or "abatement") is necessary, given that the sanctions awarded relate to a Protective Order violation, which is separate and distinct from the merits.  *Id.*  NIKE has provided a near-final estimate of the amount of fees that NIKE would be seeking during our meeting of counsel.  *Id.*  NIKE expressed (several times) a willingness to agree to a briefing schedule amenable to both Parties in the coming days or weeks that would not interfere with the holidays or significant case deadlines.  Markowitz's counsel, however, maintained that the only schedule to which it would agree would be for briefing on this fees motion to occur following conclusion of the *Cahill* trial.  NIKE believes it is inappropriate to wait until after trial in March-April 2025 to bring its Motion.  To the extent Markowitz moves for a stay of the consideration of this Motion, NIKE reserves its rights to oppose that motion and requests an opportunity to brief the issues.

[2] The Media Intervenors include *Insider Inc.* d/b/a BUSINESS INSIDER, *Advance Local Media LLC* d/b/a OREGONIAN MEDIA GROUP, *and American City Business Journals, Inc.* d/b/a PORTLAND BUSINESS JOURNAL.

information.  ECF No. 343 at 5.  In doing so, this Court found that Plaintiffs' counsel violated the Protective Order.  ECF No. 521 at 10.  Holding Markowitz and its president Salerno Owens in contempt, the Court found that NIKE should be awarded its attorneys' fees "related to defendant's efforts to seek return of the [wrongfully disclosed] documents and in bringing [its sanctions] motion."  *Id*. at 11.  The Court further instructed NIKE to "file a motion seeking its reasonable fees related to the disclosure."  *Id*.  NIKE brings this Motion for its Reasonable Attorneys' Fees in accordance with that instruction.

In January 2024, Plaintiffs' counsel met with a reporter from the Oregonian to discuss this case and informal non-party complaints known as the Starfish questionnaires, which NIKE produced under the Protective Order.  Knowing that both the Protective Order and a Ninth Circuit stay order prevented the Oregonian from seeing this confidential discovery, Salerno Owens "chose to engage in conduct with a third party, unrelated to the case, that resulted in the release of the information."  *Id.* at 10.  Thereafter, Plaintiffs' counsel waited six days to inform NIKE or this Court about her violation.

Plaintiffs' counsel's breach resulted in a flurry of litigation that would have otherwise been unnecessary.  NIKE has incurred substantial costs in seeking to remedy the violation and to claw back the documents.  Its efforts were met with staunch resistance by both Markowitz and the Oregonian, each of which retained separate counsel to litigate issues against NIKE related to the Salerno Owens' unauthorized disclosure of sealed litigation documents.  And at times, Plaintiffs themselves participated in litigation pertaining to that disclosure.  As set forth below, a myriad of litigation occurred before the District Court and in the U.S. Court of Appeals for the Ninth Circuit. It included:

- Conducting extensive correspondence with Plaintiffs' counsel and counsel for the Oregonian relating to the nature and extent of the breach, including informal requests for information regarding the same;

- Engaging in emergency briefing in the District Court seeking return of the sealed documents;

- Seeking formal discovery due to Markowitz's refusal to provide NIKE basic information about the disclosure, and engaging in meetings of counsel with respect to the same;

- Litigating motions to compel when Markowitz and the Oregonian refused to respond to discovery;

- Reviewing and analyzing First Amendment jurisprudence and case law pertaining to the balancing of the rights of the press under constitutional law principles versus the enforcement of court orders, including sanctions relating to a breach of court orders;

- Briefing the unauthorized disclosure before the Magistrate Judge and litigating objections to the Magistrate Judge's order before the District Judge, pursuant to Fed. R. Civ. P. 72;

- Pursuing emergency stays from this Court, the emergency motions panel of the Ninth Circuit, and *en banc* review by the Ninth Circuit to prevent the Oregonian from disclosing sealed litigation materials while the Parties litigated the merits;

- Engaging in detailed sanctions briefing against Markowitz for the violation and to cover NIKE's substantial costs and attorneys' fees, including efforts to challenge the request for sanctions;

- Appealing the District Court's ruling on the disclosure of sealed materials, and engaging in substantial and complex merits briefing in the Ninth Circuit relating to the unauthorized disclosure;

- Compiling the Excerpts of Record in connection with NIKE's briefing before the Ninth Circuit, and briefing multiple requests for sealing against Markowitz, Plaintiffs, and the Media Intervenors given the sealed nature of the documents at issue; and

- Filing the instant motion for its reasonable fees.

