LAURA E. ROSENBAUM, OSB No. 110061
laura.rosenbaum@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

DANIEL PRINCE (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS (*pro hac vice*)
feliciadavis@paulhastings.com
LINDSEY C. JACKSON (*pro hac vice*)
lindseyjackson@paulhastings.com
ALYSSA K. TAPPER (*pro hac vice*)
alyssatapper@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California 90071-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

Attorneys for Defendant NIKE, Inc.


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


| | |
|---|---|
| KELLY CAHILL, et al, individually and on behalf of others similarly situated,<br><br>          Plaintiffs,<br><br>    v.<br><br>NIKE, INC., an Oregon corporation,<br><br>          Defendant. | Case No.: 3:18-cv-01477-AB<br><br>**DEFENDANT NIKE, INC.'S OPPOSITION TO MOTION FOR LEAVE TO FILE A RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>**ORAL ARGUMENT REQUESTED** |

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ...................................................................................1

II.  RELEVANT BACKGROUND ................................................................5

    A.   Plaintiffs Fail To Demonstrate This Matter Is Appropriate As A Class Action. ..................................................................................................5

    B.   Plaintiff Misrepresents Discovery Surrounding The Starfish Questionnaires. .................................................................................8

        1.   Plaintiffs Did Not Diligently Seek Discovery Beyond The Hard-Copy Starfish Questionnaires Before Class Certification. .......................9

        2.   Plaintiff Misrepresents The Post-Class Certification Discovery Surrounding The Starfish Questionnaires. ...............................................10

    C.   Plaintiff Misrepresents The Discovery Related To Setting Starting Pay.............14

III. ARGUMENT ........................................................................................16

    A.   District Courts Have Broad Discretion To Decline To Consider A Renewed Class Certification Motion. .................................................16

    B.   A Renewed Motion Is Not Timely And Would Further Extend An Already-Protracted Litigation That The Putative Class Does Not Appear To Support. ...............................................................................18

    C.   Plaintiff Fails To Identify New Evidence That Would Support A Renewed Attempt At Class Certification, Instead Relying On Recycled Theories.............20

        1.   Plaintiff's "Starfish" Evidence Fails To Change Judge Russo's Well-Reasoned Decision On Commonality For The Disparate Treatment Claim. ...............................................................................21

            a.   The Starfish Questionnaires Do Not Demonstrate A Common Operating Procedure Of Discrimination.......................21

            b.   Plaintiff's "New" Evidence Is Unreliable And Fails To Change The Conclusion That There Is Not Systemwide Discrimination. ...............................................................................25

        2.   Plaintiff Fails To Identify Any Justification For A Renewed Motion For Her Disparate Impact Claim. ...............................................29

            a.   Plaintiff Relies On Evidence That She Had Before The Denial Of Plaintiffs' Class Certification Motion And/Or Relates To Irrelevant Issues To Her Disparate Impact Claim. ...............................................................................30

            b.   Plaintiff Cannot Belatedly Discount The Significant Evidence Of Managerial Discretion Recognized By This Court. ...............................................................................33

            c.   Plaintiff Cannot Establish Commonality Based On The Settlement. ...............................................................................35

IV.  CONCLUSION ....................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amalgamated Transit Union Local 1309 v. Laidlaw Transit Servs., Inc.,*
2010 WL 582134 (S.D. Cal. Feb. 11, 2010) ................................................................ 17

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ....................................................................................................... 35

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
568 U.S. 455 (2013) ......................................................................................................... 2

*Andren v. Alere, Inc.,*
2018 WL 1920179 (S.D. Cal. Apr. 24, 2018) ............................................................... 18

*Armstrong v. Davis,*
275 F.3d 849 (9th Cir. 2001), *abrogated on other grounds by*
*Johnson v. California,*
543 U.S. 499 (2005) .................................................................................................. 1, 17

*Briseno v. ConAgra Foods, Inc.,*
844 F.3d 1121 (9th Cir. 2017) ...................................................................................... 18

*Campbell v. Hawaii State Dep't of Educ.,*
892 F.3d 1005 (9th Cir. 2018) ...................................................................................... 22

*Chen-Oster v. Goldman, Sachs & Co.,*
325 F.R.D. 55 (S.D.N.Y. 2018) ..................................................................................... 22

*Cody v. City of St. Louis ex rel. Medium Sec. Inst.,*
103 F.4th 523 (8th Cir. 2024) ....................................................................................... 18

*Computer Task Grp., Inc. v. Brotby,*
364 F.3d 1112 (9th Cir. 2004) ...................................................................................... 27

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills,*
482 F.3d 1091 (9th Cir. 2007) ...................................................................................... 20

*Daniel F. v. Blue Shield of Cal.,*
2015 WL 3866212 (N.D. Cal. June 22, 2015) .............................................................. 16

*Daniel F. v. Blue Shield of Cal.,*
726 F. App'x 623 (9th Cir. 2018) ................................................................................. 17

*Davidson v. O'Reilly Auto Enters., LLC,*
968 F.3d 955 (2020) ................................................................................................. 17, 18

*Dean v. Colgate-Palmolive Co.,*
772 F. App'x 561 (9th Cir. 2019) ................................................................................. 17

*Dukes v. Wal-Mart Stores, Inc.,*
964 F. Supp. 2d 1115 (N.D. Cal. 2013) ........................................................................ 21

*E.E.O.C. v. Inland Marine Indus.,*
729 F.2d 1229 (9th Cir. 1984) ...................................................................................... 27

*Edwards v. First Am. Corp.*,
  385 F. App'x 629 (9th Cir. 2010) ........................................................20

*Fair Hous. of Marin v. Combs*,
  285 F.3d 899 (9th Cir. 2002) ..............................................................27

*Garcia v. Shasta Beverages, Inc.*,
  2021 WL 1502917 (C.D. Cal. Feb. 25, 2021) ....................................18

*Gustafson v. BAC LP Home Loans Servicing*,
  2014 WL 10988335 (C.D. Cal. Feb. 5, 2014) .............................. 16, 17

*Hargrove v. Sleepy's LLC*,
  974 F.3d 467 (3d Cir. 2020) ................................................................18

*Hartman v. United Bank Card, Inc.*,
  291 F.R.D. 591 (W.D. Wash. 2013) ............................................... 1, 17

*Howard v. Hain Celestial Grp., Inc.*,
  2024 WL 4369648 (N.D. Cal. Oct. 1, 2024), *appeal filed* (9th Cir. Aug. 7, 2025)...............18

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019).......................................................... 4, 35

*In re Initial Public Offering Sec. Litig.*,
  483 F.3d 70 (2d Cir. 2007) ..................................................................17

*In re Lithium Ion Batteries Antitrust Litig.*,
  2018 WL 4215573 (N.D. Cal. Sept. 4, 2018)......................................16

*In re Wellpoint, Inc.*,
  2015 WL 12744265 (C.D. Cal. Mar. 2, 2015) ....................................17

*Kassman v. KPMG LLP*,
  416 F. Supp. 3d 252 (S.D.N.Y. 2018)............................................ 22, 24

*King v. UA Local 91*,
  2020 WL 4003019 (N.D. Ala. July 15, 2020), *appeal filed* (11th Cir. Nov. 6, 2024)...........22

*Little v. Windermere Relocation, Inc.*,
  301 F.3d 958 (9th Cir. 2002)................................................................27

*McCurdy v. Pro. Credit Serv.*,
  2016 WL 5853721 (D. Or. Oct. 3, 2016) ............................................35

*Microsoft Corp. v. Baker*,
  582 U.S. 23 (2017) ..............................................................................18

*Moussouris v. Microsoft Corp.*,
  2018 WL 3328418 (W.D. Wash. June 25, 2018) .......................3, 24, 25

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022)................................................................25

*Parra v. Bashas', Inc.*,
  291 F.R.D. 360 (D. Ariz. 2013)...........................................................19

*Perez v. Safelite Grp., Inc.*,
  553 F. App'x 667 (9th Cir. 2014) ........................................................20

*Reeves v. Sanderson Plumbing Prods., Inc.,*
    530 U.S. 133 (2000) ........................................................................................28

*Reyes v. Netdeposit, LLC,*
    802 F.3d 469 (3d Cir. 2015) ..........................................................................34

*Romero v. Securus Techs., Inc.,*
    331 F.R.D. 391 (S.D. Cal. 2018) ....................................................................18

*Slack v. Swift Transp. Co. of Ariz., LLC,*
    2018 WL 3344790 (W.D. Wash. July 9, 2018) ..............................................18

*Stockinger v. Toyota Motor Sales,*
    2020 WL 7314794 (C.D. Cal. Nov. 30, 2020) .......................................... 17, 19

*Teamsters v. United States,*
    431 U.S. 324 (1977) ........................................................................................23

*Terrill v. Electrolux Home Prods., Inc.,*
    274 F.R.D. 698 (S.D. Ga. 2011) .....................................................................18

*United States v. Castillo,*
    615 F.2d 878 (9th Cir. 1980) ..........................................................................29

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ..................................................................................*passim*

*Williams v. Big Picture Loans, LLC,*
    339 F.R.D. 46 (E.D. Va. 2021), *aff'd,*
    59 F.4th 68 (4th Cir. 2023) .............................................................................21

*Zivkovic v. S. Cal. Edison Co.,*
    302 F.3d 1080 (9th Cir. 2002) ........................................................................30

**RULES**

FED. R. CIV. P. 23 ................................................................................................ 16, 34

FED. R. CIV. P. 23(b)(3)(D) .....................................................................................35

FED. R. CIV. P. 23(c)(1) ...........................................................................................17

FED. R. CIV. P. 23(c)(1)(A) ......................................................................................16

FED. R. CIV. P. 23(c)(1)(C) ......................................................................................16

FED. R. CIV. P. 23(f) ...................................................................................... 1, 4, 8, 19

FED. R. CIV. P. 72 .......................................................................................................8

FED. R. CIV. P. 72(b) ................................................................................................19

## I.     <u>INTRODUCTION</u>

This case is over seven years old.  Plaintiffs had their opportunity to certify a class ***more than three-and-a-half years ago***.  ECF No. 146.  ***The class was not certified.***  ECF No. 310. Plaintiffs sought review of that decision by both the District Court and Ninth Circuit.  ***The class was not certified.***  ECF Nos. 320, 341 at 2.  Plaintiffs likewise have relitigated issues concerning the Starfish questionnaires, and NIKE's lack of policies concerning the use of prior pay, to reopen the class decision.  ECF Nos. 349, 390, 451, 483, 508, 509.  ***The class still was not certified.***  ECF Nos. 386, 480, 521, 542.  Nor should it have been.

