**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Kathryn P. Roberts, OSB #064854**
KathrynRoberts@MarkowitzHerbold.com
**Kelsie G. Crippen, OSB #193454**
KelsieCrippen@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Tel: (503) 295-3085 | Fax: (503) 323-9105

**Byron Goldstein** (admitted *pro hac vice*)
byron@goldsteinbrowne.com
**Barry Goldstein**, Of Counsel (admitted *pro hac vice*)
barry@goldsteinbrowne.com
GOLDSTEIN BROWNE, PC
1111 Broadway 3rd Floor, Office 04-117
Oakland, CA 94607
Tel: (510) 584-9020
Email: team@goldsteinbrowne.com

Counsel for Plaintiffs
[Additional Counsel of Record listed on the following page]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL, et al., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NIKE, INC., an Oregon Corporation,<br><br>Defendant. | Case No. 3:18-cv-01477-AB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT NIKE'S MOTION TO REDACT THIRD-PARTY EMPLOYEE NAMES FROM PLAINTIFFS' MOTION FOR LEAVE**<br><br>**FILED UNDER SEAL**<br><br>**ORAL ARGUMENT REQUESTED** |

**Laura L. Ho** (admitted *pro hac vice*)
lho@dhkl.law
**James Kan** (admitted *pro hac vice*)
jkan@dhkl.law
**Katharine F. Trabucco** (admitted *pro hac vice*)
ktrabucco@dhkl.law
DARDARIAN HO KAN & LEE
155 Grand Avenue, Suite 900
Oakland, CA 94612
Tel: (510) 763-9800 | Fax: (510) 835-1417

**Craig Ackerman** (admitted *pro hac vice*)
cja@ackermanntilajef.com
**Brian Denlinger** (admitted *pro hac vice*)
bd@ackermanntilajef.com
**Erika Smolyar** (admitted *pro hac vice*)
es@ ackermanntilajef.com
ACKERMANN & TILAJEF PC
315 S Beverly Drive, Suite 504
Beverly Hills, CA 90212
Tel: (310) 277-0614 | Fax: (310) 277-0635

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF CASE AND ISSUE PRESENTED ...................................3

III.    NIKE'S PROPOSED REDACTIONS AND THE LIMITED NUMBER TO
        WHICH PLAINTIFF CONSENTS ..................................................................6

IV.     SINCE PLAINTIFF'S MOTION FOR LEAVE IS MORE THAN
        TANGENTIALLY RELATED TO THE MERITS OF THE CLAIMS, THE
        "COMPELLING REASONS" STANDARD APPLIES AND NIKE DOES NOT
        JUSTIFY ITS PROPOSED REDACTIONS UNDER THAT STANDARD .................7

        A.      The Compelling Reasons Standard Applies ........................................7

                1.      The Decisions by Magistrate Judge Russo and the Ninth Circuit
                        Require the Application of the Compelling Reasons Standard ...............7

                2.      The Court's February 2025 Decision Applying the Compelling
                        Reasons Standard to Whether a Redaction to the December 2024
                        Hearing Supports the Application of that Standard to Nike's
                        Motion to Redact .......................................................................9

                3.      The August 26, 2024 Decision, that Nike Relies Upon, Is
                        Inapplicable to the Pending Motion. ......................................11

                4.      Nike Fails To Distinguish the Ninth Circuit's Decision that
                        Required the Application of the Compelling Reasons Standard .............12

                5.      Nike Erroneously Contends that the Court's Order, ECF No. 647,
                        Compels the Application of the Good Cause Standard ..........................13

        B.      Nike Cannot Justify the Proposed Redactions Under the Compelling
                Reasons Standard .................................................................14

                1.      The Decisions by Magistrate Judge Russo and the Ninth Circuit
                        Make Clear that Nike Cannot Meet the Compelling Reasons
                        Standard for Justifying Its Proposed Redactions .......................14

                        a.      Proposed Redactions of Names of "Complainants,
                                Witnesses and Alleged Persons of Interest" ...............................14

                        b.      Proposed Redactions of Names of "Individuals Plaintiffs
                                Contend Were Involved in the Distribution or Collection of
                                'Starfish Questionnaires'" ..............................................16

2.      Under the Compelling Reasons Standard and Pursuant to the Ninth
        Circuit's Ruling, the Daugherty Declaration Does Not Justify
        Nike's Proposed Redactions ...................................................................19

V.      CONCLUSION..............................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cahill v. Nike, Inc.*,
    No. 3:18-CV-01477-JR, 2023 WL 9227107 (D. Or. Oct. 11, 2023), *adopted*,
    No. 3:18-CV-01477-JR, 2024 WL 136887 (D. Or. Jan. 5, 2024), *aff'd sub*
    *nom.*, *Cahill v. Non-Party Media Organizations Insider Inc.*, No. 24-165,
    2025 WL 841196 (9th Cir. Mar. 18, 2025).....................................4, 5, 7, 8, 10, 13, 14, 15, 20

*Cahill v. Nike, Inc.*,
    No. 3:18-CV-01477-JR, 2024 WL 3963809 (D. Or. Aug. 26, 2024), report and
    recommendation adopted, No. 3:18-CV-01477-AB, 2024 WL 4542282 (D.
    Or. Oct. 22, 2024) ......................................................................................11, 12

*Cahill v. Nike Inc.*,
    No. 3:18-CV-01488-AB, 2025 WL 399737 (D. Or. Feb. 5, 2025) ...........................4

*Ctr. For Auto Safety v. Chrysler Grp., LLC.*,
    809 F. 3d 1092 (9th Cir. 2016) ..............................................................10, 20

*Folz v. State Farm Mut. Auto Ins. Co.*,
    331 F. 3d 1122 (9th Cir. 2003) ..............................................................10, 20

*Zetwick v. Cnty. of Yolo*,
    850 F. 3d 436 (9th Cir. 2017) ................................................................19

**Rules**

Rule 23 ...................................................................................................16

## I.    INTRODUCTION

Throughout this litigation Nike has sought to prevent the public filing of documents and testimony that identifies by name Nike executives who are alleged to have engaged in gender discrimination or in condoning such conduct, as well as the names of persons who complained about or witnessed such discrimination. Similarly, Nike has sought to prevent the public filing of documents that identify by name the eight female executives who banded together to establish the "Starfish Project" in order to attempt to end Nike's pattern or practice of gender discrimination and to improve Nike's ineffectual HR system. By restricting public access, Nike sought to spin more easily its narrative that there is no evidence that executives were involved in discriminatory conduct and that female executives created and implemented the Starfish Project.

