LAURA E. ROSENBAUM, OSB # 110061
laura.rosenbaum@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
LINDSEY C. JACKSON, Cal. SB# 313396 (*pro hac vice*)
lindseyjackson@paulhastings.com
ALYSSA TAPPER, Cal. SB# 324303 (*pro hac vice*)
alyssatapper@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Attorneys for Defendant NIKE, Inc.
*Additional counsel of record listed on signature page*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KELLY CAHILL SARA JOHNSTON, LINDSAY ELIZABETH, and HEATHER HENDER, individually and on behalf of others similarly situated,<br><br>   Plaintiffs,<br><br> vs.<br><br>NIKE, INC., an Oregon Corporation,<br><br>   Defendant. | Case No. 3:18-cv-01477-AB<br><br>**JOINT STATEMENT OF TRIAL** |

In response to the Court's January 29, 2026 Order (ECF No. 690), the Parties have met and conferred and hereby submit the following Joint Statement of Trial:

## I.   *Daubert* Schedule in Advance of Trial

The Parties agree that they do not require a *Daubert* schedule in advance of trial and do not intend to file *Daubert* motions.

The Parties also note that Plaintiff's Motion to Exclude the Testimony of Ali Saad is fully briefed (*see* ECF Nos. 597 and 617) and ready for decision.

## II.   Trial of Plaintiff Heather Hender's Disparate Treatment, Equal Pay, and Disparate Impact Claims, with Proposed Schedule

The parties agree that Plaintiff Heather Hender's disparate impact claims under Title VII and the Oregon Equality Act, Or. Rev. Stat. § 659A.030 ("OEA") should be decided by the Court.  The parties also agree that Ms. Hender's disparate treatment claims under Title VII and the OEA and her equal pay claims under the Federal Equal Pay Act, 29 U.S.C. § 206 et seq. ("EPA") and the Oregon Equal Pay Act, Or. Rev. Stat. § 652.220 ("OEPA") should be decided by a jury.  ECF No. 577.

### a.   NIKE's Position

Because the jury will decide only Ms. Hender's disparate treatment and equal pay claims, it should only hear evidence related to liability on those specific claims.  Accordingly, to avoid confusion of the issues and potential prejudice, evidence related to Ms. Hender's disparate impact claims should not be presented to the jury, and should be presented only to the Court for consideration.  In addition, Ms. Hender's claim for punitive damages—and evidence related

Page 2 –  JOINT STATEMENT OF TRIAL

thereto—should only be addressed by the jury if liability has been established on a claim providing for such relief.[1]

The evidence and witnesses needed to try Ms. Hender's individual disparate treatment and equal pay claims to the jury are, for the most part, separate and apart from the evidence and witnesses needed to try Ms. Hender's disparate impact claims to the Court. Specifically, Ms. Hender's disparate treatment and equal pay claims relate to actions taken, or not taken, with respect to the sole remaining Plaintiff in this case, Heather Hender. To evaluate her claims, the jury will hear evidence related to Ms. Hender, such as how decisions related to her pay were made, her job duties and skills compared to those of her alleged comparators, why she was or was not promoted, etc. NIKE expects that there will be approximately seven witnesses on these topics, which can be managed over a three- to four-day jury trial.

Ms. Hender's disparate impact claims, on the other hand, relate to whether NIKE had a common policy with respect to pay or promotion decisions that operated to the disadvantage of women, including Ms. Hender. That evidence will likely take the form of testimony from witnesses knowledgeable about NIKE's pay and promotion processes generally, as well as expert testimony related to the statistical analyses of each. Notably, these witnesses have ***no personal knowledge*** with respect to Ms. Hender, or of any decisions made with respect to her individual employment.

This "disparate impact evidence"—offered to show that a common policy tended to affect one group more harshly than another—is not tied to any element that the ***jury*** will decide on Ms. Hender's disparate treatment or equal pay claims. Permitting the jury to hear both, including but

---

[1] The issue of bifurcation of punitive damages is addressed in a separate motion, and the parties do not address it on the merits here.

not limited to complex expert statistical analysis and rebuttal, risks jury confusion and complication of the issues. *See, e.g.*, *Tabor v. Hilti, Inc.*, 577 F. App'x 870, 880 (10th Cir. 2014) (finding that the district court did not abuse its discretion by excluding statistical evidence from the presentation of the disparate treatment claim to the jury). While the jury will hear testimony on the pay and job history of Ms. Hender and her alleged male peers, statistical evidence related to individuals outside of this limited group—pertaining to other divisions and departments at NIKE, for example—is not relevant to the claims the jury will decide.

