LAURA E. ROSENBAUM, OSB No. 110061
laura.rosenbaum@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
LINDSEY C. JACKSON, Cal. SB# 313396 (*pro hac vice*)
lindseyjackson@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Attorneys for Defendant NIKE, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| Heather Hender, | Case No. 3:18-cv-01477-AB |
| Plaintiff, | **DEFENDANT NIKE, INC.'S TRIAL MEMORANDUM** |
| v. | |
| NIKE, INC., an Oregon corporation, | |
| Defendant. | |

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................... 1

II. MATERIAL FACTUAL CONTENTIONS .................................................... 2

    A.  NIKE's Commitment To Equal Employment Opportunity. ................................. 3

    B.  NIKE Did Not Have A Practice Of Using Prior Pay To Set Starting Pay. ............. 3

    C.  NIKE's Job Codes Do Not Define Substantially Equal Or Comparable Work. .................................................................................................................. 5

    D.  NIKE Did Not Pay Hender Less Or Fail To Promote Her Because Of Her Sex. ................................................................................................................... 5

III. MATERIAL LEGAL CONTENTIONS ......................................................... 6

    A.  Ms. Hender Cannot Succeed On Her Disparate Treatment Claims. (DECIDED BY JURY) ....................................................................................... 6

        1.  Ms. Hender Cannot Meet Her Prima Facie Burden For Disparate Treatment. ................................................................................................ 6

        2.  Even If Ms. Hender Meets Her Burden, Evidence Will Prove That Her Managers Would Have Made The Same Employment Decision Regardless Of Sex. ................................................................. 8

    B.  Ms. Hender Cannot Succeed On Her Equal Pay Claims.  (DECIDED BY JURY) ....................................................................................................... 8

        1.  Ms. Hender Cannot Meet Her Prima Facie Burden To Show That She Was Paid Less For Substantially Equal Or Comparable Work. ........... 8

        2.  Regardless, NIKE Can Establish That Plaintiff's Pay Was Based On Job-Related Factors. .......................................................................... 9

    C.  Ms. Hender Cannot Succeed On Her Disparate Impact Claims.  (DECIDED BY THE COURT). ....................................................................... 10

        1.  Ms. Hender Cannot Meet Her Prima Facie Burden Of Demonstrating That NIKE Used Prior Pay To Set Starting Pay As A Practice. ................................................................................................ 10

        2.  Ms. Hender's Statistical Analysis Does Not Demonstrate A Connection Between The Use Of Prior Pay And Any Disparate Impact. ..................................................................................................... 11

        3.  Ms. Hender Must, But Cannot, Show That Her Prior Pay Was Used To Show Damages. ....................................................................... 11

    D.  The Jury Should Not Hear Evidence Relating To Ms. Hender's Disparate Impact Claims. ............................................................................... 12

        1.  Ms. Hender's Claims Are Predicated On Entirely Different Legal Theories; There Is No Reason For The Jury To Hear Evidence Relating To All Claims. .......................................................................... 13

2.     Introducing Evidence To A Jury Concerning Ms. Hender's Disparate Impact Claim Is Likely To Confuse The Issues And Prejudice NIKE. ...................................................................................14

E.     The Damages Period For The Oregon EPA Claim And Disparate Treatment And Disparate Impact Claims Runs From Plaintiff's Charge. ............................ 16

F.     Plaintiff Is Not Entitled To Punitive Damages. ...................................................... 18

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*American Pipe & Const. Co. v. Utah,*
  414 U.S. 538 (1974)............................................................................................17

*Berry v. Dep't of Soc. Servs.,*
  447 F.3d 642 (9th Cir. 2006) ..........................................................................6, 14

*Coe v. Yellow Freight Sys., Inc.,*
  646 F.2d 444 (10th Cir. 1981) .........................................................................12

*Costa v. Desert Palace, Inc.,*
  299 F.3d 838 (9th Cir. 2002), *aff'd,*
  539 U.S. 90 (2003)................................................................................................8

*E.E.O.C. v. Tobacco Superstores, Inc.,*
  No. 3:05CV00218-WRW, 2008 WL 2328330 (E.D. Ark. June 4, 2008),
  *amended and superseded by*
  2008 WL 11344698 (E.D. Ark. June 6, 2008).................................................17

*Forsberg v. Pac. Nw. Bell Tel. Co.,*
  No. 84-1401-FR, 1986 WL 192876 (D. Or. July 21, 1986) ..................................8, 9

*Gleason v. Filter Holdings, LLC,*
  737 F. Supp. 3d 1033 (D. Or. 2024) .................................................................8, 9

*H. K. v. Spine Surgery Ctr. of Eugene, LLC,*
  305 Or. App. 606 (2020) ......................................................................................6

*Howe v. City of Akron,*
  801 F.3d 718 (6th Cir. 2015) .........................................................................16, 17

*Jackson v. Metal Improvement Co.,*
  No. CV 12-1755-MWF, 2012 WL 8968996 (C.D. Cal. Nov. 26, 2012).................12

*Kolstad v. Am. Dental Ass'n,*
  527 U.S. 526 (1999)............................................................................................18

