**Laura Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**David B. Markowitz, OSB #742046**
DavidMarkowitz@MarkowitzHerbold.com
**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Kathryn P. Roberts, OSB #064854**
KathrynRoberts@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Telephone: (503) 295-3085 | Fax: (503) 323-9105

**Byron Goldstein (admitted *pro hac vice*)**
byron@goldsteinbrowne.com
**Barry Goldstein, Of Counsel (admitted *pro hac vice*)**
barry@goldsteinbrowne.com
GOLDSTEIN BROWNE, PC
1111 Broadway, Office 04-117
Oakland, CA  94607
Tel: 510-584-9020

*Attorneys for Plaintiff*

[Additional Counsel of Record listed on the Signature page]

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| HEATHER HENDER, | Case No. 3:18-cv-01477-AB |
| Plaintiff, | **PLAINTIFF'S BRIEF RE REDACTIONS RE TESTIMONY OF WITNESS NICOLE HUBBARD GRAHAM** |
| v. | |
| NIKE, INC., an Oregon Corporation, | |
| Defendant. | |

**Page –1    PLAINTIFF'S BRIEF RE REDACTIONS RE TESTIMONY OF WITNESS NICOLE HUBBARD GRAHAM**

**INTRODUCTION**

At the July 9, 2026 Final Pretrial Conference, the Court ordered Plaintiff to file a brief regarding the redaction issues in connection with Witness Graham's testimony. Dkt. 764. The issue Plaintiff identified at the Conference was: after Nike repeatedly admitted to this Court that its Chief Human Resources Officer (Monique Matheson) and General Counsel received the Starfish Survey Responses in February or March 2018, Nike now seeks to rescind these admissions so that Plaintiff cannot quote from critical admissible evidence in her opening statement or at trial. Because Nike seeks to take back its admissions, Plaintiff has subpoenaed a witness (Nicole Hubbard Graham) who can testify to providing Nike with these documents in February or March 2018. Plaintiff hopes that this is not required because Nike's admissions, judicial estoppel, and written stipulation should prevent Nike from switching its factual respresentations to suit each argument.

After establishing that Nike received the evidence at issue, plaintiff wants to quote parts of that evidence in opening and in the examination of Ms. Strong.[1] Specifically, she wants to quote parts of the following exhibits (not every exhibit but among these exhibits):

- Nike's Notice About Gender Discrimination, Including Pay and Promotion

    o The Starfish Survey Responses (with redactions) (Exhibits 142, 203, 204, 205, 229, 327, 404, 409, 411, 423, 424, 425)

    o The Project Starfish Summary (with redactions) (Exhibit 566)

    o Collectively these 13 exhibits are referred to as the "Nike Notice Exhibits."

---

[1] To be clear, the universe of quotes that plaintiff might use in her opening and examination of Ms. Strong are from the unredacted portions of the documents that plaintiff handed to the Court at the pre-trial conference on July 9, 2026. Plaintiff would not display or question about any quotes from portions that were redacted.

**Page –2    PLAINTIFF'S BRIEF RE REDACTIONS RE TESTIMONY OF WITNESS NICOLE HUBBARD GRAHAM**

- Nike's Responses to the Nike Notice Exhibits

  - Chief Executive Officer Mark Parker email (with redactions) (Exhibit 571)

  - Chief Human Resources Officer Monique Matheson's email (Exhibit 18)

  - Chief Executive Officer Mark Parker speech (with redactions) (Exhibit 570)

  - Collectively these 3 exhibits are referred to as the "Nike Response Exhibits."

The term "Starfish Evidence" refers to the Nike Notice Exhibits and Nike Response Exhibits.

## MOTION

Plaintiff moves the Court for three rulings: (1) that Nike received the Nike Notice Exhibits (such that Graham does not need to testify at trial to establish that fact); (2) that plaintiff may show quotes from the Starfish Evidence during her opening; and (3) that plaintiff is may show quotes from the Starfish Evidence during her examination of Ms. Strong.

## ARGUMENT

Nike cannot attack the Starfish Evidence on the basis that it did not receive it. Thus, the Starfish Evidence will be admitted during trial. Therefore, Plaintiff should be able to show the jury quotes from the Starfish Evidence during opening and the examination of Ms. Strong.

