LAURA ROSENBAUM, OSB No. 110061
laura.rosenbaum@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Tel:  (503) 224-3380
Fax:  (503) 220-2480

FELICIA A. DAVIS, Cal. SB# 266523 (*pro hac vice*)
feliciadavis@paulhastings.com
DANIEL PRINCE, Cal. SB# 237112 (*pro hac vice*)
danielprince@paulhastings.com
LINDSEY C. JACKSON, Cal. SB# 313396 (*pro hac vice*)
lindseyjackson@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA  90071
Tel:  (213) 683-6000
Fax:  (213) 627-0705

Attorneys for Defendant NIKE, INC.


UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION


| | |
|---|---|
| HEATHER HENDER,<br><br>                          Plaintiff,<br><br>     v.<br><br>NIKE, INC., an Oregon Corporation,<br>                          Defendant. | Case No.:  3:18-cv-01477-AB<br><br>**DEFENDANT NIKE, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULES OF CIVIL PROCEUDRE RULES 50(a) AND 52(c)** |

**TABLE OF CONTENTS**

**Page**

I.    LEGAL STANDARD........................................................................................... 1

II.    PLAINTIFF HAS NOT PROVIDED SUFFICIENT EVIDENCE FOR THE COURT TO FIND DISPARATE IMPACT LIABILITY .................................................. 2

    A.    Plaintiff Has Not Established The Existence Of A Policy Or Practice Regarding The Use Of Prior Pay To Set Starting Pay Or A Common PSP Bonus Calculation.................................................................................... 3

    B.    Plaintiff Has Not Established Evidence That A Common Policy Harmed Women.................................................................................................... 4

    C.    Plaintiff Has Not Established That She Was Subject To The Alleged Practices................................................................................................. 5

III.    PLAINTIFF HAS PRESENTED NO EVIDENCE THROUGH WHICH THE JURY COULD REASONABLY FIND THAT NIKE PAID PLAINTIFF LESS OR PROMOTED HER MORE SLOWLY THAN TRENT WADDELL BECAUSE OF HER SEX................................................................................... 7

    A.    There Is No Evidence That Plaintiff Is Similarly Situated To Any Male Employee In Her Job Code. ...................................................................... 7

    B.    With Respect to Her Promotion Claim, Plaintiff Cannot Show That She Was Qualified Earlier ........................................................................ 9

    C.    There Is No Evidence That Any Decision About Plaintiff Was Made Because Of Her Sex ...................................................................... 10

IV.    PLAINTIFF HAS NOT PROVIDED ANY EVIDENCE TO PREVAIL ON HER EQUAL PAY ACT CLAIMS............................................................................ 12

V.    PLAINTIFF HAS NOT MET HER BURDEN TO PROVE PUNITIVE DAMAGES....................................................................................................... 12

VI.    CONCLUSION............................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bacon v. Honda of Am. Mfg., Inc.*,
370 F.3d 565 (6th Cir. 2004) ...............................................................................................5

*Caudle v. Bristow Optical Co.*,
224 F.3d 1014 (9th Cir. 2000), *as amended on denial of reh'g* (Nov. 2, 2000) ........................1

*Coe v. Yellow Freight Sys., Inc.*,
646 F.2d 444 (10th Cir. 1981) ...............................................................................................5

*Coleman v. Quaker Oats Co.*,
232 F.3d 1271 (9th Cir. 2000) ...............................................................................................4

*Davis v. Team Elec. Co.*,
520 F.3d 1080 (9th Cir.2008) ...............................................................................................7

*Edelman v. NYU Langone Health Sys.*,
141 F.4th 28 (2d Cir. 2025) ...............................................................................................12

*EEOC v. Swift Transp. Co., Inc.*,
45 F. Supp.2d 1036 (D. Or. 1999) ...............................................................................................14

*Freyd v. Univ. of Oregon*,
900 F.3d 121 (9th Cir. 2021) ...............................................................................................2

*Garay v. Lowe's Home Centers, LLC*,
2017 WL 5473887 (D. Or. Nov. 14, 2017) ...............................................................................................6

*Hazelwood Sch. Dist. v. United States*,
433 U.S. 299 (1977) ...............................................................................................10

*Henderson v. Nordstrom, Inc.*,
No. C05-0022RSM, 2006 WL 1148178 (W.D. Wash. Apr. 27, 2006) ...................................3

*International Union of Operating Engineers, Local Union 103 v. Indiana Const. Corp.*,
13 F.3d 253 (7th Cir. 1994) ...............................................................................................2