Although NIKE incurred higher attorneys' fees for these tasks, it requests reduced fees consistent with the data provided in the 2022 Oregon State Bar Economic Survey ("2022 OSB Survey"), as adjusted for inflation, the complexity of this matter, and the *Kerr* factors. LR 54-3. As explained below, the total amount in fees sought by NIKE is $771,794.51, encompassing approximately 1,228.6 attorney, paralegal, and staff hours dedicated to this complex, multifaceted matter with multiple adverse parties that has spanned proceedings in this Court and the Ninth Circuit.

The issues raised by Plaintiffs' breach were not the run-of-the-mill considerations under a typical clawback injunction. Indeed, the Oregonian vigorously opposed NIKE's requests to return and prevent use of the documents, raising First Amendment arguments to compete with NIKE's arguments regarding the Court's inherent authority. Requiring complex and novel balancing of issues, NIKE spent time engaging in strategy, researching, and drafting across every task, including the three levels of briefing in front of the Magistrate Judge, the District Judge, and the Ninth Circuit. Markowitz and the Oregonian likewise barred NIKE's attempts to obtain any information about the disclosure, necessitating further work and motion practice. Accordingly, NIKE's attorneys' fees are reasonable under the unique circumstances of this case and due to Plaintiffs' counsel's violations. NIKE respectfully requests that the Court award NIKE its reasonable fees.

## II.    **RELEVANT BACKGROUND**

### A.    **NIKE Has Fought in Order to Protect the Disclosure of Confidential Documents to the Media Intervenors.**

Despite Plaintiffs filing this action in 2018, asserting equal pay claims under the Federal Equal Pay Act, 29 U.S.C. § 206(d) and the Oregon Equal Pay Act, ORS 652.220, and asserting pay and promotion discrimination claims under the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and Oregon Equality Act, ORS 659A.030, the Parties have spent a significant amount of time in discovery and motion practice on the production and filing of documents related to internal concerns raised by some employees that do not include the named Plaintiffs. Most of

these documents relate to concerns outside the scope of the pay and promotion causes of action asserted by the four Plaintiffs. Many relate to the questionnaires that were created, circulated, and collected informally by a small group of employees, independently from any official NIKE channel, often referred to as the "Starfish" questionnaires. *See* ECF No. 521 at 14.

The questionnaires and all other internal complaint-related documents that were not related to the named or opt-in Plaintiffs were designated during production as "**Highly Confidential – Attorneys' Eyes Only**" under the Parties' Protective Order. Thereafter, NIKE and Plaintiffs worked together to remove confidential designations over the substance of the complaints (*i.e.*, the allegations themselves), but agreed to redact in any public filings the names of third-party individuals who made complaints, or who were witnesses or alleged persons of interest not already publicly named. ECF Nos. 273 at 12, 171 at 8.[3]

After Plaintiffs attached some documents containing such redactions to their class certification motion, ECF Nos. 146, 154; *see e.g.*, ECF Nos. 159-7, 159-8, 159-9, 159-10, 160-1, 160-2, the Media Intervenors intervened in this action to unseal the documents in their entirety, *see* ECF No. 205. The trial court initially denied their request, *see* ECF No. 273, but the Media Intervenors later renewed their motion after Plaintiffs' class certification motion was denied, *see* ECF No. 343; *see also* ECF. Nos. 310, 335. The Media Intervenor's motion sought access to the identities of the complainants, witnesses, and alleged persons of interest named in the documents. *Id.* Over NIKE's objections, *see* ECF Nos. 345, 376, the trial court granted the Media Intervenors' renewed motion (the "Unsealing Order"), *see* ECF Nos. 363, 403.