Unhappy with the decisions of this Court and the Ninth Circuit, Plaintiff Heather Hender (the only Plaintiff out of four who has not settled her class claims) now sends this case back down the rabbit hole into a legal wonderland where facts and logic are bent.  Plaintiff asks this Court to chase the White Rabbit in circles of endless reconsideration of the same issues with the same core legal deficiencies—under the guise of "new evidence."  This follows more than three years of discovery presided over by Magistrate Judge Russo and Your Honor, NIKE's production of more than 58,000 pages of documents, 654 docket entries (with at least 60 entries devoted to the Starfish questionnaires and other discovery issues), more than 40 depositions of NIKE and third-party witnesses, and three appeals to the Ninth Circuit, including the Ninth Circuit's denial of Plaintiffs' Rule 23(f) petition on class certification.

This Court is well within its "broad discretion" to deny Plaintiff's request for leave when, as here, a renewed motion will simply repackage previously-rejected arguments and evidence. *See, e.g.*, <u>*Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001)</u>, *abrogated on other grounds by* <u>Johnson v. California, 543 U.S. 499, 504-05 (2005)</u>; <u>*Hartman v. United Bank Card, Inc.*, 291 F.R.D. 591, 597 (W.D. Wash. 2013)</u> ("courts should not condone a series of rearguments on the

class issues") (citation omitted).[1]

Judge Russo denied class certification after she monitored *two years of discovery*, including multiple extensions, on a comprehensive record of *600 pages of briefing, 2,000 pages of expert reports*, nearly *3,500 pages of evidence*, and *43 employee declarations*.  ECF No. 310. She wrote a *57-page opinion* finding that commonality for both the disparate impact and disparate treatment claims was not established because the evidence "demonstrates that hiring managers possessed significant discretion" in setting starting pay, *id*. at 39, and Plaintiffs "assume[d]" that any "statistical disparity" was due to systemwide discrimination or "the gathering of prior pay," without demonstrating a "'systemwide pattern or practice' of pervasive discrimination" or that collection and use of prior pay was common class-wide.  *Id*. at 43, 50-51.

Plaintiff correctly notes that the Court's decision turned in large part on employee declarations detailing the significant discretion exercised by NIKE managers.  Plaintiff had the opportunity to submit competing declarations, or depose the declarants, but chose not to do so. Time did not stop and years later, Plaintiff still fails to offer a meaningful rebuttal to that evidence or its relevance.  Plaintiff's argument that the declarations should be disregarded because the declarants did not appear on NIKE's trial witness list is as absurd as the Queen's trial in Wonderland where verdicts precede the evidence.  Those individuals were not identified as trial witnesses because class certification was *denied*.  The trial concerned *only* the four named Plaintiffs' individual claims, and thus witnesses who had no personal knowledge regarding the Plaintiffs were entirely irrelevant.  NIKE is not prohibited from using those declarations or from submitting *new* declarations subject to the Court's ruling on Plaintiff's Motion.  Significant

---

[1] Plaintiff cites *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 479 n.9 (2013), to argue that the class certification order may be amended due to developing circumstances.  ECF No. 652 at 8.  But there are none here.

managerial discretion at NIKE drove this Court's ruling on certification and that alone should lead the Court to deny this Motion.

But other facts also support this conclusion:

- The understanding of the Starfish questionnaires has not changed. There are still only 30 questionnaires that were mostly anonymous and often concerned matters other than pay and promotions. *E.g.*, Declaration of Daniel Prince ("Prince Decl.") Ex. A at 13:3-4, 135:14-15. Your Honor **already rejected** Plaintiffs' arguments otherwise. ECF Nos. 521, 542. Further, as Judge Russo found, "[g]iven the size of the putative class, [the 30 questionnaires are] insufficient to demonstrate a standard operating procedure of discrimination," especially given Plaintiffs' insufficient statistical evidence. ECF No. 310 at 53. Nor does Plaintiff's argument that nine women created the questionnaire change this fact. These women were **not**, as Plaintiff suggests, Executive Vice Presidents or C-suite executives of NIKE. They are **not** representative of the 109 job families Plaintiff seeks to certify, and only **one** of them could have been a class member. ECF No. 42 ¶ 165 (seeking to certify class of employees below Vice President). In short, "[t]he nine accounts are simply not enough to demonstrate that [NIKE] operated under a general policy of discrimination." *Moussouris v. Microsoft Corp.*, 2018 WL 3328418, at *25 (W.D. Wash. June 25, 2018).

- NIKE was ordered to produce only the completed questionnaires prior to class certification. ECF No. 111 at 8. Significantly, Plaintiff did not seek to clarify the Court's order or propound any further discovery. In fact, **despite knowing about Melanie Strong since at least April 2020**, Plaintiffs did not depose her until more than **three years later**. ECF No. 654, Ex. G at 94:19-95:6; ECF No. 439 at 7. Plaintiff's lack of diligence and desire to chase another rabbit is not grounds for a redo.

• Plaintiff relies only on ***one new exhibit*** to support her claim that NIKE had a policy of using prior pay to set starting pay. Plaintiff argues that an email's reference to "requisite information" and a purportedly attached offer intake form that ***is not attached to that email*** should demonstrate that NIKE required the collection of prior pay ***and*** used such information in every instance. False. Setting aside that NIKE produced the Offer Intake Form in ***October 2020***, well before class certification, Plaintiff asks this Court to assume that the same form was attached to the email, even though the email is dated ***five months*** earlier and references two forms instead of one. More importantly, the Court already has found that the Offer Intake Form does "***not suggest the existence of a company-wide policy given the evidence produced through previous discovery***." ECF No. 386 at 5 (emphasis added). Plaintiff offers nothing else to counter this evidence.

• The fact of the near-class settlement, which would have brought finality and certain compensation to the proposed class, demonstrates only Plaintiff's counsel's lack of good faith in those negotiations. The potential settlement says nothing about commonality for class certification purposes. Indeed, it is well-settled that "[t]he criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019). Plaintiff's assertions otherwise are nonsensical.

Unfortunately for Plaintiff, time has not stopped at six o'clock and the tea party cannot go on forever. Nothing new is raised by Plaintiff's Motion that would justify undoing (i) the decision by Judge Russo, who was intimately familiar with the extensive record in this case, (ii) the approval of the decision by the District Court, or (iii) the Ninth Circuit's denial of Rule 23(f) review. This case has been on this Court's docket for ***seven years***. Plaintiff has had many opportunities to pursue her class theories. ECF Nos. 146, 320, 341 at 2. Each of them has failed. So too should

this latest attempt.

## II.    RELEVANT BACKGROUND[2]

### A.    Plaintiffs Fail To Demonstrate This Matter Is Appropriate As A Class Action.

Plaintiffs initiated this matter on August 9, 2018, seeking to bring pay and promotion discrimination claims on behalf of themselves and allegedly similarly situated women.  ECF No. 1. Before class certification, the parties engaged in nearly two years of fact discovery between June 2019 and May 2021.  ECF Nos. 80, 140.

Plaintiffs filed their class certification motion on January 10, 2022, seeking to certify a class of 5,200 women across 109 different job families and 1,200 different job codes.  ECF No. 146 at 12, 17-24; ECF No. 310 at 8, 35.  While Plaintiff's current Motion does not include much discussion regarding Plaintiffs' original class certification arguments, *see* ECF No. 652 at 14, understanding Plaintiffs' original class certification arguments is key to the Motion here.

At class certification, to support their disparate impact claim, Plaintiffs argued that, before October 2017, NIKE had a policy or practice of using a new hire's prior pay to set starting pay. ECF No. 146 at 21-24.  Plaintiffs noted that NIKE told its hiring managers that it can no longer ask about prior pay after a change in Oregon law in 2017.  *Id*.  Plaintiffs likewise relied on statistical evidence purportedly demonstrating pay disparities to support their theory.

In response, NIKE argued that it did ***not*** have a ***policy or practice*** of using prior pay before October 2017.  ECF No 183 at 19-22.  NIKE presented significant evidence including 43 declarations from hiring managers, recruiters, and putative class members confirming that, while

---

[2] In an effort to provide clarity to the Court, given Plaintiff's focus on the protracted discovery history in this case, appended to the Prince Declaration are the following: (1) a timeline and chart of the key "Starfish"-related events cited in Plaintiff's Motion; (2) a timeline and chart of the key events related to prior pay cited in the Motion; and (3) a summary chart of Plaintiff's exhibits to the Motion and the production history of the documents.  Prince Decl. ¶ 17, Appxs. 1-3.

some managers asked about prior pay in interviews, many did not. *Id*. at 19-22; ECF No. 187-l.

For their disparate treatment claim, Plaintiffs argued that the "Starfish Survey" showed a pattern of discrimination at NIKE that Human Resources had been ineffective at addressing, attaching only *six* questionnaires to their motion. ECF No. 146 at 37-38. Plaintiffs argued that several "Vice President[s]" and other women at NIKE made complaints that addressed a discriminatory "culture" at NIKE and against executives and HR. *Id*. at 38. Additionally, Plaintiffs argued that NIKE's then-CEO, Mark Parker, addressed the questionnaires in a company-wide email in which Mr. Parker discussed "behavior" in the organization and the restructuring of the leadership team, including the departures of certain employees. *Id*. at 40-41. Plaintiffs' theory was that the questionnaires themselves, as well as NIKE's response, including the subsequent investigation, demonstrated that class certification "will generate answers regarding whether Nike has engaged in a pattern or practice of disparate treatment." *Id*. at 58-59.

In response, NIKE argued that the Starfish questionnaires were an "informal collection (in early 2018) of about 30 complaints" that were "mostly anonymous." ECF No. 183 at 32. However, NIKE confirmed that an attorney-led investigation was conducted in response; individuals exited NIKE thereafter. *Id*. at 33. NIKE argued that the limited anecdotal evidence provided by 30 questionnaires was insufficient to raise any inference that NIKE engaged in systemwide discrimination impacting +5,000 employees. *Id*. at 50-52. NIKE also argued that Mr. Parker's email and NIKE's response to the questionnaires were insufficient. If anything, it demonstrated that, rather than condone discrimination, NIKE conducted an internal review to improve its culture. *Id*. at 52.