Nike's redaction attempts run counter to the strong public policy favoring public access to judicial records. Courts implement this strong public policy by applying a rigorous test, the "compelling reasons standard," to an attempt by a litigant to seal or redact judicial records. Under this standard, a litigant must provide "concrete examples" premised on a solid "factual basis" showing specific harm sufficient to overcome the policy favoring public access to judicial records. A litigant may not meet this standard by relying upon "conjecture," "hypothesis" or conclusory assertions of "potential harm." Courts apply this rigorous standard to any motion that is "more than tangentially related to the merits" of the claims.

Nike has attempted to avoid this standard by relying upon the exception to the application of the compelling reasons standard. Courts apply a laxer standard, "good cause," to nondispositive motions unrelated to or merely tangentially related to the merits of the claims. In 2023, Magistrate Judge Russo addressed an attempt by Nike to redact the names on filed documents when she ruled that, contrary to Nike's argument, Plaintiffs' motion for class

certification was related to the merits of claims. In particular, the Magistrate Judge determined that the Starfish-related evidence was relevant both to meeting the class certification requirements and to the merits of the claims. Applying the compelling reasons test, the Magistrate Judge determined that the "generalized assertions" of potential harm offered by Nike failed to meet the compelling reasons standard. Accordingly, the Magistrate Judge recommended the denial of Nike's proposed redaction of the names of "those making workplace complaints along with the names of the witnesses and subjects of the complaints." The District Court adopted the recommendation.

The Ninth Circuit rejected Nike's argument on appeal. In affirming the application of the compelling reasons standard because the motion for class certification was more than tangentially related to the merits, the Ninth Circuit reasoned: "[w]hether women were discriminated against and harassed related not only to the commonality arguments in support of class certification, but also to the claims." The Court also affirmed the ruling that Nike failed to meet the stringent compelling reasons test because, *inter alia*, Nike offered only "generalized assertions" of potential harm without providing "concrete examples."

In its present motion to redact names in Plaintiff's motion for leave to file a renewed motion for class certification, Nike offers a replay of its arguments and positions that were rejected by the District Court and the Ninth Circuit. Once again, Nike requests the Court to approve the redaction of the names of complainants, witnesses and subjects of the complaints. Nike premises its argument on the incorrect assertion that Plaintiff's motion for leave is "purely procedural." However, Plaintiff's motion argues that it relies on new Starfish-related evidence concerning discrimination. This evidence is pertinent both to the commonality and other requirements for class certification as well as to the merits of Plaintiff's claims. This new

evidence supports the motion for leave because, Plaintiff argues, it shows changed circumstances warranting a renewed motion for class certification, it is relevant to class certification, and relevant to the merits of the claims.

For the reasons well-articulated previously by the District Court and the Ninth Circuit, the Court should conclude that the compelling reasons standard applies since Plaintiff's motion is more than tangentially related to the merits and Nike's conclusory allegations of potential harm do not meet that standard.

Nike did not provide a specific reason for any of the numerous redactions it proposes or for the 25 individuals whose names it proposes should be redacted. Plaintiff has carefully reviewed those proposed redactions and agrees to limited redactions including the redaction of the name of a Nike-affiliated athlete. See Section III, *infra*. Given the controlling authority, the Court should deny Nike's motion to redact and permit the public filing of Plaintiff's motion for leave and supporting documents except for the limited redactions to which Plaintiff agrees the standard is satisfied.

## II.    STATEMENT OF CASE AND ISSUE PRESENTED

On October 7, Plaintiff filed "Plaintiff's Motion for Leave to File a Renewed Motion for Class Certification," ECF No. 652, ("Motion for Leave"), as well as Declarations in support from Byron Goldstein and Erika Smolyar, ECF Nos. 653-54. In part, Plaintiff argues that that "new" Starfish-related evidence discovered <u>after</u> the 2023 decision denying a motion for class certification, supports Plaintiff's argument that the Court should grant Plaintiff's Motion for Leave with respect to the class claim that Nike engaged in a pattern or practice of disparate treatment, that is, discrimination against women because of their gender.

This new evidence contains references to names of eight female executives who were involved in creating Starfish to expose and end Nike's pattern or practice of gender discrimination, the names of females who submitted complaints, witnesses, and the subjects of complaints. Whether such names should be redacted or included in public filings is an issue that has been previously contested. See *Cahill v. Nike Inc.*, No. 3:18-CV-01488-AB, 2025 WL 399737 at *2 (D. Or. Feb. 5, 2025). Nike has moved the Court for an Order requiring the redaction of some of these names. "Defendant Nike, Inc.'s Motion to Redact Third-Party Employee Names from Plaintiffs' Motion for Leave." ECF No. 663, ("Motion to Redact"). The context for deciding Nike's Motion to Redact is unusual because this Court has previously decided this question in this litigation, and the Ninth Circuit affirmed this decision. *Cahill v. Nike, Inc.*, No. 3:18-CV-01477-JR, 2023 WL 9227107 (D. Or. Oct. 11, 2023), *adopted*, No. 3:18-CV-01477-JR, 2024 WL 136887 (D. Or. Jan. 5, 2024), *aff'd sub nom.*, *Cahill v. Non-Party Media Organizations Insider Inc.*, No. 24-165, 2025 WL 841196 (9th Cir. Mar. 18, 2025).