The risk of prejudice is also high. Disparate treatment requires proof that "the defendant had a discriminatory intent or motive," while disparate impact requires the plaintiff to establish the existence of a policy that had a "disproportionately adverse effect" on a particular group that was otherwise unjustified by legitimate rationale. *See* *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 524–25 (2015) (citation omitted). Complex statistical evidence presented by experts is more appropriately addressed and evaluated by the Court, which has the judicial expertise to parse through the issues and separate this type of proof from evidence of intentional discrimination. Evidence offered solely to prove such alleged disparities is not probative of intent, or of the individual employment decisions experienced by Ms. Hender, and could easily mislead the jury in applying the wrong standard when assessing her disparate treatment or equal pay claims.

It also is apparent from Ms. Hender's description of her anticipated evidence below that she intends to introduce evidence regarding alleged mistreatment of NIKE employees *other than* herself, including alleged complaints or concerns raised by *other* employees, alleging discrimination by *other* managers, in *other* departments, and at *other* points in time. But this alleged evidence has no bearing on whether *Ms. Hender* experienced harm. That evidence is not

relevant to Ms. Hender's individual disparate treatment and equal pay claims, is likely to confuse the jury and unfairly prejudice NIKE, and, as NIKE will argue in its upcoming Motions *in Limine*, such evidence should not be presented to the jury.

Proceeding with Ms. Hender's disparate treatment and equal pay claims first to the jury, and excluding testimony related to her disparate impact claims that will be tried by the Court, allows the jury to hear all of the relevant evidence without introducing complex statistical and other evidence that may lead to jury confusion and prejudice to NIKE, as well as an unnecessary use of the jury's time.

A proposed schedule must appropriately separate each of these issues to avoid unnecessary confusion and promote judicial economy.  NIKE proposes the following schedule:

| July 13 – July 16, 2026 | Voir dire, openings, and trial of Ms. Henders's disparate treatment and equal pay claims to the jury. |
| --- | --- |
| After a verdict is reached; one day | If Ms. Hender prevails on liability on a claim that provides for punitive damages, the parties will try punitive damages to the jury. |
| After a verdict is reached or after punitive damages; one to two days needed | Trial of Ms. Hender's disparate impact claims to the Court. |

### b.  <u>Plaintiff's Position</u>

Plaintiff will present evidence supporting each claim simultaneously because the evidence for all three types of claims overlaps. The jury's instructions well describe the standards for each of the claims tried to the jury and how the jury should evaluate the evidence relevant to each claim.

Through this Joint Statement and its Motion to Bifurcate, NIKE is asking this Court to trifurcate this trial. As this Court recognized, "the Supreme Court has strongly encouraged

joinder of … claims, because under the federal rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties." Dkt. 579 at 4:2-7 (citing *United States Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966)). Because Nike is asking this Court to separate issues for trial, it has the burden of justifying this "exception" to "the rule of normal trial procedure within the Ninth Circuit." *Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 105 F. Supp. 3d 1184, 1208–09 (D. Or. 2015), *aff'd*, 702 F. App'x 537 (9th Cir. 2017); *see also, e.g., Innovative Sols. Int'l, Inc. v. Houlihan Trading Co.*, No. C22-0296-JCC, 2023 WL 12141336, at *1 (W.D. Wash. Nov. 20, 2023) ("separation of issues for trial is not to be routinely ordered.") (quoting Fed. R. Civ. P. 42, cmts.). The Court should not separate the claims for trial for three reasons.