*Maxwell v. City of Tucson,*
  803 F.2d 444 (9th Cir. 1986) ..........................................................................9, 10

*Ngo v. Reno Hilton Resort Corp.,*
  140 F.3d 1299 (9th Cir. 1998), *opinion amended on denial of reh'g,*
  156 F.3d 988 (9th Cir. 1998) ............................................................................18

*Renati v. Wal-Mart Stores, Inc.,*
  No. 19-cv-02525-CRB, 2019 WL 5536206 (N.D. Cal. Oct. 25, 2019).................12

*Ricci v. DeStefano,*
  557 U.S. 557 (2009).............................................................................................6

*Richardson v. Nw. Christian Univ.,*
242 F. Supp. 3d 1132 (D. Or. 2017) ....................................................................18

*Rose v. Wells Fargo & Co.,*
902 F.2d 1417 (9th Cir. 1990) .....................................................................10, 11

*Tabor v. Hilti Inc.,*
577 F. App'x 870 (10th Cir. 2014) .....................................................................15

*Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.,*
576 U.S. 519 (2015)..........................................................................6, 13, 14

**STATUTES**

29 U.S.C. § 206(d) (FEDERAL EQUAL PAY ACT (FEDERAL EPA))........................................ *passim*

42 U.S.C. § 2000e-2 (TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (Title VII))................. *passim*

OR. REV. STAT. § 652.220 (OREGON EQUAL PAY ACT (OREGON EPA))........................2, 8, 16, 17

OR. REV. STAT. § 659A.030 (OREGON EQUALITY ACT (OREGON EQUALITY ACT))...........2, 12, 17

**RULES**

FED. R. EVID. 402 ................................................................................................1

FED. R. EVID. 403 ................................................................................................1

FED. R. EVID. 404 ................................................................................................1

OR. ADMIN. R. 839-008-0010(1)(a)........................................................................9

OR. ADMIN. R. 839-008-0010(1)(b)........................................................................9

OR. ADMIN. R. 839-008-0010(1)(c)........................................................................9

OR. ADMIN. R. 839-008-0010(1)(d)........................................................................9

OR. ADMIN. R. 839-008-0015................................................................................10

**REGULATIONS**

29 C.F.R. § 1620.16................................................................................................9

## I.    __INTRODUCTION__

This trial asks whether Heather Hender can prove that she experienced discrimination in her pay and/or promotion decisions while employed by NIKE.  Yet Ms. Hender's trial memorandum and other submissions prove that she has no interest in trying that case.  Instead, she prefers to ignore the facts and merits here by converting a narrow five-day trial into a multi-week (or month) fishing expedition filled with mini-trials on a host of issues that this Court, even at the discovery phase, has found to be "disproportionate to the needs of th[is] case."  ECF No. 521 at 15. If such matters were disproportionate to the merits based on the then-existing procedural posture of the case, there is no dispute that they are now inadmissible at trial under at least Federal Rules of Evidence 402-404.

Ms. Hender refuses to accept that this Court and the Ninth Circuit have declined to certify a class action.  Repeatedly.  *See e.g.*, ECF Nos. 310, 335, and 676.  Because Plaintiff has been unsuccessful in that endeavor means she is not permitted to try a putative class case to this jury.  Yet, Ms. Hender spends the first several pages of her brief identifying alleged witnesses who she has never met and whom have zero facts related to her allegations.  Indeed, Ms. Hender's witness list ***does not include a single one of Ms. Hender's former managers or any alleged comparator***.  Her proposed exhibits fare no better.  At bottom, Ms. Hender's plan for this trial is not to prove her claims, but to attempt to paint NIKE as a bad actor in the hope that she can convince the jury that NIKE must have discriminated against her.  The law does not support this effort.

The legal elements of Ms. Hender's claims require the jury to examine *Ms. Hender*, *her* alleged comparators, and the managers who made *her* employment decisions to decide whether she was paid less for substantially equal or comparable work and/or otherwise experienced discrimination on the basis of her sex.  But Ms. Hender intends to largely ignore whether she

personally experienced discrimination and instead hopes to offer argument and conjecture regarding the alleged experiences of other NIKE employees.  NIKE seeks to exclude much of this so-called "evidence" in its forthcoming motions *in limine* due to its irrelevance, unfair prejudice, and often inappropriate nature.  But even setting that aside, Ms. Hender's narrative is simply wrong.  NIKE is a company that cares about its employees.  For years, NIKE has prioritized equal opportunity in its workplace, striving to create an environment where everyone is seen, heard, and included.  NIKE continually evaluates and evolves its hiring, pay, and promotions programs in light of these guiding principles.

Put simply, what Ms. Hender seeks to show about NIKE and its purported culture is not true.  But even so, none of that is on trial.  The issue here is whether ***Ms. Hender*** was paid less than male peers for substantially equal or comparable work, and whether ***Ms. Hender*** was not promoted because of her gender.  Evidence will demonstrate at trial that ***Ms. Hender's*** claims are meritless and her accusations about NIKE as an employer are unfounded.  While NIKE is ready, willing, and able to try *Ms. Hender's* case, it is inappropriate for Ms. Hender to turn this into a month-long (or more) trial about ancillary issues that have no bearing on Ms. Hender's claims.