## I.    The Starfish Evidence is Relevant and Admissible

The Court has already determined that the Starfish Evidence is relevant and admissible. At the Pretrial Conference, the Court ruled that Starfish Evidence is "relevant to plaintiff's disparate treatment claim" and "relevant to potential punitive damages," (PTC Tr. 45); expressly agreed that Starfish Evidence is relevant to "defendant's responses or failures to mitigate and that those failures are relevant to punitive damages," (PTC Tr. 46 ("I agree.")); and reaffirmed that the "Starfish survey evidence is plainly relevant," (PTC Tr. 111). The Court's written Order confirms these rulings: Ms. Strong may testify about Starfish Evidence "including its origins, the complaints, the Project Starfish presentation, and Defendant's responses," *id*. at 6 (Pl.'s MIL #5).

**Page –3    PLAINTIFF'S BRIEF RE REDACTIONS RE TESTIMONY OF WITNESS NICOLE HUBBARD GRAHAM**

Likewise, the Court has determined that the Nike Response Exhibits are relevant. The Court's July 9, 2026 order expressly identifies NIKE's "2018 all-employee emails, 2018 all-employee speech, and 2018 pay and promotion analyses" as subjects of trial evidence, permitting NIKE to argue only that they "were not caused by Starfish-related reports and investigations," (ECF No. 763 at 5 (Pl.'s MIL #1(c)(iv))—a causation dispute the jury cannot resolve without the communications themselves. Similarly, the Order permits NIKE to argue that Starfish was "anonymous, minor, unverified, or unworthy of serious response," but provides that "[t]his argument can be tested with contrary evidence from Plaintiff." (*Id.* at 5 (Pl.'s MIL #1(c)(iii)). The Nike Response Exhibits are that contrary evidence. The Court's own Rule 403 balancing rested in part on the fact that "NIKE appears to have acknowledged the concerns raised in the Starfish surveys, thereby reducing the concern of a trial within a trial." (PTC Tr. 45.). Exhibits 571, 18, and 570 are those acknowledgments. Finally, unlike the Starfish surveys, the Nike Response Exhibits raise no hearsay concern: they are NIKE's own statements, and admissions by a party opponent are not hearsay and may be offered for their truth.

II.     **Nike's Arguments Against the Admission of the Starfish Evidence is Not Persuasive**

Nike seems to be taking the position that notwithstanding the Court's ruling on the parties' Motion in Limine, the Starfish Evidence may not come in at trial, and therefore plaintiff cannot show the jury quotes from them in her opening or in her examination of Ms. Strong.

A.     **Nike Cannot Argue That It Did Not Receive The Nike Notice Exhibits**

Nike has two main lines of attack. The first is hearsay as to Nike's Notice Exhibits. Nike has argued that plaintiff's witness former Nike Vice President Melanie Strong cannot prove that Nike actually received the Nike Notice Exhibits. Nike further seems to suggest that its former Chief Human Resources Officer Monique Matheson will only "potentially" testify that she

**Page –4     PLAINTIFF'S BRIEF RE REDACTIONS RE TESTIMONY OF WITNESS NICOLE HUBBARD GRAHAM**

received the documents.  Thus, the argument goes, the hearsay exception as to those documents

is not met.  Here are examples of this argument from the Pre-trial conference on June 29, 2026:

> MR. PRINCE: This is the PowerPoint, you know, slide presentation, presumably which they'll attempt to argue, through Ms. -- or offer evidence through Ms. Strong, constitutes some type of thematic overlay related to the questionnaires. And, again, we don't think there's a hearsay exception that gets them out of the rule and –
>
> THE COURT: What if it's for notice on defendant?
>
> MR. PRINCE: . . . Ms. Strong certainly can't say notice because, you know, Ms. Strong wasn't there to hand the document presumably to NIKE, right? So I don't know how, again, they close that gap through the witnesses that exist here.

Dkt. 751  at 94:5-21.