*Josephs v. Pac. Bell*,
443 F.3d 1050 (9th Cir. 2006) ...............................................................................................1

*Karcher v. Emerson Electric Co.*,
94 F.2d 502 (8th Cir. 1996) ...............................................................................................14

*Kolstad v. ADA*,
    527 U.S. 526 (1999)........................................................................................13

*Lakeside-Scott v. Multnomah Cnty.*,
    556 F.3d 797 (9th Cir. 2009) ...........................................................................2

*Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*,
    964 F.2d 106 (2d Cir. 1992)............................................................................5

*Melendez v. Illinois Bell Tel. Co.*,
    79 F.3d 661 (7th Cir. 1996) .............................................................................5

*Moran v. Selig*,
    447 F.3d 748 (9th Cir. 2006) ...........................................................................7

*Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*,
    924 F.2d 1484 (9th Cir. 1991) .........................................................................1

*Peralta v. Dillard*,
    744 F.3d 1076 (9th Cir. 2014) .........................................................................1

*Pete v. Walgreen Co.*,
    2016 WL 4443187 (W.D. Mo. Aug. 19, 2016).............................................11

*Pottenger v. Potlatch Corp.*,
    329 F.3d 740 (9th Cir. 2003) .......................................................................3, 5

*Pullom v. U.S. Bakery*,
    477 F. Supp. 2d 1093 (D. Or. 2007) ..............................................................10

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000)..........................................................................................1

*Richardson v. Nw. Christian Univ.*,
    242 F. Supp. 3d 1132 (D. Or. 2017) ...............................................................3

*Ritchie v. United States*,
    451 F.3d 1019 (9th Cir. 2006) .........................................................................2

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003)........................................................................................14

*Swinton v. Potomac Corp.*,
    270 F.3d 794 (9th Cir. 2001) .........................................................................13

*Tsur v. Intel Corp.*,
    648 F. Supp. 3d 1292 (D. Or. 2022) ...............................................................3

*Watson v. Fort Worth Bank and Trust,*
    487 U.S. 977 (1988)..........................................................................................................10

*Wolf v. Nordstrom, Inc.,*
    291 Or. 828, 637 P.2d 1280 (1981) .................................................................................13

*Zhang v. National Public Radio, Inc.,*
    2025 WL 4033858 (D. D.C. Dec. 18, 2025)....................................................................11

**Statutes**

Fed. R. Civ. P. 50(a)(1)............................................................................................................1

FED. R. CIV. P. 52(a) ................................................................................................................2

FED. R. CIV. P. 52(c) ................................................................................................................2

Federal Equal Pay Act .............................................................................................................1

Oregon Equal Pay Act .............................................................................................................1

ORS 31.730...............................................................................................................................13

ORS 659A.030...........................................................................................................................1

Defendant NIKE, Inc. ("NIKE") moves for a directed verdict on plaintiff Heather Hender's jury claims (Disparate Treatment under Title VII and ORS 659A.030; Federal Equal Pay Act; and Oregon Equal Pay Act), non-jury claims (Disparate Impact under Title VII and ORS 659A.030), and her request for punitive damages.  For each claim, Plaintiff has failed to provide evidence required to meet her burden on at least one element of the claim, if not more.

## I.    LEGAL STANDARD

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).  A judgment under Rule 50 "is warranted 'when the evidence presented at trial permits only one reasonable conclusion.'" *Peralta v. Dillard*, 744 F.3d 1076, 1085 (9th Cir. 2014) (quoting *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008)), *cert. denied*, 135 S. Ct. 946 (2015).  Put differently, judgment as a matter of law is appropriate where "'the facts presented in support of a claim have so little probative value that reasonable people could not find for the claimant.'" *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1024 (9th Cir. 2000) (citation omitted), *as amended on denial of reh'g* (Nov. 2, 2000).  "'[T]he trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.'" *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1488 (9th Cir. 1991) (citation omitted).

The standard for judgment as a matter of law mirrors the standard for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-50 (2000).  The Court may not make credibility determinations or weigh the evidence. *Id.* at 149.  Instead, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006).  However, only reasonable inferences may be drawn.  An inference is reasonable only when it arises from the

Page 1    -    DEFENDANT NIKE, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULES OF CIVIL PROCEUDRE RULES 50(a) AND 52(c)

evidence without resort to speculation. *Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 802 (9th Cir. 2009). Likewise, "a reasonable inference cannot be supported by only threadbare conclusory statements instead of significant probative evidence." *Id.* (quoting *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 680–81 (9th Cir. 1985)).