NIKE appealed the Unsealing Order to the Ninth Circuit immediately, ECF No. 406, and has continually fought to stay the Unsealing Order during its appeal to avoid the immediate and irreparable harm to the non-parties stemming from wide-spread publication of their names, *see, e.g.,* ECF Nos. 397, 404, 406. A flurry of activity in both courts culminated in the Ninth Circuit

---

[3] *See also* ECF 290-4 at 1-37; ECF 288 at 1-11; ECF 285-2 at 1-2; ECF 285-1 at 1-2; ECF 284-8 at 1-6; ECF 284-7 at 1-4; ECF 165-4 at 1-37; ECF 163 at 1-11; ECF 160-2 at 1-2; ECF 160-1 at 1-2; ECF 159-8 at 1-6; ECF 159-7 at 1-4; ECF 159-6 at 1-3.

ruling that the names should remain sealed pending NIKE's appeal, issuing a stay order (the "Stay Order") that this Court entered at ECF No. 408.[4]  The appeal is now fully briefed and oral argument is expected to take place in February or March of 2025.

### B.    Plaintiffs' Counsel Discloses Confidential Documents to the Oregonian.

Plaintiffs' counsel violated both that Stay Order and the Protective Order in this case when Salerno Owens provided confidential documents to one of the Media Intervenors' reporters.  ECF No. 411 ⁋ 9.  The sanctions and contempt award at issue here stems from Plaintiffs' counsel's violation of the Protective Order.  ECF No. 82.  Markowitz's firm president Salerno Owens— knowing that NIKE-produced Starfish questionnaires had been designated confidential under the Protective Order and were also subject to a Ninth Circuit stay, ECF Nos. 407, 408—met with reporter Matthew Kish of the Oregonian to discuss and share discovery material.  ECF Nos. 411 ¶ 2, 416 ¶ 2.  Indeed, after the Oregonian intervened for the sole purpose of receiving information that had been redacted from the Starfish questionnaires, ECF Nos. 205, 343, Plaintiffs' counsel simply emailed them to the Oregonian during a coffee-shop meeting, ECF Nos. 411 ¶ 9, 416 ¶ 2.  Plaintiffs' counsel did not inform the Court or NIKE about the violation until six days after it occurred.  ECF No. 426 ¶ 3.

### C.    The Court Imposed Civil Contempt and Monetary Sanctions Against Plaintiffs' Counsel.

On August 26, 2024, the Court found that Plaintiffs' counsel's violation of the Protective Order in this matter warranted a finding of contempt and imposition of monetary sanctions.  ECF No. 521 at 10-11.  The Court explained that "[c]ounsel was under an obligation to ensure protection of the unredacted document and chose to engage in conduct with a third party, unrelated to the case, that resulted in the release of the information."  *Id*. at 10.  Because "Salerno Owens did not ensure the material she knew to be subject to the protective order was not included in the documents provided to the third party," a finding of contempt was appropriate, "especially in light

---

[4] This litigation occurred prior to Markowitz's improper disclosure, and the fees incurred in that work are not included in this motion.

of the number of days plaintiff waited to inform the Court and defendant of the disclosure while she attempted to have the Oregonian return the material." *Id.*

Accordingly, the Court found "that an award of fees related to defendant's efforts to seek return of the documents and in bringing" its sanctions motion is appropriate. *Id.* The Court directed NIKE to bring this motion. *Id.* at 11.

### D. Plaintiffs' Counsel's Breach Necessitated Extensive and Complicated Litigation, Incurring Substantial Fees.

Markowitz's violation of multiple court orders forced NIKE to incur significant legal fees it would not have otherwise incurred. Plaintiffs' counsel's breach instigated emergency briefing on complicated issues of court power, colored by the Oregonian's <u>First Amendment</u> arguments, in both this Court and the Ninth Circuit. Likewise, NIKE sought sanctions against Plaintiffs for the damage that may never be undone and for recovery of its substantial fees. ECF No. 471. NIKE only seeks reduced fees of $771,794.51 related to attempting to remedy Plaintiffs' mistakes. NIKE expended significant attorney hours for the following necessary tasks in its continued efforts to protect the privacy of the third parties named in the documents disclosed by Salerno-Owens:

**Strategy, Case Management, and Other Disclosure-Related Tasks:** NIKE's counsel expended 11.7 hours and seeks $7,411.90 in reduced fees for communicating with counsel regarding the disclosure, including internal counsel, counsel for Markowitz and counsel for the Oregonian. Moreover, NIKE's counsel spent time strategizing and analyzing how to seek the return of the disclosed materials, including how to respond to the unique difficulties raised by the posture of this dispute. These difficulties included the novelty and complexity of the questions involved, the often-conflicting positions taken by Plaintiffs throughout the disclosure litigation on multiple briefs, and Markowitz's and the Oregonian's refusal to cooperate with even the most basic discovery requests. Prince Decl. ¶ 6(a).