Judge Russo issued her 57-page Findings and Recommendations denying Plaintiffs' class certification motion on November 22, 2022 (the "Recommendations"). ECF No. 310. As it related

to Plaintiffs' disparate impact claim, Judge Russo found that the evidence did *not* "tip the scales in favor of a class-wide policy, rather it demonstrates that hiring managers possessed significant discretion." ECF No. 310 at 39. The Court found that the record demonstrated that hiring managers sometimes did and sometimes did not use prior pay before October 2017. *Id*. at 39-40. While Plaintiffs offered a statistical analysis, the Court found that under *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), Plaintiffs put the "cart before the horse," *id*. at 39, by failing to provide the common thread for discrimination. Plaintiffs merely "assume[d] the gathering of prior pay history is to blame [for the statistical disparity] without showing that the gathering of such information was common class-wide regardless of the job applied for, the department in which the job was located, or the educational, experiential, and other requirements for the job[.]" *Id*. at 43.

Judge Russo also found that the statistical evidence in light of the managerial discretion at NIKE was insufficient to support a disparate treatment claim. ECF No. 310 at 51-52. Judge Russo found that the anecdotal evidence in the form of the Starfish questionnaires could not fill in the gap left by the statistical evidence. This was true, even though Judge Russo examined the questionnaires in detail, noting that Plaintiffs identified "approximately 22 Nike executives" who purportedly condoned discrimination and "approximately 30 complaints," and that the questionnaires claimed that HR refused to act on discriminatory behavior. *Id*. at 19. The Court likewise discussed NIKE's response to the questionnaires, Mr. Parker's email, and the allegation that certain employees left NIKE following the questionnaires. *Id*. at 20-21. Ultimately, however, the Court concluded that "[g]iven the size of the putative class, [the Starfish questionnaires were] insufficient to demonstrate a standard operating procedure of discrimination." *Id*. at 53. Judge Russo also explained that NIKE's response failed to show the common operating procedure of

failing to address discrimination.[3]  *Id.*

Plaintiffs filed Rule 72 objections to the Recommendations on December 22, 2022.  ECF No. 320.  Chief Judge Hernandez overruled the objections, adopting the Recommendations on March 21, 2023.  ECF No. 335.  Plaintiffs filed a Rule 23(f) petition in the Ninth Circuit.  ECF No. 341 at 2.  The Ninth Circuit denied their Rule 23(f) petition on June 1, 2023.  *Id.*

## B.    **Plaintiff Misrepresents Discovery Surrounding The Starfish Questionnaires.**

Plaintiff's claims in this case are clear:  NIKE "pays and promotes women less than men at N[IKE] headquarters," ECF Nos. 1 ¶ 4 & 377 ¶ 4.  This is ***not***, nor has it ever been, a harassment case.  Yet Plaintiff here tries to shift the scope of her claims to amplify the importance of the Starfish questionnaires.  *See* ECF No. 652 at 23-31.

While Plaintiff's claims are about pay and promotions, the Starfish questionnaires were not.  The questionnaires were an informal effort led by a handful of NIKE employees who distributed questionnaires by hand to employees in their departments to gauge sentiment regarding claims of harassment or other experiences.  *E.g.*, ECF No. 511-2 at 160; Prince Decl. Ex. A at 13:3-8, 16:3-14, 24:23-25:1, 57:5-13, 61:18-23, 62:8-15, 135:14-15, 137:6-14; *Id.* Ex. B at 83:4-16; ECF No. 517 Ex. C at 17:1-13, 17:22-18:10.  The questionnaires were hand-delivered to NIKE by an employee named Nicole Hubbard Graham in or around February 2018.  Prince Decl. Ex. A at 13:3-8; ECF No. 517 Ex. C at 55:25-56:4.  None of the named Plaintiffs submitted Starfish questionnaires.  ECF No. 517 Ex. A at 298:19-299:10, Ex. B at 275:5-6.

---

[3] Plaintiff cites the Ninth Circuit's opinion on whether the Starfish questionnaires that were submitted at class certification could be sealed to suggest that the Starfish questionnaires were crucial to the class certification decision.  *See* ECF No. 652 at 9.  Plaintiffs submitted *six* questionnaires, and while Plaintiffs tried to emphasize their importance, the Court hinged its decision on the lack of statistical evidence demonstrating a common operating procedure of discrimination.  ECF No. 310 at 52-54.

1.     **Plaintiffs Did Not Diligently Seek Discovery Beyond The Hard-Copy Starfish Questionnaires Before Class Certification.**

Plaintiff claims NIKE wrongfully withheld Starfish evidence since March 2019.  ECF No. 652 at 16.  However, Plaintiff conflates the information she desired with what the Court ordered NIKE to produce.  *Id*.  This attempt to muddy the record is not new; Plaintiffs tried to do so many times, each of which was flatly rejected by this Court.  *E.g.*, ECF Nos. 480, 521, 542.

In March 2019, Plaintiffs sought all documents relating to "Starfish" and any survey concerning sex discrimination.  ECF No. 517, ¶ 8 Ex. F.  NIKE objected but later agreed to produce documents relating to complaints of discrimination by or relating to the named Plaintiffs.  *Id*. ¶ 9, Ex. G.  On September 27, 2019, Plaintiffs moved to compel, arguing that NIKE should produce complaints beyond those that relate to the named Plaintiffs.  *Id*., ¶ 10, Ex. H.  On October 31, 2019, the Court ordered NIKE to produce "any [discrimination] complaints made by any named plaintiff or [ ] putative plaintiffs" and that complaints from other non-Plaintiff complainants should only be produced if they relate to "compensation, promotion, or performance reviews and specific complaints that male colleagues received favorable treatment."  ECF No. 89; *see also* ECF No. 517, ¶ 11, Ex. I at 9, n.8.  NIKE complied with the Court's order; producing responsive Starfish questionnaires and internal complaints.  ECF No. 517, ¶ 16.

On June 30, 2020, Plaintiffs filed another motion to compel relating to "Starfish."  ECF No. 517 ¶ 11, Ex. I at 12.  Plaintiffs did not ask the Court for all documents or communications referencing "Starfish," but rather the completed questionnaires.  *See id*. at 13, n.9 (referencing the "survey" "entr[ies]").  On August 10, 2020, the Court ordered NIKE to produce "***the complete survey results***" that were provided to NIKE prior to March 5, 2018.  ECF No. 111 at 8 (emphasis added).  The Court did ***not*** order NIKE to produce communications or documents relating to the questionnaires or any subsequent investigations.  *Id*.  NIKE produced the packet of questionnaires

that were hand-delivered to NIKE.  ECF No. 517 Ex. E at 93:16-17 ("hard copies were provided to me and Hilary").

Plaintiffs did ***not*** depose (or even seek to depose) any of the persons identified in the Starfish questionnaires NIKE produced.  Prince Decl. ¶ 10 (the questionnaires contained at least 15 names of complainants and other persons).  Moreover, Plaintiff now alleges that NIKE improperly blocked discovery and engaged in misrepresentations prior to class certification.  That is false, and Plaintiff is less than candid here.  For example, despite Plaintiff's representation that she did not know about Melanie Strong until after class certification, the record confirms otherwise.  As Plaintiff admits in her Motion, her counsel knew about Ms. Strong by February 22, 2021 (*i.e.*, ***almost a year before class certification***), when they questioned Ms. Matheson about her.  ECF No. 654, Ex. G at 94:19-95:6.  Yet, Plaintiffs waited ***more than three years*** to take Ms. Strong's deposition.  This hardly demonstrates diligence.[4]

Plaintiffs also did ***not*** seek to challenge or clarify the Court's order after NIKE produced the questionnaires.  Nor did Plaintiffs seek further discovery about the Starfish questionnaires until well after the certification ruling.

### 2.    Plaintiff Misrepresents The Post-Class Certification Discovery Surrounding The Starfish Questionnaires.

Plaintiff's characterization of post-class certification discovery also is incorrect.  Because class certification was denied, discovery thereafter was, as stated by Plaintiffs, intended to primarily focus on the "Plaintiffs' individual claims."[5]  None of the named Plaintiffs completed a Starfish questionnaire, ECF No. 517, Ex. A at 298:19-299:10, Ex. B at 275:5-6; however,

---

[4] Thus, Plaintiff's assertion that Ms. Long's testimony first revealed Ms. Strong's name is false.

[5] While Plaintiffs argued that some broader discovery was needed, they limited it to the disparate impact claims (*i.e.*, the pre-October 2017 prior pay theory).  ECF No. 341 at 5.

Plaintiffs focused much of their efforts on pursuing Starfish discovery. ECF Nos. 349, 390, 451, 483, 508, 509. Plaintiff now attempts to frame NIKE's oppositions to such attempts as "resist[ing]" discovery, ECF No. 652 at 22, but NIKE argued the truth—*i.e.*, that there was ***no*** "nexus between 'Starfish', [and] the named Plaintiffs." ECF No. 347 at 6; *see also, e.g.*, ECF No. 443 at 6. ***The Court agreed***. As Judge Russo found after numerous motions surrounding Plaintiffs' attempts to obtain more Starfish discovery, the questionnaires had, at most, a "tangential" relation to the Plaintiffs' claims and further discovery into the matter would be "disproportionate" to the needs of the case. ECF No. 521 at 15. ***Your Honor affirmed this decision***. ECF No. 542. Moreover, NIKE's characterization of the questionnaires as "unsubstantiated," "mostly anonymous," and from a "small group," was true then and is true now. Prince Decl. ¶ 10 (at least 21 questionnaires were anonymous), Ex. B at 83:15 ("It was not a formally run survey by NIKE[.]"), Ex. A at 13:3-8, 25:1, 57:5-13 ("we were trying to keep it to a small group of people"); 118:12-17 (noting that there were approximately 30 questionnaires delivered to NIKE); ECF No. 441 (same), ECF No. 439 at 6 (same). Thus, NIKE did not seek to "block" evidence; it argued that the questionnaires were not relevant or proportional to the Plaintiff's individual pay claims. And the Court agreed.