In support of their 2022 motion for class certification, Plaintiffs filed Starfish-related documents with names redacted. Several news organizations, Media Organizations, sought to intervene and requested that the District Court order that the documents should be publicly filed without redactions. The Magistrate Judge described that the "redactions at issue involve the names of those making workplace complaints along with the names of the witnesses and subjects of and to the complaints." *Cahill*, 2023 WL 9227107 at *1. The Magistrate Judge determined that the "compelling reasons" standard applied because the "evidence sought to be unsealed relates to commonality [and] proof of commonality overlaps with the merits ...." *Id.* at *2.[1] The

---

[1] The exhibits containing the redactions in issue were listed by the Magistrate Judge. *Cahill*, 2023 WL 9227107 at *1. Plaintiff has provided these exhibits for the Court in order to facilitate a

Magistrate Judge recommended, and the District Judge adopted the recommendation, that Nike had failed to justify the redactions, and the documents were ordered publicly filed without redactions. Nike appealed and obtained a stay of the order pending appeal. The Ninth Circuit then held that the compelling reasons standard was properly applied because "[w]hether women were discriminated against and harassed related not only to the commonality arguments in support of class certification, but also to the merits of the claims." *Cahill*, 2025 WL 841196 at *1.

In keeping with the procedures set forth in the Protective Order, ECF No. 82, prior to filing the Motion for Leave Plaintiff advised Nike that its Motion would include names of complainants, witnesses, including the female executives who created the Starfish Survey, and subjects of the complaints. Declaration of Erika Smolyar in Support of Plaintiff's Motion for Leave to File a Renewed Motion for Class Certification ("Smolyar Declaration") at ¶ 2. Plaintiff further advised Nike that the prior District Court and Ninth Circuit decisions compelled the public filing of the Motion for Leave. *Id.* Nike disagreed. Plaintiff was thus required to file the Motion for Leave and supporting Declarations under seal. ECF Nos. 652-54. Furthermore, pursuant to the Protective Order, ECF No. 82 at ¶ 4, Plaintiff sent written notice informing Nike that "unless within 20 days Nike files a motion" justifying maintaining the documents under seal or justifying specific redactions the Motion for Leave and supporting documents would be publicly filed." Declaration of Daniel Prince, ECF No. 659 ("Prince Decl.") at Ex. A, pp. 1-2 (Letter from Plaintiff's counsel). Nike timely filed its Motion to Redact.

---

comparison and evaluation of the redactions that were ordered removed with the redactions that Nike currently propose. See Smolyar Declaration at ¶ 3, Exs. A-N.

### III.    NIKE'S PROPOSED REDACTIONS AND THE LIMITED NUMBER TO WHICH PLAINTIFF CONSENTS

Nike's description of its proposed redactions is:

> "The redactions at issue concern the names of (1) non-party complaintants, witnesses and alleged persons of interest ..., and (2) individuals Plaintiffs contend were involved in the distribution or collection of 'Starfish questionnaires."

Motion to Redact, ECF No. 663 at 4.

Nike did not provide any list of the proposed redactions. Rather, Nike identified the proposed redactions on copies of Plaintiff's Motion for Leave and supporting documents. Prince Decl., ECF No. 659 at ¶¶ 4-6, Exs. B-D. Since the proposed redactions are spread over several hundred pages, Plaintiff has provided a guide to the redactions designating the pages in the Prince Declaration on which the redactions occur. Attachment A, hereto.

In total, Nike seeks to redact the names of 25 individuals. Attachment A. These proposed redactions occur on 59 separate pages. As a general matter, the Court need not review each redaction or each name but rather may evaluate the categories of redactions proposed by Nike, which was the approach followed by Magistrate Russo and the Ninth Circuit. Section II, *supra*.

Since Nike did not seek to discuss its proposed redactions before filings its Motion to Redact, Plaintiff first learned of its proposed redactions after Nike served its Motion to Redact. After a review of the redactions, Plaintiff agrees to specific limited redactions. First, Plaintiff agrees that phone numbers listed in Exhibit C, pages 65-74 to the Prince Declaration may be redacted. Second, the name of the athlete affiliated with Nike who is the subject of a complaint satisfies the standard. These redactions are located in Exhibit D, pages 29-33, 38-40, and 48 to the Prince Declaration. Third, Plaintiff agrees to the redaction of the name of the female employee who filed the complaint describing the sexual assault committed by the Nike affiliated

athlete. These redactions are located in Exhibit B, pages 26, 29 and 41, Exhibit C, pages 62-63, and Exhibit D, page 41, to the Prince Declaration, ECF No. 659. This Court had previously approved the redaction of the name of the complainant. *Cahill*, 2025 WL 3997837 at *6.

### IV.    SINCE PLAINTIFF'S MOTION FOR LEAVE IS MORE THAN TANGENTIALLY RELATED TO THE MERITS OF THE CLAIMS, THE "COMPELLING REASONS" STANDARD APPLIES AND NIKE DOES NOT JUSTIFY ITS PROPOSED REDACTIONS UNDER THAT STANDARD

**A.    The Compelling Reasons Standard Applies**

**1.    The Decisions by Magistrate Judge Russo and the Ninth Circuit Require the Application of the Compelling Reasons Standard**

For the same reasons articulated by the District Court and the Ninth Circuit in rejecting proposed redactions by Nike, this Court should apply the compelling reasons standard to Nike's Motion to Redact. In a context that, as a practical matter, is similar to the one presented by Nike's Motion to Redact, Magistrate Judge Russo analyzed whether the "compelling reasons" or "good cause" standard should apply to justifying Nike's proposed redactions to documents submitted in support of Plaintiffs motion for class certification. *Cahill*, 2023 WL 9227107 at *1-2; *see* section II. Inexplicably, Nike's Motion to Redact fails to cite or mention this on-point decision.