First, Nike fails to carry its burden. It neither specifies how it will be prejudiced nor explains how jury instructions cannot address any alleged prejudice. *See, e.g., Benson Tower Condo. Owners Ass'n*, 105 F. Supp. 3d at 1208 ("Defendant not only failed to meet its burden of proving that bifurcation was warranted, but also failed to sufficiently explain why appropriate jury instructions were insufficient to cure any potential jury confusion."); *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247 (9th Cir. 2014) ("Because the district court issued a limiting instruction, which the jury is presumed to have followed, any error in admitting the evidence was harmless."). Nor does NIKE identify any specific testimony or even name any specific witnesses whose potential testimony is allegedly only relevant to the disparate impact claims. Because NIKE suppressed evidence regarding who made the decisions related to pay and promotions for Plaintiff and the reasons for those decisions, NIKE cannot identify evidence showing specific people made specific decisions with respect to Plaintiff.

Page 6 –   JOINT STATEMENT OF TRIAL

Second, NIKE's generalized claims about separate evidence for the disparate treatment and equal pay claims on the one hand and the disparate impact claims on the other misstates well-established law and the record. Nike asserts that "statistical evidence … is not relevant to the claims the jury will decide." But the Ninth Circuit and Supreme Court have repeatedly held that statistical evidence is relevant to, for example, disparate treatment claims. In *Diaz v. Am. Tel. & Tel.*, 752 F.2d 1356, 1362-63 (9th Cir. 1985), the Ninth Circuit found statistical evidence "unquestionably relevant" to an individual's disparate treatment. *See also, e.g., Obrey v. Johnson*, 400 F.3d 691, 694-97 (9th Cir. 2005) (reversing jury verdict for the employer on a disparate treatment claim because it held the district court abused its discretion when it refused to admit statistical evidence); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804–05 (1973) (holding that an employer's general practices "with respect to minority employment" is relevant to whether a particular decision was discriminatory). Here, as described in Plaintiff's Opposition to NIKE's Motion to Sever, the statistical evidence is relevant to each claim. *See* Dkt. 555 at 13-21.

The evidence for the disparate treatment, equal pay, and disparate impact claims otherwise overlaps significantly. In addition to the statistical evidence, testimony and witnesses concerning NIKE's pay practices and job architecture are relevant to each claim. For example, this evidence is relevant to the "similarly situated" determination for the disparate treatment and disparate impact claims, as well as the "comparable jobs" standard for the equal pay claim.

Third, this Court should deny NIKE's request based on judicial estoppel. Judicial estoppel protects "the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001). It is "an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent

position." *Webb v. Bayview Loan Servicing, LLC*, No. 6:12-CV-1795-AA, 2013 WL 2039275, at *3 (D. Or. May 9, 2013). A court can exercise judicial estoppel in its discretion. *Id.* (quoting *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). The relevant factors are: (1) "whether a party's later position is 'clearly inconsistent' with its earlier position;" (2) "whether a court accepted the party's 'earlier position;'" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* (citation omitted and cleaned up).

Here, after NIKE took the position that Plaintiff's "renewed motion is not timely and would further extend an already-protected litigation" (Dkt. 661 at 23), this Court denied Plaintiff and the putative class the opportunity to use relevant evidence for class certification for this reason. Now, NIKE asks this Court to grant relief that it could have requested years ago. Because NIKE successfully urged this Court to deny Plaintiff and the putative class the opportunity to seek relief based on timing and NIKE now urges this Court to grant a motion that it could have brought years ago (since at least certification was denied), this Court should choose to deny NIKE's motion based on judicial estoppel.

Given the extensive overlapping of the evidence among the claims, the interest in judicial economy requires that Plaintiff's claims be tried together. The jury instructions can well direct the jury to consider the relevant evidence in accordance with the appropriate standard for each claim. Furthermore, there is a well-established process for the trial of claims tried to both a jury and the Court. Pursuant to the Seventh Amendment, the Supreme Court has set forth the manner by which legal and equitable claims in the same action should be tried. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962); *Teutscher v. Woodsen*, 835 F.3d 936, 944 (9th Cir. 2016).

Even if the Court believes that NIKE has carried its burden in this Joint Statement and the evidence for the disparate impact claims is separate and distinct from the other claims, the Court should not enter an Order separating these claims until after completion of the pretrial filings. The pretrial filings – e.g., Proposed Pretrial Order, Plaintiff's witness statements, Pre-Trial Brief, and Motions in Limine briefing – will fully describe the relevance and overlapping nature of the evidence.