## II.    MATERIAL FACTUAL CONTENTIONS

NIKE is an American athletic footwear and apparel corporation headquartered in Beaverton, Oregon.  Ms. Hender is a former NIKE employee.  She asserts various individual claims for (i) disparate impact in pay under the Oregon Equality Act, Or. Rev. Stat. § 659A.030 ("Oregon Equality Act") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, *et seq.* ("Title VII"), (ii) disparate treatment in pay and/or promotion under the Oregon Equality Act and Title VII, and (iii) violation of the Federal Equal Pay Act, 29 U.S.C. § 206(d) ("Federal EPA") and the Oregon Equal Pay Act, Or. Rev. Stat. § 652.220 ("Oregon EPA").

A.    **NIKE's Commitment To Equal Employment Opportunity.**

Ms. Hender's claims are inconsistent with NIKE's core values.  NIKE is committed to fostering an inclusive culture, designed to help every employee reach their full potential.  In furtherance of that goal, NIKE has implemented robust Equal Employment Opportunity, Anti-Discrimination, Anti-Harassment, and Anti-Retaliation policies that all overlay its hiring, compensation, and promotion processes.  To the extent issues involving one of these policies arise in the workplace, NIKE has a dedicated team of professionals responsible for investigating complaints that are submitted through any of NIKE's many available avenues.  NIKE takes complaints raised seriously and continuously seeks to evolve as an inclusive company and employer of choice for tens of thousands of individuals around the globe.

B.    **NIKE Did Not Have A Practice Of Using Prior Pay To Set Starting Pay.**

Ms. Hender asserts that before October 2017, NIKE had a practice of using prior salary to set starting pay, which she alleges had a discriminatory impact on women, including herself.  At trial, NIKE will rebut Ms. Hender's claims that such a practice existed.  NIKE's thousands of managers had discretion to consider a wide range of factors in setting starting pay depending on the role, the candidate, and the manager.  These factors included external market and internal equity, the applicant's relevant work experience, education and skills, and the business's financial conditions.

In September 2017, Oregon passed a law that prohibited employers from inquiring into prior salaries when setting starting salaries.  To ensure compliance with that law, NIKE issued a directive to hiring managers and recruiters to not ask about prior pay in their interviews with candidates.  But even before this policy was enacted, NIKE never required hiring managers to ask for, or candidates to provide, prior salary during the hiring process; and they often did not.  Hiring managers, in their wide discretion, chose whether to ask about prior pay and how to set starting

salary.

Ms. Hender previously tried to prove that NIKE had a practice of using prior pay to set starting pay at class certification. This Court disagreed, finding that "[t]here [was] insufficient evidence that starting pay was a required factor in making starting pay decisions throughout all these varied jobs." ECF No. 310 at 46. The Court subsequently declined to amend or alter this ruling. ECF No. 676. But while this case should focus solely on Ms. Hender's specific claims, the evidence at the class certification stage demonstrated that "hiring managers were given discretion to set starting pay, within a guideline range, using whatever factors they deemed relevant which may or may not include prior pay history." ECF No. 310 at 42.

Ms. Hender also claims that NIKE used a standardized Performance Sharing Plan ("PSP") formula for calculating bonuses, which she alleges had a disparate impact on women. PSP awards are NIKE's annual cash bonuses, awarded to employees who receive performance ratings, known as Coaching For Excellence or "CFEs," above "Unsatisfactory." PSP awards were comprised of both "Team" and "Discretionary" portions, the latter of which was determined, in part, by the employee's manager through the assignment of a "Performance Modifier." The "Performance Modifier" was based on the employee's CFE rating, but allowed managers considerable discretion to set the award within or even outside of the range provided.

While Ms. Hender claims the PSP award practice had a disparate impact on women, this allegation actually derives from her starting pay claim. Ms. Hender argues that because part of the PSP calculation was based on her salary, and because her salary was purportedly lower than it should have been, so was the PSP award. Put simply, Ms. Hender's disparate impact claim, as it relates to her PSP award, is tied to her disparate impact claim concerning her starting pay. If she fails to prevail on the latter, her claims on the former, too, fall. Even if Ms. Hender could show

her gender affected her starting pay (she cannot), the evidence will show that managers had considerable discretion in setting PSP awards.

C.    **NIKE's Job Codes Do Not Define Substantially Equal Or Comparable Work.**

It is Ms. Hender's burden to demonstrate the appropriate comparators for each cause of action asserted. To support her pay-related claims, it appears that Ms. Hender intends to argue that all employees within a job code at NIKE perform substantially equal or comparable work. In reality, while NIKE does use job codes within its job architecture to differentiate certain kinds of work, a job code alone does not define substantially equal or comparable work under the law. While job codes may be assigned a job description internally at NIKE for ease of tracking, hiring managers control the language for the actual job descriptions that are posted externally to match the varied job requirements that exist within the job codes. Indeed, within the job codes across all departments at NIKE, there are often numerous distinct positions that even have different titles. Ms. Hender must prove that her alleged "comparators" meet the legal standards at issue, not simply that they were assigned the same job code.