> THE COURT: "Regarding the use of the Starfish questionnaires as substantive evidence of defendant's notice, there were concerns raised by Mr. Prince this afternoon about how Ms. Strong doesn't have personal knowledge over, I think what he referred to as, the handoff to be able to testify about notice and the timing of that notice, et cetera.
>
> Isn't it true, however, that these could come in through, for example, Ms. Matheson? So there wouldn't be the handoff problem?
>
> MR. PRINCE: Yes, potentially, I believe that's correct, Your Honor.

*Id.* at 113:17-114:-23

Plaintiff is unsure what Nike's counsel meant when he stated that it was "potentially" true

that Ms. Matheson received the Starfish Survey Responses.  However, Nike has admitted this

fact and is judicially estopped from changing its position now at trial.

In this circuit, judicial estoppel "precludes a party from gaining an advantage by taking

one position, and then seeking a second advantage by taking an incompatible position." *Rissetto*

*v. Plumbers and Steamfitters Loc. 343*, 94 F.3d 597, 600 (9th Cir. 1996).  Courts invoke judicial

estoppel "to prevent a party from gaining an advantage by taking inconsistent positions" and to

"protect against a litigant playing fast and loose with the courts." *Hamilton v. State Farm Fire &*

*Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (internal citation omitted).  When deciding whether

**Page –5    PLAINTIFF'S BRIEF RE REDACTIONS RE TESTIMONY OF WITNESS NICOLE HUBBARD GRAHAM**

to invoke judicial estoppel, courts consider whether (1) the party's later position is clearly inconsistent with its earlier position; (2) the party has succeeded in persuading a court to accept the earlier position; and (3) the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.  *Id*. at 782-83.

To get the Court to rule in its favor on a variety of motions, Nike repeatedly represented to the Court that it received the Starfish Survey Responses:

- In *Defendant Nike, Inc.'s Opposition to Plaintiffs' Motion Requesting Appointment of a Special Master for Discovery*, Nike declared:  "Ms. Graham testified that she 'brought approximately 30 of these paper surveys into [NIKE's Chief Human Resources Officer] Monique Matheson and [NIKE's then-General Counsel] Hilary Krane.'" (Dkt. 515 at 7.)

- In the *Declaration of Daniel Prince in Support of Nike Inc.'s Opposition to Plaintiffs' Motion Requested Appointment of a Special Master For Discovery*, Nike stated: "On August 10, 2020, the Court ordered NIKE to produce 'the complete survey results' from the Starfish questionnaires." (Dkt. 517 at ¶ 17 (citing Dkt. 111 at 8).) "Those 'survey results' were the single packet of questionnaires (containing about 30 questionnaires) that were provided to Monique Matheson and Hilary Krane in late February or early March 2018. This was supported by Ms. Matheson's deposition testimony." (*Id.* (citing Dkt. 517-5, Ex. E at 93:13-20).) "Following the Court's order, NIKE produced the complete packet of Starfish questionnaires that were delivered to Ms. Matheson and Ms. Krane." (Dkt. 517 at ¶ 17.)

- In *Defendant Nike, Inc.'s Response to Plaintiffs' Rule 72 Objections to Order*, Nike represented:

**Page –6    PLAINTIFF'S BRIEF RE REDACTIONS RE TESTIMONY OF WITNESS**
                **NICOLE HUBBARD GRAHAM**

- o "On August 10, 2020, NIKE was ordered to produce the Starfish "completed survey results" and only the "completed survey results." (Dkt. 111 (Court order on Starfish) at 8 (emphasis added).) NIKE did just that. It produced the completed questionnaires—the exact same questionnaires submitted to NIKE's representatives in February/March 2018." (Dkt. 530 at 6.)

- o "NIKE saw the questionnaires when they were delivered to Monique Matheson (NIKE's Chief Human Resources Officer) and Hilary Krane (NIKE's former General Counsel) in late February or early March 2018." (Dkt. 530 at 9.)

- In its *Declaration of Daniel Prince in Support of Defendant Nike Inc.'s Response to Plaintiff's Rule 72 Objections to Order*, Nike stated:

- o "On or around September 18, 2020, NIKE produced the completed Starfish questionnaires that were delivered to Ms. Matheson and Ms. Krane in or about February / March 2018." (Dkt. 531 at ¶ 5.)