Under Federal Rule of Civil Procedure Rule 52(c), "the court may enter judgment as a matter of law . . . with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue." FED. R. CIV. P. 52(c).[1] Where a claim is tried without a jury, "the court must find the facts specially and state its conclusions of law separately." FED. R. CIV. P. 52(a). "In deciding whether to enter judgment on partial findings under Rule 52(c), the district court is not required to draw any inferences in favor of the non-moving party; rather, the district court may make findings in accordance with its own view of the evidence." *Ritchie v. United States*, 451 F.3d 1019, 1023 (9th Cir. 2006). In doing so, the court may "weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies." *International Union of Operating Engineers, Local Union 103 v. Indiana Const. Corp.*, 13 F.3d 253, 257 (7th Cir. 1994).

**II.    PLAINTIFF HAS NOT PROVIDED SUFFICIENT EVIDENCE FOR THE COURT TO FIND DISPARATE IMPACT LIABILITY**

A plaintiff asserting a disparate-impact claim under Title VII must establish three elements by a preponderance of the evidence: (1) a specific, facially neutral employment practice; 2) that the practice caused a significant adverse impact on a protected group; and (3) a causal connection between the practice and the statistical disparity, which includes a showing that the policy applied to her and that she suffered injury as a result. *See Freyd v. Univ. of Oregon*, 900 F.3d 121, 1224

---

[1] Rule 52(c) "parallels the revised Rule 50(a), but is applicable to non-jury trials." Fed. R. Civ. P. 52(c) Advisory Committee Notes, 1991. This rule "authorizes the court to enter judgment at any time that it can appropriately make a dispositive finding of fact on the evidence." *Id.*

Page 2    -    DEFENDANT NIKE, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULES OF CIVIL PROCEUDRE RULES 50(a) AND 52(c)

(9th Cir. 2021); *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 750 (9th Cir. 2003) ("To bring a disparate impact claim, [the plaintiff] must show that he was subject to the particular employment practice with the alleged disparate impact."); *Henderson v. Nordstrom, Inc.*, No. C05-0022RSM, 2006 WL 1148178, at *7 (W.D. Wash. Apr. 27, 2006) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) ("In order to have standing to bring a disparate impact claim, a plaintiff must have suffered actual injury as a result of the complained-of conduct."). Disparate-impact claims under Oregon law are analyzed under the same standard. *Tsur v. Intel Corp.*, 648 F. Supp. 3d 1292, 1311 (D. Or. 2022); *Richardson v. Nw. Christian Univ.*, 242 F. Supp. 3d 1132, 1146 (D. Or. 2017) (citing *Dawson v. Entek Int'l*, 630 F.3d 928, 934 (9th Cir. 2011)). Plaintiff has failed to meet her burden on all three elements.

**A.    Plaintiff Has Not Established The Existence Of A Policy Or Practice Regarding The Use Of Prior Pay To Set Starting Pay Or A Common PSP Bonus Calculation**

**Starting Pay:** There is no evidence that NIKE had a company-wide policy or practice of using prior pay to set starting pay. Shine Thomas, the former Global Head of Talent Acquisition at NIKE, testified that in 2015, NIKE did not have a policy or practice of using prior pay to set starting pay. Tr. 995:3-24 ("Q. In 2015, did NIKE have a policy of using a new hire's prior pay to set their starting pay? A. We did not have a policy of using prior pay to set starting pay. Q. In 2015, did NIKE have a practice of using a new hire's prior pay to set their starting pay? A. We did not have a practice of using prior pay to set starting pay. In 2015, did NIKE have guidelines suggesting that a new hire's prior pay should be used to set their starting pay? A. We did not have a guideline to use new hire starting pay to set -- prior pay to set their starting pay.") (objections omitted). Instead, managers were instructed to base a candidate's starting pay on their skills, experiences and qualifications. Tr. 996:2-11 ("Q. Before -- were managers provided any guidelines in terms of instructing them as to what factors they should consider in determining a

Page 3    -    DEFENDANT NIKE, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULES OF CIVIL PROCEUDRE RULES 50(a) AND 52(c)

new hire starting pay?  A. Yes. The recruiter and the manager would discuss factors to consider, and they were always around skills and experiences and qualifications.  And the sorts of experiences someone would bring, the sorts of experiences they didn't have, the makeup of the team.  It was all nuanced and all individually -- I guess every single position had a nuanced approach to that conversation.").  The fact that NIKE established a policy in late 2017 prohibiting employees from asking applicants about their prior pay and using prior pay to set starting pay, in order to ensure compliance with a new Oregon law, is not evidence that NIKE had had a policy or practice of asking about prior pay or using prior pay to set starting pay beforehand.