**NIKE's Response to the Oregonian's Motion to Vacate and NIKE's Objection to the Oregonian's Improper Reply:** Following Plaintiffs' injunction motion, ECF No. 410, and the Magistrate Judge's order granting that motion, ECF No. 412, the Oregonian Filed an Emergency

Motion to Vacate the order, ECF No. 414.  The District Court granted the motion and instructed NIKE and Plaintiffs' counsel to respond to the arguments in the Motion to Vacate within a week. ECF No. 417.  The Oregonian then filed an improper reply brief with new evidence.  ECF Nos. 427, 428.  NIKE filed an objection to the new evidence, a request for oral argument, an emergency motion for a temporary stay—so that NIKE could file its Rule 72 brief without the material being published—and a request for discovery.  ECF No. 429.  NIKE attorneys spent 113.1 hours and incurred $73,448.38 in fees for research, strategy, and drafting these briefs.   Prince Decl. ¶ 6(b).

**NIKE's Objections to the Order Denying the Return of the Starfish Questionnaires:** The Magistrate Judge denied Plaintiffs' motion to return the documents.  ECF No. 431.  NIKE's lawyers spent 137.9 hours and seeks $91,337.50 in reduced fees related to strategy, research, and drafting the Rule 72 Objections to the Magistrate Judge's order.  Prince Decl. ¶ 6(c).

**NIKE's Discovery to Plaintiffs' Counsel and the Oregonian Regarding the Disclosure:** NIKE informally requested reasonable documents related to the disclosure from the Oregonian and Markowitz, but counsel for both refused.  Prince Decl. ¶ 6(d).  NIKE, thus, was forced to seek formal discovery.  *Id*.  NIKE's counsel spent 60.8 hours and seeks $36,288.70 in reduced fees relating to strategy, preparation of the discovery requests, correspondence with opposing counsel, and analysis and correspondence regarding Markowitz's privilege log.  *Id.* ¶ 6(e).  Moreover, NIKE spent 6.4 hours and seeks $3,948.80 in fees propounding discovery against the Oregonian, corresponding with opposing counsel, and analysis of opposing counsel's responses. *Id.* ¶ 6(d).

**NIKE's Motion to Compel Responses to the Disclosure Discovery:** Because Markowitz and the Oregonian failed to respond to the discovery, NIKE was forced to file a motion to compel. ECF No. 447; ECF No. 448 at 41-42.  NIKE's attorneys spent 60.7 hours and seeks $38,088.80 in reduced fees related to researching, drafting, and preparing for oral argument on the motion.  *Id.* ¶ 6(g).

**Preparing NIKE's Motion for Contempt Against the Oregonian:**  NIKE brought a motion for contempt against the Oregonian in the Ninth Circuit to address the severity of the violations and the Oregonian's continued possession of the Starfish questionnaires.  NIKE spent

around 111.3 hours and seeks $71,451.43 in reduced attorneys' fees related to analyzing Ninth Circuit case law, preparing the brief, and conferences with opposing counsel. *Id.* ¶ 6(j).

**NIKE's Motion for Sanctions Against Plaintiffs' Counsel:** NIKE filed its sanctions motion to address Plaintiffs' counsel's misconduct. NIKE spent 168.9 hours and seeks $109,002.90 in reduced fees for researching relevant case law related to the imposition of sanctions and the court's authority to impose them against Plaintiffs' counsel, preparing and filing the Motion for Sanctions, preparing and filing the reply brief in support of the Motion for Sanctions (which required an extensive effort because it was opposed by both Markowitz and the Plaintiffs themselves), and conferences and email correspondence with opposing counsel. *Id.* ¶ 6(i).