Plaintiffs proceeded with their discovery pursuit anyway, taking Genevieve Long's deposition on September 27, 2023, without confirming it was proceeding over NIKE's objections and without the presence of the sole defendant, NIKE. ECF No. 356. Plaintiff claims that Ms. Long's testimony reveals that there were over 100 Starfish questionnaires. ECF No. 652 at 21. But Ms. Long admitted that she has ***no personal knowledge*** of this alleged fact, relies on ***double hearsay***, and does not remember who told her that there were 100 claimed questionnaires. ECF No. 654 Ex. C at 45:5-18. The evidentiary issues also do not account for the significant credibility

concerns that shape her testimony,[6] which are rendered even more concerning by the lack of cross-examination for Ms. Long, as this Court has acknowledged. ECF No. 381 ¶¶ 3-4. Yet, Plaintiffs *still* waited *another six months* to take Ms. Strong's deposition.[7]

Notwithstanding the March 29, 2024 discovery cut-off, Plaintiffs propounded their Seventh Set of RFPs and deposition notices / subpoenas on March 15, 2024. ECF No. 443-1 Exs. A-D. This round of RFPs broadly sought documents and communications relating to the Starfish questionnaires, meetings that occurred thereafter, and the subsequent privileged investigation. ECF No. 517, Ex. K. Plaintiffs likewise sought to depose NIKE employees, Nicole Graham and Jamie Jeffries, as well as NIKE's former General Counsel, Ms. Krane. ECF No. 443-1, Exs. B-D.

Unlike any prior discovery order relating to Starfish, this set of RFPs sought communications pertaining to the questionnaires, and thus NIKE conducted an ESI search for emails relating to the Starfish questionnaires. *See* ECF No. 111 at 8; Prince Decl. ¶ 13. NIKE produced 223 non-privileged communications. *Id.* Plaintiff as argues that these documents were the "phantom documents" that NIKE previously told the Court did not exist, but this misrepresents the record. ECF No. 652 at 22. NIKE produced meeting invitations mentioning "Starfish" in the subject line; discussions between Ms. Graham, Ms. Strong, and others involving the Starfish questionnaires; and a handful of questionnaires (most of which were dated after the packet of

---

[6] Ms. Long's employment was terminated in or around November 1, 2018 for failing to meet NIKE's expectations for her position as an HRBP. *See* ECF No. 381 at ¶ 4. Specifically, she violated the company policy by using her company credit card for thousands of dollars in personal expenses (such as first-class airfare, toys, clothes, books, jewelry, etc.), and then failed to pay the bill on those personal expenses herself, many of which she submitted to NIKE for reimbursement. *Id.* When confronted with these issues, Ms. Long was not forthcoming in her explanation. *Id.*

[7] Plaintiff claims that counsel's delay was because of Ms. Strong's travel plans, but the declaration fails to demonstrate when counsel tried to contact Ms. Strong except stating they were in communication with her in "November"—three months after Ms. Long's deposition. ECF No. 449 at 12. More importantly, this does not explain why Plaintiffs did not seek to make this contact when they knew of her involvement in the Starfish questionnaires in February 2021.

questionnaires were given to Ms. Matheson and Ms. Krane) that NIKE found through its detailed ESI search.[8]  ECF No. 517, ¶¶ 18-19.  NIKE never argued that documents mentioning the word "Starfish" did not exist.  Rather, NIKE's reference to "phantom documents" is to the 270 questionnaires Plaintiffs claimed were being hidden by NIKE.  *See* ECF No. 439 at 8 (arguing that Plaintiffs sought to extend the discovery schedule "based on phantom ***Starfish complaint documents*** that NIKE ***never received***[.]" (emphasis added)).  *See* Prince Decl. Ex. A 118:12-22, 135:14-15 (testifying to existence of only 30 Starfish surveys, not 300).  That NIKE found five questionnaires after searching emails speaks to the lengths NIKE took to find responsive documents.  *See* ECF No. 517, ¶¶ 18-19.  It does not establish a lack of diligence.

NIKE also produced a privilege log because Plaintiffs' RFPs explicitly sought *privileged* communications with NIKE's former General Counsel and outside counsel.  ECF No. 517 ¶ 18.  Plaintiff should not be surprised that communications with lawyers would be privileged and need to be logged.  Nor does it suggest that there are nearly 270 "missing" Starfish questionnaires.  Starfish or not, as NIKE has said all along, NIKE conducts investigations into complaints it receives, and email traffic between attorneys naturally exists as part of those investigations.

Ms. Jeffries' and Ms. Graham's depositions proceeded on June 14, 2024 and June 20, 2024, respectively.  Plaintiff claims that these depositions, combined with the hearsay testimony from Ms. Strong and Ms. Long, constitute new evidence showing a pattern of discrimination at NIKE.  In reality, the depositions confirmed what NIKE, and this Court, already knew:  the Starfish questionnaires were an informal effort led by a "small" group of employees that resulted in

---

[8] Notably, Ms. Graham, in response to her deposition notice, found copies of the packet of the very questionnaires that she delivered to Ms. Matheson and Ms. Krane in 2018 in a box in her garage.  ECF No. 517 Ex. C at 21:19-23; *Id.* at 70:5-25.  No additional questionnaires beyond the questionnaires that NIKE produced in or about Fall 2020 were found.

approximately 30 (often anonymous) questionnaires being delivered to NIKE.  Prince Decl. ¶ 10 (at least 21 questionnaires were anonymous), Ex. B at 83:15 ("It was not a formally run survey by NIKE[.]"), Ex. A at 13:3-8, 25:1, 57:5-13 ("we were trying to keep it to a small group of people"); 118:12-17 (noting that there were approximately 30 questionnaires delivered to NIKE); ECF No. 441 (same), ECF No. 439 at 5 (same).  This is exactly what NIKE argued at class certification. ECF No. 183 at 32.   Though Plaintiffs have argued that NIKE received 300 questionnaires, Ms. Graham (who, even according to Ms. Strong, is the only witness with personal knowledge, Prince Decl. Ex. B at 50:7-51:2) confirmed that she delivered only around 30 questionnaires.  *Id*. Ex. A 118:12-17.  She likewise testified, in direct contradiction to Ms. Strong, that she "was never at a meeting where [they] sorted through 300 surveys."  *Compare id*. at 135:14-15 *with* ECF No. 517 Ex. M at 26:14-27:7.

### C.    Plaintiff Misrepresents The Discovery Related To Setting Starting Pay.

Plaintiff likewise incorrectly recounts discovery concerning how managers at NIKE set starting pay for new hires.  ECF No. 652 at 31-34.  Plaintiff relies on the Offer Intake Form to justify a new motion, but ***this exact form was produced on October 12, 2020—fifteen months before class certification***—and referenced by her own expert.  Prince Decl. ¶ 7, Ex. E at 1-5, 116-122; ECF No. 652 at 32-33; ECF No. 148-1 at 197.  This form provides nothing new.

Moreover, NIKE did not withhold "documents and communications" regarding NIKE's purported pre-October 2017 starting pay practices[9]  ECF No. 652 at 18.  Again, NIKE produced

---

[9] NIKE produced the "new" documents when Plaintiffs, for the first time and after class certification was denied, sought *communications* relating to the Offer Intake Form.  *See* Prince Decl. ¶ 14.  Specifically, Plaintiffs sought "All Documents and Communications from November 2012 through November 1, 2017 Relating To or containing the following Boolean search terms and/or connectors:  offer! /5; intake!; form!; model!."  *Id*.  NIKE originally objected, noting the improper form of the request, but eventually came to an agreement and produced *email communications* hitting on those searches.  *Id*.

what it was ordered to produce: "uniform **policies** it maintained during the relevant time periods regarding hiring, firing, pay, promotions, and compensation systems." ECF No. 89 (emphasis added). It was never ordered to produce all communications that may touch on these topics. More importantly, NIKE consistently noted that it could not locate policies regarding the collection and use of prior pay to set starting pay before October 2017 because such policies did not exist. *Id*. at 5. Multiple deponents and many NIKE declarants confirmed that NIKE did **not** have a policy requiring use of prior salary when setting starting pay. *Id*. Exs. D-G.

After class certification was denied, Plaintiffs continued their discovery in this area. They demanded NIKE conduct yet another search — this time relying on the Offer Intake Form NIKE produced years earlier, but their request was denied by the Court."[10] Prince Decl. Ex. F; ECF No. 386 at 5 (the Court found that the Offer Intake Form did "not suggest the existence of a company-wide policy given the evidence produced through previous discovery including the depositions of a Senior Director for Talent Acquisition and a Senior Director of Global Compensation among others."). Plaintiff repeats the same erroneous argument in this Motion, and for the same reason it should be denied. The production of an email that pre-dates the Offer Intake Form, and which did not attach the Offer Intake Form, does not somehow transform the Offer Intake Form into evidence of a company-wide policy or practice related to starting pay. *See, infra,* Section III.C.2.a. It also cannot overcome the volume of evidence NIKE presented at class certification, which supported the Court's "finding that hiring managers exercised discretion and determined what factors to apply in setting starting pay." *See* ECF No. 310 at 44-45.

---

[10] Plaintiff also misconstrues what NIKE said in its Opposition to the motion to compel, suggesting NIKE said it was not withholding "communications relating to" the Offer Intake Form. ECF No. 652 at 32. NIKE actually said: "Plaintiffs now claim (falsely) that NIKE has failed to produce all pre-October 2017 versions of an Offer Intake Form and communications relating thereto. ECF No. 354 at 5. NIKE also explained that it was not required to produce communications. *Id*. at 3.

## III.    ARGUMENT

### A.    District Courts Have Broad Discretion To Decline To Consider A Renewed Class Certification Motion.

Plaintiff argues that Rule 23 authorizes her to file a renewed class certification motion, with no showing of new evidence, changed circumstances, or diligence in seeking to challenge Judge Russo's well-reasoned order.  ECF No. 652 at 11-13.  Plaintiff is incorrect.