In support of its proposed redactions to the documents supporting Plaintiffs' 2022 Motion for Class Certification, Nike argued that the "motion to certify is nondispositive and therefore the documents filed in support of the motion are merely subject to the good cause standard." *Cahill, 2023 WL 9227107* at *2. In rejecting Nike's position, the Magistrate Judge initially observed that "[c]ertainly, the complaints regarding pay disparities and harassment can be significant in an attempt to demonstrate class status." *Id.* (emphasis added). In addition, the Magistrate Judge observed, "[g]enerally courts within this circuit apply the compelling reasons standard to

motions to seal documents relating to class certification." *Id.* Because the "evidence sought to be unsealed relates to commonality [and] proof of commonality overlaps with the merits," the Magistrate Judge determined that "defendant must show compelling reasons to continue redactions of the names of those making workplace complaints along with the names of the witnesses and subjects of and to the complaints." *Id.*

Nike appealed the determination that the compelling reasons standard applied and obtained a stay pending appeal. The Ninth Circuit held that the "district court properly applied the compelling reasons standard rather than the good cause standard when determining whether to unseal the materials attached to the class certification motion." *Cahill*, 2025 WL 841196 at *1. The Ninth Circuit described that the determination of whether the compelling needs standard applies depends on whether "a pretrial filing [] is 'more than tangentially related to the underlying causes of action' ...." *Id.* In explaining that the lower court properly applied the standard, the Ninth Circuit reasoned that "[c]lass certification motions may not be dispositive as a technical matter, but they may still be tangentially related to merits." *Id.*

Importantly, the Ninth Circuit further explained that the compelling reasons standard was properly applied because

> [w]hether women were discriminated against and harassed related not only to the commonality arguments in support of class certification, but also to the merits of the claims. Both issues concerned the same alleged discriminatory behavior and adverse employment decisions. Because the material in the class certification motion is more than tangentially related to the merits, the compelling reasons standard applies.

*Cahill*, 2025 WL 841196 at *1. The Court also found that the "sealed materials at issue 'formed a crucial part of' Plaintiffs' class certification motion." *Id.*

In support of the Motion for Leave, ECF No. 652 at 9-12,[2] Plaintiff argued that she submitted "new" Starfish-related evidence that was discovered subsequent to the denial of the motion for class certification. Plaintiff argued that the record now, with this new evidence, created "potent" support for certifying and proving the class pattern or practice claim. *Id.* at 17-25. Accordingly, Plaintiff contended that the new evidence shows changed circumstances warranting a renewed motion for class certification. *Id.* at 31-33. This evidence thereby not only relates to the motion for leave but also class certification and the merits. Thus, the decisions of the District Court and Ninth Circuit require the application of the compelling reasons standard to Nike's Motion to Redact.

### 2.   The Court's February 2025 Decision Applying the Compelling Reasons Standard to Whether a Redaction to the December 2024 Hearing Supports the Application of that Standard to Nike's Motion to Redact.

Supporting application of the compelling reasons standard here is this Court's February 2025 decision applying the compelling reasons standard to whether redactions to the Transcript of a December 2024 Hearing on Nike's Motion to Sever were justified. Cahill, 2025 WL 3997837 at *5. Nike's motion fails to acknowledge much less attempt to distinguish this decision.[3]

The Court's decision addressed Nike's motion for "orders redacting third-party names from the transcripts of the two hearings." ECF No. 615 at 1. The Court recognized that there was "some, but not total, overlap between the pending appeal [by Nike from the district court

---

[2] Since the Motion for Leave is filed under seal, Plaintiff cites to the actual pages of that Motion rather than the pages in the ECF filing.

[3] Nike's only reference to the decision concerns the Court's method of <u>implementing</u> the good cause standard to the Transcript of the October 2024 Hearing. "For purposes of balancing confidential interests and public's right of access, this Court <u>already</u> has found that redacting the names of third parties satisfies the 'good cause' standard." See ECF No. 615 at 8-9." Motion to Redact, ECF No. 663 at 5 (emphasis in original). See also, *id.* at 10.

ordering redactions to be removed, see section II, *supra*,] and the present motions" but declined to delay ruling on the motions. *Id.* at 2, n.3.

The Court commenced its thorough analysis of the legal standards for "[s]ealing judicial records" by recognizing that "there is a 'strong presumption in favor of public access.'" *Cahill*, 2025 WL 3997837 at *2 (quoting [*Folz v. State Farm Mut. Auto Ins. Co.*, 331 F. 3d 1122, 1137 (9th Cir. 2003)](#)). The Court noted that "[t]here is an exception to the presumption in favor of public access: 'sealed materials attached to a discovery motion unrelated to the merits of the case.'" *Id.* (quoting [*Ctr. For Auto Safety v. Chrysler Grp., LLC.*, 809 F. 3d 1092, 1097 (9th Cir. 2016)](#)). In summary, the Court stated that "[w]hen determining which standard to apply - compelling reasons or good cause - the court must focus on 'whether the motion at issue is more than tangentially related to' the merits of the action." *Id.* quoting *Ctr. for Auto Safety*, 809 F.3d at 1099.

Applying this analysis, the Court held that the "good cause standard applies to the October 9, 2024, hearing because it related to a nondispositive discovery motion ...." *Cahill*, 2025 WL 3997837 at *3 (emphasis added). The Court reached a different conclusion with respect to the December 2024 Hearing. The Court held that the compelling reasons standard applies because Nike's motion to sever the trial, which was the subject of the December Hearing, was "more than tangentially related to the merits of the case ...." *Id.* at 11. Even though the motion was procedural and "not dispositive," the Court applied the compelling reasons standard because the arguments presented by the parties "included a robust analysis of Plaintiffs' claims and anticipated evidence [and t]he Court's decision to keep trial intact affected the litigants' substantive interests and guided the future disposition of the case." *Id.* at 11-12.

This decision applying the compelling reasons standard to a procedural, nondispositive motion supports the conclusion that the compelling reasons standard should apply to the determination of whether Nike's proposed redactions are justified. Unlike the discovery motion at issue in the October Hearing, Plaintiff's Motion for Leave does not involve a "discovery motion" unrelated to the merits of the action. Like the motion to sever at issue in the December Hearing, Plaintiff's Motion for Leave involves "robust" arguments about the claims and relevant evidence, and the decision on that Motion will impact the litigants' substantive interests and guide the disposition of the case.

### 3. The August 26, 2024 Decision, that Nike Relies Upon, Is Inapplicable to the Pending Motion.

Rather than properly applying the on-point decisions in this instant case described in Sections IV.A.1-2, Nike relies upon a decision by Magistrate Judge Russo, *Cahill v. Nike, Inc.,* No. 3:18-CV-01477-JR, 2024 WL 3963809 (D. Or. Aug. 26, 2024), report and recommendation adopted, No. 3:18-CV-01477-AB, 2024 WL 4542282 (D. Or. Oct. 22, 2024), that has no bearing upon the issues presented by Nike's Motion to Redact. Nike compounds its error by mischaracterizing the decision. Nike argues that the "'good cause' standard applies here" because "Judge Russo has applied the 'good cause' standard in disputes related to discovery issues and, in doing so, has held that the names of third-party employees should be redacted in the public filings of some Starfish questionnaires and emails confirming participation in related investigations." Motion to Redact, ECF No. 663 at 9.