Plaintiff also objects to Nike's request to bifurcate the punitive damages phase of trial. That issue is briefed separately on the merits in response to Nike's motion to bifurcate.

### III.    The Appropriateness of an Advisory Jury Pursuant to Federal Rule of Civil Procedure 39(c)

The Parties agree that Ms. Hender's disparate impact claims should be decided by the Court, and that an advisory jury is not appropriate or beneficial in this case. As a preliminary matter, there is no right to a jury trial for disparate impact claims. *See Lutz v. Glendale Union High Sch.,* 403 F.3d 1061, 1067 (9th Cir. 2005) (quoting *Chauffeurs Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990) ("The Seventh Amendment jury trial right extends only to 'Suits at common law,' which refers to 'suits in which **legal** rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] [recognized], and equitable remedies [are] administered.'" (emphasis added in alteration).

With respect to Ms. Hender's claims here, the Parties do not believe that that an advisory jury will add significant value. An advisory jury here is unlikely to "save the Court and the parties substantial time and resources." *Lacava v. Merced Irrigation Dist.*, No. 1:10-cv-00853 LJO SAB, 2013 U.S. Dist. LEXIS 17486, at *6 (E.D. Cal. Feb. 7, 2013). That is because, "[e]ven if the Court were to order an advisory jury, the Court nonetheless has the ultimate responsibility for deciding the case's legal and factual issues. An advisory jury thus may

needlessly complicate the trial in this matter." *Nevada Rest. Servs., Inc. v. City of Las Vegas*, No. 2:15-cv-02240-GMN-GWF, 2019 WL 427326, at *3 (D. Nev. Feb. 4, 2019) (citation and quotation marks omitted). Moreover, because the issues considered to resolve Ms. Hender's disparate treatment and disparate impact claims are somewhat related, asking a jury to decide issues of disparate treatment, while only advising on disparate impact, risks juror confusion, which both Parties wish to avoid.

## IV. Double Recovery Issue

### a. NIKE's Position:

#### i. Economic Damages

"The general rule of compensatory damages bars double recovery for the same wrong." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1005 (9th Cir. 2008); *see also Burgess v. Premier Corp.,* 727 F.2d 826, 837 (9th Cir. 1984) ("One loss—one recovery. Although the jury found for the doctors on claims under the Washington Securities Act, under federal securities laws, under the Washington Consumer Protection Act and pursuant to principles of common law fraud and negligent representation, the doctors are entitled to only one recovery for their out of pocket losses . . . ."); *Bender v. City of New York,* 78 F.3d 787, 793 (2d Cir. 1996) ("A basic principle of compensatory damages is that an injury can be compensated only once."); *Clappier v. Flynn*, 605 F.2d 519, 530–31 (10th Cir. 1979) (finding compensatory damages for federal civil rights claim and state civil rights claim duplicative). Although Ms. Hender seeks back pay for the same alleged promotion discrimination harm under Title VII and the Oregon Equality Act, and back pay for the same alleged pay discrimination harm under Title VII, the Oregon Equal Pay Act, and Federal Equal Pay Act, she is not entitled to recover twice,

Page 10 – JOINT STATEMENT OF TRIAL

simply because she asserts different theories of liability.  Below, NIKE sets forth its proposal to prevent potential double recovery in this case.

**Promotion Discrimination Claims**:  Because the elements and defenses available under both Title VII and the Oregon Equality Act for Ms. Hender's disparate treatment promotion claims are the same, and the statutory periods are almost identical, NIKE proposes that the jury complete one set of verdict form questions for both of Ms. Hender's promotion discrimination claims.  If the jury finds NIKE liable, the special verdict form would have one line to insert economic damages for Ms. Hender's promotion discrimination claims.