D.    **NIKE Did Not Pay Hender Less Or Fail To Promote Her Because Of Her Sex.**

Ms. Hender was hired at NIKE on April 6, 2015 as a Manufacturing Engineer, with a starting salary of $78,600. In October 2018, she was promoted to Senior Process Engineer. Her pay increased to around $92,000 by the time she voluntarily resigned from NIKE on October 12, 2020.

Ms. Hender also alleges that she was paid less than men within her job codes (A0945, A1013, A0946), but she cannot meet her burden to show that all employees within those job codes are appropriate comparators. As noted above, while each job code generally encompasses engineering jobs, evidence will show that the roles within a job code vary significantly.

Ms. Hender identifies Geoffrey Weston and Trent Waddell as male employees who were paid more, but she cannot establish that they are appropriate comparators under the law. Weston was an Innovation Engineer and Waddell was an Automation Engineer. Their jobs varied significantly from Ms. Hender's, as did their prior experience and skill sets, which explain any pay differential.

## III.    MATERIAL LEGAL CONTENTIONS

### A.    Ms. Hender Cannot Succeed On Her Disparate Treatment Claims. (DECIDED BY JURY)

#### 1.    Ms. Hender Cannot Meet Her Prima Facie Burden For Disparate Treatment.

"[T]o establish a prima facie case of disparate treatment [under Title VII], [Ms. Hender] must show that '(1) [s]he is a member of a protected class; (2) [s]he was qualified for [her] position; (3) [s]he experienced an adverse employment action; and (4) similarly situated individuals outside [her] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.'" _Berry v. Dep't of Soc. Servs._, 447 F.3d 642, 655-56 (9th Cir. 2006) (citation omitted). Oregon's anti-discrimination statute is analyzed congruently with the prima facie elements of disparate treatment under Title VII. _H. K. v. Spine Surgery Ctr. of Eugene, LLC_, 305 Or. App. 606, 611 (2020) (The statute "was modeled after Title VII of the federal Civil Rights Act of 1964, 42 USC § 2000E et seq.," so "Oregon courts look to federal cases construing Title VII for guidance in construing ORS 659A.030 [Oregon's anti-discrimination statute]"). Disparate treatment is synonymous with intentional discrimination. _See Ricci v. DeStefano_, 557 U.S. 557, 577 (2009). Thus, to prevail on these claims a "plaintiff must establish that the defendant had a discriminatory _intent or motive_." _Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc._, 576 U.S. 519, 524 (2015) (quoting _Ricci_, 557 U.S. at 577) (emphasis added).

Ms. Hender will not be able to meet her prima facie case at trial. Ms. Hender claims that she was paid less than similarly situated men to support her claims for disparate treatment. Ms. Hender cannot establish that the men that she has identified were similarly situated. Each of the men identified had different experience and qualifications, performed different jobs, had different managers, performed at a different level, and/or made different or more significant contributions. The same is true for her promotion claims. Ms. Hender identifies men who received promotions that she believes she should have received, but evidence will prove that the men identified were more qualified for the role.

Nor will Ms. Hender be able to prove that any of the pay or promotions decisions at issue were made with discriminatory intent—*i.e.*, were made "because of" her sex. Indeed, Ms. Hender does not even intend to call the individuals who made these decisions. Instead, she intends to rely on irrelevant, circumstantial "me too" and character evidence that is the subject of forthcoming motions *in limine*. But even if such evidence is ruled admissible (which it should not be), it is not sufficient to show intent on behalf of Ms. Hender's managers. For example, Ms. Hender relies on a group of around 30 or so informal questionnaires ("Starfish Questionnaires") that circulated around NIKE in or around 2018 to show discriminatory intent by her managers. This is a reach, at best. Ms. Hender did *not* submit or otherwise participate in the questionnaires, nor are her managers identified as alleged wrongdoers in the questionnaires. Thus, Ms. Hender cannot demonstrate that any of the questionnaires were completed by individuals similarly situated to her, such that the jury could attribute discriminatory intent to Ms. Hender's managers. Put simply, a questionnaire completed by an employee in a different department about someone who was not one of Ms. Hender's managers hardly demonstrates that Ms. Hender experienced discrimination.

Nor does it show a widespread culture of discrimination at NIKE. The questionnaires,

Page 7 –  DEFENDANT NIKE, INC.'S TRIAL MEMORANDUM

which were not scientifically designed or distributed, and resulted in around 30 paper questionnaires submitted to NIKE, prove nothing about a company that employed over 11,000 individuals at its headquarters at the time.

Likewise, Ms. Hender relies on stray irrelevant remarks by non-decision makers (that NIKE believes should be excluded) to prove discriminatory intent. Regardless, Ms. Hender will not be able to prove that any of the decisions about her pay or promotion were based on her sex.

**2.      Even If Ms. Hender Meets Her Burden, Evidence Will Prove That Her Managers Would Have Made The Same Employment Decision Regardless Of Sex.**

Even if Ms. Hender proves that discrimination played a role in an employment decision, NIKE can successfully mount an affirmative defense by proving that it would have made the same decision in the absence of discrimination. *See Costa v. Desert Palace, Inc.,* 299 F.3d 838, 857 (9th Cir. 2002), *aff'd,* 539 U.S. 90 (2003). Here, NIKE will demonstrate that each of the decisions made was based on Ms. Hender's skills and qualifications, regardless of her sex.