Following these representations to the Court, Nike defeated two motions by Plaintiff. (For Dkts. 515 and 517, Nike prevailed (Dkt. 521); for Dkts. 530 and 531, Nike prevailed (Dkt. 542)). Basic fairness and judicial estoppel does not allow Nike to say one thing is true during the litigation to gain an advantage, but then deny that fact at trial.

Nike's factual representations in this litigation are also party admissions. They are from Nike-authorized agents within their scope of agency, their lawyers in court filings in this case. FRE 801(d)(2)(C); *see also, e.g., Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("Counsel's statement of fact constituted an admission of a party. It was made in a legal brief filed with the court subject to the penalty of sanctions."); *Sidi Spaces LLC v. Aluminum Trailer Co.*, No. CV-19-01476-PHX-SRB, 2020 WL 6799262, at *8 n.9 (D. Ariz. Oct. 22, 2020)

**Page –7    PLAINTIFF'S BRIEF RE REDACTIONS RE TESTIMONY OF WITNESS NICOLE HUBBARD GRAHAM**

(counsel's prior factual representations to a court were "of course … an admissible statement by a party opponent").  Statements made in briefs carry particular weight because they are made under Rule 11's certification requirement: counsel's affirmation that the factual representations are supported by evidence or a reasonable factual belief. *See* Fed. R. Civ. P. 11(b).

In addition these admissions, as recently as July 9, 2026, Nike's counsel stipulated in writing that "NIKE agrees it received the pay and promotion questionnaires it produced." Declaration of Byron Goldstein, filed concurrently herewith.

The Court should determine that Nike is bound by its admission that it received the Starfish Survey Responses.  That defeats Nike's hearsay objections as to them.

Additionally, with respect to the Project Starfish Summary, Ms. Strong will testify at trial (as she did in her deposition) that she personally handed the Project Starfish Summary to Ms. Matheson.  That also defeats Nike's hearsay objection to the Project Starfish Summary.

Given these facts, the Nike Notice Exhibits will come into evidence.  There is no reason the jury cannot be shown in opening excerpts of the evidence it will see at trial, or that the jury cannot be shown quotes from the evidence Ms. Strong will be examined about.

**B.      Nike Cannot Argue that the Nike Response Documents Are Irrelevant**

The second line of Nike's attack is on relevance grounds as to the Nike Response Documents.  Notably, Nike does not have a valid hearsay objection to these documents because they are admissions by a party opponent.

These documents evidence Nike's reaction to the notice it received about gender discrimination in pay and promotion.  For instance, in February/March 2018 Nike received the Nike Notice Documents, which described a culture of gender discrimination that impacted women's pay and promotion opportunities.  On March 15, 2018, the CEO sent an email to all Nike employees that he wanted to make "the necessary changes so that our culture and our

**Page –8      PLAINTIFF'S BRIEF RE REDACTIONS RE TESTIMONY OF WITNESS
          NICOLE HUBBARD GRAHAM**

company can evolve and grow.  We all want to create an environment where everyone can thrive and contribute to our shared success."  (Trial Ex. 571 at 2.) This is relevant to plaintiff's pay and promotion claims where she argued she was in a culture where women could not thrive and contribute to Nike's shared success because they were paid less and promoted more slowly because of their gender.

Likewise, the Chief Human Resources Officer sent an email that Nike needs "to create meaningful change" because its "hiring and promotion decisions" are not changing senior level representation.  She stated that Nike would restructure its leadership team to "improve representation of women" and that it would "remove bias from critical moments of the hiring process" by "eliminating the collection of salary histories."  Regarding promotions, she also said that Nike would be "studying time-in-job and the pace of promotions across our employee base—with a strong focus on women . . .."  (Trial Ex. 18.) Again, relevant to plaintiff's pay and promotion claims.

Finally, the CEO gave a speech to all employees in which, among other things, he promised: "We're also going to create a fair playing field.  That's why we're being more transparent about where we are on our representation and equal pay goals, beginning with women. . ."  He said this moment "exposed our need to improve diversity, our HR systems, and to create a culture that serves every person." (Trial Ex. 570).  Again, relevant to plaintiff's pay and promotion claims.