**Bonus:**  There is no evidence that NIKE had one common PSP bonus plan policy throughout the statutory period.  The PSP plans and award process changed significantly in 2019.  Before Fiscal Year 2019, each employee's PSP bonus depended, in part, on their individual plan and the employee's performance, and was subject to modification at the manager's discretion.  Tr. 895:12-896:10; Ex. 189.  For bonuses paid in 2019 and later, NIKE used one PSP plan with one company financial performance metric and no managerial discretion, although bonus amounts could be reduced or eliminated if an employee was rated below Successful.  Tr. 896:12-24.

**B.      Plaintiff Has Not Established Evidence That A Common Policy Harmed Women**

Dr. Neumark's analyses are insufficient to establish the existence of a common policy that harms women because his analyses omit critical factors, and thus are fatally flawed.  *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282-93 (9th Cir. 2000).

**Starting Pay:**  Dr. Neumark's starting pay analyses suffer from two fundamental flaws.  First, Dr. Neumark fails to account for job code in his starting pay analysis, which is the comparator group Plaintiff proposes to identify employees performing substantially equal or comparable work.  Tr. 858:7-17 (listing the factors he did control for).  Second, other than an individual's age, Dr. Neumark otherwise fails to account for an individual's prior experience at the time of hire, which

Page 4    -    DEFENDANT NIKE, INC.'S MOTION FOR JUDGMENT AS A MATTER OF
                  LAW PURSUANT TO FEDERAL RULES OF CIVIL PROCEUDRE RULES
                  50(a) AND 52(c)

he agrees "would be a legitimate factor that could explain starting pay." Tr. 859:11-18. His starting pay analyses fail to account for any other differences in experience an individual brought to NIKE, such as their prior employer, level or type of prior experience, or specific expertise or skills an individual might bring to the role. Tr. 859:19-860:4; 860:19-25. Dr. Neumark's failure to account for these obviously relevant factors renders his starting pay analyses irrelevant.

**Bonus:** Dr. Neumark's bonus analysis is also unreliable because it fails to account for job code, which is how Plaintiff contends similar employees should be identified. Tr. 868:23-869:4. As a result, the record contains no evidence of a statistically significant shortfall in bonuses for women compared to men in the same job code.

## C.     Plaintiff Has Not Established That She Was Subject To The Alleged Practices

Plaintiff must do more than identify a facially neutral policy that allegedly disadvantaged members of a protected group. She must also show that the challenged practice was applied to her and caused her alleged injury. "To bring a disparate impact claim, [the plaintiff] must show that ***he was subject*** to the particular employment practice with the alleged disparate impact." *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 750 (9th Cir. 2003) (emphasis added); *see also Bacon v. Honda of Am. Mfg., Inc.,* 370 F.3d 565, 577 (6th Cir. 2004) ("an individual plaintiff arguing a disparate impact theory must show that the challenged policy ***directly disadvantaged him*** in some fashion") (emphasis added); *Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 668 (7th Cir. 1996) ("In order for an individual plaintiff to have constitutional standing to bring a Title VII action, ***he must show that he was personally injured*** by the defendant's alleged discrimination and that his injury will likely be redressed by the requested relief."); *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 115 (2d Cir. 1992) (plaintiff must further demonstrate that the challenged practice adversely affected her by excluding her, as a member of a protected group, from a job, promotion, or other employment opportunity); *Coe v. Yellow Freight Sys., Inc.*, 646

Page 5     -     DEFENDANT NIKE, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULES OF CIVIL PROCEUDRE RULES 50(a) AND 52(c)

F.2d 444, 451 (10th Cir. 1981) ("It is not sufficient for an individual plaintiff to show that the employer followed a discriminatory policy without also showing that plaintiff himself was injured."); *Garay v. Lowe's Home Centers, LLC*, 2017 WL 5473887, at *2 (D. Or. Nov. 14, 2017) ("A disparate impact plaintiff must also show 'that he was subject to the particular employment practice with the alleged disparate impact.'") (quoting *Pottenger*).