**NIKE's Appeal, Emergency Request for a Stay, and Briefing:** The District Court adopted the Magistrate Judge's order denying Plaintiffs' motion to return the documents. ECF No. 458. NIKE immediately appealed and filed an Emergency Motion for a Temporary Injunction to prevent irreparable harm from publication of the material. *Cahill et al. v. NIKE, Inc.*, No. 24-2199 (9th Cir.), Dkt. No. 3.1. NIKE spent 59.9 hours seeks $38,429.10 in reduced fees related to strategy, research, and drafting the emergency motion. Prince Decl. ¶ 6(f). For the briefing on appeal, NIKE spent 368.4 hours and seeks $234,839.50 in reduced fees related to strategy, research, and drafting the Opening Brief, a motion to seal, the Excerpts of Record, and the Reply Brief. Prince Decl. ¶ 6(h). Due to confidentiality concerns present in the sealed materials, the briefing also required multiple requests for sealing and meetings of counsel regarding the same. *Id.* NIKE anticipates that preparing for oral argument for this appeal, which is scheduled to occur in February or March, 2025, will require more hours from NIKE's counsel and will therefore result in NIKE incurring more fees.

**Preparing NIKE's Motion for Attorney's Fees and Supporting Declaration:** NIKE's attorneys spent around 129.5 hours and seeks $67,537.50 in reduced fees for preparing this motion and supporting declaration, including strategy, conferences with opposing counsel, research, and analyzing Oregon law regarding attorneys' fees briefing. Prince Decl. ¶ 6(k). NIKE anticipates

that preparing the reply briefing and oral argument related to this Motion will require more hours from NIKE's counsel and will therefore result in NIKE incurring more fees.[5]

**E.      Plaintiffs' Counsel's Violation Also Forced NIKE to Incur Costs Related to the Disclosure Litigation.**

NIKE also incurred costs totaling $6,273.15 for (1) serving the Rule 45 Subpoena on Markowitz (totaling $307.10), (2) preparing its opening brief in the Ninth Circuit (totaling $5,109.96) and (3) preparing and filing its reply brief in the Ninth Circuit (totaling $856.09). Prince Decl. ¶ 8. Regarding the second and third costs, NIKE engaged Counsel Press, appellate experts, to help NIKE prepare, format, file, and deliver paper copies of its briefing to the Ninth Circuit.

## III.    ARGUMENT

**A.      NIKE is Entitled to its Reasonable Attorneys' Fees and Costs Due to Plaintiffs' Violation of the Protective Order.**

As this Court has already found, NIKE is entitled to an "award of fees related to defendant's efforts to seek return of the documents and in bringing" the sanctions motion. ECF No. 521. When awarding fees in conjunction with a sanctions award, the Court must award any fees that were incurred due to Plaintiffs' counsel's misconduct and are reasonable. *See Moi v. O'Leary*, 2024 WL 3824395, at *9 (D. Or. Aug. 15, 2024) (court must award fees that have a "causal link" between Plaintiffs' counsel misconduct and the fees paid).

*First*, the fees incurred here, related to the briefing, discovery, sanctions, and appeal of the disclosure issue, would not have been necessary *but for* Salerno Owens' disclosure of sealed documents to the Oregonian. The disclosure is distinct from the heart of this pay and promotion litigation. Without the violation, NIKE would not have had to defend against the Oregonian's Motion to Vacate, seek sanctions against Markowitz, pursue discovery against both, or appeal the District Court's decision to deny return of the documents. NIKE should not have to bear that

---

[5] NIKE reserves its right to supplement its motion and declaration to reflect additional fees related to the reply brief and oral argument related to this motion.

burden. *See Oracle USA, Inc. v. Rimini St., Inc.*, 81 F.4th 843, 858 (9th Cir. 2023) (affirming district court's finding that $630,000 sanctions award was "compensatory" and "appropriate" to sufficiently compensate corporate defendant for plaintiff's contemptuous conduct).

**Second**, the fees are reasonable. "Reasonableness is the benchmark for sanctions based on attorneys' fees." *Mirch v. Frank*, 266 F. App'x 586, 588 (9th Cir. 2008). Courts in the Ninth Circuit generally determine reasonableness of fees following a two-part "lodestar" approach. *Id.* The court calculates the presumptively reasonable lodestar figure by multiplying the hours reasonably spent on the litigation by a reasonable hourly rate. *Id.*; *Moi*, 2024 WL 3824395, at *3-4. Using certain factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), the court may consider adjusting the reasonable rate and/or the hours reasonably spent to reflect the circumstances of the case. *See Chalmers v. Los Angeles*, 796 F.2d 1205, 1212 (9th Cir. 1986). Those factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar case.