Rule 23(c)(1)(A) requires prompt determination of class status.  It instructs district courts: "At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."  Fed. R. Civ. P. 23(c)(1)(A). Rule 23(c)(1)(C) does not expressly contemplate the filing of a motion for renewed class certification, instead providing that "[a]n order that grants or denies class certification may be altered or amended before final judgment."  Fed. R. Civ. P. 23(c)(1)(C).  Accordingly, courts often find that Rule 23(c)(1)(C) "is not a separate mechanism by which a party can seek reconsideration of a prior order relating to class certification."  *Daniel F. v. Blue Shield of Cal.*, 2015 WL 3866212, at *3 (N.D. Cal. June 22, 2015); *In re Lithium Ion Batteries Antitrust Litig.*, 2018 WL 4215573, at *4 (N.D. Cal. Sept. 4, 2018) (same).  The rule authorizes *the court* to amend a class certification order at any time prior to judgment—a tool that was available to Judge Russo for *more than two years* (even when confronted with Plaintiffs' arguments about the Starfish questionnaires, *e.g.*, ECF Nos. 349, 390, 451, 483, 508, 509), but which she did *not* find appropriate to use.

With these rules as a foundation, district courts often require leave before a plaintiff may file a renewed motion for class certification and routinely require plaintiffs to "show some justification for filing a second motion," either new evidence or changed circumstances, and a demonstration of diligence, "and not simply a desire to have a second or third run at the same issue."  *Gustafson v. BAC LP Home Loans Servicing*, 2014 WL 10988335, at *2 (C.D. Cal. Feb.

5, 2014); *see, e.g.*, *Hartman*, 291 F.R.D. at 597. Such factors are key, as allowing repeated bites at the class certification apple "would promote tactics that waste the limited resources of the Court[,] unnecessarily protract the litigation," and prejudice defendants, requiring them to revisit the same issues, *Gustafson*, 2014 WL 10988335, at *2; *In re Wellpoint, Inc.*, 2015 WL 12744265, at *4 (C.D. Cal. Mar. 2, 2015). Rule 23(c)(1) "*is not a Trojan Horse* by which Plaintiffs may endlessly reargue the legal premises of their motion." *Stockinger v. Toyota Motor Sales*, 2020 WL 7314794, at *3 (C.D. Cal. Nov. 30, 2020) (emphasis added, citation omitted).

Thus, district courts have considerable discretion to deny requests for a renewed class certification motion—a decision that is rarely disturbed on appeal. *See, e.g.*, *Armstrong*, 275 F.3d at 871 n.28 (district courts have broad discretion to revisit class certification); *Amalgamated Transit Union Local 1309 v. Laidlaw Transit Servs., Inc.*, 2010 WL 582134, at *7 (S.D. Cal. Feb. 11, 2010) (same); *In re Initial Public Offering Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007) (same). Indeed, the Ninth Circuit has upheld denials of motions for leave to file renewed class certification motions based on the failure to exercise sufficient diligence and to cure the flaws in the prior motion. *See, e.g.*, *Dean v. Colgate-Palmolive*, 772 F. App'x 561, 562 (9th Cir. 2019); *Daniel F. v. Blue Shield of Cal.*, 726 F. App'x 623, 623 (9th Cir. 2018).

Plaintiff claims the Court is obligated to permit its renewed motion, citing a footnote in a Ninth Circuit case without regard to the differing facts involved. ECF No. 652 at 11. In *Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955 (2020), the court did ***not*** review a motion for leave to renew class certification, nor did the Ninth Circuit address the district court's discretion or set forth a standard for altering or amending a class certification order. More importantly, *Davidson* does ***not*** hold that a court ***must*** consider a renewed class certification motion. Rather, it held that the district court did not abuse its discretion in declining to extend the deadline to file a motion for

class certification, noting the district court's significant discretion in managing its docket. *Id.* *at 964*. Case law both before and after *Davidson* provide district courts discretion to manage their dockets efficiently and place the burden on plaintiffs to show changed circumstances before allowing another opportunity at class certification.[11] *See, e.g.*, *Howard v. Hain Celestial Grp., Inc.*, 2024 WL 4369648, at \*5 (N.D. Cal. Oct. 1, 2024), *appeal filed* (9th Cir. Aug. 7, 2025); *Garcia v. Shasta Beverages, Inc.*, 2021 WL 1502917, at \*4 (C.D. Cal. Feb. 25, 2021).

This Court is not obligated to permit Plaintiff's renewed class certification motion. Courts can—and do—require more than a request to repackage the same theory or to disregard counsel's own lack of diligence to justify the motion.

**B.    A Renewed Motion Is Not Timely And Would Further Extend An Already-Protracted Litigation That The Putative Class Does Not Appear To Support.**

Plaintiffs filed their motion for class certification on January 10, 2022, after three extensions of the deadline to allow for additional class discovery. ECF Nos. 134, 140, 142, 146. Judge Russo issued her ruling on November 22, 2022. ECF No. 310. Now, ***nearly three years***

---

[11] Plaintiff's other case law is likewise inapposite, distinguishable, or is not controlling in this circuit. *See, e.g.*, *Cody v. City of St. Louis ex rel. Medium Sec. Inst.*, 103 F.4th 523 (8th Cir. 2024); *Hargrove v. Sleepy's LLC*, 974 F.3d 467 (3d Cir. 2020). For example, *Microsoft Corp. v. Baker*, 582 U.S. 23 (2017), which asked whether the Ninth Circuit had jurisdiction to entertain a denial of an interlocutory appeal after plaintiffs voluntarily dismissed, did not involve a motion for leave to file a renewed class certification and did not set forth any standard for determining whether leave is appropriate. Likewise, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) did not analyze whether a *renewed* class certification motion was appropriate. Additionally, in *Romero v. Securus Techs., Inc.*, 331 F.R.D. 391 (S.D. Cal. 2018), the defendant did not dispute that it did not produce documents despite being requested before class certification—facts not present here. *Slack v. Swift Transp. Co. of Ariz., LLC*, 2018 WL 3344790 (W.D. Wash. July 9, 2018) likewise involved modifying a class that was certified to more accurately reflect the evidence; not allowing a renewed motion after denial. Moreover, some of Plaintiff's authority simply highlights the Court's discretion to allow modification of the class certification order. *See, e.g.*, *Andren v. Alere, Inc.*, 2018 WL 1920179 (S.D. Cal. Apr. 24, 2018); *Terrill v. Electrolux Home Prods., Inc.*, 274 F.R.D. 698, 700-01 (S.D. Ga. 2011) (noting courts' broad discretion in denying leave especially when circumstances have not changed).

*later*—after denial of Rule 72(b) objections (ECF No. 335), denial of a Rule 23(f) petition (ECF No. 339 at 2), more than a year after the close of discovery (ECF No. 342), preparation for trial, and an almost settlement (ECF No. 642), Plaintiff asks the Court to consider at the same issues, presenting a skewed version of the record in an attempt to justify her belated motion. Courts have declined to consider renewed class certification motions on much less. *See, e.g.*, *Stockinger*, 2020 WL 7314794, at *4 ("the court will not provide [plaintiff] with leave to file a renewed motion for class certification, where the motion is simply an attempt to revisit this unsuccessful tactical decision").[12]

As this Court is aware, before this motion, the parties had been working for nearly six months toward a settlement that would fully and finally resolve the claims in this action, including Plaintiff's right to appeal the underlying class certification ruling. *E.g.*, ECF No. 637. After agreeing to the key terms—including the settlement amount and the scope of the releases—Plaintiff's counsel suddenly retracted their interest in the settlement. Counsel then told this Court that they wanted to revisit class certification, suggesting they had new evidence. ECF No. 650. They do not. But even accepting Plaintiff's misrepresentations regarding discovery as true, Plaintiff admittedly had the evidence cited in her Motion by, at latest, ***October 2024***. ECF No. 652 at 22-23. Even under the most generous analysis (which would be inconsistent with the record), Plaintiff waited ***an entire year***, during which three of the named Plaintiffs settled all of their claims and Plaintiff Hender settled her non-class claims, to advance this theory. At best, Plaintiff's counsel has failed to act diligently, wasting this Court's time and prejudicing NIKE in the process.

---

[12] Plaintiff cites *Parra v. Bashas', Inc.*, 291 F.R.D. 360 (D. Ariz. 2013), to suggest that courts will entertain renewed class certification motion years after their original denial. But the circumstances there were unique. The case was subjected to an automatic stay due to bankruptcy and the court decided to defer ruling on the class certification issues pending a decision in *Dukes*, 564 U.S. 338.

At worst, the conduct is indicative of the failure to act in the best interest of the putative class.

The facts support the latter. Since the Court's denial of class certification in November 2022, all of the Opt-In Plaintiffs voluntarily dismissed themselves from the case. ECF No. 398. Not a single putative class member has filed an individual pay equity lawsuit against NIKE. Prince Decl. ¶ 16. Three of the four named Plaintiffs have moved on. While Plaintiff's counsel appears unable to move on, the class's interest in this action can, at best, be described as indifference. In any event, a denial of this belated motion would not deprive Plaintiffs of an opportunity to pursue their claims. It would confirm what has been true all along: the claims are more appropriate for individualized resolution. ECF No. 310 at 55.

### C.    Plaintiff Fails To Identify New Evidence That Would Support A Renewed Attempt At Class Certification, Instead Relying On Recycled Theories.