But the issue before the Magistrate Judge was presented by Plaintiffs' motion requesting that the Court "find [Nike] wrongly designated documents it produced as confidential either because it failed to show good cause for the designation or because redactions were a viable

alternative." *Cahill*, 2024 WL 3963809 at *8 (emphasis added). In other words, Plaintiffs "ask[ed] the Court to find that none of the documents produced [in discovery] in the 283 … pages … may be designated confidential provided that certain names are redacted." *Id.* at *9. In opposing Plaintiffs' motion, Nike "maintain[ed] that good cause exists to retain confidential designation for all documents ...." *Id.*

Accordingly, the issue presented was whether documents produced in discovery, as Nike contended, could be designated "confidential" or that, as Plaintiffs contended, the documents should have no confidential designation provided that certain names were redacted. A practical consequence motivating this dispute was that if Plaintiffs prevailed then they could include these discovery documents with any motion, dispositive or nondispositive, tangentially related to the merits or not tangentially related to the merits, so long as certain names were redacted.[4]

Nike's reliance upon this decision is misplaced because the Magistrate Judge made no determination regarding the critical issue presented by Nike's Motion to Redact, whether the good cause or the compelling reasons standard should apply. Rather, both Nike and Plaintiffs agreed that the good cause standard should apply but differed as to how that standard should apply to discovery documents unrelated to any motion.

### 4. Nike Fails To Distinguish the Ninth Circuit's Decision that Required the Application of the Compelling Reasons Standard

Nike provides two inadequate explanations as to why the Ninth Circuit's decision does not require the application of the compelling reason standard. See ECF No. 663 at 13-15.

---

[4] The Magistrate Judge rendered this decision during the period when her prior Order requiring the removal of redactions in documents filed with Plaintiffs' motion for class certification was stayed pending appeal. See Section II, *supra*. In fact, Nike had requested that the Magistrate Judge should not decide the issue while Nike's appeal was pending. *Cahill*, 2024 WL 3963809 at *9 n.4.

First, Nike asserts that "the question of whether these names meet the more forgiving 'good cause' standard was never before the Ninth Circuit panel ...." ECF No. 663 at 14-15. The application of the good cause standard was not before the panel because the Ninth Circuit held that this standard did not apply. The Court reviewed "de novo whether the district court applied the correct legal standard" and it held that the "district court properly applied the compelling reasons standard rather than the good cause standard ...." *Cahill*, 2025 WL 841196 at *1. Nike failed to provide any explanation as to why the Ninth Circuit's determination that the compelling reasons standard applies to whether redactions of the names of complainants, witnesses, and the subjects of the complaints contained in documents supporting a motion for class certification does not similarly apply to the documents containing the names of individuals in the same categories supporting Plaintiff's Motion for Leave.

Second, Nike asserts that a three-page Declaration from a Nike executive demonstrates that it has met the compelling reasons standard for justifying its proposed redactions. ECF No. 663 at 15. Nike's assertion is incorrect, *see* section IV.B.2, *infra*, but, in any event, this assertion does not bear upon the question of whether the compelling reasons or the good cause standard applies.

> **5.      Nike Erroneously Contends that the Court's Order, ECF No. 647, Compels the Application of the Good Cause Standard**

Nike argues, wrongly, that the Court's Scheduling Order, ECF No. 647, requires the application of the good cause standard to a determination of whether the proposed redactions are justified. ECF No. 663 at 4-5. Nike asserts that this Order "clarified" that Plaintiff's motion for leave to file a renewed motion for class certification should be "purely procedural," and that this "clarification" inexorably should lead to the application of the good cause standard. *Id.* at 7. In

setting the schedule for the motions proposed by the parties during the September 5 Hearing, the

Court did not pre-determine whether the good cause or compelling reasons standard should apply

to the question of whether public records might justifiably be sealed. The determination of which

standard applies is simply not controlled by whether a motion is procedural or "purely

procedural," but whether it is "more than tangentially related" to the merits of the claims. *See*

Sections IV.A.1-2, *supra*.

Moreover, during the September 5 Hearing, the Court acknowledged the substantial

scope of the merits-related evidence and arguments that Plaintiff might appropriately raise in the

Motion for Leave. ECF No. 650 at 23-25 (Transcript). Plaintiff's counsel explained that a motion

for leave would include "new evidence" supporting class certification.  The Court responded by

stating that Plaintiff should include in the motion "[w]hatever you think you need ... to establish

the framework ... why it's appropriate procedurally" to file a renewed motion for class

certification. *Id.* at 25:6-9. The Court further emphasized: "Do whatever you need to do in order

to make your case for me to reconsider or, rather, potentially alter or amend the previous order"

denying the motion for class certification. *Id.* at 25:15-17.

**B.    Nike Cannot Justify the Proposed Redactions Under the Compelling Reasons
Standard**

**1.    The Decisions by Magistrate Judge Russo and the Ninth Circuit Make Clear
that Nike Cannot Meet the Compelling Reasons Standard for Justifying Its
Proposed Redactions**

**a.    Proposed Redactions of Names of "Complainants, Witnesses and
Alleged Persons of Interest"**

Magistrate Judge Russo held that Nike did not meet the compelling reasons standard with

respect to its proposed redactions of the "names of those making workplace complaints along

with the names of the witnesses and subjects of and to the complaints." *Cahill*, 2023 WL

9227107 at *2-3. These categories are exactly the same as those that Nike seeks to redact in the initial part of the two-part list of redactions that it proposes in its Motion to Redact.[5]

The Magistrate Judge explained that the "names" which Nike proposed to redact "involve Nike employees and actions that Plaintiffs allege demonstrate <u>gender discrimination and harassment by Nike itself</u>" and the "identity of Nike employees engaged in the very behavior plaintiffs assert resulted in discrimination certainly bear on plaintiffs' claims." *Cahill*, 2023 WL 9227107 at *3 (emphasis added). Moreover, the "identity of complainants and witnesses similarly relate to issues going to the merits and credibility of plaintiffs' claims." *Id.* The Magistrate Judge determined that "[t]o the extent the individuals identified in the complaints are third parties, the public has an interest and right to access the documents that bear on plaintiffs' claims even if those documents identify non-parties to the litigation." *Id.* (citations omitted).