**Pay Discrimination Claims**:  However, because the elements and defenses available under Ms. Hender's pay discrimination claims differ, the statutory periods vary significantly, and liquidated damages stem from certain awards but not others, NIKE proposes that the jury should complete a separate set of verdict form questions for each pay discrimination cause of action[2] and award economic damages on each claim for which the jury finds liability.  Specifically, the jury will separately find whether Ms. Hender has established liability on her disparate treatment pay, Oregon Equal Pay Act and Federal Equal Pay Act claims, and award a monetary damage amount for each, where appropriate.  To the extent the jury awards economic damages on more than one of these pay discrimination claims, however, Ms. Hender should be awarded only the highest of the economic damages awarded for pay discrimination.  This will provide Ms. Hender with the maximum recovery awarded by the jury, while preventing double recovery for the same harm.

---

[2] However, Ms. Hender's disparate treatment claims under Title VII and the Oregon Equality Act should be combined, as NIKE has proposed with respect to her promotion claims.

### ii.  Liquidated Damages

Liquidated damages are available under both the Federal and Oregon Equal Pay Acts. Liquidated damages under the Federal Equal Pay Act are compensatory.  *See Mathis v. Hous. Auth. of Umatilla Cnty.*, 242 F. Supp. 2d 777, 789 (D. Or. 2002) (under the FLSA (29 U.S.C. § 201), which the Federal EPA falls under, liquidated damages are not considered punitive, but are instead compensatory, designed to address the harm caused by the delayed payment of wages, which may be difficult to quantify otherwise).  Similarly, the liquidated damages provided in Or. Rev. Stat. § 652.230 serve as a mechanism to fully compensate the employee for the harm caused by the wage disparity as there is no language in the statute that explicitly states that it is meant to serve as a penalty.  *Cf Mathis v. Hous. Auth.*, 242 F. Supp. 2d 777 (D. Or. 2002) (analyzing Or. Rev. Stat. § 652.150 and reasoning that it explicitly states that its liquidated damages are "a ***penalty*** for the nonpayment, the wages or compensation of the employee shall continue from the due date thereof . . . until paid or until action therefor is commenced") (emphasis added).

Because liquidated damages under both statutes are compensatory in nature, only one award of liquidated damages should be awarded even if the jury awards economic damages on both the Federal and Oregon Equal Pay Act claims.  *See Theme Promotions, Inc.*, 546 F.3d at 1005.  As a result, NIKE proposes that, if Ms. Hender receives economic damages under both the Federal and Oregon Equal Pay Acts, she should only be awarded liquidated damages on the claim for which she received the higher economic damages award.  This will provide Ms. Hender with the maximum recovery of liquidated damages, while preventing double recovery for the same harm.

### iii.  Punitive Damages

Ms. Hender asserts claims under Title VII and the Oregon Equality Act, both of which carry the possibility of a punitive damages award.

Punitive damages under Title VII require a plaintiff to prove by a ***preponderance of the evidence*** that the defendant "engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1197 (9th Cir. 2002) (quoting 42 U.S.C. § 1981a(b)(1)).  Title VII carries a $300,000 punitive damage cap.  *See Paul v. Asbury Auto. Group, LLC*, No. 06-1603-KI, 2009 U.S. Dist. LEXIS 4924, at *29 (D. Or. Jan. 23, 2009) ("Congress identified $300,000 as the maximum amount of punitive damages allowable for Title VII violations.").

Punitive damages under Oregon law "are not recoverable in a civil action unless it is proven ***by clear and convincing evidence*** that the party against whom punitive damages are sought has acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others."  Or. Rev. Stat. § 31.730(1) (emphasis added).  Oregon law does not have a punitive damages cap.

If the jury finds liability against NIKE under both Title VII and the Oregon Equality Act, the jury should determine whether NIKE is liable for punitive damages under both Title VII and Oregon law, given the different standards discussed above.  But Ms. Hender should not recover punitive damages twice for the same alleged conduct.  *MCI Communs. Servs. v. Sec. Pacing Co.*, No. 1:15-CV-01940-LJO-JLT, 2016 U.S. Dist. LEXIS 49249, at *15–16 (E.D. Cal. Apr. 12, 2016) (explaining that at the trial stage or after trial, the plaintiff must make an election of remedies between an award of statutory penalties or punitive damages to avoid a double recovery