**B.      Ms. Hender Cannot Succeed On Her Equal Pay Claims. (DECIDED BY JURY)**

**1.      Ms. Hender Cannot Meet Her Prima Facie Burden To Show That She Was Paid Less For Substantially Equal Or Comparable Work.**

Under the Federal EPA, Ms. Hender has "the burden of proving that she did not receive equal pay for her job, which requires substantially equal skill, effort, and responsibility in its performance as the job of her comparator(s)." *Forsberg v. Pac. Nw. Bell Tel. Co.*, No. 84-1401-FR, 1986 WL 192876, at *4 (D. Or. July 21, 1986). Under the Oregon EPA, the plaintiff must show that she was paid less than men who performed "work of comparable character," which means "work that requires substantially similar knowledge, skill, effort, responsibility and working conditions." *Gleason v. Filter Holdings, LLC*, 737 F. Supp. 3d 1033, 1063 (D. Or. 2024) (citations omitted). "Knowledge" and "Skill" refer to factors such as the level of education, experience,

training, and ability necessary to meet the performance requirements of the jobs. Or. Admin. R. 839-008-0010(1)(a)-(b). "Effort" includes the "amount of physical and mental exertion needed" and the "[c]omplexity of job tasks performed." Or. Admin. R. 839-008-0010(1)(c). [1] "Responsibility" reflects the degree of accountability, autonomy, or extent of supervision required in the performance of a job. Or. Admin. R. 839-008-0010(1)(d).

Plaintiff intends to prove her equal pay claims only by offering evidence that NIKE used the same job descriptions for each job within a job code. This comes nowhere near meeting her burden to identify appropriate male comparators. As the Court has explained, to show substantially equal work under Federal EPA, Plaintiff "must prove that the *actual job performance and content–not job titles, classifications, or description[s]*–between [Plaintiff and her alleged comparators] were/are substantially equal." *Forsberg*, 1986 WL 192876, at *4 (emphasis added). To show "work of comparable character" under the Oregon EPA, Plaintiff must show substantial similarity "regardless of job description or job title." *Gleason*, 737 F. Supp. 3d at 1063. Indeed, the evidence will show that even roles within the same job code varied significantly in skill, effort, and responsibility. The alleged comparators that Plaintiff identified did not perform comparable work. Many did not even have the same titles. They, and their managers, will testify as much.

**2.    Regardless, NIKE Can Establish That Plaintiff's Pay Was Based On Job-Related Factors.**

NIKE will show that any pay differential is explained by factors other than sex. *See Maxwell v. City of Tucson*, 803 F.2d 444, 447 (9th Cir. 1986). "The factor other than sex exception was intended by Congress to be a 'broad general exception.' . . . A primary purpose in adding this and other exceptions was to permit employers to utilize bona fide gender-neutral job evaluation

---

[1] 29 C.F.R. § 1620.16 (Federal EPA setting forth parameters concerning what constitutes "equal effort.").

and classification systems." *Id.* (citation omitted); *see also* Or. Admin. R. 839-008-0015 (bona

fide factors that may explain a difference in pay among those performing similar work include,

among other things, education, training, and experience).  Even if the jobs at issue were

substantially equal or comparable, the pay differential between Plaintiff and her alleged

comparators are explained by job-related factors such as skills, education, experience, and/or job

performance.

     C.     **Ms. Hender Cannot Succeed On Her Disparate Impact Claims.  (DECIDED BY THE COURT).**

     1.     **Ms. Hender Cannot Meet Her Prima Facie Burden Of Demonstrating That NIKE Used Prior Pay To Set Starting Pay As A Practice.**

The parties agree that the Court decides disparate impact claims.  ECF No. 594 at 2.  To

establish a prima facie case of disparate impact, Ms. Hender must "(1) identify the specific

employment practices or selection criteria being challenged; (2) show disparate impact; and

(3) prove causation; that is, [Ms. Hender] must offer statistical evidence of a kind and degree

sufficient to show that the practice in question has caused the [adverse action at issue] because of

[her] membership in a protected group." *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th

Cir. 1990) (internal quotation marks and citation omitted).

Ms. Hender will not be able to meet her burden.  The evidence will show that NIKE did

not have a policy or practice of using prior pay to set starting pay.  Instead, NIKE's managers had

considerable discretion and considered a wide range of job-related factors in setting starting pay.

While some managers may have asked about prior salaries, Ms. Hender cannot show that prior pay

was used to set starting pay as a common practice across NIKE, as she must to support her disparate

impact claims.  The Court need look no further (including to any statistics) in rejecting

Ms. Hender's disparate impact claims.

## 2. Ms. Hender's Statistical Analysis Does Not Demonstrate A Connection Between The Use Of Prior Pay And Any Disparate Impact.

If Ms. Hender establishes a prima facie case, NIKE may "discredit [Ms. Hender]'s statistics or proffer statistics of [its] own which show that no disparity exists." *Rose*, 902 F.2d at 1424. NIKE will do both.