Furthermore, to the extent Nike did not deliver on the promises contained in the Nike Response Exhibits, that gives an evidentiary basis for plaintiff's ask for punitive damages.  The jury should be able to see quotes from these documents during opening and during the examination of Ms. Strong.

**Page –9    PLAINTIFF'S BRIEF RE REDACTIONS RE TESTIMONY OF WITNESS**
**NICOLE HUBBARD GRAHAM**

**CONCLUSION**

For the above reasons, the Court should deny each of Nike's motions *in limine*. The Court shoud also rule that: (1) Nike received the Nike Notice Exhibits (such that Graham does not need to testify at trial to establish that); (2) that plaintiff is permitted to display to the jury quotes from the Starfish Evidence (Exhibits 142, 203, 204, 205, 229, 327, 404, 409, 411, 423, 424, 425, 566, 571, 18, 570) during her opening; [2] and (3) that plaintiff is permitted to display to the jury quotes from the Starfish Evidence (Exhibits 142, 203, 204, 205, 229, 327, 404, 409, 411, 423, 424, 425, 566, 571, 18, 570) during her examination of Ms. Strong.

---

[2] Alternatively, if the Court does not allow plaintiff to use actual quotes in her opening, plaintiff should still be permitted to discuss the evidence she expects to come in at trial without quoting from it or showing the evidence to the jury.  To the extent Nike seeks to prohibit Plaintiff from describing disputed evidence during opening because the exhibits themselves have not yet been admitted, that is improper. An opening statement is a forecast of evidence counsel in good faith expects to present at trial, not the presentation of evidence itself. *Leonard v. United States*, 277 F.2d 834, 841 (9th Cir. 1960) ("An opening statement should be limited to a statement of facts which the [party] intends or in good faith expects to prove."); *United States v. Dinitz*, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring) (stating that an opening statement is to "state what evidence will be presented," "and to relate parts of the evidence and testimony to the whole" as long as the statements are "susceptible to proof").  Whether an exhibit may be physically displayed to the jury during opening is a separate matter committed to the Court's discretion. See Ninth Circuit Judges' Trial Manual, § 3.6.2 (discussing illustrative aids and trial exhibits during opening separately from the permissible scope of opening statements).

DATED: July 10, 2026

ACKERMANN & TILAJEF, P.C.

*s/Laura Salerno Owens*

Craig J. Ackermann (admitted *pro hac vice*)
cja@ackermanntilajef.com
Brian W. Denlinger (admitted *pro hac vice*)
bd@ackermanntilajef.com
Erika Smolyar (admitted *pro hac vice*)
es@ackermanntilajef.com
315 South Beverly Drive, Suite 504
Beverly Hills, CA  90212
Tel: (310) 277-0614
Fax: (310) 277-0635

GOLDSTEIN BROWNE, P.C.
Byron Goldstein (admitted *pro hac vice)*
Barry Goldstein, Of Counsel (admitted *pro hac vice*)
1111 Broadway 3rd Floor, 04-117
Oakland, CA 94607
Telephone: (510) 584-9020

DARDARIAN HO KAN & LEE
Laura L. Ho (admitted *pro hac vice)*
lho@dhkl.law
James Kan (admitted *pro hac vice)*
jkan@dhkl.law
Katharine L. Fisher (admitted *pro hac vice)*
kfisher@dhkl.law
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 763-9800
Fax: (510) 835-1417

MARKOWITZ HERBOLD PC
Laura Salerno Owens, OSB #076230
LauraSalerno@MarkowitzHerbold.com
David B. Markowitz, OSB #742046
DavidMarkowitz@MarkowitzHerbold.com
Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Kathryn P. Roberts, OSB #064854
KathrynRoberts@MarkowitzHerbold.com

*Attorneys for Plaintiff*

2469342.1

**Page –11    PLAINTIFF'S BRIEF RE REDACTIONS RE TESTIMONY OF WITNESS NICOLE HUBBARD GRAHAM**