**Starting Pay:** Plaintiff presents no evidence that her prior pay was used to set her starting pay. Plaintiff testified that a recruiter asked her about her starting pay, but does not know what, if anything, was done with that datapoint. Tr. 419:23-420:3. That evidence does not show that NIKE relied on her prior pay to set her starting pay. In fact, the evidence is to the contrary. Michael Pfluger, Plaintiff's hiring manager, testified that he decided her starting pay and that he ***did not*** consider her prior pay in doing so. Tr. 1095:13-14; 1099:12-17 ("Q. Okay. Now, obviously, you knew Ms. Hender's pay at her prior employer from Ms. Green; correct? A. Correct. Q. Did that have any influence on your decision of what Ms. Hender's starting pay should be? A. No, it did not."). Instead, he testified that he considered Plaintiff's qualifications and decided to set her starting salary at the midpoint of the pay range for the role. Tr. 1097:7-24 ("Q. Okay. And did you make the decision about what Ms. Hender's starting pay would be? A. Yes. Q. How did you make that decision? A. We felt she brought in some good qualifications for the position, and it's fairly typical to start someone at a midpoint of the salary range for a given position. Q. Okay. Is that what you did? A. Yes."). Mr. Pfluger also testified that it was his typical practice to start a new hire at the midpoint of the salary range, unless the individual "brought in a skill set that would be directly applicable to the type of work that they were expected to perform." Tr. 1098:18-25. Exhibit 263 supports Mr. Pfluger's testimony, as it clearly states that he selected the midpoint of the pay range, based on Plaintiff's experience. Ex. 263 ("Given her years of experience, I'm fine

Page 6    -    DEFENDANT NIKE, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULES OF CIVIL PROCEUDRE RULES 50(a) AND 52(c)

with offering the mid as starting salary.")  While it is undisputed that Mr. Pfluger had information about Plaintiff's prior pay at this time, there is no evidence that he used or considered it, particularly in light of his express testimony to the contrary.  In addition, there is no evidence that Plaintiff's starting pay would have been different if Mr. Pfluger did not know Plaintiff's prior pay.

**Bonus:**  As to bonus, Plaintiff was not subject to a formulaic bonus calculation for most of her employment.  Rather, for all bonuses paid before 2019, Plaintiff's bonuses contained a discretionary component, determined by her managers.  For example, in FY18, Ms. Mei adjusted Plaintiff's Performance Modifier to 105%.  Tr. 1175:11-21; Ex. 100.

### III. PLAINTIFF HAS PRESENTED NO EVIDENCE THROUGH WHICH THE JURY COULD REASONABLY FIND THAT NIKE PAID PLAINTIFF LESS  OR PROMOTED HER MORE SLOWLY THAN TRENT WADDELL BECAUSE OF HER SEX

To establish even a prima facie case under her Title VII and 659A.030 disparate treatment claims, Plaintiff must show (1) she was a member of a protected class; (2) that she met the qualifications for the position in issue; (3) an adverse employment action; and (4) that a similarly situated individual outside the protected class was treated more favorably.  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir.2008).  Even if she could establish her prima facie case, no reasonable juror could find that her pay or promotions were decided *because of* her gender.

### A. There Is No Evidence That Plaintiff Is Similarly Situated To Any Male Employee In Her Job Code.

Plaintiff appears to argue that she was treated differently from other males in her job code, but there is no evidence that Plaintiff was similarly situated to others in her job code in all material respects.  *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006) ("In order to show that the "employees" allegedly receiving more favorable treatment are similarly situated, . . . the individuals seeking relief must demonstrate, at the least, that they are similarly situated to those employees in all material respects.").  Plaintiff compares herself to Trent Waddell, but no

Page 7    -    DEFENDANT NIKE, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULES OF CIVIL PROCEUDRE RULES 50(a) AND 52(c)

reasonable jury could conclude that they were similarly situated.

First, there is no evidence that Plaintiff had the same supervisors as Mr. Waddell. Tr. 1105:7-18; Tr. 1183:14-16; Tr. 1197:4-10.

Second, they did not have similar experience prior to Nike. For example:

- Prior to joining NIKE, Plaintiff did not have any experience managing direct reports. Tr. 525:9-529:13. Mr. Waddell, in contrast, had several years of managerial experience, including leading teams comprised of 16-30 direct reports. Tr. 1042:23-1043:1; Tr. 1043:10-15.
- Before joining Nike, Plaintiff had not been promoted since earning an engineering degree in 2006. Tr. 525:9-529:15; 592: 21-593:2. Mr. Waddell, in contrast, had received a series of promotions and diversified his skillset by assuming a series of managerial and technical roles. Tr. 1042:23-1046:6.
- Plaintiff was unemployed for approximately a year and a half prior to being hired by NIKE. Tr. 529:18-20; 538:8-20. Mr. Waddell, in contrast, had worked continuously at Frito Lay for five and a half years. Tr. 1042:11-16; 1046:19-21.