*Id.* at 1213. The fees and hours incurred here were reasonable under the circumstances.

### 1. The Hours Spent are Reasonable.

The number of hours Paul Hastings devoted to this case was reasonable in light of the difficulty of the issues, the skill and expertise required, the urgency of much of the briefing, the potential for irreparable harm, and other circumstances of the case. Plaintiffs' counsel chose not to involve the Court or NIKE until well after the breach, causing the subsequent briefing to occur on an emergency basis and from a disadvantage (namely, the Oregonian's possession of the documents for almost a week). ECF No. 426 ¶ 3. On the Oregonian's part, it raised complex prior restraint issues that competed with questions concerning the scope of the Court's inherent power.

ECF Nos. 414 at 4-6, 442 at 4-7. While NIKE maintains that precedent allows return of the documents, the Oregonian argued (and the Court held) differently, requiring extensive research and legal analysis to unpack the complex issue. Prince Decl. ¶ 5; ECF Nos. 431, 436, 458. Although unnecessary, the Plaintiffs also provided briefing in this matter. Prince Decl. ¶ 5. NIKE, in turn, was often forced to respond to the various legal and factual contentions asserted by Plaintiffs, the Oregonian, and the Media Intervenors more generally. *Id.*

Moreover, the issue required detailed analysis and analogizing the case law to the facts—*i.e.*, a party's counsel's disclosure of discovery material to a media organization that was also an intervenor. Prince Decl. ¶ 5. Thus, the issue was novel and required creative and multifaceted legal analysis. NIKE was required to brief this issue twice in this Court. *Id.* Most of the issues were initially briefed by a mid-level attorney with the assistance of a junior attorney. *Id.* ¶ 7. One primary partner oversaw the strategy and edited the briefing, while two additional partners were consulted for their appellate expertise. *Id.* Administrative tasks were delegated to paralegals and staff. *Id.*

The Oregonian and Plaintiffs' counsel also obstructed NIKE's ability to learn the circumstances and extent of the breach. NIKE was, thus, forced to brief a motion to compel, which NIKE won (at least as against Plaintiffs' counsel). ECF No. 480 at 3-4. Plaintiffs' counsel ***still*** did not cooperate, providing only a privilege log for clearly non-privileged communications, leading to further strategy regarding how to secure the documents to which NIKE was entitled.

NIKE's hours preparing the sanctions motion were likewise reasonable. Plaintiffs' violation threatened irreparable harm to non-parties. Moreover, NIKE had to assess the damage and prejudice done to this case by the extensive publication of the Starfish questionnaires, which Plaintiffs have argued to occupy a key role in their case (despite the Court's ruling that such documents have "tangential" relevance, at best). ECF No. 521 at 15.

Finally, NIKE's hours on the appeal were reasonable. Given the complexity of the issues, NIKE sought the expertise of appellate lawyers to oversee the larger strategy for the brief. *See Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 2024 WL 1286936, at *5 (N.D. Cal. Mar. 25,

2024) (awarding $479,137.50 in fees for an appeal to the Ninth Circuit on "complex First Amendment arguments"). NIKE also had to prepare the excerpts of record, totaling five volumes and over 950 pages, and a motion to seal confidential documents within those excerpts.

In sum, the hours spent because of Markowitz's breach were reasonable and necessary.