Plaintiff argues that new evidence supports a second chance at class certification. However, of the 38 exhibits Plaintiff attaches to her Motion, almost half are documents (or exact duplicates of documents) that were produced *before* class certification. Prince Decl. ¶ 14. Another eight (exhibits 23 through 29 and 31) are used by Plaintiff to argue that NIKE's Total Rewards team was involved in pay practices, which it does *not* dispute, but does *not* demonstrate that NIKE had a policy or practice of using prior pay to set starting pay. *Id.*; ECF No. 652 at 33. Thus, Plaintiff believes that about *ten* documents—some of which are meeting invites with no substance—should justify her motion. But these documents still fail to demonstrate that the class certification order should be altered or amended.[13]

---

[13] Plaintiff's citation to *Perez v. Safelite Grp., Inc.*, 553 F. App'x 667 (9th Cir. 2014), is inapposite. This case found the court abused its discretion by not allowing plaintiff time for class certification discovery. It says nothing about the facts here—namely, that Plaintiffs had years of pre-class certification discovery, which was extended to allow for even more discovery. Any discovery not obtained was due to Plaintiff's lack of diligence. The same is true for *Edwards v. First Am. Corp.*, 385 F. App'x 629 (9th Cir. 2010), which had to do with the district court's denial of class certification discovery. No such facts are present here. *Conn. Gen. Life Ins. Co. v. New Images*

1.    **Plaintiff's "Starfish" Evidence Fails To Change Judge Russo's Well-Reasoned Decision On Commonality For The Disparate Treatment Claim.**

Plaintiff's disparate treatment theory has not changed.  Just like the first motion, Plaintiff argues that the Starfish questionnaires involved high-level executives and demonstrates a failure by NIKE to take discrimination complaints seriously.  *See* ECF No. 146 at 58-59; ECF No. 652 at 24-26.  The "new" evidence does not add anything this Court has not already considered and fails to fix the legal insufficiencies that grounded the Court's class certification ruling.

a.    **The Starfish Questionnaires Do Not Demonstrate A Common Operating Procedure Of Discrimination.**

A disparate treatment claim requires Plaintiff to show not only that discrimination was systemwide such that it was "the regular rather than the unusual practice," but also that NIKE directed discrimination as its "standard operating procedure." *Dukes*, 564 U.S. at 352 n.7.  The burden on Plaintiff is high, as it requires *"significant proof"* that NIKE "operated under *a general policy of discrimination*," *id*. at 352-353 (emphasis added).  Indeed, "absent some evidence that discrimination against women was actually directed by [the company]," evidence that individual biases might spread is not "significant proof of a general policy of discrimination explaining the thousands of employment decisions specifically challenged by Plaintiffs' lawsuit." *Dukes v. Wal-Mart Stores, Inc*., 964 F. Supp. 2d 1115, 1122 (N.D. Cal. 2013).

Plaintiff skips a key part of the analysis.  Though the lack of anecdotal evidence was one part of the Court's finding that there was a lack of commonality among the disparate treatment class, the Court also noted that Plaintiff's statistical analysis was ***insufficient*** for class certification.

_of Beverly Hills_, 482 F.3d 1091 (9th Cir. 2007) is irrelevant because it involved the issuance of sanctions for the refusal to comply with court orders—facts wholly absent here.  Indeed, as explained above, NIKE fully complied with Court orders.  Nor is *Williams v. Big Picture Loans, LLC*, 339 F.R.D. 46 (E.D. Va. 2021), *aff'd*, 59 F.4th 68 (4th Cir. 2023), relevant because NIKE has not made misrepresentations.

Specifically, Judge Russo concluded that, under Supreme Court authority, Plaintiffs' statistical evidence that pooled data across NIKE's 1,200 jobs and reported a single alleged pay difference between men and women failed to demonstrate that discrimination was NIKE's standard operating procedure because it failed to identify whether any pay differentials were the result of a small group of employees or were, instead, widespread. ECF No. 310 at 52. This is supported by the significant evidence of manager discretion in NIKE's 43 declarations—which are still applicable here despite Plaintiff's unsupported argument otherwise. *See, infra,* Section III.C.2.b. In the absence of "strong statistical evidence showing that women and men were paid and promoted differently," "[*a]necdotal evidence of individual incidents of sexist attitudes and behavior . . . cannot supply this critical missing piece*." *Kassman v. KMPG LLP*, 416 F. Supp. 3d 252, 285 (S.D.N.Y. 2018) (emphasis added). Plaintiff does nothing to demonstrate that the outcome of her *statistical* analysis will be different on a renewed class certification motion. ECF No. 652 at 31.[14]

Plaintiff also misunderstands the nature of a disparate treatment claim. Disparate treatment is not a broad catchall for discriminatory conduct untethered to employment decisions. Rather, it requires an *adverse employment action*—*e.g.*, lower pay, failure to promote, etc. *See Campbell v. Hawaii State Dep't of Educ.*, 892 F.3d 1005, 1012 (9th Cir. 2018). Here, Plaintiff has tied her disparate treatment claim to alleged pay and promotion practices, which shapes the commonality analysis. "The commonality element requires all putative class members to share not only common *questions* of law or fact but also common *claims*." *King v. UA Local 91*, 2020 WL 4003019, at *9 (N.D. Ala. July 15, 2020), *appeal filed* (11th Cir. Nov. 6, 2024) (emphasis in

---

[14] For this reason, Plaintiff's citation to *Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 76-77 (S.D.N.Y. 2018), is not convincing. In that case, the plaintiffs provided significant statistical evidence that explained that the pay disparity was partially due to the challenged performance rating policy, which the court found to be common across the class. *Id.* Moreover, the anecdotal evidence was more significant.

original); *see also Dukes*, 564 U.S. at 350 ("[C]laims must depend upon a common contention[.]"). Here, the Starfish documents generally do not relate to pay or promotion concerns. And Plaintiff does not bring or seek to certify a harassment class. Thus, as the Court has previously explained, they have only "some tangential relevance" to the claims Plaintiff seeks to certify. ECF No. 521 at 15.

*Dukes* identified another hurdle for anecdotal evidence, which was, in turn, relied on by Judge Russo to support her decision. The *Dukes* Court differentiated the anecdotal evidence there (one complaint for every 12,500 class members) from that used in *Teamsters v. United States*, 431 U.S. 324 (1977), where the ratio was "one account for every eight members of the class." *Dukes*, 564 U.S. at 358. Here, where Plaintiffs identified 30 questionnaires, Judge Russo concluded that the ratio of anecdotal evidence to class members was far too low to support an inference of a common operation of discrimination. ECF No. 310 at 53 (collecting cases). **This has not changed.** At best, Plaintiff has identified disputed, hearsay testimony that one individual believes there were 300 questionnaires. ECF No. 517 Ex. M at 50:7-51:2. This is in conflict with testimony indicating there were nearly 30 Starfish questionnaires, including testimony from Ms. Graham (who delivered the questionnaires to NIKE) and Ms. Matheson (who received the questionnaires). Prince Decl. Ex. A at 118:12-17; ECF Nos. 441, 439 at 6. Plaintiff has another issue. The Supreme Court in *Dukes* highlighted that the *Teamsters* anecdotes were helpful to show commonality because they came from individuals spread throughout the company who worked for the operational centers that employed the largest numbers of class members. *Dukes*, 564 U.S. at 358. In *Dukes*, the anecdotes were insufficient partially because the anecdotes only related to a small portion of the stores. *Id.* As the Court explained, "Even if every single one of these accounts [were] true, that would not demonstrate that the entire company 'operate[s] under a general policy

of discrimination[.]" *Id.* (citation omitted).  The same is true here.  Plaintiff cannot meet the evidentiary threshold of demonstrating that the 30 questionnaires, let alone 300 phantom ones, are relevant to the class which, as Judge Russo acknowledged, comprised of more than 5,200 women, across 1,200 jobs in 109 job families across all of NIKE World Headquarters.  Plaintiff made no effort at class certification or in this Motion to demonstrate that the anecdotes are sufficiently dispersed across the job families, rather than congregated in one department at NIKE.  In fact, Plaintiff has not even shown that the Starfish questionnaires come from putative class members. Nor could they.  To this day, at least 21 of the Starfish questionnaires remain anonymous.  Prince Decl. ¶ 10.  Without this critical information, Plaintiff cannot show that a class member provided the anecdotes or that the anecdotes are sufficient to show systemwide discrimination.  Rather, Plaintiff's "reliance on anecdotal evidence to show disparate treatment undermines [her] goal of showing commonality.  Anecdotal evidence, by definition, raises individual rather than common questions." *Kassman*, 416 F. Supp. 3d at 285.  The prospect of NIKE rebutting 30 questionnaires illustrates that the question of discriminatory intent is not a common one. *Id.*

This conclusion does not change merely because Plaintiff relies more on who created the Starfish questionnaires and why, rather than their contents.  ECF No. 652 at 24.  Plaintiff claims that each of the nine women involved in the creation were "executives," without identifying their roles or which departments they worked for.  The women were not NIKE executives, only one was a putative class member, and they worked in a handful of departments across NIKE.  ECF No. 654 Ex. A at 22:1-25.[15]  Their perspectives are not indicative of conduct across the 1,200 jobs in the class or across all class members.  *See Moussouris*, 2018 WL 3328418, at *25 (anecdotes were insufficient where there were not anecdotes from all stock levels in the class).  As Ms. Strong

---

[15] And most (if not all) did not complete Starfish questionnaires themselves.

admits, she "only kn[e]w [about] marketing," when it came to employment decisions—which is not surprising for a large corporation with thousands of employees. Prince Decl. Ex. B at 114:1-13. The small number of women compared to the 109 job families confirms this theory's inadequacy. This lack of job family representation across NIKE, paired with (i) Ms. Graham's testimony that the Starfish questionnaires were intended to identify whether there were "hotspots" at NIKE, Prince Decl. Ex. A at 61:22, and (ii) NIKE's later announcement that it identified issues "in pockets of the organization," ECF No. 310 at 21, cuts against any inference of systemwide discrimination. ECF No. 652 at 26. NIKE recognizes and takes seriously the perspectives of the women who led the Starfish questionnaires—indeed, it thoroughly investigated those concerns. "But even taking all the accounts as true, the nine accounts are simply not enough to demonstrate that [NIKE] operated under a general policy of discrimination" with respect to pay and promotion decisions. _Moussouris_, 2018 WL 3328418, at *25.[16]

      **b.**    **Plaintiff's "New" Evidence Is Unreliable And Fails To Change The Conclusion That There Is Not Systemwide Discrimination.**

Plaintiff's claimed "new evidence" is insufficient to reopen class certification.

First, Plaintiffs received the "Project Starfish" presentation from Ms. Strong before her deposition, but they did not produce the document to NIKE. Prince Decl. ¶9, Ex. B at 25:12-18; ECF No. 517 Ex. M at 67:17-18, _Id_. ¶ 26. Ms. Strong claimed that she and Ms. Graham provided the "Project Starfish" document to NIKE. _Id_. Ex. M at 50:20-23. Ms. Graham—who delivered the questionnaires to NIKE—only recognized pieces of the "Project Starfish" document and she did not recall who may have been involved in its creation, when it was generated, why it was made,

---

[16] Plaintiff's citation to _Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC_, 31 F.4th 651 (9th Cir. 2022), is entirely inapposite, as it has nothing to do with using anecdotal evidence for a disparate treatment claim.

or whether the claimed "themes" were communicated to NIKE.  *Id.*  Ex. C at 106:20-21; *see also* Prince Decl. Ex. A at 32:5-19.  Even assuming that the individuals involved in the Starfish questionnaires created this document, at best it reflects the views of nine women—***not*** of the 5,200 class members.  In fact, the presentation did not reflect the views of the nine women.  As Ms. Graham testified, there were a few themes in the presentation that she "did not agree with and still [does not] agree with."[17]  ECF No. 654 at Ex. B at 138:13-14.  Thus, the "Project Starfish" presentation remains an unreliable document that appears to reflect the opinions of unidentified individuals.  This does ***not*** prove widespread discrimination.