After describing the lower court's decision that "the privacy interests of non-parties did not outweigh the public's right of access to these judicial records, and it therefore unsealed the documents," the Ninth Circuit held that by "[a]pplying the compelling reasons standard, the district court did not abuse its discretion by finding that the alleged privacy interests of non-parties failed to justify continued sealing." *Cahill*, 2025 WL 841196 at *1.

For the same reasons that both the District Court and Ninth Circuit determined that pursuant to the compelling reasons standard Nike had failed to justify its proposed redactions of the names of complainants, witnesses, and the subjects of complaints in documents filed in support of the motion for class certification, this Court should determine that Nike cannot justify

---

[5] Nike's proposed redactions for "complainants, witnesses and alleged persons of interest," Motion to Redact, ECF No. 663 at 4, covers the same categories of names as "those making workplace complaints ... witnesses and subjects of complaints" that Magistrate Judge Russo determined could not be redacted.

its proposed redactions of the same categories of names in documents filed in support of Plaintiff's Motion for Leave.

          **b.**       **Proposed Redactions of Names of "Individuals Plaintiffs Contend Were Involved in the Distribution or Collection of 'Starfish Questionnaires'"**

Nike proposes to redact the names of female executives who created, implemented, and communicated about the Starfish Project with Nike. ECF No. 663 at 7-8. These female executives are witnesses to the pattern or practice of discrimination and harassment at Nike, the condoning of that discrimination and the failure of Nike's HR process to address that discrimination. See, e.g., Motion for Leave, ECF No. 652 at 9 ("These women determined that, to address longstanding-discrimination at Nike, they needed to band together collect complaints from other women, and otherwise proceed outside of Nike's centralized ... human resources ('HR') because HR condoned discrimination") and *id.* at 18-19 ("These women ... found, based on both the complaints these executives collected and their own experience over many years at Nike, in a presentation titled 'Project Starfish' that they created for Nike that women faced discrimination" at Nike.). In the Motion for Leave, Plaintiff presented new evidence related to these executives and Project Starfish that they argue shows changed circumstances and now provides a record that can satisfy Rule 23's commonality prerequisite.  See *id.* at 9-12, 17-25, 31-33.

As both the District Court and Ninth Circuit concluded, the Starfish-related evidence relates both to the Rule 23 requirements and the merits of Plaintiff's claims. See Section IV.A.1, *supra*. Just as Nike could not meet the compelling reasons standard for justifying the redaction of the names of witnesses in Starfish-related complaints, *see* section IV.B.1.a, *supra*, Nike cannot meet the compelling reasons standard for justifying the redaction of the names of female

executives who were witnesses with respect to the Starfish Project and its recording and presentation of evidence related to the allegations of a pattern or practice of disparate treatment.

Nike attempts to rebut the validity and impact of evidence related to female executives who created the Starfish Project. Defendant Nike, Inc.'s Opposition to Motion for Leave To File a Renewed Motion for Class Certification, ECF No. 661 at 13, 29 ("Nike Opposition"). But Nike's focus upon the evidentiary impact of the "new" evidence related to these female executives demonstrates that this evidence is related to a renewed motion for class certification. It also demonstrates that this new evidence is relevant to the merits of the claims. Accordingly, Nike underscores that the evidence related to the women who created the Starfish Project is "more than tangentially related to the merits," that the compelling reasons standard applies, and that the names of these witnesses to the Starfish Project's creation and implementation should not be redacted, just as the names of the witnesses to the specific Starfish complaints should not be redacted, see Section IV.B.1.a, *supra*.

In addition, Nike's misrepresentations concerning these female executives provide another reason for the Court to reject Nike's proposed redactions of the names of these executives. Nike claims, wrongly, that:

> Plaintiff claims that each of the nine women involved in the creation [of the Starfish Project] were 'executives,' without identifying their roles or which departments they work for. The women were not NIKE executives ...."

Nike Opposition, ECF No. 661 at 29. Contrary to Nike's representations, Plaintiff provided citations to the record identifying the "roles," or positions, of "women involved" and establishing

that eight of the nine women were executives.[6] More importantly, <u>these eight women were</u> <u>executives</u>. In order to clearly illustrate the facts regarding these women, Plaintiff has provided a chart, Attachment B hereto, that lists with specific citation to the record evidence (a) each of the nine women involved,[7] (b) the "role" or job position for each woman, (c) executive designations, such as (E5),[8] for the women and (d) tenure with Nike. Eight of the women involved with the creation of the Starfish Project were in positions of vice president or higher (Graham, Jeffries, ████████████████████████████ and Strong). Attachment B. Nike designates persons in positions of vice president or higher as "executives." See footnote 8. Each of the eight women, whom Plaintiff designated as an executive, except for Strong, is listed on a Nike organization chart indicating that she is in an executive-level position, "E7 or above." *Id.*[9] Furthermore, these women had significant experience with Nike's employment practices since hires dates ranged from 1997 through 2007.[10]

---

[6] Nike inaccurately asserts that Plaintiff claimed that "each of the nine women involved" were executives. ECF No. 661 at 29. In fact, Plaintiff represented that "[a]ll were executives except one ...." Motion for Leave, ECF No. 652 at 15, n.11.

[7] Nicole Graham, Jamie Jeffries, ████████████████████████████████ ████████████, Melanie Strong and ████████████

[8] Numerous Nike documents describe that executive positions are designated by the letter "E" followed by a numerical executive level. For example, ECF No. 653 at 229 ("Executives - E7 level and above"), *id.* at 299 ("E7+ bands are Vice Presidents and above), *id.* at 312 ("E7+" are at the Vice President level). "Nike Job Architecture," NIKE_00023548 ("Nike's Executive Bands" are those jobs at "E7+"), Smolyar Decl. ¶ 4, Ex. O. "Talk with me: Bands & Levels," PLF _ 001989-90 at -1989,("Executives: E7 & Above), Smolyar Decl. ¶ 5, Ex. P. Genevieve Long, a former senior director and "HR Business Partner," see Motion for Leave at 21, testified that Nike refers to persons in vice president positions and above as executives, Long Dep. 13:20 -14:3. Smolyar Decl. ¶ 6, Ex. Q.