if based on the same conduct); *Aguilar v. Marinello Sch. of Beauty,* No. CV 09-00854 DMG (AJWx), 2010 U.S. Dist. LEXIS 153657, at \*27–28 (C.D. Cal. Mar. 29, 2010) ("Where, as here, the social objectives pursued by two categories of damages sought in one cause of action are the same, an award for both would create an impermissible double recovery. . .  Accordingly, the Court agrees with the other district courts that have considered this issue and finds Plaintiff ineligible for punitive damages under section 2394"); *Smith ex rel. Smith v. Islamic Emirate of Afghanistan,* 262 F. Supp. 2d 217, 240 (S.D.N.Y. 2003) ("To the extent that [statute's] treble-damages provision already provides a penalty, this Court is foreclosed from assessing additional punitive damages against the ... defendants"); *Lukaszuk v. Sudeen,* No. 02–cv–5143–JGMDG, 2007 WL 4699018, at \*9 (E.D.N.Y. Nov. 27, 2007) (recommending that Court not award punitive damages for common law claim where plaintiff had already received treble damages under the RICO statute (Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968)).

To eliminate the risk of double recovery, but to preserve issues appropriate for appeal, NIKE proposes that the jury should enter a punitive damages award under Title VII and another under Oregon law.  However, because it would not be appropriate for Plaintiff to receive two punitive damages awards, Plaintiff should recover only the larger of the two awards, subject to the Title VII $300,000 cap.  Thus, for example, if the jury awarded Plaintiff any amount over $300,000 in punitive damages under Oregon state law and any amount (above or below the $300,000 cap) under Title VII, Plaintiff would only recover the punitive damages awarded under Oregon state law.

   **b.  Plaintiff's position:**

Any potential "double damages" issues are simply addressed by the combination of a specific itemization of economic damages pursuant to the JTMO, appropriate jury instructions and verdict form, and the Court's ability to review and cure any potential double damages awarded after trial. Plaintiff agrees with NIKE that the verdict form should contain separate lines for damages for each claim.

As required by the JTMO, the Plaintiff has filed an itemized list of economic damages. ECF No. 679. This detailed listing of economic damages for each claim may serve as a check for determining whether any award by the jury is excessive. Furthermore, while the Plaintiff may disagree with Nike regarding the applicable law, Plaintiff wants to make sure that the damage calculations are accurate. Accordingly, Plaintiff is willing to review any calculation error that Nike may point out regarding the itemized list of economic damages and make adjustments as appropriate.

Both the jury instructions and the verdict form will guide the jury towards making damage calculations that are accurate and appropriate based upon the jury's factual findings. Moreover, there will be no double counting of damages awarded by the jury on the claims determined by the jury and the disparate impact claims decided by the Court. Prior to the Court ruling on the district impact claims, the jury will have rendered its verdict on the disparate treatment and EPA claims. See section 2, above. Accordingly, in the exercise of equitable discretion, the Court can assure that there is no erroneous award of double damages when fashioning a remedy for a disparate impact violation.

Finally, at the conclusion of the trial, the Court has the authority to review the award of damages in order to assure that there is no improper award of "double damages."

## V.    Additional Request for Consideration

### a.  NIKE's position:

In addition to the questions previously posed by the Court and addressed by the Parties above, NIKE believe that efficiency and judicial economy would be greatly increased if the Court is willing to consider and resolve some of the Parties' threshold Motions *in Limine* earlier than would otherwise be decided under the Court's standard pre-trial schedule.[3]  Early rulings and guidance from the Court on these gateway issues will allow the Parties to streamline trial preparation and planning, as well as the pre-trial filings to be submitted for the Court's review, and will reduce the number of related objections and disputes for the Court to decide at a later time.

Several of the Parties' Motions *in Limine* concern whether, and to what extent, certain evidence, argument, and testimony will be permitted at trial.  This includes, but is not limited to:

- o  The admissibility of testimony regarding the Starfish Questionnaires and other third-party complaints.

- o  Whether NIKE's current and former CEOs, currently on Ms. Hender's witness list, may be called as witnesses.

- o  Whether and to what extend evidence and testimony from the former plaintiffs in this case, including former plaintiff Kelly Cahill, will be allowed.