First, Ms. Hender offers the same expert analysis as she used at class certification. The same conclusion can be reached now as the Court did then: "Plaintiffs merely offer a broad analysis of starting pay at Nike headquarters showing a [ ] disparity and assume the gathering of prior pay history is to blame without showing that the gathering of such information" was the cause for such disparity. ECF No. 310 at 43. Ms. Hender cannot do so because she cannot demonstrate that prior pay was gathered or used across the statistical evidence.

Second, as NIKE's expert will demonstrate, Ms. Hender's expert analysis of starting pay does not show a consistent effect year by year, as one would expect to see if NIKE had a common policy of using prior pay to set starting pay. And Ms. Hender presents no statistical evidence showing how any alleged prior pay practice impacted her.

## 3. Ms. Hender Must, But Cannot, Show That Her Prior Pay Was Used To Show Damages.

"Where the disparate impact doctrine has been used by the courts in individual actions rather than class actions, a plaintiff has been required to show that [she] personally [has] been the victim of discrimination by the general practice which allegedly resulted in a discriminatory impact on a protected group. *It is not sufficient for an individual plaintiff to show that the employer followed a discriminatory policy without also showing that plaintiff himself was injured.*" *Coe v. Yellow Freight Sys., Inc.*, 646 F.2d 444, 451 (10th Cir. 1981) (emphasis added). "To hold otherwise would be to allow the plaintiff to avoid the fundamental requirements for constitutional

Page 11 – DEFENDANT NIKE, INC.'S TRIAL MEMORANDUM

standing[.]"  *Id.*; *see also* *Renati v. Wal-Mart Stores, Inc.*, No. 19-cv-02525-CRB, 2019 WL 5536206, at *9 (N.D. Cal. Oct. 25, 2019) ("Their disparate impact claims related to pay also fail, because they lack standing to challenge policies that did not cause their injury"); *Jackson v. Metal Improvement Co.*, No. CV 12-1755-MWF (CWx), 2012 WL 8968996, at *7 (C.D. Cal. Nov. 26, 2012) ("Jackson has suffered no injury and lacks standing to pursue a disparate impact claim" because he "was not injured by any MIC hiring policy or practice—he, in fact, was hired.").

Ms. Hender will not be able to succeed on her disparate impact theory at trial because there is no evidence that her prior pay was used to set *her* starting pay.[2]  She merely assumes, because some managers may have considered prior pay when setting starting pay, that she was injured by such alleged practice.  But that is not enough under the law.  Ms. Hender must demonstrate a causal connection between that practice and her purported injury.  She cannot do so.  Thus, her claims fail.

**D.      The Jury Should Not Hear Evidence Relating To Ms. Hender's Disparate Impact Claims.**

The parties agree that *only* Ms. Hender's disparate treatment claims under Title VII and the Oregon Equality Act and her equal pay claims under the Federal EPA and the Oregon EPA should be decided by a jury.  And there is no dispute that Ms. Hender's disparate impact claims under Title VII and the Oregon Equality Act should be decided only by the Court.  As set forth above in Section III A-C, *supra*, the elements comprising Ms. Hender's disparate treatment and equal pay claims differ significantly from the those encompassing a disparate impact claim.  And therefore, the facts and evidence (a) Ms. Hender must put forward to support her claims; and (b) NIKE will put forward to defend against Ms. Hender's claims, creates little overlap between the jury-decided and

---

[2] For the same reason, she cannot show that the PSP awards caused her harm because that theory is also based on Ms. Hender's prior pay being used to set starting pay, which in turn, allegedly perpetuated lower PSP awards.  Her PSP claim fails with her starting pay claim.

Court-decided claims. But the risk of unfairly prejudicing NIKE if the claims are not bifurcated at trial (*i.e.*, if the jury is permitted to hear evidence supporting all of Ms. Hender's claims), is significant.

### 1.    Ms. Hender's Claims Are Predicated On Entirely Different Legal Theories; There Is No Reason For The Jury To Hear Evidence Relating To All Claims.

Ms. Hender's claims explore entirely different legal theories. Whereas Ms. Hender's disparate treatment claim hinges on whether NIKE had a discriminatory intent or motive *specifically* towards Ms. Hender, her disparate impact claim depends on whether NIKE had a policy with a "disproportionately adverse effect" on female employees broadly (and untethered to Ms. Hender entirely), that was otherwise unjustified by a legitimate rationale. *See Tex. Dep't of Hous.*, 576 U.S. at 524 (citation omitted).

The elements comprising Ms. Hender's claims require the parties to put forth entirely different evidence to support each. Ms. Hender's disparate treatment and equal pay claims relate to actions taken, or not taken, with respect to the sole remaining Plaintiff in this case, Heather Hender. The jury will hear evidence related specifically to Ms. Hender, such as how decisions related to *her* pay were made, *her* job duties and skills compared to those of her alleged comparators, why *she* was or was not promoted, etc. NIKE expects that there will be approximately seven witnesses on these topics. These witnesses will include Ms. Hender and her former supervisors and alleged comparators. Through these witnesses the parties will explore the experience and qualifications of the alleged comparators and the pertinent individuals' job functions, contributions, and performance.