Third, Plaintiff has failed to provide any evidence that she performed substantially similar work to Mr. Waddell. There are multiple positions within each job code. Tr. 679:4-6. Although there may have been some overlap in some of their work, the core day-to-day job duties of automation / equipment engineers (like Mr. Waddell) and process engineers (like Plaintiff) are not the same. Tr. 1170:15-1171:7. Automation / equipment engineers, like Mr. Waddell, focus on the equipment itself (and its automation and controls) and ensuring it runs effectively. They work on equipment design and equipment modification. Process engineers, in contrast, make sure that the process lines that use the equipment are running efficiently at the right settings, temperature and timing. Tr. 1169:20-1170:8. The process engineers were Mr. Waddell's internal customers. They provided feedback to Mr. Waddell's team so that they could then take a deeper look at what needed to be changed in the equipment. Because Plaintiff has not established that she and Mr. Waddell were similarly situated in all material respects, no reasonable jury could find that Plaintiff met her prima facie burden on her disparate treatment claims.

Page 8    -    DEFENDANT NIKE, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULES OF CIVIL PROCEUDRE RULES 50(a) AND 52(c)

**B.    With Respect to Her Promotion Claim, Plaintiff Cannot Show That She Was Qualified Earlier**

There is no evidence in the record that the timing of Plaintiff's promotion was based on her sex. Ms. Mei testified that Plaintiff was not ready to be promoted any earlier than when she first recommended her. Plaintiff does not present evidence as to *when* she first should have been promoted. Tr. 582:24-583:2. Ms. Mei described several attributes that she looked for in a junior process engineer before they are promoted to a senior process engineer, including taking on a leadership/mentorship role and mastering certain technical capabilities. Tr. 1124:22-1125:21. Plaintiff also received feedback regarding areas of development she needed to master before getting promoted. *See* ECF Ex. 3. There is no evidence that Plaintiff had demonstrated leadership or communications skills sufficient to be promoted into the Senior Engineer I role prior to the April 2018 date when Ms. Mei started moving the promotion process forward in April 2018. Plaintiff cannot show that the promotion process for her was any different than the standard Nike process, once Ms. Mei viewed her as qualified for promotion. She was ultimately promoted in November 2018, which was the next calibration review cycle after Ms. Mei recommended her for promotion. Tr. 1150:14-20. Plaintiff's managers determined she was not ready for promotion earlier. *See, e.g.,* Tr. 1104:15-17. (Mr. Pfluger did not believe that Plaintiff was ready to be promoted during the time that he supervised her.). Because she was not qualified for a promotion before Ms. Mei recommended her for promotion, Plaintiff cannot meet her prima facie burden on her promotion claim.

Page 9    -    DEFENDANT NIKE, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULES OF CIVIL PROCEUDRE RULES 50(a) AND 52(c)

**C.      There Is No Evidence That Any Decision About Plaintiff Was Made Because Of Her Sex**

"To prevail in a disparate treatment claim, a plaintiff must show 'the employer's intent to discriminate, but intent may be inferred from circumstantial evidence.'" *Pullom v. U.S. Bakery*, 477 F. Supp. 2d 1093, 1100 (D. Or. 2007).   Plaintiff has not presented any evidence, direct or circumstantial, that anyone at NIKE intended to discriminate against her.

There is no evidence that Plaintiff's gender was considered at any time in setting her starting pay.  The evidence from Dr. Murphy establishes that there were some men in Plaintiff's job code who were paid less than Plaintiff and some who were paid more.  Tr. 968-6-15.  In fact, the entire time she worked in an L band role, she was paid more than the average male employee in her job code.  Tr. 968:25-969:12.  She also received larger pay increases each year than the average male in her job code.  Tr. 971:1-4; 971:17-24.  There is no evidence to support a conclusion that her sex played a role in deciding Plaintiff's salary compared to others within her job code.

Plaintiff has offered no evidence to suggest that anyone treated her differently because of her gender.  She testified that her promotion was not based on her gender.  Tr. 560:22-23.  Plaintiff acknowledged that her three managers treated her fairly.  Tr. 556:25-557:1.  Each of Plaintiff's managers testified that they did not make any decisions relating to Plaintiff on the basis of her sex. Tr. 1106:23-1107:7, 1107:18-21, 1143:13-17, 1144:24-1145:1, 1149:13-15, 1159:20-25, 1165:5-9, 1172:8-20, 1173:10-15.  Deni Mei testified that her decision to recommend Plaintiff for promotion was not based on her gender.  Tr. 1172:15-17.