### 2.    NIKE's Counsel's Rates are Reasonable Under the Circumstances.

The rates requested by NIKE for purposes of this motion are within the range by law firms of similar sizes and capabilities and comport with the rates set forth in the 2022 OSB Survey. Here, while the rates actually charged in this matter were higher, NIKE seeks reduced rates to comport with those charged by comparable firms in the Portland, Oregon area. Specifically, NIKE seeks reduced partner rates at $810 an hour and reduced associate rates at $617 an hour. These rates are consistent with rates for large, international law firms with comparable credentials and skills. *See, e.g.*, *Huynh v. Hous. Auth. of Cnty. of Santa Clara*, No. 14-CV-02367-LHK, 2017 WL 1050539, at *6 (N.D. Cal. Mar. 17, 2017) (approving rates of $862.07, $700, and $676.75 for partners and rates of $530 for sixth year associate *over seven years ago*); *Medina v. Metropolitan Interpreters and Translators, Inc.*, 139 F.Supp. 3d 1170, 1179 (S.D. Cal. 2015), *aff'd*, 742 F. App'x 268 (9th Cir. 2018) (holding $850 per hour reasonable *nine years ago*); *Loretz v. Regal Stone, Ltd.*, 756 F. Supp. 2d 1203, 1211 (N.D. Cal. 2010) (holding rate of $900 and $775 per hour were reasonable considering the complexity of the case and the experience of the attorneys involved *fourteen years ago*); *Rodriguez v. County of Los Angeles*, 96 F.Supp. 3d 1012, 1023 (C.D. Cal. 2014), *aff'd*, 891 F.3d 776 (9th Cir. 2018) (finding attorneys' hourly rate of $975 reasonable based on reputation, skill and experience in request for fees *six years ago*).

The requested rates likewise comport with the rates set forth in the 2022 OSB Survey, as adjusted for inflation, the complexity of this matter, and the *Kerr* factors. LR 54-3. The most recent 2022 OSB Survey uses detailed rates from 2021. In the "Downtown Portland" area, rates in the 95th percentile averaged $686 and a high hourly rate was $1,150. 2022 OSB Survey at 42. As a large international law firm with rates that reflect the skill and capabilities of its attorneys,

Paul Hastings' rates are best assessed in these categories. Adjusted for inflation, those hourly rates are closer to $810 and $1,354.59. As such, NIKE's reduced rates fall within the range (and are in fact lower than the rates adjusted for inflation) set forth in the OSB Survey, and are, thus, reasonable.

Moreover, the complexity of this disclosure issue, the novelty and difficulty of the questions involved, the sensitivity of the subject matter, and the imminent threat of irreparable harm all speak to the reasonableness of the rates here. As explained, the Oregonian raised First Amendment concerns that had to be assessed against the Court's inherent power on facts that had not been directly addressed by any court to date. Proper preparation of the briefing for this issue required analysis and interpretation of complex case law and analogizing to a unique set of facts. All the while, NIKE had to consider strategic and creative avenues for returning the documents, preventing harm to its current and former employees, and seeking compensation and justice for the violations.

Finally, Paul Hastings has served as counsel to NIKE on this matter since 2018, when this class was filed as a class action. Prince Decl. ⁋ 2. The lawyers involved in this case have significant skill and experience handling class actions and complex issues. *Id*. ⁋⁋ 10-14. The rates are reasonable.

### B.    NIKE Should Also Be Awarded Its Reasonable Costs.

NIKE only seeks $6,273.15 in costs. The costs are related to (1) serving a subpoena on Markowitz, which was only necessary because Markowitz refused to cooperate with NIKE's reasonable and informal attempts to understand the circumstances of the breach of the Protective Order; and (2) preparing and filing NIKE's Opening Brief, Excerpts of Record and Reply Brief, which was only necessary because Plaintiffs' counsel was unsuccessful in seeking return of the confidential documents and NIKE was forced to litigate the issue to protect its employees.

IV.    **CONCLUSION**

For the foregoing reasons, NIKE respectfully asks this Court to award NIKE its reduced, reasonable attorneys' fees related to Plaintiffs' counsel's disclosure in violation of the Protective Order, amounting to $771,794.51.  NIKE also asks for an award of its reasonable costs, amounting to $6,273.15, incurred as a result of Plaintiffs' counsel's violation.

Date:  November 27, 2024          */s/ Daniel Prince*

DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
LINDSEY C. JACKSON, Cal. SB# 313396 (*pro hac vice*)
lindseyjackson@paulhastings.com
ALYSSA K. TAPPER, Cal. SB# 324303 (*pro hac vice*)
alyssatapper@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

JOHN A. BERG, OSB# 120018
jberg@littler.com
PAUL E. CIRNER, OSB# 191471
pcirner@littler.com
LITTLER MENDELSON P.C.
1300 SW Fifth Avenue
Wells Fargo Tower, Suite 2050
Portland, OR 97201
Telephone:  (503) 221-0309
Facsimile:  (503) 242-2457