Second, Plaintiff argues that new evidence, specifically regarding a single employee's complaint and the timing of Ms. Matheson and Ms. Krane's response, shows that NIKE condoned discrimination.  ECF No. 652 at 26.  Here, Plaintiff relies on an isolated anecdote from one individual, which, even if true, hardly demonstrates widespread discrimination.  Moreover, the evidence is unreliable, hearsay testimony from Ms. Strong, who admits that she did not see the complainant deliver a Starfish questionnaire to Ms. Matheson or Ms. Krane.  ECF No. 654 at Ex. A at 58:23-59:3; Prince Decl. Ex. B at 50:7-51:2.  The communications in Exhibits 5 and 6 likewise fail to demonstrate that Ms. Matheson and Ms. Krane spoke with the complainant or what occurred afterward if they did, let alone demonstrate that they *condoned discrimination*.  ECF No. 653 at Exs. 5 & 6.  Rather, as Judge Russo acknowledged, there is significant evidence that NIKE took complaints seriously, including by retaining an outside law firm to investigate and

---

[17] Plaintiff also argues that NIKE did not produce this document in 2019.  ECF No. 652 at 26, n.20. This document was not a "complete[d]" Starfish questionnaire, so NIKE was not required to produce this document at that time.  ECF No. 111 at 8.  NIKE searched emails for the individuals that Plaintiff contends created this document—*i.e.,* Ms. Strong, Ms. Graham, and Ms. Jeffries— but did not locate this document.  In any event, this document does not show systemwide discrimination.  It shows the opinions and feelings of unidentified person(s) in unidentified department(s) at NIKE.

provide legal advice on the Starfish questionnaires it received.[18]  ECF No. 310 at 20 (noting that

an opt-in plaintiff admitted her complaint was taken seriously).  Indeed, Plaintiff seems to

acknowledge as much, admitting that NIKE's investigations led to the departures of certain

individuals at NIKE.  ECF No. 652 at 30; ECF No. 310 at 21.  Plaintiff cannot have it both ways.[19]

Third, NIKE did *not* suppress evidence.[20]  Ms. Daugherty correctly explained that "there

were many different types of complaints coming forward" and that while some alleged

discrimination, many did not.  Prince Decl. Ex. C at 377:7-25.  Her characterization of a document,

at Plaintiffs' counsel's request, hardly demonstrates that NIKE suppressed evidence.  ECF No. 654

Ex. F  at 366:1-24.    No evidence suggests that Ms. Daugherty would have known who

"*organiz[ed]*" the questionnaires at that time.  *Id.* at 429:11-15.

Likewise,  Plaintiff's  characterization  of  Ms. Matheson's  testimony  is  incorrect.

Ms. Matheson, in response to a question regarding what Ms. Strong's relationship was to the

questionnaires, clarified that she was "not familiar with, with what role she may or may not have

had with the survey."  ECF No. 654 Ex. G at 95:2-6.  As Plaintiff admits, Ms. Matheson met with

---

[18] Plaintiff's argument about Danny Tawiah is not new.  In their motion for class certification, Plaintiffs argued that several women complained to HR about his behavior, that Tawiah was initially protected, and Tawiah exited NIKE after the Starfish questionnaires.  ECF No. 146 at 39. Ms. Long's testimony does not raise anything that this Court has not already considered. Moreover, Ms. Long testified that she documented her concerns regarding Mr. Tawiah, but despite that NIKE searched for those documents, NIKE never found them.  ECF Nos. 468 at 13, 469 ¶ 8.

[19] Plaintiff's case law also seems to highlight her persistent, yet wholly misguided attempt to make this case about harassment, even though she does not bring a harassment claim.  *See Little v. Windermere Relocation, Inc.*, 301 F.3d 958 (9th Cir. 2002) (acknowledging an employer's failure to take corrective action in a *single plaintiff harassment* case).  Moreover, her citation to *E.E.O.C. v. Inland Marine Indus.*, 729 F.2d 1229, 1235 (9th Cir. 1984), cuts against any finding of intent here.  The court in that case held that the refusal to equalize pay for all races showed discriminatory intent.  Here, Plaintiff herself admits (and indeed, relies on) NIKE's prompt investigation and continual improvement of its practices.

[20] Plaintiff relies on *Computer Task Grp., Inc. v. Brotby*, 364 F.3d 1112 (9th Cir. 2004) and *Fair Hous. of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) to argue it was prejudiced by not receiving requested discovery.  But as NIKE has explained, NIKE produced what it was ordered to produce.

numerous individuals as part of NIKE's investigation.  That Ms. Matheson did not know or recall the exact nature of Ms. Strong's relationship to the Starfish questionnaires (several years later) does *not* show that Ms. Matheson's testimony lacked candor.  This is especially true if, as the email on which Plaintiff relies seems to suggest, Ms. Strong met with Ms. Matheson to discuss her personal concerns as opposed to the survey.  None of this demonstrates that NIKE withheld evidence.  Nor does it demonstrate discrimination as a common practice across the class.  In any event, the fact that Plaintiffs' asked Ms. Matheson about Ms. Strong demonstrates that they knew of her identity at the time of Ms. Matheson's deposition in February 2021.  If they wanted to know more about Ms. Strong's involvement, they should have asked her years ago.

Plaintiff's (mis)characterization of NIKE's productions does not favor reopening class certification.  As explained above, *see* Section II.B., NIKE was *not* ordered to produce communications (or any documents beyond the questionnaires themselves) until 2024.  When it did, NIKE located 223 responsive documents consisting mostly of meeting invitations and duplicative emails between a handful of people.  While Plaintiff suggests that the word "Starfish" appears 500 times on the emails, tellingly, Plaintiff does not discuss the *contents* of those emails. For example, Plaintiff relies on meeting invitations that simply use the term "Starfish" without any substance or discussion within the email.  ECF No. 653, Exs. 8-10.  A simple reference to the term—when NIKE admits it conducted an investigation and scheduled meetings—only proves that NIKE thoroughly responded to the complaints, not that the Starfish questionnaires were withheld.[21]

---

[21] Plaintiff's case law is also unconvincing as the cases say nothing about what constitute sufficient evidence to show commonality for disparate treatment.  *See, e.g.*, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) (finding on appeal from a trial in a single plaintiff case that plaintiff provided enough evidence for the jury to reject the employer's explanation, produced additional evidence of age-based animus, and presented sufficient evidence for the jury to find that

Fifth, Plaintiff resurrects her argument that NIKE's investigation supposedly admits widespread discrimination. ECF No. 652 at 30. Far from it. NIKE explicitly argued that it took the Starfish questionnaires seriously, an investigation with outside counsel was conducted, Mr. Parker addressed the questionnaires in a company-wide email, and certain individuals, including Mr. Tawiah, left the company thereafter. ECF No. 183 at 33. None of this was changed by Ms. Strong and Ms. Long's hearsay testimony. Plaintiff still argues that Mr. Parker's email admits discrimination, that Trevor Edwards and other executives exited following the questionnaires, and NIKE worked on improving its processes. *Compare* ECF No. 652 at 30 *with* ECF No. 146 at 40-42. The names of those executives who exited do not change the impact.[22] Moreover, Plaintiff explicitly relies on documents and testimony she had before class certification—*i.e.*, Mr. Parker's speech and email, *see* ECF No. 653, Exs. 2-3, Ms. Daugherty's testimony, and exhibits submitted in support of class certification, *see* ECF No. 166-1 at 73. The Court considered this evidence and found that it fails to support ***systemwide*** discrimination. ECF No. 310 at 53.

### 2. Plaintiff Fails To Identify Any Justification For A Renewed Motion For Her Disparate Impact Claim.

Plaintiff seems to suggest that one email from October 2016 can provide the basis to change the Court's conclusion on her disparate impact claim that "[a]t best, plaintiffs demonstrate that some hiring managers considered prior pay." ECF No. 310 at 43. This too must fail given the evidence of managerial discretion at NIKE.

---

the employer had intentionally discriminated against the employee); *United States v. Castillo*, 615 F.2d 878, 885 (9th Cir. 1980) (affirming the district court's conviction of manslaughter).

[22] Plaintiff also already had the names, as they were referenced throughout class discovery. *See* Prince Decl. ¶ 11.

**a.    Plaintiff Relies On Evidence That She Had Before The Denial Of Plaintiffs' Class Certification Motion And/Or Relates To Irrelevant Issues To Her Disparate Impact Claim.**

Plaintiff misconstrues the record to support her request.  ECF No. 652 at 37-38.

First, as explained above, NIKE did ***not*** withhold documents.  *See, supra,* Section II.B.2. NIKE produced documents responsive to discovery requests and, significantly, in response to Court orders.  Plaintiffs' own lack of diligence in seeking discovery (here, communications relating to the Offer Intake Form) prior to class certification cannot justify a second attempt.  *See Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002)* ("If the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should not be granted.").  Moreover, nine of the documents relating to starting pay that Plaintiff relies on here are not new at all.[23]  ECF No. 653 at Exs. 2, 3, 22, 30, 32, 33, 35, 35, 38.  These were relied on— or at least available to—Plaintiffs at class certification.  Most crucially here, Exhibit 22 (the Offer Intake Form), on which Plaintiff relies heavily now was produced in October 2020, well before class certification briefing.  Prince Decl. ¶ 7, Ex. E.  Though Plaintiffs did not submit it in support of their motion, their failure to do so was no fault of NIKE.  And Plaintiffs were well aware of this document; their own expert relied on it.  ECF No. 148-1 at 197.

Moreover, all but one of the "new" exhibits cited by Plaintiff in support of her disparate impact argument are used to support the unremarkable position that NIKE's Total Rewards team was involved in facilitating NIKE's pay and benefits programs.  *See* Prince Decl. Ex. D 31:13-32:3.  This says nothing about whether one of those pay practices was the use of prior pay to set starting pay before October 2017.