[9] Strong worked in a vice president position, Attachment B, but she left in 2019 and is not included on the organizational charts that Plaintiff relied upon for the creation of Attachment B.

[10] The record reflects the following hire dates for women involved in the creation of the Starfish Project: ████████████████████████ Graham (2002), ████████████████ Strong (2002) ████████████████ Attachment B.

Nike proposes to redact the names of six of the women involved with the creation of the Starfish Project, ███████████████████████████████████████████████████████

███████████ See Attachment A. The other three female executives, who were involved in the creation of the Starfish Project, Graham, Jeffries and Strong, had depositions taken that are public. Redacting the names of the Nike executives increases the opportunity for Nike to deceive, such as by stating that the women involved in the creation of Starfish "were not NIKE executives" and hide from the public their long tenure at Nike and consequential positions.[11]

> **2.    Under the Compelling Reasons Standard and Pursuant to the Ninth Circuit's Ruling, the Daugherty Declaration Does Not Justify Nike's Proposed Redactions**

Along with its Motion to Redact, Nike submitted a three-page Declaration from a Nike executive, Alison Daugherty, ECF No. 664, which it claims "supplies corroborating evidence" that satisfies the compelling reasons standard as applied by the Ninth Circuit. ECF No. 663 at 14-

---

[11] Nike has engaged in a pattern of attempting to use redactions in order to obscure its misrepresentations from the public. This pattern is well illustrated by Nike's description of a Starfish complaint during its appeal from the District Court's order unsealing various documents. Opening Brief, No. 24-165, at 47, n. 7, Dkt. Entry 23.1, Smolyar Decl. ¶ 7, Ex. R. In its Opening Brief, which was publicly filed, Nike wrote that the complaint, which was only available to the public in redacted form, referred to "two individuals engaged in a sex act while employed at Nike" but that the "complaint neither alleges nor suggests that act was consensual." *Id.* As shown in the unredacted document, the complainant described "walk[ing] into the massage room at Nike Sports Center" where she saw a female trainer "performing oral sex on ███████████" which left "a very bad taste in my mouth about leadership and how men ... take advantage of women below them." Smolyar Decl. ¶ 3(e), Exs. I, J (the redacted and unredacted versions of the complaint). ███████████ is a Nike executive in the position of "██████████████ NIKE_00046625-26, at 46625, Smolyar Decl. ¶ 8, Ex. S.

 The unredacted complaint with these allegations identifies that it was a high-profile Nike executive in the workplace with a female subordinate. Only by redacting the names from the complaint could Nike maintain the fiction that there was no "allegation" or "suggestion" that the act was not consensual or discriminatory. Where an executive or high-level manager uses his influence over a lower level female employer, courts may find abusive, harassing conduct. See, e.g., *Zetwick v. Cnty. of Yolo*, 850 F. 3d 436, 445 (9th Cir. 2017) (concluding that a reasonable jury could find that the alleged sexual harassment was actionable, in part, because of the harasser's status as supervisor).

15. The Daugherty Declaration does no such thing. It merely restates the type of "generalized assertions" without providing "concrete examples" that the Ninth Circuit rejected. *Cahill*, 2025 WL 841196 at *2 ("Nike raised only generalized assertions" and "failed to supply any corroborating evidence or concrete examples to demonstrate how unsealing of documents could implicate non-parties' reputations and personal/professional interests or how non-parties could be exposed to ridicule, embarrassment and/or harassment.") (internal quotations omitted). Nike cannot avoid the requirements of the compelling reasons standard as applied by the Ninth Circuit by re-packaging "generalized assertions" in a Declaration.

The Ninth Circuit explained that a "court may seal records <u>only</u> when it finds a compelling reason and articulate[s] the factual basis for its ruling, <u>without relying on hypothesis or conjecture</u>." *Cahill*, 2025 WL 841196 at *2 (citing *Ctr. for Auto Safety*, 809 F.3d at 1096) (emphasis added, internal quotations omitted). The Daugherty Declaration relies upon "conjecture" or "hypothesis," such as "likely consequences," that is insufficient to meet the compelling reasons standard.

The Ninth Circuit further explained that "broad conclusory allegations of potential harm are insufficient justification for ... redacting judicial records." *Cahill*, 2025 WL 841196 at *2, (citing *Folz*, 331 F.3d at 1130-31) (internal quotations omitted). The Daugherty Declaration is premised upon such "broad conclusory allegations of potential harm" that simply do not provide a basis for justifying redactions.

## V.    CONCLUSION

For the reasons stated above, the Court should deny Nike's Motion to Redact the names of twenty-five individuals identified in Plaintiff's Motion for Leave and supporting documents.

Dated: November 10, 2025

Respectfully submitted,

GOLDSTEIN BROWNE, PC


*/s/ Barry Goldstein*
Byron Goldstein (admitted *pro hac vice*)
Barry Goldstein (admitted *pro hac vice*)
1111 Broadway 3rd Floor, 04-117
Oakland, CA 94607
Telephone: (510) 584-9020

ACKERMANN & TILAJEF, P.C.
Craig Ackerman (admitted *pro hac vice*)
cja@ackermanntilajef.com
Brian Denlinger (admitted *pro hac vice*)
bd@ackermanntilajef.com
Erika Smolyar (admitted *pro hac vice*)
es@ackermanntilajef.com
315 S Beverly Drive, Suite 504
Beverly Hills, CA 90212
Tel: (310) 277-0614 Fax: (310) 277-0635

MARKOWITZ HERBOLD PC
Laura Salerno Owens, OSB #076230
David B. Markowitz, OSB #742046
Harry B. Wilson, OSB #077214
Kathryn P. Roberts, OSB #064854
Kelsie G. Crippen, OSB #193454