Rulings from the Court on the Motions *in Limine* will provide both the Court and the Parties with clarity regarding the scope and length of trial.  Absent early guidance from the

---

[3] On January 29, 2026, the Parties filed a Joint Stipulation Regarding Motions *in Limine* (ECF No. 689), in which the Parties requested an expanded page limit to address the issues raised in this case.  The Parties respectfully renew their request for additional pages when the Court issues its order regarding the page limit for the Parties' re-filed Motions *in Limine*.

Court, the Parties currently anticipate presenting approximately 28 witnesses, which is unrealistic for a five-day trial.[4]  Similarly, the latest version of the Parties' joint exhibit list includes over 1,000 exhibits.  Earlier rulings and guidance from the Court regarding the evidence, argument, and testimony permissible at trial will allow the Parties to streamline the pre-trial filings and trial planning, and also reduce the number of disputes for the Court to resolve regarding the Parties' proposed witnesses and exhibits.

NIKE is happy to work with Ms. Hender to propose a joint briefing schedule on these items if the Court agrees to consider any of the above motions or issues on an earlier timeline. NIKE further notes that if the Court is concerned about timing, the Court could limit this earlier exercise to rule only on the specific motions identified above, which have a material impact on the length of trial, the witnesses called, and the exhibits identified, and other Motions *in Limine* can be reserved to a later date.

### b.  Plaintiff's position:

Regarding NIKE's request, pursuant to this District's longstanding practice, it is essential that the motions in limine are decided after the parties submit all pre-trial filings. This well-established practice permits the parties to present the motions in limine and the Court to consider the motions in limine on a complete and specific record of the evidence that the parties intend to offer at trial and the legal justifications for the relevance and admissibility of that evidence.

The JTMO, which has been issued twice previously for this civil action and that is the regular, longstanding practice in this Court, has a well-structured process for when motions in limine are filed and considered. In brief, there are "Three Waves" of pre-trial filings that are

---

[4]  The Parties' most recent witness list contains just three overlapping names.  Ms. Hender proposes an additional 17 witnesses (20 in total); NIKE proposes an additional eight (11 in total).

timed to occur 28, 21, and 14 days prior to a Pre-trial Conference. The parties are required to file motions in limine in the second wave and responses to the other parties' motions in limine in the third wave. The motions in limine are then scheduled for a hearing and determination during the Pre-trial conference.

Plaintiff's position is that this Court's usual schedule for considering and deciding the motions in limine should be followed. Nike proposes that the motions in limine should be decided "earlier than would otherwise be normally scheduled." This vague proposal is contrary to this Court's well-established practice. It should also be denied based on judicial estoppel for the reasons described in the prior section.

The Court has ordered that it "will docket a renewed Civil Jury Trial Management Order setting forth a revised schedule for pretrial filings at a later date." ECF No. 690. Further, the Court "expects the parties to refile all documents required by the Civil Jury Trial Management Order ...." *Id.*

Of course, Plaintiff has planned to follow the schedule set by the renewed JTMO with the expectation that the "Three Waves" of ordered pre-trial filings will apply and that the motions in limine will be considered and decided after the completion of all of the pre-trial filings. The usual practice is that the motions in limine would be considered and decided at the pre-trial conference, which is presently scheduled for June 29, 2026. ECF No. 690. Plaintiff has no objection to the Court scheduling the motions in limine for consideration at the pre-trial conference. Also, Plaintiff has no objection in advancing the date for the consideration of the motions in limine provided that the schedule established in the JTMO is followed. In other words, all the pre-trial filings must be submitted prior to the consideration of the motions in limine.

Page 18 – JOINT STATEMENT OF TRIAL

There is no justification to depart from the longstanding practice of this Court as reflected in the JTMO's schedule. NIKE's reference to the number of potential witnesses and exhibits previously identified does not justify its request for additional motion practice. These witnesses and exhibits have already been identified. Only NIKE's proposal creates additional work because it creates an additional round of MIL briefing and decisions.