Ms. Hender's disparate impact claims, on the other hand, relate to whether NIKE had a common policy with respect to pay or promotion decisions that operated to the disadvantage of women, including Ms. Hender. That evidence will take the form of testimony from witnesses knowledgeable about NIKE's pay and promotion processes generally, as well as expert testimony

Page 13 – DEFENDANT NIKE, INC.'S TRIAL MEMORANDUM

related to the statistical analyses of each.  While the jury will hear testimony on the pay and job history of Ms. Hender and her alleged male peers, statistical evidence related to individuals outside of this limited group—pertaining to other divisions and departments at NIKE, and decisions made by other managers, for example—is not relevant to the claims the jury will decide.  For example, of no bearing on Ms. Hender's disparate impact claims are facts concerning Ms. Hender's qualifications for *her* position, whether *she* experienced an adverse employment action, and whether *her* alleged comparators (*i.e.*, among other things, those who performed similar job functions), were treated more favorably.  *Berry*, 447 F.3d at 656 (citing elements of a disparate treatment prima facie case).  Notably, those providing testimony relating to Ms. Hender's disparate impact claim have ***no personal knowledge*** of any decisions about Ms. Hender's individual employment.  Put simply, the evidence and witnesses needed to try Ms. Hender's individual disparate treatment and equal pay claims to the jury are, for the most part, separate and apart from the evidence and witnesses needed to try Ms. Hender's disparate impact claims to the Court.

2.    **Introducing Evidence To A Jury Concerning Ms. Hender's Disparate Impact Claim Is Likely To Confuse The Issues And Prejudice NIKE.**

Permitting the jury to hear all evidence applicable to each of Ms. Hender's claims, including evidence solely concerning Ms. Hender's disparate treatment and equal pay claims, is undoubtedly likely to prejudice NIKE.  Disparate treatment requires proof that "the defendant had a discriminatory intent or motive," while disparate impact requires the plaintiff to establish the existence of a policy that had a "disproportionately adverse effect" on a particular group that was "otherwise unjustified by a legitimate rationale."  *See Tex. Dep't of Hous.*, 576 U.S. at 524- (citation omitted).  Complex statistical evidence presented by experts is more appropriately addressed and evaluated by the Court, which has the judicial expertise to parse through the issues and separate this type of proof from evidence of intentional discrimination.  Evidence offered

solely to prove such alleged disparities is not probative of intent, or of the individual employment decisions Ms. Hender experienced, and could easily mislead the jury in applying the wrong standard when assessing her disparate treatment or equal pay claims.

Importantly, this "disparate impact evidence"—offered to show that a common policy tended to affect one group more harshly than another—is not tied to any element that the *jury* will decide on Ms. Hender's disparate treatment or equal pay claims. Permitting the jury to hear both, including but not limited to complex expert statistical analysis and rebuttal, risks jury confusion and complication of the issues. *See, e.g.*, *Tabor v. Hilti Inc.*, 577 F. App'x 870, 880 (10th Cir. 2014) (finding that the district court "did not abuse its discretion by excluding [] statistical evidence" from the presentation of the disparate treatment claim to the jury).

It is apparent from Ms. Hender's description of her anticipated evidence that she intends to introduce evidence regarding alleged mistreatment of NIKE employees *other than* herself, including alleged complaints or concerns raised by *other* employees, alleging discrimination by *other* managers, in *other* departments, and at *other* points in time. The statistical evidence offered by Plaintiff is also offered to show the impact of alleged practices on *all* women at NIKE, in *all* roles, reporting to *all* managers, in *all* departments, and at *all* points in time. ***None of the statistical evidence relates to Ms. Hender or her alleged comparators.*** And like the alleged "me too" evidence proposed by Plaintiff to support her disparate treatment claims, the statistical evidence related to her disparate impact claim has no bearing on the only question for the jury—whether ***Ms. Hender*** experienced harm. The statistical evidence is not relevant to Ms. Hender's individual disparate treatment and equal pay claims, is likely to confuse the jury, and is unfairly prejudicial to NIKE, as it may lead the jury to reach a conclusion that because other women may have had certain experiences at NIKE, Ms. Hender did as well. The admissible evidence does not support

this finding.

Proceeding with Ms. Hender's disparate treatment and equal pay claims first to the jury, and excluding testimony related to her disparate impact claims that will be tried by the Court, allows the jury to hear all of the relevant evidence without introducing complex statistical and other evidence that may lead to jury confusion and unfair prejudice to NIKE, as well as an unnecessary use of the jury's time.  For these reasons, the Court should restrict Ms. Hender to presenting only her disparate treatment and equal pay claims to the jury.