The statistical evidence does not connect Plaintiff's promotion timeline to her gender.  Dr. Neumark's promotion analysis shows that women at NIKE are not statistically significantly disfavored in promotions.  Tr. 853:6-9.  "[S]tatistical disparities must be sufficiently substantial that they raise such an inference of causation." *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 995 (1988); *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 307-08 (1977) (requiring

Page 10    -    DEFENDANT NIKE, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULES OF CIVIL PROCEUDRE RULES 50(a) AND 52(c)

'gross statistical disparities'"). Dr. Neumark's promotion analysis does not support her argument.

Plaintiff did not identify any inappropriate statements or comments related to her gender in any way. *See Zhang v. National Public Radio, Inc.*, 2025 WL 4033858, at *10 (D. D.C. Dec. 18, 2025) ("While factual allegations that plaintiff was paid less and promoted more slowly could constitute evidence of a general animus toward her based on her national origin, even those allegations are only connected to her national origin in a conclusory manner."). Plaintiff described an employee who did not share a password with her. Mr. Pfluger explained that this employee had issues communicating with people and that men complained about this individual as well. There is no evidence that Plaintiff's concern about password sharing was based on her gender. Plaintiff does not attribute the interaction to her gender. Plaintiff described another incident where a male colleague asked her "is that your focus face?" and teased her about it. Tr. 496:24-497:3. Plaintiff did not state that this comment had anything to do with gender. Rather, she thought it simply showed that the individual who said it liked to play more than work. Tr. 496:16-497:7. This is not evidence of gender discrimination. *Pete v. Walgreen Co.*, 2016 WL 4443187, at *3 (W.D. Mo. Aug. 19, 2016) ("Groves's comment did not reference gender. Plaintiff's subjective belief that the comment referenced or was made because of her gender is insufficient to demonstrate gender discrimination. . . Plaintiff's subjective belief that Groves's alleged anger or behavior was because of her gender is not evidence she was discriminated against due to her gender."). Finally, Plaintiff said she received an email advertisement from Hurley, a swimwear brand that featured photos with men and women in swimsuits that made Plaintiff feel "awkward." Tr. 579:5-8. No one at Air MI sent the email to her. Tr. 579:2-11. She cannot connect the email to her pay or promotions.

Ultimately, on the current record, a jury cannot reasonably find that Plaintiff was treated differently than similarly situated males because of her sex.

Page 11    -    DEFENDANT NIKE, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULES OF CIVIL PROCEUDRE RULES 50(a) AND 52(c)

IV.    **PLAINTIFF HAS NOT PROVIDED ANY EVIDENCE TO PREVAIL ON HER EQUAL PAY ACT CLAIMS**

Plaintiff cannot meet her burden under the Federal or Oregon Equal Pay Acts. Plaintiff must show by a preponderance of the evidence that she was paid less than male employees for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions (under Federal law), or for work of comparable character (under Oregon law). Plaintiff claims that the correct comparators under both standards and men in the same job code, but there is significant evidence from Plaintiff's managers and other NIKE employees that job code is not determinative. *See*, e.g., 1169:1-1171:7. Dr. Neumark does not know whether Plaintiff was paid more or less than men in her job code, who Plaintiff's comparators are, which employees perform substantially equal work to Plaintiff or work of comparable character to Plaintiff. Tr. 822:10-14, 827:13-828:13. And no expert evaluated the work done by individuals employed in each job code to provide evidence of comparable work. *See id;* Tr. 966:7-967:7.

V.    **PLAINTIFF HAS NOT MET HER BURDEN TO PROVE PUNITIVE DAMAGES**

To receive damages under Title VII, Plaintiff must prove by a preponderance of the evidence that NIKE acted with malice or reckless indifference to Plaintiff's federally protected rights. A plaintiff can satisfy this requirement by showing that the employer acted with conscious knowledge that it was violating the law or the employer engaged in egregious or outrageous conduct from which malice or reckless indifference may be inferred. *See Edelman v. NYU Langone Health Sys.,* 141 F.4th 28, 43 (2d Cir. 2025) (citing *Tepperwien v. Entergy Nuclear Operations, Inc.,* 663 F.3d 556, 572-73 (2d Cir. 2011)). Under Title VII, punitive liability requires a managerial agent acting within the scope of their employment, and even when that occurs, a safe harbor defense exists where the manager's conduct was contrary to the employer's good-faith

Page 12    -    DEFENDANT NIKE, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULES OF CIVIL PROCEUDRE RULES 50(a) AND 52(c)

efforts to comply with Title VII.  *See Kolstad v. ADA*, 527 U.S. 526 (1999); *Swinton v. Potomac Corp.*, 270 F.3d 794 (9th Cir. 2001).