---

[23] Moreover, four are just organization charts produced well before class certification.  ECF No. 653 at Exs. 15-18.

Second, with respect to the sole "new" document at issue, the October 2016 email, Plaintiff misleadingly stitches together documents that are not connected to make her core argument. Plaintiff states "[a]n email Nike produced—**and the form that it attached**—demonstrate that the 'requisite information' for Nike to extend a job offer included the candidates prior pay." ECF No. 652 at 32 (emphasis added). But the referenced email does not attach the Offer Intake Form as she suggests. Indeed, it could not. The email is dated October 2016, and the Offer Intake Form is dated March 2017. ECF No. 653, Exs. 21, 22. Plaintiff acknowledges as much in a footnote, though stating in the body of her brief that the form was "attached."[24] ECF No. 652 at 33, n.25. Moreover, her attempt at explaining that the March 2017 form is the same as the forms referenced in the email can be flatly rejected. *Id*. The email states that it attached "*two separate excel templates*"—one for external offers and the other for internal offers, whereas the Offer Intake Form attached by Plaintiff is just one Excel spreadsheet with several tabs. ECF No. 653, Ex. 21 at 184; Prince Decl. ¶ 7. Plaintiff *assumes* that the reference to "requisite information" relates to the March 2017 Offer Intake Form without any evidence suggesting this is true.[25]

Of course, even if the documents were properly represented, the Offer Intake Form does not suggest that NIKE *used* prior pay to set starting salary or even collected it in every case. In fact, the Court already held as much. The Court explained:

> **[T]he intake form . . . does not suggest the existence of a company-wide policy given the evidence produced through previous discovery including depositions**

---

[24] Plaintiff also claims that NIKE did not produce the form allegedly attached to the October 2016 email. NIKE performed a diligent search for this document, but it could not locate it, likely due the fact that the document is nearly *ten years old* and predated NIKE's preservation obligations. Prince Decl. ¶ 15. Nor does the document itself appear to attach anything, as there is no "Attachment" heading under the "Subject" heading. *Id*. Plaintiff's belief that NIKE is purposefully withholding additional documents can hardly serve as a basis for revisiting class certification given it was not a basis for granting them additional discovery. *See* ECF No. 386.

[25] NIKE conducted a reasonable and thorough search for any purported attachment(s) to the October 2016 email but no such attachment(s) appears to exist. Prince Decl. ¶ 15.

**of a Senior Director for Talent Acquisition and a Senior Director of Global Compensation among others. As noted in the Court's ruling on class certification, the evidence suggests only that individual hiring managers had discretion to use such data.**

ECF No. 386 at 5-6; Prince Decl., Ex. F. This is especially true in light of the significant evidence of managerial discretion NIKE presented at class certification. *See id.* ("evidence presented in support of the certification of a class motion demonstrated individual hiring managers did indeed use such a practice while other managers did not"). Plaintiff cannot overcome the Court's "finding that hiring managers exercised discretion and determined what factors to apply in setting starting pay." *See* ECF No. 310 at 44-45 ("there is no evidence that Nike executives directed their hiring managers to use that factor. Generalized statistics notwithstanding, 'it is quite unbelievable that all managers would exercise their discretion in a common way without some common direction.'") (citing *Dukes*, 564 U.S. at 356).

Finally, Ms. Long's testimony relating to the collection of prior pay has already been tested and rejected by this Court. Ms. Long's testimony did ***not reveal*** that Total Rewards was involved in pay practices. That was already known and not in dispute, as Plaintiffs deposed several NIKE employees on the Total Rewards team. Nor does it show NIKE regularly used prior pay to set starting pay. Moreover, Plaintiffs relied on this testimony after class certification, arguing that they were entitled to more discovery concerning the Offer Intake Form and prior pay. ECF No. 349. The Court rejected this argument, denied the motion, and acknowledged Plaintiffs' counsel's own failure to appropriately question Ms. Long on the topic. ECF No. 386 at 5 ("plaintiff did not pursue the inquiry beyond a simple open-ended question").[26] Ms. Long's

---

[26] Plaintiffs asked Ms. Long a compound question, which failed to distinguish between a policy or a practice; and Plaintiffs accepted her "yes" response because they thought it suited them. Plaintiffs also failed to ask follow-up questions clarifying the testimony or establishing foundation for the open-ended response. ECF No. 654, Ex.C at 18:22-19:4. In fact, Ms. Long's testimony as a whole lacks foundation, is improper because she lacks personal knowledge, is riddled with

testimony, colored by her own credibility issues related to her forced departure from NIKE due to violations of company policy, already has been held insufficient to support a company-wide policy of using prior pay.  *Id.*  Nothing has changed here, especially in light of the significant evidence to the contrary.  *See, e.g.*, ECF No. 355 ¶¶ 12-13, Exs. D-E.

        **b.**    <u>**Plaintiff Cannot Belatedly Discount The Significant Evidence**</u>
               <u>**Of Managerial Discretion Recognized By This Court.**</u>

Perhaps recognizing the weakness of this "new" evidence, Plaintiff tries to discount the (admitted) "crucial support" that the managerial discretion declarations provided for Judge Russo's class certification order, arguing—*with no authority*—that because NIKE did not identify the declarants as witnesses for trial, NIKE can no longer rely on them.  ECF No. 652 at 36.  Plaintiff's position ignores common sense.  Simply because *class certification declarations* are not used at trial on *individual claims* does not then render those declarations void for any future class certification motion.  This is especially true in the context here.  The Court *denied* class certification, so the trial was for the remaining four named Plaintiffs' individual claims.  Declarations or testimony from witnesses who had personal knowledge of their own experience but did not know or interact with the Plaintiffs themselves were relevant for class certification but are undoubtedly irrelevant for a trial concerning the hiring, pay and promotion decisions related to four individual Plaintiffs.  What mattered was whether NIKE used prior pay to set *Plaintiffs'* starting salaries.  Plaintiff's assertions otherwise are illogical.

Likewise, Plaintiff misrepresents the Court's reliance on NIKE's declarations, referencing a "<u>See also, e.g.</u>" cite to suggest that the Court relied on *only* three declarations to minimize their importance.  ECF No. 652 at 36 (citing ECF 310 at 10, n.3).  Certainly, an "e.g." citation means

_____

hearsay, and NIKE was deprived of the opportunity to question her.

that the references that follow are examples.  Moreover, the Court cited ***five other*** declarations as

***examples*** in the Court's commonality analysis.  ECF No. 310 at 40.  This argument can also be

rejected.  *See* <u>Reyes v. Netdeposit, LLC, 802 F.3d 469, 495 (3d Cir. 2015)</u> (A court "[is] *not*

required . . . to cite specifically to the declarations of every expert or every other piece of evidence

relevant to class certification merely to prove that they were considered in its rigorous analysis of

the <u>Rule 23</u> requirements.") (emphasis in original, citation omitted).

Nor is Plaintiff's statement that NIKE was unable to produce documents relating to those

declarants' testimony accurate.  ECF No. 652 at 36.  Plaintiffs' RFP 134 confusingly sought "[a]ll

documents and communications related to any testimony from a deposition or declaration that

NIKE has (a) relied on in a court filing."  Prince Decl. ¶ 12.  After conferrals to understand the

breadth of the request (*i.e.*, documents and communications concerning 43 witnesses' individual

experiences that had nothing to do with Plaintiffs' claims), NIKE stated it would not produce the

documents.  *Id*.  NIKE explained that Plaintiffs sought documents "demonstrating the lack of

uniform practices and rather, managerial discretion"—*i.e.*, documents that did not exist.  ECF

No. 468 at 8.  NIKE also highlighted the extreme burden of searching for emails across thousands

of employees connections to Plaintiffs.[27]  *Id*.  The Court denied Plaintiffs' motion to compel.  ECF

No. 480.  NIKE was never obligated to produce these documents.

Plaintiffs also take issue with the timing of the declarations, *i.e.*, that NIKE prepared the

declarations in support of NIKE's opposition.  *See* ECF No. 652 at 19, n.13.  The fact that NIKE

collected declarations in opposition to class certification is hardly novel nor improper.  If Plaintiffs

---

[27] If Plaintiff truly believed the Court only relied on three declarations, Plaintiff could have sought
documents relating to those three people.  Instead, Plaintiff refused to identify any particular
person, requesting that NIKE dig through thousands of emails concerning thousands of
employment decisions for 43 people.

had valid objections to the declarations (they do not), the time to raise them has long passed.

        c.        **Plaintiff Cannot Establish Commonality Based On The Settlement.**

Finally, Plaintiff asserts that NIKE concedes commonality, citing to NIKE's now-abandoned effort to enforce a settlement between the company and putative class.  ECF No. 652, at 37 (quoting Joint Status Report, ECF No. 644).  Plaintiff ignores that "[t]he criteria for class certification are applied differently in litigation classes and settlement classes."  *In re Hyundai*, *926 F.3d at 556-57*; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.") (citing Fed. R. Civ. P. 23(b)(3)(D)).  Moreover, even if NIKE's consideration of a motion to enforce the settlement was considered a concession (which it is not), it would ***not*** eliminate the Court's obligation to independently analyze and address commonality. *See McCurdy v. Pro. Credit Serv.*, 2016 WL 5853721, at *2, n.2 (D. Or. Oct. 3, 2016) (the court must "address each certification factor because federal courts have an independent obligation to determine whether a class action is may be maintained[,]" even for settlement purposes).

## IV.    CONCLUSION

For all of the foregoing reasons, NIKE respectfully requests the Court deny Plaintiffs' Motion for Leave to File a Renewed Motion for Class Certification.

Date:  October 28, 2025

                                       */s/ Daniel Prince*
                                       DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
                                       danielprince@paulhastings.com
                                       FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
                                       feliciadavis@paulhastings.com
                                       LINDSEY C. JACKSON, Cal. SB# 313396 (*pro hac vice*)
                                       lindseyjackson@paulhastings.com

ALYSSA K. TAPPER, Cal. SB# 324303 (*pro hac vice*)
alyssatapper@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Laura E. Rosenbaum, OSB No. 110061
laura.rosenbaum@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480