DARDARIAN HO KAN & LEE
Laura L. Ho (admitted *pro hac vice*)
James Kan (admitted *pro hac vice*)
Katharine F. Trabucco (admitted *pro hac vice*)

Of Attorneys for Plaintiffs

# ATTACHMENT A

**LIST OF NIKE'S PROPOSED REDACTIONS AS IDENTIFIED IN THE
DECLARATION OF DANIEL PRINCE, ECF No. 659, ¶¶ 4-6, EXS. B-D**

**Exhibit B to Prince Declaration (Plaintiff's Motion)**

█████████ : 26, 29, 41 (Motion at 20, 23, Ex. A)

█████████ : 26, 28 (Motion at 20, 22)

██████████████████████ : 28 (Motion at 22)

█████████ : 30, 41 (Motion at 24, Ex. A)

██████████ : 30, 41 (Motion at 24, Ex. A)

**Exhibit C to Prince Declaration (Declaration of Byron Goldstein)**

█████████ : 62-63 (Ex. 5), 65 (Ex. 6)

█████████ : 62 (Ex. 5), 82 (Ex. 10), 178 (Ex. 20)

████████ : 62 (Ex. 5), 65 (Ex. 6)

Telephone numbers: 65-74 (Ex. 6)

██████████████████ : 80 (Ex. 9)

██████████████████ : 82 (Ex. 10)

█████████ : 90, 97-98 (Ex. 13), 119 (Ex. 17)

█████████ : 90 (Ex. 13)

█████████ 90 (Ex. 13)

█████████ : 92, 97 (Ex. 13)

█████████ : 100 (Ex. 14)

**Exhibit D to Prince Declaration (Declaration of Erika Smolyar)**

█████████ : 12, 22-23, 48, 90 (Dep. Strong at 18, 34, 35, 136; Dep. Long at 57)

█████████ : 12-14, 38, 43, 45 (Dep. Strong at 18, 21-22, 55, 96, 132)

█████████ 14, 16, 24-25, 42, 59-60 (Dep. Strong at 22, 27, 36-37, 80; Dep. Graham 14, 17)

█████████ : 15, 23, 26, 42-43 (Dep. Strong at 26, 35, 38, 80, 96)

█████████ : 16, 25 (Dep. Strong at 27, 37)

██████████████ 16, 21, 25, 47-48 (Dep. Strong at 27, 33, 37, 135-36)

██████████████████████: 25, 48 (Dep. Strong at 37, 136)

████████████████████████████ 23, 31, 42 (Dep. Strong at 35, 47, 80)

████████████: 25, 59 (Dep. Strong at 37; Dep. Graham at 14)

████████████ 25 (Dep. Strong at 37)

██████████████████████████████████ 29-33, 38-40, 48 (Dep. Strong at 45-49, 55, 58-59, 136)

████████████████: 31 (Dep. Strong at 47)

██████████████ 41 (Dep. Strong at 60)

██████████████: 45 (Dep. Strong at 132)

████████████ 59 (Dep. Graham at 14)

████████████ 60 (Dep. Graham at 17)

██████████████ 71-72, 75, 81, 83-84 (Dep. Long at 9-10, 17, 29, 41-42)

██████████████ 71, 76 (Dep. Long at 9, 18)

████████████: 83-84 (Dep. Long at 41-42)

████████████: 83-84 (Dep. Long at 41-42)

██████████████: 88-89 (Dep. Long at 51-52)

██████████████ 88-89 (Dep. Long at 51-52)

██████████████ 91 (Dep. Long at 58)

# ATTACHMENT B

**FEMALE EXECUTIVES WHO WERE RESPONSIBLE FOR
THE STARFISH SURVEY WITH SPECIFIC POSITIONS IDENTIFIED FROM
DEPOSITION TESTIMONY AND NIKE ORGANIZATIONAL CHARTS**

1.   **Nicole Graham.** Graham testified in 2024 that she is currently the **"Chief Marketing Officer for Nike."** Prince Decl., ECF No. 659**,** Ex. D p. 28 (Graham Dep. 10:1-3). She further testified that she was a **Vice President** for "about six years" before 2020. Ex. D p.58 (Graham Dep. 10:16-21).

     Nike "ELT Org Charts," May 2019, NIKE_00034262 at pp. 22 and 24, Smolyar Decl. ¶ 9, Ex. T. **"VP/GBL Integrated Mktg (E6) Time in Job: 06/19/17, Time at Nike:12/09/02."**

2.   **Jamie Jeffries.** Strong testified that Jeffries "was" a **"vice president** at the time the Starfish Survey was created." Prince Decl., ECF No. 659, Ex. D p. 14 (Strong Dep. 22:22-25).

     Nike "ELT Org Charts," May 2019, NIKE_00034262 at p. 7, Smolyar Decl. ¶ 9, Ex. T. **"VP/GM, Training, Global (E6), Time in Job: 11/15/16, Time at Nike: 10/08/90."**

3.   ██████████████████████████████████████████████
     ███████████████████████████████████ **Time in Job: 09/03/18, Time at Nike: 07/01/98."**

4.   ██████████████████████████████████████████████
     ████████████████████████████████ **Time in Job: 06/19/17, Time at Nike: 09/29/07."**

5.   ██████████████████████████████████████████████
     ██████████████████████████████ **Time in Job: 06/06/16, Time at Nike: 03/17/97."**

6.   ██████████████████████████████████████████████
     ███████████████████████████ **Time in Job: 06/19/17, Time at Nike: 08/05/99."**

7.   ████████████████████████████████████████
     ████████████████████████████████████

     ██████████████████████████████████████████ **Time in Job: 10/02/20, Time at Nike: 08/05/02."**

8.    **Melanie Strong.** Strong testified that she worked at Nike from 2002 to 2019. Strong Dep. 9:24 - 10:13, Smolyar Decl. ¶ 11, Ex. W. She further testified that her last position at Nike was **Vice President and General Manager of Skateboarding** and that she moved into that position in 2017 from the position of **Vice President of Women's Marketing**. *Id.* 10:3-11:8.

9.    ███████   Strong testified that ████ "was either a **VP or a senior director**." Prince Decl., ECF No. 659, Ex. D p. 14 (Strong Dep. 22:15-20).

2379704.1