Plaintiff requests that the JTMO require the parties, as the Trial Management Orders from Judges Mosman, Hernandez, and Nelson require, to provide more detailed witness statements because it will facilitate a more efficient trial, pretrial planning, and pretrial decisions. Without this requirement, NIKE believes it can provide generalized witness statements that do not assist the parties and the Court with trial planning. *See, e.g.,* Dkt. 607 at 69-76 (example of NIKE's previously submitted generalized witness statements). Plaintiff thus requests that the JTMO include the following based on the Trial Management Orders from Judges Hernandez, Mosmon:

> List all parties, corporate representatives and other witnesses to be called, showing names and occupations, together with a statement setting forth the complete substance, not just the subject of the testimony. For example, do not say, "The witness will testify about the accident." Say, "The witness will testify that the defendant ran the red light and was going an estimated 30 miles per hour." Testimony at trial will be limited to subject matter identified in the witness statements, absent a showing of just cause for the omission, balanced against any prejudice to the opposing party. Failure to include adequate descriptions of the topics about which witnesses will testify may result in the exclusion of the witness and /or the witnesses' testimony about the inadequately described topic.

*See Taylor v. Secretary of Agriculture, et al.*, Case No. 2:18-cv-01044-HZ, Dkt. 34 at 2, 4; *Watson v. Combs*, Case No. 3:23-cv-00221-MO (D. Or. June 29, 2023), Dkt. 13 at 5; *Santoro v. Ocwen Loan Servicing, LLC*, Case No. 6:14-cv-00522-AN (D. Or. Feb. 27, 2024), Dkt. 302 at 5.

Date: March 2, 2026

*/s/ Byron Goldstein*
BYRON GOLDSTEIN (admitted *pro hac vice*)
byron@goldsteinbrowne.com
BARRY GOLDSTEIN (admitted *pro hac vice*)
barry@goldsteinbrowne.com
GOLDSTEIN BROWNE, PC
1111 Broadway, 3rd Floor, Office 04-117
Oakland, CA 94607
Telephone:  (510) 584-9020

LAURA L. HO (admitted *pro hac vice*)
lho@dhkl.law
JAMES KAN (admitted *pro hac vice*)
jkan@dhkl.com
KATHARINE F. TRABUCCO (admitted *pro hac vice*)
ktrabucco@dhkl.com
DARDARIAN, HO, KAN & LEE
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone:  (510) 763-9800
Facsimile:  (510) 835-1417

LAURA SALERNO OWENS, OSB # 076230
laurasalerno@markowitzherbold.com
DAVID B. MARKOWITZ, OSB # 742046
davidmarkowitz@markowitzherbold.com
HARRY B. WILSON, OSB # 077214
harrywilson@markowitzherbold.com
KATHRYN P. ROBERTS, OSB # 064854
kathrynroberts@markowitzherbold.com
KELSIE G. CRIPPEN, OSB # 193454
kelsiecrippen@markowitzherbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Telephone:  (503) 295-3085
Facsimile:  (503) 323-9105

CRAIG J. ACKERMANN (admitted *pro hac vice*)
cja@ackermanntilajef.com
BRIAN W. DENLINGER (admitted *pro hac vice*)
bd@ackermanntilajef.com
ERIKA SMOLYAR (admitted *pro hac vice*)
es@ackermanntilajef.com
ACKERMANN & TILAJEF PC
315 South Beverly Drive, Suite 504
Beverly Hills, CA  90212
Telephone:  (310) 277-0614
Facsimile:  (310) 277-0635

Attorneys for Plaintiffs

Page 20 – JOINT STATEMENT OF TRIAL

Date:  March 2, 2026

*/s/ Felicia A. Davis*
DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
LINDSEY C. JACKSON, Cal. SB# 313396 (*pro hac vice*)
lindseyjackson@paulhastings.com
ALYSSA TAPPER, Cal. SB# 324303 (*pro hac vice*)
alyssatapper@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

LAURA E. ROSENBAUM, OSB # 110061
laura.rosenbaum@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

Attorneys for Defendant NIKE, Inc.

**SIGNATURE ATTESTATION**

In accordance with Civil Local Rule 11(b)(2), I attest that concurrence in the filing of this document has been obtained from the signatories on this e-filed document.


Dated:  March 2, 2026                              Respectfully submitted,

                                                                     PAUL HASTINGS LLP

                                                                      *s/ Felicia A. Davis*
                                                                     FELICIA A. DAVIS (*pro hac vice*)