E.      **The Damages Period For The Oregon EPA Claim And Disparate Treatment And Disparate Impact Claims Runs From Plaintiff's Charge.**

The parties disagree regarding the starting point to calculate the relevant statute of limitations for purposes of damages.  Under Title VII and Oregon law, the start date for Plaintiff's alleged back pay damages depends on when "she filed a complaint with the EEOC." *Howe v. City of Akron,* 801 F.3d 718, 745 (6th Cir. 2015).  While Plaintiff wants to piggy-back from the earliest filed charge in this case, which was filed by a plaintiff who is no longer a party to this case, an "individualized inquiry as to when to start each Plaintiff's back pay calculations" is necessary to adequately address back pay awards for a case with multiple plaintiffs who each filed their own administrative charge, as is the case here. *Id.*

Thus, the damages periods for Plaintiff should be the following:

- **Charge Filed:  Nov. 9, 2018**

- **Title VII (Pay)**:  Nov. 9, 2016[3]

- **Title VII (Promotions)**:  Jan. 13, 2018[4]

---

[3] Two years before Ms. Hender filed her discrimination charge.
[4] 300 days before Ms. Hender filed her discrimination charge.

- **Federal Equal Pay Act**:  Nov. 19, 2016[5]

- **Oregon Equality Act**:  Nov. 9, 2017[6]

- **Oregon Equal Pay Act**:  Nov. 9, 2017[7]

Plaintiff intends to argue that, under *American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974), Plaintiff's damages period may run from former plaintiff Kelly Cahill's filed administrative charge.  But *American Pipe* only discusses the tolling of the applicable statute of limitations in a class action such that additional members of the class can chose to file their own suit or intervene following class certification.  It does not discuss how to calculate the liability period in a non-class context for individual plaintiffs who each filed their own administrative claim, let alone when all plaintiffs, except one, have dismissed their claims and are no longer parties to the case.  In that case, back pay and damages must be calculated "no more than two years before he or she filed a charge of discrimination with the EEOC." *Howe*, 801 F.3d at 746; *see also E.E.O.C. v. Tobacco Superstores, Inc.*, No. 3:05CV00218-WRW, 2008 WL 2328330, at *4 (E.D. Ark. June 4, 2008), *amended and superseded by* 2008 WL 11344698 (E.D. Ark. June 6, 2008) *on the basis of judicial estoppel* ("Even if those plaintiffs are piggybacking on another employee's timely administrative charge, once they file separate administrative charges, they cannot rely any further on the other claimant's actions and must file suit after receiving their right to sue letters."); *id.* ("She cannot piggyback on [plaintiff]'s claim since she filed her own administrative charge.").

Thus, to the extent Plaintiff can establish that she is entitled to damages at all, she cannot extend the liability period based on plaintiff Kelly Cahill's first-filed charge.

---

[5] Two years before Ms. Hender opted-in to the Federal EPA claim.  Will be three years if there is a willfulness finding.

[6] One year before Ms. Hender filed her discrimination charge.

[7] One year before Ms. Hender filed her discrimination charge.

F.    **Plaintiff Is Not Entitled To Punitive Damages.**

Punitive damages are not available on all of Plaintiff's causes of action (*i.e.,* punitive damages are not available under the Federal EPA nor applicable to Ms. Hender's claims relying on a disparate impact theory of discrimination).  "An award of punitive damages under Title VII is proper where the acts of discrimination giving rise to liability are willful and egregious, or display reckless indifference to the plaintiff's federal rights." *Ngo v. Reno Hilton Resort Corp.*, 140 F.3d 1299, 1304 (9th Cir. 1998), *opinion amended on denial of reh'g*, 156 F.3d 988 (9th Cir. 1998).    The Ninth Circuit requires "evidence of conduct more egregious than intentional discrimination to support an award of punitive damages in Title VII cases." *Id.*  Likewise, Oregon law is even more stringent, making punitive damages available only for conduct that goes "beyond mere carelessness" to a "willful or reckless disregard of a risk of harm to others of a magnitude evincing a high degree of social irresponsibility." *Richardson v. Nw. Christian Univ.*, 242 F. Supp. 3d 1132, 1155 (D. Or. 2017) (citation omitted).  Plaintiff will not be able to meet this high standard at trial.[8]

Regardless, NIKE would be able to demonstrate that punitive damages are not appropriate because the relevant actors who made Plaintiff's employment decisions were merely managerial and that it had undertaken sufficient good faith efforts at Title VII compliance.  *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 528 (1999) ("The Court therefore agrees that, in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions

---

[8] Moreover, as set forth in NIKE's motion to bifurcate, Plaintiff brings claims under both Federal and Oregon law, which carry different burdens to establish punitive damages, and it would be most efficient, and most likely to avoid jury confusion, to allow the jury to first make a determination on liability.  If any is found, then the jury could be instructed on the correct punitive damage standard(s), depending on the specific liability findings.

of managerial agents where these decisions are contrary to the employer's good faith efforts to comply with Title VII").

Date:  May 26, 2026

*/s/ Daniel Prince*
DANIEL PRINCE, Cal. SB# 237112 (pro hac vice)
danielprince@paulhastings.com
FELICIA A. DAVIS, Cal. SB# 266523 (pro hac vice)
feliciadavis@paulhastings.com
LINDSEY C. JACKSON, Cal. SB# 313396 (pro hac vice)
lindseyjackson@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

LAURA E. ROSENBAUM, OSB No. 110061
laura.rosenbaum@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

Page 19 – DEFENDANT NIKE, INC.'S TRIAL MEMORANDUM