Under ORS 31.730, punitive damages are available only if the plaintiff proves by clear and convincing evidence either: malice or reckless and outrageous indifference, which itself require proof that defendant acted with a reckless and outrageous indifference to a highly unreasonable risk of harm; and acted with a "conscious indifference to the health, safety and welfare of others."  *Wolf v. Nordstrom, Inc.,* 291 Or. 828, 832, 637 P.2d 1280, 1282 (1981) (citing *Crooks v. Payless Drug Stores,* 285 Or. 481, 592 P.2d 196 (1979)).  Thus, Plaintiff is required to show that an individual involved in decisions affecting her acted with conscious disregard of her rights.  There is no evidence that any of Plaintiff's managers or any other decisionmaker perceived a risk that their treatment of Plaintiff violated anti-discrimination laws or Plaintiff's rights under the law.

Plaintiff has not identified a single individual who made decisions about her in the face of a perceived risk of a violation of federal law.  There is no evidence that the non-action taken by Ms. Mei during the statutory period was done with any knowledge that Plaintiff was allegedly being paid less or more slowly than her so-called comparators.  Indeed, Ms. Mei testified that she did not view automation engineers to be doing the same work as Plaintiff.  Plaintiff also has not presented any evidence that anyone who made any decisions regarding Plaintiff made any decisions regarding Mr. Waddell.  If anything, the evidence shows that very shortly after Plaintiff started talking to Ms. Mei about promotion, Ms. Mei started working through the standard Nike process to get her promoted.   Exs. 58, 389, 518.  There is no evidence that Plaintiff's managers made any decision that were done for a discriminatory purpose.  Furthermore, Plaintiff has not presented evidence that NIKE did not have an anti-discrimination policy.  *See* Ex. 1072.

The fact that Nike's corporate leadership was aware of Starfish questionnaires does not

Page 13    -    DEFENDANT NIKE, INC.'S MOTION FOR JUDGMENT AS A MATTER OF
LAW PURSUANT TO FEDERAL RULES OF CIVIL PROCEUDRE RULES
50(a) AND 52(c)

show that any decision Ms. Mei made about Plaintiff were made in the face of a perceived risk that those specific decisions violated the law.  There is no evidence that any individual making decisions about Plaintiff's employment – promotion, pay, or otherwise – had notice of any potential problem at Air MI or had reason to think they might be acting illegally.  Indeed, the Starfish questionnaires may only come in for notice to the company and there is no evidence that there were any Starfish complaints coming out of Air MI.  Tr. 347:24-348:5, 351:19-21.

Even if NIKE did have a common policy or practice of using prior pay to set starting pay that affected Plaintiff's pay into the statutory period (it did not), that would not be sufficient to lead to an award of punitive damages.  *Karcher v. Emerson Electric Co.*, 94 F.2d 502 (8th Cir. 1996) is analogous and has been relied upon by the District Court of Oregon.  In *Karcher*, the defendant company had a facially neutral policy, but the plaintiff, who worked in a male-dominated sector of the company, was frequently found to be unqualified for promotions that went to her male peers.  The court found that the district court had erred in submitting the case to the jury for punitive damages because the plaintiff had not met the heightened recklessness standard. *See EEOC v. Swift Transp. Co., Inc.*, 45 F. Supp.2d 1036, 1040 (D. Or. 1999).  Moreover, punitive damages unrelated to the type of conduct that hurt plaintiff is improper.  See *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423-24 (2003).

### VI.    CONCLUSION

For the foregoing reasons, NIKE respectfully requests that the Court grant NIKE's request for judgment as a matter of law.

Dated: July 18, 2026

*/s/ Jennica Wragg*

Daniel Prince (*pro hac vice*)
danielprince@paulhastings.com
Felicia A. Davis (*pro hac vice*)
feliciadavis@paulhastings.com
Lindsey C. Jackson (*pro hac vice*)
lindseyjackson@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, Twenty-Fifth Floor
Los Angeles, CA 90071-2228
Tel: (213) 683-6000
Fax: (213) 627-0705

Laura Rosenbaum, OSB No. 110061
Laura.rosenbaum@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Tel: (503) 224-3380
Fax: (503) 220-2480
Attorneys for Defendant NIKE, Inc.